
Exhibit B

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, MCGAUGHEY,** | § | |
| **REBER AND ASSOCIATES,** | § | |
| **INC., JULIE HEDRICK, ERIK** | § | |
| **HARRIS** | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |

---

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S CLAIMS FOR RELIEF AND BRIEF IN SUPPORT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, ROBERT "BOB" ROSS, and files this, his Amended Response to Defendants', ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS (hereinafter "APFA"), JULIE HEDRICK, AND ERIK HARRIS 12(b)(6) and 12(b)(1) Motion to Dismiss, and as grounds for support herein would show this Honorable Court the following:

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Claims for Relief, brought pursuant to Federal Rules Civil Procedure §§ 12(b)(1) and 12(b)(6).

# TABLE OF CONTENTS

I.   INTRODUCTION -------------------------------------------------------------------- 5

II.  STATEMENT OF THE CASE ----------------------------------------------------- 6

III.  ARGUMENTS AND AUTHORITIES------------------------------------------10

A.  Standards For Dismissal---------------------------------------------------------10

B.  Plaintiffs Have Stated Claims Upon Which Relief May Be Granted. ---------------------11
    (1)    Plaintiff properly brought his causes of action pursuant to the Labor Management
    Reporting and Disclosure Act, 29 U.S.C. § 411, et. seq., and provided Defendants "fair notice"
    therein pursuant to Federal Rule of Civil Procedure § 8(a).-------------------------------------- 12

C.  Subject Matter Jurisdiction -------------------------------------------------------13
    (1) Subject Matter Jurisdiction is Conferred based on Labor Management Reporting and
    Disclosure Act, 29 U.S.C. § 411, et. seq ------------------------------------------------------14

D.  Arbitrator's Decision is Subject to Review----------------------------------------14
    (1) The Arbitrator's Decision Is Subject to Judicial Review ------------------------------------14
    (2) Plaintiff's Asserted Basis for Judicial Review of the Arbitrator's Decision and Order
    Comports with Well-Settled Federal Labor Law Principles. -------------------------------------- 18

E.  Plaintiff's Remaining Claims Have Merit -----------------------------------------21
    (1) Jurisdictional Basis for Remaining Claims rests in Gibbs Supplement Jurisdiction.--------21
    (2) Exhaustion of Internal Remedies was not Required Prior to Filing Suit.---------------------22
    (3) Common Law Breach of Fiduciary Duty Claims require compliance with LMRDA §
    501(b).---------------------------------------------------------------------------------------22
    (4) Preemption of the Breach of Union Constitution and Breach of Fiduciary Duty claims
    cannot exist based on the Fraudulent Arbitration Award. --------------------------------------23

F. Plaintiff  Has  Satisfied  the  "Fair  Notice"  Pleading  Requirements  Pursuant  to
**Federal Rule of Civil Procedure 8(a).** -------------------------------------------------23

IV.  CONCLUSION AND PRAYER ----------------------------------------------24

## Table of Authority

28 U.S.C. § 1331. ....................................................................................................... 14, 21
29 U.S.C. § 101(a)(4) ..................................................................................................... 22
29 U.S.C. § 101(a)(5) ................................................................................................ 15, 16
29 U.S.C. § 158. ............................................................................................................... 6
29 U.S.C. § 185(a) .......................................................................................................... 19
29 U.S.C. § 411 ....................................................................... 6, 12, 14, 15, 22
29 U.S.C. § 412 .................................................................................................... 10,14, 22
29 U.S.C. §401 ................................................................................................................. 6
9 U.S.C. § 10. ................................................................................................................. 15
*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). .......................................................... 12, 24
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................. 12, 24
*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003). ............................................ 21
*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)...................................... 11
*Breininger v. Sheet Metal Workers*, 493 U.S. 67 (1989). ..................................... 15, 16
*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986). .................................. 11
*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993). ........................ 10
*Chadwick v. International Bhd. of Elec. Workers, Local 175*, 674 F.2d 939 (D.C.Cir.1982). ............... 22
*Doe v. Hillsboro ISD*, 81 F.3d 1395 (5th Cir. 1996). ................................................. 11
Fed. R. Civ. P. 8(a). ................................................................................................ 12, 24
*Finley* v. *United States*, 490 U. S. 545, 548 (1989) ................................................... 22
*Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867 (1982). ............................................ 15
*Franchise Tax Board* v. *Construction Laborers Vacation Trust*, 463 U. S. 1 (1983). ............... 14
*Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41, 44 (2d Cir.1989)............... 20
*Gonzalez v. U.S.*, 284 F.3d 281 (1st Cir. 2002)......................................................... 11
*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). .......................... 21
*Guidry v. Int'l Union Of Operating Eng.*, 406, 882 F. 2d 929 (5th Cir. 1989). ......................... 16
*Guidry v. Int'l Union Of Operating Eng.*, 907 F. 2d 1491, 1493 (5th Cir. 1990). .............. 16, 22
*Hammons v. Adams*, 783 F.2d 597 (5th Cir.1986). .................................................. 22
*Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994)....................................................23
*Hickey v. Obannon*, 287 F.3d 656 (7th Cir. 2002)..................................................... 11
*Hishon v. King & Spalding*, 467 U.S. 69 (1984). ...................................................... 11
*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998). ................ 10
*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. National Right to Work Legal Defense and Education Foundation*, 590 F.2d 1139, 1149 (D.C.Cir.1978) ........20
*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163 (1993)................. 11, 24
*Lindquist v. City of Pasedena*, 525 F.3d 383 (5th Cir. 2008)…………………………………12
*Local Union No. 38 v. Pelella*, 350 F.3d 73 (2nd Cir. 2003). .................................... 20
*Luckett v. Bure*, 290 F.3d 496 (2d Cir. 2002). ........................................................... 11
*Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921 (5th Cir. 1998). ........................ 11
*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001). ....................... 21
*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720v(5th Cir. 2002)........................ 12
*Martin v. American Airlines, Inc.*, 390 F.3d 601 (8th Cir. 2004). ............................... 23
*Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31 (1st Cir. 2002)............................. 11
*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986). .................................. 14
*Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966)....................................................... 21-22
*Salzhandler v. Caputo*, 316 F.2d 445, 449 (2d Cir.1963)…………………………………20
*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)..................................... 10
*Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593, 597 (1960). ........................ 21

*U.S. v. Morton,* 467 U.S. 822, 104 S.Ct. 2769 (1984). ........................................................... 10

*U.S. v. Ritchie,* 15 F.3d 592 (6th Cir. 1994) ...................................................................... 10

*United Ass'n of Journeymen v. Local 334,* 452 U.S. 615 (1981)............................................ 19

*United Paper Workers International Union v. Misco, Inc.,* 484 U.S. 29, 36-37 108 S.Ct. 364, 371, (1987).

.................................................................................................................................. 18

*Verville v. Int'l Ass'n of Machinists & Aerospace Workers,* 520 F.2d 615 (6th Cir. 1975). ..................... 22

*Wooddell v. International Bhd. of Elec. Workers,* 502 U.S. 93,116 L.Ed.2d 419 (1991). ................ 19

# I.    INTRODUCTION

Robert "Bob" Ross (hereinafter referred to as "Plaintiff" or "Ross"), is a member in good standing of the Association of Professional Flight Attendants union (hereinafter "APFA") and the Former National Treasurer.  Plaintiff was charged with violations of the APFA policy after enduring three days of arbitration hearings, and an award being issued against him declaring he breached his fiduciary duty to the union.  Plaintiff filed his complaint against McGaughey, Reber and Associates, Inc. dba Diversified Credit Systems, APFA, the National President, Julie Hedrick, and National Treasurer, Erik Harris, to vacate the arbitration award after discovering APFA and the National Officers withheld documents and pertinent facts from Plaintiff, the APFA Board of Directors, the APFA Executive Committee members, and Arbitrator Ruben Armendariz in order to acquire an unfavorable arbitration award.  Ross contends this violated his rights under the "Member's Bill of Rights" afforded by the Labor Management Reporting and Disclosure Act, as well as breached the APFA Constitution, and breached the two officer's common-law fiduciary duties to the Plaintiff.  Plaintiff asserts Defendants' motivation was Plaintiff's opposition to a proposed merger of APFA with the Association of Flight Attendants-CWA, AFL-CIO (hereinafter "AFA").

On or about July 21, 2022, Defendants filed a Motion to Dismiss Plaintiff's Claims for Relief and Brief in Support (hereinafter "Motion to Dismiss").  Defendants assert the following arguments in their Motion to Dismiss:

> (1) Plaintiff's claims fail to meet subject matter jurisdiction,
>
> (2) LMRDA provisions no longer govern any internal union matters, and
>
> (3) all remaining claims asserted by Plaintiff are unfounded either
>
>> (a)    due to lack of jurisdictional basis,
>> (b)    due to lack of meeting Plaintiff's legal obligation "to exhaust the mandatory

internal union remedies 'prior to taking any legal action'",

(c)    Plaintiff failed to meet the statutory pre-requisite to filing a claim under §501(a) of the Labor Management Reporting and Disclosure Act, and

(d)    all other claims are preempted by the Arbitration Award.

Defendants' Motion to Dismiss provides misleading interpretations of the law, as well as inconsistent interpretations of Plaintiff's claims asserted in this case before the court. A clear understanding of both the law and Plaintiff's position clearly show that Defendant's motion to dismiss should be denied.

## II.    STATEMENT OF THE CASE

Plaintiff, Robert "Bob" Ross ("Plaintiff") seeks damages alleging unlawful violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, *et seq.* ("LMRDA"), the Association of Professional Flight Attendants Union Constitution, and Breach of Fiduciary Duty as provided for under Texas Common Law by Defendants APFA, JULIE HEDRICK, AND ERIK HARRIS ("hereinafter Defendants"). APFA is a labor organization covered under the LMRDA, 29 U.S.C. §401 et seq, and 29 U.S.C. § 158, *et seq*. Plaintiff is a member in good standing of APFA as defined under the LMRDA and 29 U.S.C. § 158. On or about January of 2016, the Plaintiff ran for office within the APFA local union elections. For clarification, Robert "Bob" Ross ran for National President Nena Martin ran for National Vice-President, and Eugenio Vargas ran for National Treasurer.

Plaintiff won the election, with Robert "Bob" Ross being elected President, Nena Martin elected Vice-President, and Eugenio Vargas Treasurer ("Ross Administration"). The Ross Administration opposed a merger of the union with AFA—another multi-airline flight attendants' union. This created two political factions within APFA competing for power: Pro-APFA/AFA and Anti-APFA/AFA. The individuals comprising the Pro-APFA/AFA faction undertook a course

of conduct of retaliation and suppression to thwart the efforts of Plaintiff, as well as others within the local union, to silence the opposition, supplement leadership, and effectuate a merger of the two unions. Ross voluntarily stepped down from his position as National President on March 9, 2018 after negotiating and signing a transition agreement with the APFA Board of Directors ("Transition Agreement"). In 2020, the Hedrick Administration (a Pro-APFA/AFA Administration) was elected to National Office.

Plaintiff was subjected to retaliatory and oppressive actions by their union opponents and were subjected to deliberate attempts to suppress their dissent within in the union. Specifically, but not limited to, Plaintiff, Ross was investigated, charged, harassed, and disparaged through online media sources intended for work purposes, his confidential Transition Agreement made public, without his consent, unlawfully collected and credit-reported on in violation of federal law, and forced to defend himself in an sham arbitration in which documents were withheld, and the national officers informed the Executive Committee and the Board of Directors that an independent accounting firm reviewed and determined that the payments made to Ross under the Transition Agreement were miscalculated. The APFA National Officers demanded Ross pay back several thousand they claimed he owed to APFA for these alleged overpayments. Thereafter, Ross was charged with various violations of the APFA policy, including credit card violations, rental car violations, reimbursement violations, payout for his sick and vacation pay, and his payments under the Transition Agreement. The arbitration hearing was held—much of it conducted in a way that denied Ross a fair opportunity to be heard—and an arbitration award was issued. The arbitration award went well beyond the charges asserted against Plaintiff by framing the issue as "Did Bob Ross, the Defendent [sic] herein violate the APFA Policy Manual and the APFA Constitution by

engaging in malfeasance, fraud, misappropriation of funds while he was in office during the term of April 1, 2016 to March 2, 2018. If so, what shall be the appropriate remedy?"[1]

The arbitration award further states that "[t]he arbitrator finds that throughout this proceeding, Defendant Ross *intentionally and willfully* ignored the provisions of the APFA Policy Manual and thus, has violated and abused his fiduciary duty entrusted to him by the APFA membership ."[2]

The award goes beyond the initial charges asserted against Plaintiff and determines criminal or civil violations against Plaintiff where no such violations were ever initially asserted."[3]   The award seeks to ameliorate grievances for a family trip never taken, furniture purchases for which Ross previously reimbursed the Union—a fact that Chinery and Lee did not dispute—and necessary items for an APFA apartment Ross resided in while away from his CA-based residence prior to his relocation once his children finished school.   Furthermore, the award goes beyond the scope of remedies sought in the initial charges and issues fines for charges made for various violations.   The award even cites "the independent accounting firm" that reviewed Ross's payments under the Transition Agreement as the basis for issuing a fine in the amount owed for the repayment of his over-payment.[4]

Plaintiff discovered that APFA officers had presented false statements to the Executive Committee and the Board of Directors and withheld pertinent documentation during the arbitration hearings.   Attached hereto, incorporated herein and marked as <u>Exhibit C</u> is the Original Petition filed by Diversified Credit against Ross in Tarrant County Justice Court, Precinct Three.[5]

---

[1] *Ex. D, Ross Arbitration Award, Issued March 19, 2022 [Appendix p. 36].*
[2] *Ex. D, Ross Arbitration Award, Issued March 19, 2022 [Appendix p. 56].*
[3] *Ex. D, Ross Arbitration Award, Issued March 19, 2022 [Appendix p. 57].*
[4] *Ex. D, Ross Arbitration Award, Issued March 19, 2022 [Appendix pgs. 55,57].*
[5] *Ex. C, Pl.'s Original Petition, Tarrant County Justice Court, Precinct Three, JP03-22-DC00017757 [Appendix p. 33].*

Attached hereto, incorporated herein and marked as <u>Exhibit B</u> is the Affidavit of Nena Martin, a former Board member, who attests to the statements made by the officers at the Board of Directors meetings, the Executive Committee meetings, and the emails received that clearly show the officers' misrepresentation that the accounting firm's review determined the incorrect per diem was used to calculate Ross's payments.[6] Upon being served on a debt lawsuit filed by Defendant, McGaughey, Reber and Associates—the successor-in-interest to the Transition Agreement, Ross discovered a letter from the APFA accounting firm that reviewed his payments under the Transition Agreement ("Confidential Memorandum").[7] The Confidential Memorandum clearly states that the payments made to Ross "appear appropriate and in compliance with the transition agreement" which conflicts with the National Officer's statements to the APFA Board of Directors and the Executive Committee, as well as statements relied on by the arbitrator to issue the award.[8] Plaintiff's union representative appealed to the arbitrator upon discovering the Confidential Memorandum, however, Plaintiff was denied the opportunity to introduce the evidence or reopen the case.

Plaintiff was not provided the safeguards against improper disciplinary action guaranteed under the LMRDA. Withholding documentation and misrepresenting the facts is an unconscionable violation to Plaintiff's right to a fair hearing and goes beyond any rational explanation that could meet a reasonableness standard. The result of this conduct is that Plaintiff has been unfairly fined and disciplined by APFA's conduct. Further, Plaintiff's reputation has been damaged, he has been fined, his credit report has been damaged, removed from his position on the Board of Directors as

---

[6] *Ex. B. Aff. of Nena Martin and Email from Erik Harris to Board of Directors and Executive Committee,* [*Appendix pgs. 16, 18-19*].
[7] *(Ex. C, Pl.'s Original Petition, Tarrant County Justice Court, Precinct Three, JP03-22-DC00017757)* [*Appendix p. 33*].
[8] *Ex. C, Pl.'s Original Petition, Tarrant County Justice Court, Precinct Three, JP03-22-DC00017757;* [*Appendix p. 33*]; *Ex. B, Affidavit of Nena Martin, Email from Erik Harris to Board of Directors and Executive Committee* [*Appendix p. 19*].

Base President, and suspended from holding any official APFA position for the remainder of his life. He has suffered for the past six years from on onslaught of public humiliation tactics designed, coordinated, and executed by the Defendants. He has suffered financially and emotionally as he has watched his wife and children suffer from the pain this has brought on their family. Plaintiff seeks to have the arbitration award vacated, as this hearing and the resulting arbitration award are clearly based on fraudulent conduct.

### III.     ARGUMENTS AND AUTHORITIES

#### A.     Standards For Dismissal

An FRCP 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction seeks the dismissal of the lawsuit because the court lacks the authority to hear the dispute.[9] A claim must be dismissed, pursuant to Rule 12(b)(1), "when the Court lacks the statutory or constitutional power to adjudicate the case."[10] 29 U.S.C. § 412 clearly states:

> "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

If a FRCP 12(b)(1) motion simply challenges the Court's subject-matter jurisdiction based on the sufficiency of the pleading's allegations, then the motion is a facial attack.[11] In a facial attack, the District Court will accept all material allegations of the complaint as true and construe them in the light most favorable to the non-moving party.[12]

In resolving the question of subject-matter jurisdiction, the District Court can refer to

---

[9] *See generally U.S. v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773 (1984).
[10] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[11] *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).
[12] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974); *Ritchie*, 15 F.3d at 598; *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

evidence outside the pleadings.[13]

A motion to dismiss for failure to state a claim upon which relief can be granted tests the formal sufficiency of the statement of claim for relief in the Plaintiff's complaint.[14] The motion cannot be used to resolve factual issues or the merits of the case and is not appropriate unless the Plaintiff's pleadings on their face show, beyond a doubt, that the Plaintiff cannot prove any set of facts that would entitle it to relief.[15]

Rule 12(b)(6) motions are disfavored in the law, and a Court will rarely encounter circumstances that justify granting them.[16] A Court may dismiss a claim only when no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint.[17] A motion to dismiss should not be granted unless it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him or her to relief.[18]

The claimant is not required to set out in detail the facts upon which the claim is based, rather the rules require that the claim simply give the Defendant "fair notice".[19] Further, a Court may not look beyond the pleadings.[20] The Court must accept as true the allegations in the complaint and must view the allegations in the light most favorable to the Plaintiff.[21] The allegations in the claim need only give the Defendant fair notice of the nature of the claim and the grounds on which it rests.[22] The rules also dictate that the pleadings be liberally construed "as to substantial justice."[23]

**B.** **Plaintiffs Have Stated Claims Upon Which Relief May Be Granted.**

---

[13] *Luckett v. Bure*, 290 F.3d, 496-97 (2d Cir. 2002); *Gonzalez v. U.S.*, 284 F.3d 281, 288 (1st Cir. 2002).

[14] *Doe v. Hillsboro ISD*, 81 F.3d 1395, 1401 (5th Cir. 1996).

[15] *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002); *Hickey v. Obannon*, 287 F.3d 656, 657 (7th Cir. 2002).

[16] *Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 926 (5th Cir. 1998).

[17] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[18] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[19] *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993).

[20] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[21] *Id.* at 931.

[22] *See Mahone*, 836 F.2d at 926.

[23] *Id.* at 926.

(1) <u>Plaintiff properly brought his causes of action pursuant to the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, et. seq., and provided Defendants "fair notice" therein pursuant to Federal Rule of Civil Procedure § 8(a).</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.[24] The complaint must be liberally construed in favor of the Plaintiff, and all facts pleaded in the complaint must be taken as true.[25] Recent decisions by the Supreme Court have elaborated on the pleading standards for civil litigation.[26]

The Supreme Court noted two "working principles" in the *Iqbal* and *Twombly* decisions. First, while a Court must accept all factual allegations in the complaint as true, the court need not accept a complaint's legal conclusions as true; and second, a complaint must state a "plausible claim for relief" to survive a motion to dismiss.[27] "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."[28] The court presumes factual allegations to be true, even if doubtful in fact.[29]

<u>Federal Rule of Civil Procedure 8(a)</u> requires only "a short and plain statement of the claim" showing that the pleader is entitled to relief.[30] As the Supreme Court has emphasized, this rule does not require "heightened fact pleading of specifics,", or "detailed factual allegations."[31]

Defendants allege that Plaintiff has not stated a claim upon which relief can be granted under the LMRDA. However, Defendants have wholly failed to provide any legal or factual basis supporting their allegations that Plaintiff cannot state a claim upon which relief can be granted

---

[24] *Manguno v. Prudential Prop. & Cas. Ins. Co.,* <u>276 F.3d 720, 725</u> (5th Cir. 2002).
[25] *Id.* at 725.
[26] *See Ashcroft v Iqbal*, <u>129 S. Ct. 1937</u> (2009); *Bell Atl. Corp. v. Twombly*, <u>550 U.S. 544</u> (2007).
[27] *Iqbal*, <u>129 S.Ct. at 1949-50</u>.
[28] *Id.* at 1949.
[29] *Twombly*, <u>550 U.S. at 555</u>; *Lindquist v. City of Pasedena*, <u>525 F.3d 383, 386</u> (5th Cir. 2008).
[30] <u>Fed. R. Civ. P. 8(a)</u>.
[31] *Twombly*, <u>550 U.S. at 570</u>; *Iqbal*, <u>129 S. Ct. at 1949</u>.

under the LMRDA. Defendants argue that LMRDA does not govern disputes between members as these disputes do not classify as a disciplinary measure by the union. Plaintiff would note that the APFA Const. Art. VII—entitled "Hearings and Disciplinary Procedures"—spells out that members are subject to fine, suspension or expulsion, or suspension from or removal from office for an enumerated list of violations.[32] Furthermore, Art. VII, Sec. 2 creates the right for any member in good standing to file charges against another member—however neither the Constitution nor Policy grants APFA the right to file charges against an individual member in pursuit of disciplinary measures.[33] Once charges are filed, the National Secretary then presents the charges to the APFA Executive Committee, who vote on whether the charges are timely, valid and specific. The accused is then referred to an arbitrator for an arbitration hearing, which ultimately results an award. If the award stipulates the accused member must pay fines, those damages are collected by the union.

In the present case, the charges were brought by two members, the Executive Committee found the charges to be timely, valid, and specific after the National Officers misrepresented that an accounting firm's review of Ross's payments under his Transition Agreement found the payments were incorrect.[34] Following issuance of the arbitration award, the APFA National President issued a public announcement to all membership on March 24, 2022 announcing the arbitrations as a result of the unions publications of financial documentation; furthermore, the arbitration awards were adopted by resolution by the APFA Board of Directors on March 8, 2022.[35]

## C.     Subject Matter Jurisdiction

---

[32] *Ex. E* APFA Const. Art. VII, Sec. 1 *et. seq.* [*Appendix p. 109*].
[33] *Ex. E* APFA Const. Art. VII, Sec. 2 *et. seq.* [*Appendix pgs.109-110*].
[34] *Ex. B. Affidavit of Nena Martin and Email from Erik Harris to Board of Directors and Executive Committee* [*Appendix pgs. 16, 18-19*].
[35] *Ex. F Resolution by Board of Directors March 8, 2022* [*Appendix p. 131*]*; Ex. G, Presidential Hotline to Membership, March 24, 2022* [*Appendix pgs. 132-133*].

(1) <u>Subject Matter Jurisdiction is Conferred based on Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, et. seq.</u>

Subject matter jurisdiction exists when a federal question exists in "all civil actions arising under the Constitution, laws, or treaties of the United States."[36] "The 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a 'suit arises under the law that creates the cause of action.'"[37]  An action "arises under" federal law if: (1) "federal law creates the cause of action[,]" or (2) "the vindication of a right under state law necessarily turn[s] on some construction of federal law."[38]

In the matter before this Court, the cause of action at the heart of the case are those claims falling under the LMRDA § 411, *et seq.*  Grounds for a cause of action are created by the federal legislation under LMRDA, <u>29 U.S.C. § 412</u> which grants:

> "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United State for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."[39]

The cause of action for the unfair hearing and violation of Plaintiff's rights arises from the federal Labor Management Reporting and Disclosure Act, thus subject matter jurisdiction is clearly established.

**D. <u>Arbitrator's Decision is Subject to Review</u>**

(1) <u>The Arbitrator's Decision Is Subject to Judicial Review</u>

Defendants contend that Plaintiff's basis for setting aside the arbitration award is grounded in LMRDA § 411.[40] Plaintiff filed the motion to vacate the arbitration award based on the well-

---

[36] <u>28 U.S.C. § 1331</u>
[37] *Merrell Dow Pharmaceuticals Inc. v. Thompson*, <u>478 US 804, 807</u> (1986) quoting *Franchise Tax Board* v. *Construction Laborers Vacation Trust*, 463 U. S. 1, 8-9 (1983).
[38] *Id.* at 9
[39] <u>29 U.S.C. § 412</u>.
[40] *Ex. A, Def's Motion to Dismiss Pl's Claims for Relief* [*Appendix p. 6*].

established law that arbitration awards where fraud, corruption, misconduct, or where arbitrators exceeded their authority shall be vacated by the court.[41]   The cause of action under LMRDA §411, *et seq.* is rooted in the Plaintiff's cause of action for damages because of the violation of his rights as a union member granted thereunder.   Defendants seem to confuse the two laws—one is a means to vacate an invalid award, the other is a means to recover for damages suffered.

Plaintiff's claim under LMRDA are valid and properly asserted claims.   The *Supreme* Court coined LMRDA "the product of congressional concern with widespread abuses of power by union leadership."[42]   The question before the *Breininger* Court was whether the union's actions were considered disciplinary actions that required notice and a fair hearing under LMRDA 101(a)(5).[43] The *Breininger* Court found that "[t]he fact that § 101(a)(5) does not prohibit union discipline altogether, but rather seeks to provide 'safeguards against improper disciplinary action,' indicates that "discipline" refers to punishment that a union can impose by virtue of its own authority over its members."[44] The case addresses the term "otherwise discipline" in the language of LMRDA § 411 for purposes of when a union must give notice and a hearing.[45] The Supreme Court holds that "otherwise discipline" indicates "'Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules."[46]   The statute highlights the types of punishment as fines, expulsion, and suspension, which the *Breininger* Court found required a disciplinary process rather than an *ad hoc* retaliation by union officials.[47]   At no

---

[41] 9 U.S.C. § 10.
[42] *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 1870, (1982).
[43] *Breininger v. Sheet Metal Workers*, 493 U.S. 67 (1989).
[44] *Id.* at 92.
[45] *Id.* at 92.
[46] *Id.* at 91.
[47] *Id.* at 91.

point does the *Breininger* Court address subject matter jurisdiction. Nor does the *Breininger* Court ever hold that subject matter jurisdiction did not extend to union disciplinary arbitrations.

The *Guidry* Court also did not address subject matter jurisdiction issues, nor arbitration awards regarding union procedures.[48] The *Guidry* Court addressed a union member's complaint regarding hiring hall procedures between a union and an employer that allowed the union leadership to discretion.[49] Hiring procedures of one of the Business Agent illustrated that he was exploiting and disregarding the hiring hall procedures to enrich those union members loyal to him—detrimentally to his opponents to silence and compel obedience.[50] Here the Court held that under 101(a)(5) you cannot define depriving job referrals as "discipline" in which notice, and a fair hearing is required. However, when it is done as an imposition on a union member's free speech, it can be prohibitive in its effective under 101(a)(1 and 101(a)(2).[51] Furthermore, the *Guidry* Court held that the discipline requirement does not have to be done in the union's name, but if done on behalf of the union, rather than ad hoc retaliation committed by one union leader, would still fall within the scope of 101(a)(5).[52]

The discipline complained of by the Plaintiff includes damage to his reputation, fines, expulsion from his position as Base President, and suspension from his ability to serve as an elected official. Furthermore, the charges were brought on behalf of and for the benefit of the union, not for the benefit of the members that brought the charges. Considering this discipline is outlined as regular disciplinary measures in the APFA Constitution, and proceedings were held through an arbitration—the Plaintiff's claim clearly meets the standards laid out by the *Breininger* Court.

---

[48] *Guidry v. Int'l Union Of Operating Eng.*, *406*, <u>882 F. 2d 929</u> (5th Cir. 1989).
[49] *Id.* at 933-934.
[50] *Id.* at 933-934.
[51] *Guidry v. Int'l Union Of Operating Eng.*, <u>907 F. 2d 1491, 1493</u> (5th Cir. 1990).
[52] *Id.* at 1492-93.

Plaintiff can only assume that Defendants' counsel intended to argue that the arbitration between two members, as provided for under APFA's disciplinary procedures, is not considered an internal union-conducted disciplinary proceedings regulated by LMRDA.[53] If *this* is Defendants' argument, then this notion disregards the procedures spelled out in the APFA Constitution, which provides that the National Secretary "shall administer Article VII procedures."[54] The National Treasurer oversees all financial records, production of all financial documents, maintain computerization of financial documents, oversee all daily activities of the APFA headquarters office and staff, and assist the National Secretary in the discharge of his duties[55]. The National President acts as the chairperson for the Board of Directors, and the Executive Committee, and a member of both as well, and has the authority to retain and hire legal counsel for the union.[56] The Vice-President is empowered to hire counsel for members in arbitrations and grievances and assist the National President in the discharge of all duties.[57] The Executive Committee, comprised of all four national officers and appointees, review and vote on whether charges are timely, specific, and valid prior to any referral of charges to arbitration.[58] The Board of Directors, which includes all four national officers, appoint an arbitrator to preside over the arbitration.[59]

The APFA Constitution illustrates that the only means to bring about a disciplinary action is to file charges by an individual member against another individual member through the arbitration process, which is overseen and conducted by the National Officers. There are no

---

[53] *Ex. A, Defs' Motion to Dismiss Plaintiff's Claims for Relief and Brief in Support* [*Appendix p.6*].
[54] *Ex. E, APFA Const Art. III Sec. 6D(8)* [*Appendix p. 90*].
[55] *Ex. E, APFA Const Art. III Sec. 6E et seq.* [*Appendix pgs. 91-92*].
[56] *Ex. E, APFA Const Art. III Sec. 6 et seq.* [*Appendix pgs. 78, 82, 88-89*].
[57] *Ex. E, APFA Const Art. III Sec. 6 et seq.* [*Appendix pgs. 89-90*].
[58] *Ex. E, APFA Const Art. VII Sec. 3 et seq.* [*Appendix pgs. 110-111*].
[59] *Ex. E, APFA Const Art. VII Sec. 5 et seq.* [*Appendix pg. 112*].

provisions outlined in Art. VII of the APFA Constitution or APFA Policy that provide for APFA to bring charges against a member on behalf of the union—the drafters of the APFA Constitution sought to empower all members to implement discipline against one another for violations. Furthermore, there is no provisions or measure for a member to file charges and bring an action against an officer as an officer. The only means to file charges and pursue discipline the APFA Constitution provides for only one member to file charges against another member. Therefore, the only possible interpretation of the Article VII Arbitration Procedures of the APFA Constitution as anything other than a disciplinary proceeding falling within the scope of LMRDA would undermine the statute and frustrate its purpose—to protect members from abuse of by the leadership.

(2) <u>Plaintiff's Asserted Basis for Judicial Review of the Arbitrator's Decision and Order Comports with Well-Settled Federal Labor Law Principles.</u>

Defendants argue that the labor law principle that an arbitrator's interpretation of a collective bargaining agreement is final and not subject for review by the judiciary, therefore the arbitrator's award in the case at issue should stand as final and binding. The review of arbitration awards in labor cases was described by the *Misco* Court as "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."[60] Application of these ordinary contract principles falls squarely within an arbitrator's wide discretion to interpret and apply a collective bargaining agreement. Relying on this interpretation for this case at issue poses three problems: (1) there is not a Collective Bargaining Agreement at issue between Plaintiff and Defendants, (2) this interpretation frustrates the policy and purpose behind the LMRDA and the Member's Bill of Rights as forged by Congress, and (3)

---

[60] *United Paper Workers International Union v. Misco, Inc.,* 484 U.S. 29, 36-37 108 S.Ct. 364, 371, (1987).

labor law principles regarding arbitration still favor vacating arbitration awards in certain circumstances.

The first problem with extending the arbitrator's authority within the case-at-issue is that no Collective Bargaining Agreement is at issue in the current case between Plaintiff and Defendants. "A union constitution is considered a contract between the union and its members, and a member or members may sue the union under section 301 (a) for breach of that contract."[61] A Collective Bargaining Agreement is one typically defined by "contracts between an employer and a labor organization representing employees. . . ."[62]

In the case before the court, the employer, American Airlines, Inc., is not a party to the Union Constitution, nor were they a party to the charges filed or the union's disciplinary procedures, or the arbitration hearing. This is governed solely by the union constitution—which is a contract between the members and APFA.[63] Therefore, application of the labor law principle that an arbitrator's interpretation of a collective bargaining agreement is not appropriate here.

The second problem with Defendants' argument is that this approach frustrates the policy interest behind enacting LMRDA. The LMRDA policy interest was clear upon Congress's enactment of the legislation: "[t]he legislative history and the extensive hearings which preceded the enactment of the [LMRDA] abundantly evidence the intention of the Congress to prevent union officials from" abusing their disciplinary powers."[64] The Second Circuit Court spells out the policy behind the Union Member's "Bill of Rights" in saying that "Section 101 of Title I of the

---

[61] *Woodell v. International Bhd. of Elec. Workers,* 502 U.S. 93, 101, 116 L.Ed.2d 419 (1991); *United Ass'n of Journeymen v. Local 334,* 452 U.S. 615, 619-27, (1981).
[62] 29 U.S.C. § 185(a).
[63] Ex. B, APFA Const. Art. I, Sec. 2 *et. seq.* [*Appendix pgs. 41, 43, 45, 50, 64*].
[64] *Local Union No. 38 v. Pelella,* 350 F.3d 73, 83-84 (2nd Cir. 2003) (citing *Salzhandler v. Caputo,* 316 F.2d 445, 449 (2d Cir.1963)).

LMRDA represents '[o]ne of the most significant remedial provisions of the LMRDA.'[65] The Union Member's "Bill of Rights," protects members from the abusive or coercive practices of the union's leadership.[66]

In the case before the court, expanding an arbitrator's deference to interpretation from a Collective Bargaining Agreement to union disciplinary arbitrations would simply stifle protections afforded to members from abuse of power by union officials and leadership under LMRDA. The case law, let alone Congress's intent in creating and implementing the law simply does not support such a broad scope of interpretation of this axiom.

The third problem with Defendants' arguments is that it ignores those instances in which the courts have vacated arbitration awards even when interpreting a collective bargaining agreement. "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."[67] The Supreme Court in *Garvey,* goes on to state that "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, fact finding" does not provide a basis for a reviewing court to refuse to enforce the award."[68] Here, the court makes clear that when dishonesty has occurred, vacating the arbitration award is the proper recourse. Those "decisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced."[69] Again, these cases apply to those where the arbitration occurs because of a collective bargaining agreement. In the

---

[65] *Pelella*, 350 F. 3d 73, 84 (citing *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. National Right to Work Legal Defense and Education Foundation,* 590 F.2d 1139, 1149 (D.C.Cir.1978)).
[66] *Franza v. International Brotherhood of Teamsters, Local 671,* 869 F.2d 41, 44 (2d Cir.1989).
[67] *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 507-509 (2001) (quoting *Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U. S. 593, 597 (1960)).
[68] *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 507-509 (2001).
[69] *Misco*, 484 U.S. 29 at 38-39.

case before the court, dishonesty *has* been asserted. There is clear documentation of fraud established by the documents attached to Plaintiff's Original Complaint.[70] Therefore, even if a heightened standard of review were applied the arbitrator's award at issue should still be vacated per the labor law principles due to the Defendants' fraud.

### E.  Plaintiff's Remaining Claims Have Merit

(1) Jurisdictional Basis for Remaining Claims rests in *Gibbs* Supplement Jurisdiction.

As previously discussed, the Supreme Court has held that "[a] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."[71] Furthermore, 28 U.S.C. §1331 requirements are met when a case generally arises under federal law when that federal law creates the cause of action.[72]

State law claims asserted between the same parties, based on the same nucleus of facts that gave rise to the cause of action which forms the basis of subject matter jurisdiction, may be heard based on supplemental or pendent jurisdiction. In *Finley,* the Supreme Court reaffirmed what it previously held in *Gibbs* finding that "in cases involving supplemental jurisdiction over additional claims between parties properly in federal court, the jurisdictional statutes should be read broadly, on the assumption that in this context Congress intended to authorize courts to exercise their full Article III power to dispose of an 'entire action before the court [which] comprises but one constitutional 'case.'""[73]

In the case before the court, subject matter jurisdiction is conferred based on federal question because the cause of action *arises out of* the LMRDA, 29 U.S.C. § 412.  Supplemental

---

[70] *Ex. H, Pl's Original Compl.* [*Appendix 145,147, 149-150, 157, 163*].
[71] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).
[72] *Grable & Sons*, 545 U.S. 308 at 312.
[73] *Finley* v. *United States,* 490 U. S. 545, 548 (1989) quoting *Mine Workers* v. *Gibbs,* 383 U. S. 715 (1966).

jurisdiction over state law claims can be founded on the *Gibbs* case and its progeny of broadly interpreting jurisdictional authority over state law claims within an action properly embedded in federal question jurisdiction.

(2) Exhaustion of Internal Remedies was not Required Prior to Filing Suit.

Plaintiff is not required to exhaust internal remedies as a pre-requisite to filing suit against the Defendants. Section 101(a)(4) of the LMRDA, 29 U.S.C. 411(a)(4), allows courts the discretion to hear a union member claim or require a union member to exhaust his internal remedies before filing suit.[74] Exhaustion, however, is not required "when internal union remedies are inadequate or illusory, or when the union has taken a consistent position in opposition to that of a plaintiff, and exhaustion would therefore be futile . . . ."[75]

Despite the futility of meeting a pre-exhaustion requirement, Plaintiff *did* exhaust his internal remedies prior to filing suit, as Plaintiff pursued arbitration and achieved an award. Plaintiff called witnesses that were not required to appear or that were intimidated and discouraged from testifying on behalf of the Plaintiff during the Arbitration. Plaintiff subpoenaed documents pertaining to the charges and put on his defense. Plaintiff only brought this lawsuit after discovering that the Union and the National Officers conspired to withhold documents and mis-informed APFA officials to achieve a guilty result.

(3) Common Law Breach of Fiduciary Duty Claims require compliance with LMRDA § 501(b).

The Breach of Fiduciary Duty claims brought against the officers were asserted under Texas Common Law, similar to the counterclaim asserted by Defendant. LMRDA § 501(a) clearly asserts a cause of action against an officer that spends union funds or for purposes of pecuniary or

---

[74] *See* 29 U.S.C. § 411(a)(4); *Hammons v. Adams,* 783 F.2d 597, 603 (5th Cir.1986); *Chadwick v. International Bhd. of Elec. Workers, Local 175,* 674 F.2d 939 (D.C.Cir.1982). *Guidry v. Operating Engineers Local 406,* 882 F. 2d 1491, (5ᵗʰ Cir. 1990).
[75] *Verville v. Int'l Ass'n of Machinists & Aerospace Workers,* 520 F.2d 615, 620 (6th Cir. 1975).

personal gain. Plaintiff's Complaint never asserted any facts regarding the officers' conduct pertaining to their spending of union funds, rather Plaintiff's complaints clearly focus on the withholding of documents, the presentation of false facts, defamation of his character, and conspiring to defame his character. Consequently, any pre-requisite needed to comply with LMRDA § 501(b) is moot, as no claim under LMRDA § 501(a) have been asserted.

(4) <u>Preemption of the Breach of Union Constitution and Breach of Fiduciary Duty claims cannot exist based on the Fraudulent Arbitration Award.</u>

Preemption of the remaining claim cannot be based on an Arbitration that were not based on any claims brought by the Plaintiff and did not address any of the grievances or damages Defendants imposed on the Plaintiff. The Supreme Court finds preemption of state law claims only when the claim is dependent on interpretation of a Collective Bargaining Agreement.[76] Consequently, since no Collective Bargaining Agreement is at issue in the case before the Court, then there is no preemption of the state law claims brought against the Defendants.

**F. Plaintiff Has Satisfied the "Fair Notice" Pleading Requirements Pursuant to Federal Rule of Civil Procedure 8(a).**

<u>Federal Rule of Civil Procedure 8(a)</u> requires only "a short and plain statement of the claim" showing that the pleader is entitled to relief.[77] As the Supreme Court has emphasized, Rule 8 does not require "heightened fact pleading of specifics," or "detailed factual allegations".[78] Plaintiff has provided an extremely detailed pleading outlining specific violations of the LMRDA by Defendants.[79]

The law clearly states that the Claimant is not required to set out in detail the facts upon which the claim is based, rather the Rules require that the claim simply give the Defendants "fair

---

[76] *Hawaiian Airlines v. Norris*, <u>512 U.S. 246</u> (1994); *Martin v. American Airlines, Inc.*, <u>390 F.3d 601</u> (8th Cir. 2004).
[77] <u>Fed. R. Civ. P. 8(a)</u>.
[78] *Twombly*, <u>550 U.S. at 570</u>; *Iqbal*, <u>129 S. Ct. at 1949</u>.
[79] *Ex. H, Pl's Original Compl.* [*Appendix pgs. 156-157*].

notice."[80] Further, the Court must accept as true the allegations in the complaint and must view the allegations in the light most favorable to the Plaintiff. *Blackburn*, at 931. The allegations in the claim need only give the Defendant fair notice of the nature of the claim and the grounds on which it rests.[81] The rules also dictate that the pleadings be liberally construed "as to substantial justice."[82] Plaintiff has met his burden of providing a detailed factual basis and specific statutory protections along with specific relief.

## IV. CONCLUSION AND PRAYER

In conclusion, Plaintiff clearly plead, and sought protection and relief, pursuant to his rights as a member of a labor organization under the LMRDA. Plaintiff alleged and asserted a detailed factual background demonstrating how Defendants violated his rights. Plaintiff has provided Defendant with fair notice of the allegations and facts of his claims pursuant to Federal Rule of Civil Procedure 8(a) and the local rules of this Court. Plaintiff cited specific clauses under the LMRDA under which their rights are protected, and relief is available. Further, Plaintiff has also demonstrated that Plaintiff has only plead relief sought from this Court in its official capacity, and that sound case law exists to protect his rights. For the reasons state herein, Plaintiff requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Claims for Relief.

---

[80] *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993).
[81] *See, Mahone*, 836 F.2d at 926.
[82] *Id.*

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC


By: /s/ Heather Abreu
    Heather Abreu
    Texas Bar No. 24122577
    Phone: (972) 327-5800
    Email: heather@KDphillipslaw.com

By: /s/ Kerri Phillips
    Kerri Phillips
    Texas Bar No. 24065906
    Phone: (972) 327-5800
    Email: kerri@KDphillipslaw.com

    5700 Tennyson Parkway, Suite 300
    Plano, Texas 75024
    Fax: (940) 400-0089
    For Service of Filings:
    notice@KDphillipslaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF Filing **on this the** 23rd **Day of August 2022.**

William Osborne, Margot Nikitas, Sanford Denison, Michael Rake

        /s/
        Heather Abreu

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | |
| **Plaintiff/Counterclaim Defendant,** | § | |
| | § | |
| **V.** | § | Civil Action No. 4:22-cv-00343-Y |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |
| | § | |
| **Defendants/Counterclaim Plaintiffs.** | § | |

<u>**UNION DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF**
**AND BRIEF IN SUPPORT**</u>

SANFORD R. DENISON
Tex. Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Ave., Suite 550
Dallas, TX 75214

MARGOT A. NIKITAS*
Illinois Bar No. 6309782
General Counsel
Association of Professional
 Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040

WILLIAM W. OSBORNE JR.*
D.C. Bar No. 912089
Osborne Law Offices P.C.
5335 Wisconsin Avenue N.W., Suite 440
Washington, D.C. 20015

*Admitted *Pro Hac Vice*

*Counsel for Defendant Counterclaim Plaintiff*
*Association of Professional Flight Attendants, and*
*Defendants Julie Hedrick and Erik Harris*

Dated: July 21, 2022

EXHIBIT A                                                                                    APPENDIX 1

## I.    <u>INTRODUCTION</u>

Defendants Julie Hedrick, Erik Harris and Defendant/Counterclaim Plaintiff Association of Professional Flight Attendants ("APFA") (collectively, "Union Defendants") by their undersigned counsel, respectfully submit this Motion to Dismiss the claims for relief by Plaintiff Robert (Bob) Ross ("Ross") against them for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, as a matter of law, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").[1]  In support of their Motion, the Union Defendants submit this Memorandum of Law.

## II.    <u>STATEMENT OF THE CASE</u>

Plaintiff Ross, a member and former National President of APFA, has brought this lawsuit against APFA and two of its current officers, National President Julie Hedrick and National Treasurer Erik Harris, in an attempt to vacate and annul the arbitration decision and order[2], issued against him by Arbitrator Ruben Armendariz ("Arbitrator's Decision and Order"). The facts of the case are plain from Ross's Complaint and attached Arbitrator's Decision and Order:

Based upon internal union charges against Ross filed by two APFA members, Melissa Chinery-Burns and Sandra Lee ("Charging Parties"), under Article VII of the APFA Constitution, reviewed by the APFA Executive Committee and then referred for resolution to Arbitrator Armendariz, pursuant to Article VII of the APFA Constitution, a three-day hearing

---

[1] This motion seeks dismissal of all of Plaintiff Ross's claims against all Defendants herein as asserted in his Complaint (<u>doc.1</u>), leaving pending APFA's Counterclaim against Ross asserted in the Union Defendants' Answer and Counterclaim (<u>doc. 8, at</u> pgs.32-43, PAGE ID 32-43). As individual defendants Julie Hedrick and Erik Harris are not parties to APFA's counterclaim against Ross, upon dismissal of Ross's claims against the Defendants, Hedrick and Harris should be dismissed as parties to this action.

[2] Attached as Exhibit C to the Complaint (<u>doc.1-3</u>, PAGE ID 35-51).

1

was held on the record on June 16 and November 17-18, 2021. The issues as presented to the Arbitrator were whether Ross, when acting as the APFA National President, violated the APFA Constitution[3] and Policy Manual by engaging "in malfeasance, fraud [and] misappropriation of funds" during his term of office as President" and whether any violations of the APFA Constitution and Policy Manual were "willful." Arbitrator's Decision and Order at 2.

During the three-day hearing, the Charging Parties called five (5) witnesses to testify in support of their charges against Ross and Ross called three (3) witnesses in his defense. Arbitrator's Decision and Order at 2. Following the close of the hearing and the filing of briefs by the parties, the Arbitrator issued his decision on March 19, 2022. *Id.*

The Arbitrator concluded that Ross had "*intentionally* and *willfully* ignored the APFA Policy Manual and thus has violated his fiduciary duty as entrusted by the APFA membership." Arbitrator's Decision and Order at 22 (emphasis in original). He further observed that "Ross's testimony was inconsistent and not forthright," that Ross "should be prohibited from serving in any official position for life within the APFA organization," and that he be required to resign from any positions within APFA that he currently held. Arbitrator's Decision and Order at 23-24.

As further remedies, the Arbitrator ordered that APFA assign an auditor to review Ross's expenses as submitted to APFA including credit card, rental car, and mileage; that Ross repay APFA for any inappropriate expenses he had submitted as determined by the auditor; that Ross repay APFA for additional specific amounts for erroneous vacation and apartment leasing; and that he repay APFA for both the auditor's fees and the Arbitrator's fee. Arbitrator's Decision and Order at 24. The Arbitrator has retained jurisdiction over compliance with the remedial issues in the case. *Id.*

---

[3] The relevant provisions of the APFA Constitution and Policy Manual are restated in the Arbitrator's Decision and Order at 4-7.

EXHIBIT A                    APPENDIX 3

Plaintiff Ross then filed this lawsuit against APFA and its National President and National Treasurer—*none* of whom were parties to the Ross arbitration proceeding. The Complaint asserts federal subject matter jurisdiction to support Ross's claims: diversity of citizenship, Section 102 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §402, and the Fair Credit and Reporting Act, 15 U.S.C. §1681. Complaint, paras. 1-2, 8-10.

Plaintiff Ross's specific claims for relief against the Union Defendants are:

1. To vacate the Arbitrator's Decision and Order as purportedly violative of the Federal Arbitration Act, Complaint paras. 39-42;
2. To vacate the Arbitrator's Decision and Order as purportedly violative of LMRDA Section 101(a)(5), Complaint paras. 57-50;
3. Alleged violations of the APFA Constitution, Complaint, paras. 60-66;
4. Alleged breach of Ross's employment contract, Complaint, paras. 69-77; and
5. Other allegations: alleged violation of the Fair Credit Reporting Act, Complaint, paras. 67-69; defamation, intentional infliction of emotional harm, breach of fiduciary duty. Complaint, paras. 85-89.

In its answer to the Complaint, APFA filed a Counterclaim[4] against Ross for enforcement of the Arbitrator's Decision and Order and for breach of Ross's fiduciary duties as APFA National President as determined by the Arbitrator in his Decision and Order.[5]

As we now show, Ross's claims for relief should all be dismissed. Under well settled precedent, there is *no* subject matter jurisdiction for Ross's claims under either the Section 101(a)(5) of the LMRDA or the Fair Credit Reporting Act. Moreover, *none* of the allegations in the Complaint asserts a claim upon which relief can be granted again as a matter of law. Dismissal of Ross's baseless claims against the Union Defendants will leave APFA's Counterclaim against Ross for enforcement of the Arbitrator's Decision and Order and breach of

---

[4] Doc. 8, at pgs.32-43, PAGE ID 32-43.

[5] See Exhibit C to the Complaint (doc.1-3, PAGE ID 35-51).

EXHIBIT A                                                              APPENDIX 4

fiduciary duty to be resolved by the Court.

## III.   **STANDARD OF REVIEW**

FRCP 12(b)(1) requires dismissal of any claim over which federal courts lack subject matter jurisdiction. If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FRCP 12(h)(3). A court may find subject matter jurisdiction is lacking from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*per curiam*).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citation omitted). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (*per curiam*)).

With regard to dismissal under Rule 12)b)(6), this Court recently summarized the relevant precedents in *Oliver v. Univ. of Texas Sw. Med Sch.*, 2019 U.S. Dist. LEXIS 21289, 2019 WL 536276 at *16-17 (2019) (J. Boyle):

> In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve **[*17]** this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

In addition, the court may consider documents attached to the complaint in considering a motion under Rule 12(b)(6) if they are referred to in the plaintiffs' complaint and are central to the plaintiff's claims. *Scanlan v. Tex. A&M Univ.*, 343 F3d 553, 536, (5ᵗʰ Cir. 2003).

## IV. ARGUMENT

### A. The Arbitrator's Decision Is Not Subject to Judicial Review Under LMRDA Section 101(a)(5)

The entire jurisdictional basis for Ross's allegation that the Arbitrator's Decision and Order should be vacated is LMRDA Section 101(a)(5) (Complaint, paras. 57-59) an allegation that is baseless as a matter of law. To the contrary, it is well settled that LMRDA Section 101(a)(5) provides subject matter jurisdiction for judicial review of internal, *union-conducted* disciplinary proceedings but *not* subject matter jurisdiction for judicial review of other union-related administrative or legal matters such as the third-party arbitration award in this case. *Breininger v. Sheet Metal Workers Local 6*, 493 U.S. 67, 92-94 (1989); *Guidry v. ;Operating Engineers Local 406*, 907 F.2d 1491, 1492 (5th Cir. 1990); *Webster v. United Auto Workers Local 5*, 394 F. 3d 436, 441 (6th Cir. 2005); *Hackenburg v. Boilermakers*, 694 F. 2d 1237, 1239 (10th Cir. 1982); *Bass v. Int'l Bro. of Boilermakers*, 630 F. 2d 1058, 1066 (6th Cir. 1980); *Kirk v. Transport Workers Union*, 934 F. Supp. 775, 785 (S.D. Tex. 1995); *Ryals v. ILA Local 1771*, 33 F. Supp. 3d 634, 639-40 (D.S.C. 2014).

In other words, because there is no subject matter jurisdiction under or LMRDA Section 101(a)(5), the only jurisdictional bases cited in the Complaint as support for a challenge to the

Arbitrator's Decision and Order, any and all claims in the Complaint for vacation of the Arbitrator's Decision and Order must be dismissed for lack of jurisdiction. *See* FRCP 12(b)(1).[6]

### B. Plaintiff's Asserted Basis for Judicial Review of the Arbitrator's Decision and Order Violates Settled Federal Labor Law Principles

Even assuming, for purposes of argument *only*, that Ross has asserted a viable jurisdictional basis in the Complaint to support his challenge to the Arbitrator's Decision and Order, the Complaint fails to state a claim for which relief can be granted because, on its face, that claim *violates* the federal labor law axiom requiring judicial deferral to final and binding labor arbitration decisions. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597-99 (1960); *Delek Ref. Ltd. v. Local 202 Steelworkers*, 891 F. 3d 566, 570 (5th Cir. 2018); *Weber Aircraft v . IBT  Local 767*, 253 F.3d 821, 824 (5th Cir. 2001); *Refresco Bevs.v. Teamsters Local 997*, 2021 U.S. Dist. LEXIS 238421, 2021 WL 5908988 at *7-8 (N.D. Tex. 2021) (J. O'Connor); *Teamsters Gen. Drivers Warehousemen v. Greif Packaging, LLC*, 2010 WL 1417889, at *7 (S.D. Tex. Apr. 7, 2010) (J. Atlas); *Allied Waste Systems Inc. v. Teamsters Local 767*, 2007 U.S. Dist. LEXIS 43035, 2007 WL 1703634 (N.D. Tex. 2007) (J. Means).

The Fifth Circuit recently summarized the restrictive standard of judicial review of labor arbitration decisions in its unpublished decision in *Ball Metal Container Corp. v. United Auto Workers Local 129*, 2022 U.S. App. LEXIS 33214, 2022 WL 340573 at *7-8 (5th Cir. 2022):

> "Judicial review of arbitration awards is severely limited." "The standard for this review is 'among the narrowest known to the law.'" When an arbitration award

---

[6] Although Ross *does not* assert the Federal Arbitration Act ("FAA") as a basis for subject matter jurisdiction for judicial review and vacation of the Arbitrator's Decision and Order (Complaint, Paragraph 2-3, 7-8), the Complaint does allege that the Decision and Order violates the FAA. Complaint, paras. 39-42. Any assertion of subject matter jurisdiction under the FAA would be erroneous as a matter of law.  Precedent is well settled to the contrary: the FAA does not provide subject matter jurisdiction to review arbitration awards.  *Smith v. Rush Retail Ctr., Inc.,* 291 F. Supp. 2d 479, 487 (W.D. Tex. 2003) (citing authorities), *aff'd* 360 F. 3d 504, 505 (5th Cir. 2004); *Mellado v. MBNA Am. Bank,* 2004 U.S. Dist. LEXIS 25471, 2004 WL 2937224 at *3-4 (N.D. Tex. 2004) (J. Lynn); *Judd v. Texakoma Fin., Inc.,* No. 3:96-CV-26 04-P, 1996 WL 734940, at *4 (N.D. Tex. Dec. 11, 1996) (J. Solis).

settles a labor dispute, judicial review is "particularly constrained." "The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations," which "reflect a decided preference for private settlement of labor disputes without the intervention of government."

Under this unusually deferential standard of review, "courts are not authorized to reconsider the merits of an award." "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits. Instead of assessing how well the arbitrator interpreted the contract, [*8] we ask if the arbitrator acted within the contract's bounds. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."

To determine whether arbitrators have overstepped their authority, "courts apply the 'essence test,' evaluating whether the arbitration award 'ha[s] a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.'" "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." In these situations, "an arbitrator is no longer applying or interpreting the agreement but rewriting it," and we will vacate the award. "Where 'there is ambiguity as to whether an arbitrator is acting within the scope of his authority,'" however, "'that ambiguity must be resolved in favor of the arbitrator.'" (Footnotes and citations omitted).

*See also Allied Waste Systems Inc. v. Teamsters Local 767*, 2007 U.S. Dist. LEXIS 43035, 2007 WL 1703634 at *19-21 (N.D. Tex. 2007) (J. Means) (awarding attorneys fees as remedy for baseless attempt to vacate arbitration award).[7]

Nowhere in the Complaint does Ross allege, much less assert any specific citation for any contention, that the Arbitrator exceeded his authority or violated the express terms of his jurisdiction under the governing provisions of Article VII of the APFA Constitution. Indeed, his objections are entirely limited to the merits of the charges and to the procedural conduct of the hearing. Complaint, paras. 39-42. Nor did Ross make any such jurisdictional argument to the

---

[7] The same "exceedingly deferential" standard of review of arbitration awards governs cases which, unlike the instant case, are subject to judicial review under the FAA. *Lalo LLC v. Hawk Apparel, Inc.*, 2022 U.S. Dist. LEXIS 72218, 2022 WL 1173801 at *5-7 (N.D. Tex. 2022) (J. Lindsay).

7

Arbitrator during or after the hearing. Arbitrator's Decision and Order at 8-13. Ross's attempt to persuade the Court to vacate the Arbitrator's Decision and Order thus fails on this independent legal basis.

As the Tenth Circuit Court of Appeals put it well, "[b]ecause arbitration presents such a `narrow standard of review,' [28 U.S.C.] Section 1927 sanctions are warranted if the arguments presented are `completely meritless'" [citation omitted] [and] to underscore the point that unjustified, protracted attempts to vacate arbitration awards . . . will not be tolerated [one] does so at the risk of being sanctioned." *DMA Inter., Inc. v. Qwest Comm. Inter., Inc.*, 585 F3d 1341,1345-46 (10th Cir. 2009). [8]

C. **Plaintiff's Claims for Violation of the APFA Constitution and Breach of Fiduciary Duty Are Without Merit**

The breach of the APFA Constitution and breach of fiduciary duty allegations (which the Union Defendants assume refers to an alleged violation of LMRDA Section 501, 29 U.S.C. §501) are likewise subject to dismissal again as a matter of law.

First, Ross has neglected to assert *any* specific jurisdictional basis for either claim.

Second, relief is precluded, again as a matter of law, because, under the APFA Constitution and settled precedent, Ross was legally *obligated* to exhaust the mandatory internal union remedies "prior to taking any legal action," *Clayton* v. *International Union*, 451 U.S. 679, 692 (1981); *Hayes* v. *Brotherhood of Ry. & Airline Clerks*, 727 F.2d 1383, 1385-86 (5th Cir.), *cert. denied* 469 U.S. 953 (1984). In other words, if he had any valid claims against National President Hedrick or National Treasurer Harris, he could have brought them internally under

---

[8] Ross's attempt to vacate the Arbitrator's Decision and Order likewise violates the settled doctrine of judicial noninterference in internal union governance. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953); *Carr v. ALPA*, 866 F.3d 597, 602-03 and n.16 (5th Cir. 2017); *O'Neill v. Air Line Pilots Ass'n*, 939 F.2d 1199, 1206 (5th Cir. 1991); *Newell v. IBEW,* 789 F.2d 1186, 1189 (5th Cir. 1986).

Article VII of the APFA Constitution, but he did no such thing and his failure to do so is grounds for dismissal of his claims under FRCP12(b)(6).[9]

Third, before filing a breach of fiduciary duty claim (which we assume is intended as an LMRDA Section 501(a) claim), Ross was required by Section 501(b) to make a demand for remedial action by the APFA. *Adams-Lundy v. Ass'n of Prof. Flight Attendants*, 844 F. 2d 245, 248-49 (5th Cir. 1988); *Van Elder v. Amalgamated Transit Union Local 1338*, 2014 U.S. Dist. Lexis 63202, 2014 WL 1808079 at *10-11 (N.D. Tex. 2014) (J. Horan). Once again, Ross did not even attempt to comply with this mandatory statutory prerequisite and his breach of fiduciary duty claim fails to state a claim for relief on its face.

### D. Ross's Remaining Claims Are All Preempted

Finally, the remaining allegations in Ross's Complaint fail, again as a matter of law, on preemption grounds: the underlying allegations are all "inextricably intertwined" with Ross's challenge to the merits of the Arbitrator's Decision and Order and are therefore preempted. *Woodcock v. Marathon Petroleum*, 2019 U.S. Dist. LEXIS 66447, 2019 WL167618187 at *5-6 (S.D. Tex. 2019) ("Preemption occurs when a decision on the [nonlabor] claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas v. LTV Corp.,* 39 F. 3d 611, 615-16 (5th Cir. 1994). *See also Blanks v UAW,* 837 F. Supp. 2d 609, 616 (N.D, Tex. 2011), (J. Means), *aff'd* 464 Fed. Appx. 284 (5th Cir. 2012).[10]

---

[9] Likewise, as a matter of law, any and all claims by Ross against National President Hedrick and National Treasurer Harris are void on their face. As union officers they are not proper Defendants in any case. *Atkinson v. Sinclair Refining Co*., 370 U.S. 238, 247-49 (1962); *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 406-07 (1981); *Universal Communications Corp. v. Burns*, 499 F.2d 691, 693-94 (5th Cir. 1971).

[10] Ross's additional claims are "inextricably intertwined" with the arbitration proceedings in this case: his claim against APFA for alleged violation of the Fair Credit Reporting Act (Complaint,

Here, the governing "labor contract" under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. §185(a), is the APFA Constitution, not a collective bargaining agreement. *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 622 (1981); *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 99, 101 (1991); *Hampton v. Int'l Longshoreman's Ass'n*, 2017 U.S. Dist. LEXIS 218154 at *5-6 (S.D. Tex. 2007). But the legal principle of federal preemption and the outcome are the same.

## V. CONCLUSION

For the reasons stated, the Union Defendants respectfully submit that all of Ross's claims for relief in the Complaint must be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) and also for their failure to state a claim for relief as a matter of law under FRCP 12(b)(6), leaving APFA's Counterclaim for enforcement of the Arbitrator's Decision and Order and for Ross's breach of fiduciary duty as an APFA officer to be resolved by the Court. Individual defendants Julie Hedrick and Erik Harris, upon dismissal of all claims against them by Plaintiff Ross, should also be dismissed as parties to this action as they are not parties to the remaining counterclaim by APFA against Ross.

---

paras. 67-69) relates directly to, and seeks to challenge and interfere with APFA's efforts to collect moneys owed by Ross under the Arbitrator's Decision and Order and invades the Arbitrator's continuing jurisdiction over the remedial issues in this case. Arbitrator's Decision and Order at 23. His claim of intentional infliction of emotional distress (Complaint, paras. 81-84) is expressly based on presentations made to the Arbitrator during the arbitration hearing and seeks to collaterally attack the Arbitrator's rulings. His defamation and interference with contract allegations (Complaint, paras 85-89) likewise directly relate to, and implicitly attempt to relitigate the merits of the Arbitrator's Decision and Order. *Id*. Finally, although Ross's allegations against Defendant Diversified Credit Systems ("Diversified") (Complaint, paras. 4, 78-80) are not addressed to the Union Defendants, they are also directed to interfere with efforts to enforce the Arbitrator's remedy and violate with the Arbitrator's continuing remedial jurisdiction, and are therefore also preempted.

.

EXHIBIT A                                                    APPENDIX 11

Date: July 21, 2022

Respectfully Submitted

 /s/ Sanford R. Denison

SANFORD R. DENISON
Tex. Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Ave., Suite 550
Dallas, TX 75214
Tel.: (214) 637-0750
Fax.: (214) 637-0730
Email: denison@baabdenison.com

MARGOT A. NIKITAS*
Illinois Bar No. 6309782
General Counsel
Association of Professional
 Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040
Tel. (817) 540-0108 ext. 8108
Fax. (817) 355-1919
Email: MNikitas@apfa.org

WILLIAM W. OSBORNE JR.*
D.C. Bar No. 912089
Osborne Law Offices P.C.
5335 Wisconsin Avenue N.W., Suite 440
Washington, D.C. 20015
Tel.: (202) 243-3200
Fax: (202) 686-2977
Email: b.osborne@osbornelaw.com

*Counsel for Defendant Counterclaim Plaintiff
Association of Professional Flight Attendants, and
Defendants Julie Hedrick and Erik Harris*

*Admitted *Pro Hac Vice*

EXHIBIT A                                        APPENDIX 12

## CERTIFICATE OF SERVICE

I certify that on this _21st day of July 2022 a true and correct copy of the foregoing document was served on the below listed counsel of record for Plaintiff/Counterclaim Defendant Ross by a means permitted by Rule 5(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.").

KERRI PHILLIPS
HEATHER ABREU
K.D. Phillips Law Firm, PLLC
5700 Tennyson Parkway, Suite 300
Plano, Texas 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
Email: Heather@KDphillipslaw.com

Date: July 21, 2022                    _/s/ Sanford R. Denison_____
                                        SANFORD R. DENISON

EXHIBIT A                                                    APPENDIX 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT.WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **MCGAUGHEY, REBER AND** | § | |
| **ASSOCIATES, INC., ASSOCIATION** | § | |
| **OF PROFESSIONAL FLIGHT** | § | **Case No.** |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **AND ERIK HARRIS** | § | |
| **Defendants.** | § | |

### AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being by me first duly sworn, did state:

1.    "I am employed as a Flight Attendant working with American Airlines, Inc. and I served on the Board of Directors for the Association of Professional Flight Attendants, between April 2011 to January 2021.  I am of sound mind and body to make this affidavit and have personal knowledge of the following facts:

    a.  I attended the Board of Director's meetings on October 27, 2020, and October 28, 2020, in which evidence from an accounting firm hired by APFA was presented off the record.  Erik Harris presented spreadsheets he stated were the results of an accounting review that showed Robert "Bob" Ross owed for an overpayment made under his Transition Agreement in the amount of $5,436.47.

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b. I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c. I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1. This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d. I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross. At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committed voting on whether the charges were timely, specific, and valid. The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

FURTHER AFFIANT SAYETH NOT.

_____
**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this 18 day of April 2022.

_____
Notary Public, State of Missouri

**Exhibit B**

3

**From:** Erik Harris <eharris​███████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents​██████>; Executive Committee <ExecutiveCommittee​███████g>
**Cc:** Margot Nikitas <MNikitas​███████>
**Subject:** Bob Ross' Overpayment

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

# Erik Harris *Pronouns: he, him, his*

National Treasurer
Association of Professional Flight Attendants
███████████████████████

*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

## Exhibit B-1



**Association of Professional Flight Attendants**

*Representing the Flight Attendants of American Airlines*

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA 95762

**RE: Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris@apfa.org with any questions or concerns. Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC: APFA Board of Directors
    APFA Executive Committee
    Margot Nikitas, General Counsel

**Exhibit B-1**



**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * Maximum flight attendant pay | 60.13 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 71.38 | 116 hours | 8,280.08 | |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |

| | | | | |
|---|---|---|---|---|
| ** Maximum flight attendant pay | 61.33 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 72.58 | 116 hours | 8,419.28 | |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |

| | |
|---|---|
| 101,031.36 | Annual salary |
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** Maximum flight attendant pay | 64.96 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 76.21 | 116 hours | 8,840.36 | |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |

| | |
|---|---|
| 106,084.32 | Annual salary |
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** Maximum flight attendant pay | 66.26 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 77.51 | 116 hours | 8,991.16 | |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |

| | |
|---|---|
| 107,893.92 | Annual salary |
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
**** Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

**National Officer:** Bob Ross

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | 300.00 | (paid 7/6/17) |
| Grand slam (Additional $50 grand slam paid on 2/15/18 salary check) | | | | 150.00 | (paid 1/25/18) |
| 2071 Profit Sharing | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | |
| Sick Pay - 2018 | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | |
| Profit sharing 2018 | | | | 1,403.59 | (paid 3/8/19) |

**Exhibit B-1**

| National Officer: | Bob Ross | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| **Vacation Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) |
| | | | | Overpayment | $ - | $ - |
| **Sick Pay - 2017** | | | | | | |
| Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) |
| | | | | Overpayment | $ - | $ - |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error) | | | | Overpayment | $ 968.76 | $ 968.76 |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) |
| Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | |
| | | | | Overpayment | $ 633.42 | $ 633.42 |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | |
| | | | | Overpayment | $ 1,130.42 | $ 1,130.42 |
| **Sick Pay - 2018** | | | | | | |
| Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | |
| | | | | Overpayment | $ 467.76 | $ 467.76 |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | |
| Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) |
| Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | |
| | | | | Overpayment | $ 1,364.30 | $ 1,364.30 |

**Exhibit B-1**

NO. JP03-22-DC00017757

NO. _____

| | | |
|---|---|---|
| **DIVERSIFIED CREDIT SYSTEMS,** | § | IN THE JUSTICE OF THE PEACE |
| **ASSIGNEE FOR THE "ASSOCIATION** | § | COURT |
| **OF PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS"** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | NO. 3 |
| | § | |
| **ROBERT (BOB) ROSS** | § | |
| **Defendant.** | § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Diversified Credit Systems, Assignee of a contract (Agreement) from the Association of Professional Flight Attendants, hereinafter called Plaintiff, complaining of and about Robert (Bob) Ross, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2.    Plaintiff, Diversified Credit Systems (a D/B/A of McGaughey, Reber and Associates, Inc.), Assignee for the "Association of Professional Flight Attendants", is a business entity operating in the State of Texas and whose address is P.O. Box 3424, Longview, TX 75606.

3.    Diversified Credit Systems, Assignee of the Association of Professional Flight

EXHIBIT C                                    APPENDIX 24