IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FT. WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **V** | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, MCGAUGHEY,** | § | |
| **REBER AND ASSOCIATES, INC.,** | § | |
| **JULIE HEDRICK, ERIK HARRIS** | § | |
| | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |

**INDEX TO APPENDIX TO PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

| Tab  Description | Appendix Pages |
|---|---|
| 1.  **04/20/2022 and 10/22/2020 Email from O'Neil to Harris and Harris to Nikitas and Officers containing Full Review and Confidential Memo**<br>*(prepared by Woods Stephens & O'Neil, L.L.P)* | **001-015** |
| 2.  **11/02/2021 Subpoena**<br>*(subpoenas for 11/17-18/2021 Ross Disciplinary Hearing)* | **016-019** |
| 3.  **01/14/2022 Plaintiff's Original Petition**<br>*(Tarrant County Justice Court, Precinct Three*<br>*Cause No. JP03-22-D C00017757)* | **020-030** |
| 4.  **04/18/2022 Affidavit of Nena Martin and communication from National Treasurer, Erik Harris, to the entire Board and Executive Committee** | **031-039** |
| Tab  Description | Appendix Pages |

| | |
|---|---|
| **5. 06/18/2014 APFA Constitution**<br>(Article VII – governing *hearings and disciplinary procedures*) | **040-054** |
| **6. AAA Recommendation "Challenges to an Arbitration Award"**<br>*(published by The American Arbitration Association)* | **055** |
| **7. 06/21/2021 – 11-17-2021 – 11-18-2021 Ross Disciplinary Hearing Transcripts**<br>*(Transcript Excerpt Vol. 1, 2, 3)* | **056-075** |
| **8. 07/2019 -01/2020 Disparaging Emails and Social Media Posts**<br>*(Chinery-Lee criticism of Ross to APFA members)* | **076-100** |
| **9. 11/2020 2cd Set of Charges Against Ross**<br>*(Chinery and Lee Recommendation re Charges)* | **101-117** |
| **10. 12/1/2020 APFA Executive Committee Resolutions Recommending Disciplinary Proceedings against Ross and Vargas** | **118-123** |

# APPENDIX

## Margot Nikitas

| | |
|---|---|
| **From:** | Erik Harris |
| **Sent:** | Wednesday, April 20, 2022 6:19 PM |
| **To:** | Margot Nikitas; Officers |
| **Subject:** | FW: Memo for the Board and EC |
| **Attachments:** | APFA - Board and EC memo.pdf; APFA - Vargas schedules A - C.pdf; APFA - Dunaway schedules A - C.pdf; APFA - Martin schedules A - C.pdf; APFA - Ross schedules A - C.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

--

# Erik Harris *Pronouns:* *he, him, his*
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Hal O'Neil <oneil@ ▮▮▮▮▮▮▮▮
**Date:** Thursday, October 22, 2020 at 12:11 PM
**To:** Erik Harris <eharris( ▮▮▮▮▮▮▮
**Cc:** Pam Bush <pbush@ ▮▮▮▮▮▮▮▮▮
**Subject:** Memo for the Board and EC

Erik.....attached is the Board and EC Memo for your review.  Also are the attached schedules for each officer.  Please get back to me if this memo looks OK.

Thanks, Hal

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 1**

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

2

APPENDIX 2

# Wood, Stephens & O'Neil, L.L.P.
## Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX  76116
Tele. 817-377-1700
Fax 817-377-1870

---

## CONFIDENTIAL MEMORANDUM

MEMO TO:        APFA Board of Directors and the Executive Committee

FROM:           Hal O'Neil, CPA, Pam Bush
SUBJECT:        Review of officer disbursements and the Bob Ross transition agreement
DATE:           October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement.  This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements.  Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual.  Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer.  These overpayment schedules for the other officers were previously provided to the Board of Directors.  Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement.  This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

---

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 3**



## Marcy Dunaway - National Secretary Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 4

| National Officer: | Marcy Dunaway | | | | | |
|---|---|---|---|---|---|---|
| | | Annual | Daily amount | Eligible | | |
| | | Salary | (divide by 365) | Days to pay | Payment | |
| **Profit Sharing - 2016** | | | | | | |
| | | | | | 2,424.86 | (paid 3/10/17) |
| **Vacation Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 14 | 3,507.70 | (paid 3/31/2017) |
| **Sick Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 12 | 3,006.60 | (paid 3/31/2017) |
| **Retro** | | | | | 831.60 | (paid 6/1/17) |
| **Triple Grand Slam** | | | | | 300.00 | (paid 7/6/17) |
| **Grand Slam** | | | | | 150.00 | (paid 1/25/18) |
| **Profit Sharing - 2018** | | | | | 2,270.35 | (paid 3/9/18) |
| **Vacation Pay - 2018** | | | | | | |
| | | $ 112,659.36 | 308.66 | 14 | 4,321.24 | (paid 3/29/2018) |
| **Sick Pay - 2018** | | | | | | |
| | | $ 112,659.36 | 308.66 | 12 | 3,703.92 | (paid 3/29/2018) |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | 513.10 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | 439.80 | |
| | | | | | 952.90 | (paid 3/29/2018) |
| **End of Term Payout - 2018** | | | | | | |
| | | $ 110,926.06 | 303.91 | 60 | 18,234.60 | (paid 6/29/2018) |
| **Profit Sharing - 2018** | | | | | 1,199.47 | (paid 3/8/19) |

CONFIDENTIAL | SUBJECT TO PROTECTIVE ORDER

APPENDIX 5

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Marcy Dunaway** | | | **Overpayment Calculation** | | | | | |
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 112,659.36 | 308.66 | 14 | $ 4,321.24 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | | |
| | | | | | Overpayment | $ 575.26 | $ 575.26 | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 112,659.36 | 308.66 | 12 | $ 3,703.92 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | | |
| | | | | | Overpayment | $ 493.08 | $ 493.08 | | |
| **End of term payout - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 110,926.06 | 303.91 | 60 | $ 18,234.60 | *(paid 6/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.60 | 267.57 | 60 | $ 16,054.20 | | | |
| | | | | | Overpayment | $ 2,180.40 | $ 2,180.40 | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 513.10 | $ 513.10 | *(paid 3/29/2018)* | |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 439.80 | $ 439.80 | *(paid 3/29/2018)* | |
| | | | | | Overpayment subtotal | | $ 4,201.64 | ** | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 58.82 | *(based on 1.4%)* | |
| | **Total overpayment - due to APFA** | | | | | | $ 4,260.46 | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 6



**Nena Martin - National Vice President Pay**
**National President Pay (3/2/18)**

110.5 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | |
|---|---|---|
| * Maximum flight attendant pay | 60.13 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 71.38 | 110.5 hours   7,887.49 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,943.75 |
|---|---|

| | | |
|---|---|---|
| ** Maximum flight attendant pay | 61.33 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 72.58 | 110.5 hours   8,020.09 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,010.05 |
|---|---|

| 96,241.08 | Annual salary |
|---|---|
| 263.67 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| *** Maximum flight attendant pay | 64.96 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 76.21 | 110.5 hours   8,421.21 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,210.60 |
|---|---|

| 101,054.46 | Annual salary |
|---|---|
| 276.86 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| **** Maximum flight attendant pay | 66.26 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 77.51 | 110.5 hours   8,564.86 |

| Bi-monthly pay - 1/1/18 - 3/1/18 | 4,282.43 |
|---|---|

| 102,778.26 | Annual salary |
|---|---|
| 281.58 | Daily rate for sick and vacation |

Stepped in as President on 3/2/18

| | | |
|---|---|---|
| **** Maximum flight attendant pay | 66.26 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 77.51 | 116 hours   8,991.16 |

| Bi-monthly pay - 3/2/18 - 3/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 3/31/18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 7

| National Officer: | Nena Martin | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | |
| | | | | | | | |
| Profit Sharing - 2016 | | | | | | 2,541.90 | *(paid 3/10/17)* |
| | | | | | | | |
| Vacation Pay - 2017 | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 14 | 3,691.38 | *(paid 3/31/2017)* |
| | | | | | | | |
| Sick Pay - 2017 | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 12 | 3,164.04 | *(paid 3/31/2017)* |
| | | | | | | | |
| Retro Pay | | | | | | 875.16 | *(paid 6/1/17)* |
| | | | | | | | |
| Triple Play Grand Slam | | | | | | 300.00 | *(paid 7/6/17)* |
| | | | | | | | |
| | | | | | | | |
| Grand Slam | | | | | | 150.00 | *(paid 1/25/18)* |
| | | | | | | | |
| Profit Sharing - 2017 | | | | | | 2,373.70 | *(paid 3/9/18)* |
| | | | | | | | |
| | | | | | | | |
| Vacation Pay - 2018 | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 14 | 5,057.08 | *(paid 3/29/2018)* |
| | | | | | | | |
| Sick Pay - 2018 | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 12 | 4,334.64 | *(paid 3/29/2018)* |
| | | | | | | | |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | | | 520.94 | |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | | | 439.80 | |
| | | | | | | 960.74 | *(paid 3/29/18)* |
| | | | | | | | |
| End of Term Payout - 2018 | | | | | | | |
| | | $ | 118,046.02 | 323.41 | 60 | 19,404.60 | *(paid 6/29/2018)* |
| | | | | | | | |
| Profit Sharing - 2018 | | | | | | 1,279.64 | *(paid 3/8/19)* |
| | | | | | | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 8

| | | | C | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Nena Martin** | | | **Overpayment Calculation** | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | | |
| **Vacation Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 131,844.90 | 361.22 | 14 | $ 5,057.08 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 101,510.74 | 278.11 | 14 | $ 3,893.54 | | | | |
| | | | | | Overpayment | $ 1,163.54 | | $ 1,163.54 | | |
| | | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 131,844.90 | 361.22 | 12 | $ 4,334.64 | *(paid 3/29/2018)* | | | |
| | Correct calculation amount | | $ 101,510.74 | 278.11 | 12 | $ 3,337.32 | | | | |
| | | | | | Overpayment | $ 997.32 | | $ 997.32 | | |
| | | | | | | | | | | |
| **End of term payout - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 323.41 | 60 | $ 19,404.60 | *(paid 6/29/2018)* | | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 60 | $ 17,736.00 | | | | |
| | | | | | Overpayment | $ 1,668.60 | | $ 1,668.60 | | |
| | | | | | | | | | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 520.94 | | $ 520.94 | *(paid 3/29/2018)* | |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 439.80 | | $ 439.80 | *(paid 3/29/2018)* | |
| | | | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 4,790.20 | ** | | |
| | | | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 67.06 | *(based on 1.4%)* | | |
| | | | | | | | | | | |
| | | **Total overpayment - due to APFA** | | | | | $ 4,857.26 | | | |
| | | | | | | | | | | |
| **(a) - included union pay (MEA/SAF)** | | | | | | | | | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 9**



A

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | |
|---|---|---|
| * Maximum flight attendant pay | 60.13 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 71.38 | 116 hours  8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| | | |
|---|---|---|
| ** Maximum flight attendant pay | 61.33 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 72.58 | 116 hours  8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| *** Maximum flight attendant pay | 64.96 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 76.21 | 116 hours  8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| **** Maximum flight attendant pay | 66.26 | |
| Purser Pay | 7.50 | |
| International pay | 3.75 | |
| | 77.51 | 116 hours  8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 7/31/18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 10

**National Officer:** Bob Ross

| | | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|---|---|
| **Profit Sharing - 2016** | | | | | | 2,652.22 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | | | |
| | | $ | 101,031.36 | 276.80 | 14 | 3,875.20 | *(paid 3/31/17)* |
| **Sick Pay - 2017** | | | | | | | |
| | | $ | 101,031.36 | 276.80 | 12 | 3,321.60 | *(paid 3/31/17)* |
| **Retro - Wage Arbitration Award 1.6%** | | | | | | 918.72 | *(paid 6/1/17)* |
| **Triple Play Grand Slam** | | | | | | 300.00 | *(paid 7/6/17)* |
| **Grand slam** | | | | | | 150.00 | *(paid 1/25/18)* |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | | |
| **2017 Profit Sharing** | | | | | | 2,458.19 | *(paid 3/9/18)* |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | | 968.76 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | |
| | | $ | 114,632.67 | 314.06 | 17 | 5,339.02 | *(paid 3/29/2018)* |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | |
| | | $ | 122,121.70 | 334.58 | 29 | 9,702.82 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | | | |
| **Sick Pay - 2018** | | | | | | | |
| | | $ | 122,121.69 | 334.58 | 12 | 4,014.96 | *(paid 3/29/2018)* |
| **End of Term Payout - 2017 (January 1 - December 31, 2017)** | | | | | | | |
| | | $ | 118,046.02 | 334.58 | 35 | 11,710.30 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | |
| | | $ | 118,046.02 | 334.58 | 20.44 | 6,838.82 | *(paid 3/29/2018)* |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | | | |
| **Profit sharing 2018** | | | | | | 1,403.99 | *(paid 3/8/19)* |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 11**

| | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | **Overpayment Calculation** | | | | | |
| | | | | | | | | |
| | | Annual | Daily amount | Eligible | | | | |
| | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2017** | | | | | | | | |
| | Original amount | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) | | |
| | | | | Overpayment | $ - | | $ - | |
| | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | |
| | Original amount | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) | | |
| | | | | Overpayment | $ - | | $ - | |
| | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 968.76 | | $ 968.76 | |
| | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | |
| | Original amount - paid in error (a) | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | | |
| | | | | Overpayment | $ 633.42 | | $ 633.42 | |
| | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | |
| | Original amount - paid in error (a) | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | | |
| | | | | Overpayment | $ 1,130.42 | | $ 1,130.42 | |
| | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | | |
| | | | | Overpayment | $ 467.76 | | $ 467.76 | |
| | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | | |
| | | | | Overpayment | $ 1,364.30 | | $ 1,364.30 | |
| | | | | | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | |
| | | | | Overpayment | $ 796.75 | | $ 796.75 | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | Overpayment subtotal | | | $ 5,361.41 | ** |
| | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | | | |
| | | **Total overpayment - due to APFA** | | | | | **$ 5,436.47** | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 12



**Eugenio Vargas - National Treasurer Pay**

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 13

**National Officer:** **Eugenio Vargas**

| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|---|
| **Profit Sharing - 2016** | | | | | 2,435.07 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* |
| **Sick Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* |
| **Retro** | | | | | 831.60 | *(paid 6/1/17)* |
| | | | | | $ 150.00 | *(paid 1/25/18)* |
| **Profit Sharing 2017** | | | | | 2,269.76 | *(paid 3/9/18)* |
| **Vacation Pay - 2018** | | | | | | |
| | | $ 113,021.02 | 309.65 | 14 | 4,335.10 | *(paid 3/29/2018)* |
| **Sick Pay - 2018** | | | | | | |
| | | $ 113,021.02 | 309.65 | 12 | 3,715.80 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | 523.46 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | 448.68 | |
| | | | | | 972.14 | *(paid 3/29/2018)* |
| **End of Term Payout - 2018** | | | | | | |
| | | $ 111,317.70 | 304.98 | 54 | 16,468.92 | *(paid 6/29/2018)* |
| **Profit Sharing - 2018** | | | | | 1,141.03 | *(paid 3/8/19)* |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX 14

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | | **Eugenio Vargas** | | **Overpayment Calculation** | | | | | |
| | | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 113,021.02 | 309.65 | 14 | $ 4,335.10 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | | |
| | | | | | Overpayment | $ 589.12 | $ 589.12 | | |
| | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 113,021.02 | 309.65 | 12 | $ 3,715.80 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | | |
| | | | | | Overpayment | $ 504.96 | $ 504.96 | | |
| | | | | | | | | | |
| **End of term payout - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 111,317.70 | 304.98 | 54 | $ 16,468.92 | *(paid 6/29/2018)* | | |
| | Correct calculation amount | | $ 97,662.60 | 267.57 | 54 | $ 14,448.78 | | | |
| | | | | | Overpayment | $ 2,020.14 | $ 2,020.14 | | |
| | | | | | | | | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 523.46 | $ 523.46 | *(paid 3/29/2018)* | |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 448.68 | $ 448.68 | *(paid 3/29/2018)* | |
| | | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 4,086.36 | ** | |
| | | | | | | | | | |
| | | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 57.21 | *(based on 1.4%)* | |
| | | | | | | | | | |
| | | **Total overpayment - due to APFA** | | | | | $ 4,143.57 | | |
| | | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**APPENDIX 15**

## IN THE MATTER OF THE HEARING

|  |  |  |
|---|---|---|
| MELISSA CHINERY, Member | § § § | BEFORE ARTICLE VII ARBITRATOR |
| and | § | HON. RUBIN ARMENDARIZ, Esq. |
| SANDRA LEE, Member | § § | |
| AND | § § | |
| ROBERT ROSS, Member | § § | |

## SUBPOENA TO APPEAR AND TESTIFY

To:    Josh Black

GREETINGS:

WE COMMAND YOU to appear and testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17-18, 2021 at 9:00 a.m.

Signed: _____
Honorable Rubin Armendariz

Dated: _____ 0/52/2021 _____

Requested by:

Robert Ross

## IN THE MATTER OF THE HEARING

| | § | |
|---|---|---|
| MELISSA CHINERY, Member | § | |
| and | § | BEFORE ARTICLE VII ARBITRATOR |
| SANDRA LEE, Member | § | HON. RUBIN ARMENDARIZ, Esq. |
| | § | |
| AND | § | |
| | § | |
| ROBERT ROSS, Member | § | |
| | § | |

## SUBPOENA TO APPEAR AND TESTIFY

To:   Julie Hedrick

GREETINGS:

WE COMMAND YOU to appear and testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17-18, 2021 at 9:00 a.m.

Signed: _____
Honorable Rubin Armendariz

Dated: 11/04/2021

Requested by:

Robert Ross

## IN THE MATTER OF THE HEARING

| | | |
|---|---|---|
| MELISSA CHINERY, Member | § | |
| and | § | BEFORE ARTICLE VII ARBITRATOR |
| SANDRA LEE, Member | § | HON. RUBIN ARMENDARIZ, Esq. |
| | § | |
| AND | § | |
| | § | |
| ROBERT ROSS, Member | § | |
| | § | |

## SUBPOENA TO APPEAR AND TESTIFY

To:     **Erik Harris     APFA National Treasure**

WE COMMAND THAT YOU: Appear and Testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17, 2021 at 9:00 a.m.

In addition to your appearance, You are to immediately provide and make available to Robert Ross the following documentation:

- All Emails and/or Documents otherwise known as the Amicus Brief, May 12, 2021 (Including ALL Attachments A-I) sent on behalf of the Osborne Law Office/William Osborne to Arbitrator Valverde, in regards to the Arbitration case of Moyer vs 2018 APFA Board of Directors June 1, 2021.
- All Financial documentation relating to the Ross Account in Collections with Diversified Credit and the status of that collections case. Documentation to include but not be limited to:
  - o  All Accrued Sick and Vacation days for Ross from April 1, 2016 to July 31, 2018.
  - o  All Used and Unused Sick and Vacation days for Ross from April 1, 2016 to July 31, 2018 as was used in the calculation of the Ross Transition Agreement, (#4)
  - o  Number of Days used, and rate of daily pay used to calculate pay for Accrued and "Unused,, Sick and Unused Vacation days from April 1, 2016   July 31, 2018 in accordance with the Ross Transition Agreement.
  - o  Number of accrued and Unused Sick Days used to calculate Pay received by Ross in 2018 in accordance with the Ross Transition Agreement. (#4 Bullet Point)
  - o  All credit card statements covering all four (4) National Officers from the Bassani Administration for their entire term.

1 or 2

Requested by:

Robert Ross

Signed: _Ruben Armendariz_
Honorable Rubin Armendariz

Dated: _11/02/2022_

2 of 2

FILED
1/14/2022 11:48 AM
Justice of the Peace, Precinct 3
Tarrant County

JP03-22-DC00017757

NO. _____

| | | |
|---|---|---|
| **DIVERSIFIED CREDIT SYSTEMS,** | § | **IN THE JUSTICE OF THE PEACE** |
| **ASSIGNEE FOR THE "ASSOCIATION** | § | **COURT** |
| **OF PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS"** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **NO. 3** |
| | § | |
| **ROBERT (BOB) ROSS** | § | |
| **Defendant.** | § | **TARRANT COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Diversified Credit Systems, Assignee of a contract  (Agreement) from the Association of Professional Flight Attendants, hereinafter called Plaintiff, complaining of and about Robert (Bob) Ross, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends that discovery be conducted under Discovery Level 3.

### PARTIES AND SERVICE

2.      Plaintiff, Diversified Credit Systems (a D/B/A of McGaughey, Reber and Associates, Inc.), Assignee for the "Association of Professional Flight Attendants", is a business entity operating in the State of Texas and whose address is P.O. Box 3424, Longview, TX 75606.

3.      Diversified Credit Systems, Assignee of the Association of Professional Flight

Attendants has not been issued a driver's license. Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants has not been issued a social security number.

4.      Defendant Robert (Bob) Ross, an Individual who is a nonresident of Texas, may be served with process at his home at the following address:  4701 Hayloft Court, El Dorado Hills, CA 95762. Service of said Defendant as described above can be effected by certified mail, return receipt requested.

## JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

a.      only monetary relief of $10,000.00 or less, excluding interest, and attorney fees and costs.

7.      This court has jurisdiction over Defendant Robert (Bob) Ross, because said Defendant at the time he purposefully availed himself of the privilege of conducting activities in the state of Texas was a Texas Resident and resided in Tarrant County, Texas,   Defendant executed the attached Transition Agreement (hereinafter referred to as the "contractual Agreement" or "Agreement") with the Board of Directors for the "Association of Professional Flight Attendants", who thereafter assigned the contractual Agreement to Plaintiff to collect certain sums due and owing pursuant to the Agreement.

8.      Plaintiff would also show that the cause of action arose from or relates to the contacts of Defendant Robert (Bob) Ross to the state of Texas, thereby conferring specific jurisdiction with respect to said Defendant.

9.      Plaintiff would further show that the Agreement was to be performed in Tarrant Texas.

APPENDIX 21

10.     Venue in Tarrant County is permissive in this cause under Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because this county was the principal residence of Robert (Bob) Ross, Defendant at the time he signed the Agreement. Defendant resided in Southlake, Tarrant County, Texas at the time he executed the Agreement, and therefore, Venue is property in Justice of the Peace, Precinct 3, Tarrant County, Texas.

## FACTUAL ALLEGATIONS

11.     On or about March 1, 2018, the Association of Professional Flight Attendants (hereafter referred to as "AFPA") entered into a written contract with Robert (Bob) Ross, providing that Defendant would receive certain funds listed in the contract. A copy of the contract is attached as Exhibit "A" and incorporated by reference and for all purposes.

12.     The Contract has been assigned to the Plaintiff, Diversified Credit Systems, for all purposes by Assignor AFPA, but primarily for the purpose of collection of the amounts owed Plaintiff.

## BREACH OF CONTRACT

13.     Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

14.     Plaintiff's Assignor, APFA has met all of its obligations under the Transition Agreement (Contract) and all sums due Defendant were fully paid and accepted by Defendant.

15.     All contractual obligations of the Association of Professional Flight Attendants have been fully performed.

16.     Defendant has failed to perform his contractual obligations, specifically, an accounting was performed by the Certified Public Accounting firm of Wood, Stephens & O'Neil. A copy of that firms audit showed that Defendant had been paid in excess of the sums due him

APPENDIX 22

under the Agreement in the sum of $5,436.47.  The firms Audit report is attached as Exhibit "B" and attached for all purposes.

17.    The APFA made demand on Defendant's to reimburse Plaintiff for the overpayments.  A copy of the accounting and Memorandum from the accountant is attached as Exhibit "B" and incorporated for all purposes herein.   Defendant has been provided the accounting and the Accounting firms report, but Defendant has failed to reimburse APFA for the overpayments.

18.   Documentation and demand has been provided Defendant on multiple occasions, including from APFA, Assignee, Diversified Credit Systems and the undersigned Attorney.

## DAMAGES

19.    Plaintiff has sustained damages within the Court's jurisdictional limits of this Court, and as a result of the actions and/or omissions of Defendant described hereinabove, including, but not limited to:

Actual or economic damages for $5,436.47.

## OTHER RELIEF REQUESTED

### ATTORNEY'S FEES

20.    Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to a County Court at Law, Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## ALTERNATIVE ALLEGATIONS

21.    Pursuant to Rules 47 and 48, Texas Rules of Civil Procedure and the rules of

APPENDIX 23

pleadings, allegations in this petition are made in the alternative.

<div align="center">

**PRAYER**

</div>

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages requested hereinabove in an amount within the jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

*/S/ Michael R. Rake*

**Michael R. Rake, Attorney at Law, PLLC**
**State Bar # 16487600**
*P.O. Box 1556, Lake Dallas, TX 75065*
*Tel. & Fax: 940-498-2103*
*E-mail: mrake1@mrakeattorney.com*

**Attorney for:**
Diversified Credit Systems, Assignee of the Association of Professional Flight Attendants



A CERTIFIED COPY
JUSTICE OF THE PEACE
PRECINCT THREE
TARRANT COUNTY, TEXAS
BY: HM                **APPENDIX 24**

## <u>TRANSITION AGREEMENT</u>

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, In consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1. ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2. ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3. APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4. APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5. APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

EXHIBIT

"A"

payment through 2019.

6.    APFA and ROSS will each prepare a communication regarding ROSS's resignation.  APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with the announcement.

7.    The Parties agree that the existence, terms, and content of this Agreement are completely confidential. ROSS agrees not to disclose the existence, terms, or content of this Agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms. The Parties shall be responsible for ensuring in writing that the confidentiality provisions of this Agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The Parties agree that they will respond to all inquiries regarding Ross' transition with APFA in accordance with the communications and talking points prepared pursuant to numbered paragraph 6 of this Agreement.

8.    ROSS agrees not to make, orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.  Likewise, APFA's Board of Directors, and its officers, employees and agents who are aware of this Agreement pursuant to the confidentiality provisions of numbered paragraph 7 of this Agreement, agree not to make, orally or in writing, any statements disparaging ROSS or his immediate family, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.

March 1, 2018:1.0

APPENDIX 26

9.  The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA.  Venue shall be by agreement of the parties.

14. If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _Charlotte, NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____          3/1/18
Robert Ross                               Date

APPENDIX 27

**BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):**

Amy Milenkovic- BOS                              Date    3-1-18

Wanda Sarnacki – CLT                             Date    3-1-2018

Robert Valenta- DCA-AA                           Date    3/1/18

John Pennel – DCA-US                             Date    3/1/18

Maureen Walsh Martin –DFW                        Date    3/1/18

John Nikides – LAX                               Date    3/1/18

Raymond Lewis – LGA                              Date    3/1/18

Randy Trautman– MIA                              Date    3/1/2018

Susan Wroble – ORD                               Date    3/1/18

Kim Kaswinkel – PHL                              Date    3/1/18

Mischel Babi – PHX                               Date    3/1/18

Louise Sullivan – RDU                            Date    3/1/18

Jennifer Welpot – SFO                            Date    3/1/18

Matt Foust – STL                                 Date    3/1/18

March 1, 2018:1.0

# Wood, Stephens & O'Neil, L.L.P.
**Certified Public Accountants**

6300 Ridglea Place, Suite 318
Fort Worth, TX  76116
Tele. 817-377-1700
Fax 817-377-1870

## CONFIDENTIAL MEMORANDUM

MEMO TO:          APFA Board of Directors and the Executive Committee

FROM:                Hal O'Neil, CPA, Pam Bush
SUBJECT:           Review of officer disbursements and the Bob Ross transition agreement
DATE:                 October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual.  Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer.  These overpayment schedules for the other officers were previously provided to the Board of Directors.  Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement.  This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

EXHIBIT
"B"

**APPENDIX 29**

| | | | C | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | | | **Overpayment Calculation** | | | |
| | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | |
| Vacation Pay - 2017 | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | |
| Sick Pay - 2017 | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018...all paid in error) | | | | | | Overpayment | $ 968.76 | $ 968.76 |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | |
| | | | | | Overpayment | $ 633.42 | $ 633.42 | |
| | | | | | | | | |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | |
| | | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | |
| Sick Pay - 2018 | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | |
| | | | | | Overpayment | $ 467.76 | $ 467.76 | |
| End of term payout - 2017 (January 1 - December 31, 2017) | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | |
| | | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | |
| | | | | | Overpayment | $ 796.75 | $ 796.75 | |
| | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | | | |
| | | | **Total overpayment - due to APFA** | | | | $ 5,436.47 | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT.WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **MCGAUGHEY, REBER AND** | § | |
| **ASSOCIATES, INC., ASSOCIATION** | § | |
| **OF PROFESSIONAL FLIGHT** | § | **Case No.** |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **AND ERIK HARRIS** | § | |
| **Defendants.** | § | |

## AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL
## COMPLAINT AND MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being

by me first duly sworn, did state:

1.   "I am employed as a Flight Attendant working with American Airlines, Inc. and I

served on the Board of Directors for the Association of Professional Flight

Attendants, between April 2011 to January 2021.  I am of sound mind and body to

make this affidavit and have personal knowledge of the following facts:

a.   I attended the Board of Director's meetings on October 27, 2020, and October

28, 2020, in which evidence from an accounting firm hired by APFA was

presented off the record.  Erik Harris presented spreadsheets he stated were the

results of an accounting review that showed Robert "Bob" Ross owed for an

overpayment made under his Transition Agreement in the amount of $5,436.47.

**Exhibit B**                          1 of 2

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b.  I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c.  I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1.

This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d.  I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross.  At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committed voting on whether the charges were timely, specific, and valid.  The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

<u>**Exhibit B**</u>

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this $1\,8$ day of April 2022.

Notary Public, State of Missouri

**From:** Erik Harris <eharris███████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents████████>; Executive Committee
<ExecutiveCommittee██████g>
**Cc:** Margot Nikitas <MNikitas██████>
**Subject:** Bob Ross' **Overpayment**

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of
wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make
payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik


# Erik Harris  _Pronouns:_ _he, him, his_
National Treasurer
Association of Professional Flight Attendants
█              █
_The content of this email is intended solely for the recipient(s)._
_It is not to be shared, forwarded or posted without the author's written consent._


# Exhibit B-1



**Association of Professional Flight Attendants**
Representing the Flight Attendants of American Airlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

**RE:    Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris@apfa.org with any questions or concerns.  Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:    APFA Board of Directors
       APFA Executive Committee
       Margot Nikitas, General Counsel

**Exhibit B-1**

A

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including International overide, per the policy manual.

| | | | |
|---|---|---|---|
| * Maximum flight attendant pay | 60.13 | | |
| Purser Pay | 7.50 | | |
| International pay | 3.75 | | |
| | 71.38 | 116 hours | 8,280.08 |

| | | |
|---|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | | 4,140.04 |

| | | | |
|---|---|---|---|
| ** Maximum flight attendant pay | 61.33 | | |
| Purser Pay | 7.50 | | |
| International pay | 3.75 | | |
| | 72.58 | 116 hours | 8,419.28 |

| | | |
|---|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | | 4,209.64 |
| 101,031.36 | Annual salary | |
| 276.80 | Daily rate for sick and vacation | |

| | | | |
|---|---|---|---|
| *** Maximum flight attendant pay | 64.96 | | |
| Purser Pay | 7.50 | | |
| International pay | 3.75 | | |
| | 76.21 | 116 hours | 8,840.36 |

| | | |
|---|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | | 4,420.18 |
| 106,084.32 | Annual salary | |
| 290.64 | Daily rate for sick and vacation | |

| | | | |
|---|---|---|---|
| **** Maximum flight attendant pay | 66.26 | | |
| Purser Pay | 7.50 | | |
| International pay | 3.75 | | |
| | 77.51 | 116 hours | 8,991.16 |

| | | |
|---|---|---|
| Bi-monthly pay - 1/1/18 - 7/31/18 | | 4,495.58 |
| 107,893.92 | Annual salary | |
| 295.60 | Daily rate for sick and vacation | |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
**** Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

**Exhibit B-1**

**B**

| National Officer: | Bob Ross | | | | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| Profit Sharing - 2016 | | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | | 300.00 | (paid 7/6/17) |
| Grand slam | | | | | 150.00 | (paid 1/25/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| 2071 Profit Sharing | | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | |
| Sick Pay - 2018 | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | (paid 3/8/19) |

**Exhibit B-1**

| National Officer: | Bob Ross | | | | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | | Payment | | |
| **Vacation Pay – 2017** | | | | | | | | | |
| | Original amount | | $  101,031.36 | 276.80 | 14 | $ | 3,875.20 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | |
| **Sick Pay – 2017** | | | | | | | | | |
| | Original amount | | $  101,031.36 | 276.80 | 12 | $ | 3,321.60 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | |
| **Vacation & Sick Pay – 2017 – (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ | 968.76 | $ | 968.76 |
| | | | | | | | | | |
| **Vacation Pay – 2017 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount – paid in error (a) | | $  114,632.67 | 314.06 | 17 | $ | 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $  101,031.36 | 276.80 | 17 | $ | 4,705.60 | | |
| | | | | | Overpayment | $ | 633.42 | $ | 633.42 |
| | | | | | | | | | |
| **Vacation Pay – 2018 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount – paid in error (a) | | $  122,121.70 | 334.58 | 29 | $ | 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 29 | $ | 8,572.40 | | |
| | | | | | Overpayment | $ | 1,130.42 | $ | 1,130.42 |
| | | | | | | | | | |
| **Sick Pay – 2018** | | | | | | | | | |
| | Original amount – paid in error (a) | | $  122,121.69 | 334.58 | 12 | $ | 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 12 | $ | 3,547.20 | | |
| | | | | | Overpayment | $ | 467.76 | $ | 467.76 |
| | | | | | | | | | |
| **End of term payout – 2017 (January 1 – December 31, 2017)** | | | | | | | | | |
| | Original amount – paid in error (a) | | $  118,046.02 | 334.58 | 35 | $ | 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 35 | $ | 10,346.00 | | |
| | | | | | Overpayment | $ | 1,364.30 | $ | 1,364.30 |

**Exhibit B-1**

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | |
|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | |
| Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | |
| | | | Overpayment | $ 796.75 | $ 796.75 | |
| | | | | | | |
| | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | | | | | | |
| Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | |
| Total overpayment - due to APFA | | | | | $ 5,436.47 | |

(a) - included union pay (MEA/SAF)



# THE

# CONSTITUTION

## OF THE

# ASSOCIATION

## OF

# PROFESSIONAL

# FLIGHT

# ATTENDANTS

*As amended by the APFA Membership*
JUNE 18, 2014

## Section 7.   DEFINITIONS:

As used in this Constitution, the following words or terms shall mean:

A. **"Annual Convention"** or **"Special Convention"** means a meeting of the APFA Board of Directors wherein the elected Delegates are empowered to elect and/or remove Ad Hoc Members of the Executive Committee.

B. **"Base"** means one or more airports or co-terminals located within a commonly recognized metropolitan area to which APFA members have been assigned by their employer(s) for administrative purposes and to which members' flying assignments have been allocated.

(1) A base may include a military operation, a charter operation, and/or a satellite for representational purposes.

(2) A base may also include one or more "Other Airline (OAL) Operation(s)" for representational purposes. An OAL Operation shall be assigned to a base(s) by action of the Executive Committee, subject to approval by the Board of Directors.

C. **"Delegate"** means a Base President who has been elected by secret ballot by the membership of a base, or who has been duly elected by virtue of running unopposed, as a representative to the Annual or Special Conventions for the specific purpose of electing and/or removing Ad Hoc Members of the Executive Committee; or a Vice President who has been elected by secret ballot by the membership of a base, or who has been duly elected by virtue of running unopposed, to serve as such a representative in the absence of the Base President.

D. **"Duly Designated Member"** means an active member in good standing of the APFA at a meeting or session of the Board of Directors for the purpose of representing for that meeting or session, or for part of that meeting or session, one of the regular Voting Board Members.

E. **"Duty"** means an obligation of performance, care or observance which rests upon a person in any position or fiduciary capacity with or as a member of the APFA.

F. **"Insignia"** means the official emblem of the APFA.

G. "Majority of the Voting Board of Directors" means fifty percent (50%) plus one (1) of the total "Voting Board of Directors" as defined in Article III, Section 3,B,(2) of this Constitution.

H. **"May"** or **"Should"** means a discretionary or permissive act or directive.

R. **"Satellite"** means a location where an airport or co-terminals serve a city outside of, or distanced from, any commonly recognized metropolitan area that is served by an APFA base as defined by this Constitution. For representational purposes, a satellite shall be considered part of a base as determined by the Board of Directors.

S. **"Session"** means a period of time within any one day during which APFA members are assembled and engaged in the transaction of the business of the APFA.

T. **"Subject to"** means that a decision is effective when made and will be deemed approved unless and until reversed by the designated body.

U. **"Vacancy in the office"** or **"Vacancy in the position"** means the death, resignation, removal or incapacitation of an officer or representative that renders him/her unable to perform the duties of the office or the position.

V. **"Willingness to Serve (WTS)"** means written notification that a member uses for self-nomination for any elected position or to nominate another member for any elected position.

## Section 8.  REQUIREMENTS:

A. In order to be elected or appointed to any office or any position with the APFA, any member must be an active member in good standing as defined in Article II, Sections 4,A and 4,B of this Constitution.

B. All APFA officers and representatives shall be required to remain active members in good standing.

C. All APFA officers and representatives shall enforce this Constitution and Collective Bargaining Agreement(s) negotiated by the APFA.

D. All APFA officers and representatives shall carry out the resolutions and/or policy decisions as set forth and established by the Board of Directors.

E. All APFA officers and representatives shall be required to attend and participate in training and continuing education programs to improve the quality of representation for the members of the APFA.

# ARTICLE II

## *MEMBERSHIP*

### Section 1.   ELIGIBILITY FOR MEMBERSHIP:

A.   Any person in the craft and class of Flight Attendant at an airline at which the APFA is the recognized Bargaining Agent for the Flight Attendant employee group at that airline shall be eligible to join and maintain membership in the APFA as hereinafter provided.

B.   A Flight Attendant who accepts a paid position with the employer outside the craft and class of Flight Attendant shall no longer be eligible for membership in the APFA. If the person returns to the position of Flight Attendant, he or she shall be eligible to rejoin the union, upon payment of APFA's re-initiation fee.

### Section 2.   OBLIGATIONS OF MEMBERS:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein.   Inherent in the rights, privileges, duties and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties and responsibilities.

### Section 3.   BILL OF RIGHTS OF MEMBERS:

A.   All members of the APFA shall have the right of free speech, freedom of assembly and freedom to dissent.

B.   All members of the APFA shall have access to all administrative and financial reports and records except as provided in Section 5.B(1) of this Article II.

C.   All members of the APFA shall have the right to individual privacy.

D.   All members of the APFA shall have the right to due process and equal representation.

E.   All members of the APFA shall have full equality of rights and shall not be discriminated against because of national origin, race, religion, creed, age, disability, sex, sexual orientation or gender identity.

### Section 4.   CLASSIFICATION OF MEMBERSHIP:
– ACTIVE:

## Section 3.   BOARD OF DIRECTORS:

A. The Board of Directors is authorized and empowered to take any and all lawful action consistent with this Constitution to safeguard and protect the APFA, and the rights, privileges, duties and responsibilities of the officers, representatives and members of the APFA. The Board of Directors is authorized to interpret this Constitution and to establish, prescribe and adopt such other policies which may be consistent with this Constitution as required for the direction and management of the affairs of the APFA.

B. Organization

   (1) The Board of Directors shall consist of the National President, National Vice President, National Secretary, National Treasurer, and each Base President.

   (2) The Voting Board of Directors shall consist of each Base President.

      a. The National President, National Vice President, National Secretary and National Treasurer shall have a voice but no vote at a Board of Directors meeting, except that:

      b. when all voting members are present, and when a vote on an issue by the voting members results in a tie, with no abstentions, the National President must cast the deciding vote.

   (3) The Delegate(s) shall be those Base Presidents (or in their absence, the Vice Presidents) who have been elected by the membership of their bases, or duly elected by virtue of running unopposed, to serve as delegates to the Annual or Special Convention(s) with the authority to elect or remove Ad Hoc Members of the Executive Committee.

C. Annual Training:  The Board of Directors shall participate in an annual training session.

D. Annual Convention:   The Board of Directors shall convene once a year as the Annual Convention of the APFA on a date and at a location determined by the National President. The Annual Convention shall be held no earlier than ninety (90) days and no later than fifteen (15) days prior to the expiration of the current fiscal year.

E. Special Meetings/Special Conventions:  The Board of Directors may convene for special meetings or special conventions.

   (1) A Special Meeting or a Special Convention may be called by the National President or by four (4) members of the Executive Committee, or by a

or Special Convention(s), Delegates may remove Ad Hoc Members and may nominate and elect Ad Hoc Members to fill a vacancy for the balance of the unexpired term.

**Section 4.   EXECUTIVE COMMITTEE:**

A. The Executive Committee shall act as the agent for and on behalf of the Voting Board of Directors, and shall interpret this Constitution, subject to the approval of the Board of Directors.

B. Organization:  The Executive Committee shall consist of the National President, National Vice President, National Secretary, National Treasurer and five (5) Ad Hoc Members.

C. Quarterly Meetings:   The Executive Committee shall convene for the transaction of business at least once each quarter on a date and at a location determined by the National President.

D. Special Meetings:   The Executive Committee may convene for special meetings.

  (1)  A Special Meeting of the Executive Committee may be called by the National President or by four (4) members of the Executive Committee by request to the National Secretary.

  (2)  The Special Meeting must convene within seven (7) days following receipt by the National Secretary of such request.

E.  Quorum:  In order to conduct the business of the APFA, including business conducted by Teleconference Meeting, a quorum or more must be present.  Seven (7) members of the Executive Committee shall constitute a quorum.

F. Agenda: There shall be no restrictions on business conducted at any meeting of the Executive Committee provided however, that no business shall be acted upon without:

  (1)  three (3) days notice of the agenda in writing to the Executive Committee prior to such meeting, or

  (2)  approval by a majority of the members of the Executive Committee who are present at the meeting.

G. All issues shall be decided by five (5) or more members of the Executive Committee voting in the affirmative except as provided for in this Constitution.

H. Each member of the Executive Committee shall be entitled to:

  (1)  one (1) vote;

M. All business conducted by a Teleconference Meeting shall become a part of the permanent record of the APFA.

N. Any business conducted by a Teleconference Meeting is subject to reconsideration at the next meeting of the Executive Committee or Board of Directors, as appropriate.

## Section 6.   OFFICERS:

A. Definitions: The National Officers shall be the National President, National Vice President, National Secretary and National Treasurer.

B. Duties of the National President shall include but not be limited to the following:

(1) The National President shall be the chief executive officer of the APFA, and shall conduct the affairs of the APFA in accordance with this Constitution and the resolutions and policy decisions of the Board of Directors and/or the Executive Committee.

(2) The National President shall sign any agreements, supervise the activities of the APFA and carry out any duties the Board of Directors and/or the Executive Committee may request, in accordance with this Constitution.

(3) The National President shall convene any convention or meeting of the Board of Directors and the Executive Committee.  S/he must convene the Board to review any proposed Collective Bargaining Agreement between the APFA and AAL.

(4) The National President shall convene any meeting of the OAL Operation Advisory Panel.  S/he must convene the Panel to review any proposed Collective Bargaining Agreement between the APFA and an airline other than AAL whose Flight Attendant employees are represented by the APFA.

(5) The National President shall act as Chairperson for the Board of Directors, the Executive Committee, the Negotiating Committee and the OAL Operation Advisory Panel.   The National President shall oversee all other national committees, unless otherwise provided for in this Constitution or by resolution or policy of the Board of Directors or the Executive Committee.

(6) The National President shall recommend to the Executive Committee all changes in employment and staff requirements and, subject to the approval of the Executive Committee, fix compensation for all agents and employees of the APFA.  The National

President shall be responsible for the employment, supervision and discharge of all agents and employees of the APFA.

(7) The National President may address an Annual Report to the membership.

(8) The National President shall nominate, and the Executive Committee shall confirm or reject, individual active members in good standing to serve as National Chairs.

(9) The National President shall appoint Negotiating Committee members in accordance with Article X, Section 5, A(1)b of this Constitution.

(10) The National President shall have the authority to hire, retain or employ general counsel and/or other legal counsel for the APFA, subject to the approval of the Executive Committee.

(11) The National President shall direct and coordinate legislative and political initiatives and any lobbying efforts on behalf of the Association to further the objectives of the APFA.

C. Duties of the National Vice President shall include but not be limited to the following:

(1) The National Vice President shall assist the National President in the discharge of all duties. In the absence of the National President, or should a vacancy occur in the office of National President, the National Vice President shall perform the duties of the National President.

(2) The primary responsibility of the National Vice President shall be to oversee the grievance and arbitration process provided for in the Railway Labor Act and the Collective Bargaining Agreement(s) entered into between the APFA and employers.

(3) The National Vice President shall serve as the APFA's permanent Chairperson of the Flight Attendant System Board(s) of Adjustment.

(4) The National Vice President shall coordinate activities of the System Board(s) of Adjustment with other departments within the APFA.

(5) The National Vice President shall nominate, and the Executive Committee shall confirm or reject, individual active members in good standing to serve as Regional Representatives.

(6) The National Vice President shall determine the specific base assignments of each Region and assign and coordinate the activities of the members appointed to serve as Regional Representatives.

(7)  The National Vice President shall be authorized to hire, retain and employ legal counsel as may be required to provide members with representation in the grievance and arbitration process, subject to the approval of the Executive Committee.

(8)  The National Vice President shall ensure the training and continuing education of all representatives involved in the grievance and arbitration process.

(9)  The National Vice President shall coordinate and chair a Grievance Review Committee to oversee the disposition of grievances.

D.  Duties of the National Secretary shall include but not be limited to the following:

(1)  The National Secretary shall be responsible for all administrative records of the Association.

(2)  The National Secretary shall cause to be kept an administrative record of all officers, representatives and appointees.

(3)  The National Secretary shall notify the Board of Directors, the Executive Committee and the OAL Operation Advisory Panel of any convention or meeting.

(4)  The National Secretary shall cause to be kept a record of all proceedings at any convention or meeting of the Board of Directors, or at any meeting of the Executive Committee and the OAL Operation Advisory Panel.

(5)  The National Secretary shall submit a written report of all meetings of the Executive Committee and the OAL Operation Advisory Panel to the Board of Directors within fifteen (15) days following such meeting.

(6)  The National Secretary shall oversee the National Balloting Committee.

(7)  The National Secretary shall assist the National President in the preparation of any Annual Report to the members of the APFA.

(8)  The National Secretary shall administer Article VII procedures.

(9)  The National Secretary shall update and ensure distribution of the APFA Policy Manual.

(10) The National Secretary shall assist in establishing regular training and continuing education programs for representatives of the APFA, and shall maintain the APFA training records of all representatives.

(11) The National Secretary shall ensure that training and reference materials and Association publications and manuals are maintained.

(12) The National Secretary shall be responsible for the library of the Association.

(13) The National Secretary shall establish and maintain lines of communication between members of the Executive Committee, Base Representatives and all administrative departments and committees.

(14) The National Secretary shall assist the National Treasurer in the discharge of all duties. Should there be a temporary absence in the office of the National Treasurer; the National Secretary may perform the duties of the National Treasurer.

E. Duties of the National Treasurer shall include but not be limited to the following:

(1) The National Treasurer shall be responsible for the care and custody of the funds and securities of the APFA, receiving all dues, fees and special assessments assigned to the APFA.

(2) The National Treasurer shall be responsible for all financial records of the APFA.

(3) The National Treasurer shall cause to be kept a record of the APFA's membership so as to show at all times the number of members in each membership status or classification, their respective places of residence, their post office addresses, their base locations and the date when each person became a member of the APFA and/or changed membership status or classification.

(4) The National Treasurer shall cause to be kept an individual record of all dues and assessments for each member.

(5) The National Treasurer shall oversee the APFA Budget Committee and shall assist in the preparation of the annual budget.

(6) The National Treasurer shall submit the annual budget to the Board of Directors for approval at the Annual Convention.

(7) The National Treasurer shall advise the Board of Directors and the Executive Committee of any significant change in the financial standing of the APFA.

(8) The National Treasurer shall submit a monthly financial report to the Board of Directors and to the Executive Committee as provided for in Article IV, Section 4.C of this Constitution.

(9) The National Treasurer shall submit a quarterly financial review to the Board of Directors and to the Executive Committee as provided for in Article IV, Section 4.D of this Constitution.

(10) The National Treasurer shall submit with his/her signature all Federal and State Reports required by law.

(11) The National Treasurer shall oversee and coordinate ongoing computerization of the APFA headquarters files, records and systems.

(12) The National Treasurer shall oversee the daily activities of the APFA headquarters office staff.

(13) The National Treasurer shall coordinate the headquarters office staff to ensure assistance is provided to administrative, committee and support personnel.

(14) The National Treasurer shall assist the National Secretary in the discharge of all duties.  Should there be a temporary absence in the office of the National Secretary; the National Treasurer may perform the duties of the National Secretary.

## Section 7.   BASE COUNCILS / BASE REPRESENTATIVES:

A. Organization:   The Base Council shall consist of the Base President, Vice President, and Base Council Representatives (BCRs).  When a base contains both an American Airlines Operation and one or more OAL Operations (as defined in Article I, Section 7,K,2 of this Constitution), the Base Council shall also include an OAL Operation Advisory Panel Representative (APR). The members of a Base Council hold positions with the APFA as Base Representatives.

B. Base Representatives shall hold such positions only at the base where they are stationed.

C. The Base President and Vice President shall be elected by the membership of the base at large.

D. Base Council Representatives (BCRs) shall be elected by the membership of the American Airlines base at which they are stationed.   BCRs shall hold such positions only at the base at which they are stationed.

(1) Each base shall be entitled to one BCR for each one hundred (100) members or fraction thereof who are stationed at the base.

E. The Advisory Panel Representative (APR) shall be elected by the membership of the OAL Operation base at which he/she is stationed.  The APR shall hold such position only from the OAL Operation base at which he/she is stationed.

# A R T I C L E   V I I
## H E A R I N G S   A N D   D I S C I P L I N A R Y   P R O C E D U R E S

**Section 1.**   GROUNDS FOR CHARGES:

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

A.  Failure to pay dues, assessments or penalties levied by the Association;

B.  Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

C.  Willfully acting as a strike breaker during any work stoppage duly authorized by the Association;

  (1)  Notwithstanding Section 1.C, above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

D.  Willful violation of a Flight Attendant's Collective Bargaining Agreement;

E.  Theft or embezzlement of Association monies or property;

F.  Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee;

G.  Willfully acting in a manner that causes the Association to violate its legal obligations; or

H.  Willfully bringing charges without reasonable basis against another member, officer or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

**Section 2.**   FILING OF CHARGES:

A.  A charge may be filed by any member in good standing. All charges shall be filed with the National Secretary and shall be proffered in writing and shall be specific as to the alleged act(s) and/or the Article(s) of this Constitution

allegedly violated which constitute the basis of the charge(s).

B. The National Secretary shall cause a copy of the charges to be served upon the accused and the accuser within seven (7) days following receipt of the charges. Such notification shall be by registered mail, return receipt requested to their last known addresses, and shall furnish the accused and the accuser a description of all relevant procedures.

C. The National Secretary shall send a copy of all charges to the Executive Committee and to the Board of Directors within seven (7) days following his/her receipt of the charges.

D. Time Limits:

(1) Charges based on Section 1.A through Section 1.F of this Article VII must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the alleged offense.

(2) Charges based on Section 1.G of this Article VII may not be filed unless and until it has been determined, in a separate legal proceeding (such as a lawsuit), that the Association has violated its legal obligations, or unless and until the Association settles a legal proceeding brought against it by furnishing substantial relief to an opposing party. Charges based on Section 1.G above must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the completion or settlement of the legal proceeding.

(3) Charges based on Section 1.H of this Article VII must be filed within sixty (60) days following the Article VII Arbitrator's decision which gives rise to such charge(s).

E. The accused and accuser may be represented during Article VII proceedings by any individual; however, the APFA will not compensate either party for attorney's fees.

## Section 3.   REVIEW OF CHARGES:

At the first regularly scheduled meeting of the Executive Committee following receipt of charges by the National Secretary, the Executive Committee shall review the charges for timeliness, specificity and validity.

A. Should the charges be determined to be timely, specific and valid, such charges shall then be forwarded by the National Secretary via registered mail, return receipt requested to the Article VII Arbitrator designated herein

within seven (7) days following such Executive Committee meeting.

B. Charges deemed untimely by the Executive Committee will be dismissed without appeal.

C. Charges deemed non-specific by the Executive Committee shall be referred back to the accuser. The accuser may resubmit, one time only, such charges to the National Secretary for review by the Executive Committee at its next regularly scheduled meeting without affecting the time limits of Section 2.D of this Article VII.

D. Charges may be deemed invalid and dismissed if the Executive Committee determines that the charges address conduct protected by this Constitution and/or by law (including the LMRDA Bill of Rights). Charges may also be deemed invalid and dismissed if they fail to state a proper claim under Section 1 of this Article VII. Should such charges be dismissed as invalid, the accuser may, within seven (7) days following receipt of notification of dismissal by the Executive Committee, appeal to the Article VII Arbitrator designated herein. If the Article VII Arbitrator determines that the charges are valid, s/he shall so advise the National Secretary, the accused and the accuser, and the charges will be processed in accordance with this Article VII.

**Section 4.  SUSPENSION FROM OFFICE:**

A. If charges are filed against a national officer or elected representative based on Section 1.B, Section 1.C or Section 1.E of this Article VII, the Board of Directors may determine at any time during the pendency of the charges that the alleged conduct giving rise to the charges threatens the APFA's vital interests. The Voting Board of Directors may then, by two-thirds (2/3) vote, suspend the accused's authority as national officer or elected representative until the threat is removed or the Article VII Arbitrator designated herein resolves the charges, whichever occurs sooner.

B. A national officer or elected representative suspended pursuant to this section shall be entitled, upon demand, to an expedited resolution of the charges, with a decision rendered within thirty (30) days following the Board of Directors Meeting where the officer or elected representative was suspended.

C. If the charges are filed by or against a member of the Executive Committee or the Board of Directors, such member must appoint an alternate member of the Association to participate in the review of the charges as

provided in Section 3 of this Article VII and, when necessary, to participate in the vote regarding the suspension of the member of the Executive Committee or Board of Directors as provided in this Section 4.

### Section 5.   APPOINTMENT OF THE ARTICLE VII ARBITRATOR:

A. The Board of Directors shall appoint an arbitrator to resolve all charges filed under this Article VII. The Article VII Arbitrator, once appointed, shall serve until s/he resigns or until the Board of Directors determines to appoint a new Article VII Arbitrator.

B. The Board of Directors may also appoint one or more alternate Article VII Arbitrators who shall have the authority to hear and decide particular charges when the Article VII Arbitrator is not available.

C. C. The Article VII Arbitrator and any alternate Article VII Arbitrator(s) shall be a person expert in labor law who is a neutral (such as an academic or professional labor arbitrator), who has experience as a neutral in adjudicating internal labor organization disputes, and who has no other prior or current involvement with the APFA.

### Section 6.   JURISDICTION AND AUTHORITY OF THE ARTICLE VII ARBITRATOR:

A. The Article VII Arbitrator shall have power to resolve all charges referred to him/her during his/her tenure.

B. The administrative procedures for handling Article VII charges shall be included in the APFA Policy Manual. The Article VII Arbitrator may from time to time propose changes in these administrative procedures, and such changes shall become effective and included in the Policy Manual if they are approved by the Board of Directors. The administrative procedures to be adopted shall be in general compliance with American Arbitration Association rules where practicable, but may not conflict in any respect with the provisions of this Constitution.

C. The Article VII Arbitrator may, on his/her own motion or upon motion filed by the accused, declare that charges are untimely or do not allege a violation cognizable as charges under this Article VII and thus are dismissed without the need for hearing.

D. The Article VII Arbitrator may, on his/her own motion, or upon motion filed by the accused, determine that charges are not sufficiently specific and that they will be dismissed unless the accuser amends them to provide sufficient specificity.



AMERICAN ARBITRATION ASSOCIATION®

# Challenges to an Arbitration Award

The American Arbitration Association® (AAA®) is an administrative organization with no authority to modify, vacate, or re-open a previously awarded arbitration. As a result, the AAA's role in the arbitration process generally ends at the time that the award is transmitted to the parties. If a party to an arbitration wishes to challenge an award for any reason, they need to make an application to a court except in the rare case where the parties' agreement provides for some type of appellate proceeding within the arbitration. Therefore, the AAA would be unable to respond to or consider requests to vacate or to re-open a previously awarded arbitration.

Under federal and state laws, there are limited grounds on which a court may overturn an arbitration award, which include the following:

- the award was procured by corruption, fraud, or undue means;

- there was evident partiality or corruption in the arbitrators;

- arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

- the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Neither the AAA nor any arbitrator will be involved in any post-hearing proceedings in a court to enforce or challenge an arbitration award. The AAA rules provide that neither the AAA nor the arbitrator are proper parties to litigation involving an arbitration proceeding or award. In addition, parties to arbitration under AAA rules may not call the arbitrator, the AAA, or AAA employees as a witness in any litigation or any other proceeding relating to the arbitration. Similarly, the arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

We encourage you to review the information provided at _Find an Attorney or Other Legal Representation_ to find an attorney or other legal representation to represent you in an arbitration or if you wish to hire an attorney to challenge or confirm an arbitration award.

```
 1                IN THE MATTER OF THE HEARING

 2   MELISSA CHINERY, Member       )
          and                      )
 3   SANDRA LEE, Member            )
                                   )BEFORE ARTICLE VII
 4       AND                       )    ARBITRATOR
                                   )HON. RUBEN B. ARMENDARIZ
 5                                 )
     ROBERT ROSS, Member           )
 6

 7

 8
             ****************************************
 9                        JUNE 16, 2021

10                        VOLUME 1
             ****************************************
11

12

13

14        BE IT REMEMBERED that on the 16th day of June,

15   2021, the above cause came on for hearing before HON.

16   RUBEN R. ARMENDARIZ at the WESTIN IRVING CONVENTION

17   CENTER AT LAS COLINAS, 400 West Las Colinas Boulevard,

18   located in the City of Irving, County of Dallas, State

19   of Texas, whereupon the following proceedings were had.

20

21

22

23

24

25
```

Melissa Chinery   6/16/2021

Page 22

```
 1   record a minute.
 2                   (Discussion off the record.)
 3                   THE ARBITRATOR:   Okay.   In an
 4   off-the-record discussion, the parties agreed to
 5   continue this matter to September 21st and September
 6   22nd.   Therefore this -- this hearing is continued
 7   until such time.   Thank you.
 8                   (Proceedings concluded at 9:53 a.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1   STATE OF TEXAS        )

2   COUNTY OF DALLAS      )

3           THIS IS TO CERTIFY THAT I, MELISSA J. CARSON,

4   a Certified Shorthand Reporter in and for the State of

5   Texas, reported in shorthand the proceedings had at the

6   time and place set forth in the caption hereof, and

7   that the above and foregoing 23 pages contain a full,

8   true, and correct transcript of the said proceedings.

9           Certified to on this the 29th day of June,

10  2021.

11

12

13  _____

14  MELISSA J. CARSON, Certified
    Shorthand Reporter in and for
    The State of Texas

15

16

17  Certification No. 1737

18  CRCB Firm Registration #489

19  Expires August 31, 2022

20  CARSON REPORTING & ASSOCIATES

21  Post Office Box 551628

22  Dallas, Texas 75355-1628

23  Telephone 214.346.3434

24

25

```
 1                IN THE MATTER OF THE HEARING

 2   MELISSA CHINERY, Member       )
           and                     )
 3   SANDRA LEE, Member            )
                                   )BEFORE ARTICLE VII
 4       AND                       )     ARBITRATOR
                                   )HON. RUBEN B. ARMENDARIZ
 5                                 )
     ROBERT ROSS, Member           )
 6

 7

 8

 9              ***************************************
                      NOVEMBER 17, 2021
10
                         VOLUME 2
11              ***************************************

12

13

14            BE IT REMEMBERED that on the 17th day of

15   November, 2021, the above cause came on for hearing

16   before HON. RUBEN R. ARMENDARIZ at the WESTIN IRVING

17   CONVENTION CENTER AT LAS COLINAS, 400 West Las Colinas

18   Boulevard, located in the City of Irving, County of

19   Dallas, State of Texas, whereupon the following

20   proceedings were had.

21

22

23

24

25
```

```
 1                    WITNESS INDEX

 2
     CATHY LUKENSMEYER                     PAGE
 3   Direct Examination by Ms. Chinery................  54
     Cross-Examination by Ms. Guidry................  74
 4   Redirect Examination by Ms. Chinery.............  84
     Recross-Examination by Mr. Ross.................  90
 5
     ERIK HARRIS
 6   Direct Examination by Ms. Lee....................  99
     Cross-Examination by Mr. Ross.................... 132
 7   Redirect Examination by Ms. Lee.................. 221
     Recross-Examination by Mr. Ross................. 231
 8
     MICHAEL TRAPP
 9   Direct Examination by Ms. Chinery............... 249
     Cross-Examination by Mr. Ross.................... 259
10
     JOHN NIKIDES
11   Direct Examination by Ms. Chinery............... 272
     Cross-Examination by Ms. Guidry................. 297
12   Redirect Examination by Ms. Lee................. 321
```

```
13
     REPORTER'S NOTE:
14   Due to the horrible acoustics in the hearing room and
     without the use of microphones, there will be noted
15   (unintelligible) several times throughout the
     transcript.  I apologize for this; however, if I cannot
16   hear it, I cannot write it.

17   Additionally there are several notations of
     simultaneous speaking or simultaneous discussions
18   throughout the transcript.  When several people talk at
     the same time, there is no way to possibly discern who
19   is speaking.

20

21

22

23

24

25
```

```
 1   That is yet to be discovered.
 2            The first charge that they have are
 3   credit cards.  There will be no proven willful act of
 4   any credit card usage.  I've been frugal.  I've been
 5   honest.  I've saved the membership tens of thousands of
 6   dollars by my actions and by actions of my family, the
 7   move, and otherwise.  We will prove that we have not
 8   willfully violated any policy.
 9            Were there mistakes?  Possibly.  Could we
10   have found errors in accounting?  Possibly.  I don't
11   think so.  Could there be a receipt that's unexplained?
12   Possibly.  But I don't think that there's anybody that
13   can go through life and never make a mistake, but the
14   question is were they willful.
15            We have a question of rental cars, charge
16   number two, violation, rental car.  We have records
17   that show that this should have never been in these
18   charges and the entire charges should have been
19   dismissed for untimely.  We will show documentation
20   that they've known about any questions on rental cars
21   all the way back to 2019.  For them to include that in
22   these charges right here should have been investigated
23   and discovered prior to arbitration.  The process of
24   the Executive Committee did not allow myself to attend
25   that Executive Committee in a timely manner or to
```

Robert Ross    11/17/2021

Page 49

1  defend myself or any investigative process whatsoever
2  that would have shown that that was untimely.  And if
3  that of -- that charge is untimely within it, the
4  entire charge should have been thrown out for
5  timeliness.
6              Reimbursement.  They'll show that under
7  policy manual 5G 1B, ground transportation they claim
8  at residence.  I have no idea what they're talking
9  about on this, but I'm positive that through my actions
10 there was no violation of any reimbursement to myself
11 and I look forward to proving that today.
12             Number four, MEA and SAF expense.  There
13 have been resolutions passed that have cleared up any
14 confusion that was in the policy manual at the time.
15 In clearing up those confusions, the 2021 policy manual
16 is updated to actually include how the Ross
17 administration handled certain MEA and SAF meal
18 expenses to include how we actually did it.  That will
19 also be investigated while we're here today and you
20 will see that there were no MEA and SAF meal expense
21 and certainly no willful intent of any violation.
22             Number five, charge, payout of vacation,
23 changed the formula.  This is a good topic that should
24 have been investigated and should still be investigated
25 because the terms of Ross' Transition Agreement, though

Robert Ross   11/17/2021

Page 99

```
 1    Treasurer.
 2                        ERIK HARRIS,
 3    having been first duly sworn, testified as follows:
 4                    DIRECT EXAMINATION
 5    BY MS. LEE:
 6        Q.   Hi, Erik.
 7        A.   Hello.
 8        Q.   Thank you for coming today.  We know it's been
 9    quite the week, so we appreciate it.
10        A.   Thank you.
11        Q.   So again, what is your name?
12        A.   Erik Harris.
13        Q.   Where are you employed?
14        A.   American Airlines and APFA.
15        Q.   Okay.  What is your position at APFA?
16        A.   I'm the National Treasurer.
17        Q.   How long have you been employed at American
18    Airlines?
19        A.   About eight years.
20        Q.   Okay.  Besides National Treasurer, have you
21    held any other positions -- positions at APFA during
22    your career?
23        A.   Yes, various positions.  Most recently --
24    well, prior to this position, I was a contract chair.
25    I served on the budget committee pretty much my entire
```

APPENDIX 63

Robert Ross - 11/17/2021

Page 100

```
 1   career.
 2        Q.   And in your role as National Treasurer, have
 3   you been responsible for responding to requests to see
 4   financial information?
 5        A.   Yes.
 6        Q.   Did you receive requests from Melissa and
 7   myself to come down and see financial records?
 8        A.   Yes.
 9        Q.   And did you set up times for us to see the
10   information?
11        A.   Yes.
12        Q.   Approximately how many times have we come down
13   to review information?
14        A.   About five to 10.
15        Q.   So have you been present with myself and
16   Melissa when we came down?
17        A.   Yes.
18        Q.   If you were not present, who was present?
19        A.   I believe there was only one time and my
20   assistant, Robert, was there and Margot has been there
21   and there were a couple occasions where all four
22   Officers were there.
23        Q.   So we were never alone -- alone with these
24   financial documents?
25        A.   That's right.
```

```
 1        Q.    Who was the Treasurer before you took office?
 2        A.    Craig Gunter.
 3        Q.    And before him?
 4        A.    Eugenio Vargas.
 5        Q.    How would you describe the state of the Union
 6   financial records when you took office?
 7        A.    They were -- it was pretty bad, in bad shape.
 8        Q.    Who has the responsibility under APFA
 9   Constitution to maintain the financial records?
10        A.    The National Treasurer does.
11        Q.    Did you receive a subpoena from Melissa and
12   myself, the charging parties, for financial documents
13   related to this hearing?
14        A.    Yes.
15        Q.    And did you oversee the efforts to locate and
16   provide those documents?
17        A.    Yes.
18        Q.    Can you explain the steps taken to ensure
19   which documents you had?  Oh, okay.  I'll tell you
20   what, I want you to look at Exhibits 8 through 46 in
21   the big book.
22        A.    Okay.
23             MS. LEE:  Oh, we need -- that too.
24             THE ARBITRATOR:   Which one, the blue
25   one?
```

```
 1              MS. LEE:  Yeah.
 2              MS. CHINERY:  Hold on.  I'm coming.
 3              MS. LEE:  We'll give you yours.
 4              THE ARBITRATOR:  Oh, okay.  I guess we...
 5              MS. LEE:   I'm going to move to submit
 6    Exhibits 8 through 46 into evidence, which are
 7    financial documents.
 8              THE ARBITRATOR:   You got to prove them
 9    up first.
10              MS. LEE:  Okay.
11       Q.   (BY MS. LEE)   Are there any items you were
12    unable to locate from the subpoena?
13       A.   Yes.
14       Q.   Okay.  I want you to take a look at those
15    documents, 8 through 46.
16       A.   Okay.
17              MR. ROSS:  8 through 46?
18              MS. LEE:   8 through 46.  Take your time.
19              MR. ROSS:  I have 27 here.
20              MS. LEE:  I think it's 46.
21              MR. ROSS:  8 through 46?
22              MS. LEE:  8 through 46.
23              MR. ROSS:  So --
24              (Simultaneous speaking.)
25              MS. LEE:  She's going to give them to
```

Robert Ross   11/17/2021

```
 1   A list of hotels for Bob Ross.  All paperwork for
 2   rental cars.  Any equipment purchase.  Correspondence
 3   with the collection agency regarding Ross' failure to
 4   provide information.  Emails from -- between Debbie
 5   Hoover and Eugenio regarding repayment.  Receipts for
 6   hotel stays, U-Hauls, and a list of vacation days.
 7   Accounting of vacation payout and Bob Ross' exit -- Bob
 8   Ross' exit package and documents from outside Counsel,
 9   Mike (sic) Richards.
10      Q.   Okay.  Can you explain the steps that we took
11   to -- that you took to give us these documents besides
12   the subpoena?  Had we -- had we gone over these
13   documents?
14      A.   Yes.  So for these documents, are you
15   saying -- what was the question?
16      Q.   Those financial documents.
17      A.   But what was the question?
18      Q.   Okay.  So the documents that you have in front
19   of you are the documents that we subpoenaed?
20      A.   Yes.  Yes.
21           MS. LEE:  Okay.  So these are Exhibits 8
22   through 46, which I'd have like -- like to have
23   admitted into evidence, which are financial documents.
24           THE ARBITRATOR:  Any objection?
25           MR. ROSS:  I think we've already
```

1    established on the credit cards that there was a

2    protocol and that any credit card submitted went

3    through its proper channels and was approved.  So now

4    we're going to get into every one, so there's a lot of

5    papers here and I'm just now getting --

6                MS. CHINERY:   They were all --

7                MR. ROSS:  -- and I've not

8                MS. CHINERY:     sent to you.

9                MR. ROSS:  -- been able to go through.

10                THE ARBITRATOR:   Let me try to sum it up

11   for you.

12                MR. ROSS:  Okay.

13                THE ARBITRATOR:  Subpoena duces tecum was

14   issued to him and he complied with the subpoena duces

15   tecum and all of these exhibits, the credit cards,

16   monthly reports, weekly reports, and mileage and

17   everything else, he submitted to the party that asked

18   for the subpoena.  She's   he's already looked at it.

19   He's verified it.  Now I'm asking you do you want to

20   object to that inclusion into the record or -- or will

21   you approve it?

22                MR. ROSS:  I don't know that I'm   I'm

23   comfortable approving it all in the records as a bundle

24   unless we go through each particular one and then put

25   it in the record that way.  Some of the stuff

Robert Ross   11/17/2021

Page 107

```
 1              MS. CHINERY:  Objection, we -- we --
 2              MR. ROSS:  -- I'm still speaking -- if
 3   some of this stuff could be entered into the record and
 4   we get into it and find out it's not correct, not true,
 5   now it's been entered into the record -- record.  So I
 6   am not familiar enough with protocol to make sure
 7   that --
 8              MS. CHINERY:  You've had these documents
 9   for months.
10              THE ARBITRATOR:  Well look, let's --
11   let's get something -- off the record.
12              (Discussion off the record.)
13              THE ARBITRATOR:  I hear -- I hear your
14   concern, but all we're -- we're -- we're accepting this
15   for the reason that he -- he complied with the subpoena
16   and that's what these documents are, nothing else.
17   We're not saying that they're true, correct or
18   whatever, we're just submitting it in based upon the
19   duces tecum.  Okay?  Okay.  It's -- do you still have
20   an objection?
21              MR. ROSS:  No.
22              THE ARBITRATOR:  Okay.  Hearing no
23   objection, charging party CP Exhibit 8 through 46 -- is
24   it 8 --
25              MS. CHINERY:  Yes.
```

Robert Ross    11/17/2021

Page 324

```
 1              MS. CHINERY:  I'm kidding.  I'm kidding.
 2              THE ARBITRATOR:  I said -- I said one
 3   question.
 4              (Simultaneous discussions.)
 5              MS. CHINERY:  Reserve the right to --
 6              THE ARBITRATOR:  That's it.
 7              THE WITNESS:  Okay.
 8              THE ARBITRATOR:  That's it.
 9              (Proceedings recessed at 4:22 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

APPENDIX 70

Robert Ross    11/17/2021

Page 325

```
 1   STATE OF TEXAS        )

 2   COUNTY OF DALLAS       )

 3           THIS IS TO CERTIFY THAT I, MELISSA J. CARSON,

 4   a Certified Shorthand Reporter in and for the State of

 5   Texas, reported in shorthand the proceedings had at the

 6   time and place set forth in the caption hereof, and

 7   that the above and foregoing 302 pages contain a full,

 8   true, and correct transcript of the said proceedings.

 9           Certified to on this the 13th day of December,

10   2021.

11

12

13   _____

14   MELISSA J. CARSON, Certified
     Shorthand Reporter in and for
15   The State of Texas

16

17   Certification No. 1737

18   CRCB Firm Registration #489

19   Expires August 31, 2022

20   CARSON REPORTING & ASSOCIATES

21   Post Office Box 551628

22   Dallas, Texas 75355-1628

23   Telephone 214.346.3434

24

25
```

Robert Ross   11/18/2021

Page 326

```
1              IN THE MATTER OF THE HEARING
2   MELISSA CHINERY, Member      )
         and                     )
3   SANDRA LEE, Member           )
                                 )BEFORE ARTICLE VII
4       AND                      )     ARBITRATOR
                                 )HON. RUBEN B. ARMENDARIZ
5                                )
    ROBERT ROSS, Member          )
6
7
8
9              ****************************************
               NOVEMBER 18, 2021
10             VOLUME 3
               ****************************************
11
12
13
14         BE IT REMEMBERED that on the 18th day of
15   November, 2021, the above cause came on for hearing
16   before HON. RUBEN R. ARMENDARIZ at the WESTIN IRVING
17   CONVENTION CENTER AT LAS COLINAS, 400 West Las Colinas
18   Boulevard, located in the City of Irving, County of
19   Dallas, State of Texas, whereupon the following
20   proceedings were had.
21
22
23
24
25
```

Robert Ross    11/18/2021

Page 406

```
 1                    MS. LEE:  No, that's it.
 2                    THE ARBITRATOR:  Okay.
 3                    MS. LEE:  I'm -- I --
 4                    THE ARBITRATOR:  You're excused.  You're
 5     excused.  Do you have any other witnesses?
 6                    MS. CHINERY:  No.
 7                    MS. LEE:  We rest.
 8                    THE ARBITRATOR:   They rest.
 9                    MS. CHINERY:  Can we take a break?
10                    THE ARBITRATOR:  We're going to take --
11     are you ready for your case?  Okay.  Let's take 15
12     minutes.
13                    (Break from 10:08 to 10:24.)
14                    THE ARBITRATOR:  Mr. Ross, who's your
15     first witness?
16                    MR. ROSS:  My first witness is Casey
17     Veloso.
18                    THE ARBITRATOR:   Casey Veloso.  How are
19     you doing, sir?
20                    (Witness sworn.)
21                    THE ARBITRATOR:   Have a seat.  State
22     your name and your position, please, for the record.
23                    MR. VELOSO:  Casey Veloso.
24                    THE ARBITRATOR:  Spell that.
25                    MR. VELOSO:  V-E-L-O-S-O.
```

Robert Ross   11/18/2021

Page 507

```
 1   so you want us to make all the charges to evidence,
 2   then transcripts by the 18th of December, January 18th
 3   we switch them with you and Josh, next day.  So for the
 4   Vargas one, that's due December 30th, correct?
 5                   THE ARBITRATOR:   Yeah.
 6                   MS. CHINERY:  Is that -- can I ask about
 7   the other one, too?  Okay.  You said something --
 8                   THE ARBITRATOR:  Let's go off the record.
 9                   (End of Volume 3.)
10                   (Proceedings concluded at 1:15 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Robert Ross    11/18/2021

Page 508

```
 1   STATE OF TEXAS          )

 2   COUNTY OF DALLAS        )

 3           THIS IS TO CERTIFY THAT I, MELISSA J. CARSON,

 4   a Certified Shorthand Reporter in and for the State of

 5   Texas, reported in shorthand the proceedings had at the

 6   time and place set forth in the caption hereof, and

 7   that the above and foregoing 183 pages contain a full,

 8   true, and correct transcript of the said proceedings.

 9           Certified to on this the 17th day of December,

10   2021.

11

12

13   _____

14   MELISSA J. CARSON, Certified
     Shorthand Reporter in and for
15   The State of Texas

16

17   Certification No. 1737

18   CRCB Firm Registration #489

19   Expires August 31, 2022

20   CARSON REPORTING & ASSOCIATES

21   Post Office Box 551628

22   Dallas, Texas 75355-1628

23   Telephone 214.346.3434

24

25
```

These pointless charges continue to cost me my own personal time, energy, resources, and emotional strain to prove my innocence when my time should be focused on my wife and children in the middle of a pandemic.



**Checks and Balances**

To: treasurer (treasure

Cc: Hussar Michelle (Hussar.Michelle                    ), secreta ry (secretary@apfa.org), Sbender (Sbender presidents (presidents                    , vp (vp@a

See Less                          July 31, 2019 at 12:09 PM

**(no subject)**

Dear Craig,

Today marks 3 weeks since both Sandra and I have came to the National office and were shown all the checks for the previous National Officers. We would like our valid questions regarding what they were for, how much the overpayment was, and when will it be paid back, answered. It is very concerning that both Sandra and I have had to write so many times to get valid questions regarding our money answered. These checks were paid out over a year ago. I would think getting miscalculated membership money repaid would be a top priority.

Thank you in advance for your assistance with this matter.

Sincerely

Melissa Chinery



placed with collections on January 21, 2021 which has been 50 days ago from today. As of today no payment has been made.

50 days in collection and not a cent repaid!

#payupBobRoss

Like    Comment    Send

26

## Fw: Financials

melchinery <melchinery  >

Mon 5/17/2021 1:47 PM

To: The UPS Store #5581 <store5581@theupsstore.com>

> CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin.

Sent from the all new AOL app for iOS

Begin forwarded message:

On Friday, June 21, 2019, 5:28 AM, melchinery@aol.com <melchinery@aol.com> wrote:

Dear Craig,

I have yet to receive a response to this letter. Since I have heard nothing, I'm not even sure you received it. I am resending it again in hopes of getting answers to my valid questions. As a dues member in good standing I have a right to answers.

Please respond in a timely matter.

Regards,

Melissa Chinery

New from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Tuesday, June 18, 2019, treasurer <treasurer > wrote:

Dear Craig,

I'm writing to you because after leaving your office I'm more concerned than ever with the lack of transparency regarding our financials.

On 4 different occasions I came to Dallas: (May 28, May 29, June 3, and June 6), flown in, took time off work, paid

I'm writing to you because after leaving your office I'm more concerned than ever with the lack of transparency regarding our financials.

On 4 different occasions I came to Dallas; (May 28, May 29, June 3, and June 6), flown in, took time off work, paid for or arranged for accommodations, and made appointments with you to discuss the blatant discrepancies regarding the Ross/ Martin administration. I asked once again on our fourth meeting to see the four $4,000 checks that were written to three of the previous National Officers.  These four $4,000 checks were cashed and deposited the same day. Once again I was told no. I asked to see the profit sharing checks and was once again told no. I asked if you had made any headway into the investigation for the double dipping with vacation payouts to the previous National Officers; you said, "I haven't done anything yet".

I also wished to discuss the blatant abuse of mileage by the former base CLT President. I'm aware that legal called the DOL when this transpired.   However, the DOL was not informed about her prior history of "mistakes" with her expenses. As I told you in our meeting, the CLT base president prior to Wanda Sarnaki had a meeting with Bob Ross and Eugenio Vargas regarding Cathy Bossi's signature being forged by Ms Sarnaki. Ms Bossi asked for restitution to be made for the months that her name was forged. Bob Ross and Eugenio Vargas said it was a "mistake" and forgave the months of forgery and she was not made to give restitution.

Also, I wanted to talk about the missing box of original forms that was sent by the person who turned Ms

Sarnaki in. How does a box that is signed for go missing from your office? You replied, "we don't have it, it's not here". I also asked who calculated the monetary figure Ms Sarnaki had to repay. At our second meeting you said it was Rachel in accounting. At our third meeting you said it was you. Rachel is the same recipient for whom two people stated Ms Sarnaki bought a necklace, bracelets and other gifts. How is this appropriate? You said in our meeting it wasn't a crime to buy people gifts. Pardon my bluntness but considering Ms Sarnaki lives 1.6 miles from the airport and charged thousands and thousands of dollars in mileage, breaking policy month after month and this is the person in accounting that initially signed off on it, shouldn't this be handled by someone that wouldn't have a conflict of interest? Also, were these gifts bought with mileage money? I was told she was buying flowers, gift cards and gifts and expensing this to mileage. Was the jewelry that Rachel received accepted on APFA property? Was legal informed about the missing box of documents and about the gifts given to the accounting department before they called the DOL? Don't you believe when this was reported to your office that there should have been a formal investigation? This is thousands of dollars that were signed off on by two of the previous National Officers every month from April 2017 to November 2018, and this was a "mistake"? I asked who signed off on them and was not given an answer. I asked why the numbers were changed to reflect lower numbers than the original mileage forms that Ms Sarnaki submitted and paid for. I have the original mileage forms by the person who turned her in and they did not reflect the numbers you gave me. When I presented these numbers to you, you verified my numbers were correct, I'm just confused why they were changed to reflect lower numbers in the financials. Why were the numbers altered?

for or arranged for accommodations, and made appointments with you to discuss the blatant discrepancies regarding the Ross/ Martin administration. I asked once again on our fourth meeting to see the four $4,000 checks that were written to three of the previous National Officers. These four $4,000 checks were cashed and deposited the same day. Once again I was told no. I asked to see the profit sharing checks and was once again told no. I asked if you had made any headway into the investigation for the double dipping with vacation payouts to the previous National Officers; you said, "I haven't done anything yet".

I also wished to discuss the blatant abuse of mileage by the former base CLT President. I'm aware that legal called the DOL when this transpired.   However, the DOL was not informed about her prior history of "mistakes" with her expenses. As I told you in our meeting, the CLT base president prior to Wanda Sarnaki had a meeting with Bob Ross and Eugenio Vargas regarding Cathy Bossi's signature being forged by Ms Sarnaki. Ms Bossi asked for restitution to be made for the months that her name was forged. Bob Ross and Eugenio Vargas said it was a "mistake" and forgave the months of forgery and she was not made to give restitution.

Also, I wanted to talk about the missing box of original forms that was sent by the person who turned Ms Sarnaki in. How does a box that is signed for go missing from your office? You replied, "we don't have it, it's not here". I also asked who calculated the monetary figure Ms Sarnaki had to repay.  At our second meeting you said it was Rachel in accounting.  At our third meeting you said it was you. Rachel is the same recipient for whom two people stated Ms Sarnaki bought a necklace, bracelets and other gifts. How is this appropriate? You said in our meeting it wasn't a crime to buy people gifts. Pardon my bluntness but considering Ms Sarnaki lives 1.6 miles from the airport and charged

thousands and thousands of dollars in mileage, breaking policy month after month and this is the person in accounting that initially signed off on it, shouldn't this be handled by someone that wouldn't have a conflict of interest? Also, were these gifts bought with mileage money? I was told she was buying flowers, gift cards and gifts and expensing this to mileage. Was the jewelry that Rachel received accepted on APFA property? Was legal informed about the missing box of documents and about the gifts given to the accounting department before they called the DOL? Don't you believe when this was reported to your office that there should have been a formal investigation? This is thousands of dollars that were signed off on by two of the previous National Officers every month from April 2017 to November 2018, and this was a "mistake"? I asked who signed off on them and was not given an answer. I asked why the numbers were changed to reflect lower numbers than the original mileage forms that Ms Sarnaki submitted and paid for. I have the original mileage forms by the person who turned her in and they did not reflect the numbers you gave me. When I presented these numbers to you, you verified my numbers were correct, I'm just confused why they were changed to reflect lower numbers in the financials.  Why were the numbers altered?

I would also like to know why legal informed the Board of Directors after legal had already settled the issue? I've spoken to one of the Board of Directors and they will attest they were informed after she was allowed to pay the money back. The Board of Directors is the governing body of this union and they should have been apprised before Ms Sarnaki was allowed to make restitution and the issue was settled. I have also spoken to someone on the Executive Committee and I'm baffled why they weren't informed of this.

Also, it has come to my attention that the current CLT base

I would also like to know why legal informed the Board of Directors after legal had already settled the issue? I've spoken to one of the Board of Directors and they will attest they were informed after she was allowed to pay the money back. The Board of Directors is the governing body of this union and they should have been apprised before Ms Sarnaki was allowed to make restitution and the issue was settled. I have also spoken to someone on the Executive Committee and I'm baffled why they weren't informed of this.

Also, it has come to my attention that the current CLT base president has not signed off on any of Ms Sarnaki's expenses since he took office. Since the President must sign off on their base expenses, please tell me how Ms Sarnaki has gotten paid since he took office? Who has signed off on her expenses since April?

It is very clear from our last meeting you are not taking any of this seriously. Why there are no straight answers for my valid questions is very concerning.  As the Treasurer of our union it is your fiduciary responsibility to protect the membership from misappropriation and theft. Why is everything getting swept under the rug? When will my questions be answered and when this situation be rectified properly?

Please know that to date I have received no answers to my valid questions so my time clock to file internal charges has not started. As a dues paying member it is my right to have my valid questions answered. Your response to my questions would be appreciated.


Regards,

president has not signed off on any of Ms Sarnaki's expenses since he took office. Since the President must sign off on their base expenses, please tell me how Ms Sarnaki has gotten paid since he took office? Who has signed off on her expenses since April?

It is very clear from our last meeting you are not taking any of this seriously. Why there are no straight answers for my valid questions is very concerning. As the Treasurer of our union it is your fiduciary responsibility to protect the membership from misappropriation and theft. Why is everything getting swept under the rug? When will my questions be answered and when this situation be rectified properly?

Please know that to date I have received no answers to my valid questions so my time clock to file internal charges has not started. As a dues paying member it is my right to have my valid questions answered. Your response to my questions would be appreciated.

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

## Fw: Financials

melchinery <melchinery  >

Mon 5/17/2021 1:48 PM

**To:** The UPS Store #5581 <store5581@theupsstore.com>

CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin.

Sent from the all new AOL app for iOS

Begin forwarded message:

On Friday, June 21, 2019, 10:56 AM, melchinery@aol.com <melchinery@aol.com> wrote:

> Also, why do you have to check with legal
> to see if it is ok to tell us any financial information. Per the APFA Constitution good
> standing members are allowed to see all financial records and reports.
>
> I dont understand any of this.
>
> Sent from AOL Mobile Mail
> Get the new AOL app: mail.mobile.aol.com
>
> > On Friday, June 21, 2019, Craig Gunter <treasurer  > wrote:
> >
> > Melissa
> > I did give you the full 45 mins I promised you at that meeting. I sat with you and we
> > went over all the mileage. I have been very corporative with you. I told you I would
> > check with legal to see the other information you requested.
> > We agreed to a date of August 5th.
> > Let me know what time you would like to come in. I will check to see if legal can meet
> > with us.
> >
> > Get Outlook for iOS
> >
> > **From:** melchinery@ <melchinery >
> > **Sent:** Friday, June 21, 2019 10:28:56 AM
> > **To:** Craig Gunter
> > **Cc:** Liz Geiss; Susannah Bender; Lori Bassani; Lisabeth Hillman; Hussar.Michelle
> > **Subject:** Re: Financials
> >
> > I did not get a voicemail. Is this like when you said you had a meeting last Thursday and
> > hurried me out of your office only for someone to call me from your office and tell me
> > that you were on your way to the airport and listed on the 6pm home.

**APPENDIX 85**

I'm really exhausted trying to get answers from you. There is not one reason I should be going to these lengths to get straight answers about this. I forgave the incident about you breaking my confidentiality and telling people my name. I have taken being treated lead than respectful and being reminded every time I was in your office that I was "keeping you from real work" by seeing me. However, my patience is wearing thin

As a dues paying member, I have a right to my valid questions. You hindering this process is not ok and quite frankly very chargeable.

Melissa Chinery

Sent from AOL Mobile Mail
for the view AOL app: **mail.mobile.aol.com**

On Friday, June 21, 2019. Craig Gunter <treasurer@apfa.org> wrote:

I left you a VM

Get Outlook for iOS

**From:** melchinery@aol.com <melchinery@aol.com>
**Sent:** Friday, June 21, 2019 7:28:18 AM
**To:** Craig Gunter
**Cc:** Liz Geiss; Lori Bassani; Lisabeth Hillman; Hussar Michelle@dol.gov; Susannah Bender; Hussar.Michelle@dol.gov
**Subject:** Re: Financials

Dear Craig,

I have yet to receive a response to this letter. Since I have heard nothing, I'm not even sure you received it. I am resending it again in hopes of getting answers to my valid questions. As a dues member in good standing I have a right to answers.

Please respond in a timely matter.

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
for the view AOL app: **mail.mobile.aol.com**

On Tuesday, June 18, 2019, treasurer@apfa.org <treasurer@apfa.org> wrote:

Dear Craig,

**APPENDIX 86**

Fw:

melchinery <melchinery█████████>
Mon 5/17/2021 1:49 PM
To: The UPS Store #5581 <store5581@theupsstore.com>

CAUTION! This email originated from outside of the organization. Please do not open attachments or
click links from an unknown or suspicious origin.

Sent from the all new AOL app for iOS

Begin forwarded message:

On Friday, July 12, 2019, 3:27 PM, melchinery@aol.com <melchinery@aol.com> wrote:

Dear Craig,

Thank you for taking the time to meet with Sandra and myself on
July 10, 2019. I have a couple of other questions regarding what
was discussed in that meeting. Attached below I listed the check
amounts and check numbers shown to both Sandra and me, paid
out to Bob Ross, Nena Martin, Marcy Dunaway, and Eugenio
Vargas.

Per APFA policy two National Officers must sign off all on all
payroll checks dispersed. I would like the names of the two
officers that signed off on each check number listed below:

**Bob Ross**
March 9, 2018 -D15309-$2,458.19-86.67hrs
March 15,2018-D15373-$5,245.58-86.67hrs
March 29,2018-D15384-$968.76-86.67hrs
April 13,2018-D15530-$5545.58-86.67hrs
April 30,2018-D15572-$4495.88 86.67hrs
May 15,2018-D15650-$5,545.58-86.67hrs
May 31,2018-D15694-$2842.26-86.67hrs
June 15,2018-D15772-$3892.26-86.67hrs

June 29,2018-D15824-$4,495.58-86.67hrs
July 13,2018-D15927-$5,198.88-173.34hrs

March 29, 2018-D15387-$5,339.02-00:00
March 29, 2018-D15390-$4,851.41-00:00
March 29, 2018- D15391-$4851.41-00:00
March 29, 2018-D15393-$3,903.43-00:00
March 29, 2018-D15395-$4014.96-00:00
March 29, 2018- D15347-$3,903-43-00:00
March 29, 2018-D15398-$3903.44-00:00
March 29, 2018-D15399-$3,419.41-00:00
March 29, 2018 -D15400-$3,419.41-00:00
March 29, 2018 -D15454-$4,495.58-00:00

**Nena Martin**
June 29,2018-D15832-$4000
June 29, 2018-D15836-$4000
June 29, 2018-D15840-$4000
June 29, 2018-D15844-$4000
June 29, 2018- D15848-$3404.60

**Marcy Dunaway**
June 29,2018-D15829-$4000
June 29, 2018-D15833-$4000
June 29, 2018-D15837-$4000
June 29, 2018-D15841-$4000
June 29, 2018-D15845-$2,234.60

**Eugenio Vargas**
June 29,2018-D15830-$4000
June 29, 2018-D15834-$4001
June 29, 2018-D15838-$4002
June 29, 2018-D15842-$4003
June 29, 2018-D15846-$462.92

How did Bob Ross make roughly 30k (not including monthly salary) in one day without a formal resolution from the Board of Directors explaining to the membership how our dues dollars were spent? And why was Bob Ross paid monthly, seemingly kept on payroll according to the dates of the checks, until July when he resigned in March?

Why are there double checks of the same amount? Please note that I copied the check numbers from what Sandra and I saw so there would be no discrepancy in differing from one check or the other.

You confirmed on July 10th, that SAF and MEA pay was used to formulate figures for the 3 previous National Officers. These checks were issued for vacation accrual, vacation buyback, and sick accrual. Why would SAF and MEA pay be used for vacation and sick time? You stated they were overpaid, yet the figure of how much has been over paid has yet to be calculated or repaid over a year later from when it was paid out. When can we expect to see that money repaid to the membership? The checks were cut, disbursed, and deposited on the same day, June 29,2018, which was 3 days before the three previous people in question left their position as National Officers. Am I correct to assume these 3 previous National Officers signed off on their own wrongly calculated checks? I'm confused because past practice has always been that the incoming National Officers issue this payment not by outgoing Officers signing off on their own payments. Also, it is my understanding that this formula to calculate amounts like this has never been used before. How was this allowed to happen?

Thank you in advance for your assistance with these questions. Your timely response is appreciated.

Sincerely,

Melissa Chinery

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Tuesday, January 14, 2020, Mark Richard <mrichard ██████████████ > wrote:

Ms. Chinery:

Your email is both factually wrong and offensive. The multiple lawyers who have worked on this matter have done so diligently.

Further, to falsely accuse me as you have in this email is outrageous and uncalled for. You have no idea what the lawyers have done. I respectfully ask you to immediately cease from such unfounded statements.

Thank you.

CONFIDENTIALITY NOTICE: This e-mail communication contains confidential information. The information in this e-mail is intended only for the use of the addressee(s) named above. If you have received this e-mail and you are not an intended addressee(s) named above, please immediately notify me by telephone at ████████ Any disclosure, copying, distribution, or other use of any information transmitted in this e mail is strictly prohibited, except for the use of information regarding how to contact me to advise me of your erroneous receipt of this e-mail. Mark Richard, Phillips, Richard, Rind, P.A.

On Jan 14, 2020, at 2:42 AM, "melchinery █████ <melchinery ██████ > wrote:

Dear Mr Richard,

You said when I met with you in Dallas in October that would be taken care of. Is this your idea of taking care of it?

Again, I remind you this is MISAPPROPRIATED money that was wrongfully taken from the membership by former National Officers before they left office.

We all know the National Treasurer is a trainwreck but you are the "union" lawyer that helped the crooks get away with it.

**APPENDIX 90**

Shame on you.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Monday, January 13, 2020, treasurer ████████ <treasurer ████████> wrote:

Craig,

Still have no response to my valid questions from you. "Making arrangements to pay" is not having the bill paid by January 6th. Per the EC resolution the money was supposed to be received and everything taken care of by the 6th or there would a lawsuit filed. If you are saying that arrangements have been made that means the three in question have not paid are not complying with the resolution put forward by the EC. This is chargeable.

I want answers to my questions. This is misappropriated money that was wrongfully taken, the three in question have known about this for months. Why hasn't it been repaid yet? We are not a bank that gives out interest free loans.

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 10, 2020, treasurer ████████ <treasurer ████████> wrote:

Arrangements to pay by when? Was the payment in full and what about the extra money that Nena Martin owes? Is she paying it back with the other money she owes? This is OUR money, we have a right for valid questions to be answered. Very frustrating when you don't answer simple questions.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 10, 2020, Craig Gunter <treasurer ████████> wrote:

Melissa,

All three Former national officers have made arrangements to pay the full amount owed.
Craig Gunter

Get Outlook for iOS

**From:** melchinery@ ████████ <melchinery ████████>
**Sent:** Friday, January 10, 2020 4:08:03 PM
**To:** Craig Gunter <treasurer ████████>
**Cc:** Liz Geiss <vp ████████>; Lori Bassani <president ████████>; Lisabeth Hillman <secretary ████████>
**Subject:** Re:

Craig,

Why is it so impossible for you to answer my questions? It's extremely frustrating that you ignore valid questions.

Please get back to me with answers.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 10, 2020, treasurer ███████ <treasurer ███████> wrote:

Second request

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Thursday, January 9, 2020, treasurer ███████ <treasurer ███████> wrote:

Dear Craig,

I would like to know two things, first have the former National Officers repaid the misappropriated funds they paid out to themselves before they left office? Per the EC resolution this money was supposed to be paid back by January 6th. Did they pay it back by that date?

Secondly, I became aware last week that when the three former National Officers reviewed the calculations with you and the auditor at the October meeting there was an accounting error discovered. This error caused an overpayment to Nena Martin during her transition. Is she repaying this amount also?

Thank you in advance for your help.

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

## Fw: Re:

**melchinery <melchinery**  **>**

Mon 5/17/2021 1:56 PM

To: The UPS Store #5581 <store5581@theupsstore.com>

> CAUTION! This email originated from outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin.

Sent from the all new AOL app for iOS

Begin forwarded message:

On Wednesday, January 22, 2020, 3:31 PM, Craig Gunter <treasurer  wrote:

Melissa,

In all due respect, I have provided you with the information. This matter has been handled by the Executive Committee in accordance with the APFA Constitution and Policy Manual.

Thank you,

### Craig Gunter

*APFA National Treasurer*



## Association of Professional Flight Attendants (APFA)
*Proudly Representing the Flight Attendants of American Airlines*

Twitter: @apfaunity | www.APFA.org | Facebook: /apfaunity

*This Electronic Transmission Is Intended Only For The Addressee Shown Above. It May Contain Information That Is Privileged, Confidential Or Otherwise Protected From Disclosure. Any Review, Dissemination Or Use Of This Transmission Or Its Contents By Persons Other Than The Addressee Is Strictly Prohibited. If You Have Received This Electronic Transmission In Error, Please Delete the E-Mail And Notify Me Immediately By Telephone Or By Reply E-Mail.*

**From:** melchinery███████ <melchinery███████>
**Sent:** Wednesday, January 22, 2020 12:08 PM
**To:** Craig Gunter <treasurer███████ >
**Cc:** Liz Geiss <vp███████ >; Lori Bassani <president███████>; Susannah Bender <sbender███████>; Hussar.Michelle███████; Lisabeth Hillman <secretary███████>
mrichard███████
**Subject:** Re: Re:

Craig,

Are you back from vacay yet? Please answer my questions.

Melissa Chinery

~~Sent from AOL Mobile Mail~~
~~Get the new AOL app:~~ mail.mobile.aol.com

On Friday, January 17, 2020, treasurer███████ <treasurer███████> wrote:

Craig,

Please send me my answers. You hiding from giving them is a little pathetic. Your irresponsible behavior and your lack of follow through has literally demolished your entire administration. I hope you know that.

~~Sent from AOL Mobile Mail~~
~~Get the new AOL app:~~ mail.mobile.aol.com

On Friday, January 17, 2020, treasurer███████ <treasurer███████> wrote:

Badgering you? Are you kidding? If you had done your job and answered the questions when I first asked there would be no need to chase you for answers.

You have business being in office.

~~Sent from AOL Mobile Mail~~
~~Get the new AOL app:~~ mail.mobile.aol.com

On Friday, January 17, 2020, Craig Gunter <treasurer███████> wrote:

I believe you get vacation days as well Melissa. So stop badgering me. I've given you answers. As I mentioned earlier I will be back on Tuesday.

Get Outlook for iOS

**From:** melchiner███████ <melchinery███████>
**Sent:** Friday, January 17, 2020 2:11:00 PM
**To:** Craig Gunter <treasurer███████
**Cc:** Liz Geiss <vp███████>; Lisabeth Hllman <secretary███████>; Susannah Bender <sbender███████>; Lori Bassani <president███████
Hussar.Michelle@███████ Hussar.Michelle@dol.gov >; mrichard@███████
<mrichard███████
**Subject:** Re: Re:

Very convenient. Can I get my answers then?

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, Craig Gunter <treasure███████ wrote:

Melissa,
I am on vacation today.
I'll be in back in the office on Tuesday

Get Outlook for iOS

**From:** melchinery███████ <melchinery███████>
**Sent:** Friday, January 17, 2020 2:07:49 PM
**To:** Craig Gunter <treasurer███████
**Cc:** Liz Geiss <vp███████>; Susannah Bender <sbender███████; Lisabeth Hillman <secretary███████>; Hussar.Michelle███████
<Hussar.Michelle███████>; Lori Bassani <president███████>;
mrichard███████ <mrichard███████>
**Subject:** Re: Re:

Does your silence to my questions mean that the membership not allowed to know?
Are you calling it a "loan" to help the three in question the same way you helped
Wanda hide her mileage fiasco?

This is all very shady, very disappointed in you Craig.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, treasurer███████ <treasure███████ wrote:

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, treasurer███████ <treasurer███████ wrote:
Craig,

Can you please stop being an obstructionist and just answer the questions please?

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, treasure███████ <treasurer███████ wrote:

Are they paying in installments? And why are are you trying to call it loan? Did you find more money that Nena Martin owed when you went with her on the October 31st?

When are you going to tell the membership about this? Don't you think we all have a right to know?

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, Craig Gunter <treasurer ▉▉▉▉▉> wrote:

Melissa,

Per the EC resolution, they all met the deadline and agreed to pay the full amount. We are working on paperwork internally to finalize the payments.

Craig

Get Outlook for iOS

From: melchinery ▉▉▉▉ <melchinery ▉▉▉▉>
Sent: Friday, January 17, 2020 1:39:20 PM
To: Craig Gunter <treasurer ▉▉▉▉
Cc: Liz Geiss <vp ▉▉▉>; Susannah Bender <sbender ▉▉▉>; Lori Bassani <president ▉▉▉>; Hussar.Michelle <Hussar.Michelle ▉▉▉>; mrichard <mrichard ▉▉▉>; Lisabeth Hillman <secretary ▉▉▉
Subject: Re: Re:

Craig,

Are you being advised by legal not to answer my questions regarding the money being paid back? I find It odd that you suddenly went silent after my email exchange with Mark Richard. He didn't respond to my questions either.

Why isn't the membership allowed to know if the money was paid back? Why is it being called a "loan" when it is misappropriated money? Why are they allowed to pay in installments? Also, per the LMDRA I
thought they can't have a loan to the APFA more than $2000. To my knowledge they owe over $4000 each,

Please respond to my questions.

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 17, 2020, treasurer ▉▉▉ <treasurer ▉▉▉> wrote:

Craig,

Still waiting for answers. Am I going to get them or are you just going to ignore the membership to protect the ones that have ripped us off?

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Thursday, January 16,
2020, treasurer▮▮▮▮ <treasurer▮▮▮▮▮ wrote:

Craig,

I'm still waiting for my answers. How long can these meetings be?

Sent from AOL Mobile Mail
On ▮▮▮▮ AOL ▮▮ mail.mobile.aol.com

On Tuesday, January 14,
2020, treasurer▮▮▮ <treasurer▮▮▮▮ wrote:

The EC resolution stated that the money was to be paid back by the 6th or a lawsuit would be filed. From what I understand the money isn't paid back yet and there might be more money owed from an over payment to Nena Martin.

Please know you saying the three have "made arrangements" to pay it back is flimsy at best. That is not the same as paid in full. Next thing you will be calling this is a loan or letting them do a 2 year payment plan to make it easier for them to pay it off or something weird like that. Again, this is misappropriated money and it should be treated as such.

The reason I need those answers, we have Article 7 charges for the 3 former National Officers ready to submit for lack of payment and failure to comply with the EC resolution set forth last month. We want to submit them today so please get back to me by the end of the day with all of my answers.

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Tuesday, January 14, 2020, Craig Gunter <treasure▮▮▮▮▮ wrote:

You just need to give me time. I will answer as soon as possible.

Get Outlook for iOS

From: melchin▮▮▮▮ <melchinery▮▮▮▮ >
Sent: Tuesday, January 14, 2020 2:23:33 PM
To: Craig Gunter <treasurer▮▮▮
Cc: Liz Geiss <vp@▮▮▮ >; Lisabeth Hillman <secretary▮▮▮ >
S▮usannah Bender <sbender▮▮▮ >; Lori Bassani
<president▮▮▮ >; mrichard▮▮▮
<mrichard▮▮▮ >; Hussar.Michelle▮▮▮

&lt;Hussar.Michelle█████
**Subject:** Re: Re: ████████

It's not that hard to answer a couple of questions.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Tuesday, January 14, 2020, Craig Gunter &lt;treasurer██████&gt; wrote:

And Melissa I will get your answered as soon as possible. I have been in
meetings all day yesterday and today.

Get Outlook for iOS

**From:** melchinery█████ &lt;melchinery██████&gt;
**Sent:** Tuesday, January 14, 2020 2:18:12 PM
**To:** Craig Gunter &lt;treasurer████
**Cc:** Liz Geiss &lt;vp█████&gt;; Lisabeth Hillman &lt;secretary██████
Lori Bassani &lt;president███████&gt;; Hussar.Michelle
&lt;Hussar.Michelle█████&gt;; Susannah Bender &lt;sbender█████
mrichard@phillipsrichard.com &lt;mrichard████████
**Subject:** Re: Re:

Dear Craig,

Still waiting for my answers to all of my questions. Can you answer them
please.

Melissa

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Monday, January 13,
2020, treasurer█████ &lt;treasurer█████&gt; wrote:

Craig

Still have no response to my valid questions from you. "Making
arrangements to pay" is not having the bill paid by January 6th. Per the
EC resolution the money was supposed to be received and everything
taken care of by the 6th or there would a lawsuit filed. If you are saying
that arrangements have been made that means the three in
question have not paid are not complying with the resolution put
forward by the EC. This is chargeable.

I want answers to my questions. This is misappropriated money that was
wrongfully taken, the three in question have known about this for
months. Why hasn't it been repaid yet? We are not a bank that gives
out interest free loans.

Melissa Chinery

**APPENDIX 98**

Sent from AOL Mobile Mail

Get the new AOL app: mail.mobile.aol.com

On Friday, January 10, 2020, treasurer ████████ <treasurer ████████> wrote:

Arrangements to pay by when? Was the payment in full and what about the extra money that Nena Martin owes? Is she paying it back with the other money she owes? This is OUR money, we have a right for valid questions to be answered. Very frustrating when you don't answer simple questions.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 10, 2020, Craig Gunter <treasurer ████████ wrote:

Melissa,

All three Former national officers have made arrangements to pay the full amount owed.
Craig Gunter

Get Outlook for iOS

From: melchinery@aol.com <melchinery@aol.com>
Sent: Friday, January 10, 2020 4:08:03 PM
To: Craig Gunter <treasurer ████████>
Cc: Liz Geiss <vp ████████; Lori Bossani <president ████████;
Lisabeth Hillman <secretary ████████>
Subject: Re:

Craig,

Why is it so impossible for you to answer my questions? It's extremely frustrating that you ignore valid questions.

Please get back to me with answers.

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Friday, January 10 2020, treasurer ████████ <treasurer ████████> wrote:

Second request

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

On Thursday, January 9, 2020, treasurer ████████ <treasurer ████████> wrote:

Dear Craig,

I would like to know two things, first have the former National Officers repaid the misappropriated funds they paid out to themselves before they left office? Per the EC resolution this money was supposed to be paid back by January 6th. Did they pay it back by that date?

Secondly, I became aware last week that when the three former National Officers reviewed the calculations with you and the auditor at the October meeting there was an accounting error discovered. This error caused an overpayment to Nena Martin during her transition. Is she repaying this amount also?

Thank you in advance for your help.

Regards,

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: **mail.mobile.aol.com**

**Association of Professional
Flight Attendants**

Representing the Flight Attendants of American Airlines

November 24, 2020

**VIA Return Receipt, Certified Mail #7019 1120 0000 0179 3182**

Robert Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

RE: Article VII Charges

Dear Bob:

In accordance with Article VII of the APFA Constitution this letter is to inform you that the enclosed revised charges have been filed against you by Melissa Chinery and Sandra Lee. Enclosed is a copy of the charges which were received on November 24, 2020.

I am also enclosing a copy of Article VII of the APFA Constitution and Section 17 of the APFA Policy Manual. These documents describe APFA's Article VII procedures.

Sincerely,

Josh Black
APFA National Secretary

Cc:     Melissa Chinery
        Sandra Lee
        APFA Board of Directors
        APFA Executive Committee
        Article VII File

APPENDIX 101

**Liz Marko**

| | |
|---|---|
| **From:** | melchinery@aol.com |
| **Sent:** | Tuesday, November 24, 2020 12:32 PM |
| **To:** | National Secretary |
| **Cc:** | Hussar.Michelle@dol.gov; National Treasurer; Sandra Lee; National Vice President; National President |

Please consider this the formal filing of internal charges in accordance with Article VII 2. A. of the APFA Constitution and other Policy Manual violations against former APFA President Bob Ross.

After years of being denied the ability to view the underlying financial documentation of the Bob Ross administration, we were finally permitted to see specific documents that prove a plethora of violations of the APFA Policy Manual as well as Constitutional violations. Our ability to see these documents started on September 24, 2020. However, after 16 hours over two days, we still have not seen half of the documentation requested. Due to a lack of access to available dates to continue our investigation, we are forced to file on what has been uncovered due to time limits. We will undoubtedly have to file further Article VII charges.

The violations include many general violations of the constitution and policy manual as well as specific sections listed later in these charges.

Article VII Section 1.F: Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or Policy Manual.

Article II Section 2: Obligations of members:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties and responsibilities.

Article I Section 7: Definitions (for clarification of the above violations)

E. "Duty" means an obligation of performance, care, or observance which rests upon a person in any position or fiduciary capacity with or as a member of the APFA.

M: "Privilege" means a benefit or advantage enjoyed by a person in any position or fiduciary capacity with or as a member of the APFA.

1

O. "Responsibility:" means an obligation to answer for a duty to act or failure to act by a person in any position or fiduciary capacity with or as a member of the APFA.

Q. "Rights" means those powers and/or privileges inherent to a person in any position or fiduciary capacity with or as a member of the APFA.

### Violation: Misuse of Credit Card

Bob Ross took advantage of many of the policies that govern how an APFA National Officer gets paid. The first of the most prevalent violations are the misuse of the APFA credit card that is issued to each of the National Officers. As is dictated by Federal law as well as APFA policy, the credit card is for business expenses, not for personal use. We have found examples of Mr. Ross charging the rental of a moving truck on August 2016 to the APFA, after being reimbursed for moving his belongings from Sacramento. There are other examples of his purchasing sheets, blankets, pillows, mattresses, furniture as well as smaller items such as toilet paper and candy. All of these items as well as many other personal items, such as tools, were purchased with the union credit. None of the items were inventoried with the Treasurer and none were returned to the APFA upon the cessation of his term of office. Furthermore, as Mr. Ross elected to relocate to the DFW area and was afforded a moving expense reimbursement, he was not entitled to buy any furnishings using APFA funds

These purchases violate Policy Manual Section 5 G: Business related expenses:

Actual out-of-pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member , but to compensate him /her for actual expenses and losses, and is exclusive of other applicable reimbursement provisions in this policy.

### Violation: Rental Car

It was also recently found in our investigation that Mr. Ross also used the APFA to direct bill a rental car when he initially relocated to the Dallas area. He had charged the APFA for mileage per the relocation language in the Policy Manual after driving his personal car from Sacramento to Dallas in early July, 2016. The rental agreement spanned six months, from May to October, 2016 and APFA was billed at least $6230. Ross continued to have a rental car for more than 3 months after his car was in DFW.

• Policy Manual Section 5.H. Relocation states:

4. In addition to H.2 or H.3 above, the APFA will reimburse a National Officer/Chair for the cost of relocating one (1) personal automobile to/from the DFW area. Such reimbursement will be either for actual shipping charges or the applicable mileage rate by the APFA Board of Directors.

2

**Violation: Reimbursement**

Additionally, Mr. Ross claimed the mileage reimbursement on his APFA monthly expense form. Per federal law, the purpose of the mileage reimbursement is to compensate for the wear and tear on the automobile used for business purposes. Since APFA was paying for the rental car during this period, it would seem Ross was inappropriately billing APFA for wear on the rental car. Additionally, the bylaws make clear that travel from a personal residence to an APFA office is limited to 31 days.

Section 5.G: Other Expenses:

b. (1) a. Mileage:

2. Mileage shall not be reimbursed for travel between the representatives' residence and an APFA office that has been provided for the primary use of the representative for a period in excess of 31 days.

**Violation: SAF/MEA and meal expenses**

The following is another large subsection of abuse involving the SAF/MEA sections of Section 5: Trip Removal and Expense Policy. The intent of the policy is outlined in the policy statement.
Policy Manual Section 5: Trip removal and Expense Policy:

…..Financial policies herein are structured to diminish any financial penalty that a member may incur as a result of providing Union services to Flight Attendants. It is not the intent of this policy for any individual to experience financial gain.

As stated earlier, Mr. Ross used the APFA credit card for his own personal use. In the brief time we were allowed to look over the APFA credit card statements, there were an excessive amount of meals charged on the credit card by Mr Ross. It was referenced multiple times that the participants at these meals were the National Officers, the Officers and their Regional Representatives, as well as when Bob Ross ate alone.

This violates Section 5.F:

5. Business Related Expenses:

a. Representatives are authorized to pay for and to be reimbursed for the meal, snack, or beverage of a guest(s) or other business associate(s) on those occasions when the representative would reasonably be considered the host of an authorized APFA function or meeting.

3

1. Discretion and good judgment should be used when exercising this privilege and when incurring such legitimate and necessary Business-Related Expense.  Abuse, as determined by the Executive Committee, may lead to the limitation and revocation of this privilege.

2. In no case may an individual who is otherwise receiving an APFA MEA in any manner be considered the "guest" for the purposes of this provision.

**Violation: Payout of Vacation--Change of formula to include MEA and SAF**

Another abuse of power was demonstrated when the long standing formula used for the vacation and sick time payout was changed during the Bob Ross administration.  This was not an official change in the Policy Manual; it was changed in practice by the previous Treasurer in the Ross administration Eugenio Vargas. The result was to pay the National Officers in the Ross administration money they were not entitled to according to Policy Manual language.  Quite simply, it included MEA and SAF as well as the office stipend in with wages when considering the reimbursement of sick and vacation time.  This embezzlement was uncovered when the pay for the Vice President, Secretary and Treasurer was looked at more closely by the next administration long after the Ross administration had left office.

However, only when we were allowed to look at the financial records within the last was it discovered that the fourth recipient of these "overpayments" was in fact Bob Ross.  We had previously been told repeatedly Ross did not receive it.  The three National Officers were required to pay this windfall back to the Union, but to this day, Mr.Ross has not been required to do so.

This action violates Policy Manual Section 5.E.4:  SAF rates and 5.F.1:  Meal Expense Allowance (MEA)

a.  Daily SAF:

(1) If a Representative performs work for the APFA, and it is not otherwise paid for that day's work by means of an APFA Paid Trip Removal.......such representative shall receive the Daily SAF for work performed in accordance with the following schedule....

a.  Per Diem Rate (Accountable Plan)

(1) All members shall be entitled to an APFA Meal Expense Allowance (MEA) while performing work for the APFA.....

Also required for the purposes of calculating how much Special Assignment Fee (SAF) an officer receives, it is imperative that the officer fill out the required weekly paperwork that would ascertain how many hours were worked for the APFA.

4

The intent of the SAF is explained in Section 5.E.1.

a. The intent of the SAF is to offer payment to the representatives for the days that they conduct APFA business in excess of their normal scheduled bid line.

Calculation for the National Officers' SAF is specifically delineated in Section 5.E.4.c.

c. National Officers and Regional Representatives:  $400 minimum, but not to exceed $500 maximum.

Section 5.F.c. also clarifies that MEA is also calculated and not just considered salary:

The maximum "Actual MEA at Residence" that will be reimbursed  shall be seventy-five dollars ($75) per week or three hundred dollars ($300) per month.

As is evident in the language, the weekly activity sheets must be the reference to what the officer should make.  It is clear the language did not automatically award a National Officer these payments of MEA and SAF without verification of hours worked.

Bob Ross frequently did not fill out the weekly forms to collect this money, therefore was in violation of Section 5.I:  Submission of Expense Reports:

1.  All expense forms must be submitted to the APFA National Treasurer on APFA expense report forms.

a. Requests for SAF as provided in 5.E. above, and "Guaranteed MEA at Residence" as provided in F.3. above must be claimed on the weekly activity Report Form.

**Violation:  Maintaining an Office.**

Following in the same vein of payments that Bob Ross collected which he was not entitled to as a part of his salary, is Section 5.E.3:
Maintaining an Office Outside of Residence:

(a) a National Officer, Regional Representative, National Chair, Base President, and/or Base Vice President, JCBA Specialist or Strategic Communications Specialist who is required to maintain an APFA office outside of his/her place of residence shall be paid an additional two hundred and fifty dollars ($250) per month over and above the minimum monthly SAF provided above, or the actual SAF subject to reimbursement, whichever is greater.

5

Mr. Ross did not maintain an office outside his residence.  The main APFA office is maintained by the APFA, NOT by Mr. Ross.  No part of the building is his responsibility to maintain; therefore he requested compensation that is not due to him.

**Violation:  Payout of Vacation Days.**

The Policy Manual is also clear on the yearly payout of vacation days.

Section 6:  National Officer Pay and Benefits

B.1:  Vacation

c.  At the end of a fiscal year, up to fourteen (14) days of any unused APFA vacation allowance…..will be paid to the National Office at a rate prorated on the National Officers' annual salary for the period of APFA vacation allowance owed.

In the year of 2017 the documentation showed that Bob Ross was paid out for seventeen (17) days over policy limit for unused vacation. It was also unclear if he was paid another stipend of vacation pay of 35 days for his "end of term payout" in2017.  Mr. Ross was paid out for 29 days of "unused vacation" and 20.44 days for the "end of term" for 2018.  How is it possible to get two "end of term" vacation payouts two years in a row?  There is also some question as to whether Mr. Ross was paid at his annual salary level for his vacation payout, as dictated by the APFA Policy Manual.

**Violation:  Buyout**

As has been recently revealed, former President Bob Ross received a"buyout" from the APFA Board of Directors, and was compensated for leaving office.  Indeed, he collected more money than if he had remained in office for the four (4) months left in his term. However, once Mr. Ross left office, he asked for and collected from the APFA compensation in two forms he was not entitled to per the"agreement."  One form of compensation which he received every month was MEA and SAF and Maintaining an Office Outside Residence.  Mr. Ross continued to collect one thousand and fifty dollars ($1050) a month.

He collected these payments for the months of:  March, April, May, June and July of 2018. This stipend is clearly hinged on reimbursement related to work and not part of the National Officer salary.  To accept this money is in clear violation of the intent of the Policies written that allows a representative extra compensation for working hours above and beyond their scheduled workload.  By taking this money this is another violation of the Section 5 policies outlined above.

6

**Remedy**

The relief sought in this multitude of offenses that all were designed to inflate pay and benefits that Mr. Ross received are the following:

1.    An independent forensic audit must be accomplished to verify how much was fraudulently siphoned from the APFA payroll, and Mr. Ross must pay this money back.

2.    Mr. Ross must be considered a member in bad standing and barred from representing American Airlines Flight Attendants for a period of 10 years.

3.    There must be changes to the Policy Manual so that this amount of financial malfeasance is not allowed to happen again.

4.    There must be a separate body of trained individuals that do not hold regular positions with the APFA that can oversee the annual audit.

5.    The APFA credit card must have independent oversight as to whether the charges are reimbursable or appropriate pre the APFA Constitution, and Federal Law.  This oversight must go beyond the                    National Officers, as they have a vested interest in allowing inappropriate charges to be paid.

6.    There should be yearly training in the LMRDA added to the continuing education of APFA officers.

7.    This award must be disseminated to the line flight attendants with an explanation to encourage oversight of their dues dollars.

8.    Any and All Other Relief deemed necessary.


Melissa Chinery LAX
Sandra Lee LAX

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

7

**APPENDIX 108**

# ARTICLE VII

## HEARINGS AND DISCIPLINARY PROCEDURES

### Section 1.   GROUNDS FOR CHARGES:

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

A. Failure to pay dues, assessments or penalties levied by the Association;

B. Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

C. Willfully acting as a strike breaker during any work stoppage duly authorized by the Association;

(1) Notwithstanding Section 1.C, above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

D. Willful violation of a Flight Attendant's Collective Bargaining Agreement;

E. Theft or embezzlement of Association monies or property;

F. Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee;

G. Willfully acting in a manner that causes the Association to violate its legal obligations; or

H. Willfully bringing charges without reasonable basis against another member, officer or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

### Section 2.   FILING OF CHARGES:

A. A charge may be filed by any member in good standing. All charges shall be filed with the Secretary and shall be proffered in writing and shall be specific as to the alleged act(s) and/or the Article(s) of this Constitution allegedly violated which constitute the basis of the charge(s).

B. The Secretary shall cause a copy of the charges to be served upon the accused and the accuser within seven (7) days following receipt of the charges. Such notification shall be by registered mail, return receipt requested to their last known addresses, and shall furnish the accused and the accuser a description of all relevant procedures.

C. The Secretary shall send a copy of all charges to the Executive Committee and to the Board of Directors within seven (7) days following his/her receipt of the charges.

D. Time Limits:

(1) Charges based on Section 1,A through Section 1,F of this Article VII must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the alleged offense.

(2) Charges based on Section 1,G of this Article VII may not be filed unless and until it has been determined, in a separate legal proceeding (such as a lawsuit), that the Association has violated its legal obligations, or unless and until the Association settles a legal proceeding brought against it by furnishing substantial relief to an opposing party. Charges based on Section 1,G above must be filed within sixty (60) days after the accuser becomes aware, or reasonably should have become aware, of the completion or settlement of the legal proceeding.

(3) Charges based on Section 1,H of this Article VII must be filed within sixty (60) days following the Article VII Arbitrator's decision which gives rise to such charge(s).

E. The accused and accuser may be represented during Article VII proceedings by any individual; however, the APFA will not compensate either party for attorney's fees.

### Section 3.   REVIEW OF CHARGES:

At the first regularly scheduled meeting of the Executive Committee following receipt of charges by the Secretary, the Executive Committee shall review the charges for timeliness, specificity and validity.

A. Should the charges be determined to be timely, specific and valid, such charges shall then be forwarded by the Secretary via registered mail, return receipt requested to the Article VII Arbitrator designated herein within seven (7) days following such Executive Committee meeting.

B. Charges deemed untimely by the Executive Committee will be dismissed without appeal.

C. Charges deemed non-specific by the Executive Committee shall be referred back to the accuser. The accuser may resubmit, one time only, such charges to the Secretary for review by the Executive Committee at its next regularly scheduled meeting without affecting the time limits of Section 2,D of this Article VII.

D. Charges may be deemed invalid and dismissed if the Executive Committee determines that the charges address conduct protected by this Constitution and/or by law (including the LMRDA Bill of Rights). Charges may also be deemed invalid and dismissed if they fail to state a proper claim under Section 1 of this Article VII. Should such charges be dismissed as invalid, the accuser may, within seven (7) days following receipt of notification of dismissal by the Executive Committee, appeal to the Article VII Arbitrator designated herein. If the Article VII Arbitrator determines that the charges are valid, s/he shall so advise the Secretary, the accused and the accuser, and the charges will be processed in accordance with this Article VII.

**Section 4.** SUSPENSION FROM OFFICE:

A. If charges are filed against a national officer or elected representative based on Section 1,B, Section 1,C or Section 1,E of this Article VII, the Board of Directors may determine at any time during the pendency of the charges that the alleged conduct giving rise to the charges threatens the APFA's vital interests. The Voting Board of Directors may then, by two-thirds (2/3) vote, suspend the accused's authority as national officer or elected representative until the threat is removed or the Article VII Arbitrator designated herein resolves the charges, whichever occurs sooner.

B. A national officer or elected representative suspended pursuant to this section shall be entitled, upon demand, to an expedited resolution of the charges, with a decision rendered within thirty (30) days following the Board of Directors Meeting where the officer or elected representative was suspended.

C. If the charges are filed by or against a member of the Executive Committee or the Board of Directors, such member must appoint an alternate member of the Association to participate in the review of the charges as provided in Section 3 of this Article VII and, when necessary, to participate in the vote regarding the

suspension of the member of the Executive Committee or Board of Directors as provided in this Section 4.

**Section 5.** APPOINTMENT OF
THE ARTICLE VII ARBITRATOR:

A. The Board of Directors shall appoint an arbitrator to resolve all charges filed under this Article VII. The Article VII Arbitrator, once appointed, shall serve until s/he resigns or until the Board of Directors determines to appoint a new Article VII Arbitrator.

B. The Board of Directors may also appoint one or more alternate Article VII Arbitrators who shall have the authority to hear and decide particular charges when the Article VII Arbitrator is not available.

C. C. The Article VII Arbitrator and any alternate Article VII Arbitrator(s) shall be a person expert in labor law who is a neutral (such as an academic or professional labor arbitrator), who has experience as a neutral in adjudicating internal labor organization disputes, and who has no other prior or current involvement with the APFA.

**Section 6.** JURISDICTION AND AUTHORITY OF
THE ARTICLE VII ARBITRATOR:

A. The Article VII Arbitrator shall have power to resolve all charges referred to him/her during his/her tenure.

B. The administrative procedures for handling Article VII charges shall be included in the APFA Policy Manual. The Article VII Arbitrator may from time to time propose changes in these administrative procedures, and such changes shall become effective and included in the Policy Manual if they are approved by the Board of Directors. The administrative procedures to be adopted shall be in general compliance with American Arbitration Association rules where practicable, but may not conflict in any respect with the provisions of this Constitution.

C. The Article VII Arbitrator may, on his/her own motion or upon motion filed by the accused, declare that charges are untimely or do not allege a violation cognizable as charges under this Article VII and thus are dismissed without the need for hearing.

D. The Article VII Arbitrator may, on his/her own motion, or upon motion filed by the accused, determine that charges are not sufficiently specific and that they will be dismissed unless the accuser amends them to provide sufficient specificity.

**APPENDIX 110**

E. The accused may move for summary dismissal of the charges on the ground that the accuser does not have evidence sufficient to sustain the charges and thus there is no need for a full hearing. On receipt of such a motion, the Article VII Arbitrator shall afford the accuser an opportunity to identify evidence that would sustain the charges. If the Article VII Arbitrator concludes, following that opportunity, that the accuser does not have evidence sufficient to sustain the charges, the Article VII Arbitrator may grant summary dismissal of the charges.

F. If at any time during the pendency of the charges, the Article VII Arbitrator determines (whether on his/her own motion or the motion of the accused) that the conduct furnishing the basis for the charges is protected by this Constitution and/or by law (including the LMRDA Bill of Rights), the Article VII Arbitrator shall have the authority to dismiss the charges addressed to such protected conduct.

G. No ex-parte communication may be had with the Article VII Arbitrator either by the accused, the accuser or by the APFA, or any member of the APFA except with respect to scheduling, location and like administrative matters.

H. The decision of the Article VII Arbitrator shall be final and binding upon the accused and the accuser.

## Section 7.   COSTS:

A. Initial costs of the Article VII proceedings shall be borne by the APFA in accordance with the provisions of Article V of this Constitution.

B. In the event a charge is dismissed by the Article VII Arbitrator, or in the event the Article VII Arbitrator does not sustain a charge, up to one-half (2) of the fees and expenses of the Article VII Arbitrator and all administrative costs to the APFA relative to that charge may be levied against the accuser by the APFA upon completion of charge proceedings brought under Section 1.H of this Article VII.

C. In the event the Article VII Arbitrator sustains a charge, costs of the proceedings shall be paid by the APFA and may be offset by a fine levied against the accused in an amount determined by the Arbitrator, if a fine was requested by the accuser.

D. In the event that it becomes necessary to enforce an Article VII Arbitration award through judicial proceedings, attorney's fees for those judicial proceedings may be paid or reimbursed by the APFA to the appropriate party seeking such enforcement.

## Section 8.   INTERNAL REMEDIES:

Members, officers and representatives shall exhaust internal remedies under this Article VII for a period not to exceed four months prior to taking any legal action against members, officers or representatives of the APFA with respect to matters cognizable as charges under this Article VII.

**APPENDIX 111**

# SECTION 17
## ARTICLE VII ADMINISTRATIVE POLICIES AND PROCEDURES

**POLICY STATEMENT:** In furtherance of the objectives of the APFA, the Board of Directors hereby adopts the following policy for the governance of administrative procedures for hearings conducted under Article VII of the APFA Constitution.

A.   **FILING OF CHARGES**

1.   When charges have been filed in accordance with Article VII, Section 2. of the APFA Constitution, the parties must be notified by registered mail, return receipt requested. If the letter is not claimed by the addressee, this, nevertheless, shall be deemed sufficient notice of the proceedings.

B.   **EXECUTIVE COMMITTEE REVIEW OF CHARGES**

1.   Refer to the APFA Constitution, Article VII, Section 3.

C.   **APPEAL WHEN CHARGES DISMISSED BY EXECUTIVE COMMITTEE**

1.   The dismissal of charges deemed invalid by the Executive Committee, pursuant to Article VII, Section 3.D., because they address conduct protected by the APFA Bill of Rights and / or law, or fail to state a proper claim, may be appealed to the Arbitrator within seven (7) calendar days from the time that the accuser receives notice of the Executive Committee's dismissal.

2.   The appeal shall be made in writing and sent to the National Secretary who shall forward it to the Arbitrator and send a copy to the accused.

3.   The accused shall have fourteen (14) calendar days to respond to the appeal in writing.

4.   The response shall be sent to the National Secretary, who shall forward it to the Arbitrator and send a copy to the accuser.

D.   **RETIREMENT OF ONE OF THE PARTIES**

1.   If a charged member retires while the charge is pending, the charge will be administratively dismissed.

2.   If the member who filed the charge retires while the charge is pending, the charge will be administratively be dismissed.

E.   **SETTING THE DATE, TIME AND LOCATION OF THE HEARING**

1.   After the Executive Committee determines that the charges are timely and specific and the Executive Committee or the Arbitrator determines that the charges are valid, the National Secretary shall set the date, time and place of the hearing.

2.   At least thirty (30) days in advance of the hearing, the National Secretary shall mail the accused, the accuser and the Arbitrator notice of the date, time and place of the hearing along with a copy of the charges.

APPENDIX 112

F.   **MOTIONS**

1.   Motions may be based on untimeliness, lack of specificity, failure to state a violation, or claiming that the conduct that is furnishing the basis for the charges is protected.

2.   Motions to dismiss

   a.   Motions to dismiss, which are filed pursuant to Article VII, Section 6.C., D. and / or F. of the APFA Constitution, wherein the accused makes the claim that the charges were untimely, do not allege a violation cognizable as charges, are not sufficiently specific, and / or that the conduct furnishing the basis for the charges are protected by the APFA Bill of Rights and / or law, shall be submitted in writing to the National Secretary within fourteen (14) calendar days following the Executive Committee's determination that the charges are timely, specific and valid.

   b.   The National Secretary shall forward such motion or motions to the Arbitrator and send a copy to the accuser.

      (1)   The accuser shall have fourteen (14) calendar days to respond in writing to such motion or motions.

      (2)   The response shall be sent to the National Secretary who shall forward it to the Arbitrator and send a copy to the accuser.

3.   Motions for Summary Dismissal

   a.   Motions for summary dismissal filed under Article VII, Section 6.E. of the APFA Constitution by either party to the charges must be filed in writing with the National Secretary no later than fourteen (14) calendar days before the date of the hearing.

   b.   Upon receipt, the National Secretary shall, immediately, forward the motion to the Arbitrator and the other party(ies).

      (1)   A response may be filed with the National Secretary no later than seven (7) calendar days before the hearing.

      (2)   The response shall be sent to the National Secretary who shall forward it to the Arbitrator and send a copy to the moving party.

4.   Other Motions

   a.   The time limit requirements for motions, not specifically detailed herein, shall be left to the discretion of the Article VII Arbitrator.

5.   Timeliness of Motions

   a.   Nothing herein shall restrict the Article VII Arbitrator's authority to extend the time limit requirements of any motion, so long as all parties are promptly advised of such extension.

G.  **EXCHANGE OF DOCUMENTS AND WITNESS LISTS**

    1.  Not later than thirty (30) calendar days prior to the scheduled date set for the hearing, the representatives designated by the accused and the accuser shall exchange all documents they intend to enter in support of their respective positions and make available, in writing, the names of all witnesses they intend to summon whom they deem necessary to the dispute.

    2.  The parties have a duty to exchange any changes, alterations and / or additions to the document and witness lists promptly throughout the thirty (30) days preceding the hearing.

    3.  Nothing, herein, shall require the representative of either party to present the aforementioned documents or to summon the aforementioned witnesses during the course of the hearing.

    4.  The exchange of documents and witness lists shall be coordinated through the Office of the National Secretary.

H.  **STENOGRAPHIC RECORD**

    1.  The National Secretary shall make arrangements for a stenographer to be present at the hearing.

    2.  The transcript shall be the official record of the proceeding and shall be made available to the Arbitrator.

    3.  Parties who request a copy of the transcript are responsible for paying their share of the costs of such record.

I.  **ATTENDANCE AT HEARINGS**

    1.  Members in good standing of the APFA are entitled to attend hearings.

    2.  The Arbitrator may exclude any witness or witnesses, other than a party or other essential person during the testimony of other witnesses.

    3.  The Arbitrator shall determine whether any other person may attend the hearing.

J.  **ADJOURNMENTS**

    1.  The Arbitrator, when there is good cause, may adjourn or postpone the hearing upon the request of a party or on the Arbitrator's own initiative.

K.  **ORDER OF PROCEEDINGS**

    1.  The Arbitrator shall determine how the case can best be presented so that all parties have a fair opportunity to contest the issues.

    2.  The Arbitrator shall afford each party a full opportunity for the presentation of relevant proof.

L.  **OATHS**

**APPENDIX 114**

1.   All witnesses are required to testify under oath.

**M.   HEARING IN THE ABSENCE OF A PARTY**

1.   The hearing may proceed in the absence of any party, who, after due notice, fails to be present or fails to obtain an adjournment.

2.   The Arbitrator may not issue a decision based solely on the default of a party.

3.   The Arbitrator shall require the other party to submit such evidence as may be required to make an award.

**N.   EVIDENCE**

1.   The parties may offer such evidence as they desire and shall produce such additional evidence as the Arbitrator may deem necessary to an understanding and determination of the dispute.

2.   The Arbitrator may subpoena witnesses and documents independently or upon the request of any party.

3.   The Arbitrator shall be the judge of the relevancy and materiality of the evidence offered and conformity to the legal rules of evidence shall not be necessary.

4.   Where possible the parties should stipulate to facts and circumstances which are not in dispute.

**O.   INITIAL COSTS OF PROCEEDINGS**

1.   The Board of Directors interprets Article VII, Section 7.A. of the APFA Constitution to include the following costs and expenses:

   a.   Reasonable and ordinary costs associated with administering the proceedings, i.e. telephone, postage, copying, etc.;

   b.   The costs associated with obtaining the official transcript of the proceedings,

   c.   The fees and expenses of the Article VII Arbitrator;

   d.   The costs associated with providing the hearing room; and

   e.   Trip removal costs and expenses associated with the attendance of the accused, his / her representative, the accuser and his / her representative.

2.   The payment of attorney fees and expenses, and expenses associated with the attendance of any witnesses, are specifically excluded.

**P.   FINAL ARGUMENTS**

1.   The parties may submit oral arguments at the conclusion of the evidentiary hearing or written arguments at a time specified by the Arbitrator.

**Q.   REOPENING THE HEARING**

1.   At any time prior to the issuance of the Arbitrator's decision, a hearing may be reopened.

   a.   A hearing may be reopened only upon the showing of good cause.

**R.   RELEASE OF DOCUMENTS FOR JUDICIAL PROCEEDINGS**

1.   At the time the Arbitrator issues a decision, the Arbitrator shall forward all documentary evidence offered at the hearing and the official transcript to the National Secretary.

2.   The National Secretary shall, upon the written request of a party, furnish the party with copies of any documentary evidence that may be required in judicial proceedings related to the hearing.

3.   The party making this request shall bear the costs of copying the documents.

**S.   COMMUNICATION WITH THE ARBITRATOR**

1.   There shall be no ex parte communications between the parties and the Arbitrator.

2.   All communications shall be directed to the National Secretary for distribution to the opposing party and the Arbitrator, unless there is an advance agreement to allow direct mailing.

3.   If the parties agree to use direct mailing, they shall mail to all parties and to the National Secretary copies of all correspondence sent to the Arbitrator.

4.   The mailing of copies shall be indicated by a "cc" notation under the signature in the letter or the cover letter for another document sent to the Arbitrator.

**T.   SUSPENSION OF AN OFFICER OR ELECTED REPRESENTATIVE DURING THE PENDENCY OF CHARGES**

1.   When an officer or elected representative who is suspended by the Board of Directors demands an expedited resolution of the charges, pursuant to Article VII, Section 4.B. of the APFA Constitution, the National Secretary shall notify the Arbitrator and the accuser by telephone of the demand and subsequently send a confirming letter.

2.   All parties shall cooperate in doing whatever is necessary to expedite the resolution of the charges.

**U.   INTERPRETATION AND APPLICATION OF RULES**

1.   The Arbitrator shall interpret and apply these rules.

**V.   PROCEDURES FOR FILING OF COMMENTS BY INTERESTED PARTIES**

1.   Interested parties may file written comments on motions to dismiss, motions for summary dismissal and at the conclusion of the evidentiary hearing.

**APPENDIX 116**

2.   Unless other arrangements have been agreed to in advance, interested party comments should be submitted to the National Secretary for distribution to the parties during the time for response to a motion or within the time specified by the Arbitrator for his / her written argument.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC Meeting
**December 1-2, 2020**
**APFA Unity Pays Conference Room**
**Euless, TX**

| Resolution Tally Sheet | Resolution #: | **6** |
|---|---|---|
| | Maker: | **Black** |
| | Second: | **Harris** |
| | Date: | **12/01/2020** |
| | Time: | **1:47 p.m.** |

**Resolution Name: Chinery-Lee v Ross - Valid**

| YES | = Yes | ABS | = Abstain | PXY | = Proxy Vote |
|---|---|---|---|---|---|
| NO | = No | N/A | = Absent | REC | = Recuse |
| PASS | = Pass | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS**, on November 18, 2020, Melissa Chinery and Sandra Lee filed charges against Bob Ross under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for validity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 18, 2020 charges against Bob Ross are valid.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
#### December 1-2, 2020
**APFA Unity Pays Conference Room**
**Euless, TX**

| Resolution Tally Sheet | | |
|---|---|---|
| Resolution #: | 7 |
| Maker: | Black |
| Second: | Seelye |
| Date: | 12/01/2020 |
| Time: | 1:57 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Timely**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** *Passed* ☒   *Failed* ☐   *Tabled* ☐   *Withdrawn* ☐   *Show of Hands* ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for timeliness, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are timely.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
December 1-2, 2020
APFA Unity Pays Conference Room
Euless, TX



| Resolution Tally Sheet | |
|---|---|
| Resolution #: | 8 |
| Maker: | Black |
| Second: | Watson |
| Date: | 12/01/2020 |
| Time: | 2:00 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Specific**

| | | | | | |
|---|---|---|---|---|---|
| YES = Yes | | ABS = Abstain | | PXY = Proxy Vote | |
| NO = No | | N/A = Absent | | REC = Recuse | |
| PASS = Pass | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES:  9     NO:  0     ABSTAIN:  0     ABSENT:  0

Status: *Passed* ☒     *Failed* ☐     *Tabled* ☐     *Withdrawn* ☐     *Show of Hands* ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for specificity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are specific.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC Meeting
December 1-2, 2020
APFA Unity Pays Conference Room
Euless, TX

| Resolution Tally Sheet | | |
|---|---|---|
| | Resolution #: | 5 |
| | Maker: | Black |
| | Second: | Salas |
| | Date: | 12/01/2020 |
| | Time: | 1:45 p.m. |

**Resolution Name: Chinery-Lee v Ross - Specific**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 9      NO: 0      ABSTAIN: 0      ABSENT: 0

Status:  *Passed* ☒      *Failed* ☐      *Tabled* ☐      *Withdrawn* ☐      *Show of Hands* ☐

**WHEREAS**, on November 18, 2020, Melissa Chinery and Sandra Lee filed charges against Bob Ross under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for specificity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 18, 2020 charges against Bob Ross are specific.

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC Meeting
**December 1-2, 2020**
**APFA Unity Pays Conference Room**
**Euless, TX**

| Resolution Tally Sheet | | |
|---|---|---|
| | Resolution #: | 9 |
| | Maker: | Black |
| | Second: | Watson |
| | Date: | 12/01/2020 |
| | Time: | 2:02 p.m. |

**Resolution Name: Chinery-Lee v Vargas - Valid**

| YES | = | Yes | ABS | = | Abstain | PXY | = | Proxy Vote |
|---|---|---|---|---|---|---|---|---|
| NO | = | No | N/A | = | Absent | REC | = | Recuse |
| PASS | = | Pass | | | | | | |

COMMENTS:

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| YES | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS**, on November 20, 2020, Melissa Chinery and Sandra Lee filed charges against Eugenio Vargas under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for validity, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 20, 2020 charges against Eugenio Vargas are valid.

**APPENDIX 122**

# APFA

## EXECUTIVE COMMITTEE MEETING

### 3Q20 EC MEETING
**December 1-2, 2020**
**APFA Unity Pays Conference Room**
**Euless, TX**

| Resolution Tally Sheet | | |
|---|---|---|
| | Resolution #: | **4** |
| | Maker: | **Black** |
| | Second: | **Harris** |
| | Date: | **12/01/2020** |
| | Time: | **11:51 a.m.** |

**Resolution Name: Chinery-Lee v Ross - Timely**

| | | | | | |
|---|---|---|---|---|---|
| YES | = | Yes | ABS | = | Abstain |
| NO | = | No | N/A | = | Absent |
| PASS | = | Pass | | | |

| | |
|---|---|
| PXY | = Proxy Vote |
| REC | = Recuse |

*COMMENTS:*

| | Watson | Gluth | Conners | Seelye | Hancock | Treasurer | Secretary | Vice President | President |
|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PASS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PXY** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **REC** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**YES:** 9    **NO:** 0    **ABSTAIN:** 0    **ABSENT:** 0

**Status:** *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS**, on November 18, 2020, Melissa Chinery and Sandra Lee filed charges against Bob Ross under Article VII of the APFA Constitution; and

**WHEREAS**, Article VII, Section 3 of the APFA Constitution provides that the Executive Committee shall review Article VII charges for timeliness, and

**WHEREAS**, the Executive Committee has conducted that review.

**BE IT THEREFORE RESOLVED**, that Melissa Chinery's and Sandra Lee's November 18, 2020 charges against Bob Ross are timely.