## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FT. WORTH DIVISION

| | | |
|---|---|---|
| ROBERT "BOB" ROSS<br>Plaintiff/Counterclaim Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | Case No. 4:22-CV-00343-Y |
| ASSOCIATION OF<br>PROFESSIONAL FLIGHT<br>ATTENDANTS,    MCGAUGHEY,<br>REBER AND ASSOCIATES, INC.,<br>JULIE HEDRICK, ERIK HARRIS | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants/Counterclaim Plaintiff. | § | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO VACATE ORDER PURSUANT TO FED. R. CIV. P. 54(b) and 59(e), AND AMEND COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to Fed. R. Civ. P. 15(a)(2), 54(b), 59(c), 60 and Local Rules 7.1, 7.2, 56.4 and 56.5, Plaintiff, Robert "Bob" Ross ("Ross"), respectfully submits his brief in support of Plaintiff's Motion for to Vacate Dismissal Order.   Plaintiff filed its original complaint against Defendants for violations of LMRDA §101(a)(5) among other federal and state claims on April 20, 2022 [PageID 1; Docket No. 1].   Defendants filed their answer and counterclaims against Plaintiff on May 16, 2022 [PageID 76; Docket No. 8].   Thereafter, Defendants filed their Motion to Dismiss on July 21, 2022  [PageID 188; Docket No. 27] .   Plaintiff filed his Amended Response to Motion to Dismiss on September 15, 2022  [PageID 1029; Docket No. 41].   The Court entered an Order of Dismissal dismissing Plaintiff's claims in its entirety for lack of subject matter jurisdiction on October 27, 2022  [PageID 1258;

Docket No. 51],  Plaintiff respectfully requests that the Court to vacate its Order of Dismissal and grant Plaintiff leave to amend its Original Complaint to address any deficiencies therein for lack of jurisdiction.

# Table of Contents

I.    INTRODUCTION...............................................................................................................4

II.   STATEMENT OF THE CASE .......................................................................................6

III.   ARGUMENTS AND AUTHORITIES...........................................................................9

   A. Union Conduct as a Disciplinary Hearing: ...........................................................14

   B. Request to Grant Plaintiff Leave to file Amended Complaint ...............................18

IV.   Conclusion ......................................................................................................................19

## TABLE OF AUTHORITIES

### Cases

Anselmo v. The West Paces Hotel Group, LLC, (S.C. Dist. Ct. 2011)......................................... 10

Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n,

   377 R.3d 682 (7th Cir. 2004) ................................................................................................ 13

Bausch v. Stryker Corp., F.3d 546 (7th Cir. 2010)...................................................................... 13

Breininger v Sheet Metal Workers Int'l, 493 U.S. 67 (1989)........................... 9, 10, 11, 12, 13, 15

Britt v Grocers Supply Co., Inc., 978 F.2d 1441 (5th Cir 2008 .................................................. 10

Foman v. Davos, 371 U.S. 178 (1962). ............................................................................... 14, 19

Foster v. DeLuca, 545 F.3d 582 (7th Cir. 2008).......................................................................... 13

Harold Washington Party v. Cook County, Illinois, 984 F.2d 875 (7th Cir. 1993)....................... 9

Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v.

   Hardeman, 401 U.S. 233 (1971) ............................................................................. 10, 11, 13, 18

Keenan v. Int'l Association of Machinist and Aerospace Workers,

   632 F. Supp 2d 63 (2009). ....................................................................... 10

Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014 (7th Cir. 2013)............................... 13

Martin v. Local 556, Transp. Workers Union of Am, Civil Action No. 3:14-CV-0500-D

   (N.D. Tex Aug. 18, 2017). ...................................................................... 10

Sea-Land Service v. Intern. Longshoremen's Ass'n, 625 F.2d 38 (5th Cir. 1980). ..................... 10

Whitmire v. Victus Ltd., 212 F.3d 885 (5th Cir. 2000). .......................................... 14, 19

## Statutes & Regulations

29 U.S.C. § 101(a)(5)............................................................. 5, 10, 11, 12, 13, 17

29 U.S.C. § 158. .................................................................................. 6

29 U.S.C. §401 ................................................................................. 6, 13

29 U.S.C. § 411 ................................................................................. 6, 9

29 U.S.C. § 412................................................................................... 9

## Court Rules

Fed. R. Civ. P. 15(a). ....................................................................... 1, 13, 18

Fed. R. Civ. P. 15(a)(2)................................................................ 1. 13. 14, 19

Fed. R. Civ. P. 54(b). ........................................................................... 1

Fed. R. Civ. P. 59(c). ........................................................................... 1

Fed. R. Civ. P. 60. .............................................................................. 1

Local Rule 7.1................................................................................... 1

Local Rule 7.2................................................................................... 1

Local Rule 56.4.................................................................................. 1

Local Rule 56.5. .................................................................................................................. 1

## I. INTRODUCTION

Ross is a member in good standing of the APFA union and the Former National President. Plaintiff was charged with violations of the APFA policy based primarily on alleged overpayments discovered by an accounting firm's review of the union's payments under Plaintiff's Transition Agreement. Plaintiff prepared and defended himself in the union's internal dispute procedure ("arbitration") wherein Plaintiff issued subpoenas for documentation and witness testimony from the union.[1] The internal dispute procedures resulted in Plaintiff being disciplined by revoking his right to hold elected office, and fined . Plaintiff was found to have violated his fiduciary duty, subsequently banned for life from holding any union-elected position, terminated his position as Board member and Base President, and disciplined in the amount of $62,558.75 to be paid to the union.[2]

Simultaneously, Harris continued to inform the APFA Leadership and others that Ross stole money and owed money for overpayments made under his Transition Agreement. He asserted that Vargas and Ross conspired to be overpaid upon their exit in 2018. McGaughey, Reber and Associates, Inc. dba Diversified Credit Systems ("Diversified Credit Systems") collected on Plaintiff on the same alleged debt the union attempted to collect through its internal arbitration. Diversified filed a suit to and in its Original Complaint, it attached a never-before seen letter ("Confidential Memo") from the accounting review cited by the Harris and others as the reason to bring disciplinary charges against Plaintiff.

[1] Docket No. 1, Pl. Original Compl. ¶30 PAGEID 13.
[2] The amount of the award was substantially increased in violation of the APFA Const. against Ex Parte Communications, as Plaintiff was never given any copies of the audit performed, and an opportunity to object or respond prior to the arbitrator amending his award. The court should note, this is despite requests from Defendant's Counsel and the parties to the Arbitration for copies of the audit review.

The Confidential Memorandum states "Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines.  Consequently, these payments appear appropriate and in compliance with the transition agreement."[3]

APFA's National Treasurer, Erik Harris (in attendance of the Chinery/Burns wedding) never turned over a copy of the Confidential Memorandum to the Board of Directors, the Executive Committee or to the Plaintiff during his internal arbitration.[4]  He intentionally deceived and misrepresented the pertinent facts to acquire a favorable arbitration award against Plaintiff. Plaintiff believes this is a result of his political opposition to an upcoming proposed merger between APFA and the Association of Flight Attendants. Plaintiff contends that withholding the Confidential Memorandum from the APFA Board of Directors, Executive Committee, and during his arbitration was a violation of, among other things, his right to a fair hearing under the Labor Management Reporting and Disclosure Act § 101(a)(5).

On July 21, 2022, Defendant, APFA, filed a Motion to Dismiss Plaintiff's Claims for Relief and Brief in Support (hereinafter "Motion to Dismiss"). Plaintiff filed an Amended Response to the Motion to Dismiss on September 15, 2022 (Docket No. 41).  On September 20, 2022, Defendant, AFPA, filed a Motion for Summary Judgment and Brief in Support arguing that it's entitled to Summary Judgment to enforce its Arbitration Award (Docket No. 42).  On October 27,

---

[3] Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix P. 1-15].  *Pl.'s Original Petition, Tarrant County Justice Court, Precinct Three, JP03-22-D00017757;* [*Appendix p. 41-42*].
[4] Martin Aff. [Appendix p. 16-24]; Nena Martin was one of Vargas's union representatives in the Union Disciplinary Arbitration, and she testifies herein that she has never seen this Confidential Memorandum prior to disclosure on the date of signing the affidavit.  This establishes the fact that the Confidential Memo was not produced during the Union Disciplinary Arbitration. Furthermore, Martin testifies that this document was not produced at the Executive Committee Hearing wherein charges were heard and voted on by the Executive Committee referring the charges to an internal Union Disciplinary Arbitration. She was also a member of the APFA Board of Directors during the year of 2020 and testifies that the APFA Board of Director's was never given or informed about this document by Erik Harris, APFA National Treasurer.

2022, the Court entered an Order dismissing Plaintiff's claim due to lack of subject matter jurisdiction citing that the action that was taken does not fall under LMRDA § 101(a)(5).

## II.   STATEMENT OF THE CASE

Plaintiff, Robert "Bob" Ross ("Plaintiff") seeks damages alleging unlawful violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, *et seq.* ("LMRDA"), the Association of Professional Flight Attendants Union Constitution, and Breach of Fiduciary Duty as provided for under Texas Common Law by Defendants APFA, Julie Hedrick and Erik Harris ("hereinafter Defendants"). APFA is a labor organization covered under the LMRDA, 29 U.S.C. §401 et seq, and 29 U.S.C. § 158, *et seq*. Plaintiff is a member in good standing of APFA as defined under the LMRDA and 29 U.S.C. § 158. On or about January of 2016, the Plaintiff ran for office within the APFA local union elections. For clarification, Robert "Bob" Ross ran for National President Nena Martin ran for National Vice-President, and Eugenio Vargas ran for National Treasurer.[5]

Plaintiff was elected National President, Nena Martin elected Vice-President, and Eugenio Vargas Treasurer ("Ross Administration"). The Ross Administration opposed a merger of the union with AFA—another multi-airline flight attendants' union. This created two political factions within APFA competing for power: Pro-APFA/AFA and Anti-APFA/AFA. In 2020, the Hedrick Administration (a Pro-APFA/AFA Administration) was elected to the National Office. Thereafter, Plaintiff was charged, hearings held, and the union ultimately fined Plaintiff in a deliberate attempt to suppress his dissent of the Hedrick Administration and any proposed merger.[6]

---

[5] It should be noted that Chinery-Burns and Lee also filed charges against Nena Martin, the Vice-President during the Ross Administration, however as of October 14, 2022, the Arbitrator summarily dismissed all charges against Ms. Martin after finding that Chinery-Burns and Lee submitted false evidence to the APFA Executive Committee to procure a finding of validity, specificity, and timeliness.

The Hedrick Administration—Erik Harris, National Treasurer—continually misrepresented to the APFA leadership that the APFA Accounting Firm conducted a review and determined Ross owed the union money for overpayments and refused to pay them back. He further stated that it was a coordinated conspiracy between Vargas and Ross to receive overpayments prior to their exit from office by miscalculating payments made to themselves. The Confidential Memo directly contradicts Harris's assertions, but this document was never turned over to APFA leadership, the Arbitrator conducting the union disciplinary hearings, nor the Plaintiff.

The Confidential Memorandum was received on October 22, 2020—only one month prior to  Melissa Chinery-Burns and Sandra Lee filing charges against Plaintiff on November 24, 2020.[7] On December 1, 2020, the Executive Committee held a meeting, reviewed the charges against Plaintiff and voted that the charges were valid, specific, and timely.[8] The APFA Executive Committee recommended the charges proceed to a APFA Article VII Disciplinary Arbitration in which the Plaintiff subpoenaed documents and called witnesses in a two-day hearing.[9] At the end of the Arbitration, Plaintiff's representatives drafted a brief and submitted it to the Article VII Arbitrator and thereafter an award was issued.[10] Thereafter, the APFA Board of Directors voted and accepted the Arbitration Award and for the first time in APFA history, Plaintiff's Arbitration Award was made public and emailed notice was sent via a Presidential Letter to the entire union.[11]

The charging parties pursued charges on behalf of the *Union*. It is the *Union* that collects the monies rendered under the Arbitration Award—the charging parties gain no monetary benefit from pursing charges. It is the *Union* that pays for the Disciplinary Hearing. It is the *Union* that

---

[7] Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix P. 1-15]. *Pl.'s Original Petition, Tarrant County Justice Court, Precinct Three, JP03-22-D00017757;* [*Appendix p. 32-42*].
[8] EC Resolution sending Ross Charges to Arbitration [Appendix P. 44-47].
[9] Docket No. 8, Def. Answer and Counterclaims, ¶¶33-34 [PAGEID 90-91; 107-109].
[10] Docket No. 8, Def. Answer and Counterclaims, ¶¶15-27 [PAGEID 90-91; 107-109].
[11] APFA Board of Directors Resolution Adopting Ross's Award, [Appendix P. 83-86]; APFA National Presidential Letter and Hotline to the Union regarding the Vargas and Ross Arbitration results [Appendix P. 50-56, 79-82].

conducts the Disciplinary Hearing, forwards all communications to and from the Arbitrator from the parties, chooses the Arbitrator, the location, time and date of the Disciplinary Hearing, controls and produces all documentation for the Disciplinary Hearing.[12]it is the APFA National Treasurer that controls and maintains all records on behalf of the *Union*, thus must testify to the accuracy of the documents.[13]

Melissa Chinery-Burns, on February 23, 2022, married the AFA General Counsel, Joe Burns (AFA is the union vying to merge with APFA).  This was only weeks prior to the issuance of an award against Plaintiff.[14]  In attendance at the Chinery-Burns Wedding includes three of the National APFA officers (shown in the photographs of the wedding) International President of AFA, Sarah Nelson, and other key APFA Board of Directors.[15]  This clearly illustrates the connection between APFA leadership and the charging party against Plaintiff at the charging party's wedding only weeks prior to the issuance of the Arbitration Award.

APFA's Executive Committee voted—without knowledge as to the Confidential Memo— to proceed with APFA's disciplinary arbitration hearing against Plaintiff—this fact is not in dispute.[16]  This denied Plaintiff a fair opportunity to review and contest the evidence, to question accusers and witnesses, to object to unreliable and inadmissible evidence, and to a fair opportunity to present his case. *The National Treasurer, Erik Harris, ("Harris") perpetuated the misrepresentation that APFA's accounting firm Woods, Stephens, and O'Neil, conducted a review of Ross's payments and discovered he and Vargas conspired to steal from the union and refused*

---

[12] APFA Const. Art. VII [Appendix P. 25-31].
[13] See APFA Art. VIII [Appendix P. 25-31].
[14] Arbitration Award [Appendix P. 69-75].
[15] Chinery-Burns Wedding Photos, [Appendix P. 43-47].
[16] Docket No. 8, Def. Answer and Counterclaims, ¶¶15-27 [PAGEID 90-91; 107-109] (Defendants clearly outline that Article VII charges were pursued, and an Article VII Arbitration Hearing was conducted by the union in accordance with the APFA Const. Art. VII—entitled "Union Arbitration and Disciplinary Hearing").

*to pay back the money.*  Consequently, the arbitration resulted in the union's favorable disciplinary award.

Plaintiff was not provided the safeguards against improper disciplinary action guaranteed under the LMRDA. Withholding documentation and misrepresenting the facts to APFA leadership to procure votes in favor of Disciplinary measures, levy fines, and sanction Plaintiff is an unconscionable violation to Plaintiff's right to a fair hearing and goes beyond any rational explanation that could meet a reasonableness standard.  The result of this conduct is that Plaintiff has endured a Union Disciplinary Hearing, fined, suffered reputational damage, privacy violations, and suspended from holding any official APFA position for the remainder of his life.   Plaintiff seeks to have the disciplinary award vacated, and damages recovered.  Plaintiff undeniably suffered discipline at the hands of the union as the arbitration award prohibited his holding office again and is fined for monetary damages.

This Court issued an Order of Dismissal on October 27, 2022.  The Order reads as follows:

> And Plaintiff has wholly failed to allege any facts invoking the jurisdiction provided under section 102 of the Labor Management Reporting and Disclosure Act ("LMRDA"). That section provides federal courts with jurisdiction over claims that the union or its officers have improperly "fined, suspended, expelled, or otherwise disciplined" a union member. 29 U.S.C.A. § 411(a)(5), 412 (West 2018).  The arbitration decision Plaintiff seeks to vacate was obtained by two union members, and not by the union or its officers. As a result, section 102 of the LMRDA does not provide the Court with jurisdiction over Plaintiff's claims. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 94 (1989) (concluding that dismissal for lack of jurisdiction was warranted where union member claimed that "he was the victim of the personal vendettas of two union officers. . . . [rather than] the union *as an entity*").

## III.   ARGUMENTS AND AUTHORITIES

"It is well-established that Rule 60(b) relief `is an extraordinary remedy and is granted only in exceptional circumstances.'" *Harold Washington Party v. Cook County, Illinois Democratic*

*Party,* 984 F.2d 875, 879 (7th Cir.) (quoting *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir.1984)), *cert. denied,* 114 S.Ct. 86, 126 L.Ed.2d 54 (1993).

   ***Plaintiff cautions the Court to review the relevant case law and respectfully requests it reconsider its Dismissal Order as it relies on Defendants' misleading interpretation of the case law.[17]*** The current rule regarding LMRDA § 101(a)(5) as outlined by the U.S. Supreme Court is that jurisdiction remains with the federal courts for any claim brought thereunder, provided that the actions and discipline complained of includes conduct enumerated in the Union Constitution and substantiates a formal tribunal in which the member is entitled to notice and a fair hearing.[18]

   *Boilermakers v. Hardeman* is a U.S. Supreme Court review of a LMRDA § 101(a)(5) decision from the 5th Circuit Court of Appeals wherein the court finds subject matter jurisdiction exists for review of due process violations of disciplinary hearings.[19] Hardeman was a member of the Boilermaker's union and began to violently strike another member—Wise—for failure to refer him at the hiring hall for a job.[20]   Charges were brought against Hardeman, a union disciplinary hearing, and a verdict rendered in which Hardeman was expelled from the union.[21]   In *Boilermakers v. Hardeman*, the U.S. Supreme Court states:

> As we have said, the critical question in this action is whether Hardeman was afforded the rights guaranteed him by § 101(a)(5) of the LMRDA. If he was denied them, Congress has said that he is entitled to damages for the consequences of that denial. Since these questions are irrelevant to the legality of conduct under the National Labor Relations Act, there is no danger of conflicting interpretation of its provisions. And since the law applied is federal law explicitly made applicable to such circumstances by Congress, there is no danger that state law may come in through the back door to regulate conduct that has been

---

[17] Docket No.27, Def's Brief in Support of Mtn to Dismiss, PAGEID 193-194, Defendant fails to assert grounds for lack of subject matter jurisdiction for Plaintiff's LMRDA § 101(a)(5) but this assertion directly contradicts the years of federal case law standing. *See Keenan v. International Association of Machinists and Aerospace Workers*, 937 F. Supp. 2d 93 - Dist. Court, D. Maine 2013; *Anselmo v. THE WEST PACES HOTEL GROUP, LLC*, (S.C. Dist. Ct. 2011); *Britt v. Grocers Supply Co., Inc.*, 978 F. 2d 1441 (5th Cir. 1992); *Martin v. Local 556, Transp. Workers Union of Am.*, Civil Action No. 3:14-CV-0500-D (N.D. Tex. Aug. 18, 2017); *Sea-Land Service v. INTERN. LONGSHOREMEN'S ASS'N,* 625 F. 2d 38 (5th Cir. 1980); *Litton Systems, Inc. v. Southwestern Bell Tel. Co.,* 539 F. 2d 418 (5th Cir. 1976).
[18] *Breininger,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989).
[19] In*ternational Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths Forgers and Helpers v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).
[20] *Id.*
[21] *Id.*

removed by Congress from state control. Accordingly, this action was within the competence of the District Court.[22]

The *Boilermakers* Court establishes federal subject matter jurisdiction over claims asserted under LMRDA § 101(a)(5)—as it is well within the purview of the federal courts to evaluate whether union disciplinary proceedings violated a member's due process rights.[23]

The U.S. Supreme Court further clarifies what conduct defines "otherwise discipline" under LMRDA §101(a)(5). This Court—in its Order Dismissing Plaintiff's Claims—cites *Breininger v. Sheet Metal Workers* as grounds that conduct by one individual member in pursuit of a vendetta does not properly state a claim under §§101 (a)(5) or 609 of the LMRDA.[24]

However, the *Breininger* Court *held* that depriving the Petitioner of job referrals by the Petitioner's union did not rise to the level of "otherwise discipline" under the statute. *No formal charges* were ever served on Petitioner, *no formal tribunal, nor hearing, ever conducted*; and *no ruling or verdict rendered* denying job referrals to the Petitioner.[25] Contrary to this Court's enumeration of the *Breininger* Court rule—it specifically called out that conduct considered as "otherwise discipline" included disciplinary hearings, fines, and removal from elected union positions—all facts found in the case at hand—a fact not contradicted by the Defendants.[26] Further, the *Breininger* Court does not prohibit claims wherein one or more union members pursue a vendetta—this is an incorrect recitation of the law. Rather, the *Breininger* Court requires that the discipline complained of is a formal action outlined in the Union governing laws and Union Constitution. The idea is to impose notice and due process requirements on a Union rather than govern any ad hoc conduct by an individual member. In other words, a punch in the face by a union member would be ad hoc action or

---

[22] *Id.*
[23] *Id.*
[24] Docket No. 51, Order of Dismiss, PAGEID 1258-1259.
[25] *Breininger,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989).
[26] Docket No. 8, Def. Answer and Counterclaims, ¶¶15-27 [PAGEID 90-91; 107-109], (Defendants clearly outline that Article VII charges were pursued, and an Article VII Arbitration Hearing was conducted by the union in accordance with the APFA Const. Art. VII—entitled "Union Arbitration and Disciplinary Hearing").

retaliation—not within the scope of "discipline" under LMRDA § 101(a)(5). However, when (a) notice, (b) charges, (c) resolutions by governing Union entities, or (d) formal hearings or tribunal  that result in enumerated sanctions *is* squarely within the scope of LMRDA § 101(a)(5) and falls under federal jurisdiction.

The *Breininger* Court specifically spells out "otherwise discipline" under LMRDA § 609 includes a disciplinary hearing resulting in an award and/or monetary fines that are imposed by the union. LMRDA guidance by the Department of Labor and case law highlights that an action by a union officer is an action by the union as conduct by the officers in discipline if the officer demands fines beyond regularly union dues—this is *strictly prohibit* by federal law and is precisely the fact pattern currently before this Court.[27]

The *Breininger* Court held:

> In the instant case, petitioner alleged only that the union business manager and business agent failed to refer him for employment because he supported one of their political rivals. *He did not allege acts by the union amounting to "discipline" within the meaning of the statute. According to his complaint, he was the victim of the personal vendettas of two union officers.* The opprobrium of the union as an entity, however, was not visited upon petitioner. *He was not punished by any tribunal, nor was he the subject of any proceedings convened by respondent.* In sum, petitioner has not alleged a violation of §§ 101(a)(5) and 609, and the Court of Appeals correctly dismissed his claim under the LMRDA. We express no view regarding the merits of petitioner's claim. We hold only that the Court of Appeals erred when it determined that the District Court lacked jurisdiction over the suit, but that the Court of Appeals correctly found that petitioner failed to state a claim under §§ 101(a)(5) and 609 of the LMRDA (emphasis added).[28]

The language in the case relating to the personal *vendettas* by the union members addresses only ad hoc conduct by a union member—rather than formal conduct outlined in a union Constitution. That conduct that includes disciplinary hearing is conducted, an award was issued, and a union member fined—again all present for the case-at-issue.[29]  Ad hoc retaliation would include discriminatory behavior and includes conduct *not* specifically enumerated in the Union Constitution.

---

[27] *Id.* See also, DOL guidance on LMRDA Compliance: *https://www.dol.gov/agencies/olms/compliance-assistance/fact-sheet/lmrda).*
[28] *Breininger,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989).
[29] *See Id.*

The *Breininger* Court specifically imposes due process requirements on conduct enumerated in the Union Constitution.[30]  The *Breininger* Court found that:

> Respondent's alleged refusal to refer petitioner to employment through the union hiring hall as a result of his political opposition to the union's leadership does not give rise to a claim under §§ 101(a)(5) and 609 of the LMRDA. By using the phrase "otherwise discipline," those sections demonstrate a congressional intent to denote only punishment authorized by the union as a collective entity to enforce its rules and not to include all acts that deterred the exercise of LMRDA-protected rights. The construction that the term refers only to actions undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership is buttressed by the legislative history and by the statute's structure, <u>which specifically enumerates types of discipline—fine, expulsion, and suspension—that imply some sort of established disciplinary process rather than ad hoc retaliation by individual union officers,</u> and which, in § 101(a)(5), includes procedural safeguards designed to protect against improper disciplinary action—"written specific charges," "a reasonable time to prepare a defense," and a "full and fair hearing"—that would apply to the type of procedure encountered in *Boilermakers v. Hardeman,* 401 U.S. 233, 236-237, 91 S.Ct. 609, 612-613, 28 L.Ed.2d 10, whereby a union imposes "discipline" by virtue of its own authority over its members, [the Union Constitution] and not to instances of unofficial, *sub rosa* discrimination. *Here, the opprobrium of the union as an entity was not visited on petitioner, since he has alleged only that he was the victim of personal vendettas of union officers and not that he was punished by any tribunal or subjected to any proceedings convened by respondent (insertion and emphasis added).* [31]

The *Breininger* Court held that denial of job referrals is an ad hoc action and dismisses for the lack of union disciplinary measures conducted.[32]

Finally, the courts ordinarily give a plaintiff whose original complaint is dismissed under Rule 12(b) at least one opportunity to try to amend the complaint before the entire action is dismissed. The courts have stated this repeatedly.**[33]** Federal Rules of Civil Procedure, Rule 15(a)(2) dictates when court approval is needed to amend a pleading which finds "[t]he court should freely give leave [to amend] when justice so requires."[34]  Further, the 5th Circuit holds that

---

[30] *Id.*
[31] *Breininger,* 493 U.S. 67, 90-94, (1989).
[32] *Id.*
[33] E.g., *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013); Bausch v. Stryker Corp.., 2010 WL 5186062, 630 F.3d 546, 562 (7th Cir. 2010); *Foster v DeLuca, 545 F.3d 582, 584 (7th Cir. 2008); Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n, 377 F.3d 682, 687 & n.3 (7th Cir. 2004).*
34 *Whitmire v. Victus Limited,* 212 F.3d 885 (5th Cir. 2000) (confirming *Foman v. Davis and holding* "Leave to amend pleadings 'shall be freely given when justice so requires.' FED. R. CIV. P. 15(a). We have explained that the propriety of allowing amendment to cure jurisdictional defects should be governed by the same standard as other amendments to pleadings, namely the

the right to amend the complaint prior to dismiss *shall* be freely granted even in circumstances where the court dismisses for lack of jurisdiction.[35]

## A. Union Conduct as a Disciplinary Hearing:

| Timeline of Important Events | |
|---|---|
| **Date** | **Union Conduct** |
| 8/18/2019 | - 1st Charges against Bob Ross |
| 10/22/2020 | **Email from APFA Accountant Hal O'Neil to APFA National Treasurer Erik Harris with Confidential Memo**: Erik Harris receives email and Confidential Memo that absolves Ross from any over-payment of wages under the Transition Agreement. |
| 11/18/2020 | - 2nd Charges against Bob Ross |
| 12/1/2020 | - Harris *conceals* Confidential Memo but presents APFA accountant's spreadsheets of Ross Administration's overpayments to the Executive Committee.<br><br>- Executive Committee reviews and votes in favor of charges against Ross and Vargas, without ever seeing *concealed* Confidential Memo. |
| 03/24/2022 | - APFA releases email Hotline to the entire APFA membership announcing Ross and Vargas's awards for the first time in union history, congratulating Chinery and Lee for their pursuits.<br>- |
| 04/20/2022 | - Robert "Bob" Ross files lawsuit against Julie Hedrick, Erik Harris, and APFA.<br><br>- Harris Forwards Hal O'Neil's email containing concealed Confidential Memo to the National Officers and Margot Nikitas (APFA in-house counsel) |

The conduct of the APFA National Officers includes Erik Harris—National Treasurer— holding a seat on the Board of Directors and the Executive Committee who reviewed and voted on

---

standard set forth by the Supreme Court: In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."...); *See generally Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)* (reversing denial of leave to amend by citing to *Rule 15(a)(2)*'s mandate to freely give leave and stating "this mandate is to be heeded").

35 *Id.*

disciplinary action taken by the union against a member.[36]  This Court found that the disciplinary actions by the union were ad hoc actions by individual members—however the union pursued charges and conducted a formal hearing that resulted in fines against Plaintiff.[37]  They admit that the Plaintiff was charged, that a hearing was held, and that formal procedures in administering discipline were conducted.[38]  The pictures taken at the Chinery/Burns wedding of the charging party against Plaintiff and the AFA General Counsel, include in attendance three of the National Officers: National Vice-President, National Secretary, and National Treasurer.[39]  These pictures during the union disciplinary proceedings and prior to the issuance of any award against Plaintiff and clearly illustrate the AFA connections to APFA leadership and the Charging Party: Melissa Chinery-Burns.  Finally, the Defendants admit that charges were brought under Article VII of the APFA Constitution, a hearing was conducted, and an award was issued.[40]  This is clearly standard union conduct in conformity with the APFA Constitution.[41]

Therefore, the union conduct clearly falls within the realm of *Breininger*.[42]  These presumptions-of-fact *directly* contradict with the Court's order for dismissal.  Further, Article VII of the APFA Constitution is entitled "Union Arbitration and Disciplinary Hearing."[43]  The procedures spelled out in Article VII are disciplinary measures used by the Union to enforce the

---

[36] Ross Arbitration Award [APPENDIX P. 69-75].
[37] Docket No. 8, Def. Answer and Counterclaims, ¶¶33-34 [PAGEID 90-91; 107-109]; Charges Against Pl. [APPENDIX P. 76-78]; *see also, generally* Transcript from Ross Arbitration Hearing held on Sept. 14, 2021 [APPENDIX P. 57-68].  (It is undeniable that a formal hearing occurred—and this court itself took judicial notice of the union arbitration award, thus this does not meet the standard of an ad hoc disciplinary measure or retaliation in pursuit of an award.)
[38] Docket No. 8, Def. Answer and Counterclaims, ¶¶33-34 [PAGEID 90-91; 107-109]; Charges Against Pl. [APPENDIX P. 76-78]; *see also, generally* Transcript from Arbitration Hearing [APPENDIX P. 57-68].  (It is undeniable that a formal hearing occurred—and this court itself took judicial notice of the union arbitration award, thus this does not meet the standard of an ad hoc disciplinary measure or retaliation in pursuit of an award.)
[39] Chinery-Burns Wedding Photos, [APPENDIX P. 43-47].
[40] Docket No. 8, Def. Answer and Counterclaims, ¶¶33-34 [PAGEID 90-91; 107-109]; Charges Against Pl. [APPENDIX P. 76-78]; *see also, generally* Transcript from Arbitration Hearing [APPENDIX P. 57-68];   (It is undeniable that a formal hearing occurred—and this court itself took judicial notice of the union arbitration award, thus this does not meet the standard of an ad hoc disciplinary measure or retaliation in pursuit of an award.)
[41] APFA Const. Art. VII [ APPENDIX p. 25-31].
[42] Docket No. 45, Order granting Judicial Notice, [PAGEID 1184].
[43] APFA Const. Art. VII  [APPENDIX P. 25-31].

APFA Constitution and Policy.[44] The National Secretary and National Treasurer oversee and enforce these measures.[45] The National Treasurer is required to testify as to the financial documents—and did so in both disciplinary hearings. The four National Officers hold seats and votes on the Executive Committee and on the Board of Directors—both of which reviewed and voted on pursing disciplinary measures against Plaintiff.[46]  It is undeniably clear that the Union Arbitration is considered within the scope of the U.S. Supreme Court's definition of "otherwise discipline."[47]

Chinery-Burns pursued charges and an Article VII Disciplinary Hearing against Plaintiff, but all monetary awards are enforced and recovered by the union—this fact is not contested by the Defendants whatsoever.  Chinery-Burns does not collect the $30,963.03 award—all those funds go to APFA.  The Confidential Memo states that the National Officers—including the National Treasurer—in-house counsel—Margot Nikitas, former counsel in the matter-at-issue—and outside counsel—William Osborne—currently counsel for Defendants in the matter-at-issue—requested this review by the accounting firm.[48]  The National Treasurer, Harris, continued to cite the review, just as he did in the letter to the Board of Directors—never disclosing the Confidential Memo, or its contents, to the Executive Committee, the Board of Directors, or the APFA Disciplinary Arbitrator.[49]

---

[44] APFA Const. Art. VII Sect. 7 [APPENDIX P. 25-31].  The disciplinary sanctions spelled out by the APFA Const. Art. VII, Sec.7 include fines, fees and cost of the arbitration proceeding.
[45] APFA Const. Art. VII Sect. 7 [APPENDIX P. 25-31].
[46] APFA Const. Art. VII Sect. 7 [APPENDIX P. 25-31].
[47] APFA Const. Art. VII, Sec. 1 and 2,  [APPENDIX P. 25-31]; Charges Against Pl. [APPENDIX P. 76-78].  (The Union Constitution does not provide a right for the union to bring charges on its own behalf—only a *member* in good standing may bring charges on behalf of the union against another member—there are no enumerated rights for the union to act in bringing charges on its own behalf.  Art. VII, Sec. 7B only provides that awards can be issued against the accused for only half of the cost of the arbitration—again illustrating the disparaging treatment in this arbitration in that Ross's personal bond information is required to be left with the union, and documents are not produced, and an award for the full amount of the cost of arbitration is rendered in violation of this section of the APFA Const.).
48 Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix P. 1-15].
49 Martin Aff. [Appendix p. 16-20].

Most importantly, the email correspondence between the National Treasurer and the APFA Accounting firm show he received the Confidential Memo.[50]  Harris received the Confidential Memo, but concealed it only to forward it to the other National Officers and in-house counsel the same day Ross filed suit under LMRDA §101 (a)(5).[51]  Harris concealed this Confidential Memo until April 20, 2022—over a year and a half after receiving it.[52]  It is without question—Harris— the National    Treasurer—concealed the Confidential Memo while disparaging Plaintiff and misrepresented the facts to the APFA leadership, Board of Directors and Executive Committee for well over a year and a half.[53]

It was Chinery-Burns and Lee that pursued charges against Plaintiff in a Union Disciplinary Hearing, however Harris conspired with them to achieve the disciplinary award that fined and found Plaintiff guilty. HaHarris testified in the Disciplinary Hearing as to the accuracy of these documents and it was Chinery-Burns and Lee that questioned him on the stand.[54]  All the while, Harris knew these charges were not accurate, yet he continued to conceal the true facts from the APFA Board of Directors, Executive Committee, and even the Arbitrator.[55]

Thus, at least three union members, one being the National Treasurer, were involved in the concealment and pursuit of improper disciplinary charges against Plaintiff:  Melissa Chinery-Burns, Sandra Lee, and Erik Harris.  The photos of the Chinery/Burns wedding only months after the Disciplinary Hearings clearly show a very close connection between Chinery-Burns, and the National Officers.  So this would fall outside the scope of a personal vendetta, to an action wherein Plaintiff was guaranteed "procedural safeguards designed to protect against improper disciplinary

---

[50] Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix pp. 1-15].
[51] Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix pp. 1-15].
[52] Email from Hal O'Neil to Erik Harris on October 22, 2020, [Appendix pp. 1-15].
[53] Martin Aff. [Appendix p. 16-20].
[54] Ross Arbitration Transcripts [Appendix p. 57-68].
[55] Martin Aff. [Appendix p. 16-20].

action—'written specific charges,' ' reasonable time to prepare a defense,' and a 'full and fair hearing'" by the union.[56]

Finally, the action cannot solely be pursuant to a vendetta as an ad hoc action if the APFA Board of Directors reviewed, and voted in a Resolution adopting the Award on behalf of the Union.[57] Moreover, the APFA National President sent out a hotline letter to every member of the Union, signed and addressed to the entire APFA union, and announcing the awards and fines levied against the Plaintiff.[58] This action shows the concert of conduct between the charging party, the officers' attendance at her wedding, the vote by the Board of Directors, and pursuit of charges against the Plaintiff and ultimately a letter signed and dated from the APFA National President to all 30,000+ union members.   It is undeniable that this conduct was performed by the union.

## B. Request to Grant Plaintiff Leave to file Amended Complaint

The Plaintiff respectfully requests the Court to vacate the dismissal order and grant Plaintiff leave to amend the original complaint prior to dismiss Plaintiff's claims in their entirety, so Plaintiff may cure any deficiencies rendered therein. This request is made in accordance with Federal Rules of Civil Procedure, Rule 15(a)(2), the 5th Circuit Court and the U.S. Supreme Court's judicial deference demanding a complaint be allowed at least one chance to amend its Complaint prior to dismissal.[59]

---

56 *Boilermakers v. Hardeman*, 401 U.S. 233, 241 (1971) ("As we have said, the critical question in this action is whether Hardeman was afforded the rights guaranteed him by § 101(a)(5) of the LMRDA. If he was denied them, Congress has said that he is entitled to damages for the consequences of that denial. Since these questions are irrelevant to the legality of conduct under the National Labor Relations Act, there is no danger of conflicting interpretation of its provisions. And since the law applied is federal law explicitly made applicable to such circumstances by Congress, there is no danger that state law may come in through the back door to regulate conduct that has been removed by Congress from state control. Accordingly, this action was within the competence of the District Court.")

57 See APFA Board Resolution on Ross Award, [APPENDIX P. 83-86].

58 Hotlines [APPENDIX P. 50-56, 79-82].

59 *Whitmire v. Victus Limited*, 212 F.3d 885 (5th Cir. 2000) (confirming *Foman v. Davis and holding* "Leave to amend pleadings 'shall be freely given when justice requires.' FED. R. CIV. P. 15(a). We have explained that the propriety of allowing amendment to cure jurisdictional defects should be governed by the same standard as other amendments to pleadings, namely the standard set forth by the Supreme Court: In the absence of any apparent or declared reason--such as undue delay, bad faith or

## IV.    Conclusion

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that the Court vacate its Order of Dismissal and grant Plaintiff leave to amend its original complaint, and award Plaintiff such other and further relief to which he may be justly entitled to receive.

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By:   /s/ Kerri Phillips
      Kerri Phillips
      Texas Bar No. 24065906
      Phone: (972) 327-5800
      Email: kerri@KDphillipslaw.com

By:   /s/ Heather Abreu
      Heather Abreu
      Texas Bar No. 24122577
      Phone: (972) 327-5800
      Email: heather@KDphillipslaw.com

      5700 Tennyson Parkway, Suite 300
      Plano, Texas 75024
      Fax: (940) 400-0089
      For Service of Filings:
      notice@KDphillipslaw.com

      **ATTORNEYS FOR PLAINTIFF**

---

dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."...); *See generally Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)* (reversing denial of leave to amend by citing to *Rule 15(a)(2)*'s mandate to freely give leave to amend and stating "this mandate is to be heeded").

19

## <u>CERTIFICATE OF CONFERENCE</u>

The Defendants' counsel has advised the undersigned that the Plaintiff is opposed to this motion.

## <u>CERTIFICATE OF SERVICE</u>

I certify that true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF Filing on this the 9th day of November 2022**.**

William Osborne, Sanford Denison, Michael Rake

   /s/Kerri Phillips

Kerri Phillips