**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | |
|---|---|
| **ROBERT (BOB) ROSS** §<br>**Plaintiff,** §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>**V.** §<br>§<br>**ASSOCIATION OF PROFESSIONAL** §<br>**FLIGHT ATTENDANTS,** §<br>**MCGAUGHEY, REBER AND** §<br>**ASSOCIATES, INC., JULIE** §<br>**HEDRICK,ERIK HARRIS, LARRY** §<br>**SALAS, JOSH BLACK, IMA** §<br>**FINANCIAL GROUP, INC.**<br>**Defendant.** | **Case No. 4:22-CV-00343** |

<u>**PLAINTIFF'S THIRD AMENDED COMPLAINT**</u>

    **NOW COMES** ROBERT (BOB) ROSS, Plaintiff, in the above-entitled and numbered cause, and files this Plaintiff's Original Complaint, and shows the Court:

**I.**

**INTRODUCTION**

    1.    This action seeks redress for unlawful debt collection practices of the Fair Debt Collection Practices Act 15 U.S.C. §§1692 d, e, and f et seq {hereinafter "FDCPA"), violations for the Fair Credit Reporting Act 15 U.S.C. 1681s-2 (a)(1)(A) and (B) (hereinafter "FCRA"), and the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §412, Breach of Union Constitution, and damages resulting from various torts brought under state law including breach

**Exhibit 1**

of fiduciary duty, intentional interference with a contract, defamation, and intentional infliction of emotional distress.

2.     In 2016, Plaintiff was elected APFA National President, shortly after American Airlines and US Airways merged. Out of this merger grew the notion and political debates over a merger between the two flight attendants' labor unions with the Association of Flight Attendants-Communication Workers of America ("AFA") on one side—the union that represented US Airways flight attendants among others—and the Association of Professional Flight Attendants on the other side—a labor union that *exclusively* represents American Airlines flight attendants.  A power struggle ensued between those that supported a merger of the two unions—AFA and APFA ("AFA/APFA")—and those that opposed a merger between AFA and APFA.  Supporters of the AFA/APFA merger have now infiltrated APFA with the intent to take over and achieve a merger of the two unions.  The result has been the use of APFA's Disciplinary Procedures to victimize any union member that is outspoken against a merger between AFA and APFA.  Violations of APFA members' rights have ensued in pursuit of the AFA/APFA merger agenda under federal and Texas state law as well as intentional tortious violations that resulted in damages to the Plaintiff and his family.

## II.

## PARTIES

3.     Plaintiff, Bob Ross ("Ross") was employed with APFA in the state of Texas and a citizen of Texas during his employment.  His current primary residence is in the State of California; however, all events pertinent to the claims contained herein occurred within the state of Texas.  His primary residence is 4701 Hayloft Ct., El Dorado Hills, CA 95762.

**Exhibit 1**

4.      Defendant, McGaughey, Reber and Associates, Inc d/b/a Diversified Credit Systems ("Diversified"), is the assignee of a termination contract between Ross and the Association of Professional Flight Attendants ("Transition Agreement").   Its registered agent for service of process is M S. McGaughey located at 2200 Jahan Trail, Longview, Texas 75604.  This company is engaged in the collection of debts using the mail and the telephone.    Diversified is an entity whose principal purpose is the collection of any debts.  The Defendant regularly attempts to collect consumer debt alleged to be due to another and are "debt collectors' as defined by FDCPA, 15 U.S.C. § 1692(a)(6).

5.      Defendant, Association of Professional Flight Attendants ("APFA") is the original party to the Plaintiff's Transition Agreement, which formed the basis of the original claim.  This claim gave rise to this lawsuit and may be served by and through its current National President, Julie Hedrick at APFA headquarters at 1004 W. Euless Blvd, Euless, Texas 76040.

6.      Defendant, Julie Hedrick, ("Hedrick") is the National President of APFA and can be served at her place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or at her place of residence 3231 Del Monte Court, Fairfield, CA 94534.

7.      Defendant, Erik Harris ("Harris") is the National Treasurer of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

**Exhibit 1**

8.     Defendant, Larry Salas ("Salas") is the National Vice-President of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or anywhere else he may be found.

9.     Defendant, Josh Black ("Black") is National Secretary of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or anywhere else he may be found.

10.    IMA Financial Group, Inc. issued and holds a surety bond for all APFA National Officers.  It's Registered Agent for Service of Process is InCorp Services, Inc. located at 815 Brazos St., Ste 500, Austin, Texas 78701.

## III.

## JURISDICTION AND VENUE

11.    Plaintiff files this Third Amended Complaint in the Northern District Federal Court - Fort Worth Division based on Federal Question between the Parties in this suit.

12.    Plaintiff brings claims under jurisdiction of this action which is conferred on this court by virtue of the Fair Credit Reporting Act 15 U.S.C. 1681s-2 (a)(1)(A) and (B), Fair Debt Collection Practices Act 15 U.S.C. §§1692 d, e, and f, and the Labor Management Reporting and Disclosure Act, 29 U.S.C. §412, and Breach of a Union Constitution.

13.    The amount in controversy exceeds $75,000; the Defendants conduct business in Texas, while the Plaintiff is a former citizen of Texas at the time, all facts that gave rise to the claims contained herein, occurred in the State of Texas.

## IV.

## CONDITIONS PRECEDENT

**Exhibit 1**

14.     All conditions precedent to Plaintiff's recovery against Defendants have been fully performed, have occurred, or have been waived or excused.

**V.**

**FACTUAL BACKGROUND**

**A.     Bob Ross was elected by the Membership in April of 2016 to serve as President of the Association of Professional Flight Attendants' Union.**

15.     Ross was elected shortly after American Airlines and US Airways merged.  This created a power struggle between the labor unions for the Flight Attendants. A power struggle ensued between those APFA members that supported a merger of the two unions ("AFA/APFA"), and those that opposed an AFA/APFA-merger.   The result is AFA/APFA supporters infiltrating APFA leadership roles, and their subsequent use of APFA's Disciplinary Procedures as a method of victimizing Plaintiff, and others that opposed such a merger.

16.     At the APFA Annual Conference on February 28, 2018 - March 3, 2018, APFA BOD encouraged Ross to step down from his role as many endured a lot of questions from AFA/APFA members about the Chinery-Burns's petition and campaign for Ross's resignation. Fear that any of these Board members would be the next target led many to support Ross's resignation.

**B.     Ross negotiated, signed a transition agreement, and reluctantly surrendered his Presidential position, but was subsequently voted back on by the APFA BOD in April of 2021.**

17.     Ross conceded his position as President of APFA after negotiating on the following conditions:

- Ross would be paid outside of APFA policy—which provides that unused Sick and Vacation Days may be paid to officers according to a Per Diem Calculation of Annual Salary divided by 365.
- Ross would be paid *all* accrued unused vacation time—rather than be limited to only the 14 days provided for under APFA policy;
- Ross would be paid *all* unused accrued sick time—rather than be limited to only the 12 days provided for under the APFA policy;

**Exhibit 1**

- Ross would be "made whole" upon stepping down and lose no stipends, no income he would have received otherwise had he remained in office;
- Ross would no longer be a target for undue harassment and open hostility by any of the APFA/AFA members through a binding non-disparagement clause;
- Ross would be entitled to his privacy under the terms of the Transition Agreement with a Confidentiality clause; and
- Ross would be entitled to moving expenses back to California in the amount of $10,000.

Ross's transition agreement, encapsulating these conditions, was drafted, and signed on March 1, 2018 ("Transition Agreement").  A true and correct copy of the Transition Agreement is attached hereto and incorporated herein for all purposes and marked as Exhibit A (*See* Transition Agreement, Ex. A).

18.     In 2021, Ross was duly elected to APFA's BOD where he, again, stood as a voice against the AFA/APFA merger.  This was a threat to the AFA/APFA members who crept deeper into key roles within APFA's organizational structure—eventually leading to the election of APFA's National officers: National President, Julie Hedrick; National Vice-President, Larry Salas, National Treasurer, Erik Harris, and as the National Secretary, Josh Black.

19.     On or about March of 2019, AFA/APFA members Chinery-Burns and Sandra Lee ("Lee") launched an investigation into Ross, the officers that served with him, and his supporters. With the assistance of Harris, the APFA National Treasurer, and all other National Officers, Chinery-Burns and Lee began to scour all financial records from his presidency in search of any impropriety. The APFA National Officers granted Chinery-Burns and Lee access to Ross's confidential Transition Agreement, including financial documents that disclosed his personally identifiable information. Thereafter, Chinery-Burns and Lee filed additional charges against Ross and those within his administration.  Again, these APFA elected officials could either fight the charges in arbitration or retire their career from American Airlines as flight attendants—a bold and blatant attempt to take over key APFA leadership positions.

**Exhibit 1**

**C. In November of 2020, Erik Harris, APFA's National Treasurer, sent a demand for an alleged debt Ross owed for $5,436.37.**

20.     On November 24, 2020, Harris wrote a letter to Ross demanding payment for a debt he allegedly owed to APFA ("Overpayment-of-Wages Letter").  A true and correct copy of the Overpayment-of-Wages Letter is attached hereto as <u>Exhibit B.</u>    The following alleged factual assertions were made in the Overpayment-of-Wages Letter by Mr. Harris:

  i.   The APFA BOD had met and declared in a finding that Ross was overpaid in the amount of $5,436.47 under his Transition Agreement in 2018 (*See* Overpayment-of-Wages Letter, Ex. B).

  ii.  The APFA BOD's findings were based on a review from an independent accounting firm (*See* Overpayment-of-Wages Letter, Ex. B).

  iii. This independent accounting firm "determined that the formula used to determine the daily rate for [Ross's] sick and vacation payout was incorrect" (*See* Overpayment-of-Wages Letter, Ex. B).

**Every single factual assertion outlined above is false.**

21.     Harris included and referenced scheduled attachments to the Overpayment-of-Wages Letter marked as A, B and C (*See* Overpayment-of-Wages Letter, Ex. B). ("Schedules").  The attached Schedules outline the following:

  i.   <u>Schedule A</u>: the calculation of Ross's Per Diem calculation per the APFA Policy—annual salary divided by 365;

  ii.  <u>Schedule B</u>: an outline of payments made in 2018 for unused Vacation and Sick Days in accordance with the Transition Agreement; and

  iii. <u>Schedule C</u>: a final spreadsheet asserted that the amount Ross was paid and then subtracted the APFA-Policy Per Diem multiplied by the correct APFA-Policy capped twelve (12) Sick Days per year and the maximum amount of his unused Vacation Days (*See* Overpayment-of-Wages Letter, Ex. B.)

22.     The per diem calculation used for Ross's original 2018 payout included his normal monthly stipends paid to all APFA officers for their Meal Expense Allowance ("MEA") and Special Assignment Fee ("SAF") and Maintaining an Office Outside Residence—a stipend often included

**Exhibit 1**

when one takes vacation and sick leave. The difference between the two per diem calculations resulted in an alleged overpayment of $5,436.37 (*See* Confidential Memo, Ex. C). This letter fails to explain why no offset is given for his additional unpaid Sick Days.

Nothing in the Overpayment-of-Wages Letter indicates these Schedules were the product of an audit or a formal review by an independent accounting firm (*See* Overpayment-of-Wages Letter, Ex. B). Ross was never given any independent accounting firm's name or information to verify these calculations or any other information to validate these schedules, despite asking for a copy of the full report in the conversation Ross and Harris had, as referenced in this letter. By the middle of February 2021, he discovered the debt had been sold to Diversified Credit System ("Diversified"), after which Diversified filed suit against Ross to collect the debt.

**D. On January 14, 2022, Diversified Credit Systems filed suit against Ross for the same debt Lee and Chinery-Burns already filed Article VII charges to collect—except Diversified's Petition included a letter from the APFA's accounting firm stating its opinion that Ross was paid correctly and does not owe this debt.**

23.     After the APFA Article VII Arbitration concluded, Diversified filed suit against Ross for breach of contract to collect the same $5,436.47 debt Chinery-Burns and Lee pursued in arbitration. Upon review of the petition, Ross realized that the four APFA National Officers, Julie Hedrick, Erik Harris, Larry Salas, and Josh Black ("National Officers") and others in the current APFA Administration withheld documents prior to and during the APFA Article VII Arbitration that would have exonerated him.

24.     More specifically, Diversified Credit Systems included in its original petition a letter from Wood, Stephens & O'Neil, L.L.P., an accounting firm for Defendants that accompanied the graphs cited as evidence of Ross's debt ("Confidential Memo"). This letter describes that APFA retained Woods, Stephens & O'Neil, L.L.P. to conduct an informal review of Bob Ross's confidential Transition Agreement attached hereto and marked as Exhibit C. (*See* Confidential Memo, Ex. C.)

**Exhibit 1**

The Confidential Memorandum from the APFA Accounting Firm outlines the following pertinent facts:

    i. That APFA officers, the APFA staff attorney, and APFA's outside counsel requested an informal review of Bob Ross's confidential Transition Agreement.

    ii. That these officers and attorneys requested the preparation of an overpayment schedule of accrued and unused Sick and Vacation-Day payments made to Bob Ross in 2018—similar to the overpayment schedules previously prepared for three other officers.  These overpayment schedules used the APFA Policy to calculate the per diem rate of pay for each officer and capped payout for Vacation and Sick Days according to APFA Policy.

    iii. The *most* important aspect of the letter states "**Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't [sic] specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement**."

    iv. Ross was granted moving expenses up to $10,000 for which he did not use all of these funds." (*See* Confidential Memo, Ex. C.)

25.     This Confidential Memorandum directly contradicts the facts laid out by Harris in the Overpayment-of-Wages Letter to Ross—**the accounting firm did not determine that the formula used to pay Ross's sick and vacation days was incorrect**.  In fact, the Confidential Memorandum confirms that Ross was paid *correctly* under the Transition Agreement since he was to be paid outside of APFA policy. This Confidential Memorandum names those that made the request and those that received notice of this letter: the APFA officers, and in-house and outside counsel. (*See* Confidential Memo, Ex. C.)

26.     Furthermore, Diversified sent Ross a verification-of-debt letter that included the Overpayment-of-Wages Letter ("VOD letter").   The Confidential Memorandum directly contradicts the language of the VOD letter.  (*See* Overpayment-of-Wages Letter, Ex. B).

**Exhibit 1**

27.     Requesting an accounting firm create Schedules that misrepresent the characterization of payments made to Ross is an attempt to acquire seemingly valid documents that the union officers could otherwise use to implicate Ross in over-payments to himself upon leaving office.   The concealment of the Confidential Memo from the APFA Board of Directors ("APFA BOD") and the APFA Executive Committee ("APFA EC) upon review or determination that a debt is owed is an intentional act against the interest of Plaintiff, Ross.   APFA National Officers and their attorneys concealed this letter and used only the Schedules, cited the accounting firm's "review" as though it were an audit.  These officers misrepresented that the accounting firm found that Ross was overpaid. As a direct result of these misrepresentations the APFA National Officers acted in breach of their fiduciary duty, disparaged, harassed, and charged Ross under the APFA Article VII Constitution to pursue unfounded damages.  The APFA National Officers submitted the Schedules to the APFA BOD, and the APFA EC to mar his reputation with APFA membership.  The APFA General Counsel, Margot Nikitas, (copied on both of these letters) was present at the December 1, 2020 EC meeting where Ross's Article VII charges were reviewed, as well as every day of Ross's Arbitration proceedings—yet she never raised the accounting firm's true findings to the Arbitrator, the APFA BOD, or the APFA EC.

28.     The Overpayment-of-Wages Letter further misrepresented that the APFA BOD found that Ross was overpaid by $5,436.47 in 2018—a fact later relied on by the Arbitrator to rule against Ross and fine him $27,631.60 in damages (*See* Martin Aff., Ex. D). Nena Martin ("Martin"), an APFA Board member during 2011 and 2021, was present at both the APFA BOD meeting on October 27 and 28 of 2020, which addressed many of the issues related to Ross's charges, and the APFA EC meeting on December 1, 2020.  (*See* Ex. D, Martin Aff.). Martin attests that she never participated in or knew of any finding from the BOD that Ross owed the $5,436.47 debt or that his per diem rate was

**Exhibit 1**

miscalculated based on these Schedules.  (*See* Martin Aff., Ex. D).  Moreover, the APFA BOD showed no formal finding was ever recorded in any meeting minutes, resolutions, or actions by the AFPA BOD during the Fall of 2020.   The APFA BOD never discussed this account, reviewed this Confidential Memorandum from the accounting firm, nor did the APFA BOD ever find that Ross was overpaid.  No formal vote was ever held, and no formal action by the APFA BOD was ever taken as far as the record shows.

29.     Nena Martin also attended the EC meeting on December 1, 2020 where Ross's Article VII charges were found timely, valid, and specific.  Martin attests that neither the Confidential Memorandum nor its contents were ever presented or disclosed to the EC prior to voting.  (*See* Ex. D, Martin Aff.). Martin only attests that the BOD and the EC were presented with spreadsheets, similar to those attached to the Overpayment-of-Wages Letter and told that an accounting firm prepared them as a result of a formal review and found Ross had been overpaid. (*See* Ex. D, Martin Aff.).  It can only be presumed that the APFA Officers and their counsel deliberately withheld the information and misrepresented the facts to ensure that Ross and his supporters were removed from the APFA leadership positions.

**E.  APFA BOD and the APFA EC held that the charges brought against Ross for fraud and misappropriations were valid and referred the case to APFA's internal Arbitration Proceedings per the APFA's Constitution.**

30.     Once an Article VII charge is filed by a member, at the first regularly scheduled meeting of the APFA Executive Committee ("APFA EC"), the EC reviews the charges for its timeliness, specificity, and validity.  If the charges are found to be timely, valid, and specific, the charged party is then served notice and the matter proceeds to arbitration. The charged party escapes a judgment by either winning at arbitration or if the charged member retires or resigns from American Airlines while the charges are pending, then the charges are dismissed. It is not difficult to see how

**Exhibit 1**

abuse of APFA's Constitutional Article VII Disciplinary Procedures could thwart the democratic process of an election and victimize the very members the union seeks to protect. APFA's Constitutional Article VII Disciplinary Procedures are launched to institute a culture of silence and obedience, and has been used to eliminate any opposition to a merger between the two unions.

31.     Unbeknownst to Plaintiff, Chinery-Burns and Lee filed Article VII charges against Ross on November 18, 2020 for violations of misuse of his credit card, and overpayment under the Transition Agreement among other complaints.  These charges were based, in part, on payments made under the Transition Agreement.  The APFA EC held a meeting on December 1, 2020 and voted that the charges were valid and timely before Ross ever received notice of the Article VII charges. Arbitration Proceedings were initiated per Article VII without Ross ever receiving proper notice, an opportunity to review any evidence, or an opportunity to be heard by the APFA BOD or the APFA EC.  Ross was left with only one of two choices: he could resign from AA under a cloud of suspicion or proceed to arbitration in the hope he would win and restore his reputation—he chose the latter out of fear that he would not be rehired elsewhere under suspicion of impropriety.

32.     Discipline procedures conducted by the APFA, from start to finish, were fraught with due process violations that ran the spectrum—from lack of proper notice that charges were filed to unequal time for presentation of arguments to the exclusion of relevant and exculpatory evidence. This arbitrator lacked authority to hear these charges.  These charges were brought well beyond the 60-day limitations period required by the APFA Constitution. Ross also served subpoenas on the APFA President, Julie Hendrick and the National Secretary, Josh Black—both refused to appear, testify, or produce any documents.   Ross requested all documentation related to this alleged overpayment-of-wages debt be produced including all financial documentation related to the Ross Account in Collections with Diversified Credit.  Lee, Chinery-Burns, and Harris served a large

**Exhibit 1**

amount of documentation to Ross the day of trial in a disorganized mess, and yet no sanctions or exclusion of those documents were ordered by the Arbitrator, as would be standard in any other official judicial proceeding.  Most notably, Harris, the APFA National Treasurer, failed to produce any documents related to the debt demanded in the Overpayment-of-Wages Letter or any documentation from the accounting firm cited in this letter.

33.     The Arbitrator disallowed Ross from questioning Harris about his Transition Agreement and payments made thereunder.  Many of the charges brought against Ross pertained to expenses charged to the union for a rental vehicle, meals and expenses related to union business, furniture he purchased for an APFA apartment he used while splitting his time between Dallas-Fort Worth and California. Yet the arbitrator failed to consider the evidence showing Ross reimbursed APFA for this furniture.  Speculation persisted about credit card receipts for small gift cards he bought as a "thank you" to give the flight attendants that worked flights he took, or charges for in-flight internet use on business-related flights.   These were the types of charges brought into question three to five years after the charges were incurred, authorized and approved. .   APFA Constitutional limits to bring charges are 60-day from the time "after the accuser becomes aware, or reasonably should have become aware, of the alleged offense." The procedure during 2016-2018 was to submit expenses to the APFA Treasurer who reviewed and approved expenses as valid.  The Treasurer during Ross's administration was Eugenio Vargas, who reviewed and approved all of Ross's charges and expenses during his term and never knew Ross to conduct any illegal or illicit charges to the union.  (*See* Vargus Aff. Ex. E).

34.     The Arbitrator prevented Ross from admitting any evidence relating to Vargas's review and verification of his charges, payments and expenses that were paid per procedure. Ross was also not allowed to question Harris over the calculations for his payout nor the review by the

**Exhibit 1**

accounting firm, nor discuss the assignment of the Transition Agreement to Diversified. Thus, Ross could not argue APFA's lack of standing to collect an account assigned to a third party since the Arbitrator took over questioning the witness. The Arbitrator even allowed Harris to testify as an accountant. Harris did nothing to correct the record and clarify that he does not, in fact, hold any certification as a public accountant. Chinery-Burns was given more than eight hours over two days to present her case to the Arbitrator; Ross had less than three hours to present his defense and witnesses—most ignored his subpoenas, and yet the Arbitrator made no effort to enforce these subpoenas or even require attendance during an arbitration hearing where Ross's reputation, career, and property interests were at stake.

35.     An arbitration award was issued on March 19, 2022, a true and correct copy of the final Arbitration Award is attached hereto an incorporated herein and marked as <u>Exhibit E</u> ("Ross Arbitration Award"). The Arbitrator relied on evidence presented by Chinery-Burns and Lee that Ross was guilty of breach of fiduciary duty, misappropriation of funds, and fraud citing the same misrepresentations reflected in Harris's Overpayment-of-Wages Letter:

> "With respect to sick and vacation payout**, *the APFA Board of Directors has determined that Defendant Ross was overpaid in the amount of $5,436.47 in 2018* [and]. . . . *[t]he Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect*. . . .[i]t is therefore arbitrator's Opinion, Defendant Ross has failed and abused his Fiduciary Duty. The non-payment of these monies reveals Defendant Ross is not accepting this responsibility" (*See* Ross Arbitration Award, March 19, 2022, Ex. E, 21-24).

These are misrepresentations, and yet because Harris testified to them as factual, the Arbitrator found it truthful without giving Ross the opportunity to show evidence to the contrary.

**F.   APFA's internal Arbitration resulted in a windfall award against Ross that held Ross liable for all charges Chinery-Burns brought against him, and Ross is now charged with over $27,631.60 in charges and fees by APFA for the cost of an unfair arbitration.**

**Exhibit 1**

36.     Upon discovering the Confidential Memorandum, Ross's union representative appealed to the Arbitrator to reopen the arbitration and submit this evidence.  The Arbitrator denied this request—despite the document's exculpatory nature, Harris' concealment of it from the APFA BOD and EC—who voted and deemed the Article VII charges valid—and APFA's lack of disclosure of this document and others during the Arbitration. The Arbitrator did not find the evidence pertinent to any of the charges brought against Ross, then proceeded to find him guilty of fraud, misappropriation of funds, and breach of a fiduciary duty, and rendered an arbitration award in favor of Chinery-Burns and Lee for at least $52,340.79.

37.     When the arbitrator rendered the award, the result was a windfall against Ross, for which an entire day passed before he was ever served with the verdict. The arbitrator ignored any evidence that Ross previously paid for the furniture charged on the company card.  The arbitrator further ignored any evidence that all charges were filed outside of the 60-day window required by the Art. 7, Sec. 2(D)(1) of the APFA Constitution.  This would mean that the charges were not timely filed with the union, and thus Chinery-Burns and Lee were prohibited from filing their charges before ever being heard by the Executive Committee.

# IX.

## CLAIM:  LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT VIOLATIONS

38.     Plaintiff incorporates all preceding paragraphs above.

39.     Under 29 U.S.C. §411 states that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the

**Exhibit 1**

alleged violation occurred, or where the principal office of such labor organization is located." This act provides that no member of any labor organization may be fined in any way except for nonpayment of dues, unless notice, an opportunity to prepare a defense and a full and fair hearing is given to the person (29 U.S.C. §411 (a)(5)).

38.     Defendant, APFA, claimed that the APFA BOD found that Plaintiff, Ross, owed $5,436.37, in the Overpayment-of-Wages Letter, which is a violation of this section of the LMRDA §411(a)(5), as Plaintiff never received proper notice, due process or a full and fair hearing before being assessed with a fine or fee. There is no requirement for anyone not living within 150 miles of the arbitration site to comply with subpoenas, however most of the flight attendants live outside the state. Furthermore, restriction of documents and document discovery cannot be compelled by the charged-party, and thus restricting financial documents can become a basis for APFA to deny request for documents subject to Arbitration proceedings. It is a violation of LMRDA to not offer a full and fair hearing on the matter, and yet a charged party is not entitled to compel the evidence needed to absolve oneself. Further, it is a violation of LMRDA to conceal the full financial documents associated with the accounting firm's review of Ross's debt and conceal the letter from the APFA accounting firm finding Plaintiff was paid correctly under the terms of his Transition Agreement by Defendant, APFA.

## X.

## CLAIM: BREACH OF UNION CONSITUTION

39.     Plaintiff incorporates all preceding paragraphs above.

**Exhibit 1**

40. The APFA Constitution provides in Art. II §3 (C)-(D) provides that all members shall have the right to individual privacy, due process and equal representation.

41. Defendants, APFA, and the APFA National Officers violated Plaintiff's, Ross's, rights to privacy by publicizing and disparaging him regarding debts that he allegedly owed to the union and its members.  Harris, the APFA National Treasurer, emailed APFA leadership, directors, and committee members about Plaintiff's debt.  These emails harassed him publicly over a debt in dispute.  Further, social media posts to APFA membership were posted by various members as well as a hotline announcement that marred Plaintiff after the announcement of the arbitration award.  He has endured humiliation and shame for conduct of which he was never guilty.

42. Defendants violated Plaintiff's due process rights intentionally when it withheld evidence from the accounting firm and its formal opinion that Ross did not owe the debt under his Transition Agreement.   APFA further violated due process by misrepresenting the facts to Plaintiff and the union BOD and EC to charge and collect monies and disparage Plaintiff.

43. Defendants violated Plaintiff's due process rights in denying him access to documentation he requested in a subpoena as it never gave him a copy of the Confidential Memorandum.

44. Defendants denied Plaintiff proper notice as required prior to charging him with Article VII charges.

45. The APFA Constitution Art. VII, Sec. 2 provides that charges must be brought within 60-days after a member knows or should have known of the charges that are

**Exhibit 1**

filed. APFA denied Ross his due process rights by allowing his charges to move forward and finding them timely-filed despite evidence and testimony in the opening statement that these two members began investigations into Ross in 2019, well over 12 months prior to filing Article VII charges against him.

## XI.

## CLAIM: VIOLATIONS OF FAIR CREDIT REPORTING ACT

46.     Plaintiff incorporates all preceding paragraphs above.

47.     Defendants, Diversified Credit and APFA, published to credit reporting agencies that Plaintiff was in collections on $5,436.47. Ross discovered this when he was refinancing his home and attempting to get a lower interest rate as well as taking out a loan to assist in funding his children's college education. Ross disputed this credit reporting in writing. After researching the debt, Diversified responded with a verification of the debt, which included the demand letter from APFA National Treasurer, Harris. However, the Plaintiff's original petition proves that Diversified had a copy of the Confidential Memorandum in its possession at the time and clearly did not conduct a thorough investigation of the debt as it continued to collect the debt. APFA was the original creditor of the debt and knowingly furnished inaccurate and false information to Diversified that Ross owed a debt under the Transition Agreement despite having been informed by the accounting firm that he did not owe this debt. APFA and Erik Harris acted intentionally and knowingly when it gave Diversified the incorrect address to prevent any initial contact letter from reaching Ross and giving him the opportunity to dispute the debt to prevent any credit reporting. Harris was aware that this would mar Ross's credit report at a time when his two children were applying for college and subsequent financial aid.

**Exhibit 1**

Therefore, APFA, and its officers owe Ross for furnishing this information to Diversified for violations under the Fair Credit Reporting Act.

48.     The Fair Credit Reporting Act 15 U.S.C. 1681s-2 (a)(1)(A) and (B) creates a duty for all furnishers of information, like Diversified to Ross, that *"A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."*   Clearly Diversified breached this duty in reporting even after receiving a dispute in writing from Ross.   The failure to investigate after his complaint and therefore, reporting information it should have known was inaccurate resulted in substantial refinance damages of $400,000, plus the associated costs and attorney's fees.

### XII.

### CLAIM:  BREACH OF CONTRACT/EMPLOYMENT CONTRACT

49.     Plaintiff incorporates all preceding paragraphs above.

50.     Plaintiff, Ross, provided valuable services to Defendant, APFA, by working as a National President for Defendant.  A Transition Agreement was drafted by APFA counsel and signed by all APFA BOD as well as Defendant, Ross on March 1, 2018 creating a valid and binding contract ("Transition Agreement").

51.     Plaintiff provided these services as a National President for Defendant.

52.     Defendant accepted these services.

**Exhibit 1**

53.     Defendant failed to maintain its obligations of confidentiality under the Transition Agreement when it revealed the terms of the transition agreement to Chinery-Burns and Lee, as well as others in the APFA membership.

54.     Defendant failed to maintain its obligation of non-disparagement under the Transition Agreement when it allowed Hedrick, Harris, and Chinery-Burns to continually publish false and disparaging comments about Plaintiff, causing reputational and emotional damages to him and his family.

55.     Defendant failed to pay the full amount due and owing under the Transition Agreement as the calculations per the Confidential Memorandum provided to the APFA BOD clearly exhibits the opinion of APFA's own accountant that the calculation of the per diem rate and payments were accurate.

56.     Defendant suffered damages to his career and future income-based on the reputational harm suffered in violation of the nondisparagement clause under his Transition Agreement.

57.     Defendant failed to pay Plaintiff for all of his Sick Days under the Transition Agreement, at the per diem rate including MEA/SAF stipends as intended in the Transition Agreement, the costs and expenses he incurred for arbitration proceedings, his reimbursable expenses APFA failed to pay him for prior to his termination which amount to a total $97,378.19.

## XIII.

## CLAIM: FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

58.     Plaintiff incorporates all preceding paragraphs above.

**Exhibit 1**

59.     Defendant, Diversified, violated 15 U.S.C. §§1692 d, e, and f of the Fair Debt Collection Practices Act ("FDCPA"), including misrepresentations on the amount, the nature, and harassing and/or disparaging comments to the debtor for the purposes of abuse.

60.     Defendant, Diversified, never sent and Initial Contact Letter to Ross and violated the FDCPA in his rights to dispute the validity of the debt and prevent credit reporting.  The damages resulted from unauthorized credit reporting and negative credit reporting and collections of the wrong amount at a time when Ross was refinancing his home and applying for loans for his children's college education. Consequently, he has suffered extensive damages as a result including the additional interest for the loans on his children's college, the denial of his home loan, which is over $500,000 loan, and he has been forced to bring his children home from college do to the inability to finance their college education because of the Arbitration Award and litigation.  His family has suffered extensively as a result as these violations, damaged Ross's career and future ability to earn income, but this hardship has now impacted his children's future.

## XIV.

### CLAIM:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.     Plaintiff incorporates all preceding paragraphs above.

62.     The Defendants, APFA, Julie Hedrick, Larry Salas, Erik Harris and John Black acted intentionally or recklessly when both failed to correct the record, turn over the Confidential Memorandum and misrepresented to the Arbitrator, the BOD and EC that Ross owed a debt under the Transition Agreement, that Ross refused to pay

**Exhibit 1**

this debt, and that the accounting firm found in its review that Ross was paid properly under the Transition Agreement.

63.    Defendants' actions were extreme and outrageous in concealing the Confidential Memorandum or failing to correct the record when the facts reflected inaccuracies regarding the BOD findings.

64.    Defendants' action caused the Plaintiff extreme emotion distress for himself and his family.  Ross has had multiple hospital stays, medical issues, family and marital issues, financial issues, and extreme emotional distress because of the on-going hardship on him and his family.  His wife, and children have suffered as well, particularly because his wife also worked for American Airlines as a flight attendant for twenty-eight years, thus she too has suffered extreme emotional distress, panic attacks resulting from damage to her reputation within her social circle, not to mention their children have come home from college due to the cost of their education has become unbearable.  All of which is due to the circumstances created by APFA.

## XV.

## CLAIM:  DEFAMATION, INTENTIONAL INTERFERENCE WITH A CONTRACT, AND BREACH OF FIDUCIARY DUTY

65.    Plaintiff incorporates all preceding paragraphs above.

66.    Defendants, APFA National Officers owed Ross a fiduciary duty as a member in good standing within the union.

67.    APFA further violated Plaintiff's due process by misrepresenting facts to Plaintiff, to the union BOD, and the union EC all of whom voted to charge, approve a fraudulent arbitration award, collect monies not owed, and disparage Plaintiff.

**Exhibit 1**

68.     Defendant, APFA, violated Plaintiff's due process rights through denial of documentation Plaintiff subpoenaed.  Defendant had a duty to disclose all documentation, but particularly that documentation that alleviated his liability of the charges.  As a neutral party administering the proceedings, APFA had a duty to ensure the fairness of the arbitration process.  APFA failed to disclose a copy of the Confidential Memorandum to Plaintiff, as well as others thereby breaching its fiduciary duty.

69.     Defendants, APFA National Officers violated Plaintiff's due process by concealing documents that exonerated Ross from the charges against him.  The National Officers had a duty to ensure that the procedures were conducted in a fair and equitable manner, to ensure the integrity of the arbitration process, and they failed to uphold their duty and breached Ross's right to fair proceedings.

70.     Defendants, APFA, violated Plaintiff's right to privacy when it disclosed his personal and protected information including his social security number to union members.

71.     The National Officers further breached their fiduciary duty by making false statements of fact to a third-party regarding the alleged debt owed under the Transition Agreement, and Plaintiff Ross's conduct while in office.  Furthermore, the APFA BOD's findings regarding the accounting firm's conclusions about Plaintiff's payments under the Transition Agreement misrepresented the truth.  The National Officers conspired to create documents to implicate Ross, launch internal union charges against him that he had overpaid himself, and claim owed money to the union.  The officers concealed the Confidential Memo to achieve a favorable

**Exhibit 1**

Arbitration Award, forced Ross to step down from the APFA BOD, and marred his reputation.  This is a breach of the APFA National Officer's fiduciary duty to Ross. The APFA National Officers had a duty to disclose this document and explain the results of the review, and that it was not the same as an audit as it did not carry the weight of the accounting firm's binding opinion about overpayment of Ross's wages.

72.     Defendants acted with the intent to defame Plaintiff, injure his reputation, and remove him from his position within APFA leadership.

73.     In so acting, the APFA National Officers have breached their fiduciary duty to Ross, a member of APFA in good standing.

74.     The Transition Agreement is a valid contract, and Defendants knew it existed.

75.     Defendants intentionally defamed and exposed Plaintiff's Transition Agreement with APFA.

76.     Consequently, Defendants caused substantial damages to Plaintiff.

77.     Defendants did, in fact, defame, intentionally interfered with a contract, and breached their fiduciary duty to Ross as a member in good standing by causing damages, injuring his reputation and charging him.

78.     IMA Financial Group, Inc. issued a surety bond to protect any third party injured because of the union officer's individual fraudulent conduct.  Currently, Plaintiff has sought to include and pursue all claims against the Bonding Company to ensure protecting the union.

**Exhibit 1**

## <u>CONCLUSION AND PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Defendant hereby prays as follows:

    i.   For injunctive relief for unlawful collection activity, labor practices and defamation, and violations of the non-disclosure and non-disparagement clause in Plaintiff's Transition Agreement.

   ii.   That Plaintiff recover a judgment against Defendants, jointly and severally, for monetary damages for $1,800,000 for violations.

  iii.   That Plaintiff recover a judgment against Defendants jointly and severally, for punitive damages, cost of court and attorney's fees; and

  iv.   Such other and further relief, at law or in equity, to which Defendant may be justly entitled to receive.

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Email: kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, Texas 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
For Service of Filings:
notice@KDphillipslaw.com
**ATTORNEY FOR PLAINTIFF**

**Exhibit 1**