**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, MCGAUGHEY,** | § | |
| **REBER AND ASSOCIATES, INC.,** | § | |
| **JULIE HEDRICK, ERIK HARRIS** | § | |
| | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |
| | § | |
| **EUGENIO VARGAS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | **Case No. 4:22-CV-00430-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **ERIK HARRIS** | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |
| | § | |

**AFFIDAVIT OF EUGENIO VARGAS IN SUPPORT OF JOINDER OF PARTIES**

BEFORE ME, the undersigned authority, on this day personally appeared Eugenio Vargas, who being by me first duly sworn, did state:

1.  "I am employed as a Flight Attendant working with American Airlines, Inc. and I served as the National Treasurer for the Association of Professional Flight Attendants ("APFA"), from April 1, 2016 to July 1, 2018.  I have personal knowledge of the facts, I am 21 years or older and of sound mind to make these statements.

**APPENDIX 000001**

a. On or about April 7, 2023, I learned that Eric Harris, APFA National Treasurer, discussed receiving the email and documentation from Hal O'Neil, including the undisclosed Confidential Memo, on October 22, 2020 ("Confidential Memo Email") with APFA Base Vice-President of the American Airlines, Inc. Miami Base, Heidi Morgan. According to Ms. Morgan, Mr. Harris immediately forwarded that email with all attachments to all other National Officers, APFA General Counsel, Margot Nikitas, and APFA Outside Counsel, William Osborne.

b. Eric Harris, APFA National Treasurer, attended and testified at my Arbitration Hearing on September 14, 2021, and attended and testified at Robert "Bob" Ross's Arbitration Hearing on November 17, 2021. Furthermore, all four National Officers were present and voted at the Executive Committee Meeting on December 1, 2020 validating the charges filed against myself and Robert "Bob" Ross and sending the charges to an Article VII Union Disciplinary Arbitration Hearing. All four National Officers also attended and voted at the Board of Directors meeting wherein the Arbitration Awards against both Robert "Bob" Ross and myself were adopted by the union.

c. To date, none of the APFA National Officer provided the Confidential Memo to me. I discovered the existence of the Confidential Memo on or

APPENDIX 000002

about April 20, 2022 in a conversation with Robert "Bob" Ross where he

showed me a copy of the document.


FURTHER AFFIANT SAYETH NOT.

_Eugo Vargos_

_____

State of Texas                      **Eugenio Vargas**
County of Jefferson                 Eugenio Vargas who produced Texas
                                    drivers license as identification

SWORN AND SUBSCRIBED TO before me on this  30th_  day of July, 2023.


_E'Chanda Manette Goodman_

Notary Public, State of Texas
Remote Online Notary
State of Texas, Jefferson County

```
NOTARY PUBLIC        ECHANDA MANETTE GOODMAN
                     Notary ID #132642149
STATE OF TEXAS       My Commission Expires
                     August 25, 2024
```

This notarial act involved the use of remote
online communication technology

**APPENDIX 000003**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, MCGAUGHEY,** | § | |
| **REBER AND ASSOCIATES, INC.,** | § | |
| **JULIE HEDRICK, ERIK HARRIS,** | § | |
| **LARRY SALAS, JOSH BLACK** | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |
| | § | |
| **EUGENIO VARGAS** | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | **Case No. 4:22-CV-00430-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **ERIK HARRIS, LARRY SALAS,** | § | |
| **JOSH BLACK** | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |
| | § | |

---

### AFFIDAVIT OF HEIDI MORGAN

---

BEFORE ME, the undersigned authority, on this day personally appeared Heidi Morgan, who being by me first duly sworn, did state:

1. "I am employed as a flight attendant working with American Airlines, Inc. since 1986, and I am currently serving as APFA Miami Base Vice-President. I have personal knowledge of the facts contained herein, I am 21 years or older and of sound mind to make these statements.

a.  In 2021, I participated as a representative for Eugenio Vargas' in his APFA disciplinary arbitration hearing brought on behalf of the union by Melissa Chinery-Burns and Sandra Lee.  I further participated as a representative for Nena Martin in her APFA disciplinary arbitration hearing brought on behalf of the union by Melissa Chinery-Burns and Sandra Lee.  The charges sought disciplinary measures against Eugenio Vargas and Nena Martin for their participation in the alleged overpayment of Robert "Bob" Ross under his Transition Agreement among other charges.

b.  Whilst serving as representative to Nena Martin, I served Erik Harris, APFA National Treasurer and APFA custodian of record, with a signed subpoena making the following requests:

> "1.    Any and all communication between Hal O'Neil, CPA from Certified Public Accountants Firm Wood, Stephens & O'Neil, L.L.P. and APFA regarding the Ross Transition Agreement.
>
> 2.    Any and all internal APFA emails which distributed the communications between Hal O'Neil and APFA to the designated parties." ("Confidential Memo Subpoena").

c.  The initial subpoena was served on April, 20, 2022. It is standard for document production to be served in APFA's Digify Software Program within two to four days from the date reflected on the signed subpoena.

d.  An email was deposited into APFA's Digify Software Program dated April 20, 2022, wherein Erik Harris forwarded to Margot Nikitas and the four National

Officers an email exchange between Hal O'Neil and Erik Harris to schedule a meeting for discussion and review of the Ross Transition Agreement. A true and correct copy of this email is attached hereto and marked as Exhibit B-1.

e. No documents transmitting the Confidential Memo were produced before May 3, 2022. A true and correct copy of email exchanges made regarding Nena Martin's Arbitration Hearing are attached hereto and marked as Exhibit B-2.

f. On or about May 3, 2022, I spoke with Erik Harris on a telephone conversation about the failure to produce the internal emails distributing the Confidential Memo. Erik Harris informed me that he received the Confidential Memo Email from Hal O'Neil on October 22, 2020, and that upon its receipt on October 22, 2020, Mr. Harris immediately forwarded the Confidential Memo Email to Julie Hedrick, AFPA National President, Josh Black, AFPA National Secretary, Larry Salas, AFPA National Vice-President ("APFA National Officers") Margot Nikitas, AFPA General Counsel, and William Osborne, APFA Outside Counsel.

g. In this May 3, 2022 conversation, Erik Harris also stated that upon receipt of the Confidential Memo Subpoena Mr. Harris resent the Confidential Memo Email to the APFA National Officers and to Nikitas on April 20, 2022. Mr. Harris further stated that in response to the request for email distribution of the Confidential Memo, Nikitas advised Mr. Harris not to produce any internal emails. Mr. Harris stated that he followed Nikitas's legal advice on this matter.

h. In this May 3, 2022 conversation, Erik Harris further stated that he did not disclose the Confidential Memo to the APFA Board of Directors and the APFA

Executive Committee, revealing only the spreadsheet attachments, because he did not believe the Confidential Memo was relevant to the charges against Ross and Vargas.

i.   I discovered on the evening of May 3, 2022 that an email dated for April 20, 2022 ("April 20, 2022 Email") was deposited into APFA's Digify Software program responsive to the Confidential Memo Subpoena. This email shows that Mr. Harris received an email from Hal O'Neil dated October 22, 2020 containing the Confidential Memo ("Confidential Memo Email").  Mr. Harris forwarded the Confidential Memo Email to Julie Hedrick, AFPA National President, Josh Black, AFPA National Secretary, Larry Salas, AFPA National Vice-President, Margot Nikitas, AFPA General Counsel on April 20, 2022.  A true and correct copy of the April 20, 2022 email is attached hereto and marked as Exhibit B-3.

j.   On or about October 11, 2022, I was served with a subpoena by Robert "Bob" Ross on his pending case numbered 22-CV-00343 pending before the Northern Texas Federal District Court, wherein Ross sought any documents in my possession related to the disciplinary arbitration hearings against Robert "Bob" Ross, Eugenio Vargas, or Nena Martin.  In response to the subpoena request, I delivered a true and correct copy of the April 20, 2022 email exchange, and email exchange between Hal O'Neil and Erik Harris.

**AFFIDAVIT OF HEIDI MORGAN – Page 4**

FURTHER AFFIANT SAYETH NOT.

*Heidi Morgan*

State of Florida
County of Palm Beach

Heidi Morgan

SWORN AND SUBSCRIBED TO before me on this  31   day of July 2023.



DARIEN HERNANDEZ
Notary Public - State of Florida
Commission # HH186735
Expires on October 14, 2025

Darien Hernandez

This notarial act was an online notarization
produced a Florida Driver License

Notary Public, State of Florida

**Margot Nikitas**

| | |
|---|---|
| **From:** | Erik Harris |
| **Sent:** | Wednesday, April 20, 2022 6:19 PM |
| **To:** | Margot Nikitas; Officers |
| **Subject:** | FW: Meeting next week? |

--
# Erik Harris  *Pronouns:* *he, him, his*
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Hal O'Neil <oneil@woodcpafirm.com>
**Date:** Monday, September 14, 2020 at 1:26 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Chris Thedford <cthedford@apfa.org>, Pam Bush <pbush@woodcpafirm.com>
**Subject:** Re: Meeting next week?

Erik, Chris.......Pam and I can meet this Thursday around 9:00 AM at your office to go over the Bob Ross document list.   Is this OK?

Thanks, Hal

_____
Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

_____
*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

_____

## Exhibit B-1

1

**APPENDIX 000009**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

On Thu, Sep 10, 2020 at 12:46 PM Erik Harris <eharris@apfa.org> wrote:

> Hey Hal-
>
> My apologies. I'm finally getting a chance to catchup on emails.
>
> Yes, Thursday the 17th will work for us. I will be on vacation, however, the other officers will be available.
>
> Thanks,
>
> Erik
>
> --
>
> # Erik Harris
>
> National Treasurer
>
> ## Association of Professional Flight Attendants
>
> Office 817.540.0108x 8232 | Email treasurer@apfa.org
>
> *The content of this email is intended solely for the recipient(s).*
>
> *It is not to be shared, forwarded or posted without the author's written consent.*
>
> APFA
>
> **From:** "oneil@woodcpafirm.com" <oneil@woodcpafirm.com>
> **Date:** Wednesday, September 9, 2020 at 3:46 PM
> **To:** Erik Harris <eharris@apfa.org>
> **Cc:** Chris Thedford <cthedford@apfa.org>, Pam Bush <pbush@woodcpafirm.com>
> **Subject:** Meeting next week?

**Exhibit B-1**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000010**

Erik........Last week I responded to your email regarding our review of the Bob Ross documents.  Pam and I can come out to your office on Thursday morning the 17th to meet with you, Chris and hopefully Margot before we begin this process.  I just want to make sure all of us are in agreement of what needs to be completed before Sept.24th.  Will that morning work for you?

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper).  Thank you.*

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

**Exhibit B-1**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000011**

**From:** Heidi Kidwell
**Sent:** Tuesday, April 19, 2022 6:27 PM
**To:** ArticleVII; Nena Martin
**Subject:** FW: Chinery-Lee v. Martin-- Subpoenas

Josh,

Please forward to the Arbitrator immediately.

Heidi

Arbitrator Armendariz,

After extensive discussions if Chinery and Lee  care to dismiss all charges then we will withdraw our subpoena  requests, but otherwise, the documents are pertinent to our defense in its totality and are absolutely necessary.  Furthermore, as stated earlier denial of them would place any award issued by the arbitrator into question under article 9 section 10 of the FAA to vacate an award.

In addition, Section 102 gives Nena Martin the right to sue for violation of Section 29 U.S.C.  411. Ms Nikitas should be reminded that there are criminal and civil penalties for violations of this statute.  The Pennsylvania Bar will also be noticed of her infringement of a members bill of rights.

Margot Nikitas works for Nena Martin as much as she does Chinery and Lee and we demand the same consideration, frankly, more so because we should have complete access to all documents needed to exonerate Nena Martin.

This attempt to stifle a members access to information that is pertinent to her case is illegal.

Heidi Morgan
For
Nena Martin

**From:** Heidi Kidwell <heidimorgan65@gmail.com>
**Date:** April 19, 2022 at 5:25:22 PM EDT
**To:** ArticleVII <ArticleVII@apfa.org>, Nena Martin <nenarott@aol.com>
**Subject: RE: Chinery-Lee v. Martin-- Subpoenas**


Josh,

Please send to the Arbitrator immediately.

Heidi

Arbitrator Armendariz,

**Exhibit B-1**

APPENDIX 000012

The requested documents are absolutely necessary for the totality of our case. They are clarifying documents and we are renewing our request for the subpoenaed items.  To withhold this information from us would be a refusal to provide evidence pertinent and material to the controversy.

Ms. Nikites is showing complete partiality and bias to the charging party. Ms. Martin has rights under the Federal Arbitration Act that must not be violated or this award could end up in Federal Court due to the prejudice being exhibited when denying our request.

APFA has no right to determine the relevance of our requested documents.

We are renewing our request for these documents.


Heidi Morgan
For
Nena Martin


Sent from Mail for Windows


**From:** ArticleVII
**Sent:** Tuesday, April 19, 2022 4:39 PM
**To:** Heidi Kidwell; Nena Martin
**Subject:** FW: Chinery-Lee v. Martin-- Subpoenas



**From:** Margot Nikitas <MNikitas@apfa.org>
**Date:** Tuesday, April 19, 2022 at 2:49 PM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Chinery-Lee v. Martin-- Subpoenas

Hi Josh,

Please send this email to the Arbitrator with a copy to all parties and their representatives.

Thanks,
Margot

Arbitrator Armendariz,

APFA is in receipt of your email dated April 18, 2022, stating: "Inform Erik Harris to provide the requested documents per the subpoena's request." As such, APFA will provide electronic copies of the requested documents and there is no need for a conference call to discuss this matter. We are working now to provide all of the requested documents.

APFA also is in receipt of the Charging Parties' email dated April 18, 2022, stating in part: "In light of the decisions in the cases of Chinery/Lee vs Ross and Chinery/Lee vs Vargas, we are withdrawing the portion of our charges related to Nena Martin's failure to properly administrate the exit package provided to

**Exhibit B-1**

Bob Ross." Since this claim has been withdrawn, any subpoenaed documents related to the Bob Ross Transition Agreement are unrelated and irrelevant to this proceeding and will not be provided.

Finally, APFA respectfully requests that the Arbitrator signed the attached revised protective order necessary to protect confidential APFA financial records produced in this proceeding. The revised order clarifies that documents are to be returned or permanently deleted within 7 days of the submission of post-hearing briefs.

Thank you,
Margot

Margot A. Nikitas *Pronouns*: *she, her, hers*
General Counsel
Association of Professional Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040
817.540.0108 ext. 8108 (phone)
817.355.1919 (fax)
www.apfa.org

**Confidentiality Notice:** The content of this email message is intended for the confidential use of the intended recipient only. The information may be privileged, confidential and protected from disclosure. Recipients should not file copies of this email with publicly accessible records. If you are not the intended recipient, you have received this email in error, and any further review, dissemination, distribution, copying or forwarding of this email is strictly prohibited. If you received this email in error, please notify me immediately at 817.540.0108 ext. 8108 or by return email and then delete this email in its entirety. Thank you.

**APPENDIX 000014**

**Exhibit B-1**

**From:** ArticleVII <ArticleVII@apfa.org>
**Date:** April 27, 2022 at 10:02:13 AM EDT
**To:** Heidi Kidwell <heidimorgan65@gmail.com>, Nena Martin <nenarott@aol.com>
**Subject: Fwd: Subpoena for documentation**

---

**From:** Ruben Armendariz <arbruben@gmail.com>
**Sent:** Wednesday, April 27, 2022 8:38:23 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Re: Subpoena for documentation

Josh and Margot,

Please provide the information requested to Ms. Morgan. If you don't have the info, please state why you don't have the info!

Sent from my iPhone
Ruben R. Armendariz, Arbitrator
Member: National Academy of Arbitrators
29010 Pfeiffer's Gate
Fair Oaks Ranch, TX 78015
210-379-0860
arbruben@gmail.com

On Apr 27, 2022, at 8:20 AM, ArticleVII <ArticleVII@apfa.org> wrote:

---

**From:** Heidi Kidwell <heidimorgan65@gmail.com>
**Sent:** Wednesday, April 27, 2022 5:08:43 AM
**To:** Erik Harris <eharris@apfa.org>; ArticleVII <ArticleVII@apfa.org>; Nena Martin <nenarott@aol.com>
**Subject:** FW: FW: Subpoena for documentation

Josh,

This communication is both for Treasurer Erik Harris and the Arbitrator. I am copying in Erik and request you immediately forward to Arbitrator Armendariz.

Heidi

Erik,

On 4/20/22 we requested 2 simple things by legally signed subpoena from our Arbitrator. Today, 4/27/2, one week later, we have yet to receive those documents which must still be exchanged. This is not acceptable.

**Exhibit B-1**

APPENDIX 000015

I would like some simple answers. Do you have these documents prepared to send? If so, why haven't you sent them? Has anyone told you not to release these documents per the subpoena? If so, who?

For your information Section 10 of the Federal Arbitration Act outlines grounds by which an Award can be vacated. Where there was corruption, fraud or undue means. If there is evident partiality, refusing to hear evidence pertinent and material to the controversy or any other misbehavior by which the rights of any party have been prejudiced.

In all of these situations your department would be a named party in refusing to provide documents which were to be released to us.  Your department has a duty to fulfill the signed subpoenas and if you are being given legal advice to NOT provide them we demand to know so the Arbitrator knows exactly what we are dealing with.

We request an answer today, 4/27/22.  If you do not expeditiously provide these documents we will consider requesting a delay in hearing which will need to be granted per the F.A.A. because we can show sufficient cause by presenting the APFAs refusal to provide subpoenaed documents which are pertinent and material to the controversy.


Thank you,

Heidi Morgan
For
Nena Martin


Sent from Mail for Windows

**From:** ArticleVII
**Sent:** Tuesday, April 26, 2022 7:07 PM
**To:** Heidi Kidwell; Nena Martin
**Subject:** FW: FW: Subpoena for documentation



**From:** Ruben Armendariz <arbruben@gmail.com>
**Date:** Tuesday, April 26, 2022 at 10:21 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Re: FW: Subpoena for documentation

Josh,

Please forward to Margot to respond to Ms. Morgan.

On Tue, Apr 26, 2022 at 9:40 AM ArticleVII <ArticleVII@apfa.org> wrote:

**Exhibit B-1**

APPENDIX 000016

**From:** Heidi Kidwell <heidimorgan65@gmail.com>
**Date:** Monday, April 25, 2022 at 9:21 PM
**To:** Erik Harris <eharris@apfa.org>, National Treasurer <treasurer@apfa.org>, ArticleVII
<ArticleVII@apfa.org>, Nena Martin <nenarott@aol.com>
**Subject:** FW: Subpoena for documentation

Josh ,

Please forward our communication with APFA National Treasurer Erik Harris  to Arbitrator Armendariz.

Heidi

Erik,

As you can see below, 6 days ago we sent you a signed subpoena request for documents pertinent to our case.  As of the date and time of this email we have yet to receive the requested documents.

Those documents were commanded by the sitting Arbitrator to be presented to us. Per the Federal Arbitration Act refusing to hear evidence pertinent and material to the controversy; or any misbehavior by which the rights of the party have been prejudiced can cause an award to be vacated.  It is our belief your department and/or APFA Legal Counsel is withholding these documents from us intentionally and thereby violating a legal subpoena.

We demand this subpoena request be fulfilled immediately, explanation be given as to why there has been a delay and immediate intervention by Arbitrator Armendariz to ensure we receive the subpoenaed document and   the process has integrity as is legally required by the F.A.A.

Heidi Morgan
FOR
Nena Martin

Sent from Mail for Windows

**From:** Heidi J. Morgan
**Sent:** Wednesday, April 20, 2022 6:53 PM
**To:** National Treasurer; nena martin
**Subject:** Subpoena for documentation

Erik,

Please find the attached & signed subpoena for documentation.

**Exhibit B-1**

Heidi Morgan
For
Nena Martin

**Exhibit B-1**

**From:** ArticleVII <ArticleVII@apfa.org>
**Date:** April 18, 2022 at 5:27:49 PM EDT
**To:** Nena Martin <nenarott@aol.com>, Heidi Kidwell <heidimorgan65@gmail.com>
**Subject: FW: Chinery-Lee v. Martin Subpoenas**

**From:** Margot Nikitas <MNikitas@apfa.org>
**Date:** Monday, April 18, 2022 at 4:04 PM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Chinery-Lee v. Martin Subpoenas

Josh,

Please send this email to the Arbitrator and parties.

Thanks,
Margot

Arbitrator Armendariz,

APFA would like to hold a conference call as soon as possible to discuss the subpoenas duces tecum issued to APFA in this matter. Please let us know your availability this week.

Thank you,
Margot Nikitas

Margot A. Nikitas *Pronouns: she, her, hers*
General Counsel
Association of Professional Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040
817.540.0108 ext. 8108 (phone)
817.355.1919 (fax)
www.apfa.org

1

**APPENDIX 000019**

**Exhibit B-2**

**Confidentiality Notice:** The content of this email message is intended for the confidential use of the intended recipient only. The information may be privileged, confidential and protected from disclosure. Recipients should not file copies of this email with publicly accessible records. If you are not the intended recipient, you have received this email in error, and any further review, dissemination, distribution, copying or forwarding of this email is strictly prohibited. If you received this email in error, please notify me immediately at 817.540.0108 ext. 8108 or by return email and then delete this email in its entirety. Thank you.

2

**APPENDIX 000020**

**Exhibit B-2**

**From:** Heidi Kidwell
**Sent:** Tuesday, April 19, 2022 6:27 PM
**To:** ArticleVII; Nena Martin
**Subject:** FW: Chinery-Lee v. Martin-- Subpoenas

Josh,

Please forward to the Arbitrator immediately.

Heidi

Arbitrator Armendariz,

After extensive discussions if Chinery and Lee  care to dismiss all charges then we will withdraw our subpoena  requests, but otherwise, the documents are pertinent to our defense in its totality and are absolutely necessary.  Furthermore, as stated earlier denial of them would place any award issued by the arbitrator into question under article 9 section 10 of the FAA to vacate an award.

In addition, Section 102 gives Nena Martin the right to sue for violation of Section 29 U.S.C.  411. Ms Nikitas should be reminded that there are criminal and civil penalties for violations of this statute.  The Pennsylvania Bar will also be noticed of her infringement of a members bill of rights.

Margot Nikitas works for Nena Martin as much as she does Chinery and Lee and we demand the same consideration, frankly, more so because we should have complete access to all documents needed to exonerate Nena Martin.

This attempt to stifle a members access to information that is pertinent to her case is illegal.

Heidi Morgan
For
Nena Martin

**From:** Heidi Kidwell <heidimorgan65@gmail.com>
**Date:** April 19, 2022 at 5:25:22 PM EDT
**To:** ArticleVII <ArticleVII@apfa.org>, Nena Martin <nenarott@aol.com>
**Subject: RE: Chinery-Lee v. Martin-- Subpoenas**

Josh,

Please send to the Arbitrator immediately.

Heidi

Arbitrator Armendariz,

**Exhibit B-2**

The requested documents are absolutely necessary for the totality of our case. They are clarifying documents and we are renewing our request for the subpoenaed items. To withhold this information from us would be a refusal to provide evidence pertinent and material to the controversy.

Ms. Nikites is showing complete partiality and bias to the charging party. Ms. Martin has rights under the Federal Arbitration Act that must not be violated or this award could end up in Federal Court due to the prejudice being exhibited when denying our request.

APFA has no right to determine the relevance of our requested documents.

We are renewing our request for these documents.

Heidi Morgan
For
Nena Martin

Sent from Mail for Windows

**From:** ArticleVII
**Sent:** Tuesday, April 19, 2022 4:39 PM
**To:** Heidi Kidwell; Nena Martin
**Subject:** FW: Chinery-Lee v. Martin-- Subpoenas


**From:** Margot Nikitas <MNikitas@apfa.org>
**Date:** Tuesday, April 19, 2022 at 2:49 PM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Chinery-Lee v. Martin-- Subpoenas

Hi Josh,

Please send this email to the Arbitrator with a copy to all parties and their representatives.

Thanks,
Margot

Arbitrator Armendariz,

APFA is in receipt of your email dated April 18, 2022, stating: "Inform Erik Harris to provide the requested documents per the subpoena's request." As such, APFA will provide electronic copies of the requested documents and there is no need for a conference call to discuss this matter. We are working now to provide all of the requested documents.

APFA also is in receipt of the Charging Parties' email dated April 18, 2022, stating in part: "In light of the decisions in the cases of Chinery/Lee vs Ross and Chinery/Lee vs Vargas, we are withdrawing the portion of our charges related to Nena Martin's failure to properly administrate the exit package provided to

**APPENDIX 000022**

**Exhibit B-2**

Bob Ross." Since this claim has been withdrawn, any subpoenaed documents related to the Bob Ross Transition Agreement are unrelated and irrelevant to this proceeding and will not be provided.

Finally, APFA respectfully requests that the Arbitrator signed the attached revised protective order necessary to protect confidential APFA financial records produced in this proceeding. The revised order clarifies that documents are to be returned or permanently deleted within 7 days of the submission of post-hearing briefs.

Thank you,
Margot

Margot A. Nikitas *Pronouns: she, her, hers*
General Counsel
Association of Professional Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040
817.540.0108 ext. 8108 (phone)
817.355.1919 (fax)
www.apfa.org

**Confidentiality Notice:** The content of this email message is intended for the confidential use of the intended recipient only. The information may be privileged, confidential and protected from disclosure. Recipients should not file copies of this email with publicly accessible records. If you are not the intended recipient, you have received this email in error, and any further review, dissemination, distribution, copying or forwarding of this email is strictly prohibited. If you received this email in error, please notify me immediately at 817.540.0108 ext. 8108 or by return email and then delete this email in its entirety. Thank you.

**APPENDIX 000023**

**Exhibit B-2**

**From:** ArticleVII <ArticleVII@apfa.org>
**Date:** April 18, 2022 at 11:22:19 AM EDT
**To:** Heidi Kidwell <heidimorgan65@gmail.com>, Nena Martin <nenarott@aol.com>
**Subject: FW: Duces Tecum Subpoena**

**From:** Ruben Armendariz <arbruben@gmail.com>
**Date:** Monday, April 18, 2022 at 9:51 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Re: Duces Tecum Subpoena

Josh,

Inform Erik Harris to provide the requested documents per the subpoena's request.

Also, what hotel arrangements have been made to conduct this hearing.

Arbitrator Armendariz

> On Apr 18, 2022, at 9:44 AM, ArticleVII <ArticleVII@apfa.org> wrote:
>
>
> **From:** National Treasurer <treasurer@apfa.org>
> **Date:** Sunday, April 17, 2022 at 7:34 PM
> **To:** melchinery@aol.com <melchinery@aol.com>, ArticleVII
> <ArticleVII@apfa.org>, National President
> <president@apfa.org>, sel27995@gmail.com <sel27995@gmail.com>
> **Subject:** Re: Fw:
>
> Josh,

1

**APPENDIX 000024**

**Exhibit B-2**

Please clarify with the arbitrator that neither party has access to the documents. The links were deactivated at the hearing when the arbitrator instructed everyone to return all documents to APFA custody as the policy states they are only available for viewing. Also, the subpoenas instructs me to bring them to the arbitration.

Thanks,

Erik

--

Erik Harris *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 8231 | Email treasurer@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*
<image001.png>

**From:** melchinery@aol.com <melchinery@aol.com>
**Date:** Sunday, April 17, 2022 at 7:05 PM
**To:** ArticleVII <ArticleVII@apfa.org>, National President <president@apfa.org>, National Treasurer <treasurer@apfa.org>, sel27995@gmail.com <sel27995@gmail.com>
**Subject:** Fw:

Hi Josh,

I sent this to your Secretary email instead of the Article VII one by mistake.

Can you please send this to Arbitrator Armendariz please.

Thank you

Melissa

Sent from the all new AOL app for iOS

Begin forwarded message:

On Sunday, April 17, 2022, 1:21 PM, melchinery@aol.com <melchinery@aol.com> wrote:

Josh,

Can you please send this to Arbitrator Armendariz .

Thank you

Melissa
Sandra

2

**Exhibit B-2**

Dear Arbitrator Armendariz,

We submitted the subpoena you signed for financial documents to APFA treasurer Erik Harris. The subpoena required him to provide us copies of financial documents that we can use to make our exhibit book

We were told that the procedure has changed and we can come in and look at the documents but they will not provide electronics physical copies in advance of the hearing. Mr Harris says any copies will be kept at APFA headquarters and brought to the hearing.

This is not consistent with the APFA policy manual which provides that the arbitrator can subpoena documents and does not include these restrictions.  Without copies of the documents we will not be able to examine opposing counsel's documents in advance of the hearing or even have the exhibits when writing our briefs.

Last June at the Ross arbitration we were told to resubmit our subpoena to request documents in advance. The hearing was delayed and we followed the procedure. Now they are trying to go back to a process that did not work.

The bigger problem is they are switching rules two weeks before the final of three arbitrations.
They have already provided opposing counsel 15 years of electronic APFA financial records so changing halfway through the hearing process is unfair. But now to selectively apply this to just one party is not fair.

Please advise as to how to proceed as if we cannot get the documents promptly it will not be possible to prepare our document books for the hearing. We request you direct Mr Harris to comply with the subpoena as directed.

If APFA wants to amend the policy manual procedures for future cases that's fine but it should not be done mid stream.


Thank you.

Sincerely,

Melissa Chinery-Burns
Sandra Lee

3

**APPENDIX 000026**

**Exhibit B-2**

Sent from the all new AOL app for iOS

4

APPENDIX 000027

**Exhibit B-2**

**From:** ArticleVII
**Sent:** Wednesday, April 20, 2022 5:30 PM
**To:** Heidi Kidwell; Nena Martin
**Subject:** FW: Subpoena for Documentation

This is how Armendariz sent it back to us.  We were appalled... a photo

**From:** Ruben Armendariz <arbruben@gmail.com>
**Date:** Wednesday, April 20, 2022 at 11:58 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Subpoena for Documentation



Sent from my iPhone
Ruben R. Armendariz, Arbitrator

**Exhibit B-2**

Member: National Academy of Arbitrators
29010 Pfeiffer's Gate
Fair Oaks Ranch, TX 78015
210-379-0860
arbruben@gmail.com

**Exhibit B-2**

**From:** ArticleVII <ArticleVII@apfa.org>
**Date:** April 27, 2022 at 10:02:13 AM EDT
**To:** Heidi Kidwell <heidimorgan65@gmail.com>, Nena Martin <nenarott@aol.com>
**Subject: Fwd: Subpoena for documentation**

**From:** Ruben Armendariz <arbruben@gmail.com>
**Sent:** Wednesday, April 27, 2022 8:38:23 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Re: Subpoena for documentation

Josh and Margot,

Please provide the information requested to Ms. Morgan. If you don't have the info, please state why you don't have the info!

Sent from my iPhone
Ruben R. Armendariz, Arbitrator
Member: National Academy of Arbitrators
29010 Pfeiffer's Gate
Fair Oaks Ranch, TX 78015
210-379-0860
arbruben@gmail.com

> On Apr 27, 2022, at 8:20 AM, ArticleVII <ArticleVII@apfa.org> wrote:

> **From:** Heidi Kidwell <heidimorgan65@gmail.com>
> **Sent:** Wednesday, April 27, 2022 5:08:43 AM
> **To:** Erik Harris <eharris@apfa.org>; ArticleVII <ArticleVII@apfa.org>; Nena Martin <nenarott@aol.com>
> **Subject:** FW: FW: Subpoena for documentation

> Josh,

> This communication is both for Treasurer Erik Harris and the Arbitrator. I am copying in Erik and request you immediately forward to Arbitrator Armendariz.

> Heidi

1

**APPENDIX 000030**

**Exhibit B-2**

Erik,

On 4/20/22 we requested 2 simple things by legally signed subpoena from our Arbitrator. Today, 4/27/2, one week later, we have yet to receive those documents which must still be exchanged. This is not acceptable.

I would like some simple answers. Do you have these documents prepared to send? If so, why haven't you sent them? Has anyone told you not to release these documents per the subpoena? If so, who?

For your information Section 10 of the Federal Arbitration Act outlines grounds by which an Award can be vacated. Where there was corruption, fraud or undue means. If there is evident partiality, refusing to hear evidence pertinent and material to the controversy or any other misbehavior by which the rights of any party have been prejudiced.

In all of these situations your department would be a named party in refusing to provide documents which were to be released to us.  Your department has a duty to fulfill the signed subpoenas and if you are being given legal advice to NOT provide them we demand to know so the Arbitrator knows exactly what we are dealing with.

We request an answer today, 4/27/22.  If you do not expeditiously provide these documents we will consider requesting a delay in hearing which will need to be granted per the F.A.A. because we can show sufficient cause by presenting the APFAs refusal to provide subpoenaed documents which are pertinent and material to the controversy.

Thank you,

Heidi Morgan
For
Nena Martin

Sent from Mail for Windows

**From:** ArticleVII
**Sent:** Tuesday, April 26, 2022 7:07 PM
**To:** Heidi Kidwell; Nena Martin
**Subject:** FW: FW: Subpoena for documentation

**From:** Ruben Armendariz <arbruben@gmail.com>
**Date:** Tuesday, April 26, 2022 at 10:21 AM
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** Re: FW: Subpoena for documentation

Josh,

Please forward to Margot to respond to Ms. Morgan.

2

**APPENDIX 000031**

**Exhibit B-2**

**From:** Heidi Kidwell <heidimorgan65@gmail.com>
**Date:** Monday, April 25, 2022 at 9:21 PM
**To:** Erik Harris <eharris@apfa.org>, National Treasurer <treasurer@apfa.org>, ArticleVII <ArticleVII@apfa.org>, Nena Martin <nenarott@aol.com>
**Subject:** FW: Subpoena for documentation

Josh ,

Please forward our communication with APFA National Treasurer Erik Harris  to Arbitrator Armendariz.

Heidi


Erik,

As you can see below, 6 days ago we sent you a signed subpoena request for documents pertinent to our case.  As of the date and time of this email we have yet to receive the requested documents.

Those documents were commanded by the sitting Arbitrator to be presented to us. Per the Federal Arbitration Act refusing to hear evidence pertinent and material to the controversy; or any misbehavior by which the rights of the party have been prejudiced can cause an award to be vacated.  It is our belief your department and/or APFA Legal Counsel is withholding these documents from us intentionally and thereby violating a legal subpoena.

We demand this subpoena request be fulfilled immediately, explanation be given as to why there has been a delay and immediate intervention by Arbitrator Armendariz to ensure we receive the subpoenaed document and   the process has integrity as is legally required by the F.A.A.

Heidi Morgan
FOR
Nena Martin


Sent from Mail for Windows

**From:** Heidi J. Morgan
**Sent:** Wednesday, April 20, 2022 6:53 PM
**To:** National Treasurer; nena martin
**Subject:** Subpoena for documentation


Erik,

**APPENDIX 000032**

# Exhibit B-2

Please find the attached & signed subpoena for documentation.

Heidi Morgan
For
Nena Martin

4

**APPENDIX 000033**

**Exhibit B-2**

From: **Heidi Kidwell** heidimorgan65@gmail.com
Subject: **FW: Subpoenaed documents**
Date: **May 3, 2022 at 8:53:33 AM**
To: **Erik Harris** eharris@apfa.org, **Nena Martin**
nenarott@aol.com

Erik,

Previously we sent this signed subpoena for documents to you. The subpoena request is for:

1. Any and all communication between Hal O'Neil, CPA from Certified Public Accountants Firm Wood, Stephens & O'Neil, L.L.P. and APFA regarding the Ross Transition Agreement.
2. Any and all internal APFA emails which distributed the communications between Hal O'Neil and APFA to the designated parties.

We then made (below) a second request for item #2 which has not been fulfilled. This is a legally executed subpoena, which several times the Arbitrator has commanded you to fulfill. This confidential memo was requested by the "current APFA Officers in consultation with the APFA Staff Attorney and outside Counsel". The MEMO is CLEARLY written to the APFA Board of Directors and Executive Committee.

To be clear... we requested and are entitled to the emails that distributed this document to those parties (Base Presidents, Ad Hocs, National Officers and Legal Counsel, both staff attorney and outside counsel) and responses generated from that distribution.

We are renewing our request once again for those email chains.

Thank you Erik,

Heidi Morgan
FOR
Nena Martin


Sent from Mail for Windows

**From:** Heidi Kidwell
**Sent:** Wednesday, April 27, 2022 7:16 PM
**To:** eharris@apfa.org; Nena Martin
**Subject:** Subpoenaed documents

Erik,

My subpoena request was for "Any and all internal APFA emails which distributed the **APPENDIX 000034**

**Exhibit B-2**

communications between Hal O'Neil and APFA to the designated parties."   The letter is a
Board of Directors and Executive Committee Memo. There are no emails included which
show the distribution of this letter to its intended recipients.

Please remit those emails.

Heidi Morgan
For
Nena Martin

Sent from Mail for Windows

O'Neil to H...9.14.20.pdf
1.1 MB

**Exhibit B-2**

## Margot Nikitas

**From:** Erik Harris
**Sent:** Wednesday, April 20, 2022 6:19 PM
**To:** Margot Nikitas; Officers
**Subject:** FW: Meeting next week?

--

# Erik Harris *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



---

**From:** Hal O'Neil <oneil@woodcpafirm.com>
**Date:** Monday, September 14, 2020 at 1:26 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Chris Thedford <cthedford@apfa.org>, Pam Bush <pbush@woodcpafirm.com>
**Subject:** Re: Meeting next week?

Erik, Chris.......Pam and I can meet this Thursday around 9:00 AM at your office to go over the Bob Ross document list.   Is this OK?

Thanks, Hal

---

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

---

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

---

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

1

**APPENDIX 000036**

# Exhibit B-2

On Thu, Sep 10, 2020 at 12:46 PM Erik Harris <eharris@apfa.org> wrote:

Hey Hal-

My apologies. I'm finally getting a chance to catchup on emails.

Yes, Thursday the 17th will work for us. I will be on vacation, however, the other officers will be available.

Thanks,

Erik

--

# Erik Harris

National Treasurer

Association of Professional Flight Attendants

Office 817.540.0108x 8232 | Email treasurer@apfa.org

*The content of this email is intended solely for the recipient(s).*

*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** "oneil@woodcpafirm.com" <oneil@woodcpafirm.com>
**Date:** Wednesday, September 9, 2020 at 3:46 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Chris Thedford <cthedford@apfa.org>, Pam Bush <pbush@woodcpafirm.com>
**Subject:** Meeting next week?

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
halmorgan63@gmail.com

**APPENDIX 000037**

**Exhibit B-2**

Erik........Last week I responded to your email regarding our review of the Bob Ross documents.  Pam and I can come out to your office on Thursday morning the 17th to meet with you, Chris and hopefully Margot before we begin this process.  I just want to make sure all of us are in agreement of what needs to be completed before Sept.24th.  Will that morning work for you?

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorganloe@gmail.com

APPENDIX 000038

**Exhibit B-2**

Sent from my iPhone

Begin forwarded message:

> **From:** Heidi Kidwell <heidimorgan65@gmail.com>
> **Date:** May 7, 2022 at 8:06:36 AM EDT
> **To:** Nena Martin <nenarott@aol.com>, eharris@apfa.org
> **Cc:** jhedrick@apfa.org, Nena Martin <nenarott@aol.com>
> **Subject: RE: Digify Files / Urgent Matter**

Erik,

I was awakened yesterday morning to this unbelievable and frankly, unprecedented breach of Policy, Privacy and Constitution. Just when we think things can't get worse at APFA we find this.

You have provided an enormous amount of documents to the charging party that WERE NOT subpoenaed thereby violating Article II Section 3.C and 3.D whereby all members of the APFA shall have the right to individual privacy and the right to due process and equal representation.

While these UN-SUBPOENAED documents were provided you HAVE YET to fulfill our legally subpoenaed request which was followed up with you 4 times.  The Arbitrator even demanded you fulfill it yet you and Margot Nikitas (likely guided by Bill Osbourne) have refused to send the documents we requested.  To remind you again, item #2 on our subpoena was for :

1.   Any and all internal APFA emails which distributed the communications between Hal O'Neil and APFA to the designated parties.

We demand you send those emails  immediately. Once again APFA if showing preferential treatment to the charging party by not giving us equal representation.
You have violated OTHER members rights to individual privacy as well. Example…. Yvonne Johnson's paystub. Why on earth would this be included?

You have violated APFA's own Policy by distributing Nena Martin's HI1s.  There is even HI1 included from BEFORE she became National VP.  This action is completely contradictory to BOD Resolution 4 of 09MAR22 which added Policy Manual Section 1.F that states:

F. ACCESS OF MEMBERS SCHEDULES
1. During the normal course of business it may be necessary for a union representative to access a member's schedule utilizing admin access of Company provided programs. The practice of accessing a member's schedule using this access may only be used for assisting and representing a member.

**APPENDIX 000039**

**Exhibit B-2**

wanting to view BOD HI1s. You and the other Officers took the position HI1s were proprietary and property of American Airlines. You refused numerous times to allow these to be accessed for any purpose other than representing a member. Yet Nena Martin's are not subpoenaed yet handed over on Digify? How do you rationalize this blatant violation of Policy that you, yourself demanded be followed?

And finally, the most unbelievable breach is providing W2 and 401K documents that include Nena Martin's SSN. This is not only violation of absolutely everything internally at APFA but also the Texas Business and Commerce Code and potentially Federal Law. We are discussing these issues with Legal Counsel. You provided this information to Members Melissa Chinery, Sandra Lee, Margot Nikitas and to me. These two members have proven they will stop at nothing to destroy an innocent person's life. As for Margot Nikitas she is either completely incompetent or doing the bidding of Hedrick/Osbourne. As for me, as Nena's friend and advocate I had absolutely no right to that information.

On a near daily basis Nena Martin is brutally harrassed by them and their moronic cronies on Facebook. There are even posts with regard to the postponement of the Arbitration (due to the death of the Arbitrator's mother) that prompted responses blaming Nena. Who is protecting Nena Martin's rights? While National Officers were fraternizing at Ms. Chinery's wedding we were just trying to get fair treatment.

We demand immediate response on ALL of these infractions. Your department has made it impossible for us to continue down the Article VII path where we feel there is even a modicum of fairness or equal representation. The is not just dirty but illegal.

I am disgusted to the core by all of you.

Heidi Morgan

Sent from Mail for Windows

**From:** Nena Martin
**Sent:** Friday, May 6, 2022 8:36 PM
**To:** eharris@apfa.org
**Cc:** jhedrick@apfa.org; heidimorgan65@gmail.com; Nena Martin
**Subject:** Digify Files / Urgent Matter

Erik,

On July 11,2019 I became the recipient of a Facebook post in which the administration with which I served was lambasted and maligned based on information that the then APFA National Treasurer provided to two APFA Members.

The Facebook post stated that these two APFA Members were permitted to view "parts of the Bob Ross exit package", "financial records from the previous administration (the Ross administration)", "as well as a large series of checks all written to the 3 other previous national officers". The two APFA Members state, "any information we have shared here, we uncovered by rifling through stacks of papers".

By July 14,2019 the "large series of checks all written to the 3 other previous national officers" had made their way to Facebook, along with confirmation from the sitting APFA

2

**APPENDIX 000040**

# Exhibit B-2

home addresses, 401K information, and tax information, had all been shared with these two APFA Members. Subsequently, this information was shared across multiple social media sites, although the APFA Policy Manual states that these records "are deemed confidential".

After hundreds of emails between multiple parties, special Board of Director meetings, APFA "Special" hotlines, threatened lawsuits, hundreds of thousands of membership dues dollars spent on a public shaming and thirteen (13) sets of Article VII charges filed, four (4) against me alone, it saddens me to say that I find myself again in a situation that is far more egregious under your leadership, as the APFA National Treasurer than that in 2019.

On July 26, 2021, and again on April 13, 2022, you as the APFA National Treasurer, received a signed subpoena by Arbitrator Ruben Armendariz, to provide the following documents in the matter of Chinery/Lee vs Martin Article VII hearing.

•       The weekly reports submitted by Nena Martin during her term in office from April 2016 to August 2018.
•       The monthly expense form submitted by Nena Martin (including receipts) during her term in office from April 2016 to August 2018.
•       The credit card statements, and all receipts, for national officers from April 2016 to August 2018.
•       Monthly financials from April 2016 to August 2018.
•       Petty Cash from April 2016 to August 2018.

Article I, Section 2.B. of the APFA Constitution states "To protect the individual and collective rights of the members of the APFA and to promote their professional interest and image".

Article I, Section 2.H. of the APFA Constitution states "To disseminate information to enhance the professional status of the membership".

Article II, Section 3.C. of the APFA Constitution states "All members of APFA shall have the right to individual privacy".

Article II, Section 3.D. of the APFA Constitution states "All members of the APFA shall have the right to due process and equal representation".

Article III, Section 6.E.(2). of the APFA Constitution states "The National Treasurer shall be responsible for all financial records of APFA".

Article III, Section 6.E.(11) of the APFA Constitution states "The National Treasurer shall oversee and coordinate ongoing computerization of the APFA headquarters files, records and systems".

Article III, Section 6.E.(12) of the APFA Constitution states "The National Treasurer shall oversee the daily activities of the APFA headquarters office staff".

**APPENDIX 000041**

**Exhibit B-2**

employed by the APFA and shall report directly to the National Treasurer. S/he shall keep an accurate record of all receipts and expenditures of the APFA"

After reviewing the uploaded documents in the "Digify" files last night, I'm quite sure all the above quoted sections of the APFA Constitution have been violated.

The violations discovered in "Digify" to my personal privacy and the confidential information uploaded are prolific. The negligence on the part of APFA, whether intentional or unintentional, to protect my personal information is incomprehensible.

After reviewing the signed subpoenas by Arbitrator Ruben Armendariz, can you explain to me why the below documents, outside of the subpoena request were provided and uploaded in to "Digify" for all parties to review, copy or post to social media?

- Weekly Activity Report / Pay Document
- Pay Transaction Detailed Entry Sheet
- **Pay Checks including Social Security Number, Bank Account, Date of Birth, Home Address**
- **End of Year 2015 Weekly, Monthly Report and HI1 as the STL Base President**
- Vacation, Payback, Deferral Request Form as the STL Base President
- Vacation Payout for all Officers of the Ross Administration
- Vacation/Sick Benefits Calculation Work Sheets
- Profit Sharing Transaction Work Sheet
- February 2017 Profit Sharing Communication between AA and APFA
- 2016 Profit Sharing Calculations for the Glading Administration
- 2016 Profit Sharing Calculations for the Ross Administration
- **Nena Martin W-2, Social Security Number and Home Address not redacted**
- **401K Participant Change Report containing Social Security Number, Home Address, Date of Birth and Email Address**
- UAL Retro Pay Calculation for all Officers of the Ross Administration
- Confidential Email Exchange between Jill Surdek and APFA / UAL Information
- Confidential Email Exchange between Jill Surdek and APFA / UAL Wage Table Pay Increase Information
- Triple Play Payouts for all Officers of the Ross Administration
- Grand Slam Payouts for all Officers of the Ross Administration
- Martin Transition Pay Work Sheet / VP to President
- **Yvonne Johnston Paycheck from AA / January 31, 2018**
- APFA Hotline / March 2, 2018
- 2017 W-2 Totals for all Officers of the Ross Administration
- 2017 Profit Sharing Calculations for the Ross Administration
- **Martin HI1 Schedule, Activity Sheet Detail from AA E-Pays / July 2018**
- **July, August and September 2018 Weekly, Monthly Report and HI1**
- Multiple A/P Transaction Processing File Load Sheets

I'm requesting at this time the Martin Weekly and Monthly Report files in "Digify" be removed immediately and the corrected information reloaded.

**The consequences from this breach of confidentiality, including, dealing with the ramifications of any and all financial damages, rest solely on APFA.**

4

**APPENDIX 000042**

**Exhibit B-2**

I would like an update on this matter as soon as possible.

Nena Martin
# 131799

**APPENDIX 000043**

**Exhibit B-2**

**From:** ArticleVII <ArticleVII@apfa.org>
**Sent:** Wednesday, October 12, 2022 7:15 AM
**To:** Heidi Kidwell <heidimorgan65@gmail.com>; Nena Martin <nenarott@aol.com>
**Subject:** Fwd: Martin Article VII Hearing; National Officer Witness Testimony Subpoenas

---

**From:** melchinery@aol.com <melchinery@aol.com>
**Sent:** Tuesday, October 11, 2022 11:08:22 PM
**To:** sel27995@gmail.com <sel27995@gmail.com>; ArticleVII <ArticleVII@apfa.org>; National President <president@apfa.org>
**Subject:** Re: Martin Article VII Hearing; National Officer Witness Testimony Subpoenas

Josh,

Please send this to Arbitrator Armendariz.

Thank you

Melissa

Dear Arbitrator Armendariz

Mr Harris has indicated he is going to defy the subpoena and your email earlier today and not appear tomorrow morning. This is apparently on the advice of Ms Urban who apparently has little regard for an arbitrator's authority.

The financial records are the foundation of this hearing if APFA is unwilling to provide documents it is a clear indication of their lack of commitment to this process.

We are not able to commence our case until the financial records are entered. Again this is a slap in the face to all of the participants.

Sincerely,

Melissa Chinery-Burns
Sandra Lee

**APPENDIX 000044**

**Exhibit B-2**

On Tuesday, October 11, 2022 at 10:11:51 PM CDT, ArticleVII <articlevii@apfa.org> wrote:

---

**From:** Alyssa Urban <AUrban@apfa.org>
**Sent:** Tuesday, October 11, 2022 18:32
**To:** ArticleVII <ArticleVII@apfa.org>
**Subject:** FW: Martin Article VII Hearing; National Officer Witness Testimony Subpoenas

Josh:

Please forward to Arbitrator Armendariz and the parties.


Arbitrator Armendariz:

Below you will find the email that I sent the parties yesterday on behalf of all of the National Officers regarding witness testimony for the Article VII hearing tomorrow and Thursday.

Erik Harris will be present tomorrow, but he is not available until 12:30pm. Mr. Harris has a new hire class of flight attendants coming in tomorrow morning where he will be presenting on behalf of APFA. The new hire presentations were scheduled well before this arbitration was reset for October and it cannot be rescheduled since the event is coordinated with American Airlines. Mr. Harris presumed this wouldn't be an issue because during the last few Article VII hearings, the parties always worked around the witnesses' schedules and this prior commitment only renders him unavailable for a brief period of the two-day hearing.

Apologies for the inconvenience. I will be there by 9am and we can make one of the other National Officers available to testify before 12pm if needed. Thank you.

Best,


# Alyssa Urban
*Staff Attorney*

**Association of Professional Flight Attendants**
1004 W. Euless Blvd.
Euless, Texas 76040
Main:    817.540.0108 x8102
Direct:  682.301.8456
Email:   AUrban@apfa.org


*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent*

---

**From:** Alyssa Urban
**Sent:** Monday, October 10, 2022 3:06 PM

**APPENDIX 000045**

**Exhibit B-2**

**Subject:** Martin Article VII Hearing; National Officer Witness Testimony Subpoenas

Good afternoon all:

I am reaching out to both parties regarding witness testimony subpoenas requested and issued for the October 12, 2022 and October 13, 2022 Martin Article VII Hearing. The Charging Parties have subpoenaed Treasurer Harris for testimony and the Charged Party has subpoenaed all four National Officers for testimony. However, given the nature of their positions, it is not feasible for all four National Officers to be sequestered at the hearing location for two days waiting to be called to testify. I will be at the hearing both days, and if the parties can inform me who they plan/need to call and an estimated time, I will notify the specific National Officer. The hearing location is only 7 minutes from APFA Headquarters so I do not anticipate this causing a delay, particularly if enough advance notice is provided.

Additionally, please note that Erik and Josh are only available to testify from 12:30pm - 5pm on Wednesday but both are available all day on Thursday. Julie and Larry are available any time on both days. Please do not infer any nefarious intent behind this email, I have simply emailed you directly because it is proper arbitration practice to seek mutual agreement amongst the parties before bringing a point of contention to the Arbitrator. However, in the event either party is opposed to this arrangement, I will reach out to Arbitrator Armendariz with this request.

Thank you for your time and attention to this matter.

Thank you.

Best,

# Alyssa Urban
*Staff Attorney*

**Association of Professional Flight Attendants**
1004 W. Euless Blvd.
Euless, Texas 76040
Main:  817.540.0108 x8102
Direct: 682.301.8456
Email:  AUrban@apfa.org

*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent*

3

**APPENDIX 000046**

# Exhibit B-2

**Margot Nikitas**

| | |
|---|---|
| **From:** | Erik Harris |
| **Sent:** | Wednesday, April 20, 2022 6:19 PM |
| **To:** | Margot Nikitas; Officers |
| **Subject:** | FW: Memo for the Board and EC |
| **Attachments:** | APFA - Board and EC memo.pdf; APFA - Vargas schedules A - C.pdf; APFA - Dunaway schedules A - C.pdf; APFA - Martin schedules A - C.pdf; APFA - Ross schedules A - C.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

--
# Erik Harris _Pronouns:_ _he, him, his_
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
_The content of this email is intended solely for the recipient(s)._
_It is not to be shared, forwarded or posted without the author's written consent._



---

**From:** Hal O'Neil <oneil@woodcpafirm.com>
**Date:** Thursday, October 22, 2020 at 12:11 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Pam Bush <pbush@woodcpafirm.com>
**Subject:** Memo for the Board and EC

Erik.....attached is the Board and EC Memo for your review.  Also are the attached schedules for each officer.  Please get back to me if this memo looks OK.

Thanks, Hal

_____
Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 _(my extension #601)_
Firm fax - 817-377-1870

_Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you._

1

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000047**

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000048**

**Exhibit B-3**

# Wood, Stephens & O'Neil, L.L.P.
### Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX  76116
Tele. 817-377-1700
Fax 817-377-1870

---

## CONFIDENTIAL MEMORANDUM

MEMO TO:        APFA Board of Directors and the Executive Committee

FROM:           Hal O'Neil, CPA, Pam Bush
SUBJECT:        Review of officer disbursements and the Bob Ross transition agreement
DATE:           October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement.  This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements.  Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1.  To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual.  Please see the enclosed schedule A for each officer.

2.  To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer.  These overpayment schedules for the other officers were previously provided to the Board of Directors.  Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement.  This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3.  To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

---

**Exhibit B-3**

APPENDIX 000049
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com



A

**Marcy Dunaway - National Secretary Pay**

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |

| | |
|---|---|
| 91,450.80 | Annual salary |
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |

| | |
|---|---|
| 96,024.60 | Annual salary |
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |

| | |
|---|---|
| 97,662.60 | Annual salary |
| 267.57 | Daily rate for sick and vacation |

| | |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000050**

| National Officer: | Marcy Dunaway | | | | | |
|---|---|---|---|---|---|---|
| | | Annual | Daily amount | Eligible | | |
| | | Salary | (divide by 365) | Days to pay | Payment | |
| **Profit Sharing - 2016** | | | | | | |
| | | | | | 2,424.86 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* |
| **Sick Pay - 2017** | | | | | | |
| | | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* |
| **Retro** | | | | | 831.60 | *(paid 6/1/17)* |
| **Triple Grand Slam** | | | | | 300.00 | *(paid 7/6/17)* |
| **Grand Slam** | | | | | 150.00 | *(paid 1/25/18)* |
| **Profit Sharing - 2018** | | | | | 2,270.35 | *(paid 3/9/18)* |
| **Vacation Pay - 2018** | | | | | | |
| | | $ 112,659.36 | 308.66 | 14 | 4,321.24 | *(paid 3/29/2018)* |
| **Sick Pay - 2018** | | | | | | |
| | | $ 112,659.36 | 308.66 | 12 | 3,703.92 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | 513.10 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | 439.80 | |
| | | | | | 952.90 | *(paid 3/29/2018)* |
| **End of Term Payout - 2018** | | | | | | |
| | | $ 110,926.06 | 303.91 | 60 | 18,234.60 | *(paid 6/29/2018)* |
| **Profit Sharing - 2018** | | | | | 1,199.47 | *(paid 3/8/19)* |

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000051**

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Marcy Dunaway** | | | **Overpayment Calculation** | | | | | |
| | | | | | | | | | |
| | | Annual | | Daily amount | Eligible | | | | |
| | | Salary | | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | $ 112,659.36 | | 308.66 | 14 | $ 4,321.24 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | $ 97,662.72 | | 267.57 | 14 | $ 3,745.98 | | | |
| | | | | | Overpayment | $ 575.26 | $ 575.26 | | |
| | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | $ 112,659.36 | | 308.66 | 12 | $ 3,703.92 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | $ 97,662.72 | | 267.57 | 12 | $ 3,210.84 | | | |
| | | | | | Overpayment | $ 493.08 | $ 493.08 | | |
| | | | | | | | | | |
| **End of term payout - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | $ 110,926.06 | | 303.91 | 60 | $ 18,234.60 | *(paid 6/29/2018)* | | |
| | Correct calculation amount | $ 97,662.60 | | 267.57 | 60 | $ 16,054.20 | | | |
| | | | | | Overpayment | $ 2,180.40 | $ 2,180.40 | | |
| | | | | | | | | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 513.10 | $ 513.10 | *(paid 3/29/2018)* | |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 439.80 | $ 439.80 | *(paid 3/29/2018)* | |
| | | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 4,201.64 | ** | |
| | | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 58.82 | *(based on 1.4%)* | |
| | | | | | | | | | |
| | | **Total overpayment - due to APFA** | | | | | $ 4,260.46 | | |
| | | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | |

**Exhibit B-3**

APPENDIX 000052

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

A

**Nena Martin - National Vice President Pay**
**National President Pay (3/2/18)**

110.5 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 110.5 hours | 7,887.49 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,943.75 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 110.5 hours | 8,020.09 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,010.05 |
|---|---|

| 96,241.08 | Annual salary |
|---|---|
| 263.67 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 110.5 hours | 8,421.21 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,210.60 |
|---|---|

| 101,054.46 | Annual salary |
|---|---|
| 276.86 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 110.5 hours | 8,564.86 |

| Bi-monthly pay - 1/1/18 - 3/1/18 | 4,282.43 |
|---|---|

| 102,778.26 | Annual salary |
|---|---|
| 281.58 | Daily rate for sick and vacation |

Stepped in as President on 3/2/18

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 3/2/18 - 3/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 3/31/18

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

APPENDIX 000053

**Exhibit B-3**

| National Officer: | Nena Martin | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | |
| **Profit Sharing - 2016** | | | | | | 2,541.90 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 14 | 3,691.38 | *(paid 3/31/2017)* |
| **Sick Pay - 2017** | | | | | | | |
| | | $ | 96,241.20 | 263.67 | 12 | 3,164.04 | *(paid 3/31/2017)* |
| **Retro Pay** | | | | | | 875.16 | *(paid 6/1/17)* |
| **Triple Play Grand Slam** | | | | | | 300.00 | *(paid 7/6/17)* |
| **Grand Slam** | | | | | | 150.00 | *(paid 1/25/18)* |
| **Profit Sharing - 2017** | | | | | | 2,373.70 | *(paid 3/9/18)* |
| **Vacation Pay - 2018** | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 14 | 5,057.08 | *(paid 3/29/2018)* |
| **Sick Pay - 2018** | | | | | | | |
| | | $ | 131,844.90 | 361.22 | 12 | 4,334.64 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | | | 520.94 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | | 439.80 | |
| | | | | | | 960.74 | *(paid 3/29/18)* |
| **End of Term Payout - 2018** | | | | | | | |
| | | $ | 118,046.02 | 323.41 | 60 | 19,404.60 | *(paid 6/29/2018)* |
| **Profit Sharing - 2018** | | | | | | 1,279.64 | *(paid 3/8/19)* |

**Exhibit B-3**

CONFIDENTIAL | SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000054**

| | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Nena Martin** | | **Overpayment Calculation** | | | | | |
| | | Annual | Daily amount | Eligible | | | | |
| | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 131,844.90 | 361.22 | 14 | $ 5,057.08 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | $ 101,510.74 | 278.11 | 14 | $ 3,893.54 | | | |
| | | | | Overpayment | $ 1,163.54 | | $ 1,163.54 | |
| | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 131,844.90 | 361.22 | 12 | $ 4,334.64 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | $ 101,510.74 | 278.11 | 12 | $ 3,337.32 | | | |
| | | | | Overpayment | $ 997.32 | | $ 997.32 | |
| | | | | | | | | |
| **End of term payout - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 323.41 | 60 | $ 19,404.60 | *(paid 6/29/2018)* | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 60 | $ 17,736.00 | | | |
| | | | | Overpayment | $ 1,668.60 | | $ 1,668.60 | |
| | | | | | | | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 520.94 | | $ 520.94 | *(paid 3/29/2018)* |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 439.80 | | $ 439.80 | *(paid 3/29/2018)* |
| | | | | | | | | |
| | | | | Overpayment subtotal | | $ 4,790.20 | ** | |
| | | | | | | | | |
| | **Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above **** | | | | | $ 67.06 | *(based on 1.4%)* | |
| | | | | | | | | |
| | **Total overpayment - due to APFA** | | | | | $ 4,857.26 | | |
| | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | |

**Exhibit B-3**

APPENDIX 000055

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com



**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

   *   Pay rates effective 4/1/16
  **   Pay rates effective 1/1/17 - 5/1/17
 ***   Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
****   Pay rates effective 1/1/18 - 7/31/18

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000056**

| National Officer: | Bob Ross | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | | | |
| Profit Sharing - 2016 | | | | | 2,652.22 | *(paid 3/10/17)* | | | |
| Vacation Pay - 2017 | | | | | | | | | |
| | | $  101,031.36 | 276.80 | 14 | 3,875.20 | *(paid 3/31/17)* | | | |
| | | | | | | | | | |
| Sick Pay - 2017 | | | | | | | | | |
| | | $  101,031.36 | 276.80 | 12 | 3,321.60 | *(paid 3/31/17)* | | | |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | *(paid 6/1/17)* | | | |
| Triple Play Grand Slam | | | | | 300.00 | *(paid 7/6/17)* | | | |
| Grand slam | | | | | 150.00 | *(paid 1/25/18)* | | | |
| | (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | | | |
| 2017 Profit Sharing | | | | | 2,458.19 | *(paid 3/9/18)* | | | |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | *(paid 3/29/2018)* | | | |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | | | | |
| | | $  114,632.67 | 314.06 | 17 | 5,339.02 | *(paid 3/29/2018)* | | | |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | | | | |
| | | $  122,121.70 | 334.58 | 29 | 9,702.82 | *(paid 3/29/2018)* | | | |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | | | | |
| Sick Pay - 2018 | | | | | | | | | |
| | | $  122,121.69 | 334.58 | 12 | 4,014.96 | *(paid 3/29/2018)* | | | |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | | | | | | | | |
| | | $  118,046.02 | 334.58 | 35 | 11,710.30 | *(paid 3/29/2018)* | | | |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | | | | |
| | | $  118,046.02 | 334.58 | 20.44 | 6,838.82 | *(paid 3/29/2018)* | | | |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | *(paid 3/8/19)* | | | |

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000057**

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | | **Overpayment Calculation** | | | | | |
| | | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK *(paid 3/31/17)* | | |
| | | | | | Overpayment | $ - | $ - | | |
| | | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK *(paid 3/31/17)* | | |
| | | | | | Overpayment | $ - | $ - | | |
| | | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 968.76 | $ 968.76 | | |
| | | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | | |
| | | | | | Overpayment | $ 633.42 | $ 633.42 | | |
| | | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | | |
| | | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | | |
| | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | | |
| | | | | | Overpayment | $ 467.76 | $ 467.76 | | |
| | | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | | |
| | | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | | |
| | | | | | | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | |
| | | | | | Overpayment | $ 796.75 | $ 796.75 | | |
| | | | | | | | | | |
| | | | | | Overpayment subtotal | | $ 5,361.41 | ** | |
| | | | | | | | | | |
| | **Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above **** | | | | | | $ 75.06 | *(based on 1.4%)* | |
| | | | | | | | | | |
| | | | **Total overpayment - due to APFA** | | | | $ 5,436.47 | | |

**APPENDIX 000058**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**Exhibit B-3**



A

**Eugenio Vargas - National Treasurer Pay**

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |

| | |
|---|---|
| 91,450.80 | Annual salary |
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |

| | |
|---|---|
| 96,024.60 | Annual salary |
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |

| | |
|---|---|
| 97,662.60 | Annual salary |
| 267.57 | Daily rate for sick and vacation |

|   |   |
|---|---|
| * | Pay rates effective 4/1/16 |
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000059**

**National Officer:**     **Eugenio Vargas**

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| **Profit Sharing - 2016** | | | | 2,435.07 | *(paid 3/10/17)* |
| **Vacation Pay - 2017** | | | | | |
| | $ 91,450.80 | 250.55 | 14 | 3,507.70 | *(paid 3/31/2017)* |
| **Sick Pay - 2017** | | | | | |
| | $ 91,450.80 | 250.55 | 12 | 3,006.60 | *(paid 3/31/2017)* |
| **Retro** | | | | 831.60 | *(paid 6/1/17)* |
| | | | | $ 150.00 | *(paid 1/25/18)* |
| **Profit Sharing 2017** | | | | 2,269.76 | *(paid 3/9/18)* |
| **Vacation Pay - 2018** | | | | | |
| | $ 113,021.02 | 309.65 | 14 | 4,335.10 | *(paid 3/29/2018)* |
| **Sick Pay - 2018** | | | | | |
| | $ 113,021.02 | 309.65 | 12 | 3,715.80 | *(paid 3/29/2018)* |
| **Vacation Pay - 2017 - (adjustment paid in 2018)** | | | | 523.46 | |
| **Sick Pay - 2017 - (adjustment paid in 2018)** | | | | 448.68 | |
| | | | | 972.14 | *(paid 3/29/2018)* |
| **End of Term Payout - 2018** | | | | | |
| | $ 111,317.70 | 304.98 | 54 | 16,468.92 | *(paid 6/29/2018)* |
| **Profit Sharing - 2018** | | | | 1,141.03 | *(paid 3/8/19)* |

# Exhibit B-3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan85@gmail.com

**APPENDIX 000060**

|  |  |  | C |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Eugenio Vargas** |  | **Overpayment Calculation** |  |  |  |  |  |  |
|  |  |  | Annual | Daily amount | Eligible |  |  |  |  |
|  |  |  | Salary | (divide by 365) | Days to pay | Payment |  |  |  |
| **Vacation Pay - 2018** |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 113,021.02 | 309.65 | 14 | $ 4,335.10 | *(paid 3/29/2018)* |  |  |
|  | Correct calculation amount |  | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 |  |  |  |
|  |  |  |  |  | Overpayment | $ 589.12 | $ 589.12 |  |  |
|  |  |  |  |  |  |  |  |  |  |
| **Sick Pay - 2018** |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 113,021.02 | 309.65 | 12 | $ 3,715.80 | *(paid 3/29/2018)* |  |  |
|  | Correct calculation amount |  | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 |  |  |  |
|  |  |  |  |  | Overpayment | $ 504.96 | $ 504.96 |  |  |
|  |  |  |  |  |  |  |  |  |  |
| **End of term payout - 2018** |  |  |  |  |  |  |  |  |  |
|  | Original amount - paid in error (a) |  | $ 111,317.04 | 304.98 | 54 | $ 16,468.92 | *(paid 6/29/2018)* |  |  |
|  | Correct calculation amount |  | $ 97,662.60 | 267.57 | 54 | $ 14,448.78 |  |  |  |
|  |  |  |  |  | Overpayment | $ 2,020.14 | $ 2,020.14 |  |  |
|  |  |  |  |  |  |  |  |  |  |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** |  |  |  | Overpayment | $ 523.46 | $ 523.46 | *(paid 3/29/2018)* |  |  |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** |  |  |  | Overpayment | $ 448.68 | $ 448.68 | *(paid 3/29/2018)* |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | Overpayment subtotal |  | $ 4,086.36 | ** |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** |  |  |  |  | $ 57.21 | *(based on 1.4%)* |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  | **Total overpayment - due to APFA** |  |  |  |  | $ 4,143.57 |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| (a) - included union pay (MEA/SAF) |  |  |  |  |  |  |  |  |  |

**Exhibit B-3**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
heidimorgan65@gmail.com

**APPENDIX 000061**

## TRANSITION AGREEMENT

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1.    ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2.    ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3.    APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4.    APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5.    APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

APPENDIX 000062

payment through 2019.

6.   APFA and ROSS will each prepare a communication regarding ROSS's resignation.  APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with the announcement.

7    The Parties agree that the existence, terms, and content of this Agreement are completely confidential. ROSS agrees not to disclose the existence, terms, or content of this Agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms. The Parties shall be responsible for ensuring in writing that the confidentiality provisions of this Agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The Parties agree that they will respond to all inquiries regarding Ross' transition with APFA in accordance with the communications and talking points prepared pursuant to numbered paragraph 6 of this Agreement.

8.   ROSS agrees not to make, orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.  Likewise, APFA's Board of Directors, and its officers, employees and agents who are aware of this Agreement pursuant to the confidentiality provisions of numbered paragraph 7 of this Agreement, agree not to make, orally or in writing, any statements disparaging. ROSS or his immediate family, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.

March 1, 2018:1.0

APPENDIX 000063

9.  The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA.  Venue shall be by agreement of the parties.

14. If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _CHARLOTTE,  NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____          _3/1/18_____
Robert Ross                                        Date

March 1, 2018:1.0

BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):

Amy Milenkovic- BOS

Date  3-1-18

Wanda Sarnacki - CLT

Date  3-1-2018

Robert Valenta- DCA-AA

Date  3/1/18

John Pennel – DCA-US

Date  3/1/18

Maureen Walsh Martin –DFW

Date  3/1/18

John Nikides – LAX

Date  3/1/18

Raymond Lewis – LGA

Date  3/1/18

Randy Trautman– MIA

Date  3/1/2018

Susan Wroble – ORD

Date  3/1/18

Kim Kaswinkel – PHL

Date  3/1/18

Mischel Babi – PHX

Date  3/1/18

Louise Sullivan – RDU

Date  3/1/18

Jennifer Welpott – SFO

Date  3/1/18

Matt Foust – STL

Date  3/1/18

March 1, 2018:1.0

APPENDIX 000065



**Association of Professional Flight Attendants**

Representing the Flight Attendants of American Airlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross

██████████████████

**RE:    Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect.  (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at ████████ or eharris(████████ with any questions or concerns.  Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:    APFA Board of Directors
       APFA Executive Committee
       Margot Nikitas, General Counsel

www.apfa.

A

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| | |
|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| | |
|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |

| | |
|---|---|
| 101,031.36 | Annual salary |
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| | |
|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |

| | |
|---|---|
| 106,084.32 | Annual salary |
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| | |
|---|---|
| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |

| | |
|---|---|
| 107,893.92 | Annual salary |
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 7/31/18

**B**

| National Officer: | Bob Ross | | | | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| Profit Sharing - 2016 | | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | | 300.00 | (paid 7/6/17) |
| Grand slam | | | | | 150.00 | (paid 1/15/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| 2071 Profit Sharing | | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | |
| | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | |
| | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | |
| Sick Pay - 2018 | | | | | | |
| | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | | | | | |
| | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | |
| | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | (paid 3/8/19) |

APPENDIX 000068

| National Officer: | Bob Ross | | | | Overpayment Calculation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Annual | Daily amount | Eligible | | | | |
| | | | | Salary | (divide by 365) | Days to pay | | Payment | | |
| **Vacation Pay – 2017** | | | | | | | | | | |
| | Original amount | | $ | 101,031.36 | 276.80 | 14 | $ | 3,875.20 | OK (paid 3/31/17) | |
| | | | | | | Overpayment | $ | - | $ - | |
| | | | | | | | | | | |
| **Sick Pay – 2017** | | | | | | | | | | |
| | Original amount | | $ | 101,031.36 | 276.80 | 12 | $ | 3,321.60 | OK (paid 3/31/17) | |
| | | | | | | Overpayment | $ | - | $ - | |
| | | | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | | Overpayment | $ | 968.76 | $ 968.76 | |
| | | | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 114,632.67 | 314.06 | 17 | $ | 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 101,031.36 | 276.80 | 17 | $ | 4,705.60 | | |
| | | | | | | Overpayment | $ | 633.42 | $ 633.42 | |
| | | | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 122,121.70 | 334.58 | 29 | $ | 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 29 | $ | 8,572.40 | | |
| | | | | | | Overpayment | $ | 1,130.42 | $ 1,130.42 | |
| | | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 122,121.69 | 334.58 | 12 | $ | 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 12 | $ | 3,547.20 | | |
| | | | | | | Overpayment | $ | 467.76 | $ 467.76 | |
| | | | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 118,046.02 | 334.58 | 35 | $ | 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 35 | $ | 10,346.00 | | |
| | | | | | | Overpayment | $ | 1,364.30 | $ 1,364.30 | |

APPENDIX 000069

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Original amount - paid in error (a) | $ | 118,046.02 | 334.58 | 20.44 | $ | 6,838.82 | (paid 3/29/2018) | |
| | Correct calculation amount | $ | 107,893.92 | 295.60 | 20.44 | $ | 6,042.06 | | |
| | | | | | Overpayment | $ | 796.75 | $ 796.75 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | Overpayment subtotal | | | $ 5,361.41 | ** |
| | | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | | | | |
| | Total overpayment - due to APFA | | | | | | | $ 5,436.47 | |
| | | | | | | | | | |
| | | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | |
| | | | | | | | | | |

# Wood, Stephens & O'Neil, L.L.P.
## Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX 76116
Tele. 817-377-1700
Fax 817-377-1870

## CONFIDENTIAL MEMORANDUM

MEMO TO:       APFA Board of Directors and the Executive Committee

FROM:          Hal O'Neil, CPA, Pam Bush
SUBJECT:       Review of officer disbursements and the Bob Ross transition agreement
DATE:          October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual. Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer. These overpayment schedules for the other officers were previously provided to the Board of Directors. Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement. This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

*Hal O'Neil, CPA*

**EXHIBIT**
" _B_ "

APPENDIX 000071

| | | | C | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | **Bob Ross** | | | **Overpayment Calculation** | | | | | |
| | | | | | | | | | |
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| Vacation Pay - 2017 | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (pald 3/31/17) | | |
| | | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | | |
| Sick Pay - 2017 | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (pald 3/31/17) | | |
| | | | | | | Overpayment | $ - | $ - | |
| | | | | | | | | | |
| Vacation & Sick Pay - 2017 - (adjustment pald in 2018....all pald in error) | | | | | | Overpayment | $ 968.76 | $ 968.76 | |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | | | | |
| | Original amount - pald in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (pald 3/29/2018) | | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | | |
| | | | | | | Overpayment | $ 633.42 | $ 633.42 | |
| | | | | | | | | | |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | | | | |
| | Original amount - pald in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (pald 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | | |
| | | | | | | Overpayment | $ 1,130.42 | $ 1,130.42 | |
| | | | | | | | | | |
| Sick Pay - 2018 | | | | | | | | | |
| | Original amount - pald in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (pald 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | | |
| | | | | | | Overpayment | $ 467.76 | $ 467.76 | |
| | | | | | | | | | |
| End of term payout - 2017 (January 1 - December 31, 2017) | | | | | | | | | |
| | Original amount - pald in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (pald 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | | |
| | | | | | | Overpayment | $ 1,364.30 | $ 1,364.30 | |
| | | | | | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | | | | |
| | Original amount - pald in error (a) | | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (pald 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | |
| | | | | | | Overpayment | $ 796.75 | $ 796.75 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | | | | | | | | | |
| | | Add 2018 profit-sharing contribution pald (3/8/2019) on excess amount above ** | | | | | | $ 75.06 | (based on 1.4%) |
| | | | | | | | | | |
| | | | Total overpayment - due to APFA | | | | | $ 5,436.47 | |

APPENDIX 000072

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT.WORTH DIVISION

| | | |
|---|---|---|
| ROBERT (BOB) ROSS | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| MCGAUGHEY, REBER AND | § | |
| ASSOCIATES, INC., ASSOCIATION | § | |
| OF PROFESSIONAL FLIGHT | § | Case No. |
| ATTENDANTS, JULIE HEDRICK, | § | |
| AND ERIK HARRIS | § | |
| Defendants. | § | |

## AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT AND MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being by me first duly sworn, did state:

1. "I am employed as a Flight Attendant working with American Airlines, Inc. and I served on the Board of Directors for the Association of Professional Flight Attendants, between April 2011 to January 2021. I am of sound mind and body to make this affidavit and have personal knowledge of the following facts:

    a. I attended the Board of Director's meetings on October 27, 2020, and October 28, 2020, in which evidence from an accounting firm hired by APFA was presented off the record. Erik Harris presented spreadsheets he stated were the results of an accounting review that showed Robert "Bob" Ross owed for an overpayment made under his Transition Agreement in the amount of $5,436.47.

APPENDIX 000073

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b. I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c. I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1. This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d. I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross. At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committee voting on whether the charges were timely, specific, and valid. The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

APPENDIX 000074

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this $18$ day of April 2022.

Notary Public. State of Missouri

**From:** Erik Harris <eharris█████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents██████>; Executive Committee
<ExecutiveCommittee███████q>
**Cc:** Margot Nikitas <MNikitas███████>
**Subject:** Bob Ross' Overpayment

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of
wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make
payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

Erik Harris _Pronouns:_ _he, him, his_
National Treasurer
Association of Professional Flight Attendants

████████████████████

_The content of this email is intended solely for the recipient(s)._
_It is not to be shared, forwarded or posted without the author's written consent._



**Association of Professional Flight Attendants**

Representing the Flight Attendants of American Airlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

**RE:    Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris@apfa.org with any questions or concerns.  Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:    APFA Board of Directors
          APFA Executive Committee
          Margot Nikitas, General Counsel

**Exhibit B-1**

1004 West Euless Blvd  •  Euless, Texas 76040
Tel: (817) 540-0108  •  Fax: (817) 540-2077  •  www.apfa.org



APPENDIX 000077



**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * Maximum flight attendant pay | | 60.13 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | | | | 4,140.04 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| ** Maximum flight attendant pay | | 61.33 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | | | | 4,209.64 |
|---|---|---|---|---|
| 101,031.36 | Annual salary | | | |
| 276.80 | Daily rate for sick and vacation | | | |

| | | | | |
|---|---|---|---|---|
| *** Maximum flight attendant pay | | 64.96 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | | | | 4,420.18 |
|---|---|---|---|---|
| 106,084.32 | Annual salary | | | |
| 290.64 | Daily rate for sick and vacation | | | |

| | | | | |
|---|---|---|---|---|
| **** Maximum flight attendant pay | | 66.26 | | |
| Purser Pay | | 7.50 | | |
| International pay | | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | | | | 4,495.58 |
|---|---|---|---|---|
| 107,893.92 | Annual salary | | | |
| 295.60 | Daily rate for sick and vacation | | | |

\* Pay rates effective 4/1/16
\*\* Pay rates effective 1/1/17 - 5/1/17
\*\*\* Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
\*\*\*\* Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

**National Officer: Bob Ross**

| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | | 300.00 | (paid 7/6/17) |
| Grand slam | | | | | 150.00 | (paid 1/25/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| 2071 Profit Sharing | | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | | |
| Sick Pay - 2018 | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | (paid 3/8/19) |

**Exhibit B-1**

| National Officer: | Bob Ross | | | | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | | Payment | | |
| **Vacation Pay – 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ | 3,875.20 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | |
| **Sick Pay – 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ | 3,321.60 | OK (paid 3/31/17) | |
| | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | |
| **Vacation & Sick Pay – 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ | 968.76 | $ | 968.76 |
| | | | | | | | | | |
| **Vacation Pay – 2017 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ | 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ | 4,705.60 | | |
| | | | | | Overpayment | $ | 633.42 | $ | 633.42 |
| | | | | | | | | | |
| **Vacation Pay – 2018 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ | 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ | 8,572.40 | | |
| | | | | | Overpayment | $ | 1,130.42 | $ | 1,130.42 |
| | | | | | | | | | |
| **Sick Pay – 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ | 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ | 3,547.20 | | |
| | | | | | Overpayment | $ | 467.76 | $ | 467.76 |
| | | | | | | | | | |
| **End of term payout – 2017 (January 1 – December 31, 2017)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ | 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ | 10,346.00 | | |
| | | | | | Overpayment | $ | 1,364.30 | $ | 1,364.30 |

# Exhibit B-1

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Original amount - paid in error (a) | $ | 118,046.02 | 334.58 | 20.44 | $ | 6,838.82 | (paid 3/29/2018) |
| | Correct calculation amount | $ | 107,893.92 | 295.60 | 20.44 | $ | 6,042.06 | |
| | | | | | Overpayment | $ | 796.75 | $ 796.75 |
| | | | | | | | | |
| | | | | | Overpayment subtotal | | | $ 5,361.41 ** |
| | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | | $ 75.06 (based on 1.4%) |
| | | | | | | | | |
| | **Total overpayment - due to APFA** | | | | | | | $ 5,436.47 |
| | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | |
| | | | | | | | | |

**Exhibit B-1**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FT.WORTH DIVISION

|  |  |
|---|---|
| Robert (Bob) Robert | § |
| Plaintiff, | § |
|  | § |
|  | § |
|  | § |
| V. | § |
|  | § |
|  | § |
|  | § |
| DIVERSIFIED CREDIT SYSTEMS, | § |
| ASSOCIATION OF PROFESSIONAL | § |
| FLIGHT ATTENDANTS, JULIE | § |
| HEDRICK, ERIK HARRIS, | |
| Defendants. | |

AFFIDAVIT OF EUGENIO VARGAS IN SUPPORT OF PLAINTIFF'S
ORIGINAL PETITION AND MOTION TO VACATE

BEFORE ME, the undersigned authority, on this day personally appeared Eugenio

Vargus, who being by me first duly sworn, did state:

1.    "I am employed as a Flight Attendant working with American Airlines,

Inc. and I served as the National Treasurer for the Association of

Professional Flight Attendants ("APFA"), from April 1, 2016 to July 1,

2018.  I have personal knowledge of the fact, I am 21 years or older and

of sound mind to make these statements.

a. During my administration of my duties as National Treasurer, it was

my responsibility to review all incoming charges, expenses and

receipts of the APFA National President.  It was my responsibility to

raise any concern and forward any charge or receipt with which I

questioned as to whether it was a valid business-related expense,

1 of 2

back to the individual for a more detailed explanation prior to granting approval or denial.

b.  At that time I served with Robert "Bob" Ross ("Ross") as the National President of APFA.  Any charges made by Ross, that I questioned were cleared and all questions rectified. Any of Ross's union credit card charges, expenses and receipts that I reviewed and approved were in compliance with APFA policy at the time of approval.

c.  Charges made by Robert "Bob" Ross never gave rise to any suspicion of theft, misappropriation, or breach of his fiduciary duty, or conduct unbecoming an APFA officer whatsoever.

d.  On or about May 25, 2018, I had a conversation with Robert (Bob) Ross regarding any outstanding charges that should be repaid to APFA.  I informed him the charges made for his furniture for the APFA apartment should be repaid.  He authorized me to contact APFA payroll and have the expenses of $3637.92 - $331.28 (deduction for returned furniture) deducted from his payroll, which I sent an email to payroll to have these funds deducted.

FURTHER AFFIANT SAYETH NOT.

_____

**Eugenio Vargas**

Eugenio Vargas who produced Texas drivers license as identification

2 of 2

**APPENDIX 000083**

SWORN AND SUBSCRIBED TO before me on this <u>17th</u> day of April, 2022.



Notary Public, State of Texas
Remote Online Notary Public
State of Texas, Jefferson County

ECHANDA MANETTE GOODMAN
Notary ID #132642149
My Commission Expires
August 25, 2024

KBA online using audio video communication

APPENDIX 000084

**In the Matter of Arbitration Between**

|  |  |
|---|---|
| | ) |
| **Melissa Chinery** | ) |
| **Sandra Lee** | )    **RE: Article VII Charges** |
| | )    **Violations of APFA Constitution** |
| **APFA Charging Party Members** | )    **and APFA Policy Manual** |
| **(Plaintiff)** | ) |
| | ) |
| **And** | ) |
| | ) |
| **Robert Ross, Former APFA National** | ) |
| **President** | ) |
| | ) |
| **APFA Charged Party Member** | ) |
| **(Defendant)** | ) |
| | ) |
| | ) |

**Before:**                         **Alternate Article VII Arbitrator Ruben R. Armendariz**


**Place and Dates of Hearing:**        **The Westin Irving Convention Center at Las Colinas, 400 West Las Colinas Boulevard, located in the City of Irving, Texas.**

                                **June 16, 2021, continued to November 17 and 18, 2021**


**Appearances:**

**For Charging Party Members:**        **Melissa Chinery, Representative**
**(Plaintiff's)**                  **Sandra Lee, Representative**


**For Charged Party Member:**        **Kit Gomez Alba, Esq.**
**(Defendant)**                   **Gina Guidry, Representative**
                                **Robert Ross, Representative**

APPENDIX 000085

## INTRODUCTION

This is an Article VII Hearing that was heard at the Westin Irving Convention Center at Las Colinas, Irving, Texas on June 16, 2021 and continued to November 17 and 18, 2021. The arbitration hearing was transcribed by Carson Reporting & Associates.

Charging Party Melissa Chinery and Sandra Lee, will be hereinafter referred to as the "Plaintiff." Charged Party Robert Ross, will be hereinafter referred to as the "Defendant."

Plaintiff presented for testimony Cathy Lukensmeyer, Erik Harris, Michael Trapp, John Nikides and Melissa Chinery.

Defendant presented for testimony Casey Veloso, Anthony Thuriault and Robert Ross.

All of these witnesses were afforded full opportunity to be heard, to be examined, and to be cross-examined.  The parties were allowed to introduce evidence on the issues. Based on the entire record, my observation of the witnesses, examination of the evidence, exhibits presented, post-hearing briefs[1] submitted, and arguments presented therein, this arbitrator makes the following findings and renders the following Discussion, Opinion, and Award.

## THE ISSUES

Plaintiff submits the issue to be addressed by the Alternate Article VII Arbitrator is stated as follows:

Did Bob Ross, the Defendent herein violate the APFA Policy Manual and the APFA Constitution by engaging in malfeasance, fraud, misappropriation of funds while he was in office during the term of April 1, 2016 to March 2, 2018. If so, what shall be the appropriate remedy?

Defendant submits the issue to be addressed by the Alternate Article VII Arbitrator is stated as follows:

Whether the Plaintiff's allegations raised against him are true or false? Did former National President Ross knowingly or "willfully" violate any express Article of the APFA Constitution or Policy Manual? If so, what is the appropriate remedy?

## FACTS

The facts in this matter center on Defendant Ross assuming office as the APFA National President and moving to Dallas, TX during the months of April 2016 through October 2016.

---

[1] The parties agreed to submit post-hearing briefs by e-mail to arbruben@gmail.com on January 31, 2021 and extended to February 18, 2021.  The post-hearing briefs were timely emailed and received. Thus, the arbitrator finds the record in this matter closed on February 18, 2021.

Defendant Ross is alleged to have misused the APFA credit card on several matters during his term in office.

Plaintiff alleged in the Article VII grievance and heard are described as follows:

Defendant is charged with eight **(8)** specific violations of the Policy Manual and the APFA Constitution.

**(1)  Misuse of Credit Card:**

As APFA National President, Plaintiff Ross was provided an APFA credit card.
   a. Defendant Ross spent thousands on purchasing sheets, blankets, pillows, mattresses, furniture as well as smaller items such as toilet paper and candy.
   b. Defendant Ross purchased over $3600 in furniture on his APFA credit card and had it delivered to his personal residence in South Lake, Texas.
   c. Defendant Ross charged an APFA rental truck in August 2016.

**(2) Rental Car:**
Defendant Ross is charged with billing APFA for a rental car for six months at a cost of over $6200.00 Ross was considered living in the DFW area and was not entitled to a rental car.

**(3) Reimbursement:**
Defendant Ross claimed mileage that he was not entitled to, including the period when he had a rental car.

**(4) SAF/MEA and meal expenses--Change of formula to include Meal Expense Allowance (MEA) and Special Assignment Fee (SAF):**
Defendant Ross and his fellow officers changed the longstanding formula for Vacation reimbursement. Defendant Ross also violated the detailed language of the APFA expense policy by charging thousands of dollars of unauthorized meals to his APFA credit card.

**(5) Payout of Vacation-**Change of Formula to include MEA and SAF and an office stipend in with wages when considering the reimbursement of sick and vacation time. This was discovered when the pay for the Vice President, Secretary and Treasurer was looked at more closely by the next administration long after the Ross Administration had left office.

**(6) Maintaining an Office:**
Defendant Ross claimed thousands for maintaining an office he was not entitled to.

**(7) Payout of Vacation Days:**
Defendant Ross received compensation for expense payments beyond his term in office.

**(8) Buyout:** Defendant Ross collected compensation in two forms. (1) MEA and SAF (2) Maintaining an office outside Residence.

Defendant argued at the hearing that these Article VII charges were filed by the Charging Party (Plaintiff) as a weapon against Ross and the Officers of the Ross Administration.

This matter was submitted to this Alternate Article VII Arbitrator to make a decision on the charges cited herein.

# THE RELEVANT PORTIONS OF THE APFA CONSTITUTION AND POLICY MANUAL

## THE APFA CONSTITUTION

### Article I. Section 7.   DEFINITIONS:

As used in this Constitution, the following words or terms shall mean:

E.     **"Duty"** means an obligation of performance, care or observance which rests upon a person in any position or fiduciary capacity with or as a member of the APFA.

M.     **"Privilege"** means a benefit or advantage enjoyed by a person in any position or    fiduciary capacity with or as a member of the APFA.

O.     **"Responsibility"** means an obligation to answer for a duty to act or a failure to act by a person in any position or fiduciary capacity with or as a member of the APFA.

Q     **"Rights"** means those powers and/or privileges inherent to a person in any position or fiduciary capacity with or as  a  member  of  the APFA.

### Article II. Section 2. OBLIGATIONS OF MEMBERS:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from, or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties, and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties, and responsibilities.

### Section 3. BILL OF RIGHTS OF MEMBERS

B.     All members of the APFA shall have access to all administrative and financial reports and records except as provided in Section 5.B(1) of this Article II.

### Article III, GOVERNMENT OF THE APFA
### Section 3 Board of Directors

A.  The Board of Directors is authorized and empowered to take any and all lawful action consistent with this Constitution to safeguard and protect the APFA, and the rights and privileges, duties and responsibilities of the officers, representatives and members of the APFA.  The Board of Directors is authorized to interpret this constitution and to establish, prescribe and adopt such other policies which may be consistent with this constitution as required for the direction and management of the affairs of the APFA.

APPENDIX 000088

**L.**    Jurisdiction and Duties: The Board of Directors shall have the following rights, privileges, duties and responsibilities;

1.  Set policy for the APFA;
2.  Modify the APFA Policy Manual as it deems appropriate;
3.  Approve the annual budget;
4.  Set annual goals for the APFA as it deems appropriate;
5.  Assign to each Ad Hoc Member of the Executive Committee those Presidents with whom s/he shall maintain regular contact and communication;
6.  Determine the number of administrative, committee, and support positions as may be required under Article IX of this Constitution to meet the needs of the membership;
7.  Nominate and appoint members of the National Balloting Committee and Budget Committee when appointments are appropriate;
8.  Review the base assignment of any OAL Operation or satellite and, when necessary alter operation or satellite assignments.
    While not limited to the following, the Board of Directors may:
9.  Review the dues structure of the Association;
10. Override the Executive Committee rejection of a proposed Collective Bargaining Agreement;
11. Establish the Regions and the National Vice President will assign the Regional Representatives;
12. Establish, combine, delete or change the duties, responsibilities and specific job descriptions of administrative, committee and support personnel in accordance with the provisions of Article IX of this Constitution for budgetary or policy reasons, taking into consideration the recommendations of the National Officers;
13. Direct special mailings to the membership;
14. Recognize the accomplishments and achievements of members of the APFA;
15. Give annual awards;
16. Confer Honorary membership;
17. Approve hardship dues forgiveness and review other hardship requests that may be brought before the Board;
18. Appoint special committees;
19. Appoint or change the Article VII Arbitrator or Alternate Article VII Arbitrator(s);
20. Approve Article VII administrative changes;
21. Suspend officers or representatives pursuany to Article VII;
22. Take any and all appropriate action deemed necessary by the Board and in accordance with this Constitution to promote the welfare of the members of the APFA, and this shall include the right to reverse an action or decision of the Executive Committee, National Officers or other representatives, except as provided in this Article III, Section 4.J.11 or Article VIII, Section 6.Bof this Constitution.

**Article VII. Section 1. Grounds For Charges:**

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

**A.**  Failure to pay dues, assessments or penalties levied by the Association.

**B.**  Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

**C.**  Willfully acting as a strike breaker during any work stoppage duly authorized by the Association; (1) Notwithstanding Section 1.C., above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

**D.**  Willful violation of a Flight Attendant's Collective Bargaining Agreement

**E.**  Theft or embezzlement of Association monies or property

**F.**  Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee

**G.**  Willfully acting in a manner that causes the Association to violate its legal obligations; or

**H.**  Willfully bringing charges without reasonable basis against another member, officer, or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

*APFA POLICY MANUAL*

**Section 5.G.1. Trip Removal and Expense Policy – Other Expenses**

**1.**  Actual out-of-pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member, but to compensate him / her for actual expenses and losses and is exclusive of other applicable reimbursement provisions in this policy.

**Section 5.F.5.a. Trip Removal and Expense Policy–Meal Expense/Allowance**

**a.** Representatives are authorized to pay for and to be reimbursed for the meal, snack or beverage of a guest(s) or other business associate(s) on those occasions when the representative would reasonably be considered the host of an authorized APFA function or meeting.

**(1)** Discretion and good judgment should be used when exercising this privilege and when incurring such legitimate and necessary Business-Related Expense. Abuse, as determined by the Executive Committee, may lead to limitation or revocation of this privilege.

**(2)** The reimbursement of a Business-Related Expense shall not count against a representative's MEA.

**Section 5.H. Relocation**

1. Upon assuming office/appointment, National Officer(s)/Chairs shall be expected and, for the purpose of this policy, shall be considered to reside in the DFW area. The DFW area, for purposes of this policy, shall not exceed a seventy-five (75) mile radius from APFA Headquarters.

2. If, on the date of his/her election, a National Officer does not reside in the DFW area, s/he shall be reimbursed for actual moving expenses for relocation from/to his/her place of permanent primary residence by a certified mover as a condition of employment with the APFA, to a maximum of ten thousand ($10,000) per round trip move.

   a. The provisions of H.2 above must be exercised within six (6) months following the end of the last term of office of the National Officer and must be substantiated by invoice or bill.

3. A National Officer may choose not to relocate to the DFW area but may, instead, choose to accept suitable furnished accommodations paid for by the APFA as provided in H.7. below. If a National Officer accepts such accommodations in lieu of relocation expenses as provided in H.2. above, the following will apply:

….

7. Incoming National Officers incoming and other Representatives shall normally be able to use outgoing National Officers or Representatives furniture and furnishings rather than replace these items with each change of National Officer or Representative, subject to the right to reasonably refuse furniture and furnishings.

**PLAINTIFF'S ARGUMENT**

Plaintiff argued the violations center on Defendant Ross assuming office as the APFA National President and moving to Dallas, TX during the months of April 2016 through October 2016. Defendant Ross misused the APFA credit card on several matters during his term in office. The APFA Policy Manual provides that National Officers will be provided up to $10,000 in moving expenses or, provided they can demonstrate a permanent residence outside of DFW, the officer can get a corporate apartment furnished by APFA. Defendant Ross leased an apartment at the Bear Creek complex on June 1, 2016, thus he chose both options for relocation when he is only to choose one option. Defendant Ross purchased $3600 of furniture from Ashley Furniture to be delivered to his home in South Lake, Texas. Defendant Ross had a rental car for six months at a cost of $6,200.00. He was living in the DFW area and was not entitled to a rental car. Defendant Ross claimed mileage when he was not entitled to claim mileage. Defendant Ross and his fellow officers changed the longstanding formula for Vacation reimbursement. Defendant Ross violated the detailed language of the APFA expense policy by charging thousands of dollars of unauthorized meals to his APFA credit card. The change of formula to include MEA and SAF with an office stipend in wages when considering the reimbursement of sick and vacation time. This was discovered when the pay for the Vice President, Secretary and Treasurer was looked at more closely by the next administration long after the Ross Administration had left office. Defendant Ross claimed for maintaining an office he was not entitled to. Defendant Ross received compensation for expense payments beyond his term in office. Defendant Ross collected compensation in two forms. (1) MEA and SAF (2) and maintaining an office outside Residence when he was not working.

**DEFENDANT'S ARGUMENT**

Defendant Ross argued the alleged violations were the direct result of the "Ross Transition Agreement." Defendant argued that charged violation No. 5: Payout of Vacation, Charged Violation, No. 6: Maintaining an Office, Charged Violation No. 7: Payout of Vacation Days and Charged Violation No. 8: Buyout are a part of the Transition Agreement (TA).

Defendant Ross argued the "Ross Transition Agreement" was deemed to be a legally authorized by Arbitrator Valverde in the Arbitration case, Moyer vs BOD (2018) dated September 21, 2021. Arbitrator Valverde ruled the dispute that Ross received a benefit was "without merit." The charges in that case were dismissed. Defendant argued that it stands to reason the accusers (Plaintiff) would have no claim that Defendant Ross received a benefit from the "Ross Transition Agreement" that he was not entitled to and any alleged violation stemming from his acceptance of the agreement, should be dismissed.

Defendant Ross argued the arbitrator, designated in these Article VII proceedings, has the jurisdiction and authority to rule on the validity of charges and the remedy sought by the Plaintiff to the allegation. Did former National President Ross knowingly or "willfully" violate an express Article of the APFA Constitution or Policy Manual, and did Ross "willfully" violate any express Article of the Constitution and/or Policy Manual when he accepted the terms of the "Ross Transition Agreement"? The arbitrator also has the jurisdiction and authority to dismiss the Article VII Charges against the Defendant.

Defendant Ross argued with respect to the *misuse of the APFA credit card* that multiple alleged purchases violated Policy Manual 5.G – Business Related Expenses. Defendant argued Business Related Expenses are actually defined in Policy Manual *Section 5.F.5. Section 5.G, "Other Expenses"* where it states,

> *5.G Other Expenses – Actual out-of-pocket expenses incurred by a member conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for personal profit of the APFA member, but to compensate him/her for actual expenses and losses and is exclusive of other applicable reimbursement provisions in this policy.*

Defendant Ross argued the Plaintiff cited the wrong policy in their support of these charges, evidence of their lack of understanding the process and policy. No purchases were made on the APFA union credit card were submitted for reimbursement on the weekly/monthly expenses. Receipts were submitted for each credit card charge and reviewed per policy by the appropriate accounting and legal departments. Plaintiff admitted they did not review any other administrations union credit card charges for similar purchases or past practice or for expenses when said officers relocated to DFW.

Defendant Ross argued with respect to the *misuse of a Rental Car* was billed to the National President's department during the timeframe according to the Plaintiff allegation, is coincidental to the timeframe of the Ross relocation, but was not as a condition of the relocation. 2016 APFA Policy Manual Section 5.H – Relocation – was silent on the use of rental cars in connection with or during the timeframe of a relocation. This issue was previously reviewed by the APFA BOD at the time the email was sent to the National Treasurer in March 2019. The APFA BOD and Budget Committee members tasked with this review took no action on this matter and the issue was closed. Defendant argued that several rental cars were rented through the President's office for numerous representatives during this time frame and not specifically to Bob Ross for personal use. Department representatives having access to rental cars during this timeframe included, but is not limited to, uniform committee members, toxic fume events and other committee representatives. At no time did the Plaintiff cite evidence that a rental car was provided for Ross' sole personal use.

Defendant Ross argued with respect to *mileage* the following that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.G. – Other Expenses / Mileage.
5.G.1.b. (1).(a) Mileage:
[2]. Mileage shall not be reimbursed for travel between the representatives' residence and an APFA office that has been provided for the primary use of the representative for a period in excess of 31 days.

Defendant Ross states that the Plaintiff have formed their own theory and alleged that former APFA National President, Bob Ross is in violation for claiming mileage for attending meetings with the Company or claiming mileage for any event outside of APFA headquarters while conducting APFA business while using a rental car. At no time did Ross file for reimbursement for mileage from his residence to the APFA headquarters. The Plaintiff did not

present evidence that Ross claimed a mileage reimbursement while using a rental car and not his own vehicle. Defendant Ross submits Section 5.G.b.1.a.1., is silent on a specific vehicle to be used in the reimbursement of mileage. At any given time, an APFA Representative could be subject to using their personal vehicle or a "Rental Car" for conducting APFA business.

Defendant Ross argued with respect *to SAF/MEA and meal expenses* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.F: Business Related Expenses. He states that the APFA had no policy on how to differentiate or separate any amounts from the guaranteed MEA/SAF totals when National Officers, Regional Representatives, National Chairs, or other Representatives, who are authorized a full month trip removal pay and are receiving guaranteed stipends of MEA/SAF and are considered a host of an authorized APFA meeting. APFA also had no policy in place until 2021, for a National Officer in relation to one's union credit card practice.

Special Assignment Fee (SAF) Policy:
The intent of the SAF is explained in Section 5.E.1

5.E.1.a. – The intent of the Special Assignment Fee (SAF) is to offer payment to the representatives for the days that they conduct APFA business in excess of their normal scheduled bid line. Amounts paid under this arrangement are reportable as wages on the representative's W-2 and are subject to withholding and payment of employment taxes.

5.E.4.a.(1) – If a Representative performs work for the APFA, and is not otherwise paid for that day's work by means of an APFA Paid Trip Removal.......such representative shall receive the Daily SAF for work performed in accordance with the following schedule.

Calculation for the National Officers' SAF is specifically delineated in Section 5.E.4.c – SAF Rates – Monthly –

(c)National Officers and Regional Representatives: $400 minimum, but not to exceed $500 maximum.

Meal Expense/Meal Expense Allowance (MEA)

Defendant Ross argued with respect to the *payout of vacation* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of 5.E.4 Special Assignment Fee (SAF) above and 5.F.1 Meal Expense Allowance (MEA) rates.

Guaranteed MEA at Residence is explained in Section 5.F.3.a

5.F.3.a – On days a representative is both trip removed and performing work for the APFA at his/her residence city, such representative will receive a "Guaranteed MEA at Residence" in lieu of any actual MEA at residence as provided in F.2.

5.F.3.d – National Officers, Regional Representatives, National Chairs and other representatives who are authorized full month trip removal or the equivalent shall receive a "Guaranteed MEA at Residence" of Three Hundred dollars ($300) per month.

Section 5.F.4.a – Calculation of MEA
National Officers, Regional Representatives, National Chairs and other representatives who are authorized full month trip removal or the equivalent (e.g. "Payback as provided in D above) shall receive a minimum MEA of Three Hundred dollars ($300) per month

**Maintaining an Office Outside of Residence (MOOR)**

Maintaining an Office outside of residence is required of APFA President, as the office is located and maintained at APFA Headquarters and is paid in addition to SAF.

5.E.4.c.(3).(a) – A National Officer, Regional Representative, National Chair, Base President and/or Base Vice-President who is required to maintain an APFA office outside of his/her place of residence shall be paid an additional two hundred fifty dollars ($250) per month over and above the minimum monthly SAF provided above, or the actual SAF subject to reimbursement, whichever is greater.

5.F.1.a.(1) – Per Diem Rate (Accountable Plan)
(1) All members shall be entitled to an APFA Meal Expense Allowance (MEA) while performing work for the APFA. Also required for the purposes of calculating how much Special Assignment Fee (SAF) an officer receives, it is imperative that the officer fill out the required weekly paperwork that would ascertain how many hours were worked for the APFA.

Defendant Ross argued that all payouts and formula used to calculate the payout for vacation, sick and end of term buyout of accrued and unused Sick and Vacation days occurred after former APFA President Ross had left office and was the product of a Transition Agreement and not specific to APFA Policy. Through sworn testimony, former APFA National Treasurer, Eugenio Vargas, used full salary vs basic salary in these calculations, which include MEA and SAF in compliance with the terms of the controlling document, the Ross TA.

Defendant Ross argued that a National Officer or Regional Representative on a full month trip removal shall receive per policy a $500 maximum of SAF payment. National Officers, Regional Representatives, National Chairs and other APFA Representatives on a full month trip removal shall receive a minimum Guaranteed MEA of $300 per month. Each National Officer, per policy, each month received the guaranteed amount of $1050 ($500 SAF, $300 MEA and $250 MOOR) in addition to basic salary. This amount was determined by the APFA Accounting Department. and was the combined stipend included as Salary and Benefits per the Ross TA used by the former APFA Treasurer, after Ross left office, to calculate the daily rate of unused Sick and Vacation Days that Ross was not allowed to use during his final 5 months as National President to "make him whole." These amounts were paid after Ross left office and as a condition of the Ross TA. It is irrational for the Plaintiff to request that weekly timesheets were required to receive these payments for the months after Ross left office.

Defendant Ross argued that on January 14, 2022, an APFA document surfaced that was withheld from document retrieval that corroborates the Policy Manual was not the controlling document to the Ross TA and therefore Ross was paid in compliance with the TA. This document would have been exculpatory to the defense of Mr. Ross on this and other matters pertaining to the Ross TA had it been provided.

Defendant Ross with respect to "*maintain an office outside of residence*" that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.E.3 Maintaining an Office Outside of Residence. The maintaining an office outside of residence is required of APFA President, as the office is located and maintained at APFA Headquarters and is paid in addition to SAF.

5.E.4.c.(3).(a) – A National Officer, Regional Representative, National Chair, Base President and/or Base Vice-President who is required to maintain an APFA office outside of his/her place of residence shall be paid an additional two hundred fifty dollars ($250) per month over and above the minimum monthly SAF provided above, or the actual SAF subject to reimbursement, whichever is greater.

Defendant Ross argued that each National Officer, per policy, each month received the guaranteed amount of $1050. This amount included $500 for SAF, $300 for MEA and $250 for office outside of residence. This amount was determined by the APFA Accounting Department and provided to all National Officers as part of their salary. This charge also should be dismissed as Ross did not pay himself the payments under the terms of the Ross TA.

Defendant Ross argued with respect to the *payout of vacation days* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 6.B.1: National Officer Salary and Benefits. Defendant Ross states that any change to the formula used to calculate the payout for vacation, sick and end of term buyout occurred after former APFA President Ross had left office. Through sworn testimony, former APFA National Treasurer, Eugenio Vargas, used full salary vs basic salary in these calculations, in compliance with the Ross TA.

Defendant Ross argued the Ross Transition Agreement stated Ross would be paid any and all accrued and unused sick and vacation from April 1, 2016 – July 31, 2018. The calculation of the unused days was to be paid as though Ross was able to use any of those days while in office as President for his remaining 5 months had he not resigned. There was no agreement that these days were to be paid per Policy as the Plaintiff insists. An investigation into the payout of the Sick and Vacation days paid, brought about by Plaintiff's allegations that it was discovered Ross was not properly paid "All" of his accrued and unused Sick days from April 1, 2016 – July 31, 2018. Ross earned and did not use 18 Sick days in each of the fiscal years April 2016-March 2017 and April 2017-March 2018. Ross was only paid Per Policy 6.B.3.d Offset/Loss of Sick Time, of 12 days for each fiscal year. The additional 12 days, (6) days Apr. 2016-2017 and (6) days Apr. 2017-2018 have still not been acknowledged or paid to Ross in accordance with the Ross TA. The value of these lost Sick days, depending on the calculation used, is in excess of $3400 still owed to Ross.

Defendant Ross argued that he received a *buyout but it is cited as the Ross Transition Agreement.* The charging party submits that Ross collected more money than if he had remained in office for the four (4) months left in his term. However, once Ross left office, he asked for and collected from the APFA compensation in two forms he was not entitled to per the "agreement." One form of compensation which he received every month was MEA and SAF and Maintaining an Office Outside Residence. Mr. Ross continued to collect one thousand and fifty dollars ($1050) a month."

"He collected these payments for the months of: March, April, May, June and July of 2018. This stipend is clearly hinged on reimbursement related to work and not part of the National Officer salary. To accept this money is in clear violation of the intent of the Policies written that allows a representative extra compensation for working hours above and beyond their scheduled workload. By taking this money this is another violation of the Section 5 policies outlined above."

Defendant Ross argued in Item no. 3 of the Ross Transition Agreement states "APFA agrees that Ross will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018. Full Salary for a National Officer, per the APFA Policy Manual, Section 5 entitles the officer to receive guaranteed MEA, SAF, and Office Outside of Residence payment. This guaranteed payment is $1050, which is considered gross wages and recorded in "Box 1" of the National Officers W-2 tax form.

Defendant Ross argued that former APFA National Treasurer Vargas has stated in sworn testimony he used full salary vs basic salary for all calculations in compliance with the Ross Transition Agreement. This full salary calculation would include the benefits of MEA, SAF and any accrued and unused sick and vacation that he would have coming to him as President for those 5 months (4/1/16-7/31/18), as if he remained in office.

### DISCUSSION AND OPINION

Defendant Ross assumed office on April 1, 2016 as National President of the APFA. In that position he is entrusted with a Fiduciary duty to the APFA for cost and expenditures. This report revealed that Defendant Ross abused his fiduciary duty to the members of the APFA. The arbitrator has consolidated certain violations in this report.

1. **Misuse of the APFA Credit Card and**
2. **SAF/MEA and Meal Expense Policy**

Plaintiff argued in these allegations that Defendant Ross moved into the South Lake home during the week of August 11, 2016. Defendant Ross used the APFA credit card for his personal use and was not for any Union related business activities and abused his fiduciary duty to the APFA. He charged the renting of a moving truck on August 20, 2016 to move furniture after being reimbursed for moving his belongings from Sacramento. He has purchased tools, sheets, blankets, pillows, mattresses, furniture and even smaller items such as toilet paper and candy. None of the larger items were ever inventoried or returned to the APFA upon cessation of his term of office. Defendant Ross elected to relocate to the DFW area and was afforded a moving expense reimbursement, he was not entitled to buy any furnishings using APFA funds. Plaintiff argued Defendant Ross violated Section 5.G. **Other Expenses** of the Policy Manual. Kim Ross, wife of

the Defendant packed up the California house in August 2016. Defendant Ross's wife and kids stayed in 5 different hotels as they drove across the country, including vacation stops at the Grand Canyon and Flagstaff. They used the union credit card for these hotels, except for one hotel stay on August 2nd that Ross expensed in his weekly report to the APFA.  It also appears in the documentation that APFA paid for all of Ross's family meal expenses. (CLX-17, CLX-37, and CLX-42) All of these expenses were billed to APFA as part of the cost of moving the Ross family from California to Texas. Defendant Ross was not present for any of these hotel stays.

The arbitrator finds that if his family was driving directly from California to Dallas, Texas, the APFA would not have incurred additional costs for hotels, meals and mileage. It appears APFA paid for Ross's family vacation in the Grand Canyon with Defendant Ross' APFA credit card. The cost of this vacation to include meals and hotels should be borne by Defendant Ross.  This is an abuse of Ross's fiduciary duty to the APFA membership. This is a per se violation of the Policy Manual.

On August 9, 2016 Defendant Ross bought tools at Home Depot on the APFA credit card. On this same date, the APFA handyman delivers APFA furniture to the South Lake home. (CLX-4). On August 12, 2016 the moving pods that Ross had rented arrived to the South Lake house. On this same date, Defendant Ross charges $64.30 for gas at Shell Oil in South Lake on the union credit card and bills it to the move but he also claimed mileage and was paid. On August 13, 2016 Defendant Ross *purchased $3,637 in furniture on the APFA credit card from Ashley Furniture (CLX-40)* and had it delivered to his personal residence at the South Lake home.  The furniture was delivered to Kim Ross at the South Lake home in two installments – on August 18, 2016 and August 25, 2016.  Defendant Ross claimed the family did not move until September 2016 but the record evidence clearly revealed they actually moved in August, 2016. A couple of bed frames and small items were returned costing $331.28 to Ashley Furniture on August 24, 2016 (CLX-40). John Nikides testified that Defendant Ross was ordered by APFA to repay $3600.00 to APFA for this furniture and he did so through payroll deduction. Here, Defendant Ross abused his fiduciary duty to the members of the APFA.

Plaintiff argues Defendant Ross used the APFA credit card for his own personal use. Several meals were charged on the credit card and the participants were National Officers, the Officers and their Regional Representatives as well as himself eating alone. This violates Section 5.F. **Meal Expenses/Meal Expense Allowance (MEA)**, 5. **Business Related Expenses**, a.1.2. Plaintiff argues this violates the following:

**Section 5 Business Related Expenses:**
   a. *Representatives are authorized to pay for and to be reimbursed for the meal, snack or beverage of a guest(s) or other business associate(s) on those occasions with a representative would reasonably be considered the host of an authorized APFA function or meeting.*
   1. *Discretion and good judgment should be used when exercising this privilege and when incurring such a legitimate and necessary business-related expense. Abuse, as determined by the executive committee, may lead to the limitation of revocation of this privilege.*

2. *In no case may an individual who is otherwise receiving an APFA MEA in any manner be considered the "guest" for the purposes of this provision.*

**Section 5.G of the Policy Manual provides the following:**

*Actual out-of-pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member, but to compensate him /her for actual expenses and losses, and is exclusive of other applicable reimbursement provisions in this policy.*

Additionally, the items Defendant Ross purchased were for his personal benefit such as dry cleaning, trips to the gas station, 7-eleven, and a monthly GOGO internet subscription.

Plaintiff argued Defendant Ross violated the Meal Expense provisions of the APFA Policy Manual during his term in office. Ross claimed per diem and actual meals. He used the APFA credit card for meals at fast food restaurants by himself. As a National Officer Defendant Ross received a guarantee MEA ($300.00 per month). The APFA Policy Manual does not permit National Officers to charge actual meals in their city of residence. National Officers are provided Guaranteed MEA instead of actual meal expense. There are no provisions for National Officers to receive actual meals. Actual meals are covered in F.2 of the Policy Manual and do not include the National Officers or other full-time representatives nor is there a working lunch exception. The only time an APFA National Officer can purchase actual meals is the hosting exception.

Defendant Ross argued with respect *to SAF/MEA and meal expenses* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.F: Business Related Expenses. He states that the APFA had no policy on how to differentiate or separate any amounts from the guaranteed MEA/SAF totals when National Officers, Regional Representatives, National Chairs, or other Representatives, who are authorized a full month trip removal pay and are receiving guaranteed stipends of MEA/SAF and are considered a host of an authorized APFA meeting. APFA also had no policy in place until 2021, for a National Officer in relation to one's union credit card practice.

Defendant Ross additionally argued the parties cited the wrong policy in support of these charges, evidence of their lack of understanding of the process and policy. No purchases were made on the APFA union credit card were submitted for reimbursement on the weekly/monthly expenses. Receipts were submitted for each credit card charge and reviewed per policy by the appropriate accounting and legal departments.

The arbitrator finds the Plaintiff provided sufficient evidence to establish merit and a violation of the Policy Manual to reveal Defendant Ross abused his fiduciary duty to the membership of the APFA. Under these circumstances, the APFA will hire an Independent Auditor to perform the task of auditing Defendant Ross purchase of meals and other items on the APFA credit card from April 1, 2016 through July 31, 2018. Record evidence revealed that he had purchased meals and used the APFA credit card for a personal vacation for his family at the Grand

Canyon and other items that are not business related. The Independent Auditor will have to determine if such meal(s) or other purchases were for conducting union business or not. Defendant Ross as the National President was required to submit documentation to support all credit card expenses for meals as well as other expenses. If no documentation was provided to support the expenses were for union related business, then Defendant Ross will be required to repay APFA for all of those expenses not substantiated. Moreover, the audit must comply with federal income tax guidelines which distinguish between personal and nonpersonal expenses. Additionally, Defendant Ross is hereby Ordered to repay all of the Independent Auditor's fee to the APFA.

### 3. Rental Car

Plaintiff argued Defendant Ross violated the APFA Policy Manual by having a rental car in DFW for six months. The Policy Manual in Section 5.G.1 does not allow a National Officer to have a rental car in base. Defendant Ross upon assuming office is considered for all expenses to be living in Dallas. The only way a rental car would be approved is if the APFA Representative was renting it away from their city of residence per 5.G.1.b. If it is used for personal reasons, it is considered income. Moreover Section 8.D governs the use of APFA provided vans and cars, "Automobiles owned or leased by the APFA are to be used primarily to conduct APFA business during normal business hours. After hours, they may be reserved on a first-come, first served basis for the use of representatives who reside outside of the DFW metropolitan area," Section 8.D.1. in Section 8.D.2 a Regional Representative whose residence is outside of DFW may get a rental car when leased cars are not available. Cathy Lukensmeyer testified that National Officers should not be getting a rental car in Dallas for their personal use. Defendant Ross received a rental car from March 2016 until October 16, 2016. He booked a rental on March 28, 2016 for 24 days. On May 5, 2016, Defendant Ross upgraded the car to a luxury car. The car rentals were updated several times into October 2016. At hearing, Defendant Ross denied having a rental car but when confronted with rental car receipts, he then claimed it was for his department and not for him. Several emails (June 16, 2016 extended the rental to July 29, 2016, July 18, 2018, September 30, 2016 extended to October 3, 2016) from APFA secretaries disclosed it was for Bob's rental car (CLX-45). Additionally, ross did not have a personal car in DFW to commute to APFA headquarters. Here, the arbitrator finds Defendant Ross abused his Fiduciary duty to the membership of the APFA by renting cars for his personal use to commute to work.

Defendant Ross did not move his wife's car to Dallas until August, 2016 so Ross was using APFA rental cars exclusively during that period. He charged APFA for the mileage, hotels, gas and meals. Ross admitted he did not have a vehicle to get to work so he used the rental car. Plaintiff argued that if an Employer provides an automobile to an employee, including for commuting to and from work, that is considered a fringe benefit and is considered taxable income by the IRS. (26 CFR § 1.61-21(a)(1) - Taxation of fringe benefits.) Under the LMRDA the governing body is the APFA Board of Directors and they have an obligation to recover the money. (29 U.S.C. 501) So Defendant Ross saying the Board looked into the matter in 2019 does not resolve the matter. If it is determined Defendant Ross received over $6200 in unlawful compensation in the form of a rental car he was not entitled to under federal labor law, the money must be paid back to the APFA.

Defendant Ross argued with respect to the *misuse of a Rental Car* was billed to the National President's department during the timeframe according to the Charging party's allegation, is

coincidental to the timeframe of the Ross relocation, but was not as a condition of the relocation. 2016 APFA Policy Manual Section 5.H – Relocation – was silent on the use of rental cars in connection with or during the timeframe of a relocation.

The arbitrator finds the Plaintiff has supported their charge to establish merit and a violation of the Policy Manual over the use of rental cars, thus, Defendant Ross abused his Fiduciary duty to the membership of the APFA. the Independent Auditor will audit Defendant Ross' use of a rental car from April 2016 through October 2016 and determine the cost of the rental from April 2016 through October 16, 2016. If Defendant Ross did not support the use of a rental car with documentation for Union related business matters, Defendant Ross will be required to repay APFA for the use of the rental cars. Whatever the amount of dollars the Independent Auditor has determined Defendant Ross owes for using a rental car for his personal use in lieu of a union business, he shall be Ordered to repay that amount to the APFA.

**4.Mileage**

Plaintiff argued Defendant Ross claimed mileage that he was not entitled to, including the period he had a rental car. The AFPA Policy Manual has detailed language to a National Officer assuming office.

> **Relevant Provisions**
> Upon assuming office/appointment, National Officer(s) / Chair(s) shall be expected and, for the purposes of this policy, shall be considered to reside in the DFW area per 5.H.1.
>
> *5.G.1.b. Ground Transportation*
> "[1] A representative shall be reimbursed for mileage at the IRS standard mileage rate for travel to conduct APFA business, not to exceed a monthly maximum of one thousand (1000) miles. All mileage must be recorded on an "APFA Mileage Log" and submitted per Section 5.I.5. of this Policy Manual," per Section 5G.1.b.1.
>
> " S/he is not authorized to claim any other expenses as provided in this policy for the purpose of personal travel between DFW and his/her permanent residence," per Section H.5.c.

The mileage logs are included in CLX-13-19 and specify that Ross drove the following mileage:

| | |
|---|---|
| March 2016 | 336 miles |
| April 2016 | 294 miles |
| May 2016 | 294 miles |
| June 2016 | 336 miles |
| July 2016 | 294 miles |

Plaintiff argued Defendant Ross violated the APFA Policy Manual by claiming mileage to and from his permanent residence in Sacramento and the Sacramento airport. He claimed mileage between his Sacramento permanent residence and the Sacramento Airport at 42 miles each way. The APFA Policy Manual states that a National Officer may not claim expenses for his commute home. All commuting back to your home city is on your own money. But Defendant Ross charged mileage, parking and meals at the airport. Defendant Ross also charged APFA $105 a month for parking his vehicle at the Sacramento Airport. This is not an authorized expense as no additional expenses for commuting home were authorized. All of this occurred at the same time Defendant Ross had a rental car.

Defendant Ross states Plaintiff's have formed their own theory and alleged that former APFA National President, Bob Ross is in violation for claiming mileage for attending meetings with the Company or claiming mileage for any event outside of APFA headquarters while conducting APFA business while using a rental car. At no time did Ross file for reimbursement for mileage from his residence to the APFA headquarters. The Charging Party did not present evidence that Ross claimed a mileage reimbursement while using a rental car and not his own vehicle. Defendant Ross submits Section 5.G.b.1.a.1., is silent on a specific vehicle to be used in the reimbursement of mileage. At any given time, an APFA Representative could be subject to using their personal vehicle or a "Rental Car" for conducting APFA business.

The arbitrator finds the plaintiff has supported their charge to establish merit and a violation of the Policy Manual. Thus, Defendant Ross abused his Fiduciary duty to the membership of the APFA by claiming mileage to and from his residence and parking his personal vehicle in the Sacramento Airport. The arbitrator requests the Independent Auditor to look at the mileage logs or statements from April 1, 2016 through October, 2016 and determine the amount of money Defendant Ross was paid for claiming mileage from the Sacramento airport and return. Defendant Ross' claimed 42 miles from the Sacramento airport to his residence and 42 miles to return to the airport on weekends. Additionally, Defendant Ross charged $105.00 a month for parking his car at the Sacramento airport and claimed this cost to APFA for payment. The Independent Auditor shall investigate the claims for parking his car and determine how much he claimed and received payment from the APFA Whatever dollar amount the Independent Auditor has determined for mileage and parking, Defendant Ross is hereby Ordered to repay the APFA.

**5.  Maintaining an Office**

Plaintiff withdrew this charge in their post-hearing brief.

**6.  Charges related to Ross Leaving Office as National President (Buyout)**
**7.  Sick and Vacation Payouts**
**8.  Receiving MEA and SAF when Performing no work.**

Defendant Ross left office on March 1, 2018 in the face of a DOL ordered rerun election. He was elected to a four-year term but he voluntarily resigned and negotiated a Transition Agreement to leave. The economic terms of the Transition Agreement are as follows:

3.  APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4. APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.
5. APFA agrees to pay ROSS, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000), which represents ROSS's moving expenses. ROSS shall present the moving expenses to a APFA for payment through 2019.

Plaintiff argued that nowhere in the exit package language does it specify that Defendant Ross should get paid MEA and SAF expense payments for the months he is not working in March, April, May, June and July 2016. Yet, Defendant Ross received $1050 a month in these payments for five months for a total of $5250. MEA and SAF are considered expenses. Salary is included in Section 6-National Officer Salary and benefits. In Section 5-Trip Removal and Expense Policy is where SAF and MEA are located and discussed. The APFA Constitution defines salary in Section 6.A which provides, "The salary of the National President shall be equivalent to the highest purser flight attendant pay rates, including international override pay, for a flight attendant based on 116 hours monthly."

## Section 6: National Officer Pay and Benefits
## B.1: Vacation

a. National officers shall be entitled to thirty-five (35) days of paid vacation to be taken in each fiscal year while in office or the seniority respective vacation allowance s/he is contractually entitled to as a Flight Attendant, whichever is greater. This calculation will not be based on the Article 6.H of the Collective Bargaining Agreement referring to "trips missed." This vacation allowance may be taken at the discretion of the National Officer, however, not more than fourteen (14) consecutive days taken at any one time.

b. National Officers should schedule their vacations so as to avoid the simultaneous absence of more than two (2) National Officers. In no case shall the National President and the National Vice President be on vacation simultaneously.

c. At the end of a fiscal year, up to fourteen (14) days of any unused APFA vacation allowance, as provided in B.1.a above, will be paid to the National Officer at a rate prorated on the National Officers' annual salary for the period of APFA vacation allowance owed, less applicable state and federal taxes. If the National Officer is entitled to more than thirty-five days vacation, up to twenty-one (21) days will be paid as stated above.

d. At the beginning of a term, the National Officer should be paid by the Company for any vacation allowance accrued as a flight attendant.

e. At the end of the term, the APFA will ensure that the departing National Officer is provided with the vacation time to which s/he would ordinarily be entitled as if the National Officer had been an active Flight Attendant for the previous and current calendar years. If the company does not provide the out-going officer with the appropriate vacation allowance accrued for the previous and current calendar year the APFA will:

1. Provide payback of accrued vacation allowance to be taken in corresponding consecutive vacation days in a block(s) that is seniority respective at his/her domicile per Article 6.1 of the AA/APFA Collective Bargaining Agreement, within 13 months following the end of the applicable term; or

2. The APFA will provide the departing National Officer with the appropriate Flight Attendant vacation by means of cash reimbursement at a rate prorated on the National Officers annual salary for the period of APFA vacation allowance owed less applicable state and federal taxes.

Plaintiff argued that Defendant Ross was paid 14 days of vacation for fiscal year 2017 which ran from April 2016 and through March 2017. Ross used four vacation days and was entitled to be paid out 14 of the remaining 31 days. Ross was paid that amount in 2017. In fiscal year 2018 Ross was entitled to be paid out an additional 14 vacation days as he used 6 days and should have received the maximum 14 days. Ross was also entitled to his end of term vacation which provides that he can receive vacation he would have accrued during present and previous year. For bidding purposes as a Flight Attendant, he should have received 35 days of vacation. So, the total amount Ross should have received in 2018 was 49 days which would have been 35 days for the end of term and 14 days maximum payout for fiscal year 2018. This is on top of the 14 days Ross already received for fiscal year 2018.

Plaintiff additionally argued that Ross received 101.44 days paid out in the amount of $38,574.68. Part of this payment includes the inflated pay which is the subject of a separate violation. Ross was overpaid 52.44 hours of vacation.

Defendant Ross argued the Ross TA is controlling. Defendant Ross would be paid any and all accrued and unused sick and vacation from April 1, 2016 – July 31, 2018. The calculation of the unused days was to be paid as though Ross was able to use any of those days while in office as President for his remaining 5 months had he not resigned. There was no agreement that these days were not to be paid per Policy as the Charging Party insists. An investigation into the payout of the Sick and Vacation days paid, brought about by the Charging Party's allegations, revealed Ross was not properly paid all of his accrued and unused Sick days from April 1, 2016 – July 31, 2018. Ross earned and did not use 18 Sick days in each of the fiscal years April 2016-March 2017 and April 2017-March 2018. Ross was only paid Per Policy 6.B.3.d Offset/Loss of Sick Time, of 12 days for each fiscal year. The additional 12 days, (6) days Apr. 2016-2017 and (6) days Apr. 2017-2018 have still not been acknowledged or paid to Ross in accordance with the Ross TA. The value of these lost Sick days, depending on the calculation used, is in excess of $3400 is still owed to Ross.

The arbitrator finds that MEA and SAF is guaranteed to the National Officers to compensate them for not working as a Flight Attendant. The TA provides for "Full Salary" including benefits. While one can argue that MEA and SAF is a guaranteed benefit, the Policy Manual states it is not wages or benefits but rather are expenses as stated in Section 5 of the Policy Manual. The TA does not mention MEA and SAF as a benefit but the purpose of providing a guaranteed MEA and SAF to the National Officers so they would not suffer monetarily. MEA and

SAF is a guaranteed expense to be paid monthly to the National Officers. If Defendant Ross did not receive the MEA and SAF that he was guaranteed as a National Officer, it would then be reasonable to assume that he would suffer monetarily. The TA states he will continue to receive his current full salary and benefits. The language regarding benefits in Section 6 of the Policy Manual and expenses in Section 5 of the Policy Manual is clear and unambiguous. However, if the BOD enters into a TA with an employee to pay his full salary for an additional 5 months without working then the TA language would be in conflict with the language over expenses (guaranteed MEA and SAF for National Officers) in Section 5 of the Policy Manual. During these five months of the TA that Defendant Ross was paid his full salary, no evidence was introduced that Defendant Ross worked as a Flight Attendant while receiving guaranteed MEA and SAF. Under normal circumstances, expenses are listed in box 1 of a W-2 but they are not considered wages or salary. It is therefore, the Opinion of this arbitrator the intent of the TA reached between Attorney Mark Richards, Robert Ross and the 2018 BOD was for the purpose of maintaining the "status quo ante" for Defendant Ross. Thus, it would be reasonable to conclude Defendant Ross received MEA and SAF for the months of March through July 2018 as a guaranteed expense benefit. However, it should be noted that MEA and SAF are expenses and are not to be included in or considered with his full salary for use in the payout determination of accrued sick and vacation leave. For these reasons, the arbitrator is of the Opinion this charge over MEA and SAF should be dismissed.

With respect to sick and vacation payout, the APFA Board of Directors has determined that Defendant Ross was overpaid in the amount of $5,436.47 in 2018. "The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect." Record evidence revealed National Treasurer Vasquez admitted he had changed the formula without the approval of the BOD or the EC.

Moreover, it is the arbitrator's understanding that Defendant Ross has refused to repay $5,436.47 to APFA and is presently in litigation to recoup the money owed to APFA. The arbitrator finds this is very troublesome in view of the fact that he is a standing Board member and the other National Officers have acknowledged the computation of their debt and has either paid their debt in full or have arranged to pay off their debt. As National President, Defendant Ross was elected to a position of trust with the responsibility of protecting APFA assets. Ross has a Fiduciary duty to the membership of the APFA and this arbitrator finds that he has abused this trust.

It is therefore arbitrator's Opinion, Defendant Ross has failed and abused his Fiduciary Duty. The non-payment of these monies reveals Defendant Ross is not accepting this responsibility. Thus, it is this arbitrator's Opinion that Defendant Ross should be and is hereby Ordered to immediately repay the APFA $5,436.47.

## Leasing an Apartment at the Bear Creek Complex

The APFA provides National Officers two choices for relocating to the Dallas metroplex. They can either accept a corporate apartment or they can accept the relocation moving expense entitling them up to $10,000 in moving expenses. But they are required to select their choice before they move. Here, the record evidence revealed Defendant Ross accepted both choices. Plaintiff argued that Defendant Ross leased an apartment at the Bear Creek Complex on June 1, 2016.

Defendant Ross testified and denied leasing an apartment at the Bear Creek Complex but after Plaintiff showed him documentation, Defendant Ross then admitted that he had leased the apartment at the Bear Creek Complex for one year to be paid by APFA.

On Defendant Ross's weekly report, he claimed that he was house hunting on June 7 and 8, 2016. Defendant Ross explained that his children's school in California ended in June 2016. Kim Ross, packed household items into pods without furniture because their furniture was too large for the South Lake home and was delivered in August 2016. Defendant Ross decided to order furniture from Ashley furniture and ordered $3,637.00 worth of furniture on August 13, 2016 with the APFA credit card. Defendant Ross denied that he had ordered the furniture for his residence, that it was ordered for the corporate apartment because it had no furniture. Documentation was presented to Defendant Ross revealing he had the furniture delivered to the South Lake residence on August 18 and 25, 2016. Thus, Defendant Ross chose both options for his own personal benefit and was not looking out for APFA's benefit. He also acquired APFA furniture to be moved to his his residence per Mike Trapp's testimony when he was not entitled to do so. As a result of his actions, the corporate apartment he leased for his own personal benefit at the Bear Creek Complex cost APFA $8,106.13 which is an unnecessary expense for the APFA.

Thus, it is the arbitrator's Opinion, that Defendant Ross abused his Fiduciary duty to the membership of the APFA and should be assessed the cost of leasing that apartment in the amount of $8,106.13.

**Conclusion:**

The arbitrator finds that throughout this proceeding, Defendant Ross *intentionally and willfully* ignored the provisions of the APFA Policy Manual and thus, has violated and abused his fiduciary duty entrusted to him by the APFA membership. Ross's testimony was inconsistent and not forthright. Because Ross abused his position of trust as well as his fiduciary duty to the membership of the APFA, he can no longer hold a position of trust with the APFA. Moreover, Article VII, Section 1 of the APFA Constitution provides that:

1. Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:
......
F. Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee;

Here, Defendant Ross has overwhelmingly violated the APFA Policy Manual and APFA Constitution. Ross has refused to repay APFA for an inappropriate overpayment in the amount of $5,436.47. The Union has been forced to put the matter in collections after Ross refused and is now forced to commence a lawsuit against Ross. The policy manual has a procedure for APFA representatives to follow if they disagree with the determination on any expenses which is to appeal to the APFA Executive Board and Board of Directors per Section 5.B. Ignoring the Board of Directors is not an option, especially *for a sitting Board member*. John Nikides testified that Ross's refusal to repay APFA as a sitting Board member undermines the Union, and the memberships faith in its officers.

Plaintiff argued that Defendant Ross should be expelled from membership. It is the Opinion of this arbitrator that Defendant Ross should be prohibited from serving in any official position for life within the APFA organization that is set forth and included in the APFA Constitution and Policy Manual that is covered or identified.  Additionally, if Ross currently holds any official position presently, he is to resign said position. This is to bar Ross from any official position for life other than that of member.

**REMEDY**

1. The APFA will hire an Independent Forensic Auditor to audit Robert Ross' weekly reports, monthly reports and APFA credit card charges from April 1, 2016 through July, 2018 and perform the following tasks:

Specifically:
   a. The Auditor shall inspect the receipts for the Ross family vacation taken in the Grand Canyon in August 2016. Ross claimed all of hotel stays, meals and mileage charges as relocation moving expenses when some are for a personal vacation. Please determine what costs should not have been claimed as relocation moving expenses. Ross is liable for the excess cost and is hereby Ordered to repay APFA for all inappropriate charges!
   b. The Auditor shall inspect Ross' APFA credit card usage for personal and group meals and purchases for personal items such as tools, toiletries, bath towels, and candy from April 1, 2016 through July 2018 and determine the cost of all inappropriate charges. If no documentation was provided to support each purchase was a union related business cost, then Ross is liable for all inappropriate charges and is hereby Ordered to repay the APFA for all inappropriate charges!
   c. The Auditor shall inspect all of Ross' rental car usage from April 1, 2016 through October 16, 2016 and determine if these rentals were for union related business. APFA paid for the rental cars but there should be documentation to show if it was for union related business. If not, Ross is to be assessed the cost of the rental cars during the above period and is hereby Ordered to repay APFA for inappropriate rental car usage!
   d. The Auditor shall inspect all of Ross' claimed mileage from the Sacramento Airport to his residence (42 miles) and return (42 miles) as well as all monthly parking of his personal car. He claimed $105.00 per month from April 1, 2016 through July 2016 to park his car at the Sacramento airport. Ross is to be assessed the mileage and monthly parking he claimed and Ross is hereby Ordered to repay APFA for all of these inappropriate charges!

2. Ross is hereby Ordered to immediately repay the APFA $5,436.47 per the finding of the APFA Board of Directors. An independent accounting firm determined the formula used to determine the daily rate assessed for sick and vacation payout was incorrect.
3. Ross is hereby Ordered to repay the APFA $8,106.13 for leasing an apartment at the Bear Creek Complex where he had no intention of occupying.
4. Ross is hereby fined and Ordered to repay the APFA for all of the Arbitrator's Fee for this arbitration.

5. Ross is hereby ordered to repay the APFA the full cost of hiring the Independent Forensic Auditor.

6. Ross is hereby Ordered to repay $3,637.00 to the APFA for all of the furniture he had purchased and delivered to his residence located in South Lake, Texas.

7. Ross is prohibited from serving in any official  position within the APFA organization that is set forth and included in the APFA Constitution and Policy Manual that is covered or identified. If Ross currently holds any official position presently, he is to resign said position. This is to bar Ross from any official position for life other than that of member.

8. The APFA if it hasn't done so, must create a separate body of trained forensic accountants to oversee the annual audit and to create procedures and recommendations to preclude fraud for the BOD's review and action to be included within the Policy Manual. National Officers or Officers who have the authority to extend APFA to credit or use of an APFA credit card must be held economically responsible. The language created must be very clear and unambiguous. Training over the LMRDA must be a requirement for all National Officers or any person who can extend APFA to credit and whom is given an APFA credit card. These individuals must sign a document declaring and attesting that they have read and understand their responsibilities in using an APFA credit card or extending credit to the APFA for rental cars, apartments, etc., and that negligence will not be tolerated and will be dealt with severe penalties.

9. The arbitrator shall retain jurisdiction over any issue involving this remedy only. Moreover, if the Independent Auditor determines any monies are due from Ross, that will be the amount to be assessed or due for repayment to the APFA. The APFA shall either Order said repayment from Ross or submit the Independent Auditors findings to have this arbitrator issue a Supplemental Decision and Remedy.

**AWARD**

The grievance is sustained in part and denied in part.

**Issued in San Antonio, Texas the 19th day of March, 2022.**

Ruben R. Armendariz, Arbitrator

APPENDIX 000108