**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § § § | |
| | § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiff/Counterclaim** | § | |
| **Defendant,** | § | **Judge Terry R. Means** |
| | § | |
| **v.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS,** *et al.*, | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

---

**BRIEF IN SUPPORT OF MOTION TO
COMPEL RESPONSE TO SUBPOENA
ISSUED TO WOODS, STEPHENS AND O'NEIL, L.L.P.**

---

Pursuant to Federal Rules of Civil Procedure 26(b)(1), Fed. R. Civ. P. 34(c), Fed. R. Civ. P. 45, and Local Rules 5.2, 7.1. 7.2. 53.1, 56.3 and 56.6, COMES NO, Plaintiff, Robert "Bob" Ross ("Ross"), and file this, his Motion to Compel Production of Documents in Response to Subpoena Issued to Woods, Stephens, and O'Neil, L.L.P. ("Woods, Stephens, and O'Neil") and in support thereof, would respectfully show this Court as follows:

# Table of Contents

SUMMARY ..................................................................................................................................... 4

FACTUAL BACKGROUND.............................................................................................................. 4

ARGUMENT .................................................................................................................................... 7

Undue Burden Objection: ............................................................................................................ 7

Vague, Ambiguous and Overly-broad Objection: ....................................................................... 10

Relevancy Objection:................................................................................................................... 11

Burdensome or Disproportionate Requests in relation to the Needs of the Case Objection:...... 12

Accountant-Client Privilege Objection:....................................................................................... 14

CONCLUSION ................................................................................................................................. 14

CERTIFICATE OF CONFERENCE ............................................................................................... 16

CERTIFICATE OF SERVICE ........................................................................................................ 16

# Table of Authorities

**Authorities**

Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC,          7, 8, 9
    313 F.R.D. 39 (N.D. Tex. 2015)

A-Mark Auction Galleries v. Am. Numismatic Ass'n, 233 F.3d 895 (5th Cir. 2000)          14

Cantu v. TitleMax, Inc., 5:14-CV-628 (W.D. Tex. Oct. 9, 2015)          14

Coughlin v. Lee, 946 F.2d 1152 (5th Cir. 1991)          12

EEOC v. Aerotek, Inc., 815 F.3d 328 (7th Cir. 2016)          10

EEOC v. Bay Shipbuilding Corp., 668 F.2d 304 (7th Cir. 1981)          12

EEOC v. Ford Motor Credit Co. , 26 F.3d 44 (6th Cir. 1994)          12

FTC v. Shaffner, 626 F.2d 32 (7th Cir. 1980)          12

Isenberg v. Chase Bank USA, N.A., 661 F. Supp. 2d 627 (N.D. Tex. 2009)          7

Leonard v. Martin, 38 F.4th 481 (5th Cir. 2022)          12, 14

SEC v. Brady, 238 F.R.D. 429 (N.D. Tex. 2006)          8

United Air Lines, Inc., 287 F.3d 643 (7th Cir. 2002)          12

Walsh v. Alight Solutions LLC, 44 F.4th 716 (7th Cir. 2022)          12

Williams v. City of Dallas, 178 F.R.D. 103 (N.D. Tex. 1998)          8

_Wiwa v. Royal Dutch Petroleum Co.,_ 392 F.3d 812 (5th Cir. 2004)                    9

**Codes & Statutes**

29 U.S.C. § 411(a)(2)                                                                12

29 U.S.C. §437                                                                        5

29 U.S.C. § 501                                                                      12

Tex. Occ. Code §901.457                                                             14

**Court Rules**

Fed. R. Civ. P. 26(b)(1)                                                           1, 8

Fed. R. Civ. P. 34(c)                                                              1, 8

Fed. R. Civ. P. 45                                                                 1, 7

Fed. R. Civ. P. 45(c)(2)(A)                                                           7

Fed. R. Civ. P. 45(d)(2)(B)                                                        7, 8

Fed. R. Civ. P. 45(d)(2)(B)(i)                                                        8

L.R. 7.1                                                                              1

L.R. 7.2                                                                              1

L.R. 53.1                                                                             1

L.R. 56.3                                                                             1

L.R. 56.6                                                                             1

## SUMMARY

Woods, Stephens, and O'Neil objected to the Subpoena and failed to produce any documents or correspondence within the time period for compliance and should be compelled to do so. It has been ten months since Woods, Stephens, and O'Neil served with the Subpoena, and yet Woods, Stephens, and O'Neil still have not produced any responsive documents. Plaintiff therefore asks this Court for an order compelling a response and production of documents.

## FACTUAL BACKGROUND

On October 20, 2022, Plaintiff served a Notice of Issuance of Subpoena to Woods, Stephens, and O'Neil. Attached hereto and incorporated herein in the attached Appendix is a copy of the subpoena that had been issued (the "Subpoena"). (*See* App. Pgs. 1-6).

Via the Subpoena, Plaintiff requested production of documents related to the matters before this Court. More particularly, Plaintiff's subpoena commanded production of:

> All materials including but not limited to correspondence, emails, calendar invites, text messages, phone records, reports, internal memoranda, personal notes, notations, work papers, drafts, and other writings, drawing, charges, photographs, computer printouts, spreadsheets, ledgers, graphics, analytics, and all other information kept by written, electronic, or other means relating to the parties in the above-entitled lawsuit and in relation to Association of Professional Flight Attendants, Eugenio Vargas, Nena Martin and Robert "Bob" Ross. (*See* App. Pg. 4).

This request includes any documents and communications between APFA and Woods, Stephens, and O'Neil regarding the former three National Officers of APFA: Eugenio Vargas, Robert "Bob" Ross, and Nena Martin.[1] Considering that the named individuals in the request only served as National Officers during the period of April 1, 2016 to July 1, 2018—when the Ross Administration was in office—the request for documents and communications is limited to those documents from April 1, 2016 to current. Documents outside this time frame do not exist.

Woods, Stephens, and O'Neil is an independent accounting firm that performs the annual

---

[1] The Subpoena request did not include any documents or communications related to Marcy Dunaway, the National Secretary within the Ross Administration, as she has since retired as a Flight Attendant and is no longer a member of APFA.

4

audit of all APFA expenses.  Each yearly audit is submitted to the APFA Board of Directors and National Officers for review, and once finalized, the accounting audit forms the basis from which APFA drafts its annual U.S. Department of Labor ("DOL") LM-2 Reports required under LMRDA §207 or 29 U.S.C. §437.  Woods, Stephens, and O'Neil are listed on the LM-2 as the accounting firm that assisted in drafting and conducting the audit for APFA since 2016.[2]  Furthermore, Woods, Stephens, and O'Neil conducted audits for alleged overpayments made and received by the Eugenio Vargas, Marcy Dunaway, and Nena Martin approximately in 2018-2019.

On October 20, 2022, the Subpoena was served on Hal O'Neil, Owner with Woods, Stephens, and O'Neil, at 6300 Ridglea Pl., Ste 318, Fort Worth, TX 76116.  (*See* App. Pgs. 1).

Woods, Stephens, and O'Neil served objections via Defendant's Counsel within fourteen (14) days of their being served.  However, Plaintiff has attempted to resolve this matter with opposing counsel on multiple occasions and now seeks the court's intervention as Woods, Stephens, and O'Neil failed to serve any documents responsive of the subpoena request to date.

On November 3, 2022, Woods, Stephens, and O'Neil served objections to Plaintiff's Subpoena via Defendants' counsel—now counsel for Woods, Stephens and O'Neil.  (*See* App. Pgs. 2-3).  The original objections contain multiple grounds for objections including (1) undue burden and expense of the document production; (2) relevancy, (3) disproportionate requests in relation to the needs of the case, (4) vague, ambiguous and overly-broad, (5) privilege of documents produced to accountants for APFA.  (*See* App. Pgs. 9-11).  Defendants' original counsel has since withdrawn

---

[2] The LM-2 Filings require reporting whether or not an annual audit has been conducted under **Question 12.**  Under **Section 69,** on the last page of each LM-2 form, APFA cites that the accounting firm that conducted the audit was Woods, Stephens, and O'Neil.
2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 - https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=70950&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form

from the case before the Court, and Plaintiff's counsel emailed a subsequent request to Woods, Stephens, and O'Neil  c/o Hal O'Neil, CPA, owner of the accounting firm on August 16, 2023 requesting compliance with the Subpoena.  (*See* App. Pg. 14). On August 14, 2023, Plaintiff's counsel also emailed Defendants' counsel and requested he withdraw the objections. (*See* App. Pgs. 25-26). On August 15, 2023, Defendants' counsel refused to withdraw his objections. (*See* App. Pgs. 24-25). To date, no confirmation has been made as to whether Defendants' counsel also represents Woods, Stephens, and O'Neil.

On August 18, 2023, in response to the request via email made on Hal O'Neil on August 16, 2023, a response was received via Counsel for Defendants reiterating his objections and attaching Hal O'Neil to the email requesting a telephone conversation.  (*See* App. Pgs. 21-22). Counsel for both parties spoke via a telephone call on August 23, 2023 wherein Defendants' counsel sought clarification of the subpoena request and what documents were sought.  Plaintiff's counsel explained that he sought all documents and communications between APFA and Woods, Stephens, and O'Neil related to the three remaining members of the Ross Administration since 2016.   Defendants' counsel stated that:

> On the topic of communications with the auditors, I think the request is concerning the Ross Administration.  Our view is that that is way too over-broad. It includes a lot of information that would be totally irrelevant to this case. It includes sensitive financial information and. . . what this case is about and what the focus of the dispute is about is around what you are calling the Confidential Memorandum and the creation of that analysis of that and the distribution of that and with respect to that we are agreeable to producing the documents around the Confidential Memo—the request for the creation, the emails back and forth about it, and distribution of it.

This conversation was evidenced in another email sent to opposing counsel on August 25, 2023.   (*See* App. Pgs. 18-20). Plaintiff's counsel offered to limit the requests for documents and communications to those relating to the Ross Administration but originated after the Ross Administration left office—from 2018 to current. This limitation would eliminate any concern regarding private financial documents and isolate the scope of focus to the conduct of the union

regarding the three remaining Ross Administration officers; however, Defendants' counsel maintained his objection to the scope as being overly-broad. (*See* App. Pgs. 19-20). As of the date of filing this motion, no resolution has been reached on the issue of the outstanding Subpoena request to Woods, Stephens, and O'Neil.  Additionally, as of the date of filing this motion, Defendants and/or Woods, Stephens, and O'Neil have failed to turn over any documents.  Finally, as of the filing of this motion, Defendants' Counsel has yet to indicate whether or when Woods, Stephens, and O'Neil will turn over documents.

## ARGUMENT

"Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party . . . as well as motions to quash or modify or to compel compliance with a subpoena." Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting Isenberg v. Chase Bank USA, N.A., 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)). Under Rule 45, a party may serve a subpoena to command from nonparties the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A).

Woods, Stephens, and O'Neil submitted a host of different inappropriate objections which clearly demonstrate an intent to merely subvert Plaintiff's ability to seek necessary documentation for its claims and defenses.  (*See* App. Pgs. 9-11).  Plaintiff requests the court to overrule Defendants and/or Woods, Stephens, and O'Neil objections and compel responses to Plaintiff's Subpoena.

Undue Burden Objection:

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." Am. Fed'n of Musicians 313 F.R.D. at 12 (quoting Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex.

1998)). Rule 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Am. Fed'n of Musicians, LLC  313 F.R.D at 11-12 (N.D. Tex. 2015) (quoting from  FED. R. CIV. P. 26(b)(1)).

Rule 45 provides the serving party to "move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. P. 45(d)(2)(B)(i); see also FED. R. CIV. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.").

A party commanded to produce documents under a subpoena may serve written objections to producing documents, under FED. R. CIV. P. 45(d)(2)(B). However, "[t]he party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Am. Fed'n of Musicians, LLC, 313 F.R.D at 11 (N.D. Tex. 2015) (citing SEC v. Brady, 238 F.R.D. 429, 436 (N.D. Tex. 2006)).

This court explains the test "[t]o determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors:

(1) relevance of the information requested;

(2) the need of the party for the documents;

(3) the breadth of the document request;

(4) the time period covered by the request;

(5) the particularity with which the party describes the requested documents; and

(6) the burden imposed." <u>Am. Fed'n of Musicians, LLC</u>  313 F.R.D at 11 (citing <u>Wiwa v.</u> <u>Royal Dutch Petroleum Co.,</u> 392 F.3d 812, 818 (5th Cir. 2004)).

Here, Defendants/Woods, Stephens, and O'Neil are unable to meet the test for undue burden. In particular, the information sought is clearly relevant.  Defendants filed counterclaims seeking damages for payments made and received while Plaintiff was in office.  (*See* Defs. Am. Answer and Counterclaims Doc. 79, PAGEID 1814-1816). This requires Plaintiff to seek documents relating to his payments made between 2016-2018, when he held office as APFA National President. Considering Woods, Stephens, and O'Neil conducted the annual audit of all expenses and aided in drafting the LM-2—as noted on the public filing of the U.S. Department of Labor filings between 2016 to 2018—this would put the audit, all documents reviewed during this process, and Woods, Stephens, and O'Neil's rendered accounting audit squarely at issue for those years.  All payments made and received by Plaintiff would have been reviewed and included in those annual audits.

The need of Plaintiff to obtain the documents is clear.  The basis of this suit centers on Defendants withholding information from a disciplinary hearing for payments and charges he made while in office.  Harris requested Woods, Stephens, and O'Neil create the documents to reflect the calculations desired, and then presented to the APFA Board of Directors citing that it was the accounting firm that determined that Ross owed this money. But in 2019, APFA conducted a similar audit and made a similar demand on the remaining Ross Administration officials.  It is likely that communications and documents retained within Woods, Stephens, and O'Neil records from 2018 to current would relate to the Ross Administration.  It is further likely that those documents and records with APFA officials, may not likely be recoverable by APFA since new National Officers now hold office.  The National Officers during 2019 are not the same as those currently serving, thus it is likely that those communications may no longer be retrievable from APFA records and servers.  Therefore, obtaining the documents and communications from the accounting firm that conducted all audits of

the Ross Administration, their documents reviewed, notations, graphs, meetings with APFA, and any additional related documentation would be the best and most appropriate method to obtain reliable non-privileged evidence considering the circumstances at issue.

The breadth and time frame of the document request is reasonable.  Considering Plaintiff took office as National President in 2016, the lack of a date by reference in the subpoena is one implied by the facts at issue—all documents from 2016 to current.  No additional documents should be available as the Ross Administration did not take office as National Officers until April 1, 2016. Thereafter, APFA requested additional audits of the Ross Administration officers, which were conducted in 2019 on Marcy Dunaway, Eugenio Vargas, and Nena Martin for alleged overpayments. (*See* Pl. Orig. Complt. Doc. 1-2, PAGEID 33).   Furthermore, Woods, Stephens, and O'Neil conducted an accounting review of payments made under the Ross Transition Agreement during 2020-2021. (*See* Pl. Orig. Complt. Doc. 1-2, PAGEID 33; *See* Aff. Nena Martin, Doc. 52-2, PAGEID 1318-1326).   Upon conference, Plaintiff's counsel further explained that all documents and communications sought were pertinent only to Nena Martin, Robert "Bob" Ross, and Eugenio Vargas and only those after April 1, 2016.  Defendant's counsel maintained his objections to all documents other than those related to the Confidential Memo from Hal O'Neil dated October 22, 2020 and the all documents related to the accounting review that precipitated.

## Vague, Ambiguous and Overly-broad Objection:

A subpoena can be too indefinite if its demands are overly vague or amorphous, but the breadth of the production demanded is a topic better-suited for an inquiry of relevancy or undue burden. *See* EEOC v. Aerotek, Inc., 815 F.3d 328 at 332, 334 (7th Cir. 2016) (treating the appellant's objection that an administrative subpoena's requests amounted to "a fishing expedition totally unrelated to the matter under investigation" as a relevancy challenge, while also noting that the appellant made "no claim that the request is too indefinite"). A non-party's written objections are held

to the same standards as those under Rule 34.  Objections, just as requests, are required to be made with reasonable particularity.  Therefore, these objections "are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." Heller v. City of Dallas, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

The Subpoena request describes with reasonable particularity those documents within Woods, Stephens, and O'Neal's possession that are responsive.  Plaintiff described those facts that should guide any search of the documents Woods, Stephens, and O'Neil held in their possession.  Plaintiff requested all materials written or otherwise, that relate to the parties involved in the lawsuit and APFA, Nena Martin, Robert "Bob" Ross, and Eugenio Vargas.  The only documents Woods, Stephens, and O'Neil should possess relating to the Ross Administration are those that occurred after April 1, 2016 when the Ross Administration took office.  The Ross Administration would not have communicated with Woods, Stephens and O'Neil nor were any audits or accounting reviews conducted prior to this date relating to any member of the Ross Administration.  No other documents should exist within Woods, Stephens, and O'Neil's possession for those reviews. APFA has not audited any other National Officers since 2008 other than those in the Ross Administration.  Even if the request is "overly broad", Plaintiff's counsel clearly explained to Defendants' counsel that Plaintiff sought all documents and communications in relation to the Ross Administration since 2016 in Woods, Stephens, and O'Neil's possession.  Upon discussing Defendant's request to limit the scope, Plaintiff conceded to limiting the scope to those documents and communications after July 1, 2018, when the Ross Administration left office—yet Defendants' counsel maintained his objections.

Relevancy Objection:

"To determine whether a subpoena is unduly burdensome, the district court must 'weigh the likely relevance of the requested material to the investigation against the burden to [the respondent]

of producing the material.'" <u>Walsh v. Alight Solutions LLC</u>, 44 F.4[th] 716, 725 (7th Cir. 2022) (quoting <u>EEOC v. Ford Motor Credit Co.</u>, 26 F.3d 44, 47 (6th Cir. 1994)); *see* <u>Chao</u>, 467 F.3d at 1017 (requiring requested information to be "reasonably relevant").  "Under that rule, information is relevant if it 'bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" <u>Leonard v. Martin</u>, 38 F.4th 481, 489 (5th Cir. 2022) (citing <u>Coughlin v. Lee</u>, 946 F.2d 1152, 1159 (5th Cir. 1991).

<u>Burdensome or Disproportionate Requests in relation to the Needs of the Case Objection:</u>

When examining the burden of complying with a subpoena, "[t]he presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest." <u>United Air Lines, Inc.</u>, 287 F.3d 643, 653 (7th Cir. 2002) (quoting <u>FTC v. Shaffner</u>, 626 F.2d 32, 38 (7th Cir. 1980)). "Often we have phrased this 'difficult burden' as requiring a showing that 'compliance would threaten the normal operation of a respondent's business.' " <u>Id</u>. (quoting <u>EEOC v. Bay Shipbuilding Corp.</u>, 668 F.2d 304, 313 (7th Cir. 1981)). This is a fact-intensive inquiry, and "[c]onclusory allegations of burdensomeness are insufficient." <u>Id</u>.

The request is not burdensome as it seeks only those financial documents relating to the Plaintiff  and his associates while in office and the correspondence between Woods, Stephens, and O'Neil with APFA in relation to those charges.  Clearly a claim for breach of fiduciary duty under 29 U.S.C. § 501 for financial violations requires a showing of any and all charges, expenses, and payments made and received by Plaintiff.  Considering Plaintiff claims the union wrongfully disciplined him for exercising his rights under 29 U.S.C. § 411(a)(2) based on dueling political parties within the union, any documents and communications evidencing motivations of the APFA National Officers since 2019 relating to the separate audits or accounting reviews for the Ross Administration would be pertinent to the claims before this court.  The request is limited in scope and clearly requests relevant information.

Wood, Stephens, O'Neil claims the burden and expense of the document production is extensive, however fail to state the possible cost thereof.  Plaintiff seeks financial documents and communications from 2016 to current relating to the Ross Administration, and yet Wood, Stephens, O'Neil claim this is overly broad.  The claims at issue regard audits and/or accounting reviews of all four national officers under the Ross Administration by the APFA.  Furthermore, Defendants counterclaims for breach of fiduciary duty are rooted in payments made and received that are not in compliance with APFA Policy, therefore the financial documents evidencing these payments would be well within the purview of discoverable information.  Plaintiff seeks a copy of the documents from Wood, Stephens, O'Neil demonstrating what was reviewed, what notes were taken, and the impressions from Wood, Stephens, O'Neil for any audit or review that found the Ross Administration guilty of wrongful payments.  As a concession and in an attempt to resolve the issue without judicial intervention however, Plaintiff agreed to allow Wood, Stephens, O'Neil to limit its responses to those that occurred between 2018 to current day as those documents and communications would eliminate those communications while Plaintiff was in office, but include any request and communication regarding APFA's request and Wood, Stephens, O'Neil's impression upon creating an audit and/or accounting review.  Unfortunately, this concession failed to appease Defendants' Counsel.  He insisted on limitations to the scope to those responsive documents and communications relating only to the Confidential Memo and the accounting review.  Unfortunately, this ignores the fact that APFA requested financial audits of Eugenio Vargas, Nena Martin, and Marcy Dunaway in 2019, not to mention the need for those documents that relate to any alleged payments made and received while Plaintiff was in office.  These documents go to the heart of Plaintiff's defense for a possible breach of fiduciary duty claim—what payments were made and received that rise to the level of the misconduct alleged by Defendants.

13

<u>Accountant-Client Privilege Objection:</u>

Federal courts do not recognize an accountant-client evidentiary privilege. <u>Arthur Young & Co.,</u> 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984).  This is clearly an improper objection.

In Texas, those obligations can be found in the Public Accountancy Act under a section entitled "Accountant-Client Privilege." *See* Tex. Occ. Code §901.457. Texas courts conclude that this statute does not, in fact, create an evidentiary privilege. Rather, what it does is impose on the accountant strict client-confidentiality obligations that can trap the unwary in responding to discovery.  Courts interpreting the Texas statute have concluded that "accountant-client communications are confidential, but not privileged." <u>Cantu v. TitleMax, Inc.,</u> 5:14-CV-628 (W.D. Tex. Oct. 9, 2015); *see also* <u>United States v. White,</u> 487 F.2d 1335 (5th Cir. 1973) (court held "There is no confidential accountant-client privilege under federal law and no state-created privilege has been recognized in federal cases.").

To date, Defendants' Counsel maintains his clients' objections, including his assertion of an accountant-client privilege.  to the Subpoena served on Woods, Stephens, and O'Neil as overly-broad and vague.  Plaintiff now seeks relief from this Court to grant his Motion to Compel Response to Subpoena on Woods, Stephens, and O'Neil and overrule Defendants' objections.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court grant his Motion to Compel Response to Subpoena on Woods, Stephens, and O'Neil., and for such other relief as the Court deems proper.

THIS, the <u>5th </u>day of September, 2023.

Respectfully submitted,

By:  <u>/s/ Kerri Phillips          </u>
Kerri Phillips, Esq.
Texas Bar No. 24065906

14

Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
For Service of Filings:
notice@kdphillipslaw.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b) I hereby certify that counsel for the movant has conferred with Defendant in a good faith effort to resolve the issues raised herein. Plaintiff's counsel conferred with Defendants' counsel on via email on August 14, 2023, August 17, 2023, August 18, 2023. A telephone call was held on August 23, 2023 wherein the concerns and objections were discuss, in particular Plaintiff offered to limit the time frame of the Requests for Production No. 1, 2 and 3 to overcome Defendants objections without success in appeasing him. Plaintiff's further conferred with Defendants on via email on August 25, 2023, August 26, 2023, and received a response on August 30, 2023 stating documents would be produced on August 31, 2023. As of the date of filing this Motion, Plaintiffs served extremely limited responses that were heavily redacted and only responsive to Request for Production 2, and no documents have been received from Woods, Stephens, and O'Neil. Counsel conferred on September 1, 2023 as to the relief requested in this instant Motion and Defendants' counsel has replied they are opposed to the Motion. Counsel for Diversified is unopposed.

THIS, the 5th day of September, 2023.

By: /s/ Kerri Phillips
Kerri Phillips


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA ISSUED ON WOODS, STEPHENS, O'NEIL, L.L.P.** has been served in accordance with the Federal Rules of Civil Procedure to all counsel of record identified below on this the 5th day of September, 2023.

By: /s/ Kerri Phillips
Kerri Phillips

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org


James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111; Fax: (214) 838-0001
Email jim@gillespiesanford.com
Email: joe@gillespiesanford.com


Michael Rake
PO Box 1556
Lake Dallas, TX 75065-1556
Tel: (940) 498-2103 Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com