**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| **V.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS,** | § | |
| **MCGAUGHEY, REBER AND** | § | |
| **ASSOCIATES, INC., JULIE** | § | |
| **HEDRICK, ERIK HARRIS, LARRY** | § | |
| **SALAS, JOSH BLACK, Defendants.** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**NOW COMES** ROBERT (BOB) ROSS, Plaintiff, in the above-entitled and numbered

cause, and files this Plaintiff's Proposed Second Amended Complaint, and shows the Court:

**I.**

**INTRODUCTION**

1.    This action seeks redress for unlawful debt collection practices of the Fair Debt

Collection Practices Act 15 U.S.C. §§1692 d, e, and f et seq {hereinafter "FDCPA"), and the Labor

Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §412, Breach of Union

Constitution, and damages resulting from various torts brought under state law including breach

of fiduciary duty, defamation, and breach of contract.

2.     In 2016, Plaintiff was elected APFA National President, shortly after American

Airlines and US Airways merged. Out of this merger grew the notion and political debates over a

1

merger between the two flight attendants' labor unions with the Association of Flight Attendants-Communication Workers of American ("AFA") on one side—the union that represented US Airways flight attendants among others—and the Association of Professional Flight Attendants on the other side—a labor union that *exclusively* represents American Airlines flight attendants.   The power struggle ensued between those that supported a merger of the two unions—AFA and APFA ("AFA/APFA")—and those in opposition to a merger between AFA and APFA.   Supporters of the AFA/APFA merger have now infiltrated APFA to take over and achieve a merger of the two unions. The result has been the use of APFA's Disciplinary Procedures to victimize any union member that is outspoken against a merger between AFA and APFA.   Violations of APFA members' rights have ensued in pursuit of the AFA/APFA merger agenda under federal and Texas state law as well as intentional tortious violations that resulted in damages to the Plaintiff and his family.

## II.

## PARTIES

3.      Plaintiff, Bob Ross ("Ross") was employed with APFA in the state of Texas and a citizen of Texas during his employment.   His current primary residence is in the State of California; however, all events pertinent to the claims contained herein occurred within the state of Texas.   His primary residence is 4701 Hayloft Ct., El Dorado Hills, CA 95762.

4.      Defendant, McGaughey, Reber and Associates, Inc d/b/a Diversified Credit Systems ("Diversified"), is the debt collector of a termination contract between Ross and the Association of Professional Flight Attendants ("Transition Agreement").   Its registered agent for service of process is M S. McGaughey located at 2200 Jahan Trail, Longview, Texas 75604.   This company is engaged in the collection of debts using

the mail and the telephone.    Diversified is an entity whose principal purpose is the collection of any debts.  The Defendant regularly attempts to collect consumer debt alleged to be due to another and are "debt collectors' as defined by FDCPA, 15 U.S.C. § 1692(a)(6).

5.      Defendant, Association of Professional Flight Attendants ("APFA") is the original party to the Plaintiff's Transition Agreement, which formed the basis of the original claim.  This claim gave rise to this lawsuit and may be served by and through its current National President, Julie Hedrick at APFA headquarters at 1004 W. Euless Blvd, Euless, Texas 76040.

6.      Defendant, Julie Hedrick, ("Hedrick") is the National President of APFA and can be served at her place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or at her place of residence 3231 Del Monte Court, Fairfield, CA 94534.

7.      Defendant, Erik Harris ("Harris") is the National Treasurer of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040.

8.      Defendant, Larry Salas ("Salas") is the National Vice-President of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or anywhere else he may be found.

9.      Defendant, Josh Black ("Black") is National Secretary of APFA and can be served at his place of employment at APFA headquarters 1004 W. Euless Blvd, Euless, Texas 76040 or anywhere else he may be found. (Hedrick, Harris, Salas and Black collectively hereinafter referred to as the APFA "National Officers.").

3

## III.

## JURISDICTION AND VENUE

10.     Plaintiff files this Second Amended Complaint in the Northern District Federal Court - Fort Worth Division based on Federal Question, and Diversity between the Parties in this suit.

11.     Plaintiff brings claims under jurisdiction of this action which is conferred on this court by virtue of the Fair Credit Reporting Act 15 U.S.C. 1681s-2 (a)(1)(A) and (B), Fair Debt Collection Practices Act 15 U.S.C. §§1692 d, e, and f, and the Labor Management Reporting and Disclosure Act, 29 U.S.C. §411, 412, and Breach of a Union Constitution 301 Labor-Management Relations Act ("LMRA") 29 U.S.C. § 185.

12.     Plaintiff is a California Citizen.  Defendants all work in and or reside in Texas for 51% of the year.

13.     The amount in controversy exceeds $75,000; the Defendants conduct business in Texas, while the Plaintiff is a former citizen of Texas at the time, all facts that gave rise to the claims contained herein, occurred in the State of Texas.

## IV.

## CONDITIONS PRECEDENT

14.     All conditions precedent to Plaintiff's recovery against Defendants have been fully performed, have occurred, or have been waived or excused.

## V.

## FACTUAL BACKGROUND

**A.    Bob Ross was elected by the Membership in April of 2016 to serve as President of the Association of Professional Flight Attendants' Union.**

15.    Ross was elected shortly after American Airlines and US Airways merged.  This created a power struggle between the labor unions for the Flight Attendants. A power struggle ensued between those APFA members that supported a merger of the two unions ("AFA/APFA"), and those that opposed an AFA/APFA-merger.   The result is AFA/APFA supporters infiltrating APFA leadership roles, and their subsequent use of APFA's Disciplinary Procedures as a method of victimizing Plaintiff, and others that opposed such a merger.

16.    At the APFA Annual Conference on February 28, 2018 - March 3 , 2018, APFA BOD encouraged Ross to step down from his role as many endured a lot of questions from AFA/APFA members about the Chinery-Burns's petition and campaign for Ross's resignation. Fear that any of these Board members would be the next target led many to support Ross's resignation.

**B.    Ross negotiated, signed a transition agreement, and reluctantly surrendered his Presidential position, but was subsequently voted back on by the APFA BOD in April of 2021.**

17.    Ross conceded his position as President of APFA after negotiating on the following conditions:

- Ross would be paid outside of APFA policy—which provides that unused Sick and Vacation Days may be paid to officers according to a Per Diem Calculation of Annual Salary divided by 365.
- Ross would be paid *all* accrued unused vacation time—rather than be limited to only the 14 days provided for under APFA policy;
- Ross would be paid *all* unused accrued sick time—rather than be limited to only the 12 days provided for under the APFA policy;
- Ross would be "made whole" upon stepping down and lose no stipends, no income he would have received otherwise had he remained in office;
- Ross would no longer be a target for undue harassment and open hostility by any of the APFA/AFA members through a binding non-disparagement clause;

5

- Ross would be entitled to his privacy under the terms of the Transition Agreement with a Confidentiality clause; and
- Ross would be entitled to moving expenses back to California in the amount of $10,000.

Ross's transition agreement, encapsulating these conditions, was drafted, and signed on March 1, 2018 ("Transition Agreement").  A true and correct copy of the Transition Agreement is attached hereto and incorporated herein for all purposes and marked as <u>Appendix 000062 - 65</u> (*See* Transition Agreement).

18.     On or about March of 2019, AFA/APFA members Chinery-Burns and Sandra Lee ("Lee") launched an investigation into the Ross Administration—Ross as National President, Nena Martin as National Vice-President, Eugenio Vargas as National Treasurer and Marcy Dunaway as National Secretary ("Ross Administration") Chinery-Burns and Lee began to scour all financial records from his presidency in search of any impropriety.  The APFA National Officers granted Chinery-Burns and Lee access to Ross's confidential Transition Agreement, including financial documents that disclosed his personally identifiable information.  Thereafter, Chinery-Burns and Lee filed additional charges against the Ross Administration.  Again, the APFA elected National officials could either fight the charges in arbitration or retire their career from American Airlines as flight attendants—a bold and blatant attempt to take over key APFA leadership positions, which worked when Marcie Dunaway retired from the union to take other employment.

19.     In 2021, Ross was duly elected to APFA's BOD where he, again, stood as a voice against the AFA/APFA merger.  This was a threat to the AFA/APFA members who crept deeper into key roles within APFA's organizational structure—eventually leading to the election of APFA's National Officers: National President, Julie Hedrick; National Vice-President, Larry Salas, National Treasurer, Erik Harris, and as the National Secretary, Josh Black.

**C.  In November of 2020, Erik Harris, APFA's National Treasurer, sent a demand for an alleged debt Ross owed for $5,436.37.**

20.     On November 24, 2020, Harris wrote a letter to Ross demanding payment for a debt he allegedly owed to APFA ("Overpayment-of-Wages Letter").  A true and correct copy of the Overpayment-of-Wages Letter is attached hereto as Appendix 000066 - 070.   The following alleged factual assertions were made in the Overpayment-of-Wages Letter by Mr. Harris:

     i.   The APFA BOD had met and declared in a finding that Ross was overpaid in the amount of $5,436.47 under his Transition Agreement in 2018. (*See* Overpayment-of-Wages Letter, Appendix 000066 – 070).

    ii.   The APFA BOD's findings were based on a review from an independent accounting firm. (*See* Overpayment-of-Wages Letter, Appendix 000066 - 070).

   iii.   This independent accounting firm "determined that the formula used to determine the daily rate for [Ross's] sick and vacation payout was incorrect." (*See* Overpayment-of-Wages Letter, Appendix 000066 -  070).

**Every single factual assertion outlined above is false.**

21.     Harris included and referenced scheduled attachments to the Overpayment-of-Wages Letter marked as A, B and C (*See* Overpayment-of-Wages Letter, Appendix 000066-070). ("Schedules").  The attached Schedules outline the following:

     i.   Schedule A: the calculation of Ross's Per Diem per the APFA Policy is equal to annual salary divided by 365. (*See* Overpayment-of-Wages Letter, Appendix 000067);

    ii.   Schedule B: an outline of payments made in 2018 for unused Vacation and Sick Days in accordance with the Transition Agreement. (*See* Overpayment-of-Wages Letter, Appendix 000068); and

   iii.   Schedule C: a final spreadsheet asserted that the amount Ross was paid and then subtracted the APFA-Policy Per Diem multiplied by the correct APFA-Policy capped twelve (12) Sick Days per year and the maximum amount of his unused Vacation Days. (*See* Overpayment-of-Wages Letter, Appendix 000069 - 070)

22.     The per diem calculation used for Ross's original 2018 payout included his normal monthly stipends paid to all APFA officers for their Meal Expense Allowance ("MEA") and Special

Assignment Fee ("SAF") and Maintaining an Office Outside Residence—a stipend often included when one takes vacation and sick leave. The difference between the two per diem calculations resulted in an alleged overpayment of $5,436.37.  This letter fails to explain why no offset is given for his additional unpaid Sick Days or any justification for changing the per diem rate.

Nothing in the Overpayment-of-Wages Letter indicates these Schedules were the product of an audit or a formal review by an independent accounting firm (*See* Overpayment-of-Wages Letter, Appendix 000066 - 070).   Ross was never given any independent accounting firm's name or information to verify these calculations or any other information to validate these schedules, despite asking for a copy of the full report in the conversation Ross and Harris had, as referenced in this letter. By the middle of February 2021, he discovered the debt had been sold to Diversified Credit System ("Diversified"), after which Diversified filed suit against Ross to collect the debt.

> **D. On January 14, 2022, Diversified Credit Systems filed suit against Ross for the same debt Lee and Chinery-Burns already filed Article VII charges to collect—except Diversified's Petition included a letter from the APFA's accounting firm stating its opinion that Ross was paid correctly and does not owe this debt.**

23.     Prior to the APFA Article VII Arbitration award being delivered, Diversified filed suit against Ross for breach of contract to collect the same $5,436.47 debt Chinery-Burns and Lee pursued in arbitration. and upon review of the petition, Ross discovered that the Harris and Hedrick had concealed documents during his Arbitration.  Upon recent notice, Ross discovered that Harris sent the Confidential Memo to all APFA National Officers, Julie Hedrick, Erik Harris, Larry Salas, and Josh Black ("National Officers") on October 22, 2020.  The current APFA Administration withheld documents prior to and during the APFA Article VII Arbitration that would have exonerated Ross.

24.     More specifically, Diversified Credit Systems included in its original petition a letter from Wood, Stephens & O'Neil, L.L.P., an accounting firm for Defendants that accompanied the graphs cited as evidence of Ross's debt ("Confidential Memo"). This letter describes that APFA

retained Woods, Stephens & O'Neil, L.L.P. to conduct an informal review of Bob Ross's confidential Transition Agreement attached hereto and marked as Appendix 000071 - 072. (*See* Confidential Memo).  The Confidential Memo from the APFA Accounting Firm outlines the following pertinent facts:

     i. That APFA officers, the APFA staff attorney, and APFA's outside counsel requested an informal review of Bob Ross's confidential Transition Agreement.

     ii. That these officers and attorneys requested the preparation of an overpayment schedule of accrued and unused Sick and Vacation-Day payments made to Bob Ross in 2018—similar to the overpayment schedules previously prepared for three other officers.  These overpayment schedules used the APFA Policy to calculate the per diem rate of pay for each officer and capped payout for Vacation and Sick Days according to APFA Policy.

     iii. The *most* important aspect of the letter states "**Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick and accrued and unused vacation time.  This agreement doesn't [sic] specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement**."

     iv. Ross was granted moving expenses up to $10,000 for which he did not use all of these funds." (*See* Confidential Memo, Appendix 000071 - 072)

25.     This Confidential Memo directly contradicts the facts laid out by Harris in the Overpayment-of-Wages Letter to Ross—**the accounting firm did not determine that the formula used to pay Ross's sick and vacation days was incorrect**.  In fact, the Confidential Memo confirms that Ross was paid *correctly* under the Transition Agreement since he was to be paid outside of APFA policy. This Confidential Memo names those that made the request and those that received notice of this letter: the APFA officers, and in-house and outside counsel. (*See* Confidential Memo, Appendix 000071 - 072).

26.     Furthermore, Diversified sent Ross a verification-of-debt letter that included the Overpayment-of-Wages Letter ("VOD letter").     The Confidential Memo directly contradicts the

language of the VOD letter and was in their possession at all times.  *See* Overpayment-of-Wages Letter, Appendix 000069 - 070)

27.     Requesting an accounting firm create Schedules that misrepresent the characterization of payments made to Ross to acquire seemingly valid documents that the union officers could otherwise use to implicate Ross in over-payments to himself upon leaving office.  The concealment of the Confidential Memo from the APFA Board of Directors ("APFA BOD") and the APFA Executive Committee ("APFA EC) upon review or determination that a debt is owed is an intentional act against the interest of Plaintiff, Ross.  APFA National Officers and their attorneys concealed this letter and used only the Schedules, cited the accounting firm's "review" as though it were an audit. These officers misrepresented that the accounting firm found that Ross was overpaid.  As a direct result of these misrepresentations the APFA National Officers acted in breach of their fiduciary duty, disparaged, harassed, and charged Ross under the APFA Article VII Constitution to pursue unfounded damages.  The APFA National Officers submitted the Schedules to the APFA BOD, and the APFA EC to mar his reputation with APFA membership.  The APFA General Counsel, Margot Nikitas, (copied on both of these letters) was present at the December 1, 2020 EC meeting where Ross's Article VII charges were reviewed, as well as every day of Ross's Arbitration proceedings—yet she never raised the accounting firm's true findings to the Arbitrator, the APFA BOD, or the APFA EC.

28.     The Overpayment-of-Wages Letter further misrepresented that the APFA BOD found that Ross was overpaid by $5,436.47 in 2018—a fact later relied on by the Arbitrator to rule against Ross and fine him $52,340.79. (*See* Martin Aff., Appendix 000073 - 081).  Attached hereto and incorporated herein is the affidavit of Nena Martin marked as Appendix 000073 - 081.  Nena Martin ("Martin"), an APFA Board member during 2011 and 2021, was present at both the APFA BOD meeting on October 27 and 28 of 2020, which addressed many of the issues related to Ross's charges,

10

and present at the APFA EC meeting on December 1, 2020.  (*See* Martin Aff. Appendix 000073 - 081).  Martin attests that she never participated in or knew of any finding from the BOD that Ross owed the $5,436.47 debt or that his per diem rate was miscalculated based on these Schedules.  (*See* Martin Aff., Appendix 000073 - 081).  Moreover, the APFA BOD showed no formal finding was ever recorded in any meeting minutes, resolutions, or actions by the AFPA BOD during the Fall of 2020.   The APFA BOD never discussed this account, reviewed this Confidential Memo from the accounting firm, nor did the APFA BOD ever find that Ross was overpaid.  No formal vote was ever held, and no formal action by the APFA BOD was ever taken as far as the record shows.

29.     Nena Martin also attended the EC meeting on December 1, 2020 where Ross's Article VII charges were found timely, valid, and specific.  Martin attests that neither the Confidential Memo nor its contents were ever presented or disclosed to the EC prior to voting.  (*See* Martin Aff., Appendix 000073 - 081.  Martin only attests that the BOD and the EC were presented with spreadsheets, similar to those attached to the Overpayment-of-Wages Letter and told that an accounting firm prepared them as a result of a formal review and found Ross had been overpaid. (*See* Martin Aff., Appendix 000073 - 081).  It can only be presumed that the APFA Officers and their counsel deliberately withheld the information and misrepresented the facts to ensure that Ross and his supporters were removed from the APFA leadership positions.

**E.  APFA BOD and the APFA EC held that the charges brought against Ross were valid and referred the case to APFA's internal Arbitration Proceedings per the APFA's Constitution.**

30.     Once an Article VII charge is filed by a member, at the first regularly scheduled meeting of the APFA Executive Committee ("APFA EC"), the EC reviews the charges for its timeliness, specificity, and validity.  If the charges are found to be timely, valid, and specific, the charged party is then served notice and the matter proceeds to arbitration. The charged party escapes

a judgment by either winning at arbitration or if the charged member retires or resigns from American Airlines while the charges are pending, then the charges are dismissed. It is clear to see how abuse of APFA's Constitutional Article VII Disciplinary Procedures could thwart the democratic process. Members launch APFA's Constitutional Article VII Disciplinary Procedures to institute a culture of silence and obedience and eliminate vocal minority political factions.

31.     Unbeknownst to Plaintiff, Chinery-Burns and Lee filed Article VII charges against Ross on November 18, 2020 for violations of misuse of his credit card, and overpayment under the Transition Agreement among other complaints.  These charges were based, in part, on payments made under the Transition Agreement.  The APFA EC held a meeting on December 1, 2020 and voted that the charges were valid and timely before Ross ever received notice of the Article VII charges. Arbitration Proceedings were initiated per Article VII without Ross ever receiving proper notice, an opportunity to review any evidence, or an opportunity to be heard by the APFA BOD or the APFA EC.  Ross was left with only one of two choices: he could resign from AA under a cloud of suspicion or proceed to arbitration in the hope he would win and restore his reputation—he chose the latter out of fear that he would not be rehired elsewhere under suspicion of impropriety.

32.     Discipline procedures conducted by the APFA, from start to finish, were fraught with due process violations that ran the spectrum—from lack of proper notice that charges were filed to unequal time for presentation of arguments to the exclusion of relevant and exculpatory evidence. This arbitrator lacked authority to hear these charges.  These charges were brought well beyond the 60-day limitations period required by the APFA Constitution. Ross also served subpoenas on the APFA President, Julie Hendrick and the National Secretary, Josh Black—both refused to appear, testify, or produce any documents.  Ross requested all documentation related to this alleged overpayment-of-wages debt be produced including all financial documentation related to the Ross

Account in Collections with Diversified Credit.  Lee, Chinery-Burns, and Harris served a large amount of documentation to Ross the day of trial in a disorganized mess, and yet no sanctions or exclusion of those documents were ordered by the Arbitrator, as would be standard in any other official judicial proceeding.  Most notably, Harris, the APFA National Treasurer, failed to produce any documents related to the debt demanded in the Overpayment-of-Wages Letter or any documentation from the accounting firm cited in this letter.

33.     The Arbitrator disallowed Ross from questioning Harris about his Transition Agreement and payments made thereunder.  Many of the charges brought against Ross pertained to expenses charged to the union for a rental vehicle, meals and expenses related to union business, furniture he purchased for an APFA apartment he used while splitting his time between Dallas-Fort Worth and California. Yet the arbitrator failed to consider the evidence showing Ross reimbursed APFA for this furniture.  Speculation persisted about credit card receipts, and consideration of the union's procedures for approval and coverage of these expenses were not addressed.  Toilet paper and Starbucks coffee were the types of charges brought into question three to five years after the charges were incurred, authorized and approved.  APFA Constitutional limits to bring charges are 60-day from the time "after the accuser becomes aware, or reasonably should have become aware, of the alleged offense." The procedure during 2016-2018 was to submit expenses to the APFA Treasurer who reviewed and approved expenses as valid.  Attached hereto and incorporated herein is the affidavit of Eugenio Vargas—the National Treasurer under the Ross Administration—marked as Appendix 000082 - 084. ("1st Vargas Aff").  The National Treasurer during Ross's administration was Eugenio Vargas, reviewed and approved all of Ross's charges and expenses during his term and never knew Ross to conduct any illegal or illicit charges to the union. (*See* 1st Vargas Aff. Appendix 000082 - 084).

34.     The Arbitrator prevented Ross from admitting any evidence relating to Vargas's review and verification of his charges, payments and expenses that were paid per procedure. Ross was also not allowed to question Harris over the calculations for his payout nor the review by the accounting firm, nor discuss the assignment of the Transition Agreement to Diversified. Thus, Ross could not argue APFA's lack of standing to collect an account assigned to a third party since the Arbitrator took over questioning the witness.  The Arbitrator even allowed Harris to testify as an accountant.  Harris did nothing to correct the record and clarify that he does not, in fact, hold any certification as a public accountant.  Chinery-Burns was given more than eight hours over two days to present her case to the Arbitrator; Ross had less than three hours to present his defense and witnesses—most ignored his subpoenas, and yet the Arbitrator made no effort to enforce these subpoenas or even require attendance during an arbitration hearing where Ross's reputation, career, and property interests were at stake.

35.     An arbitration award was issued on March 19, 2022, a true and correct copy of the final Arbitration Award is attached hereto and incorporated herein and marked as Appendix 000085 - 108 ("Ross Arbitration Award"). The Arbitrator relied on evidence presented by Chinery-Burns and Lee that Ross was guilty of the APFA Constitution, breach of fiduciary duty, misappropriation of funds, and fraud citing the same misrepresentations reflected in Harris's Overpayment-of-Wages Letter:

> "With respect to sick and vacation payout**, the APFA Board of Directors has determined that Defendant Ross was overpaid in the amount of $5,436.47 in 2018 [and]. . . . [t]he Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect.** . . .[i]t is therefore arbitrator's Opinion, Defendant Ross has failed and abused his Fiduciary Duty. The non-payment of these monies reveals Defendant Ross is not accepting this responsibility" (*See* Ross Arbitration Award, March 19, 2022, Appendix 000106 - 108).

These are misrepresentations, and yet because Harris testified to them as fact , the Arbitrator found it truthful without giving Ross the opportunity to introduce evidence to the contrary.

**F. APFA's internal Disciplinary Arbitration resulted in a windfall award against Ross that held Ross liable for all charges Chinery-Burns brought against him, and Ross is now charged with over $52,340.79 in charges and fees by APFA for the cost of an unfair arbitration.**

36.     Upon discovering the Confidential Memo, Ross's union representative appealed to the Arbitrator to reopen the arbitration and submit this evidence.  The Arbitrator denied this request—despite the document's exculpatory nature, Harris' concealment of it from the APFA BOD and EC—who voted and deemed the Article VII charges valid—and APFA's lack of disclosure of this document and others during the Arbitration. The Arbitrator did not find the evidence pertinent to any of the charges brought against Ross, then proceeded to find him guilty of the APFA Constitution and Policy and rendered an arbitration award in favor of Chinery-Burns and Lee for at least $52,340.79.

37.     When the arbitrator rendered the award, the result was a windfall against Ross, for which an entire day passed before he was ever served with the verdict. The arbitrator ignored any evidence that Ross previously paid for the furniture charged on the company card.  The arbitrator further ignored any evidence that all charges were filed outside of the 60-day window required by Art. 7, Sec. 2(D)(1) of the APFA Constitution.  This would mean that the charges were not timely filed with the union, and thus Chinery-Burns and Lee were prohibited from filing their charges before ever being heard by the Executive Committee.

## VI.

## CLAIM:  LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT VIOLATIONS

38.     Plaintiff incorporates all preceding paragraphs above.

39.   Plaintiff is a member in good standing of APFA.

40.   APFA is a labor organization as defined under 29 U.S.C. § 402

41.   The organization "fined, suspended and otherwise disciplined" Plaintiff through his Article VII Arbitration Award in violation of 29 U.S.C. § 529.

42.   Defendants wrongfully otherwise disciplined Plaintiff for exercising his political stance, free speech and free association rights against any AFA/APFA merger in violation of  29 U.S.C. §411(a)(2).

43.   Under 29 U.S.C. §411 states that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."  This act provides that no member of any labor organization may be fined in any way except for nonpayment of dues, unless notice, an opportunity to prepare a defense and a full and fair hearing is given to the person (29 U.S.C. §411 (a)(5)).

44.   Defendant, APFA, claimed that the APFA BOD found that Plaintiff, Ross, owed $5,436.37, in the Overpayment-of-Wages Letter, which is a violation of this section of the LMRDA §411(a)(5), as Plaintiff never received proper notice, due process or a full and fair hearing before being assessed with a fine or fee.

45.   The Plaintiff was disciplined through fines, removal from his position on the Board of Director, and barred from ever holding office with APFA again.

**VII.**

**CLAIM: BREACH OF UNION CONSITUTION**

16

46.     Plaintiff incorporates all preceding paragraphs above.

47.     Based on the Court's Order issued on February 22, 2023, Docket No. 72 holding that the APFA Constitution is a Collective Bargaining Agreement between the National Union and the local bases, Plaintiff hereby updates his causes of action to properly assert a breach of duty of fair representation claim under 29 U.S.C. § 185. In addition to the statutory duty, APFA is required to represent members of the union fairly and honestly in relation to a collective bargaining agreement.  Plaintiff has exhausted all remedies available under the APFA Constitution.

48.     Defendants had a duty to effectuate the disciplinary proceedings in a fair and honest manner—to give the Plaintiff proper notice, and a fair hearing.  The APFA Const. Art. II §3 (C)-(D) provides that all members shall have the right to individual privacy, due process, and equal representation.  APFA has a duty to safeguard private personally identifiable information like employee numbers and social security numbers, work schedules, member's primary residence, bank account and routing information, etc. APFA failed to safeguard this information properly by divulging it to third parties upon request.

49.     The APFA Constitution Art. VII, Sec. 2 provides that charges must be brought within 60 days after a member knows or should have known of the charges that are filed.  APFA denied Ross his due process rights by allowing his charges to move forward and finding them timely filed despite evidence and testimony in the opening statement that these two members began investigations into Ross in 2019, well over 12 months prior to filing Article VII charges against him.

50.     Defendants, APFA, and the APFA National Officers violated Plaintiff, Ross's, rights to privacy by publicizing his private information to third parties, allowing

these members to disparage him regarding debts that he allegedly owed to the union and its members.  Harris, the APFA National Treasurer, emailed APFA leadership, directors, and committee members about Plaintiff's debt.  These emails harassed him publicly over a debt in dispute.  Further, social media posts to APFA membership were posted by various members as well as a hotline announcement that marred Plaintiff after the announcement of the arbitration award.

51.    Defendants violated Plaintiff's due process by concealing the Confidential Memo which exonerated Ross from the charges against him.  The National Officers had a duty to disclose this information to Plaintiff and to the charging parties and failed to do so.

52.    Defendants violated this duty by failing to ensure a fair disciplinary hearing with a minimal level of due process and disclosing private information about Plaintiff to third parties.  Defendants violated this duty by failing to testify after being subpoenaed and failing to produce all documentation in its possession.

53.    Defendants violated Plaintiff's due process rights intentionally by concealing evidence from the accounting firm and its formal opinion that Ross did not owe the debt under his Transition Agreement.  APFA further breached its duty of fair representation by misrepresenting the facts to Plaintiff and the union BOD and EC to charge and collect monies and disparage Plaintiff.

54.    The failure of Defendants to properly prosecute the Arbitration proceedings denied Plaintiff a full and fair hearing and violated the APFA Constitution and breached their duty of fair representation.

55.    Defendants publicized his private confidential information and publicized the arbitration award against him for the purpose of marring his reputation and shaming him publicly with the membership.

56.    Defendants conduct was arbitrary, discriminatory, and/or in bad faith.

57.    Plaintiff was therefore fined, removed from office, and barred from holding union leadership positions ever again.

58.    Defendants violated Plaintiff's privacy by disclosing Plaintiff's private confidential information to members.

59.    Defendants conduct intentional.

60.    As a consequence, Plaintiff has suffered damages due to their intentional and bad faith conduct.

## VIII.

## CLAIM:  BREACH OF CONTRACT/EMPLOYMENT CONTRACT

61.    Plaintiff incorporates all preceding paragraphs above.

62.    Plaintiff, Ross, provided valuable services to Defendant, APFA, by working as a National President for Defendant.  A Transition Agreement was drafted by APFA counsel and signed by all APFA BOD as well as Defendant, Ross on March 1, 2018 signed a valid and binding contract ("Transition Agreement").

63.    Plaintiff provided these services as a National President for Defendant, and left office upon signing the Transition Agreement, which was a valid and binding contract.

64.    Defendant accepted these services.

19

65.     Defendant failed to maintain its obligations of confidentiality under the Transition Agreement when it revealed the terms of the Transition Agreement to Chinery-Burns and Lee, as well as others in the APFA membership.

66.     Defendant failed to maintain its obligation of non-disparagement under the Transition Agreement when it allowed Hedrick, Harris, and Chinery-Burns to continually publish false and disparaging comments about Plaintiff, causing reputational and emotional damages to him and his family.

67.     Defendant failed to pay the full amount due and owing under the Transition Agreement as the calculations per the Confidential Memo provided to the APFA BOD clearly exhibits that APFA failed to pay him for all of his unused sick and vacation days.  Furthermore, the opinion of APFA's accountant is that the calculation of the per diem rate and payments were accurate.

68.     Defendant failed to pay Plaintiff for all his unused Sick Days under the Transition Agreement, at the per diem rate including MEA/SAF stipends as intended in the Transition Agreement, the costs and expenses he incurred for arbitration proceedings, his reimbursable expenses APFA failed to pay him the full amount to which he is entitled.

69.     Plaintiff has suffered substantial damages including being fined, removed from office, and barred from holding union leadership positions ever again.

70.     Defendant suffered actual damages, consequential damages, costs of court and attorney's fees due to the breach of his Transition Agreement.

## IX.

## CLAIM:  DEFAMATION AND BREACH OF FIDUCIARY DUTY

71.     Plaintiff incorporates all preceding paragraphs above.

72.     Defendants, APFA, and the National Officers owed Ross a fiduciary duty as a member in good standing within the union based on federal law, state law, and under the APFA Constitution.

73.     The National Officers, in-house and outside counsel, as well as the accounting firm conspired to create false documentation representing that Plaintiff owed a debt that he did not owe.  This spreadsheet was fabricated to justify initiating charges and disciplinary proceedings against Plaintiff unjustly.  Defendants deliberately failed to disclose documentation, and misrepresented the facts to Plaintiff, to the APFA BOD, and the APFA EC.  Defendants knew that it was a misrepresentation and that their statements were false as they had received notice that the APFA accounting firm stated Ross did not owe this amount.  Furthermore, the Confidential Memo states that an "accounting review" is different than an "accounting audit" as it is not the accountant's formal opinion. Defendants owe a fiduciary duty and clearly breached it through conduct made in bad faith.

74.     Defendants further conspired to collect the debt simultaneously with Diversified Credit.  Diversified asserts that it is the assignee of all debt owed under the Transition Agreement, however APFA continued to collect the debt at the same time as the original creditor.  This is a breach of fiduciary duty by the union as the union had no legal claim or right to collect a debt where all legal rights, title, and interest therein have been legally assigned to a third party.

21

75.     The APFA and the National Officers owe a fiduciary duty to Ross, as a member in good standing.  This duty was breached when the APFA National Officers began simultaneously collecting debt without any legal claim to collect that debt.  The National Officers also breached their fiduciary duty to Plaintiff when they conspired and pursued a union disciplinary arbitration to collect debt they had notice that Plaintiff did not owe. The National Officers also breached their fiduciary duty in concealing documents in their possession from APFA leadership, APFA Arbitrator, from the Plaintiff, and from APFA membership that showed Plaintiff did not owe the debts pursued in the disciplinary arbitration.

76.     Defendants acted with the intent to injure and defame Plaintiff, injure his reputation, and remove him from his position within APFA leadership. The APFA National Officers had a duty to prevent credit reporting of an invalid debt and the consequences of a denial of Ross's mortgage loan were foreseeable as they were told he was applying for a mortgage loan at the time.  The conduct of the National Officers was unconscionable.

77.     In so acting, APFA and the APFA National Officers have breached their fiduciary duty to Ross, a member of APFA in good standing and caused substantial damages.

78.     The Transition Agreement is a valid contract, and Defendants knew it existed.

79.     Defendants intentionally exposed Plaintiff's Transition Agreement with the APFA membership without Plaintiff's prior written authorization or approval.

80.     Consequently, Defendants caused substantial damages to Plaintiff including fines, actual damages, and consequential damages including costs of court and attorneys fees.

81. Defendants did, in fact, defame, intentionally interfered with a contract, and breached their fiduciary duty to Ross as a member in good standing by causing damages, injuring his reputation, and charging him.

82. Plaintiff has suffered substantial damages including being fined, removed from office, and barred from holding union leadership positions ever again.

83. Defendants conduct was intentional and made in bad faith.

## X.

### CLAIM: FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

84. Plaintiff incorporates all preceding paragraphs above.

85. Defendants, APFA and Diversified, are "debt collectors" as that term is defined in 15 U.S.C. § 1 692a(6) and violated the FDCPA by filing suit to collect on a consumer debt in a distant forum in violation of 15 U.S.C. § 1692i(a)(2).

86. Defendants, APFA and Diversified, violated 15 U.S.C. §§1692 d, e, and f of the Fair Debt Collection Practices Act ("FDCPA"), including misrepresentations on the amount, the nature, and harassing and/or disparaging comments to the debtor for the purposes of abuse.   Both violated 1692(e)(2)(a) and §1692 (e)(10).

87. Defendants, Diversified, was never the assignee of any alleged debt, rather was acting in its capacity as an account servicer on behalf of APFA—directly contradictory to the original petition filed in Texas Justice Court against Plaintiff. APFA never signed an assignment of the Transition Agreement.  This is in direct contradiction to Diversified's assertions in its Petition filed in Tarrant County Justice Court Three which states clearly that Diversified is assignee of the contract under which Ross alleged was overpaid—filed and collected by Diversified's

attorney.   Furthermore, APFA and Diversified misrepresented the debt was accurate and failed to properly investigate the claim prior to collecting on the debt, credit reporting or to resolve the dispute Ross made on the debt, as Diversified had possession of the Confidential Memo letter that absolved him of the debt it collected.  This is proven by the fact that this letter was attached to its petition filed in Tarrant County Justice Court Three.

88.   As a result of this violation of the FDCPA, Defendants are liable to the Plaintiff for actual damages, statutory damages, and costs and attorney's fees. Damages resulted from this misrepresentation, abuse, unauthorized negative credit reporting and deceptive collection activity prevented Ross from refinancing his home and applying for loans for his children's college education.  Consequently, he suffered extensive damages including the additional interest for the loans on his children's college, the denial of his home loan, a value is over $500,000, and taking his children out of their college education do to the inability to finance their education. His family suffered extensively from these violations, damaged Ross's career and future ability to earn income, but this hardship has now impacted his children's future.

### CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff hereby prays as follows:

      i.   For injunctive relief for unlawful collection activity, credit reporting, collection of the union disciplinary award, unlawful labor practices, fraud, injunction on ban from running for office in violation of the federal law, right to privacy and non-disparagement of Plaintiff.

ii.   That Plaintiff recover a judgment against Defendants, jointly and severally, for monetary damages for $1,800,000 for violations.

iii.   That Plaintiff recover a judgment against Defendants jointly and severally, for statutory damages, actual damages, punitive damages, cost of court and attorney's fees; and

iv.   Such other and further relief, at law or in equity, to which Defendant may be justly entitled to receive.

Respectfully submitted,
K.D. PHILLIPS LAW FIRM, PLLC

By:  /s/ Kerri Phillips
     Kerri Phillips
     Texas Bar No. 24065906
     Email: kerri@KDphillipslaw.com
     6010 W. Spring Creek Parkway
     Plano, Texas 75024
     Phone: (972) 327-5800
     Fax: (940) 400-0089
     For Service of Filings:
     notice@KDphillipslaw.com
     **ATTORNEY FOR PLAINTIFF**