IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| ROBERT "BOB" ROSS<br>**Plaintiff/Counterclaim Defendant** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | **Case No. 4:22-CV-00343-Y** |
| | § | |
| | § | |
| **ASSOCIATION OF** | § | |
| **PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS, MCGAUGHEY,** | § | |
| **REBER AND ASSOCIATES, INC.,** | § | |
| **JULIE HEDRICK, ERIK HARRIS** | § | |
| | § | |
| **Defendants/Counterclaim Plaintiff.** | § | |
| | § | |

---

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO SECOND MOTION TO DISMISS COUNTERCLAIMS

---

## I.    INTRODUCTION

COMES NOW Plaintiff/Counterclaim Defendant, ROBERT "BOB" ROSS ("Ross" or "Plaintiff"), and files his Reply to Response to Plaintiff's Second Motion to Dismiss Defendant's, ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS' (hereinafter "APFA" "the union" or "Defendant") Counterclaims for relief for lack of subject matter jurisdiction, and failure to state a claim for which relief can be granted, under 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and in accordance with Local Rules 7.1, 7.2 and 53.1.[1]

---

[1] Plaintiff requests dismissal of all counterclaims asserted by his union, APFA, in its Answer and Counterclaims (Docket 79).

## II.    STATEMENT OF THE CASE

Plaintiff filed his Second Motion to Dismiss Defendant's counterclaims on August 29, 2023.  (Docket 110).  Defendant responded by filing a Motion for Leave to Amend its Complaint on August 30, 2023.  (Docket 111).  Plaintiff filed his Response to Defendant's Motion for Leave to Amend on September 13, 2023.  (Docket 117).  Defendant then filed both a Response to the Plaintiff's Second Motion to Dismiss September 19, 2023  (Docket 119), and a Brief to accompany its original Motion for Leave to Amend on September 27, 2023.  (Docket 123) more than four weeks after filing its original Motion for Leave to Amend (Docket 111).

**Defendant's delayed filing of its Brief in Support of its Motion for Leave to Amend is a veiled attempt to file a Reply that asserts multiple arguments Defendant failed to include in its original Motion.  (Docket 123).  Moreover, it violates Local Rule 7.1(d) and 7.1(h) which requires a motion for leave to be accompanied in its filing with a brief of the law.  Defendant's Brief is actually a Reply Brief to Plaintiff's Response and thus cannot assert new arguments not originally contended in its motion.  All arguments not contained in the original motion should be stricken from the record.  Defendant failed to adequately address the futility of its amendment in its Motion for Leave to file an Amended Answer and Counterclaim and had notice of this argument as Plaintiff included it in his Second Motion to Dismiss.**

Whereas now, Plaintiff files his Reply to his Second Motion to Dismiss.  In essence, this court should strike Defendant's Brief in support of his Motion for Leave to Amend as untimely, and Plaintiff's claims should be dismissed.  Instead, Defendant amended its counterclaims to use the union's disciplinary hearing as the grounds for its breaching conduct and the costs of it as the basis of its damages.

### III.   ARGUMENTS

Defendant, APFA, is a labor organization representing American Airlines Flight Attendants.  APFA seeks damages alleging violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501, et seq. ("LMRDA"), breach of fiduciary duty, and seeking enforcement of the APFA Constitution under 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) by enforcing the Disciplinary Award.  Ross is a member in good standing and former National President of APFA from April 1, 2016 to March 1, 2018.

### A.  Unsupported Factual Contentions

First and foremost, Defendant asserted numerous factual contentions without any *evidentiary* support:

1.      The alleged overpayment of wages of $5,436.47 under the Transition Agreement;
2.      A family vacation;
3.      Personal travel expenses to and from his second family home;
4.      Furniture for his personal residence;
5.      Rental cars for his own personal use;
6.      Personal meals and expenses; and
7.      Apartment leased while he did not reside in it.[2]

Absolutely none of these charges have been, nor can be, substantiated with any admissible evidence. Consequently, Defendant relies exclusively on the union's internal disciplinary Arbitration Award to establish its facts as well as damages—despite the 5th Circuit ruling that enforcement of an Arbitration Award based solely on violations of the union constitution and by-laws lacks federal jurisdiction.  This arbitration was a disciplinary hearing conducted by the union,

---

[2]Every single factual assertion here is unsupported by evidence and improperly described—for example the LM-2 for 2018 list that Ross's furniture was repaid to the union in question 13 in Section 69; also despite APFA's claim there was no vacation to the Grand Canyon—Ross rented an apartment when he took office in April of 2016 and then moved his wife and two school-aged children during the summer to Texas with prior approval by the APFA Board of Directors.

not an actual tribunal, and the arbitrator was grossly ineffective at administering the law in any impartial way.  In a trial court setting, Defendant cannot submit evidence of these factual contentions as the union's National Treasurer, Erik Harris, testified in the arbitration that its records were not accurately and routinely maintained. Meanwhile, Defendant continues to take issue with *Plaintiff's unsupported evidence while ignoring the glaring lack of any evidentiary testimony or affidavits to support its own factual contentions.*  Defendant has no valid admissible evidence to substantiate these facts and Plaintiff asks the court to strike them from the record.[3]

However, the Court should note *those facts not in dispute*.  Plaintiff complied with APFA procedures at the time and all expenses incurred were approved following standard APFA procedure.  Vargas changed the formula for calculating pay upon leaving office for the Ross Administration, however APFA admits that Vargas, Martin and Dunaway voluntarily paid back the overage in 2019 upon learning of the miscalculation. Ross did not repay the overage amount because he was paid via the Ross Transition Agreement.[4]  In addition to these agreed upon facts, Defendant is unable to substantiate that a duty existed, that Plaintiff breached that duty, and that breach caused damages to the union.

### B.  **Duty**

A duty must exist at the time of the breaching conduct. The terms of the Transition Agreement were negotiated and memorialized by the APFA Board of Directors in exchange for

---

[3] The Court should note, Defendant asserts Plaintiff alleged facts based on the LM-2 that were submitted unsupported on record, however Defendant asserts these facts without any evidentiary support and recklessly mischaracterizes these facts.

[4] *See Confidential Memo Doc. 1-2 PAGEID 33—*"Please note that Bob Ross Confidential Transition Agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines.  Consequently, these payments appear appropriate and in compliance with the transition agreement."

Ross's resignation on March 1, 2018. After that time, Ross no longer held a fiduciary duty. Payments made under the Transition Agreement were not calculated by Ross, in fact he had no input on those payments or their calculations after the Transition Agreement was signed. These payments made under the Transition Agreement occurred after Ross left office—when Ross no longer held a fiduciary duty to breach. Vargas, the National Treasurer, calculated the payments based on the Gladings Transition Agreement. Vargas did not have the opportunity to review and read the entire Transition Agreement, only those sections regarding payment. The calculation and payments made to Ross while Vargas was in office was a business decision slated as one of Vargas's primary responsibilities under the APFA Constitution Art. III, Sec. 6 (e). Vargas consulted with APFA's in-house accountants and counsel to determine this calculation. Ross had no input as to the method, when, or how much he was paid to him under the Transition Agreement.

### C. **Breach of Fiduciary Duty**

APFA continues to rely on its disciplinary arbitration to substantiate the facts and the damages of Plaintiff's alleged breach of fiduciary duty. Those facts that APFA does not dispute include:

- APFA admits that it withheld documents from this Arbitration pertinent to Plaintiff's defense.
- APFA admits that Plaintiff complied with all procedures in effect at the time regarding all other charges.
- APFA admits that Plaintiff's charges were approved at the time they were incurred, submitted and reviewed through APFA standard procedures.
- APFA admits that Plaintiff was paid under the Transition Agreement *after* he left office.
- APFA admits that the alleged overpayments made to Eugenio Vargas, Nena Martin,

and Marcy Dunaway were voluntarily paid back in 2019.[5]

- APFA admits that Ross's payment upon leaving office were based on the Transition Agreement—which was negotiated and signed by the Board of Directors at the time.
- APFA admits that Ross was paid similar to Laura Gladings, APFA National President from 2008-2015.

APFA asserts a breach of fiduciary duty claim against Plaintiff under LMRDA § 501(a) for "paying and accepting payment of monies from APFA as National President which the Arbitrator has found in his Decision and Order issued pursuant to Article VII  of the APFA Constitution were overpayments and/or wrongful payments of APFA funds to Ross in violation of the APFA Constitution and Policy Manual, and refusing to repay those wrongfully paid funds to APFA, Ross breached his fiduciary duty owed to APFA under Section 501(a) of LMRDA, 29 U.S.C. § 501(a)." *(See* Def. 2d Am. Answer and Counterclaims Doc. 79, PAGEID 1805).

Controlling case law requires something more than an action involving business decisions, budgeting, or general administration by the union officers to substantiate that a breach occurred under 29 U.S.C. §501.  The 5th Circuit held that:

> **Section 501(a). . . does not permit these derivative actions for dereliction of employment duties.** Disputes over whether elected union officials are adequately performing their employment obligations are matters usually to be worked out within the union and its governing structure and not in the federal courts. (*Hoffman v. Kramer*, 362 F. 3d 308, 322 (5th Cir. 2004).

This approach is one taken by multiple courts to avoid abuse of 29 U.S.C. 501 for political purposes.  *See Noble v. Sombrotto,* 525 F. 3d 1230 (D.C. Cir. 2008) (holding that "when union officers authorize the disbursement of funds or make the payment of funds in accordance with the

---

[5] APFA fails to detail, however, that Martin, Vargas, and Dunaway have stood by Ross in his contention that he is not required to repay any overpayment because he was not paid per APFA policy, rather he was paid per the Transition Agreement signed by the APFA Board of Directors.

union's constitution—or pursuant to an interpretation of the constitution that is not unreasonable or in bad faith—then the Court should find that the officers did not violate Section 501 (a), without any further inquiry."); *See also; Tarantino v. Ford; Case No. 07-20397 (S.D. FL May 31, 2011) (holding that* "where decisions regarding the use of union funds have been authorized in accordance with the union's constitution, by-laws, or other applicable governing provisions, a court will typically not have cause to review the reasonableness of the decision.").[6]

The conduct asserted against the Ross Administration includes (1) the business expenses alleged to be outside those permitted under APFA's Policy, and (2) alleged overpayments made under the Ross Transition Agreement—a direct contract made outside of APFA Constitution and Policy.  (*See* Def. 2d Am. Answer and Counterclaims Doc. 79, PAGEID 1809-1810).   The former were all reviewed and approved according to APFA procedures, and the latter was approved by the Board of Directors as evidenced by their signatures on the Ross Transition Agreement, the Confidential Memorandum, and paid outside of APFA Constitution and Policy as seen in the language of the Transition Agreement. (*See* Confidential Memo Doc. 1-2, PAGEID 33).[7]

### D. Damages

---

[6] **Defendant's response argues for differentiating the analysis of § 501(b) vs. a § 501(a) claims   Plaintiff cautions the court to review the relevant caselaw—particularly *Hoffman v. Kramer* and *Ray v. Young*--as both cases analyze a § 501(b) claim brought by an individual members against union leadership, however, the 5th Circuit's analysis discusses the cause of action in light of the § 501(a) breach of fiduciary duty claim—similar to one brought by a union against its leadership.  This indicates there is no split in the approach to analysis of § 501(b) vs. § 501(a) rather the courts just read an implied cause of action into 501(b) under 501(a) and enforces pre-requisites for a claim brought under § 501(b) that are not required under § 501(a).**

[7] "Please note that Bob Ross Confidential Transition Agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time.  This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines.  Consequently, these payments appear appropriate and in compliance with the transition agreement."

Despite APFA's objections, a 12(b)(6) evaluation allows for consideration of evidence on public record. *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, Civil Action No. 3:15-CV-02096-M (N.D. Tex. Jun. 28, 2016) (citing *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007)).  Considering the evidence on public record with the United States, Department of Labor, Defendant is unable to substantiate damages proximately caused by the alleged breach of fiduciary duty.  The union has not experienced any loss of assets either through theft, or misappropriation of funds that were reported on its LM-2 filings. The United States Department of Labor requires the LM-2 Financial Reports indicate any loss of union assets or funds each year—the U.S. Department of Labor instructions require a description of the property or assets that were lost, the value, and whether restitution has been made via a surety bond or otherwise.  The LM-2 Financial Report is required under 29 U.S.C. § 431 and are signed under penalty of perjury by the National Officers of APFA. Any malfeasance, theft, or misappropriation of funds or assets on behalf of the union must be reported to the U.S. Department of Labor.[8]  Therefore, if the Ross Administration had, in fact, misappropriated funds, APFA would be legally required to report this loss to the U.S. Department of Labor by reporting it via the LM-

---

[8] The LM-2 Filings require reporting whether an annual audit has been conducted under **Question 12.**  Under **Section 69,** on the last page of each LM-2 form, APFA cites that the accounting firm that conducted the audit was Woods, Stephens, and O'Neil.
2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 – https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=709508&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form

2.[9]  (*See* 29 U.S.C. § 440). The LM-2 Filings show under <u>Question 13</u> that the union did not discover any shortage or loss suffered by the union since 2018.  No loss of funds from misappropriation, theft, or any wrongful conduct was reported to the U.S. Department of Labor, nor was any claim made and personal  separate insurance policy overing Plaintiff's wrongful acts (29 U.S.C. § 502 of LMRDA requires anyone with signing authority for the union or in control of union assets to maintain a separate insurance policy for any officer that is sued for wrongful acts, to protect the union assets from any damages resulting from officer's wrongful acts or conduct).

The APFA National Treasurer signed the LM-2 stating that the union suffered no loss within the last four years.  Furthermore, the only loss reported to the United States Department of Labor includes fraud on an officer's credit card in 2016, and loss of furniture that was reimbursed in 2018.[10]  Arguably, this furniture loss could have been Plaintiff's misconduct—except the LM-2 shows that the furniture was repaid.[11]  Consequently, all other LM-2s on public record indicate the union suffered no loss of its funds—let alone indicate discovery of any alleged breach of

---

[9] The instructions to completing the LM-2 filing state "Under the CSRA and FSA and implementing regulations, false reporting and failure to report may result in administrative enforcement action and litigation. The officers responsible for signing Form LM-2 are also subject to criminal penalties for false reporting and perjury under Sections 1001 of Title 18 and 1746 of Title 28 of the United States Code."
https://www.dol.gov/sites/dolgov/files/olms/regs/compliance/GPEA_Forms/2020/efile/LM-2_instructionsRevised2020.pdf
[10] The LM-2 Filings require reporting any misappropriation, shortage, or theft of funds discovered within that year to the U.S. Department of Labor. See Question 13 on page 1 of the following LM-2 Filings by APFA.  The only years theft or shortages were reported were in 2018 and 2016. Clearly illustrating no misappropriation or theft was ever discovered by the union since 2018.  The only loss reported is the loss of furniture that was paid back on the 2018 LM-2 Report (notes on the last page of the LM-2 about the specific loss) and fraudulent charges on an officer's credit card reported on the 2016 LM-2 Report.  The LM-2 are signed by the APFA National Officers under penalty of perjury.
2022 - https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=709508&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form
[11] *Id.*

9

fiduciary duty—therefore Defendant is unable to show a loss proximately caused by Plaintiff's conduct.  The Court should note that LM-2 Reports are filed under oath by the union and signed by the National Officers.

## IV.     CONCLUSION AND PRAYER

In conclusion, Defendant failed to state a claim for recovery under LMRDA §501. For the reasons stated herein, Plaintiff requests that the Court grant Plaintiff's Second Motion to Dismiss Defendant's Counterclaims for Relief.

Respectfully submitted,

K.D. PHILLIPS LAW FIRM, PLLC

By: /s/  Kerri  Phillips
    Kerri Phillips
    Texas  Bar  No.  24065906
    Phone: (972) 327-5800
    Email: kerri@KDphillipslaw.com

    6010 W. Spring Creek Parkway
    Plano, Texas 75024
    Fax: (940) 400-0089
    For Service of Filings:
    notice@KDphillipslaw.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that the true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF Filing **on this the 3rd  day of October 2023.**

Jeff Bartos
Charlette Matts
Michael Rake
James Sanford

      /s/  Kerri Phillips
      Kerri Phillips, Esq.