**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiff/Counterclaim** | § | |
| **Defendant,** | § | **Judge Terry R. Means** |
| | § | |
| **v.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS,** *et al.*, | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

---

**BRIEF IN SUPPORT OF AMENDED MOTION TO
COMPEL RESPONSE TO SUBPOENA
ISSUED TO WOODS, STEPHENS AND O'NEIL, L.L.P.**

---

NOW COMES, Pursuant to Federal Rules of Civil Procedure 26(b)(1), Fed. R. Civ. P. 34(c), Fed. R. Civ. P. 45, and Local Rules 5.2, 7.1. 7.2. 53.1, 56.3 and 56.6, Plaintiff, Robert "Bob" Ross ("Ross"), and file this, his Amended Motion to Compel Production of Documents in Response to Subpoena Issued to Woods, Stephens, and O'Neil, L.L.P. ("Woods, Stephens, and O'Neil") and in support thereof, would respectfully show this Court as follows:

# Table of Contents

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION .................................................................................................................. 1

SUMMARY ........................................................................................................................... 4

FACTUAL BACKGROUND ................................................................................................. 5

ARGUMENT ....................................................................................................................... 11

    Accountant-Client and Attorney-Client Privilege Objection: .............................................. 12

    Undue Burden Objection: ..................................................................................................... 13

    Vague, Ambiguous and Overly-broad Objection: ............................................................... 16

    Relevancy Objection: ........................................................................................................... 17

    Burdensome or Disproportionate Requests in relation to the Needs of the Case Objection: ..................... 17

CONCLUSION .................................................................................................................... 19

CERTIFICATE OF CONFERENCE .................................................................................... 20

CERTIFICATE OF SERVICE .............................................................................................. 21

# Table of Authorities

**Authorities**

Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC, 313 F.R.D. 39 (N.D. Tex. 2015)      10

Arthur Young & Co., 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984)      12

Cantu v. TitleMax, Inc., 5:14-CV-628 (W.D. Tex. Oct. 9, 2015)      12

Chao v. Loc. 743 Int'l Bhd. of Teamsters, AFL-CIO, 467 F3d 1014 (7th Cir. 2006)      17

Coughlin v. Lee, 946 F.2d 1152 (5th Cir. 1991)      17

EEOC v. Aerotek, Inc., 815 F.3d 328 (7th Cir. 2016)      16

EEOC v. Bay Shipbuilding Corp., 668 F.2d 304 (7th Cir. 1981)      18

EEOC v. Ford Motor Credit Co. , 26 F.3d 44 (6th Cir. 1994)      17

FTC v. Shaffner, 626 F.2d 32 (7th Cir. 1980)      18

Heller v. City of Dallas, 303 F.R.D. 466 (N.D. Tex. 2014)      16

Isenberg v. Chase Bank USA, N.A., 661 F. Supp. 2d 627 (N.D. Tex. 2009)      11

Leonard v. Martin, 38 F.4th 481 (5th Cir. 2022)      17

SEC v. Brady, 238 F.R.D. 429 (N.D. Tex. 2006)      14

Shields v. Sturm, Ruger & Co., 864 F.2d 379 (5th Cir. 1989)    12

United Air Lines, Inc., 287 F.3d 643 (7th Cir. 2002)    18

United States v. Fluitt, 22-30316, slip op. at 4 (5th Cir. Aug 04, 2022)    14

Walsh v. Alight Solutions LLC, 44 F.4th 716 (7th Cir. 2022)    17

Williams v. City of Dallas, 178 F.R.D. 103 (N.D. Tex. 1998)    13

Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812 (5th Cir. 2004)    14

**Codes & Statutes**

29 U.S.C. § 411(a)(2)    18

29 U.S.C. § 437    6

29 U.S.C. § 501    18

Tex. Occ. Code §901.457    12

**Court Rules**

Fed. R. Civ. P. 26(b)(1)    1, 13

Fed. R. Civ. P. 34    16

Fed. R. Civ. P. 34(c)    1, 13

Fed. R. Civ. P. 45    1, 11, 13

Fed. R. Civ. P. 45(c)(2)(A)    11

Fed. R. Civ. P. 45(d)(2)(B)    13

Fed. R. Civ. P. 45(d)(2)(B)(i)    13

L.R. 7.1    1, 20

L.R. 7.2    1

L.R. 53.1    1

L.R. 56.3    1

L.R. 56.6    1

**SUMMARY**

In his Complaint, Plaintiff alleges his union and its leaders violated his rights as a union member, among other claims, under federal law for wrongful discipline for his exercise of free speech and association rights. The disciplinary arbitration hearing resulted in an award to the union for $62,558.75.

Plaintiff asserts that Defendants' conduct resulted in an unlawful discipline designed to obstruct his free speech and association rights within the union. More particularly, the arbitration award deprives Plaintiff of the right to ever run for office again, so that Plaintiff may not hold the National President's seat and prevent AFA from potentially merging with APFA—and *this* was the real agenda behind the disciplinary hearing.

Woods, Stephens, and O'Neil objected to a Subpoena, and continually withholds documentation. All objections should be overruled, and Woods, Stephens, and O'Neil should be compelled to comply with the subpoena requests. It has been a year since Woods, Stephens, and O'Neil served with the Subpoena, and yet Woods, Stephens, and O'Neil still have not produced all responsive documents. After conferring with opposing counsel, only about 100 documents were produced, many substantially redacted and multiple documents continue to be withheld based on meritless objections and claims of privilege that do not apply, with no privilege log provided.

The Court should note that Defendant's counsel represents Woods, Stephens, and O'Neil. Defendants' Counsel have stonewalled all discovery efforts thus far. Woods, Stephens and O'Neil's "Counsel" Mr. Jeffrey Bartos and James Sanford, also believe attorney-client privilege is an appropriate claimed privilege on communications between APFA officers, APFA counsel, and Woods, Stephens, and O'Neil, LLP—a third party entity. And yet, no privilege log has been turned over for these glaringly inappropriate privilege assertions in which third-parties are clearly included on the communications. As a result, Plaintiff implores this court to please review the attached letter

from Defendants' Counsel for the union—APFA—on behalf of Woods, Stephens, and O'Neil—an independent third-party accounting firm. Plaintiff seeks an order compelling production of documents without redactions from Woods, Stephens and O'Neil.

## FACTUAL BACKGROUND

The lawsuit arises from claims that APFA—Plaintiff's labor union—unlawfully disciplined him for exercising his rights to free speech and association as a member of his labor union in violation of federal law, among other claims. APFA claims Plaintiff breached his fiduciary duty in making and receiving overpayments under the Ross Transition Agreement. After Disciplinary Charges were issued for over $62,558.75, Plaintiff discovered a Confidential Memo from the accounting firm that conducted a review of his payments that stated that he was paid correctly under the Transition Agreement. (*See* Appendix pp. 1-2). The Confidential Memo was never produced to him during his Arbitration hearing, never shown to the Arbitrator, never shown to the Board of Directors that voted against him and nor in the letter from the National Treasurer. The letter from the National Treasurer—received by the Plaintiff on or about <u>November 24, 2020</u>—and the Confidential Memo—received by the National Treasurer on or about <u>October 22, 2020</u>, concealed from the Plaintiff, are contained in the Appendix for reference. (*See* Appendix pp. 1-2). Clearly these two letters illustrate that the APFA misrepresented that Plaintiff was overpaid and wrongfully disciplined him based on his opposition to the political faction in power at the time.

On October 20, 2022, Plaintiff served a Notice of Issuance of Subpoena to Woods, Stephens, and O'Neil. Attached hereto and incorporated herein in the attached Appendix is a copy of the subpoena that was issued (the "Subpoena"). (*See* Appendix Pgs. 3-8).

Via the Subpoena, Plaintiff requested production of documents related to the matters before this Court. More particularly, Plaintiff's subpoena commanded production of:

> All materials including but not limited to correspondence, emails, calendar invites, text messages, phone records, reports, internal memoranda, personal notes, notations, work papers, drafts, and other writings, drawing, charges, photographs, computer printouts,

> spreadsheets, ledgers, graphics, analytics, and all other information kept by written, electronic, or other means relating to the parties in the above-entitled lawsuit and in relation to Association of Professional Flight Attendants, Eugenio Vargas, Nena Martin and Robert "Bob" Ross. (*See* Appendix Pg. 4).

This request includes any documents and communications between APFA and Woods, Stephens, and O'Neil regarding the former three National Officers of the Association of Professional Flight Attendants ("APFA") Eugenio Vargas, Robert "Bob" Ross, and Nena Martin.[1] Considering that the named individuals in the request only served as National Officers during the period of April 1, 2016 to July 1, 2018—when the Ross Administration was in office—the request for documents and communications is limited to those documents from April 1, 2016 to current. Documents outside this time frame do not exist.

Woods, Stephens, and O'Neil is an independent accounting firm that performs the annual audit of all APFA expenses. Each yearly audit is submitted to the APFA Board of Directors and National Officers for review, and once finalized, the accounting audit forms the basis from which APFA drafts its annual U.S. Department of Labor ("DOL") LM-2 Reports, required under LMRDA §207 or 29 U.S.C. §437. Woods, Stephens, and O'Neil are listed on the LM-2 as the accounting firm that assisted in drafting and conducting the audit for APFA since 2016.[2] Interestingly, Woods, Stephens, and O'Neil conducted audits for the *alleged* overpayments made and received by Eugenio Vargas, Marcy Dunaway, and Nena Martin in 2018-2019.

---

[1] The Subpoena request did not include any documents or communications related to Marcy Dunaway, the former National Secretary within the Ross Administration, as she has since retired as a Flight Attendant and is no longer a member of APFA.

[2] The LM-2 Filings require reporting whether or not an annual audit has been conducted under **Question 12.** Under **Section 69,** on the last page of each LM-2 form, APFA cites that the accounting firm that conducted the audit was Woods, Stephens, and O'Neil.

2023 - https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form
2022 - https://olmsapps.dol.gov/query/orgReport.do?rptId=840723&rptForm=LM2Form
2021 - https://olmsapps.dol.gov/query/orgReport.do?rptId=773865&rptForm=LM2Form
2020 - https://olmsapps.dol.gov/query/orgReport.do?rptId=731533&rptForm=LM2Form
2019 – https://olmsapps.dol.gov/query/orgReport.do?rptId=709508&rptForm=LM2Form
2018 – https://olmsapps.dol.gov/query/orgReport.do?rptId=679829&rptForm=LM2Form
2017 – https://olmsapps.dol.gov/query/orgReport.do?rptId=650505&rptForm=LM2Form
2016 – https://olmsapps.dol.gov/query/orgReport.do?rptId=628943&rptForm=LM2Form
2015 – https://olmsapps.dol.gov/query/orgReport.do?rptId=594782&rptForm=LM2Form

On October 20, 2022, Hal O'Neil was served with the Subpoena for Woods, Stephens, and O'Neil, at 6300 Ridglea Pl., Ste 318, Fort Worth, TX 76116. (*See* Appendix Pgs. 3-8).

On November 3, 2022, Defendant's Counsel appeared for the first time as Counsel for Woods, Stephens, and O'Neil and served objections on their behalf within fourteen (14) days of being served. (*See* Appendix Pgs. 4-5). However, Plaintiff attempted to resolve this matter with opposing counsel on multiple occasions and now seeks the court's intervention as Woods, Stephens, and O'Neil failed to adequately respond to the subpoena

The original objections contain multiple grounds for including (1) undue burden and expense of the document production; (2) relevancy, (3) disproportionate requests in relation to the needs of the case, (4) vague, ambiguous and overly-broad, (5) privilege of documents produced for attorney client privilege and privilege for accountants of APFA. (*See* Appendix Pgs. 11-13). Defendants' original counsel has since withdrawn from the case before the Court, and Plaintiff's counsel emailed a subsequent request to Woods, Stephens, and O'Neil c/o Hal O'Neil, CPA, owner of the accounting firm on August 16, 2023 requesting compliance with the Subpoena. (*See* Appendix Pg. 16). On August 14, 2023, Plaintiff's counsel also emailed Defendants' counsel and requested he withdraw the objections. (*See* Appendix Pgs. 26-28). On August 15, 2023, Defendants' counsel refused to withdraw his objections. (*See* Appendix Pgs. 26-28). The Court should note, he never advised whether he did or did not represent Woods, Stephens, and O'Neil as their new counsel of record. (*See* Appendix Pgs. 26-27).

On August 18, 2023, in response to the request via email made on Hal O'Neil on August 16, 2023, a response was received via Counsel for Defendants reiterating his objections and attaching Hal O'Neil to the email requesting a telephone conversation—still no confirmation whether he represented Hal O'Neil as counsel (*See* Appendix Pgs. 23-24). Counsel for both parties spoke via a telephone call on August 23, 2023 wherein Defendants' counsel sought clarification of the

subpoena request and what documents were sought. Plaintiff's counsel explained that all documents and communications between APFA and Woods, Stephens, and O'Neil related to the three remaining members of the Ross Administration since 2016 were needed. Defendants' counsel stated that:

> On the topic of communications with the auditors, I think the request is concerning the Ross Administration. Our view is that that is way too over-broad. It includes a lot of information that would be totally irrelevant to this case. It includes sensitive financial information and. . . what this case is about and what the focus of the dispute is about is around what you are calling the Confidential Memorandum and the creation of that analysis of that and the distribution of that and with respect to that we are agreeable to producing the documents around the Confidential Memo—the request for the creation, the emails back and forth about it, and distribution of it.

This conversation was evidenced in another email sent to opposing counsel on August 25, 2023. (*See* Appendix Pgs. 20-21). Plaintiff's counsel offered to limit the requests for documents and communications to those relating to the Ross Administration, but to that occurring from 2018 to current. This limitation would eliminate concerns regarding private financial documents and isolate the scope of focus to the conduct of the union regarding the three remaining Ross Administration officers; however, Defendants' counsel maintained his objection to the scope as being overly broad. (*See* Appendix Pgs. 18-19).

In compliance with the Court's order entered on September 8, 2023, Plaintiff's Counsel conferred with Defendant's counsel on September 12, 2023 via email, on a telephone call on September 15, 2023, Plaintiff's counsel was informed that Defendants' counsel *did not know* if he represented Woods, Stephens O'Neil (despite declining to withdraw his objections prior to the original filing of this motion). (Appendix Pgs. 30-31; 35). So, Plaintiff's Counsel emailed notice directly to Hal O'Neil, Bill Osborne, and Sanford Denison (prior counsel) on September 18, 2023 and mailed certified mail a copy of the pleading to Hal O'Neil on the same date. (Appendix Pgs. 40-41). Subsequently, the undersigned counsel emailed to follow up for conference purposes on September 12, 2023 and September 20, 2023. (Appendix Pgs. 30-31). On September 25, 2023,

Defendants' counsel confirmed his representation of Woods Stephens and O'Neil, LLP. (Appendix Pgs. 42-43).

Since entry of this Court's order was entered on September 8, 2023, Woods, Stephens, and O'Neil produced approximately 162 pages of heavily redacted documents, while multiple documents continue to be withheld. Woods, Stephens, and O'Neil maintain attorney-client privilege exists over documents and communications with APFA National Officers and/or APFA Attorneys on them—without ever serving a privilege log to Plaintiff. (Appendix Pgs. 51-53). Woods, Stephens and O'Neil also withheld documents based on financial sensitive information— reasons are still unknown for this. Furthermore, extensive redacted information within emails and communications continued without ever providing a privilege log as required under federal law or asserting any legal basis whatsoever. (Appendix Pgs. 54-55).

On October 12, 2023, Defendants' counsel served very limited and heavily redacted discovery responses. Plaintiff maintains that no attorney-client privilege can be maintained between counsel for Defendants and Woods, Stephens, and O'Neil prior to the filing of this matter and therefore asks the court to compel discovery, but particularly any communications in which both Defendants and Woods Stephens and O'Neil are simultaneously copied. When documents were produced, Defendants' Counsel served a letter explaining that he decided to withhold pertinent documents based on attorney-client privilege (between APFA, Woods, Stephens and O'Neil, and APFA Counsel), financial discussion of payouts made to similarly situated officers (likely discussions as to why Mr. Ross's Transition Agreement payouts differed to the other officers), and payroll documents for APFA staff (likely staff who received a 1099-K form for furniture Mr. Ross was accused of stealing).

Documents continue to be withheld on baseless grounds. No resolution has been reached on the issue of the outstanding Subpoena request to Woods, Stephens, and O'Neil. Additionally,

as of the date of filing this amended motion, Defendants and/or Woods, Stephens, and O'Neil failed to turn over several pertinent and relevant documents—including a privilege log. Finally, as of the filing of this amended motion, Defendants' Counsel has yet to indicate whether or when Woods, Stephens, and O'Neil will turn over documents. As of the filing of this amended motion, there are multiple emails that Defendant's Counsel has yet to respond Further, Woods, Stephens, and O'Neil continue to insist on a financial privacy when a union does not enjoy a right to financial privacy, and any privacy for individuals' private financial information has yet to be a concern for which Defendant's Counsel has raised with me to date. No request was made regarding redactions and no discussion occurred regarding what redactions should or should not occur. Woods, Stephens, and O'Neil redacted portions of communications without any grounds to do so, and no privilege log, or details of the communications required by Fed. R. Civ. Proc. 26 (b)(5)(A), let alone any grounds for asserting attorney client privilege have been made to date.

On October 19, 2023, opposing counsel emailed to concede the issue that attorney-client privilege did not apply in terms of the Wood, Stephens, O'Neil emails—then attached four documents withheld for privilege—yet still redacted. Defendant's counsel did indicate that he would get back to me next week, however seeing as he waited until the day before Plaintiff's Counsel was ordered to amend this motion—Plaintiff's counsel informed him he was out of time, he would have to take his issues up with this court instead. Defendant's counsel has continued using delay tactics and playing games such as this for the last several months, never turning over any meaningful discovery, never seeming to appear uncooperative, never answering questions he does not want to answer, but always answering only those questions he wants to answer, and delaying for as long as possible. This is complete waste of this court's time, energy and

resources—not to mention Plaintiff and Plaintiff's counsel's time, energy and resources.[3]

## ARGUMENT

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties and governs subpoenas served on a third party . . . as well as motions to quash or modify or to compel compliance with a subpoena." Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC, 313 F.R.D. 39, 42 (N.D. Tex. 2015). *See also* Isenberg v. Chase Bank USA, N.A., 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Under Rule 45, a party may serve a subpoena to command from nonparties the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A).

Woods, Stephens, and O'Neil submitted a host of different inappropriate objections which clearly demonstrate an intent to merely subvert Plaintiff's ability to seek necessary documentation for its claims and defenses. (*See* App. Pgs. 9-11). Plaintiff requests the court to overrule Defendants and/or Woods, Stephens, and O'Neil objections and compel proper responses to Plaintiff's Subpoena.

---

[3] The Court should note the previous statements made by Defendants' Counsel on record (Ross Dkt. No. 83). Defendant's counsel argues it cannot, and will not, settle the claims pending before this Court while its claims persist. APFA contends that it **must** pursue the Ross Administration. Defendants argue settlement of any kind would violate federal law breach of fiduciary duty and the governing union's rules—even if settlement is in the union membership's best interest. Consequently, this Court should consider the Ross Administration's position. Plaintiff has no other option, but to exercise his rights to recover for Defendants' misconduct—as well as the rest of the Ross Administration—for the sake of their families, their reputations, and their careers. The Court should also note that APFA continues to pursue Nena Martin and Marcie Dunaway (both former Officers under the Ross Administration) by ordering additional financial audits of their expenses. This was announced at the end of August, 2023, despite these pending claims before this Court. Nena Martin previously won in Arbitration on these **exact** claims last fall. To date, APFA has not audited any other administration except for the Ross Administration. Most recently, the APFA Board of Directors passed a resolution designed to obstruct Heidi Morgan's ability to provide documents in the present case relating to involvement with APFA or as to any of the Ross Administration's Disciplinary Hearings. Martin is now being threatened with disciplinary charges based on her association with the Ross Administration. Most notably, December is when new candidates, like Nena Martin and Heidi Morgan, will announce their intent to run for National Office in 2024.

## Accountant-Client and Attorney-Client Privilege Objection:

Federal courts do not recognize an accountant-client evidentiary privilege. Arthur Young & Co., 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). This is clearly an improper objection.

In Texas, those obligations can be found in the Public Accountancy Act under a section entitled "Accountant-Client Privilege." *See* Tex. Occ. Code §901.457. Texas courts conclude that this statute does not, in fact, create an evidentiary privilege. Rather, what it does is impose on the accountant strict client-confidentiality obligations that can trap the unwary in responding to discovery. Courts interpreting the Texas statute have concluded that "accountant-client communications are confidential, but not privileged." Cantu v. TitleMax, Inc., 5:14-CV-628 (W.D. Tex. Oct. 9, 2015); *see also* United States v. White, 487 F.2d 1335 (5th Cir. 1973) (court held "There is no confidential accountant-client privilege under federal law and no state-created privilege has been recognized in federal cases.").

To date, Defendants' Counsel maintains his clients' objections, including his assertion of an accountant-client privilege. to the Subpoena served on Woods, Stephens, and O'Neil as overly-broad and vague. Plaintiff now seeks relief from this Court to grant his Motion to Compel Response to Subpoena on Woods, Stephens, and O'Neil and overrule Defendants' objections.

Furthermore, Defendants assert attorney-client privilege in their attached letter. (Appendix Pgs. 51-53). However, privilege does not exist between APFA and Woods, Stephens, and O'Neil. Nor, does attorney client privilege exist whenever a third party is present on the communications between APFA and Woods, Stephens, and O'Neil. "The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties..." Shields v. Sturm, Ruger & Co., 864 F.2d 379 (5th Cir. 1989). If any member of the entity with APFA was present there is no privilege. Finally, no privilege log was ever provided to itemize those communications or documents withheld,

so evaluating privilege is impossible—but most importantly they have likely waived privilege at this point based on the lack of producing a privilege log. "[T]hey forfeited any privilege by filing inadequate privilege logs and refusing to provide more detailed information when requested. . . . As a result, this argument is forfeited." United States v. Fluitt, 22-30316, slip op. at 4 (5th Cir. Aug 04, 2022).

Undue Burden Objection:

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." Am. Fed'n of Musicians 313 F.R.D. at 12 (quoting Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex. 1998)). Rule 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Am. Fed'n of Musicians, LLC 313 F.R.D at 11-12 (N.D. Tex. 2015) (quoting from FED. R. CIV. P. 26(b)(1)).

Rule 45 provides the serving party to "move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. P. 45(d)(2)(B)(i); see also FED. R. CIV. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.").

A party commanded to produce documents under a subpoena may serve written objections to producing documents, under FED. R. CIV. P. 45(d)(2)(B). However, "[t]he party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting

affidavits or offering evidence revealing the nature of the burden." <u>Am. Fed'n of Musicians, LLC</u>, 313 F.R.D at 11 (N.D. Tex. 2015) (citing <u>SEC v. Brady</u>, 238 F.R.D. 429, 436 (N.D. Tex. 2006)).

This court explains the test "[t]o determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors:

(1) relevance of the information requested;

(2) the need of the party for the documents;

(3) the breadth of the document request;

(4) the time period covered by the request;

(5) the particularity with which the party describes the requested documents; and

(6) the burden imposed." <u>Am. Fed'n of Musicians, LLC</u>  313 F.R.D at 11 (citing <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 392 F.3d 812, 818 (5th Cir. 2004)).

Here, Defendants/Woods, Stephens, and O'Neil are unable to meet the test for undue burden. In particular, the information sought is clearly relevant.  Defendants filed counterclaims seeking damages for payments made and received while Plaintiff was in office.  (*See* Defs. Am. Answer and Counterclaims Doc. 79, PAGEID 1814-1816). This requires Plaintiff to seek documents relating to his payments made between 2016-2018, when he held office as APFA National President. Considering Woods, Stephens, and O'Neil conducted the annual audit of all expenses and aided in drafting the LM-2—as noted on the public filing of the U.S. Department of Labor filings between 2016 to 2018—this would put the audit, all documents reviewed during this process, and Woods, Stephens, and O'Neil's rendered accounting audit squarely at issue for those years.  All payments made and received by Plaintiff would have been reviewed and included in those annual audits.

The basis of this suit centers on Defendants withholding information from a disciplinary hearing for payments and charges Plaintiff made while in office.  Harris[4] requested Woods, Stephens,

---

[4] Erik Harris, Defendant, is the current National Treasurer, and a member of the opposing political faction from the Ross Administration within the union.

and O'Neil create documents to reflect calculations that showed Plaintiff was overpaid. It was then presented to Plaintiff and the APFA Board of Directors citing that it was the accounting firm that determined that Ross owed this money. But in 2019, APFA conducted a similar audit of the other officers under the Ross Administration, and made a similar demand was made on the remaining Ross Administration officials. Why was no demand made of Ross at that time? This was likely discussed at that time. It is likely that communications and documents retained within Woods, Stephens, and O'Neil records from 2018 to current relate to the Ross Administration and Ross's payment under his Transition Agreement.[56] It is further likely that those documents and records with APFA officials, may not likely be recoverable by APFA since new National Officers now hold office. The National Officers during 2019 are not the same as those currently serving, thus it is likely that those communications may no longer be retrievable from APFA records and servers. Therefore, obtaining the documents and communications from the accounting firm that conducted all audits of the Ross Administration, their documents reviewed, notations, graphs, meetings with APFA, and any additional related documentation would be the best and most appropriate method to obtain reliable non-privileged evidence considering the circumstances at issue.

The breadth and time frame of the document request is reasonable. Considering Plaintiff took office as National President in 2016, the lack of a date by reference in the subpoena is one implied by the facts at issue—all documents from 2016 to current. No additional documents should be available as the Ross Administration did not take office as National Officers until April 1, 2016. Thereafter, APFA requested additional audits of the Ross Administration officers, which were conducted in 2019 on Marcy Dunaway, Eugenio Vargas, and Nena Martin for alleged overpayments. (*See* Pl. Orig. Complt. Doc. 1-2, PAGEID 33). Furthermore, Woods, Stephens, and O'Neil

---

[5] Ross was not paid under APFA policy but under his negotiated Exit or Transition Agreement.
[6] The Court should note that the National Officers discussed how to permanently delete emails and communications in a regularly held Board of Director's meeting held shortly after being served with process on the Ross v. APFA et al lawsuit.

conducted an accounting review of payments made under the Ross Transition Agreement during 2020-2021. (*See* Pl. Orig. Complt. Doc. 1-2, PAGEID 33; *See* Aff. Nena Martin, Doc. 52-2, PAGEID 1318-1326). Upon conference, Plaintiff's counsel further explained that all documents and communications sought were pertinent only to Nena Martin, Robert "Bob" Ross, and Eugenio Vargas and only those after April 1, 2016. Defendant's counsel maintained his objections to all documents other than those related to the Confidential Memo from Hal O'Neil dated October 22, 2020 and the all documents related to the accounting review that precipitated.

Vague, Ambiguous and Overly-broad Objection:

A subpoena can be too indefinite if its demands are overly vague or amorphous, but the breadth of the production demanded is a topic better-suited for an inquiry of relevancy or undue burden. *See* EEOC v. Aerotek, Inc., 815 F.3d 328 at 332, 334 (7th Cir. 2016) (treating the appellant's objection that an administrative subpoena's requests amounted to "a fishing expedition totally unrelated to the matter under investigation" as a relevancy challenge, while also noting that the appellant made "no claim that the request is too indefinite"). A non-party's written objections are held to the same standards as those under Rule 34. Objections, just as requests, are required to be made with reasonable particularity. Therefore, these objections "are subject to the same prohibition on general or boilerplate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." Heller v. City of Dallas, 303 F.R.D. 466, 483 (N.D. Tex. 2014).

The Subpoena request describes with reasonable particularity those documents within Woods, Stephens, and O'Neal's possession that are responsive. Plaintiff described those facts that should guide any search of the documents Woods, Stephens, and O'Neil held in their possession. Plaintiff requested all materials written or otherwise, that relate to the parties involved in the lawsuit and APFA, Nena Martin, Robert "Bob" Ross, and Eugenio Vargas. The only documents Woods,

Stephens, and O'Neil should possess relating to the Ross Administration are those that occurred after April 1, 2016 when the Ross Administration took office. The Ross Administration would not have communicated with Woods, Stephens and O'Neil nor were any audits or accounting reviews conducted prior to this date relating to any member of the Ross Administration. No other documents should exist within Woods, Stephens, and O'Neil's possession for those reviews. APFA has not audited any other National Officers since 2008 other than those in the Ross Administration. Even if the request is "overly broad", Plaintiff's counsel clearly explained to Defendants' counsel that Plaintiff sought all documents and communications in relation to the Ross Administration since 2016 in Woods, Stephens, and O'Neil's possession. Upon discussing Defendant's request to limit the scope, Plaintiff conceded to limiting the scope to those documents and communications after July 1, 2018, when the Ross Administration left office—yet Defendants' counsel maintained his objections.

## Relevancy Objection:

"To determine whether a subpoena is unduly burdensome, the district court must 'weigh the likely relevance of the requested material to the investigation against the burden to [the respondent] of producing the material.'" <u>Walsh v. Alight Solutions LLC</u>, 44 F.4th 716, 724 (7th Cir. 2022) (quoting <u>EEOC v. Ford Motor Credit Co.</u>, 26 F.3d 44, 47 (6th Cir. 1994)); *see see* <u>Chao v. Loc. 743 Int'l Bhd. of Teamsters, AFL-CIO</u>, 467 F3d 1014, 1017 (7th Cir. 2006) (requiring requested information to be "reasonably relevant"). "Under that rule, information is relevant if it 'bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" <u>Leonard v. Martin</u>, 38 F.4th 481, 489 (5th Cir. 2022) (citing <u>Coughlin v. Lee</u>, 946 F.2d 1152, 1159 (5th Cir. 1991).

## Burdensome or Disproportionate Requests in relation to the Needs of the Case Objection:

When examining the burden of complying with a subpoena, "[t]he presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public

interest." United Air Lines, Inc., 287 F.3d 643, 653 (7th Cir. 2002) (quoting FTC v. Shaffner, 626 F.2d 32, 38 (7th Cir. 1980)). "Often we have phrased this 'difficult burden' as requiring a showing that 'compliance would threaten the normal operation of a respondent's business.'" Id. (quoting EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981)). This is a fact-intensive inquiry, and "[c]onclusory allegations of burdensomeness are insufficient." Id.

The request is not burdensome as it seeks only those financial documents relating to the Plaintiff and his associates while in office and the correspondence between Woods, Stephens, and O'Neil with APFA in relation to those charges. Clearly a claim for breach of fiduciary duty under 29 U.S.C. § 501 for financial violations requires a showing of all charges, expenses, and payments made and received by Plaintiff. Considering Plaintiff claims the union wrongfully disciplined him for exercising his rights under 29 U.S.C. § 411(a)(2) based on dueling political parties within the union, any documents and communications evidencing motivations of the APFA National Officers since 2019 relating to the separate audits or accounting reviews for the Ross Administration would be pertinent to the claims before this court. The request is limited in scope and clearly requests relevant information.

Wood, Stephens, O'Neil claims the burden and expense of the document production is extensive, however fail to state the possible cost thereof. Plaintiff seeks financial documents and communications from 2016 to current relating to the Ross Administration, and yet Wood, Stephens, O'Neil claim this is overly broad. The claims at issue regard audits and/or accounting reviews of all four national officers under the Ross Administration by the APFA. Furthermore, Defendants counterclaims for breach of fiduciary duty are rooted in payments made and received that are not in compliance with APFA Policy, therefore the financial documents evidencing these payments would be well within the purview of discoverable information. Plaintiff seeks a copy of the documents from Wood, Stephens, O'Neil demonstrating what was reviewed, what notes were taken, and the

impressions from Wood, Stephens, O'Neil for any audit or review that found the Ross Administration guilty of wrongful payments. As a concession and in an attempt to resolve the issue without judicial intervention however, Plaintiff agreed to allow Wood, Stephens, O'Neil to limit its responses to those that occurred between 2018 to current day as those documents and communications would eliminate those communications while Plaintiff was in office, but include any request and communication regarding APFA's request and Wood, Stephens, O'Neil's impression upon creating an audit and/or accounting review. Unfortunately, this concession failed to appease Defendants' Counsel. He insisted on limitations to the scope to those responsive documents and communications relating only to the Confidential Memo and the accounting review. Unfortunately, this ignores the fact that APFA requested financial audits of Eugenio Vargas, Nena Martin, and Marcy Dunaway in 2019, not to mention the need for those documents that relate to any alleged payments made and received while Plaintiff was in office. These documents go to the heart of Plaintiff's defense for a possible breach of fiduciary duty claim—what payments were made and received that rise to the level of the misconduct alleged by Defendants.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court schedule this matter for a hearing to discuss the issues relating to discovery and ultimately grant his Motion to Compel Response to Subpoena on Woods, Stephens, and O'Neil, and for such other relief as the Court deems proper.

THIS, the 19th day of October, 2023.

Respectfully submitted,

By: /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(b) I hereby certify that counsel for the movant has conferred with Defendant in a good faith effort to resolve the issues raised herein. Plaintiff's counsel conferred with Defendants' counsel on via email on August 14, 2023, August 17, 2023, August 18, 2023. A telephone call was held on August 23, 2023 wherein the concerns and objections were discuss, in particular Plaintiff offered to limit the time frame of the Requests for Production No. 1, 2 and 3 to overcome Defendants objections without success in appeasing him. Plaintiff's further conferred with Defendants via email on August 25, 2023, August 26, 2023, and received a response on August 30, 2023 stating documents would be produced on August 31, 2023. As of the date of filing this Motion, Plaintiffs served extremely limited responses that were heavily redacted and only responsive to Request for Production 2, and no documents have been received from Woods, Stephens, and O'Neil. Counsel conferred on September 1, 2023 as to the relief requested in this Motion and Defendants' counsel has replied they are opposed to the Motion. Counsel for Diversified is unopposed.

Additionally, in compliance with the Court's order entered on September 8 2023, Plaintiff's Counsel conferred with Defendant's counsel on September 12, 2023 via email, on a telephone call on September 15, 2023 I was informed Opposing counsel did not know if he represented Woods, Stephens O'Neil (despite declining to withdraw his objections prior to the original filing of this motion) , so I emailed notice to Hal O'Neil, Bill Osborne, (prior counsel) and Sandy Denison (prior counsel) on September 18, 2023 and mailed certified mail a copy of the pleading to Hal O'Neil. Subsequently emailed on September 20, 2023 and September 22, 2023. On September 25, 2023, Opposing counsel confirmed his representation of Woods Stephens and O'Neil, LLP. Thereafter, Defendants' counsel served responsive heavily redacted discovery, and opposes this motion. Plaintiff maintains that no attorney client privilege can be maintained between counsel for Defendant and Woods, Stephens, and O'Neil prior to the filing of this matter and therefore asks the court to compel discovery.

As of October 19, 2023, Defendant's counsel did send a final email with minimal documents—still redacted, just before Plaintiff's deadline to amend this pleading, however all of Plaintiff's original issues continue to persist. (See Appendix pp. 66-74).

THIS, the <u>19th</u> day of October, 2023.

By: /s/ Kerri Phillips
Kerri Phillips

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA ISSUED ON WOODS, STEPHENS, O'NEIL, L.L.P.** has been served in accordance with the Federal Rules of Civil Procedure to all counsel of record identified below on this the 19th day of October, 2023.

By: /s/ Kerri Phillips
Kerri Phillips

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org

James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111; Fax: (214) 838-0001
Email jim@gillespiesanford.com
Email: joe@gillespiesanford.com

Michael Rake
PO Box 1556
Lake Dallas, TX 75065-1556
Tel: (940) 498-2103 Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com