**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION**



| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | |
| | § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiff/Counterclaim** | § | |
| **Defendant,** | § | **Judge Terry R. Means** |
| | § | |
| **v.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, *et al.*,** | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

---

**APPENDIX IN SUPPORT OF PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO
COMPEL DEFENDANTS' DIVERSIFIED CREDIT'S PRODUCTION OF
DOCUMENTS**

---

Plaintiff Robert "Bob" Ross, pursuant to Local Rules 7.1(i) and § C of this Court's Case

Management Requirements, submits this appendix of non-published cases cited in, and in

support of PLAINTIFF'S MOTION TO COMPEL DEFENDANT, DIVERSIFIED CREDIT'S

PRODUCTION OF DOCUMENTS:"

| Item | Description | Pgs. |
|------|-------------|------|
| 1 | Supporting Documents Referenced in Brief | 1-20 |
| | **NON-PUBLISHED CASES** | |
| 2 | Dennis v. U.S., 3:16-cv-3148-G-BN (N.D. Tex. Oct. 23, 2017) | 21-43 |
| 3 | McGowan v. SMU, 3:18-CV-141-N (N. D. Tex. May 6, 2020) | 44-49 |
| 4 | OrthoAccel Tech., Inc. v. Propel Orthodontics, LLC, 4:16-cv-00350-ALM (E.D. Tex. Apr. 4, 2017) | 50-55 |

Respectfully submitted,

K.D. PHILLIPS LAW FIRM, PLLC

By:  /s/  Kerri  Phillips
     Kerri Phillips
     Texas  Bar  No.  24065906
     Phone: (972) 327-5800
     Email: kerri@KDphillipslaw.com

     6010 W. Spring Creek Parkway
     Plano, Texas 75024
     Fax: (940) 400-0089
     For Service of Filings:
     notice@KDphillipslaw.com

     **ATTORNEY FOR PLAINTIFF**

### **CERTIFICATE OF SERVICE**

I certify that the true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF Filing **on this the 30th  day of October 2023.**

/s/  Kerri Phillips
Kerri Phillips, Esq.

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org

James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111; Fax: (214) 838-0001
Email jim@gillespiesanford.com
Email: joe@gillespiesanford.com

Michael Rake
PO Box 1556
Lake Dallas, TX 75065-1556
Tel: (940) 498-2103 Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | |
| **Plaintiff/Counterclaim** | § | **Civil Action No. 4:22-cv-343-Y** |
| **Defendant,** | § | |
| | § | **Judge Terry R. Means** |
| **v.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, *et al.*,** | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS FROM DEFENDANT, DIVERSIFIED CREDIT

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Robert (Bob) Ross by and through counsel, hereby make the following Requests that Defendant McGaugey, Reber, and Associates, Inc. d/b/a Diversified Credit Systems ("Diversified") make available to Plaintiff's counsel for inspection and copying the following documents that are in your possession, custody, or control wherever located within thirty (30) days of the service upon you at the offices of KD Phillips Law Firm, PLLC located at 6010 W. Spring Creek Parkway, Plano, TX 75024, or such other place as may be mutually agreed upon by the parties.

1

**APPENDIX 1**

## INSTRUCTIONS

1.     If any document request cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

2.     Each request for documents seeks production of all documents described, including all drafts and non-identical copies.

3.  Each request for documents seeks production of all documents described herein, and any attachments thereto, in Defendants possession, custody, or control or in the possession, custody, or control of any of Defendants attorneys, agents, or representatives and all documents and any attachments that Defendants or any of Defendants attorneys, agents, or representatives have the legal right to obtain or have the ability to obtain from sources under their control.

4.  Each request for a document contemplates production of the document in its entirety necessary to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation.

5.  The use of the past tense shall include the present tense and the use of the present tense shall include the past tense so as to make the document request inclusive rather than exclusive.

6.     The singular includes the plural, and vice versa.

7.     If it is claimed that the attorney-client privilege, the work product doctrine, or any other privilege is applicable to any document sought by this request, the document is to be identified as follows:

   a.  State the date, nature, and subject matter of the document;

   b.  Identify each and every author of the document;

   c.  Identify each and every preparer of the document;

2

**APPENDIX 2**

    d.   Identify each and every person who received the document;

    e.   Identify each and every person from whom the document was received;

    f.   State the present location of the document and all copies thereof;

    g.   Identify each and every person who has or ever had possession, custody, or control of the document or any copy thereof;

    h.   State the number of pages, attachments, appendices, and exhibits; and

    i.   Provide all further information concerning the document and the circumstances upon which the claim of privilege is asserted.

8.    In the event that any document called for by this request has been destroyed or discarded or otherwise disposed of, that document is to be identified as completely as possible, including, without limitation, the following information:

    a.   Identify each and every author of the document;

    b.   Identify each and every person who received the document;

    c.   State the date of the document's creation and the date on the document;

    d.   State the subject matter of the document;

    e.   State the reason for disposal of the document;

    f.   Identify each and every person who authorized disposal of the document; and

    g.   Identify each and every person who disposed of the document.

9.    These requests are deemed to be continuing and if further documents with respect thereto come to you or your counsel's attention between the date of service hereof and the date of trial, such documents must be promptly produced.

10.    In producing the documents requested herein, indicate the specific request (paragraph and subparagraph) in response to which each document or group of documents is being produced.

3

**APPENDIX 3**

11. **ALL DOCUMENT REQUESTS PERTAIN TO THOSE DOCUMENTS ON OR AFTER APRIL 1, 2020.**

## DEFINITIONS

1. "Plaintiff" means Robert (Bob) Ross.

2. "Association of Professional Flight Attendants" or "APFA" or "The Union" means the Association of Professional Flight Attendants, the party, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

3. Woods, Stephens, and O'Neil, L.L.P. means the accounting firm for APFA located at 6300 Ridglea Pl #119, Fort Worth, TX 76116, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

4. "Board of Directors" means the APFA Board of Directors as defined in the APFA Constitution.

5. "APFA Union Members" means any current union member or prior union member of APFA.

6. "National Officers" means the National President, the National Vice President, the National Secretary, and the National Treasurer of APFA, individually and collectively.

7. "Ross Transition Agreement" means the Transition Agreement signed by Robert (Bob) Ross and the 2018 APFA Voting Board of Directors and dated March 1, 2018, a copy of which has been filed in this case at *Ross* Dkt. 88-2.

8. "Confidential Memo" means the Memorandum from Hal O'Neil, CPA at Wood, Stephens

**APPENDIX 4**

& O'Neil LLP dated October 22, 2020, a copy of which has been filed in this case at *Ross* Dkt. 88-4; *Vargas* Dkt 85-4.

9.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term. A document includes electronically stored information, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations.

10.    A document "relating to" a given subject matter, as used herein, means a document that constitutes, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to that subject matter, including, without limitation, documents concerning the preparation or presentation of other documents.

11.    "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

12.    "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

13.    The term "communication" means any transmittal of information, oral or written, or otherwise, direct or indirect, between two or more persons, including, but not limited to, conversations, meetings, telephone calls, voicemails, text messages, letters, emails, social media postings, social media messages, electronic transmissions or transmittal of documents, and includes a review by any person of any document under the custody, control, or supervision of another person.

**APPENDIX 5**

**APPENDIX 6**

**Requests for Production**

1.      All documents and communications of any kind between Diversified and Julie Hedrick relating to the Ross Transition Agreement since April 1, 2020.

2.      All documents and communications of any kind between Diversified and any APFA National Officers, Board of Directors, and or any APFA Union Member discussing the Ross Transition Agreement since April 1, 2020.

3.      All documents and communications of any kind between Diversified or any agent or representative thereof and Joseph Burns, William Osborne, Margot Nikitas, Sanford Denison, Jeff Bartos, Charlette Matts, or James Sanford between April 1, 2020 to current discussing Robert "Bob" Ross.

4.      Produce either the Forward Flow Agreement or the Purchase and Sale Agreement documents (whichever is applicable) comprising the contract between Diversified wherein Diversifued acquired the account that is the subject of this lawsuit. This request includes, without limitation, the portion of such contract where any representations and warranties and indemnifications which may have been made by  regarding the accuracy and/or completeness of the information contained in the business records of  for accounts sold to Plaintiff, including the account that is the subject of this lawsuit.

5.      All documents and communications transmitting any communicaitons or documents Woods, Stephens, and O'Neil, L.L.P.

6.      If Diversified has been credit reporting the account the subject of this lawsuit to any credit bureau, then produce all documents revealing or disclosing when and how Diversified has credit reported the date of first default for the subject account in Diversified's trade-line.

7.      All written statements and/or call recordings and/or oral statements of Bob Ross,

**APPENDIX 7**

or any agent of Diversified, or any witness in this lawsuit.

8. All documents and communications wherein Plaintiff authorized rleease of his creditinformation to a third-party vendor, and/or authorized credit reporting on his credit report.

Respectfully submitted,

K.D. PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@KDphillipslaw.com
6010 W. Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
For Service of Filings:
notice@KDphillipslaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2023 a true and correct copy of the foregoing instrument was served upon Plaintiff's attorney via email to  Michael Rake mrake1@mrakeattorney.com.

By: /s/ Kerri Phillips
Kerri Phillips

**APPENDIX 8**

| | |
|---|---|
| **From:** | Kerri Phillips |
| **To:** | Michael Rake |
| **Cc:** | Adam Phillips; Stephanie Lewis |
| **Subject:** | Ross v. Diversified |
| **Date:** | Sunday, October 15, 2023 6:39:00 AM |
| **Attachments:** | image001.png |

Michael,

I am writing to inquire as to the responses to our requests for production of documentation served on you on September 14, 2023. Please advise if your client will turn over discovery to my client. We will be filing a motion to compel discovery responses, please advise if you are agreed or opposed to our motion.

Thank you,



**Kerri Phillips**
KD Phillips Law Firm, PLLC
**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75074
**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL: This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means. DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq. If you have received this communication in error, please notify us immediately at our telephone number: (972) 327-5800

IRS Circular 230 Notice: Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**APPENDIX 9**

| From: | Michael Rake |
| To: | Kerri Phillips |
| Cc: | Mike McGaughey (mmcgaughey@dcscollect.com); Tom Reber (diversifiedcredit@sbcglobal.net) |
| Subject: | RE: Ross v. Diversified |
| Date: | Sunday, October 15, 2023 8:29:52 AM |
| Attachments: | image001.png |

Morning Kerri:

I will send you the Responses to Production on Monday.
They do contain a "privilege Log" and the documents that are responsive and not privileged as exhibits.
Thanks,
Mike

*Michael R. Rake*
P.O. Box 1556
Lake Dallas, TX 75065
Phone and Fax: 940-498-2103
E-mail: mrake1@mrakeattorney.com

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Sunday, October 15, 2023 6:40 AM
**To:** Michael Rake <mrake1@mrakeattorney.com>
**Cc:** Adam Phillips <Adam@KDphillipslaw.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>
**Subject:** Ross v. Diversified

Michael,
I am writing to inquire as to the responses to our requests for production of documentation served on you on September 14, 2023.  Please advise if your client will turn over discovery to my client.  We will be filing a motion to compel discovery responses, please advise if you are agreed or opposed to our motion.

Thank you,



**Kerri Phillips**
KD Phillips Law Firm, PLLC
**Phone:** 972-327-5800 ext. 1001
**Fax: 940-400-0089**
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024
**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of

**APPENDIX 10**

this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**APPENDIX 11**

**Kerri Phillips**

---

| | |
|---|---|
| **From:** | Michael Rake <mrake1@mrakeattorney.com> |
| **Sent:** | Monday, October 16, 2023 1:42 PM |
| **To:** | Kerri Phillips |
| **Cc:** | Mike McGaughey (mmcgaughey@dcscollect.com); Tom Reber (diversifiedcredit@sbcglobal.net) |
| **Subject:** | RE: Ross v. Diversified |
| **Attachments:** | Defs' Response to RFP - Ross - 10 16 23 - final.pdf; Exhibit 1-Privilege Log.pdf; Exhibit 2 E-mails and JP Court Registry.pdf; Exhibit 3-Call and event log.pdf |

Afternoon Kerri:

Please find attached my client's Production responses and exhibits.
Regards,
Mike

*Michael R. Rake*

P.O. Box 1556
Lake Dallas, TX 75065
Phone and Fax: 940-498-2103
E-mail: mrake1@mrakeattorney.com

---

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Sunday, October 15, 2023 6:40 AM
**To:** Michael Rake <mrake1@mrakeattorney.com>
**Cc:** Adam Phillips <Adam@KDphillipslaw.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>
**Subject:** Ross v. Diversified

Michael,
I am writing to inquire as to the responses to our requests for production of documentation served on you on September 14, 2023.  Please advise if your client will turn over discovery to my client.  We will be filing a motion to compel discovery responses, please advise if you are agreed or opposed to our motion.

Thank you,



**Kerri Phillips**
KD Phillips Law Firm, PLLC
**Phone:** 972-327-5800 ext. 1001
**Fax:** **940**-400-0089
**Email:** Kerri@KDphillipslaw.com
6010 W. Spring Creek Parkway
Plano, TX 75024
**www.KDphillipslaw.com**

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent responsible for delivering the message to the

**APPENDIX 12**

intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**APPENDIX 13**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No. 4:22-cv-343-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| | § | |
| Defendants/Counterclaim Plaintiff. | § | |

**DEFENDANT, MCGAUGHEY, REBER AND ASSOCIATES, INC., D/B/A DIVERSIFIED
CREDIT SYSTEMS (DIVERSIFIED) RESPONSES TO
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34, Fed. R. Civ. P., Defendant, McGaughey, Reber and Associates, Inc.

d/b/a Diversified Credit Systems (Diversified) hereby responds to Plaintiff's Request for

Production of Documents.

**1.     All documents and communications of any kind between Diversified and Julie
Hedrick relating to the Ross Transition Agreement since April, 2020.**

**RESP0NSE:**  Defendant**,** Diversified objects to this Request to the extent it seeks
information protected by the attorney-client privilege or work product doctrine. Subject to and
without waiving that objection, responsive non-privileged documents will be produced.
However, Diversified is not in possession of any documents between Julie Hedrick and
Diversified, other than documents that have been produced by Defendant, APFA and copied to
Defendant, Diversified.

**2.     All documents and communications of any kind between Diversified and any APFA
National Officers, Board of Directors, and any APFA Union Member discussing the Ross
Transition Agreement since April 1, 2020.**

**APPENDIX 14**

**RESPONSE: Defendant,** Diversified objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Subject to and without waiving that objection, responsive non-privileged documents will be produced.

However, Diversified is not in possession of any documents discussing the Ross Transition Agreement with anyone from APFA since April 1, 2020 to date, other than those documents that have already been produced by Co-Defendant, APFA.

**3.      All documents and communications of any kind between Diversified or any agent or representative thereof and Joseph Burns, William Osborne, Margot Nikitas, Sanford Denison, Jeff Baros, Charlette Matts, or James Sanford between April 1, 2020 to current discussing Robert "Bob: Ross.**

**RESPONSE:  Defendant,** Diversified objects to this Request as overly broad and unduly burdensome.  This Request does not describe with reasonable particularity each item or category of items to be produced and seeks information which is not relevant to any party's claim or defense and is not proportional to the needs of the case.  **Defendant,** Diversified further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Without waving the above objection, Diversified does not have any documents between Diversified or any agent or representative thereof and Joseph Burns, William Osborne, Margot Nikitas, Sanford Denison, Jeff Baros, Charlette Matts, or James Sanford between April 1, 2020 to current discussing Robert "Bob: Ross, except those involving Attorney client communications with Margot Nikitas and any documents previously produced by Co-Defendant, APFA.

Defendant's Privilege Log is attached as "Defendant Diversified Exhibit 1".

**4.      Produce either the Forward Flow Agreement or the Purchase and Sale Agreement documents (whichever is applicable) comprising the contract between Diversified wherein Diversified acquired the account that is the subject of this lawsuit.  This request includes, without limitation, the portion of such contract where any representations and warranties and indemnifications, which may have been made by regarding the accuracy and or completeness of the information contained in the business records of for accounts sold to Plaintiff, including the account that is the subject of this lawsuit.**

**APPENDIX 15**

**RESPONSE:** Defendant, Diversified does not have documents containing Forward Flow Agreement(s) or a Purchase and Sale Agreement(s).

**5.     All documents and communications transmitting any communications or documents Woods, Stephens, and O'Neil, L.LP.**

**RESPONSE:** The Defendant, Diversified objects to this Request as seeking information outside of their custody or control The Defendant, Diversified.  Defendant, Diversified also object to this Request because it is ambiguous and to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Without waving the objections above, any document in the possession of Defendant, Diversified, that mentions Woods, Stephens, and O'Neal, L.L.P will be produced, except to the extent those items were produced by Co-Defendants, or those protected by the attorney-client privilege or work doctrine.

Please see the Privilege Log attached as an "Exhibit 1" hereto.

**6.     If Diversified has been reporting the account the subject of this lawsuit to any credit bureau, then produce all documents revealing or disclosing when and how Diversified has credit reported the date of first default for the subject account in Diversified's trade-line.**

**RESPONSE:** Defendant, Diversified objects to this Request because it is ambiguous. Without waving and subject to the objections above objection, Defendant, Diversified, will produce documents responsive to this request to the extent of its understanding of the request. (See document "Exhibit 3")

**7.     All written statements and /or call recordings and/or oral statements of Bob Ross, or any agent of Diversified, or any witness in this lawsuit.**

**RESPONSE:** The Defendant, Diversified objects to this Request as so vague and ambiguous as to preclude a meaningful response.  The Defendant Diversified further objects to this Request as overly broad and unduly burdensome because it is unlimited as to time or context and is unlikely to lead to the discovery of relevant evidence.

**APPENDIX 16**

Subject to, and without waiving these objections, Defendant, Diversified will produce documents with communications between Bob Ross and Diversified to the extent documents are in the possession or control of Defendant, Diversified.

Documents responsive to this request are attached as "Exhibit 2"

**8.      All documents and communications wherein Plaintiff authorized release of his credit information to a third-party vendor, and/or authorized credit reporting on his credit report**

**RESPONSE:** The Defendant, Diversified objects to this Request as so vague and ambiguous as to preclude a meaningful response. The Defendant Diversified further objects to this Request as overly broad and unduly burdensome because it is unlimited as to time or context, and is unlikely to lead to the discovery of relevant evidence.

Subject to, and without waiving these objections, Defendant, Diversified will produce herewith communications between Bob Ross and Diversified to the extent documents are in the possession or control of Defendant, Diversified.

Documents responsive to this request are attached as "Exhibit 3"

*/S/ Michael R. Rake*

_____
**Michael R. Rake, Attorney at Law**
**SB # 16487600**
P.O. Box 1556
Lake Dallas, TX 75065
Tel. & Fax: 940-498-2103
E-mail: mrake1@mrakeattorney.com

*Counsel for Defendant, McGaughey, Reber,*
*and Associates, Inc., d/b/a Dire*

Dated: October 16, 2023

<u>**CERTIFICATE OF SERVICE**</u>

I Certify that on October 16, 2023 a true and correct copy of the forgoing instrument was served upon Plaintiff's attorney, Kerri Phillips, via e-mail to Kerri Phillips/kerri@KDphillipslaw.com

**APPENDIX 17**

Ross v. Association of Professional Flight
Attendants, et. al; 4:22-cv-00343-Y


DEFENDANT, DIVERSIFIED'S EXHIBITS
(DOCUMENTS) IN RESPONSE TO PLAINTIFF'S
REQUEST FOR PRODUCTION


EXHIBIT 1

PRIVILEGE LOG

(2 pages)

**APPENDIX 18**

*Ross v APFA*

Privilege Log of Diversified Credit Systems

| Date | From | To | Concerning | Privilege |
|---|---|---|---|---|
| 11/1/2021 | Thomas Reber | Erik Harris, cc'd Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 11/2/2021 | Margot Nikitas | Thomas Reber, Erik Harris | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 11/2/2021 | Thomas Reber | Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 11/16/2021 | Thomas Reber | Erik Harris, cc'd Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 12/8/2021 | Margot Nikitas | Thomas Reber, Erik Harris | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 12/8/2021 | Thomas Reber | Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 1/7/2022 | Thomas Reber | Erik Harris, cc'd Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 1/21/2022 | Thomas Reber | Erik Harris, cc'd Margot Nikitas | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 1/21/2022 | Margot Nikitas | Thomas Reber, Erik Harris | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 3/22/2022 | Margot Nikitas | Michael Rake | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |

**APPENDIX 19**

| 3/25/2022 | Michael Rake | Margot Nikitas, cc'd Thomas Reber and M. McGaughey | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
|---|---|---|---|---|
| 3/25/2022 | Margot Nikitas | Michael Rake, cc'd Thomas Reber and M. McGaughey | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 3/30/2022 | Michael Rake | Margot Nikitas, cc'd Thomas Reber and M. McGaughey | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |
| 3/30/2022 | Margot Nikitas | Michael Rake, cc'd Thomas Reber and M. McGaughey | Advice, counsel, and related communications re: legal matters | Attorney Client Privilege |

**APPENDIX 20**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA DENNIS, individually, and § \
on behalf of the Estate of JAMES § \
CARTER, § \
§ \
        Plaintiff, § \
§ \
V. §       No. 3:16-cv-3148-G-BN \
§ \
UNITED STATES OF AMERICA, § \
§ \
        Defendant. §

## MEMORANDUM OPINION AND ORDER

Defendant United States of America has filed a Motion to Quash or, Alternatively, for Protective Order. *See* Dkt. No. 19 (the "MPO"). Defendant "moves to quash or, alternatively, for protective order from Plaintiff Barbara Dennis's Amended Second Notice of Deposition of a Corporate Representative with subpoenas duces tecum, dated August 8, 2017 pursuant to Federal Rule of Civil Procedure 26(c)." *Id.* at 1.

All discovery matters in this case have been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 5.

Plaintiff Barbara Dennis filed a response, *see* Dkt. Nos. 23 & 24, and Defendant filed a reply, *see* Dkt. No. 27. The Court then denied Ms. Dennis's Motion for Leave to File Sur-Reply Brief [Dkt. No. 28] because "[t]he matters that Plaintiff seeks to address in a sur-reply brief – alleged factual inaccuracies and misstatements of law in

**APPENDIX 21**

Defendant's reply – are not the kind of new issues, arguments, legal theories, or evidence presented for the first time in a reply that the responding party, in fairness, must be given an opportunity to address." Dkt. No. 29.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendant United States of America's Motion to Quash or, Alternatively, for Protective Order [Dkt. No. 19].

## Background

In the MPO, Defendant explains that Ms. Dennis

> filed suit against the United States under the Federal Tort Claims Act (FTCA) for alleged negligent medical treatment of James Carter and amended her complaint on March 15, 2017. (Dkts. 1, 14). Dennis asserts Defendant is directly and vicariously liable for alleged negligence related to the care and treatment of Mr. Carter, who was a patient at the Dallas VA Medical Center or the Community Living Center (CLC) for slightly more than a year before he died at the age of 87. (Dkt. 14 at 5-7). Dennis does not allege any particular individual was negligent, but avers Defendant is responsible for the acts of the VA's team of "physicians, doctors, nurses, staff members, technicians, specialists, non-specialists, and/or other personnel" who provided care to Mr. Carter. (Dkt. 14 at 4, 5, 7). Dennis's second amended initial disclosures identify more than eighty (80) VA employees with alleged knowledge of relevant facts in this case. (App'x 45-53).

Dkt. No. 20 at 2.

Defendant opposes Ms. Dennis's noticed Federal Rule of Civil Procedure 30(b)(6) corporate representative deposition because she "seeks a contention deposition, covering an entire year of medical care provided to an 87 year old patient at the VA with a complex medical history involving than 80 employees" and, although Ms. Dennis "revised the topics set forth in the notice, seeking to depose a representative regarding

**APPENDIX 22**

'facts,'" "Defendant contends that the request to depose a corporate representative regarding (a) 'facts' related to Defendant's legal theories invades the work product privilege, and (b) 'facts' related to the medical care provided by a large number of medical professionals is unduly burdensome." *Id.* at 1 (emphasis removed).

The current notice directs "Defendant Dallas VA Medical Center ... to designate a person or persons to testify on its behalf on the following matters:"Dennis

1. The facts upon which Defendant bases denials and affirmative defenses stated in its amended answer;
2. The facts upon with Defendant bases its discovery responses, including its interrogatory answers and document production;
3. The facts related to the leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment;
4. The facts related to the malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment; and
5. The records and documents requested in Exhibit A to this Notice.

Dkt. 21-4 at 7-8 of 25 (App'x 101-02).

Defendant explains that it "does not object, in theory, to the request to depose a corporate representative to the extent Dennis seeks to identify facts that are outside the knowledge of the individuals who treated Mr. Carter" but "objects to [Ms. Dennis's] request to depose a corporate representative regarding (1) Defendant's legal theories and contentions and (2) facts contained in the entire 10,826 pages of documents produced in this case, including the medical records, administrative documents, and witnesses identified in those documents; (3) facts not included in the medical records regarding the decisions and judgment of the medical professionals identified in the medical records; and (4) facts related to the care provided by multiple medical

-3-

**APPENDIX 23**

professionals for Mr. Carter's leg injury and malnutrition." Dkt. No. 20 at 12-13. "Defendant contends [Ms. Dennis] should discover these facts directly from relevant medical providers who provided care to Mr. Carter, not a representative." *Id.* at 13.

"Thus, Defendant moves to quash the deposition in its entirety. In the alternative, if Defendant is required to produce a corporate representative, Defendant moves for a protective order limiting the scope of the deposition [of a corporate representative to facts contained in the medical records related solely to Mr. Carter's leg injury and malnutrition], and to stay the deposition until no earlier than 30 days after the Court rules on this motion." *Id.* at 1-2, 13 (emphasis removed).

More specifically, Defendant asserts that "[t]here is good cause to quash the deposition, or in the alternative, to issue a protective order limiting the deposition of a corporate representative" because

· as to Topics 1 and 2 in Plaintiff's Amended Second Notice of Deposition, Ms. "Dennis's request to depose a representative regarding Defendant's affirmative defenses and interrogatory responses is an improper contention deposition";

· as to Topics 3 and 4, Ms. "Dennis's request to depose a representative regarding specific medical conditions is unduly burdensome and not proportional to the needs of the case";

· as to Topic 5, Ms. "Dennis's request to depose a representative regarding the entire record is unduly burdensome and not proportional to the needs of the case";

· as to Topics 3 and 4, Ms. "Dennis fails to establish that she cannot obtain the

**APPENDIX 24**

information she seeks through other less intrusive means"; and

· as to Topics 1 and 5, Ms. "Dennis cannot require Defendant to marshal its evidence and identify all documents supporting its defenses at a representative's deposition."

*Id.* at ii.

Ms. Dennis responds that "that the deposition sought is proper and necessary, and Defendant has failed to meet its legal burden to show otherwise" and that she "has attempted to discover the facts upon which Defendant allegedly relies to support its positions through written discovery, including interrogatories and requests for production. Defendant, however, has attempted in its responses, to 'hide the ball,' and has failed and refused to disclose the facts upon which it allegedly relies." Dkt. No. 23 at 1-2.

Ms. Dennis adds that, "[s]hould [she] not be permitted to obtain discovery of the facts upon which Defendant purports to rely though the 30(b)(6) deposition that is the subject of Defendant's motion, Plaintiff reserves the right to file a Motion to Compel more straightforward and informative written discovery responses from Defendant." *Id.* at 2.

In reply, Defendant argues that

[t]he Federal Rules of Civil Procedure permit depositions of a corporate representative – but they do not *ipso facto* permit Plaintiff Barbara Dennis to depose a representative on the topics identified in her notice of deposition. Topics 1 and 2 patently state that Dennis seeks to depose a representative on Defendant's affirmative defenses, which invades Defendant's work product privilege. (Dft App'x at 101). Topic 5 states that Dennis seeks to depose a representative on the entire medical file, which

**APPENDIX 25**

would require Defendant to marshal all of its evidence to prepare the deponent for deposition. (*Id.* at 102). And finally, Topics 3 and 4 seek to depose a representative regarding medical treatment for two distinct medical conditions, which should be addressed by fact witnesses, who can explain when, where, why, and how they treated Mr. Carter. (*Id.* at 101). Defendant thus seeks to quash the deposition as noticed.

Dkt. No. 27 at 1.

### Legal Standards

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, ___ F.R.D. ___, No. 3:15-cr-2108-D, 2017 WL 2832621, at *25 (N.D. Tex. June 26, 2017). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any

-6-

**APPENDIX 26**

party's claim or defense is also important in resolving the issues." *Id.* at \*26.

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014)

For the reasons the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do

**APPENDIX 27**

so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)© provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)©.

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Accord First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

**APPENDIX 28**

The party seeking discovery, to prevail on a motion for protective order, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (I) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller*, 303 F.R.D. at 475-77, 493-95.

As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or

**APPENDIX 29**

more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; © prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1); *see also Talon Transaction Technologies, Inc. v. StoneEagle Servs. Inc.*, No. 3:13-cv-902-P, 2014 WL 6819846, at *3 (N.D. Tex. Dec. 4, 2014) (explaining that, "'[w]hen a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic'"; that "[f]ailing to appear and testify as to designated topics for a Rule 30(b)(6) deposition 'is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26©'"; and that "a pending motion for protective order only protects a party from designating a witness to appear and testify as to the particular topics addressed in the pending motion" (quoting *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 142 (E.D. Tex. 2003); FED. R. CIV. P. 37(d)(2))).

-10-

**APPENDIX 30**

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted).

The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

The amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to prevail on its motion for protective order – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303

-11-

**APPENDIX 31**

F.R.D. at 483-93.

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26© for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rule of Civil Procedure 37(a)(5)(B)-© further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26© and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted

-12-

**APPENDIX 32**

in part and denied in part, the court may issue any protective order authorized under Rule 26© and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-©; *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

"[A] motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *De Angelis*, 265 F. App'x at 398 (internal quotation marks omitted); *see also Heller*, 303 F.R.D. at 477 ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in both law and fact,' such that 'there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)).

The United States Court of Appeals for the Fifth Circuit has explained in this context of a Federal Rule of Civil Procedure 30(b)(6) deposition of a corporate representative:

> Rule 30(b)(6) is designed "to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." Therefore, the deponent "'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other

-13-

**APPENDIX 33**

sources.

> "Obviously it is not literally possible to take the deposition of a corporation; instead, ... the information sought must be obtained from natural persons who can speak for the corporation." Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.

> We agree with BRA that Cajun violated rule 30(b)(6) by failing to prepare Grigsby with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization, such as whether BRA had presented a warranty claim to Cajun. At the very least, Cajun could have designated another witness with personal or corporate knowledge of the questions asked.

> If the designated "agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust* [*Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 187 (5th Cir. 1993).] In *Resolution Trust* we affirmed sanctions against a party that possessed documents that plainly identified a witness as having personal knowledge of the subject of the deposition but did not furnish those documents or designate the witness until after it had designated two other witnesses with no personal knowledge.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-34 (5th Cir. 2006) (footnotes and citations omitted).

Rule 30(b)(6) requires that a party seeking to depose an organization "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.

-14-

**APPENDIX 34**

The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. .... The persons designated must testify about information known or reasonably available to the organization.").

"For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Hartford Fire Ins. Co. V. P & H Cattle Co.*, No. 05-cv-2001, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009).

Finally, once discovery is authorized by rule, stipulation, or court order or because the parties have conferred as Federal Rule of Civil Procedure 26(f) requires, "[u]nless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." FED. R. CIV. P. 26(d)(2). "Rule 26(d) generally governs the sequencing of discovery unless the Court enters a protective order under Rule 26© or another order governing the sequence of conducting discovery under Federal Rule of Civil Procedure 16(b) or 26(d) or the parties make a stipulation under Federal Rule of Civil Procedure 29. Absent a court order providing otherwise or a binding stipulation, Rule 26(d)(2)(A)

-15-

**APPENDIX 35**

generally dictates that Plaintiffs may seek information through an interrogatory even if Defendant believes the subject matter would be better explored through a deposition." *Heller*, 303 F.R.D. at 493.

But "Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." *Cazorla*, 2016 WL 5400401, at *18 (footnote omitted); *accord Celanese Corp. v. Clariant Corp.*, No. 3:14-cv-4165-M, 2015 WL 9269415, at *4 (N.D. Tex. Dec. 21, 2015) ("Regardless of whether North Carolina or Texas law applies to Celanese's claim in this case, to establish the reasonableness of the defense costs that Celanese incurred in the Courtaulds Cases and the Selby Site Litigation, Clariant made clear at oral argument that it primarily wants access to these documents to determine if additional settlement offers or demands were made to Celanese in those cases that might not be reflected in documents already produced, whether Celanese accepted or rejected those demands, and, if any demand was rejected, why Celanese rejected it. As the Court discussed with counsel at oral argument, that information can best be obtained in the first instance by an interrogatory to Celanese asking for precisely that information, which, subject to any proper objections, *see generally Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), Celanese would be obligated to pull together into a verified answer by reviewing all sources of responsive information reasonably available to it (including these documents at issue on this motion), and as to which Clariant could then, if appropriate, take a follow-on deposition.").

And, "while, as a general matter, under Rule 26, a party may seek discovery through any permitted method in any sequence, ... 'there's certainly case law where

-16-

**APPENDIX 36**

there are some kinds of contention interrogatories where courts have felt that, in their discretion, they could say it ought to be a deposition instead, like a 30(b)(6) deposition.'" *Heller*, 303 F.R.D. at 493 (citing *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) (sustaining objections to contention interrogatories where "[o]ther discovery procedures, such as depositions and production of documents, better address whatever need there be for [any] kind of [requested] secondary detail")).

## Analysis

I.  <u>Deposition topics</u>

    A.    Topic 1 – "The facts upon which Defendant bases denials and affirmative defenses stated in its amended answer"

Contention interrogatories often ask for a recitation of the facts on which a claim, defense, allegation, or denial is based. The content or substance of an attorney's evaluation of why or how those facts support a claim or defense may be protected work product. But "a contention interrogatory seeking a description of the 'factual basis' [not privileged communications or work product] [is] precisely the sort contemplated by Fed. R. Civ. P. 33(a)(2)" and is not protected work product. *Ill. Union Ins. Co. v. La. Health Serv. and Indemnity Co.*, Civ. A. No. 16-6604, 2017 WL 2955355, at *2 (E.D. La. Apr. 13, 2017).

The same analysis applies to a Rule 30(b)(6) deposition topic seeking the identification of facts. *See Malibu Consulting Corp. v. Funair Corp.*, Civ. A. No. SA-06-CA-0735 XR, 2007 WL 3995913, at *1 (W.D. Tex. Nov. 14, 2007) ("I agree with the line of cases which holds that a Rule 30(b)(6) deposition which seeks information

**APPENDIX 37**

concerning the factual support for allegations found in the complaint, which would be discoverable through contention interrogatories, is outside the protection of the work-product doctrine and is permissible." (footnote omitted)); *accord Waste Mgmt. of La., LLC v. River Birch, Inc.*, Civ. A. No. 11-2405, 2017 WL 2831700, at \*3 (E.D.La. June 30, 2017).

Likewise, "while, in general, investigative reports prepared by the party's attorney are protected by the work-product doctrine (which is governed by federal law), a corporate representative cannot be instructed not to answer a question seeking factual information within a designated topic for Rule 30(b)(6) testimony simply because the corporate representative learned the information from an attorney who gathered the information in anticipation of litigation or for trial. The attorney's investigation and the manner in which he or she gathered and organized and analyzed the information and presented it to the corporate representative may itself be protected work product, but the underlying factual information itself remains discoverable through the corporate representative's testimony. Where the deponent is asked only about facts that are responsive to the noticed deposition topics, testifying to the underlying facts and that the deponent learned a fact from the company's attorney – without more – does not impermissibly reveal protected attorney work product, including the attorney's mental processes, impressions, conclusions, opinions, or legal theories." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015 WL 11120526, at \*7 (N.D. Tex. July 15, 2015) (citations omitted).

Defendant's work product objection to Topic 1 is not well-taken and overruled.

**APPENDIX 38**

And the Court cannot accept Defendant's assertion that this testimony must await expert reports. As the Court has previously concluded, "a party cannot avoid discovery – whether by an interrogatory, a Rule 36 request, or Federal Rule of Civil Procedure 30(b)(6) deposition testimony – of its own views on a factual matter in dispute (or perhaps, in fact, not in dispute) simply because its view on that matter may be informed by consulting with its retained experts." *McKinney/Pearl Restaurant Ptrs., L.P. v. Metro. Life Ins. Co.*, ___ F.R.D. ___, No. 3:14-cv-2498-B, 2016 WL 98603, at *15 (N.D. Tex. Jan. 8, 2016). And the Court is not persuaded that the mere possibility that an expert report or expert witness's deposition may later adequately cover the same information is good cause for quashal or a protective order as to the Rule 30(b)(6) topic here.

But, applying Rule 30(b)(6)'s "reasonable particularity" standard, the Court finds that Topic 1's seeking testimony on all "facts upon which Defendant bases denials and affirmative defenses stated in its amended answer" is overly broad because it fails to describe the testimony sought with reasonable particularity to enable Defendant to reasonably identify and marshal the facts as to which it must prepare its corporate representative to testify. That Ms. Dennis may believe that Defendant has not properly or fully responded to other discovery requests seeking the same information does not change the fact that a responding party is entitled to insist that a requesting party comply with Rule 30(b)(6)'s "reasonable particularity" requirement.

The Court therefore GRANTS Defendant's MPO as to Topic 1 in Plaintiff's Amended Second Notice of Deposition and quashes the Amended Second Notice of

-19-

Deposition as to Topic 1 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 1 as currently framed.

B.   Topic 2 – "The facts upon with Defendant bases its discovery responses, including its interrogatory answers and document production"

The same analysis applies to Topic 2, which does not improperly seek attorney work product but which runs afoul of Rule 30(b)(6)'s standard because it fails to describe the testimony sought with reasonable particularity.

The Court therefore GRANTS Defendant's MPO as to Topic 2 in Plaintiff's Amended Second Notice of Deposition and quashes the Amended Second Notice of Deposition as to Topic 2 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 2 as currently framed.

C.   Topic 3 – "The facts related to the leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment" – and Topic 4 – "The facts related to the malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment"

Defendant argues that "[a]sking a representative to testify regarding two specific medical conditions is unduly burdensome for several reasons," including that "[a] representative cannot completely and fully testify regarding facts related to a specific health problem, such as the leg wound or alleged malnutrition" and that "[i]t is impossible for a single representative (or multiple representatives) to explain why a team of internists, medical specialists, nurses, dieticians, and other medical professionals made daily, on-going decisions for an entire year regarding care they provided to a frail 87-year old patient with a complex medical history and multiple

-20-

comorbidities." Dkt. No. 20 at 14-15. According to Defendant, "[a]sking a corporate representative to testify on behalf of those who provided care to Mr. Carter is inefficient and less accurate, and therefore, inappropriate and unduly burdensome." Dkt. No. 27 at 5 (emphasis removed).

Ms. Dennis responds that Defendant proposes the far more burdensome approach of deposing the "the roughly eighty (80) medical providers who 'treated' Mr. Carter during his stay at the Dallas VA Medical Center." Dkt. No. 24 at 11. "Not only could this be considered the most intrusive and unduly burdensome means to obtain this information, but would increase the overall costs for both parties exponentially, and create a logistical burden on both parties to coordinate the production of all eighty (80) of these doctors, nurses, and staff for their depositions." *Id.*

Defendant replies that, "[b]ased on the medical records, which Dennis has in her possession, Dennis could identify two or three medical care providers to depose as fact witnesses, who could explain how and why they treated Mr. Carter's leg injury and assessed his nutritional needs, and/or whether they believe Mr. Carter was malnourished," and that "deposing two or three fact witnesses is far less burdensome than requiring a corporate representative to review the medical records, interview treatment providers, and testify on their behalf." Dkt. No. 27 at 5 (emphasis removed; footnote omitted).

Defendant's proposal is too limiting under Rule 30(b)(6), under which Defendant "is expected to create a witness or witnesses with responsive knowledge." *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005) (emphasis removed). Ms. Dennis is not

limited to deposing as fact witnesses only a few health care professionals involved, nor is she "obliged to depose a string of hospital employees, none of whom is able to speak for the hospital as to how the incident or incidents in question occurred, nor indeed is a 30(b)(6) requesting party limited to conducting her factual inquiry via interrogatories." *Id.* at 529. Under Rule 30(b)(6), Defendant has a duty to present and prepare a Rule 30(b)(6) "designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth.*, 469 F.3d at 433 (internal quotation marks omitted). Preparing this Rule 30(b)(6) designated representative may be time-consuming and burdensome, but the Court does not find that it would be unduly burdensome, particularly in light of the available alternatives that Defendant offers.

The Court therefore OVERRULES Defendants objections and DENIES Defendant's MPO as to Topics 3 and 4 in Plaintiff's Amended Second Notice of Deposition, which the Court finds to be relevant and proportional to the needs of the case.

> D.    Topic 5 – "The records and documents requested in Exhibit A to this Notice"

For the reasons explained as to Topic 1, the Court finds that Topic 5 is overly broad on its fact because asking a corporate representative to testify as to an extensive document production fails to describe the testimony sought with reasonable particularity.

The Court therefore GRANTS Defendant's MPO as to Topic 5 in Plaintiff's

Amended Second Notice of Deposition and quashes the Amended Second Notice of Deposition as to Topic 5 and enters a protective order precluding any requirement for Defendant to present a corporate representative as to Topic 5 as currently framed.

II.   <u>Interrogatories</u>

Ms. Dennis's response and Defendant's reply include some argument as to the adequacy and sufficiency of Defendants' answers to interrogatories and responses to document requests. But a motion to compel has not yet been filed in compliance with the Court's Standing Order on Discovery [Dkt. No. 6]. The Court will not prematurely delve into the disputes on these discovery requests before a proper motion is filed and briefed.

III.   <u>Award of expenses</u>

Under Rules 26(c)(3) and 37(a)(5), the Court determines that, under all of the circumstances presented here, Ms. Dennis and Defendants should bear their own expenses, including attorneys' fees, in connection with the MPO.

<strong>Conclusion</strong>

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Defendant United States of America's Motion to Quash or, Alternatively, for Protective Order [Dkt. No. 19].

SO ORDERED.

DATED: October 23, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-23-

**APPENDIX 43**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KELLY MCGOWAN, *et al.*,           §
                                   §
        Plaintiffs,                §
                                   §
v.                                 §          Civil Action No. 3:18-CV-141-N
                                   §
SOUTHERN METHODIST                 §
UNIVERSITY,                        §
                                   §
        Defendant.                 §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Southern Methodist University's ("SMU") motion to compel [44].  For the following reasons, the Court grants in part and denies in part SMU's motion.

### I.  ORIGINS OF THE DISCOVERY DISPUTE

Plaintiffs filed suit against SMU alleging negligence and Title IX violations.  More specifically, Plaintiffs allege that their participation on SMU's women's rowing team led to hip injuries, which affected and continue to affect their abilities to engage in certain activities.  SMU served Plaintiffs with its first set of requests for production and interrogatories, seeking, among other requests, information regarding Plaintiffs' social media activity, their employment information, and a damages calculations.  Plaintiffs objected to these requests.  SMU filed its motion to compel and seeks the Court to order Plaintiffs to provide the requested information.

MEMORANDUM OPINION AND ORDER – PAGE 1

**APPENDIX 44**

## II.  MOTION TO COMPEL LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  A litigant may request the production of documents falling "within the scope of Rule 26(b)" from another party if the documents are in that party's "possession, custody, or control." FED. R. CIV. P. 34(a).  To enforce discovery rights, a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).  The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirement. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  A district court has wide discretion to supervise discovery and must limit discovery if it would be unreasonably cumulative, could be obtained more easily from a different source, or if the burden or expense of the proposed discovery outweighs its potential benefit. *See* FED. R. CIV. P. 26(b)(2)(C).

When evaluating the relevance of a request, courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1).  The Court should "balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

### III.  THE COURT GRANTS IN PART AND DENIES IN PART SMU'S MOTION

First, the Court grants SMU limited access to Plaintiffs' social media accounts. Second, the Court requires Plaintiffs to provide limited employment information, and finally, the Court orders Plaintiffs to provide a damages calculation regarding medical damages.

#### A.  *The Court Grants in Part SMU's Request for Plaintiffs' Social Media Information*

Social media information is usually considered discoverable and "is neither privileged nor protected by any right of privacy." *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016) (internal quotations and citations omitted).  But courts generally do not endorse an extremely broad request for all social media site content.  *Id.* For instance, "[c]ourts have held that ordering a party to permit access to or produce complete copies of his social networking site accounts would permit his opponent to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable." *Id.*

SMU submitted three requests for production, asking Plaintiffs to provide all Facebook, Instagram, and Twitter account information from the date of their enrollment at SMU to the present.  Def. Southern Methodist University's Mot. Compel Pls.' Disc. Resps. Br. Supp. ("SMU's Mot.") 7 [44].  Plaintiffs objected that the requests were overly broad, unduly burdensome, irrelevant, disproportionate, and an invasion of Plaintiffs' privacy. *See* App. Supp. Def. Southern Methodist University's Mot. Compel Pls.' Disc. Resps. ("SMU's App."), Ex. F 28 [45].  But Plaintiffs later provided social media information showing Plaintiffs' engagement in physical activities.  Pls.' Resp. Opp'n Def. Southern

MEMORANDUM OPINION AND ORDER – PAGE 3

**APPENDIX 46**

Methodist University's Mot. Compel Pl.'s Disc. Resps. Br. Supp. ("Pls.' Resp.") 7–8 [47]. Yet, SMU contends that it is entitled to all social media information because Plaintiffs' allegations go beyond just the impairment of their abilities to perform physical activities. SMU's Mot. 8.

The Court determines that Plaintiffs' social media information is discoverable, but SMU is not entitled to unlimited access to Plaintiffs' social media accounts because the Court is persuaded that unfettered access is too broad. Thus, to the extent that the Plaintiffs have yet to do so, the Court requires Plaintiffs to produce posts reflecting Plaintiffs' physical activities and emotional state, but the Court does not grant SMU unlimited access to Plaintiffs' social media.

### B. The Court Grants in Part SMU's Request for Employment Information

SMU requested that each Plaintiff return a "[s]igned authorization attached to this Request for Production, allowing SMU to obtain your employment records." Pls.' Resp. 8. Plaintiffs objected to the request as overly broad, not relevant, and not proportional to the case. *Id.* at 9. Plaintiffs contend that they do not seek lost wages and that this information was an unnecessary intrusion into Plaintiffs' professional lives. *Id.* However, SMU argues that Plaintiffs' employment information is relevant to Plaintiffs' claims that SMU's conduct affected their abilities to perform daily activities. SMU's Mot. 17.

The Court grants SMU's request in part. The Court determines that employment history is relevant, but the Court limits the scope of discoverable information. The Court orders that Plaintiffs provide SMU with each Plaintiffs' employment history, including information such as the date of employment, the employer's contact information, and a job

MEMORANDUM OPINION AND ORDER – PAGE 4

description.  But the Court does not grant SMU a blanket release.  If necessary, SMU can seek additional information from each employer.

### C. *The Court Grants in Part SMU's Request for a Damages Calculation*

Finally, the Court grants in part SMU's request for a damages calculation.  Under Federal Rule of Civil Procedure 26, the plaintiff should provide "a computation of each category of damages claimed by the disclosing party."  FED. R. CIV. P. 26(a)(1)(A)(iii).  SMU requested Plaintiffs provide "[a]n itemization and explanation of each category of damages Plaintiffs seek in this case, along with any documents related to or supporting such damages."  SMU's Mot. 3.  Plaintiffs objected to SMU's request as overly broad, unduly burdensome, seeking information that is not relevant, not proportionate to the case, not limited to the proper time, scope, or subject matter, lacking particularity, premature, and protected by privilege.  *See* SMU's App., Ex. F 26–27.  Later, Plaintiffs informed SMU that they needed additional discovery, including an expert report, in order to provide a proper damages calculation, and they intend to provide a computation of future care expenses in a supplemental disclosure.  Pls.' Resp. 10–11; SMU's Mot. 5.

The Court determines that SMU is entitled to a limited damages calculation and grants SMU's request with respect to past medical damages only.  The Court orders Plaintiffs to provide a damages calculation regarding past medical damages, and the Court requires Plaintiffs to provide full supplementation as of Plaintiffs' expert designation date.

### CONCLUSION

The Court grants SMU's motion in part.  The Court orders Plaintiffs to provide limited access to their social media accounts and limited employment history.

MEMORANDUM OPINION AND ORDER – PAGE 5

Additionally, the Court requires Plaintiffs to provide a damages calculation regarding medical damages.  The Court orders Plaintiffs to provide the stated discovery within thirty (30) days of this Order.


Signed May 6, 2020.


David C. Godbey
United States District Judge


MEMORANDUM OPINION AND ORDER – PAGE 6

**APPENDIX 49**

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ORTHOACCEL TECHNOLOGIES, INC. | § | |
| | § | |
| v. | § | Civil Action No.  4:16-cv-00350-ALM |
| | § | Judge Mazzant |
| PROPEL ORTHODONTICS, LLC | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff OrthoAccel Technologies, Inc.'s Motion to Compel Propel's Financials (Dkt. #317). The Court, having considered the motion and relevant pleadings, finds the motion should be granted in part.

### BACKGROUND

This motion comes before the Court as the parties' latest discovery dispute. On November 17, 2016, the Court ordered both OrthoAccel Technologies, Inc. ("OrthoAccel") and Propel Orthodontics, LLC ("Propel") to produce financial statements for the years 2014, 2015, and 2016 by November 21, 2016. In response, Propel produced a one-page "Statement of Operations" for each year. OrthoAccel, dissatisfied with the information contained in these reports, requested via email and at a meet and confer "detailed financial information from January 2015 to present" including Propel's trial balance, QuickBooks, or other financial accounting statements and reports. OrthoAccel also requested Propel's general ledgers including profit and loss statements ("P&L statements").

Following a meet and confer, Propel produced a single Statement of Operations for March 2016 through January 2017. On March 6, 2017, OrthoAccel again requested Propel's trial balance, QuickBooks, general ledgers, P&L statements, and other financial accounting statements and reports. Propel responded that it had already produced the P&L statements and would provide a

Bates label if OrthoAccel was unable to locate them. On March 19, 2017, Propel designated Greg Braham as its 30(b)(6) corporate representative to testify on Propel's (1) financial statements and the data supporting those statements; (2) total costs by quarter or month for advertising, marketing, or any other sales efforts for the VPro5; and (3) total revenues by month and quarter for sales of the VPro5. OrthoAccel again asked Propel for the Bates label of the P&L statements before Braham's deposition. On the eve of Braham's deposition, Propel instead provided OrthoAccel the Bates label for some of Propel's expenses from March 2016 to January 2017.

Braham's deposition revealed that he exported a P&L statement from QuickBooks, then following a conversation with his counsel, altered the P&L statement to produce a selling general and administrative ("SG&A") report. The SG&A report was created by deleting the revenues, cost of goods sold, and research and development costs from the QuickBooks-generated P&L statement. Braham stated it took only five minutes to produce the P&L statements, and he has created P&L statements for Propel in the past.

On March 22, 2017, OrthoAccel's counsel brought the discovery dispute to the Court's attention. The Court ordered the parties to brief the issue. On March 24, 2017, OrthoAccel filed a Sealed Motion to Compel Propel's Financials (Dkt. #317). On March 29, 2017, Propel filed a response (Dkt. #323).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to

2

**APPENDIX 51**

the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents ("RFPs"), electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law. Fed. R. Civ. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

**APPENDIX 52**

The federal rules follow a proportionality standard for discovery. Fed. R. Civ. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. Fed. R. Civ. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information— with respect to that part of the determination." *Id.*

## ANALYSIS

OrthoAccel asserts that Propel refuses to produce its full financial statements necessary for OrthoAccel to present its damages claim and defend against Propel's counterclaims. OrthoAccel alleges Propel has mischaracterized the nature and extent of the financials available, and Propel could easily produce the relevant financials without undue expense or burden. OrthoAccel seeks an electronic copy of Propel's QuickBooks file or full and complete monthly P&L statements for each month between January 2014 and January 2017. Propel argues that such an expansive "data dump" request is extraordinary and should be denied. Propel claims that because it is a closely held, small company it does not have complex or audited financials and it produced the only financial statements it possessed. Further, Propel argues that OrthoAccel already has the financial information it needs, and creating P&L reports would be burdensome and duplicative. For the reasons set forth below, the Court finds Propel should produce monthly P&L statements from January 2014 through January 2017.

OrthoAccel seeks Propel's financials to determine the full amount in controversy, to prove its damages under the Lanham Act, and to defend against Propel's damages claims. The Court

**APPENDIX 53**

finds that the materials and information sought are relevant because they are critical to OrthoAccel's damages analysis. *See Export Worldwide, Ltd.*, 241 F.R.D. at 263. The burden is on Propel to show why the requested financials are irrelevant, overly broad, unduly burdensome or oppressive. *Id.* Propel claims the information sought is irrelevant because the requested financials contain sales information for other products in Propel's line that are not the subject of this litigation. But the Court is not convinced by this argument. Propel should not deprive OrthoAccel of relevant financial information simply because Propel sells multiple products and does not segregate its product lines in its financials. The Protective Order only permits OrthoAccel's attorneys and designated experts to review the financials (Dkt. #79). If the P&L statements incorporate values irrelevant to OrthoAccel's claims or defenses, production would cause Propel no competitive harm.

Propel further claims that OrthoAccel's request to turn over an electronic copy of Propel's QuickBooks program is irrelevant and overly broad because it contains Propel's entire history of financial information for all products sold worldwide. The Court agrees. Unfettered access to the entirety of Propel's QuickBooks program is clearly not proportional to the needs of the case. But this reasoning does not extend to the requested P&L statements for the relevant period. The Court ordered both parties to produce full financials for the years 2014, 2015, and 2016 (Dkt. #165, #166). Producing P&L statements for these years would be neither irrelevant nor overly broad.

Propel finally argues that producing the requested financials would be unduly burdensome and duplicative. This argument is without merit. In response to discovery requests, Propel produced SG&A reports. Mr. Braham testified that these SG&A reports were created by exporting P&L statements from QuickBooks, then altering the P&L statements by removing the cost of

**APPENDIX 54**

goods sold, research and development costs, and revenues (Dkt. #317, Exhibit N at 84–85). Mr.

Braham further testified that while Propel does not produce P&L statements on a routine quarterly

basis, Propel's management has asked him to produce P&L statements at request in the past (*Id.*

at 133–34). Mr. Braham also stated that the QuickBooks program is capable of creating monthly,

quarterly, or annual P&L statements (*Id.* at 53). Finally, Mr. Braham testified that it took him only

five minutes to export the P&L statements from QuickBooks (*Id.* at 101–02). The Court finds

production of these P&L statements appropriate and not unduly burdensome or duplicative.

## CONCLUSION

The Court, having considered the pleadings, finds OrthoAccel has proven that the P&L

statements are relevant and proportional to its needs in the case. The Court further finds that Propel

has not met its burden in proving the requested P&L statements should not be produced. *See Export*

*Worldwide, Ltd.*, 241 F.R.D. at 263. However, the Court denies OrthoAccel's request for an

electronic copy of Propel's entire QuickBooks program because it is an overbroad, disproportional

request.

Accordingly, the Court finds Plaintiff OrthoAccel Technologies, Inc.'s Motion to Compel

Propel's Financials (Dkt. #317) is **GRANTED** in part.

It is therefore **ORDERED** that Propel produce full monthly P&L statements from January

2014 through January 2017 by 5:00 p.m. on April 6, 2017.

**SIGNED this 4th day of April, 2017.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

**APPENDIX 55**