# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No. 4:22-cv-343-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | (Relates to Motion Referred to |
| FLIGHT ATTENDANTS, *et al.*, | § | Magistrate Judge Cureton) |
| | § | |
| Defendants/Counterclaim Plaintiff. | § | |

**RESPONSE OF WOOD, STEPHENS & O'NEIL, LLP AND APFA
IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND ........................................................................1

ARGUMENT: THE MOTION TO COMPEL SHOULD BE DENIED ........................................7

I.     The Subpoena Places An Undue Burden On WSO ............................................................7

        A.     The Subpoena Seeks Irrelevant Information.............................................................8

        B.     Plaintiff Does Not Need The Additional Documents Requested .............................9

        C.     The Subpoena Is Facially Overbroad........................................................................9

        D.     The Subpoena Covers An Excessive Time Period...................................................9

        E.     The Subpoena Does Not Provide "Reasonable Particularity." ...............................10

        F.     The Subpoena Places A Heavy Burden On WSO ..................................................11

II.     The Subpoena Would Impinge On The Privacy Of APFA Staff And Representatives ..................................................................................................................11

CONCLUSION................................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                            **Page**

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004)……………………………………………………...   7, 9, 11

*MetroPCS v. Thomas*,
327 F.R.D. 600 (N.D. Tex. 2018)……………………………………………………...   9

*Lopez v. Don Herring Ltd.*,
327 F.R.D. 567 (N.D. Tex. 2018)…………………………………………………..   11

*Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*,
313 F.R.D. 39 (N.D. Tex. 2015)…………………………………………………….   11

*Total Rx Care, LLC v. Great N. Ins. Co.*,
318 F.R.D. 587 (N.D. Tex. 2017)……………………………………………………...   12

*MC Trilogy Texas, LLC v. City of Heath, Texas*,
No. 3:22-CV-2154-D, 2023 WL 5918925 (N.D. Tex. Sept. 11, 2023)……………..   12

Wood, Stephens & O'Neil, LLP ("WSO") and the Association of Professional Flight Attendants ("APFA"), hereby oppose the Amended Motion to Compel Production of Documents pursuant to a subpoena *duces tecum* which was served on WSO in October 2022.

As set forth below, the subpoena as written and as Plaintiff now seeks to enforce would impose an undue burden on WSO – it seeks irrelevant information which is not needed by Plaintiff, and is facially overbroad and lacks the reasonable particularity required in federal discovery practice. In addition, the irrelevant documents demanded would impinge on the privacy of APFA staff and representatives, both former and current. Notwithstanding these issues, WSO has provided the documents reasonably available to it which are within the narrower time frame and context earlier proposed by Plaintiff's counsel. The motion to now seek to compel broader production covering a longer time period should be denied.

Accompanying this Response, in the accompanying Appendix, is the Declaration of Hal O'Neil as well as documents directly related to this discovery dispute.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an internal union arbitration which addressed charges of financial misconduct by Plaintiff Robert ("Bob") Ross during his term as National President of the APFA. Doc. 1-3 (Arbitration Award) and Doc. 39-1 (Supplemental Award). Plaintiff filed suit to challenge the decision of a neutral third-party arbitrator finding him guilty of misappropriating thousands of dollars in Union funds. Doc. 75 (First Amended Compl.). In its counterclaim APFA seeks, pursuant to Section 501(a) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), recovery for the Union and its members these ill-gotten funds in accordance with the arbitrator's final and binding determination. *See* APFA's Counterclaim, Doc. 134 at ECF pp. 9-14.

Pursuant to the APFA Constitution, two rank-and-file Union members filed internal charges against Mr. Ross alleging a range of financial misconduct during his term as APFA National President. A nationally respected arbitrator, Ruben R. Armendariz, served as the impartial arbitrator in the hearing on these charges held in accordance with the procedures outlined in the APFA's Constitution.  After an extensive hearing, Arbitrator Armendariz concluded that Mr. Ross had in multiple respects "intentionally and willfully ignored the provisions of the APFA Policy Manual and … violated and abused his fiduciary duty entrusted to him by the APFA membership." Doc. 1-3 at ECF 22. Among other things, Arbitrator Armendariz concluded that Mr. Ross had used APFA funds to "pa[y] for Ross's family vacation in the Grand Canyon;" purchase furniture for his own use; "rent[] cars for his personal use to commute to work;" and lease an apartment in violation of APFA policy. Doc. 1-3 at ECF 14, 16, 22. Mr. Ross was also found to have "refused to repay APFA for an inappropriate overpayment … of $5,436.47," and failed to follow APFA procedures to contest the repayment demand. *Id.* at ECF 21-22.  Mr. Ross was ordered to repay APFA not only that $5,436.47, but also over $8,000 for leasing an apartment "where he had no intention of occupying," and an additional $3,600 in unauthorized expenditure for furniture, as well as other items. *Id.* at ECF 23-24. Because of his breaches of fiduciary duty owed to his union, Mr. Ross was also barred from holding any positions in APFA. *Id.* at ECF 24.

Following an independent financial review ordered by Arbitrator Armendariz, which was not performed by WSO, he expanded the remedy to order the repayment of over $20,000 for "Inappropriate costs" charged to APFA for purposes of moving expenses, meals, personal items, and rental cars, among other things. Supp. Decision, Doc. 39-1 at ECF 2; *see also* Order, Doc. 45 at ECF 1 (taking judicial notice of the supplemental arbitral decision).

WSO is an accounting firm based in Fort Worth, Texas, with five employees. The firm, through Hal O'Neil, CPA, one of its owners, has provided accounting services to the APFA since 2004. The firm conducts an annual audit of the APFA, works on tax returns, and performs audits relating to certain requirements of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, regarding union dues. It also responds to requests for additional analysis on an as-needed basis. Declaration of Hal O'Neil, Appx. 1, ¶ 3.

In 2019 and 2020, Mr. O'Neil reviewed certain payments that had been made to former officers of APFA. Mr. O'Neil then prepared and produced to APFA worksheets showing overpayment calculations the firm had made along with a memorandum. Declaration of Hal O'Neil, Appx. 1, ¶ 4. Plaintiff has referred to this memorandum as the "Confidential Memorandum" and it plays, according to Plaintiff, a central role in his lawsuit. *See* First Amend. Compl., Doc. 75, at ¶¶ 22-27, 34.

In the course of performing that work, Mr. O'Neil exchanged emails and documents with APFA. As part of his normal course of business, he printed and kept in a separate file the emails and documents which were pertinent to his work. He did not create a separate electronic or paper file separating out all of the emails or other documents pertaining to that particular work. Declaration of Hal O'Neil, Appx. 1, ¶ 5.

WSO did not conduct the independent financial review which had been ordered by the Arbitrator as discussed above.

In October 2022, Plaintiff served WSO with a subpoena *duces tecum*. The subpoena directed WSO to produce or permit inspection and copying of the following:

> **All materials** including but not limited to correspondence, emails, calendar invites, text messages, phone records, reports, internal memoranda, personal notes, notations, work papers, drafts, and other writings, drawings, charts, photographs, computer printouts, spreadsheets, ledgers, graphics, analytics, and all other

3

> information kept by written, electronic, or other means **relating to the parties in the above-entitled lawsuit and in relation to Association of Professional Flight Attendants, Eugenio Vargas, Nena Martin and Robert 'Bob' Ross**.

Pl.'s Appx., Doc. 138 at ECF 9 (emphasis added). The subpoena did not specify any particular format for the production of documents, except to ask that the response be "deliver[ed] electronically." *Ibid.*

In light of the many years Mr. O'Neil and WSO had worked for APFA, the fact that the request called for "All materials … relating to the parties in this matter" (which parties include two current and one former APFA officers as well as the APFA itself), and for materials relating to two other former officers (Mr. Vargas and Ms. Martin), this demand was extremely burdensome for WSO, a non-party to this lawsuit, and raised issues regarding the possible release of sensitive financial information regarding APFA and its employees. Declaration of Hal O'Neil, Appx. 2, ¶¶ 6-7.

APFA was also concerned that the broad request was not relevant to the claims or defenses in this matter and risked widespread disclosure of irrelevant organizational and personal financial information going back many years. Thus, on November 3, 2022, WSO and APFA served joint objections to the subpoena. Pl.'s Appx. 10-14, Doc. 138 at ECF 13-17. The objections included that the subpoena would subject WSO to undue burden and expense; was facially overbroad; sought material not relevant to any claim or defense; and imposed a burden on that firm which was not proportional to the needs of the case. *Id.* at ECF 14-17.

Plaintiff did not take any action to enforce the subpoena or confer regarding the objections for over nine months. Declaration of Hal O'Neil, Appx. 2, ¶ 8. In that intervening time, counsel for APFA proposed to counsel for Plaintiff that the parties discuss a confidentiality agreement to protect sensitive personal and organization financial information from distribution outside of the

4

litigation.  On May 25, 2023, APFA counsel Jeffrey Bartos emailed Plaintiff's counsel Ms. Phillips raising a concern over "a variety of social media postings by Mr. Ross … concerning this litigation, and [the possibility that] … discovery documents [would be] misused outside of this litigation." APFA counsel proposed a limited confidentiality order which would allow production of documents, but restrict their use "outside of this case."  Appx. 6 (email J. Bartos to K. Phillips, May 25, 2023).  Plaintiff's counsel quickly and firmly rejected any such proposal, initially stating that "My clients do not agree to any confidentiality with your clients," (Appx. 5 (email K. Phillips to J. Bartos, May 25, 2023), and then escalating to threatening sanctions for "Taking up my time and frivolously charging your client for drafting a document which my clients already declined," Appx. 4 (email K. Phillips to J. Bartos, June 1, 2023).

On August 16, 2023, Plaintiff's counsel emailed Mr. O'Neil seeking compliance with the subpoena "as soon as possible."  Declaration of Hal O'Neil, Appx. 2, ¶ 8; *see also* Appx. 8-9 (email K. Phillips to H. O'Neil, 8/16/23).

Around the same time, Plaintiff's counsel contacted APFA counsel regarding a parallel request for production of document which had been served on APFA in the related case of *Vargas v. APFA*, No. 4:22-cv-00430-Y.  APFA's counsel, who later came to represent WSO in regard to this dispute, conferred with Plaintiff's counsel regarding concerns over the scope of production. In the course of those discussions, Plaintiff's counsel "offered to restrict" the request "to only those documents and communications relating to the Ross Administration since 2018 – after the Ross administration left office."  Pl.'s Appx., Doc. 138 at ECF 25 (email from K. Phillips, Aug. 25, 2022).

WSO retained counsel and provided him with the contents of Mr. O'Neil's file containing emails and documents relating to the 2019-2020 work concerning overpayments to members of

5

the Ross Administration. This file included not only documents concerning Mr. Ross, but also backup material he had used regarding calculations of sick leave and vacation pay for other former officers and representatives of APFA. It also included payroll summary information for several APFA office staff from early 2018. Declaration of Hal O'Neil, Appx. 2-3, ¶ 10.

With the exceptions of an email chain which had the subject line "CONFIDENTIAL – Attorney/Client Privileged Information", the backup material related to non-parties, and the office staff payroll summaries, the entire contents of that file (totaling 162 pages) were produced to Plaintiff's counsel on October 12, 2022, along with a letter identifying by category the material which was being withheld. Appx. 12-13 (letter J. Bartos to K Phillips, 10/12/23). Shortly thereafter the document labelled "CONFIDENTIAL" was produced after a determination that no privilege applied. Appx. 14-15 (email J. Bartos to K. Phillips, 10/19/23).

Along with that supplemental production, WSO counsel inquired whether Plaintiff's counsel believed there was any remaining dispute regarding the WSO subpoena. Appx. 15 (email J. Bartos to K. Phillips, 10/19/23). Plaintiff's counsel responded, "Sorry Jeff, you're out of time – no more delay tactics …. I'm no longer complying with any of these requests. I'm filing my amended motion, you can take this up with the court." Appx. 14 (email K. Phillips to J. Bartos, 10/19/23).

Plaintiff then filed his amended motion to compel. While acknowledging the prior agreement to limit the scope of the subpoena to the period from August 2018 to the present, Plaintiff now seeks to compel production of all responsive documents going back to April 1, 2016. Doc. 137 at 15; Proposed Order. Plaintiff also demands an order for production of "all responsive documents … in the original .PST format," Pl.'s Proposed Order, despite having made no such request in the subpoena itself.

6

# ARGUMENT

## THE MOTION TO COMPEL SHOULD BE DENIED

Plaintiff's motion should be denied. The subpoena seeking "all documents … regarding the parties," is facially overbroad, not reasonably particular, places an undue burden on non-party WSO and seeks confidential financial information of non-parties which has no relevance to any of the issues in this case. WSO agreed to, and did, produce responsive documents pursuant to an agreement limiting the scope of the request, and Plaintiff's effort to now expand that scope should be rejected by the Court. Moreover, the documents withheld from production based on privacy concerns were identified to Plaintiff and Plaintiff has not shown any need for such documents – especially where he has flatly refused to even consider a confidentiality agreement limiting public disclosure.[1]

### I.     The Subpoena Places An Undue Burden On WSO.

The Fifth Circuit looks to six factors to determine whether a "subpoena presents an undue burden …: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered …: (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). And when, as here, the "request is made [to] a non-party, the court may also consider the expense and inconvenience to the non-party." *Ibid.* A court may also "find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Ibid.*

---

[1] The original objections also asserted that a portion of the subpoena was objectionable based on privilege and confidentiality associated with the provision of accounting services by a Certified Public Accountant. Pl.'s Appx. 13, Doc. 138 at ECF 16. WSO and APFA do not rely on that objection here.

All of these factors weigh in favor of a determination that the subpoena here imposes an undue burden on WSO.

### A. The Subpoena Seeks Irrelevant Information.

The subpoena seeks a host of irrelevant information. This case arises out of an internal union arbitration which determined, in a final and binding decision, that Plaintiff Ross had violated his obligations under the APFA Constitution. Plaintiff seeks to vacate that decision, and the APFA seeks a determination, based on the arbitration findings, that Plaintiff breached his federal fiduciary duty. The core of Plaintiff's claim is that the "Confidential Memorandum" drafted by WSO, which was a small fraction of WSO's work for APFA during the period at issue in the subpoenas, and relates to a small fraction of the findings in his arbitration, in some sense exonerated him, but was not properly disclosed to various parties associated with the arbitration, or that its contents were otherwise misrepresented. *See* Br. Supp. Amend. Mot. Compl, Doc. 137, at 14 ("The basis of this suit centers on Defendants [alleged] withholding of information from a disciplinary hearing"). Plaintiff also raises ancillary claims which are largely incidental to that arbitration and related to the Confidential Memorandum. *See* First Amended Compl., Doc. 75, at ¶¶ 37-67.

After Plaintiff sought to confer regarding the Objections, counsel for APFA reached an agreement in the related *Vargas* case to produce communications with WSO regarding all aspects of the Confidential Memorandum. Based on Plaintiff's agreement to limit the scope of the WSO subpoena to communications post-dating the Ross Administration, WSO agreed to produce its documents pertaining to the Confidential Memorandum as well. Relevant documents have thus been produced, and there is no showing that documents outside the scope of the production to date are relevant to any claim or defense. The broad request for all documents WSO may have which relate to the APFA more generally, or to individual Defendants Julie Hedrick and Erik Harris, is

8

not relevant to any claims or defenses; nor is the request for documents which WSO may have (from 2016 onward) regarding non-parties Nena Martin and Eugenio Vargas. The information Plaintiff now demands is not relevant to any claims or defenses raised in this litigation.

### B.  Plaintiff Does Not Need The Additional Documents Requested.

Because the documents outside the scope of the current production are not relevant to any claims or defenses, Plaintiff does not have any need for those documents. Plaintiff disavowed any need for documents predating August 2018, and should not now be heard to renege on that position in a motion to compel.

### C.  The Subpoena Is Facially Overbroad.

The subpoena is facially overbroad. Plaintiff requests "All materials … relating to the parties in the above-entitled lawsuit and in relation to Association of Professional Flight Attendants, Eugenio Vargas, Nena Martin and Robert 'Bob' Ross." Such a request is improper:

> Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited.

*MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) (internal quotation marks and citation omitted); *see also Wiwa*, 392 F.3d at 820-21 (subpoena seeking "all documents … pertaining to" Plaintiffs employment and business activities was overbroad).

### D.  The Subpoena Covers An Excessive Time Period.

The subpoena itself contained no time limitation and on its face would apply to documents going back to 2004 when WSO began working with APFA. Plaintiff now contends that he seeks only documents from 2016 to the present, but even this is excessive in light of his agreement during

9

the conferral period to seek only information from August 2018 to the present. WSO has provided the responsive documents for the relevant period, and Plaintiff has not explained why his counsel's prior commitment should now be disregarded.

### E. The Subpoena Does Not Provide "Reasonable Particularity."

The subpoena is not reasonably particular. Plaintiff seeks all document which WSO has that "relat[e] to the parties … and in relation to [APFA], Eugenio Vargas, Nena Martin and Robert 'Bob' Ross." Does Plaintiff mean all WSO documents involving APFA, or those which involve both APFA and *any* of the other individuals listed, or those which involve APFA as well as *all* of the listed parties? Neither the subpoena nor Plaintiff's motion provide an answer. Indeed, Plaintiff now says he seeks (and is entitled to) documents regarding audits of "Eugenio Vargas, Nena Martin, and Marcy Dunaway" – even though Ms. Dunaway is not identified in the subpoena. Br. Supp. Amended Mot. Compel. at 19, Doc. 137 at ECF 19. Plaintiff also complains that he did not receive payroll documents for APFA staff, none of whom are listed in the subpoena either. *Id.* at 9.

> A Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond to ponder and to speculate in order to decide what is and what is not responsive ….
> All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A) …. Similarly, a request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for [the responding party's] identification and production of responsive documents …. Boilerplate requests, like boilerplate objections, are not recognized and constitute an abuse of the discovery process.

*Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575-76 (N.D. Tex. 2018) (internal quotation marks and citations omitted). WSO produced documents relating to Mr. Ross during the time period Plaintiff agreed to, and should not be subjected to the wide-ranging, non-particular, and irrelevant demands now asserted.

10

### F. The Subpoena Places A Heavy Burden On WSO.

The Fifth Circuit directs that it is appropriate in a case involving a third-party subpoena "to consider the expense and inconvenience to the non-party." *Wiwa*, 392 F.3d at 818; *see also Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 57 (N.D. Tex. 2015) (examining financial burden placed on third-party in complying, including loss of work hours that could have been devoted other projects).

As described in Mr. O'Neil's Declaration, the requested additional production demanded would impose a considerable expense and inconvenience to WSO. Specifically, compliance with this broad request now pressed by Plaintiff would require Mr. O'Neil's review of all annual audit workpapers for at least six audit years, as well as a comprehensive search of years' worth of emails in his system, a determination of whether such documents are responsive to the Request, a determination of whether sensitive financial information of non-parties individuals is included and arranging for protection of sensitive financial or personally identifying information. This request would place a substantial burden on Wood, Stephens & O'Neil and interfere with its ongoing obligations to existing clients. Declaration of Hal O'Neil, Appx. 1, ¶ 3.

For all of the foregoing reasons, WSO – joined by APFA – respectfully submits that the motion to compel should be denied based on the undue burden to WSO.

### II. The Subpoena Would Impinge On The Privacy Of APFA Staff And Representatives.

APFA joined in WSO's objections to the subpoena, and in addition to the issues addressed above, stresses here its independent concern that the production now sought by Plaintiff from WSO would risk exposure of detailed personal and financial information of APFA staff and current and former representatives, which have nothing to do with this case and regarding which Plaintiff has

11

refused to even discuss a protective order. The motion to compel should be denied on this ground as well.

Plaintiff seeks "All materials … relating to the parties" (*i.e.*, APFA, Julie Hedrick, Erik Harris and Robert Ross), and "in relation to [APFA], Eugenio Vargas, Nena Martin and Robert 'Bob' Ross." On its face, this request covers years of raw audit data regarding APFA, its staff and representatives. Such material has nothing to do with this case and the demanded production would disclose extensive personal financial information. APFA has a strong and legitimate need to protect such information from unnecessary disclosure, and Plaintiff has never articulated a need which could overcome that interest. *See, e.g., Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 594 (N.D. Tex. 2017) ("A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify … if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."); *MC Trilogy Texas, LLC v. City of Heath, Texas,* No. 3:22-CV-2154-D, 2023 WL 5918925, at *8 (N.D. Tex. Sept. 11, 2023), Appx. 16 (finding burden, including privacy intrusion, "imposed on the non-party … is too great when compared to the negligible discoverable information that [plaintiff] may obtain.").

## CONCLUSION

For the foregoing reasons, WSO and the APFA respectfully submit that Plaintiff's motion to compel be denied.

Dated: November 13 , 2023                    Respectfully submitted,

                                                                       /s/ James D. Sanford
JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com


JEFFREY A. BARTOS (*pro hac vice*)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for Wood, Stephens & O'Neil, LLP, Association of Professional Flight Attendants, Julie Hedrick and Erik Harris*


CHARLETTE L. MATTS (*pro hac vice*)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cmatts@apfa.org

*Counsel for Defendant and Counterclaim Plaintiff Association of Professional Flight Attendants*

13

## **CERTIFICATE OF SERVICE**

I certify that on November 13 , 2023, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

/s/ *James D. Sanford*
JAMES D. SANFORD