# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION

| | |
|---|---|
| ROBERT (BOB) ROSS, | § |
| | § Civil Action No. 4:22-cv-430-Y |
| Plaintiff/Counterclaim Defendant, | § |
| | § Judge Terry R. Means |
| v. | § |
| | § (Relates to Motion Referred to |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § Magistrate Judge Cureton) |
| | § |
| Defendants/Counterclaim Plaintiff. | |

## REPLY TO RESPONSE TO AMENDED MOTION TO COMPEL RESPONSE TO SUBPOENA ISSUED TO WOODS, STEPHENS AND O'NEIL, L.L.P.

NOW COMES, pursuant to Fed. R. Civ. P. §§ 26(b)(1), 34(c), and 45, and Local Rules 5.2, 7.1. 7.2. 53.1, 56.3 and 56.6, Plaintiff files this, his Reply to Response to Motion to Compel Production of Documents in Response to Subpoena Issued to Woods, Stephens, and O'Neil, L.L.P. ("WSO") and in support thereof, would respectfully show this Court as follows:

## **INTRODUCTION**

Defendants' Response to Plaintiff's Amended Motion to Compel cites several arguments Plaintiff will briefly address. Defendants' Response attacks Plaintiff's Counsel for his refusal to agree to a protective order as well as her threat to file a motion for sanctions. Since filing this case, Defendants' Counsel sent several letters threatening to pursue Fed. R. Civ. Proc. § 11 sanctions against Plaintiff's Counsel. (*See* App., 1-33). After multiple failed attempts to recover insurance policy documents from Defendants, Plaintiff's Counsel served a subpoena on IMA Financial to retrieve these policy documents. (*See* App., 34-40). Thereafter, Defendants' Counsel contacted Plaintiff's Counsel seeking limitations to the documents subpoenaed and proposed an agreed protective order—to which Plaintiff refused. (Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 3116, ECF No. 154). When IMA Financial failed to timely deliver documents, Plaintiff's Counsel emailed notice that Plaintiff's intent to file a motion to compel and motion for sanctions. (*See* App., 41-46; 74-76). Defendants' Counsel did not include the full email exchange with Plaintiff's Counsel. (*Id.* at 43). In a subsequent email, Plaintiff's Counsel explained sanctions were justified for misrepresentation of facts before this Court and withholding documents. (*See Id.* at 44; 74-76). In conjunction with the filing of this Reply, Plaintiff's Counsel includes copies of recorded telephone conversation and transcripts of the conversations between the parties' counsel on August 23, 2023 and September 15, 2023 in which these matters were discussed.[1] (App., 47-95).

Additionally, Defendants' Response cites numerous factual assertions contained in the

---

[1] True and correct copies of the recorded telephone conversations are available:
//drive.google.com/drive/folders/15cIaYxvLlVHTkWSa6rPvj_5twA3hw315?usp=sharing.

1

APFA Disciplinary Arbitration Award without any *evidentiary* support, including:

- The alleged overpayment of wages of $5,436.47 under the Transition Agreement;
- A family vacation;
- Personal travel expenses to and from his second family home;
- Furniture for his personal residence;
- Rental cars for his own personal use;
- Personal meals and expenses; and
- Apartment leased while he did not reside in it.[2]

Plaintiff contests these facts as none of them have been, nor can be, substantiated with evidence. A union arbitration award for breach of fiduciary duty is unenforceable in court, as are the alleged facts contained therein. The Arbitrator has no authority to enforce 29 U.S.C. § 501, and Defendant has a right to due process of law. Defendant must meet every element of its claim with valid admissible evidence—*not* a union disciplinary arbitration award.

Finally, Defendants' argued Plaintiff waited to seek out responses to this subpoena, however Defendants filed a Motion to Stay discovery pending the outcome of multiple motions that were resolved in February 2023. (Defs' Mtn. to Stay Disc., ECF No. 54). Therefore, this argument is frivolous as Plaintiff filed timely motions to compel.

## REPLY ARGUMENTS

WSO's conduct regarding discovery indicates APFA's intent to subvert the discovery process at all costs. WSO continues to withhold relevant documents responsive to Plaintiff's requests and claims to appease APFA. Plaintiff argues that WSO seeks APFA's agenda in their challenge to Plaintiff's Subpoena. The Court should note that:

(1) WSO made multiple redactions based on meritless objections (approximately 15 pages) (*See* P. App. Am. Mtn. to Compl, PAGEID 2762, ECF No. 138-1);
(2) WSO limited the scope of Plaintiff's Requests for Production unilaterally (*See* P. App. Am. Mtn. to Compl, PAGEID 2762, ECF No. 138-1);
(3) WSO continues to withhold documents from Plaintiff (*See* P. App. Am. Mtn. to Compl, PAGEID 2762, ECF No. 138-1);[3]

Defendants and WSO unilaterally limited production of documents from 2019 to 2020, redacted

---

[2] Every factual assertion is unsupported by evidence and improperly described—for example the LM-2 for 2018 list that Ross's furniture was repaid in question 13 in Section 69; APFA claims Ross took a vacation to the Grand Canyon is based on gas receipts from Arizona when Ross' family moved to Texas from California; Ross rented an apartment when he took office in April of 2016 and moved his family to Texas during the School's summer break with prior approval by the APFA Board of Directors.
[3] Based on the Declaration of Hal O'Neil's affidavit attached to the Response to Motion to Compel Subpoena responses. (*See* Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 3112, ECF No. 154).

2

and withheld multiple all email communications, arguing undue burden, overly-broad, and privacy as justification.[4] Withholding documents based on privacy or attorney-client privilege are baseless, as this is a third party to the case at issue and no privilege exists on those documents disclosed to WSO. (*See* P. App. Am. Mtn. to Compl., PAGEID 2762, ECF No. 138-1).

> Plaintiff will reiterate the following in this pleading:
> A. Limiting the subpoena requests to documents relating to the Ross Administration results in documents related to Robert "Bob" Ross, Eugenio Vargas, and Nena Martin from the time they served as National Officers—April 1, 2016 until current.
> B. Plaintiff needs this evidence to sufficiently defend himself against claims of financial malfeasance and to establish the facts that gave rise to Plaintiff's claims;
> C. The requests place no burden on WSO due to the minimal cost of adding e-discovery tools to their current subscription with Google Workspace; and
> D. Privacy issues are sufficiently protected with the allowance of redactions for any Nonpublic Personally Identifiable Information for any parties other than the Ross Administration.

WSO did not include communications and documents after 2020, whereas financial audits, documents and communications should be produced up to 2023. (Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 3112, ECF No. 154). O'Neil declares he produced all documents from his file to his counsel from 2019—not 2018—and ceased his search after 2020. (*Id.*) However, Defendants' counsel ignores that WSO conducted additional audits of the Ross Administration in 2018, 2021, and 2022—these documents were withheld.

**<u>Counterargument: Information is Relevant</u>.**

Defendants' Counsel argues the information Plaintiff seeks in the subpoena is irrelevant. (*See* Dfts' Resp. Am. Mtn. to Compl, PAGEID 3116, ECF No. 153). The Subpoena seeks only those documents pertaining to the Ross Administration. This was made clear in all conferences with Defendants' Counsel. The Ross Administration was defined, in conferences with Defendants' Counsel, as Robert "Bob" Ross, Eugenio Vargas, Marcie Dunaway (retired) and Nena Martin[5].

---

[4] Documents were withheld based on the Declaration of Hal O'Neil and review of the documents. O'Neil produced documents, but not all communications responsive to the Subpoena request. Additionally, the Declaration indicates that documents produced did not include a full scrub of his email communications. (Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 3112, ECF No. 154). Furthermore, WSO do not include communications and documents after December of 2020, whereas financial audits and communications should be produced up to 2023. (*See* Dfts' App. to Resp. Am. Mtn. to Compl, PAGEID 3112, ECF No. 154). O'Neil declares he produced all documents from his file to his counsel from 2019—not 2018—and ceased his search after 2020. He conducted additional evaluations of the Ross Administration in 2021, 2022 and in 2023—these documents were withheld.
[5] Marcie Dunaway APFA National Secretary under the Ross Administration is no longer a Flight Attendant and APFA member.

The Ross Administration served from 2016-2018—during the period for which Defendants base their alleged counterclaims. During 2018-2023, Plaintiff and his administration were subject to investigation, hearings, and ultimately disciplined by the union for those alleged misappropriation that occurred during his tenure in office—2016-2018. Plaintiff spelled out finite time periods and limited the subject-matter to ensure documents were relevant to the claims pending before this court. Documents and communications from 2016-2018 are relevant to Defendant, APFA's, counterclaim for breach of fiduciary duty. Therefore, these documents are relevant to Plaintiff's defense. To assuage Defendants' concerns over financial documents, Plaintiff's Counsel offered to limit production of documents served on this subpoena between WSO and APFA from 2018 to current. It should be noted that if all documents prior to 2018 are excluded from production by WSO, then Defendant loses the opportunity to introduce those documents at trial.

**Counterargument: Plaintiff Needs Additional Documents Requested.**

Defendants' Counsel argues Plaintiff does not need the additional documents requested. It is important to note that APFA, as a matter of policy, does not allow members to duplicate, copy, or retain documents regarding the union business—all documents are in APFA's possession **only**. All documents relative to the union's business may not be duplicated per APFA Policy under Section 7(G)(1) and Section 8.[6] These documents are maintained within the APFA Archives only.[7]

Considering APFA concedes that it withheld documents from Plaintiff's Union Disciplinary hearing, it is reasonable to request documents from a third party to avoid documents being withheld or possible spoliation. The APFA National Officers cited the accounting review conducted by WSO at the meeting with APFA leadership to achieve a vote in favor of sending Plaintiff to a disciplinary hearing.[8] (*See* Nena Martin Aff., PAGEID 1319, ECF No. 52-2). The

---

[6] https://www.apfa.org/policy-manual/
[7] https://www.apfa.org/policy-manual/
[8] The Court should note that APFA's disciplinary procedures under Art. VII of the APFA Constitution require a charging member to file charges with the National Secretary, then the Executive Committee reviews the charges and if voted valid, timely, and specific then the Executive Committee refers the charges to an arbitrator for a disciplinary hearing.

APFA National Officers did so to legitimize their claim that Plaintiff violated APFA policy and owed money to the union. It is this alleged overpayment that formed the basis of Melissa Chinery-Burns' disciplinary charges against Plaintiff for purposes of meeting timeliness standards under the APFA Constitution.[9] Only WSO possess internal communications, notes, and/or calculations used to create its accounting review.  These documents would shed light on WSO's perceptions regarding the charges against Plaintiff. WSO conducted a review in 2021 of Ross's 401k contributions, audits of Nena Martin in 2022, and legal costs and expenses related to this litigation, yet have not been produced.

**Counterargument: Subpoena is not Facially Overbroad.**

Defendants' counsel argues that Plaintiff's subpoena is facially overly broad. This objection, however, is baseless as the Subpoena seeks only those documents pertaining to the Ross Administration which inherently includes the individuals and time frame applicable.  The Ross Administration is defined as, and was clarified in conference with Defendants' Counsel, as documents pertaining to Robert "Bob" Ross, Eugenio Vargas, and Nena Martin.  The Ross Administration served from 2016-2018—during the period for which Defendants base their alleged counterclaims.  During 2019-2023, the Ross Administration was disciplined by the union for alleged violations occurring from 2016-2018.  These are finite time periods and subject-matter that are relevant to the claims pending before this court.

**Counterargument: Subpoena Covers a Reasonable Time Frame.**

Objections in terms of subject matter or timeframe are baseless, as Defendants' Counsel failed to address and discuss this in any of their conferences. Defendants' counterclaim for breach

---

[9] The Court should note here that the APFA Const. Art. VII, Sec. 2D requires charges be brought by a charging party—here Melissa Chinery-Burns—within 60 days of the charging party's discovery of the alleged violation.  The 60-day limitations period began with disclosure of the Accounting Review (conducted by WSO) cited by the National Officers to the APFA Board of Directors and APFA Executive Committee—both who must review and determine the validity of the charges for discipline.  The alleged overpayment was brought within 60-days of the cited Accounting Review, however several other charges--previously struck as untimely—were allowed in because they were brought within 60-days of the Accounting Review.  This is the reason that this charge creates the basis for validating all other charges for discipline by the union.

of fiduciary duty alleges financial malfeasance for actions and conduct taken during Plaintiff's time in office—2016-2018. Additionally, Plaintiff claims the union and its officers violated federal and state law for conduct that occurred from 2019 to current. Financial audits were conducted between 2018–2022 of the Ross Administration with communications about it up to 2023 by this accounting firm and no communications or documents were produced related to those that occurred after 2020. Abuse, intimidation, and harassment of anyone supporting the Ross Administration continues to this day. Therefore, evidence from 2016 to current is within the scope of discovery.

**Counterargument: Subpoena provides Reasonable Particularity.**

Plaintiff's Counsel reached out and discussed these discovery issues with Defendants' Counsel multiple times. (*See generally* P. App. Am. Mtn. to Compl., PAGEID 2727-80, ECF No. 138-1). Plaintiff's Counsel made clear in conferences the scope of this subpoena. (*See generally* P. App. Am. Mtn. to Compl., PAGEID 2731-33, ECF No. 138-1). Defendants' Counsel never questioned what Plaintiff sought, outside of objections to it being overly-broad. (*See generally* P. App. Am. Mtn. to Compl., PAGEID 2727-80, ECF No. 138, 138-1). Plaintiff made clear that the original request sought all documents related to the Ross Administration between 2016-current as Plaintiff sought communications and documents surrounding the Ross expenses incurred, the accounting audits, and the accounting reviews of the Ross Administration. Defendants' Counsel offered a compromise to resolve the dispute over production of private financial documents in which all documents from **2018-current** relating to the Ross Administration would be produced. (P. Brief Am. Mtn. to Compl, PAGEID 2695, ECF No. 137). However, Plaintiff's Counsel made clear that production of those documents from 2016-2018 were responsive and requested because Defendants' counterclaim for breach of fiduciary duty is based on credit card charges and expenses incurred by the Ross Administration while in office—from 2016 to 2018. (*See* App., 85-89). Plaintiff is entitled to defend himself. Defendant will have to produce these documents at trial to prove up its claim for breach of fiduciary duty. Defendants' Counsel failed to comply with

6

Plaintiff's Counsel's offer to compromise as he redacted multiple sections on baseless objections and continued to withhold documents. (P. App. Am. Mtn. to Compl., PAGEID 2782, ECF No. 138-1)[10]. Therefore, Plaintiff renews his request for documents relating to Robert "Bob" Ross, Eugenio Vargas, and Nena Martin from 2016-current. Plaintiff is entitled to defend himself. The defense of the Ross Administration requires any and all documents pertaining thereto. The limitation to the Ross Administration obviously restricts the scope of documents, the time frame, and the individuals encompassed in this request.[11] Defendants should be compelled to produce these documents.

**Counterargument: Undue Burden is not Imposed on WSO.**

Defendants and WSO assert this argument, but it holds no merit. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 3100, ECF No. 153). Modern-day platform hosts maintain e-discovery software programs that allow for an easy search, recovery, review, organization, de-duplication, automatic privilege notations, and easy delivery of documents recovered from a business server. Microsoft and Google both maintain their own e-discovery software that make search, recovery, review, and delivery of documents as easy as a Google search with assistance provided by the service provider directly.

WSO subscribe to Google Workspace, as indicated in the documents produced in this case. (*See* P. App. Am. Mtn. to Compl., PAGEID 2781, ECF No. 138-1). Google Workspace includes e-discovery software called Google Vault.[12] Assuming WSO subscribes to the most basic plan that does not provide Google Vault, an upgraded annual subscription to utilize Google Vault would cost between $144-$216 for the entire year. Furthermore, Google Vault provides options to export

---

[10] See notation *"quoted text hidden"* listed on this document—it was listed on multiple pages of WSO document production.
[11] Robert "Bob" Ross, Eugenio Vargas, and Nena Martin are the National Officers that served under the Ross Administration from April 1, 2016 to March 1, 2018.
[12] https://workspace.google.com/products/vault/#:~:text=Vault%20is%20included%20with%20Google,no%20additional%20cost%20to%20you. WSO document discovery indicate that it subscribes to Google Workplace to host its website and maintain its business email accounts. The Court should note that Google Vault—the top-rated and most simple e-discovery software on the market today—is free with two of the three programs subscriptions offered by Google Workspace.

7

these emails and documents in either .PST format (used for Windows) or mbox format (used for MAC).[13] E-Discovery software will conduct a search of all documents, emails, calendar entries, notes, and so on maintained and archived on a cloud within minutes with no disruption in the business's workflow. Plaintiff will absorb the costs for upgrading software, if so required. However, Defendants' Counsel seems to assert that a hardship is created by Plaintiff's requests, but fails to sufficiently describe the hardship imposed, the possible cost of complying, and the extent of the hardship imposed on WSO, LLP when software can be purchased at minimal cost and assistance is provided through WSO's email service provider—Google, Inc.

**Counterargument: Privacy is Protected for APFA Staff and Representatives.**

As to any right of privacy for either representatives or employees of APFA, it is contradictory to federal labor law to restrict a member's request of any documents and communications used in formulating the LM-2. (*See* Dfts Resp. Am. Mtn. to Compl, PAGEID 3104-05, ECF No. 153). The policy interest sought by the Labor Management Reporting and Disclosure Act ("LMRDA") is based on Congress' findings that labor organizations committed breaches of trust and are plagued with corruption and abuse of their union members. (29 U.S.C. § 401). Based on these findings, Congress requires labor organizations to disclose the financial records of the union in a publicly filed report called the "LM-2."  (29 U.S.C. § 431(a)-(b)). Congress additionally granted union members the right to examine the financial records of the union, and a cause of action to enforce such disclosure of union documents in the event the union withheld them. (29 U.S.C. § 431(c); 29 U.S.C. CRF 403.8). Unions, quite simply put, do not enjoy a right of privacy, and to enforce such a right would seek to undermine federal policy interests and the rights of union members under the LMRDA.

Concerns about privacy rights of those employed by the union can be addressed so as

---

[13] https://support.google.com/vault/answer/2473458?hl=en#:~:text=For%20details%2C%20go%20to%20Choose,content%20files%2C%20PST%20or%20mbox.

not to impede on Plaintiff's right to discovery to prove his claims. Plaintiff's Counsel's proposed an order to compel before this court that allows for redaction of any Non-Public Personally Identifiable Information ("PII"). PII as defined by the U.S. Department of Labor as

> "Any representation of information that permits the identity of an individual to whom the information applies to be reasonably inferred by either direct or indirect means. Further, PII is defined as information: (i) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.) or (ii) by which an agency intends to identify specific individuals in conjunction with other data elements, i.e., indirect identification. (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors). Additionally, information permitting the physical or online contacting of a specific individual is the same as personally identifiable information. This information can be maintained in either paper, electronic or other media."[14]

Exclusion of those responsive documents that contain PII for any party outside of the Ross Administration is a convenient argument but infringes Plaintiff's rights under federal law. Furthermore, it is an illogical solution to a simple problem—redaction of that information federally protected and defined as PII would protect a third party's right to privacy, while ensuring justice may be served for Plaintiff as it would require disclosure of pertinent and relevant information to those claims pending before this court. Any documents that would contain private confidential information relating to APFA staff would not be responsive to Plaintiff's subpoena, unless such documents relate to the Ross Administration, in particular Robert "Bob" Ross, Eugenio Vargas, and Nena Martin.

To date, communications have been withheld that are relevant to Plaintiff's claims. Emails were redacted based on frivolous claims of privacy—approximately 10 pages seem to have been removed or redacted from those documents delivered, email chains referenced in other email communications have not been turned over. (*See* P. App. Am. Mtn. to Compl., PAGEID 2782, ECF No. 138-1).[15] Privacy should not be used as grounds for redacting multiple pages of communications in the same thread, rather review of the documents illustrate that entire communications have been redacted, which would not encompass concerns of documents that

---

[14] Guidance on the Protection of Personal Identifiable Information | U.S. Department of Labor (dol.gov)
[15] See notation *"quoted text hidden"* listed on numerous pages of WSO document production.

9

disclosed confidential private employee information, these redactions are within communications about the Ross Administration. Defendants' and WSO's desire not to disclose information unfavorable to their case.

Defendants' Counsel stated that he would turn over all documents and communications related to the Confidential Memo, but none relating to any other matter. (*See* P. App. Am. Mtn. to Compl., PAGEID 2732-33, ECF No. 138-1). However, Plaintiff needs the additional documents requested as Plaintiff argues these documents evidence Defendants' motivation to seek the accounting review and audits used to target the Ross Administration. Plaintiff clearly needs these documents to conduct a full deposition of the witnesses, including Defendants themselves. Plaintiff requests the court to overrule Defendants and/or WSO objections and compel proper responses to Plaintiff's Subpoena—from 2018 to current.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court grant his Motion to Compel Responses to the Subpoena on WSO, and for such other relief as the Court deems proper.

THIS, the 27th day of November, 2023.

Respectfully submitted,

By: /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **REPLY TO RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA ISSUED ON WOODS, STEPHENS, O'NEIL, L.L.P.** has been served in accordance with the Federal Rules of Civil Procedure to all counsel of record identified below on this the 27th day of November, 2023.

By: /s/ Kerri Phillips
Kerri Phillips