IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT "BOB" ROSS, | § § § | |
| Plaintiff/Counterclaim Defendant, | § § § | Civil Action No. 4:22-cv-343-Y |
| | § | Judge Terry R. Means |
| v. | § § § | |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § § § § | |
| Defendants/Counterclaim Plaintiff. | | |

**REPLY TO RESPONSE TO SECOND MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS**

Now comes the Plaintiff, ROBERT "BOB" ROSS (hereinafter "Plaintiff" or "ROSS"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 26, 34, 37, and Local Rules 5.2, 7.1, 7.2, 56.1, 56.3, 56.6 and files his Reply to the Response to Plaintiff's Second Motion to Compel Production of Documents from ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS (hereinafter "APFA" or the "Union"), Julie Hedrick ("Hedrick") and Erik Harris ("Harris") (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff states the following:

### Introduction

The subject matter of this Reply Brief relates to Plaintiff's prolonged attempt to obtain necessary discovery from Defendant. The Court should note Plaintiff's Counsel has turned over all documents in her possession pertaining to the claims before this court to date.

### Reply Arguments

In his Complaint, Plaintiff alleges claims of labor management violations, including, among others, breach of the union constitution, and breach of fiduciary duty. Plaintiff's labor

union charged and subjected him to a disciplinary arbitration hearing, which subsequently resulted in an award to the union for $62,558.75. Plaintiff claims these disciplinary charges were sought to prevent him and those associated with his political faction from holding elected office. Ross is the former National President and a leader of a political faction in opposition to the political faction currently in power.[1] The two political factions are in opposition on a singular primary issue: whether their labor union, APFA, should merge with the Association of Flight Attendants ("AFA") or remain a self-governing independent union.[2] This assertion is unfounded as this is not the first time this Court has addressed litigation involving this *same fact pattern with same union.*[3] The pertinent facts to the claims before this Court are as follows:

- On March 1, 2018, Ross signed a Transition Agreement with the APFA Board of Directors ("BOD") for his resignation as National President ("Transition Agreement"). After consulting with APFA's accounting department, and APFA Legal Counsel, APFA National Treasurer, Vargas calculated payments to Ross in accordance with the Transition Agreement and payments were authorized per Art. IV of the APFA Constitution.

- On October 20, 2020, Woods, Stephens and O'Neil, LLP ("WSO") conducted an "accounting review" and sent spreadsheet calculations to Harris, National Treasurer under the Hedrick Administration ("Accounting Review"). This Accounting Review asserted that Ross was overpaid according to APFA policy under his Transition Agreement. (Pl. Original Cmplt, PAGEID 28, ECF No. 1-1). A cover letter entitled "Confidential Memorandum" from WSO to APFA leadership and the BOD was included with the Accounting Review ("Confidential Memo"). The Confidential Memo states that the payments made to Ross under his Transition Agreement appeared to be in compliance with the language of his Transition Agreement. (Pl. Original Cmplt, PAGEID 72, ECF No. 1-2) Harris forwarded these calculations and the Confidential Memo to the Hedrick Administration, inside and outside counsel upon receipt from WSO. (App. Pl Resp. Dft Mtn Summ. J.; PAGEID 1470-84, ECF No.. 56-1).

- On October 27, 2020, at a meeting of the APFA BOD, the Hedrick Administration produced copies of the Accounting Review yet withheld the Confidential Memo. (App. Pl Resp. Dft Mtn Summ. J.; Aff. Nena Martin PAGEID 1485-93, ECF No.. 56-1). Harris stated that an accounting review conducted by WSO showed Ross owed the union $5,436.47 for overpayments made under his Transition Agreement. (App. Pl Resp. Dft Mtn Summ. J.; Aff. Nena Martin PAGEID 1485-93,

---

[1] The Hedrick Administration—current National Officers of APFA--is comprised of Julie Hedrick, Larry Salas, Josh Black, and Erik Harris. Plaintiff contends that the Hedrick Administration and their supporters seek to effectuate a merger between APFA and AFA.
[2] The Ross Administration—former National Officers of APFA from 2016-2018—is comprised of Robert "Bob" Ross, Nena Martin ("Martin"), Eugenio Vargas ("Vargas"), and Marcy Dunaway (currently holding a position with American Airlines, Inc.). Plaintiff contends that the Ross Administration and their supporters seek to maintain APFA's independence from any merger with AFA.
[3] *See Adams-Lundy v. Ass'n of Pro. Flight Attendants*; 844 F. 2d 245 (5th Cir. 1988); *Adams-Lundy v. Ass'n of Pro. Flight Attendants*; 844 F. 2d 245 (5th Cir. 1986); *Adams-Lundy v. Ass'n of Pro. Flight Attendants*; 844 F. 2d 245 (5th Cir. 1984). These three cases originate from a lawsuit initiated by a BOD member with APFA who was removed from her position on the Board as a result of a hostile attempt by AFA supporters to infiltrate and merge with APFA.

- ECF No.. 56-1). No formal vote, resolution, or record was taken memorializing any finding from the APFA BOD. (App. Pl Resp. Dft Mtn Summ. J.; Aff. Nena Martin PAGEID 1485-93, ECF No.. 56-1). The Hedrick Administration concealed the Confidential Memo from the APFA BOD. (App. Pl Resp. Dft Mtn Summ. J.; Aff. Nena Martin PAGEID 1485-93, ECF No.. 56-1).

- On November 24, 2020, Harris sent a letter to Ross demanding payment for the $5,436.47 debt and stated that this debt would be sent to a collection agency upon failure to make payment ("Overpayment of Wages Letter"). (App. Pl Resp. Dft Mtn Summ. J.; PAGEID 1489-93, ECF No.. 56-1). The Overpayment of Wages Letter states that the BOD found Ross owed this debt based on WSO's Accounting Review. Ross inquired as to all documents from WSO. He received copies of the Accounting Review, however Defendants concealed the Confidential Memo.

- In November of 2020, Melissa Chinery[4] ("Chinery" or "Chinery-Burns") and Sandra Lee ("Lee") brought union disciplinary charges against Ross (Nov. 18, 2020) and Vargas (Nov. 20, 2020) on behalf of the Union. The charges alleged Ross and Vargas incurred inappropriate expenses while serving as National Officers, and the overpayments made under the Transition Agreement. (App. Pl Resp. Dft Mtn Summ. J.; PAGEID 1388-1404, ECF No. 52-2). On Nov. 24, 2020 and again on Dec. 10, 2020, Chinery and Lee filed charges against Martin for authorizing the alleged overpayment to Ross.

- On December 1, 2020, the APFA Executive Committee ("EC") comprised of five Ad Hoc Members and the four National Officers held a meeting where the EC reviewed and authorized the charges filed against Ross and Vargas. At this meeting, the Accounting Review was disclosed and discussed, however the Confidential Memo was never presented to the EC. The EC voted that the charges were valid, timely, and specific. Ross and Vargas were referred to an internal union disciplinary arbitration (App. Pl Resp. Dft Mtn Summ. J.; Aff. Nena Martin PAGEID 1485-93, ECF No. 56-1).

- In April of 2021, Diversified Credit Systems posted a collection account to Ross's credit report for an alleged debt of $5,436.47. (Df. Mcgaughey Reber Or, Answer; PAGEID 168; ECF No. 23)..

- On September 15-16, 2021, the union held a disciplinary arbitration hearing between Vargas, Chinery and Lee. On November 17-18, 2021, the union held a similar disciplinary arbitration hearing for Ross. Harris testified as to alleged financial misconduct and the Accounting Review on behalf of Chinery and Lee in both hearings. The Confidential Memo was neither disclosed nor produced in either hearing.[5]

- On January 14, 2022, Diversified Credit Systems filed a lawsuit against Ross on behalf of the union to collect the alleged overpayment of $5,436.47 in Tarrant County Justice Court, JP03-22-DC00017757. (App. Pl Resp. Dft Mtn Summ. J. ; PAGEID 1307-1317, ECF No. 52-2).

- On February 18, 2022, a union disciplinary award was issued against Plaintiff in which the Arbitrator found Vargas violated his fiduciary duty, was fined $30,963.03, and barred from ever holding office with the union for life. (Pl. Or Cmplt.; PAGEID 57-58. ECF No. 1-3).

---

[4] In February of 2022, Chinery married Joe Burns—General Counsel for AFA, currently acting as negotiating attorney for APFA under the Hedrick Administration.

[5] Martin attended a similar disciplinary hearing on October 12, 2022—after both lawsuits for Ross and Vargas were filed against APFA and the officers. The Arbitrator granted Martin's Motion to Dismiss, as Chinery and Lee did not have evidence sufficient to sustain the charges. Martin thereafter filed charges against Chinery and Lee under the provisions of Art. VII, Secs 1.H, and 7.B of the APFA Const. to recover the fees, expenses, and administrative costs for APFA relative to the dismissed charges. In the end, Martin withdrew the charges. She could not continue to allow these two members to brutally continue their attacks, on both social media and internal emails, against her and the five Ad Hoc Members who voted to support the charges, while fighting to recover funds for her union, when the four National Officers were spending membership dues dollars to argue against her position and challenging the recovery of those funds.

3

- On March 19, 2022, a union disciplinary award was issued against Plaintiff in which the Arbitrator found Ross violated his fiduciary duty, was fined $62,558.75, and barred from ever holding office with the union for life. (Pl. Or Cmplt.; PAGEID 57-58. ECF No. 1-3).

**<u>Plaintiff's Requests for Production were relevant and likely to lead to admissible evidence.</u>**

All requests were reasonable and restricted to the timeframe and subject matter pertinent to the facts stated above. Chinery-Burns and Lee brought charges against the three remaining Ross Administration officers based on the alleged over-payments made under the Ross Transition Agreement. Plaintiff seeks documents and communications within APFA's possession by and between APFA leadership and between AFPA leadership and third parties surrounding the following issues:

(a) key pieces of evidence – Requests 2, 3, 4;

(b) The Disciplinary Arbitration process for Ross Administration's Disciplinary Arbitrations brought by Chinery and Lee—Requests 9, 10, 11;

(c) Arbitration hearings against the Ross Administration, and the counter charges against Chinery-Burns and Lee—Requests 4, 6, 7, 8, 12; and

(d) the alleged motive, an attempt to proffer an AFA/APFA merger—Request 5.

All requests pertained to either the conspiracy, disciplinary charges, hearing, award, and motivation behind these actions involving the Ross Administration. All three remaining members of the Ross Administration are represented by Plaintiff's Counsel—though Martin has not pursued charges against the union to date. All documents and communications relevant to the Ross Administration's disciplinary arbitrations, and the motivation thereto, are relevant to establishing those facts and claims pending before this Court. This was specifically asserted in Plaintiff's motion for the requests. The documents and communications all contemplate the Ross Administration, the Arbitration Disciplinary hearings, the relevant evidence, and the political factions currently in dispute. The communications surrounding these events, the documents related to these events, as well as the motivation for APFA leadership's actions, are relevant and likely to lead to admissible evidence.

4

**Attorney Client Privilege does not Apply:**

First and foremost, that Defendants' argument against production of all documents and communications between APFA and the Arbitrator who conducted the disciplinary hearing is concerning. Defendants seek this court to endorse *ex parte* communications with a neutral arbitrator. The result of sustaining such an objection would be an unconscionable infringement of Plaintiff's rights.

FIDUCIARY EXCEPTION APPLIES. A privilege log was produced, but only after Plaintiff requested it multiple times and filed his original Motion to Compel Production of Documents. Therefore, Plaintiff reasserts his argument that he is a dues-paying member of a labor union and a former member of the APFA Board of Directors currently in pursuit of and defending himself against claims of breach of fiduciary duty. Additionally, the fiduciary exception excepts any communications itemized on the privilege log from attorney-client privilege for all communications dated prior to the filing of this case. (*Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-1104 (5th Cir. 1970)) (holding that "The corporation is not barred from asserting [privilege] merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.").

In *Garner*, the 5th Circuit Court held that:

> "There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons." (*Id.* at 1104).

The claims and counterclaims pending before the court include claims for wrongful action against former and current National Officers, as well as wrongful conduct by the union. The alleged conduct from both Plaintiffs and Defendants is of doubtful legality. There is no availability of these communications aside from that within APFA's possession. There are 26,000 flight attendants with a commonly shared, and vested interest in their union leadership. It serves justice to find that Defendants' assertions of attorney client privilege are groundless based on the fiduciary exception.

JOINT REPRESENTATION EXCEPTION APPLIES. Additionally, Plaintiff maintains that he was jointly represented by counsel for the union as a client. He served on the APFA Board of Directors from April 1, 2021 to March 22, 2022 prior to the filing of this case. Joint representation existed between union counsel and Plaintiff. Therefore, only those communications cited on the privilege log pertaining to this pending action dated after April 20, 2022 may classify as attorney-client privileged communications. All other communications fall under the joint-client exception to the attorney-client privilege. (*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B (N.D. Tex. May 25, 2016)).

Communications about the Ross Administration between and among AFPA officials, and internal and outside counsel is pertinent and non-privileged while Plaintiff served on the Board of Directors. He was a member in good standing and *was* the client to which counsel owes a fiduciary duty. At the time of these Arbitrations, Ross sat on the APFA Board of Directors as the San Francisco Base President, and at all times was a member in good standing. Therefore, APFA may not assert privilege over any documents or communications prior to the date of filing this case on April 20, 2022. All communications and documents prior to this date shall not be privileged as the APFA Board of Directors was their client.

6

**Defendant's Production was Insufficient:**

Defendant's counsel produced documents. However, many of the documents were heavily redacted, in an unreadable format, improperly extracted, and disorganized. (*See* App., 1-41). Of those documents Defendants did produce, Defendants withheld multiple documents that Plaintiff previously produced to Defendants. The following issues continue to persist:

- Emails were not produced in full, as the page numbers indicate missing pages were not produced. (*See* App., 30-35).

- Emails were produced without identifying information of the parties who originated or received the communications. (*See* App., 12-22).

- Text messages were produced without phone numbers, identifying names, only fragmented communications, and lacking dates of the communications—clearly indicating no proper method of extraction were used. (*See* App., 10-11).

- Most documents were produced in a format that could not be used in court. (*See* App., 23-29; 10-22).

- Emails were produced with only a single letter per line—making the document virtually unreadable. (*See* App., 23-29). **Defendant's counsel produced over 350 pages in this format**.

- The same documents were produced multiple times. (*See* App. 36-41).

As of the date of this filing, Plaintiff still has not received adequate production of documents. Defendants' document production, though only a sample has been included here, is insufficient (*See* App., 23-29). Defendants claim Plaintiff seeks documents it suspects exist. If Defendants believed this were true, then Defendants should have withdrawn their objections and informed Plaintiff's Counsel of this fact in pre-filing conferences. If a misconception persists by Plaintiff, then Defendants merely need only withdraw their objections and amend their responses stating that no responsive documents exist. However, this is the first time Defendants have made this claim.

It is probable that multiple communications *do* exist indicating a clear motivation to seek a merger between the AFA and APFA. However, Defendants do not want to produce those

documents. Additionally, Defendants withheld emails referenced in documents previously filed with this Court. (App. Pl. 2cd Mtn to Amend, PAGEID 2171-2228, ECF No. 107). Defendants did not produce any emails between Hal O'Neil and Erik Harris from August 31, 2020 to September 5, 2020.  Yet the evidence attached to Ms. Morgan's affidavit indicates that at least one exists during this time frame when Hal O'Neil writes to Erik Harris on September 9, 2020 "Erik. . . . . . . Last week I responded to your email regarding our review of the Bob Ross documents. . . .". (App. Pl. 2cd Mtn to Amend, PAGEID 2177-78, ECF No. 107).  Limited emails were produced from key players including Erik Harris, Melissa Chinery-Burns, Joe Burns, Julie Hedrick, and Josh Black. Again, even those documents filed on record with this court were not produced by Defendants. (App. Pl. 2cd Mtn to Amend, PAGEID 2171-2228, ECF No. 107). Plaintiff's Counsel is unable to receive even the most innocuous of discovery documents that Defendants' Counsel agreed to produce—insurance documents.

      Defendants' approach to discovery seems to assume that he has complied with the Federal Rules of Civil Procedure.  Yet he does not argue that he has produced all relevant non-privileged documents as provided in Fed. Rules of Civ. Proc. § 26(b)(1).  He argues Plaintiff should be satisfied with production of *some* of the evidence requested, rather than *all* of the relevant evidence. (Dfts Resp. to Pl. Mtn to Cmpl., PAGEID 3149, ECF No. 160). This approach to discovery undermines its purpose.  The information sought in Plaintiff's Requests for Production is both relevant and likely to lead to admissible evidence.

      Plaintiff's counsel turned over all documents in her possession, while Defendants seem to cull through individual emails, extracting those that are relevant, and either redacting or withholding those that are unfavorable. Defendants argue that Plaintiff should be satisfied with their production of 5000 or 6000 documents, as though Plaintiff is irascible in his demands for *all* relevant evidence. Plaintiff met his burden that the information sought will lead to admissible

8

evidence as he seeks documents and communications involving key pieces of evidence, key players, and key events that gave rise to his claims.

Plaintiff does not request unlimited access to Defendant's records; he requests Defendants withdraw their objections and produce *all* responsive documents to his requests. The subject-matter, the key individuals, and the time frame are limited to relevant and pertinent subject-matter. These documents and communications would be related to only Robert "Bob" Ross, Eugenio Vargas, Nena Martin, and Marcy Dunaway. The scope and definition clearly limit the request in this manner. Moreover, Defendants illogically contend that documents and communications related to the Ross Administration are irrelevant. Claims for breach of fiduciary duty, fraud, defamation, violation of a union members right to free speech, free association, due process, and wrongful discipline obviates the necessity for documents and communications surrounding the discipline and Defendants' motivations thereto.

Plaintiff met his burden to show how the requested documents are relevant, proportional, and likely to lead to discoverable information. To date, Defendant failed to provide all requested documents or otherwise explain via specific objections how Plaintiff's document production is justifiably withheld or redacted. Defendants continue to withhold and redact documents pertinent to the matters before this court, and relevant to Plaintiff's Requests for Production. Thus, Defendants should be compelled to produce documents responsive to Plaintiff's requests.

In closing, Plaintiff will note that production of documents in a .PST format was requested for purposes of ensuring the documents were sufficiently scrubbed, flagged as privileged and either withheld or redacted, and delivered to Plaintiff for review via proper discovery software. Given the improper format of those documents produced thus far, it seems that use of discovery e-software to ensure recovery, review, and delivery of documents effectively and efficiently would be reasonable and a no-cost solution to the issues plaguing Defendants' document production.

## CONCLUSION

Plaintiff seeks only responsive documents that are both relevant and proportional to claims he asserts. The requests are likely to lead to discovery information as previously explained. Plaintiff will be prejudiced if Defendants documents are withheld. The documentation is solely in Defendant's possession, custody, and control. Despite Plaintiff's repeated attempts to resolve the discovery deficiencies, without Court intervention, those attempts have proven unsuccessful. Based on the foregoing, Plaintiff requests that this Honorable Court grant Plaintiff's Motion to Compel Defendant to produce documentation responsive of Plaintiff's Requests for Production.

Respectfully submitted,

By: /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023 a true and correct copy of the above was served on Defendants' attorneys, via the e-filing manager.

/S/ Kerri Phillips
Kerri Phillips

Jeffrey Bartos
Charlette Matts
James Sanford
Michael Rake