**10 IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | |
| | § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiff/Counterclaim** | § | |
| **Defendant,** | § | **Judge Terry R. Means** |
| | § | |
| **v.** | § | |
| | § | **(Relates to Motion Referred to** |
| **ASSOCIATION OF PROFESSIONAL** | § | **Magistrate Judge Cureton)** |
| **FLIGHT ATTENDANTS, *et al.*,** | § | |
| | § | |
| **Defendants/Counterclaim** | | |
| **Plaintiff.** | | |

---

**PLAINTIFF ROBERT "BOB" ROSS'S MOTION TO QUASH DEFENDANTS' SECOND
NOTICE TO TAKE DEPOSITION AND MOTION FOR A PROTECTIVE ORDER AND
BRIEF IN SUPPORT**

---

COMES NOW Robert "Bob" Ross ("Ross"), Plaintiff, pursuant to Federal Rule of Civil Procedure 26(c) and Local Rules 7.1, 7.2 and 53.1, files this Motion to Quash Defendants, the Association of Professional Flight Attendants ("APFA" or "the union"), Julie Hedrick's and Erik Harris's (collectively "Defendants") Second Notice of Deposition of Plaintiff, Robert "Bob" Ross on January 10, 2024; Motion for Protective Order, as follows:

## I.    Factual Background

1.    In this lawsuit, Plaintiff alleges his right to a fair hearing as guaranteed under the Labor Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. § 411 (a)(5), which led to the union wrongfully disciplining him and banning him from running for public office within the union—a violation of LMRDA 29 U.S.C. § 529. Plaintiff argues that this is a result of exercising his free speech and association rights under the LMRDA 29 U.S.C. § 411 (a)(2) as he is a member of the opposing political faction to the current leadership within APFA.[1]

2.    Plaintiff filed an initial Motion to Quash and Motion for a Protective Order on September 25, 2023 (ECF No. 121) wherein Plaintiff argued, among other things, that the discovery period should be extended, and depositions should be scheduled so as not to interfere with the union's National Officer's election being held in from November 2023 to January of 2024. The integrity of independent and fair union elections is the cornerstone of ensuring free unencumbered elections.

3.    On December 4, 2023, Plaintiff received Defendants' Notice of Deposition of Plaintiff on January 10, 2024. Plaintiff withdrew his Motion to Quash and Motion for a Protective

---

[1] The "Ross Administration" consists of Robert "Bob" Ross (former AFPA National President) Nena Martin (former APFA Vice-President) Marcy Dunaway (former APFA National Secretary) and Eugenio Vargas (former APFA National Treasurer). The Court should note that in August of 2023 the APFA Board of Directors ordered financial audits of Marcy Dunaway and Nena Martin's expenditures while in office. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122).. Upon the filing of this case, investigations into financial expenditures were launched against multiple supporters of the Ross Administration, including Heidi Morgan. (App. Pl. Mtn to Quash, PAGEID 2492-2500, ECF No. 122). On September 21, 2023 a complaint was submitted against Heidi Morgan with the Miami Base President for her public statement as a union member back in June of 2019. In this statement Morgan expressed her opposition to AFA General Counsel, Joe Burns acting as negotiator for APFA.

order upon extension of the discovery period, however not more than two days later did Defendants serve a Notice of Deposition of Plaintiff without consultation or conference for January 10, 2024— during the election period. (App. pp. 1-4). Plaintiff objected to the last deposition being scheduled during APFA's union election period for National Officers—an occurrence that happens between November to January every four years. (App. pp. 1-4).

4.      Plaintiff and Defendants lead opposing political factions. Depositions would substantially hinder their ability to run and/or campaign for APFA National Office. Additionally, deposition testimony could be used to abuse the full and fair democratic process of the elections forcing either party to answer questions that could be used against them during the elections. Considering Plaintiff's role within the union, a deposition could be used to mar him or his political faction.

5.      Plaintiff's filed his initial Motion to Quash and Motion for protective order. However upon entry of this Court's order extending the discovery period until February 29, 2023, Plaintiff found it merited to withdraw the motion of his own accord as depositions could be scheduled at a time that would not affect the union elections.

6.      However, Defendants' counsel emailed Plaintiff's counsel notice of deposition scheduled for January 10, 2024 without conference on possible dates to take Plaintiff's deposition. (App. pp. 5-6). After conference, Defendants refused to reschedule the depositions to February, and thus Plaintiff finds it necessary to seek the Court's assistance to protect the integrity of APFA's internal democratic elections and seeks to quash this motion. (App. pp. 1-4). It is not appropriate to take depositions during APFA's election of new National Officers, which closes on January 26, 2024, and proposed February 27, 2024 as an alternative date (App. pp. 1-4). Furthermore, Plaintiff has a prior engagement for this date and must be in California.

7.      Defendants' counsel demands the depositions be held in February of 2024, to

which Plaintiff is opposed to having either Plaintiff or Defendants deposed so as to preserve the integrity of the union's internal democratic process and allow free speech to ensure a full and fair election process as guaranteed by the LMRDA.  It is outside of the interest of Congress, federal law, and our duties as officers of the court to ensure our actions do not interfere with democratic processes occurring within the union.  Because Defendants lead an opposing political faction to that in which Plaintiff leads, depositions based on either Parties during this period would abridge APFA membership's right to a full and fair election and possibly stifle either Plaintiff or Defendants right to free speech.

8.      Plaintiff ask that the court Quash the pending Notice of Deposition of Plaintiff and allow depositions to take place during February of 2024 instead, after the union's initial election process has closed.

## II.      Objections to Defendants' Notice of Deposition to Plaintiff

9.      Plaintiff asserts the following substantive objections to Defendants' Notice of Deposition.  Plaintiff objects and asserts that Defendants seeks to harass and abuse Plaintiff through serving a Notice of Deposition for his appearance in-person rather than virtually.  Despite that Ross resides in California, despite knowledge of Plaintiff's counsel's request to depose Plaintiff virtually, and despite that without confirmation of the date, time and manner of the deposition Plaintiff was scheduled to be out of the country. Further, Plaintiff fears this deposition is sought to harass and embarrass Plaintiff and the union members that support his political faction.  APFA holds elections for new National Officers from December 2023 to January 2024.

## III.      Argument

10.      Under Federal Rule of Civil Procedure 26(c) the Court is authorized to protect parties from discovery sought to harass, embarrass, oppress, annoy, or cause undue burned or expense. (Fed. R. Civ. Proc. § 26(c)).  A prerequisite to the issuance of a protective order governing

discovery is a showing of "good cause." (Fed. R. Civ. P. § 26(c); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994)). Upon a showing of good cause, the Court is entitled to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (Fed. R. Civ. Proc. § 26(c)).

11. "Good cause" exists when discovery will result in a clearly defined and serious injury to the party seeking the protective order. (*Pansy*, 23 F.3d at 786). "In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information. The court has wide discretion in determining the scope of a protective order." (*Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, slip op at 8 (E.D. 37 La. Apr. 5, 2004)) (App. Pgs.9-40).

12. Defendants continue to withhold a *substantial* number of documents in discovery pertinent to the matter before this Court. Meanwhile, the Plaintiff delivered all documents in his possession to Defendants. Now, Defendants seek a deposition of the Plaintiff. Plaintiff, however, is unable to conduct depositions or properly prepare for trial due to Defendants' lack of document production.

13. Currently, Plaintiff is scheduled to be deposed during the period in which the candidates will campaign and APFA membership will vote on new APFA National Officers. Those union members that are nominated and willing to serve begin to campaign during the month of December, at which time candidates' merit, integrity, and abilities are heavily debated. Democracy functions through the campaign and election processes within any given union, and as held by the Supreme Court, LMRDA was designed to "guarantee free and democratic union elections similar to the model of our political elections." (*Marshall v. Local 1402, Int'l. Longshoremen's Ass'n of Tampa. Fla. and Vicinity AFL-CIO*, 617 F. 2d 96, 98 (5th Cir. 1980)

(citing *Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977)).

14. Meanwhile, the union will begin its election process for new National Officers—the primary leadership positions within the union.  The integrity of the election process is vital to the functionality of a union democracy.

> "The purpose of the [LMRDA] as a whole is not only to stop and prevent outrageous conduct by thugs and gangsters but also to stop lesser forms of objectionable conduct by those in positions of trust and to protect democratic processes within union organizations. . . . (T)he rights of individual members of a labor union are protected by federal statute with a view to allowing those members to conduct local matters with a minimum of outside interference. In short, local affairs are to be governed by local members under democratic processes." *McDonald v. Oliver*, 525 F.2d 1217 (5th Cir. 1976) (citing *United Bhd of Carpenters and Joiners of Am. v. Brown*, 343 F.2d 872, 882 (10 Cir. 1965)).

15. Facts like those presented before this court exist in the present case. Ross was an elected official who held a seat as a member of the APFA Board of Directors and was in vocal opposition to the current leadership in office.  He was removed from office and banned from holding office for life because of his union disciplinary hearing.  In *Sheet Metal Workers v. Lynn*, the U.S. Supreme Court stated that:

> "[T]he potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him. See *Hall* v. *Cole*, 412 U. S. 1, 8 (1973). Seeing Lynn removed from his post just five days after he led the fight to defeat yet another dues increase proposal, other members of the Local may well have concluded that one challenged the union's hierarchy, if at all, at one's peril. This is precisely what Congress sought to prevent when it passed the LMRDA. 'It recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal.' *United Steelworkers v. Sadlowski,* 457 U. S. 102, 112 (1982). We thus hold that Lynn's retaliatory removal stated a cause of action under § 102." *Sheet Metal Workers v. Lynn*, 488 US 347, 355-56 (1989).

16. Harassment and abuse of the Ross Administration has escalated since the filing of this matter.

- In July of 2022, investigations were made into the financial expenditures of multiple witnesses that testified on behalf of the Ross Administration during their disciplinary arbitrations, including Heidi Morgan.  (App. Pl. Mtn to Quash, PAGEID 2500, ECF No. 122).

- In August of 2023, Nena Martin and Marcy Dunaway were the subject of additional

audits. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122). The basis for conducting audits comes almost a year after the initial request was made.[2] However, the union waited until August of 2023 before conducting the audit.

- On September 21, 2023, a complaint was submitted against Heidi Morgan (former union representative for Eugenio Vargas and Nena Martin) for a public social media post made over three years ago. (App. Pl. Mtn to Quash, PAGEID 2492-2500, ECF No. 122). Ironically, the post complained of AFA General Counsel Joe Burns being hired to represent APFA in negotiating its new Collective Bargaining Agreement.

- On September 24, 2023, Melissa Chinery-Burns posted a statement on social media arguing the Plaintiff had something to hide because he opposed this deposition, and that he was banned from running or holding political office. (App. Pl. Mtn to Quash, PAGEID 2480, ECF No. 122).

- In November, Human Resources Complaints with American Airlines, Inc. have been filed against multiple vocal supporters of the Ross Administration—including two in the last four months against Ross himself. These are the only two complaints ever filed against him since he was hired over 40 years ago.

- In November, Cease and Desist Letters have been received by multiple people who questioned the current APFA leadership, particularly Joe Burns (married to Melissa Chinery-Burns, the charging parties against the Ross Administration) AFA/APFA Counsel's qualifications.

- In November, APFA adopted a resolution designed to target APFA leadership that support the Ross Administration from cooperating in this case in any way.

- Ross supporters have discovered that altered or edited pictures have circulated on and off social media depicting fake or false comments these individuals allegedly made on social media.

- Ross supporters have complained of insults and threats made at them and their families, even rising to the level of one person receiving pictures of the outside of this person's home—to insinuate a threat of harm to this person or her family.

17.    Most importantly, on September 24, 2023 Plaintiff's counsel received a call from an APFA union member regarding a social media post made by Melissa Chinery-Burns (App. Pl. Mtn to Quash, PAGEID 2480, ECF No. 122). Ms. Chinery-Burns posted a portion of Plaintiff's Notice of Objection (ECF No. 120) and contemplated whether Plaintiff feared being deposed

---

[2] Melissa Chinery-Burns (spouse of AFA General Counsel, Joe Burns) requested audits on Nena Martin and Marcy Dunaway in November of 2022. No other administration has been audited by APFA to date.

because he had something to hide.  Furthermore, it lays out the union's intent to bar Plaintiff from running for office if he chose to do so based on the Arbitration Award's ban for life.[3]  The post most recently made by Adam Brooks states that he is the Ballot Committee Chairperson for the union.  He states undeniably that despite the validity and enforceability of this arbitration award, he will deny Ross and Vargas both the right to run for election with APFA. Additionally, the APFA released a statement from the Ballot committing citing sections of the APFA Constitution and the Arbitration Award as a basis for Plaintiff's inability to run for office.  (App. pp. 7-8).   This is a violation of federal law. The LMRDA § 481(e) provides that,

> "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." 29 U.S.C. § 481(e).

This court further held that "[a]lthough the Fifth Circuit has not specifically held that being banned from holding union office is a form of discipline, it has stated in *dicta* that the right to run for office is a membership right.  The court will therefore assume that a ban against running for union office is a form of discipline that is actionable under § 411(a)(5)." (*Martin v. Local 556, Transp. Workers Union of Am.*, Civil Action No. 3:14-CV-00500-D , slip op. at 17 (N.D. Tex. Sep 03, 2014) (citing *Adams-Lundy v. Ass'n of Prof'l Flight Attendants,* 731 F.2d 1154, 1156 (5th Cir. 1984)).  (App. Pgs. 41-67).

It is concerning that a union disciplinary award would go beyond the disciplinary arbitrator's authority to declare that Plaintiff violated federal labor law for breach of fiduciary duty.

---

[3] The court should note that Ms. Chinery-Burns has access to information that would otherwise be confidential.  She received copies of the confidential settlement offers made by Plaintiff to Defendants during settlement conferences, and on May 10, 2023 she posted the details of these confidential settlement offers on her Facebook group page. Plaintiff's concerned that deposition even if under seal would likely result in confidential information being leaked to Ms. Chinery-Burns based on her husband's, Joe Burns, close association with opposing counsel and subsequently posted on her public Facebook page.

Whereas the purpose of the disciplinary hearing was to determine violations of the union Constitution and Policy—not LMRDA.

18.     Plaintiff's counsel received numerous calls from various flight attendants scared for their safety—afraid for their jobs.  These flight attendants live in fear of retaliation from their union and the opposing political faction within the union.  The Court should note, the greater concern is that Ms. Chinery-Burns has begun to set the stage to exploit Plaintiff with his own deposition testimony if he does run. (App. Pl. Mtn to Quash, PAGEID 2480, ECF No. 122). There can be no doubt that if a deposition is taken just before elections, it will inevitably affect the campaign and election process for this union.  Plaintiff seeks the protection of this court to allow Plaintiff, and his political faction, the opportunity to run unencumbered by the discovery abuse Defendants clearly intend.  The harm suffered by waiting three months to conduct deposition is minimal compared to the risk of harm to the union's democratic election process.

19.     The Court's should protect the integrity of the union's democratic process.  The leadership of both political factions within the union are parties to this case, thus the risk of harm is posed to all parties, not just Plaintiff. Moreover, the harm done by suspending depositions for three months is minimal considering Plaintiff has already testified in his Disciplinary Arbitration hearing and is not likely to change his testimony.

20.     Bob Ross won the National Presidency in 2016 with a record-breaking number of votes.  If Ross decides to run for office again, he will be a notable contender to win the APFA National Presidency.[4]  National Officers serve a term of four years.  The next election for new National Officers will be held in January of 2024 and the new officers will take office on April 1, 2024. The risk of harm is substantial to the union if discovery abuse is used to affect its outcome.

---

[4] The Court should note that Bob Ross won the APFA National Presidential Election in 2016 by 70.55% of the vote.

### IV.        Motion for Protective Order

21.        Pursuant to Federal Rules of Civil Procedure 26(c) Plaintiff requests an Order be entered protecting Plaintiff from the risks of "harassment, annoyance, and abuse" caused by Defendants' deposition being taken during the union election process, and require depositions be held in February of 2024.   Plaintiff also requests an Order be entered protecting Plaintiff's right to run for APFA National Office, should he choose to do so, while this matter is pending before Court.

### PRAYER

**WHEREFORE, PREMISE CONSIDERED, Plaintiff** prays that his Motion to Quash Defendants' Second Notice of Deposition and Motion for Protective Order be granted and that the Court enter an order quashing the deposition notice and enters a protective order requiring the union allow Plaintiff to run for APFA elected office and requiring depositions of Plaintiff be scheduled during February 26, 2024, and for such other and further relief, either at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,
KD PHILLIPS LAW FIRM, PLLC

By:  /s/ Kerri Phillips
      Kerri Phillips
      Texas Bar No. 24065906
      Phone: (972) 327-5800
      Email: kerri@KDphillipslaw.com
      6010 W. Spring Creek Parkway
      Plano, Texas 75024
      Fax: (940) 400-0089
      **ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

     I certify that true and correct copy of this document was sent to all counsel of record, hereunder listed via ECF filing on this the 7<u>th</u> day of December 2023.

    Jeff Bartos
    James Sanford
    Charlette Matts
    Michael Rake

                         /s/ Kerri Phillips
                        Kerri Phillips