**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| **ROBERT "BOB" ROSS,** | § § § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiff/Counterclaim Defendant,** | § § § | **Judge Terry R. Means** |
| **v.** | § § | |
| **ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, _et al._,** | § § § § | **(Relates to Motion Referred to Magistrate Judge Cureton)** |
| **Defendants/Counterclaim Plaintiff.** | | |

**PLAINTIFF'S REPLY TO RESPONSE OF MOTION TO COMPEL DEFENDANT,
DIVERSIFIED CREDIT'S PRODUCTION OF DOCUMENTS
AND BRIEF IN SUPPORT**

Now comes the Plaintiff, ROBERT "BOB" ROSS (hereinafter "Plaintiff" or "ROSS"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 34, 37, and Local Rules 5.2, 7.1, 7.2, 56.1, 56.3, 56.6 and files his Reply to Defendant Diversified Credit's Responses and Production of Documents from ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS (hereinafter "APFA" or the "Union"), Julie Hedrick ("Hedrick") and Erik Harris ("Harris") (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff reasserts the following:

**All  Requests are likely to lead to relevant discoverable information.**

Again, Plaintiff will reassert that the information sought in Requests for Production No. 1, 2, 3, 4, 5, 6, 7, and 8 are relevant and likely to lead to discoverable information. The documents and communications all contemplate the Plaintiff's collection account.  The Requests seek information about Ross's collection account, Diversified's collection activities,

1

and the communications between APFA and Diversified that seek to endeavor pursuit of their debt collection claim. All of these communications are relevant, well within the scope of discoverable information, and likely to lead to admissible information. Request for Production No. 1, 2, 3, 4, 5, 6, 7, and 8 requests documents, and communications between Diversified and APFA regarding Robert "Bob" Ross, his collection account, credit reporting, documentation and communications involving the placement of the account and pursuit of the debt collection.

Defendant should *not* be permitted to withhold information or documentation responsive of Request for Production No. 1, 2, 3, 4, 5, 6, 7, and 8 simply because Defendants assert that the requests are privileged based on APFA and Diversified being mutual co-defendants in the current matter. All communications listed on the privilege log pre-date the filing of the current matter before this Court. Furthermore, full and complete responses and document production should be provided to Plaintiff in response to his requests for production. Any communication regarding the strategy or necessity for pursuit of legal action or credit reporting against Robert "Bob" Ross on the collection matter is within the scope of discoverable information and relevant to whether misrepresentations were made and collection activities taken intentionally.

Plaintiff requests Defendant produce all communications and documents relating to his own collection activity, credit reporting, and debt account. Plaintiff's request seeks documents and communications narrowed to a specific time frame as of the date Ross's debt account was transferred to Diversified or when the current National Officers took office on April 1, 2020. Further, the subject-matter related is well defined, and it seeks communications only between APFA, Diversified, or any representative thereof. By limiting the request to those communications relating to Plaintiff's debt account, it defines the scope as those documents

and communications after April 1, 2020 to current, and those documents and communications discussing the alleged Overpayment Debt for which Diversified filed suit against Plaintiff for breach of contract. The scope and definition is clearly limited to those documents and communications regarding Plaintiff, the lawsuit filed against him, Defendants herein, and their counsel.

As discussed above, Plaintiff has met his burden to show how the requested documents are relevant and proportional. To date, Defendant failed to provide all requested documents or otherwise explain via specific objections how Request for Production No. 1, 2, 3, 4, 5, 6, 7, and 8 are privileged or are in possession of APFA.

**No Common Interest Defense:**

"According to our circuit precedents, the two types of communications protected under the CLI privilege are: (1) communications between co-defendants in actual litigation and their counsel; see, e.g., *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977); and (2) communications between potential co-defendants and their counsel. *See Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir. 1985); *Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 624 (E.D. Tx. 1993). With respect to the latter category, the term 'potential' has not been clearly defined. However, because the privilege is 'obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisers and clients.'" *In re Santa Fe International Corporation*, 272 F.3d 705 (5th Cir. 2001) (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 606 (N.D. Tex. 1981).

The Suit Authorization attached to Diversified's Appendix is signed by Erik Harris, APFA National Treasurer, on July 8, 2021. (Diversified's App. to Resp. to Mtn to Compel, PAGEID 3188, ECF No. 162-1). However, nothing in the APFA Constitution grants the National Treasurer the right to retain

and hire counsel for the union. (App. pp. 33-34).  Nor is the National Treasurer empowered under the APFA Constitution to authorize a third party to retain counsel and make legal decisions. (App. pp. 33-34). Only the National President and Vice-President may hire counsel on behalf of the union. (App. pp. 31-32). So, either Diversified has documentation signed by the National President and the Executive Committee that authorizes retaining counsel to represent APFA, or Rake was never retained as counsel for APFA.  Either way, this document does not qualify as a common interest agreement and seems to raise more questions than it does answers.  It appears this document is not a valid and binding agreement between APFA and Diversified or APFA and Michael Rake as it was not signed by an authorized agent of the union.

Diversified claims this is a shared defense agreement. But Harris signed this agreement more than nine months prior to Plaintiff filing claim in federal court.  The 5th Circuit held that ". . . when the threat of litigation is merely a thought rather than a palpable reality, the joint discussion is more properly characterized as a common business undertaking, which is unprivileged, and certainly not a common legal interest." (*In re Santa Fe International Corporation*, 272 F.3d 705, (5th Cir. 2001)).  Defendants' decision to pursue filing claims against Plaintiff does not indicate Plaintiff's likelihood to retain counsel and pursue claims for wrongful discipline against Defendants. Over 500,000 debt claims are filed in Texas Courts annually with very few defendants retaining legal counsel.[1]

The Suit Authorization is nothing more than a power of attorney from APFA to Diversified. The signed agreement states that APFA authorizes Diversified "*as our agent,* to retain an attorney for APFA under a retainer agreement consistent with the terms of this authorization." (emphasis added Diversified's App. to Resp. to Mtn to Compel, PAGEID 3188, ECF No. 162-1). This document gives Diversified the authority to sign a retainer on behalf of APFA make decisions to effectuate litigation against Plaintiff.  However, the Suit Authorization states that "the attorney shall be regarded as *our*

---

[1] *See* https://www.txcourts.gov/media/1456803/ar-statistical-fy-22-final.pdf for statistics on Justice Court filings.

attorney and he shall be free to report directly to us or through you, as *our agent*, as he desires." (emphasis added Diversified's App. to Resp. to Mtn to Compel, PAGEID 3188, ECF No. 162-1). This statement clarifies the relationship between the parties—Michael Rake as counsel for APFA—Diversified as its authorized agent.  (Diversified's App. to Resp. to Mtn to Compel, PAGEID 3188, ECF No. 162-1). APFA authorizes Diversified to make all necessary arrangements to pursue litigation on its behalf and in its name as its authorized agent.  This is a power of attorney, not a shared defense agreement, which authorizes Diversified to make all necessary decisions to pursue litigation on its behalf.  This agreement designates Mr. Rake is APFA's counsel. This means Mr. Rake retained as his client *was* the APFA Board of Directors. Therefore, no attorney client privilege exists based on Mr. Rake's representation of the APFA Board of Directors.

No shared or common defense as that would make Diversified nothing more than a third party, rather than a co-litigant.  The Suit Authorization designates Diversified as APFA's agent, rather than a Defendant similarly situated.  Considering at this time Ross sat on the Board of Directors—Ross *is* the client to which APFA signed and agreed represented the union's leadership, APFA's Board of Directors. As Diversified's current Counsel represented APFA, Mr. Rake also represented Ross according to this Suit Authorization form—meaning he owed Ross a fiduciary duty as the Base President of San Francisco, and member of the APFA Board of Directors at the time suit was filed against him.

**No Attorney Client Privilege:**

FIDUCIARY EXCEPTION APPLIES. A privilege log was produced. (*See* Diversified App. Docket No 162-1, PAGEID 3189-3191).  However, Defendant is unable to assert attorney-client privilege as a valid means to withhold any communications.  Ross is currently in pursuit of and defending himself against claims of breach of fiduciary duty with APFA.  Additionally, the

fiduciary exception applies to all communications itemized on the privilege log as this exception applies all communications dated prior to the filing of this case.

Considering Rake represented APFA against Ross in the Justice Court claim filed in Tarrant County, these communications are not privileged (*Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-1104 (5th Cir. 1970)) (holding that "The corporation is not barred from asserting [privilege] merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.").

In *Garner*, the 5th Circuit Court held that:

> "There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons." (*Id.* at 1104*).*

The claims and counterclaims pending before the court include claims for breach of fiduciary duty. The alleged conduct of both Plaintiff and Defendants is of doubtful legality. There is no availability of these communications aside from that within APFA's possession. There are 26,000 flight attendants with a commonly shared, and vested interest in their union leadership. Defendants' assertions of attorney-client privilege are groundless based on the fiduciary exception.

JOINT REPRESENTATION EXCEPTION APPLIES. Additionally, Plaintiff will reassert his argument that he is a dues-paying member of a labor union and was a member of the APFA Board of Directors. He served on the APFA Board of Directors from April 1, 2021 to March 22, 2022 prior to the filing of this case, and during the justice claims court case against him. Joint

representation existed between union counsel and Plaintiff. All other communications fall under the joint-client exception to the attorney-client privilege. Plaintiff maintains that he was jointly represented by counsel for the union, thus no attorney-client privilege may be asserted. (*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B (N.D. Tex. May 25, 2016)).

Communications about the Ross Administration between and among AFPA officials, and internal and outside counsel is pertinent and non-privileged while Plaintiff served on the Board of Directors. He was a member in good standing and *was* the client to which counsel owes a fiduciary duty as he sat as a Base President on the APFA Board of Directors. Diversified's own documents attached to its Appendix state that Diversified knew this fact, as Diversified wrote that "Our supervisor talked to Mr. Ross. He is stating he's on the Board of A.P.F.A.?" (Diversified App. Docket 163-1, PAGEID 3205). Diversified also knew the Board of Directors was updated on all collection's activity related to Ross's account as Erik Harris, APFA National Treasurer, stated "I forwarded the response to the [Board of Directors] in which he was included on the communication." (Diversified App. Docket No 162-1, PAGEID 3207). There are multiple requests for information from Erik Harris stating he needed to update the APFA Board of Directors, in which Ross served at the time of these communications. (*See* Diversified App. Docket No 162-1, PAGEID 3201, 3207, 3211). Diversified knew Ross sat on the Board of Directors at the time, so Diversified may not claim privilege on communications as it had no expectation that their communications with APFA counsel were privileged. Therefore, neither APFA nor Diversified may assert privilege over any documents or communications prior to the date of filing this case on April 20, 2022. All communications and documents prior to this date shall not be privileged as the APFA Board of Directors was their client.

As previously stated, these communications cannot be privileged as Mr. Ross is a dues-paying members and Ms. Nikitas is in-house counsel for the union being paid with their union dues, thus there

is mutual representation of the parties which pierces any attorney-client privilege.  Margot Nikitas and Bill Osborne participated in the disciplinary hearings at issue for the parties, therefore APFA cannot assert attorney-client privilege.  Ms. Nikitas owes a fiduciary duty to the union, and conduct taken against that interest should be disclosed to Plaintiff as he is a member in good standing.

**Problems with Production of Documents:**

Diversified's Appendix to its Response to Plaintiff's Motion to Compel included the exact documents produced in response to Plaintiff's requests in the exact same manner as Plaintiff received it. The court should note the discrepancies with these documents. The page numbers at the bottom of the emails produced in Diversified's email chains illustrate the full and complete communications were withheld.  Each page of the appendix and the Court's file-stamp of the PAGEID are consecutive sequentially numbered.  The pagination of the individual email exchanges do *not* follow sequential numbers, see below.

| Appendix Page No. | PAGEID | Email Pagination Number |
|:---:|:---:|:---:|
| 12 | 3198 | 6 |
| 13 | 3199 | 5 |
| 14 | 3200 | 4 |
| 15 | 3201 | 5 |
| 16 | 3202 | 4 |
| 17 | 3203 | 3 |
| 18 | 3204 | 3 |
| 19 | 3205 | 1 |
| 20 | 3206 | 2 |

(Diversified App. Pg. 12-20, ECF No. 162-1, PAGEID 3198-3206). The third column above illustrates that the pages do not follow sequential order. The improper pagination and lack of missing pages indicates the full communications delivered were incomplete.

      PAGINATION:  In viewing only Appendix pages 22-27 as a sample of the entire document production there are multiple problems.  The pagination numbers on emails from 13-18, meanwhile pages 1-12, and 17 were never delivered to Plaintiff.   (Diversified App. Pg. 22-27, ECF No. 162-1, PAGEID 3208-3213).

      SUBJECT LINES: The Subject of the email communications numbered Appendix pages 22-27 varies between an email Subject Line reading: "Missed Call" on App. pp. 22-23; "Update" on App. p. 24; "Bob Ross Lawsuit" on App. P. 25-26; "Bob Ross" on App. P. 27.    (Diversified App. Pg. 22-27, ECF No. 162-1, PAGEID 3208-3213).  These six pages of Diversified's Appendix vary between four different email communications.

      DATES: Additionally, note the dates of the individual email changes. The dates vary from August of 2021 on Appendix pages 22-24 and October of 2021 for Appendix pages 25-27.  (Diversified App. Pg. 22-27, ECF No. 162-1, PAGEID 3208-3213).  Diversified's Privilege Log lists no dates in August or October of 2021—the earliest date listed on the Diversified's Privilege Log is November of 2021.  (Diversified App. Pg. 4-5, ECF No. 162-1, PAGEID 3190-3191).  Diversified should produce these missing pages, and all other documents withheld of which Plaintiff is simply unaware.

## CONCLUSION

      Based on the foregoing, Plaintiff requests that this Honorable Court grant Plaintiff's Motion to Compel Defendant to produce documentation responsive of Requests for Production No. 1, 2, 3, 4, 5, 6, 7, and 8.

Respectfully submitted,


By:  /s/ Kerri Phillips
Kerri Phillips, Esq.
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@kdphillipslaw.com
KD PHILLIPS LAW FIRM, PLLC
6010 West Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on December 8, 2023 a true and correct copy of the above was served on Defendants' attorneys, via the e-filing manager.


/S/ Kerri Phillips
Kerri Phillips


Jeffrey Bartos
Charlette Matts
James Sanford
Michael Rake