**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS AND** | § | |
| **EUGENIO VARGAS,** | § | |
| | § | |
| **Plaintiffs/Counterclaim Defendants,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-00343** |
| | § | **Judge Terry R Means** |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, ET AL** | § | |
| | § | |
| | § | |
| **Defendants/Counterclaim Plaintiffs.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiffs, Robert, "Bob" Ross ("Ross") and Eugenio Vargas ("Vargas") file this their Response to the Association of Professional Flight Attendants ("APFA"), Julie Hedrick, and Erik Harris, Motion for Sanctions made, pursuant to Rules 30(d) and 37(b), Fed. R. Civ. P., against Plaintiffs and as the depositions were conducted in bad faith and Defendants have unclean hands and in a manner that was abusive and oppressive to deponents.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ 1

   Cases ................................................................................................................................ 1

   **Court Rules** ..................................................................................................................... 1

**THE COURT'S RECORD** ...................................................................................................... 2

**ARGUMENTS** ........................................................................................................................ 8

CONCLUSION AND PRAYER ............................................................................................. 18

## TABLE OF AUTHORITIES

### Cases

*Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F. 3d 290 (5th Cir. 1997)........................................... 8

*Cordero v City of New York,* 15-cv-03436, slip op. (E.D. N.Y. May 17, 2017) ................................. 17

*MetroPCS v. Thomas, Misc. Action* 3:18-mc-00037-S, slip op. (N.D. Tex. Sep 26, 2022) ................... 8

## Court Rules

Fed. R. Civ. P. 30(c)(2). ............................................................................................................. 17

Fed. R. Civ. P. 30(d) ................................................................................................ 1, 16

Fed. R. Civ. P. 37 (b) .............................................................................................. 1, 4

Local Rule 7.1 ............................................................................................................ 1

Local Rule 7.2 ............................................................................................................ 1

## THE COURT'S RECORD

1.      In this lawsuit, Plaintiffs alleges their Union violated their guaranteed Members' Rights under the Labor Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. §§ 411 and 529 which led to the union wrongfully disciplining them and banning them from running for public office within the union, among other claims. Plaintiffs argue that this is a result of exercising free speech and association rights under the opposing political faction to the current leadership within APFA.[1]

2.      APFA failed to produce documents in compliance with the order issued on December 26, 2023.  Plaintiffs filed a Motion for Sanctions on February 16, 2024.

3.      On February 1, 2023, Robert "Bob" Ross, attended his deposition, and on February 2, 2023 Eugenio Vargas attended his deposition.  Defendants filed a Motion for Sanctions for misconduct and early termination of the Vargas deposition on February 2, 2024.

4.      Several factual assertions made by Defendants in their Motion for Sanctions against Plaintiffs are inaccurate. Namely, Plaintiffs have obstructed, abused, harassed, been obstinate or

[1] The "Ross Administration" consists of Robert "Bob" Ross (former AFPA National President) Nena Martin (former APFA Vice-President) Marcy Dunaway (former APFA National Secretary) and Eugenio Vargas (former APFA National Treasurer). The Court should note that in August of 2023 the APFA Board of Directors ordered financial audits of Marcy Dunaway and Nena Martin's expenditures while in office. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122).. Upon the filing of this case, investigations into financial expenditures were launched against multiple supporters of the Ross Administration, including Heidi Morgan.  (App. Pl. Mtn to Quash, PAGEID 2492-2500, ECF No. 122). On September 21, 2023 a complaint was submitted against Heidi Morgan with the Miami Base President for her public statement as a union member back in June of 2019.  In this statement Morgan expressed her opposition to AFA General Counsel, Joe Burns acting as negotiator for APFA.

disobedient to anyone. Defendants attempt to set forth a narrative that portrays Plaintiffs as the party to subvert attempts to comply with discovery in this pending matter. However, a quick review of the Court record reflects that the opposite is true.

8.      Plaintiffs filed *several* motions to compel documents *without a single request for sanctions*. There is no indication on record to date that Plaintiffs failed to comply with discovery in any way.  Defendants failed to file any motions to compel against Plaintiffs to date. Now, Defendants claim they attempted to depose Ross and Vargas for a period of months, but the court has no record of any motion complaining of this fact from Defendants.

9.      Meanwhile the Court record reflects as follows:

   (a) Defendants waited over a year and a half before scheduling depositions,
   (b) Defendants filed a motion to stay discovery on November 9, 2022 (ECF No. 54),
   (c) Defendants opposed motions to extend discovery on September 19, 2023 (ECF No. 120) and November 9, 2023 (ECF No. 151),
   (d) Plaintiffs filed multiple motions to compel discovery of documents on September 5, 2023, October 19, 2023, October 27, 2023, and October 30, 2023.

Additionally, Defendants' counsel should consider the court's record before arguing that Plaintiff failed to cooperate with the discovery process—namely Plaintiffs have filed *five* motions to compel discovery without requesting the court issue sanctions to date—a far greater burden to the Court, and to Plaintiff's Counsel.

10.      Plaintiffs objected to Defendants use of deposition for purposes of harassment and abuse, not to their attendance and cooperation in being deposed. The scheduling was intended to humiliate Ross and Vargas—a fact proven true upon attendance at the February 1 and 2, 2024 depositions. The depositions were initially noticed for Sanford Gillespie, LLP on October 25, 2023 and January 10 and 11, 2024.  (ECF No. 198, PAGEID 4655-4662).  Notably, on January 5, 2024, APFA served the Notices of Depositions dated February 1 and February 2  for a different location altogether—a hotel conference room near the Dallas-Fort Worth International Airport. (ECF No.

205, PAGEID 4786). Upon arrival, Ross discovered multiple Hedrick APFA leadership members staying at the hotel, filling the hallways, lurking about in view or in ear-shot of the deposition conference room—despite the court's explicit instruction to maintain confidentiality. (ECF No. 198, PAGEID 4719-4720).  When Plaintiff's Counsel asked Defendants' Counsel to explain the change in location he cited that he needed additional room for the additional people in attendance. This makes no sense seeing as there would be less people needed if it was agreed to be confidential.

11.    Defendants' Counsel failed to timely turn over documents ordered by the court. The 30-day deadline expired, and Defendants' Counsel failed to comply under Fed. R. Civ. P 37(b)—meanwhile Defendants demand Plaintiffs appear for depositions ordered by this Court. (Ross ECF No. 187, PAGEID 3766-3767; Vargas ECF No. 178, PAGEID 4994). Plaintiff's Counsel makes their demand for production of documents and conference for a motion for sanctions prior to the depositions, but Defendants' Counsel ignores it. (ECF No. 198, PAGEID 4642-4654).a

13.    Plaintiffs and their counsel appeared for depositions, and Ross was humiliated by Defendants' plan to ensure maximum exposure for this deposition to APFA leadership.  While in his vehicle waiting for his counsel to arrive at the hotel for his deposition, Ross notices several APFA leaders present at the hotel where his deposition is scheduled that morning.  He contacts his counsel, who arrives.  Her law firm personnel waited with Ross in his vehicle.  Ross becomes anxious.  He believed, in good faith, this deposition would be confidential in nature—as agreed on record during the December 26, 2023, hearing and ordered by the Court. (ECF No. 198, PAGEID4718-4721; ECF No. 194; 52:19 - 55:5).

14.    Plaintiff's Counsel discovers the scheduled conference room planned for Ross's deposition is filled with more representatives than Defendants are allowed.  Outside the room is a

group of APFA leaders conversing while they wait for Ross's arrival.  When discussing the circumstances with Defendants' counsel, Mr. Bartos is unapologetic and unaccommodating—the location, the number of people, the group of APFA onlookers.  Mr. Bartos sees no issue with this obvious breach of confidentiality. Plaintiff's Counsel points out that having four national officers, three counsel, and a multitude of APFA leadership throughout the hotel is not confidential and certainly creates an atmosphere that is intimidating to someone taking a deposition.  Having people in the room on computers while Ross is being deposed may be a bit personal.  Either way this does not fit within the scope of confidentiality, as previously agreed.  He begins to cite that the National Officers have a right to be present.  Ms. Matts wonders why Plaintiff is so surprised, the Federal Rules cite that the Defendants have a right to be present—not seven members of the organization and not after Defendants agreed to maintain its confidential nature on record in court. As stated previously, Defendants planned this and gleaned joy from Ross's panicked state.  They seemed proud of the response from their clever plan.  James Sanford was decidedly absent from this scene.

15.    The Court stated on record that the depositions were to remain confidential. (ECF No. 198, PAGEID 4718-4721; ECF No. 194; 52:19 - 55:5). This was not the case.  Suspiciously, after the depositions were held, Defendants began contesting the motion for summary judgment should not be filed under seal.  Yet another carefully planned move to humiliate Plaintiffs.  APFA planned to apply pressure by obtaining Ross's testimony and then unseal his private information to reveal as much information and humiliate him on social media during the election as possible. The Court should note, Defendants never moved to unseal Plaintiff's motion for sanctions as that motion was harmful to Defendants reputation.

BAD-FAITH CONDUCT: The Court's record shows APFA has a history of abuse and harassment

toward its membership. Plaintiffs opposed the use of depositions in an abusive or harassing manner—and the records reflect this fact. (*See* ECF No. 121, 171, ECF No. 198, PAGEID 4718-4721; ECF No. 194; 52:19 - 55:5). Plaintiffs submitted the following evidence that demonstrates Defendants ongoing conduct to destroy, alter, withhold documents, intimidate witnesses, silence or alter third parties' free speech against APFA leadership—generally alter the outcome of this litigation:

1. **Affidavit of Ladonna Casey** – testimony that she could not testify for Eugenio Vargas at his Article VII Deposition for fear of Retaliation from APFA. (App. Pl Resp. Dft Mtn Summ. J.; Ladonna Casey Aff. PAGEID 2919-20, ECF No. 53-2).

2. **Affidavit of Nena Martin 1** – testimony that she sat on the APFA Board of Directors in November of 2020, when the charges against Eugenio Vargas and Robert "Bob" Ross were presented to the APFA Executive Committee, and the Confidential Memo was withheld from APFA Board of Directors and Executive Committee by the APFA National Officers. (App. Pl Resp. Dft Mtn Summ. J.; Nena Martin PAGEID 1485-93, ECF No. 53-1).

3. **Affidavit of Nena Martin 2 –** Affidavit of abusive misconduct regarding financial audits from APFA. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122).

4. **Affidavit of Kerri Phillips** 1 – Affidavit of Plaintiff's Counsel receiving evidence and phone call from APFA members that fear testifying but willing to give evidence of abusive misconduct in the case before this court.

5. **Affidavit of Heidi Morgan 1 –** testimony of a conversation with National Treasurer Erik Harris that he received the Confidential Memo and sent to the National Officers upon receiving it on October 22, 2020. She included evidence of retaliation against her by Melissa Chinery-Burns for her involvement and representation of the Ross Administration in the Disciplinary case. (App. Pl. 2cd Mtn to Amend, PAGEID 3555-3612, ECF No. 104).

6. **Affidavit of Heidi Morgan 2** – testimony of retaliation suffered due to her testimony submitted in the first affidavit submitted before this court. APFA Members have since had a Confidentiality Resolution discipline any APFA leadership who cooperates or provides evidence used in this case. (App. Pl. Mtn to Quash, PAGEID 2481-2500, ECF No. 122; App. p. 29-30).

7. **Free Speech Affidavits** – Plaintiff's Partial Motion for Summary Judgment (ECF No. 192) contained **four APFA members free speech affidavits attesting retaliation** by the union for statements made against the union leadership.

Defendants argue that Plaintiffs and their counsel are guilty of misconduct during their depositions, but this Court's own record reflects that misconduct is committed exclusively by the Defendants in this case. Harassment and abuse during the depositions did occur, but it was the Plaintiffs that were victimized, not the Defendants. Plaintiffs' Counsel did her best to protect her

clients from additional abuse, and Defendants have done their best to frame that protection as misconduct.

The Court's record shows Plaintiffs brought this action citing Defendants' abuse and harassment almost two years ago.  Plaintiffs cited and filed testimony of this pattern of abuse time and again.  This is the first instance Defendants complained that Plaintiffs are the problem.  Unfortunately, without any evidence on record, and without evidence in the deposition testimony, Defendants story lacks credibility.

The Court's record reflects that Defendants have been abusive since the filing of this pending action.  Plaintiffs supported these contentions with a substantial number of affidavits and evidence from witnesses willing to come forward and testify as to the abuse and intimidation suffered at the hands of this union's current leadership.  Those witnesses that *had* the courage to submit evidence and sign affidavits in support of Plaintiff's factual contentions of abuse are numerous and cited extensively throughout the court docket.[2]  The union created and passed  a new Confidentiality Resolution specifically designed to stop any APFA leaders from providing evidence in this lawsuit against Hedrick, Harris and the current APFA leaders or the union.[3] The design of this rule and the union's tactics is to keep the Hedrick Administration in power and prevent any anti-Hedrick leaders or members from cooperating with this lawsuit.  Defendants want to stop all evidence against them from coming out. Defendants do not contest these facts, or the affidavits submitted in support of their misconduct.  APFA does not deny these wrongdoings, Defendants continually fail to turn over documents, continually abuse their members, refuse to correct their behavior, and ignore the repercussions for their misconduct.  It is a wanton and

---

[2] Plaintiff's Original Motion for Partial Summary Judgment included four affidavits from APFA members that testified to the union's tactics of abuse and harassment to intimidate them for opposing the current leadership.  (ECF No. 192).
[3] See Confidentiality Resolution, App. p. 29.

reckless disregard for the law and the authority of this Court.

**ARGUMENTS**

Defendants' Counsel asserts that Plaintiff's Counsel obstructed Defendants' depositions based on her misconduct. To maintain some manner of professional decorum, Plaintiff's Counsel refrained in her Motion for Sanctions (ECF No. 197) from detailing Defendants' Counsels' embarrassing display of volatile outbursts while off-record, however considering the full range of complaints contained in Defendants' pending Motion for Sanctions, Plaintiffs find it important that the Court be apprised of all facts to make an informed decision on the matters, and will detail the various issues point by point below.

The 5th circuit has upheld issuing sanctions against opposing counsel for conduct at a deposition wherein bad faith conduct, vulgar language, or blatant disrespect for opposing counsel or deponent, and contempt for the judicial process has forced the Plaintiff to terminate a deposition and issued sanctions. *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F. 3d 290 (5th Cir. 1997). "Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party [being sanctioned] acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014)." *MetroPCS v. Thomas, Misc. Action* 3:18-mc-00037-S (N.D. Tex. Sep 26, 2022) Herein, Plaintiff will show that at no time did Plaintiffs act in bad faith.

CONDUCT OFF-RECORD: Mr. Bartos exhibited a well-choreographed "Dr. Jekyl/Mr. Hyde" persona throughout the depositions. Initially, Mr. Bartos demanded Ross stay to be deposed until 10:00 PM. Often while off-record he yelled at Plaintiff's Counsel, his temper flared and was clearly demonstrative. He agreed to Ross to take breaks every half hour for having broken ribs, however, his motion for sanctions cites this as grounds for sanctionable conduct. (Ross Tr. 93, 1-

3; App. p. 7).   Mr. Bartos yelled at Plaintiff's Counsel to only take a half hour for lunch—
meanwhile APFA had catered meals delivered for themselves.

At the end of the deposition, the transcripts reflect Mr. Bartos's hostile exchange with
Plaintiff's Counsel.  (Ross Tr. P. 159, 1-25; App. p. 10).  Mr. Bartos ordered Ross to appear the
next day—February 2, 2023 at 9:00am—note Defendants' Counsel argues for only the hour he
lost due to his gamesmanship for having scheduled this deposition and caused Ross to panic upon
arrival. (Ross, Tr. P. 159, 1-25; App. p. 10).   However, at this point logic and reason seemed lost
from the conversation, as he demanded Ross and his Counsel to appear at 9am the next morning
for depositions and then later at 10am, (Ross, Tr. P. 159, 1-25; App. p. 10).  Plaintiff's Counsel,
as seen on record, reminded Mr. Bartos that Vargas was scheduled at that time, and Ross had an
inflexible work schedule. Mr. Bartos commanded to go off the record.


While off-record, Defendants' Counsel said that "We know Ross does not work
tomorrow." Plaintiffs' Counsel said that Vargas was scheduled the next day at 10:00AM, and Ross
had a flight scheduled home to California at 9:00PM and had prior engagements that could not be
moved based on his work schedule. However, Defendants Counsel Motion reflects what was stated
off record that "Mr. Ross' American Airlines work schedule reflects that he was not scheduled to
work on February 2." (Def. Mtn for Sanctions, PAGEID 4788, ECF No. 205).


**THIS FACT IS AN EXTREMELY IMPORTANT DETAIL FOR THE COURT TO
NOTE.** This comment about Ross's work schedule in Defendants' Motion for Sanctions and off-
record at Ross's deposition discloses that APFA illegally accessed Mr. Ross's personal private
flight schedule for purposes of this litigation, and not for purposes of their representation as his

9

labor union with the employer.  This is a breach of the American Airlines Sabre Agreement Contract between American Airlines, Inc. and APFA. (App. p. 32).  *This* is another example of APFA's position of trust as the labor union *empowered* with information and authority to represent laborers on behalf of American Airlines employees—and yet they willfully abuse their access to their membership's confidential information for purposes of this litigation.  American Airlines work schedules are confidential proprietary information that belongs to American Airlines only. (App. p. 32).  Granting APFA access to this information is for union-related representational purposes only.

Attached hereto and incorporated herein is a true and correct copy of the terms of the contract between American Airlines, Inc. and APFA under the use of American Airlines Sabre Access System which grants private propriety information and access to American Airlines, Inc. flight and manifest scheduling information.  This is a standard contract that is signed by every single APFA member that is granted access to view another APFA member's private flight schedule with American Airlines, Inc. (App. p. 32).

This contract states:

- "I understand that my enhanced Sabre capabilities are for the sole purpose of completing only my duties as a representative of the APFA.
- I understand that any misuse of this expanded Sabre capabilities, or violation of Company password policies will be viewed as a serious infraction and may result in corrective action."  (App. p. 32).

It states in the American Airlines Sabre Agreement that this is proprietary information owned by the company—not to be used for personal purposes, and certainly not to be used for purposes of this pending litigation. (App. p. 32).  The union is given a position of trust over its members it is charged with representing. (App. p. 32). Access to personal confidential information, like financial information, income, social security information, scheduling information, medical

information and otherwise is to be used exclusively for purposes of representation for union-related business, to represent an employee before the company only.

This Court witnessed on record another example of the Defendants' abuse of power to garner an advantage. This time, it was to gain access to Plaintiff's personal flight information and personal flight schedule simply to make an argument before this court on what is otherwise a meritless Motion for Sanctions.

EARLY TERMINATION OF VARGAS' DEPOSITION:   After the informal hearing with this Court on February 2, 2023, at 10:30 AM, Mr. Bartos appeared agitated.  The manner of the deposition shifted, and the manner of questioning changed to a fast pace "yes" or "no" format. Ms. Phillips sought a break when she noticed Mr. Vargas stutter in distress. Mr. Vargas' is from the Dominican Republic and his native language is Spanish.  APFA knows this, as he works for American Airlines as a foreign language speaker.  Mr. Bartos's manner and speed of questioning were abusive because it was confusing intended to illicit inaccurate answers.  Mr. Bartos presented documents in English rather than in Spanish and posed questions at an excessively high rate of speed and insisted on answers being "yes" and "no" with no explanation details or factual distinctions, and no opportunity to correct the record, or clarify. (Vargas Tr. 34, 17-25; 35, 1-25, 36, 1-25; App. pp. 15-17).

During the Ross deposition, Mr. Bartos states, "And if at any point in this deposition you recall, maybe you misspoke or had a correction, please let me know." (Ross Tr. 13:15-17; App. p. 6).  However, during Mr. Vargas's deposition, Mr. Vargas' testified regarding a promissory note Mr. Bartos introduced into evidence.  After Mr. Vargas testified regarding the promissory note, the transcripts reflect improperly quoted and should be corrected on the errata sheet language from

Ms. Phillips on page 37 of the Vargas Transcripts at lines 18-21 in which it should read "I need to take a brief moment off the record with my client for a moment. I want to make sure he is clear on what he's testified to on record." (Vargas Tr. 37:18-21; App. p. 17). Ms. Phillips remembered clearly her concern that Mr. Vargas could be confused about his testimony and interrupted Vargas' deposition to speak with her client. She wanted to ensure her client was not confused based on language barrier issues in particular and the nature and speed of questioning. Mr. Vargas was being presented with legal documents, the legal questions, and legal language at such a high speed in a second language and giving answers in that second language. The answers being given at such a high level of speech and language may play a synergistic role that could cause inaccurate testimony.

Mr. Vargas went back on record he asked to clarify the record about the promissory note that he signed stating that he did not need to correct it but only that he wanted to elaborate or explain is answers. (Vargas Tr. 38, 4-14; App. p. 18). Mr. Bartos responded "No. Your lawyer is allowed to ask you questions." (Vargas Tr. 38, 4-14; App. p. 18). The objections were made thereafter between Ms. Phillips and Mr. Bartos in which Ms. Phillips stated that Mr. Vargas wanted to clarify the record regarding the promissory note that he had previously testified to as he wanted to clarify his testimony. (Vargas Tr.38-39, 25; 1-2; App. pp. 18-19).

Mr. Bartos stated that the questions regarding the promissory note were no longer a pending question, therefore Mr. Vargas was not entitled to clarify the record. (Vargas Tr. 39, 3-4, App. p. 19). At which point, Mr. Bartos continued his same fast-paced high-pressure manner of questioning Mr. Vargas, and Ms. Phillips began to object to the manner of questions based on his badgering and abuse of the deponent again. (Vargas Tr. 39, 4-14, App. p. 19). Ms. Phillips objected to the style and manner of questioning when Mr. Vargas speaks English as a second

language, and that this conduct was abusive.  (Vargas Tr. 38, 4-14; App. pp. 19-20).   She terminated the deposition and cited numerous violations from both the Ross deposition and the Vargas deposition. (Vargas Tr. 38, 4-14; App. pp. 19-20).  She stated that it was better for the Court to determine whether Mr. Vargas was entitled to testify and correct his testimony if he felt it necessary.  She stated the maybe the court should weigh in on whether Plaintiffs should be entitled to a 30-minute lunch or whether a full hour was reasonable.   She objected to the hostile circumstances Mr. Bartos created with yelling at Plaintiff's Counsel, his domineering attitude. (Vargas Tr. 47, 17-25, 48, 1-6. 49, 16-23; App. pp. 25-27).  The ongoing abuse and harassment of this case poses threats to Plaintiffs, the witnesses, and now Plaintiffs' Counsel.  If depositions are to continue, Plaintiffs' request they be conducted virtually, and that discovery may be extended so Defendants are afforded the same opportunity to depose Defendants once Defendants comply with the Court's December 26, 2023 order to produce Julie Hedrick's and Nena Martin documents and communications.

Mr. Bartos specifically sought to provide Plaintiff's counsel an opportunity to ask questions at the end of Vargas' deposition, whereas in Ross's deposition Bartos stated on record Ross could correct his testimony at any point. (Ross Tr. 13, 15-17; App. p. 6). The objectionable conduct Mr. Bartos has in a deposition is not Plaintiff's Counsel's objections or breaks or interruptions to the questions—it is that Mr. Bartos always wants the strategic advantage and at all costs.

Mr. Bartos knew Ms. Phillips had to end the deposition at 5:00 PM based on familial obligations to pick up her children, therefore she would have to continue the next day and if questions for Plaintiffs were at the end of the depositions that would place Plaintiffs at a disadvantage.  This provided Defendants' a strategic advantage in the depositions—gamesmanship again.  Defendants do not seek the truth, they seek to tilt the stage in their favor, at all costs and at

all times.  (Vargas Tr. 48, 3-6; App. p. 26).   In Ross's deposition, Mr. Bartos stated on record that Ross was allowed to correct his testimony on record at any time for any inaccuracies, yet when it came to the Vargas deposition, he refused to afford Mr. Vargas the same opportunity.  Mr. Bartos asked Ross eight times whether he signed his Transition Agreement in Charolette, North Carolina in a variety of confusing convoluted ways—and 6 out of the 8 times Ross answered "I don't recall" but two of the times he altered the phrasing to make it sound like Ross said yes to the question— when the phrasing and form of the question was confusing.  It alters reality and misconstrues reality.  Depositions are sought to discover the facts.  Plaintiff's Counsel terminated the Vargas depositions because Mr. Bartos' conduct and questioning sought to misconstrue the narrative in an abusive way taking advantage that English was his second language.  The deposition was sought to humiliate and abuse him.

DEFENDANTS' CHANGE OF PLANS: The first two Notice of Depositions were scheduled to be held at the law offices of Gillespie Sanford, LLP.  At the December 26, 2023, hearing, Mr. Bartos stated "We were going to do it at Mr. Sanford's office, but amenable to elsewhere in the district." (ECF 194:54:9-12). However, APFA's Amended Notice of Depositions for February 1 and 2 cited Springhill Suites Hotel address. The change in location remains unanswered to date.

APFA planned the depositions to embarrass and cause duress to Plaintiffs' and their Counsel.  The depositions were scheduled at a hotel where APFA leaders were present and filled the small hotel hallways and common areas. (Ross Tr. 93, 15-24; App. p. 93).  APFA leaders used membership union dues to pay leaders to attend Ross's and Vargas's Depositions.  The Court and the Parties agreed on record to confidentiality over the depositions—however upon arrival confidentiality was not maintained.  This conduct was sought in bad faith to induce duress and to

intimate Plaintiffs throughout their depositions. The conduct sought to abuse Plaintiffs and ended up inducing anxiety and panic in Ross, for which Defendants knew he had a particular sensitivity. This was an intentional act to inflict emotional distress—clear gamesmanship. The depositions resulted in Ross and Vargas both suffering abuse and harassment.  (Ross Tr. P. 93, 15-24; App. p. 7).

GAMESMENSHIP: The evidence on record illustrating the misconduct that occurred during Defendants' depositions includes:

1.   The Deposition Transcript citing duress caused by APFA for Ross upon his arrival; (Ross, Tr. 93, 15-24; App. p. 7).

2.   December 26, 2023 hearing Transcripts in which Mr. Bartos states that Counsel's office would be the location for the depositions; (ECF 194:54:9-12).

3.   Defendants' Counsel admits the number of APFA leaders present at the hotel and that this is "their turf" to conduct the deposition; (Ross, Tr. 6, 5-25; App. p.3 ).

4.   Ms. Phillips' statements on record that Mr. Bartos's conduct was appalling and embarrassing; (Vargas Tr.45,16-19; App. pp. 18).

5.   Ms. Phillips statements on record that Mr. Vargas felt he properly responded with Mr. Bartos's style and manner of questioning; (Vargas Tr. 44,12-24; App. p 17).

6.   Record reflected Ms. Phillips citing Vargas's issues with the language barrier; (Vargas Tr. 44,12-24; App. p 17).

7.   Record reflected Ms. Phillips citing Mr. Bartos yelled at Ms. Phillips to only take a 30-minute lunch; (Vargas Tr. 47,24; App. p. 20).

8.   Record reflected Ms. Phillips citing Mr. Bartos objecting to Vargas taking an opportunity to clarify the record on a question when Defendant's Counsel informed Plaintiff that we could stop the deposition at any time and clarify the answer whenever Vargas wanted to the opportunity to do so; (Vargas Tr.37, 18-22; App. pp. 13).

9.   Record reflected Ms. Phillips cited Mr. Bartos was asking questionings way to quickly of Vargas or "shotgunning" questions and Mr. Vargas could not answer them properly; (Vargas Tr.44, 12-24; App. pp. 22).

10.   Record reflected Ms. Phillips cited Mr. Bartos's conduct created hostile circumstances that were abusive and harassing therefore she terminated the deposition.  (Vargas Tr.46, 16-23; App. pp. 24).

11.   Record reflected Ms. Phillips cited Mr. Bartos's conduct created circumstances in which he is entitled to a translator.  (Vargas Tr.44, 12-24; App. pp. 17).

Defendants' Counsel on record stated that Mr. Bartos's conduct was embarrassing and scolded him for his conduct during these depositions and yelling at her when she said:

> *"Because, you know, yesterday was an appalling display of behavior on your part.*
>
> *I have to -- I have to state that it was just embarrassing.*
>
> *It was embarrassing."* (Vargas Tr. 45,16-19; App. p 18).

The Court should note Defendants' Counsel's response was silence. He did not deny his misconduct. Nor did he respond to Plaintiffs' Counsel's scolding of him. He simply moved on to the next question.

Mr. Bartos's conduct while off-record was unprofessional and unbecoming an officer of this court. If sanctions should be leveraged based on misconduct that occurred at the depositions that took place on February 1 and 2, 2024—it should not be leveraged against Plaintiff or their Counsel, but against Defendants and their Counsel.

The reason for abuse is clear. The Defendants are not motivated by the pending action before this court. Their conduct is unreasonable in all manners. The expenditure of money, the unwillingness to mediate, the unwillingness to settle, the unwillingness to produce documents, to uncooperative nature in general indicates that they hope to make the problem go away by intimidating Plaintiffs, Plaintiffs' Counsel, and all witnesses at their disposal. The union has passed resolutions to punish any leaders caught helping in this case.

OBJECTIONS AND INTERRUPTIONS: Defendants have the right to make objections on record under Fed. R. Civ. P. 30(c)(2). "An objection at the time of the examination—whether to evidence, to a party's conduct. . . "

Defendants claim Plaintiff made 83 objections in the Ross deposition and 47 in the Vargas deposition. *This is not true.* The word "objection" appears 83 times in the Ross deposition

transcripts, and it appears 47 times in the Vargas deposition transcripts.

However, even if this were true, this is not disruptive to the point of sanctionable. Defendants' counsel complained about the number of objections asserted—however Plaintiffs are entitled to object to Defendants questions, there are no grounds to argue a motion for sanctions. The objections are necessary to preserve Plaintiff's rights. Recently, a federal New York court sanctioned an attorney for objecting too much in a deposition. That attorney made over 600 objections during one eight-hour deposition. (*See Cordero v City of New York,* 15-cv-03436, slip op. (E.D. N.Y. May 17, 2017). Plaintiffs didn't even reach 12% of that which the New York courts found to be disruptive to the point of sanctionable. (*See Cordero v City of New York,* 15-cv-03436, slip op. (E.D. N.Y. May 17, 2017).

Defendants claim Plaintiffs left for lunch for 72 minutes—Plaintiff took an hour for lunch—off record at 12:54pm and came back on record at 2:06pm. Meanwhile, lunch was catered in for APFA. These complaints are meritless.

Additionally, Defendants assert Plaintiff's counsel improperly makes objections that are improper and directs Defendants not to answer questions based on privilege information. However, the Plaintiff answered his questions waiving his medical privilege rights anyway, therefore this is a moot issue.


TIME/BREAKS: Defendants complain of interruptions during the deposition for breaks. Plaintiffs are entitled to reasonable breaks under Fed. R. Civ. P. 30(d). Deponents are entitled to reasonable breaks as long as not taken during a question. Fed. R. Civ. P. 30(d). Ross took breaks every half hour as it caused pain if he sat in one position too long due to suffering broken ribs a week prior to the deposition. (Ross, Tr. P. 93:9-11; App. p. 7, 31). Defendants agreed to this on record stating

he would respect that Ross needed half hour breaks. (Ross, Tr. 93:25, 94: 1-3; App. p. 7).  This was explained to Defendants' Counsel on record, however Defendants' Counsel continued to raise his voice and use an aggressive manner and tone with Plaintiff's Counsel—most of which was conveniently while off-record, though this is viewed at the end of the Ross deposition.

Additionally, the initial hour Ross took his anxiety-ridden panic attack is entirely caused by Defendants' nefarious wrongdoing—not because of Plaintiffs' conduct. (Ross Tr. P. 93: 15-25; App. p. 7).  If Defendants had not planned to cause emotional distress and attempted to humiliate Plaintiffs, then Defendants may not have caused a time-delay in their own deposition.  They have only themselves to blame for their bad actions.

## CONCLUSION AND PRAYER

In conclusion, Defendants failed to state a claim for to recover for sanctions based on unclean hands from their own bad faith conduct—as demonstrated above—the Plaintiffs alleged sanctionable conduct is justifiable in light of Defendants nefarious plan to embarrass and humiliate Plaintiffs prior to and during the depositions.   Additionally, the manner and conduct during Vargas' deposition created circumstances that intimidated and harassed Mr. Vargas and was likely to lead to inaccuracies in testimony due to confusion from both the language barrier, manner and delivery of deposition questions.  The looming presence of other APFA leaders, the aggressive conduct of opposing counsel, and the bad faith conduct of Defendants leads Plaintiffs to demand that if depositions are ordered that as a remedy this court extend the discovery period for all parties, so documents Defendants continue to withhold may be produced, Plaintiffs may be afforded an equal opportunity to conduct depositions, and all depositions be conducted virtually hereto forward for the safety, convenience, and cordiality of the parties involved.

Respectfully submitted,
KD PHILLIPS LAW FIRM, PLLC

By:  /s/ Kerri Phillips
     Kerri Phillips
     Texas Bar No. 24065906
     Phone: (972) 327-5800
     Email:
     kerri@KDphillipslaw.com
     6010 W. Spring Creek
     Parkway
     Plano, Texas 75024
     Fax: (940) 400-0089
     **ATTORNEY FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

On February 26, 2024, I electronically submitted the foregoing document with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record, electronically.

Jeff Bartos
James Sanford
Charlette Matts
Michael Rake


     /s/Kerri Phillips
     Kerri Phillips