IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT "BOB" ROSS AND EUGENIO VARGAS, | § § § § | Civil Action No. 4:22-cv-343-Y |
| Plaintiffs/Counterclaim Defendants, | § § | Consolidated with Civil Action No. 4:22-cv-430-Y |
| v. | § § | Judge Terry R. Means |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, *et al.*, | § § § | |
| Defendants/Counterclaim Plaintiffs. | | |

**PLAINTIFFS' MOTION FOR SANCTIONS AND BRIEF IN SUPPORT**

i

# Table of Contents

I. INTRODUCTION ..................................................................................................1
  II. FACTUAL BACKGROUND................................................................................4
  4. DOCUMENTS WITHHELD: .........................................................................5
  8. IMPROPER REDACTIONS: ..........................................................................6
  12. IMPROPERLY CLAIMED PRIVILEGED COMMUNICATIONS .............8
  13. DEPOSITION ABUSE....................................................................................9
  17. DEFENDANTS' NONCOMPLIANCE CAUSES PLAINTIFF SUBSTANTIAL HARM 11
III. ARGUMENTS AND AUTHORITIES ...........................................................11
IV. Prayer....................................................................................................................15
  CERTIFICATE OF CONFERENCE ................................................................16
  CERTIFICATE OF SERVICE ..........................................................................16

# Table of Authorities

Cases
*Adams-Lundy v. Ass'n of Pro. Flight Attendants*, 844 F.2d 245 5thCir.1988)……………….... 3
*In re Taxotere (Docetaxel) Prods. Liability Litigation v. Accord Healthcare, Inc.*,
 966 F.3d 351, 356-57 (5th Cir. 2020)……………….…………………..…..…12
*Lincoln Gen. Ins. Co. v. Maxwell*, CV-NO. 3:16-CV-3198-B, slip op.
 (N.D. Tex. Sep 26, 2018)………………………………………………………..…… 11
*Pressey v. Patterson*, 898 F.3d 1018, 1021 (5th Cir. 1990)………..…………..………...…..11
*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012)…...………..11
*Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181 (5th Cir. 2008)…………...………11


Statutes
Fed. R. Civ. P 26(a)(1) ………...…………………………………………………..….…..12
Fed. R. Civ. P. 37(b) …..………………………………………………………………11, 12
29 U.S.C. § 411  ……...…...…………………………………………………………….1, 8
29 U.S.C.§ 502(a)………………………………………………………………… 2, 3
29 U.S.C. § 411(A)(2) ……………………………………………………………...14, 15
29 U.S.C. § 411(A)(5)……………………………………………………………..… 14
29 U.S.C. § 529 ………….………………………………………………………  1, 15
18 U.S.C. § 1001……………………………………………………………………...……..3
29 U.S.C. § 401  ……………………………………………………………….……..12


Local Rules
Local Rules 7.1 and 7.2………………………………………………………………………1

Plaintiffs, Robert "Bob" Ross ("Ross") and Eugenio Vargas ("Vargas") file this Motion for Sanctions in their respective companion cases before the Court under the Federal Rules of Civil Procedure Rule 37(b) and Local Rules 7.1 and 7.2. Plaintiffs are filing this same motion and brief in *both* cases because the facts that gave rise to the claims, and the facts that led to the filing of this motion are substantively identical.

## I. INTRODUCTION

1. In this lawsuit, Plaintiffs alleges their Union violated their guaranteed Members' Rights under the Labor Management Reporting and Disclosure Act ("LMRDA") 29 U.S.C. §§ 411 and 529 which led to the union wrongfully disciplining them and banning them from running for public office within the union, among other claims. Plaintiffs argue that this is a result of exercising free speech and association rights under the opposing political faction to the current leadership within APFA.[1]

2. On September 15, 2023, Defendants served Plaintiff with Notices of Deposition scheduled for October 25, 2023 and later rescheduled for January 10, 2024, which Plaintiff subsequently Quashed (ECF Nos. 121 – 122; PageID 2471-2474; ECF No. 187, PageID 3766-3767) on the basis that Defendants sought the depositions during the union's election period as a means to abuse and harassment.

3. Additionally, Plaintiffs' filed Motions to Compel discovery on September 5, 2023, amended on October 19, 2023; October 20, 2023; October 27, 2023, and October 30, 2023

4. The Court ordered a hearing on all discovery related matters on December 26,

---

[1] The "Ross Administration" consists of Robert "Bob" Ross (former AFPA National President) Nena Martin (former APFA Vice-President) Marcy Dunaway (former APFA National Secretary) and Eugenio Vargas (former APFA National Treasurer). The Court should note that in August of 2023 the APFA Board of Directors ordered financial audits of Marcy Dunaway and Nena Martin's expenditures while in office. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122).. Upon the filing of this case, investigations into financial expenditures were launched against multiple supporters of the Ross Administration, including Heidi Morgan. (App. Pl. Mtn to Quash, PAGEID 2492-2500, ECF No. 122). On September 21, 2023 a complaint was submitted against Heidi Morgan with the Miami Base President for her public statement as a union member back in June of 2019. In this statement Morgan expressed her opposition to AFA General Counsel, Joe Burns acting as negotiator for APFA.

2023, in which it ordered APFA to produce all communications from Julie Hedrick to Plaintiffs by January 25, 2024, all documents relating to Nena Marton by January 25, 2024, and ordered Defendants to issue Notice Depositions for Robert "Bob" Ross and Eugenio Vargas on February 1 and February 2, 2023. (Ross ECF No. 187, PageID 3766-3767; Vargas ECF No. 178, PageID 4994).

5. APFA failed to produce documents in compliance with the order issued on December 26, 2023. Plaintiffs filed a Motion for Sanctions on February 5, 2022. On February 1, 2023, Robert "Bob" Ross, attended his deposition, and on February 2, 2023 Eugenio Vargas attended his deposition. Defendants filed their Motion for Sanctions for misconduct and early termination of the Vargas deposition on February 5, 2024. Herein, Plaintiffs refile and reassert their claims for sanctions for Defendants continued and ongoing misconduct, however as a preliminary matter will address the ongoing hostilities which give rise to the abuses in this case to bring the court's attention to the issues. It is the staunch belief of the Plaintiffs and the Plaintiff's Counsel in this case that the rising hostilities are the result of violations and corruption that cannot be cured. It is the sincerest hope of Plaintiffs that this motion brings the Court's attention to this matter so that the court will end the abuse, and halt any further damage, and cease any additional waste of the Court's resources as well as the union's resources.

INSURANCE VIOLATIONS: 29 U.S.C. § 502(a) of the LMRDA requires labor leaders to maintain insurance or a surety bond to protect union money from leaders' misconduct. The claims pending before this Court would fall within the scope of that required coverage. Defendants' Counsel admitted on record to this Court at the December 26, 2023, hearing Defendants provided all of APFA's insurance policies. Defendants filed LM-2s in which Hedrick and Harris signed under oath for the last four years attesting that the union maintains insurance coverage in

2

compliance with federal requirements under 29 U.S.C. §502(a).  To date, Plaintiffs' Counsel has no insurance policy that confirms coverage for labor leader's misconduct. Violations of 29 U.S.C. §502(a) are punishable with fines and imprisonment of up to one year for each violation. (29 U.S.C. §502(a)). Submitting false testimony to the United States, Department of Labor under oath on LM-2 forms is criminally sanctionable in fines for up to $100,000 and a year imprisonment for each instance.  (18 U.S.C. §1001).

If, for example, the union leader is sued for breach of fiduciary duty while he or she is not in compliance with licensing and bonding requirements under federal law, legal fees would become the burden of the union leader.  This lends the union leader to be more susceptible to use union funds to as the source to pay for his or her personal legal fees, justifying the misappropriation of funds as a personal lawsuit against a labor leader, but it was for conduct taken on behalf of the union.  Meanwhile, this singular infraction—noncompliance with insurance requirements—breeds additional violations for the misuse of union funds, thereby causing additional injury to innocent parties—the union membership—who carry the burden of the violating labor leader's personal legal fees and expenses. This is the exact fact pattern APFA experienced in the 1988 case entitled *Adams-Lundy v. APFA*. (*Adams-Lundy v. Ass'n of Pro. Flight Attendants*, 844 F.2d 245 (5th Cir. 1988).  APFA leaders brought claims of for RICO and breach of fiduciary duty against leadership that misappropriated union funds for purposes of paying for their legal fees.

The court can see how violating the bonding/insurance requirements of the LMRDA can have a resounding affect throughout this case.  The looming threats of civil and criminal liability prevent the possibility of settlement, the fear of additional lawsuits, and at this point potentially incited additional violations to prevent additional damages.  The result is that the union is plagued with corruption. Even if the disease is eliminated and the viable parts salvaged, the liability remains

3

for the union and leaves gaping holes of potential liability, where litigation will fill in the future that will cause issues for its insurability for the foreseeable future, a clear encumbrance to its ability to represent these flight attendants going forward.

## II.     FACTUAL BACKGROUND

1.     On December 26, 2023, an Order was entered in Plaintiffs' respective cases, 22-cv-00343; *Ross v. APFA, et al*; 22-cv-00430 *Vargas v. APFA, et al,* on Plaintiff's Second Motion to Compel (22-cv-00343; *Ross v. APFA, et al*; Minute Order; PAGEID 3766; ECF 140; 22-cv-00430; *Vargas v. APFA, et al;* Minute Order; PAGEID 4994; ECF No. 139) wherein the motion was "**GRANTED** with regard to responsive documents related to Nena Martin. . . and [t]he Court **ORDERS** Defendants to redouble their efforts to find and produce responsive documents regarding Julie Hedrick." (22-cv-00343; *Ross v. APFA, et al*; Minute Order, PAGEID 3766; ECF No. 187; 22-cv-00430; *Vargas v. APFA, et al;* Minute Order; PAGEID 4994; ECF No. 178) (emphasis in original).  The Court transcripts note that the Court ordered the documents to be produced 30 days from the date of the hearing: January 25, 2024.

2.     After Plaintiffs filed their initial Motions for Sanction a series of communications were exchanged attempting to resolve the outstanding issues involving document production and an Interim Confidentiality Agreement which Defendants asserted was a condition precedent to compliance with the Court's Order of Production on December 26, 2023. On February 12, 2024, Counsel for Plaintiffs emailed Counsel for Defendants to rectify the pending issues and establish an Interim Confidentiality Agreement agreeable to both parties so Defendants would comply with this Court's December 26, 2023, Order to Compel document production.

3.     Subsequently, the Parties came to an Interim Confidentiality Agreement, Plaintiffs' Motion for Sanctions was stricken from the record. Defendants produced documents

4

ordered by the Court on December 26, 2023 to Plaintiffs on February 13, 2024.

4. **DOCUMENTS WITHHELD:** Documents were delayed in their delivery well beyond the deadline the Court ordered for production, which caused substantial hard. Emails and documents continue to be withheld including all documents produced to both parties in the Disciplinary Arbitration hearings. The charges brought against the Ross Administration[2] were all substantially similar, with a few minor differences: (1) alleged misuse of the union credit card for personal meals and personal expenses, and (2) approving a change in calculation of the National Officers' payout of accrued and unused sick and vacation days prior to leaving office.

5. Nena Martin and her union representative, Heidi Morgan, issued a subpoena in her Disciplinary Arbitration for all credit card receipts for all National Officers since 2008—including National President, Julie Hedrick. (App. p. 1-2). Martin asked for all submitted receipts for reimbursement for food and alcohol to all other National Officers since 2008 as well. (App. p. 1-2). This would include the credit card charges for Julie Hedrick and all receipts for food and alcohol. All of these documents were produced prior to Nena Martin's Disciplinary Arbitration hearing, yet none have been produced to Plaintiffs in this case to date. This is not a mistake of one or two simple documents—this is a *substantial* number of documents. (App. p. 1-2). The disciplinary charges against Plaintiffs pertain to their spending while in office. These documents are highly relevant to determine whether Plaintiffs' spending was reasonable comparatively. A substantial number of Nena Martin documents continue to be withheld—namely the attached subpoenas illustrate the largest group of documents missing to date. No credit card statements, or receipts have been produced for Julie Hedrick or any of the Hedrick Administration to date.

6. To date, Defendants' Counsel has not complied with the orders to produce *all*

---

[2] Ross Arbitration consisted of Robert "Bob" Ross (National President), Nena Martin (National Vice-President), Eugenio Vargas (National Treasurer), Marcy Dunaway (National Secretary)—no longer an APFA member.

documents responsive to Nena Martin or Julie Hedrick from Defendants as ordered at the December 26, 2023, hearing. Julie Hedricks' emails and communications continue to be withheld. Only a limited number of communications from Hedrick's professional email address, with several unexplained redactions, no communications from her personal email addresses, and no text message communications have been turned over to Plaintiffs.

7.      Likewise, documents, invoices and receipts surrounding particular events, like the financial audit conducted in August in 2023 on Ms. Martin and Ms. Dunaway, have not been produced. (App. p. 3-4). Ms. Martin submitted testimony before this court already that confirming this audit was performed. (App. Pl. Mtn to Quash, PAGEID 2501-2503, ECF No. 122). Defendants' Counsel additionally wrote a letter informing the charging parties in the Disciplinary Arbitrations that these audits were to be performed. (App. p. 3-4). However, no communications between the APFA Board of Directors, the Executive Committee, or the National Officers discussing these audits have been produced. (App. p. 15-16). No engagement agreement with the auditor, no receipts submitted to the auditor, no actual audit report has been produced to Plaintiffs. (App. p. 15-16).

8.      **IMPROPER REDACTIONS:** Communications are redacted without explanation, as these communications are not listed on the privilege log, as far as may be determined. (App. p. 21-24). The parties, dates, and subject of the emails are redacted as well as the text, however it follows an email that bears a date not matching one listed on the ten-page privilege log. (App. p. 21-24). Therefore, it is not likely the redactions are attorney-client privilege. To date there is no foundation for the redactions. The emails on the Appendix pages 21-24 are also the same emails on Appendix page 17, however Appendix page 17 is the original email and then the redacted portions are where Josh Black, APFA National Secretary forwarded this email on to another party,

and this information is redacted so as to not conceal who he was working with. The follow-up email from Gomez-Alba shows Black was not sending the email to the Article VII Arbitrator in a timely manner, which indicates some sort of interference. (App. pp. 15-24).

9. One example of these redactions are the emails where Ross' union representatives, Kit Gomez-Alba ("Gomez-Alba"), discover the Confidential Memo, which proves APFA withheld documents from his Arbitration (App. p. 17-20). On February 27, 2022, in an email from Gomez-Alba, union representative for Ross, she sends a letter and a copy of the Confidential Memo in an email to Josh Black, National Secretary to be sent to the Article VII Arbitrator. (App. p. 17-20 as compared to App. p. 22). The letter explains this Confidential Memo was withheld, and clearly states Ross does not owe the amount APFA had credit reported, collected on him, disciplined him, and for which it now sued him. Gomez-Alba pleaded for the Arbitrator to reopen the Arbitration, so he may hear arguments based on the new evidence. (App. p. 17-20 as compared to App. p. 22-24). In compliance with the APFA Constitution, Article VII, Section 6G, it states:

> "No ex-parte communication may be had with the Article VII Arbitrator either by the accused, the accuser or by the APFA, or any member of the APFA except with respect to scheduling, location and like administrative matters." *See* APFA Const. Art. VII, Sec. 6G

10. Defendants produced this email from Gomez-Alba, however redacted an additional communication that subsequently came thereafter from Black to a third party. (App. p. 17-20 as compared to App. p. 22-24). Defendants redacted the date, names, the subject, the attachments, and all text thereafter. (App. p. 22-24). Presumably the date of the forward is February 27, 2022, but this is unknown. The privilege log does not list any privileged communications on the dates of February 27, 2022. (App. pp. 5-14).

11. After not receiving confirmation or being copied on an email directly to the communication sent to the Arbitrator and the parties as required, Gomez-Alba forwards her

7

original February 27th email she sent to Black on February 28th to follow up about when it will be sent to the Arbitrator. (App. p. 17-20 as compared to App. p. 22-24). Defendants again produced this February 28th forwarded email from Gomez-Alba, but redacted subsequent communications of the email from Black to a third party. (App. p. 17-20 as compared to App. p. 22-24). Again, Defendants redacted the date, names, the subject, the attachments, and all text thereafter. (App. p. 22-24). Presumably the date of the forward is February 28, 2022 but this cannot be confirmed. (App. p. 22-24). Redactions of the February 28, 2022, forwarded email to another party does not provide for any determination of this information. (App. p. 22-24). The privilege log does not list any privileged communications on the dates of February 28, 2022 either. (App. p. 5-14). The only confirmation Gomez-Alba receives that Black sent her communication on to the Arbitration is an email confirmation, she is not copied on any communications sent to the Arbitrator and is not privy to any arguments submitted to the Article VII Arbitrator from Chinery-Burns—in violation of APFA's Constitution of *ex-parte communications.* (App. p. 21).

12. **IMPROPERLY CLAIMED PRIVILEGED COMMUNICATIONS:** Plaintiff's Defendants failed to produce all responsive documents. Defendants produced a ten-page privilege log, initially never produced with original production. APFA lists communications between APFA and the Article VII Arbitrator as privileged communications. This is improper, as it violates APFA policy to allow *ex parte* communications between the Article VII Arbitrator and APFA without the charged party involved in that communication as the action against the charged party—the Plaintiffs—are the parties subjected to discipline. Any legal representation by the same counsel as APFA is a conflict of interest that Plaintiffs would vehemently dispute as this would prove that the Arbitrator was not impartial but was worked with APFA toward wrongfully attaching a disciplinary award against Plaintiffs in violation of LMRDA §411(a)(5) or improper due process

8

by denying Plaintiffs' a neutral arbitrator.  This exhibits the exact concern Plaintiffs asserted in their original complaint.

13. **DEPOSITION ABUSE:** APFA, Julie Hedrick's, and Erik Harris's conduct prior to and throughout the depositions of Plaintiffs, Ross and Vargas were abusive and harassing to both Plaintiffs and their Counsel. APFA notified Plaintiffs for depositions that the parties agreed in court would remain *confidential* and be held at a neutral location.  Unbeknownst to Plaintiffs and their counsel, it was scheduled at time when the hotel would be reserved and filled with APFA Hedrick leadership, many that participated in Ross's and Vargas's disciplinary hearing.  Plaintiffs did not discover this until the day of the deposition when Ross saw APFA leadership walk by his car upon arrival for his deposition.  He began to suffer anxiety-related symptoms including chest pains and difficulty breathing, as he grew nervous considering having to testify in with on-lookers around.  Ross waited in his vehicle with his counsel and staff until his anxiety subsided.

14. In the conference room prepared for depositions, APFA had in attendance four current National Officers who expected to attend the deposition, and an additional APFA in-house attorney without giving notice to Plaintiffs' Counsel. Thereafter, Plaintiff's Counsel demanded two of the National Officers leave the conference room, however APFA personnel remained scattered, and lurked nearby in doorways and throughout the hotel.  Plaintiff felt intimidated, particularly as he endured those in the room that continued to glare and type on their computers while he testified.  Plaintiff's Counsel took breaks, however Ross wanted the deposition over, so he endured until the end of the day. Ross had suffered broken ribs in his back a week prior, so sitting for long periods of time caused pain, therefore the need to take frequent breaks was necessary.

9

15. Similar conduct persisted during Vargas deposition, where he felt extremely intimidated throughout his testimony. Vargas informed his counsel that he did not feel that he could answer questions fully in this environment as the manner of questioning and language barrier created an environment likely to lead to inaccurate testimony based on misunderstandings and mistakes on record. Ms. Phillips stated on record that APFA's deposition needed to be conducted in a manner that allowed Vargas the opportunity to answer questions fully and clarify the record if needed on any matter that he felt he needed to clarify. Plaintiff's counsel terminated the deposition when Defendants' counsel could not agree that Vargas should be allowed an opportunity to clarify any testimony he makes on record during this deposition.

16. Defendants' Counsel conduct created an adversarial and hostile environment during the depositions. During the breaks, while off-record, Defendants' Counsel's conduct was unprofessional and embarrassing. Defendants' Counsel yelled at Plaintiffs' Counsel on multiple occasions. Defendants' Counsel insisted Ross only take thirty-minutes for lunch. He demanded that Platintiff remain to be deposed until 10:00 PM. He demanded Ross return the next morning at 9:00 AM or 10:00 AM. Defendants' Counsel cited that he knew Ross was not working the following day for American Airlines, indicating that APFA had accessed Ross's confidential flight schedule for purposes of this litigation in violation of the terms of their Sabre Agreement with American Airlines and in breach of their duty of fair representation to Ross. Plaintiffs' Counsel cited these issues during the Ross and Vargas depositions on record to Defendants' Counsel additionally explained that due to the circumstances, language barrier, and manner of questioning Mr. Vargas felt intimidated and inhibited in responding to his questions and wanted the chance to correct the record. Defendants' Counsel was unmoved and simply unaccommodating and did not afford him that opportunity.

17. **DEFENDANTS' NONCOMPLIANCE CAUSES PLAINTIFF SUBSTANTIAL HARM:** Defendants' document production to Plaintiffs however, substantially failed to fulfill Plaintiffs' requests and wholly fails to comply with this Court's Orders to produce documents entered on December 26, 2023.  Plaintiffs emailed Defendants informing them that their production failed to include a substantial number of documents on February 21, 2024.  Defendants inquired about what documents were missing and Plaintiffs responded that the substantial number of documents were too numerous to itemize for Defendants at this point.  The delay in delivery has so substantially disadvantaged Plaintiffs that depositions had to be cancelled for Defendants, Julie Hedrick and Erik Harris, as without the proper evidence there is no way to properly depose the Defendants at this point.

### III.   ARGUMENTS AND AUTHORITIES

18. This Court is "vested with the power to 'manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Taxotere (Docetaxel) Prods. Liability Litigation v. Accord Healthcare, Inc.*, 966 F.3d 351, 356-57 (5th Cir. 2020). "A district court 'has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct.'" *Lincoln Gen. Ins. Co. v. Maxwell*, CV-NO. 3:16-CV-3198-B, slip op. at 2 (N.D. Tex. Sep 26, 2018) citing *Pressey v. Patterson*, 898 F.3d 1018, 1021 (5th Cir. 1990).

19. "However, typically, to impose the severest of remedies under Rule 37(b)—e.g., striking pleadings, entering default judgment, or dismissing the action with prejudice—a party's violation of a discovery order must be committed willfully or in bad faith." *Lincoln Gen. Ins. Co. v. Maxwell*, CV-NO. 3:16-CV-3198-B, slip op. at 4 (N.D. Tex. Sep 26, 2018) citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012); *see also Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181, 184 (5th Cir. 2008) (affirming default

11

judgment under Rule 37(b) based on willful violation of discovery order). "Additionally, the district court should find that 'a lesser sanction [under Rule 37(b)] would not substantially achieve the desired deterrent effect.'" *Lincoln Gen. Ins. Co. v. Maxwell*, CV-NO. 3:16-CV-3198-B, slip op. at 4 (N.D. Tex. Sep 26, 2018) citing *Coburn*, 283 F. App'x at 184.

20. Plaintiffs' claims pending before this Court are based on violations of their free speech and due process rights as union members after suffering wrongful discipline at the hands of their labor union. Since 2016, the Ross Administration stood as a threat to those in power at APFA. This case exemplifies the reason Congress found it necessary to codify a Union Member's Bill of Rights under the Labor Management Reporting and Disclosure Act. (29 U.S.C. 401). Labor Organizations are susceptible to organized criminal activity and corruption. (29 U.S.C. § 401). Congress found that breaches of trust from leadership who "disregard the rights of individual employees" and fail to "observe high standards of responsibility and ethical conduct" necessitated federal oversight.

21. The conduct within this case that gives rise to sanctionable violations are extensive and egregious. Continued delays to the discovery process prejudiced Plaintiffs' ability to prepare for trial and wasted this court's time, and resources. Defendant, APFA, began to employ this strategy as soon as Defendant's, APFA, served its Fed. R. Civ. P. 26(a)(1) Initial Disclosure on August 4, 2022, and failed to ever disclose the insurance policy APFA held that covered the union for Plaintiff's conduct for breach of fiduciary duty while in office. Defendant, APFA, maintains a steady strategy of dilatory tactics and targeted gamesmanship that retains seemingly innocuous instances of plausible deniability and provides the deceiving appearance of being cooperative in nature, however under the surface of these actions is the goal to delay this Court's resolution of these claims and ultimately stifle Plaintiff's ability to prepare for trial. This Court should note the

only reason this case persists before this court is solely because of the Defendant, APFA, not the Plaintiffs.[3] Defendants continues to do the following in breach of this Court's direct orders from the December 26, 2023, hearing:

- **VIOLATED COURT ORDER TO PRODUCE DOCUMENTS BY PRODUCING DOCUMENT LATE:** APFA willfully violated this Court's order to produce documents related to Nena Martin and Julie Hedrick entered on the December 26, 2023 and produce limited documents on February 13. 2024 and February 26, 2024 causing Plaintiffs to cancel depositions as they could not be conducted in any meaningful way without proper documentation.

- **DOCUMENTS PRODUCED FAILED TO INCLUDE ALL RELEVANT DOCUMENTS:** APFA withheld a number of financial documents and communications pertaining to Julie Hedrick and the Hedrick Administration in violation of this Court's order to produce documents related Julie Hedrick entered on the December 26, 2023.

- **IMPROPERLY REDACTING DOCUMENTS:** APFA is willfully redaction documents and communication to cover up its wrongful conduct which implicates its conspiracy to pursue the Ross Administration.

- **IMPROPERLY ASSERTING PRIVILEGE:** APFA lists communications on its ten-page privilege log that it cannot claim are within privilege communication due to it pertaining to *ex parte* communication with the Article VII Arbitrator.

- **DEPOSITION ABUSE SOUGHT TO HARRAS AND EMBARRASS PLAINTIFFS DURING DEPOSITIONS:** APFA's conduct during the depositions of Plaintiffs sought to willfully violated this Court's order to produce documents related to Nena Martin and Julie Hedrick entered on the December 26, 2023.

22. Given the foregoing, coupled with Defendant, APFA's ongoing failure to comply with Court's orders to produce documents, APFA's ongoing abuses of its union members, APFA's

---

[3] The Court should note the previous statements made by Defendants' Counsel on record in the Vargas Settlement Conference Statement. (22-cv-00430; *Vargas v. APFA, et al.*; ECF. No. 81) ("Plaintiff's settlement proposals were simply not feasible as they. . . would require the Union Defendants to take actions which. . . would violate the APFA Constitution. . . ."). Defendant's counsel argues it cannot, and will not, settle the claims pending before this Court. APFA contends that it must pursue the Ross Administration. Defendants argue settlement of any kind would violate federal law breach of fiduciary duty and the governing union's rules—even if settlement is in the union membership's best interest—it cannot and will not settle their claims. Consequently, this Court should consider the Ross Administration's position. Plaintiff is left no option. They must exercise his rights to recover for Defendants' misconduct—for the sake of their families, their reputations, and their careers. APFA has spent over half a million dollars in pursuit of less than $100,000, for recovery of claims that, if they were valid, APFA had insurance coverage and simply could have made a claim. To date, no other APFA administration has ever been audited, been accused of misappropriations, or been barred from holding union office in APFA history.

13

gamesmanship in depositions are willful attempts to cause duress based on the scheduling of the depositions in direct opposition to that which the court ordered.  On record with the Court at the December 26, 2023, hearing, Mr. Bartos stated "We were going to do it at Mr. Sanford's office, but amenable to elsewhere in the district." (12.26.2024 Hearing; ECF No. 194;  P. 5, 9-12).  However, APFA's Amended Notice of Depositions for February 1 and 2 cited then Springhill Suites Hotel address, rather than Counsel's office—yet the change is unexplainable (ECF No. 198, PageID Nos 4655-4662 ).

23. APFA conspired to deceive the Plaintiffs' and their counsel to hold the depositions at a location where APFA reserved and paid for leadership to be lodged for APFA business simultaneously.  APFA leadership used membership union dues to ensure leadership attendance at the same place and time as Ross's and Vargas's Depositions to induce duress and to intimidate Plaintiffs throughout the depositions. This conduct also imposed a risk of breach of the Court's confidentiality over the depositions, and additionally was an action taken to harass and abuse Plaintiffs. This was a willful, knowing, intentional, and abusive use of gamesmanship that resulted in Ross and Vargas both suffering duress and intimidation.

24. In conjunction with this Motion for Sanctions, Plaintiff files his Motion for Summary Judgment to dispose of those claims pending before this court.  Given the above arguments, Plaintiff, Ross, requests the Court award sanctions against Defendant, APFA, by granting Plaintiff, Ross's SEALED Motion for Summary Judgment, claims succinctly described below:

- **No-Evidence Motion for Summary Judgment** against APFA's counterclaim under 29 U.S.C. 501 for breach of fiduciary duty;

- **Ross's claims for Breach of Contract**—Motion for Summary Judgment;

- **Ross's claim under the LMRDA § 411(A)(2)**—Union Member's Rights: Free Speech Motion for Summary Judgment;

- **Ross's claim under the LMRDA § 411(A)(5)**—Union Member's Rights: Due Process Violation Motion for Summary Judgment;

- **Ross's claim under the LMRDA § 529**—Retaliation or Otherwise Disciplined - Motion for Summary Judgment

25. In conjunction with this Motion for Sanctions, Plaintiff files his Motion for Summary Judgment to dispose of those claims pending before this court. Given the above arguments, Plaintiff, Vargas, requests the Court award sanctions against Defendant, APFA, by granting Plaintiff, Vargas' SEALED Motion for Summary Judgment, claims succinctly described below.

- **No-Evidence Motion for Summary Judgment** against APFA's counterclaim under 29 U.S.C. 501 for breach of fiduciary duty;

- **Vargas's claim under the LMRDA § 411(A)(2)**—Union Member's Rights: Free Speech Motion for Summary Judgment;

- **Vargas's claim under the LMRDA § 411(A)(5)**—Union Member's Rights: Due Process Violation Motion for Summary Judgment;

- **Vargas's claim under the LMRDA § 529**—Retaliation or Otherwise Disciplined Motion for Summary Judgment

Alternatively, Vargas seeks his attorney's fees for the pursuit and filing of his motions to compel.

## IV.   Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court grant each Plaintiff, Ross and Vargas, their respective Motions for Sanctions, and award Plaintiff Ross and Vargas Termination sanctions and pray for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,
KD PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Phone: (972) 327-5800

                              Email: kerri@KDphillipslaw.com
                              6010 W. Spring Creek Parkway
                              Plano, Texas 75024
                              Fax: (940) 400-0089
                              COUNSEL FOR PLAINTIFFS

## **CERTIFICATE OF CONFERENCE**

      As noted above, prior to leaving the settlement conference on February 21, 2024, Ms. Phillips informed Mr. Bartos, Mr. Sanford, and Ms. Matts that she intended to file a Motion for Sanctions.

                                              /s/Kerri Phillips
                                              Kerri Phillips

## **CERTIFICATE OF SERVICE**

      On February 29, 2024, I electronically submitted the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically.

Jeff Bartos
James Sanford
Charlette Matts
Michael Rake

                                              /s/Kerri Phillips
                                              Kerri Phillips