| | | |
|---|---|---|
| **ROBERT (BOB) ROSS,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:22-CV-343-Y** |
| | § | **(Consolidated w/ 4:22-CV-430-Y)** |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |
| | § | |
| **EUGENIO VARGAS,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS

Pending before the Court is Defendants' Motion for Rules 30(d) and 37(b) Sanctions [doc. 205]. Having carefully considered the motion, response, reply, and the evidence presented, the Court concludes that Defendants' motion should be **GRANTED**.

### I.     LEGAL STANDARD

A court may sanction parties and their attorneys under the court's inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (quoting *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993)); *see Toon v. Wackenhut Corrs. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001). "Courts have the authority to make credibility determinations to resolve whether such misconduct has occurred." *Howard v. State Farm Lloyds*, No. H-04-0352, 2005 WL 2600442, at *9 (S.D. Tex. Oct. 13, 2005). A primary purpose in imposing sanctions is to deter "frivolous litigation and abusive tactics." *Howard*, 2005

WL 2600442, at *9. The sanction imposed must be the least severe sanction adequate to achieve the purpose for which it is imposed. *Id.*

Ordinarily, a court should rely on sanctioning power granted by rule or statute, rather than imposing sanctions under its inherent powers. *Id.* at 50; *Allstate Ins. Co. v. Mader*, 201 F. App'x. 261, 265 (5th Cir. 2006). There are several rules in the Federal Rules of Civil Procedure ("FRCP") that authorize the issuance of sanctions and are applicable in this case. As relevant here, FRCP 30(d)(2) states that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).[1] In addition, FRCP 37 "empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties." *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977). Specifically, FRCP 37(b)(2)(A) allows a range of sanctions when a party fails to obey a court order to provide or permit discovery, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FRCP 37(b)(2)(A)(i). Further, the court pursuant to FRCP 37(b)(2)(C), must "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances made an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

## II.    ANALYSIS

In their motion, Defendants argue that the Court should sanction Plaintiffs or their counsel under rules 30(d) and 37(b) because of the "disruptive conduct during, and premature termination

---

[1] "The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as the full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule." *Howell v. Avante Servs., LLC*, No. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) (internal quotation marks omitted).

of," the Plaintiffs' depositions "which were properly noticed and ordered by this Court." (Defendants' Motion ("Mot.") at 1). Specifically, Defendants assert that Plaintiffs' counsel, Kerri Phillips ("Phillips"), obstructed the deposition questioning of both Plaintiffs by: (1) delaying the taking of the depositions; (2) delaying the start of Robert 'Bob' Ross ("Ross")' deposition; (3) making numerous frivolous objections; (4) instructing her clients not to answer questions regarding documents they had produced; (5) taking multiple unnecessary breaks; and (6) encouraging her clients to not answer basic questions. (Mot. at 2–7). Additionally, Defendants allege that Phillips improperly ended Eugenio Vargas ("Vargas")' deposition early and made Ross unavailable despite his deposition not being complete. (*Id.*) As a result, Defendants ask the Court to impose the following sanctions on Plaintiffs: (1) bar the submission of Declarations or Affidavits from Ross and Vargas, as well as reliance on previously-filed documents, in connection with any motion for summary judgment; (2) order the depositions to be completed; and (3) award Defendants the costs and fees incurred in connection with the two depositions and for the preparation and filing of this motion. (*Id.* at 2, 12).

In their response, Plaintiffs argue that Defendants' motion should be denied because it is Defendants who have acted in bad faith. (Plaintiffs' Response ("Resp.") at 2–18). Specifically, Plaintiffs argue that Defendants: (1) have not cooperated in discovery; (2) improperly withheld documents; (3) have wasted this Court's time with discovery disputes; and (4) nefariously planned to "embarrass and humiliate Plaintiffs prior to and during depositions." (*Id.*) Plaintiffs' argument is best summarized as such: "If Defendants had not planned to cause emotional distress and attempted to humiliate Plaintiffs, then Defendants may not have caused a time-delay on their own deposition. They have only themselves to blame for their bad actions." (Resp. at 18).

While the conduct giving rise to this motion occurred on February 1–2, 2024, at the depositions of Ross and Vargas,[2] the animosity between the parties and their counsel is long running and well documented. In fact, Plaintiffs' counsel Phillips has aptly described this lawsuit as "a battle between political factions." (*See, e.g.*, ECF 194[3] at 12; *see also* ECFs 137, 141, and 144). Unfortunately, Phillips' antipathy for Defendants and their counsel is evident in the litigation tactics that she has taken in this case. The Court intended to focus this order only on the conduct giving rise to this motion; however, because Plaintiffs spent a large portion of their response attempting to point the finger at Defendants' counsel, the Court feels that a brief overview is appropriate.

A. **Previous Discovery Disputes**

As correctly pointed out by Plaintiffs, they have "filed several motions to compel" in this case. (Resp. at 3; *see also* ECF 136, 140, 143; Mem. ECF 110, 134, 139).[4] The undersigned held a hearing over these motions on December 26, 2023. (ECF 180, 194). During that hearing, three of the five motions to compel were denied outright, and the other two were granted in part. (*See* ECF 194). Specifically, the Court granted Plaintiffs the following relief: (1) ordered Defendants to produce—after the parties entered into a confidentiality agreement—limited and relevant documents related to a non-party Nina Martin (ECF 194 at 37–38; 40); and (2) ordered Defendants to double check that they had already produced all responsive documents from a Julie Hendrick

---

[2] Originally, Ross and Vargas filed their cases separately. However, the cases were consolidated on February 13, 2024. (ECF 204).

[3] Unless otherwise indicated, the ECF numbers come from the consolidated case 4:22-cv-343 and not the member case 4:22-cv-430. If the ECF number comes from the member case, it will be denoted as ("Mem. ECF").

[4] Plaintiffs have also filed four motions to quash. Two were withdrawn as moot and two were granted, at the December 26, 2023 hearing, when the parties' agreed to reschedule the depositions for February 1–2, 2024.

(*Id.* at 38). Consequently, Plaintiffs' attempt to paint Defendants in a bad light as a result of their filing numerous motions to compel is patently unpersuasive.[5]

Plaintiffs also point to Defendants' counsels' failure to turn over responsive documents within the thirty-day deadline ordered by the Court. (Resp. at 4; *see* ECF 194 at 40). However, what Plaintiffs fail to mention is that the delay in production is due to the parties' inability to enter into a confidentiality agreement, which appears to be largely a result of Phillips' actions. As discussed above, the Court ordered that the documents be "produced after a suitable confidentiality agreement is reached by the parties." (ECF 194 at 40). The Court—wrongly assuming that the parties could cooperate long enough to reach a basic confidentiality agreement—set a thirty-day deadline.[6] (*Id.*) On January 26, 2024, one day after the thirty-day deadline, the Court received a telephone call from Phillips' office requesting a conference call with the undersigned. Phillips' office indicated to the Court that the parties had reached an impasse regarding the terms of the confidentiality agreement. The Court scheduled a courtesy conference call for February 2, 2024. So that the Court could be prepared to assist, the Court requested that the parties send their respective confidentiality agreement drafts. In reviewing those drafts, the Court felt that the Defendants' proposed order was standard and appropriate in light of the issues in this case and the Court's orders. In contrast, many of Phillips' proposed edits were unnecessary, destroyed the purpose of the agreement, and did not reflect what had been ordered by the Court.

Unfortunately, the Court was unable to inform the parties of its advice, as Phillips immediately took issue with the undersigned not having the courtesy conference call "on the

---

[5] The Court agrees with Plaintiffs that resolving the five motions to compel was a great burden on the Court. (Resp. at 3). However, that burden was largely placed on the Court by Plaintiffs, not Defendants.

[6] Thirty days from the date of the hearing was January 25, 2024.

record," and pontificated about the political nature of this suit.[7] After admonishing Phillips for her conduct, the Court ended the call. Subsequently, on February 12, 2024, Phillips sent an email to the Court indicating that the parties had still not reached a confidentiality agreement and requesting that the Court offer advice regarding a dispute that counsel was having in entering into an "interim" confidentiality agreement. Later that same day, after reviewing the parties' proposals, the Court responded providing the requested advice. The Court is unaware of whether the parties have entered into any type of confidentiality agreement.

Nevertheless, as discussed above, the Court ordered that Defendants make their production *after* a confidentiality agreement was entered into. Therefore, Defendants did not improperly withhold production beyond the thirty-day deadline as claimed by Plaintiffs since the parties did not enter into a confidentiality agreement, which the Court made a condition precedent to production. Accordingly, the Court is unpersuaded by Plaintiffs' claims that Defendants violated the Court's Order, as the delay in production appears to be largely a result of Phillips' unwillingness to enter into a basic confidentiality agreement.

Finally, Plaintiffs, multiple times in their response, mention that they previously filed a motion for sanctions against Defendants. For example, Plaintiffs state: (1) "[s]uspiciously, . . . Defendants [] contest[] [that] the motion for summary judgment should not be filed under seal . . . [as] Defendants never moved to unseal Plaintiff's [sic] motion for sanctions as that motion was harmful to Defendants [sic] reputation;" and (2) "Plaintiff's [sic] Counsel refrained in her Motion for Sanctions [] from detailing Defendants' Counsels' embarrassing display of volatile outbursts while off-record." (Resp. at 5, 8). A review of the record indicates that Defendants' contention

---

[7] Just prior to the conference call, Phillips improperly cc'ed the Court on an email discussing the completion of Ross' deposition. Despite the Court making it clear that it was not appropriate to including the Court on email discussions between counsel, Phillips did the same in her February 12, 2024 email, discussed *infra*, when she sent the Court a chain of correspondence between the parties.

that Plaintiffs improperly filed their motion for summary judgment under seal was not unfounded as the Court not only struck and unfiled Plaintiffs' motion for summary judgment as improperly filed under seal, but also, for the same reason, unfiled Plaintiffs' motion for sanctions.[8] (ECF 200, 203). Therefore, the Court is unpersuaded by Plaintiffs' argument that Defendants actions have been nefarious.

Upon admission, every member of the Texas Bar swears to "discharge [her] duties to [her] clients to the best of [her] abilities." *See New Lawyer Oath*, The State Bar of Texas, https://www.texasbar.com/AM/Template.cfm?Section=Common_Lawyer_Requests1&Template =/CM/ContentDisplay.cfm&ContentID=29062. Additionally, every member swears to do so "with integrity and ***civility*** in dealing and communicating with the court and all parties." *Id.* (emphasis added). When attorneys fail to uphold their oaths, and all semblance of civility is lost, the Court is forced to devote substantial resources and time to refereeing petty and often unnecessary disputes between the parties. It was this very issue that, in 1988, led to the judges for the United States District Court for the Northern District of Texas sitting *en banc* to adopt standards of conduct for attorneys practicing in the district. *See Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284 (N.D. Tex. 1988) (*en banc*). These standards were adopted to signal the Court's "strong disapproval of practices that have no place in our system of justice" and to emphasize "that a lawyer's conduct, both with respect to the court and to other lawyers, should at all times be characterized by honesty and fair play." *Id.* at 289. Unfortunately, despite the long-standing and unambiguous standards set forth in *Dondi*, parties in the heat of battle often need to be reminded of what is expected of them. Consequently, when disputes arise, the Court

---

[8] On February 5, 2024, Plaintiffs filed duplicative motions for sanctions. (ECFs 195, 197). ECF 197 was termed as duplicative and ECF 195 was struck and unfiled as it was improperly filed under seal. (ECF 200). Accordingly, Defendants did not need to take issue with the motion for sanctions being filed under seal as the Court had already unfiled it.

often issues a "*Dondi* Order," which simply reminds the parties of their obligations under *Dondi* and encourages them to attempt to resolve their dispute without court intervention. (*See e.g.*, ECF 116). More often than not the parties are able to reach an amicable solution, however, there are some disputes that simply require court intervention. In those instances, the Court readily exercises its role and resolves the dispute. However, when a dispute cannot be resolved because an attorney is blatantly disregarding the standards set forth in *Dondi*, the Court is left with no option but to take action against such attorney.

While the undersigned has a long history of giving counsel the benefit of the doubt when it comes to litigation tactics and conduct, Phillips' behavior in this case is such that it can only be described as a blatant disregard for the standards set forth in *Dondi* and her oath to conduct herself with integrity and civility. In response to the impasses and discovery disputes that have arisen in this case, the Court has reminded counsel of their *Dondi* obligations both orally and in writing on numerous occasions. (*See* ECFs 116, 129, 180 and 194 at 18; *see also* Mem. ECFs 113, 126, and 172). Despite these repeated reminders, Phillips' conduct has continued to escalate and, as discussed *infra*, appears to have reached its crescendo at the Plaintiffs' depositions.

### B. Deposition Conduct

As set forth above, Defendants argue that Phillips impeded, delayed, and frustrated their attempts to depose Plaintiffs such that the Court should impose sanctions under Federal Rules of Civil Procedure 30(d)(2) and 37(b)(2)(A). (*See* Mot. at 8–12). In response, Plaintiffs claim that only Defendants' counsel is to blame and asserts that, if the Court should choose to leverage sanctions, they "should not be leveraged against Plaintiff[s] or their counsel, but against Defendants and their counsel." (*See generally* Resp.; *see also* Resp. at 16). Because the undersigned does not take allegations of attorney malfeasance lightly, the Court will address each allegation in turn and in detail.

## 1. Delay in Beginning Ross' Deposition

Defendants argue that Phillips and Ross improperly delayed the beginning of Ross' deposition from 10:00 a.m. to 11:17 a.m. (Mot. at 4). Plaintiffs claim that the delay was caused by Defendants' violations of this Court's order to keep the depositions confidential and were designed by Defendants to harass and humiliate Ross. (Resp. at 4, 5, 14). Specifically, Plaintiffs assert that the delay was proper because: (1) there were other union members, in town on other business, that were staying at the hotel; (2) there were multiple party representatives in the deposition room; and (3) the deposition location was changed from being at Defendants' counsels' office in the first two subpoenas to being at a hotel in the third subpoena. (*Id.*)

As to the alleged Court order to keep the depositions confidential, Plaintiffs cite to the following exchange that occurred at the December 26, 2023 hearing before the undersigned as support for their argument that the presence of party representatives breached such order:

> MS. PHILLIPS: I would also recommend maybe confidentiality be addressed on this as well. For their clients and mine. If they're running for office, they –

> THE COURT: I think so. Look. ***The parties should in this case work out a confidentiality agreement that will give protection***. And if you're having trouble with particular points, involve me. I will help. But I think there's enough out there, standard confidentiality agreements, that will give you that protection that both sides should be satisfied.

> [DEFENDANTS COUNSEL]: ***We're very agreeable to the deposition transcripts being confidential*** until, you know, summary judgment practice.

> THE COURT: Okay. How about that?

> MS. PHILLIPS: ***I absolutely agree***. I think we –

> THE COURT: Okay.

> MS. PHILLIPS: -- have absolutely no right to interfere with the election process. So, --

THE COURT: ***Build that into the agreement about the depositions being -- remaining confidential***, but to be used in dispositive motion filings, of course.

(ECF 194 at 52–53 (emphasis added)).

Contrary to Plaintiffs' arguments, this exchange reflects that the Court Ordered the parties to incorporate, in their confidentiality agreement, a provision that the ***deposition transcripts*** would remain confidential until summary judgment practice so as to prevent their use in a political campaign. This order by the Court in no way conforms with what Plaintiffs attempt to construe it as and, as discussed above, the parties—in large part because of Phillips' actions—did not enter into a confidentiality agreement prior to the depositions. Accordingly, the presence of party representatives in the room and other union members at the hotel did not breach any Court order and, thus, was not a proper basis to delay.

Next, Plaintiffs take issue with the number of people in the deposition room, arguing that it was an intimidation tactic. (Resp. at 5). Present in the deposition room for Defendants were three attorneys, the two-named Defendants in this case, and four entity representatives. (Mot. at 4; Resp. at 5). Fifth Circuit precedent holds that parties and party representatives are allowed to attend depositions unless it is a tactic to intimidate a deponent, elicit confidential information that could be harmful in the hands of a competitor, or help a group of witnesses get their stories down. *See, e.g., Longoria v. Cnty. of Dallas*, No. 3:14-CV-3111-L, 2016 WL 728559, at \*3 (N.D. Tex. Feb. 24, 2016) (quoting *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of N.M.*, No. CIV 09-0885 JB DJS, 2010 WL 5476782, at \*6 (D.N.M. Nov. 24, 2010)). While Plaintiffs urge the Court to finds that the party-representatives' presence was only meant to intimidate Ross, the Court finds that there is no evidence, other than Plaintiffs' bald allegations, to support that assertion. In fact, the Court finds that Defendants' willingness to excuse two of the party-representatives—who were entitled to be there—from both days of depositions in order to avoid further delay is evidence

that there was no bad faith on their part. (*See* Mot. at 4). Accordingly, the Court finds that the presence of parties and party-representatives was not a valid reason to delay.

Finally, the Court is wholly unpersuaded by Plaintiffs' argument that a conference room at a hotel is less neutral than opposing counsels' office. (Resp. at 14–15). Therefore, the location of the deposition was not a valid reason for delay. Accordingly, the Court finds that Phillips and Ross improperly impeded and delayed the beginning of Ross' deposition, costing Defendants over an hour of scheduled deposition time.

### 2. Frequent Breaks During Ross' Deposition

Next, Defendants argue that Plaintiffs improperly took numerous breaks resulting in Ross' deposition only being on the record for three-hours and twenty-five-minutes. (Mot. at 4–5). Without the benefit of the full Ross' deposition transcript, there does appear to be an inordinate number of breaks taken in a short period of time. In their response, Plaintiffs assert that Phillips informed Defendants' counsel that Ross had a broken rib and, consequently, would need to break every thirty-minutes. (Resp. at 17–18). Plaintiffs claim that Defendants' counsel agreed to the breaks. (*Id.*)

A review of the deposition transcript before the Court reveals that the conversation Plaintiffs refer to occurred at roughly 3:00 p.m., five-hours after the deposition was scheduled to begin. (*See* Plaintiffs' Appendix in Support of their Response ("Pls.' App.") at 7). The record also reflects that Defendants' counsel responded to the news by stating, "I want to complete the deposition. That's all I'm saying. We can take a break. I'll respect his medical condition. But we're going to finish the deposition." (Pls.' App. at 7–8). Therefore, the Court finds that the repeated breaks were not independently improper in light of Ross' medical condition. However, as discussed *infra*, Phillips and Ross should have accommodated Defendants for the lost deposition

time.[9] While the Court concludes that the breaks in Ross' deposition were not improper, the Court notes that Phillips often forced the breaks at inappropriate times and in a manner unbecoming an officer of the court.[10]

### 3. Phillips' and Ross' Conduct During Ross' Deposition

Next, Defendants argue that Phillips repeatedly interfered with questioning by lodging numerous frivolous objections and inappropriately instructing Ross not to answer questions. (Mot. at 5). Defendants also argue that Ross was unreasonably evasive and refused to answer basic questions. (Mot. at 6). In their response, Plaintiffs dispute the number of objections that Phillips made and argue that even if Defendants' number is true, the number of objections Phillips lodged is not so great that it is sanctionable. (Resp. at 16–17). However, Plaintiffs do not address Defendants' argument that Ross was unnecessarily giving evasive answers.[11] (*See generally* Resp.).

Having reviewed the transcript of the parts of Ross' deposition that the parties supplied the Court, the Court finds that Phillips' objections and behavior during Ross' depositions went well beyond what is considered acceptable. While the parties disagree about how many objections Phillips actually lodged during Ross' deposition, it is clear that a large majority of those objections

---

[9] The parties both take issue with how the other side handled the lunch break. Defendants take issue with the fact that, despite the delays already incurred, Plaintiffs took a seventy-two-minute lunch. (Mot. at 6 n.6). Plaintiffs claim that Defendants' counsel "yelled at [Phillips] to only take a half hour for lunch" and take issue with the fact that "[Defendants] had catered meals delivered for themselves." (Resp. at 9, 17).

The Court first notes that, despite Plaintiffs' repeated attempts to besmirch Defendants for having lunch delivered, it is common practice to do so out of respect for the opposing party's time. Additionally, the Court would note that it is very easy to have lunch delivered and Plaintiffs could have done so. Therefore, Plaintiffs' claim that opposing counsel acted inappropriately with regard to the lunch break if frivolous. While the Court ultimately finds that the seventy-two-minute lunch is not alone sanctionable, it goes to show the overall lack of respect Phillips and Ross had for the opposing party's time.

[10] (*See, e.g.*, Defendants' Appendix in Support of Their Motion ("Defs.' App.") at 18).

[11] While it is unclear to the Court whether it was a tactic for both Ross and Vargas to be evasive in their answers to seemingly basic questions, the Court will give them the benefit of the doubt on this occasion. However, the Court will be aware of these instances when reviewing the transcripts of the completed depositions. And the Court hereby puts all parties on notice that such conduct will not be tolerated in the future.

were baseless, showed a lack of civility, and were meant to impede and frustrate Defendants' efforts to depose Ross. The following is a few of the shorter examples, as it would be needlessly cumulative and a burdensome task for the Court to lay out all of Phillips' frivolous and disruptive objections:

Q: To the best of your recollection, is that the Transition Agreement that you signed --

[Phillips]: Objection; hearsay.

Q: -- on March 1, 2018?

[Phillips]: Objection; hearsay.

(Defs.' App. at 15).

. . .

Q. Okay. If you would look at the second page, which has a block letter A on the top of it, if you flip it over, do you see that page? And at the bottom there is a number, says Ross/Vargas 000460. Do you see it?

A. Uh-huh.

Q. Okay. And there is typed text and then there are some markings with some arrows and handwriting. Do you see that?

A. Yes.

Q. Is that your handwriting?

A. I don't know.

Q. Does it appear to you to be your handwriting?

[Phillips]: Objection; leading.

A. It appears pretty good to be my handwriting.

Q. Okay. Is it your testimony that it's not your handwriting?

A. No, it's not my testimony one way or the other.

[Phillips]: Objection; leading, speculation

(Defs.' App. at 17).

. . .

Q. Okay. And just to get your recollection or understanding, is it your understanding that under Article VII a member of APFA can file charges against another member of APFA?

[Phillips]: I mean, objection. You know, he's not here to testify about APFA Constitution.

(Defs.' App. at 20).

. . .

Q. Does that [redacted statement from a medical record] accurately reflect your self understanding?

[Phillips]: Objection; obscure, form. . . Medically privileged; objection. Bob, you don't have to answer that.

[Bartos]: Are you directing him not to answer?

[Phillips]: I'm directing him not to answer.

[Bartos]: So just to be clear, you've submitted about a hundred pages of medical records. And your position is I'm not allowed to ask questions about them?

[Phillips]: You can compel it if you want it.

. . . (discussion occurs between counsel whether Phillips will allow her client to answer questions regarding documents she filed with the Court; culminating in Defendants' counsel re-asking the previous question)

A. Only -- only if it's added to the --

[Phillips]: That's -- we can do nine minutes of objection; privileged. I am directing you not to answer that.

[Reporter]: I did not get his answer.

[Bartos]: That was the intention.

[Reporter]: Will you please let him finish so I can -- I can only do one at a time.

[Phillips]: I'm directing you not to answer that.

(Defs.' App. at 27–28).

In addition to the above, Phillips lodged so many baseless objections that, despite the Court's best efforts to give her the benefit of the doubt, they cannot be described as anything other than disruptive and inappropriate. (*See* Defs.' App. at 9, 12, 15, 17, 18, 19, and 25–26 (baseless hearsay objections); Defs.' App. at 10–11, 20, and 24 (baseless objections to subject matter and relevance); Defs.' App. at 14, 15, 16, 17, 20, 21, and 24 (improper "leading" objections); Defs.' App. at 26–28 (improper "medical privilege" objections as that is not a federal privilege and Plaintiffs put those documents at issue by attaching them to the now unfiled summary judgment motion).[12] While the sheer number of baseless objections is appalling, Phillips often made those objections worse by interrupting either Ross or Defendants' counsel to lodge them. Furthermore, the record reflects that Phillips showed a blatant lack of civility towards opposing counsel throughout the entirety of Ross' deposition. Accordingly, the Court finds that Phillips' objections and conduct during Ross' deposition inappropriately impeded, delayed, and frustrated Defendants' counsel's efforts to depose Ross.

### 4. Not Allowing the Completion of Ross' Deposition

Next, Defendants argue that Phillips unjustifiably did not allow the completion of Ross' deposition. (Mot. at 6, 10–11). Specifically, Defendants assert that Phillips refused to make Ross available to complete his deposition despite the fact that, as a result of Phillips conduct, they were only on the record for three-hours and twenty-five-minutes.[13] (*Id.*) In response, Plaintiffs simply accuse Defendants' counsel of bad faith and, argue that Defendants "have only themselves to

---

[12] The Court notes that Phillips also lodged a plethora of "form" objections, a Texas state court procedure which does not comply with the federal standards for deposition objections.

[13] Federal Rule of Civil Procedure 30 entitles parties to seven hours per deposition. Thus, Defendants were able to obtain just under half of the time that they were entitled to for Ross' deposition.

blame" for the time-delays. (*See generally* Resp.). Before addressing the parties' arguments, the Court finds that it is appropriate to lay out the relevant section of the deposition below:

Q. Okay. Has anyone else agreed to pay your legal fees in this case?

[Phillips]: Objection; privileged. We already -- we've already . . .

A. I guess I don't know how to answer that because . . .

Q. Do you know? Has anybody else agreed to pay your legal fees in this case?

A. No. No.

Q. Have you discussed with any labor organization and they are paying your legal fees in this case?

[Phillips]: Objection. This is ridiculous.

A. No.

Q. No. Have you discussed with any representatives of other labor organizations –

[Phillips]: We're done.

Q. -- they're paying your legal fees in this case?

[Phillips]: We're done. It's 5:00. We're done. Let's go.

A. There is no union -- other union, if that's what you're saying, labor organization agreeing to pay my legal fees.

[Phillips]: Let's go.

[Bartos]: Okay. Just for the record, we have not -- we have barely touched four hours of time. We will resume tomorrow morning. And I suggest we start at 9:00 so we can get Mr. Vargas done.

[Phillips]: Yeah, you have me at 10:00. That's what you scheduled and noticed for.

[Bartos]: We had you at 10:00 a.m. this morning, and we didn't start until 11:00. We'd be done by now.

[Phillips]: Well, you probably shouldn't sabotage people. I highly recommend --

[Bartos]: We will be here at 9:00 ready to go.

[Phillips]: You need to re-notice and give five days' notice.

[Bartos]: We'll be here at 10:00, and we expect Mr. Ross to be here to complete his deposition because he's indicated on the record --

[Phillips}: Tomorrow?

[Bartos]: Tomorrow.

[Phillips]: You have Vargas tomorrow.

[Bartos]: We're continuing until we're done.

[Phillips]: What are you planning on doing with Mr. Vargas?

[Bartos]: We'll resume Mr. Vargas -- we'll start Mr. Vargas when Mr. Ross is done.

[Phillips]: Mr. Vargas has -- has -- he has work. So you want to -- *Mr. Ross has his work schedule; so that's not going to work*.

[Bartos]: We'll be here and expect to finish with Mr. Ross tomorrow at 10:00 a.m. Yeah, we can go off the record.

[The Videographer]: We're off record at 4:56 p.m.

(Defs.' App. at 28–29; Pls.' App. at 9–11) (emphasis added).

Turning now to the parties' arguments, the record is clear that, not only did Phillips improperly make Ross unavailable for the completion of his deposition, but she lied on the record to opposing counsel. As discussed above, the time on the record was impeded by breaks every thirty minutes, Plaintiffs seventy-two-minute lunch, and Plaintiffs' improper delay in beginning the deposition, not to mention the numerous baseless objections lodged. As a result, Defendants were not able to get half of the on-the-record-time they were entitled to. When Defendants' requested that Ross be made available the next day, Phillips not only denied the request, but lied, on the record, to opposing counsel stating: "Mr. Ross has his work schedule; so that's not going to

work." (Defs.' App. at 29; Pls.' App. at 10). However, as Defendants point out in their motion, "Ross was not scheduled to work the next day."[14]  (Resp. at 9–11; Mot. at 6).

Plaintiffs do not deny this assertion but, rather, spend multiple pages arguing that Defendants' knowledge of Ross' schedule violates a contractual agreement with American Airlines and alleging that this is a prime example of Defendants' abusive litigation tactics. (Resp. at 9–11). Even if Plaintiffs' argument is true regarding the contract, it is irrelevant because, roughly two hours earlier, Ross stated on the record: "My schedule -- they can look it up on APFA. My schedule will corroborate that I was out." (Pls.' App. at 8). Ross cannot tell Defendants to look up his schedule to corroborate his injury and then turn around and argue that Defendants' knowledge of his schedule was improper. Therefore, the Court is unpersuaded by Plaintiffs' arguments and finds that, in light of all of the delays that occurred, Phillips should have ensured Ross' availability to complete his deposition. Accordingly, the Court concludes that Phillips' lying about Ross' availability and her failure to make him available for the completion of his deposition was an action that unjustifiably impeded, delayed, and frustrated Defendants' attempts to take Ross' deposition.

### 5. Phillips' Conduct During Vargas' Deposition

Next, Defendants argue that Phillips escalated her combative and disruptive conduct at Vargas' deposition. (Mot. at 6). In response, Plaintiffs dispute the number of objections that Phillips made and argue that, even if Defendants' number is true, the number of objections Phillips lodged is not so great that it is sanctionable. (Resp. at 16–17). As discussed above, the Court found that Phillips' objections and conduct, during Ross' deposition, were inappropriate. Having reviewed the deposition transcript and video of Vargas' deposition, the Court agrees with

---

[14] Plaintiffs allege that, at the deposition, Defendants' counsel waited until after they went off the record to confront Phillips about Ross' work schedule.

Defendants that Phillips' egregious behavior escalated at Vargas' deposition. (*See* Pls.' App. at 32–40; *see also* video recording of Vargas' Deposition (ECFs 207, 214)). The record shows that during Vargas' deposition: (1) Phillips consistently interrupted opposing counsel's questions and Vargas' answers to lodge baseless objections; (2) took numerous breaks;[15] and (3) acted in an appalling manner towards opposing counsel. (*Id.*) In fact, just prior to ending the deposition, Phillips, as Plaintiffs state in their response, "scolded" Defendants' counsel.[16] (*See* Resp. at 16; Defs.' App. at 38; Pls.' App. at 18). Phillips' "scold[ing]" of Defendants' counsel coincided with multiple extended outbursts that demonstrate Phillips' lack of civility and her fundamental misunderstanding of how depositions are conducted. (Defs.' App. at 38–40; Pls.' App. at 18). Accordingly, the Court finds that Phillips' egregious conduct during Vargas' deposition unjustifiably impeded, delayed, and frustrated Defendants' counsel's efforts to take the deposition.

### 6. The Ending of Vargas' Deposition

Finally, Defendants claim that Phillips inappropriately ended Vargas' deposition prematurely. (Mot. at 7). In response, Plaintiffs argue that Defendants only have themselves to blame as Defendants' counsel "sought to misconstrue the narrative in an abusive way taking advantage that English was [Vargas'] second language. The deposition was sought to humiliate and abuse [Vargas]." (Resp. at 11–14). Additionally, Plaintiffs claim that Defendants' counsel changed the rules between Ross' deposition and Vargas' deposition, as Defendants offered to

---

[15] In contrast with Ross' medical reason for frequent breaks, the Court is unaware of, and there is no argument to support, any reason for the frequent breaks in Vargas' deposition. In fact, the record shows that between 10:03 a.m., when the deposition began, and 11:47 a.m., when Phillips ended the deposition, Phillips forced three breaks (not including the break the parties took to call the Court).

[16] In their response, Plaintiffs state: "The Court should note Defendants' Counsel's response was silence. He did not deny his misconduct. Nor did he respond to Plaintiffs' Counsel's scolding of him. He simply moved on to the next question." (Resp. at 16). While Plaintiffs point this out as an attempt to claim silence by admission, having reviewed the transcript and watched the video of the incident, the Court finds that the fact that Defendants' counsel did not respond to Phillips and "simply moved on to the next question," was nothing less than an extraordinary exercise of restraint and maturity.

allow Ross to correct an answer that he gave but then refused to allow Vargas to correct his testimony. (*Id.*) Before turning to the parties' arguments, the Court will briefly summarize the dispute that led Phillips to end Vargas' deposition.

Shortly after 11:30 a.m., Defendants' counsel asked Vargas three questions regarding a "APFA Installment Promissory Note." (Defs.' App. at 36). Those questions and answers were as follows:

> Q. Mr. Vargas, you have in front of you a document marked as Exhibit 5. It says across the top, Association of Professional Flight Attendants, APFA Installment Promissory Note. And then at the bottom there is a signature. And my first question is, is that your signature?
>
> A. What was your question?
>
> Q. Is that your signature at the bottom?
>
> A. It looks like my signature.
>
> Q. Did you sign the APFA Installment Promissory Note?
>
> A. I signed an -- I signed one promissory note, yes.
>
> Q. And did you make payments of $172.62 every month?
>
> A. Yes.

(Defs.' App. at 36).

After Defendants' counsel had moved onto another line of questioning, Phillips asked to take a break so that she could have her client correct the record on his testimony. (*Id.*) Defendants' counsel did not object to the break and, when the parties came back on the record at 11:35, he asked Vargas, "[d]o you want to change any of your answers that you've given so far?" (Defs.' App. at 37). Vargas answered, "I want to go back to the promissory note subject and *say why I signed it.*" (*Id.*) (emphasis added). In response, Defendants' counsel correctly stated that he had not asked him that question and Phillips would be allowed to ask him that question once he had

finished. (*Id.*) For the next twelve minutes, Phillips proceeded to rudely interrupt both Defendants' counsel and her own client, advocating that questioning should not continue until Vargas was allowed to "clarify his testimony." (Defs.' App. at 37–40). Throughout Phillips' interruptions, yelling, and "scolding," Defendants' counsel calmly asked Phillips to stop interrupting and continued to reiterate his correct position. (*Id.*) Despite Defendants' counsel's composure, Phillips continuously became louder, more animated, and turned to personal attacks against Defendants' counsel. (*Id.*; *see also* video recording of Vargas' Deposition at 50:15–end). Ultimately, after twelve minutes of some of the most egregious deposition conduct the undersigned has ever seen, Phillips ended Vargas' deposition. (Defs.' App. at 40; Pls.' App. at 26).

Turning now to the parties' arguments, as a preliminary matter, the Court is wholly unconvinced by Plaintiffs' claim that Defendants' counsel took advantage of and abused Vargas because English is not his first language. Having watched the entirety of Vargas' deposition, there is no evidence that he had any issues understanding the questions, nor responding to them.[17] Additionally, despite Plaintiffs' claims, Defendants' counsel's questioning was not rapid fire nor abusive. Similarly, the Court is unpersuaded by Plaintiffs' argument that Vargas was not given the same courtesy that was offered to Ross. Defendants' counsel did not object to a brief break for Vargas and Phillips to discuss the issue, and, once back on the record, began his questioning by asking Vargas if he wanted to correct his testimony. It was only after Vargas indicated that he wanted to discuss something that had not been asked that Defendants' counsel declined to hear him out. The Court finds that Defendants' counsel was not wrong to deny Vargas the opportunity to discuss something that had not been asked and was correct in stating that Phillips would be able

---

[17] The Court notes that, as pointed out by Phillips during one of her outbursts, "[Vargas] is employed at American Airlines as a translator." (Defs.' App. at 38). Thus, the very nature of Vargas' job is to quickly and correctly translate English to Spanish and *vice versa*.

to ask that question when it was her turn. Therefore, the Court concludes that Phillips' inexcusably ended Vargas' deposition after only fifty-eight-minutes on the record. (Defs.' App. at 40–41). Accordingly, it is axiomatic that Phillips' conduct delayed, impeded, and frustrated Defendants' counsel's attempts to depose Vargas.

## III.   SANCTIONS

As discussed above, Defendants ask the Court to impose the following sanctions on Plaintiffs: (1) bar the submission of Declarations or Affidavits from Ross and Vargas, as well as reliance on previously-filed documents, in connection with any motion for summary judgment; (2) order the depositions to be completed; and (3) award Defendants the costs and fees incurred in connection with the two depositions and for the preparation and filing of this motion. (Mot. at 2, 12).

As set forth above, FRCP 30(d)(2) provides that "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). In addition, FRCP 37 "empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties." *Griffin*, 564 F.2d at 1172. Specifically, FRCP 37(b)(2)(A) allows a range of sanctions when a party fails to obey a court order to provide or permit discovery, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FRCP 37(b)(2)(A)(i). In addition, the court, pursuant to FRCP 37(b)(2)(C), must "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances made an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The sanction

imposed must be the least severe sanction adequate to achieve the purpose for which it is imposed. *Howard*, 2005 WL 2600442, at \*9.

The Court finds, as discussed *supra*, that Phillips' conduct impeded, delayed, and frustrated the fair examination of a deponent without justification. Additionally, because the Court ordered that the depositions occur on February 1–2, 2024, the Court finds that Phillips' actions resulted in Plaintiffs failing to comply with a court order. Consequently, the Court **GRANTS** Defendants' motion and finds that the following are the least severe sanctions adequate to achieve the purpose for which they are imposed:

1. Ross and Vargas shall be made available for the completion of their respective depositions **on or before March 15, 2024**, the depositions shall be in person and at a location, within this district, to be agreed upon by the parties, Defendants are entitled to up to three-hours and thirty-five minutes to complete Ross' deposition and six-hours and two-minutes to complete Vargas' deposition, breaks at both depositions will be limited to one (1) every two hours, unless otherwise agreed upon by both parties;

2. Phillips[18] shall pay Defendants' reasonable costs and attorney's fees for the February 1–2, 2024 depositions, filing of this motion, and depositions ordered herein ("Court Ordered Depositions");[19]

3. Defendants shall file with the Court an itemized and detailed list for their reasonable costs and attorney's fees, no later than seven days after the completion of the Court Ordered Depositions. Plaintiffs shall have seven days to file any objections to the reasonableness of those costs and attorney's fees submitted by Defendants; and

---

[18] Because the Court finds that Phillips is at fault and not her clients, Phillips is personally responsible for the following costs and attorney's fees. The costs and attorney's fees shall not be charged to her clients.

[19] Costs are to include: (1) the cost of the reporter for the February 1–2, 2024 depositions; (2) the cost of the reporter for the Court Ordered Depositions; (3) the cost of the videographer for the February 1–2, 2024 depositions; (4) the cost of the videographer for the Court Ordered Depositions; (5) the cost of the deposition location for the February 1–2, 2024 depositions; (6) the cost of the deposition location for the Court Ordered Depositions; and (7) reasonable travel expenses incurred by Defendants' counsel for the February 1–2, 2024 depositions. Costs shall not include: (1) other ancillary costs such as an expedited transcript; (2) other non-ordinary deposition costs; or (3) travel expenses for the Court Ordered Depositions.

Attorney's fees are to include: (1) reasonable fees incurred in the filing of Defendants' motion [doc. 205]; (2) reasonable fees incurred by all Defendants' counsel present at the February 1–2, 2024 deposition; and (3) reasonable fees incurred by *one deposing attorney* for Defendants at the Court Ordered Depositions.

4. Plaintiffs will mail to the Court a USB containing the Court Ordered Depositions, no later than thirty days after their completion, in order for the Court to review the conduct of Phillips and her clients.[20]

**IT IS SO ORDERED**

SIGNED March 1, 2024.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

[20] The Court is not granting Defendants' motion to strike documents at this time. However, the Court reserves the right to revisit that request, as well as impose additional sanctions, should the troublesome conduct continue.