**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:22-cv-343-Y |
| ASSOCIATION OF PROFESSIONAL | § | Consolidated with 4:22-cv-430-Y |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs, | § | Judge Terry R. Means |
| | § | |
| AND | § | |
| | § | |
| EUGENIO VARGAS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

**APPENDIX TO APFA DEFENDANTS' RESPONSE**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

Pursuant to Local Rule 7.1(i), the Association of Professional Flight Attendants

("APFA"), its National President, Julie Hedrick, and National Treasurer, Erik Harris

(collectively, "the APFA Defendants"), hereby submit the following appendix to its Response in

Opposition to Plaintiffs' Motion for Sanctions.

| Tab | Description | APFA Appx. |
|---|---|---|
| 1 | Transcript Excerpts re Motion to Compel | 1-6 |
| 2 | APFA's Response to Request for Production, Dkt. 142-1 | 7-11 |
| 3 | Declaration of Charlette Broderick | 12-14 |
| 4 | K. Phillips to J. Bartos Email re: APFA Document Production (2/22/24) | 15-18 |
| 5 | *Greinstein v. Granite Svcs. Intl., Inc.,* 18-CV-208, 2020 WL 10934898 (N.D. Tex. Aug. 25, 2020) | 19-24 |

Date: March 21, 2024

Respectfully Submitted,

/s/ James D. Sanford
JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX  75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS, pro hac vice
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tele.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cbroderick@apfa.org

*Counsel for APFA*

## CERTIFICATE OF SERVICE

I certify that on March 21, 2024, a true and correct copy of the foregoing document was

served upon all persons who have requested notice and service of pleadings in this case via the

Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

/s/ *James D. Sanford*
JAMES D. SANFORD

# Tab 1

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                            FORT WORTH DIVISION

ROBERT (BOB) ROSS,                  )    Case No. 4:22-cv-00343-Y
                                    )
          Plaintiff,                )
                                    )    Fort Worth, Texas
v.                                  )    December 26, 2023
                                    )    10:00 a.m.
ASSOCIATION OF PROFESSIONAL         )
FLIGHT ATTENDANTS,                  )
                                    )    MOTIONS TO COMPEL
          Defendants.               )
                                    )
_____      )
                                    )
EUGENIO VARGAS,                     )    Case No. 4:22-cv-00430-Y
                                    )
          Plaintiff,                )
                                    )
v.                                  )
                                    )
ASSOCIATION OF PROFESSIONAL         )    MOTIONS TO COMPEL
FLIGHT ATTENDANTS, et al.,          )
                                    )
          Defendants.               )
_____      )
```

                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEFFREY L. CURETON,
                 UNITED STATES MAGISTRATE JUDGE.

APPEARANCES:

For the Plaintiffs:        Kerri Phillips
                           KD PHILLIPS LAW FIRM, PLLC
                           6010 W. Spring Creek Parkway
                           Plano, TX  75024
                           (972) 327-5800

For the APFA Defendants:   James Dennis Sanford
                           GILLESPIE SANFORD, LLP
                           4803 Gaston Avenue
                           Dallas, TX  75246
                           (214) 800-5111

For the APFA Defendants:   Jeffrey A. Bartos
                           GUERRIERI BARTOS & ROMA, P.C.
                           1900 M Street NW, Suite 700
                           Washington, DC  20036
                           (202) 624-7400

**APPENDIX 2**

1   wasn't our arrangement' or we're not having a recorded phone

2   call.  Let's all be adults and professionals and work through

3   it.

4        But I'm denying the amended motion to compel in each of

5   those matters.

6        Let's go to the second motion to compel.  This is the one

7   that has Requests for Productions, and there's a list of them,

8   1, 3, 4, 6, 7, 8, 9, 10, 11.  Fourteen is mentioned, but I

9   don't see it really discussed by either side in any detail.

10  The way I have it is Defendants are contending that there are

11  no more responsive documents to Request #6.  Is there a reason

12  you doubt their word on that, Ms. Phillips?

13           MS. PHILLIPS:  Well, so in particular, there are

14  communications that haven't been produced from particular

15  email addresses.  There is virtually none from Julie Hedrick,

16  who's a party in the case, Your Honor.  Her -- it does not

17  appear that her email has been scrubbed at all.  That was the

18  original reason I asked for the emails to be produced in a POC

19  format, to see whether or not things were being pulled from

20  the front end or from the actual server.

21           THE COURT:  Okay.

22           MS. PHILLIPS:  Duplications of emails are not being

23  produced.  So the chain of emails that are resulting don't

24  appear to be produced, which often is rectified when you pull

25  from a server and then run it with a de-duplication software

**APPENDIX 3**

32

1     MR. BARTOS:  A combination of both.

2     THE COURT:  Are you missing personal email addresses

3  used by these individuals, or official ones?

4     MS. PHILLIPS:  Both.  Both.  I'm missing --

5     THE COURT:  Help me clarify -- I mean, look, you guys

6  deal with this every day out there with your clients.  Tell me

7  how to get you where you need to be, and you tell me what

8  you've done to already be there.  I mean, that's all I can do

9  here, guys.

10     MS. PHILLIPS:  I am requesting, in particular, the

11  documents relating to Nena Martin's charges for arbitration

12  and her countercharges against Ms. Chinery.

13     THE COURT:  Okay.  Now, that's different than Ms.

14  Hedrick.  You were complaining about Ms. Hedrick.

15     MS. PHILLIPS:  Right.  Well, it -- but as I -- as I

16  began, the Ross administration includes three people.

17     THE COURT:  Right.

18     MS. PHILLIPS:  Mr. Ross, Mr. Vargas, as well as Nena

19  Martin.  He is not wanting to produce any of the Nena Martin

20  evidence.  He doesn't feel it's relevant.  My argument has

21  been this has been a plot to attack that three of them and

22  their administration.

23     THE COURT:  Well, see, I didn't -- that's why I

24  didn't go to 4-G and 8 and 9 yet, because I had my note that

25  that's really your focus on Nena Martin.  I'm still dealing

**APPENDIX 4**

1    And the charges were brought against Mr. Ross, Mr. Vargas, by

2    the same people.

3            THE COURT:  Uh-huh.

4            MS. PHILLIPS:  And that her charges were the same,

5    focused on the same fact pattern.  She was able to get out of

6    her charges.  Her hearing was held after the filing of these

7    cases, you know, the two cases for Mr. Ross and Mr. Vargas.

8            THE COURT:  Okay.

9            MS. PHILLIPS:  So the arbitrator found that -- that

10   the charging party in Ms. Martin's case actually had presented

11   -- had not falsified evidence but had misrepresented to the

12   arbitrator --

13           THE COURT:  And these were three separate

14   arbitrations, or -- okay.

15           MS. PHILLIPS:  These are three separate arbitration

16   hearings.

17           THE COURT:  All right.

18           MS. PHILLIPS:  Right.  And so she was able to get her

19   charges dismissed based on that fact, and then filed

20   countercharges against Ms. Chinery, which -- which ended up

21   getting dismissed because of retaliatory actions by the union,

22   which go back to our original claims of violations of the

23   (inaudible) --

24           THE COURT:  Okay.

25           MS. PHILLIPS:  -- and due process.

**APPENDIX 5**

1       MR. BARTOS:  And then, if I recall correctly, she

2  dismissed her charges against those individuals.

3       MS. PHILLIPS:  I have to interject here.

4       THE COURT:  Sure.  Go ahead.

5       MS. PHILLIPS:  The charging parties brought the

6  claims before the arbitrator based on -- on behalf of the

7  union.  If Mr. Ross is disciplined and if the arbitration

8  comes out against him, the union is the one who gets paid, not

9  the charging parties.  So Ms. Martin had the exact same

10  charging parties, the exact same fact pattern, and the exact

11  same claims.

12       THE COURT:  So you're saying because those

13  individuals brought the allegations, basically stepping into

14  the shoes of the union, --

15       MS. PHILLIPS:  That's correct.  They're doing --

16  because the union is made up of its members.  So they're

17  charging on behalf of the union.  That's why you have to go

18  through the review process at the Executive Committee first,

19  who then authorizes it and then brings the claims in front of

20  an arbitrator.

21       THE COURT:  All right.  Here's what we're going to

22  do.  Nena Martin, I'm going to find that it could lead to --

23  it could to potentially lead to relevant evidence.  But to

24  take care of the privacy concerns, I'm ordering the parties to

25  come up with some type of confidentiality agreement that will

**APPENDIX 6**

# Tab 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | Civil Action No. 4:22-cv-343-Y |
| | § | |
| v. | § | Judge Terry R. Means |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| | § | |
| Defendants/Counterclaim Plaintiff. | § | |

APFA DEFENDANTS' RESPONSES TO
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34, Fed. R. Civ. P., Defendants the Association of Professional Flight

Attendants, Julie Hedrick and Erik Harris ("APFA Defendants") hereby respond to Plaintiff's

Request for Production of Documents.

**1.     All documents and communications of any kind between APFA, National Officers, Base Presidents, Executive Committee members, Margot Nikitas, William Osborne, and Jose Burns and/or APFA Union Members transmitting the Ross Transition Agreement since April 1, 2020.**

The APFA Defendants object to this Request as seeking information outside of the custody or control of the APFA and to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Subject to and without waiving that objection, responsive non-privileged documents will be produced.

See APFA I. 000001-000078.

**2.     All documents and communications referenced in Plaintiff's First Set of Interrogatories to Defendant, APFA.**

The APFA Defendants object to this Request as overly broad and unduly burdensome. Plaintiff's First Set of Interrogatories is an 11-page document referencing multiple broad categories of documents and communications covering substantial periods of time.   This

**APPENDIX 8**

The APFA Defendants object to this Request as so vague and ambiguous as to preclude a meaningful response.  Subject to, and without waiving these objections, the APFA Defendants will produce herewith communications between the identified people and the Article VII Arbitrator regarding the Ross Article VII Arbitration.

See APFA II. 000001-002052 and APFA V. 000001-000019.

**6.     All documents and communications between the National Officers, Board of Directors, Joe Burns, Melissa Chinery-Burns, and/or Sandra Lee discussing a merger between APFA and AFA.**

The APFA Defendants object to this Request to the extent it seeks documents which are not within their custody or control.  The APFA Defendants further object to this Request as overly broad and unduly burdensome because it is unlimited as to time or context, and is unlikely to lead to the discovery of relevant evidence. Subject to, and without waiving these objections, the APFA Defendants will produce responsive documents, if any, reflecting communications during the tenure of the current National Officers.

**7.     All documents and communications between the National Officers, Board of Directors, Joe Burns, Melissa Chinery-Burns, and/or Sandra Lee discussing the Vargas Article VII Arbitration and the Vargas Arbitration Award.**

The APFA Defendants object to this request as seeking information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison with the likely benefit of discovery. The APFA Defendants also object to this Request to the extent it seeks documents which are not within the custody or control of the APFA Defendants.  Subject to, and without waiving, those objections, responsive documents will be produced.

See APFA III. 000001-002753 and APFA V. 000001-000019.

**8.     All documents and communications between the National Officers, Board of Directors, Joe Burns, Melissa Chinery-Burns, and/or Sandra Lee discussing the Martin Article VII Arbitration.**

The APFA Defendants object to this Request as seeking information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison to the likely benefit of discovery.

**APPENDIX 9**

9.     All documents and communications between the National Officers, Board of Directors, Executive Committee, Joe Burns, Melissa Chinery-Burns, and/or Sandra Lee discussing Nena Martin's charges against Melissa Chinery-Burns on October 14, 2022.

The APFA Defendants object to this Request as seeking information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison to the likely benefit of discovery.

10.    All documents and communications regarding the quarterly Executive Committee meeting held on December 1, 2020.

The APFA Defendants object to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Subject to that objection, responsive, non-privileged documents will be produced.

See APFA IV. 000001-000031.

11.    All documents and communications to and from APFA and the Arbitrator.

The APFA Defendants object to this Request as seeking information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison to the likely benefit of discovery. The APFA Defendants also object to this Request as unduly burdening the privacy and free speech interests of other union members not involved in either the Ross or Vargas Article VII Arbitration. Subject to and without waiving these objections, communications and documents exchanged between the APFA and the Article VII Arbitrator regarding the Ross and Vargas cases will be produced.

See APFA II. 000001-002052 and APFA III. 000001-002753.

12.    All documents and communications, including social media posts, presidential hotlines, and public statements, in which APFA, the National Officers, Joe Burns, John Nikitas, Melissa Chinery-Burns, and/or Sandra Lee discuss the Ross Administration's alleged theft, misappropriations, malfeasance, APFA Policy violations, or misconduct.

The APFA Defendants object to this request as seeking information that is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison with the likely benefit of discovery. Defendants also object to this Request to the extent it seeks documents outside their possession, custody and control and which are equally available to Plaintiff. Subject to, and without waiving, those objections, responsive documents discussing Mr. Ross and Mr. Vargas's misconduct while in office will be produced.

See APFA II. 000001-002052, APFA III. 000001-002753, and APFA V. 000001-000019.

APPENDIX 10

13.     **All documents produced to any party, including the Arbitrator, in connection with the following Article VII Arbitrations:**

     a.     **Martin Article VII Arbitration;**
     b.     **Ross Article VII Arbitration; and**
     c.     **Vargas Article VII Arbitration.**

The APFA Defendants object to this Request as overly broad, unduly burdensome, and invasive of privacy to the extent it seeks documents which were not introduced, or attempted to be introduced, in connection with either the Ross or Vargas Arbitrations, and to the extent it involves the Martin Article VII Arbitration.   Such information is not relevant to any party's claim or defense, is not proportional to the needs of the case, and is overly burdensome in comparison to the likely benefit of discovery. Subject to, and without waiving, these objections, the APFA Defendants will produce documents produced to the Article VII Arbitrator in the Ross and Vargas Arbitrations as well as the entire record of those Arbitrations.

See APFA II. 000001-002052 and APFA III. 000001-002753.


14.     **All documents and communications to and from APFA and Diversified relating to the Ross Administration.**

The APFA Defendants object to this Request to the extent it seeks information covered by the attorney-client privilege or work product doctrine.  Subject to and without waiving that objection, responsive documents will be produced.

See APFA VI. 000001-000099.


15.     **All documents and communications by APFA announcing the results of any Article VII Arbitrations to the APFA Union Members.**

The APFA Defendants object to this Request as vague, overly broad and unduly burdensome to the extent it is unlimited as to time or context, and thus seeks matter which is not relevant to any party's claim or defense and is not proportional to the needs of the case.  Subject to and without waiving that objection, responsive documents will be produced.

See APFA V. 000001-000019.


16.     **All documents and communications to APFA from the Department of Labor, including investigation results, involving the Transition Agreement.**

Responsive documents will be produced.

**APPENDIX 11**

# Tab 3

## DECLARATION OF CHARLETTE BRODERICK

Charlette Broderick hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney licensed in the State of Texas and am employed as a Staff Attorney by the Association of Professional Flight Attendants ("APFA"). I am one of the attorneys for APFA in this matter.

2.      I attended the December 26, 2023, hearing before Magistrate Judge Cureton in this matter and thereafter was involved in APFA's efforts to identify and produce documents responsive to the Court's Order of that same date. Based on the content of the relevant motions to compel, the discussion during the hearing, and the Court's Order, I led the effort to locate documents responsive to Mr. Ross's Requests for Production 8 and 9, which involved communications among various named individuals discussing an arbitration involving Nena Martin, and also charges which had been filed by Ms. Martin against another member.

3.      With respect to documents relating to Ms. Martin's Article VII hearing and charges, I directed APFA Legal Department staff to locate responsive documents within APFA files. I also separately instructed the APFA National Officers, APFA Base Presidents and the APFA Executive Committee (collectively the "APFA Leadership") to search their files (electronic, paper, emails, text messages, Teams communications and the like) to determine if they possessed any additional documents responsive to Plaintiffs' request, and I further also enlisted the assistance of the Executive Assistants for the National President, National Treasurer and National Secretary to search their officer inboxes for any relevant documents using the same criteria provided to the APFA leadership.

4.      The process described in the preceding paragraph yielded several thousand pages of responsive documents which were subsequently reviewed for responsiveness and privilege, and then produced to Plaintiff's counsel following agreement on interim confidentiality terms.

**APPENDIX 13**

5.      Based on the December 26, 2023, hearing and ensuing Order of that date, to ensure that our production had been complete, I also supervised a further search for emails responsive to all of the outstanding requests for production in this matter which were to or from APFA President Julie Hedrick and associated with the email addresses *President@apfa.org* and *jhedrick@apfa.org*, but which may have not previously been produced from those sources.  I identified approximately 60 pages of documents, many of which had been already produced from other sources. These documents were reviewed for responsiveness and privilege and were then produced to Plaintiff's counsel following agreement on interim confidentiality terms.

I declare under penalty of perjury that the foregoing is true and correct. Executed this *20th* day of March, 2024.

Charlette Broderick

2

# Tab 4

Re: APFA Document Production

Kerri Phillips <Kerri@KDphillipslaw.com>
Thu 2/22/2024 4:37 PM

To:Jeff Bartos <jbartos@geclaw.com>
Cc:John Grunert <jgrunert@geclaw.com>;Charlette Broderick <CBroderick@apfa.org>;Jim Sanford
<jim@gillespiesanford.com>;Adam Phillips <Adam@KDphillipslaw.com>;Stephanie Lewis <Stephanie@KDphillipslaw.com>

Jeff,
The number of documents and communications missing from the last production are too
numerous to itemize out. It's taken me a week to go through it.  To be honest, we're within a
week of depositions and the extensive discovery issues have put us at such a disadvantage
that I don't see we have any other option but to cancel.  The problems stem from the original
extrapolation of the evidence in my opinion, and are so extensive, even if properly conducted at
this point, it would been too much discovery to adequately review and prepare prior to the close
of discovery.

I was hoping to resolve these issues.  However, I simply don't have any other recourse.
Plaintiffs have been so substantially prejudiced by the discovery abuses in this case, there's no
other option.

We will not hold deposition on the 27th and the 29th for either Mr. Harris or Ms. Hedrick and file
our Motion for Sanctions.



**Kerri Phillips**
KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024

**www.KDphillipslaw.com**

**IMPORTANT/CONFIDENTIAL:**

IMPORTANT \ CONFIDENTIAL:  This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client
privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law.  Unless expressly stated otherwise,
nothing contained in this message should be construed as a digital or electronic signature, nor is this message intended to reflect an intention to make an
agreement by electronic means.  DO NOT COPY OR FORWARD TO UNAUTHORIZED PERSONS.  If you are not the intended recipient or the employee or agent
responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this
communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. §
2510, et seq.  If you have received this communication in error, please notify us immediately at our telephone number:  (972) 327-5800

IRS Circular 230 Notice:  Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we
inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person,
for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any
transaction or matter addressed herein, within the meaning of IRS Circular 230.

Sent from my iPhone

On Feb 21, 2024, at 11:13 AM, Jeff Bartos <jbartos@geclaw.com> wrote:

Kerri,

Can you tell me in what ways you feel the latest production is inadequate?

We are prepared to proceed with the noticed depositions unless you advise that they are not going forward.

Thank you,

Jeff

**From:** Kerri Phillips <Kerri@KDphillipslaw.com>
**Sent:** Wednesday, February 21, 2024 10:44 AM
**To:** John Grunert <jgrunert@geclaw.com>; Jeff Bartos <jbartos@geclaw.com>; Charlette Broderick <CBroderick@apfa.org>
**Cc:** Jim Sanford <jim@gillespiesanford.com>; Adam Phillips <Adam@KDphillipslaw.com>; Stephanie Lewis <Stephanie@KDphillipslaw.com>
**Subject:** RE: APFA Document Production

Please be advised I will be refiling our motion for sanctions as your document production and updated privilege log fails to comply with the court's orders to produce documents. This is to meet with our certificate of conference requirements as we are unable to properly hold depositions while you continue to withhold documents and fail to comply wth the court's orders to produce documents.

Please advise if you agree or oppose.

Thank you,



**Kerri Phillips**
KD Phillips Law Firm, PLLC

**Phone:** 972-327-5800 ext. 1001
**Fax:** 940-400-0089
**Email:** Kerri@KDphillipslaw.com

6010 W. Spring Creek Parkway
Plano, TX 75024

www.KDphillipslaw.com

IMPORTANT/CONFIDENTIAL:

IMPORTANT \ CONFIDENTIAL: This message contains information from the law firm of KD Phillips Law Firm, PLLC that may be subject to the attorney-client privilege or work product doctrine, or may be otherwise confidential and exempt from disclosure under applicable law. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is this

**APPENDIX 17**

message intended by electronic means an intention to make an agreement by electronic means. DO NOT FORWARD OR COPY TO UNAUTHORIZED PERSONS. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying or forwarding of this communication is strictly prohibited. Unauthorized interception of this message may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, et seq. If you have received this communication in error, please notify us immediately at our telephone number: (972) 327-5800

IRS Circular 230 Notice: Unless expressly stated otherwise in the foregoing message, and to ensure compliance with requirements imposed by the IRS, we inform you that any advice contained in this message (including any attachments) is not intended or written to be used, and may not be used by any person, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein, within the meaning of IRS Circular 230.

**From:** John Grunert <jgrunert@geclaw.com>
**Sent:** Tuesday, February 13, 2024 5:26 PM
**To:** Kerri Phillips <Kerri@KDphillipslaw.com>; Jeff Bartos <jbartos@geclaw.com>; Charlette Broderick <CBroderick@apfa.org>
**Subject:** APFA Document Production

Kerri,

The link below to the shared Dropbox account contains additional document productions, including the material addressed in Magistrate Judge Jeffrey Cureton's December 26, 2023 Order. These productions are covered by the Parties' Confidentiality Agreement and are identified as such. The password to access the Dropbox is "APFA100". The additional document productions are:
- APFA VII. 3498-6079 (3544-3547 are deliberately omitted)
- APFA's Privilege Log Updated February 13, 2024

https://www.dropbox.com/scl/fo/ndhgxrs2h4qaw936a50aa/h?rlkey=cj7nn4ut6gsyeq8wyp9hmvjbt&dl=0

John Grunert
Guerrieri, Bartos & Roma, P.C.
1900 M St, NW, Suite 700
Washington, DC 20036-3518
(202) 624-7400
jgrunert@geclaw.com

*This e-mail may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system, including any attachments, without copying it and notify sender by reply e-mail, so that our records can be corrected.*

**APPENDIX 18**

# Tab
# 5

Greinstein v. Granite Services International, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 10934898
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Amarillo Division.

Herman GREINSTEIN, individually and on
behalf of others similarly situated, Plaintiff,

v.

GRANITE SERVICES INTERNATIONAL,
INC. and Fieldcore Services
Solutions, LLC, Defendants.

2:18-CV-208-Z-BR
|
Signed 08/25/2020

**Attorneys and Law Firms**

Michael A. Josephson, Andrew Dunlap, Gary Scott Marshall, Pro Hac Vice, Richard M. Schreiber, Josephson Dunlap Law Firm, Richard J. Burch, Bruckner Burch PLLC, Houston, TX, Andrew Ross Frisch, Morgan & Morgan PA, Plantation, FL, C. Ryan Morgan, Morgan & Morgan PA, Orlando, FL, Channy F. Wood, Wood Law Firm, Amarillo, TX, for Plaintiff.

Allyson L. Johnson, Seyfarth Shaw LLP, Dallas, TX, Autumn Leigh Flores, Kelly D. Utsinger, Stephanie Jean James, Underwood Law Firm PC, Amarillo, TX, Brett C. Bartlett, Pro Hac Vice, Kevin Michael Young, Pro Hac Vice, Zheyao Li, Seyfarth Shaw LLP, Atlanta, GA, for Defendants.

**ORDER DENYING DEFENDANTS' EMERGENCY MOTION AND DENYING PLAINTIFF'S MOTION FOR HEARING**

MATTHEW J. KACSMARYK, UNITED STATES DISTRICT JUDGE

*1 Local Rule 83.8(e) defines "unethical behavior" as conduct undertaken in a civil action in this Court "that violates the Texas Disciplinary Rules of Professional Conduct." N.D. Tex. Civ. R 83.8(e). Here, counsel may soon cross the Rubicon of "unethical behavior" if they do not recollect and recommit to the Rules requiring (1) "meritorious claims and contentions," (2) "candor towards the tribunal," and (3) "truthfulness in statements to others." *See* Tex. Disciplinary

R. Prof. Conduct 3.01, 3.03, 4.01 (2019). For the reasons that follow, Defendants' Emergency Motion to Cease Improper Notice and Solicitations and to Enforce Agreement (ECF No. 102) ("Motion") is hereby DENIED. Furthermore, Plaintiff's Motion for Hearing (ECF No. 110) is DENIED as moot.

Additionally, the Court ORDERS that within twenty-one days of this order, (1) counsel for Defendants SHOW CAUSE for mislabeling the Motion as an "emergency" when they waited *months* before seeking relief, and failing to *timely* confer with opposing counsel before filing the Motion; and (2) counsel for Plaintiff SHOW CAUSE for failing to disclose the communications in response to Defendants' written discovery requests and their ongoing obligation to produce same.

**Background**

In late 2018, Plaintiff Herman Greinstein brought this lawsuit against Defendants as a collective action to recover unpaid overtime wages and other damages arising under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 et seq. In May 2019, Plaintiff filed its first Motion for Conditional Certification and Court-Authorized Notice. Soon after, Plaintiff's counsel allegedly began advertising on LinkedIn.com, which targeted Defendants' current and/or former employees.

On August 1, 2019, Defendants' counsel, Kevin Young, sent an email to Plaintiff's counsel demanding that the advertisements be removed. The next day, counsel for each party conferred and apparently discussed an agreement to remove the advertisements. Young sent an email purportedly memorializing said agreement. On August 3, 2019, Plaintiff's counsel, Andrew Dunlap, responded by clarifying the terms of the agreement and asked: "If you accept our agreement, please respond. If agreed to, we will turn off the advertisement." ECF No. 102-2 at 3. Young replied on August 6, 2019, "Rex and Andrew, as requested, we write to confirm that we are good with the proposal as you describe it in the Saturday [August 3, 2019] email below." *Id.* at 2.

A few weeks later, the Magistrate Judge entered her findings, conclusions, and recommendations to deny Plaintiff's Motion for Conditional Certification and Court-Authorized Notice without prejudice to refiling—adopted by the undersigned District Judge on November 26, 2019. In March 2020, after granting Plaintiff leave to file his Second Amended Complaint, the parties requested a stay of proceedings pending ongoing mediation efforts.

**APPENDIX 20**

Greinstein v. Granite Services International, Inc., Not Reported in Fed. Supp. (2020)

At some point in June 2020, Defendants claim that they learned that Dunlap resumed advertising on LinkedIn. The advertisements contain references to "FieldCore" and posit questions, among other communications, such as: "Paid straight time for overtime at FieldCore?"; "FieldCore required you to work without pay?"; "Fired from FieldCore?"; and "Does FieldCore pay its women employees equally?" According to his own documentation, Dunlap submitted his Approval Request for Internet Advertisements on *July 7, 2020. See* ECF No. 108-1. However, there is no evidence of the Texas State Bar approving any of the advertisements that ran in *June 2020*. After two weeks of running the advertisements approved on July 7, 2020, Plaintiff filed his Renewed Motion for Conditional Certification and Court-Authorized Notice.

*2 Three weeks later—two months after the advertisements posted, and one year since conferring with opposing counsel on the matter—rather than requesting Plaintiff remove the advertisements, Defendants filed the instant "emergency" Motion seeking the Court's intervention. Defendants implore the Court to order, among other forms of relief, Plaintiff and his counsel, Andrew Dunlap, to immediately cease running advertisements targeting Defendants' current or former employees and to honor the August 6, 2019 agreement between counsel from each party.

**Applicable Law**

Defendants' self-styled "emergency" Motion is atypical in form and substance. Although Defendants essentially seek a protective order—at least—or a preliminary injunction—at most—Defendants' do not rely on either Rule 26(c) or Rule 65 of the Federal Rules of Civil Procedure in furtherance of their Motion. In the context of FLSA collective actions, other courts in this District analyze similar motions as *protective orders* "under the framework used in *Vogt v. Texas Instruments Inc.,* No. 3:05-CV-2244-L, 2006 WL 4660133, at *1 (N.D. Tex. Aug. 8, 2006), which relied on the Court's authority under Section 216 of the FLSA and the two-part test set forth in *Belt v. EmCare Inc.,* 299 F. Supp. 2d 664 (E.D. Tex. 2003)." *Reyes v. Topgolf Int'l, Inc.,* 3:17-CV-0883-L, 2017 WL 11496868, at *2 (N.D. Tex. May 15, 2017) (Carrillo Ramirez, M.J.); *see also Williams v. Sake Hibachi Sushi & Bar, Inc.,* 3:18-CV-0517-D, 2018 WL 4539114, at *2 (N.D. Tex. Sept. 21, 2018) (Fitzwater, J.).

Due to the unique nature of FLSA collective actions, the Court has broad authority "to manage the process of joining multiple parties in a manner that is orderly, sensible, and not

otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hofmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989) (citing Fed. R. Civ. P. 83); *see also Belt,* 299 F. Supp. at 667. "This authority exists because FLSA cases present significant opportunities for abuse, most often in the form of improper communications that undermine the collective action process." *Williams,* 2018 WL 4539114, at *2 (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981) (first citation omitted)).

"In the Fifth Circuit, district courts have applied a two-part test for determining whether to issue an order impacting a party's speech with absent class members." *Id.* (*citing Vogt,* 2006 WL 4660133, at *3; *Farrow v. Ammari of La., Ltd.,* 2017 WL 2812930, at *9 (E.D. La. June 29, 2017); *Velazquez v. FPS LP,* 2014 WL 1758214, at *3 (S.D. Tex. Apr. 28, 2014)). First, the Court "decides whether there is a need for a limitation on speech." *Vogt,* 2006 WL 4660133, at *3 (*citing Belt,* 299 F. Supp. 2d at 668). In making such determination, the Court looks to whether the speech is "misleading, coercive, or an attempt to undermine the collective action." *Id.* Second, after concluding "that a basis for restricting speech exists," the Court should "tailor appropriate injunctions and sanctions in light of First Amendment concerns." *Id.* An order restricting a party's speech should include "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.,* 452 U.S. at 101. This "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.*

**Analysis**

Defendants argue that the advertisements are improper and invade the province of the Court in any future determination to provide notice to putative class members. "Federal judges have the power to authorize the sending of notice to potential FLSA class members pursuant to 29 U.S.C. § 216(b) to inform them of the action and to give them the opportunity to participate by opting in." *Wade v. Furmanite Am., Inc.,* 3:17-CV-00169, 2018 WL 2088011, at *6 (S.D. Tex. May 4, 2018) (*citing Hoffman–La Roche,* 493 U.S. at 169–70). However, similar to the defendants in *Vogt,* the relief sought by Defendants in this case is "is unique, since it seeks the court to restrain communications between Plaintiffs and their counsel and absent class members, even though the court has yet to conditionally certify a class...." 2006 WL 4660133, at *3. Accordingly, because the advertisements constitute precertification communications, the Court must

**APPENDIX 21**

*Greinstein v. Granite Services International, Inc., Not Reported in Fed. Supp. (2020)*

first determine whether they warrant the need for Court-mandated limitations on speech. *Id.* at *4.

**\*3** The Court determines that Plaintiff's June/July 2020 advertisements are not misleading, coercive, or an improper attempt to undermine the collective action.[1] First, some of the advertisements cited by Defendants do not relate to this case. Defendants argue that Plaintiff's counsel is attempting to solicit new employment claims for wrongful termination, gender pay equity, and "off the clock" work. Other than involving Defendant in other employment-related claims, those claims have little-to-no bearing on this case. Assuming *arguendo* that current or former employees clicked on these advertisements referring to other claims, spoke with an attorney from Josephson Dunlap, and then decided to file claims against Defendants, *none* of those claims would affect this collective action.

Further, in their response to Plaintiff's Renewed Motion for Conditional Certification and Court-Authorized Notice, Defendants admit that these advertisements have had little success:

> Despite the passage of time and a persistent social media ad campaign designed to unearth interest in this case, only two individuals have joined, Stephen Jones and Byron White. Despite advertising the claims in this case on LinkedIn in 2018, 2019, and 2020, no one else has joined or expressed interest in doing so, nor has anyone else (including Opt-In White) submitted a declaration in support of Plaintiff Greinstein's motion.

ECF No. 104 at 7—8. Defendants' argument that these advertisements are misleading, coercive, and improperly attempt to undermine the collective action—warranting the immediate, "emergency" intervention of the Court—is unavailing.

Because the Court "has yet to conditionally certify a class or authorize a section 216(b) notice, Plaintiffs' counsel, unlike the defendant in *Belt*, cannot be said to have disregarded or subverted a court directive relating to its administration of the collective action." *Vogt*, 2006 WL 4660133, at *11. Looking at the content, purpose, and timing of the communications, courts in this district have limited communications when a party was seeking to dissuade and discourage putative class members. *See e.g.*, *Williams*, 2018 WL 4539114, at *4.

Here, the communications began around the same time as Plaintiff filed his Renewed Motion for Conditional

Certification and Court-Authorized Notice—an attempt to solicit more putative class members to join in *this* case. While this form of communication may indeed be improper in the event the Court orders class notice, the Court does not find that such communications are improper. Defendants have not met their burden under the first step of the framework set forth in *Belt*. Because Defendants have failed to show that a limitation or restriction on Plaintiff's or his counsel's speech is necessary, the Court need not address the second prong of the *Belt* analysis. Defendants' Motion (ECF No. 102) is hereby DENIED.

## I. The Agreement

The Parties spill much ink over the "terms" of their agreement regarding the August 2019 advertisements. Defendants argue that Plaintiff's counsel reneged on the August 2019 agreement to "stop the advertisements." Defendants claim that it was their understanding this agreement applied not only to the subject advertisement, but also to future advertisements. Plaintiff's counsel disagrees. Claiming that the agreement was limited to the August 2019 advertisements, Plaintiff's counsel argues that Defendants cannot show he breached any explicit agreement. While the issue *does* relate to professional ethics, the agreement does not relate directly to discovery matters properly before the Court. And the Court "finds nothing exceptional about petty discovery disputes and run-of-the-mill litigation tactics," that necessitate "emergency" intervention by the Court. *Eastman Chem. Co. v. PlastiPure, Inc.*, A-12-CA-057-SS, 2013 WL 5555373, at *4 (W.D. Tex. Oct. 4, 2013). Nevertheless, Defendants remain free to report Plaintiff's counsel to the State Bar of Texas for the alleged breach of an agreement between opposing counsel.

## II. Order to Show Cause

**\*4** The Court now turns to potentially sanctionable conduct committed by counsel for both parties to this case. As an initial matter, counsel should understand that "the Court is very loath to impose sanctions on attorneys and that sanctions are a very difficult thing for judges to determine whether to employ." *Heller v. City of Dallas*, 303 F.R.D. 466, 493 (N.D. Tex. 2014) (Horan, M.J.) (internal marks omitted). To be clear, "the Court takes no pleasure in imposing sanctions on, or making an example of, any attorney or litigant." *Id.*

This matter may have been alleviated had Defendants' counsel properly conferred with opposing counsel. While it is unclear from under what exact authority Defendants seek relief, Rule 11 requires the signatory to certify that the motion "is not

**APPENDIX 22**

being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Similarly, Rule 26(c) requires the party moving for a protective order to certify "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Furthermore, Northern District of Texas Local Rule 7.1(a) requires that "[b]efore filing a motion, an attorney for the moving party must confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed." The only exceptions are "for motions to dismiss, motions for judgment on the pleadings, motions for summary judgment, motions for new trial, or when a conference is not possible." *Id.* Here, Defendants' "emergency" Motion does not fall under any exception.

"Conference requirements encourage resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere." *Seastrunk v. Entegris, Inc.*, 3:16-CV-2795-L, 2017 WL 6406627, at *8 (N.D. Tex. Dec. 15, 2017) (Horan, M.J.) (cleaned up). The certificate of conference attached to Defendants' Motion certifies that "between August 1 and 6, 2019, [Kevin M. Young] conferred with Plaintiff's counsel, Andrew Dunlap, Richard Schreiber, and Rex Burch, via e-mail and telephone regarding Plaintiffs LinkedIn advertisements." ECF No. 102 at 15. However, after over a year of hotly contested litigation, Defendants' counsel deemed it best to file this "emergency" Motion without *any further* conferral.

Additionally, the timing of the motion being filed is suspect. The Court finds it deeply concerning that Defendants filed this "emergency" Motion long after learning of the advertisements on LinkedIn. Defendants claim that "[o]ne reason for the timing of Defendants' motion is that, in the context of Plaintiff's pending renewed conditional certification motion, the potential for dual-tracked notices ... creates an acute situation that infringes on the FLSA notice process." But even then, Defendants waited approximately three weeks before filing this "emergency" Motion—and on the eve of filing their response to conditional certification. Accordingly, after a thorough review of the facts and

conduct of the parties in this case, the Court tentatively finds that Defendants' counsel have not made a good faith effort to confer with opposing counsel. *See Compass Bank v. Shamgochian*, 287 F.R.D. 397, 399 (S.D. Tex. 2012) (collecting cases).

 **\*5** As to Plaintiff's counsel, while the "agreement" may not have included future advertisements, the production of those advertisements as part of his continuing obligation to supplement discovery was required. Rule 26(e)(1)(a) requires Plaintiff to timely "supplement or correct its disclosure or response ... if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process...." Here, the Court finds that Plaintiff's counsel failed to comply with such requirement by running advertisements related to the pending action—on at least three occasions over the past year—and without providing opposing counsel any supplemental discovery disclosures.

**Conclusion**

For the foregoing reasons, Defendants Motion (ECF No. 102) is hereby DENIED. As required by Rule 37(a)(5)(B), the Parties must have an opportunity to show cause as to why the Court should not sanction them or their counsel for acting in bad faith. It is further ORDERED that within **twenty-one days** of this order, (1) counsel for Defendants, Brett C. Bartlett and Kevin M. Young, SHOW CAUSE for mislabeling the Motion as an "emergency" when they waited *months* before seeking relief, and for failing to *timely* confer with Counsel before filing the Motion; and (2) counsel for Plaintiff, Andrew Dunlap and Richard M. Schreiber, SHOW CAUSE for failing to disclose the communications in response to Defendants' written discovery requests and their ongoing obligation to produce same. Because the Court is denying the Motion, it is further ORDERED that Plaintiff's Motion for Hearing (ECF No. 110) on the Motion is DENIED as moot.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 10934898

Footnotes

**APPENDIX 23**

Qreinstein v. Granite Services International, Inc., Not Reported in Fed. Supp. (2020)

1    Defendants cite an example of a previous advertisement: "Were you *paid straight time* while working on a FIELDCORE project?" This is followed by a clickable button that reads: "GET YOUR UNPAID OVERTIME." While this advertisement may indeed be misleading as it is similar to the misleading flyer in *Vogt*, here, Defendants do not claim that this advertisement is being—or has been recently—marketed on LinkedIn. Accordingly, the Court does not analyze that advertisement as that issue is moot.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 24**