**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:22-cv-343-Y |
| ASSOCIATION OF PROFESSIONAL | § | Consolidated with 4:22-cv-430-Y |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs, | § | Judge Terry R. Means |
| | § | |
| AND | § | |
| | § | |
| EUGENIO VARGAS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

**APPENDIX TO APFA DEFENDANTS' LIST OF**
**REASONABLE COSTS AND ATTORNEY'S FEES**
**PURSUANT TO ORDER GRANTING MOTION FOR SANCTIONS**

Pursuant to Local Rule 7.1(i), the Association of Professional Flight Attendants

("APFA"), its National President, Julie Hedrick, and National Treasurer, Erik Harris

(collectively, "the APFA Defendants"), hereby submit the following appendix to its List of

Reasonable Costs and Attorney's Fees Pursuant to Order Granting Motion for Sanctions.

| Tab | Description | APFA Appx. |
|---|---|---|
| 1 | Declaration of Jeffrey A. Bartos | 1-6 |
| 2 | Exhibit 1 – Court Reporter for Feb. 1-2 Depositions | 7-9 |
| 3 | Exhibit 2 – Videographer for Feb. 1-2 Depositions | 10-12 |
| 4 | Exhibit 3 – Court Reporter for Vargas' Court-Ordered Deposition | 13-14 |
| 5 | Exhibit 4 – Videographer for Court-Ordered Deposition | 15-17 |
| 6 | Exhibit 5 – Location for Feb. 1-2 Depositions | 18-19 |
| 7 | Exhibit 6 – Airfare: Travel Expenses for Feb. 1-2 Depositions | 20-22 |
| 8 | Exhibit 7 – Hotel: Travel Expenses for Feb. 1-2 Depositions | 23-24 |

| Tab | Description | APFA Appx. |
|---|---|---|
| 9 | Exhibit 8 – Guerrieri, Bartos & Roma, PC Billing Records | 25-27 |
| 10 | Declaration of James D. Sanford | 28-39 |
| 11 | Attachment A – Jim Sanford Activities Summary | 40-42 |
| 12 | *Bobby Goldstein Prod., Inc. v. Habeeb,* 21-CV-01924, 2023 WL 8790284 (N.D. Tex. Nov. 27, 2023) | 43-49 |
| 13 | *Silves H. v. Kijakazi*, 22-CV-286, 2023 WL 9102228 (N.D. Tex. Dec. 18, 2023) | 50-53 |

Date: March 22, 2024

Respectfully Submitted,

*/s/ James D. Sanford*
JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX  75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS, pro hac vice
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tele.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: Cbroderick@apfa.org

*Counsel for APFA*

## CERTIFICATE OF SERVICE

I certify that on March 22, 2024, a true and correct copy of the foregoing document was

served upon all persons who have requested notice and service of pleadings in this case via the

Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

/s/ *James D. Sanford*
JAMES D. SANFORD

# Tab
# 1

DECLARATION OF JEFFREY A. BARTOS

Jeffrey A. Bartos hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney and principal with the law firm Guerrieri, Bartos & Roma, P.C., based in Washington, D.C.  I am a member in good standing of the District of Columbia Bar.

2.      I am lead counsel for the APFA Defendants in this matter, and I submit this Declaration in support of the APFA Defendants' claim for fees and expenses, as ordered by this Court on March 1, 2024, Doc. 219.

3.      With regard to expenses, attached as exhibits hereto are the invoices received, and paid or scheduled to be paid, by APFA, in connection with the categories of expenses allowed by the Court. Specifically, these invoices are for  (a) the cost of the reporter for the February 1-2, 2024 depositions; (b) the cost of the reporter for the Court Ordered Depositions; (c) the cost of the videographer for the February 1-2, 2024 depositions; (d) the cost of the videographer for the Court Ordered Depositions; (e) the cost of the deposition location for the February 1-2, 2024 depositions; and (g) reasonable travel expenses incurred by Defendants' counsel for the February 1-2, 2024 depositions.

4.      Exhibit 1 contains the invoices from the Court Reporter for the February 1 and 2, 2024 depositions. The total amount, not including the charge for an expedited transcript, is $2268.50.

5.      Exhibit 2 contains the invoices from the Videographer for the February 1 and 2, 2024 depositions. The total amount is $1525.00.

6.      Exhibit 3 contains the invoice from Court Reporter for the Court-Ordered Deposition of Mr. Vargas.  The total amount is $964.50.  The Court Reporter has not yet

**APPENDIX 2**

provided the invoice for the Court-Ordered Deposition of Mr. Ross, which was conducted on March 15, 2024.

7.      Exhibit 4 contains the invoices from the Videographer for the Court Ordered depositions. The total amount is $1295.00.

8.      Exhibit 5 is the invoice for the deposition location on February 1-2, 2024. The total amount, not including a charge for outside catering, is $1280.00.

9.      There were no costs associated with the location for the Court Ordered Depositions.

10.      I flew from Washington, D.C. to DFW International Airport for the February 1-2, 2024, depositions.  The cost of my economy class round-trip ticket was $628.20. The receipt for that trip is attached hereto as Exhibit 6.

11.      I stayed overnight in Fort Worth on January 31 and February 1, 2024, in connection with the two depositions. The total charge for my hotel was $322.10, as reflected on Exhibit 7.

12.      The Court has also ordered Ms. Phillips to pay the APFA Defendants' "reasonable fees" incurred in connection with the following:

(a)      "the filing of Defendants' motion" for sanctions;

(b)      "the February 1-2, 2024 deposition[s]"; and

(c)      "the Court Ordered Depositions."

Doc. 219 at 23 and 23 n.19.

13.      To determine the reasonable fees paid or payable to our firm and incurred by APFA with respect to these three categories, I reviewed our firm's billing records covering the relevant time period.  These records are prepared by our firm's office manager based on

2

**APPENDIX 3**

contemporaneously produced billing records generated by each attorney. To the extent covered work was performed in February 2024, I referred to the monthly billing statement which has already been approved by me and sent to APFA for payment. Work performed during March 2024 has not yet been converted into a monthly billing statement or provided to APFA, although the relevant billing records have already been generated and will be used in the upcoming statement for March work.

14.     The billing records submitted herewith as Exhibit 8 include only that work which, in my professional opinion, was necessary and appropriate to the matter at hand. Any excess reported time has been removed in the exercise of my professional judgment.

15.     The billing rates set forth on the attached are those charged to APFA in this litigation. My rate in this matter is $395 per hour, and the billing rates of other attorneys in my office who have worked on the matters addressed herein range between $350 and $395. These rates are at or below those charged to other labor organization clients of our firm, and are at or below the prevailing rates in the Washington, D.C. legal community for lawyers of comparable experience. While most of our fees are paid directly by clients, rather than awarded by courts, in 2021, the U.S. District Court for the Western District of Texas applied a fee-shifting provision in the Railway Labor Act to award our client legal fees for work done my myself and others primarily in 2017 and 2018. The court approved my then-applicable rate of $345 per hour, based on the estimated average rates in San Antonio, Texas. *Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, No. SA-17-CV-00270-XR, 2021 WL 2444957, at *6 (W.D. Tex. June 15,2021).

**APPENDIX 4**

16.     With respect to my experience, I received my J.D. from Yale Law School in 1990, and an LL.M. (Advocacy) from Georgetown University Law Center in 1992, and have practiced law in Washington, D.C., since 1990. Over the past 30 years my work has focused on the representation of labor organizations and their members primarily in federal litigation at the trial and appellate levels. I have served as the union-side Co-Chair of the American Bar Association Railway and Airline Labor Law Committee and as an elected Steering Committee Member of the D.C. Bar Labor and Employment Law Section. I and others at the firm have served as lead outside counsel to multiple national and international labor organizations in the airline and rail industries, and we have represented APFA at various times going back to the late 1980s.

17.     The other attorneys whose time is reflected on the billing statements presented here are Joseph Guerrieri, Jr. and John Grunert. Mr. Guerrieri (identified as JGJR on the billing statement) began practicing law in 1973, and founded this firm in 1985. His sole work on the matters covered here was to review, revise and provide strategic guidance on the Reply Brief. His billing rate in this matter is also $395 per hour. Mr. Grunert (identified as JJG on the billing statement) has been practicing law since 2013.  His role on the matters covered here involved research for and initial drafting of the motion for sanctions.  His billing rate in this matter is $350.

18.     With regard to the reasonable fees incurred in connection with the filing of the Defendant's motion for sanctions, our billing records reflect a total of 32 attorney hours spent on review of the deposition transcripts and videos, legal research, and drafting the motion papers and the reply, for a total amount billed to APFA of $12,201.25.

19.     For the February 1-2 depositions, the total amount billed for my time in taking those depositions was $3,555.00.

4

**APPENDIX 5**

20.     For the Court-Ordered depositions, the total amount billed for my time in taking those depositions will be $2,666.25.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of March, 2024.

_____
Jeffrey A. Bartos

5

**APPENDIX 6**

# Tab 2



**Stryker Reporting**                                          **Invoice**

Prompt and Precise Litigation Support

1450 Hughes Road
Suite 230
Grapevine TX 76051
Phone: (817) 494-0700      Fax: (817) 494-0778

| Invoice Date | Invoice # |
|---|---|
| Thursday, February 8, 2024 | 9585A |

Kim Ramos
Association of Professional Flight Attendants
1004 West Euless Boulevard
Euless, TX 76040

Phone:   (817) 540-0108      Fax:

| | |
|---|---|
| **Witness:** | Robert Ross |
| **Case:** | Ross vs. APFA, et al. |
| **Venue:** | United States District Court |
| **Case #:** | 4:22-cv-343-Y |
| **Date:** | 2/1/2024 |
| **Start Time:** | 10:53 AM |
| **End Time:** | 4:56 PM |
| **Reporter:** | Angie Mancuso |
| **Claim #:** | |
| **File #:** | 24017A |

| Description | Each | Quan | Total |
|---|---|---|---|
| Original, Videotaped | $6.50 | 164 | $1,066.00 |
| Three-Day Expedite 80% | $5.20 | 164 | $852.80 |
| Live Attendance, Full-Day | $300.00 | 1 | $300.00 |
| Administration Fee | $65.00 | 1 | $65.00 |
| Electronic Format PDF | $35.00 | 1 | $35.00 |
| Exhibits, PDF | $0.50 | 179 | $89.50 |
| Witness Review Original | $50.00 | 1 | $50.00 |

| | |
|---|---|
| **Sub Total** | $2,458.30 |
| **Payments** | $2,458.30 |
| **Balance Due** | $0.00 |

*$1,605.50*

Fed. I.D. # 81-3014194

*Due upon receipt.  Please reference the invoice number on your check.*

**APPENDIX 8**

# Stryker Reporting

**Invoice**

**Prompt and Precise Litigation Support**

1450 Hughes Road
Suite 230
Grapevine TX 76051
Phone: (817) 494-0700          Fax: (817) 494-0778

| Invoice Date | Invoice # |
|---|---|
| Thursday, February 8, 2024 | 9587A |

Kim Ramos
Association of Professional Flight Attendants
1004 West Euless Boulevard
Euless, TX 76040

Phone:   (817) 540-0108       Fax:

| | |
|---|---|
| **Witness:** | Eugenio Vargas |
| **Case:** | Vargas vs APFA, et al. |
| **Venue:** | United States District Court |
| **Case #:** | 4:22-cv-430-Y |
| **Date:** | 2/2/2024 |
| **Start Time:** | 10:03 AM |
| **End Time:** | 11:47 AM |
| **Reporter:** | Angie Mancuso |
| **Claim #:** | |
| **File #:** | 24018A |

| Description | Each | Quan | Total |
|---|---|---|---|
| Live Attendance, Half-Day | $150.00 | 1 | $150.00 |
| Original, Videotaped | $6.50 | 54 | $351.00 |
| ~~Three-Day Expedite 66%~~ | ~~$5.20~~ | ~~54~~ | ~~$280.89~~ |
| Administration Fee | $65.00 | 1 | $65.00 |
| Exhibits, PDF | $0.50 | 24 | $12.00 |
| Electronic Format PDF | $35.00 | 1 | $35.00 |
| Witness Review Original | $50.00 | 1 | $50.00 |

| | |
|---|---|
| **Sub Total** | ~~$943.80~~ |
| **Payments** | ~~$945.89~~ |
| **Balance Due** | $0.00 |

$663.00

Fed. I.D. # 81-3014194

*Due upon receipt. Please reference the invoice number on your check.*

**APPENDIX 9**

# Tab 3



EXHIBIT 2



Elite Video Productions, Inc.
3018 Commerce Street
Dallas, TX 75226
www.EliteVideoProductions.com

# Invoice

**Bill To:**

Kim Ramos
APFA
1004 West Euless Blvd.
Euless, TX 76040

| Invoice # | Invoice Date |
|---|---|
| 41455 | 2/6/2024 |
| **Terms** | **Due Date** |
| Due Upon Receipt | 2/6/2024 |

| EVP Job No. |
|---|
| 2742 |

| Court Reporter | Tech | State Taken | Cause No. | P.O. No. |
|---|---|---|---|---|
| Angie Mancuso (Stryker) | JH | TX | 4:22-cv-343-Y | Ross v APFA |

| Item | Description | Hrs/Qty | Rate | Amount |
|---|---|---|---|---|
| Videotaped | The videotaped deposition of Bob Ross taken in person on 2.1.2024<br>Set Up: 9:00 am<br>Scheduled: 10:00 am<br>On Record: 11:18 am<br>Off Record: 4:56 pm<br>Billed at $215.00 per hour, with a 3-hour minimum. | 8 | 115.00 | 920.00 |
| Conversion | Of raw HD camera .MTS files digitized encoded and compressed to MPEG 1 or MPEG 4 | | 45.00 | 45.00 |
| Administration | Archive HD Camera Master Files / FTP Upload & maintain for 5 years unless otherwise instructed. Administration Fee/Processing/Handling | | 85.00 | 85.00 |
| | ROBERT (BOB) ROSS<br>v.<br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, et al. | | | |

| | |
|---|---|
| **Total** | $1,050.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $1,050.00 |

"If a picture is worth a thousand words,
a video is worth a million."™
Elite Video Productions, Inc. has been serving the legal community since 1989.

Elite Video Productions, Inc. is NOT AFFILIATED with any other "Elite" companies.

Tax ID: 20-0169294

**APPENDIX 11**



**Elite Video Productions, Inc.**
3018 Commerce Street
Dallas, TX 75226
www.EliteVideoProductions.com

# Invoice

**Bill To:**

Kim Ramos
APFA
1004 West Euless Blvd.
Euless, TX 76040

| Invoice # | Invoice Date |
|-----------|--------------|
| 41456 | 2/6/2024 |
| **Terms** | **Due Date** |
| Due Upon Receipt | 2/6/2024 |

| EVP Job No. |
|-------------|
| 2743 |

| Court Reporter | Tech | State Taken | Cause No. | P.O. No. |
|----------------|------|-------------|-----------|----------|
| Angie Mancuso (Stryker) | JH | TX | 4:22-cv-343-Y | Ross v APFA |

| Item | Description | Hrs/Qty | Rate | Amount |
|------|-------------|---------|------|--------|
| Videotaped | Videotaping the deposition of Eugenio Vargas on 2.2.2024<br>Set Up: 9:00 am<br>Scheduled: 10:00 am<br>On Record: 10:03 am<br>Off Record: 11:47 am<br>Billed at $115.00 per hour, with a 3-hour minimum. | 3 | 115.00 | 345.00 |
| Conversion | Of raw HD camera .MTS files digitized encoded and compressed to MPEG 1 or MPEG 4 | | 45.00 | 45.00 |
| Administration | Archive HD Camera Master Files / FTP Upload & maintain for 5 years unless otherwise instructed. Administration Fee/Processing/Handling | | 85.00 | 85.00 |
| | Estimate for videotaping an APFA deposition on 2.2.2024 | | | |
| | EUGENIO VARGAS<br>v.<br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, et al. | | | |

| | |
|---|---|
| **Total** | $475.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $475.00 |

"If a picture is worth a thousand words,
a video is worth a million."™
Elite Video Productions, Inc. has been serving the legal community since 1989.

Elite Video Productions, Inc. is NOT AFFILIATED with any other "Elite" companies.
Tax ID: 20-0169294

**APPENDIX 12**

# Tab 4

**EXHIBIT**

**3**

ALL-STATE LEGAL

## Stryker Reporting

*Final*

**Invoice**

**Prompt and Precise Litigation Support**

1450 Hughes Road
Suite 230
Grapevine TX 76051
Phone: (817) 494-0700       Fax: (817) 494-0778

| Invoice Date | Invoice # |
|---|---|
| Wednesday, March 13, 2024 | 9704A |

Jodi  Czabajszki
Association of Professional Flight Attendants
1004 West Euless Boulevard
Euless, TX 76040

Phone:                    Fax:

| | |
|---|---|
| **Witness:** | Eugenio Vargas, Vol. 2 |
| **Case:** | Vargas vs APFA, et al. |
| **Venue:** | United States District Court |
| **Case #:** | 4:22-cv-430-Y |
| **Date:** | 3/8/2024 |
| **Start Time:** | 9:17 AM |
| **End Time:** | 12:56 PM |
| **Reporter:** | Angie Mancuso |
| **Claim #:** | |
| **File #:** | 24216A |

| Description | Each | Quan | Total |
|---|---|---|---|
| Live Attendance, Full-Day | $280.00 | 1 | $280.00 |
| Original, Videotaped | $6.50 | 77 | $500.50 |
| Administration Fee | $65.00 | 1 | $65.00 |
| Exhibits, PDF | $0.50 | 56 | $28.00 |
| Electronic Format PDF | $35.00 | 1 | $35.00 |
| Exhibits, Copy | $0.50 | 12 | $6.00 |
| Witness Review Original | $50.00 | 1 | $50.00 |

|  |  |
|---|---|
| **Sub Total** | $964.50 |
| **Payments** | $0.00 |
| **Balance Due** | $964.50 |

Fed. I.D. # 81-3014194

*Due upon receipt.  Please reference the Invoice number on your check.*

**APPENDIX 14**

# Tab 5



EXHIBIT
4



Elite Video Productions, Inc.
3018 Commerce Street
Dallas, TX 75226
www.EliteVideoProductions.com

*Final*
# Invoice

**Bill To:**

APFA
ATTN: Jodi Czabajszki
National President's Department
1004 West Euless Blvd.
Euless, TX 76040

| Invoice # | Invoice Date |
|---|---|
| 41551 | 3/13/2024 |
| **Terms** | **Due Date** |
| Due Upon Receipt | 3/13/2024 |

| EVP Job No. |
|---|
| 2763 |

| Court Reporter | Tech | State Taken | Cause No. | P.O. No. |
|---|---|---|---|---|
| Angie Mancuso (Stryker) | JH | TX | 4:22-cv-343-Y | Ross v APFA, Vargas v APFA |

| Item | Description | Hrs/Qty | Rate | Amount |
|---|---|---|---|---|
| Videotaped | Videotaping the deposition of Eugenio Vargas taken in person on 3.8.2024.<br>Set Up: 8:00 am<br>Scheduled: 9:00 am<br>On Record: 9:17 am<br>Off Record: 12:56 pm<br>Billed at $115.00 per hour, with a 3-hour minimum. | 5 | 115.00 | 575.00 |
| Conversion | Of raw HD camera .MTS files digitized encoded and compressed to MPEG 1 or MPEG 4 | | 45.00 | 45.00 |
| Administration | Archive HD Camera Master Files / FTP Upload & maintain for 5 years unless otherwise instructed. Administration Fee/Processing/Handling | | 85.00 | 85.00 |
| | EUGENIO VARGAS<br>v.<br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, et al. | | | |

| | |
|---|---|
| **Total** | $705.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $705.00 |

NOTE: There is a cancellation fee if the deposition is cancelled after 4:00 pm the last business day before the deposition is scheduled to take place.

"If a picture is worth a thousand words, a video is worth a million."™
Elite Video Productions, Inc. has been serving the legal community since 1989.

Elite Video Productions, Inc. is NOT AFFILIATED with any other "Elite" companies.

Tax ID: 20-0169294

**APPENDIX 16**



Elite Video Productions, Inc.
3018 Commerce Street
Dallas, TX 75226
www.EliteVideoProductions.com



**Bill To:**

APFA
ATTN: Jodi Czabajszki
National President's Department
1004 West Euless Blvd.
Euless, TX 76040

| Invoice # | Invoice Date |
|---|---|
| 41561 | 3/15/2024 |
| **Terms** | **Due Date** |
| Due Upon Receipt | 3/15/2024 |
| **EVP Job No.** | |
| 2765 | |

| Court Reporter | Tech | State Taken | Cause No. | P.O. No. |
|---|---|---|---|---|
| Angie Mancuso (Stryker) | JH | TX | 4:22-cv-343-Y | Ross v APFA |

| Item | Description | Hrs/Qty | Rate | Amount |
|---|---|---|---|---|
| Videotaped | Videotaping the deposition of Robert (Bob) Ross taken in person on 3.15.2024.<br>Set Up: 8:00 am<br>Scheduled: 9:00 am<br>On Record: 9:11 am<br>Off Record: 11:41 pm<br>Billed at $115.00 per hour, with a 3-hour minimum. | 4 | 115.00 | 460.00 |
| Conversion | Of raw HD camera .MTS files digitized encoded and compressed to MPEG 1 or MPEG 4 | | 45.00 | 45.00 |
| Administration | Archive HD Camera Master Files / FTP Upload & maintain for 5 years unless otherwise instructed. Administration Fee/Processing/Handling | | 85.00 | 85.00 |
| | ROBERT (BOB) ROSS<br>v.<br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, et al. | | | |

| | |
|---|---|
| **Total** | $590.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $590.00 |

NOTE: There is a cancellation fee if the deposition is cancelled after 4:00 pm the last business day before the deposition is scheduled to take place.

"If a picture is worth a thousand words, a video is worth a million."™
Elite Video Productions, Inc. has been serving the legal community since 1989.

Elite Video Productions, Inc. is NOT AFFILIATED with any other "Elite" companies.

Tax ID: 20-0169294

**APPENDIX 17**

# Tab 6



# SPRINGHILL SUITES®
BY MARRIOTT

### SPRINGHILL SUITES BY MARRIOTT® / DALLAS DFW AIRPORT SOUTH / CENTREPORT
4360 Highway 360, Fort Worth, TX 76155 P 817.545.3270
**springhillsuites.com**

| | |
|---|---|
| Meeting Apfa | Room: FNC |
| 1004 West Euless Blvd | Room Type: HSE |
| Euless TX 76040 | Number of Guests: 0 |
| Apfa | Rate:  $0.00    Clerk: JEH |
| Arrive: 01Feb24    Time: 08:33AM | Depart: 05Feb24    Time: 10:13AM    Folio Number: F0115 |

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 01Feb24 | Meeting Room D | 500.00 | |
| 01Feb24 | State Occupancy Tax | 30.00 | |
| 01Feb24 | Banquet Gratuity | 110.00 | |
| 01Feb24 | Outside Catering | 100.00 | |
| 02Feb24 | Meeting Room D | 500.00 | |
| 02Feb24 | State Occupancy Tax | 30.00 | |
| 02Feb24 | Banquet Gratuity | 110.00 | |
| | **BALANCE:** | **1,380.00** | |

As a Marriott Bonvoy Member, you could have earned points towards your free dream vacation today. Start earning points and Elite status, plus enjoy exclusive member offers. Enroll today at the front desk.

Texas law imposes a margin tax on each company conducting business in Texas. To recover the cost of the margin tax, guest room rates are subject to a "State Cost-Recovery Fee" (of currently 0.525% of the room rate plus applicable state and local taxes). Although the fee is not a government mandated charge, the state law allows this charge to be passed on to the customer.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

The undersigned agrees to make immediate payment upon receipt of statement. In the event such payment is not made within 30 days after receipt of the original statement. It is agreed that the hotel may impose a late payment charge at a rate of 1 1/2% per month [annual rate of 18%], or the maximum allowed by law, on the unpaid balance, and the reasonable cost of collection, including attorney's fees.

To plan your next stay, visit springhillsuites.com.

**APPENDIX 19**

# Tab 7

**Your trip confirmation (DCA - DFW)**

American Airlines <no-reply@info.email.aa.com>
Sun 1/28/2024 3:16 PM
To:Jeff Bartos <jbartos@geclaw.com>



Issued: January 28, 2024

# Your trip confirmation and receipt

We charged $628.20 to your card ending in ⬛⬛⬛ for your ticket purchase.

You can check in via the American app 24 hours before your flight and get your mobile boarding pass.

Confirmation code: **SFPARQ**

**Wednesday, January 31, 2024**

✈ **DCA**                                  AA 1618
Washington Reagan
**10:17 AM**

○ **DFW**                    Seat: **17C**
Dallas/Fort Worth           Class: **Economy (V)**
**1:15 PM**                  Meals: **Refreshment**

**Friday, February 2, 2024**

[ **Manage your trip** ]

Confirmation code: **SFPARQ**

✈ **DFW**                                          AA 1360   

Dallas/Fort Worth

**8:43 PM**

○ **DCA**                                          Seat:  **17C**

Washington Reagan                          Class: **Economy (V)**

**12:30 AM**                                        Meals: **Refreshment**

⚠ Flight arrives Saturday, February 3, 2024

> **Manage your trip**

# Earn 50,000 bonus miles

Plus great travel benefits. Terms Apply.

Learn more



## Your purchase

**Jeff Bartos - AAdvantage® #: 1K7****

New ticket (0012111633629)                              $628.20
[$556.28 + Taxes & carrier-imposed fees
$71.92]

**Total cost**                                               **$628.20**

## Your payment

MasterCard (ending⬛⬛⬛⬛⬛)                           $628.20

**Total paid**                                               **$628.20**

Bag information

**APPENDIX 22**

# Tab 8



# SPRINGHILL SUITES®
### BY MARRIOTT

SPRINGHILL SUITES BY MARRIOTT® / DALLAS DFW AIRPORT SOUTH / CENTREPORT
4360 Highway 360, Fort Worth, TX 76155 P 817.545.3270
**springhillsuites.com**

| | | |
|---|---|---|
| **Jeff Bartos** | Room: 422 | |
| Xx | Room Type: KSTE | |
| Xx TX 00000 | Number of Guests: 1 | |
| Apfa | Rate: $139.00 | Clerk: VIM |

Arrive: 31Jan24    Time: 01:04PM      Depart: 02Feb24    Time: 12:34PM        Folio Number: 59234

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 31Jan24 | Room Charge | 139.00 | |
| 31Jan24 | State Occupancy Tax | 8.34 | |
| 31Jan24 | City Tax | 12.51 | |
| 31Jan24 | State Cost - Recovery Fee | 1.20 | |
| 01Feb24 | Room Charge | 139.00 | |
| 01Feb24 | State Occupancy Tax | 8.34 | |
| 01Feb24 | City Tax | 12.51 | |
| 01Feb24 | State Cost - Recovery Fee | 1.20 | |

**THIS IS A PARTIAL LISTING OF GUEST CHARGES.  SUBTOTAL:     322.10**

As a Marriott Bonvoy Member, you could have earned points towards your free dream vacation today. Start earning points and Elite status, plus enjoy exclusive member offers. Enroll today at the front desk.

Texas law imposes a margin tax on each company conducting business in Texas. To recover the cost of the margin tax, guest room rates are subject to a "State Cost-Recovery Fee" (of currently 0.525% of the room rate plus applicable state and local taxes). Although the fee is not a government mandated charge, the state law allows this charge to be passed on to the customer.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

The undersigned agrees to make immediate payment upon receipt of statement. In the event such payment is not made within 30 days after receipt of the original statement. It is agreed that the hotel may impose a late payment charge at a rate of 1 1/2% per month [annual rate of 18%], or the maximum allowed by law, on the unpaid balance, and the reasonable cost of collection, including attorney's fees.
To plan your next stay, visit springhillsuites.com.

**APPENDIX 24**

# Tab 9



# GUERRIERI, BARTOS & ROMA, PC

1900 M Street, NW, Suite 700
Washington, DC 20036
Phone: (202) 624-7400
Fed Tax ID #52-1403822

Date: 03/21/2024

**RE: Ross & Vargas - 10051**

| Date | Details | Indiv | Time | Amount |
|------|---------|-------|------|--------|
| 02/01/2024 | Conduct Ross deposition. | JAB | 7.00 | $2,765.00 |
| 02/02/2024 | Conduct Vargas deposition. | JAB | 2.00 | $790.00 |
| 02/05/2024 | Research and analyze N.D. Texas and Fifth Circuit caselaw on sanctions under FRCP 30 and 37. | JJG | 1.75 | $612.50 |
| 02/06/2024 | Review motion for sanctions;review key segments of both deposition audio and video. | JAB | 1.50 | $592.50 |
| 02/06/2024 | Analyze N.D. Texas caselaw re FRCP 30 and 37 sanctions and draft notes. | JJG | 1.75 | $612.50 |
| 02/07/2024 | Analyze N.D. Texas caselaw on FRCP 30 and 37 sanctions and draft memorandum. | JJG | 1.50 | $525.00 |
| 02/09/2024 | Analyze transcripts and case law and draft motion for sanctions; teleconference with plaintiffs' counsel; emails regarding same; office conference regarding sanctions brief. | JAB | 5.75 | $2,271.25 |
| 02/12/2024 | Research Federal Rule and caselaw, and draft Motion for Sanctions against Plaintiffs for deposition misconduct; complete first draft of Motion and Brief for Rules 30 and 37 sanctions. | JJG | 3.50 | $1,225.00 |
| 02/14/2024 | Revise Motion and Brief for Sanctions; input edits from co-counsel; perform further revisions to sanctions motion; review FRCP 32 and caselaw re depositions. | JJG | 5.25 | $1,837.50 |

**APPENDIX 26**

| 02/15/2024 | Review and revise motion for sanctions; office conference regarding same. | JAB | 3.75 | $1,481.25 |
| 02/16/2024 | Finalize sanction motion. | JAB | 1.25 | $493.75 |
| 02/27/2024 | Review Plaintiff's opposition to motion for sanctions. | JAB | 0.50 | $197.50 |
| 02/28/2024 | Begin work on reply brief. | JAB | 2.25 | $888.75 |
| 02/29/2024 | Revise reply brief regarding sanctions. | JAB | 1.50 | $592.50 |
| 02/29/2024 | Review and revise reply brief; office conference regarding same. | JGJR | 1.75 | $691.25 |
| 03/08/2024 | Complete Vargas deposition. | JAB | 4.00 | $1,580.00 |
| 03/15/2024 | Complete Ross deposition. | JAB | 2.75 | $1,086.25 |

| Timekeeper | Time | Rate | Amount |
|---|---|---|---|
| Jeffrey A. Bartos | 32.25 | $395.00 | $12,738.75 |
| John J. Grunert | 13.75 | $350.00 | $4,812.50 |
| Joseph Guerrieri Jr. | 1.75 | $395.00 | $691.25 |
| | | **Total** | **$18,242.50** |

## Statement of Account

| Outstanding Balance | New Charges | Payments Received | Total Amount Due |
|---|---|---|---|
| ( $0.00 + | $18,242.50 ) - ( | $0.00 ) = | $18,242.50 |

**APPENDIX 27**

# Tab 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ROBERT (BOB) ROSS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:22-cv-343-Y |
| ASSOCIATION OF PROFESSIONAL | § | (Consolidated with 4:22-CV-430-Y) |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs, | § | Judge Terry R. Means |
| | § | |
| AND | § | [Referred to United States Magistrate |
| | § | Judge Jeffrey L. Cureton] |
| EUGENIO VARGAS, | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, *et al.*, | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

**<u>DECLARATION OF JAMES D. SANFORD</u>**

I make the following declaration under 28 U.S.C. § 1746, subject to the

penalty for perjury:

1.      My name is James ("Jim") D. Sanford. I reside and work in Dallas,

Dallas County, Texas. I am fully competent to make this declaration, have

personal knowledge of the facts stated herein, and could and would testify to

them if called up to do so.

2.      I am a partner in the law firm of Gillespie Sanford LLP. I make

this declaration in support of the APFA Defendants' claim for fees and

expenses, as ordered by the Court on March 1, 2024 (Dkt. 219).

**APPENDIX 29**

EDUCATION, EXPERTISE, AND QUALIFICATIONS

3.      *I primarily practice labor and employment law*. Since 2005, I have largely represented individual employees and groups of employees in labor and employment matters. My practice focuses on minimum wage and overtime claims under the Fair Labor Standards Act (FLSA), discrimination claims under state and federal civil rights laws (e.g., Title VII, ADEA, ADA), family-medical leave and pregnancy-discrimination claims, sexual harassment complaints and workplace investigations, whistleblower and retaliation claims for people who speak up about unlawful working conditions, and claims arising out of employment contracts. I also represent and counsel unions, including unions and individual members in arbitrations, system boards of adjustment, trial boards, grievance proceedings, and litigation. My practice primarily focuses on litigation and most of it is in north Texas, although I have been co-counsel on several large FLSA collective actions in federal district courts in other federal circuits. I have been Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization since December 2011.

4.      *I am member in good standing of the State Bar of Texas and its Labor and Employment and Litigation Sections.* The State Bar of Texas licensed me in November 2005. In addition to the State Bar of Texas, I am admitted to practice in the United States Courts of Appeal for the Fifth and Ninth Circuits and district courts in the Eastern and Northern Districts of Texas. I am in good standing in each of the courts to which I am admitted. In

addition, I am a member of the Dallas Bar Association (DBA) and its Labor and Employment and Trial Skills sections. I serve on the DBA's Labor & Employment Section Council as well. I am also a member of the State Bar of Texas's Labor and Employment Law Section and its Litigation Section. In addition, I have been Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization since December 2011 (renewed in 2016 and 2021 for five-year periods). According to the websites for the State Bar of Texas[1] and the Texas Board of Legal Specialization[2], fewer than two-thirds of one percent of active Texas lawyers hold this certification. In addition, I became a Fellow of the Texas Bar Foundation in January 2022.

5.     ***I am active in several labor and employment law associations.*** I am a member of the National Employment Lawyers Association (NELA) and its local affiliate, DFW-NELA. I am also a member of the Texas Employment Lawyers Association (TELA), a former member of its Board of Directors, and a current member of its *Amicus* Committee. I am active in each of these organizations and regularly attend their meetings,

---

[1] OUR MISSION, STATE BAR OF TEXAS ("With more than 100,000 active members ….)(available at: https://www.texasbar.com/Content/NavigationMenu/AboutUs/OurMission/default.htm (last visited on Mar. 20, 2024).

[2] As of March 2024, the Texas Board of Legal Specialization stated that 657 Texas lawyers are board-certified in this specialty area. Labor and Employment Law, Texas Board of Legal Specialization (available at: https://www.tbls.org/specialtyarea/LB

(last visited Mar. 20, 2024).

**Declaration of James D. Sanford** - Page 3 of 11

conferences, and annual conventions where I interact with the best plaintiffs-side employment lawyers in Texas and around the country and stay current on issues in the field.

6. ***I present at CLEs and author articles on employment law.***

From time to time, I am asked to speak or write on employment-law and litigation topics. Most recently I presented on settlement agreements in a presentation called "Settlement Agreements: The Emptiness of Forms" at the 32d Annual TexasBarCLE Advanced Employment Law course in Dallas, Texas (Jan. 11-12, 2024).

Earlier presentations include:

- "The Road Not Taken: Major and Minor Disputes Under the RLA" at the International Conference of Pilot Unions (Arlington, Texas, Oct. 11, 2023) with my partner, Joe Gillespie.

- "Water into Wine: Summary Judgment Evidence into Trial Evidence" at the TexasBarCLE Advanced Employment Law course in Dallas, Texas (Jan. 12-13, 2023).

- "The RLA 'Year' in Review (or at least since we last met)" at the International Conference of Pilot Unions (Arlington, Texas, Oct. 11, 2022) with my partner Joe Gillespie.

- "Enviable Remedies and Rightful Places: Remedies in Employment Cases" at the State Bar of Texas Labor & Employment Law Section's 32d Annual Labor and Employment Law Institute program in San Antonio, Texas (Aug. 26, 2022).

- "The Five Ws (and One H) of Workplace Discrimination and Retaliation Law" at the TexasBarCLE Employment Law 101 course in Austin, Texas (April 20, 2022)(co-presented with Andrew S. Golub of DOW GOLUB REMELS & GILBREATH).

**Declaration of James D. Sanford - Page 4 of 11**

**APPENDIX 32**

- "Basics of Discrimination and Retaliation" at the TexasBar CLE Employment Law 101 course (virtual Jan. 13-15, 2021)(co-presented with C.B. Burns of KEMP SMITH).

- "The Road Not Taken: Major and Minor Disputes Under the RLA" at the third annual International Conference of Pilot Unions (Plano, Texas, September 30, 2019).

- "Corroborating Evidence: He-said, She-said… [and X, Y, and Z said]" at the Dallas Bar Association Labor & Employment Section (Dallas, Texas, August 19, 2019).

- "Corroborating Evidence: He-said, She-said… [and X, Y, and Z said]" at the 26th Annual Labor and Employment Law Conference hosted by The University of Texas School of Law (UT Law CLE, Austin, Texas, May 9-10, 2019).

7.    ***My peers have recognized my employment-law practice.*** *Super Lawyers* magazine rated me with the distinction of being a "Rising Star" from 2009 to 2012 and as a "Super Lawyer" from 2014 to 2021 in the Employment Litigation category. This publication includes a peer-review component in its selection process and selects no more than five percent of Texas lawyers.

8.    ***I received an excellent legal education.*** I obtained a Bachelor of Arts in History and Economics from Emory University in Atlanta, Georgia. I then worked for the U.S. Department of Justice—Antitrust Division as a paralegal on merger-review and litigation teams. I am a 2005 graduate (with honors) of the University of Texas at Austin School of Law. During law school, I was a staff member of the TEXAS INTERNATIONAL LAW JOURNAL and participant in the Capital Punishment and Immigration Law clinical programs. I was also pleased to receive a summer fellowship as a UT

Democracy Fellow at the Congress in Lima, Peru (2003), and then as an intern in the Prosecutor's Office at the International Criminal Tribunal for Rwanda in Arusha, Tanzania (2004).

After law school, I continued my legal education through Continuing Legal Education and trial-advocacy course work. I am a graduate of the Keenan Trial Institute.

9. ***I have been a partner at law firms dedicated to representing employees and have experience running this type of practice.*** The stalwart Dallas labor and employment firm of GILLESPIE, ROZEN & WATSKY, P.C. ("GRW") hired me out of law school in 2005, and I spent the first eight years of my career there, becoming a partner in the firm. In 2013, Joe Gillespie and I founded GILLESPIE SANFORD LLP ("GS LLP"). At various times during my time there, GRW had between 7 and 11 attorneys. GS LLP has been a four-person team (three lawyers and one team-member) since early 2014 (with all lawyers Board Certified in Labor and Employment Law). I am familiar with the challenges of maintaining a practice dedicated to individual workers in employment matters and that skilled worker-side attorneys—especially those who represent low-wage employees on a purely contingency basis—are relatively rare.

10. I have litigated labor and employment cases in Texas federal and state courts and in the Fifth Circuit for the past 18-plus years. A sampling of the federal cases in which I have appeared as counsel of record include:

<u>Federal Appellate Courts</u>:   *Southwest Airlines Pilots Association v. Southwest Airlines Co.*, No. 23-11065 (5th Cir.)(pending); *Black v. SettlePou, P.C.*, 732 F.3d 492 (5th Cir. 2013); *Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013); *Roberts v. McAfee, Inc.*, 660 F.3d 1156 (9th Cir. 2011).

<u>Federal District Courts</u>:   *Albrecht v. Hotel Reservation Service, Inc.*, No. 3:21-cv-1123-L (N.D. Texas); *Balabon v. CR Operating, LLC, d/b/a Canyon Ranch, et al.*, No. 4:21-cv-252 (D. Arizona); *Black v. SettlePou, P.C.*, No. 3:10-cv-1418 (N.D. Texas); *Davis v. SMU*, No. 3:13-cv-01419 (N.D. Texas); *Doornbos, et al. v. Pilot Travel Centers, LLC, et al.*, No. 3:05-cv-428 (E.D. Tennessee); *Dunn v. Southwest Airlines Co.*, 3:21-cv-01393 (N.D. Texas); *Guzman, et al. v. GS Fire Protection, LLC, et al.*, No. 4:19-cv-00214 (E.D. Texas); *Johnson v. City of Dallas*, No. 3:07-CV-2132-N (N.D. Texas); *Kaufman v. Metromedia Steakhouses Company, LP, et al.*, No. 3:06-cv-2192-G; *Lakhani v. Horizon Travel, LLC, et al.*, 3:14-cv-01192-BH (N.D. Texas); *Matlock v. Conduent Commercial Solutions, LLC, et al.*, 4:21-CV-00476 (E.D. Texas); *McNutt v. Dallas Baptist Univ.*, No. 3:22-cv-678 (N.D. Texas); *Miller v. Raytheon Co.*, No. 3:09-cv-00440-O (N.D. Texas); *Oyler v. Texas A&M Univ.-Commerce*, No. 3:13-cv-03139-P (N.D. Texas); *Sidhu v. Methodist Hosp. of Dallas d/b/a Methodist Health System, et al.*, No. 3:24-cv-290-X (N.D. Texas)(pending determination); *Southwest Airlines Pilots Association v. Southwest Airlines Co.*, No. 3:21-cv-02608 (N.D. Texas); *Tapp v. Mead Johnson & Co. d/b/a Mead Johnson Nutritionals, et al.*, No. 3:06-CV-1580-M (N.D. Texas); *Van Elder v.*

*Amalgamated Transit Union, Local #1338, et al.*, No. 3:13-CV-2909-BN (N.D. Texas); *Vega, et al. v. Contract Cleaning Maintenance, Inc., et al.*, No. 03-C-9130 (N.D. Illinois); *Vogt, et al. v. Texas Instruments, Inc.*, No. 3:05-CV-2244-L (N.D. Texas).

I am familiar with the costs and tasks necessary to prosecute labor employment litigation. I am also familiar with the amount of time and costs needed to investigate employment claims, prepare them for filing, pursue them through the administrative process before government agencies, and then through litigation and appeal.

11.     ***I have counseled dozens (perhaps hundreds) of individuals in employment matters.*** In addition to civil litigation, a significant part of my practice entails counseling individual-employee clients and union clients on their workplace legal issues. This includes advice on how various labor and employment laws apply to their given circumstances, developing and executing strategy for negotiating employment contracts and separation agreements, and developing and executing strategy for winding down and then separating employment.

### THE ROSS AND VARGAS MATTERS

12.     The Association of Professional Flight Attendants retained my firm in May 2023 to be local counsel and provide other support in this matter. Since joining the team, among other things, I have assisted with preparing and filing pleadings, including the sanctions motion at issue here (Dkt. 205).

**APPENDIX 36**

## REASONABLE HOURLY RATE AND CUSTOMARY FEE

13.     I am familiar with local hourly rates in the Northern District of Texas. Based on my training and experience, I am familiar with the local legal community standards of skill and practice required in handling labor and employment matters. Moreover, I am familiar with the legal standards for determining attorney's fees under federal law. *E.g., Perdue v. Kenny A.*, 559 U.S. 542 (2010); *Black v. SettlePou, P.C.*, 732 F.3d 492 (5th Cir. 2013)(discussing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

14.     The most recent awarded rate for my work by a federal court was $450/hour in a default judgment in an FLSA overtime case. *See* Judgment, *Guzman, et al. v. GS Fire Protection, LLC, et al.* (No. 4:19-cv-00214)(E.D. Tex. Jan. 8, 2020)(Mazzant, J.)[Dkt. 12]. This was a case where the defendants failed to answer, where there were no other legal substantive filings between the complaint and the motion for default judgment, and where I did only 45 hours of legal work. Adjusting for inflation from the year that the last court-awarded rate (January 2020) and using the Consumer Price Index as compiled by the United States Bureau for Labor Statistics, produces an adjusted rate over $540/hour.[3] Since that January 2020 award, I have continued to improve my skills and knowledge of trial work. I graduated from the Keenan Trial

---

[3] "CPI Inflation Calculator, U.S. Bureau of Labor Statistics (available at: available at: https://www.bls.gov/data/inflation_calculator.htm)(last visited Mar. 20, 2024).

Institute, was recertified by the Texas Board of Legal Specialization, and obtained a plaintiff's verdict in the district court of Fort Bend County, Texas, in September 2021. *See Whitney v. CVR Energy, Inc.*, Cause No. 18-DCV-254380 (400th Judicial District Court, Fort Bend County).

15.     I am familiar with hourly rates awarded attorneys in labor and employment cases in north Texas, including the Northern and Eastern Districts of Texas (as well as in other parts of Texas) in recent years. I have reviewed numerous court awards for fees on sanctions motions and on fee-shifting claims. Based on that review and my understanding of the legal market for labor and employment work, it is my opinion that the rates sought for my time ($350/hour) and for lead counsel Jeff Bartos's time ($395/hour) are well within the range—in fact are quite low—for attorneys with our level of experience, skill, and knowledge for federal litigation. Indeed, the Honorable Ed Kinkeade found that a higher rate ($375/hr) was reasonable for my time over a decade ago. *See Black v. SettlePou P.C.*, No. 3:10-CV-1418-K (Doc. 133, at 8)(N.D. Texas Aug. 24, 2012).

## TIME SPENT ON THE MOTION FOR SANCTIONS

16.     I keep contemporaneous records of the legal work that I perform for the APFA defendants. I enter this information into my firm's timekeeping software at or about the time the work is performed. Attachment A to this declaration is a true and correct copy of time entries from our timekeeping software filtered to show only the work performed on the sanctions motion. My

**Declaration of James D. Sanford - Page 10 of 11**

**APPENDIX 38**

firm billed these amounts to APFA on our regular billing cycle. APFA has paid for this time under our engagement agreement. These records show that I spent almost five hours supporting the motion for sanctions (Dkt. 205). They show also that I "no charged" ("n/c") much of this time in exercising billing judgment. My firm billed the APFA for 2.85 hours of my time on this motion. *See El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 762 (Tex. 2012)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)("In the private sector, 'billing judgment' is an important component of fee setting.")).

*     *     *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: _____March 21___, 2024

_____
James D. Sanford

# Tab 11

# ATTACHMENT A



Hal K. Gillespie*
Joseph H. Gillespie*
James D. Sanford*
*Board Certified in Labor and Employment Law -
Texas Board of Legal Specialization

**Jim Sanford activities:  the APFA Defendants'
Motion for Sanctions (Dkt. 205)**

| Date | Hours | Activity category | UTBMS task code | Description | User |
|------|-------|-------------------|-----------------|-------------|------|
| 02/13/2024 | 1.00 | A103 Draft/revise | L210 Pleadings | Review and edit draft Motion for Sanctions and respond with comments (1.5 n/c .5). | Jim Sanford |
| 02/16/2024 | 1.35 | A103 Draft/revise | L210 Pleadings | Tel con w/Jeff B. re: finalizing brief (.1). Draft proposed order re: Motion for Sanctions (.5). Review, revise, finalize and file Motion for Sanctions, Appendix, and Proposed Order (1.25 - n/c .5). Tel con to Clerk's office and review administrative procedures re: process for manually filing video (.5 n/c). | Jim Sanford |
| 02/19/2024 | 0.5 | A103 Draft/revise | L210 Pleadings | Draft, finalize, and file notice of manual filing. Draft and send letter to clerk re: manual filing of Vargas video depo. Draft, finalize, and send court and opposing counsel copies. (2 n/c 1.5). | Jim Sanford |
| Total | 2.85 | Lodestar | = 2.85 * $350 = **$997.50** | | |

# Tab 12

2023 WL 8790284
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

BOBBY GOLDSTEIN
PRODUCTIONS, INC., Plaintiff,

v.

Thomas L. HABEEB and ATVD, LLC d/b/a
American Television Distribution, Defendants.

Case No. 3:21-cv-01924-G
|
Signed November 27, 2023

**Attorneys and Law Firms**

Jeffrey R. Bragalone, Daniel Fletcher Olejko, Mark Douglass, Paul Campbell Stevenson, Bragalone Olejko Saad PC, Dallas, TX, for Plaintiff.

Jay Kurtis Gray, Andrew A. Bergman, BergmanGray, LLP, Dallas, TX, Joyce W. Lindauer, Joyce W. Lindauer Attorney PLLC, Dallas, TX, for Defendant Thomas L. Habeeb.

Jay Kurtis Gray, Andrew A. Bergman, BergmanGray, LLP, Dallas, TX, for Defendant ATVD LLC.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

REBECCA RUTHERFORD, UNITED STATES MAGISTRATE JUDGE

**\*1** This lawsuit arises out of Defendants Thomas L. Habeeb and ATVD, LLC d/b/a American Television Distribution's (ATVD) use of Plaintiff Bobby Goldstein Productions, Inc.'s (BGP) copyrighted material from 26 episodes of *Cheaters Uncensored*, a reality television show featuring couples with one partner who is committing adultery, or "cheating," on the other. *See generally* Compl. (ECF No. 1); Jt. Stip. (ECF No. 89).

Following a three-day trial in October 2022, a jury found (i) ATVD directly infringed BGP's copyrighted material; (ii) none of ATVD's defenses to direct copyright infringement applied; and (iii) BGP was entitled to $390,000 in statutory

damages. *See* Verdict (ECF No. 109). Thereafter, the District Court granted BGP's motion for entry of judgment—holding, among other things, that Defendants ATVD and Habeeb "are each independently liable for the statutory damages award, pre-judgment interest, post-judgment interest, full costs, and reasonable attorney's fees." J. (ECF No. 125). The Court directed BGP to file a motion for attorney's fees, attaching an affidavit explaining the reasonable nature of the fees sought, in accordance with Federal Rule of Civil Procedure 54(d)(2). *Id.* BGP complied and filed its Motion for Attorney's Fees (ECF No. 129) under Rule 54 and 17 U.S.C. § 505, seeking an award in the amount of $961,225.14. After resolving some bankruptcy-related delays, Defendants filed a response (ECF No. 140). BGP filed a reply (ECF No. 143). The issues are fully-briefed, and the Motion is ripe for determination.

For the following reasons, the Court should GRANT BGP's motion—in part—and order Defendants to pay BGP $865,101.94 in attorney's fees.

I.

Section 505 of the Copyright Act provides that a district court "may ... award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. And while "recovery of attorney's fees is not automatic" in the Fifth Circuit, "attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008). Relevant factors that inform the court's discretion on whether to award fees include: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 539 n.19 (1994)). "[A] finding of willful infringement is not necessary to support an award of attorneys' fees ...." *EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 626 (N.D. Tex. 2008).

Here, the District Court previously determined that BGP is entitled to reasonable attorney's fees under § 505 as the prevailing party. *See* Mem. Op & Order 36 (ECF No. 124) ("Because BGP is the prevailing party and the defendants do not dispute that the court should award BGP reasonable costs and attorney's fees ... BGP is entitled to both reasonable costs and attorney's fees."). This determination is supported by

**APPENDIX 44**

consideration of the relevant factors which demonstrate that BGP's lawsuit was not frivolous or objectively unreasonable, and BGP acted properly to protect its copyrighted material after it discovered infringement of dozens of episodes of *Cheaters Uncensored* on the internet. By contrast, Defendants unnecessarily prolonged the litigation by advancing frivolous legal arguments and factual contentions and employing tactics that significantly increased the work needed to litigate this matter (and the attorney's fees expended by BGP's counsel) in an attempt to avoid or delay responsibility for their infringement. For example, Defendants filed a motion to compel arbitration purportedly based on a settlement agreement between Robert N. Goldstein and Defendant Habeeb. *See* Mot. (ECF No. 21). However, the Court denied the motion because Defendants failed to demonstrate the arbitration clause was enforceable against BGP—a non-signatory to the settlement agreement—and that, even if it was enforceable against BGP, the parties' dispute did not fall within the scope of the agreement to arbitrate. Mem. Op & Order 8-21 (ECF No. 40). Defendants also failed to cooperate in discovery; they initially denied uploading any of the infringing videos to ATVD's internet accounts, denied knowing about one of ATVD's accounts, failed to preserve copies of all the infringing videos uploaded to ATVD's internet accounts, and claimed that they could not get access to key information about the uploaded videos. This conduct necessitated BGP's filing a motion to compel discovery, *see* Mot. (ECF No. 27), which the Court granted in its entirety following a hearing, *see* Order (ECF No. 43). And after BGP obtained documents and testimony proving that persons working for ATVD created the internet accounts at issue and uploaded the infringing videos, Defendants conceded that they created those accounts and uploaded the videos. Ultimately, Defendants stipulated that BGP had met its burden of proof with respect to the underlying elements required for showing that ATVD directly infringed BGP's copyrights in 26 *Cheaters Uncensored* episodes by posting videos to its internet accounts. Jt. Stip. 1 (ECF No. 89). Given these circumstances, awarding a reasonable attorney's fee to BGP would advance considerations of compensation and deterrence.

## II.

**\*2** The Court utilizes the "lodestar" method in calculating the attorney's fee award. *See Heidtman v. Cnty. of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999) (citations omitted). The lodestar is calculated by multiplying the reasonable number

of hours spent on the case by an attorney by an appropriate hourly rate. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir. 2012). There is a strong presumption that the lodestar amount is reasonable. *See Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010). Because the lodestar is presumed reasonable, it should be modified only in exceptional circumstances. *See Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993).

## A.

First, the Court considers whether the hourly rates charged by BGP's counsel are reasonable. Rates are reasonable when they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees. *SortiumUSA, LLC v. Hunger,* 2015 WL 179025, at \*5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.) (*citing Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.,* 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. v. DerMargosian,* 2014 WL 1632181, at \*2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorney's fees)).

Here, BGP was proficiently represented by attorneys from the firm of Bragalone Olejko Saad PC, including name partners Jeffrey R. Bragalone and Daniel F. Olejko. Bragalone is a member of the Texas State Bar and is licensed to practice in the United States District Court for the Northern District of Texas. App., Bragalone Aff. ¶ 16 (ECF No. 130). He has been practicing law for 35 years, with an emphasis on patent and other intellectual property litigation. *Id.* Olejko is a registered patent attorney and has been practicing complex commercial litigation with an emphasis on patent litigation and appellate practice for 15 years. *Id.* ¶ 17. The two partners were assisted by several associate attorneys and paralegals, each with an appropriate level of experience to handle the issues in this case. *See id.* ¶¶ 18-21. Bragalone charged an hourly rate of $787.50 per hour, and Olejko charged $618.75 per hour. Associates charged hourly rates between $337.50 and $412.50, and the one paralegal who billed in this case charged $243.75 per hour. *Id.* at 116-17. Based on the Court's knowledge of rates charged for legal services by Dallas attorneys with the level of skill, competence, and ability of BGP's counsel, and its experience in setting attorney's fees in

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   2

**APPENDIX 45**

other cases, the Court determines that the hourly rates charged by BGP's counsel are reasonable.

To support the claimed hourly rates, BGP cites to the American Intellectual Property Law Association's 2021 Report of the Economic Survey, which notes average hourly rates for equity partners in Texas ranging from $339 to $900 and average hourly rates for partner-track attorneys ranging from $354 to $593. Mot. 8 (ECF No. 129). BGP also cites several cases decided in the Northern District, including *Thermotek, Inc. v. Orthoflex, Inc.*, where hourly rates up to $650 for attorneys and up to $175 for paralegals were approved, and *Hoiffman v. L & M Arts*, where the hourly rate of $460 was found to be reasonable and other hourly rates were adjusted to between $601 and $810. *Id.* (citing *Thermotek, Inc. v. Orthoflex, Inc.*, 2016 WL 6330429 (N.D. Tex. Oct. 27, 2016) and *Hoffman v. L & M Arts*, 2015 WL 3999171, at *2–3 (N.D. Tex. July 1, 2015)).

**\*3** Ultimately, the Court finds BGP's reliance on the AIPLA survey and the Northern District cases persuasive. Bragalone's hourly rate—$787.50—and Olejko's hourly rate—$618.75—fall within the range of average rates indicated in the AIPLA's survey. *See Ford Global Techs., LLC v. New World Int'l, Inc.*, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019) (relying on AIPLA statistics in reviewing rates charged by attorneys in patent infringement action). And while the rates fall within the high end of the survey's $339 to $900 range, BGP's counsel provides a satisfactory justification; this litigation was more complicated than the typical copyright infringement case, because it involved a complex and uncertain issue concerning the application of the Texas Tax Code. The Court acknowledged this case's distinctively challenging nature several times in its's Memorandum Opinion and Order granting BGP's motion for entry of judgment. *See, e.g.*, Mem. Op. & Order 9-10 (ECF No. 124) ("It is unclear, however, whether section 171.255 applies to judgment-debts based exclusively on non-negligent torts, as '[o]nly a few courts have addressed whether section 171.255 applies to contractual strangers with only tort claims being asserted[.]' ... Furthermore, the courts that have addressed the issue do not agree."); Mem. Op. & Order 10-11 (ECF No. 124) (characterizing the issues in the case as "unique[ ]," in part because the question of "[w]hether a strict liability tort is a 'debt' under section 171.255 is an issue of first impression").

Additionally, Defendants do not present persuasive arguments that the charged hourly rates are unreasonable. As

BGP points out in its Reply (ECF No. 143), "Defendants do not address the 2021 AIPLA Report or the various cases from this District that have approved rates similar to those charged by BGP's counsel. Instead, Defendants cite outdated statistics from the Texas State Bar from 2015 and 2019, including old statistics related to the median hourly rate for *all attorneys* in the Dallas-Fort Worth-Arlington metropolitan area." Reply 7. But reliance on these general statistics is of limited relevance to the Court's consideration of what constitutes a reasonable attorney's fee in the specialty area of copyright infringement.

B.

Next, the Court considers the reasonableness of the number of hours billed. A party seeking attorney's fees bears the burden of establishing that the number of hours expended were reasonable with adequately recorded time records as evidentiary support. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court uses this time as the benchmark, but should exclude any time that is excessive, duplicative, unnecessary, or not adequately documented. *See id.*

Here, BGP's counsel billed a total of 1,778.9 hours. This includes: 1) 365.2 hours billed by Bragalone; 2) 712.5 hours billed by Olejko; 3) 385.8 hours collectively billed by associates; and 4) 199.2 hours billed by a paralegal. *See* App., Bragalone Decl. 116-17 (ECF No. 130). Defendants generally object that the number of hours are excessive, duplicative, and inadequately documented due to block billing.

The Court overrules any general objection to excessive hours billed. As discussed above, BGP's counsel incurred significant time due to Defendants' litigation tactics, such as filing the unsuccessful motion to compel and unreasonably resisting discovery before ultimately stipulating that BGP had met its burden of proof with respect to the underlying elements required for showing that ATVD directly infringed BGP's copyrights.

Defendants specifically object to BGP billing 13.7 hours to draft a discovery deficiency letter in connection to a motion to compel. Resp. 4 (ECF No. 140). Defendants contend 13.7 hours is an excessive and unnecessary amount of time to draft a letter that was only "two and a half pages." *Id.* BGP responds that its counsel did not spend the entirety of 13.7 hours to simply write the letter. Reply 3 (ECF No. 143). Instead, the 13.7 billed hours include time spent communicating with BGP about the relevant issues and devising a strategy,

**APPENDIX 46**

researching the legal issues associated with the motion to compel, and reviewing prior discovery relevant to the motion. *Id.* at 4-5. BGP's contention is supported by the billing records it provides. In the entries addressing time spent on the deficiency letter, BGP specifically itemizes the necessary tasks completed before the responsible associate could start to write the "two and half page" letter. *See* App. 28-30 (ECF No. 130). Based on these records and the Court's own expertise about the time required to draft an adequately researched and persuasive deficiency letter, the Court rejects Defendants' objection to these 13.7 hours.

**\*4** Defendants specifically object to BGP billing 72 hours for "legal research for expert report." Resp. 4-5 (ECF No. 140). Defendants contend that 72 hours is excessive and unnecessary because Defendants did not challenge Plaintiff's expert report. BGP responds that while the litigation team spent 72 hours working on the expert report, it ultimately wrote off 41.2 of those hours as "no charge." Reply 3 (ECF No. 143); *see also* App. 13-20 (ECF No. 130). Additionally, BGP argues that the fact that Defendants did not challenge the expert report does not render the time spent on the report unnecessary or excessive. On the contrary, it indicates that the hours were time well spent in ensuring the report was immune from valid evidentiary objections. Again, BGP's records support BGP's contentions. The billing records show the time entries Defendants take issue with all occurred prior to when the report was finalized and served. *See* App. 13-20 (ECF No. 130). BGP spent time on the report to create the best report possible, rather than answering objections afterwards. The Court therefore overrules Defendants' objection to the 72 hours.

Defendants specifically object to the time billed during trial. Defendants contend that the hours billed by associates during trial are excessive and unnecessary, since only Bragalone and Olejko "actually participated in the trial." Resp. 5 (ECF No. 140). Defendants' objection implies that only those attorneys speaking directly to the judge or jury during a trial can be considered to be participating in a way that deserves compensation. But review of the billing records proves otherwise; the associates performed necessary behind-the-scenes work, such as reviewing juror questionnaires, drafting presentation slides for use during expert testimony and closing argument, and reviewing the jury charge. Accordingly, and given that the complexity of the case warrants the assistance of associate attorneys during trial, the Court overrules Defendants' objection to the associates' billed hours during trial.

Finally, Defendants object to one specific billing entry, from October 25, 2022, which records 19.8 hours connected to the following description:

> Meeting with J. Bragalone and M. Douglass regarding Habeeb cross examination outline; prepare for trial; attend first day of trial; research ATVD website on Wayback machine and obtain printouts for use in Habeeb cross-examination; revise B. Goldstein direct examination outline, including adding questions about request for accounting, cease and desist letter, request for information regarding downloads, information provided by Defendants in response to request, PX-13 video, downloads from YouTube and streaming platforms, reasons for downloading videos from YouTube, evidence of downloads from YouTube, reasons for caring if others download videos, artistic control of content on YouTube and Dailymotion, questions about not picking up the phone, questions about response to call, statutory damages, questions about damages from first copyright case, clarification questions about prior day's testimony; correspondence with B. Goldstein regarding updates to direct examination outline; review and reduce M. Hays deposition clip and correspondence with A. Greenberg regarding same; correspondence with B. Zuniga and team regarding juror questionnaires; correspondence with P. Stevenson and M. Douglass regarding edits from M. Einhorn to his presentation slides.

App. 103 (ECF No. 130).

The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D.Tex. Feb.11, 2011) (Fitzwater, C.J.) (citation omitted). "Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Wherley v. Schellsmidt*, 2014 WL 3513028, at *4 (N.D. Tex. July 16, 2014). The Court agrees with Defendants that this entry is an example of block billing.[1] And the Court's own review of the billing records uncovered a few more entries utilizing block billing, particularly as BGP accounted for their work during trial. In these entries, BGP combines long descriptions of multiple tasks all attributed to one relatively substantial period of time. *See* App. 103-05 (ECF No. 130) (including

**APPENDIX 47**

block-billed entries for 16.80 hours, 19.80 hours, 18.80 hours, and 18.40 hours).

[1]     Defendants do not point the Court to any other specific entry in which BGP utilized block billing. Rather, Defendants contend that the October 25 entry is "just one example of the many bulk descriptions attributable to bulk time." But it should be noted that "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obliged *sua sponte* to sift through fee records searching for vague entries or block-billing." *Wherley* 2014 WL 3513028, at *4 n. 6; *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains").

**\*5** However, the Court finds that when looking at the billing records as a whole, BGP's counsel does not utilize block billing for every entry. Rather, most of the entries are itemized, specific, and even when associated with a long list of multiple tasks, for relatively short periods of time. *See Thermotek, Inc. v. Orthoflex, Inc.*, 2016 WL 6330429, at *10 (N.D. Tex. Oct. 27, 2016) ("Entries between four to six hours are frequently substantiated with descriptions of the different types of work performed during that period.").

In addition to block billing, the Court finds that BGP's billing records include some duplicative and vague entries warranting reduction. Vague entries are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005), aff'd, 2007 WL 3085028 (5th Cir. Oct. 23, 2007) (citation omitted). Examples such as: "revise memorandum," "review pleadings," "review documents," and "correspondence" are sufficiently vague that a court could accept or reject them in a fee application. *SCA Promotions, Inc. v. Yahoo! Inc.*, 2016 WL 8223206, at *11 (N.D. Tex. Nov. 21, 2016), report and recommendation adopted, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017), aff'd, 2017 WL 11689639 (5th Cir. Nov. 7, 2017). Some entries billed by BGP's counsel are vague and warrant exclusion. *See, e.g.*, App., Bragalone Decl. (ECF No. 130) (entry on 02/23/2021 billing for "Correspondence from client regarding emails related to case," entry for 08/02/2021 billing for "Review complaint for filing," entry on 08/17/21 for "Email with D. Olejko regarding filing complaint."). The billing records also include some duplicative charges. *See, e.g.*, *Id.* (entries by both Olejko and Bragalone on 09/21/2022 charging for correspondence and review and entries by

both Olejko and Bragalone on 05/07/2021, 05/10/2021, and 06/02/2021 charging for review of the same email).

On balance, BGP's billing records are consistent with what can reasonably be expected, presenting "detailed time records of the hours expended by each lawyer indicating the nature of the particular work done by each." *Thermotek*, 2016 WL 6330429, at *9. At the same time, as described above, the records include some entries that should be excluded for being duplicative or vague. Accordingly, an overall percentage reduction to the requested award amount—but a relatively low percentage reduction—is warranted. *See, e.g.*, *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *9–11 (N.D.Tex. Sept.21, 2004) (Lindsay, J.) (applying percentage reduction because of block billing); *Thermotek, Inc.*, 2016 WL 6330429, at *11 (applying a threshold reduction of 10% to account for block billing and for entries that "are duplicative, excessive, or vaguely recorded.").

Here, to account for entries that constitute block billing, vague entries, and duplicative entries, the Court should apply a 10% reduction to the lodestar figure. *See Barrow*, at *5 ("The reduction [to address block billing] usually ranges between 10% to 30%."); *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) ("[M]any courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%."); *Franciscan All., Inc. v. Becerra*, 2023 WL 4462049, at *6 (N.D. Tex. July 11, 2023) (O'Connor, J.) ("Upon review of the entries deemed to be block billed by Defendants, the Court finds that the entries in question do include examples of block billing. Therefore, the Court shall apply a five percent reduction in the total lodestar figure to account for the block billing."). A greater reduction is not warranted because BGP already exercised billing discretion in writing off some of its time.

**\*6** Thus, the Court calculates the lodestar figure in this case to be $865,101.94. This figure represents a 10% reduction from the figure calculated by multiplying the number of hours billed by BGP's attorneys by the reasonable hourly rate of each of BGP's attorneys.[2]

[2]     The following table shows the fee total prior to the 10% reduction:

|  | Hourly Rate | Number of Hours | Hourly Rate × Number of Hours |
|---|---|---|---|
| Bragalone | $787.50 | 365.2 | $287,595.0 |

**APPENDIX 48**

| Olejko | $618.75 | 712.5 | $440,859.4 |
|---|---|---|---|
| Associate | $375 | 69.1 | $25,912.5 |
| Associate | $375 | 142.7 | $53,512.5 |
| Associate | $375 | 165.4 | $62,025.0 |
| Associate | $337.50 | 116.2 | $39,217.5 |
| Associate | $412.50 | 8.6 | $3,547.5 |
| Paralegal | $243.75 | 199.2 | $48,555.0 |
| | | **Total** | $961,224.38 |

C.

Although there is a strong presumption that the asserted lodestar figure is reasonable, the Court must consider whether it should be adjusted upward or downward based on the *Johnson* Factors.[3] *See La. Power & Light Co.*, 50 F.3d at 324, 329; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457. Furthermore, the lodestar amount may not be adjusted due to a *Johnson* factor that was already considered during the initial calculation. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). Here, the Court finds no adjustment to the lodestar figure is necessary. The Court considered those factors that might warrant a downward adjustment in the Court's analysis for calculating the lodestar figure. For example, the Court considered the first three factors—(1) the time and labor required; (2) the novelty and difficulty of the legal issues; and (3) the skill required to properly perform the legal service —when determining the reasonableness of the hourly rates charged.

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the desirability of the case; (11) the duration and nature of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19.

III.

The Court should **GRANT** in part Plaintiff BGP's Motion for Attorney's Fees (ECF No. 129) and order Defendants to pay BGP reasonable attorney's fees in the amount of $865,101.94.

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation (FCR) will be served on all parties in the manner provided by law. Any party who objects to any part of this FCR must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the FCR where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## All Citations

Slip Copy, 2023 WL 8790284

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**APPENDIX 49**

# Tab 13

2023 WL 9102228
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

SILVES H., Plaintiff,

v.

Kilolo KIJAKAZI, Acting Commissioner
of Social Security, Defendant.

Case No. 3:22-CV-286-K-BK
|
Signed December 18, 2023

**Attorneys and Law Firms**

Ronald D. Honig, Law Office of Ronald D. Honig, Coppell, TX, for Plaintiff.

Whitney Livengood Thorp, Social Security Administration, Baltimore, MD, for Defendant.

**Findings, Conclusions and Recommendation of the United States Magistrate Judge**

RENEE HARRIS TOLIVER, UNITED STATES MAGISTRATE JUDGE

**\*1** Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Plaintiff's *Petition to Obtain Approval of a Fee for Representing a Social Security Claimant*, Doc. 26, is before the undersigned United States magistrate judge for findings and a recommended disposition. As detailed here, the petition should be **GRANTED**.

**I. Background**
In February 2022, Plaintiff filed a complaint seeking reversal of the decision of the Commissioner of Social Security denying his claims for disability insurance benefits under the Social Security Act. Doc. 1. Upon the recommendation of the undersigned magistrate judge, the Court reversed the Commissioner's decision and remanded the case for further proceedings. Doc. 16; Doc. 17; Doc. 18. The Court then awarded Plaintiff's counsel attorneys' fees in the amount of $3,936.02 under the Equal Access to Justice Act ("EAJA"). Doc. 25. In September 2023, the Commissioner found

Plaintiff disabled and awarded past due benefits, retroactive to November 2018, totaling $143,060.90. Doc. 26-2 at 5.

Consistent with counsel's contingency agreement with Plaintiff, the Social Security Administration notified Plaintiff that it had withheld $35,765.23 from the awarded past due benefits, representing 25 percent, as potential payment for legal fees. Doc. 26-2 at 4. Counsel now requests that the Court award him $17,500.00 in attorneys' fees, amounting to 12.2 percent of the past due benefits awarded Plaintiff, as permitted by section 406(b) of the Social Security Act. Doc. 26, *passim*.

**II. Applicable Law**
Under 42 U.S.C. § 406(b), whenever a court renders a judgment favorable to a Social Security claimant, the court may award the claimant's attorney up to 25 percent of the total of the past-due benefits to which the claimant is found to be entitled. Attorneys who successfully represent Social Security benefits claimants in court may receive fees under both the EAJA and section 406(b), "but ... must refund to the claimant the amount of the smaller fee." *Jackson v. Astrue*, 705 F.3d 527, 529 (5th Cir. 2013) (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002)) (some alterations omitted). Section 406(b) requires the court to conduct an independent review of such contingency fee agreements to ensure that the attorney for the successful claimant has met their burden of demonstrating that the fee sought is reasonable. *Gisbrecht*, 535 U.S. at 807.

If the benefits resulting from a contingency fee agreement are large compared to the time counsel spent on the case, the fee should be adjusted downward to avoid a windfall for counsel. *Id.* at 808. The Court of Appeals for the Fifth Circuit has not prescribed an exhaustive list of factors to consider in determining whether a fee award in this context represents a windfall that would warrant a downward adjustment. *Jeter v. Astrue*, 622 F.3d 371, 381 (5th Cir. 2010). At the same time, it has implicitly approved several factors considered by lower courts, including "risk of loss in the representation, experience of the attorney, percentage of the past-due benefits the fee constitutes, value of the case to a claimant, degree of difficulty, and whether the client consents to the requested fee." *Id.* at 382 (citation omitted).

**III. Analysis**
**\*2** The relevant factors favor approving counsel's petition. First, courts have consistently recognized that there is a substantial risk of loss in civil actions for social security

**APPENDIX 51**

benefits. *See Cullar v. Saul*, No. 7:19-CV-00027-O-BP, No. 2021 WL 295842, at *2 (N.D. Tex. Jan. 8, 2021) (Ray, J.) ("[T]he Fifth Circuit and district courts in this circuit have acknowledged the high risk of loss inherent in Social Security appeals and the fact that a particular claimant's attorney often is not compensated at all for Social Security work in federal court.") (quoting *Hartz v. Astrue*, No. 08-4566, 2012 WL 4471846, at *6 (E.D. La. Sept. 12, 2012)), *adopted by* 2021 WL 289270 (N.D. Tex. Jan. 28, 2021). Counsel in this case faced just such a risk because Plaintiff had lost at all levels of the administrative proceedings.

Additionally, counsel's fee agreement with Plaintiff calls for an award in counsel's favor of 25 percent of Plaintiff's retroactive benefits. Doc. 26-3 at 2-3. There is no suggestion that any fraud or overreaching occurred in this matter as Plaintiff signed the fee agreement, and counsel acted promptly in litigating the case and achieving a significant victory for his client. *Gisbrecht*, 535 U.S. at 807-08 (noting that the reviewing court should consider whether the attorney was responsible for any delay and the size of the award achieved in relation to the time invested); *Jeter*, 622 F.3d at 382 (stating that courts may consider the fact that the client consented to the fee arrangement in assessing whether the fee is reasonable).

Further, counsel brought to bear more than 40 years of experience in Social Security disability law, dating back to 1975. Doc. 26 at 13-14; *Jeter*, 622 F.3d at 382 (noting that courts will consider attorney experience and skill in determining the reasonableness of the fee). Counsel is a member in good standing of many circuit, district, and state courts and served as a staff attorney for the Social Security Administration for 12 years after graduating from law school. Doc. 26 at 13. And counsel provided effective and efficient representation in this case, preparing a 14-page opening brief with multiple sub-issues as well as a reply brief. Doc. 13; Doc. 15; *Jeter*, 622 F.3d at 382 (noting that courts may consider the degree of difficulty of the case in assessing the fee's reasonableness).

Lastly, the size of counsel's requested reward, $17,500.00, divided by the 16.35 hours that he expended on the case, leads to an hourly rate of $1,070.33, which is more than twice the hourly rate for attorneys of similar experience—$463.00. Doc. 26 at 11-12 (counsel's hourly billing records); Doc. 26 at 13-15 (counsel's affidavit); Doc. 26-4 at 4-5 (Texas Lawyer, The State of Rates (Oct. 1, 2012) (noting that the median average billable rate for an equity partner in Dallas/

Fort Worth was $463.00 in 2012). Nevertheless, the risk involved in litigating a contingency case of this nature should not be overlooked. *See Jeter*, 622 F.3d at 379-80 (holding that courts can consider the lodestar calculation as one measure in determining whether the contingency fee is reasonable and not a windfall). Counsel's effective hourly rate is also within the range of that previously approved in other social security cases. *See, e.g., Eric B. v. Comm'r of Soc. Sec.*, No. 3:17-CV-0083-G-BK, 2019 WL 7546622, at *2 (N.D. Tex. Dec. 18, 2019) (Toliver, J.) (finding effective hourly rate of $937.50 reasonable), *adopted by* 2020 WL 109856 (N.D. Tex. Jan. 8, 2020); *Richardson v. Colvin*, No. 4:15-CV-0879-BL, 2018 WL 1324951, *2 (N.D. Tex. Mar. 13, 2018) (Frost, J.) (same); *Sabourin v. Colvin*, No. 3:11-CV-2109-M, 2014 WL 3949506, at *1-2 (N.D. Tex. Aug. 12, 2014) (Lynn, J.) (approving de facto hourly rate of $1,245.55).

**\*3** Upon consideration of all the relevant factors, the Court concludes that counsel's hours expended and proposed hourly rate of $1,070.33 are reasonable.

## IV. Conclusion

For the foregoing reasons, Plaintiff's *Petition to Obtain Approval of a Fee for Representing a Social Security Claimant*, Doc. 26, should be **GRANTED**, and counsel should be awarded attorneys' fees in the amount of $17,500.00 pursuant to 42 U.S.C. § 406(b).[1]

[1]   Because the Court previously awarded counsel a fee of $3,936.02 under the EAJA, Doc. 25, he must refund the smaller fee award to Plaintiff. *Gisbrecht*, 535 U.S. at 796. Counsel represents that he will promptly refund the lesser amount to Plaintiff. Doc. 25 at 12.

**SO RECOMMENDED** on December 18, 2023.

## Instructions for Service and Notice of Right to Appeal/Object

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is

**APPENDIX 52**

found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**All Citations**

Slip Copy, 2023 WL 9102228

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 53