**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |
| | § | **Case No. 4:22-CV-343-Y** |
| **AND** | § | |
| | § | **Consolidated with** |
| **EUGENIO VARGAS** | § | **Case No. 4:22-CV-430-Y** |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.** | § | |

---

**APFA DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**ON ALL CLAIMS AND COUNTERCLAIMS**

JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (pro hac vice)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 241133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: cbroderick@apfa.org

*Counsel for APFA*

**TABLE OF CONTENTS**

IDENTIFICATION OF LIVE PLEADINGS ...................................................................1

SUMMARY ....................................................................................................................1

    A.    Plaintiffs' claims ..............................................................................1

    B.    APFA's Counterclaims, 29 U.S.C. § 501(a) ..........................................3

PRELIMINARY STATEMENT .......................................................................................4

STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................5

    A.    APFA Constitution And The Union's Article VII Procedures. .............5

    B.    Plaintiff Ross Exits Union Office Early; Subsequent Administration Discovers Overpayments to Ross Administration ...................................7

    C.    Two Rank-And-File Members File Article VII Charges Against Plaintiffs ............................................................................................11

    D.    Arbitrator Finds Mr. Ross Guilty Of Violating APFA Constitution and Policy Manual And Misappropriating Tens Of Thousands Of Dollars In Union Funds.......................................................................12

    E.    Arbitrator Armendariz Finds Mr. Vargas Misappropriated Union Funds In Violation of APFA Constitution and Policy Manual.............20

PROCEDURAL HISTORY ...........................................................................................25

SUMMARY JUDGMENT STANDARD ........................................................................26

ARGUMENT ................................................................................................................27

    I.    THE APFA DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS AS A MATTER OF LAW. ...................27

        A.    The Arbitrator's Awards Are Consistent With The LMRDA ..................27

        B.    Plaintiffs Cannot Show That Any Protected Speech Was The "But For" Cause Of The Arbitrator's Decisions.......................................32

        C.    Plaintiff's Other Claims Fail As A Matter of Law. ...................34

            1.    Breach of Constitution and Fiduciary Duty ...............................34

2.   Mr. Ross' Fair Credit Reporting Act Claim................................................36

3.   Mr. Ross' Remaining State Law Claims Are Also Without Merit..............................................................................................................37

a.   Breach of Employment Contract.. ................................................37

b.   Intentional Interference with Contract. .........................................39

c.   Defamation.....................................................................................40

II.   APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIDUCIARY DUTY COUNTERCLAIMS. ..........................................................42

A.   Ross and Vargas Expended and Received Funds That Were Not Properly Authorized, Were for their Personal Benefit, and In Violation of the APFA Constitution and Policy Manual. ...............................................................................................43

B.   By Spending and Receiving Funds That Were Not Permitted Under APFA's Governing Documents, Were Not Properly Authorized and Were Not For the Benefit of the Union, Ross and Vargas Breached Their Federal Fiduciary Duty ................................45

CONCLUSION.....................................................................................................................48

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                          **Page(s)**

*Adams-Lundy v. APFA*,
   731 F.2d 1154 (5th Cir. 1984) ........................................................................44, 45

*Adams-Lundy v. APFA*,
   844 F.2d 245 (5th Cir. 1988) ........................................................................43, 47

*Adams-Lundy v. APFA*,
   792 F.2d 1368 (5th Cir. 1986) ........................................................35, 45, 46, 47

*Alford v. Dean Witter Reynolds, Inc.*,
   975 F.2d 1161 (5th Cir. 1992) ........................................................................3, 38

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................26, 27

*Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*,
   394 U.S. 369 (1969)..............................................................................................35

*Black v. Ryder/P.I.E. Nationwide, Inc.*,
   970 F.2d 1461 (6th Cir. 1992) ............................................................................29

*Boilermakers v. Hardeman*,
   401 U.S. 233 (1971)..................................................................................1, 29, 30

*Brink v. DaLesio*,
   667 F.2d 420 (4th Cir. 1981) ..............................................................................47

*Burke v. Int'l Bhd. of Boilermakers, Iron Shipbuilders,*
*Blacksmiths, Forgers & Helpers*,
   302 F. Supp. 1345 (N.D. Cal. 1967), *aff'd*, 417 F.2d 1063 (9th Cir. 1969) ............................32

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................27

*Cir. City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)..............................................................................................38

*Complete Auto Transit, Inc. v. Reis*,
   451 U.S. 401 (1981)..............................................................................................35

*Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*,
   209 F.Supp.2d 731 (N.D. Ohio 2002),................................................................28

iv

*Cuba v. Pylant*,
    814 F.3d 701 (5th Cir. 2016) ...................................................................40

*Curtis v. Int'l All. of Theatrical Stage Emps.*,
    687 F.2d 1024 (7th Cir. 1982) .................................................................29

*Matter of Est. of Poe*,
    648 S.W.3d 277 (Tex. 2022).....................................................................36

*Fechtelkotter v. Air Line Pilots Ass'n, Int'l*,
    693 F.2d 899 (9th Cir. 1982) ...................................................................35

*Fingar v. Seaboard Air Line R. Co.*,
    277 F.2d 698 (5th Cir. 1960) ...................................................................44

*Frye v. United Steelworkers of Am.*,
    767 F.2d 1216 (7th Cir. 1985) .................................................................32

*Gross v. FBL Financial Services, Inc.*,
    557 U.S. 167 (2009)..................................................................................32

*Halsell v. Local Union No. 5, Bricklayers & Allied Craftsmen*,
    530 F. Supp. 803 (N.D. Tex. 1982) .........................................................29

*Hayes v. Bhd. of Ry. Airline Clerks/Allied Servs. Div.*,
    727 F.3d 1383 (5th Cir. 1984) ..............................................................2, 35

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)..................................................................3, 40

*Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*,
    598 F.3d 454 (8th Cir. 2010) ...................................................................31

*Hudson v. Am. Fed. of Gov't Emps.*,
    630 F.Supp.3d 214 (D.D.C. 2022)...........................................................32

*Int'l Union of Operating Eng'rs, Local 150 v. Ward*,
    563 F.3d 276 (7th Cir. 2009) .........................................................27, 42, 45

*Johnston v. Dexel*,
    No. CV H-16-3215, 2017 WL 11612500 (S.D. Tex. Aug. 18, 2017) .....................36

*Jones v. Blume*,
    196 S.W.3d 440 (Tex.App.–Dallas 2006, pet. denied).........................3, 36

*Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*,
    937 F. Supp. 2d 93 (D. Me. 2013) ......................................................30, 32

*Kirk v. Transp. Workers Union of Am., AFL-CIO,*
    934 F. Supp. 775 (S.D. Tex. 1995) ..................................................................3, 40

*Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Trust v. Horne, L.L.P.,*
    853 F.3d 804 (5th Cir. 2017) ..................................................................38

*Lewis v. AFSCME,*
    407 F.2d 1185 (3d Cir. 1969)..................................................................29

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994) ..................................................................27

*Martin v. Local 556, Transport. Workers Union of Am.,*
    Civ. No. 3:14-cv-0500-D, 2014 WL 4358480 (N.D. Tex., Sept. 3, 2014) ..................28, 30, 31

*Martinez v. Am. Fed'n of Gov't Emps.,*
    980 F.2d 1039 (5th Cir. 1993) ..................................................................1

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)..................................................................27

*McCarthy v. IAM,*
    Case No. 21-1673, 2021 WL 5766569 (3d Cir. Dec. 6, 2021) ..................................29, 33

*McDonald v. Oliver,*
    525 F.2d 1217 (5th Cir. 1976) ..................................................................45

*McGovern v. New Orleans Clerks & Checkers,*
    343 F. Supp. 351 (E.D. La.), *aff'd,* 463 F.2d 423 (5th Cir. 1972) ..........................35

*Morrisey v. Curran,*
    650 F.2d 1267 (2d Cir. 1981)..................................................................45, 47, 48

*Newell v. Int'l Bhd. of Elec. Workers,*
    789 F.2d 1186 (5th Cir. 1986) ..................................................................45

*In re OCA, Inc.,*
    552 F.3d 413 (5th Cir. 2008) ..................................................................3, 38

*Ray v. Young,*
    753 F.2d 386 (5th Cir. 1985) ..................................................................4, 45, 46, 48

*Ritz v. O'Donnell,*
    413 F. Supp. 1365 (D.D.C. 1976) ..................................................................33

*Ritz v. O'Donnell,*
    566 F.2d 731 (D.C. Cir. 1977) ..................................................................28

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*,
 605 F.2d 1228 (2d Cir. 1979) ................................................. 31

*Schrader v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 20*,
 656 F. Supp. 1487 (N.D. Ind. 1987) ....................................... 28

*Serafinn v. Local 722, Int'l Bhd. of Teamsters*,
 597 F.3d 908 (7th Cir. 2010) ....................................... 2, 32, 33, 34

*Smith Int'l, Inc. v. Egle Grp., LLC*,
 490 F.3d 380 (5th Cir. 2007) ................................................. 2

*Stine v. Stewart*,
 80 S.W.3d 586 (Tex. 2002) ................................................... 39

*Synder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers*,
 175 F.3d 680 (9th Cir. 1999) ................................................. 34

*U.S. v. Int'l Bhd. of Teamsters*,
 652 F. Supp. 2d 447 (S.D.N.Y. 2009) ..................................... 48

*U.S. v Teamsters*,
 826 F. Supp. 749 (S.D.N.Y. 1993) ......................................... 28

*United States ex rel King v. Solvay Pharms., Inc.*,
 871 F.3d 318 (5th Cir. 2017) ............................................... 32

*United States v. Int'l Bhd. of Teamsters, Chauffeurs,*
 *Warehousemen & Helpers of Am., AFL-CIO*,
 905 F.2d 610 (2d Cir. 1990) ................................................ 44

*Ware v. Bank of Am., Nat'l Ass'n*,
 No. 3:21-CV-2824-M-BH, 2023 WL 6071179 (N.D. Tex. Aug. 28, 2023) .......... 37

*Warren v. Fed. Nat'l Mortg. Ass'n*,
 932 F.3d 378 (5th Cir. 2019) ................................................. 3

*Wirtz v. Glass Bottle Blowers Ass'n*,
 389 U.S. 463 (1968) .......................................................... 45

*Yager v. Carey*,
 910 F. Supp. 704 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998) ............... 31

*Young v. Equifax Credit Info. Servs., Inc.*,
 294 F.3d 631 (5th Cir. 2002) ............................................ 2, 37

## STATUTES

UNITED STATES CODE

Fair Credit Reporting Act
    15 U.S.C. § 1681 ............................................................................................2, 37

Norris-La Guarida Act
    29 U.S.C. § 101 ...................................................................................................4

Labor-Management Relations Act
    29 U.S.C. § 142 .................................................................................................35
    29 U.S.C. § 152 .................................................................................................35
    29 U.S.C. § 185 .................................................................................................35

Labor-Management Reporting & Disclosure Act
    29 U.S.C. § 411 ............................................................................1, 28, 33, 39
    29 U.S.C. § 412 ...................................................................................................1
    29 U.S.C. § 431 ...........................................................................................11, 39
    29 U.S.C. § 501 ...................................................................................... *passim*
    29 U.S.C. § 529 .............................................................................................2, 32

TEXAS CIVIL PRACTICES & REMEDIES CODE
    § 16.051 ...........................................................................................................39

## RULES

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 56(a) ........................................................................................................26

## IDENTIFICATION OF LIVE PLEADINGS

The live pleadings in *Ross v. APFA,* Case No. 4:22-CV-343 are: (1) Mr. Ross' First Amended Complaint, Doc. 75 (Feb. 22, 2023); (2) the APFA Defendants' Amended Answer and Counterclaims, Doc. 134 (Oct. 18, 2023); (3) the Answer of McGaughey, Reber and Associates, Inc., Doc. 23 (June 28, 2022); and (4) Mr. Ross' Answer to the Amended Counterclaim, Doc. 147 (Oct. 31, 2023).  The live pleadings in *Vargas v. APFA*, Case No. 4:22-CV-430 are (1) Mr. Vargas' Amended Complaint, Doc. 133 (Feb. 22, 2023); (2) the APFA Defendants' Amended Answer and Counterclaims, Doc. 132 (Oct. 28, 2023); and (3) Mr. Vargas' Answer to the Amended Counterclaim, Doc. 143 (Oct. 31, 2023).

## SUMMARY

The elements of each claim or defense as to which summary judgment is sought are as follows:

**A**.     Plaintiffs' claims:

**29 U.S.C. § 412 (Due Process).**  A union member may bring a civil action against his labor organization "if he has rights secured by the LMRDA that have been violated."  *Martinez v. Am. Fed'n of Gov't Emps.*, 980 F.2d 1039, 1041 (5th Cir. 1993).  Plaintiffs assert that their rights under 29 U.S.C. § 411(a)(5)(C) were violated; such a claim requires a showing that they were "fined … or otherwise disciplined" without being "afforded a full and fair hearing."   If the minimal due process requirements of the LMRDA are met, the results of the proceeding are reviewed only to determine if there was "some evidence" to support the outcome. *Boilermakers v. Hardeman*, 401 U.S. 233, 246-47 (1971).

1

**29 U.S.C. § 529 (Retaliation).**  A retaliation claim under 29 U.S.C. § 529 requires showing that a labor organization has "fine[d] … or otherwise discipline[d]" a "member[] for exercising any right to which he is entitled under the provisions of this chapter."  *Ibid.*  Plaintiffs have the burden of proving that the exercise of a protected right "was not merely a motivating factor, but a necessary condition or a 'but-for' cause" of the discipline. *Serafinn v. Local 722, Int'l Bhd. of Teamsters*, 597 F.3d 908, 914 (7th Cir. 2010).

**Fair Credit Reporting Act.**  The FCRA provides that "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A). However, there is no private right of action under that section. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).

**Breach of Constitution.**  Plaintiffs' claim for breach of the APFA Constitution appears to be made under Texas law.  Assuming this is the case, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).   A union member seeking to sue for breach of union constitution must exhaust mandatory internal remedies. *Hayes v. Bhd. of Ry. Airline Clerks/Allied Servs. Div.*, 727 F.3d 1383, 1387 (5th Cir. 1984).

**Breach of Fiduciary Duty.**   The elements of a breach of fiduciary duty claim under Texas law are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in

injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.–Dallas 2006, pet. denied).

**Breach of Contract.**   The elements of breach of contract are as set forth above.  When a contract contains a mandatory arbitration provision, federal law requires that any dispute be resolved in arbitration rather than litigation.   *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992).  In addition, a contract provision is unenforceable if it "obligates the parties to perform an action that is forbidden by … law." *In re OCA, Inc*., 552 F.3d 413, 422 (5th Cir. 2008).

**Intentional Interference with Contract.**  Under Texas law, the elements of an intentional interference with contract claim are that a person who was not a party to the contract "wrongly induces another contracting party to breach the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995).

**Defamation.**  "The elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement …; and (4) damages, unless the statement constitutes defamation per se." *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019). Regarding the third element (degree of fault), in the context of an internal labor union dispute, Plaintiffs must prove that, when the statement was made, the Defendant knew that the statement was false, or acted with reckless disregard for the truth.  *Kirk v. Transp. Workers Union of Am., AFL-CIO*, 934 F. Supp. 775, 789 (S.D. Tex. 1995).

**B**.   **APFA's Counterclaims, 29 U.S.C. § 501(a).**  A claim for breach of fiduciary duty by a union officer requires showing that the officer failed to "hold its money … solely for the benefit of the organization and its members" or to manage or expend the union's funds "in accordance with its constitution and bylaws and any resolutions of [its] governing bodies."  29

U.S.C. § 501(a).  Making or receiving expenditures which are not properly authorized, or are for the personal benefit of the union officer, violates the federal fiduciary duty.  *Ray v. Young*, 753 F.2d 386, 389-90 (5th Cir. 1985).

## PRELIMINARY STATEMENT

This lawsuit arises out of two internal Union arbitrations addressing charges of financial misconduct by Plaintiffs Robert ("Bob") Ross and Eugenio Vargas during their terms as APFA National Officers.  Plaintiffs seek to overturn binding arbitration awards finding them guilty of violating the Union's Constitution and Policy Manual to misappropriate tens of thousands of dollars in Union funds.  In its counterclaims, APFA seeks recovery of these same ill-gotten gains.

We respectfully submit that Plaintiffs cannot show facts which would warrant a trial on any of their claims and that APFA Defendants are entitled to judgment as a matter of law.   Both Plaintiffs claim that the arbitration awards are invalid under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(5).  As we show below, the neutral third-party arbitrator's decisions were based on far more than the minimal "some evidence" standard required to uphold such action and Plaintiffs' procedural challenges are insufficient to overturn a final and binding arbitration award under the LMRDA.

Plaintiffs also claim that they were improperly targeted in retaliation for exercising their free speech.  This argument also fails.  Plaintiffs were disciplined by a third-party neutral after full and fair hearings and do not -- and cannot -- impugn the motives of the Arbitrator who decided against them.  Nor can Plaintiffs show that retaliation for any protected activity was the "but for" cause of the arbitration awards.

Plaintiffs raise a laundry list of other equally unmeritorious claims against the APFA Defendants, including breach of the Union's Constitution, breach of fiduciary duty, violation of

the Fair Credit Reporting Act, breach of employment contract, intentional interference with contract, and defamation.  These claims all fail as a matter of law.

Based on the undisputed material facts, APFA also seeks summary judgment on its fiduciary duty counterclaims against both Plaintiffs under Section 501(a) of the LMRDA, 29 U.S.C. § 501(a), seeking recovery for the Union and its members the funds improperly received by the Plaintiffs in accordance with the Arbitrator's final and binding determinations.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

The APFA is a labor organization representing flight attendants employed by American Airlines.  The APFA's four National Officers (President, Secretary, Treasurer and Vice-President) oversee the day-to-day affairs of the Union.  The Union also has an Executive Committee comprised of the National Officers and five Ad Hoc Members, and a Board of Directors comprised of the National Officers and each of the ten APFA Base Presidents.   Appx. 508 (Hedrick Decl.) ¶¶ 3-5.

### A.  APFA Constitution And The Union's Article VII Procedures.

The APFA is governed by its Constitution and Policy Manual.  Appx. 2 (Black Decl. ¶ 3) . All members and officers of the APFA agree to be bound by its Constitution.  *See* Appx. 14 ( APFA Const., Art. II, § 2).

The APFA's procedures for processing internal Union charges are outlined in Article VII of the Constitution, and Section 17 of the Policy Manual.  Article VII addresses internal "Hearing and Disciplinary Procedures" applicable to any APFA member or officer for engaging in enumerated misconduct, including financial misconduct and for "[w]illful violation of an express

---

[1] The undisputed facts herein are set forth in the Declarations of Joshua Black, Julie Hedrick, Erik Harris, Hal O'Neil, and Jeffrey A. Bartos, and their exhibits, all in the accompanying Appendix together with copies of unpublished decisions referenced in this Memorandum.

Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee."  Appx. 2 (Black Decl.) ¶ 4 and Appx. 30 (APFA Const., Art. VII, § 1); *see also* Appx. 62 (Policy Manual).

Upon filing of charges, the Executive Committee reviews the charges for timeliness, specificity and validity.  Charges are "invalid" under the Constitution, for example, if they "address conduct protected by th[e] Constitution and/or by law (including the LMRDA Bill of Rights)." Appx. 3 (Black Decl.) ¶ 5 and Appx. 32 (Constitution, Art. VII, § 3.D).  If the charges are found to be timely, specific and valid, the matter is then referred to the Article VII Arbitrator.  *Id.*  The Article VII Arbitrator is appointed by the Union's Board of Directors and must be a respected third-party with "experience as a neutral in adjudicating internal labor organization disputes, and who has no other prior or current involvement with the APFA." Appx. 33 (Const. Art. VII, § 5).  The accused may move the Arbitrator to dismiss the charge as invalid, untimely, or for failure to state a cognizable claim, among other grounds. Appx. 33-34 (Const. Art VII § 6.C-F).  A party can also move for summary dismissal before the hearing.  Appx. 63 (Policy Manual).

Hearings take place after at least 30 days' prior notice.  Appx. 3 (Black Decl.) ¶ 7.  The Arbitrator "shall be the judge of the relevancy and materiality of the evidence offered" and "conformity with the legal rules of evidence" is not required.   Initial costs of Article VII proceedings are borne by the APFA, but if charges are dismissed, costs can be levied against the accuser and if charges are sustained, a fine may be levied against the accused.  Appx. 4-5 (Black Decl.) ¶ 7; Appx. 34 (APFA Const., Art. VII, §7.C).

The Article VII Arbitrator "shall have power to resolve all charges referred" to him and "[t]he decision of the Article VII Arbitrator shall be *final and binding* upon the accused and the accuser."  Appx. 4 (Black Decl.) ¶ 8; Appx. 33-34 (APFA Const., Art. VII, § 6.A, H) (emphasis

added).   The Union is not a party to disputes between members and plays no substantive role in the Article VII process.  Appx. 4 (Black Decl.) ¶ 8.

### B. Plaintiff Ross Exits Union Office Early; Subsequent Administration Discovers Overpayments to Ross Administration.

Mr. Ross was elected President of APFA for a term beginning April 1, 2016.  Elected with him were Eugenio Vargas (Treasurer), Nena Martin (Vice-President) and Marcy Dunaway (Secretary).  Appx. 523 (Harris Decl.) ¶ 6.  The U.S. Department of Labor ("DOL") ordered the Union to re-run this election in 2018.  *Id.*  Prior to the re-run, Mr. Ross agreed with the voting Board of Directors to resign early, in exchange for certain financial considerations.  This agreement was documented in a written Transition Agreement ("TA" herein), signed by Mr. Ross and the Board in March 2018.  Appx. 533-536.  This Agreement covered only Mr. Ross; the other three National Officers remained in office until the re-run election later in 2018, which they each lost.  Appx. 523 (Harris Decl.) ¶ 6.

The TA provided, among other things, for Mr. Ross to "voluntarily and irrevocably resign[] from his position as the National President."  Appx. 533.  The APFA agreed that Ross would receive, among other things, "his current full salary and benefits … through July 31, 2018," and "all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016,

through July 31, 2018." Appx. 533 ¶¶ 3-4.  The TA also included a confidentiality provision[2]: a mutual non-disparagement clause[3]; and a mandatory arbitration clause.[4]

After Mr. Ross left office, Mr. Vargas – as Treasurer – calculated the amounts due to Mr. Ross under the TA. Appx. 606-7; 610-11 (Vargas Dep. 9-10, 23-26).  With respect to sick and vacation days, Mr. Vargas determined the dollar value of each such day by taking Ross' annual salary, adding in the dollar value of certain additional expense allowances (the "Meal Expense Allowance" or "MEA" and the "Special Assignment Fee" or "SAF"), and then dividing the total amount by 365 days.  Appx. 610-11 (Vargas Dep. 25-26); *see also* Appx. 523 (Harris Decl.) ¶ 7. The resulting daily dollar amount was then multiplied by the number of sick and vacation days provided under the TA.  Mr. Vargas later used the same formula to calculate the value of sick and vacation days to be paid to himself, Ms. Martin and Ms. Dunaway upon leaving office.  Appx. 610-11, 625-626 (Vargas Dep.  25-26, 87-88); Appx. 523 (Harris Decl.) ¶¶ 6-7.

After the 2018 re-run election, the APFA Board of Directors examined the payments to Mr. Vargas, Ms. Martin and Ms. Dunaway, and concluded that Mr. Vargas had used an incorrect formula to calculate the amounts paid to each of them for accrued and unused sick and vacation days.  Appx. 523-24 (Harris Decl.) ¶¶ 6-8.  The error came from adding MEA and SAF amounts to their annual salary in order to calculate the value of a sick or vacation day, when only annual

---

[2]  "The Parties agree that the existence, terms, and content of this Agreement are completely confidential…  APFA agrees not to disclose the existence, terms or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms." Appx. 534 ¶ 7.

[3]  "APFA's …. officers, employees and agents … agree not to make … any statements disparaging ROSS …, whether or not such statements legally constitute libel or slander."  Appx. 534  ¶ 8.

[4]  The parties agreed "to submit any … disputes regarding the … enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties."  Appx. 535 ¶ 13.

salary should have been used. *Id.* The APFA advised Mr. Vargas, Ms. Martin, and Ms. Dunaway of the overpayments, and they each repaid the amounts owed.  Appx. 523-24 (Harris Decl.) ¶ 8-9. For Mr. Vargas, the amount of overpayment was $4,142.57.  *Id.*; Appx.  529-532. The Board at that time did not examine the payments to Mr. Ross.  Appx. 523-525 (Harris Decl.) ¶¶ 6, 9, 11-13.

The APFA's next National Officer election was for terms beginning in April 2020.  The winning slate of candidates, which included Julie Hedrick and Erik Harris, ran on a platform of fiscal responsibility and transparency of union affairs.  Appx. 509 (Hedrick Decl.) ¶¶ 7-8.  The new Officers retained new outside counsel to advise on, among other things, the oversight rights of union members and the corresponding obligations of union leadership.[5]  The new Officers knew that Mr. Ross had resigned in 2018 but did not have access to the TA.  Appx. 509 (Hedrick Decl.) ¶ 8; Appx. 524 (Harris Decl.) ¶11.  To address outstanding requests to review the TA from members who had also complained to the DOL, the Officers requested a copy from prior APFA counsel. *Id.* The TA was provided to the APFA Board of Directors, who then requested a review of payments made to Mr. Ross.  Appx. 525 (Harris Decl.) ¶ 12. National Treasurer Harris turned to longtime outside accountant Hal O'Neil for this project, in part because Mr. O'Neil had analyzed the overpayments to Vargas and others.  Appx. 525 (Harris Decl.)  ¶¶ 13-14.  Regarding Mr. Ross, O'Neil analyzed whether he had been paid the correct number of sick and vacation days; and also whether the correct daily rate had been applied to those days.  Appx. 525 (Harris Decl.) ¶ 14; Appx. 544-45 (O'Neil Decl.) ¶ 5.

In late September 2020, Mr. O'Neil provided Mr. Harris with a set of "workpapers" regarding the payments to Mr. Ross, Mr. Vargas, Ms. Martin and Ms. Dunaway.  Appx. 525-26

---

[5]  The APFA retained attorney William W. Osborne, Jr., former co-chair of the ABA Committee on Union Administration and Procedure, and Senior Editor of the ABA treatise, *Labor Union Law and Regulation*.  Appx. 509 (Hedrick Decl.) ¶ 9.

(Harris Decl.) ¶ 15; Appx. 548-559 (Schedules).  With respect to Mr. Ross, the workpapers included a 2-page document (Schedule C) labelled "Overpayment Calculation" which showed, similarly to the calculations for the other former Officers, the amounts he had been "paid in error", and a "Total overpayment – due to APFA" of $5,436.47.  Appx. 545 (O'Neil Decl.) ¶ 7 and 559 (Ross Sch. C); Appx. 525-26 (Harris Decl.) ¶¶ 15-16. Mr. O'Neil also provided Treasurer Harris with a Memorandum, which Plaintiffs call "the Confidential Memorandum."  Appx. 545, 547 (O'Neil Decl. ¶ 18 and Memo).  The memorandum discussed the "overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers," and noted that the TA which Mr. Ross had signed "doesn't specify that the payments be made in accordance with policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement."  Appx. 547. As described in his Declaration, by that language, Mr. O'Neil meant that the *number* of days of accrued sick and vacation pay was consistent with the TA. Mr. O'Neil also concluded, however, that the *daily rate* applied to each such day was in excess of that which was allowed, and therefore was an overpayment as reflected on Schedule C. Appx. 545-46 (O'Neil Decl.) ¶ 8; Appx. (Harris Decl.) ¶¶ 16-17.

Mr. Harris presented Mr. O'Neil's overpayment calculation (Schedule C) to the Board of Directors, and a majority of the Board directed him to seek repayment from Mr. Ross, as they had from the other officers, including Vargas.  Appx. 527 (Harris Decl.) ¶ 8.  Harris sent a letter to Ross seeking repayment by January 1, 2021.  Appx. 527 (Harris Decl,) ¶ 18 and Appx. 537-542 (Letter to Ross; Email advising Board of Directors).  Mr. Ross did not repay the amount owed and

the debt was ultimately referred to Diversified Credit, a debt collection agency which APFA has relied on for many years. Appx. 527 (Harris Decl.) ¶ 20.[6]

### C. Two Rank-And-File Members File Article VII Charges Against Plaintiffs.

In November 2020, two rank and file union members, Sandra Lee and Melissa Chinery, following their own investigation, filed Article VII charges against Mr. Ross, Mr. Vargas, and as another former officer, for engaging in alleged financial misconduct.[7]  Appx. (Black Decl.) ¶ 10 and Appx. 68-74 (Original Charges), 76-87 (Revised Charges)).  Neither of the individual Defendants herein had any role in the filing of those charges.  Appx. 510 (Hedrick) ¶ 11; Appx. 527 (Harris) ¶ 22.

Federal law and the APFA Constitution permit APFA members, upon request, to review the Union's "books, records, and accounts necessary to verify" federal reports concerning officer compensation and other matters. 29 U.S.C. § 431(c); *see also* Appx. 14 (APFA Const., Art. II, § 3(B)).[7]  Ms. Lee and Ms. Chinery exercised these rights to review APFA financial records, including those related to disbursements to Mr. Ross and Mr. Vargas during their time in office, Appx.524 (Harris Decl.) ¶ 10, and they used information from that review to file internal charges against the Plaintiffs.  *See* Appx. 103-4 (Ross Arb) (Ms. Lee); Appx. 368-375 (Vargas Arb.)  (Ms. Chinery).

---

[6]  When Mr. Ross refused to pay back the debt, Diversified filed a collection action in state court. *Diversified Credit Sys. v. Ross*, Case No. JP03-22-DC00017757 (Justice of the Peace, Precinct 3, Tarrant County Court, filed Jan. 14, 2022).  That action was dismissed for non-suit by Diversified after this action was filed.

[7]  Neither Ms. Lee nor Ms. Chinery have ever held APFA office, Appx. 102 (Ross Arb.), and are not parties in this lawsuit.  The other member charged was Nena Martin; the charges against were dismissed by Arbitrator Armendariz. Appx. 4 (Black Decl.) ¶ 9.

Plaintiffs were promptly notified of the charges, as well as the relevant procedures.  Appx. 4-5 (Black Decl.) ¶¶ 10-11;  Appx. 75-88.  The APFA's Executive Committee determined that the charges were timely, specific and valid in accordance with the Constitution and that the matters should proceed to arbitration.[8]  Appx. 5 (Black Decl.), ¶ 12 and 90-92 (Resolutions).  Plaintiffs did not move to dismiss the charges as untimely, nonspecific or invalid as they could have under the Constitution and Policy Manual.   Appx. 5 (Black Decl. ¶ 13).

The Article VII Arbitrator was Ruben R. Armendariz, a nationally respected labor arbitrator with over 40 years of relevant experience, and member of the National Academy of Arbitrators.[9] Appx. 5 (Black Decl. ¶ 14).  Over several hearing days in the Summer and Fall of 2021, Arbitrator Armendariz separately heard the Ross and Vargas charges.  It bears emphasis here that neither the APFA, nor APFA President Hedrick nor APFA National Treasurer Harris -- all named Defendants in this action -- were parties to the proceedings.  Appx. 527 (Harris Decl.) ¶ 22; Appx. 510 (Hedrick Decl.) ¶ 11.  Instead, the parties to the proceedings were the charging parties (Chinery/Lee) and the charged parties (Ross/Vargas).   Appx. 4, 6, 7 (Black Decl.) ¶¶ 8, 15, 21;

> ### D.   Arbitrator Finds Mr. Ross Guilty Of Violating APFA Constitution and Policy Manual And Misappropriating Tens Of Thousands Of Dollars In Union Funds.

Mr. Ross' hearing commenced in June 2021 and was continued to November 2021. Appx. 6 (Black Decl.) ¶ 15.  Mr. Ross was represented by two other APFA-members of his choosing,

---

[8]  As Mr. Ross acknowledges, "valid" simply means that if the accusations are true, the charging party has asserted a chargeable offense.  Appx. (Black Decl., ¶ 16 and Ex. O at 3).

[9]  Mr. Armendariz was added to the Union's pool of Article VII Arbitrators by the Board in January 2021, and his appointment was reaffirmed in October 2021.  Appx. 96-98 (Resolutions).  Notably, Mr. Ross was serving on the APFA's Board of Directors in October 2021 and affirmatively voted to *approve* Mr. Armendariz's continuing appointment as an Article VII Arbitrator.  Appx. 572 (Ross Dep. 68-69).

called and cross-examined witnesses, took the stand in his own defense, and introduced documents into the record.  *Id.*; Appx. 573-74 (Ross Dep 74-80).  The Hearing Officer ruled on procedural objections from both sides.[10]  A transcript was provided, and both sides submitted detailed post-hearing briefs.  Appx. 6 (Black Decl.) ¶¶ 15-16 and Appx. 187-213 (Ross Brief).  Before closing the hearing, the Arbitrator asked Mr. Ross' representative if she had any further witnesses, to which she answered "no".  Appx. 181 (Ross Arb).  At no point did Mr. Ross challenge the jurisdiction of the Arbitrator and in his post-hearing brief, Mr. Ross recognized the Arbitrator's jurisdiction over the charges.  *See* Appx. 191-92 .

On January 14, 2022, after the hearings concluded, Mr. Ross claimed he first learned of the "Confidential Memorandum" written by accountant O'Neil, which he believed was "exculpatory" as to one portion of the charges against him.  Appx. 576-577 (Ross Dep. 86-91).  In late February 2022, more than a month after receiving this document, Mr. Ross' defense team provided it to the Arbitrator and moved to reopen the record.  Appx. 576-577 (Ross Dep. 86-91); Appx. 6 (Black Decl.) ¶ 17 and Appx. 214-16 (Request to Reopen).  The Arbitrator declined, stating:

> I am comfortable with the record as it stands now. This issue was raised and argued at hearing. I do not believe a showing of further good cause or additional substantive material should be introduced into the record as I believe the record is complete regarding the issue raised herein.

Appx. 217  Nevertheless, the document was discussed by Mr. Ross in his post-hearing brief, Appx. 208 (claiming memorandum was "exculpatory"), and was acknowledged in the arbitration decision.  Appx. 230.

On March 19, 2022, the Arbitrator found Mr. Ross guilty of some of the charges and not guilty on others. Appx. 219-42.  As is relevant here, Arbitrator Armendariz concluded that Mr.

---

[10] *See, e.g.,* Appx. 116-117, 135-16  (examples of Arbitrator sustaining Ross' objections).

Ross had in multiple respects "intentionally and willfully ignored the provisions of the Policy Manual and … violated and abused his fiduciary duty entrusted to him by the APFA membership." Appx 240.  Specifically, Arbitrator Armendariz concluded that Mr. Ross had improperly used APFA funds for the following expenses:

### *Improper Housing Expenses and Furniture Purchases.*

The Arbitrator found that the Policy Manual provides that the APFA will provide National Officers with *either* a corporate apartment or relocation moving expenses, but not both.  The Arbitrator found that Ross improperly "accepted both choices" after assuming Union office.  Appx. 239.  As a result, the Arbitrator found that APFA incurred $8,106.13 in expenses for an apartment leased for Ross' own "personal benefit" contrary to the terms of the Policy Manual.  *Id.*    The Arbitrator also found that Mr. Ross "purchased $3,637 in furniture on the APFA's credit card … and had it delivered to his personal residence" in violation of APFA's governing policy and, in doing so, Ross "abused his fiduciary duty to the APFA." Appx. 232.

This finding had record support.  Mr. Ross testified that when he assumed office, he decided to move into an APFA-provided apartment in Dallas.  Appx. 139-140 (Ross Arb).  Accordingly, the Union entered into a lease on his behalf and he moved into the unit.  Soon after, however, he changed his mind and decided to rent a home for his family in Southlake, Texas.  Appx. 162-166.  Although he had already accepted the corporate housing option and had the Union sign a six-month lease on his behalf, witnesses testified that Mr. Ross then billed the Union for the costs associated with relocating his personal residence from California.  Appx. 131-132.

Record evidence supported the Arbitrator's finding that Mr. Ross' use of both housing options violated APFA policy and cost the Union over $8,000 to lease a vacant apartment in Dallas.  Mr. Ross admitted in the hearing that he had full knowledge when he decided to run for President

14

that the job would require him to relocate or move into corporate housing in Texas if elected, Appx. 174,[11] and other witnesses testified to how his conduct violated APFA Policy.  Appx. 114-15 (testimony that an officer must elect either the apartment or the relocation expenses but cannot get both); *see also* Appx. 137-38 (Ross Arb.) (testimony that another former officer failed to comply with policies regarding corporate housing and had to repay to the Union $15,000).

***Family Vacation to the Grand Canyon.***   The Arbitrator also found that the "APFA paid for Ross' family vacation to the Grand Canyon with [his] APFA credit card," including costs for hotels and meals which "should be borne by [Mr.] Ross" and that this was a "per se violation of the Policy Manual."  Appx. 232.   This finding also had record support.

Evidence showed that Mr. Ross used the Union credit card to pay for his family's five-day trip through the Southwest, including to the Grand Canyon, supposedly on their way to "relocate" to Texas.  Appx. 170-172 (family went "to Flagstaff and then from Flagstaff, my wife took the kids who were riding with her, up to the Grand Canyon, back to Grand Canyon down through Albuquerque").  Mr. Ross was not present on this trip, and he testified that his family then "went back [to California]" to "finish" the swim season and for his wife's job.  Appx. 175, 179-80.

Mr. Ross contended that the cost of his family's trip (including hotel and meals) was proper because he needed to relocate his personal car.  The Policy Manual provides that APFA "will reimburse a National Officer/Chair for the cost of relocating one (1) personal automobile to/from the DFW area" and "[s]uch reimbursement will be either for actual shipping charges or the

---

[11]  The Charging Parties also introduced evidence showing that Mr. Ross purchased, at the Union's expense, thousands of dollars of furniture, including mattresses, sofas, chairs and beds, which were delivered to his new personal residence in Southlake, Texas, despite having the Union pay for him to relocate his personal effects from Sacramento.   Appx. 133.

applicable mileage rate by the APFA Board of Directors." Appx. 52.  Accordingly, he claims that it was acceptable that his family "hopped" and "skipped around" the country on the way to Texas and charged this excursion to the Union.  Appx. 172 (Ross Arb.).  Mr. Ross never attempted to explain, however, why the Union paid for his family's meals and lodging during this trip, when the policy expressly only allowed direct mileage reimbursement for personal car relocation. Moreover, as explained below, Mr. Ross later claimed that this car was his "wife's car," which is why he stated he also needed to rent a car -- also at the Union's expense -- to commute to and from work.

**_Personal Rental Car._**  The Arbitrator found that "Ross admitted he did not have a vehicle to get to work so he used the rental car" paid for by Union funds in violation of the Policy Manual. Appx. 234  ("Defendant Ross received a rental car from March 2016 until October 16, 2016;" "the arbitrator finds Defendant Ross abused his Fiduciary duty to the membership of the APFA by renting cars for his personal use to commute to work.").  This finding was supported by the record.

The Policy Manual provides that a national officer's "residence" shall be the DFW-area. _See_ Appx. 51.  It also states that the Union will only pay for rental cars _outside_ of the officer's residence.  Appx.50.  Accordingly, Mr. Ross was not entitled to have the Union pay for his rental cars commuting to and from work in the DFW area.

Mr. Ross testified that he needed to rent a car in DFW because his wife needed their personal car (which the Union paid to be relocated to Texas) to drive his children to school and so she could commute to work.  Appx.167-68.   The hearing evidence showed that the Union paid $6,200 for long-term car rentals for Mr. Ross' use in DFW – his city of residence – in violation of APFA policy.  Appx. 150-151; _see also_ Appx. 124-25

16

***Expenses Related to Commuting to Ross' California Home.*** The Arbitrator found that Mr. Ross also improperly charged the Union for expenses related to his personal travel from Texas to California, including for mileage to and from the airport and his Sacramento home (42 miles each way), parking his personal vehicle at the Sacramento airport at a cost of ($105/month), and personal meals at the airport, all contrary to the Policy Manual. Appx. 236, 241. This finding was supported by the record.

The Policy Manual provided that a National Officer "will be reimbursed only for Coach AAL service charges, or the equivalent on another airline, for travel between his/her permanent primary residence city and DFW." Appx. 42. It also expressly provides that the Officer "is *not authorized to claim any other expenses* as provided in this policy for the purpose of personal travel between DFW and his/her permanent residence." *Id.* (emphasis added). The record demonstrated, however, that Mr. Ross sought and was reimbursed out of Union funds for mileage, parking, and meals related to his personal travel from DFW to his home in Sacramento. *See* Appx. 236. Accordingly, the Arbitrator found that these expenses associated with personal trips to Sacramento were not "authorized" by the Union and violated "his Fiduciary duty to the membership of the APFA." *Id.*

***Refusal to Repay Inflated Vacation and Sick Leave.*** Mr. Ross was also found to have "refused to repay APFA for an inappropriate overpayment … of $5,436.47." Appx. 239. This overpayment was related to the improper valuation of sick and vacation days paid to him after he agreed to resign. This finding was supported by the record.[12]

---

[12] Mr. Ross argued to the Arbitrator, as he does in this litigation, that he was underpaid 12 sick days upon leaving office in 2018, Appx. 210 (Post-Hearing Brief), but this argument was not successful before the Arbitrator.

17

Mr. Ross' 2018 TA provided for, among other things, payment of his "accrued but unused" vacation and sick time from April 1, 2016 to July 31, 2018.  Appx. 533 ¶ 4. Shortly after leaving office, Mr. Ross was paid for these sick and vacation days. Appx. 525 (Harris Decl.) ¶ 13.  His vacation and sick payout daily rate was based on his annual salary, plus the additional MEA and SAF expenses, divided by 365. *See* Appx. 591 (Ross Dep. 200); Appx. 121 (Ross Arb.) .  The Arbitrator found that "that MEA and SAF are *expenses* and are not to be included in or considered with his full salary for use in the payout determination of accrued sick and vacation leave."  Appx. 239 (emphasis added); *see also* Appx. 127 (Ross Arb.) (MEA and SAF are "expenses" and no officers outside the Ross Administration included them in sick and vacation payout calculations); Appx. 58 (Policy Manual) (formula for sick leave offset daily rates is based on "annual salary," divided by 365 days).  He also found that that Board had "determined that Defendant Ross was overpaid in the amount of $5,436.47 in 2018" and that "[t]he Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect."  Appx. 239.

Additionally, the Arbitrator found Mr. Vargas "admitted that he had changed the formula without the approval of the [Board of Directors] or the [Executive Committee]" as was required. *Id*.; *see also* Appx. 401-02 (Vargas Arb.). While Mr. Ross argued to the Arbitrator (as he does here) that his daily rate was correct under the TA and that the APFA Policy Manual did not apply (Appx. 207-08), this argument was unsuccessful.

The Arbitrator also found that, after the Board demanded repayment, Mr. Ross failed to pay or to appeal the Board's decision.  "Ignoring the Board of Directors is not an option, especially *for a sitting Board member*." Appx. 240.   Notably, the Arbitrator found Mr. Ross guilty despite

being advised of the "Confidential Memorandum," which Mr. Ross claims exonerated him on this point.

Overall, the Arbitrator concluded that Ross "intentionally and willfully ignored the provisions of the Policy Manual" and violated his obligations under the APFA Constitution. Appx. 240. The Arbitrator noted that Ross' testimony was "inconsistent and not forthright" and that because he "abused his position of trust as well as his fiduciary duty to the membership of the APFA, he can no longer hold a position of trust with the APFA." *Id.* Among other things, Mr. Ross was ordered to repay APFA for the $5,436.47 sick and vacation overpayment, as well as over $8,000 for leasing an apartment "where he had no intention of occupying," and an additional $3,600 in unauthorized expenditure for furniture, as well as other items. Appx. 241-242. The Arbitrator declined to expel Mr. Ross from the Union as requested by the Charging Parties, but because of the fiduciary violations, Mr. Ross was barred from holding any positions in APFA. Appx. 241.

Finding that Ms. Lee and Ms. Chinery had "provided sufficient evidence to establish merit and a violation of the Policy Manual to reveal … Ross abused his fiduciary duty to the membership of the APFA," Arbitrator Armendariz further ordered an audit of Robert Ross' expense reports and credit card charges from April 1, 2016 through July 2018 to determine if claimed expenses were for legitimate business purposes or not. Appx. 241-42.

An independent audit performed by the firm of Cornwell Jackson, CPA, revealed that Mr. Ross had charged thousands of dollars to the Union for personal expenses during his two-year tenure, such as regularly charging the Union for personal meals and other personal items including dry cleaning, bath towels, bed linens, pillows, tools, over-the-counter medicine, candy, and

regularly reloading his personal Starbucks card. *See* Appx. 243-248 ; *see also* Appx. 141-146 (Ross Arb.) (Chinery) discussing improper expense practices).[13]

In a Supplemental Decision, Arbitrator Armendariz ordered Mr. Ross to repay $20,336.19 for unauthorized and inappropriate costs charged to APFA for personal expenses.  Appx. 282-84. Arbitrator Armendariz also reaffirmed his first Award and ordered Mr. Ross to repay $5,436.47 for the sick and vacation leave overpayment, $8,106.13 for the apartment lease, and $3,637.00 for unauthorized furniture expenditures. *Id*. In total, Mr. Ross was ordered to repay APFA $37,515.79. Appx.283.   In accordance with the Constitution, Mr. Ross was also ordered to repay APFA for the cost of the auditor and his arbitration fee.  *Id*. Aside from stepping down from the Union position that he held in March 2022, Mr. Ross has not complied with the Arbitrator's Decision.

### E.   Arbitrator Armendariz Finds Mr. Vargas Misappropriated Union Funds In Violation of APFA Constitution and Policy Manual.

The hearing on the Article VII charges against Mr. Vargas took place over three days in September 2021, approximately 10 months after he was notified of the charges.  Appx. 7 (Black Decl.) ¶ 21.  Mr. Vargas did not dispute the Arbitrator's authority to hear the charges.  Appx. 407 (Vargas Post-Hearing Br.).  The Charging Parties represented themselves.  Mr. Vargas represented himself and was also represented by former APFA officers Nena Martin and Heidi Morgan.  Appx. 7 (Black Decl.) ¶ 21.[14] Dozens of documents were submitted into evidence from both sides.  Appx. 7 (Black Decl.) ¶ 21; Appx. 629-630 (Vargas Dep. 102-107). Mr. Vargas called and cross-examined

---

[13]  This audit also revealed that during his two-year tenure, Mr. Ross either put on the APFA credit card or was reimbursed by the Union for over $100,000 in legitimate and properly substantiated Union expenses, thus belying any argument that Mr. Ross did not know how to properly submit an expense.  *See* Appx. 247-249.

[14]  Mr. Vargas testified that he was happy with his representation and that "[i]f I had to redo it, I will choose those two person[s] again."  Appx. 629 (Vargas Dep. at 102).

witnesses and took the stand in his own defense. *Id.* The Charging Parties called eleven witnesses; Mr. Vargas called seven. Appx. 7 (Black Decl.) ¶ 21 and Appx. 287-88, 355-56 (witness and exhibit indexes). A transcript was provided to Mr. Vargas, and both sides submitted Post-Hearing Briefs. As with Mr. Ross' hearing, the APFA was not a party to the Vargas hearing. Appx. 7 (Black Decl.) ¶ 21.

Arbitrator Armendariz issued his Award in early 2022, finding Mr. Vargas guilty of some of the charges levied against him, but not guilty of others. Appx. 479-80. The Arbitrator found Mr. Vargas guilty of violating the APFA Constitution and Policy Manual in dereliction of his duties as National Treasurer in (1) willfully overpaying himself and his fellow National Officers their sick and vacation leave upon leaving office; (2) failing to properly account for Union assets during his tenure; and (3) regularly charging personal meals to the Union, while accepting fixed meal allowances. *Id.*

Under the APFA Constitution, Mr. Vargas was "responsible for the care and custody of the funds of the APFA," and was "responsible for all financial records of the APFA." Appx. 28 (Constitution, Art. III, § 6.E). As noted by Arbitrator Armendariz, the testimony showed that the "duties of the National Treasurer include the care of the office, the staff, all of the assets of the Union" and the National Treasurer is to "inventory the assets and [is] in charge of expense reports and the monitoring of expense reports, questioning, making sure all meals have proper receipts in accordance with the policy manual." Appx. 449 ; Appx. 307-08 (Vargas Arb.) (Lukensmeyer).

***Sick and Vacation Overpayment To Himself And Three Others.*** As explained above, with respect to the overpayment of vacation and sick leave benefits, the Arbitrator found that "It is this arbitrators Opinion, Vargas attempted to benefit monetarily and thus failed in his fiduciary

duty as National Treasurer by *willfully* changing the formula for the payouts for Bob Ross, Nena Martin and Marcy Dunaway as well as himself." Appx. 478 (emphasis added).

The hearing record supported the Arbitrator's finding. *See* Appx. 401-02 (Vargas).[15]  The record also revealed that Mr. Vargas' fellow officers signed each other's checks contrary to past practice.  Appx. 341-42 (Nikides).[16]

The Arbitrator found that "[Mr.] Vargas takes full responsibility for his actions involving his changing of the mathematical formula when using 'Full Salary' vs. 'Basic Salary' to calculate the vacation buyback and sick buyback … for the Ross Administration when leaving office" and that all of the officers involved, except Mr. Ross had paid these amounts back.  Appx. 477, 479.

***Safeguarding Union Assets/Furniture Inventory.***  The Arbitrator also found that Mr. Vargas failed to properly account for thousands of dollars in Union furniture during his tenure. Appx. 476.  This finding was supported by the record.  The APFA National Treasurer is responsible for overseeing all Union assets, including furniture and other Union property.  Appx. 449-450 (summarizing testimony).[17]

---

[15]   Multiple other witnesses confirmed this was improper. Appx. 326-27, 329-32  (Board of Directors member Truan); Appx. 361-63 (APFA Accountant Hoover); Appx. 392-93 (former APFA National Treasurer Gunter)).

[16]  Mr. Nikides also testified that Mr. Vargas originally told the Board of Directors that Mr. Ross' sick and vacation payout had not included the SAF and MEA expenses, which Mr. Ross confirmed, which is why it took the Board longer to realize that Mr. Ross was also overpaid as well.  *See* Appx. 338 (Nikides)).

[17]  *See* Appx. 322 (Lukensmeyer discussing APFA's furniture policy); Appx. 349-50 (Harris testifying that the National Treasurer has the ultimate responsibility under the Constitution to maintain financial records, including keeping an inventory of Union property); Appx. 359-360 (Harris discussing lack of furniture records and inventory list from Vargas' tenure as Treasurer and the lack of records regarding its disposition).  *See also* Appx. 468 (Ross Arb.)  (Ross testifying that it was his National Treasurer's responsibility (Vargas) to keep an inventory of furniture).

Mr. Vargas did not deny that he did not keep an inventory of all furniture purchased by the Union while serving as National Treasurer and the Arbitrator found that the record revealed that no such record was kept. Appx. 474. Accordingly, the Arbitrator found that Mr. Vargas was derelict in the performance of his duties as National Treasurer by failing to properly account for these Union assets.

**_Personal Meals Charged to Union Credit Card._** The Charging Parties also introduced evidence in support of their allegation that Mr. Vargas violated APFA policy by regularly charging personal meals both for himself and his fellow National Officers on the Union's credit card, costing the Union tens of thousands of dollars. Appx. 377-380 (Chinery testifying regarding her review and analysis of Union receipts and related exhibit).

Under APFA's Policy Manual, National Officers are entitled to a Guaranteed Meal Expense Allowance ("MEA") of $300 per month. Appx. 47. This MEA is "in lieu of any actual MEA at residence." _Id._ (union representatives not receiving MEA can be reimbursed for certain properly substantiated actual expenses associated with conducting APFA business during regular meals). Vargas and the other Ross Administration Officers collected MEA. Appx. 472-73; Appx. 295-6; 382 (Chinery), Appx. 311 (Lukensmeyer). Accordingly, they were not entitled to charge the Union for any actual out-of-pocket expenses for meals, but the Charging Parties introduced evidence that Vargas regularly did so while in office. _See_ Appx. 472 (summarizing charge and noting that Mr. Vargas received $7,500 from the Union in MEA expenses during his 25-month term of office); _see also_ Appx. 311-14 (Vargas Arb. 32-35) (former National Treasurer testifying that it would be "double-dipping" to collect both MEA and out-of-pocket meal expenses).

Arbitrator Armendariz found merit to the charges that Mr. Vargas had regularly and willfully improperly charged personal meals to the Union, both when dining alone and with other

Officers.  Appx. 295. This finding was also supported by the record.  *See* Appx. 449 (summarizing testimony of former APFA National Treasurer Lukensmeyer); Appx. 452 (summarizing testimony of Board member Nikides).

Moreover, the Charging Parties introduced evidence that Mr. Vargas failed to properly substantiate his own expenses by documenting the purpose of the meal or identifying who was there in accordance with the Policy Manual, as well as DOL requirements.  Appx. 47 (requiring all actual meal reimbursements to be substantiated by the receipt as well has noting "the name(s) or the other individual(s) meeting during the meal time and the nature of the APFA business being conducted"); Appx. 225-26.[18]

The Arbitrator found that while the APFA had safeguards in place to prevent abuses, these safeguards had "failed" here when the evidence revealed that Mr. Vargas and his fellow officers would frequently sign off on each other's improper expenses.  Appx. 295. He also took into "consider[ation] that the person who is approving these expenses was knowledgeable of the policy manual and what was required for it to be a true and accurate expense report … submitted with the proper documentation."  *Id.*

Accordingly, the Arbitrator ordered an independent audit to examine Mr. Vargas' expenses and determine the exact amount owed for improper charges.  Appx. 296.  This independent audit performed by the firm of Cornwell Jackson, CPA, "identified $13,914.87 in transactions related to

---

[18]   *See generally,* OLMS Compliance Tip: Union Credit Card Policy, *available at* https://www.dol.gov/agencies/olms/compliance-assistance/tips/credit-card-policy   ("For group meal expenses, union records must also include: (a) a written explanation of the specific union business conducted (it is insufficient to simply record "union business"—you must be more specific than that); (b) the full names and (c) titles of all persons incurring the food and beverage charges.").

meals purchased on the APFA credit card exclusively for Eugenio Vargas or for other meals not properly documented." Appx. 487.[19]

In a supplemental ruling, Arbitrator Armendariz determined that Mr. Vargas had made approximately $14,000 in "[i]nappropriate credit card charges related to meals." Appx. 505. Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and half of the arbitrator's fee and was, because of this fiduciary breach, "prohibited from serving in any APFA National Officer position or Regional Officer position for life." *Id.* While Mr. Vargas had already repaid APFA for some of his improper expenditures (Appx. 479), he did not comply with the Award.

## PROCEDURAL HISTORY

Mr. Ross filed this lawsuit on April 20, 2022, and later filed his First Amended Complaint Doc. 75.[20] Mr. Ross claims, against APFA, that the arbitration proceedings violated the LMRDA's requirement of a "full and fair hearing," and were undertaken in retaliation for his "public announcements, beginning … on April 1, 2016, against a proposed merger of" APFA and another union. Doc. 75 ¶¶ 37-40. He also claims, in connection with the arbitration, that each of the APFA Defendants violated the APFA Constitution's provisions regarding "individual privacy, due process and equal representation," *Id.*, ¶¶ 42-47. Ross makes a statutory claim against APFA for allegedly violating the Fair Credit Reporting Act in connection with the overpayment of his sick and vacation

---

[19] This audit also revealed that during his two-year tenure, Mr. Vargas charged approximately $90,000 to his Union credit card and properly substantiated most of these expenses, thus belying any argument that Mr. Vargas did not know how to properly submit an expense. Appx. 486, 488.

[20] The APFA Defendants moved to dismiss Mr. Ross' initial Complaint for lack of subject matter jurisdiction, and the Court granted this motion. Doc. 51 at ECF 3. The Court later considered that there may be subject matter jurisdiction and granted leave to leave to amend. Doc. 74. Similar motions were filed, and rulings made, in the *Vargas* litigation.

pay. *Id.*, ¶¶ 49-50, and asserts a range of state law claims for breach of contract, interference with contract, defamation, and breach of fiduciary duty, all revolving around either his 2018 Transition Agreement or the arbitration proceedings.  *Id.*, ¶¶ 52-59, 64-67.

Mr. Vargas filed a similar lawsuit against the APFA Defendants on May 17, 2022.  His Amended Complaint (Doc. 133) is his operative pleading.   Mr. Vargas claims that the APFA Defendants violated the LMRDA and the APFA Constitution with respect to his arbitration, Doc. 133 ¶¶ 29-40 and 42-47, and also asserts state law claims of fraud and breach of fiduciary duty in connection with statements regarding the overpayment made to Mr. Ross, *id.*, ¶¶ 49-54.

The APFA Defendants now have one counterclaim against both Mr. Ross and Mr. Vargas for breach of the federal fiduciary duty applicable to union representatives.  *Ross* Doc. 134; *Vargas* Doc. 132.[21]  On February 13, 2023, the Court ordered the Ross and Vargas cases consolidated. (Doc. 204).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party meets its burden by either identifying the portions of the record which reveal such or by "pointing out to the district court that there is an

---

[21]  On November 22, 2022, Mr. Ross moved to dismiss APFA's original Counterclaims (Doc. 59), which was denied, except for the state law fiduciary duty claims, which were found to be untimely (Doc. 72).  A subsequent motion (Doc. 110) was denied as moot (Doc. 133).  Mr. Ross also filed multiple motions to amend and to join additional parties throughout this litigation (Docs. 88, 105, 125), all of which were denied. (*e.g.,* Docs. 103, 108, 158).   Similar motions were filed in the *Vargas* litigation as well, with the Court ruling as it did in the *Ross* litigation.

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation omitted).

To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255, neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's burden, *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

## ARGUMENT

The APFA Defendants seek (I) summary judgment on all of Plaintiffs' claims against them and the APFA seeks (II) summary judgment on its Section 501(a) fiduciary duty counterclaims.

### I.   THE APFA DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS AS A MATTER OF LAW.

#### A.  The Arbitrator's Awards Are Consistent With The LMRDA

The Arbitration Awards and resulting discipline are fully consistent with the requirements of the LMRDA and there is no basis to find any violation of the LMRDA by any of the Defendants.

Article VII of the APFA Constitution allows any member in good standing to file internal Union charges against another member for, among other things, willful violations of the Constitution and internal union policies, as was the case here. With respect to charges against union officers, these procedures facilitate compliance with the Union's obligations under the LMRDA, which requires that all expenditures are authorized by the Union's constitution and by-laws, are approved by the proper governing bodies, and are solely for the benefit of the organization. 29 U.S.C. § 501(a); *see, e.g., Int'l Union of Operating Eng'rs, Local 150 v. Ward*,

563 F.3d 276, 279 (7th Cir. 2009). A union and its officers can be liable for failing in their fiduciary duties to the membership, including turning a blind eye to fiduciary violations. *See Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 383 F.2d 735 (5th Cir. 1967) (local union liable for fees incurred in derivative fiduciary duty claim brought by members against union officer); *U.S v Teamsters*, 826 F. Supp. 749, 752-53 (S.D.N.Y. 1993) (union officer violated fiduciary duty by failing to investigate allegations that a union representative improperly received union funds).

The LMRDA establishes certain minimum safeguards before discipline can be imposed, including that the member (1) be served with written specific charges; (2) be given a reasonable time to prepare his defense; and (3) be afforded a "full and fair hearing." 29 U.S.C. § 411(a)(5)(C). Plaintiffs claim that they were not afforded a "full and fair" hearing.

The "full and fair hearing clause [of the LMRDA] does not require unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,' but only to comply with the 'fundamental and traditional concepts of due process.'" *Martin v. Local 556, Transport. Workers Union of Am.*, Civ. No. 3:14-cv-0500-D, 2014 WL 4358480, at *9 (N.D. Tex., Sept. 3, 2014) (*quoting Wildberger v. Am. Fed'n of Gov't Emps.*, 86 F.3d 1188, 1193 (D.C. Cir. 1996); *see also Ritz v. O'Donnell,* 566 F.2d 731, 736 (D.C. Cir. 1977) ("If the charging party … presents witnesses or other evidence at the proceeding, and the respondent is offered both full opportunity to test the validity of that evidence and the opportunity to call the charging persons as witnesses (even as hostile witnesses) in the event he thinks their testimony will help his case, a full and fair hearing is assured."). The LMRDA *does not* require (1) "the more stringent evidentiary standards" applicable in court (*Schrader v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 20*, 656 F. Supp. 1487, 1495 (N.D. Ind. 1987)); (2) pre-hearing discovery (*Conway v. Int'l Ass'n of Heat and Frost*

*Insulators and Asbestos Workers*, 209 F.Supp.2d 731, 751 (N.D. Ohio 2002), *aff'd* 93 Fed. App'x

780, 2004 WL 604080 (6th Cir. 2004)); or (3) the right to counsel (*Curtis v. Int'l All. of Theatrical

*Stage Emps.*, 687 F.2d 1024, 1028 (7th Cir. 1982)).

As long as the LMRDA's minimal due process requirements are met, courts review the

results of such proceedings only to determine whether there was "some evidence" to support the

charges. *Boilermakers*, 401 U.S. at 246-47. "A stricter standard [of review] ... would be

inconsistent with the apparent congressional intent to allow unions to govern their own affairs and

would require courts to judge the credibility of witnesses on [a] ... cold record." *Id.; see also Black*

*v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1468-69 (6th Cir. 1992). "Once the court

determines that the findings of the union's tribunal were 'not without any foundation in the

evidence,' that the proof adduced related to appropriate charges, and that procedural due process

was observed, the action of the union tribunal must be upheld." *Lewis v. AFSCME*, 407 F.2d 1185,

1198 (3d Cir. 1969); *see also McCarthy v. IAM*, Case No. 21-1673, 2021 WL 5766569, *8 (3d Cir.

Dec. 6, 2021).[22]

This LMRDA standard is amply satisfied here. Substantial testimony and documentary

evidence were introduced during the hearings to support the charges against Mr. Ross and Mr.

Vargas.  The Charging Parties submitted dozens of exhibits and called numerous witnesses

including both rank-and-file members and past and present elected officers who testified as to the

Union's financial procedures and the expenses paid to or approved by the Plaintiffs.  Plaintiffs

actively participated in the hearing, submitting their own exhibits, testifying, and calling and cross-

---

[22]  In addition, as long as the "some evidence" standard has been met, courts do not review the
propriety of union's rules of conduct for its officers. *See Hardeman*, 401 U.S. at 243; *Halsell v.*
*Local Union No. 5, Bricklayers & Allied Craftsmen,* 530 F. Supp. 803, 807 (N.D. Tex. 1982) ("The
Court said [in *Hardeman*] that it was up to the unions, not the Courts, to define the conduct which
would lead to disciplinary conduct").

examining witnesses.  In detailed decisions citing the evidentiary record, and in supplemental awards issued after the conclusion of Arbitrator-ordered independent financial reviews, Arbitrator Armendariz recommended that Plaintiffs be found guilty on most of the charges levied against them.  Appx. 219-84, 442-506.  We submit that because the "some evidence" standard was met, there is no basis to reverse the outcome of the Article VII Hearings.  *Hardeman*, 401 U.S. at 243; *Brock*, 790 F.2d at 510, 512; *Corea*, 937 F.2d at 1135.

Plaintiffs have argued, however, that they were denied full discovery, that they were unable to compel the attendance of certain witnesses, and that the Arbitrator did not appropriately weigh the evidence.  They also allege that the two members who filed charges against him had improper motives.  None of these arguments, however, state a viable due process claim.

Members facing union disciplinary proceedings are not, as a matter of right, entitled to discovery or entitled to compel witness testimony under the LMRDA.  *Martin*, 2014 WL 4358480, at *8; *Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 937 F. Supp. 2d 93, 117 (D. Me. 2013) (plaintiff "was not denied his right to a full and fair hearing by his inability to force individuals to appear at the hearing to testify on his behalf").

Plaintiffs' primary argument is that the Union should have provided them with the O'Neil "Confidential Memorandum" prior to their hearings. *See* Ross Br. Supp. Mot. Amend Compl., Doc. 137, at ECF 14 ("The basis of this suit centers on Defendants [alleged] withholding of information from a disciplinary hearing"). But even if there were any obligations in that regard, and we do not concede that there was, Plaintiffs cannot show that this alleged failure materially impacted their defense here.  The undisputed record, including the sworn statement of Mr. O'Neil, demonstrates that, far from being "exculpatory", the memorandum and its Schedule C reveals that accountant O'Neil concluded that Ross was overpaid in his sick and vacation payout by $5,436.47,

based on the inflated daily rate applied by Mr. Vargas.  Appx. 545-46 (O'Neil Decl.) ¶¶ 7-8. Even "[w]hen an internal union rule has been violated, Section 101(a)(5)(C) gives union members a cause of action only when that violation severely impairs the member's ability to prepare and present a defense, or by increasing the risk that a decision maker will reach an erroneous determination." *Yager v. Carey*, 910 F. Supp. 704, 714 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998). There was no such impairment here. Indeed, Mr. Ross provided a copy of the O'Neil Memorandum to the Arbitrator prior to the disciplinary award against him, and the Arbitrator ruled that the issue had already been fully explained before rejecting it in the decision.  Appx. 217-18. There was not, and could not have been, any prejudice to Mr. Ross. It also bears emphasis that this document only pertains to *one* of the many charges against both Plaintiffs for which they were found guilty, and thus could not be the basis to undo the entire Awards.  *See Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454, 462 (8th Cir. 2010) (upholding discipline when there is "*some* evidence to support some of the charges brought against him").

In any event, the record reveals that there was more than sufficient evidence to find Mr. Ross and Mr. Vargas guilty as charged and Plaintiffs' due process rights were not violated because the Arbitrator did not agree with their arguments regarding the propriety of one of the *many* expenses found to be improper.  "Union disciplinary proceedings … except in extreme cases, are not reviewed in the federal courts for the sufficiency of the evidence."  *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1243 (2d Cir. 1979); *see also Martin*, 2014 WL 4358580, at *12.   Accordingly, this aspect of his due process claim must fail.

While Plaintiffs have gone to great lengths to impugn the motivations of their accusers here (Ms. Chinery and Ms. Lee) in bringing the charges against them, the focus in an LMRDA due

31

process claim is on the motivations of the deciding *tribunal* itself, not the motivation of the accusers. *Frye v. United Steelworkers of Am.,* 767 F.2d 1216, 1225 (7th Cir. 1985); *Burke v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 302 F. Supp. 1345, 1353 (N.D. Cal. 1967) ("As long as an accused receives a fair trial and an impartial determination of guilt on specified charges, the motive of the accuser is irrelevant"), *aff'd*, 417 F.2d 1063 (9th Cir. 1969).

Plaintiffs' due process claims fail as a matter of law.

### B. Plaintiffs Cannot Show That Any Protected Speech Was The "But For" Cause Of The Arbitrator's Decisions.

Plaintiffs both contend that their discipline was in retaliation for some form of protected free speech in violation of 29 U.S.C. § 529.   In support of this argument, both Mr. Ross and Mr. Vargas claim that they were improperly disciplined for views against merging APFA with another union, but their speculative and generalized support for this theory does not provide any basis upon which a jury could so find.

For this claim, the burden is on Plaintiffs to produce evidence on which a jury could find that the exercise of free speech rights "was not merely a motivating factor, but a necessary condition or a 'but-for' cause" of the discipline. *Serafinn*, 597 F.3d at  914; *Hudson v. Am. Fed. of Gov't Emps.*, 630 F.Supp.3d 214, 225 (D.D.C. 2022); *Keenan v. IAM*, 937 F.Supp.2d 93, 109 (D. Me. 2013).[23]  It is insufficient for a plaintiff to assert that a retaliatory purpose was a "motivating"

---

[23]  The Fifth Circuit has not yet ruled on this precise issue.  However, as explained by the Seventh Circuit in *Serafinn*, 597 F.3d 908, the requirement of "but-for" causation is mandated by the statutory language and the Supreme Court's holding regarding similar language in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174-76 (2009). The Fifth Circuit has applied the same reasoning in applying other similarly worded statutes. *See*, *e.g.*, *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017).

or "contributing" factor in the union's disciplinary action because a "mixed-motive theory of liability is *never* proper in a suit brought under the LMRDA." *Serafinn,* 597 F.3d at 914 (emphasis in original). "To show a causal connection, a plaintiff must generally show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *McCarthy*, 2021 WL 5766569, *4. Plaintiffs cannot meet that burden here.

It bears emphasis here that the discipline at issue was imposed by a neutral third-party arbitrator. Neither the APFA nor the individual defendants brought the charges, nor did they play a role in the arbitrator's decision. Plaintiffs do not dispute that the constitutional provisions and rules they were charged with and disciplined for violating were reasonable rules as to the responsibilities of officers towards the organization and which the Union was authorized to enforce. *See* 29 U.S.C. § 411(a)(2). Moreover, during the hearing, both Plaintiffs admitted to engaging in financial irregularities and the Arbitrator found that the record clearly supported a finding of guilt that they violated these reasonable rules. "Where the actions of the union member do not fall within the free speech protection of Section 101(a)(2), however, the union member cannot resort to that section to nullify disciplinary action." *Ritz v. O'Donnell,* 413 F. Supp. 1365, 1377 (D.D.C. 1976).

Further, after refusing in discovery responses to identify the alleged political speech which they believed might have inspired any retaliation,[24] Plaintiffs otherwise have identified only their

---

[24] For example, Mr. Ross was asked to "State with specificity" his statements "against a proposed merger of the two unions," and to identify and produce all documents containing those statements. He responded with a blanket objection providing no information. Appx. 564-65 (Ross. Resp. Int. 10). Mr. Vargas was similarly mute on the subject, Appx. 620 (Vargas Dep. 64-66). There is, however, affirmative evidence that neither of the individual Defendants took any action with respect to Plaintiffs based on any views concerning a potential merger. Appx. 511 (Hedrick Decl.) ¶ 14; Appx. 527-28 (Harris Decl.) ¶ 23.

generalized opposition in 2016 to APFA merging with another union, the Association of Flight Attendants ("AFA"), which allegedly ran contrary to the political views of Plaintiffs' accusers in the Article VII proceedings. Appx. 620 (Vargas Dep. 64-66); Doc. 75, ¶ 40 (discussing 2016 opposition to a merger). This speech was four years before the charges were even filed. And there is no evidence that the neutral arbitrator was even aware of, much less influenced by, this alleged political dispute. Lacking any direct evidence that retaliation was the but-for cause of the discipline, Plaintiffs cannot survive summary judgment unless they establish a "convincing mosaic of circumstantial evidence" that the discipline was imposed solely "because [they] exercised [their] right to free speech." *Serafinn*, 597 F.3d at 918. The record is absent of such evidence. *See Synder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers*, 175 F.3d 680, 688 (9th Cir. 1999) (political motivations of accusers "irrelevant" in action to "recover unlawfully expended union funds," when there was a "reasonable basis" for the action), *overruled on other grounds*, *Gross,* 557 U.S. at 174-76.

Plaintiffs were charged with, and found guilty of, financial malfeasance during their tenure as APFA officers and not for anything approaching the exercise of any right enumerated in Title I of the LMRDA. Their retaliation claim cannot be sustained.

### C.  Plaintiff's Other Claims Fail As A Matter of Law.

Plaintiffs raise several other claims against APFA Defendants, none of which can be sustained.

#### 1.  Breach of Constitution and Fiduciary Duty.

Both Plaintiffs allege that the APFA Defendants violated the right to privacy and due process and equal protection rights afforded under the APFA Constitution. However, courts "have consistently held that they do not possess jurisdiction to enforce union constitutions and by-

laws where there has been no violation of a specific right enunciated in [LMRDA] § 411." *McGovern v. New Orleans Clerks & Checkers*, 343 F. Supp. 351, 352 (E.D. La.), *aff'd*, 463 F.2d 423 (5th Cir. 1972); *Adams-Lundy v. Ass'n of Pro. Flight Attendants*, 792 F.2d 1368, 1373 (5th Cir. 1986) ("*Adams-Lundy II*").[25]   As shown in the previous section, Plaintiffs' thin LMRDA claims fail.  Accordingly, their breach of union constitution claim fails as well.

And even if there was any jurisdiction over these claims, Plaintiffs have failed to exhaust mandatory internal remedies.  Article VII requires that members "exhaust internal remedies … prior to taking any legal action … with respect to matters cognizable as charges under this Article VII," which would include allegations that an officer willfully violated the APFA Constitution. Appx. 35. Such internal charges are subject to final and binding arbitration.  Because Plaintiffs have failed to even attempt to exhaust their internal union remedies, their breach of contract and fiduciary duty claims should be dismissed.  *Hayes*, 727 F.2d at 1387.

Independently, Plaintiffs' fiduciary duty claims, derived from the Union's Constitution, Appx. 581-82 (Ross Dep. 108-110), also fail. Plaintiffs generally claim that National President Hedrick and National Treasurer Harris, "based on the[ir] elected positions," breached a fiduciary

---

[25]   Earlier in these cases, the APFA argued in opposition to a motion to dismiss one of its counterclaims that the APFA Constitution was enforceable under 29 U.S.C. § 185, as a "contract … between … labor organizations."  This Court agreed with APFA and held that the Union may have standing to sue Mr. Ross and Mr. Vargas under that statute, at least for injunctive relief. Order, Doc. 72, at 4.  APFA no longer makes a claim under that provision, and after further analysis believes its earlier position to have been legally erroneous.  The definition of "labor organization" applicable to 29 U.S.C. § 185 excludes unions which only represent employees under the Railway Labor Act, such as APFA. *See* 29 U.S.C.§ 142(3) and 152(2)-(3); *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 376–77 (1969) (railroad employees union not covered by § 185); *Fechtelkotter v. Air Line Pilots Ass'n, Int'l*, 693 F.2d 899, 902–03 (9th Cir. 1982) (air line pilots union not covered by § 185).  Plaintiffs do not appear to assert that § 185 applies to their claim for breach of the APFA Constitution, but should the Court conclude that § 185 *does* apply to that claim, either under the law of the case or otherwise, we note that there is no right to seek damages against an individual defendant under that provision. *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 415-17 (1981).

duty allegedly owed to Plaintiffs personally by failing to accurately report on Mr. Ross' $5,400 debt to the Union and to "disclose" the Confidential Memorandum. *See* Ross Am. Compl., Doc. 75 ¶ 67; Vargas Am. Compl., Doc. 55-1,  ¶ 54; *see also* Appx. 582 (Ross Dep.  110, 113); Appx. 623-625 (Vargas Dep. 76-85).  Even if Plaintiffs could establish any error in describing this debt (and, we submit, they cannot in light of the Arbitrator's findings and the O'Neil Declaration), the claim fails as a matter of law.  Under Texas law, the fiduciary duty of an organization's officer, "run[s] to the corporation, *not to individual shareholders* or even to a majority of shareholders." *Matter of Est. of Poe*, 648 S.W.3d 277, 287 (Tex. 2022) (emphasis added).[26]  The same rule applies to the federal fiduciary duty of union officers. 29 U.S.C. § 501(a) (duty runs to the "organization and its members as a group").  Accordingly, Plaintiffs' claims, based on the notion that National President Hedrick or National Treasurer Harris owed a fiduciary duty to them personally, rather than to the organization as a whole, must fail as a matter of law.[27]

### 2.  Mr. Ross' Fair Credit Reporting Act Claim.

---

[26]  The elements of a fiduciary duty claim under Texas state law are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones*, 196 S.W.3d at  447.

[27]  Mr. Vargas makes a passing reference to "fraud" in his Complaint (Doc. 55-1, at ECF 9) but fails to develop such a claim, much less plead it with the required particularity.  *See Johnston v. Dexel*, No. CV H-16-3215, 2017 WL 11612500, at *3 (S.D. Tex. Aug. 18, 2017) (dismissing claim when complaint only raised a "passing reference to a cause of action for fraud").  In his deposition, Mr. Vargas said this claim was generally based upon "APFA claims that [Ross] was not paid within the guidelines of the Transition Agreement" and that he was responsible for this overpayment.  Appx. 621-622 (Vargas Dep.  68-74).  Mr. Vargas could not offer any specific examples, however, of any such statements made by any APFA Defendant, or any other APFA officer or representative. *Id.; see also*  Appx. 621-625 (Vargas Dep. 71-86).  Further, he could not show that any such statements, even if made, were incorrect.  Appx. 625 (Vargas Dep. 85:19-25) (admitting that the alleged statements at issue were about the "overpayment that the arbitrator found was an overpayment").

Mr. Ross' FCRA claim, brought under 15 U.S.C. § 1681s-2(a)(1)(A) & (B), alleges that APFA knowingly reported an *inaccurate* debt to a consumer reporting agency, specifically the $5,436.47 overpayment of his sick and vacation payout APFA reported to Diversified. Am. Comp., Doc. 75, at ¶¶ 49-50. The FCRA provides that "a person shall not furnish any information relating to a consumer to any *consumer reporting agency* if the person knows or has reasonable cause to believe that the information is *inaccurate*." 15 U.S.C. § 1681s-2(a)(1)(A) (emphasis added); *see also* 15 U.S.C. § 1681s-2(a)(1)(B) (prohibiting providing inaccurate information after notice by consumer). Mr. Ross' FCRA claim fails for multiple reasons.

First, there is no private right of action under FCRA § 1681s-2(a), which is the basis of Mr. Ross' claims here. *See Young*, 294 F.3d at 639; *Ware v. Bank of Am., Nat'l Ass'n*, No. 3:21-CV-2824-M-BH, 2023 WL 6071179, at *7 (N.D. Tex. Aug. 28, 2023), *report and rec. adopted*, No. 3:21-CV-2824-M-BH, 2023 WL 6119376 (N.D. Tex. Sept. 18, 2023). Even if he had a right of action, Mr. Ross cannot show that (1) Diversified -- a debt collection agency -- is a "consumer reporting agency" under the Act, 15 U.S.C. § 1681a(f); (2) that any APFA Defendant reported the debt to any covered "consumer reporting agency." Appx. 527 (Harris Decl.) ¶¶ 20-21; Appx. 511 (Hedrick Decl.) ¶ 13; Appx. 579 (Ross Dep. 99-100); or (3) that the $5,436.47 debt was inaccurate, or reasonably believed to be so. Appx. 545 (O'Neil Decl.), ¶¶ 7-8. Plaintiff's FCRA claim fails as a matter of law.

### 3. Mr. Ross' Remaining State Law Claims Are Also Without Merit.

Mr. Ross' remaining state law claims of breach of employment contract, intentional interference with contract, and defamation are also without merit.

### a. Breach of Employment Contract.

Mr. Ross' "breach of contract/employment contract" claim is based on the TA.  Mr. Ross claims that (1) the APFA breached the confidentiality and non-disparagement provisions of this Agreement; (2) he was underpaid for his sick leave in 2018; and, (3) the TA required the APFA to pay for his Article VII expenses.  Doc. 75, ¶¶ 52-59.  These claims are meritless.

Dispositively, this claim is subject to the TA's mandatory arbitration provision, by which Mr. Ross agreed "to submit any and all disputes regarding the … enforcement of the Agreement to a mutually chosen arbitrator whose decision shall be binding".  Appx. 535, ¶13.  The Federal Arbitration Act, applicable to employment contracts, requires a district court to defer to that arbitration process.  *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (applying FAA to employment contracts); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming dismissal of complaint against former employer in favor of arbitration).  Accordingly, Mr. Ross' claims that the APFA Defendants violated the 2018 TA are not properly before this Court and should be dismissed.  *Id*.; *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Trust v. Horne, L.L.P.*, 853 F.3d 804, 815-16 (5th Cir. 2017).

Should the Court reach the issue, Mr. Ross' claims regarding the confidentiality and non-disparagement clauses also fail as a matter of law on the merits because the conduct he challenges is fully protected by federal law.  "Under Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur." *In re OCA, Inc*., 552 F.3d at 422.  With respect to confidentiality, Mr. Ross claims that APFA breached the TA "when it revealed the terms" of the Agreement to Ms. Chinery and Ms. Lee, as well as others in the APFA membership." Doc. 75, ¶ 55.  This disclosure, however, was required by federal law which permits APFA members -- the real owners of all Union property -- to review Union records that formed the basis of officer compensation, which was done here.

29 U.S.C. § 431 (b)-(c). With respect to non-disparagement, Mr. Ross complains that APFA "allowed" Ms. Hedrick, Mr. Harris, and others to "publish false or disparaging comments about Plaintiff." Doc. 55 at ¶ 56. But the union is barred by the LMRDA from restricting any members (including members who are union representatives) from "expressing any views, arguments or opinions," on matters of union concern, 29 U.S.C. § 411(a)(1), and the TA could not lawfully require the union to act in violation of federal law.[28]

Mr. Ross also claims that he was underpaid 12 days of sick leave under the TA and that the *pro rata* rate for this leave should have included his MEA and SAF expenses. Appx. 592 (Ross Dep. 204:17-21). He made this same argument to Arbitrator Armendariz, Appx. 210 , and lost. Should the Court go beyond that final and binding determination, this claim would in any event be time-barred. The payment was made on March 29, 2018, Appx. 525 (Harris Decl.) ¶ 13, and Ross sued on April 20, 2022, outside Texas' four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

Mr. Ross' breach of contract claim fails as a matter of law.

### b. Intentional Interference with Contract.

Mr. Ross also alleges that the APFA Defendants, including Ms. Hedrick and Mr. Harris, intentionally interfered with the TA, "since he hasn't received full payment for his Sick Days." Am. Compl., Doc. 75, at ¶¶ 65. Of course, it was his fellow Plaintiff Mr. Vargas, as Treasurer at the time, who was responsible for making the payment for sick days in 2018, Appx. 622 (Vargas Dep. 74-75), and in any event the final and binding decision of Arbitrator Armendariz resolved this claim against Mr. Ross.

---

[28] While the Court need not here reach the *content* of the challenged statements, we explain in connection with the defamation claim that Mr. Ross has utterly failed to identify any statements which were false or disparaging.

This claim also fails as a matter of law because, as union officers, Ms. Hedrick and Mr. Harris are not "third parties" against whom such a claim could be made.  The TA was entered into between Mr. Ross and the APFA, which was defined to include any of its "officers" and "employees" "in their official and individual capacities together with their successors," making all of the APFA Defendants (APFA, Hedrick and Harris) parties to the TA. Appx. 533. Under Texas law, an intentional interference with contract cause of action applies only to claims against a *third person* (who was not a party to the contract) "who wrongly induces another contracting party to breach the contract." *Holloway*, 898 S.W.2d at 794-95.  Because neither APFA, nor Ms. Hedrick nor Mr. Harris are third parties to the TA, this claim must also fail.  *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016); *McCall v. Dallas Indep*. Sch. Dist., 169 F. Supp. 2d 627, 638-39 (N.D. Tex. 2001).  And, as described above, such a claim for breach must be arbitrated, Appx. 535 ¶ 13. Accordingly, his intentional interference with contract claim should be denied.

### c. Defamation.

Mr. Ross alleges that "Defendants, APFA, Julie Hedrick, and Erik Harris made false statements to a third-party regarding debt that [he] owed under the Transition Agreement, regarding the APFA BOD's findings and regarding the accounting firm's conclusions about Mr. Ross' payments under the Transition Agreement that were defamatory and false."  Am. Compl.. Doc. 75, at ¶ 64. However, when asked in interrogatories to specifically identify any false statements, Mr. Ross refused to do so.  Appx. 562-63 (Ross Int. Resp. 1-6)).   His claim fails for want of evidence.

In any event, "[l]ibel actions under state law are pre-empted by the federal labor laws to the extent that the State seeks to make actionable defamatory statements in labor disputes which were published without knowledge of their falsity or reckless disregard for the truth."  *Kirk*, 934

F. Supp. at 787 (citing *Linn v. Un. Plant Guard Workers of Am., Local 114,* 383 U.S. 53 (1966)*,* and applying same to statements made during intra-union disputes).   Mr. Ross has the burden of providing evidence of statements made with such "malice." This he cannot do.

    In support of his defamation claim against Ms. Hedrick, and despite his refusal to provide any information in response to interrogatories, Mr. Ross testified only to a "Hotline" communication from National President Hedrick to the membership.   Appx. 883 (Ross Dep.   114-16) ("they put out a hotline out from an arbitration award that they knew was false").   As Ms. Hedrick's Declaration shows, the two Hotlines posted by APFA regarding the arbitration accurately reported the outcome of the Arbitrations. For example, one entitled "APFA Receives Article VII Arbitration Awards," stated that:

> On March 19th, Arbitrator Ruben R. Armendariz issued a decision in Article VII charges brough under the APFA Constitution and Policy Manual against former APFA National President Bob Ross.   Arbitrator Armendariz barred Ross from serving in any APFA position for life, ordered Ross to resign as San Francisco Base President, ordered Ross to repay APFA a substantial sum of money, and ordered an independent audit of certain expenses.

Appx. 510-511 (Hedrick Decl.) ¶ 12 and Appx. 512 (Hedrick Ex. A).   Plaintiffs cannot point to anything in this or any other Hotline which was false.   *Compare* Appx. 512-520 (Hotlines) *with* Appx. 219-242; 282-284 (Arbitration Awards). And even if Mr. Ross attempts to point out any inconsistencies, it is dispositive and undisputed that Ms. Hedrick believed, and continues to believe, that the statements made in the now contested Hotline were true.  Appx. 510-511 (Hedrick Decl.) ¶ 12.   There was no defamation as a matter of law.

    And with regard to Mr. Harris, Ross appears to contend that Harris misrepresented the finding of accountant O'Neil.  Doc. 75,  ¶ 64.  But the undisputed sworn statements of both Mr. O'Neil and Mr. Harris show that there was no misrepresentation. Appx. 544-45 (O'Neil Decl.) ¶¶ 5-8; Appx. 525-526 (Harris Decl.) ¶¶ 13-17.   Ross's claim is purely speculative, Appx. 578

(Ross Dep. 94-98), and incorrect. O'Neil found Mr. Ross had been overpaid and so advised Mr. Harris, and Harris's further communication of that finding was truthful, and believed to be truthful, and was in no way defamatory.

Mr. Ross cannot show that this statement, or any statements made by any of the APFA Defendants about his debt to the Union or the Arbitrator's findings were false, much less made with a reckless disregard for the truth as required to succeed on this defamation claim.

## II.     APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIDUCIARY DUTY COUNTERCLAIMS.

APFA also seeks summary judgment on its breach of fiduciary duty counterclaims brought under Section 501 of the LMRDA against both Mr. Ross and Mr. Vargas.

Section 501 creates a federal fiduciary duty for union representatives "to hold [the Union's] money … solely for the benefit of the organization … and to … expend the same in accordance with its constitution and bylaws and any resolution of the governing bodies adopted thereunder." 29 U.S.C. § 501(a).  Violations of this duty are enforceable in federal court: a union "may sue an unfaithful officer in federal court for an accounting of ill-gotten gains." *Ward*, 563 F.3d at 287.

Here, as set forth above, the Article VII arbitrations (which Plaintiffs agreed to be bound by) conclusively determined that Plaintiffs spent and received funds for their personal benefit, in violation of the APFA Constitution and Policy Manual.  Plaintiffs' refusal to comply with the mandate to return their ill-gotten gains has necessitated the Counterclaims here.

We emphasize that the Union here is *not* seeking to enforce the Arbitration Awards in and of themselves, but instead seeks to enforce the federal fiduciary duty. The Arbitrator has conclusively determined that the disputed expenses by and for Mr. Ross and Mr. Vargas were unauthorized under the Union Constitution and Policy Manual, and that determination is final and binding on the parties.  Based on that undisputed material fact, we respectfully submit that this

Court should hold that Mr. Ross and Mr. Vargas violated their fiduciary duty under 29 U.S.C. § 501(a). *See Adams-Lundy v. APFA*, 844 F.2d 245, 248-50 (5th Cir. 1988) ("Adams-Lundy III") (reversing dismissal of § 501 claim alleging that officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board.").

### A. Ross and Vargas Expended and Received Funds That Were Not Properly Authorized, Were for their Personal Benefit, and In Violation of the APFA Constitution and Policy Manual.

Mr. Ross and Mr. Vargas both participated in final and binding arbitration proceedings which resolved the question of whether they had spent and received funds in violation of the APFA Constitution and Policy Manual.  As set forth above, in both cases, all the LMRDA's perquisites for binding disciplinary arbitration were met and the awards are unassailable as a matter of law.

Regarding Mr. Ross, the Arbitrator found he violated the Union's Constitution and Policy Manual by misappropriating tens of thousands of dollars in Union funds for his own personal benefit and in violation of the Union's written governing documents and procedures. This included, among other things, using Union funds to pay for his family vacation and other personal expenses, including travel, rental cars, meals, furniture, and other personal items, as well as the overpayment of his sick and vacation payout.  All of these expenses were directly contrary to the express provisions of the Constitution and Policy Manual, as found by the Arbitrator.   Appx. 219-242; 282-84.

With regard to Mr. Vargas, the Arbitrator found that he violated the APFA Constitution and Policy Manual by improperly receiving Union funds for his own personal gain and for the personal gain of his fellow National Officers.  Specifically, the Arbitrator found that Mr. Vargas willfully overpaid himself and his fellow National Officers their sick and vacation leave upon

leaving office; (2) failed to properly account for Union assets; and (3) regularly charged personal meals to the Union, while accepting fixed meal allowances, all in violation of the Union's Constitution and Policy Manual. While some of these funds, such as the overpayment of his own vacation and sick payout, were paid back by Mr. Vargas (Appx. 612), others were not, including more than $14,000 Mr. Vargas charged to the Union for personal meals found to have been not authorized under the Constitution or Policy Manual.    Appx. 442-480; 504-506.

These findings are unassailable on summary judgment. They are the product of final and binding arbitration awards which, as demonstrated above, were wholly appropriate under the LMRDA and Plaintiffs should not be heard to argue that they have a right to relitigate these findings.   The arbitration awards were issued in accordance with and based on the Union's Constitution and Policy Manual, and hold that Plaintiffs' expended Union funds in a manner not authorized under these documents. Federal law strongly weighs in favor of deferring to these internal union procedures and the Arbitrator's decision here. "Congress anticipated that labor organizations would make this sort of provision for the resolution of internal disputes …, deeming these fora more appropriate for this task than the federal courthouse." *Adams-Lundy v. APFA* ("*Adams-Lundy I*"), 731 F.2d 1154, 1160 (5th Cir. 1984).   Such deference is particularly warranted where Mr. Ross and Mr. Vargas agreed to these procedures and are bound by the results.  *See* Appx. (Black, Ex. A, APFA Const., Art. II, §§ 2) ("Members of the Association do accept and agree to abide by this Constitution of the APFA"); Appx. (*id.* at § 6) ("[t]he decision of the Article VII Arbitrator shall be *final and binding* upon the accused"); *Fingar v. Seaboard Air Line R. Co.*, 277 F.2d 698, 700 (5th Cir. 1960) (union "constitution … is binding on appellant in the same manner that he is bound by contract"); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*

& *Helpers of Am., AFL-CIO*, 905 F.2d 610, 623 (2d Cir. 1990) (members bound by disciplinary procedures in union constitution).

Nor are there grounds to revisit the Arbitrator's findings that Plaintiffs spending was not authorized. "Courts should strive to avoid interference with internal union affairs." *Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir. 1986); *see also Wirtz v. Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470-71, (1968); *Adams-Lundy I, 731 F.2d at 1160; McDonald v. Oliver*, 525 F.2d 1217, 1231 (5th Cir. 1976). A court, therefore, will not invalidate a union's interpretation of its own constitution unless it is "patently unreasonable." *Newell*, 789 F.2d at 1189; *see also Hoffman*, 362 F.3d at 317; *Morrisey*, 650 F.2d at 1273-74.

**B. By Spending and Receiving Funds That Were Not Permitted Under APFA's Governing Documents, Were Not Properly Authorized and Were Not For the Benefit of the Union, Ross and Vargas Breached Their Federal Fiduciary Duty.**

Section 501 was enacted to fight corruption by union officials and to ensure that union funds are being expended in the best interest of the union membership. *Int'l Union of Operating Engr's, Loc. 150 v. Ward*, 563 F.3d 276, 278, 283-89 (7th Cir. 2009). The statute thus sets forth the federal fiduciary duties of union "officers … and other representatives" who "occupy positions of trust in relation to such organization and its members as a group." 29 U.S.C. § 501(a). Officers violate their fiduciary duty if they spend or receive union funds not authorized under the union's constitution or other governing documents. *Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 383 F.2d 735, 739 (5th Cir. 1967). Even if funds are disbursed in accordance with a union's internal procedures, the expenditure may still be improper if it is for the personal benefit of the recipients, rather than for the benefit of the union membership. *Ray*, 753 F.2d at 389; *Morrisey v. Curran*, 650 F.2d 1267, 1273-74 (2d Cir. 1981).

Because "Section 501 was adopted primarily to address the problem of corrupt management of funds by union officials" the Fifth Circuit has found that it "must be given its strongest reading in a case involving a union officer's diversion of union funds or property into his own hands," such as the case here. *Ray*, 753 F.2d at 389.

> We wish to stress, however, that we do not use the term "personal benefit" solely in th[e] narrow sense. By way of example only, we think that a union officer benefits, in a way that justifies heightened judicial scrutiny, (1) from the expenditure of union funds to purchase things for his personal use or for his family and friends, (2) by the use of union property for personal purposes; or (3) by receiving reimbursement for expenses not related to union business.

*Id.* at 390 (citations omitted).

Here the neutral Arbitrator has already found, after full and fair hearings meeting the LMRDA's requirements, that both Plaintiffs expended Union funds in violation of the Union's Constitution and Policy Manual and for their own personal benefit.  Based on that undisputed fact, the APFA is entitled to judgment as a matter of law that Ross and Vargas have breached their federal fiduciary duty.

Plaintiffs have incorrectly argued that the Section 501(a) claim "rest[s] solely on the basis of Plaintiff's alleged breach of APFA Constitution and APFA Policy" and is therefore not within this Court's jurisdiction under *Adams-Lundy v. APFA,* 792 F.2d 1368 (5th Cir. 1986).  Ross 2d Mot. Dismiss, Doc. 110 at ECF 13.  Plaintiff misunderstands the statute and misreads both the counterclaim and *Adams-Lundy*.

The counterclaim is for breach of the federal fiduciary duty "to hold [the Union's] money … solely for the benefit of the organization … and to … *expend the same in accordance with its constitution and bylaws* and any resolution of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (emphasis supplied). Courts thus necessarily look to the Union's Constitution and policy as a necessary predicate to resolution of a Section 501 claim. *See, e.g.*, *Ray*, 753 F.2d at 390

46

(finding an expense must first be "validly authorized in compliance with the union's constitution, bylaws, and resolutions" to comport with Section 501).

The *Adams-Lundy* cases illustrate this point. That case was before the Court of Appeals three times. In *Adams-Lundy II*, the Court held that there was no federal jurisdiction to "enforce an arbitration award that is based solely on an internal union constitution." 792 F.2d at 1373. But that was not a ruling under Section 501, which was taken up in the next appellate ruling, *Adams-Lundy v. APFA*, 844 F.2d 245 (5th Cir. 1988) (*Adams-Lundy III*). In that decision, the Court addressed the very point now asserted by Plaintiff and firmly rejected it: "No panel has decided the § 501 issue…. This statement [in *Adams-Lundy II* regarding jurisdiction to enforce a union constitution] … was not a decision on the merits of the § 501 claim." 844 F.2d at 248. Describing the Section 501 claim in that case as founded on allegations (like those here) that union officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board," the Court in *Adams-Lundy III* denied a motion to dismiss that claim. *Id.* at 248-250. The fiduciary duty counterclaim here is wholly consistent with *Adams-Lundy*.

The Arbitrator's application of the Union's Constitution and Policy Manual to the facts as developed through the Union's internal procedures demonstrate that the Plaintiffs received funds which were *not* authorized by the Union's "constitution and by-laws and any resolutions of the governing bodies," and which were for their personal benefit.  Such actions, as a matter of law, violated their fiduciary duty under 29 U.S.C. § 501(a) and are subject to federal court relief.  *See, e.g. Brink v. DaLesio*, 667 F.2d 420, 426 (4th Cir. 1981) (officer must pay difference between excessive rent, under lease he negotiated with friend, and reasonable rent for union offices); *Morrissey*, 650 F.2d at 1285 (affirming order for an accounting to determine if foreign travel and

47

commuting expenses between New York and Florida were for valid business purpose of union); *U.S. v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447, 449 (S.D.N.Y. 2009) (upholding determination that union president violated his fiduciary duty when he caused the union "to pay for Cleveland Cavalier playoff and season tickets, his wife's travel expenses, and other personal expenses for which there was no union purpose").

Accordingly, the APFA respectfully requests that the Court grant summary judgment on its fiduciary duty counterclaims against the Plaintiffs, find that Mr. Ross and Mr. Vargas have breached their fiduciary duty as a matter of law, order them to repay APFA for the full amounts set forth in the Supplemental Arbitration Awards in their respective cases, and to pay the APFA's fees and expenses associated with these Counterclaims.  *See Ray,* 753 F.2d at 392 (ordering union officer to repay expenses improperly received); *Morrissey*, 650 F.2d at 1279-83 (discussing range of remedies under § 501).

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully urge the Court to enter summary judgment in their favor on all claims, including APFA's counterclaims against Plaintiffs.


Dated: April 26, 2024                           Respectfully submitted,


                                                 */s/  James D. Sanford*
                                                JAMES D. SANFORD
                                                Tex. Bar No. 24051289
                                                Gillespie Sanford LLP
                                                4803 Gaston Ave.
                                                Dallas, TX 75246
                                                Tel.: (214) 800-5111; Fax.: (214) 838-0001
                                                Email: jim@gillespiesanford.com

                                                JEFFREY A. BARTOS (pro hac vice)

D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK
(pro hac vice)
Tex. Bar No. 24133870
Association of Professional Flight
Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: cbroderick@apfa.org

*Counsel for APFA*

## CERTIFICATE OF SERVICE

I certify that on April 26, 2024, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
notice@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law
PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

*/s/ James D. Sanford*
JAMES D. SANFORD