# TAB 2

APPX. 0507

DECLARATION OF JULIE HEDRICK

1. I am an adult resident of the state of California and I make this Declaration based on personal knowledge and records maintained in the usual course of business by the Association of Professional Flight Attendants ("APFA").

2. I am employed as a Flight Attendant by American Airlines, and I have served as the National President of APFA, an elected position within that organization, since April 2020. Prior to being elected National President, I also served on the APFA's negotiating committee and an APFA member to the Joint Scheduling Implementation Committee, among other things.

3. Pursuant to Article III of the APFA Constitution, the governmental powers of the APFA are vested in the Board of Directors, and the officers and representatives of the APFA. The Board of Directors is authorized to take any and all lawful action consistent with the APFA Constitution to safeguard and protect the APFA, to interpret the Constitution and to establish policies for the direction and management of the APFA.

4. The Board of Directors is comprised of the APFA National Officers and the Base Presidents from each APFA Base. The National Officers (the National President, National Vice President, National Secretary and National Treasurer) have a voice but no vote on the Board of Directors. The Base Presidents have a voice and vote on the Board.

5. APFA also has an Executive Committee, which acts as the agent for the voting Board of Directors (the Base Presidents). The Executive Committee consists of the APFA National Officers and five (5) Ad Hoc Members.

6. The National President is the chief executive officer of the APFA responsible for conducting the affairs of the APFA in accordance with the APFA Constitution and resolutions and policy decisions of the Board of Directors and/or the Executive Committee. The National

Treasurer is responsible for the care and custody of the funds and securities of APFA, all financial records of APFA, and receipt of all dues, fees and special assessments assigned to the APFA, among other duties.

7. APFA's National Officers are elected every four years. In the campaign leading to my election in 2020, I ran on a slate with Larry Salas (who was elected National Vice President), Erik Harris (who was elected National Treasurer), and Josh Black (who was elected National Secretary).  One of our primary campaign themes was a pledge to establish transparency into internal union affairs for all APFA members.

8. When I took office, I was aware that Mr. Ross had resigned under some form of agreement with APFA in 2018, but I did not know all the specific terms of that agreement. Upon taking office, I learned that Mr. Ross had signed a "Transition Agreement" with the APFA Board of Directors in March 2018, but that the union did not have a copy of the executed agreement.  I and the other newly elected National Officers requested a copy from prior APFA counsel who had been involved in the Transition Agreement.  We received a copy of that Agreement in May 2020.

9. In 2020, APFA retained William W. Osborne, Jr., an attorney expert in the laws governing internal union affairs and union members rights, to provide legal advice regarding member inquiries for information and dealings with the Department of Labor, among other things.  After consulting with Mr. Osborne, I and the other National Officers decided that the Transition Agreement should be made available for review by members who requested such review under the APFA Constitution and federal law. I advised Mr. Ross by email that this disclosure would be made and the Transition Agreement was then made available for review.

10. Under the APFA Constitution, the National President and other National Officers serve on the union's Executive Committee. One of the Executive Committee's functions is to review charges filed by an APFA member against another union member under Article VII of the APFA Constitution, and to determine by majority vote if the charges are "timely", "specific" and "valid" as those terms are applied under APFA Constitution. This is a threshold determination in the Article VII process, subject to independent review by an Article VII arbitrator.

11. In November, 2020, I became aware that two union members – Melissa Chinery and Sandra Lee – had filed charges against Robert Ross and Eugenio Vargas under Article VII of the APFA Constitution. I had no role in their decision to file such charges, nor in the drafting or filing of the charges. My only role in the Article VII process initiated by Ms. Chinery and Ms. Lee, with regard to charges filed against both Mr. Ross and Mr. Vargas, was in my capacity as an Executive Committee member responsible for voting on the threshold issues of whether the charges were "timely", "specific" and "valid" under the APFA Constitution.

12. The Article VII Arbitration decisions regarding Mr. Ross and Mr. Vargas addressed issues which I felt were of utmost importance to the APFA membership, including the obligations of APFA National Officers to the union and its membership. In addition, the awards required APFA to make significant changes to its financial policies going forward. After the decisions were issued, it was critical for the membership to be aware of the outcome in both cases, which involved among other things, findings that union funds (which came from union members in the first place) had been misused and not properly accounted for by prior elected leadership and affected the future operations of our union. Accordingly, APFA published two "Hotlines" to APFA members advising them of the decisions and their significance. I firmly

believed, and continue to believe, that it was our obligation as National Officers to provide this information to APFA members. Copies of the Hotlines we authorized regarding the Ross and Vargas arbitration awards are attached hereto as Exhibits A (3/24/22 Email "APFA Receives Article VII Arbitration Awards") and B (8/27/22 Email, "Supplemental Arbitrator Decisions for Article VII Charges Received". I believed at the time of publication of both Hotlines, and believe today, that all of the factual statements therein are true.

13. I did not report any debt owed by Mr. Ross to APFA to any credit reporting agency.

14. I understand that Mr. Ross and Mr. Vargas both alleged that I have in some way been motivated in my actions regarding the overpayment to Mr. Ross, the Article VII proceedings, and the publication of the above-referenced Hotlines, by a desire to penalize or retaliate against them for their supposed opposition to a merger between APFA and another labor organization. This allegation is false. I did not take any steps with regard to Mr. Ross or Mr. Vargas based on either my view or their view regarding a union merger. My actions described above have been in my capacity as National President of APFA and were all taken in furtherance of what I view as my fiduciary duty to the organization and its membership. Moreover, since I came into office in 2020, there have been no steps taken toward any such merger on behalf of the APFA, not by myself or any other officer or representative of APFA of which I am aware.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23d day of April 2024.

*Julie Hedrick*

# 3.24.22 – APFA Receives Article VII Arbitration Awards



Thursday, March 24, 2022

On March 19th, Arbitrator Ruben R. Armendariz issued a decision in Article VII charges brought under the APFA Constitution and Policy Manual against former APFA National President Bob Ross. Arbitrator Armendariz barred Ross from serving in any APFA position for life, ordered Ross to resign as San Francisco Base President, ordered Ross to repay APFA a substantial sum of money, and ordered an independent audit of certain expenses.

This decision follows a February 18th, 2022 decision that barred former APFA National Treasurer Eugenio Vargas from holding any APFA position for life and fined him half the cost of the arbitration, among other remedies.

Arbitrator Armendariz also ordered sweeping changes in the APFA financial policy, which requires training on allowable expenses, and instructed APFA to create a separate body of trained forensic accountants. This ruling demonstrates that this organization has spent years operating without proper financial controls. We have attached the decisions below and encourage all members to educate themselves on these issues.

APPX. 0512

These charges were brought by APFA members Melissa Chinery and Sandra Lee under Article VII of the APFA Constitution. We thank them for bringing these issues forward. The fact that we are in this place illustrates the need for more reform. You deserve to have your dues money spent according to the strictest financial standards. The dues dollars that allow our union to operate and provide our paychecks are your dollars, and we have a fiduciary responsibility to safeguard union finances.

When our administration took office, we supported financial transparency and committed to upholding the language that members have the right to review the financial information of the union under Article III of the APFA Constitution and federal labor law. Previously, this union has prevented members from reviewing all financial documents. Following prior legal advice, members were only allowed to view monthly financial reports and the LM-2 reports (our annual Department of Labor filing). We believe our past outside attorneys and advisors guided us improperly. We will continue to ensure members are not kept in the dark about dues spending.

To view the Chinery-Lee v Ross Arbitration Award, please click **here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/7488c141-524c-97d2-1cd8-53b497ea5173/22_Corrected_Decision_Robert_Ross_1.pdf).

To view the Chinery-Lee v Vargas Arbitration Award, please click **here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/2eb32bb3-8897-24c5-50a7-e8be520735c0/22_Decision_Eugenio_Vargas.pdf).

**Next Steps: Ensuring Financial Transparency and Accountability at APFA**

These decisions are a wake-up call for our entire union. As an independent union, we have no parent body to scrutinize our actions and must hold ourselves to the strictest standards. In the coming months, we will be reviewing the APFA Policy Manual to further reform APFA's financial policies. We will fully cooperate with Arbitrator Armendariz's decisions and will draw on the expertise of legal and financial experts.

Financial accountability and transparency have been a priority for our administration. We have taken several steps to ensure that APFA is handling your dues dollars responsibly, including:

- Increasing membership visibility into our financial reports, including audits, LM-2 filings, monthly financial reports, expense and mileage reports, credit card statements, signed contracts and agreements, and payroll registers.
- PA/AR removals (flat rate of 5 hours per day) used for all known meetings (such as Board of Director's Meetings and Executive Committee Meetings). PA/AR days are pre-planned absences placed onto a union Representative's schedule before PBS processes and count towards the Representative's PBS award max (**Policy Manual 5.C.1.g** (https://www.apfa.org/members/)).
- Enforcement of the Financial Reform Initiative resolutions passed at the March 2021 APFA Annual Convention, which included the following updates to the APFA Policy Manual:

- **Resolution #8- APFA Issued Credit Cards** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/33410129-1e48-4d7f-9286-9085e19b3a86/2021_Conv_08_APFA_Issued_Credit_Cards.01.pdf) creates a new section 5.L in the Policy Manual and limits APFA credit card usage to National Officers. It also requires accountability by ensuring that another National Officer has to sign off on charges, requires strict documentation of all charges, and implements twice-yearly reviews of credit card activity by the Budget Committee. At least one (1) random audit will be performed by the Budget Committee every six (6) months to ensure proper spending, and training on the policy will be required by all incoming National Officers.
- **Resolution #9- APFA Apartments** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/c4308b62-2a91-4601-ad04-cfb5a33d7e1a/2021_Conv_09_APFA_Apartments.01.pdf) puts more stringent guidelines on spending and inventory for APFA provided apartments. The Budget Committee shall maintain a table of the approved costs for purchasing new or replacement items. It adds a new inventory system to track all items belonging to APFA.
- **Resolution #10- Business Related Meals** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/ce5361e7-6fd8-4da8-8b5c-17d7420fab2d/2021_Conv_10_Business_Related_Meals.01.pdf) adds policy for group meals to ensure compliance with the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) regarding meals purchased using an APFA credit card. All meal charges must be accompanied by a written explanation of the <u>specific</u> union business conducted during the meal and the full names and titles of all attendees.
- **Resolution #11- Rental Car Policy & APFA Provided Transportation** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/3f9e49a6-7fe8-421b-aaed-2a21da0f9494/2021_Conv_11_Rental_Car_Polilcy_APFA_Provided_Transportion.01.pdf) adds language that any APFA Representative on union business in DFW should make every effort to utilize APFA-owned vehicles before using a taxi, rental cars, or other paid forms of transportation. This resolution also revises, further defines, and limits APFA Policy Manual Section 5.H.4 by limiting rental car usage by incoming National Officers to thirty (30) days, except in extenuating circumstances and only upon approval from the APFA Executive Committee.
- **Resolution #12- National Officer Relocation** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/f2c34cd8-f670-44fd-b288-741a6b9fac5f/2021_Conv_12_National_Officer_Relocation.01.pdf) updates the amount allowed for a National Officer to move to DFW. Instead of offering $10,000 round trip for a move to DFW, the Budget Committee shall maintain a table of approved relocation costs. Relocation reimbursement may be provided in accordance with the table.This resolution also limits the time in which a National Officer must decide to move to DFW or take an APFA provided apartment. This change allows the National Officer three (3) months from the election date to make their decision.
This resolution also limits the amount of time a National Officer may reside in a hotel while deciding to move to DFW or take an APFA apartment. If a National Officer elects to live in an APFA apartment while in DFW, they will not be paid moving expenses if they suddenly

change their mind and decide to relocate to DFW.

- **Resolution #13- Collection of Non-Dues Related Monies Owed by APFA Representatives** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/82664914-049c-4ad0-92a7-580d909aa465/2021_Conv_13_Collection_of_Funds_from_APFA_Representatives.01.pdf) adds a new section to the APFA Policy Manual, Section 7.J. It states that Representatives owing non-dues related monies to APFA will receive written notification from the National Treasurer and ensures payment or a payment plan within thirty (30) days of receipt of such notification. If no payment is received, the monies will be sent to a collection agency.

- **Resolution #14- Resignation or Recall of a National Officer** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/901dadb6-fdd1-4990-bd05-b639a67cb8d1/2021_Conv_14_Resignation_or_Recall_of_a_National_Officer.01.pdf) adds new language. Before this resolution, APFA had no written policy or procedure outlining pay and benefits for a resigning or recalled National Officer. This resolution adds a new Section 6.E to the APFA Policy Manual outlining the pay and benefits for a resigning or recalled National Officer and will remove the possibility of any future National Officer exit agreements.

We will continue to review policies that have been in place for many years and make the changes necessary to ensure APFA is compliant with the Office of Labor-Management Standards (OLMS), the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), and the Internal Revenue Service (IRS) standards for labor unions.

In Solidarity,

*Julie*

**Julie Hedrick**
*APFA National President*

---

*Posted in Hotlines - 2022 (https://www.apfa.org/category/hotline-archives/hotlines-2022/) and tagged March 2022 (https://www.apfa.org/tag/march-2022/), National President (https://www.apfa.org/tag/national-president/)*

(/)

Log In (/account/login/)

/)

# 8.27.22 – Supplemental Arbitrator Decisions for Article VII Charges Received



Saturday, August 27, 2022

### Supplemental Arbitrator Decisions for Article VII Charges Received

On March 24, 2022, we posted a **hotline** (https://www.apfa.org/2022/03/24/3-24-22-apfa-receives-article-vii-arbitration-awards/) notifying APFA members of the issuance of arbitration decisions in connection with the charges filed by APFA members against former APFA National President Bob Ross and former APFA National Treasurer Eugenio Vargas under Article VII of the **APFA Constitution** (https://www.apfa.org/members/).

In both decisions, Arbitrator Ruben R. Armendariz ordered the APFA Board of Directors (BOD) or the APFA Executive Committee (EC) to hire an Independent Forensic Auditor to audit various charges and expenses by Ross and Vargas. The audits are now complete. As a result of the auditor's findings, on August 24, 2022, Arbitrator Armendariz issued a *Supplemental Decision and Remedy Modification* in each case, which modified the remedies in both of the original decisions to reflect the Independent Forensic Auditor's identified items.

APPX. 0516

**To view the *Supplemental Decision and Remedy Modification* for former APFA National President Bob Ross, click here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/c6c7b590-83cd-2457-3d3b-1ec0d1153d79/Supplemental_Decision_and_Remedy_Modification_Ross_76_.pdf).

**To view the *Supplemental Decision and remedy Modification* for former National Treasurer Eugenio Vargas, click here** (https://mcusercontent.com/1450c9c25bd3b5096022a9f71/files/aa262ce2-12c9-ad49-bc8f-cb9043a57633/Supplemental_Decision_and_Remedy_Modification_Eugenio_Vargas_002_68_.pdf).

**Independent Forensic Auditor Findings**
**for Former National President Bob Ross**

In his March 19, 2022, decision in connection with the charges against Bob Ross, Arbitrator Armendariz ordered as one aspect of the remedy that:

"The APFA will hire an Independent Forensic Auditor to audit Robert Ross' weekly reports, monthly reports and APFA credit card charges from April 1, 2016, through July 2018 and perform the following tasks:

*Specifically:*

1. *The Auditor shall inspect the receipts for the Ross family vacation taken in the Grand Canyon in August 2016. Ross claimed all of hotel stays, meals and mileage charges as relocation moving expenses when some are for a personal vacation. Please determine what costs should not have been claimed as relocation moving expenses. Ross is liable for the excess cost and is hereby Ordered to repay APFA for all inappropriate charges!*
2. *The Auditor shall inspect Ross' APFA credit card usage for personal and group meals and purchases for personal items such as tools, toiletries, bath towels, and candy from April 1, 2016, through July 2018 and determine the cost of all inappropriate charges. If no documentation was provided to support each purchase was a union related business cost, then Ross is liable for all inappropriate charges and is hereby Ordered to repay the APFA for all inappropriate charges!*
3. *The Auditor shall inspect all of Ross' rental car usage from April 1, 2016, through October 16, 2016, and determine if these rentals were for union related business. APFA paid for the rental cars but there should be documentation to show if it was for union related business. If not, Ross is to be assessed the cost of the rental cars during the above period and is hereby Ordered to repay APFA for inappropriate rental car usage!*
4. *The Auditor shall inspect all of Ross' claimed mileage from the Sacramento Airport to his residence (42 miles) and return (42 miles) as well as all monthly parking of his personal car. He claimed $105.00 per month from April 1, 2016, through July 2016 to park his car at the Sacramento airport. Ross is to be assessed the mileage and monthly parking he claimed, and Ross is hereby Ordered to repay APFA for all of these inappropriate charges!"*

Upon completion of the audit, the Independent Forensic Auditor prepared a report which was submitted to the Arbitrator. In that report, the Auditor determined, after review of all the available financial records, that former National President Ross owed an additional *$20,336.19* to the Membership of the APFA, in addition to the monies the Arbitrator had already found to be owed in his March 18, 2022, decision. Based on the Auditor's findings and report, the Arbitrator issued his August 24, 2022, *Supplemental Decision and Remedy Modification*, **linked above, in which he concluded and ordered that Ross owed and shall repay the APFA membership the following total amounts:**

*Click chart to enlarge*

| Repayment Due to APFA from Former National President Bob Ross | |
|---|---|
| Excess Vacation Payout | $5,436.47 |
| Bear Creek Apartment Lease | $8,106.13 |
| Personal Credit Card Charges on APFA credit card (non-Union purpose, per audit) | $12,274.00 |
| Relocation Expenses (per audit) | $775.05 |
| Car Rentals (per audit) | $6,454.38 |
| Airport Mileage and Parking (per audit) | $832.76 |
| Arbitration Fees | $10,217.96 |
| Forensic Auditor Fee | $14,825.00 |
| Furniture Delivered to Residence | $3,637.00 |
| **Total amount owed to APFA:** | **$62,558.75** |

(https://mcusercontent.com/1450c9c25bd3b5096022a9f71/images/c73205ef-8c42-9e14-a8d8-22c9b50e318b.png)

**Independent Forensic Auditor Findings
for Former National Treasurer Eugenio Vargas**

In his February 18, 2022, decision, as clarified by his March 10, 2022, supplemental decision, in connection with the charges against Eugenio Vargas, Arbitrator Armendariz, ordered as one aspect of the remedy that:

*"1. Issue No. 1 is remanded to the BOD or EC to hire an Independent Auditor to audit Vargas credit card charges during his term as National Treasurer. Vargas is hereby Ordered to repay APFA for all meals he purchased on the APFA credit card for himself and for all other meals he has not properly documented. If he has failed to provide documentation to support the purchase of the meal expense, the Independent Auditor must determine if said expense was or was not for the sole purpose of conducting Union business. Moreover, the audit must comply with federal income tax guidelines which distinguish between personal and nonpersonal expenses."*

APPX. 0518

Upon completion of the audit, as was done in the Ross case, the Independent Forensic Auditor prepared a report which was submitted to the Arbitrator. In that report, the Auditor determined, after review of all the available financial records, that former National Treasurer Eugenio Vargas owed an additional *$13,914.87* to the Membership of the APFA, in addition to the monies the Arbitrator had already found to be owed in his February 18, 2022, decision and March 10, 2022, supplemental decision. Based on the Auditor's findings and report, the Arbitrator issued his August 24, 2022, *Supplemental Decision and Remedy Modification*, linked above, in which he concluded and ordered that Vargas owed and shall repay the APFA membership the following total amounts:

Click chart to enlarge

| Repayment Due to APFA from Former National Treasurer Eugenio Vargas | |
|---|---|
| Personal Credit Card Charges on APFA Credit Card (non-Union purpose, per audit) | $13,914.87 |
| *Half* of the Arbitration Fee* (per Arbitrator) | $8,623.16 |
| Forensic Auditor Fee | $8,425.00 |
| **Total amount owed to APFA:** | **$30,963.03** |

*The remaining $8,623.16 Arbitration Fee charged to the APFA was paid with your dues money.*

(https://mcusercontent.com/1450c9c25bd3b5096022a9f71/images/27f093bf-6b79-8145-ff1c-84899ef797e6.png)

---

In addition to the monetary amounts that Arbitrator Armendariz ordered Ross and Vargas to repay APFA, he further ordered that the APFA must take certain steps to reform the way we do business. Your APFA Leadership is in the process implementing financial reforms to ensure APFA complies with this ruling. Arbitrator Armendariz ordered:

- "The APFA if it hasn't done so, must create a separate body of trained forensic accountants to oversee the annual audit and to create procedures and recommendations to preclude fraud for the BOD's review and action to be included within the Policy Manual.
- National Officers or Officers who have the authority to extend APFA to credit or use of an APFA credit card must be held economically responsible. The language created must be very clear and unambiguous. Training over the LMRDA must be a requirement for all National Officers or any person who can extend APFA to credit and whom is given an APFA credit card. These individuals must sign a document declaring and attesting that they have read and understand their responsibilities in using an APFA credit card or extending credit to the APFA for rental cars, apartments, etc., and that negligence will not be tolerated and will be dealt with severe penalties."

APFA is an independent union and does not have a parent body to scrutinize the actions of the National Officers. Therefore, changes to the Policy Manual are necessary to ensure financial transparency and integrity. Earlier this month, your APFA Board of Directors unanimously approved a resolution that updates and clarifies the APFA credit card policy. Once the minutes of the meeting are available, we will send a communication detailing the changes.
This administration since day one has taken steps to ensure member access to all of APFA's financial records and reports, including audits, LM-2 filings, monthly financial reports, expense and mileage reports, officer credit card statements, signed contracts and agreements, and payroll registers. And we are in the process of taking the actions necessary to implement the financial reforms as ordered by the Arbitrator. All APFA Members in good standing may review these documents for the current and former administrations by contacting the APFA National Treasurer.

In Solidarity,

Julie Hedrick, National President
Larry Salas, National Vice President
Josh Black, National Secretary
Erik Harris, National Treasurer

---

*Posted in Hotlines - 2022 (https://www.apfa.org/category/hotline-archives/hotlines-2022/) and tagged Arbitration (https://www.apfa.org/tag/arbitration/), August 2022 (https://www.apfa.org/tag/august-2022/)*

(/)

**APFA Headquarters**
1004 West Euless Boulevard
Euless, Texas 76040

**M-F: 9:00AM - 5:00PM (CT)**
Phone: (817) 540-0108
(tel:8175400108)

 **Call APFA**

 **Chat APFA**

 **APFA Events**

**Contract & Scheduling Desk**
M-F: 7:00AM - 7:00PM (CT)
Phone: (817) 540-0108
(tel:8175400108)

**After-Hours Live Chat**
M-F: 3:00PM - 11:00 PM (CT)
Sat-Sun: 9:00AM - 5:00PM (CT)

**Virtual Retirement Seminar – April 23**
(https://www.apfa.org/event/virtu

APPX. 0520