TAB 3

## DECLARATION OF ERIK HARRIS

1.      I am an adult resident of the State of California, and I make this Declaration based on my personal knowledge and records maintained in the usual course of business by the Association of Professional Flight Attendants ("APFA").

2.      I am employed as a Flight Attendant by American Airlines, and I have served as the National Treasurer of APFA, an elected position within that organization, since April 2020. Prior to being elected National Treasurer, I also served as the APFA's Contract Administration Department Chair and served on APFA's Budget Committee, among other things.

3.      The APFA is the certified collective bargaining representative of the Flight Attendants employed by American Airlines.  The internal affairs of the APFA are governed by a Constitution and a Policy Manual, in addition to applicable law.  True and correct copies of these documents are included as Exhibits A-B to the Declaration of Joshua Black.

4.      APFA's National Officers are elected every four years. In the campaign leading to my election in 2020, I ran on a slate with Julie Hedrick (who was elected National President), Larry Salas (who was elected National Vice President), and Josh Black (who was elected National Secretary).  One of our primary campaign themes was a pledge to establish transparency into internal union affairs for all APFA members.  We believed that prior union administrations had not provided union members with the information they needed and were entitled to review and pledged to take action to change that past practice. We have expanded members' access to information concerning negotiations, APFA's financial records and grievances in process in APFA's SBA department.

5.      Pursuant to Article II, Section 3 of the APFA Constitution, APFA members have a right of access to all administrative and financial reports and records. Under Section 7.G.1 of the

APFA Policy Manual, financial records may be accessed for viewing by members through their Base President or through the Office of the National Treasurer.

6. On August 26, 2019, the APFA Board of Directors passed a resolution documenting its determination that three of the National Officers who had served with former National President Robert Ross, who served from April 2016 until his resignation in March 2018, had all received funds to which they were not entitled to at the time they left office. These officers included Eugenio Vargas (National Treasurer), as well as Nena Martin (National Vice-President), and Marcy Dunaway (National Secretary). While Mr. Ross resigned before his term ended, the remaining officers in his administration (Vargas, Martin and Dunaway) were voted out of office in a subsequent rerun election ordered by the United States Department of Labor.

7. The essence of the overpayment found by the Board of Directors was that, in calculating the dollar value of accrued sick leave and vacation pay to be paid out at the end of their terms, Mr. Vargas as Treasurer had generated an inflated valuation of the amount of annual salary each officer received, and used that inflated annual salary amount to determine the dollar value of unused sick and vacation days to be paid out at the end of their terms. To determine whether overpayments had occurred for Mr. Vargas, Ms. Martin and Ms. Dunaway based on this inflated valuation, the Board of Directors relied on analysis by long-standing APFA outside accountant Hal O'Neil, from the firm Wood, Stephens, & O'Neil. Mr. O'Neil prepared documents showing, for each such former Officer, how much they were overpaid.

8. APFA records show that on or about September 18, 2019, APFA sent a letter to Mr. Vargas advising him of the overpayment he had received, providing him with a copy of the Board of Directors' resolution and the calculation of the overpayment, and requesting his

2

repayment of the excess amount he had received. A true and correct copy of this letter is attached as Exhibit A.

9.      APFA's records show that Mr. Vargas, Ms. Martin and Ms. Dunaway each entered into agreements to return the amounts which had been determined to be overpaid. In Mr. Vargas's case, the overpayment was $4,143.57, which he agreed to repay in full.

10.     Prior to me taking office in April 2020, two APFA members (Melissa Chinery and Sandra Lee) filed internal union charges against the then-APFA National Treasurer based on a claim that he had refused to allow them access to certain financial records pertaining to Mr. Ross and other former National Officers. Those charges were withdrawn after I took office, but those members continued to seek access to the same financial records. Based on our administration's interpretation of the APFA Constitution and Policy Manual, as well as my understanding of federal law regarding the rights of union members, I allowed Ms. Chinery and Ms. Lee, as Union members, to review APFA records regarding payments made to prior APFA officers and representatives, including but not limited to Mr. Ross.

11.     As of April 2020, I was aware that Mr. Ross had resigned under some form of agreement with APFA in 2018, but I did not know any of the details. Upon taking office, I learned that Mr. Ross had signed a "Transition Agreement" with the APFA Board of Directors in March 2018, but that the union did not have a copy of the executed agreement. In order to address the outstanding requests to review APFA documents from members who had also complained to the U.S. Department of Labor about their efforts to review the documents, the newly elected National Officers requested a copy from prior APFA counsel who had been involved in the Transition Agreement. We received a copy of that Agreement in May 2020. A true and correct copy of that Agreement is attached as Exhibit B.

3

12.     After receiving the Transition Agreement, the National Officers provided a copy to the APFA Board of Directors.   Some Board members requested that we conduct a review of payments made to Mr. Ross in connection with his resignation in order to determine if he had been paid correctly.

13.     Because Mr. O'Neil of Wood, Stephens & O'Neil had performed the prior analysis, I asked him to review the payments Mr. Ross had received when he resigned.   I provided him with a copy of the Transition Agreement, and all records of payments to Mr. Ross from the time of his resignation.   My review of the Union's records confirmed that Mr. Ross was paid out for his sick and vacation leave on March 29, 2018, shortly after he left office.

14.     Mr. O'Neil and I agreed he would review two separate issues with regard to payment of accrued sick and vacation days when he left office.   One was whether Mr. Ross had been paid the correct number of days of accrued sick and vacation days; and the other was whether – regardless of the number of days – the correct daily rate had been applied to those days. This latter issue (the dollar amount per day) had been previously identified in connection with Mr. Vargas, Ms. Martin and Ms. Dunaway. The former issue (the number of days to be paid) was potentially unique to Mr. Ross because he, unlike the other former officers, left office early pursuant to a Transition Agreement

15.     In late September 2020, Mr. O'Neil's office provided me with a set of "workpapers" regarding the payments to Mr. Ross, Mr. Vargas, Ms. Martin and Ms. Dunaway. With respect to Mr. Ross, the workpapers included a 2-page document labelled "Overpayment Calculation" which showed, similarly to the calculations for the other former Officers, the amounts he had been "paid in error", and which showed a "Total overpayment – due to APFA" of $5436.47.

4

16.     The APFA Board of Directors met in late October 2020. I had been asked by Board members to provide the results of Mr. O'Neil's analysis. On October 22, 2020, Mr. O'Neil provided me with a Memorandum and a set of Schedules for each of the individuals who served as National Officers during the Ross administration, including Mr. Ross. A true and correct copy of this Memorandum is included as Exhibit A to the Declaration of Hal O'Neil dated March 21, 2024, submitted in this matter. "Schedule C" for Mr. Ross was titled "Overpayment Calculation," and showed that the amount paid for each day of accrued vacation and sick pay to Mr. Ross was an "Overpayment", with the original amounts actually paid having been "paid in error," and showing a "Total overpayment – due to APFA" of $5436.47. The accompanying memorandum discussed the "overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers." *Id.* The memo went on to note that the Transition Agreement which Mr. Ross had signed "doesn't specify that the payments be made in accordance with policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement." *Id.*

17.     Based on my discussions with Mr. O'Neil and the context of the preparation of his analysis, I understood the above quoted sections of the Memorandum, taken together with the Overpayment Schedule, to mean that Mr. O'Neil believed the number of days of accrued and unused sick and vacation which had been paid to Mr. Ross was consistent with the Transition Agreement read without regard to the APFA Policy Manual, but that the daily rate applied to each such day was in excess of that which was allowed, and therefore was an overpayment as reflected on Schedule C.

5

18.    I presented Mr. O'Neil's overpayment calculation (Schedule C) to the Board of Directors, and a majority of the Board directed me, as National Treasurer, to seek repayment from Mr. Ross in the same manner as the overpayments to Mr. Vargas and the other former officers had been sought.

19.    Accordingly, on November 24, 2020, I sent a letter to Mr. Ross advising him of the overpayment calculation and seeking his repayment by January 1, 2021, a true and correct copy of which is attached as Exhibit C.   I advised the Board of Directors of this demand on the following day.  A true and correct copy of this communication is attached as Exhibit D.

20.    Mr. Ross did not repay the amount owed, except to propose making payments of $100 per month over a three-year period, which the Board of Directors found unacceptable, and after a series of emails and phone calls with Mr. Ross, I referred the amount due to Diversified Credit, a debt collection agency which APFA has relied on for many years, starting before my term in office.  The purpose of that referral was to have experienced professionals handle the collection and either reach a repayment agreement or a court judgment.

21.    I did not report Mr. Ross' debt to any credit reporting agency.

22.    Melissa Chinery and Sandra Lee filed charges against Mr. Ross and Mr. Vargas under Article VII of the APFA's Constitution. I was called as a witness in both cases and I testified in each case truthfully under oath.  I played no role in their preparation of the charges, nor the decision by Ms. Chinery and Ms. Lee to file charges.  In my capacity as an Executive Committee member, I voted on whether the charges were "timely", "specific" and "valid" under the APFA Constitution, but otherwise played no role in the processing of the charges.

23.    I understand that Mr. Ross and Mr. Vargas both allege that I have in some way been motivated in my actions regarding the overpayment to Mr. Ross and the Article VII proceedings,

6

by a desire to penalize or retaliate against them for their supposed opposition to a merger between APFA and another labor organization. This allegation is false. I did not take any steps with regard to Mr. Ross or Mr. Vargas based on either my view or their view regarding a union merger. My actions described above have been in my capacity as National Treasurer of APFA and were all taken in furtherance of what I view as my fiduciary duty to the organization and its membership, as well as the directions given to me by the APFA Board of Directors. Moreover, since I came into office in 2020, there have been no steps taken toward any such merger on behalf of APFA, not by myself or any other officer or representative of APFA of which I am aware.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of April 2024.

7

Harris Decl. Ex. A



**Association of Professional Flight Attendants**
Representing the Flight Attendants of American Airlines

September 18, 2019

**BY CERTIFIED MAIL #7018 0680 0001 3478 7875 RETURN RECEIPT REQUESTED**

Eugenio Vargas #446854
1616 Brookhaven Cir
Bedford, TX 76022

Dear Eugenio,

As you were notified on September 4, 2019, a resolution was passed at the August 26, 2019 special meeting of the Board of Directors, requiring that the Union be made whole with respect to certain payouts made to you in 2018 which incorrectly included MEA and SAF in the calculation without prior BOD approval. A copy of that resolution is enclosed.

An independent auditor has calculated the incorrect payout amounts. Those calculations and amounts are in the enclosed spreadsheet. Please send a check made payable to APFA in the amount of $4,143.57 to APFA headquarters, 1004 West Euless Blvd., Euless, TX 76040, within 10 days of receipt of this letter. Credit card payment will also be accepted by calling APFA headquarters at 817-540-0108 ext. 8141.

We look forward to your cooperation.

Thank you,

Susannah Bender
In-House Counsel

cc:     Lori Bassani
        Liz Geiss
        Lisabeth Hillman
        Craig Gunter
        Mark Richard

Enclosure(s)

1004 West Euless Blvd   •   Euless, Texas 76040
Tel: (817) 540-0108   •   Fax: (817) 540-2077   •   www.apfa.org

EXHIBIT   3
WIT:  Vargas
DATE:  2-2-24
A. MANDY COSSE

**APPX 0529**

Harris Decl., Ex. A

# A P F A
## BOARD OF DIRECTORS MEETING

## SPECIAL BOARD OF DIRECTORS MEETING
### August 26, 2019

### HOLIDAY INN DFW SOUTH

| Resolution #: | 2 |
| Maker: | Gunter |
| Second: | Babl |
| Date: | 08/26/2019 |
| Time: | 11:25 a.m. |

**Resolution Name:** National Officer Payouts

☐ AFFECTS POLICY MANUAL:

| YES | = Yes | ABS | = Abstain | PXY | = Proxy Vote |
| NO | = No | N/A | = Absent | REC | = Recuse |
| PASS | = Pass | | | | |

COMMENTS:

| | B O S | C L T | D C A | D F W | L A X | L G A | M I A | O R D | P H L | P H X | R D U | S F O | S T L | PRES Tie-Breaker |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Milenkovic | Hazlewood | Pennel | Truan | Nikides | Norvell | Trautman | Wroble | Kaswinkel | Babl | Kelbo | Toms | Martin | Bassani |
| YES | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ⊠ | ☐ | ☐ |
| NO | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PASS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| ABS | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ⊠ | ☐ |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PXY | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| REC | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| | YES: 12 | NO: 0 | ABSTAIN: 1 | ABSENT: 0 |

**Status:** Passed ☐   Failed ☐   Tabled ☐   Withdrawn ☐   Show of Hands ☐

---

**WHEREAS** in the course of performing the fiscal year end financials, a possible overpayment of accrued leave pay outs was discovered to have been made to three prior officers of the organization;

**WHEREAS** as a result of this discovery, research was initiated in order to determine the past practice in interpreting the APFA Policy Manual section 6(B)and to confirm whether in fact overpayments were made and if so in what amount.

APPX. 0530

**APFA**
**BOARD OF DIRECTORS MEETING**

**WHEREAS** as the results of the investigation and research confirmed that in fact there was a deviation from the past practice in interpreting the policies of the APFA with respect to pay outs

**THEREFOR BE IT RESOLVED,** that:

1. APFA make demand that the overpayments made to Eugenio Vargas, Nena Martin, Marcy Dunaway be recovered and the APFA be made whole; and

2. That the past practice of interpreting the term salary be continued to exclude MEA and SAF until such time as the policy is amended in accordance with the constitution of APFA.

**APPX. 0531**

**Harris Decl., Ex. A**

| National Officer: | Eugenio Vargas | | | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | |
| **Vacation Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ | 113,021.02 | 309.65 | 14 | $ 4,335.10 | (paid 3/29/2018) | |
| | Correct calculation amount | $ | 97,662.72 | 267.57 | 14 | $ 3,745.98 | | |
| | | | | | Overpayment | $ 589.12 | $ 589.12 | |
| **Sick Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ | 113,021.02 | 309.65 | 12 | $ 3,715.80 | (paid 3/29/2018) | |
| | Correct calculation amount | $ | 97,662.72 | 267.57 | 12 | $ 3,210.84 | | |
| | | | | | Overpayment | $ 504.96 | $ 504.96 | |
| **End of term payout - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ | 111,317.70 | 304.98 | 54 | $ 16,468.92 | (paid 6/29/2018) | |
| | Correct calculation amount | $ | 97,662.60 | 267.57 | 54 | $ 14,448.78 | | |
| | | | | | Overpayment | $ 2,020.14 | $ 2,020.14 | |
| **Vacation Pay - 2017** (adjustment paid in 2018....all paid in error) | | | | | Overpayment | $ 523.46 | $ 523.46 | (paid 3/29/2018) |
| **Sick Pay - 2017** (adjustment paid in 2018....all paid in error) | | | | | Overpayment | $ 448.68 | $ 448.68 | (paid 3/29/2018) |
| | | | | | Overpayment subtotal | | $ 4,086.36 | ** |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | $ 57.21 | (based on 1.4%) |
| | Total overpayment – due to APFA | | | | | | $ 4,143.57 | |
| (a) - included union pay (MEA/SAF) | | | | | | | | |

## TRANSITION AGREEMENT

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1.  ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2.  ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3.  APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4.  APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5.  APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

EXHIBIT 20
WIT: Ross
DATE: 3-15-24
A. IGNACIO, CSR, RPR

APPX 0533

payment through 2019.

6.      APFA and ROSS will each prepare a communication regarding ROSS's
        resignation.   APFA shall disseminate said communications simultaneously
        upon the announcement of the resignation. Each statement shall be mutually
        agreed upon by both Parties prior to its distribution. Further, the Parties will
        mutually agree on talking points that shall be used for responses to inquiries
        from APFA members, the press, and the general public for use, beginning with
        the announcement.

7.      The Parties agree that the existence, terms, and content of this Agreement are
        completely confidential. ROSS agrees not to disclose the existence, terms, or
        content of this Agreement to any third party, except to his spouse, accountant,
        financial advisors, or attorney. APFA agrees not to disclose the existence,
        terms, or content of this Agreement, except to the signatories to this
        Agreement, and to any APFA officers, employees, accountants or attorneys
        who have an explicit need to know of this Agreement in order to effectuate its
        terms. The Parties shall be responsible for ensuring in writing that the
        confidentiality provisions of this Agreement are fully explained and adhered to
        by anyone to whom permitted disclosures are made pursuant to this
        paragraph. The Parties agree that they will respond to all inquiries regarding
        Ross' transition with APFA in accordance with the communications and talking
        points prepared pursuant to numbered paragraph 6 of this Agreement.

8.      ROSS agrees not to make, orally or in writing, any statements disparaging
        APFA and/or the Board of Directors, whether or not such statements legally
        constitute libel or slander, and whether such statements are made to the
        media, to other individuals, or otherwise.  Likewise, APFA's Board of Directors,
        and its officers, employees and agents who are aware of this Agreement
        pursuant to the confidentiality provisions of numbered paragraph 7 of this
        Agreement, agree not to make, orally or in writing, any statements disparaging
        ROSS or his immediate family, whether or not such statements legally
        constitute libel or slander, and whether such statements are made to the
        media, to other individuals, or otherwise.

Harris Decl. Ex. B

9.   The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10.  The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11.  The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12.  The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13.  The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA.  Venue shall be by agreement of the parties.

14.  If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15.  The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _CHARLOTTE, NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____
Robert Ross

_3/1/18_
Date

Page 3 of 4                                                         March 1, 2018:1.0

APPX. 0535

**BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):**

Amy Milenkovic- BOS      Date    3-1-18

Wanda Sarnacki - CLT      Date    3-1-2018

Robert Valenta- DCA-AA      Date    3/1/18

John Pennel – DCA-US      Date    3/1/18

Maureen Walsh Martin –DFW      Date    3/1/18

John Nikides – LAX      Date    3/1/18

Raymond Lewis – LGA      Date    3/1/18

Randy Trautman– MIA      Date    3/1/2018

Susan Wroble – ORD      Date    3/1/18

Kim Kaswinkel – PHL      Date    3/1/18

Mischel Babi – PHX      Date    3/1/18

Louise Sullivan – RDU      Date    3/1/18

Jennifer Welpott – SFO      Date    3/1/18

Matt Foust – STL      Date    3/1/18

APPX. 0536

Harris Decl. Ex. C



**Association of Professional Flight Attendants**

Representing the *Flight Attendants* of American Airlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

**RE:     Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect.  (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris@apfa.org with any questions or concerns.  Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:     APFA Board of Directors
APFA Executive Committee
Margot Nikitas, General Counsel

**APPX. 0537**



Harris Decl., Ex. C

A

## Bob Ross - National President Pay

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 116 hours | 8,280.08 |

| | | |
|---|---|---|
| Bi-monthly pay 4/1/16 - 12/31/16 | | 4,140.04 |

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 116 hours | 8,419.28 |

| | | |
|---|---|---|
| Bi-monthly pay - 1/1/17 - 5/1/17 | | 4,209.64 |

| | |
|---|---|
| 101,031.36 | Annual salary |
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 116 hours | 8,840.36 |

| | | |
|---|---|---|
| Bi-monthly pay - 5/2/17 - 12/31/17 | | 4,420.18 |

| | |
|---|---|
| 106,084.32 | Annual salary |
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| | | |
|---|---|---|
| Bi-monthly pay - 1/1/18 - 7/31/18 | | 4,495.58 |

| | |
|---|---|
| 107,893.92 | Annual salary |
| 295.60 | Daily rate for sick and vacation |

\*   Pay rates effective 4/1/16
\*\*   Pay rates effective 1/1/17 - 5/1/17
\*\*\*   Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
\*\*\*\*   Pay rates effective 1/1/18 - 7/31/18

Harris Decl., Ex. C

| National Officer: | Bob Ross | | | | | |
|---|---|---|---|---|---|---|
| | | | | | **B** | |
| | | Annual | Daily amount | Eligible | | |
| | | Salary | (divide by 365) | Days to pay | Payment | |
| Profit Sharing - 2016 | | | | | 2,652.22 | *(paid 3/10/17)* |
| Vacation Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | *(paid 3/31/17)* |
| Sick Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | *(paid 3/31/17)* |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | *(paid 6/1/17)* |
| Triple Play Grand Slam | | | | | 300.00 | *(paid 7/6/17)* |
| Grand slam | | | | | 150.00 | *(paid 1/25/18)* |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| 2071 Profit Sharing | | | | | 2,458.19 | *(paid 3/9/18)* |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | *(paid 3/29/2018)* |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | |
| | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | *(paid 3/29/2018)* |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | |
| | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | *(paid 3/29/2018)* |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | |
| Sick Pay - 2018 | | | | | | |
| | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | *(paid 3/29/2018)* |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | | | | | |
| | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | *(paid 3/29/2018)* |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | |
| End of Term - 2018 (January 1 - July 21, 2018) | | | | | | |
| | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | *(paid 3/29/2018)* |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | *(paid 3/8/19)* |

**Harris Decl. Ex. C**

| National Officer: | Bob Ross | | | **Overpayment Calculation** | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2017** | | | | | | | | | |
| | Original amount | | $  101,031.36 | 276.80 | 14 | $  3,875.20 | OK *(paid 3/31/17)* | | |
| | | | | | Overpayment | $       - | $       - | | |
| | | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | | |
| | Original amount | | $  101,031.36 | 276.80 | 12 | $  3,321.60 | OK *(paid 3/31/17)* | | |
| | | | | | Overpayment | $       - | $       - | | |
| | | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018.....all paid in error)** | | | | | Overpayment | $  968.76 | $  968.76 | | |
| | | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $  114,632.67 | 314.06 | 17 | $  5,339.02 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $  101,031.36 | 276.80 | 17 | $  4,705.60 | | | |
| | | | | | Overpayment | $  633.42 | $  633.42 | | |
| | | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $  122,121.70 | 334.58 | 29 | $  9,702.82 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 29 | $  8,572.40 | | | |
| | | | | | Overpayment | $  1,130.42 | $  1,130.42 | | |
| | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $  122,121.69 | 334.58 | 12 | $  4,014.96 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 12 | $  3,547.20 | | | |
| | | | | | Overpayment | $  467.76 | $  467.76 | | |
| | | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $  118,046.02 | 334.58 | 35 | $  11,710.30 | *(paid 3/29/2018)* | | |
| | Correct calculation amount | | $  107,893.92 | 295.60 | 35 | $  10,346.00 | | | |
| | | | | | Overpayment | $  1,364.30 | $  1,364.30 | | |

**Harris Decl., Ex. C**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **End of term payout - 2018 (January 1 - July 31, 2018)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 118,046.02 | 334.58 | 20.44 | $ | 6,838.82 | *(paid 3/29/2018)* | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 20.44 | $ | 6,042.06 | | |
| | | | | | | Overpayment | $ | 796.75 | | $ | 796.75 |
| | | | | | | | | | | |
| | | | | | | Overpayment subtotal | | | $ | 5,361.41 | ** |
| | | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | | | $ | 75.06 | *(based on 1.4%)* |
| | | | | | | | | | | |
| | | | **Total overpayment - due to APFA** | | | | | $ | 5,436.47 | |
| | | | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | | | |

10/2/23, 1:36 PM                                          Mail - Charlette Matts - Outlook

**Bob Ross' Overpayment**

**Erik Harris** <eharris@apfa.org>
Wed 11/25/2020 9:57 AM
**To:**Base Presidents <BasePresidents@apfa.org>;Executive Committee <ExecutiveCommittee@apfa.org>
**Cc:**Margot Nikitas <MNikitas@apfa.org>

📎 1 attachments (366 KB)
11 24 20 Letter to Bob Ross.pdf;

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

# Erik Harris *Pronouns; he, him, his*
National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

