# TAB 6

Martin v. Local 556, Transp. Workers Union of America AFL–CIO, Not Reported in...
2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 2 of 37   PageID 6587

2014 WL 4358480
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

Stacy K. MARTIN, et al., Plaintiffs,

v.

LOCAL 556, TRANSPORTATION
WORKERS UNION OF
AMERICA, AFL–CIO, Defendant.

Civil Action No. 3:14–CV–0500–D.
|
Signed Sept. 3, 2014.

**Attorneys and Law Firms**

Daniel B. Nelson, John F. Nelson, Nelson Pursley PLLC, Houston, TX, for Plaintiffs.

Edward Cloutman, IV, Edward B Cloutman, III, Cloutman & Cloutman, L.L.P., Dallas, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER*

SIDNEY A. FITZWATER, Chief Judge.

**\*1** In this labor dispute arising from disciplinary actions taken against officers of a union local, the court must decide whether it has subject matter jurisdiction over one claim and whether plaintiffs have stated a claim on which relief can be granted. For the reasons that follow, the court grants defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(1), grants in part and denies in part defendant's motion to dismiss under Rule 12(b)(6), and grants plaintiffs leave to amend as to all claims that are curable by amendment.

I

This is an action by plaintiffs Stacy K. Martin ("Martin"), Chris Click ("Click"), and Jerry Lindemann ("Lindemann") against defendant Local 556, Transportation Workers Union of America, AFL–CIO ("TWU Local"), seeking relief under the Norris LaGuardia Act, 29 U.S.C. § § 101–15 ("NLA"), the Labor Management Relations Act of 1947, 29 U.S.C. § 141–97 ("LMRA"), and the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401–531 ("LMRDA"). Plaintiffs are flight attendants employed by Southwest Airlines. They are also members of TWU Local, the local of the labor union that represents Southwest Airlines' flight attendants.[1] Each plaintiff ran for and was elected to a union local office in 2012. Martin was elected President, Click First Vice President, and Lindemann Treasurer.

Following the elections, the President of the international union ("TWU International") requested that the TWU Local Executive Board grant leave to Thom McDaniel ("McDaniel"), the Immediate Past President of the TWU Local, so that he could accept a position with TWU International. McDaniel allegedly opposed plaintiffs during the 2012 elections. Plaintiffs contend that, as union President, Martin opposed TWU International's request because TWU International did not follow proper protocol in submitting it. The Executive Board denied the request. TWU International's President then allegedly threatened to charge Martin with violations of union rules if he continued to oppose the request. Ultimately, the dispute was submitted to arbitration, and the arbitrator ruled in McDaniel's favor.

In the spring of 2013, a member of the TWU Local Executive Board charged Click and Lindemann jointly with violations of union rules, and another member[2] separately charged Click with other union rules violations. Click's individual trial was scheduled for May 14, 2013, and Click and Lindemann's joint trial was scheduled for May 15, 2013. On May 13 the Executive Board attempted to delay the trial dates to May 22 and May 23, 2013, respectively, by insisting that Martin reschedule the trials. Martin allegedly refused to assist the Executive Board in its attempt to delay the trials on the basis that doing so would constitute a violation of union rules. Click and Lindemann attended their trials on May 14 and 15, 2013 and were acquitted of all charges. On May 16, 2013 Lindemann went on formally approved, extended medical leave. On the same day, the Executive Board notified Click and Lindemann that it was nullifying the results of the May 14 and 15 trials and scheduling their retrials for May 23 and 24, 2013, respectively. On May 23 a retrial committee found Click guilty and removed him from office. On May 24 a retrial committee found Click and Lindemann guilty, removed them from office, and banned them from holding union office for three years. Plaintiffs allege that neither Click nor Lindemann was present for the retrials on May 23 and 24. On May 16, 2013 the Executive Board also charged Martin with violating union rules. The Executive Board conducted Martin's trial on

Martin v. Local 556, Transp. Workers Union of America AFL-CIO, Not Reported in...
2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 3 of 37   PageID 6588

May 29 and 30, found him guilty, removed him from office, and banned him from holding union office for three years.

**\*2** Plaintiffs then brought the instant lawsuit against TWU Local, alleging that it had violated their rights under the LMRDA. TWU Local filed a motion to dismiss and an amended motion to dismiss. Plaintiffs then filed an amended complaint, and TWU Local filed the instant motion to dismiss the amended complaint. In its present motion, TWU Local incorporates by reference the arguments and authorities asserted in its first motion to dismiss.[3] TWU Local moves to dismiss count II of plaintiffs' amended complaint under Rule 12(b)(1) for failure to establish federal question jurisdiction, and to dismiss count I under Rule 12(b)(6) for failure to plead a plausible claim for relief under the LMRDA.

## II

The court considers first TWU Local's Rule 12(b)(1) motion to dismiss.[4]

### A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) (per curiam) (citations omitted).

### B

Plaintiffs predicate subject matter jurisdiction over count II on the jurisdictional grant found in 29 U.S.C. § 185(a) of the LMRA,[5] which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties,

without respect to the amount in controversy or without regard to the citizenship of the parties.

Section 185(a) imposes a jurisdictional requirement. *See, e.g., Tex. Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642–43, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ("In this vein, this Court has read § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), ... as granting jurisdiction over defined areas of labor law[.]"); *Hou. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indust. & Serv. Workers Int'l Union,* —— F.3d ——, 2014 WL 4197057, at \*3 (5th Cir. Aug.25, 2014) ("We have in the past read section 301(a) as a jurisdictional requirement."). "[A]n allegation of a labor contract violation is both necessary and sufficient to support subject-matter jurisdiction under section 301(a). If the court later finds the allegedly violated contract to be non-existent or invalid, it must dismiss for failure to state a claim, not for lack of jurisdiction." *Hou. Ref. L.P.,* 2014 WL 4197057, at \*5 (footnote omitted); *see also id.* at \*6 ("[T]he alleged violation of a labor contract is both necessary and sufficient to invoke federal subject-matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).").

**\*3** The amended complaint does not allege that count II pertains to a violation of a contract between an employer and a labor organization or between labor organizations. The only conceivable contract mentioned in count II is the TWU International Constitution. *See* Am. Compl. ¶¶ 73–76. But the amended complaint does not allege that the TWU International Constitution is a contract between an employer and a labor organization or between labor organizations. Plaintiffs allege that the TWU International Constitution "is a contract between [TWU] Local and its members." *Id.* at ¶ 76. They assert that the TWU Local Executive Board violated its duties and responsibilities under the TWU International Constitution. *Id.* at ¶¶ 77–80.

Accordingly, because an allegation of a labor contract violation is necessary to support subject matter jurisdiction under § 301(a), 29 U.S.C. § 185(a), and plaintiffs have not alleged such a violation, the court grants TWU Local's motion to dismiss count II of the amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

## III

TWU Local moves under Rule 12(b)(6) to dismiss count I of plaintiffs' amended complaint.

A

In deciding defendant's Rule 12(b)(6) motion, the court evaluates the sufficiency of plaintiffs' amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.,* 855 F.Supp.2d 615, 618 (N.D.Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007) (internal quotation marks and alteration omitted)). To survive defendant's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556); *see also Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' " it demands more than "labels and conclusions." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id* . (quoting *Twombly,* 550 U.S. at 555).

B

**\*4**  "The Labor–Management Reporting and Disclosure Act of 1959 was the product of congressional concern with widespread abuses of power by union leadership." *Finnegan v. Leu,* 456 U.S. 431, 435, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). Although the LMRDA as originally enacted focused on disclosure requirements and regulating union elections, over time various amendments have shifted the focus toward "protection for members of unions paralleling certain rights guaranteed by the Federal Constitution[.]" *Id.* In count I of the amended complaint, plaintiffs allege violations of the LMRDA, citing sections that deal with a host of topics, including reporting and disclosure requirements, the bill of rights for members of labor organizations, and provisions governing criminal violations of the Act. Plaintiffs request relief under § 102 of the NLA and § § 401, 411, 412, 413, 431, 481, 482, 501, 529, and 530 of the LMRDA.

IV

A

Count I must be dismissed to the extent based on § 102 of the NLA and § § 401, 413, and 530 of the LMRDA because these provisions do not expressly authorize a private cause of action. Section 102 is an introductory provision of the NLA that merely sets out the public policy underlying the Act. 29 U.S.C. § 102 ("It is necessary that [the individual unorganized worker] have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment"). Similarly, § 401 of the LMRDA declares the public policy that underlies the LMRDA. 29 U.S.C. § 401 (declaring that LRMDA is intended to protect members of labor unions from various "improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies" of the LMRA and the Railway Labor Act).

Section 413 of the LMRDA provides that nothing in § 411–15 should be interpreted to limit the rights and remedies that members of labor organizations have under other provisions of state or federal law, or under the constitution and bylaws of their respective labor organizations. *See* 29 U.S.C. § 413. It does not create a private right of action.

Section 530 is a statute that imposes criminal penalties on labor organizations that use "force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate ... any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled" under the LMRDA. 29 U.S.C. § 530. Section 530 does not create a private cause of action. The

Supreme Court "rarely implie[s] a private right of action under a criminal statute[,]" and where the Court has, " 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.' " *Chrysler Corp. v. Brown,* 441 U.S. 281, 316, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (quoting *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Section 530 does not contain any language suggesting that Congress intended to authorize a private cause of action. Thus plaintiffs do not plausibly state a claim for relief under § 530.

## B

**\*5** Count I must be dismissed to the extent based on §§ 431 and 501 of the LMRDA because, although these sections do confer a private cause of action, plaintiffs have not pleaded *any* factual allegations to state a claim for relief under either section. Section 431 pertains to certain disclosure and reporting requirements. *See* 29 U.S.C. § 431. For example, it provides that every labor organization must submit to the Secretary of Labor certain reports about the organization and annual reports that detail the organization's use of funds. *See id.* (a)-(b). Section 431 also requires that labor organizations make the information in these reports available to its members. *See id.* § 431(c). But plaintiffs have neither pleaded any factual allegations that mention the reports covered by § 431 nor alleged any failure by TWU Local to fulfill its duties related to these reports.

Section 501 imposes fiduciary obligations primarily of a pecuniary nature on the representatives of labor organizations. *See* 29 U.S.C. § 501; *see also Hoffman v. Kramer,* 362 F.3d 308, 316 n. 3 (5th Cir.2004) ("[T]he fiduciary obligations imposed are primarily pecuniary in nature-that is, having to do with the custody, control, and use of a union's money and its financial interests or property[.]"). Section 501(b) authorizes union members to bring a derivative suit on the union's behalf for a representative's violation of the duties prescribed by § 501. *See id.* § 501(b). But plaintiffs fail to plead *any* factual allegations relating to the fiduciary duties imposed in § 501, and they have therefore failed to state a plausible claim for relief on this basis.

## C

Sections 481 and 482 of the LMRDA provide the exclusive remedy for challenging a union election that has already been conducted. *See* 29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive."). Section 481 provides, in relevant part:

> [i]f the Secretary [of Labor], upon application of any member of a local labor organization, finds after [a] hearing ... that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot.

Under § 482, except in two instances, only the Secretary of Labor can bring an action for a violation of § 481. *See* 29 U.S.C. § 482(a)-(b); *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964) (noting that Congress "decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of [§ 481 ]"). A union member can bring a civil action in the following circumstances: (1) against the Secretary of Labor to review the Secretary's decision not to file an action under § 482, *see Dunlop v. Bachowski,* 421 U.S. 560, 574–75, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), *overruled on other grounds,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); and (2) to enforce "a candidate's right to distribution of campaign literature and equal access to membership lists." *Local No. 82, Furniture & Piano Moving v. Crowley,* 467 U.S. 526, 540 n. 15, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). Plaintiffs have not pleaded any factual allegations that enable the court to draw the reasonable inference that they are seeking relief under either of these exceptions. Accordingly, plaintiffs have failed to state a claim on which relief can be granted under § 481 and 482.

## V

**\*6** Plaintiffs also allege that TWU Local violated § 411, 412, and 529 of the LMRDA.

## A

Section 411 of the LMRDA sets out the core of the guarantees afforded to members of labor organizations by the LMRDA. It constitutes a "bill of rights," and it is "designed to guarantee every union member equal rights to vote and otherwise

participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Local No. 82,* 467 U.S. at 536–37. The LMRDA provides two provisions that enable a union member to enforce the member's rights under this "bill of rights:" §§ 412 and 529.

Section 412 grants union members a private cause of action for a union's infringement of the rights secured by §§ 411–15. To state a claim under § 412, plaintiffs must show (1) that they are members of a labor organization and (2) that the organization infringed a right secured by § 411, 412, 413, 414, or 415. *See Martinez v. Am. Fed'n of Gov't Emps.,* 980 F.2d 1039, 1041–42 (5th Cir.1993). "Union leaders, *per se,* are not themselves a protected class under [the LMRDA], except that they, too, may not be deprived of the basic rights attending on union membership." *Adams–Lundy v. Ass'n ofProf'l Flight Attendants,* 731 F.2d 1154, 1156 (5th Cir.1984) ("*Adams–Lundy I* "). Thus it is generally insufficient for a plaintiff to plead a plausible claim under § 412 if the plaintiff only alleges the infringement of a right that he or she only has in the capacity of a union officer. *See id.*

There is an exception to this general rule. If plaintiffs can show that their removal from office "was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members," they can state a claim for relief as officers under § 412. *See Adams–Lundy I,* 731 F.2d at 1159. To state a claim under this exception, plaintiffs must show "that the defendants are attempting to dismantle the union's electoral system, ... or that members opposing that faction are ... suppressed or threatened with reprisals." *Id.* Allegations that merely suggest that an internal union struggle is "antidemocratic" are insufficient to plausibly allege the existence of a pattern of intimidation and stifled dissent. *Id.*

Section 529 provides members a private cause of action when their union fines, suspends, expels, "or otherwise discipline[s]" them for exercising any right to which they are entitled under the LMRDA. "The primary difference between § [529] and § [412] is that § [529] protects against retaliation for the exercise of any right secured under the LMRDA, whereas § [412] only protects rights secured under [§ § 411– 15]." *United Steel Workers Local 12–369 v. United Steel Workers Int'l,* 728 F.3d 1107, 1115 (9th Cir.2013) (citing *Finnegan,* 456 U.S. at 439 n. 10). Depending on the right the member seeks to protect, §§ 412 and 529 can be entirely duplicative. *See id.* at 1115 n. 4 (citing *Finnegan,* 456 U.S. at 439 n. 10). To state a claim under § 529, plaintiffs must show that (1) they are members of a labor organization; (2) the organization fined, suspended, expelled, or otherwise disciplined them; and (3) the organization imposed the punishment in retaliation for their exercise of a right protected by the LMRDA. *See* 29 U.S.C. § 529. As under § 412, to state a claim under § 529, plaintiffs must allege that any punishment or restriction imposed by TWU Local was a limitation or restriction on their membership rights. Removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529. *See Finnegan,* 456 U.S. at 438 n. 9 (dictum) (explaining that discipline referred to in §§ 411(a)(5) and 529 means limitations on membership rights, not removal from union office); *Adams–Lundy I,* 731 F.2d at 1157 (dictum) (citing *Finnegan* for proposition that " § [411(a)(5) ] and § [529] protect only the rights of membership per se, and that a union officer who is removed from office but not deprived of membership in the union has suffered no loss cognizable as 'discipline' proscribed by these sections of the Act").

**B**

**\*7** The court considers first plaintiffs' allegations under § 411. They assert that TWU Local violated the LMRDA by infringing on their right to free speech.

Section 411(a) (2) of the LMRDA provides, in pertinent part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings[.]

"Where the injury allegedly suffered by union officers is done to them in their status as officers, not as individual members, there can be no cause of action under section[ ] 411[.]" *Adams–Lundy v. Ass'n of Prof'l Flight Attendants,* 792 F.2d 1368, 1372 (5th Cir.1986) ("*Adams–Lundy II* "). The court must therefore decide whether plaintiffs have pleaded sufficient facts to permit the court to draw the reasonable inference that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers,* or that plaintiffs' dismissal was part of a pattern of intimidation and stifled dissent.

The amended complaint does not plead factual content that would permit the court to draw the reasonable inference that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers*. Plaintiffs allege that the charges leveled against Click and Lindemann were based on their "actions regarding information they provided the Local 556 membership at membership meetings in 2013[.]" Am. Compl. ¶ 19. Plaintiffs assert that the charges leveled against Martin were based on "various conduct including making presentations to the members on issues surrounding Local 556, allegedly making false representations to the membership, and for standing in opposition to the Local 556 Executive Board." *Id.* ¶ 37. The only reasonable inference the court can draw from these allegations is that plaintiffs engaged in this conduct in their capacities as officers. With respect to the additional, internal charges leveled against Click that are "related to a rally that occurred [in March 2013] to protest the TSA's knives on planes decision [,]" *id.* ¶ 20, plaintiffs have failed to allege facts from which the court can reasonably infer that the charges were based on Click's speech as opposed to his conduct.

The amended complaint also fails to plead factual content that permits the court to draw the reasonable inference that plaintiffs' dismissal was part of a pattern of intimidation and stifled dissent. Plaintiffs allege that their opponents "infiltrated" the Executive Board and "usurped" their offices. Am. Compl. ¶¶ 47 & 62. These allegations clearly express plaintiffs' concern that the Executive Board's actions were undemocratic, but that alone is insufficient. *See Adams–Lundy I,* 731 F.2d at 1159 (holding that plaintiffs' allegations that defendants' conduct was anti-democratic were insufficient to show infringement of basic rights of membership). Plaintiffs have not plausibly alleged that TWU Local is "attempting to dismantle the union's electoral system," or "that members opposing [plaintiffs' opponents] are in any fashion suppressed or threatened with reprisals." *Id.* Absent any further aggravating allegations, plaintiffs' allegations are insufficient to state a claim for relief under § 411(a)(2).

C

**\*8**  Plaintiffs also allege that TWU Local violated the LMRDA by giving Click only a week to prepare for the second trials against him. Section 411(a)(5)(B) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been ... (B) given a reasonable time to prepare his defense[.]" "[D]iscipline," as used in § 411(a)(5), refers to "punitive actions diminishing membership rights." *Finnegan,* 456 U.S. at 438. Plaintiffs allege that TWU Local disciplined them both by removing them from union office and banning them from holding any union office for three years. Removal from an elected office is not a form of "discipline" actionable under § 411(a)(5). *See Adams–Lundy I,* 731 F.2d at 1156–57 (holding that an elected union officer's removal from office does not constitute "infringement" of the rights secured by § 411). Although the Fifth Circuit has not specifically held that being banned from holding union office is a form of discipline, it has stated in *dicta* that the right to run for office is a membership right. *See id.* at 1156. The court will therefore assume that a ban against running for union office is a form of discipline that is actionable under § 411(a)(5). It will consider whether plaintiffs have plausibly alleged that TWU Local violated Click's rights under § 411(a)(5)(B) by banning him from running for union office without providing him a reasonable time to prepare his defense.

Section 411(a)(5)(B) does not specify the amount of time that is necessary to comply with the "adequate time" requirement. Courts generally decide whether a requirement such as this has been satisfied "with due regard to the practicalities and peculiarities of the case." *See, e.g., Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.* 455 F.2d 101, 108 (7th Cir.1972) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The LMRDA gives plaintiffs the right to present evidence and to cross-examine witnesses, *see, e.g., Holschen v. Int'l Union of Painters,* 598 F.3d 454, 463–64 (8th Cir.2010), but it does not guarantee "the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence." *Frye v. United Steelworkers,* 767 F.2d 1216, 1224 (7th Cir.1985); *see also Conway v. Int'l Ass'n of Heat & Frost Insulators,* 209 F.Supp.2d 731, 751 (N.D.Ohio 2002) (holding that LMRDA did not guarantee discovery), *aff'd,* 93 Fed. Appx. 780 (6th Cir.2004).

The amended complaint does not plead sufficient facts to enable the court to draw the reasonable inference that TWU Local failed to give Click a reasonable time to prepare his defense. Plaintiffs aver that Click was notified of at least some of the charges against him in March 2013, that Click's

trial dates were set in April 2013, and that his initial trials were conducted on May 14 and 15, 2013. Plaintiffs maintain that the Executive Board notified Click on May 16 that it was nullifying the results of the initial trials and scheduling retrial for May 24.[6] Plaintiffs do not plead any factual allegations suggesting that the May 14 and 15 trials differed substantially from the May 23 and 24 retrials. Assuming that Click did not learn about all of the charges against him until the trial dates were set in April 2013, Click had 14 and 15 days, respectively, to prepare for his first trials, and six and seven days more, respectively, to hone his defense in light of what he learned about TWU Local's case at his first trials. This is well within the range that courts have considered reasonable under § 41 1(a)(5)(B). *See Wellman v. Int'l Union of Operating Eng'rs,* 812 F.2d 1204, 1206 (9th Cir.1987) (28 days); *Falcone v. Dantinne,* 288 F.Supp. 719, 727 (E.D.Pa.1968) (23 days), *rev'd on other grounds,* 420 F.2d 1157 (3d Cir.1969); *Vars v. Int'l Bhd. of Boilermakers,* 215 F.Supp. 943, 947 (D.Conn.1963) (14 days), *aff'd,* 320 F.2d 576 (2d Cir.1963). Thus plaintiffs have failed to state a plausible claim for relief under § 411(a)(5)(B).

**D**

**\*9** Plaintiffs allege that TWU Local violated the LMRDA by infringing their rights to a full and fair hearing. They assert that TWU Local deprived them of a full and fair hearing when (1) Click and Lindemann were tried twice for the same offense; (2) Lindemann was retried *in absentia* while on authorized medical leave; (3) Martin was tried before a panel of his accusers; (4) Martin was denied the right to have the assistance of counsel; and (5) Martin was convicted on insufficient evidence.

**1**

Section 411(a) (5)(C) of the LMRDA protects members of labor organizations from being disciplined without first being afforded a full and fair hearing. *See* 29 U.S.C. § 411(a)(5)(C). "The full and fair hearing clause does not require unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,' but only to comply with the 'fundamental and traditional concepts of due process.' " *Wildberger v. Am. Fed'n of Gov't Emps.,* 86 F.3d 1188, 1193 (D.C.Cir.1996) (quoting *Ritz v. O'Donnell,* 566 F.2d 731, 735 (D.C.Cir.1977)); *see United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 385 (2d Cir.2001) (same) ("*Teamsters*");

*Bell v. Int'l Bhd. of Teamsters,* 108 F.3d 1376, 1997 WL 103320, at \*5 (6th Cir.1997) (unpublished table decision) (same). "Not all of the due process protections available in the federal courts apply to union disciplinary proceedings." *Teamsters,* 247 F.3d at 385. "A violation of a procedural provision of a union's constitution is actionable only if the violation deprived the party of a full and fair hearing under the LMRDA." *Id.* at 387.

**2**

Plaintiffs have failed to state a plausible claim that TWU Local violated the LMRDA by trying Click and Lindemann twice for the same offense. As a general proposition, the Supreme Court has declined to interpret the Due Process Clause as extending double jeopardy protection beyond the context of criminal prosecution. *See Dowling v. United States,* 493 U.S. 342, 354, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Although courts have found a violation of § 411(a)(5)(C) where a union member was retried by individuals who had previously heard the charges and found the member guilty, *see, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1243 (2d Cir.1979), this is not what plaintiffs allege. Plaintiffs fail to plead any factual allegations that explain why the Executive Board nullified Click and Lindemann's May 14 and 15 trials and ordered retrials, or that there were any other circumstances of unfairness surrounding the retrials that would enable the court to draw the reasonable inference that plaintiffs' rights to a full and fair hearing were violated. Merely alleging that a union ordered a new trial, without more, does not state a plausible claim that the union failed to afford a member a full and fair hearing. *See Frye,* 767 F.2d at 1224 (stating that plaintiff's "contention that a trial *de novo* by the International's Commission was improper as a matter of law is not supported by reason or authority").

**3**

**\*10** Plaintiffs have also failed to state a plausible claim that TWU Local violated § 411(a)(5)(C) when it tried Lindemann *in absentia* during his absence from work on approved medical leave. "Fundamental due process ... gives a party the right to be *present* during proceedings brought against him ..., subject to limited exceptions." *Holschen,* 598 F.3d at 464 n. 4. This right is infringed when the circumstances of the case suggest that the accused did not have a "fair opportunity"

Martin v. Local 556, Transp. Workers Union of America AFL-CIO, Not Reported in...
2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

Case 4:22-cv-00343-Y  Document 236-6  Filed 04/26/24  Page 9 of 37  PageID 6594

to attend the relevant hearing. *Moody v. Miller,* 864 F.2d 1178, 1181 (5th Cir.1989) (per curiam). Plaintiffs allege that TWU Local violated Lindemann's rights by conducting the retrial when they knew that he was out on formally approved extended medical leave. But merely alleging that Lindemann was ill and unable to attend the hearing does not enable the court to draw the reasonable inference that TWU Local failed to afford Lindemann a full and fair hearing. If, through no fault of TWU Local, a member "[was] unable or refuse[d] to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances." *Id.; see also Rosario,* 605 F.2d at 1244 (finding no due process violation where parties were entitled to be present at second trial but chose to boycott proceeding instead). This conclusion is strengthened by plaintiffs' failure to allege that Lindemann notified TWU Local that he was too ill to attend the May 24 retrial or to request a continuance. *See Parker v. Ellis,* 258 F.2d 937, 940 (5th Cir.1958) (dismissing due process claim where defendant failed to raise health issue or seek continuance during trial). Thus plaintiffs' allegations regarding Lindemann's trial *in absentia* do not state a plausible claim on which relief can be granted.

4

Plaintiffs allege that TWU Local violated Martin's rights to a full and fair hearing under the LMRDA when he was tried by the Executive Board, which included the person or people who filed the charges against him initially. Essentially, plaintiffs' complain that the combination of investigative, prosecutorial, and adjudicatory functions in the Executive Board violated Martin's right to due process under § 411(a)(5)(C).

"The basic requirement of constitutional due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer." *Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1052 (5th Cir.1997) (citing *Gibson v. Berryhill,* 411 U.S. 564, 569, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)). "In an effort to prevent 'even the probability of unfairness,' courts have identified situations in which the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Baran v. Port of Beaumont Navigation Dist. of Jefferson Cnty., Tex.,* 57 F.3d 436, 444 (1995) (quoting *In re Murchison,* 349 U.S. 133, 136, 75

S.Ct. 623, 99 L.Ed. 942 (1955)). A union's "combination of investigative, prosecutorial, and adjudicatory functions in [a single body] does not, by itself, violate the LMRDA." *Wildberger,* 86 F.3d at 1195. But when this combination occurs, courts "should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Withrow v. Larkin,* 421 U.S. 35, 54, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). It is therefore insufficient for plaintiffs merely to allege that the tribunal that filed charges against them also adjudicates the charges. *See id.* at 58 (holding that "[t]he fact that the same agency makes [the initial decision to charge and the ultimate adjudicative decision] in tandem ... relat[ing] to the same issues does not result in a procedural due process violation"). Plaintiffs "must overcome a presumption of honesty and integrity in those serving as adjudicators; and [they] must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment" to constitute a denial of the right to a full and fair hearing. *Id.* at 47.

**\*11** The court holds that plaintiffs have plausibly pleaded that Martin was denied a full and fair hearing when he was tried by a panel that included his accusers. Plaintiffs' allegations regarding the "running controversy" between Martin and the faction associated with McDaniel enable the court to draw the plausible inference that there was "the possibility of bias." *Bakalis v. Golembeski,* 35 F.3d 318, 326 (7th Cir.1994) (applying *Withrow* and holding that plaintiff had adduced sufficient evidence at summary judgment stage to overcome presumption of impartiality); *see also Valley,* 118 F.3d at 1053 & n. 4 (quoting *Bakalis* with approval for proposition that "appellate jurisprudence has favored recusing board members who display a bias or prejudice that would result in an unconstitutional decision"). In support of their claim that the Executive Board prejudged Martin's guilt, plaintiffs allege that they all ran together on a slate of candidates opposed by past-president McDaniel. They aver that, when Martin refused to assist the Executive Board in rescheduling Click and Lindemann's trials, the Executive Board suspended Martin from the office of union president in retaliation. Plaintiffs allege that the Executive Board did not explain its decision to suspend Martin until May 16, when it charged him with violating the union constitution. Based on these allegations, and taking a realistic appraisal of psychological tendencies and human weaknesses, the court holds that plaintiffs' allegation that the Executive Board acted in a prosecutorial and adjudicative role during the

Martin v. Local 556, Transp. Workers Union of America AFL-CIO, Not Reported in...
2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 10 of 37   PageID 6595

same hearing plausibly suggests a risk of actual bias or prejudgment. *Cf. Stein v. Mutuel Clerks' Guild of Mass., Inc.,* 560 F.2d 486, 491 (1st Cir.1977) (upholding trial court's conclusion that plaintiff did not get full and fair hearing where union president, who was also member of executive committee, made comments to committee revealing he had prejudged case).

**5**

Plaintiffs allege that TWU Local violated Martin's right to a full and fair hearing when Martin was denied assistance of counsel. Plaintiffs assert that this right is guaranteed by TWU Local's constitution.

As noted above, the LMRDA's guarantee of a right to a full and fair hearing does not include the right to be represented by counsel. *See Frye,* 267 F.2d at 1224. Although the TWU Local constitution may guarantee a union member the right to assistance of counsel, "[a] union's violation of its own constitution is not *per se* a violation of the LMRDA." *Adams–Lundy II,* 792 F.2d at 1373. Rights guaranteed solely by a local union's constitution are contractual rights-not LMRDA rights-and "a federal court has no jurisdiction to enforce union constitutions and by-laws as such." *Id.* (citing *McGovern v. New Orleans Clerks & Checkers, Local 1497 ILA,* 343 F.Supp. 351, 352 (E.D.La.1972), *aff'd per curiam,* 463 F.2d 423 (5th Cir.1972)). Thus plaintiffs' bare allegations that Martin was not afforded the right to counsel, in violation of TWU Local's constitution, are insufficient of themselves to state a plausible claim for relief.

**6**

 **\*12** Plaintiffs assert that the Executive Board convicted Martin on insufficient evidence presented to support the charges against him. Section 411(a)(5)(C) "requires the charging party to provide some evidence at the disciplinary hearing to support the charges made." *Int'l Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) (noting that the Supreme Court has "repeatedly held that conviction on charges unsupported by any evidence is a denial of due process," and that § 411(a)(5)(C) "import[s] a similar requirement into union disciplinary proceedings"). This standard respects "the apparent congressional intent to allow unions to govern their own affairs." *Id.* Nevertheless, although § 411(a) (5)(C)

requires "some evidence," plaintiffs' conclusory allegation that the evidence presented at Martin's trial was insufficient does not enable the court to draw the reasonable inference that TWU Local violated Martin's right to a full and fair hearing. *Cf. Rosario,* 605 F.2d at 1243 (noting that "union disciplinary proceedings ... except in extreme cases, are not reviewed in the federal courts for the sufficiency of the evidence").

**E**

The court finally considers whether plaintiffs have stated a plausible claim for relief under § 529, which protects a union member from retaliation for exercising his or her rights under the LMRDA.

Plaintiffs allege that Martin's suspension from office occurred in retaliation for his refusal to reschedule Click's and Lindemann's trials. But removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529. *See Finnegan,* 456 U.S. at 439 n. 9 (dictum). Nowhere in the amended complaint do plaintiffs allege that the Executive Board's decision to ban plaintiffs from running for office was taken in retaliation for the exercise of plaintiffs' rights. Accordingly, the court holds that the amended complaint does not plausibly allege a right to relief under § 529.

**VI**

Although the court is dismissing some of plaintiffs' claims, it will permit them to replead. *See In re Am. Airlines, Inc., Privacy Litig.,* 370 F.Supp.2d 552, 567–68 (N.D.Tex.2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation and internal quotation marks omitted)). The defects with respect to § 102 of the NLA and § 401, 413, and 530 of the LMRDA are incurable, and the court therefore declines to permit plaintiffs to attempt to plead a claim under any of these provisions. But because plaintiffs have not stated that they cannot, or are unwilling to, cure the other defects that the court has identified, it grants them 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

Martin v. Local 556, Transp. Workers Union of America AFL-CIO, Not Reported in...
2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 11 of 37   PageID 6596

* * *

**\*13** The court grants TWU Local's motion to dismiss count II under Rule 12(b)(1), and it grants in part and denies in part TWU Local's Rule 12(b)(6) motion as to plaintiffs' claims in count I.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4358480, 201 L.R.R.M. (BNA) 3036

## Footnotes

1   In deciding TWU Local's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.,* 378 F.3d 433, 437 (5th Cir.2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir.2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See Hunter v. Branch Banking & Trust Co.,* 2013 WL 607151, at \*2 (N.D.Tex. Feb.19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson,* 644 F.2d at 523).

2   Plaintiffs' amended complaint does not specify whether this person was a member of the Executive Board or a member of the union. *See* Am. Compl. ¶ 20.

3   TWU Local's first motion to dismiss predates plaintiffs' amended complaint. "The court may nevertheless treat defendant's motion as directed to the amended complaint because the defects in plaintiff[s'] complaint reappear in the amended complaint." *Moore v. Dall. Indep. Sch. Dist.,* 557 F.Supp.2d 755, 760 (N.D.Tex.2008) (Fitzwater, C.J.) (internal quotation marks and brackets omitted), *aff'd,* 370 Fed. Appx. 455 (5th Cir.2010). Because TWU Local asserts that the amended complaint is subject to dismissal on the same grounds as is the complaint, and the parties have fully briefed the sufficiency of the amended complaint, the court will consider TWU Local's arguments in its first motion to dismiss in assessing whether the amended complaint is subject to dismissal under Rules 12(b)(1) and 12(b)(6).

4   *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

5   Plaintiffs cite identical provisions of the NLA and LMRDA in counts I and II as the basis for their claims. *Compare* Am. Compl. ¶ 71, *with* ¶ 83 (citing 29 U.S.C. §§ 102, 401, 411, 412, 413, 431, 481, 482, 501, 529, and 530). The primary difference between each count is that, in count I, plaintiffs seek relief for "violation of the LM[RD]A," Am. Compl. at 10 (bold font and upper case text omitted), while in count II, they seek relief for "breach of the TWU [International] Constitution & violation of the LM[RD]A," *id.* (bold font and some upper case text omitted).

6   Without explanation, plaintiffs later aver that the retrial committee conducted an individual hearing against Click on May 23. Plaintiffs do not contend that the Executive Board failed to notify Click of the May 23 retrial. Thus there is no basis for the court to reasonably draw any inference other than that the Executive Board notified Click of the May 23 proceeding at least several days before the hearing was conducted.

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5766569
Only the Westlaw citation is currently available.
**NOT PRECEDENTIAL**
United States Court of Appeals, Third Circuit.

Michael MCCARTHY; Robert Eddis; the Rank
and File Members of IAM District Lodge 19

v.

INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE
WORKERS; Michael Perry, President
of IAM District Lodge 19 Michael
McCarthy; Robert Eddis, Appellants

No. 21-1673
|
Submitted Pursuant to Third Circuit
L.A.R. 34.1(a) December 6, 2021
|
Filed: December 6, 2021

Appeal from the United States District Court for the Eastern
District of Pennsylvania (D.C. No. 2-19-cv-05727), District
Judge: Hon. Berle M. Schiller

**Attorneys and Law Firms**

Alice W. Ballard, Esq., Philadelphia, PA, Willem Bloom,
Esq., Thomas H. Geoghegan, Esq., Despres Schwartz &
Geoghegan, Chicago, IL, Robert S. Goggin, III, Esq., Keller
& Goggin, Philadelphia, PA, for Michael McCarthy, Robert
Eddis.

Alice W. Ballard, Esq., Philadelphia, PA, Robert S. Goggin,
III, Esq., Keller & Goggin, Philadelphia, PA, for Rank and
File Members of IAM District Lodge 19.

Jeffrey A. Bartos, Esq., John J. Grunert, Jr., Esq., Guerrieri
Bartos & Roma, Washington, DC, for Appellants.

Before: SHWARTZ, PORTER, and FISHER, Circuit Judges.

OPINION[*]

SHWARTZ, Circuit Judge.

*1 Michael McCarthy, Robert Eddis, and other members of
District Lodge 19 initiated this action pursuant to the Labor-
Management Reporting and Disclosure Act ("LMRDA"), 29
U.S.C. § 401 et seq., against the International Association
of Machinists and Aerospace Workers ("IAM") and Michael
Perry, the President of District Lodge 19. McCarthy contends
that he was removed from his IAM position for improper
reasons, but Defendants counter that he was removed
for incompetent job performance. Because (1) Plaintiffs'
LMRDA voting rights were not violated by McCarthy's
removal; and (2) McCarthy failed to demonstrate that his
alleged protected speech caused the adverse action, we will
affirm.

I

A

IAM is an international labor organization. It includes
hundreds of local lodges and thirty-five intermediate-level
district lodges, including District Lodge 19. District Lodge
19 has nationwide responsibility for employees in the rail
industry, and it is governed by thirteen General Chairmen and
one President.

In 2012, McCarthy was appointed as a General Chairman of
District Lodge 19. In 2015, he was elected to a full, four-year
term as a General Chairman. In 2016, McCarthy declined to
sign a no-confidence letter seeking the removal of the then-
District Lodge 19 President from office but later changed his
mind and agreed to sign the petition.

Perry became the President of District Lodge 19 in 2019,
and McCarthy was reelected as a General Chairman.
As President, Perry received several complaints about
McCarthy's representation of District Lodge 19 members.
Perry investigated the allegations and thereafter informed
McCarthy that he could either resign or face formal
disciplinary charges. After McCarthy declined to resign,
Perry removed McCarthy from his assignments and, pursuant
to Article L of the IAM Constitution,[1] initiated five
charges against McCarthy related to alleged instances of
incompetence, negligence, and insubordination.[2] Thereafter,
IAM President Robert Martinez referred these charges
to a Special Trial Committee, which was composed of
three IAM representatives from other district and local
lodges. The Special Trial Committee conducted a preliminary

investigation and determined there was sufficient substance to the charges to warrant a formal trial. The Special Trial Committee then conducted a trial at which Perry and McCarthy testified, introduced evidence, and called and cross-examined witnesses.

**\*2** The Special Trial Committee found McCarthy guilty of four of the five charges and recommended that he be removed from his office as a General Chairman and banned from holding any IAM office for five years. Martinez agreed, removed McCarthy as a General Chairman, and implemented the five-year office-holding ban, thereby preventing him from running in the 2023 union elections. The IAM Executive Council affirmed Martinez's decision. McCarthy's appeal to the Convention of the IAM Grand Lodge remains pending.

B

Meanwhile, Plaintiffs initiated this action. In their Amended Complaint, Plaintiffs allege that Defendants violated Plaintiffs' equal right to vote in union elections and McCarthy's right to free speech as guaranteed by the LMRDA, 29 U.S.C. § 411(a).[3] The District Court granted summary judgment for Defendants. McCarthy v. Int'l Ass'n of Machinists & Aerospace Workers, No. 19-CV-5727, 2021 WL 859400, at \*9 (E.D. Pa. Mar. 8, 2021). The Court explained that Plaintiffs' claims failed because, among other things, (1) Plaintiffs' right to vote was not violated since the 2019 election was issue-free and McCarthy was reasonably removed from office; and (2) McCarthy's right to free speech was not violated since he failed to demonstrate that the charges against him in 2019 were caused by his initial refusal to sign the no-confidence letter in 2016. Id. at \*4-8.

Plaintiffs appeal. **J.A. 1.**

II[4]

The LMRDA's "primary objective" is to ensure "that unions [are] democratically governed and responsive to the will of their memberships." Finnegan v. Leu, 456 U.S. 431, 436 (1982). Title I of the LMRDA includes a "bill of rights" that "was designed to guarantee every union member equal voting rights, rights of free speech and assembly, and a right to sue." United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski, 457 U.S. 102, 109 (1982). The LMRDA provides "a cause of

action to any person whose" Title I rights have been violated. Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991); see also 29 U.S.C. § 412.

**\*3** Plaintiffs contend that Defendants' actions violated Plaintiffs' LMRDA equal voting and free speech rights. We disagree.

A

Under the LMRDA, every member of a labor organization must have "equal rights ... to vote in elections." 29 U.S.C. § 411(a)(1). To this end, § 411(a)(1) provides "a command that members and classes of members shall not be discriminated against in their right to nominate and vote." Calhoon v. Harvey, 379 U.S. 134, 139 (1964). Here, McCarthy does not contend that the 2019 elections were somehow unfair or fraudulent. Rather, he asserts that his removal from an elected position violated the § 411(a)(1) rights of the District Lodge 19 members, such as Eddis, who voted for McCarthy. As the Supreme Court has explained in the context of a free speech claim, "when an elected official ... is removed from his post, the union members are denied the representative of their choice." Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 355 (1989).

A union member's right to vote, however, is "subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). As relevant, Article L of the IAM Constitution provides that an officer may be removed from office or disqualified from holding office for up to five years for "[i]ncompetence; negligence or insubordination in the performance of official duties; or failure or refusal to perform duties validly assigned." J.A. 233. McCarthy does not dispute that Article L provides a reasonable framework. In compliance with that framework, the Special Trial Committee recommended that McCarthy be removed from office and banned from holding office due to incompetence and insubordination. Thus, McCarthy's removal did not violate Plaintiffs' equal right to vote. Rather, as contemplated by § 411(a)(1), McCarthy was subject to the same IAM rules and regulations applicable to all IAM officers and was removed for poor performance.

Moreover, Plaintiffs do not contend that the Special Trial Committee trial lacked procedural safeguards. Rather, Plaintiffs contend that the District Court used the wrong

standard in evaluating the sufficiency of the evidence to support the Special Trial Committee's verdict. The Court applied the "some evidence" standard, McCarthy, 2021 WL 859400, at *6, which is typically applied to assess claims brought under 29 U.S.C. § 411(a)(5). See Lewis v. Am. Fed'n of State Cnty. & Mun. Emp., AFL-CIO, 407 F.2d 1185, 1195 (3d Cir. 1969) (explaining that implicit in § 411(a)(5)'s guarantee of a "full and fair hearing" is the "requirement that there be some evidence to support the charges made" (citation omitted)). Section 411(a)(5) is not at issue here, however, and there is some authority suggesting that this standard applies only to due process-style claims under § 411(a)(5). See Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1468 (6th Cir. 1992) ("While the 'some evidence' standard applies when reviewing a union's decision for procedural sufficiency, this deferential standard cannot apply to cases concerning the free speech guarantees of the LMRDA if those protections are to mean anything."); Bise v. Int'l Bhd. of Elec. Workers, AFL-CIO Loc. 1969, 618 F.2d 1299, 1304 n.5 (9th Cir. 1979) (explaining that the "some evidence" standard is more properly used when assessing the procedure used by the union but is less proper when the question is whether "discipline is being imposed for an improper purpose").

**\*4** Even if a higher standard applied, such as the substantial evidence standard used to review administrative agency fact finding, we would conclude the evidence supported the Special Trial Committee's findings. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion .... It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence[.]" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quotation marks and citations omitted). The record meets this standard. For example, testimony was offered to support each of the alleged acts of misconduct and the fact finders credited that testimony. McCarthy's denials or explanations for his actions do not negate that substantial evidence supported the verdict against him.

In sum, because McCarthy was removed from his position as General Chairman in compliance with Article L, and substantial evidence supported the Special Trial Committee's findings, his removal did not violate Plaintiffs' § 411(a)(1) equal voting rights.

B

McCarthy's free speech claim also fails. The LMRDA provides that every member of a labor organization has the right "to express any views, arguments, or opinions[.]" 29 U.S.C. § 411(a)(2). Thus, the removal of an elected union representative in retaliation for protected speech violates the LMRDA. Lynn, 488 U.S. at 349. A plaintiff claiming retaliation must establish three elements: (1) he engaged in protected expression; (2) he was subjected to an adverse action; and (3) the retaliation was a direct result of the protected expression. Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Loc. 142, 269 F.3d 1042, 1058 (9th Cir. 2001); see also Trail v. Loc. 2850 UAW United Def. Workers of Am., 710 F.3d 541, 546 (4th Cir. 2013) ("To state a retaliation claim [ ], a plaintiff must allege that the retaliation was in response to her exercise of a right guaranteed by some other provision of the LMRDA.").

McCarthy contends that he engaged in protected speech in 2016 when he initially refused to sign the no-confidence letter and that Defendants retaliated against him in 2019 by bringing the charges that ultimately led to his removal from office. However, McCarthy has failed to show that the alleged retaliation was causally connected to his protected expression.

To show a causal connection, a plaintiff must generally show either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing[.]" Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). McCarthy has made neither showing. First, McCarthy has failed to demonstrate a temporal connection between his 2016 initial refusal to sign the no-confidence letter and his 2019 removal. See Watson v. Rozum, 834 F.3d 417, 423 (3d Cir. 2016) (holding that a two-year delay between the protected activity and the alleged retaliatory conduct "is just too remote to suggest a retaliatory motive"). Second, McCarthy has failed to demonstrate a pattern of antagonism targeting him in the period between 2016 and 2019. To the contrary, McCarthy and Perry ran on the same slate of nominees and were elected together in the 2019 elections.

McCarthy counters that when Perry demanded McCarthy's resignation, Perry said "something to the effect of you were never on my team and now it's official." J.A. 212. Perry denies making that statement, however, and, even if we assume that Perry's 2019 statement was referring back to the 2016 no-confidence letter, McCarthy's self-serving testimony on this front is insufficient, without more, to establish causation. See

Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (quotation marks and citation omitted)); see also Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence[.]").[5]

**\*5** In sum, McCarthy failed to demonstrate that the alleged 2019 adverse action was caused by his 2016 protected expression. Thus, his retaliation claim under § 411(a)(2) fails.

III

For the foregoing reasons, we will affirm.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5766569

Footnotes

\*   This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1   IAM's governing document is its Constitution. Article L of the IAM Constitution governs allegations of misconduct by IAM officers, representatives, and members, and it includes certain "due process guarantees and safeguards[.]" J.A. 233. It provides, in relevant part, that (1) officers may be removed from office; (2) allegations of misconduct must be made in writing to the IAM President, who may refer the matter to a Special Trial Committee; (3) the Special Trial Committee may recommend that the charges be dismissed or a trial be held; (4) if a trial is held, both sides have the right to present evidence and arguments; (5) the Special Trial committee reports its verdict and recommended penalty to the IAM President, who may affirm, modify, or reverse the verdict; (6) the IAM President's decision may be appealed to the IAM Executive Council; and (7) the decision of the Executive Council may be appealed to the Grand Lodge Convention.

2   These charges alleged, among other things, that McCarthy: (1) acted incompetently when representing Amtrak members of the Wilmington, Delaware Shops, by failing to appear and represent twenty-five members when they were pressured to recant certain statements, failing to investigate the nature of the dispute with Amtrak, and visiting the Wilmington shop after he was removed from the Wilmington assignment; (2) failed to properly process two grievances sent to him by a local lodge; and (3) provided poor representation to the Kansas and Oklahoma Railroad, most notably by signing a collective bargaining agreement that did not provide for premium pay for overtime.

3   Plaintiffs abandoned their claims under the Labor Management Relations Act, specifically 29 U.S.C. § 462, regarding trusteeships, and under the IAM Constitution by omitting any reference to them in their opposition to Defendants' motion for summary judgment. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Carroll v. Lancaster Cnty., 301 F. Supp. 3d 486, 511-12 (E.D. Pa. 2018) (same).

4   The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

    Our review of a district court's order granting summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant is entitled to judgment as a matter of law when the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When conducting this analysis, we "view the facts in the light most favorable to the non-[movant] and must make all reasonable inferences in that party's favor." Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

5   McCarthy also emphasizes that shortly after he refused to sign the no-confidence letter in 2016, Brian Orwan, the then-District Lodge 19 Assistant to the President, told McCarthy that "[y]ou need to learn to do what you're told, not what you want." Appellants' Br. 3 (quoting J.A. 207). Orwan denied making this statement and explained that he met with McCarthy in 2016 due to McCarthy's work performance issues. Regardless, Orwan resigned in 2017 and thus had no role in the

2019 decision to charge and terminate McCarthy. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)
2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 17 of 37   PageID 6602

2017 WL 11612500
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

Sherry Lynn JOHNSTON, Plaintiff,
v.
David DEXEL, et al., Defendants.

Civil Action No. H-16-3215
|
Signed 08/18/2017

**Attorneys and Law Firms**

Susan Cecilia Norman, Attorney at Law, Houston, TX, for Plaintiff.

George Billy Shepherd, III, Allison Standish Miller, Stephen R. Bailey, Shepherd Prewett PLLC, Julie Ann Countiss, Jim C. Ezer, Houston, TX, for Defendants.

**MEMORANDUM AND OPINION**

Lee H. Rosenthal, Chief United States District Judge

 *1  Sherry Johnston's elderly mother, Willie Jo Mills, died in a nursing home. Johnston alleges that Mills received improper and negligent care that led to her death. Johnston asserts a long list of legal claims against a long list of defendants, all of whom she alleges played some role in Mills's death. The defendants moved to dismiss, Johnston responded, and the defendants replied. (Docket Entries No. 17, 18, 20, 21, 24, 25, 27, 28, 31).

Based on the complaint, the motions and responses, and the applicable law, the motions to dismiss are denied in part and granted in part. The following claims are dismissed with prejudice: all currently pleaded claims against Judge Christine Butts and Sherry Fox (though Johnston may amend her complaint to allege a claim under Section 1201.003 of the Texas Estate Code on Judge Butts's bond); and all claims under 42 U.S.C. § 1983 against David Dexel, Ginger Lott, GSL Care Management, LLC, and Clarinda Comstock.

The following claims are dismissed without prejudice and with leave to amend: the claims under § 1983 against Harris County; all claims for disability discrimination and

retaliation under the Americans with Disabilities Act and the Rehabilitation Act; all of the Texas state-law claims against Harris County and Clarinda Comstock; the claim for civil conspiracy to breach fiduciary duties; the claim for intentional infliction of emotional distress; the claim for wrongful death against David Dexel; and any claims that Johnston intended to assert for fraud, defamation, violation of statutory duties, or commission of "ultra vires" illegal acts.

The claim for breach of fiduciary duty is adequately pleaded as to Dexel and Lott, and may proceed. The claim for wrongful death is adequately pleaded as to Lott, and may also proceed. Any amended complaint must be filed by September 18, 2017.

The reasons for these rulings are explained in detail below.

**I. Background**

This factual recitation is drawn from Johnston's complaint. The well-pleaded factual allegations are taken as true for the purposes of the motions to dismiss. In 2008, Johnston and her sister, Cindy Pierce, sued their brother for conversion of Mills's property and financial assets. A June 2008 report by a court investigator found that Johnston was Mills's preferred guardian. A year later, the presiding probate judge appointed Howard Reiner as Mills's attorney ad litem and David Dexel as Mills's temporary guardian of the person and estate. The parties to that litigation signed a settlement agreement. The probate court appointed Dexel as Mills's guardian of the person on a continuing basis. Reiner was discharged as attorney ad litem.

Dexel hired Ginger Lott and GSL Care Management, LLC,[1] to manage Mills's care. Between 2009 and 2012, Johnston frequently visited Mills at Silverado, the nursing home where Mills resided. In 2012, Silverado changed management. Johnston perceived a decline in the quality of Mills's care after the change. Beginning in 2012 and into 2013, Johnston complained to Dexel about her mother's care. Mills was hospitalized on several occasions with urinary tract infections during that time. Johnston complained that the infections resulted from poor medical care. Dexel refused to move Mills to a different nursing home. As a result, Johnston and Dexel's relationship deteriorated.

 *2  In May 2013, Dexel moved Mills to a different section of Silverado, for residents who required a higher level of care. According to the complaint, this section's residents had

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)
2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 18 of 37   PageID 6603

behavioral issues and were aggressive toward Mills. During the same month, Johnston's complaints about Silverado's treatment of Mills led it to ban Johnston from the premises. Johnston alleges that Dexel "worked with" Silverado to ban Johnston. In June 2013, Mills fell out of her wheelchair, breaking several bones in her right leg. Dexel discontinued Mills's physical therapy during her recuperation. Johnston alleges that this made Mills's muscle problems worse. That same month, Dexel allegedly made a "secret, *ex parte*, oral motion" (which he filed in writing with the court three days later) to have Clarinda Comstock appointed as Mills's guardian ad litem. Judge Butts, the presiding probate judge, granted this motion and instructed Comstock to investigate Mills's condition and treatment and report to the court. Dexel allegedly failed to notify both Johnston and Pierce of his intention to seek Comstock's appointment.

Mills's condition continued to deteriorate. By September 2013, she could no longer hold a cup or fork, had lost 30 to 40 pounds, and suffered from recurring urinary tract infections. Johnston continued to demand that Dexel move Mills to a different nursing home, and she threatened to ask the court to replace Dexel. In response, Dexel filed an application to resign and to have the court appoint a successor guardian for Mills. On September 13, 2013, Dexel notified interested parties—including Johnston—of a hearing set for September 24, 2013. On September 16, 2013, Comstock filed her report about Mills's condition and treatment. Johnston alleges that the following day—one week before the hearing date—Dexel, Lott, Comstock, and Judge Butts had a "secret, *ex parte* meeting/hearing" during which Judge Butts appointed Lott as Mills's successor guardian, replacing Dexel.

In October 2013, Lott moved Mills from the Silverado nursing home to the Hampton nursing home. In December 2013, Johnston filed an emergency application for a temporary restraining order with Sherrie Fox, Judge Butts's Court Coordinator. She alleges that Mills was "dehydrated, not eating, weak, and ... declin[ing] fast." Ten days later, Judge Butts held a status conference. Both Johnston and Pierce testified. They were able to reach an agreement with Lott, including bringing outside food into the Hampton nursing home, scheduling a regular swallow test, placing a drop camera and phone apparatus in Mills's room, and reinstating Johnston's visitation rights.

Johnston alleges that, in March 2014, Mills's doctor advised Lott that Mills needed to see a cardiologist and an endocrinologist, but Lott failed to follow the doctor's orders.

Judge Butts reappointed Reiner as Mills's attorney ad litem. The following month, April 2014, Johnston texted Lott that Mills "was delirious and unresponsive with pus in her catheter" and needed to go to the emergency room immediately. Lott did not respond to Johnston's text, so she called 911. Lott allegedly told Hampton's personnel to send the paramedics away when they arrived, and called a separate ambulance. Although Lott was the only person with legal authority to sign Mills in to the hospital, Lott allegedly never went to the hospital, leaving Mills to sign herself in. During the next month, Johnston and Pierce filed applications for guardianship, triggering Reiner's termination as attorney ad litem.

Johnston continued to investigate the Hampton's alleged mistreatment of Mills. Johnston alleges that Lott allowed Mills's caretakers to put two diapers on her, even though she had a history of urinary tract infections. She also alleges that Lott used an out-of-hospital do-not-resuscitate order to have the Hampton withhold nutrition and hydration from Mills, even though the hospital had found no swallowing problems. Unfortunately, on September 27, 2014, Mills passed away. Johnston alleges that Mills died of starvation after Lott ordered the nursing home staff to withhold food and give Mills nothing but water.

**\*3** On December 19, 2016, Johnston filed this suit. She asserted 11 causes of action, which are summarized as follows:[2]

1. All defendants allegedly violated the Americans with Disabilities Act (ADA), specifically, 42 U.S.C. § 12132, 29 C.F.R. § 35.130, and 29 U.S.C. § 790 *et seq.*, through their "habit, pattern, and practice of disability discrimination."

2. All defendants allegedly violated 42 U.S.C. § 12203, the ADA provision prohibiting retaliation.

3. Dexel, Lott, Comstock, Reiner, Judge Butts, and Fox allegedly violated Johnston's and Mills's First Amendment rights, specifically, freedom of speech and freedom of association, and therefore violated 42 U.S.C. § 1983.

4. Harris County and its agents, Dexel, Lott, Comstock, and Reiner, allegedly violated Mills's Fifth Amendment right to due process through their deliberate ignorance of necessary food, nutrition, and medical attention for Mills, and therefore violated § 1983.

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 19 of 37   PageID 6604

5. Harris County and its agents, Dexel, Lott, Comstock, and Reiner, allegedly violated Mills's Fourteenth Amendment right to due process, and therefore violated § 1983.

6. Unspecified defendants conspired to violate unspecified persons' civil rights, in violation of 42 U.S.C. § 1985.[3]

7. Reiner, Dexel, Comstock, Lott, Judge Butts, and Fox allegedly conspired to, and did, breach their fiduciary duties to Mills.

8. All defendants allegedly intentionally inflicted severe emotional distress on both Johnston and Mills by retaliating against them and denying their right to association.

9. All defendants allegedly caused Mills's "wrongful[,] premature death" through their "wrongful [and] deliberately indifferent care or lack of care."

10. All defendants allegedly "fail[ed] to fulfill statutory duties."[4]

11. Dexel, Lott, Comstock, Fox, Judge Butts, and Reiner allegedly engaged in a long list of "*ultra vires* illegal, criminal, and wrongful acts."

**\*4** The defendants moved to dismiss, Johnston responded, and the defendants replied. After the motions and replies were filed, Johnston stipulated to Reiner's dismissal with prejudice and the court dismissed Reiner from the case. (Docket Entry No. 29, 30). The claims as to each remaining defendant and the grounds urged for dismissal are examined below.

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court

explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The court can also consider government documents and similar matters of public record without converting the motion into one seeking summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir.2011); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366); *Jathanna v. Spring Branch Indep. Sch. Dist.*, No. CIV.A. H-12-1047, 2012 WL 6096675, at \*3 (S.D. Tex. Dec. 7, 2012).

## III. Analysis

### A. The Claims Against Judge Butts and Sherry Fox

The claims against Judge Butts and Sherry Fox must be dismissed. Judge Butts performed the actions that form the basis of this suit in her judicial capacity. *Twilligear v. Carrell*, 148 S. W.3d 502, 505 (Tex. App.—Houston [14th Dist.] 2004) (probate judges' actions in conducting guardianship proceedings "are both judicial acts and within the jurisdiction of the probate judges by whom they are required...."). She is presumptively entitled to absolute immunity for performing those acts. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). While there are exceptions to absolute immunity for actions

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

taken outside of the judicial capacity or "in the complete absence of all jurisdiction," *id.*, Johnston does not allege or argue that either of these exceptions applies. Instead, she makes two unpersuasive arguments for why Judge Butts is not entitled to immunity.

**\*5** First, Johnston argues that judicial immunity does not apply to Texas statutory probate judges. She does not cite cases or any other authority to support this proposition, and the court's research did not reveal any. The ordinary test for judicial immunity is easily met here. "In the Fifth Circuit, the test is whether: '(1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.' " *Odonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 757 (S.D. Tex. 2016), *reconsideration denied*, No. CV H-16-1414, 2017 WL 784899 (S.D. Tex. Mar. 1, 2017) (quoting *Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir. 1981)). Managing a guardianship is a core judicial responsibility for a judge with jurisdiction over guardianship matters. *Twilligear*, 148 S.W.3d at 505 (applying the federal standard). Mills's case was before Judge Butts, the decisions were made in her court, and the dispute arose from those decisions. The fact that Judge Butts is a Texas statutory probate judge rather than a constitutional county judge is of no moment.

Johnston's other argument is closer to the mark but still fails, at least on the current complaint. Johnston claims that Texas waived immunity for probate judges in § 1201.003 of the Texas Estate Code. Section 1201.003 provides that a "judge is liable on the judge's bond to those damaged if damage or loss results to a guardianship or ward because of the gross neglect of the judge to use reasonable diligence in the performance of the judge's duty under this subchapter." The section creates a "a limited waiver of judicial immunity, allowing recovery for losses directly tied to the guardianship duties under" the subchapter. *James v. Underwood*, 438 S.W.3d 704, 714 (Tex. App.—Houston [1st Dist.] 2014). The subchapter imposes on probate judges a set of duties plausibly related to this case, including the "use of reasonable diligence to determine whether an appointed guardian is performing the required duties," annual inspection of the well-being of each ward, ensuring that guardians have posted solvent bonds, and the like. *Id.* The immunity waiver is limited. It applies only to actions on the judge's bond for gross neglect of the duties imposed in the subchapter, and only to the extent of the bond's

value. It does not, contrary to Johnston's arguments, open judges to generalized liability for violations of other statutes or common-law duties. And Johnston did not sue under this section or assert that Judge Butts violated any of the specific statutory duties that it contains.

The claims against Judge Butts in the current complaint are dismissed with prejudice, and without leave to amend, because Judge Butts is entitled to absolute judicial immunity and amendment would be futile. However, Johnston has leave to amend her pleading to state a single claim on Judge Butts's bond under § 1201.003 for Judge Butts's alleged violations of her duties under that subchapter of the Texas Estates Code. The claim against Judge Butts must clearly and explicitly plead specific facts about Judge Butts's actions; identify the specific statutory duties that these actions violated; and clarify that Johnston seeks only to recover against, and up to the amount of, Judge Butts's bond.

Sherry Fox, Judge Butts's Court Coordinator, is entitled to derivative absolute immunity, which protects court personnel who are sued for their actions taken in the course of "assisting the judge in carrying out" the judge's judicial functions. *Mitchell v. McBryde*, 944 F.2d 229, 230–31 (5th Cir. 1991); *Norris v. Warder*, No. 3:02-CV-412-P, 2002 WL 31415920, at \*2 (N.D. Tex. Oct. 21, 2002). Fox is not subject to the narrow waiver of immunity in § 1201.003, which applies only to judges and only to the extent of their bond. The claims against Fox are dismissed with prejudice, and without leave to amend, because amendment would be futile.

### B. The Claims Under § 1983 and § 1985 Against the Other Defendants

**\*6** "Section 1983 provides a remedy against ' any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Local governments are not vicariously liable under § 1983 for their employees' or agents' violations of federal constitutional rights. It is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). To allege a plausible claim under § 1983 against a municipality, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 21 of 37   PageID 6606

*Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

The § 1983 claims against the court-appointed guardians— Dexel, Lott, and Comstock—are dismissed with prejudice, and without leave to amend. Court-appointed guardians and attorneys ad litem are not state actors for purposes of § 1983. In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that a public defender does not act under color of state law in representing a defendant merely because he or she is a public defender rather than in private practice. The Court began by observing that "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Id.* at 317–18 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). While the source of the attorney's paycheck was "certainly a relevant factor," the public defender did not act under color of state law simply by virtue of his position. Public defenders, unlike other state employees, have independent professional obligations to their clients, taking them out of the "state actor" category for § 1983 purposes. *Id.* at 321.

Following *Dodson*, courts have held that guardians and attorneys ad litem are not state actors merely by virtue of their appointment by courts. *Kirtley v. Rainey*, 326 F.3d 1088, 1095 (9th Cir.2003) (per curiam) (a child's appointed guardian ad litem did not act under color of state law solely by virtue of being court-appointed); *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986) (same); *Parkell v. South Carolina*, 687 F. Supp. 2d 576, 587 (D.S.C. 2009) ("Guardians ad litem are not state actors for purposes of § 1983, because they give their 'undivided loyalty to the minor, not the state.' "); *Nelson v. Kujawa*, No. 07–C–741, 2008 WL 2401260, at *2 (E.D. Wis. June 11, 2008) ("[S]tate-appointed guardians ad litem are not state actors subject to liability under 42 U.S.C. § 1983."); *Schiavo ex rel. Schindler v. Schiavo*, 358 F.Supp.2d 1161, 1164–65 (M.D. Fla.2005) ("Contrary to Plaintiffs' argument, Michael Schiavo, as court appointed guardian for Theresa Schiavo, was not acting under color of state law."); *Chrissy F. ex rel. Medley v. Miss. Dep't of Public Welfare*, 780 F. Supp. 1104, 1116 (S.D. Miss.1991), *rev'd on other grounds*, 995 F.2d 595 (5th Cir. 1993). This court reached the same conclusion in *Hall v. Dixon*, No. CIV A. H 09-2611, 2010 WL 3909515, at *40 (S.D. Tex. Sept. 30, 2010), *aff'd sub nom. Hall v. Smith*, 497 F. App'x 366 (5th Cir. 2012).

Johnston does not respond to the guardian defendants' argument on this point. Because the cases clearly reject the

analysis that would allow a conclusion that Dexel, Lott, or Comstock acted under color of state law, the § 1983 claims against them fail as a matter of law. These § 1983 claims are dismissed with prejudice and without leave to amend, because amendment would be futile.

**\*7** The claims against Harris County fail for a different reason. "[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Plaintiffs seeking to impose liability on a local government under § 1983 must allege that ' "action pursuant to official municipal policy" caused their injury." *Id.* The allegations must include specific facts describing the policy or custom and tying it to the constitutional violation alleged. *George*, 2012 WL 2744332, at * 16. The plaintiff must identify, at minimum: (1) an official policy or custom with force of policy; (2) promulgated by a policymaker; (3) that caused the violation of a constitutional right. *Peterson*, 588 F.3d at 847.

Johnston's complaint fails because she has not plausibly alleged the existence of a policy or a custom with the force of policy, promulgated by a Harris County policymaker. The only allegation that comes close is the barebones statement that "Harris County has a habit and practice of violating the due process rights of wards in guardianship by not allowing them access to justice in the form of attending hearings at which their rights are compromised." (Docket Entry No. 10 at 33). This allegation is conclusory and, under the applicable law, clearly insufficient. "The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Nor may a plaintiff "infer a policy 'merely because harm resulted from some interaction with a government entity,' and instead must identify the policy or custom that caused the violation." *Batiste v. Theriot*, 458 F. App'x 351, 358 (5th Cir. 2012) Johnston's complaint does not identify instances of similar conduct by Harris County actors. A single course of conduct against the plaintiff in a particular case is generally insufficient as a matter of law to support an inference of a pattern or practice. *George*, 2012 WL 2744332, at *16. Johnston's allegation does not satisfy the requirements of the applicable law. Absent allegations of a policy or custom, a decisionmaker, and a clear causal relationship between the policy or custom and the injury that Mills suffered, Johnston's claim cannot survive a motion to dismiss. The § 1983 claim against Harris County fails as a

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

matter of law and must be dismissed. The dismissal is without prejudice and with leave to amend.

The complaint mentions § 1985 in a heading, but does not allege any facts or legal basis for a cause of action under that statute. To the extent that the complaint alleges a claim under § 1985 at all, the claim fails. It is dismissed, without prejudice and with leave to amend.

### C. The Disability-Discrimination Claims

Johnston alleges that all of the defendants engaged in illegal disability discrimination and retaliation, in violation of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. Claims under these statutes are evaluated using the same framework and legal standards. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). To state a prima facie case of discrimination under either statute, the plaintiff must allege that: (1) she has a qualifying disability; (2) she was denied benefits or otherwise discriminated against; and (3) the discrimination was because of her disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). To show discrimination on the basis of a disability, a plaintiff may either show disparate treatment—that the defendant treated her worse than a similarly situated but non-disabled person—or that the defendant failed to reasonably accommodate her disability. *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016). Johnston alleges that Mills was mistreated, not that the defendants failed to make reasonable requested accommodations.

**\*8** Johnston does not plead facts that, if proven, would show that the defendants' alleged mistreatment was because of Mills's disability. Failing to provide medical care to a disabled person is not enough, on its own, to allege disability discrimination. The allegations must include facts showing that the plaintiff was treated differently than other similarly situated individuals who did not have a disability. *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012). Johnston has not alleged any facts that support a plausible inference that Mills was treated worse than a similarly situated non-disabled elderly person. The complaint alleges in general terms that Mills was disabled, that Mills was mistreated, and that both Johnston and Mills were mistreated in retaliation for their advocacy against that mistreatment. The complaint does not allege a plausible causal connection between Mills's disabilities and the defendants' actions. Despite the fact that the defendants raised this problem in their motions to dismiss and briefed it in detail, Johnston's response does not even mention the issue. The disability-discrimination claim fails as

a matter of law. The retaliation claim fails for the same reason: Johnston has not made nonconclusory factual allegations that would plausibly support the conclusion that she and her mother were treated worse than otherwise similarly situated individuals on account of their advocacy or other protected conduct protesting actions against Mills.

The disability discrimination and retaliation claims are dismissed, without prejudice and with leave to amend.

### D. The Texas State-Law Claims

#### 1. The Immunity Defenses

The state-law claims against Harris County must be dismissed, because the Texas law on sovereign immunity shields the County from liability. "Subject to certain exceptions, sovereign immunity protects local government entities such as Harris County from liability from state-law tort claims." *Brown v. Harris Cty., TX*, No. CIV.A. H-07-0644, 2010 WL 774138, at \*13 (S.D. Tex. Mar. 2, 2010), *aff'd sub nom. Brown v. Harris Cty., Texas*, 409 F. App'x 728 (5th Cir. 2010) (citing *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001)); *see also Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). That sovereign immunity protects the State from liability even for its agents' intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057; *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994) (per curiam), *overruled in part on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc). Johnston's argument that Texas's sovereign immunity does not protect Harris County because sovereign immunity only protects states and not their political subdivisions is contrary to well-established law. *E.g., Brown*, 2010 WL 774138, at \*13. Johnston does not plead or otherwise identify exceptions to the immunity doctrine that would justify liability here, and the court is not aware of any. However, out of an abundance of caution, the court will allow Johnston an opportunity to amend her complaint to allege an exception to Texas's sovereign immunity, consistent with Rule 11 of the Federal Rules of Civil Procedure. The claims against Harris County are dismissed, without prejudice and with leave to amend.

Comstock, who served as Mills's guardian ad litem, is similarly shielded from liability under Texas law. Section 1054.056 of the Texas Estate Code provides that guardians ad litem are "not liable for civil damages arising from a recommendation made or an opinion given in the capacity

of a guardian ad litem." There are exceptions to this immunity rule for recommendations or opinions that are "wilfully wrongful"; those given "with conscious indifference to or reckless disregard for the safety of another"; "with malice" or "in bad faith"; or those that are "grossly negligent." *Id.* Johnston does not allege that Comstock acted outside her role as a guardian ad litem. The complaint does not make any nonconclusory factual allegation that Comstock made recommendations or gave opinions that fall into any of the immunity exceptions.

To be sure, Johnston liberally peppers the allegations with the language of purposeful impropriety. Johnston alleges that Comstock's work was "replete" with misrepresentations; "deliberately mischaracterized" Johnston's understanding of her mother's health problems with "gross exaggerations"; and attempted to "malign" Johnston. (Docket Entry No. 10 at 21). But the complaint does not allege facts sufficiently specific to make the conclusory language a basis to plead a plausible claim. The allegations lack facts from which the court could infer that Comstock acted willfully, maliciously, or with the "conscious indifference" to Mills's welfare that is required to find gross negligence. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981) (gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."). The fact that a guardian ad litem's report contains falsehoods is not sufficient. There must be factual allegations showing that the guardian was either affirmatively aware that the statements were false or made the statements with reckless, conscious indifference to their truth. That in turn requires factual allegations what information the guardian knew and how that differed from what the guardian's report represented. The closest the complaint comes to pleading around immunity is the allegation that Comstock "never called key witnesses, such as Willie Jo Mills' primary caretaker, who would have confirmed the neglect and dangerous conditions at Silverado ...." (Docket Entry No. 10 at 20-21). This factual allegation may plausibly support an inference of negligence. But Johnston does not include factual allegations that would justify an inference that Comstock was *grossly* negligent—that her failure to contact a given witness was the product of an "entire want of care" showing "conscious indifference" to Mills's well-being. *Burk Royalty Co.*, 616 S.W.2d at 920.

**\*9** The Texas-law claims against Comstock are dismissed, without prejudice and with leave to amend. To survive a

subsequent motion to dismiss, Johnston must plead specific facts—not labels, descriptions, or conclusions—from which the court could infer that her characterizations of Comstock's state of mind are plausible.

### 2. The Remaining Claims and Defendants

#### a. The Claims for Breach of Fiduciary Duty and Civil Conspiracy

The claims against the remaining individual defendants require more detailed evaluation. The first Texas-law cause of action charges that the only remaining individual defendants —Dexel and Lott—conspired to, and did, breach their fiduciary duties to Mills. Under Texas law, "[t]he elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship, and (2) a breach of duty by the fiduciary (3) that causes damages to the client or improper benefit to the fiduciary." *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 150 (Tex. App.—El Paso 2011, no pet.). Each defendant's arguments for dismissal are considered in turn.

Dexel argues that Johnston has not pleaded a plausible causal link between his conduct and harm to Mills. Dexel argues that the fact that he was discharged as Mills's guardian more than a year before she died means that he is not liable for her death. He insists that the fact that the court (rather than Dexel) appointed Lott as a successor guardian breaks any causal link between his acts and Mills's deterioration. These arguments are unpersuasive. Johnston's complaint, construed as a whole and taking all factual allegations as true, plausibly alleges that before Dexel's discharge as guardian, he breached his duties to Mills by repeatedly disregarding warnings about the Silverado nursing home's alleged mistreatment of Mills and about Mills's deteriorating physical condition and by ending Mills's physical therapy. (Docket Entry No. 10 at 12-13). Johnston alleges that, as a result of Dexel's actions, Mills suffered broken bones and a rapid and preventable decline in her physical condition that left her unable to feed herself, which contributed to her malnutrition. (*Id.*). Dexel's causation argument, which focuses on events after he was discharged and on Mills's death, does not address these alleged breaches and injuries.

Dexel also argues that Johnston's failure to link her factual allegations to the elements of a claim for breach of fiduciary duty means that the complaint fails. Dexel's complaint stems

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)
2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 24 of 37   PageID 6609

from the structure of Johnston's complaint, which includes an extensive and sometimes muddled set of factual allegations as to each defendant, and in a different section, gives a conclusory recitation of the elements of the causes of action. Dexel is correct that Johnston's complaint is not a model of clear pleading. Johnston must clarify the relationship between her factual allegations and the elements of the causes of action she asserts in any future amended complaint. In each cause of action, Johnston should state the specific factual allegations she believes support a given element of her claim. Johnston's current approach requires the defendants and the court to sift through her lengthy complaint looking for factual allegations to map onto the elements of a cause of action. This violates the requirement that a complaint provide a short, plain, and clear statement of the claim. Nonetheless, under applicable law, the court must "view[ ] the complaint as a whole, rather than any one statement in isolation." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 289 (5th Cir. 2004). The court has already explained why, viewed as a whole, the complaint states a breach of fiduciary duty claim against Dexel.

 **\*10** Finally, Dexel claims that self-dealing is a critical part of a claim for breach of fiduciary duty. He argues that a plaintiff must plausibly allege that the fiduciary personally benefitted from the breaches of his or her duties. In support, he cites *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2003, pet. denied). That case does state the proposition that an improper benefit is part of a breach of fiduciary duty claim. But this does not appear to be the general rule in Texas cases. Instead, the persuasive weight of authority is that *either* an injury to the party to whom the fiduciary duties are owed *or* an improper benefit to the fiduciary is sufficient to state a claim. *E.g., Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.); *PAS, Inc. v. Engel*, 350 S.W.3d 602, 610 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

*Kimleco*'s discussion focuses on claims against attorneys. The court drew a line between legal malpractice claims and breach of fiduciary duty claims against an attorney by pointing to self-dealing as an important distinguishing feature. Other cases that recite propositions similar to *Kimleco* similarly focus on "the attorney-client context ...." *E.g., Neese v. Lyon*, 479 S.W.3d 368, 386 (Tex. App.—Dallas 2015, no pet.). It is interesting to note that, even though *Neese* states that "a fiduciary-duty claim focuses on whether the attorney's conduct involved his or her integrity and fidelity, *and whether the attorney obtained an improper benefit from representing*

*the client*," the case's statement of the elements acknowledges that "injury to the plaintiff" is sufficient to make out a claim. *Id.* Texas law does not appear to require an improper benefit to the fiduciary to state a claim that the fiduciary breached his duties. Johnston has adequately pleaded an injury to Mills. Dexel's arguments fail.

Lott advances several arguments. First, she argues that issue preclusion bars Johnston's claim for breach of fiduciary duty. Lott points to the order discharging her from service as Mills's guardian. The probate court found that Lott had fulfilled her duties in good faith and made decisions based on proper medical advice, and stated that Lott should be discharged from her duties with no further liability. (Docket Entry No. 24-1). Issue preclusion is an affirmative defense on which Lott bears the burden. Issue preclusion, or collateral estoppel, bars

> ... a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action.

*Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) (footnotes and citation omitted). "Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995) (citation omitted). Lott provides neither argument nor authority explaining why the probate court's discharge order satisfies these conditions. It is not clear whether Johnston was a party to the prior proceeding in the relevant sense ("an earlier action between the same parties"). Lott has not demonstrated that the issue of whether she executed her duties in good faith involved the same issues, facts, or legal standard as the present action. Nor has she shown that the issue was actually litigated in the probate court or that it was necessary to the order discharging her as Mills's guardian. Lott is free to reurge this argument at a later stage in the proceedings. And Dexel, to the extent that he believes that his own discharge order has a preclusive effect here, may also raise this defense at a later stage in the proceedings. The present record, however, does not justify dismissing the claims against either Lott or Dexel on the basis of preclusion.

 **\*11** Lott next argues that the complaint does not adequately allege a causal link between her actions as guardian and the harms Mills allegedly suffered during Lott's guardianship.

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 25 of 37   PageID 6610

This argument is unpersuasive. The complaint alleges that Lott disregarded medical advice that she take steps to see that Mills received certain care; obstructed Johnston's efforts to get Mills emergency care during a medical crisis; disregarded evidence that the Hamptons nursing home was neglecting Mills's medical needs; and inappropriately relied on a do-not-resuscitate order to withhold food from Mills, contributing to her death. (Docket Entry No. 10 at 17-19). These allegations state a claim for a breach of fiduciary duty. The breach of fiduciary duty claim against Lott may proceed.

Johnston also alleges civil-conspiracy liability for these breaches of fiduciary duty. "A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Goldstein v. Mortenson*, 113 S.W.3d 769, 778-79 (Tex.App.—Austin 2003, no pet.) (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983)); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968). A civil conspiracy claim involves two or more persons, who agreed on an object to be accomplished or a course of action; the commission of one or more unlawful, overt acts; and damages as the proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (quoting *Massey*, 652 S.W.2d at 934). "Once a conspiracy is proven, each co-conspirator 'is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.' " *Carroll v. Timmers Chevrolet*, 592 S.W.2d 922, 926 (Tex.1979) (quoting *State v. Standard Oil Co.*, 130 Tex. 313, 329, 107 S.W.2d 550, 559 (1937)). "[C]ivil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). A common intent to accomplish a given goal, plus a tort in furtherance of that goal, are not enough. The parties must have agreed to accomplish an unlawful goal or to accomplish a lawful goal by unlawful means. *Juhl*, 936 S.W.2d at 644.

The conspiracy allegations fail. Even assuming that the other elements are met, Johnston has not adequately alleged the required agreement, or meeting of the minds. Johnston's only factual allegation on this point is that, on September 17, 2013, Dexel, Lott, Comstock, and Judge Butts had a "secret, *ex parte* meeting/hearing ... in which Judge Butts appointed Lott as successor guardian to Dexel ...." (Docket Entry No. 10 at 14, 17). This is far from a factual allegation that those present at that meeting reached an agreement to deny Mills

proper medical care and hasten her death. Nor is it a basis from which the court could infer such an agreement. The claim for conspiracy to breach fiduciary duties is dismissed, without prejudice and with leave to amend. To survive a subsequent motion to dismiss, Johnston must allege specific facts that, if proven, would support a plausible inference that the defendants entered into an agreement with the specific intent to pursue an unlawful goal or to unlawfully pursue a lawful goal relating to Mills's care.

### b. The Claim For Intentional Infliction of Emotional Distress

To recover damages for intentional infliction of emotional distress, a plaintiff must plead factual allegations showing that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendants actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Extreme and outrageous conduct is conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). "Generally, liability for intentional infliction of emotional distress has only been found in those cases in which a recitation of the facts to an average member of the community would lead him to exclaim, 'Outrageous! ' " *Foye v. Montes*, 9 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 1999). "The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it 'extreme and outrageous.' " *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Whether a defendant's conduct is "extreme and outrageous" is a matter of law for the court to decide. *Id.*; *see also Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999).

**\*12** The defendants argue that the complaint allegations do not describe behavior that any civilized person would regard as "outrageous" or "beyond all possible bounds of decency." Therefore, they say, Johnston has not adequately alleged a claim for intentional infliction of emotional distress. Johnston did not respond to this argument. Her response to the motions to dismiss does not address her intentional infliction of emotional distress claim at all. Johnston appears to have abandoned the claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Even assuming that Johnston still intends to press the claim, the defendants' argument is

Johnston v. Dexel, Not Reported in Fed. Supp. (2017)

2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 26 of 37   PageID 6611

persuasive. The allegations against the defendants, taken as true, clearly allege tortious and blameworthy acts. But that is not "extreme and outrageous." The complaint does not allege the level of depraved or heinous conduct necessary to impose liability for intentional infliction of emotional distress. The claim is dismissed, without prejudice and with leave to amend.

### c. The Wrongful Death Claim

"In a wrongful death action" under Texas law, "a plaintiff must show (1) wrongful or negligent conduct of the defendant, and (2) the proximate cause resulting in death." *Schippers v. Mazak Properties, Inc.*, 350 S.W.3d 294, 298 (Tex. App.—San Antonio 2011). The defendants' arguments focus on causation.

Dexel argues that the complaint does not allege proximate cause for two reasons: because he was discharged over a year prior to Mills's death, and because the complaint affirmatively alleges that it was Lott who caused Mills's death by improperly relying on a do-not-resuscitate order to prevent medical personnel from feeding Mills, causing her to starve to death. Johnston's brief response—unaccompanied by additional argument or authority—is that she does not allege "that Dexel, himself, starved Mills to death—he simply recruited Lott to slide into his place and let her take over." (Docket Entry No. 25 at 24).

Texas law supports Dexel's argument. "Even where a defendant's actions would be considered a substantial factor and a but-for cause of harm, the defendant may be relieved of liability where there is a 'superseding cause'—a third party or a force that is beyond the defendant's anticipation or control, which intervenes and destroys the causative chain between the defendant and the harm." *Walters v. Allways Auto Grp., Ltd.*, 484 S.W.3d 219, 22-26 (Tex. App.—Corpus Christi 2016). An intervening tort by a third party is typically such a superseding cause. The critical inquiry is whether the third party's actions were foreseeable. *E.g., Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 64 (Tex. App.—Houston [14th Dist.] 2015), *reh'g overruled* (Aug. 27, 2015); *Dyess v. Harris*, 321 S.W.3d 9, 14 (Tex. App.—Houston [1st Dist.] 2009).

Johnston's argument that there is no superseding cause because Lott simply continued Dexel's neglect is undermined by her complaint allegations. Johnston repeatedly, explicitly, and affirmatively alleges that Mills died because Lott denied her food, causing her to starve to death. (Docket Entry No. 10 at 18-19; 38; 40; 46-47). There is no allegation, much less a well-pleaded and plausible allegation, that Lott's alleged action was a continuation of Dexel's alleged misconduct that was foreseeable to Dexel. The wrongful death claim against Dexel is dismissed, without prejudice and with leave to amend. To survive a subsequent motion to dismiss, the amended complaint must allege specific facts about what Dexel knew about Lott or the circumstances that would make Lott's decision, months later, to withhold food foreseeable to Dexel.

Lott similarly argues that the complaint does not plausibly allege that she proximately caused Mills's death. This argument is unpersuasive given the complaint's repeated, specific, and detailed allegations that Mills's death was a direct result of Lott's decision to deny Mills food. (Docket Entry No. 10 at 18-19; 38; 40; 46-47). That is a factual allegation, not a legal conclusion. On a motion to dismiss, it must be taken as true. Lott's causation argument fails.

**\*13** Lott also advances what appears to be a limitations argument. She argues that, when "a decedent's own cause of action was barred by governmental immunity, or statute, or release, or res judicata, or any other affirmative defense, there is no wrongful death action to accrue," and urges that the wrongful death claim against her must be dismissed. (Docket Entry No. 24 at 18). If Lott is arguing that the order discharging her as guardian is preclusive as to the wrongful death claim, that argument fails for the reasons Lott's similar preclusion argument addressed earlier failed. If Lott is arguing that Mills could not have sued her, the basis for that argument is unclear at best. Second, citing the Texas medical malpractice statute, Lott argues that the wrongful-death cause of action accrued at the time of the alleged tortious conduct, not when Mills died. As a result, Lott argues, the claim is untimely because it was filed more than two years after Lott allegedly began denying Mills food. This argument is also unpersuasive. Lott cites § 73.251 of the Texas Civil Practice & Remedies Code, but this statute applies only to tort claims against healthcare providers and related professionals. The statute does not purport to apply to tort claims against guardians. The wrongful-death claim that Johnston asserts accrued on the date Mills died—September 27, 2014—and was filed in Texas state court exactly two years later—September 27, 2016. The claim is timely under Texas law. *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39,

63 (Tex. 2014) (the statute of limitations for wrongful death actions is two years).

The wrongful death claim against Lott is adequately pleaded and can proceed.

### d. "Ultra Vires" Acts

The final heading in Johnston's complaint is "*Ultra Vires* Illegal, Criminal, and Wrongful Acts." (Docket Entry No. 10 at 46). The heading is followed by two and a half pages of vague allegations that the defendants' actions amounted to: criminal injury to the elderly; unauthorized practice of medicine and pharmacy; and criminal recklessness. The complaint does not allege any specifics as to the statutes or regulations that the defendants' conduct violated, identify any private causes of action stemming from the asserted violations, identify the elements of any causes of action, or plead specific facts plausibly alleging a cause of action. To the extent that Johnston intended to assert any specific cause of action against a particular defendant in this section, the claim is dismissed for failure to state a claim. The dismissal is without prejudice and with leave to amend.

### IV. Conclusion

For the reasons stated in this opinion, the defendants' motions to dismiss are granted in part and denied in part. The following claims are dismissed with prejudice:

- all claims against Judge Christine Butts and Sherry Fox (save that Johnston may amend her complaint to allege a claim under Section 1201.003 of the Texas Estate Code on Judge Butts's bond);

- all claims under 42 U.S.C. § 1983 against David Dexel, Ginger Lott, GSL Care Management, LLC, and Clarinda Comstock.

The following claims are dismissed without prejudice and with leave to amend:

- the claims under § 1983 against Harris County;

- the claims for disability discrimination and retaliation under the Americans with Disabilities Act and the Rehabilitation Act;

- all of the Texas-law claims against Harris County and Clarinda Comstock;

- the claim for civil conspiracy to breach fiduciary duties;

- the claim for intentional infliction of emotional distress;

- the claim for wrongful death against David Dexel; and

- any claims that Johnston intended to assert for fraud, defamation, violation of statutory duties, or commission of "ultra vires" illegal acts.

The claim for breach of fiduciary duty is adequately pleaded as to Dexel and Lott, and may proceed. The claim for wrongful death is adequately pleaded as to Lott, and may also proceed.

Any amended complaint must be filed by **September 18, 2017.**

### All Citations

Not Reported in Fed. Supp., 2017 WL 11612500

---

Footnotes

1    All parties appear to treat Lott and GSL Care Management as interchangeable. Lott and GSL filed a joint motion to dismiss, and the motion does not make any effort to distinguish the two entities (one natural, one legal) from each other for liability purposes. This opinion refers to Lott and GSL collectively as "Lott."

2    In addition to the list of claims that follows, the introduction to Johnston's complaint makes a passing reference to a cause of action for fraud. However, that is the only reference to fraud; it is not identified or pleaded against any defendant at any other point in the complaint. A brief mention in an introductory paragraph, unaccompanied by detailed pleading in the body of the complaint, is not sufficient to state a claim for relief. To the extent that Johnston intended to plead a fraud claim, it is dismissed without prejudice. The complaint contains similar passing references to defamation (in the form of slander or libel), without formally asserting a cause of action for defamation or pleading facts supporting the elements of

**Johnston v. Dexel, Not Reported in Fed. Supp. (2017)**

2017 WL 11612500

Case 4:22-cv-00343-Y   Document 236-6   Filed 04/26/24   Page 28 of 37   PageID 6613

that cause of action. To the extent that Johnston intended to plead a cause of action for defamation, it too is dismissed without prejudice.

3    This cause of action is a bare heading, reading in its entirety "Seventh Cause of Action - Conspiracies to Violate Civil Rights - 42 U.S.C. § 1985." It is titled the seventh cause of action rather than the sixth because earlier in the complaint, the numbering jumped. Other than this heading, the complaint does not evince an intent to bring a claim under this statute. To the extent that Johnston intended to press a claim under § 1985, it is dismissed, without prejudice and with leave to amend, for failure to state a claim.

4    Once again, this cause of action is a bare heading without accompanying factual allegations as to the elements of a claim. The complaint does not identify what statutory duties were breached or which defendants breached them. To the extent Johnston intended to plead a claim for the breach of some unidentified statutory duty, the claim is dismissed, without prejudice and with leave to amend.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6071179
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Leighandra WARE and
Patrick Estriplet, Plaintiffs,
v.
BANK OF AMERICA, NATIONAL
ASSOCIATION, et al., Defendants.

Civil Action No. 3:21-CV-2824-M-BH
|
Signed August 28, 2023

**Attorneys and Law Firms**

C. Daniel Herrin, Herrin Law PLLC, Dallas, TX, for
Plaintiffs.

Matthew David Durham, McGuireWoods LLP, Dallas, TX,
Taylor William Meek, Maynard Nexsen, PC, Dallas, TX, for
Defendant Bank of America National Association.

Branch M. Sheppard, Berenice Medellin Pruettiangkura,
Galloway Johnson Tompkins Burr & Smith, Houston, TX, for
Defendant Specialized Loan Servicing LLC.

Referred to U.S. Magistrate Judge[1]

**FINDINGS,          CONCLUSIONS,          AND
RECOMMENDATION**

IRMA CARRILLO RAMIREZ, UNITED STATES
MAGISTRATE JUDGE

 **\*1** Based on the relevant filings, evidence, and applicable
law, *Bank of America, N.A.'s Motion for Summary Judgment*,
filed January 19, 2023 (doc. 24), should be **GRANTED** and
*Bank of America, N.A.'s Objections to and Motion to Strike
Plaintiffs' Summary Judgment Evidence*, filed February 23,
2023 (doc. 43) is **DENIED as moot**.

**I. BACKGROUND**

This dispute arises out of two mortgage loans obtained for
the purchase of real property located at 4939 Eyrie Court,
Grand Prairie, Texas 75052 (Property). (doc. 17 at 2.)[2] On
March 22, 2007, Leighandra Ware (Borrower) executed an
Adjustable Rate Note (First Note) in favor of First Franklin
Financial Corp. (Lender) for a loan in the principal amount
of $221,150.00 (First Mortgage). (doc. 20-25.) Borrower and
Patrick Estriplet (collectively Plaintiffs) contemporaneously
executed a deed of trust (First Deed of Trust) that granted a
security interest in the Property to Lender to secure repayment
of the First Note. (*Id.* at 26-44.) On the same day, Borrower
also executed a Fixed Rate Note (Second Note) in the amount
of $55,300.00 (Second Mortgage) payable to Lender. (*Id.*
at 59-62.) Plaintiffs contemporaneously executed a Deed of
Trust-Secondary Lien (Second Deed of Trust) that granted a
security interest in the Property to Lender to secure repayment
under the Second Note. (*Id.* at 63-79.)

On or about October 1, 2010, Lender transferred servicing of
both mortgages to BAC Home Loans Servicing, LP, a Bank
of America, N.A. company (Defendant). (docs. 25 at 80; 35 at
104.) According to Plaintiffs, they had phone conversations
with Defendant about both mortgages in or around May 2011.
(doc. 35 at 4, 7.) Defendant's agent told them that they would
receive a loan modification on the First Mortgage, reducing
the principal amount by over $60,000, if they maintained
"good status" during a trial period, and that the Second
Mortgage did not need a loan modification because it "was
already forgiven." (*Id.*) The agent explained that they were
receiving both debt forgiveness and debt reduction as part
of a settlement with the Federal Government. (*Id.*) After this
conversation, Plaintiffs stopped receiving monthly mortgage
statements associated with the Second Mortgage, and it was
deleted from Borrower's credit report. (*Id.*)

On May 25, 2011, Defendant sent Borrower a letter (First
Notice of Servicing Transfer) notifying her that the servicing
of the Second Mortgage would be transferred to Carrington
Mortgage Services, LLC (Carrington) effective June 1,
2011. (doc. 25 at 82-83.) On December 30, 2011, Plaintiffs
received a loan modification on the First Mortgage and
executed a Home Affordable Modification Agreement (Loan
Modification). (*Id.* at 45-58.) On or about September 17,
2015, a letter (Second Notice of Servicing Transfer) was sent
to Borrower stating that the servicing of the Second Mortgage
had been transferred from Carrington to Specialized Loan
Servicing LLC (SLS) effective September 11, 2015. (doc. 35
at 124-30.) Beginning in or around 2021, SLS sent notices to

Plaintiffs attempting to collect on the Second Mortgage. (*Id.* at 4, 7.)

**\*2** On October 6, 2021, Plaintiffs sued Defendant and SLS in state court. (doc. 1-2 at 6-59.) After the lawsuit was removed to federal court, Plaintiffs filed their first amended complaint on June 30, 2022. (*See* doc. 17.) They assert claims against Defendant for violations of the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA) and for fraud, breach of contract, and promissory estoppel. (*Id.* at 11-20.)

On January 19, 2023, Defendant moved for summary judgment on all of Plaintiffs' claims against it. (doc. 24.) Plaintiffs responded on February 9, 2023, and Defendant replied on February 22, 2023. (docs. 33-35, 40.) On February 23, 2023, Defendant moved to strike portions of Plaintiffs' summary judgment evidence. (doc. 43.) Plaintiff responded on March 16, 2023, and Defendant replied March 30, 2023. (docs. 45-47.)

## II. EVIDENTIARY OBJECTIONS

Defendant objects to and moves to strike portions of Plaintiffs' affidavits offered in support of their response to the motion for summary judgment. (doc. 43.) Because the objected statements, even if considered, do not affect the disposition of the pending motion for summary judgment, Defendant's objections are **OVERRULED** and its motion to strike is **DENIED as moot**. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at \*1 n. 6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a).* "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant bears the burden of proof on an issue, it must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis original). The moving party can also meet its summary judgment burden by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant meets its summary judgment burden, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[3] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s.]" *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

### A. Common Law Fraud

**\*3** Defendant moves for summary judgment on Plaintiffs' fraud claim on the ground that it does not comply with Rule 9(b)'s heightened pleading standard. (doc. 25 at 8.)

In Texas,[4] the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted). A dismissal for failure to plead fraud with particularity in accordance with Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

"[W]hile 'failure to state a claim usually warrants dismissal under Rule 12(b)(6),' it may also serve as a basis for summary judgment." *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) (quoting *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)). When a "motion for summary judgment only challenge[s] the sufficiency of the plaintiffs' pleadings, the motion should [be] evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) (citing *Whalen*, 954 F.2d at 1098); *see also Pruitt v. Bank of New York Mellon*, No. 3:15-CV-2359-L, 2016 WL 11258228, at *10 (N.D. Tex. Nov. 30, 2016), *adopted in part and rejected in part by* 2017 WL 33383 (N.D. Tex. Jan. 3, 2017) ("Courts routinely find that an attack on the pleadings on a motion for summary judgment shall be ruled on as if the plaintiff filed a motion to dismiss even where the parties have presented evidence to support the claim.") (citing cases). "[B]oth standards reduce to the same question, specifically,

if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." *Taplin v. Wells Fargo Bank, N.A.*, No. 3:17-CV-3404-M-BN, 2018 WL 6933153, at *6 (N.D. Tex. Nov. 28, 2018), *adopted by* 2019 WL 112103 (N.D. Tex. Jan. 4, 2019) (citation and internal quotation omitted).

**\*4** Here, Plaintiffs allege that Defendant made representations to them that the Second Mortgage was "charged off" and they no longer needed to make payments, and it subsequently stopped sending mortgage statements on the Second Mortgage and removed that mortgage from their credit reports. (doc. 17 at 12.) They also allege that when the First Mortgage was modified in 2011, Defendant told them the Second Mortgage did not need to be modified because it had been "charged off" and payments were no longer required on it. (*Id.*) They allege that Defendant's "acts were done maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of [their] rights and well-being so that [it] could enrich itself." (*Id.*)

While the first amended complaint nominally lays out the necessary elements of a common law fraud claim in Texas, it fails to include the specifics of "the who, what, when, where, and how" required under Rule 9(b). *See Benchmark Electronics*, 343 F.3d at 724. It also fails to allege any facts to support the claim that Defendant had knowledge or acted recklessly. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) ... [because] the plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendants.") (citations omitted) (emphasis original). Because Plaintiffs have failed to meet the heightened pleading requirement of Rule 9(b), summary judgment should be granted in Defendant's favor with respect to their fraud claim. *See Whalen*, 954 F.2d at 1098 (upholding summary judgment on fraud claim for failure to comply with Rule 9(b), noting that the failure to state a claim is the functional equivalent of failure to raise a genuine issue of material fact); *see, e.g.*, *Lopez v. Wells Fargo Bank, N.A.*, No. 5:18-CV-44, 2020 WL 224485, at *4 (S.D. Tex. Jan. 14, 2020) (granting summary judgment motion on fraud claim that did not comply with Rule 9(b)); *Valenzuela v. Bank of New York Mellon*, No. CV B-18-36, 2019 WL 5400902, at *11-12 (S.D. Tex. June 28, 2019), *adopted by* 2019 WL 5401020 (S.D. Tex. Oct. 22, 2019), *aff'd sub nom. by* 811 F. App'x 902 (5th Cir. 2020) ("Accordingly, summary judgment for Defendants is proper

where Plaintiffs fail to meet the Rule 9(b) standard, in that Plaintiffs' fail to clearly set out the fraudulent statements made by BONY Mellon.").[5]

**B. Promissory Estoppel**

Defendant moves for summary judgment on Plaintiffs' promissory estoppel claim on the ground that it is barred by the statute of frauds. (doc. 25 at 9.)

Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *See Hurd v. BAC Home Loans Servicing, LP,* 880 F. Supp.2d 747, 761 (N.D. Tex. 2012); *Kelly v. Rio Grande Computerland Grp.,* 128 S.W.3d 759, 769 (Tex.App.—El Paso 2004, no pet.). A claim for promissory estoppel must establish the following: (1) a promise; (2) reliance thereon that was foreseeable to promissor; and (3) substantial reliance by promisee to her detriment. *See McDonald v. Deutsche Bank Nat'l Trust Co.,* No. 3:11-CV-2691-B, 2012 WL 2122168, at *5 (N.D. Tex. June 11, 2012). "Under Texas law, promissory estoppel requires that 'the agreement that is the subject of the promise must comply with the statute of frauds. That is, the agreement must be in writing at the time of the oral promise to sign it.' " *Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 549 (5th Cir. 2010) (quoting *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied)). An agreement involving a loan exceeding $50,000 in value is subject to the statute of frauds and must be in writing to be valid. *See Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Bus. & Com. Code § 26.02(b)) ("An agreement regarding the transfer of the property or modification of a loan must ... be in writing to be valid.").

 *5 Here, Defendant provides the Second Note, the Second Deed of Trust, and the First Notice of Servicing Transfer letter as summary judgment evidence. (*See* doc. 25 at 59-79, 82-83.) Its evidence shows that the principal balance of the Second Mortgage exceeded $50,000. Defendant has met its summary judgment burden establishing that the statute of frauds applies to any promise or agreement relating to the Second Mortgage. *See Martins,* 722 F.3d at 256.

The burden now shifts to Plaintiffs to show a genuine issue of material fact regarding whether a written agreement promising to discharge the Second Mortgage had been entered by the parties. They do not dispute that this mortgage

exceeded $50,000, and they do not provide evidence of a written agreement promising a debt discharge. Rather, they argue that their oral contract with Defendant falls within the partial performance exception to the statute of frauds. (doc. 34 at 14.)

"Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Breezevale,* 82 S.W.3d at 439. " 'Virtual fraud' refers to a situation where the 'party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy,' and application of the statute of frauds would give the other party 'an unearned benefit.' " *Owens v. Specialized Loan Servicing, L.L.C.,* 694 F. App'x 950, 955-56 (5th Cir. 2017) (quoting *Carmack v. Beltway Dev. Co.,* 701 S.W.2d 37, 40-41 (Tex. App.—Dallas 1985, no writ)). "The acts of part performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.' " *Williams v. Wells Fargo Bank, N.A.,* 560 F. App'x 233, 239 (5th Cir. 2014) (quoting *Breezevale,* 82 S.W.3d at 439). "Performance is only unequivocally referable to the agreement when there is no other possible reason for performance." *Owens,* 694 F. App'x at 956. Notably, "no Texas court has clearly stated that the partial-performance exception applies to the loan-agreement statute of frauds." *Montalvo v. Bank of Am. Corp.,* 864 F. Supp.2d 567, 592 (W.D. Tex. 2012).

Plaintiffs argue that "the execution and principle reduction to the [First] Mortgage", "the removal of the Second[ ] Mortgage from [ ] [B]orrower's credit history", and "the immediate stop by [Defendant] to collect on the Second[ ] Mortgage and discharge" are acts showing "partial performance" of the oral agreement to "charge off" the Second Mortgage. (doc. 34 at 14.) These actions "do not unequivocally corroborate the fact of any alleged oral loan modification contract." *Williams,* 560 F. App'x at 239. While Plaintiffs contend that Defendant had stopped sending mortgage statements and ceased all collection attempts on the Second Mortgage after it orally agreed to discharge the mortgage in May 2011, such acts are consistent with undisputed evidence that the servicing of the Second Mortgage was transferred from Defendant to another mortgage servicer in June 2011. *See Castillo v. Ocwen Loan Servicing, L.L.C.,* 539 F. App'x 621, 624-25 (5th Cir. 2013) (holding that district court properly concluded payments were not unequivocally referable to terms of oral agreement as the payments could have been made to satisfy original mortgage

contract); *Hern Family Ltd. P'ship v. Compass Bank*, 863 F. Supp.2d 613, 625 (S.D. Tex. 2012) (rejecting partial performance exception to statute of frauds where plaintiffs' actions could have been intended to pay already existing debt owed defendant); *see also Alexander O & G, L.L.C. v. Nomad Land & Energy Res., L.L.C.*, 313 F. Supp.3d 794, 803 (S.D. Tex. 2018) ("To constitute partial performance, the actions must unequivocally refer to the alleged agreement, such that the actions could have been done with no other design than to fulfill that agreement."). Because Plaintiffs do not present competent evidence of partial performance that "could have been done with no other design than to fulfill the" alleged oral agreement to discharge the Second Mortgage, they have failed to satisfy the partial performance exception to the statute of frauds. *See Breezevale*, 82 S.W.3d at 439.

**\*6** Plaintiffs have failed to meet their burden to show a genuine issue of material fact as to their promissory estoppel claim, and Defendant's motion for summary judgment as to this claim should be granted.

## C. FDCPA
Defendant moves for summary judgment on Plaintiffs' FDCPA claim on the ground that it is not a "debt collector" under the act. (doc. 25 at 10.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.' " *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at \*7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)). It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.' " *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at \*6 (N.D. Tex. July 31, 2012), *adopted by* 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing 15 U.S.C. §§ 1692e and 1692f).

The FDCPA defines a debt collector as "any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). There are two categories of debt collector—those who collect debts as the "principal purpose" of their business and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal

purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007). Notably, the FDCPA exempts from this definition "any person collection or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was originated by such person." 15 U.S.C. § 1692g(a)(6)(F) (emphasis added). Under this exception, courts have concluded that "[t]he term 'debt collector' does include lenders[,] ... 'the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.' " *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at \*2 (N.D. Tex. July 17, 2013) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Defendant argues that there is no evidence that it is a "debt collector" within the meaning of the FDCPA. (doc. 25 at 10.) Where, as here, the nonmovant bears the burden of proof, the movant's burden may be discharged by pointing out a complete lack of evidence to support the nonmovant's case. *See Celotex*, 477 U.S. at 325. Defendant has therefore met its summary judgment burden by showing a complete lack of evidence establishing that it is subject to the FDCPA.

The burden now shifts to Plaintiffs to show that there is a genuine material fact issue with respect to their FDCPA claim. By failing to respond to Defendant's argument that it is not a debt collector under the FDCPA, Plaintiffs have abandoned this claim. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2514998, at \*7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned.") (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Plaintiffs have failed to meet their burden to show a genuine issue of material fact as to their FDCPA claim, and Defendant's motion for summary judgment as to this claim should be granted.[6]

## D. FCRA
**\*7** Defendant moves for summary judgment on Plaintiffs' FCRA claim on the ground that there is no evidence that it violated § 1681s-2(b). (doc. 25 at 12.)

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking

system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 475 (5th Cir. 2000) (per curiam) (FCRA governs reporting of consumer credit information and permissible uses of credit reports). Among other things, the FCRA "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b); *see Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir. 2006). Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on 'furnishers of information' to provide accurate information to consumer credit reporting agencies." *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (citation omitted); 15 U.S.C. § 1681s–2. While the FCRA does not define "furnisher of information," courts in the Fifth Circuit "have defined the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency.'" *Alam v. Sky Recovery Servs., Ltd.*, No. Civ.A. H-08-2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One*, 137 F. Supp.2d 721, 722 (E.D. La. 2001)).

"Under § 1681s–2(a), furnishers of information may not knowingly provide inaccurate information to consumer reporting agencies." *Smith*, 2010 WL 3338537, at *14 (citing 15 U.S.C. § 1681s–2(a)). Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C. § 1681s–2(b). To recover against a furnisher for violations of § 1681s–2(b),[7] a plaintiff must show that: (1) she disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation. *Smith*, 2010 WL 3338537, at *15; *see also* 15 U.S.C. §§ 1681s–2(b), 1681i(a)(2).

**\*8** Defendant argues that there is no evidence that Plaintiffs disputed the accuracy of information with a credit reporting agency and, in turn, that a credit reporting agency provided it

notice of a dispute. (doc. 25 at 12-13.) Because Defendant has shown a complete lack of evidence as to an essential element of Plaintiffs' FCRA claim, it has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiffs to show evidence of a genuine issue of fact as to whether a credit reporting agency notified Defendant of any dispute about inaccurate information. Because they have not responded to this argument, they have failed to meet their summary judgment burden on their FCRA claim. *See Black*, 461 F.3d at 588 n.1. Plaintiffs therefore have not shown that there is a genuine issue of material fact as to an essential element of a § 1681s–2(b) claim. *See Smith*, 2010 WL 3338537, at *15. Defendant's motion for summary judgment as to their FCRA claim should be granted on this basis.

**E. Breach of Contract**

Defendant moves for summary judgment on Plaintiffs' breach of contract claim on the ground that it is barred by the statute of limitations. (doc. 25 at 15.)

"Under Texas law, a four-year statute of limitations applies to breach of contract claims." *TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp.3d 661, 668 (N.D. Tex. 2014); *see also* Tex. Civ. Prac. & Rem. Code § 16.051. A cause of action for breach of contract generally accrues at the time of the breach. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); *see also Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.) ("A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach."). "What constitutes a breach of contract is a question of law, but whether the breaching conduct occurred is a question of fact." *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017). Texas law provides that the party asserting a limitations defense "must not only establish the applicability of the limitations statute, but must, as well, prove when the opponent's cause of action accrued." *In re Hinsley*, 201 F.3d 638, 645 (5th Cir. 2000) (quoting *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.-Houston 1984, writ refused n.r.e.)); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) ("A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense.").

Here, the first amended complaint alleges that Defendant breached the Second Deed of Trust when it "internally accelerated" the Second Mortgage without giving Plaintiffs notice in violation of paragraph 20, and when it failed to provide notice of default of that mortgage in violation of paragraph 13. (doc. 17 at 17.) Although the complaint does not identify the time period of the alleged breaches, Defendant argues that Plaintiffs' breach of contract claim accrued in 2011 based on the following allegation: "Last payment from Plaintiffs was in 2007, and last conversation about the Second Lien, or Second Loan, whereby Bank of America represented that the debt would be charged off occurred in 2011." (doc. 25 at 16 (quoting doc. 17 at 19).) Plaintiffs filed suit approximately 10 years later in October 2021, which is well after the expiration of the four-year limitations period. *See Stine*, 80 S.W.3d at 592.

**\*9** Plaintiffs do not dispute that the alleged breaches occurred in 2011, no otherwise respond to Defendant's argument that the breach of contract claim is barred by limitations. They instead allege for the first time that they "have asserted breach of contract against the Defendants for making false representations and partially complying with the oral agreement which was to release Plaintiffs from any obligation under the Secondary Mortgage." (doc. 34 at 24.) Because these allegations were not raised in the first amended complaint, Plaintiffs cannot raise them for the first time in their summary judgment response. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *see also De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."). Defendant has carried its burden to show that Plaintiffs' breach of contract claim

accrued outside the statute of limitations and is time-barred, and is therefore entitled to summary judgment on this basis.[8]

## IV. RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiffs' claims against it should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 28th day of August 2023.

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**All Citations**

Slip Copy, 2023 WL 6071179

Footnotes

1    By *Special Order No. 3-251*, this foreclosure case was automatically referred for full case management.

2    Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

3    "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions,

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

interrogatory answers, or other materials.' " *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. 56(c)(1)).

4   "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.' " *Shady Grove Orthodpedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the Property is in Texas and the Second Note provides that it will be governed the law of the state where the Property is located. (doc. 25 at 61). The parties do not dispute that Texas law applies.

5   Because Defendant is entitled to summary judgment on the fraud claim on this basis, it is unnecessary to consider its remaining arguments as to this claim.

6   Because Defendant is entitled to summary judgment on the FDCPA claim on this basis, it is unnecessary to consider its remaining arguments as to this claim.

7   "The language in the FCRA plainly and unambiguously states that a consumer does not have any remedies available for a claimed violation of § 1681s–2(a)" since it provides that such a violation " 'shall be enforced exclusively' by certain federal agencies, and federal and state officials." *Patterson v. Long Beach Mortgage Co.*, No. CIV.A.3:07-CV-1602-O-BH, 2009 WL 4884151, at *4 (N.D. Tex. Dec. 15, 2009) (citing 15 U.S.C. § 1681s–2(a), (d)). Because there is no such limitation relating to § 1681s–2(b), "many federal courts in the Fifth Circuit have held that [in contrast to § 1681s–2(a),] § 1681s–2(b) creates a private right of action." *Davis v. Sallie Mae, Inc.*, CIV.A. No. 3:09-CV-00821, 2009 WL 2525303, at *3 (N.D. Tex. Aug. 18, 2009) (collecting cases). While expressly declining to rule on this issue, the Fifth Circuit has noted that "[n]othing in [§ 1681s–2] precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s–2(b)." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).

8   Because Defendant is entitled to summary judgment on the breach of contract claim on this basis, it is unnecessary to consider its remaining arguments as to this claim.

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6119376
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Leighandra WARE and
Patrick Estriplet, Plaintiffs,
v.
BANK OF AMERICA, NATIONAL
ASSOCIATION, et al., Defendants.

Civil Action No. 3:21-CV-2824-M-BH
|
Signed September 18, 2023

**Attorneys and Law Firms**

C. Daniel Herrin, Herrin Law PLLC, Dallas, TX, for
Plaintiffs.

Matthew David Durham, McGuireWoods LLP, Dallas, TX,
Taylor William Meek, Maynard Nexsen, PC, Dallas, TX, for
Defendant Bank of America National Association.

Branch M. Sheppard, Berenice Medellin Pruettiangkura,
Galloway Johnson Tompkins Burr & Smith, Houston, TX, for
Defendant Specialized Loan Servicing LLC.

**ORDER ACCEPTING FINDINGS AND
RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE**

BARBARA M. G. LYNN, SENIOR UNITED STATES
DISTRICT JUDGE

**\*1** After reviewing the Findings, Conclusions, and
Recommendation of the United States Magistrate Judge for
plain error, I am of the opinion that the Findings and
Conclusions of the Magistrate Judge are correct and they are
accepted as the Findings and Conclusions of the Court.

*Bank of America, N.A.'s Motion for Summary Judgment*, filed
January 19, 2023 (doc. 24), is **GRANTED.** By separate
judgment, all of the plaintiffs' claims against Bank of
America, National Association will be **DISMISSED with
prejudice.**

**All Citations**

Slip Copy, 2023 WL 6119376

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S.
                                       Government Works.