## IN THE MATTER OF THE HEARING

| | | |
|---|---|---|
| MELISSA CHINERY, Member | § | |
| and | § | BEFORE ARTICLE VII ARBITRATOR |
| SANDRA LEE, Member | § | HON. RUBIN ARMENDARIZ, Esq. |
| | § | |
| AND | § | |
| | § | |
| ROBERT ROSS, Member | § | |
| | § | |

### SUBPOENA TO APPEAR AND TESTIFY

To:    Josh Black

GREETINGS:

WE COMMAND YOU to appear and testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17-18, 2021 at 9:00 a.m.

Signed:   _Rubin Armendariz_

Honorable Rubin Armendariz

Dated:   _11/02/2021_

Requested by:

Robert Ross

**Exhibit A-7**

**APPENDIX 93**

<u>IN THE MATTER OF THE HEARING</u>

| | | |
|---|---|---|
| MELISSA CHINERY, Member | § § § | |
| and | § | BEFORE ARTICLE VII ARBITRATOR |
| SANDRA LEE, Member | § § | HON. RUBIN ARMENDARIZ, Esq. |
| AND | § § | |
| ROBERT ROSS, Member | § § § | |

SUBPOENA TO APPEAR AND TESTIFY

To:   Julie Hedrick

GREETINGS:

WE COMMAND YOU to appear and testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17-18, 2021 at 9:00 a.m.

Signed: _____
Honorable Rubin Armendariz

Dated: 11/02/2021

Requested by:

Robert Ross

**Exhibit A-7**

**APPENDIX 94**

**IN THE MATTER OF THE HEARING**

| | | |
|---|---|---|
| MELISSA CHINERY, Member | § | |
| and | § | BEFORE ARTICLE VII ARBITRATOR |
| SANDRA LEE, Member | § | HON. RUBIN ARMENDARIZ, Esq. |
| | § | |
| AND | § | |
| | § | |
| ROBERT ROSS, Member | § | |
| | § | |

**SUBPOENA TO APPEAR AND TESTIFY**

To:     **Erik Harris – APFA National Treasure**

WE COMMAND THAT YOU: Appear and Testify at the proceedings identified above at the Following location: Westin at Las Colinas, 400 W. Las Colinas Blvd. Irving, TX 75039, On November 17, 2021 at 9:00 a.m.

In addition to your appearance, You are to immediately provide and make available to Robert Ross the following documentation:

- All Emails and/or Documents otherwise known as the Amicus Brief, May 12, 2021 (Including ALL Attachments A-I) sent on behalf of the Osborne Law Office/William Osborne to Arbitrator Valverde, in regards to the Arbitration case of Moyer vs 2018 APFA Board of Directors June 1, 2021.
- All Financial documentation relating to the Ross Account in Collections with Diversified Credit and the status of that collections case. Documentation to include but not be limited to:
  - All Accrued Sick and Vacation days for Ross from April 1, 2016 to July 31, 2018.
  - All Used and Unused Sick and Vacation days for Ross from April 1, 2016 to July 31, 2018 as was used in the calculation of the Ross Transition Agreement, (#4)
  - Number of Days used, and rate of daily pay used to calculate pay for Accrued and "Unused,, Sick and Unused Vacation days from April 1, 2016 – July 31, 2018 in accordance with the Ross Transition Agreement.
  - Number of accrued and Unused Sick Days used to calculate Pay received by Ross in 2018 in accordance with the Ross Transition Agreement. (#4 Bullet Point)
  - All credit card statements covering all four (4) National Officers from the Bassani Administration for their entire term.

1 or 2

**Exhibit A-7**

Requested by:                    Signed: _____

Robert Ross                              Honorable Rubin Armendariz

                                 Dated: _____11/02/2022_____

**Exhibit A-7**

**APPENDIX 96**



**Association of Professional
Flight Attendants**

Representing the Flight *Attendants* of American Airlines

November 19, 2020

**VIA Return Receipt, Certified Mail #7019 1120 0000 0179 3052**

Robert Ross

███████████████

RE: Article VII Charges

Dear Bob:

In accordance with Article VII of the APFA Constitution this letter is to inform you that the enclosed charges have been filed against you by Melissa Chinery and Sandra Lee. Enclosed is a copy of the charges which were received on November 18, 2020.

I am also enclosing a copy of Article VII of the APFA Constitution and Section 17 of the APFA Policy Manual. These documents describe APFA's Article VII procedures.

Sincerely,

Josh Black
APFA National Secretary

Cc:    Melissa Chinery
       Sandra Lee
       APFA Board of Directors
       APFA Executive Committee
       Article VII File

# Exhibit A-8

www.apfa.org

**APPENDIX 97**

**Liz Marko**

| | |
|---|---|
| **From:** | melchinery████ |
| **Sent:** | Wednesday, November 18, 2020 6:27 PM |
| **To:** | National Secretary |
| **Cc:** | National President; National Vice President; National Treasurer; hussar.michelle████ sel27995 |

████

Please consider this the formal filing of internal charges in accordance with Article VII 2. A. of the APFA Constitution and other Policy Manual violations against former APFA President Bob Ross.

After years of being denied the ability to view the underlying financial documentation of the Bob Ross administration, we were finally permitted to see specific documents that prove a plethora of violations of the APFA Policy Manual as well as Constitutional violations. Our ability to see these documents started on September 24, 2020. However, after 16 hours over two days, we still have not seen half of the documentation requested. Due to a lack of access to available dates to continue our investigation, we are forced to file on what has been uncovered due to time limits. We will undoubtedly have to file further Article VII charges.

The violations include many general violations of the constitution and policy manual as well as specific sections listed later in these charges.

Article VII Section 1.F.: Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or Policy Manual.

Article II Section 2: Obligations of members:

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties and responsibilities.

Article I Section 7: Definitions (for clarification of the above violations)

E. "Duty" means an obligation of performance, care, or observance which rests upon a person in any position or fiduciary capacity with or as a member of the APFA.

M: "Privilege" means a benefit or advantage enjoyed by a person in any position or fiduciary capacity with or as a member of the APFA.

O. "Responsibility:" means an obligation to answer for a duty to act or failure to act by a person in any position or fiduciary capacity with or as a member of the APFA.

Q. "Rights" means those powers and/or privileges inherent to a person in any position or fiduciary capacity with or as a member of the APFA.

**Violation: Misuse of Credit Card**

**Exhibit A-8**

**APPENDIX 98**

# USPS Tracking®

**FAQs** ›

**Track Another Package** +

**Tracking Number:** 70191120000001793052

Remove ✕

The delivery status of your item has not been updated as of November 24, 2020, 1:10 am. We apologize that it may arrive later than expected.

**USPS Tracking Plus® Available** ⌄

## Awaiting Delivery Scan

November 24, 2020 at 1:10 am

Feedback

**Get Updates** ⌄

---

**Text & Email Updates** ⌄

---

**Tracking History** ⌃

**November 24, 2020, 1:10 am**
Awaiting Delivery Scan
The delivery status of your item has not been updated as of November 24, 2020, 1:10 am. We apologize that it may arrive later than expected.

---

**November 23, 2020, 7:10 am**
Out for Delivery
EL DORADO HILLS, CA 95762

---

**November 23, 2020, 5:58 am**
Arrived at Post Office

**Exhibit A-9**
**APPENDIX 99**

EL DORADO HILLS, CA 95762

**November 22, 2020**
In Transit to Next Facility

**November 21, 2020, 5:20 pm**
Departed USPS Regional Facility
SACRAMENTO CA DISTRIBUTION CENTER

**November 21, 2020, 11:24 am**
Arrived at USPS Regional Facility
SACRAMENTO CA DISTRIBUTION CENTER

**November 19, 2020, 10:24 pm**
Arrived at USPS Regional Facility
COPPELL TX DISTRIBUTION CENTER

Feedback

**USPS Tracking Plus®** ⌄

**Product Information** ⌄

**See Less** ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

**APPENDIX 100**
**Exhibit A-9**

# EXHIBIT A-10

**11/17/2022 Transcript of Hearing Before Arbitrator Volume II**

Robert Ross   11/17/2021

```
1                    IN THE MATTER OF THE HEARING
2    MELISSA CHINERY, Member      )
         and                      )
3    SANDRA LEE, Member           )
                                  )BEFORE ARTICLE VII
4        AND                      )     ARBITRATOR
                                  )HON. RUBEN B. ARMENDARIZ
5                                 )
     ROBERT ROSS, Member          )
6

7

8
                   *************************************
9                            NOVEMBER 17, 2021

10                             VOLUME 2
                   *************************************
11

12

13

14           BE IT REMEMBERED that on the 17th day of

15    November, 2021, the above cause came on for hearing

16    before HON. RUBEN R. ARMENDARIZ at the WESTIN IRVING

17    CONVENTION CENTER AT LAS COLINAS, 400 West Las Colinas

18    Boulevard, located in the City of Irving, County of

19    Dallas, State of Texas, whereupon the following

20    proceedings were had.

21

22

23

24

25
```

```
 1              A P P E A R A N C E S:

 2      HON. RUBEN R. ARMENDARIZ
        LABOR MANAGEMENT ARBITRATOR
 3      29010 Pfeiffers Gate
        Fair Oaks Ranch, Texas  78015
 4      PHONE:  210.379.0860
        EMAIL:  arbruben@gmailcom
 5

 6      APPEARING AS THE ARBITRATOR

 7      MS. MELISSA CHINERY
        EMAIL:  Melchinery@aol.com
 8                  AND
        MS. SANDRA LEE
 9      EMAIL:  SEL27995@gmail.com

10      APPEARING FOR THE CHARGING PARTY

11      MR. ROBERT ROSS
        EMAIL:  1RROSS@COMCAST.NET
12                  AND
        MS. GINA GUIDRY
13
        APPEARING FOR THE CHARGED PARTY
14

15                      *   *   *   *

16

17

18

19

20

21

22

23

24

25
```

```
 1                      WITNESS INDEX

 2

    CATHY LUKENSMEYER                              PAGE
 3  Direct Examination by Ms. Chinery...............  54
    Cross-Examination by Ms. Guidry.................  74
 4  Redirect Examination by Ms. Chinery.............  84
    Recross-Examination by Mr. Ross.................  90
 5
    ERIK HARRIS
 6  Direct Examination by Ms. Lee...................  99
    Cross-Examination by Mr. Ross................... 132
 7  Redirect Examination by Ms. Lee................. 221
    Recross-Examination by Mr. Ross................. 231
 8
    MICHAEL TRAPP
 9  Direct Examination by Ms. Chinery............... 249
    Cross-Examination by Mr. Ross................... 259
10
    JOHN NIKIDES
11  Direct Examination by Ms. Chinery............... 272
    Cross-Examination by Ms. Guidry................. 297
12  Redirect Examination by Ms. Lee................. 321

13
    REPORTER'S NOTE:
14  Due to the horrible acoustics in the hearing room and
    without the use of microphones, there will be noted
15  (unintelligible) several times throughout the
    transcript.  I apologize for this; however, if I cannot
16  hear it, I cannot write it.

17  Additionally there are several notations of
    simultaneous speaking or simultaneous discussions
18  throughout the transcript.  When several people talk at
    the same time, there is no way to possibly discern who
19  is speaking.

20

21

22

23

24

25
```

Robert Ross     11/17/2021

```
 1              CHINERY LEE EXHIBIT INDEX

 2    EXHIBIT                          ID'D     ADMITTED
      Exhibit 1............................    64
 3    Exhibit 2............................
      Exhibit 3............................   107      108
 4    Exhibit 4............................   251      253
      Exhibits 5-6........................
 5    Exhibit 7............................    64
      Exhibit 8............................   101      107
 6    Exhibits 9-14.......................            107
      Exhibit 15..........................   109      107
 7    Exhibit 16..........................            107
      Exhibit 17..........................   243      107
 8    Exhibits 18-19......................            107
      Exhibit 20..........................   219      107
 9    Exhibits 21-24......................            107
      Exhibit 25..........................   246      107
10    Exhibits 26-46......................            107
      Exhibit 47..........................   228
11    Exhibit 48..........................   228      229

12               ROSS EXHIBITS
      Exhibits 6..........................   142
13    Exhibit 13..........................   148
      Exhibit 15..........................   237
14    Exhibit 16..........................   143
      Exhibit 18..........................   194      194
15    Exhibit 19..........................   232
      Exhibit 36..........................   243
16

17               JOINT EXHIBITS

18    Exhibit 4...........................    28       28

19

20

21

22

23

24

25
```

**APPENDIX 105**

Robert Ross    11/17/2021

Page 324

```
 1                     MS. CHINERY:  I'm kidding.  I'm kidding.

 2                     THE ARBITRATOR:  I said -- I said one

 3    question.

 4                     (Simultaneous discussions.)

 5                     MS. CHINERY:  Reserve the right to --

 6                     THE ARBITRATOR:  That's it.

 7                     THE WITNESS:  Okay.

 8                     THE ARBITRATOR:  That's it.

 9                     (Proceedings recessed at 4:22 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Robert Ross    11/17/2021

Page 325

```
 1   STATE OF TEXAS          )

 2   COUNTY OF DALLAS        )

 3          THIS IS TO CERTIFY THAT I, MELISSA J. CARSON,

 4   a Certified Shorthand Reporter in and for the State of

 5   Texas, reported in shorthand the proceedings had at the

 6   time and place set forth in the caption hereof, and

 7   that the above and foregoing 302 pages contain a full,

 8   true, and correct transcript of the said proceedings.

 9          Certified to on this the 13th day of December,

10   2021.

11

12

13   _____

14   MELISSA J. CARSON, Certified
     Shorthand Reporter in and for
15   The State of Texas

16

17   Certification No. 1737

18   CRCB Firm Registration #489

19   Expires August 31, 2022

20   CARSON REPORTING & ASSOCIATES

21   Post Office Box 551628

22   Dallas, Texas 75355-1628

23   Telephone 214.346.3434

24

25
```

**APPENDIX 107**

# EXHIBIT A-11

**11/18/2022 Transcript of Hearing Before Arbitrator Volume III**

Robert Ross   11/18/2021

```
 1                IN THE MATTER OF THE HEARING
 2   MELISSA CHINERY, Member      )
          and                     )
 3   SANDRA LEE, Member           )
                                  )BEFORE ARTICLE VII
 4       AND                      )    ARBITRATOR
                                  )HON. RUBEN B. ARMENDARIZ
 5                                )
     ROBERT ROSS, Member          )
 6
 7
 8
              ***********************************
 9                    NOVEMBER 18, 2021
10                       VOLUME 3
              ***********************************
11
12
13
14        BE IT REMEMBERED that on the 18th day of
15   November, 2021, the above cause came on for hearing
16   before HON. RUBEN R. ARMENDARIZ at the WESTIN IRVING
17   CONVENTION CENTER AT LAS COLINAS, 400 West Las Colinas
18   Boulevard, located in the City of Irving, County of
19   Dallas, State of Texas, whereupon the following
20   proceedings were had.
21
22
23
24
25
```

```
 1                   A P P E A R A N C E S:

 2      HON. RUBEN R. ARMENDARIZ
        LABOR MANAGEMENT ARBITRATOR
 3      29010 Pfeiffers Gate
        Fair Oaks Ranch, Texas  78015
 4      PHONE:  210.379.0860
        EMAIL:  arbruben@gmailcom
 5

 6      APPEARING AS THE ARBITRATOR

 7      MS. MELISSA CHINERY
        EMAIL:  Melchinery@aol.com
 8               AND
        MS. SANDRA LEE
 9      EMAIL:  SEL27995@gmail.com

10      APPEARING FOR THE CHARGING PARTY

11      MR. ROBERT ROSS
        EMAIL:  1RROSS@COMCAST.NET
12               AND
        MS. GINA GUIDRY
13

14      APPEARING FOR THE CHARGED PARTY

15
                        *    *    *    *
16

17

18

19

20

21

22

23

24

25
```

Page 328

```
 1                      WITNESS INDEX

 2
      MELISSA CHINERY                               PAGE
 3    Direct Examination by Ms. Lee.................... 330
      Cross-Examination by Ms. Guidry................. 369
 4    Redirect Examination by Ms. Lee................. 401

 5    CASEY VELOSO
      Direct Examination by Ms. Guidry................ 407
 6
      ANTHONY THURIAULT
 7    Direct Examination by Ms. Guidry................ 420
      Cross-Examination by Ms. Lee.................... 443
 8    Redirect Examination by Mr. Ross................ 463

 9    ROBERT ROSS
      Direct Examination by Ms. Guidry................ 465
10    Cross-Examination by Ms. Lee.................... 488
      Redirect Examination by Ms. Guidry............. 500
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**APPENDIX 111**

Robert Ross    11/18/2021

Page 329

```
 1                  CHINERY LEE EXHIBIT INDEX

 2
     EXHIBIT                              ID'D     ADMITTED
 3   Exhibit 1.............................          332
     Exhibit 5.............................  342     344
 4   Exhibit 6.............................  345     346
     Exhibit 7.............................          358
 5   Exhibit 45............................  449

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Robert Ross    11/18/2021

Page 507

```
 1   so you want us to make all the charges to evidence,

 2   then transcripts by the 18th of December, January 18th

 3   we switch them with you and Josh, next day.  So for the

 4   Vargas one, that's due December 30th, correct?

 5              THE ARBITRATOR:   Yeah.

 6              MS. CHINERY:  Is that -- can I ask about

 7   the other one, too?  Okay.  You said something --

 8              THE ARBITRATOR:  Let's go off the record.

 9              (End of Volume 3.)

10              (Proceedings concluded at 1:15 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Robert Ross   11/18/2021

Page 508

1   STATE OF TEXAS        )

2   COUNTY OF DALLAS      )

3           THIS IS TO CERTIFY THAT I, MELISSA J. CARSON,

4   a Certified Shorthand Reporter in and for the State of

5   Texas, reported in shorthand the proceedings had at the

6   time and place set forth in the caption hereof, and

7   that the above and foregoing 183 pages contain a full,

8   true, and correct transcript of the said proceedings.

9           Certified to on this the 17th day of December,

10  2021.

11

12

13  _____

14  MELISSA J. CARSON, Certified
    Shorthand Reporter in and for
    The State of Texas

15

16

17  Certification No. 1737

18  CRCB Firm Registration #489

19  Expires August 31, 2022

20  CARSON REPORTING & ASSOCIATES

21  Post Office Box 551628

22  Dallas, Texas 75355-1628

23  Telephone 214.346.3434

24

25

**APPENDIX 114**

<u>**In the Matter of Arbitration Between**</u>

|  |  |  |
|---|---|---|
|  | ) |  |
| **Melissa Chinery** | ) |  |
| **Sandra Lee** | ) | **RE: Article VII Charges** |
|  | ) | **Violations of APFA Constitution** |
| **APFA Charging Party Members** | ) | **and APFA Policy Manual** |
| **(Plaintiff)** | ) |  |
|  | ) |  |
| **And** | ) |  |
|  | ) |  |
| **Robert Ross, Former APFA National** | ) |  |
| **President** | ) |  |
|  | ) |  |
| **APFA Charged Party Member** | ) |  |
| **(Defendant)** | ) |  |
|  | ) |  |

**Before:**                    **Alternate Article VII Arbitrator Ruben R.
                              Armendariz**


**Place and Dates of Hearing:**        **The Westin Irving Convention Center at Las
                              Colinas, 400 West Las Colinas Boulevard,
                              located in the City of Irving, Texas.**

                              **June 16, 2021, continued to November 17 and 18,
                              2021**

**Appearances:**

      **For Charging Party Members:**   **Melissa Chinery, Representative**
             **(Plaintiff's)**          **Sandra Lee, Representative**


      **For Charged Party Member:**     **Kit Gomez Alba,**
             **(Defendant)**            **Gina Guidry, Representative**
                              **Robert Ross, Representative**

**APPENDIX 115**

## INTRODUCTION

This is an Article VII Hearing that was heard at the Westin Irving Convention Center at Las Colinas, Irving, Texas on June 16, 2021 and continued to November 17 and 18, 2021. The arbitration hearing was transcribed by Carson Reporting & Associates.

Charging Party Melissa Chinery and Sandra Lee, will be hereinafter referred to as the "Plaintiff." Charged Party Robert Ross, will be hereinafter referred to as the "Defendant."

Plaintiff presented for testimony Cathy Lukensmeyer, Erik Harris, Michael Trapp, John Nikides and Melissa Chinery.

Defendant presented for testimony Casey Veloso, Anthony Thuriault and Robert Ross.

All of these witnesses were afforded full opportunity to be heard, to be examined, and to be cross-examined.  The parties were allowed to introduce evidence on the issues. Based on the entire record, my observation of the witnesses, examination of the evidence, exhibits presented, post-hearing briefs[1] submitted, and arguments presented therein, this arbitrator makes the following findings and renders the following Discussion, Opinion, and Award.

## THE ISSUES

Plaintiff submits the issue to be addressed by the Alternate Article VII Arbitrator is stated as follows:

Did Bob Ross, the Defendent herein violate the APFA Policy Manual and the APFA Constitution by engaging in malfeasance, fraud, misappropriation of funds while he was in office during the term of April 1, 2016 to March 2, 2018. If so, what shall be the appropriate remedy?

Defendant submits the issue to be addressed by the Alternate Article VII Arbitrator is stated as follows:

Whether the Plaintiff's allegations raised against him are true or false? Did former National President Ross knowingly or "willfully" violate any express Article of the APFA Constitution or Policy Manual? If so, what is the appropriate remedy?

## FACTS

The facts in this matter center on Defendant Ross assuming office as the APFA National President and moving to Dallas, TX during the months of April 2016 through October 2016.

---

[1] The parties agreed to submit post-hearing briefs by e-mail to arruben@gmail.com on January 31, 2021 and extended to February 18, 2021.  The post-hearing briefs were timely emailed and received. Thus, the arbitrator finds the record in this matter closed on February 18, 2021.

**APPENDIX 116**

Defendant Ross is alleged to have misused the APFA credit card on several matters during his term in office.

Plaintiff alleged in the Article VII grievance and heard are described as follows:

Defendant is charged with eight **(8)** specific violations of the Policy Manual and the APFA Constitution.

**(1)  Misuse of Credit Card:**

As APFA National President, Plaintiff Ross was provided an APFA credit card.
   a.  Defendant Ross spent thousands on purchasing sheets, blankets, pillows, mattresses, furniture as well as smaller items such as toilet paper and candy.
   b.  Defendant Ross purchased over $3600 in furniture on his APFA credit card and had it delivered to his personal residence in South Lake, Texas.
   c.  Defendant Ross charged an APFA rental truck in August 2016.

**(2) Rental Car:**
Defendant Ross is charged with billing APFA for a rental car for six months at a cost of over $6200.00 Ross was considered living in the DFW area and was not entitled to a rental car.

**(3) Reimbursement:**
Defendant Ross claimed mileage that he was not entitled to, including the period when he had a rental car.

**(4) SAF/MEA and meal expenses--Change of formula to include Meal Expense Allowance (MEA) and Special Assignment Fee (SAF):**
Defendant Ross and his fellow officers changed the longstanding formula for Vacation reimbursement. Defendant Ross also violated the detailed language of the APFA expense policy by charging thousands of dollars of unauthorized meals to his APFA credit card.

**(5) Payout of Vacation**-Change of Formula to include MEA and SAF and an office stipend in with wages when considering the reimbursement of sick and vacation time. This was discovered when the pay for the Vice President, Secretary and Treasurer was looked at more closely by the next administration long after the Ross Administration had left office.

**(6) Maintaining an Office:**
Defendant Ross claimed thousands for maintaining an office he was not entitled to.

**(7) Payout of Vacation Days:**
Defendant Ross received compensation for expense payments beyond his term in office.

**(8) Buyout:** Defendant Ross collected compensation in two forms. (1) MEA and SAF (2) Maintaining an office outside Residence.

Defendant argued at the hearing that these Article VII charges were filed by the Charging Party (Plaintiff) as a weapon against Ross and the Officers of the Ross Administration.

This matter was submitted to this Alternate Article VII Arbitrator to make a decision on the charges cited herein.

**APPENDIX 117**

## THE RELEVANT PORTIONS OF THE APFA CONSTITUTION AND POLICY MANUAL

**THE APFA CONSTITUTION**

**Article I. Section 7.   DEFINITIONS:**

As used in this Constitution, the following words or terms shall mean:

E.   **"Duty"** means an obligation of performance, care or observance which rests upon a person in any position or fiduciary  capacity with or as a member of the APFA.

**M.**   **"Privilege"** means a benefit or advantage enjoyed by a person in any position or    fiduciary capacity with or as a member of the APFA.

**O.**   **"Responsibility"** means an obligation to answer for a duty to act or a failure to act by a person in any position or fiduciary capacity with or as a member of the APFA.

**Q**   **"Rights"** means those powers and/or privileges inherent to a person in any position or fiduciary capacity with or as  a  member  of  the APFA.

**Article II. Section 2. OBLIGATIONS OF MEMBERS:**

Members of the Association do accept and agree to abide by this Constitution of the APFA as it is in force or as it may be altered, added to, deleted from, or amended in accordance with the provisions of this Constitution. Ignorance of this Constitution will not be considered a proper excuse for any violation of the provisions contained herein. Inherent in the rights, privileges, duties, and responsibilities of membership in the APFA is the obligation to responsibly exercise these rights, privileges, duties, and responsibilities.

**Section 3. BILL OF RIGHTS OF MEMBERS**

**B.**   All members of the APFA shall have access to all administrative and financial reports and records except as provided in Section 5.B(1) of this Article II.

**Article III, GOVERNMENT OF THE APFA**
**Section 3 Board of Directors**

A.  The Board of Directors is authorized and empowered to take any and all lawful action consistent with this Constitution to safeguard and protect the APFA, and the rights and privileges, duties and responsibilities of the officers, representatives and members of the APFA.  The Board of Directors is authorized to interpret this constitution and to establish, prescribe and adopt such other policies which may be consistent with this constitution as required for the direction and management of the affairs of the APFA.

**APPENDIX 118**

**L.**   Jurisdiction and Duties: The Board of Directors shall have the following rights, privileges, duties and responsibilities;

1.  Set policy for the APFA;
2.  Modify the APFA Policy Manual as it deems appropriate;
3.  Approve the annual budget;
4.  Set annual goals for the APFA as it deems appropriate;
5.  Assign to each Ad Hoc Member of the Executive Committee those Presidents with whom s/he shall maintain regular contact and communication;
6.  Determine the number of administrative, committee, and support positions as may be required under Article IX of this Constitution to meet the needs of the membership;
7.  Nominate and appoint members of the National Balloting Committee and Budget Committee when appointments are appropriate;
8.  Review the base assignment of any OAL Operation or satellite and, when necessary alter operation or satellite assignments.
    While not limited to the following, the Board of Directors may:
9.  Review the dues structure of the Association;
10. Override the Executive Committee rejection of a proposed Collective Bargaining Agreement;
11. Establish the Regions and the National Vice President will assign the Regional Representatives;
12. Establish, combine, delete or change the duties, responsibilities and specific job descriptions of administrative, committee and support personnel in accordance with the provisions of Article IX of this Constitution for budgetary or policy reasons, taking into consideration the recommendations of the National Officers;
13. Direct special mailings to the membership;
14. Recognize the accomplishments and achievements of members of the APFA;
15. Give annual awards;
16. Confer Honorary membership;
17. Approve hardship dues forgiveness and review other hardship requests that may be brought before the Board;
18. Appoint special committees;
19. Appoint or change the Article VII Arbitrator or Alternate Article VII Arbitrator(s);
20. Approve Article VII administrative changes;
21. Suspend officers or representatives pursuany to Article VII;
22. Take any and all appropriate action deemed necessary by the Board and in accordance with this Constitution to promote the welfare of the members of the APFA, and this shall include the right to reverse an action or decision of the Executive Committee, National Officers or other representatives, except as provided in this Article III, Section 4.J.11 or Article VIII, Section 6.Bof this Constitution.

**Article VII. Section 1. Grounds For Charges:**

**APPENDIX 119**

Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:

**A.** Failure to pay dues, assessments or penalties levied by the Association.

**B.** Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);

**C.** Willfully acting as a strike breaker during any work stoppage duly authorized by the Association; (1) Notwithstanding Section 1.C., above (which provides as a grounds for charges willfully acting as a strike breaker during any work stoppage duly authorized by the Association) APFA shall not process any charge of willfully acting as a strike breaker during the November 1993 strike against American Airlines.

**D.** Willful violation of a Flight Attendant's Collective Bargaining Agreement

**E.** Theft or embezzlement of Association monies or property

**F.** Willful violation of an express Article of this Constitution, or of a proper and express written resolution or policy of the Board of Directors or the Executive Committee

**G.** Willfully acting in a manner that causes the Association to violate its legal obligations; or

**H.** Willfully bringing charges without reasonable basis against another member, officer, or representative of the Association, should such charges be dismissed for any reason by the Article VII Arbitrator designated herein, or should such charges not be sustained by the Article VII Arbitrator.

*APFA POLICY MANUAL*

**Section 5.G.1. Trip Removal and Expense Policy – Other Expenses**

**1.** Actual out-of-pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member, but to compensate him / her for actual expenses and losses and is exclusive of other applicable reimbursement provisions in this policy.

**Section 5.F.5.a. Trip Removal and Expense Policy–Meal Expense/Allowance**

**APPENDIX 120**

**a.** Representatives are authorized to pay for and to be reimbursed for the meal, snack or beverage of a guest(s) or other business associate(s) on those occasions when the representative would reasonably be considered the host of an authorized APFA function or meeting.

**(1)** Discretion and good judgment should be used when exercising this privilege and when incurring such legitimate and necessary Business-Related Expense. Abuse, as determined by the Executive Committee, may lead to limitation or revocation of this privilege.

**(2)** The reimbursement of a Business-Related Expense shall not count against a representative's MEA.

## Section 5.H. Relocation

1. Upon assuming office/appointment, National Officer(s)/Chairs shall be expected and, for the purpose of this policy, shall be considered to reside in the DFW area. The DFW area, for purposes of this policy, shall not exceed a seventy-five (75) mile radius from APFA Headquarters.

2. If, on the date of his/her election, a National Officer does not reside in the DFW area, s/he shall be reimbursed for actual moving expenses for relocation from/to his/her place of permanent primary residence by a certified mover as a condition of employment with the APFA, to a maximum of ten thousand ($10,000) per round trip move.

   a. The provisions of H.2 above must be exercised within six (6) months following the end of the last term of office of the National Officer and must be substantiated by invoice or bill.

3. A National Officer may choose not to relocate to the DFW area but may, instead, choose to accept suitable furnished accommodations paid for by the APFA as provided in H.7. below. If a National Officer accepts such accommodations in lieu of relocation expenses as provided in H.2. above, the following will apply:

….

7. Incoming National Officers incoming and other Representatives shall normally be able to use outgoing National Officers or Representatives furniture and furnishings rather than replace these items with each change of National Officer or Representative, subject to the right to reasonably refuse furniture and furnishings.

**PLAINTIFF'S ARGUMENT**

Plaintiff argued the violations center on Defendant Ross assuming office as the APFA National President and moving to Dallas, TX during the months of April 2016 through October 2016. Defendant Ross misused the APFA credit card on several matters during his term in office. **The APFA Policy Manual provides that National Officers will be provided up to $10,000 in moving expenses or, provided they can demonstrate a permanent residence outside of DFW, the officer can get a corporate apartment furnished by APFA.** Defendant Ross leased an apartment at the Bear Creek complex on June 1, 2016, thus he chose both options for relocation when he is only to choose one option. **Defendant Ross purchased $3600 of furniture from Ashley Furniture to be delivered to his home in South Lake, Texas. Defendant Ross had a rental car for six months at a cost of $6,200.00.** He was living in the DFW area and was not entitled to a rental car. Defendant Ross claimed mileage when he was not entitled to claim mileage. Defendant Ross and his fellow officers changed the longstanding formula for Vacation reimbursement. Defendant Ross violated the detailed language of the APFA expense policy by charging thousands of dollars of unauthorized meals to his APFA credit card. The change of formula to include MEA and SAF with an office stipend in wages when considering the reimbursement of sick and vacation time. **<u>This was discovered when the pay for the Vice President, Secretary and Treasurer was looked at more closely by the next administration long after the Ross Administration had left office.</u>** Defendant Ross claimed for maintaining an office he was not entitled to. **<u>Defendant Ross received compensation for expense payments beyond his term in office.</u> Defendant Ross collected compensation in two forms. (1) MEA and SAF (2) and maintaining an office outside Residence when he was not working**.

### DEFENDANT'S ARGUMENT

Defendant Ross argued the alleged violations were the direct result of the "Ross Transition Agreement." Defendant argued that charged violation No. 5: Payout of Vacation, Charged Violation, No. 6: Maintaining an Office, Charged Violation No. 7: Payout of Vacation Days and Charged Violation No. 8: Buyout are a part of the Transition Agreement (TA).

Defendant Ross argued the "Ross Transition Agreement" was deemed to be a legally authorized by Arbitrator Valverde in the Arbitration case, Moyer vs BOD (2018) dated September 21, 2021. Arbitrator Valverde ruled the dispute that Ross received a benefit was "without merit." The charges in that case were dismissed. Defendant argued that it stands to reason the accusers (Plaintiff) would have no claim that Defendant Ross received a benefit from the "Ross Transition Agreement" that he was not entitled to and any alleged violation stemming from his acceptance of the agreement, should be dismissed.

Defendant Ross argued the arbitrator, designated in these Article VII proceedings, has the jurisdiction and authority to rule on the validity of charges and the remedy sought by the Plaintiff to the allegation. Did former National President Ross knowingly or "willfully" violate an express Article of the APFA Constitution or Policy Manual, and did Ross "willfully" violate any express Article of the Constitution and/or Policy Manual when he accepted the terms of the "Ross Transition Agreement"? The arbitrator also has the jurisdiction and authority to dismiss the Article VII Charges against the Defendant.

**APPENDIX 122**

Defendant Ross argued with respect to the *misuse of the APFA credit card* that multiple alleged purchases violated Policy Manual 5.G – Business Related Expenses. Defendant argued Business Related Expenses are actually defined in Policy Manual *Section 5.F.5. Section 5.G, "Other Expenses" where it states,*

> *5.G Other Expenses – Actual out-of-pocket expenses incurred by a member conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for personal profit of the APFA member, but to compensate him/her for actual expenses and losses and is exclusive of other applicable reimbursement provisions in this policy.*

Defendant Ross argued the Plaintiff cited the wrong policy in their support of these charges, evidence of their lack of understanding the process and policy. No purchases were made on the APFA union credit card were submitted for reimbursement on the weekly/monthly expenses. Receipts were submitted for each credit card charge and reviewed per policy by the appropriate accounting and legal departments. Plaintiff admitted they did not review any other administrations union credit card charges for similar purchases or past practice or for expenses when said officers relocated to DFW.

Defendant Ross argued with respect to the *misuse of a Rental Car* was billed to the National President's department during the timeframe according to the Plaintiff allegation, is coincidental to the timeframe of the Ross relocation, but was not as a condition of the relocation. 2016 APFA Policy Manual Section 5.H – Relocation – was silent on the use of rental cars in connection with or during the timeframe of a relocation. This issue was previously reviewed by the APFA BOD at the time the email was sent to the National Treasurer in March 2019. The APFA BOD and Budget Committee members tasked with this review took no action on this matter and the issue was closed. Defendant argued that several rental cars were rented through the President's office for numerous representatives during this time frame and not specifically to Bob Ross for personal use. Department representatives having access to rental cars during this timeframe included, but is not limited to, uniform committee members, toxic fume events and other committee representatives. At no time did the Plaintiff cite evidence that a rental car was provided for Ross' sole personal use.

Defendant Ross argued with respect to *mileage* the following that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.G. – Other Expenses / Mileage.
5.G.1.b. (1).(a) Mileage:
[2]. Mileage shall not be reimbursed for travel between the representatives' residence and an APFA office that has been provided for the primary use of the representative for a period in excess of 31 days.

Defendant Ross states that the Plaintiff have formed their own theory and alleged that former APFA National President, Bob Ross is in violation for claiming mileage for attending meetings with the Company or claiming mileage for any event outside of APFA headquarters while conducting APFA business while using a rental car. At no time did Ross file for reimbursement for mileage from his residence to the APFA headquarters. The Plaintiff did not

**APPENDIX 123**

present evidence that Ross claimed a mileage reimbursement while using a rental car and not his own vehicle. Defendant Ross submits Section 5.G.b.1.a.1., is silent on a specific vehicle to be used in the reimbursement of mileage. At any given time, an APFA Representative could be subject to using their personal vehicle or a "Rental Car" for conducting APFA business.

Defendant Ross argued with respect *to SAF/MEA and meal expenses* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.F: Business Related Expenses. He states that the APFA had no policy on how to differentiate or separate any amounts from the guaranteed MEA/SAF totals when National Officers, Regional Representatives, National Chairs, or other Representatives, who are authorized a full month trip removal pay and are receiving guaranteed stipends of MEA/SAF and are considered a host of an authorized APFA meeting. APFA also had no policy in place until 2021, for a National Officer in relation to one's union credit card practice.

Special Assignment Fee (SAF) Policy:
The intent of the SAF is explained in Section 5.E.1

5.E.1.a. – The intent of the Special Assignment Fee (SAF) is to offer payment to the representatives for the days that they conduct APFA business in excess of their normal scheduled bid line. Amounts paid under this arrangement are reportable as wages on the representative's W-2 and are subject to withholding and payment of employment taxes.

5.E.4.a.(1) – If a Representative performs work for the APFA, and is not otherwise paid for that day's work by means of an APFA Paid Trip Removal.......such representative shall receive the Daily SAF for work performed in accordance with the following schedule.

Calculation for the National Officers' SAF is specifically delineated in Section 5.E.4.c – SAF Rates – Monthly –

(c)National Officers and Regional Representatives: $400 minimum, but not to exceed $500 maximum.

Meal Expense/Meal Expense Allowance (MEA)

Defendant Ross argued with respect to the *payout of vacation* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of 5.E.4 Special Assignment Fee (SAF) above and 5.F.1 Meal Expense Allowance (MEA) rates.

Guaranteed MEA at Residence is explained in Section 5.F.3.a

5.F.3.a – On days a representative is both trip removed and performing work for the APFA at his/her residence city, such representative will receive a "Guaranteed MEA at Residence" in lieu of any actual MEA at residence as provided in F.2.

**APPENDIX 124**

5.F.3.d – National Officers, Regional Representatives, National Chairs and other representatives who are authorized full month trip removal or the equivalent shall receive a "Guaranteed MEA at Residence" of Three Hundred dollars ($300) per month.

Section 5.F.4.a – Calculation of MEA
National Officers, Regional Representatives, National Chairs and other representatives who are authorized full month trip removal or the equivalent (e.g. "Payback as provided in D above) shall receive a minimum MEA of Three Hundred dollars ($300) per month

Maintaining an Office Outside of Residence (MOOR)

Maintaining an Office outside of residence is required of APFA President, as the office is located and maintained at APFA Headquarters and is paid in addition to SAF.

5.E.4.c.(3).(a) – A National Officer, Regional Representative, National Chair, Base President and/or Base Vice-President who is required to maintain an APFA office outside of his/her place of residence shall be paid an additional two hundred fifty dollars ($250) per month over and above the minimum monthly SAF provided above, or the actual SAF subject to reimbursement, whichever is greater.

5.F.1.a.(1) – Per Diem Rate (Accountable Plan)
(1) All members shall be entitled to an APFA Meal Expense Allowance (MEA) while performing work for the APFA. Also required for the purposes of calculating how much Special Assignment Fee (SAF) an officer receives, it is imperative that the officer fill out the required weekly paperwork that would ascertain how many hours were worked for the APFA.

    **Defendant Ross argued that** all payouts and formula used to calculate the payout for vacation, sick and end of term buyout of accrued and unused Sick and Vacation days occurred after former APFA President Ross had left office and was the product of a Transition Agreement and not specific to APFA Policy. Through sworn testimony, former APFA National Treasurer, Eugenio Vargas, used full salary vs basic salary in these calculations, which include MEA and SAF in compliance with the terms of the controlling document, the Ross TA.

    Defendant Ross argued that a National Officer or Regional Representative on a full month trip removal shall receive per policy a $500 maximum of SAF payment. National Officers, Regional Representatives, National Chairs and other APFA Representatives on a full month trip removal shall receive a minimum Guaranteed MEA of $300 per month. Each National Officer, per policy, each month received the guaranteed amount of $1050 ($500 SAF, $300 MEA and $250 MOOR) in addition to basic salary. This amount was determined by the APFA Accounting Department. and was the combined stipend included as Salary and Benefits per the Ross TA used by the former APFA Treasurer, after Ross left office, to calculate the daily rate of unused Sick and Vacation Days that Ross was not allowed to use during his final 5 months as National President to "make him whole." These amounts were paid after Ross left office and as a condition of the Ross TA. It is irrational for the Plaintiff to request that weekly timesheets were required to receive these payments for the months after Ross left office.

**APPENDIX 125**

Defendant Ross argued that on January 14, 2022, an APFA document surfaced that was withheld from document retrieval that corroborates the Policy Manual was not the controlling document to the Ross TA and therefore Ross was paid in compliance with the TA. This document would have been exculpatory to the defense of Mr. Ross on this and other matters pertaining to the Ross TA had it been provided.

Defendant Ross with respect to "*maintain an office outside of residence*" that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.E.3 Maintaining an Office Outside of Residence. The maintaining an office outside of residence is required of APFA President, as the office is located and maintained at APFA Headquarters and is paid in addition to SAF.

5.E.4.c.(3).(a) – A National Officer, Regional Representative, National Chair, Base President and/or Base Vice-President who is required to maintain an APFA office outside of his/her place of residence shall be paid an additional two hundred fifty dollars ($250) per month over and above the minimum monthly SAF provided above, or the actual SAF subject to reimbursement, whichever is greater.

Defendant Ross argued that each National Officer, per policy, each month received the guaranteed amount of $1050. This amount included $500 for SAF, $300 for MEA and $250 for office outside of residence. This amount was determined by the APFA Accounting Department and provided to all National Officers as part of their salary. This charge also should be dismissed as Ross did not pay himself the payments under the terms of the Ross TA.

Defendant Ross argued with respect to the *payout of vacation days* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 6.B.1: National Officer Salary and Benefits. Defendant Ross states that any change to the formula used to calculate the payout for vacation, sick and end of term buyout occurred after former APFA President Ross had left office. Through sworn testimony, former APFA National Treasurer, Eugenio Vargas, used full salary vs basic salary in these calculations, in compliance with the Ross TA.

Defendant Ross argued the Ross Transition Agreement stated Ross would be paid any and all accrued and unused sick and vacation from April 1, 2016 – July 31, 2018. The calculation of the unused days was to be paid as though Ross was able to use any of those days while in office as President for his remaining 5 months had he not resigned. There was no agreement that these days were to be paid per Policy as the Plaintiff insists. An investigation into the payout of the Sick and Vacation days paid, brought about by Plaintiff's allegations that it was discovered Ross was not properly paid "All" of his accrued and unused Sick days from April 1, 2016 – July 31, 2018. Ross earned and did not use 18 Sick days in each of the fiscal years April 2016-March 2017 and April 2017-March 2018. Ross was only paid Per Policy 6.B.3.d Offset/Loss of Sick Time, of 12 days for each fiscal year. The additional 12 days, (6) days Apr. 2016-2017 and (6) days Apr. 2017-2018 have still not been acknowledged or paid to Ross in accordance with the Ross TA. The value of these lost Sick days, depending on the calculation used, is in excess of $3400 still owed to Ross.

**APPENDIX 126**

Defendant Ross argued that he received a *buyout but it is cited as the Ross Transition Agreement*. The charging party submits that Ross collected more money than if he had remained in office for the four (4) months left in his term. However, once Ross left office, he asked for and collected from the APFA compensation in two forms he was not entitled to per the "agreement." One form of compensation which he received every month was MEA and SAF and Maintaining an Office Outside Residence. Mr. Ross continued to collect one thousand and fifty dollars ($1050) a month."

"He collected these payments for the months of: March, April, May, June and July of 2018. This stipend is clearly hinged on reimbursement related to work and not part of the National Officer salary. To accept this money is in clear violation of the intent of the Policies written that allows a representative extra compensation for working hours above and beyond their scheduled workload. By taking this money this is another violation of the Section 5 policies outlined above."

Defendant Ross argued in Item no. 3 of the Ross Transition Agreement states "APFA agrees that Ross will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.  Full Salary for a National Officer, per the APFA Policy Manual, Section 5 entitles the officer to receive guaranteed MEA, SAF, and Office Outside of Residence payment. This guaranteed payment is $1050, which is considered gross wages and recorded in "Box 1" of the National Officers W-2 tax form.

Defendant Ross argued that former APFA National Treasurer Vargas has stated in sworn testimony he used full salary vs basic salary for all calculations in compliance with the Ross Transition Agreement. This full salary calculation would include the benefits of MEA, SAF and any accrued and unused sick and vacation that he would have coming to him as President for those 5 months (4/1/16-7/31/18), as if he remained in office.

**DISCUSSION AND OPINION**

Defendant Ross assumed office on April 1, 2016 as National President of the APFA. In that position he is entrusted with a Fiduciary duty to the APFA for cost and expenditures. This report revealed that Defendant Ross abused his fiduciary duty to the members of the APFA. The arbitrator has consolidated certain violations in this report.

1. **Misuse of the APFA Credit Card and**
2. **SAF/MEA and Meal Expense Policy**

Plaintiff argued in these allegations that Defendant Ross moved into the South Lake home during the week of August 11, 2016.  Defendant Ross used the APFA credit card for his personal use and was not for any Union related business activities and abused his fiduciary duty to the APFA. He charged the renting of a moving truck on August 20, 2016 to move furniture after being reimbursed for moving his belongings from Sacramento.  He has purchased tools, sheets, blankets, pillows, mattresses, furniture and even smaller items such as toilet paper and candy. None of the larger items were ever inventoried or returned to the APFA upon cessation of his term of office. Defendant Ross elected to relocate to the DFW area and was afforded a moving expense reimbursement, he was not entitled to buy any furnishings using APFA funds. Plaintiff argued Defendant Ross violated Section 5.G. **Other Expenses** of the Policy Manual. Kim Ross, wife of

the Defendant packed up the California house in August 2016. Defendant Ross's wife and kids stayed in 5 different hotels as they drove across the country, including vacation stops at the Grand Canyon and Flagstaff. They used the union credit card for these hotels, except for one hotel stay on August 2nd that Ross expensed in his weekly report to the APFA.  It also appears in the documentation that APFA paid for all of Ross's family meal expenses. (CLX-17, CLX-37, and CLX-42) All of these expenses were billed to APFA as part of the cost of moving the Ross family from California to Texas. Defendant Ross was not present for any of these hotel stays.

The arbitrator finds that if his family was driving directly from California to Dallas, Texas, the APFA would not have incurred additional costs for hotels, meals and mileage. It appears APFA paid for Ross's family vacation in the Grand Canyon with Defendant Ross' APFA credit card. The cost of this vacation to include meals and hotels should be borne by Defendant Ross.  This is an abuse of Ross's fiduciary duty to the APFA membership. This is a per se violation of the Policy Manual.

On August 9, 2016 Defendant Ross bought tools at Home Depot on the APFA credit card. On this same date, the APFA handyman delivers APFA furniture to the South Lake home. (CLX-4). On August 12, 2016 the moving pods that Ross had rented arrived to the South Lake house. On this same date, Defendant Ross charges $64.30 for gas at Shell Oil in South Lake on the union credit card and bills it to the move but he also claimed mileage and was paid. On August 13, 2016 Defendant Ross *purchased $3,637 in furniture on the APFA credit card from Ashley Furniture (CLX-40)* and had it delivered to his personal residence at the South Lake home.  The furniture was delivered to Kim Ross at the South Lake home in two installments – on August 18, 2016 and August 25, 2016.  Defendant Ross claimed the family did not move until September 2016 but the record evidence clearly revealed they actually moved in August, 2016. A couple of bed frames and small items were returned costing $331.28 to Ashley Furniture on August 24, 2016 (CLX-40). John Nikides testified that Defendant Ross was ordered by APFA to repay $3600.00 to APFA for this furniture and he did so through payroll deduction. Here, Defendant Ross abused his fiduciary duty to the members of the APFA.

Plaintiff argues Defendant Ross used the APFA credit card for his own personal use. Several meals were charged on the credit card and the participants were National Officers, the Officers and their Regional Representatives as well as himself eating alone. This violates Section 5.F. **Meal Expenses/Meal Expense Allowance (MEA)**, 5. **Business Related Expenses**, a.1.2. Plaintiff argues this violates the following:

**Section 5 Business Related Expenses:**
    a. *Representatives are authorized to pay for and to be reimbursed for the meal, snack or beverage of a guest(s) or other business associate(s) on those occasions with a representative would reasonably be considered the host of an authorized APFA function or meeting.*
  1. *Discretion and good judgment should be used when exercising this privilege and when incurring such a legitimate and necessary business-related expense. Abuse, as determined by the executive committee, may lead to the limitation of revocation of this privilege.*

2. *In no case may an individual who is otherwise receiving an APFA MEA in any manner be considered the "guest" for the purposes of this provision.*

**Section 5.G of the Policy Manual provides the following:**

*Actual out-of- pocket expenses incurred by a member in conducting APFA business will be reimbursed to the extent provided in this policy. In all cases, receipts must be submitted to verify the expense and to substantiate reimbursement. Expense reimbursement is not intended to be for the personal profit of the APFA member, but to compensate him /her for actual expenses and losses, and is exclusive of other applicable reimbursement provisions in this policy.*

Additionally, the items Defendant Ross purchased were for his personal benefit such as dry cleaning, trips to the gas station, 7-eleven, and a monthly GOGO internet subscription.

Plaintiff argued Defendant Ross violated the Meal Expense provisions of the APFA Policy Manual during his term in office. Ross claimed per diem and actual meals. He used the APFA credit card for meals at fast food restaurants by himself. As a National Officer Defendant Ross received a guarantee MEA ($300.00 per month). The APFA Policy Manual does not permit National Officers to charge actual meals in their city of residence. National Officers are provided Guaranteed MEA instead of actual meal expense. There are no provisions for National Officers to receive actual meals. Actual meals are covered in F.2 of the Policy Manual and do not include the National Officers or other full-time representatives nor is there a working lunch exception. The only time an APFA National Officer can purchase actual meals is the hosting exception.

Defendant Ross argued with respect *to SAF/MEA and meal expenses* that he did not fail in his responsibility to act in accordance with the APFA Policy Manual by citing a violation of Section 5.F: Business Related Expenses. He states that the APFA had no policy on how to differentiate or separate any amounts from the guaranteed MEA/SAF totals when National Officers, Regional Representatives, National Chairs, or other Representatives, who are authorized a full month trip removal pay and are receiving guaranteed stipends of MEA/SAF and are considered a host of an authorized APFA meeting. APFA also had no policy in place until 2021, for a National Officer in relation to one's union credit card practice.

Defendant Ross additionally argued the parties cited the wrong policy in support of these charges, evidence of their lack of understanding of the process and policy. No purchases were made on the APFA union credit card were submitted for reimbursement on the weekly/monthly expenses. Receipts were submitted for each credit card charge and reviewed per policy by the appropriate accounting and legal departments.

The arbitrator finds the Plaintiff provided sufficient evidence to establish merit and a violation of the Policy Manual to reveal Defendant Ross abused his fiduciary duty to the membership of the APFA. Under these circumstances, the APFA will hire an Independent Auditor to perform the task of auditing Defendant Ross purchase of meals and other items on the APFA credit card from April 1, 2016 through July 31, 2018. Record evidence revealed that he had purchased meals and used the APFA credit card for a personal vacation for his family at the Grand

**APPENDIX 129**

Canyon and other items that are not business related. The Independent Auditor will have to determine if such meal(s) or other purchases were for conducting union business or not. Defendant Ross as the National President was required to submit documentation to support all credit card expenses for meals as well as other expenses. If no documentation was provided to support the expenses were for union related business, then Defendant Ross will be required to repay APFA for all of those expenses not substantiated. Moreover, the audit must comply with federal income tax guidelines which distinguish between personal and nonpersonal expenses. Additionally, Defendant Ross is hereby Ordered to repay all of the Independent Auditor's fee to the APFA.

## 3. Rental Car

Plaintiff argued Defendant Ross violated the APFA Policy Manual by having a rental car in DFW for six months. The Policy Manual in Section 5.G.1 does not allow a National Officer to have a rental car in base. Defendant Ross upon assuming office is considered for all expenses to be living in Dallas. The only way a rental car would be approved is if the APFA Representative was renting it away from their city of residence per 5.G.1.b. If it is used for personal reasons, it is considered income. Moreover Section 8.D governs the use of APFA provided vans and cars, "Automobiles owned or leased by the APFA are to be used primarily to conduct APFA business during normal business hours. After hours, they may be reserved on a first-come, first served basis for the use of representatives who reside outside of the DFW metropolitan area," Section 8.D.1. in Section 8.D.2 a Regional Representative whose residence is outside of DFW may get a rental car when leased cars are not available. Cathy Lukensmeyer testified that National Officers should not be getting a rental car in Dallas for their personal use. Defendant Ross received a rental car from March 2016 until October 16, 2016. He booked a rental on March 28, 2016 for 24 days. On May 5, 2016, Defendant Ross upgraded the car to a luxury car. The car rentals were updated several times into October 2016. At hearing, Defendant Ross denied having a rental car but when confronted with rental car receipts, he then claimed it was for his department and not for him. Several emails (June 16, 2016 extended the rental to July 29, 2016, July 18, 2018, September 30, 2016 extended to October 3, 2016) from APFA secretaries disclosed it was for Bob's rental car (CLX-45). Additionally, ross did not have a personal car in DFW to commute to APFA headquarters. Here, the arbitrator finds Defendant Ross abused his Fiduciary duty to the membership of the APFA by renting cars for his personal use to commute to work.

Defendant Ross did not move his wife's car to Dallas until August, 2016 so Ross was using APFA rental cars exclusively during that period. He charged APFA for the mileage, hotels, gas and meals. Ross admitted he did not have a vehicle to get to work so he used the rental car. Plaintiff argued that if an Employer provides an automobile to an employee, including for commuting to and from work, that is considered a fringe benefit and is considered taxable income by the IRS. (26 CFR § 1.61-21(a)(1) - Taxation of fringe benefits.) Under the LMRDA the governing body is the APFA Board of Directors and they have an obligation to recover the money. (29 U.S.C. 501) So Defendant Ross saying the Board looked into the matter in 2019 does not resolve the matter. If it is determined Defendant Ross received over $6200 in unlawful compensation in the form of a rental car he was not entitled to under federal labor law, the money must be paid back to the APFA.

Defendant Ross argued with respect to the *misuse of a Rental Car* was billed to the National President's department during the timeframe according to the Charging party's allegation, is

coincidental to the timeframe of the Ross relocation, but was not as a condition of the relocation. 2016 APFA Policy Manual Section 5.H – Relocation – was silent on the use of rental cars in connection with or during the timeframe of a relocation.

The arbitrator finds the Plaintiff has supported their charge to establish merit and a violation of the Policy Manual over the use of rental cars, thus, Defendant Ross abused his Fiduciary duty to the membership of the APFA. the Independent Auditor will audit Defendant Ross' use of a rental car from April 2016 through October 2016 and determine the cost of the rental from April 2016 through October 16, 2016. If Defendant Ross did not support the use of a rental car with documentation for Union related business matters, Defendant Ross will be required to repay APFA for the use of the rental cars. Whatever the amount of dollars the Independent Auditor has determined Defendant Ross owes for using a rental car for his personal use in lieu of a union business, he shall be Ordered to repay that amount to the APFA.

**4.Mileage**

Plaintiff argued Defendant Ross claimed mileage that he was not entitled to, including the period he had a rental car. The AFPA Policy Manual has detailed language to a National Officer assuming office.

**Relevant Provisions**
Upon assuming office/appointment, National Officer(s) / Chair(s) shall be expected and, for the purposes of this policy, shall be considered to reside in the DFW area per 5.H.1.

*5.G.1.b. Ground Transportation*
"[1] A representative shall be reimbursed for mileage at the IRS standard mileage rate for travel to conduct APFA business, not to exceed a monthly maximum of one thousand (1000) miles. All mileage must be recorded on an "APFA Mileage Log" and submitted per Section 5.I.5. of this Policy Manual," per Section 5G.1.b.1.

" S/he is not authorized to claim any other expenses as provided in this policy for the purpose of personal travel between DFW and his/her permanent residence," per Section H.5.c.

The mileage logs are included in CLX-13-19 and specify that Ross drove the following mileage:

March 2016    336 miles
April 2016    294 miles
May 2016      294 miles
June 2016     336 miles
July 2016     294 miles

**APPENDIX 131**

Plaintiff argued Defendant Ross violated the APFA Policy Manual by claiming mileage to and from his permanent residence in Sacramento and the Sacramento airport. He claimed mileage between his Sacramento permanent residence and the Sacramento Airport at 42 miles each way. The APFA Policy Manual states that a National Officer may not claim expenses for his commute home. All commuting back to your home city is on your own money. But Defendant Ross charged mileage, parking and meals at the airport. Defendant Ross also charged APFA $105 a month for parking his vehicle at the Sacramento Airport. This is not an authorized expense as no additional expenses for commuting home were authorized. All of this occurred at the same time Defendant Ross had a rental car.

Defendant Ross states Plaintiff's have formed their own theory and alleged that former APFA National President, Bob Ross is in violation for claiming mileage for attending meetings with the Company or claiming mileage for any event outside of APFA headquarters while conducting APFA business while using a rental car. At no time did Ross file for reimbursement for mileage from his residence to the APFA headquarters. The Charging Party did not present evidence that Ross claimed a mileage reimbursement while using a rental car and not his own vehicle. Defendant Ross submits Section 5.G.b.1.a.1., is silent on a specific vehicle to be used in the reimbursement of mileage. At any given time, an APFA Representative could be subject to using their personal vehicle or a "Rental Car" for conducting APFA business.

The arbitrator finds the plaintiff has supported their charge to establish merit and a violation of the Policy Manual. Thus, Defendant Ross abused his Fiduciary duty to the membership of the APFA by claiming mileage to and from his residence and parking his personal vehicle in the Sacramento Airport. The arbitrator requests the Independent Auditor to look at the mileage logs or statements from April 1, 2016 through October, 2016 and determine the amount of money Defendant Ross was paid for claiming mileage from the Sacramento airport and return. Defendant Ross' claimed 42 miles from the Sacramento airport to his residence and 42 miles to return to the airport on weekends.  Additionally, Defendant Ross charged $105.00 a month for parking his car at the Sacramento airport and claimed this cost to APFA for payment.  The Independent Auditor shall investigate the claims for parking his car and determine how much he claimed and received payment from the APFA Whatever dollar amount the Independent Auditor has determined for mileage and parking, Defendant Ross is hereby Ordered to repay the APFA.

**5. Maintaining an Office**

Plaintiff withdrew this charge in their post-hearing brief.

**6. Charges related to Ross Leaving Office as National President (Buyout)**
**7. Sick and Vacation Payouts**
**8. Receiving MEA and SAF when Performing no work.**

Defendant Ross left office on March 1, 2018 in the face of a DOL ordered rerun election. He was elected to a four-year term but he voluntarily resigned and negotiated a Transition Agreement to leave. The economic terms of the Transition Agreement are as follows:

3. APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

**APPENDIX 132**

4.  APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5.  APFA agrees to pay ROSS, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000), which represents ROSS's moving expenses. ROSS shall present the moving expenses to a APFA for payment through 2019.

Plaintiff argued that nowhere in the exit package language does it specify that Defendant Ross should get paid MEA and SAF expense payments for the months he is not working in March, April, May, June and July 2016. Yet, Defendant Ross received $1050 a month in these payments for five months for a total of $5250. MEA and SAF are considered expenses. Salary is included in Section 6-National Officer Salary and benefits. In Section 5-Trip Removal and Expense Policy is where SAF and MEA are located and discussed. The APFA Constitution defines salary in Section 6.A which provides, "The salary of the National President shall be equivalent to the highest purser flight attendant pay rates, including international override pay, for a flight attendant based on 116 hours monthly."

**Section 6: National Officer Pay and Benefits**
**B.1: Vacation**

a.  National officers shall be entitled to thirty-five (35) days of paid vacation to be taken in each fiscal year while in office or the seniority respective vacation allowance s/he is contractually entitled to as a Flight Attendant, whichever is greater. This calculation will not be based on the Article 6.H of the Collective Bargaining Agreement referring to "trips missed." This vacation allowance may be taken at the discretion of the National Officer, however, not more than fourteen (14) consecutive days taken at any one time.

b.  National Officers should schedule their vacations so as to avoid the simultaneous absence of more than two (2) National Officers. In no case shall the National President and the National Vice President be on vacation simultaneously.

c.  At the end of a fiscal year, up to fourteen (14) days of any unused APFA vacation allowance, as provided in B.1.a above, will be paid to the National Officer at a rate prorated on the National Officers' annual salary for the period of APFA vacation allowance owed, less applicable state and federal taxes. If the National Officer is entitled to more than thirty-five days vacation, up to twenty-one (21) days will be paid as stated above.

d.  At the beginning of a term, the National Officer should be paid by the Company for any vacation allowance accrued as a flight attendant.

e.  At the end of the term, the APFA will ensure that the departing National Officer is provided with the vacation time to which s/he would ordinarily be entitled as if the National Officer had been an active Flight Attendant for the previous and current calendar years. If the company does not provide the out-going officer with the appropriate vacation allowance accrued for the previous and current calendar year the APFA will: