approved payments to be made outside the scope of the APFA Policy Guidelines. At no time did I possess a copy of the Confidential Ross Transition Agreement, nor was I given any authority to approve payments made thereunder.

e. I did not disclose this information earlier because I was unaware of the facts involved in this lawsuit.

FURTHER AFFIANT SAYETH NOT.

**Craig Gunter**
A.K.A Edward Craig Gunter

SWORN AND SUBSCRIBED TO before me on this _25_ day of February, 2024.
BY: Edward Craig Gunter

Lashondra Gant
Notary Public, State of _Texas_

This notarial act was an online notarization

**APPENDIX 216**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT.WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **MCGAUGHEY, REBER AND** | § | |
| **ASSOCIATES, INC., ASSOCIATION** | § | |
| **OF PROFESSIONAL FLIGHT** | § | Case No. _____ |
| **ATTENDANTS, JULIE HEDRICK,** | § | |
| **AND ERIK HARRIS** | § | |
| **Defendants.** | § | |

**AFFIDAVIT OF NENA MARTIN IN SUPPORT OF PLAINTIFF'S ORIGINAL
COMPLAINT AND MOTION TO VACATE**

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being

by me first duly sworn, did state:

1.  "I am employed as a Flight Attendant working with American Airlines, Inc. and I

    served on the Board of Directors for the Association of Professional Flight

    Attendants, between April 2011 to January 2021.  I am of sound mind and body to

    make this affidavit and have personal knowledge of the following facts:

    a.  I attended the Board of Director's meetings on October 27, 2020, and October

        28, 2020, in which evidence from an accounting firm hired by APFA was

        presented off the record.  Erik Harris presented spreadsheets he stated were the

        results of an accounting review that showed Robert "Bob" Ross owed for an

        overpayment made under his Transition Agreement in the amount of $5,436.47.

**Exhibit B**

**APPENDIX 217**

I was present at this meeting and reviewed all documents submitted and can attest to the true and correct findings of the Board of Directors at this time.

b.  I have not seen the Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P ("Confidential Memorandum") and the Board of Directors were not presented this Confidential Memorandum at any formal APFA Board of Directors meeting or discussion with which I participated.

c.  I received an email from Erik Harris on November 25, 2020, with a letter attached. A true and correct copy of that letter is attached hereto and marked Exhibit B-1. This information was presented to me on or about October 27, 2020, with the other Board of Directors while discussing it off the record. No formal vote was ever made, no formal record ever taken. It was decided that APFA General Counsel, Margo Nikitas, would call and discuss the accounts with Mr. Ross to review the spreadsheet.

d.  I also attended the APFA Executive Committee meeting on December 1, 2020, where the Executive Committee reviewed the charges filed by Melissa Chinery-Burns and Sandra Lee against Robert "Bob" Ross.  At this Executive Committee meeting, I had the opportunity to hear all arguments made against Robert Ross prior to the Executive Committed voting on whether the charges were timely, specific, and valid.  The Confidential Memorandum dated October 22, 2020, from Wood, Stephens & O'Neil, L.L.P was never presented to the Executive Committee for review and consideration prior to voting on the charges."

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this 18 day of April 2022.

Notary Public, State of Missouri

Jennifer D. Schuler
Comm. Exp. 10/07/2024
NOTARY
PUBLIC
NOTARY
SEAL
#20861406
St. Charles County
STATE OF MISSOURI

**Exhibit B**

3 of 2

**APPENDIX 219**

**From:** Erik Harris <eharris ███████>
**Sent:** Wednesday, November 25, 2020 9:58 AM
**To:** Base Presidents <BasePresidents ███████>; Executive Committee <ExecutiveCommittee ███████ g>
**Cc:** Margot Nikitas <MNikitas ███████>
**Subject:** Bob Ross' Overpayment

Hi all-

The attached letter was sent to Bob Ross yesterday in regards to the Overpayment of wages. I gave him a deadline of January 1, 2021 to cure the debt owed to APFA or to make payment arrangements.

As always, I will keep you all posted on the progress of collecting these funds.

Thanks,

Erik

--

# Erik Harris *Pronouns: he, him, his*

National Treasurer
Association of Professional Flight Attendants
████████████████████████

*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

# Exhibit B-1

**Association of Professional Flight Attendants**

Representing the Flight Attendants of AmericanAirlines

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross
4701 Hayloft Ct
El Dorado Hills, CA  95762

**RE:    Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at 817.540.0108 or eharris⬛⬛⬛⬛ with any questions or concerns. Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:    APFA Board of Directors
       APFA Executive Committee
       Margot Nikitas, General Counsel

**Exhibit B-1**

**APPENDIX 221**

A

**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * Maximum flight attendant pay | 60.13 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 71.38 | 116 hours | 8,280.08 | |

| Bi-monthly pay 4/1/16 - 12/31/16 | | 4,140.04 |
|---|---|---|

| | | | | |
|---|---|---|---|---|
| ** Maximum flight attendant pay | 61.33 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 72.58 | 116 hours | 8,419.28 | |

| Bi-monthly pay - 1/1/17 - 5/1/17 | | 4,209.64 |
|---|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** Maximum flight attendant pay | 64.96 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 76.21 | 116 hours | 8,840.36 | |

| Bi-monthly pay - 5/2/17 - 12/31/17 | | 4,420.18 |
|---|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** Maximum flight attendant pay | 66.26 | | | |
| Purser Pay | 7.50 | | | |
| International pay | 3.75 | | | |
| | 77.51 | 116 hours | 8,991.16 | |

| Bi-monthly pay - 1/1/18 - 7/31/18 | | 4,495.58 |
|---|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
**** Pay rates effective 1/1/18 - 7/31/18

# Exhibit B-1

**National Officer:** Bob Ross

| | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
|---|---|---|---|---|---|
| Profit Sharing - 2016 | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | 300.00 | (paid 7/6/17) |
| Grand slam | | | | 150.00 | (paid 1/25/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | |
| 2071 Profit Sharing | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | |
| Sick Pay - 2018 | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | |
| Profit sharing 2018 | | | | 1,403.99 | (paid 3/8/19) |

**Exhibit B-1**                                                                 **APPENDIX 223**

| National Officer: | Bob Ross | | | | Overpayment Calculation | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Annual | Daily amount | Eligible | | | | |
| | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay – 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK (paid 3/31/17) | | |
| | | | | | Overpayment | $ - | | $ - | |
| | | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | | |
| | Original amount | | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK (paid 3/31/17) | | |
| | | | | | Overpayment | $ - | | $ - | |
| | | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | Overpayment | $ 968.76 | | $ 968.76 | |
| | | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | (paid 3/29/2018) | | |
| | Correct calculation amount | | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 | | | |
| | | | | | Overpayment | $ 633.42 | | $ 633.42 | |
| | | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | (paid 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 | | | |
| | | | | | Overpayment | $ 1,130.42 | | $ 1,130.42 | |
| | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | (paid 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 | | | |
| | | | | | Overpayment | $ 467.76 | | $ 467.76 | |
| | | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | |
| | Original amount - paid in error (a) | | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | (paid 3/29/2018) | | |
| | Correct calculation amount | | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 | | | |
| | | | | | Overpayment | $ 1,364.30 | | $ 1,364.30 | |

**Exhibit B-1**

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | | |
| Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | |
| | | | | Overpayment | $ 796.75 | $ 796.75 | | |
| | | | | Overpayment subtotal | | $ 5,361.41 | ** |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | (based on 1.4%) |
| | **Total overpayment - due to APFA** | | | | | $ 5,436.47 | |
| (a) - included union pay (MEA/SAF) | | | | | | | |

**Exhibit B-1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | |
|---|---|
| **ROBERT "BOB" ROSS** § | |
| **Plaintiff/Counterclaim Defendant** § | |
| § | |
| § | |
| § | |
| § | |
| § | **Case No. 4:22-CV-00343-Y** |
| § | |
| § | |
| **ASSOCIATION        OF** § | |
| **PROFESSIONAL FLIGHT** § | |
| **ATTENDANTS,    MCGAUGHEY,** § | |
| **REBER  AND  ASSOCIATES,  INC.,** § | |
| **JULIE HEDRICK, ERIK HARRIS** § | |
| § | |
| **Defendants/Counterclaim Plaintiff.** § | |
| § | |

**AFFIDAVIT OF NENA MARTIN IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being

by me first duly sworn, did state:

1.      "I am employed as a Flight Attendant working with American Airlines, Inc. and I

serve on the Board of Directors for the Association of Professional Flight

Attendants ("APFA"), between April 2011 to January 2021.  I also served as

National Vice-President from 2016-2018, and National President from March 2,

2018 to July 1, 2018.  I have been a member in good standing with APFA since

January of 1988.  I am over the age of 21, of sound mind and body to make this

affidavit, and have personal knowledge of the following facts:

**APPENDIX 226**

a. On October 14, 2022, I received a copy of a letter from Arbitrator Ruben Armendariz in relation to the dismissed Article VII Charges Chinery v. Martin. The letter stated that the Arbitrator denied Melissa Chinery's Motion to reconsider the order of dismissal entered in the Article VII charges against me. A true and correct copy of the letter I received is attached hereto.

b. The APFA maintains a current copy of all public statements made by APFA's National Presidents ("Presidential Hotlines") or ("Special Hotlines") on its website. These Hotlines are emailed directly to every member of APFA who has signed up to receive communication from APFA.

c. After a dismissal order of the Article VII charges against me by Melissa Chinery, my representative, Heidi Morgan, and I requested APFA release a Special Hotline statement to the APFA membership announcing the Decision of my Arbitration, much like the Hotline published with the Arbitration Decisions pertaining to both Bob Ross and Eugenio Vargas, to restore my reputation. APFA never released a Hotline announcing the dismissal of all Article VII charges against me. Attached hereto and incorporated herein is a true and correct copy of the emails I sent and received about a Special Hotline published to the APFA membership.

d. To my knowledge, APFA has never announced the results of an Article VII Arbitration Award in a Presidential / Special Hotline emailed to the APFA membership except for Robert "Bob" Ross and Eugenio Vargas. To my knowledge, APFA has never banned any other member from running for public office, except for Robert "Bob" Ross and Eugenio Vargas.

**APPENDIX 227**

FURTHER AFFIANT SAYETH NOT.

_____
**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this 8th day of January, 2024

MATTHEW KYLE HILL
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: July 23, 2027
19069056

_____
Notary Public, State of Missouri

**APPENDIX 228**

October 14, 2022

**Dear Ms. Chinery and Ms. Lee,**

I am in receipt of your email dated October 12, 2022 and received on October 13, 2022.

I have considered your email and have chosen to regard it as a "Motion for Reconsideration."

I based my decision in the Hearing conducted on October 12, 2022 on Article VII, Section 6.E., of the APFA Constitution as follows:

### Article VII, Section 6. Jurisdiction and Authority of the Article VII Arbitrator

E. The accused may move for summary dismissal of the charges on the ground that the accuser does not have evidence sufficient to sustain the charges and thus there is no need for a full hearing. On receipt of such a motion, the Article VII Arbitrator shall afford the accuser an opportunity to identify evidence that would sustain the charges. If the Article VII Arbitrator concludes, following that opportunity, that the accuser does not have evidence sufficient to sustain the charges, the Article VII Arbitrator may grant summary dismissal of the charges.

Based on your Motion for Reconsideration, I am denying your Motion for Reconsideration. My decision to sustain the Charged Party's "Motion for Summary Dismissal" is due to the evidence submitted. Only one issue remained in this grievance as to whether Nena Martin abused the use of the Union's credit card. You cited 18 alleged credit card abuses. Only 6 of the allegations were of Nena Martin. The rest were of Mr. Ross and Mr. Vargas. You stated Article VII Arbitrator Langford allowed you to amend your charges to include 100 additional allegations of credit card misuse. You agreed at hearing that of the 18 alleged credit card abuses, only 6 allegations were of Nena Martin's in the original filing. And Ms. Martin stated that these six alleged instances were for business use. As to the remaining allegations, I was not persuaded that these were instances of credit card abuse or of sufficient specificity. I therefore concluded that the evidence presented was **de minimis** at best and too trivial to merit further consideration.

Sincerely,

Ruben R. Armendariz, Article VII Alternate Arbitrator

Cc: APFA General Counsel
    Nena Martin
    Heidi Morgan

**APPENDIX 229**

| | |
|---|---|
| **From:** | Nena Martin |
| **To:** | ArticleVII; heidimorgan65 ; jblack |
| **Cc:** | Nenarott |
| **Subject:** | Re: Decisionof Art VII Hearing |
| **Date:** | Friday, October 14, 2022 8:12:30 AM |
| **Attachments:** | image001.png |
| | image002.png |

Josh,

Any update on the hotline to the Membership, stating the Article VII Arbitrator did grant a summary dismissal of the charges?

Nena


-----Original Message-----
From: ArticleVII <ArticleVII
To: Heidi J. Morgan <heidimorgan65                   oshua Black <jblack
Cc: nena martin <Nenarott
Sent: Thu, Oct 13, 2022 8:20 am
Subject: Re: Decisionof Art VII Hearing

The internal communications were not forwarded to the parties previously.

I've sent your request to send out a hotline to communications and the officers.

Josh Black
National Secretary
Association of Professional Flight Attendants
Office 817.              Email jblack
secretary
The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.

**From:** Heidi J. Morgan <heidimorgan65
**Sent:** Wednesday, October 12, 2022 7:16:35 PM
**To:** Joshua Black <jblack
**Cc:** ArticleVII <ArticleVII        ; nena martin <Nenaro
**Subject:** Re: Decisionof Art VII Hearing
Josh,

Thank you. Please forward us the communication with leadership so we can be assured it was properly communicated.

When can we expect the hotline as has been the practice with your administration?

Heidi

Sent from my iPhone

On Oct 12, 2022, at 6:00 PM, Joshua Black <jblack                   wrote:

**APPENDIX 230**

Hi Heidi,

I've informed the board and the executive committee.

## Josh Black

National Secretary

Association of Professional Flight Attendants

Office 817 ████████ Email jblack█████

The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.

**From:** Heidi J. Morgan ██████████████████████

**Date:** Wednesday, October 12, 2022 at 13:18

**To:** Joshua Black <jblack████████ ArticleVII <ArticleVII(█████, nena martin <Nenarott██████

**Subject:** Decisionof Art VII Hearing

Josh,

Please consider this our formal request for your Department to notice the APFA Leadership of the dismissal of the article VII charges in the case of Chinery Lee vs Martin which vidicates Nena Martin This was the practice for all 3 decisions in the past 13 months.

Also... it is a formal request to put the same information which vindicates Nena Martin in a hotline to the membership as was also done in these same hearings mentioned above.

Please respond to us if these requests of past practice will not be afforded to Nena Martin and let us know why.


Heidi Morgan
For
Nena Martin



Sent from my iPhone

IN THE UNITED STATS DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| **ROBERT "BOB" ROSS** <br> *Plaintiff/Counterclaim Defendant* | § <br> § <br> § <br> § <br> § | **Case No. 4:22-CV-00343-Y** |
| **ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, MCGAUGHEY, REBER AND ASSOCIATES, INC., JULIE HEDRICK, ERIK HARRIS, LARRY SALAS, JOSH BLACK** <br> **Defendants/Counterclaim Plaintiff.** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| **EUGENIO VARGAS** <br> *Plaintiff/Counterclaim Defendant* | § <br> § <br> § <br> § | **Case No. 4:22-CV-00430-Y** |
| **ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, JULIE HEDRICK, ERIK HARRIS, LARRY SALAS, JOSH BLACK** <br> **Defendants/Counterclaim Plaintiff.** | § <br> § <br> § <br> § <br> § <br> § | |

### AFFIDAVIT OF HEIDI MORGAN IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

BEFORE ME, the undersigned authority, on this day personally appeared Heidi Morgan, who being by me first duly sworn, did state:

1.    "I am employed as a flight attendant working with American Airlines, Inc. since 1986, and I am currently serving as the Association of Professional Flight Attendant ("APFA") Miami Base Vice-President.  I have personal knowledge of the facts contained herein, I am 21 years or older and of sound mind to make these

statements.

a. On or about June 2015, Melissa Chinery sought my assistance in filing a Notice of Dispute against Kim Kaswinkle, Philadelphia Base President. The Notice of Dispute system is internal process for filing grievances against American Airlines, Inc. under the Collective Bargaining Agreement. Melissa Chinery sought my assistance through a colleague, Kiri Wirth. In a telephone conversation, I discovered Ms. Chinery's intent was to use the Notice of Dispute system to file a complaint for a dispute based on union representation. I did not work for the APFA union and informed her of this fact. After speaking with her, I discovered she wanted to use the Notice of Dispute system for purposes of complaining against her Base President Kim Kaswinkle. When I inquired about her motivation, I realized the complaint was not within the guidelines of filing a complaint with the company based on political motivations and advised her of this. This was my opinion as a fellow union member, who held substantial knowledge of the complaint process.

b. On or about May of 2020, I was informed by a former AFA representative, Roger Holmin, that APFA Union Member, Melissa Chinery, and AFA General Counsel, Joe Burns, were engaged to be married. I was never informed of this engagement in my capacity as a Union Representative.

c. On or about May of 2020, I sent a letter to the APFA Board of Directors after I spoke to the APFA National President Julie Hedrick and told her that I had concerns about APFA hiring AFA Joe Burns, General Counsel to represent APFA in negotiations of the APFA Collective Bargaining Agreement with

American Airlines, Inc. as I felt this was a conflict of interest as Mr. Burns was not an independent attorney, but one employed by a competing union. I felt this created a conflict of interest as AFA had a history of attempting mergers with APFA in the past and that his motivations would be to weaken APFA so that APFA would merge with AFA. My concern was that Mr. Burns's dual representation of the two unions posed a conflict of interest because counsel for AFA would benefit from weakening the American Airlines, Inc. Flight Attendants union by achieving less advantageous employment terms for the Flight Attendants. This would cause frustration by the membership of APFA and encourage the membership to vote to join AFA. Ms. Hedrick informed me that she did not care about my concerns and that Mr. Burns would be hired to represent APFA.

d.  On June 3, 2020, I decided to post a public statement onto Facebook within an American Airlines, Inc. Flight Attendants page and state my concerns for the use of AFA General Counsel, Joe Burns as counsel for APFA ("Facebook Statement"). In this Facebook Statement, I included a true and correct copy of the letter I sent to the APFA Board of Directors. Attached hereto and incorporated herein is a true and correct copy of the Facebook Statement that I made on June 3, 2020.

e.  Attached hereto and incorporated herein is my June 2020 activity record which reflects that I was on a Leave of Absence from American Airlines, Inc. from May-September of 2020. In the RMV column, the code "DU" is the code subscribed to employees enrolled in the Payroll Support Program on a Leave of

**APPENDIX 234**

Absence.   I was an inactive employee on a Leave-of-Absence and did not work for APFA at the time that I made the statement. I was paid by American Airlines, Inc. under the PSP (Payroll Support Program) during the peak of the Covid crisis.

f.   I have never accessed a personal travel history of another American Airlines, Inc. employee, nor do I have the access to another American Airlines, Inc. employee's travel history.  To my knowledge, American Airlines, Inc. employees do not have access to travel records for other employees.

g.   I was the APFA Union Representative for Eugenio Vargas and Nena Martin during each of their APFA Disciplinary Arbitration hearings on charges brought by Melissa Chinery-Burns.  Randy Trautman was a witness who testified on behalf of Eugenio Vargas and planned to testify on behalf of Nena Martin.

h.   On July 8, 2022, I received an email from Erik Harris, APFA National Treasurer informing me that an investigation was initiated into my financial documents and expenses for APFA over the last ten years.  Attached hereto and incorporated herein is a true and correct copy of the email I received.

i.   On September 21, 2023, I was contacted by the Miami Base President, Randy Trautman, who informed me that he received an emailed complaint about me from a member.  The complaint was about the public Facebook Statement that I made from June of 2020.   The union member requested that Mr. Trautman speak to me about this Facebook Statement and request that I have it removed. On September 22, 20023, I requested that Mr. Trautman send me a copy of the original email he received from the APFA member.   Attached hereto and

incorporated herein is a true and correct copy of the email I received from Mr. Trautman.

j.   During June of 2015 and May to September of 2020,  I was not acting on behalf of APFA in any official capacity, nor was I paid by APFA.

FURTHER AFFIANT SAYETH NOT.

*Heidi Morgan*

_____

Heidi Morgan

State of Florida
County of Highlands

SWORN AND SUBSCRIBED TO before me on this  25th  day of September 2023.



DIXIE L HACKWORTH
Notary Public - State of Florida
Commission # HH 219481
My Comm. Expires Jan 23, 2026

*Dixie L Hackworth*

_____

Notary Public, State of Florida

Dixie L Hackworth, Online Notary

Signer Heidi Morgan produced Florida DL, as identification along with multi-factor authentication and audio/video recording to be notarized online.

**APPENDIX 236**



**Heidi Morgan**
June 3, 2020 · 🌐

···

I have been publicly silent thus far regarding the fact that we are using Atty. Joe Burns for negotiations. That doesn't mean I am indifferent about the situation. I became aware last week of the conflict of interest and wrote a letter to the BOD. I first called the President on Thursday and sent her (in advance) my letter that would go to the entire BOD if need be. Ms. Hedrick listened but was in complete disagreement with my perception of it being a conflict of interest. I'll admit to becoming on fire when speaking to her because the shock of her nonchalance made me feel like I was listening to the early stages of APFA's dissolution. With that...I sent the letter to the entire BOD. I recieved a written reply from only the DFW BP and had phone responses from STL BP and my BP (MIA). When this hit Facebook over the weekend I still remained quiet in the hopes Ms. Hedrick would consider involving the BOD in the situation.  I spoke to the President one more time and she was adamently opposed to doing anything about what I (and not she) perceived as a conflict of interest. Tuesday morning I sent my email to the EC. Here we are today...clearly, my slow and thoughtful approach to the situation has gotten me nowhere. Perhaps being an alarmist would have been a better reaction when a potential fox has been welcomed into the henhouse.

I am posting the short intro I sent to APFA Leadership and also the lenghty letter that was attached.

I don't  know what else to do. I gave the President the opportunity to look at this through the lens of loyal APFA members.  She has no interest.

I would like to know how Atty Burns is being paid. Are we paying him directly or are we paying AFA? (the union that wants to raid us). I haven't been able to get that answer.

I am asking all of you who give even the smallest s@#$ about APFA to write your Base President and let them know they have to do something.

My introductory Letter:

Board of Directors,

I am sending this not only as a rank and file member but also as long-time APFA advocate.

What is attached is my urgent letter to you, as the governing body of this union. Everything I have written comes from a 100% sincere place of protecting our union from both internal and external forces.

I have been in communication with Julie Hedrick a couple times in recent weeks. With those lines of communication open I gave her the courtesy of a phone call last night and also sent her this email at that time so she would know in advance what my message to the BOD would be. It was quite difficult for me to contain my "passion" (maybe outrage would also be an appropriate descriptive word) on this issue. I give her credit for listening to me when my opinion is concretely set.

Whatever your politics, whatever your previous opinion of me please read my letter and know that it comes from the heart of a person who will and has in the past, been willing to go to great lengths to protect this organization.

Heidi Morgan (formerly Kidwell)

My Full Letter to the APFA BOD:

To The APFA Board of Directors:

I am writing to the APFA BOD with an urgent plea for quick fact-finding and decisive action regarding an issue that is cause for grave concern for the APFA.

Not long ago I became aware of the fact that Joe Burns, attorney for AFA, is "on loan" to APFA for negotiations. As a long-time APFA Advocate and a 3-term BOD member as the Base President of DCA-D, I was asked how I felt about this. Knowing the challenges faced in the average negotiations process compounded by the state of our industry now, my reaction was "I may be OK with it but I need to know the cost to APFA". And when I say "cost" I am not referring to money. I am referring to the perspective of potentially allowing a fox in the henhouse of APFA.

AFA and its supporters (both internal at our union and external at other unions) have long said they want to card and take over our organization. I asked a few people whom I trust and most agreed that having this attorney overseeing our negotiations is ok, but we must be certain there is no conflict of interest and most certainly does not involve any internal collusion or indifference toward dual unionism.

Knowing this information about negotiations I was also told that it was rumored the gentleman was involved in a serious personal relationship with a member of our union, Melissa Chinery. Ms.Chinery is a Legacy LUS flight attendant and a known advocate for the displacement of APFA and vocal supporter of AFA. She consistently goes on the offensive of members of our leadership. Ironically, my first and only conversation with her was years ago, approximately 2014, when I was contacted by an LAA flight attendant asking me to help Ms. Chinery because she did not trust her Base President to file a dispute for her.  I agreed to speak to Ms. Chinery.  In my conversation with her I realized it was her desire to go after her Base President (PHL) for not representing her and considering it a lack of duty of fair representation.  When I realized it was some effort to undermine a base president for political reasons I educated her on the process to file her own NOD and told her I would never be an advocate to go that route when I didn't have personal knowledge of the situation or the parties.  Subsequently, I watched her trash our union and make consistent efforts to destroy our independent organization and anyone that stands in the way of AFA. This effort continued through multiple administrations and included the ridiculous red wagon that took up far too much of APFAs time and resources.  So, for me, the thought of hiring an attorney seriously involved with this, or any other member with a well-known objective to displace APFA as our bargaining representative, is simply unconscionable.

While I sat on these issues for a short period of time they have since been confirmed by crews who have had them on board their flights with standby lists showing a shared PNR indicating he was traveling as either her registered companion or spouse.
I chose to believe the BOD knew nothing about this conflict of interest. Anyone who may have and did nothing to seek the truth and resolve the issue is, in my opinion, suspect of dual unionism.
I know quite a bit about this accusation of dual unionism. In 2012, as the Base President of LAA DCA-D I became concerned that our (then) President, Laura Glading, was working behind the backs of the BOD with Veda Shook to move to AFA-CWA. Because I had attended events with Ms. Shook in Washington D.C. I made a call to AFA's office to see if she indicated anything to cause alarm and fuel our concerns. After hanging up with me she called Laura Glading to let her know she had spoken to me and Glading used it as a weapon to accuse me of dual unionism. She rallied 2 Base Presidents who despised my politics to file Article VII charges against me. I was accused of willfully trying to displace APFA, when in actuality, my goal was and continues to be, to protect our organization and its independence.

Anyone who knows me knows I am steadfast in this objective, and I have never wavered. That said...there are some who will stop at nothing to attempt to neutralize those who stand in the way of being able to get what they want which includes those with a "creepy obsession" of others as they work at APFA.

To further complicate the dynamic, Ms. Chinery currently has 2 outstanding charges on the books at APFA.  While Article VII states charges can be filed by any member in good standing filing them in a consistent effort to undermine the organization and its leadership is suspect especially when crafted by a member with a deeply-seated desire to destroy APFA.

Ironically, (without the usual amusement of irony) one of the former BOD members who charged ME with dual unionism is said to be assisting Ms. Chinery in her current charge(s). (the creepy obsession continues)

Article VII Section 1.B.  states:

Section 1. GROUNDS FOR CHARGES:
Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:
B. Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline)

 This reference very specific. It further references Article XII which states (in its entirety):

ARTICLE XII
AFFILIATIONS, MERGERS, FEDERATIONS OR CHARTERS
 Section 1.  Any action to affiliate, merge or federate the APFA with any other labor organization; or to issue a charter; or to organize an employee group (except as provided in Section 2 of this Article XII) to provide representation to that employee group for the purposes of the Railway Labor Act shall be subject to prior approval by: A. a two-thirds (2/3) majority of the Executive Committee, and B. a two-thirds (2/3) majority of the Voting Board of Directors, and C. an affirmative vote by a majority of those active members in good standing who return valid ballots.
 Section 2.  Any action to organize a Flight Attendant employee group that is employed by a subsidiary or affiliated airline owned and/or operated by American Airlines Group, or that is employed by an independently-owned airline that performs flying for or on behalf of American Airlines or American Airlines Group, to provide representation to that employee group for the

**APPENDIX 240**

purposes of the Railway Labor Act shall be subject to prior approval by: A. a two-thirds (2/3) majority of the Executive Committee, and B. a two-thirds (2/3) majority of the Voting Board of Directors.

Section 3. Any agreement to affiliate, merge, federate, issue a charter, or to represent another employee group shall protect and preserve the APFA's right to autonomy in all of its actions; and shall protect and preserve the collective bargaining relationship between American Airlines and the Flight Attendant employees of American Airlines represented by the APFA.

This is where we find ourselves as an organization today...We have a member filing charges (which is within her right). This member is a known advocate to displace APFA as bargaining representative (also chargeable). She is involved in a serious relationship with the Attorney for the union known to have been salivating for years to raid our organization. We hired him for what will likely be the most critical negotiations in our organization's history. He will have, (may already have had) access to every detail of our finances and critical information about our organization. It is logical to consider it likely this attorney is also well-aware (by virtue of his personal relationship) of this member's charges, their verbiage, the desired remedies sought and their legitimacy (or lack thereof). All these considerations create such a dire conflict of interest that I must insist the BOD take action and investigate the validity of these circumstances and have a swift response to remedy the situation. This dynamic, as I believe it to exist, cannot be permitted to continue.

If a simple phone call by me to Veda Shook, in an attempt to protect APFA from AFA-CWA, was considered by a few to be suspect, the BOD cannot sit idly by and allow this abomination to go on and say/do nothing. I can tell you with certainty anyone LOYAL TO APFA should and will be appalled. Those sharing the desire to "tear APFA down brick by brick" may likely sit in silence after reading this or think it is no big deal. It will be glaringly obviously where one's loyalty lies.
I have been on the sidelines of APFA for a couple months. I have stayed above the fray of politics and have enjoyed phones not ringing and days off really being days off. That said...when this information presented itself and began to compound I felt strongly that if, as a former BOD member and a base rep who knows better, I was complicit, I could well be an accessory to the slow, underhanded tear-down of my union from the inside. I refuse to allow it to happen while I watch.

As leaders you have been entrusted with preserving our organization and its autonomy in all its actions. Consider your moral compass and does it direct you to protect APFA or has it teetered in

a different (disloyal) direction? Carefully review the language in the Constitution and Policy Manual. Be certain you will be able to answer to your members when asked to justify your actions or inactions. Those members loyal to APFA will be watching and waiting.

Heidi Morgan MIA



Bob Ross, Kit Gomez Alba and 61 others                                    93 comments

👍 Like                    💬 Comment                    ➤ Send

## Activity Sheet

```
PP004        MIA    056488  CREWMEMBER PRE/POST ACTIVITY REPORT  MONTH STARTING 02JUN20 AND ENDING 01JUL20  PROCESS DATE   07/09/20
KIDWELL H          04821 056488 MIA  236-    ASG 0         NWAV     KIDWELL H          04821 056488 MIA  236-          ASG 0         DOM
                                                                                                                                     NWAV
H 7039191665                                                        H 7039191665
RSVCOT                         DO 18P        PNC  0.00              RSVCOT                         DO 18P        PNC  0.00
PROJ 70.00 GTD 0.00 PPROJ 70.00              LANG 0.00             PROJ 70.00 GTD 70.00 PPROJ 70.00             LANG 0.00
PMAX 115.00 TTS MMAX 115.00 MTHLY FLEX   0.00                      PMAX 115.00 TTS MMAX 115.00 MTHLY FLEX   0.00
 GUAR ORIG   0.00 ADJ   0.00 PENDING N                             GUAR ORIG   0.00 ADJ   0.00 PENDING N
D EXP 0.00   W2 0.00   I EXP 0.00 W2 0.00                          D EXP 0.00   W2 0.00   I EXP 0.00 W2 0.00
MISC EXP 0.00 W2 0.00 TTL 0.00                                     MISC EXP 0.00 W2 0.00 TTL 0.00
PREM Y              LANG -   0.00                                  PREM Y              LANG -   0.00
PREM 0.00  U/S 0.00  H/G 0.00                                      PREM 0.00  U/S 0.00  H/G 0.00
AVBL SK 4.30                         SK USED MTD 0.00              AVBL SK 13.30                        SK USED MTD 0.00
TTL SK USED 1543.32 SK M/U 0.00  SK M/U MTD 0.00                   TTL SK USED 1543.32 SK M/U 0.00  SK M/U MTD 0.00
SK RESTORAL 0.00                                                   SK RESTORAL 0.00
LAST                                                               LAST

 DD ST RMV ADD SEQ    FLT    FLT   SKED  STTL   ACT  GRTR  GTTL DD ST RMV ADD SEQ    FLT    FLT   SKED  STTL   ACT  GRTR  GTTL
 02 61 DU          0000                                           02 61 DU          0000
 02 61 DU          PD PROJ                 70.00 70.00 02 61 DU          PD PROJ                 70.00 70.00
 03 61 DU      347    FA1   X38                                   03 61 DU      347    FA1   X38
 04 61 DU             RON                                         04 61 DU             RON
 05 61 DU             X39          0.00  0.00         0.00  0.00 05 61 DU             X39          0.00  0.00         0.00  0.00
                                   AB  0.00  PT   0.00                                AB  0.00  PT   0.00
 FMDL   - SEE LEG DETAIL                                          FMDL   - SEE LEG DETAIL
 05 61 DU                                                         05 61 DU
 06 61 DU      353    FA1   X907                                  06 61 DU      353    FA1   X907
 07 61 DU             D908         0.00  0.00         0.00  0.00 07 61 DU             D908         0.00  0.00         0.00  0.00
                                   AB  0.00  PT   0.00                                AB  0.00  PT   0.00
 FMDL   - SEE LEG DETAIL                                          FMDL   - SEE LEG DETAIL
 07 61 DU                                                         07 61 DU
 08 61 DU                                                         08 61 DU
 09 61 DU                                                         09 61 DU
 10 61 DU                                                         10 61 DU
 11 61 DU                                                         11 61 DU
 12 61 DU      347    FA1   X38                                   12 61 DU      347    FA1   X38
 13 61 DU             RON                                         13 61 DU             RON
 14 61 DU             X39          0.00  0.00         0.00  0.00 14 61 DU             X39          0.00  0.00         0.00  0.00
                                   AB  0.00  PT   0.00                                AB  0.00  PT   0.00
 FMDL   - SEE LEG DETAIL                                          FMDL   - SEE LEG DETAIL
 14 61 DU                                                         14 61 DU
 15 61 DU                                                         15 61 DU
 16 61 DU                                                         16 61 DU
 17 61 DU                                                         17 61 DU
 18 61 DU                                                         18 61 DU
 19 61 DU                                                         19 61 DU
 20 61 DU                                                         20 61 DU
 21 61 DU                                                         21 61 DU
 22 61 DU      347    FA1   X38                                   22 61 DU      347    FA1   X38
 23 61 DU             RON                                         23 61 DU             RON
 24 61 DU             X39          0.00  0.00         0.00  0.00 24 61 DU             X39          0.00  0.00         0.00  0.00
                                   AB  0.00  PT   0.00                                AB  0.00  PT   0.00
 FMDL   - SEE LEG DETAIL                                          FMDL   - SEE LEG DETAIL
 24 61 DU                                                         24 61 DU
 25 61 DU                                                         25 61 DU
 26 61 DU                                                         26 61 DU
PP004        MIA    056488  CREWMEMBER PRE/POST ACTIVITY REPORT  MONTH STARTING 02JUN20 AND ENDING 01JUL20  PROCESS DATE   07/09/20
 27 61 DU                                                         27 61 DU
 28 61 DU                                                         28 61 DU
 29 61 DU                                                         29 61 DU
 30 61 DU                                                         30 61 DU
 01 61 DU             2359                                        01 61 DU             2359
END OF ACTIVITY                                                  END OF ACTIVITY
                                                                 END OF COMMENTS
```

**APPENDIX 242**

Begin forwarded message:

**From:** randy trautman ███████████████
**Date:** September 22, 2023 at 9:54:51 AM EDT
**To:** "Heidi J. Morgan" ████████████████
**Subject: Fwd: MIA Base Vice President**

Regards,

Randy Trautman

Begin forwarded message:

**From:** ███████████████████
**Date:** September 21, 2023 at 5:23:17 PM EDT
**To:** Randy Trautman ███████████████
**Cc:** Tracey Montanari ████████████████
**Subject: Re: MIA Base Vice President**

This was posted two days ago.

Someone is any being honest. Not certain it's Heidi or ████████████

On Thursday, September 21, 2023, ████████████
████████████████ wrote:

Randy~

Thank you for the reply.

A few points of clarification.

If Heidi (as she claims) did not give permission for her letter to be

**APPENDIX 243**

re-posted, I would expect that Heidi will be in touch with the administrators of the FB pages where her post is visible and request the post be removed with an accompanying statement that she did not give permission for it to be re-posted.

As far as the perception of accessing another FA's (Melissa Chinery) travel profile, what safe guards are in place to ensure this has not and will not occur in future?

Once again thank you for your time and attention to the matter.



On Thursday, September 21, 2023, Randy Trautman
██████████████████> wrote:

> I spoke with Heidi regarding the posts. She posted posted them 3.5 years ago when she was not in office. She told me that she did not give anyone permission to repost them this past week.

> I remember when this went out to the BOD several years back and there wasn't any discussion amongst the BOD after it was sent.

> Heidi knows I'm a strong advocate for Joe Burns as I have expressed this to her over the years. We are fortunate to have him lead the Team.

> Whoever reposted this clearly has a political agenda and I can assure you Heidi was not behind it. She knows we are at a critical phase in negotiations and how important it is for our members to remain unified.

> ███ please feel free to reach out to me if you have any further concerns.

Regards,

Randy Trautman
Base President
████████████

On Sep 21, 2023, at 1:27 PM, █████████
████████ @gmail.com> wrote:

Here's a series of screen shots. Keep in mind
(apparently) Heidi gave permission for her po
re-posted. Needless to say it's ended up on "C
Juice" as administered by Rock Solomon, "Le
AA FAs" as administered by Brian Hulbert w
refuses to allow former LUS FAs on the page
believe it's one of the LAX pages.

Heidi's words lend credibility to Brian Hulbert's
diatribe.

Clearly, Heidi didn't make all these posts. But what
Heidi did by giving permission for her words to go
public, contributes to the hysteria.

To be clear, my main concern is with confidentiality
and the clear perception of working against the best
interest of our membership.

I would appreciate it if you could get back with me
after speaking to Heidi. I do not want details about
your discussion. I seek reassurance this behavior will
cease. I hold the opinion that Heidi owes Joe Burns
and the Negotiators an apology. I'm not certain what
if anything can be done about her apparent breech in
confidentiality.

Thank you for your time Randy. I know all too well
how busy you and the rest of the BOD are these
days.

████

On Thursday, September 21, 2023, Randy Trautman
███████████████████ > wrote:

I'm unaware of any such posts or breaches of
confidentiality. Could you please send me a copy
of the posts you are referring to so I can review
them.

I can assure you I fully support this Negotiating
Team. I have nothing but admiration and respect
for both Julie and Joe, and all the hard work and

dedication the entire team has put in to achieve a contract that sets the standard for the industry.

I will address the issue with Heidi once I'm in receipt of the posts.

Regards,

Randy Trautman
Base President
█████████

On Sep 21, 2023, at 11:57 AM, ███████████ wrote:

Randy~

Hope this email finds you doing well.

As you know, I rarely reach out to you on Union issues. Thankfully, PHL has very good leadership and representation. You will see that Tracey Montanari is copied on this communication (as she is my Base President) and not the entire BOD. The goal is not to grandstand nor create a great debate among the members of the BOD.

It has come to the (public) attention that Heidi Morgan has engaged in what could be

considered a serious breech of confidentiality and trust in her role as an elected Union representative.

Additionally, in the last few days, Heidi gave her permission for another FA to post an outline of a conversation she had with the APFA National President, as well as a letter to the BOD which outlined her displeasure over using Joe Burns as our lead negotiator, among other concerns like the fallacy of AFA raiding APFA.

Randy, it is disgraceful for an elected union representative to assist management in discrediting the Union as well as our negotiations. As a former negotiator, you know first hand how much management depends on (potentially) subversive behavior of anyone within the Union, especially during mediated collective bargaining where the NMB is watching closely.

When a highly visible and very vocal Union representative goes public with their discontent over who's leading negotiations, management as well as the NMB question whether the Union truly is representing the will of the membership.

In her social media postings, Heidi admits her breech of confidentiality when she disclosed the details of a meeting regarding the possible representation of a FA (Melissa Chinery). Heidi provided details of their conversation on social media as well as providing her opinion on the character of the FA.

Randy, discussions with a FA related to possible representation is considered confidential.

As a MIA Base VP, Heidi speaks for you as well as APFA. Randy, please explain how a potential violation of Weingarten is considered acceptable. Is this Union weighing whether a FA who calls for representation; is a political adversary or someone who walks in lock step with their own personal political leanings in order to represent the FA's interests?

Additionally, please explain when it is acceptable for elected Union leaders to breech confidentiality, access another FA's travel records when the travel record is not the subject of possible discipline which results in a representational

meeting?

And finally, please outline the benefit and/or strategy of having an elected Union representative openly work against the membership at large when they attack the credibility of the lead Union's lead negotiator. The same lead negotiator you worked side by side during JCBA negotiations?

I am in possession of numerous screenshots which clearly shows Heidi Morgan's disregard for confidentiality as well as Union solidarity. Please advise if you are interested in reviewing the screenshots in question.

This email and any response will NOT be posted and/or shared on social media as it would be counter productive and serve no purpose other than to fan the flames that were set and torched by Heidi Morgan.

I look forward to your response.

In Solidarity,



<IMG_2614.jpeg>
<IMG_2615.jpeg>
<IMG_2613.jpeg>

<IMG_2617.jpeg>
<IMG_2618.jpeg>

**Top comments** ˅

▮▮▮▮▮▮▮

Ho▮ old is this post?

▮h   Like   Reply

▮▮▮▮▮▮

**Author**
▮▮▮▮▮▮ my post is 1d old.

7h   Like   Reply

**View 7 replies...**

Ⓩ   Write a reply...

▮▮▮▮▮▮▮

**Author**
The original poster does not have a problem with me reposting her old post.

1d   Like   Reply                          3 🔵

▮▮▮▮▮▮▮

▮▮▮▮ thank you. we gleaned some interesting little tidbits. By the way, the 2 outstanding charges that are referred to, are 2 Article VII charges, that the arbitrator foun▮ in our favor. So, not outstandi▮

Rules

**From:** Heidi Morgan
**Sent:** Friday, July 8, 2022 7:19 PM
**To:** Heidi J. Morgan
**Subject:** Fwd: Member Request to review Financial Information

Get Outlook for iOS

**From:** Erik Harris ███████████
**Sent:** Friday, July 8, 2022 3:53 PM
**To:** Heidi Morgan ███████████
**Subject:** Member Request to review Financial Information

Hi Heidi,

I am writing to give you a heads up that members Melissa Chinery and Sandra Lee have requested to review the following financial documents from 2012 to present. They are scheduled to view on August 22nd here at APFA Headquarters:

- Weeklies/Timesheets
- Monthlies/Expense Reports and Receipts

As always, please feel free to reach out to me should you have any questions or concerns.

Thanks,

Erik

--
**Erik Harris** *Pronouns*: he, him, his
National Treasurer
Association of Professional Flight Attendants
Office ███████████ Email ███████████
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| ROBERT "BOB" ROSS<br>Plaintiff/Counterclaim Defendant<br><br><br><br>ASSOCIATION OF<br>PROFESSIONAL FLIGHT<br>ATTENDANTS, MCGAUGHEY,<br>REBER AND ASSOCIATES,<br>INC., JULIE HEDRICK, ERIK<br>HARRIS<br>Defendants/Counterclaim Plaintiff. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:22-CV-00343-Y |
| EUGENIO VARGAS<br>Plaintiff/Counterclaim Defendant<br><br><br><br>ASSOCIATION OF<br>PROFESSIONAL FLIGHT<br>ATTENDANTS, JULIE HEDRICK,<br>ERIK HARRIS<br>Defendants/Counterclaim Plaintiff. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:22-CV-00430-Y |

## AFFIDAVIT OF NENA MARTIN IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

BEFORE ME, the undersigned authority, on this day personally appeared Nena Martin, who being by me first duly sworn, did state:

1.   "I am employed with American Airlines, Inc. working as a flight attendant. I served on the Board of Directors for the Association of Professional Flight Attendants ("APFA"), between April 2011 to January 2021. I served as the APFA National Vice President from 2016-2018, and the APFA National President from March 2, 2018 to July 1, 2018. I have been a member in good standing with the Association

**APPENDIX 252**

of Professional Flight Attendants ("APFA") since January, 1988. I am of sound mind and body to make this affidavit and have personal knowledge of the following facts:

a.  On October 12, 2022, I attended a union Disciplinary Arbitration for Article VII charges brought against me by APFA Member Melissa Chinery-Burns and APFA Member Sandra Lee, for violating APFA Policy based on making improper expenditures while in office as the APFA National Vice President. The result of this Disciplinary Arbitration hearing was a full dismissal of all charges brought against me.

b.  On August 9, 2023 I learned that the APFA Board of Directors had authorized an audit to be conducted of all of my expenditures while I held office as the APFA National Vice President under APFA National President Robert "Bob" Ross.

c.  On August 10, 2023 I had a telephone conversation with current APFA National Treasurer, Erik Harris to confirm the audit of my financial expenditures and it's authorization by the APFA Board of Directors.  He informed me that the Board of Directors directed this audit after a request made by two (2) APFA Members.

d.  I asked the APFA National Treasurer, Erik Harris, if the request for the audit was made by APFA Member Melissa Chinery-Burns and APFA Member Sandra Lee, and he confirmed yes.

e.  The audit request made by APFA Member Melissa Chinery-Burns and APFA Member Sandra Lee was for the expenditures of former APFA National Vice

President, Nena Martin and former APFA National Secretary, Marcy Dunaway, both officers of the Robert "Bob" Ross administration.

FURTHER AFFIANT SAYETH NOT.

**Nena Martin**

SWORN AND SUBSCRIBED TO before me on this 25th day of September, 2023.

MATTHEW KYLE HILL
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: July 23, 2027
19069056

Notary Public, State of Missouri

Melissa Chinery  9/15/2021

Page 251

```
 1            IN THE MATTER OF THE ARBITRATION BETWEEN

 2   MELISSA CHINERY, Member    )BEFORE THE ARTICLE VII
     And                       )
 3   SANDRA LEE, Member        )
                               )ARBITRATOR
 4   AND                       )
                               )
 5   EUGENIO VARGAS, Member    )HON. RUBEN R. ARMENDARIZ

 6

 7

 8

 9            ************************************

10                    SEPTEMBER 15, 2021

11                       VOLUME 2

12            ************************************

13

14

15

16           BE IT REMEMBERED that on the 15th day of

17   September, 2021, the above cause came on for hearing

18   before HON. RUBEN R. ARMENDARIZ at the WESTIN IRVING

19   CONVENTION CENTER AT LAS COLINAS, 400 West Las Colinas

20   Boulevard, located in the City of Irving, County of

21   Dallas, State of Texas, whereupon the following

22   proceedings were had.

23

24

25
```

Melissa Chinery   9/15/2021

Page 252

```
1                    A P P E A R A N C E S:

2        HON. RUBEN R. ARMENDARIZ
         LABOR MANAGEMENT ARBITRATOR
3        29010 Pfeiffers Gate
         Fair Oaks Ranch, Texas  78015
4        PHONE:  210.379.0860
         EMAIL:  arbruben@gmail.com
5

6        APPEARING AS THE ARBITRATOR

7

8        MS. MELISSA CHINERY
         EMAIL:  Melchinery@aol.com
              AND
9        MS. SANDRA LEE
         EMAIL:  SEL27995@gmail.com
10

11       APPEARING FOR THE CHARGING PARTIES

12       MS. HEIDI J. MORGAN
         EMAIL:  heidimorgan65@gmail.com
13            AND
         MS. NENA MARTIN
14
         APPEARING FOR THE CHARGED PARTY, EUGENIO VARGAS
15

16                        *   *   *   *

17

18

19

20

21

22

23

24

25
```

Melissa Chinery   9/15/2021

Page 253

```
 1                        WITNESS INDEX
 2
     ERIK HARRIS                                    PAGE
 3   Direct Examination (Cont'd) by Ms. Lee.......... 257
     Cross-Examination by Ms. Martin................. 276
 4   Redirect Examination by Ms. Chinery............. 351
     Recross-Examination by Ms. Morgan............... 373
 5   Further Redirect Examination by Ms. Lee......... 378
 6   SHANE STAPES
     Direct Examination by Ms. Morgan................ 383
 7   Cross-Examination by Ms. Chinery................ 392
 8   CHUCK RANSDALE
     Direct Examination by Ms. Morgan................ 394
 9   Cross-Examination by Ms. Chinery................ 401
     Redirect Examination by Ms. Morgan.............. 403
10
     CHRISTOPHER THEDFORD
11   Direct Examination by Ms. Chinery............... 404
     Cross-Examination by Ms. Morgan................. 413
12
     DEBBIE HOOVER
13   Direct Examination by Ms. Chinery............... 415
     Cross-Examination by Ms. Morgan................. 422
14
     JOSH BLACK
15   Direct Examination by Ms. Chinery............... 426
     Cross-Examination by Ms. Martin................. 430
16
     SANDRA LEE
17   Direct Examination by Ms. Chinery............... 434
     Cross-Examination by Ms. Morgan................. 444
18
     MELISSA CHINERY
19   Direct Examination by Ms. Lee................... 455
     Cross-Examination by Ms. Morgan................. 485
20   Redirect Examination by Ms. Lee................. 511
21
22
23
24
25
```

```
1       A.   Not that I recall, but I wasn't here for when
2   they instructed them to.
3       Q.   Okay.  Thank you.  Has Bob Ross paid back the
4   money?
5       A.   No.
6       Q.   How much does he still owe?
7       A.   About $5400.
8       Q.   Are we doing anything?
9       A.   It is --
10              MS. MORGAN:   Objection.  They're
11  discussing Bob Ross.
12              THE ARBITRATOR:   Yeah, we're -- we're
13  going to other areas.
14              MS. LEE:   It still concerns the
15  overpayment.
16              MS. MORGAN:   Object --
17              THE ARBITRATOR:   Just limit it to Mr.
18  Vargas.
19              MS. LEE:  Okay.  So just for
20  clarification, I cannot talk about Bob Ross at all?
21              THE ARBITRATOR:  Well, you can -- you can
22  raise some issues if --
23              MS. LEE:  Okay.
24              THE ARBITRATOR:  -- it's fit -- pertains
25  to this case, you know.
```

Melissa Chinery   9/15/2021

Page 311

1   that I receive, should there be any updates.

2            Thank you again for your patience and

3   understanding.  Thanks, Erik.

4       Q.   Okay.  So isn't it true that this email

5   confirms in a direct quote from you that there are

6   individuals, quote, there are individuals, who have

7   seen these documents in the recent past; however, they

8   have inexplicably disappeared from my custody, end

9   quote?

10       A.   Yes.

11       Q.   Okay.  So you personally have taken ownership

12   for this issue because you as the Treasurer take

13   responsibility?

14       A.   Yes.

15       Q.   Isn't it also true yesterday that you

16   testified some of these items were found?

17       A.   Yes.

18       Q.   And we have every confidence in your ability

19   to locate them and we know the stress that this

20   arbitration has placed on your department.

21       A.   Yes.  Thank you.

22       Q.   So let's go to August 4th, 2020, the date Ms.

23   Chinery and Ms. Lee were, by their own claim, given the

24   Ross Transition Agreement.

25       A.   Yes, or shown it.

Melissa Chinery   9/15/2021

Page 312

```
 1        Q.    Shown it.  Well, given to review --
 2        A.    Oh, I didn't give it.
 3        Q.    -- shown, given to review.  Who was in the
 4   room with them?
 5        A.    At the time it was Julie, myself, Margot.  I
 6   believe the other two Officers that were there, from
 7   what I recall.
 8        Q.    Who gave them the document?
 9        A.    I did, yeah.
10        Q.    Okay.  Did you see the document?
11        A.    Yes.
12        Q.    Where did you get the document?
13        A.    I received it from our attorney.
14        Q.    Which attorney?
15        A.    Bill Osborne.
16        Q.    He handed it to you?
17        A.    No, he emailed it to me.
18        Q.    Would you recognize it if you saw the
19   document?
20        A.    Yes.
21        Q.    Okay.  Would you turn to Exhibit 98?
22                  MS. CHINERY:   Do we have 98?
23                  MS. MORGAN:   It's been admitted 98.
24                  MS. LEE:   Do we have 98?
25                  MS. MORGAN:   Yes, we gave it to you
```

**APPENDIX 260**

Melissa Chinery   9/15/2021

Page 313

```
 1   yesterday.   It's the Ross -- the signed, executed Ross
 2   Transition Agreement --
 3                     MS. LEE:   (Unintelligible).
 4                     MS. MORGAN:   Are you looking at it?
 5                     THE WITNESS:   I looked through it.
 6                     MS. MORGAN:   You guys ready?
 7                     MS. CHINERY:   Yes.
 8        Q.   (BY MS. MORGAN)   Erik, is that the document
 9   you gave them?
10        A.   Yes, or showed them, yes.
11        Q.   Does it have a signature page?
12        A.   Yes.
13        Q.   Would you go back to the first page, Erik?
14   Would you read into the record item number four, which
15   is the economic terms of the Ross Transition Agreement?
16        A.   APFA agrees to pay Ross --
17                     THE REPORTER:   Read it slowly, please.
18                     THE WITNESS:   Sure.
19        A.   APFA agrees to pay Ross all of his accrued and
20   unused sick and accrued and unused vacation time --
21                     MS. CHINERY:   Objection.  We were not
22   allowed to talk about the Ross, and these -- this is
23   talking about Bob Ross.  There's a case for that.
24                     THE ARBITRATOR:   They're bringing it
25   into the record, so --
```