brought me and my family.  This has brought me financial harm and hurt my reputation, but most importantly it has hurt my wife and children, whom I wish to protect from it.

32.    MEDICAL COSTS: I am a disabled veteran and I am covered by the U.S. Veteran's Administration medical 100%, and the U.S. Veteran's Administration does not provide any estimation of the medical costs, however estimated medical costs are approximately **$62,772.44**.[1]

---

[1] Average costs of cardiac related Emergency Room Visits -
https://www.mdsave.com/procedures/cardiology-established-patient-office-visit/d78af4cd

**AFFIDAVIT OF ROBERT "BOB" ROSS – Page 10**

**APPENDIX 395**

FURTHER AFFIANT SAYETH NOT.

_____

Robert "Bob" Ross

SWORN AND SUBSCRIBED TO before me on this _25_ day of _APRIL_ 2024.

Lashondra Gant, NOTARY PUBLIC
STATE OF TX, COUNTY OF WILLAMSON

_____

Notary Public

This notarial act was an online notarization

**AFFIDAVIT OF ROBERT "BOB" ROSS – Page 11**

**APPENDIX 396**

# REPORT: "AFA-CWA Attempts to Merge/Raid APFA"

**From Information Presented by**

**AFA-CWA Leadership at the AFA-CWA 2015 43rd Annual Board of Directors Meeting**

**Submitted to The APFA Board of Directors, May 6-7, 2015**

By Tim Burns, Leslie Mayo and Julie Moyer

The following information was gathered at the 2015 AFA-CWA Board of Directors Meeting held in Las Vegas, Nevada during the week of April 26th, 2015. The theme of the AFA-CWA Annual BOD Meeting was *"Stronger Together, Better Together."*

At the invitation of AFA-CWA CAL MEC President Marcus Valentino, APFA representatives were guests to observe and speak informally with AFA-CWA leadership and members regarding AFA-CWA International leadership's plans to merge AFA-CWA and APFA. APFA National Communications Chair, former Base Vice Chair and former Division Representative Leslie Mayo, APFA Constitution Committee Member (1991) and former Board of Directors' member Tim Burns, and former Board of Director's member and former Division Representative Julie Moyer attended the AFA-CWA Convention on Tuesday, April 28th and Wednesday, April 29, 2015.

The purpose of attending the AFA-CWA Convention was to share information from the APFA perspective that no merger of APFA and AFA-CWA is in any stage of discussion. Our goal was also to dispel misinformation being delivered by AFA-CWA International leadership.

Written and verbal presentations from AFA-CWA International President Sara Nelson paint a picture that discussions are well underway to merge with APFA. The following excerpts highlight this position.

NOTE: Excerpts from printed material provided to AFA-CWA Convention attendees are included here. All materials obtained from the meeting were copied and distributed to the APFA Board of Directors and the APFA Executive Committee. They are available online at www.apfa.org.

**Organizing Report, Pg. 1 – "*US Airways/American Airlines Flight Attendants*" – Ex. 1.A.**

**"*Member Mobilization/Stage 2 Organizing*** *– There have been an astounding number of Flight Attendants from the "New American Airlines" wanting to return to AFA-CWA or become a part of AFA-CWA. As a member driven union who specializes in Flight Attendant issues, we are helping these Flight Attendants navigate the predicament they are currently dealing with. With the number of calls and the level of urgency expressed by these Flight Attendants, this work has been the top organizing priority in my first months of employment with several in-person meetings, conference calls and daily follow-up discussions with leaders. There is a core group of leaders actively calling for and working towards a merger of AFA and APFA. Our first step is to solidify our base of supporters/Members at US Airways. There has been noticeable progress reported with this grassroots campaign. Concurrently we are working with American Airlines Flight Attendants to build a mobilization structure of support for a merger of AFA and APFA."*

1

**APPENDIX 397**

**International President's Report/BOD Meeting booklet, Pg. 21 – *"US Airways Lifetime Members"* – Ex. 2.A.**

*"…Our union's 30-year position remains consistent: AFA-CWA and APFA should merge to unite Flight Attendants and build our power. We will continue to work with AFA-CWA Lifetime members to bring us together."*

**AFA-CWA International President's Report at BOD Meeting (Direct Quote)**
*"AFA promised US Airways Flight Attendants that we would continue efforts to a merger of the unions. And that's what we're doing. To date we have worked together on contract bargaining and it's time to move to a real discussion about how flight attendants can have power for our future…"*

Throughout the course of these two days, each of the three APFA representatives met AFA-CWA Master Executive Council (MEC), Local Executive Council (LEC), Council Reps and other AFA-CWA Members during breaks and free sessions. Individual accounts are below. All introductions and discussions were welcoming in nature and AFA-CWA representatives were kind and respectful. We were either introduced by an AFA-CWA rep or we introduced ourselves and stated we were APFA representatives along with our current or former titles. We stated we were present to answer any questions they had about APFA's intentions to merge with AFA-CWA. Each introduction included an inquiry about APFA's official involvement in discussions with AFA-CWA regarding a union merger. The AFA-CWA Reps were grateful to learn an accurate accounting from us that there are no current merger talks of any kind between AFA-CWA and APFA. Many of the AFA-CWA reps we met seemed to think that the info that had been provided by AFA-CWA was more of a specious nature rather than a realistic one.

We explained that APFA is well into our contract implementation, which is taking considerable energy and time. We have also just completed base elections. There is no plan to change our course as an independent union. Further note was made that even if APFA was to ever consider a move to Affiliate or Merge, the APFA Constitution clearly states that APFA would retain its autonomy. For the purposes of the APFA BOD, that language is reprinted here:

> **ARTICLE XII Affiliations, Mergers, Federations or Charters, Section 3.**
>
> *Any agreement to affiliate, merge, federate, issue a charter, or to represent another employee group shall protect and preserve the APFA's right to autonomy in all of its actions; and shall protect and preserve the collective bargaining relationship between American Airlines and the Flight Attendant employees of American Airlines represented by the APFA.*

At no time did the three of us receive any negative comments from those we met regarding APFA not being involved in merger discussions. The AFA-CWA Reps seemed glad to have accurate information regarding this matter. Some AFA-CWA Reps inquired whether there was interest from APFA to expand its membership since these reps expressed displeasure with AFA-CWA and the desire to exit AFA-CWA. Comments related to this included the unsuccessful attempts for a direct membership election of National Officers for at least the last 4 years, weighted voting, among others.

We were also able to observe how the AFA-CWA conducts its BOD meetings, learn of some internal AFA-CWA challenges to its operating budget, other airline organizing activity, etc.

Most importantly, we learned the details of AFA-CWA's dismal financial state. There can be no doubt that AFA-CWA's desire to raid our union and its budget deficit are inextricably linked. AFA-CWA is facing

**APPENDIX 398**

a $2 million shortfall and there is no viable plan to keep the union solvent. Under the AFA-CWA dues structure, APFA membership would be worth over $14 million annually.

# INDIVIDUAL REPORTS

**Leslie Mayo, National Communications Chair, Former Division Rep, Former Vice Chair – Individual Report**

I spoke with Laura on Sunday, April 26th following a conversation she'd had with Marcus Valentino. Marcus had informed her that "AFA/APFA Merger" had been an agenda item at the last few AFA-CWA meetings. He had also invited Laura to attend the AFA-CWA Board Meeting that week so other AFA-CWA reps could hear APFA's intentions directly. Laura's prior commitment to the prefunding arbitration of course made her unable to attend. Although I was planning on, and looking forward to, live Tweeting the arbitration, it was important to have someone at the AFA convention who could speak about our union, our constitution, and our Board. It was also important to send someone who knew the history of APFA and could relay the inner workings of our union and how it became what it is today.

TJ Bowlin (ORD FA, New Hire FACT Rep and experienced social media expert) agreed to go to Washington on my behalf. Julie Moyer and Tim Burns (who is also a former APFA Board member and a member of the original APFA Constitution Committee) agreed to join me in Las Vegas. Everything was set within 10 hours.

We met Marcus at 6:00 pm after his day of closed meetings. We got acquainted and discussed the convention agenda for the following day. He told us he was very happy to have us there and explained what to expect at the meeting and a little more about what had previously been said about AFA and APFA merging.

Tuesday the 28th was Day One of the AFA-CWA Board's open session meeting. We arrived prior to the 9:00 a.m. start time and Marcus met us in the lobby. He introduced us to Sean McNulty - LEC VP of Council 62 (CAL) and Denny Wheeling, President, Council 64 (CAL). Once inside, we were introduced to a table full of Continental FAs and reps. All were extremely welcoming and kind. Some of them gave up their seats around the table for us so we could sit together. That is where we spent the majority of our time both days.

The meeting began with AFA-CWA International President Sara Nelson welcoming the delegates and other attendees. I looked around the room and took notice of how different it was to APFA's Board Meeting set up. The International Officers and the parliamentarian sat alone on a riser with a podium in the middle and a table in the front of the ballroom. When the officers spoke, each of them would stand and address the room from the podium. The first several rows were classroom-style seating maybe 30 seats across. I'm not sure exactly who sat at these seats but I do know it included the MEC and LEC Presidents. Behind the rows of classroom tables and placed throughout the room were maybe 20 round tables seating 8 per table. Most of the tables had markers reflecting each of the 18 airlines represented by AFA-CWA. We were shown to the back left corner of the room where the Continental Airlines table was. The CAL table happened to be directly in front of the documents' display. Dozens of people came to the back of the room to pick up the different officer and committee reports that were made available. Julie, Tim and I browsed through the material as well and found some information we knew the APFA BOD would be interested in reading.

**APPENDIX 399**

During breaks and throughout the day, people came to the back of the room to meet and talk with the three of us. We met reps from Continental, United, Spirit, Alaska, Air Wisconsin, Horizon, Hawaiian and several others I can't recall. All of these people were incredibly nice and friendly.

I would say at least half the people I spoke with seemed surprised that we weren't in discussions to merge with AFA-CWA considering the subject had been referenced so often by International at previous meetings. I assured them that no discussions had taken place by our Officers, Board or our Executive Committee to merge with AFA-CWA nor were any discussions scheduled. We explained the process to form a merger according to our Constitution, and that one of the requirements is for APFA to remain autonomous. Others we spoke with were quite confident that we weren't considering merging. A few mentioned our treasury - they knew that we had managed members' dues wisely and they felt that was the reason we were being targeted by AFA-CWA International.

Some of those with whom we met asked if APFA would be willing to represent them. I told them we had our hands full right now with JCBA implementation, combining our workforce and IT problems that kept all of us very busy.

It was noticeable how greatly our meeting structure differs from AFA-CWA's. Also of note is that, despite the political tension between reps and officers, or among the reps, there was an incredible amount of order and respect for everyone. No one interrupted, no one raised their voice, and the meeting ran almost entirely on time according to the agenda. All of the committee and officer reports were available for convention attendees, and the resolutions were drafted well in advance of the meeting. Instead of a back and forth discussion about each resolution, committees were designated to discuss each resolution in a separate room, and afterward the committee would return with a recommendation. When an agenda item came up, the committee members stood in front of the room with one member presenting the committee's position. The entire committee was available to answer questions from the Board, if necessary. The Board could either take or leave the advice of the committee. When a vote was taken, unless it was unanimous, someone always requested a breakdown due to the fact that AFA-CWA's Board has a weighted vote. The International Treasurer would then call roll and each Board member would announce their Council and the number of "yes" and "no" votes. Sometimes a President's would announce a unanimous vote, other times the Base President reported very specific numbers of yes and no votes, which led me to believe that perhaps these items were voted on in advance either at council meetings or even by their entire local membership. I do not know for certain.

At one point, Joe Burns approached our table and asked why we were there and also when we planned to leave. We had a discussion about protocol and the fact that we hadn't been invited. I assured him that we had been invited - by the CAL MEC President. Following a back and forth, he eventually brought Julie and me name tags and a sheet to sign. Apparently, he didn't realize Tim was also with us.

One of the most telling moments for me was hearing Sara Nelson, AFA-CWA International President speak about APFA. She stated she promised the LUS Flight Attendants that she would make every effort to merge our two unions. After reading the AFA-CWA Convention Booklet entitled the "President's Report" and reading about the amount of credit Sara Nelson took for our JCBA and the entire bargaining process that led to our Contract, I was very surprised to read her rendition of the facts. I felt this was a huge misrepresentation of the facts. Her statement at the end of the last paragraph beneath "US Airways Lifetime Members" on page 21 cannot go unnoticed: **"Our union's 30-year position remains consistent: AFA and APFA should merge to unite Flight Attendants and build our power. We will continue to work with AFA Lifetime members to bring us together."**

**APPENDIX 400**

**Organizing Report, Pg. 1 – "*US Airways/American Airlines Flight Attendants*" – Ex. 1.A and Ex. 1.B.**
What struck me about the paragraph referencing US Airways/AA Flight Attendants was that they refer to their organizing efforts as in "Stage 2 Organizing."

Further down on page 1 of the same report, Spirit Airlines, who is currently represented by AFA-CWA is reviewed. This paragraph is significant because it references the fear of losing the Spirit Flight Attendants following two failed T/As and the need to *"dampen any action to decertify our Union."(emphasis added).*

No other union may submit cards in an effort to replace APFA prior to two years following certification. That two-year clock began on September 2, 2014. Since cards have a one-year "life," AFA-CWA can begin raiding APFA as early as September 3, 2015, for submission to the DOL on September 3, 2016.

**Merger Policy Committee Report, Pg. 3 – Appointment of the Merger Policy Committee" – Ex. 3.A.**
Another item of note was contained on Pg. 3 of the Merger Policy Committee Report:
*"The BOD directed that the Executive Board appoint the members of this committee, **ensuring that a cross section of our airlines is represented on this committee**. [emphasis added]*

*On its conference call of 19 June 2014, the Executive Board agreed unanimously on the following members, and that the International Secretary-Treasurer will be the International Officer that facilitates for the MPC:*

> *From Airlines with < 500 Members*
> *Jose Torres, CMI MEC Secretary-Treasurer*
> *Anita Jwanouskos, PED MEC President*
>
> *From Airlines with 501-300 Members*
> **Deborah Volpe, USA (formerly AMW MECP)** *(emphasis added)*
> *Tim Evenson, EDV LEC 48 President*
>
> *From Airlines with > 3,000 Members*
> *Laura Masserant, ALA LEC 19 President*
> *Denny Wheeling, CAL LEC 64 President*
> *Greg Davidowitch, UAL Member*
> *Nancy Frawley, UAL Retiree (Advisor)*

*The committee met via conference call on 12 occasions from September 2014 through March 2015, and minutes of all calls are available."*

**Resolution 18 regarding the Merger Policy Committee passed as amended.**

That night we attended a cocktail party sponsored by AFA-CWA's supplemental insurance company *National Group Protection*. We talked with several people there as well and after about an hour, I left to return to our hotel. Tim and Julie stayed behind.

The next morning we arrived just before 9:00 a.m. Larry Cohen, CWA President spoke first. We continued day two by meeting more representatives and had similar and productive discussions with other AFA-CWA reps. At approximately 11:30, when the meeting broke for lunch and committee, we departed for the airport.

**APPENDIX 401**

**Some observations about the meeting:**

- There has been a resolution put forth for the past several years providing for a direct election by the membership of all MEC and International Officers. This resolution was rejected as it has been each every year since it was put forward.
- Dues have just been raised to $50/month per member.
- Agenda Item 18 regarding the Merger Committee was approved.

**Julie Moyer – Former APFA Board Member, Former Division Representative - Individual Report**

Marcus told us that we were invited because our union has been an agenda item under the AFA-CWA Organizing report for the past four meetings. Later, some AFA-CWA participants told us they considered it odd that they were told this was a joint effort, yet APFA was never present nor were any details shared about which APFA reps were involved.

We met Marcus before the meeting started and were introduced to CAL Council 62 LEC VP, Sean McNulty. We proceeded to the meeting room and were introduced to other council reps and flight attendants and settled into the Continental Guest table. We entered through the main doors, and we did not pass a sign-in table, nor did I see one.

The agenda started with the President's remarks. After about 45 minutes Sara Nelson started to speak about the APFA/AFA-CWA merger. Since this was a report out, there were no questions posed to any of her items, but many of the things she said prompted a lot of questions for me. For instance:

1. **"There have been an astounding number of FAs from the New American" that want to return to AFA-CWA of become a part of AFA-CWA."** How are these people contacting AFA? Who are they contacting? What is considered "an astounding number?"
2. **"This work has been the top organizing priority in my first months of employment with several in-person meetings, conference calls, and daily follow-up discussions with leaders."** Since Sara Nelson took office in June 2014, when did this effort start? June 2014 was when we were in the throes of bargaining for our JCBA. Ballots were counted on November 9, 2014. Who were these meetings and conference calls with? Did this priority item start at the APFA/AFA-CWA Joint leadership summit in June?
3. **"There is a core group of leaders actively calling for and working toward a merger of AFA-CWA and APFA."** Again, who are these leaders?
4. **"There has been noticeable progress reported with this grassroots campaign. Concurrently, we are working with AA FAs to build a mobilization structure of support for a merger of AFA-CWA and APFA."** How is this grass roots movement being disseminated and who does it involve?

Next on the agenda was the Vice President's report, which was given by Debora Sutor, the text of which can be found in the booklet marked "International Vice President." What struck me about these presentations was the recurring theme: organizing and mobilizing. It is a huge part of their business, and is supported by phrases like, "We have the opportunity to grow our union and to bring us one step closer to our mission statement of uniting all professional Flight Attendants." Listening to Debora talk really brought home how dependent AFA-CWA is on continuing to acquire new dues paying members.

During the breaks, we talked to AFA-CWA representatives about the APFA/AFA-CWA merger agenda item. I said "As a member who sat on the BOD for the last four years, I can assure you that there have

**APPENDIX 402**

been no merger talks with the leadership of the APFA. If there have been talks, it is without the knowledge and approval of the APFA leadership. If it is without the APFA knowing, it cannot be called a "merger." I would have to characterize it as the preparations of a raid."

Some people understood the implications right away, and were incensed. "That s not what Unionism is about." "Unions work together; we don't steal each other's members."

A few others weren't sure what to make of the mischaracterization of non-existent merger talks between APFA and AFA-CWA. I made clear to them that what has been portrayed is not true and that we were here to set the record straight. I explained to them that "Further down the road, it is likely that you will be asked for your approval for money to go to this effort, and you should know that it if is not a merger, it is a raid. We are her to make sure you know that what you are authorizing when funds are allocated for this purpose. If only one side is working toward this goal, it is not a merger, it is a takeover."

Many thought we were there to support the "merger." We said clearly that we were not interested in a merger. Not only that, but our Constitution does not allow for a merger under these circumstances.

Some of the committees had finished their work and were ready to take their agenda items forward, so the next order of business was a resolution regarding the budget. In their structure, if you have a surplus in your budget at the end of the year, 50% goes to the International with 80% of that money going on to CWA. The other 50% comes back to you the following year. Some felt that all of the money should come back to the members to be used for local representation.

After the meeting ended, we attended a reception. We were invited to that as well and we continued our discussions about the "merger." I learned a lot about the AFA-CWA structure and the divides felt between the many factions. It was a fascinating learning experience.

When that ended, some of the individuals I was speaking with from the United AFA-HOU council invited me to join them at Sara Nelson's suite, since there was an open invitation to continue the festivities there.

As we were leaving the reception we passed Joe Burns on our way out the door.

We started talking and shortly into the conversation, he said to me, "You know there are a lot of BOD members telling us that there are a good number of APFA members who don't want to be APFA anymore and it's not just the LUS BOD members, either."

I said, "Who are they?"

He didn't mention anyone by name. He reminded me that my members voted me out of office.

I said, "Yes they did." At this point the people I was with said, we're going now... "I said to Joe, "Our members might be angry, but they don't want AFA." And we left.

The next morning the convention started with Larry Cohen, CWA President. He talked about his hopes that CAL and UAL were working closely to get a contract because no company can sustain the costs of running two separate operations for long, and having a healthy, profitable company is in everyone's best interest.

When that concluded, the committees once again broke off the work on their resolution recommendations, and the three of us left for the airport.

7

**APPENDIX 403**

In their 43rd Annual AA CWA BOD Meeting booklet, their agenda is clearly pointed out: on page 21, under the heading of **US Airways Lifetime Members** it talks about our JCBA. In the half-page description, not one bit of credit was given to APFA for any of the positive changes we achieved. All of the credit, 6 or 7 specific actions referenced, were attributed to AFA-CWA alone. It is summed up by the last 2 sentences:

> **Our Union's 30-year position remains consistent: AFA-CWA and APFA should merge to unite Flight Attendants and build our power. We will continue to work with AFA-CWA Lifetime members to bring us together.**

We had the opportunity to talk to many of our Union counterparts from many different airlines: United, Continental, Envoy, Alaska, Spirit, Hawaiian, Frontier, Mesa, and PSA among them, and share with them what is not happening between our unions. One thing I know for sure after witnessing it first hand, and having the opportunity to talk to AFA members: Financially, AFA-CWA is unsustainable, and when you try to represent everyone's interests, no one walks away feeling their interests are met.

**Tim Burns – Former Base President, Member of Original APFA Constitution Committee – Individual Report**

As an APFA Constitution Committee Member and former BOD Member, I attended the AFA-CWA BOD meeting to provide APFA Constitution-related info, and speak from a historical perspective. The three of us attending had a unity of purpose and message. We were able to speak candidly, and each AFA-CWA Rep I spoke with was friendly and helpful in answering questions I had regarding procedures of meetings and AFA-CWA structure.

I met several AFA-CWA Reps from various airlines including United, Continental, Hawaiian and Alaska, as well as several smaller regional carriers. Most of the conversations were short in length with the reps wanting to know if merger talks were active or not. There did not appear to be any strong desire from these reps to focus on forcing a merger (or raid) since there is plenty of business to attend to regarding representation at their respective airlines. A United LEC President with extensive union experience and seniority did engage me in longer conversations and expressed desire for another choice of representation. While unrest from segments can be found in any organization, I was aware there appears to be significant unrest at AFA-CWA.

It was a pleasure to meet so many fellow union activists interested in furthering the cause and representation of Flight Attendants. I also found this opportunity to be a fascinating experience to witness the structure, protocol and workings of the AFA-CWA BOD Meeting. During the discussions inside committee when APFA was restructuring the APFA, we had studied AFA so this was a great firsthand experience to see the structure in action. My opinion, after seeing a day and a half the AFA-CWA BOD Meeting, is that the APFA manages itself in a far more streamlined way but that is also due in part to a single carrier as compared to AFA-CWA, which represents 16 carriers.

**APPENDIX 404**

**CONCLUSION**

It is clear that AFA-CWA is planning a raid of our membership. The written material from AFA-CWA International President Sara Nelson makes clear that organizing APFA: "is the top priority in my first months of employment with several in-person meetings, conference calls and daily follow-up discussions with leaders." Sara does not say who those "leaders" are.

The AFA-CWA International President further states, "There is a core group of leaders actively calling for and working towards a merger of AFA-CWA and APFA. Our first step is to solidify our base of supporters/Members at US Airways."

While official AFA-CWA communications state they are planning to merge with APFA, the actions AFA-CWA leadership are taking constitute a raid. The threat of a raid to APFA is imminent. It is clear that Joe Burns has a role in this raid. The future of AFA-CWA depends on increasing its treasury. Having failed to organize Delta, AFA-CWA has set its sights on the APFA membership as its last chance to balance its budget.

The driving force behind the planned raid is the financial situation at AFA-CWA. They are struggling to address a more than $2 million budget deficit. For the last two years, AFA-CWA has been borrowing from their Reserve Fund to balance the budget. AFA-CWA **needs** the APFA membership in order to prosper. Without an infusion of a large number of new members, the financial pressure will increase at AFA-CWA and greatly impact how it can continue to represent and manage its business.

The APFA Constitution has clear language regarding sanctions for those within APFA that work toward the displacement of APFA.

Since 1977, APFA has been an independent union and a strong voice for the Flight Attendants at American Airlines. The union's dedicated leadership has been responsible stewards of members' dues dollars, effective contract negotiators and successful advocates for the Flight Attendant profession. The APFA BOD must consider what action to take to defend the Union from an AFA-CWA raid.

Respectfully submitted by:

**Tim Burns, Leslie Mayo, Julie Moyer**
**May 5, 2015**

**APPENDIX 405**

# APPENDICES

## APFA Constitution

**Article VII - Section 1. Grounds for Charges:**

*Any member is subject to fine, suspension or expulsion, or suspension from or removal from office, for any of the following acts:*

*B. Advocating, or working toward, the displacement of the APFA as bargaining representative (providing that advocating, or working toward an affiliation, merger or federation of the APFA pursuant to Article XII of this Constitution shall not be grounds for discipline);*

And further

**Article VII - Section 4. Suspension from Office:**

*If charges are filed against a national officer or elected representative based on Section 1, B, Section 1, C, or Section 1, E of this Article VII, the Board of Directors may determine at any time during the pendency of the charges that the alleged conduct giving rise to the charges threatens the APFA's vital interests. The Voting Board of Directors may then, by two-thirds (2/3) vote, suspend the accused's authority as national officer or elected representative until the threat is removed or the Article VII Arbitrator designated herein resolves the charges, whichever occurs sooner.*

## Other AFA-CWA BOD Meeting Observations

**AFA-CWA Collective Bargaining, Representation, and Other Airline Organizing Activity**

On page 14 of the **International President's Report**, AFA-CWA President states the following:

- **American Airlines**: *Reached a merged agreement in coordinated bargaining with the APFA. We took the lead in negotiations of this industry leading agreement which largely mirrors the Legacy US Airways Agreement; effective date 12/13/14.*

And on page 21 under **US Airways Lifetime Members**:

"*The joint agreement at American was voted down by 16 votes, but the agreement reached through our expedited bargaining was restored by Doug Parker following the 4 days of arbitration. Through joint collective bargaining with APFA, we were able to push management well above their planned increase to Flight Attendant costs. AFA-CWA staff attorney Joe Burns played the critical role in achieving the Tentative Agreement. The entire Negotiating Committee comprised of seven pre-merger American and seven pre-merger US Airways Flight Attendants worked as a cohesive tam throughout the negotiations. Thanks to AFA's push for including the US Airways contract and re-negotiating the Negotiations Process.*

*The entire process would not have been possible without AFA's insistence that the US Airways contract be included to leverage both a new negotiations protocol (previously 60 days only followed by binding arbitration, with no required dates at the table and no opening proposal provisions since the US Airways contract was not included) and a higher standard for all post-merger American Flight Attendants. We will were (sic) to achieve hundreds of millions of dollars more for all Flight Attendants at American and set a standard that will not undercut bargaining at United.*

*On September 2, 2014 the National Mediation Board certified APFA as the representative of all Flight Attendants at the New American. Dues were collected at the APFA rate and 100% of the dues collected was remitted to AFA-CWA*

**APPENDIX 406**

*to cover the costs of contract enforcement of the pre-merger US Airways contract through March 31, 2015. Former AFA-CWA Council Presidents are now APFA Base Presidents and serve on the APFA Board of Directors.*

*We applaud these leaders who are managing incredible change in a merger as well as change in their representation. Throughout all of it they also conducted a massive mobilization campaign to get every US Airways Flight Attendant signed up for dues check off and APFA membership. In just two months they were successful in signing up 90% of the Flight Attendants. Our union's 30-year position remains consistent: AFA-CWA and APFA should merge to unite Flight Attendants and build our power. We will continue to work with AFA-CWA Lifetime members to bring us together."*

The **President's Organizing Report** also mentions difficulties at Spirit Airlines.

*"**Spirit Airlines**: Member Mobilization-Following two failed TAs talk of a decertification campaign began to surface at Spirit. AFA-CWA leadership from Spirit Airlines recognized the need to internally organize members so as to dampen any action to decertify our Union. To this end, they've dedicated themselves to building a Member mobilization structure that will build the power necessary to negotiate a TA that the Members ratify. AFA-CWA Leaders from Spirit and AFA-CWA staff have worked together at Negotiations Training in January, Mobilization Training February and two Mobilization conference calls so far in March. There is a Local Mobilization Chair at each of the six bases. Half of those base chairs have second tier mobilizers working with them. They took their first action with a bag tag campaign launch on March 15th. The success of every action can be measure by the reaction from your action target. This action has initially been so successful that Spirit management reached out to AFA-CWA and requested a stop to the action. Of course we will not stop our action…but apparently this is the first time Spirit management has reacted to an AFA-CWA mobilization effort. This means we are doing something right. In preparation for the action, Local Chars had Mobilization parties, airport visibility and other face-to-face meeting with their Flying Partners on crew vans and layovers. All AFA-CWA staff ISRs and I are working together with all levels of Spirit's AFA-CWA leadership to ensure the success in this third negotiation process."*

Of Note: And while is it understandable the difficulties associated with losing members (US Airways), no mention is made in any report of the Flight Attendant union members from AirTran (formerly AFA) that merged with Southwest Airlines and any attempt to merge or affiliate with that union.

The status of negotiations at United is as follows:

*United: "Engaged in negotiations for the JCBA with Continental and Continental Micronesia, with a target date of July 23, 2015 to achieve a tentative agreement. Supporting United negotiations is critical for the future of our careers. Even though United, Continental and Continental Micronesia Flight Attendants all achieved new contracts with pay increases and other improvements in 2012, the merged contract negotiations which started in December 2012 still need to be concluded. United management is failing to run the operation and the management is stalling negotiations to try to get Flight Attendants to accept less. We can't let the bad management decisions succeed in attacking our careers as Flight Attendants. Stand with United Flight Attendants for the best possible merged contract!"*

According to the **President's Report**, Tentative Agreements Reached and Ratified were at 3 Airlines (Alaska, American, and Piedmont). Ongoing negotiations at 11 airlines (Endeavor, Envoy, Frontier, Hawaiian, Horizon, Mesa, Omni, Miami, Silver, Spirit, and United).

**AFA-CWA Pin**: There appears to be some discord as to the allowable AFA-CWA pin that members may wear. Two pages of the President's Report are dedicated to the history of and wearing of the AFA-CWA Pin. At question is whether it is allowable for AFA-CWA members on the Continental side to wear a modified version of the AFA-CWA Pin which is in wide circulation.

**AFA-CWA Merger Policy Report**: This report is a 29-page review of the AFA-CWA Constitution and Bylaws with an Executive Summary of the Merger Policy Committee Recommendations (as pertaining to seniority integration and other areas).

**APPENDIX 407**

Of note is that former US Airways/AFA-CWA member Deborah Volpe, USA (formerly AMW MECP) was or is still on this AFA-CWA Committee. Of further note is that on page 7 of said report, a reference is made to the process used for the AA/US Airways seniority integration: *"An example is the methodology used to integrate the seniority lists at US Airways and American Airlines. Due to prior mergers, specific training dates for all individuals was not available at American, so an average was calculated and applied to the entire AA group. This did not interfere with the established relative order, and was perceived by members as simple, equitable, and applied consistently."*

**AFA-CWA BOD Meeting Observations**

Delegates were seated at tables in a linear layout and spread across the length of the room about 4 rows deep. This does not give the opportunity for delegates to see one another. The International Officers are seated on a dais in the front and center of the room along with a Parliamentarian (who was called upon a few times to rule on an order of business). At all times the Delegates were respectful when speaking and addressing the body. Large Video Screens were on either side of the room to project the resolution being discussed or to show a video presentation.

Resolutions for the BOD to act on are all provided well in advance of the BOD Meeting so that all parties have sufficient time to review the proposal. Resolutions are also grouped by category and then given to various committees by subject matter (Finance, By Laws, etc.) for committee recommendation prior to a vote of the BOD. The supplying of all resolutions well in advance of the meeting, and the committee recommendations seemed to be an efficient way to conduct business. The committee would come forward and give their recommendation in favor or opposition to the resolution and then debate began. To speak to an issue, the delegates would proceed to one of two microphones on either side of the dais.

Voting is not one base/one vote. Votes are counted as to the number of Flight Attendants/members at each base. At the start of the BOD Meeting each delegate stands and states the Council (Base) they represent and how many votes are in that Council. Some Councils disputed the numbers. For resolutions we observed, most votes were counted with either a Yay or Nay or show of hands. Numbers were not counted when using this method. Numbers are only counted when a roll call is requested.

The roll call vote we witnessed was for a resolution regarding local base budgets. We took it to mean that approximately $9 of the $48 monthly dues is allocated to the local bases. At the end of the year, if there is a local budget surplus, the Base keeps 50% of the surplus and the remaining 50% goes to AFA-CWA International (of which 80% of that goes to CWA). The maker of the resolution proposed that 100% of any budget surplus remain at the local base. It was argued that this money could then be allocated to assist smaller bases in representation and training pay loss, for example. The finance committee had recommended a NO vote since AFA-CWA International needs the 50% surplus to help balance the budget. Apparently, once the money is allocated to the local, there is not a way to reclaim any monies (other than the current 50%) back to International. Ultimately, the motion for the Local to keep 100% of the money not spent in the budget failed.

12

**APPENDIX 408**

**Bob's Personal Anti-AFA statements**



April

RI



42 AM  Fri May 21

And the funny part I never wanted anything. However, the dismissive attitude and the cavalier behavior was completely disrespectful. I can only speak for myself when I say that I'm saddened to know you are not leader that I believed you to be. I will work tirelessly to make sure you are out of office.

Mellisa, you asked me to not contact you and you even said you look forward to a fight and would seek a lawyer. That's "mean" now I'm asking you the same.

And to think I had you pegged for the Government Affairs position even as recent as Thursday. I'm sorry you now feel that way. I wish you would have talked to me. Good bye Melissa.

I want nothing from this. Anything I ever get is earned not given.......

OK. I don't get it.  A guys backed up into a corner and any guys gonna come out swinging. Day 1. I certainly don't expect much. The guys being pulled in all directions.  I would want to be in his shoes right now.  I got a lot of respect for Bob and the position he willingly got him himself into.  The crap, the politics, the questions, the answers, the doubts.  So much has happened and is happening that he's got no control over.  I expected a chaotic transition.  This is crazy.  People want to fight him, challenge his leadership  and file lawsuits? He's not even in there yet.  It's only Day 1. Do we have short memories? Think back just a few months ago. I'm all in. I will continue to support Bob and fight for him any way I can.  I'm looking forward to the 'New APFA' under Bob's leadership.

Tony, you are a good man. I appreciate you taking up for your friend. This is not about Bob the President. This is about F⌄ efore that. I could care less who does what, when, and how..howeve., .emember to be kind,

  Aa



April 2, 2016

RI
PG2

 Wow! You have no idea what you're spouting Melissa. I've reached out to her and you. From you.... Crickets. You both had a place in my administration and until this week you still did. Here's my number it's still the same as I ever had. 916-284-2402. Shame on me?? Really? How I treated her???

Apr 2

 **Melissa Chinery**
Please never ever contact me again.
Shame on you
Shame on you 😞

Apr 2 · Sent from Messenger

 **Bob Ross**
You should get both side! Have it your way.

Apr 2

 **Melissa Chinery**
Bring it.....I look forward to the fight. NEVER CONTACT me again.....I have a good lawyer



## *Association of Professional Flight Attendants*

*Proudly Representing the **Flight Attendants** of American Airlines*

Office of the National President

October 13, 2016

Sara Nelson, President
Association of flight Attendants-CWA, AFL-CIO
501 3rd Street, NW, 10th Floor
Washington, D.C. 20001

Dear President Nelson:

The Association of Professional Flight Attendants (APFA), proudly representing more than 27,000 Flight Attendants at American Airlines, requests that you share this message with all of your great members at United Airlines. APFA stands with AFA against the raiding of your union by outsider groups. This is consistent with our staunch opposition to all raids.

APFA is proud to have worked collaboratively with AFA on many important initiatives, projects, legal matters and as joint members of the Coalition of Flight Attendant Unions. The Coalition and APFA have a long-standing opposition to union raiding. That position is based on the fact that raids do nothing to help union members or help expand the power of the labor movement. Instead, we all should be focused on organizing unorganized workers to improve their quality of work life and raise the standard of living for them and their families. By forcing unions to fight each other, raids weaken the entire labor movement.

Not long ago, in 2013, Coalition partners –  IAM, TWU, APFA and AFA-CWA – stood strong against inexcusable raids by proactively forbidding raiding unions from participating in the Coalition. Our union – as well as AFA-CWA –  rightfully supported this action as an important commitment to Flight Attendant solidarity and collegiality.

Let me cite the IAM open letter to your members sent in April of this year, which in part states, "Your solidarity and bargaining strength is being undermined by an attempt to lure your members away. When unionized workers sign an election authorization card to change unions, they play right into the company's divide and conquer strategy . . ."   We fully agree.

Sara Nelson, AFA President
October 13, 2016
Page 2


We urge your members to soundly reject any request to sign a card for any raiding union. AFA and the other member unions of the Coalition have long held to this honorable position and are committed to disavowing any and all forms of raiding, undermining and attacks. All of our members are best served through unity and solidarity.

I know that AFA-CWA and APFA will continue to stand shoulder-to-shoulder, along with our Sisters and Brothers at TWU and IAM, in vigorously opposing any kind of raid.

In Unity and Solidarity,


Bob Ross
APFA National President

Cc:   Sara Gonzales, IAM
      Thom McDaniel, TWU Int'l
      Audrey Stone, TWU Local 556

**APPENDIX 413**

| | |
|---|---|
| **From:** | 1rross@comcast.net |
| **To:** | Kerri Phillips |
| **Subject:** | FW: Your Support in Combating Union-Busting |
| **Date:** | Tuesday, December 5, 2023 10:31:10 AM |

**From:** Sara Nelson <snelson@afacwa.org>
**Sent:** Friday, September 23, 2016 11:20 AM
**To:** Bob Ross <president@apfa.org>
**Subject:** Fwd: Your Support in Combating Union-Busting

---------- Forwarded message ----------
From: **Sara Nelson** <snelson@afacwa.org>
Date: Mon, Jan 18, 2016 at 7:48 PM
Subject: Re: Your Support in Combating Union-Busting
To: Randy Trautman <prmia@apfa.org>
Cc: Nena Martin <prstl@apfa.org>, Amy Milenkovic <prbos@apfa.org>, Cathy Bossi <prclt@apfa.org>, Robert Valenta <prdca@apfa.org>, Dianne Britton <prdcau@apfa.org>, Ted Bedwell <prdfw@apfa.org>, John Nikides <prlax@apfa.org>, Ellen Eherts <prlga@apfa.org>, Susan Wroble <prord@apfa.org>, Kim Kaswinkel <prphl@apfa.org>, Joseph Seelye <prphx@apfa.org>, Fiona MacPherson-Bowers <prrdui@apfa.org>, David Adair <prsfo@apfa.org>, "M. Gluth" <mgluth@apfa.org>, Rick Knuth <vp@apfa.org>, Jeff Pharr <secretary@apfa.org>, Greg Gunter <treasurer@apfa.org>, Deb Sutor <dsutor@afacwa.org>, Kevin Creighan <kcreighan@afanet.org>

Randy and Nena,

You must misunderstand my email to you. This letter is not about merger discussions; it is a respectful attempt to thank you for support of United bargaining and to ensure rumor and speculation doesn't allow management to capitalize on pitting Flight Attendants against each other.

Happy MLK Day,
Sara

"…we must guard against being fooled by false slogans…its purpose is to destroy labor unions and the freedom of collective bargaining by which unions have improved wages and working conditions of everyone." MLK, 4/3/68

On Mon, Jan 18, 2016 at 7:30 PM, Randy Trautman <prmia@apfa.org> wrote:

> Not interested
>
> Regards,
>
> Randy Trautman

**APPENDIX 414**

MIA Base President



On Jan 18, 2016, at 7:30 PM, Nena Martin <prstl@apfa.org> wrote:

Not interested in any merger discussions.

**Nena Martin**
STL President

x

prstl@apfa.org

**From:** Sara Nelson [mailto:snelson@afacwa.org]
**Sent:** Monday, January 18, 2016 3:17 PM
**To:** Amy Milenkovic <prbos@apfa.org>; Cathy Bossi <prclt@apfa.org>; Robert Valenta <prdca@apfa.org>; Dianne Britton <prdcau@apfa.org>; Ted Bedwell <prdfw@apfa.org>; John Nikides <prlax@apfa.org>; Ellen Eherts <prlga@apfa.org>; Randy Trautman <prmia@apfa.org>; Susan Wroble <prord@apfa.org>; Kim Kaswinkel <prphl@apfa.org>; Joseph Seelye <prphx@apfa.org>; Fiona MacPherson-Bowers <prrdui@apfa.org>; David Adair <prsfo@apfa.org>; Nena Martin <prstl@apfa.org>; M. Gluth <mgluth@apfa.org>; Rick Knuth <vp@apfa.org>; Jeff Pharr <secretary@apfa.org>; Greg Gunter <treasurer@apfa.org>
**Cc:** Deb Sutor <dsutor@afacwa.org>; Kevin Creighan <kcreighan@afanet.org>
**Subject:** Your Support in Combating Union-Busting

Dear APFA Leaders:

Thank you for your resolution in support of United bargaining. Obviously, it benefits all Flight Attendants to improve a contract at any airline, but in this case we are linked in black and white by contract language that ensures an increase at United will also flow to an increase for Flight Attendants at American.

There is no doubt that the United/Continental/CMI merger has been rudderless with poor and corrupt management. Jeff Smisek demonstrated little regard for the operation, displayed no interest in completing the merger and in fact left in disgrace with corruption charges looming. During his tenure, Labor Relations at United attempted to capitalize on a division of Flight Attendant cultures that were deeply-seated from a representation election and worked directly with a former AFA officer who has resigned both his officer position and his membership from AFA as he faced charges for violation of our Constitution and the law. The good news is that the leadership is working together, the Joint Negotiating Committee is pressing forward with a single

position, and you should appreciate this from your own experience, Joe Burns is leading the negotiations. With the entrance of Oscar Munoz there is a new hope at United that the executive office is finally focused on the long-term success of the airline, not just the daily price of the share. As you know from your own history and years of negotiating with Horton for example, it is impossible to negotiate with a management that has no interest in an agreement either through willful denial or incompetence. Finally, it seems that with the promise of Munoz returning, the stage is set for bargaining to come to conclusion.

Make no mistake though, the Joint Negotiating Committee is intent on pushing our careers forward and producing a contract that will exceed the value of the one you are implementing today. And of course, this will not come easily or without a fight. So, at the same time there is a launch of a raid at United backed by the McCormick Group and attorney Lee Seham. This group is a well-known management firm that has specialized in union-busting in the airline industry. They have backed successful campaigns to oust ALPA, IAM and Teamsters. During the United bankruptcy, (typically they launch campaigns when workers are in a time of challenge and need solidarity even more than other times), this group backed a raid at AFA. This was in 2004 and their efforts were defeated. In fact, from among the Flight Attendants who sought change at that time we have several loyal leaders who have been elected to AFA office since then and serve today. Of course, we all recognize the difference between Flight Attendants who want change and opportunistic management attorneys who wish to profit from misinformation and redirect of anger toward the union that is taking on the ill-conceived action of management. That is the scheme, McCormick Group and Lee Seham get workers to pay for their services and then decertify the experienced union to replace the workers' voice with these union-busters. The union-busters reward themselves with a long-term paycheck as a portion of the union dues going forward.

Clearly, we must quickly and thoroughly inform members about who this group is and what they are attempting to do. Some may refer to them as 'independent' but I have directed everyone working on this to instead use other terms such as "start up" group. No one should be referring to them as a union - since we know a union is not an entity but rather the people who are a part of it. They are no union, independent or otherwise. I want to be sure you are all aware of what is happening and also that you are very clear that any communications we release are intended to defend AFA member rights and expose these union-busters. To be very clear and blunt, let no one be confused with this opportunistic Seham Group and the credible and established independent union made up of union Flight Attendants in APFA.

I am writing to you to ask for your support to defend our ability to fight for our fair share of the profits we help create at United, and by extension at American - and across the industry. I know you stand with us to combat union busting. We have much to accomplish together and there is much to build upon from our past work together.

Also - let there be no confusion: AFA has been on record for decades that we believe a merger of our unions would best support our members' goals. That is a discussion we can have, or not. But clearly it is not a result that can happen without consent, by leaders and members. Previously this position has been mischaracterized and I want to be sure there is no confusion.

Thank you for your solidarity. This communication is intended for discussion between us as leadership of our unions. Thank you for receiving it in that way. I look forward to the opportunity to continue work with you that benefits Flight Attendants.

**APPENDIX 416**

In Solidarity,
Sara

--
Sara Nelson
International President
Association of Flight Attendants-CWA, AFL-CIO

--
Sara Nelson
International President
Association of Flight Attendants-CWA, AFL-CIO

--
Sara Nelson
International President
Association of Flight Attendants-CWA, AFL-CIO



**ASSOCIATION OF FLIGHT ATTENDANTS-CWA,** AFL-CIO
*501 Third Street, NW, Washington, DC 20001-2797*

PHONE 202·434·1300     FAX 202·434·1319

January 30, 2017

Dear Flying Partner:

Thank you. We received your authorization card to the National Mediation Board requesting the opportunity to vote for AFA representation. This authorization card is valid for one year from the date you signed. AFA will keep your signature card confidential. While AFA is not running a card drive for a representation election at American, we are calling for a merger of AFA and APFA that would include membership engagement, discussion and approval. We ask you to join us in this effort.

Your desire to join with Flight Attendants throughout the industry is not only appreciated, we believe it is a recognition of what we must all do to defend and advance our careers. If you are not already signed up for our AFA communications, we will add you to our list so you can join in actions in support of our careers.

Management has consolidated their power and used mergers to divide workers. Together we can be smarter, building our power by joining forces. Preparations for the next negotiations at American are less than a year away. The time is now.

In our highly regulated jobs, we need the strongest voice possible in Washington, DC. We have the same issues: DenyNAI, No Calls on Planes, clean air to breathe and safe uniforms to wear. We need one strategy and one voice before lawmakers, regulators and international aviation bodies. We can pool our resources and achieve more results.

During the recent APFA/AA United contract wage arbitration, sworn testimony by AA management and email evidence revealed a coordinated effort between management, Laura Glading and the current APFA General Counsel to keep AFA off the property at American. Secret deals and promises were made to Wall Street that Flight Attendant costs would not increase. At the wage arbitration, AFA was proud to stand with APFA to fight to win this arbitration but it was clear that not being in one Union fundamentally weakens all Flight Attendants. Never again. We cannot allow management to ever again play us against each other.

If all of the discussion about "market rate" contracts, made mainstream by Doug Parker, doesn't teach us that our futures as Flight Attendants are inextricably linked, I don't know what will. APFA is full of Flight Attendant members who are proud of standing up for our jobs, proud of shocking the world with the power of solidarity in an historic strike, and Flight Attendants who demonstrated resolve to rebuild, despite our grief after 9/11. The same description rings true for the members of AFA. We have so much more in common than that which could ever divide us. Nothing divides us if we decide to take on corporate greed together.

We need to think about the possibilities here. Join forces and strategy to push our careers forward. As one union, negotiate "industry-leading" contracts one after another.

Do not make this discussion about either/or. We encourage you to resist every urge to discredit APFA because even those who disagree with their union must first be thankful to have the right to disagree. Without our Flight Attendant union none of us would be here to have this discussion. This is about building upon our history and taking on the challenges and opportunities of today.

Let's build each other up. Wear your AFA pin as a symbol of standing together with Flight Attendants across the industry. You have the right to wear your union pin. If management directs you to remove it because the company is again trying to interfere with your representation, simply comply and then write a report to AFA Legal at legal@afacwa.org. Share the extra pins with your flying partners who also want to encourage a real and immediate discussion about merging our unions to build our collective power as aviation's first responders.

In Solidarity,

Sara Nelson, International President

INFLIGHT SAFETY PROFESSIONALS

ITF⊕ INTERNATIONAL TRANSPORT WORKERS' FEDERATION

**APPENDIX 418**



*Association of Professional Flight Attendants*

*Proudly Representing the **Flight Attendants** of American Airlines*

Office of the National President

October 12, 2016

Sara Nelson, President
Association of flight Attendants-CWA, AFL-CIO
501 3rd Street, NW, 10th Floor
Washington, D.C. 20001

Dear President Nelson:

The Association of Professional Flight Attendants (APFA), proudly representing more than 27,000 Flight Attendants at American Airlines, requests that you share this message with all of your great members at United Airlines. APFA stands with AFA against the raiding of your union by outsider groups. This is consistent with our staunch opposition to all raids.

APFA is proud to have worked collaboratively with AFA on many important initiatives, projects, legal matters and as joint members of the Coalition of Flight Attendant Unions. The Coalition and APFA have a long-standing opposition to union raiding. That position is based on the fact that raids do nothing to help union members or help expand the power of the labor movement. Instead, we all should be focused on organizing unorganized workers to improve their quality of work life and raise the standard of living for them and their families. By forcing unions to fight each other, raids weaken the entire labor movement.

Not long ago, in 2013, Coalition partners –  IAM, TWU, APFA and AFA-CWA – stood strong against inexcusable raids by proactively forbidding raiding unions from participating in the Coalition. Our union – as well as AFA-CWA – rightfully supported this action as an important commitment to Flight Attendant solidarity and collegiality.

Let me cite the IAM open letter to your members sent in April of this year, which in part states, "Your solidarity and bargaining strength is being undermined by an attempt to lure your members away. When unionized workers sign an election authorization card to change unions, they play right into the company's divide and conquer strategy . . ." We fully agree.

We urge your members to soundly reject any request to sign a card for any raiding union.  AFA and the other member unions of the Coalition have long held to this honorable position and are committed to disavowing any and all forms of raiding, undermining and attacks. All of our members are best served through unity and solidarity.

I know that AFA-CWA and APFA will continue to stand shoulder-to-shoulder, along with our Sisters and Brothers at TWU and IAM, in vigorously opposing any kind of raid.

In Unity and Solidarity,

Bob Ross
APFA National President



**Association of Professional Flight Attendants**

*Proudly Representing the **Flight Attendants** of American Airlines*

Office of the National President

October 13, 2016

Sara Nelson, President
Association of flight Attendants-CWA, AFL-CIO
501 3rd Street, NW, 10th Floor
Washington, D.C. 20001

Dear President Nelson:

The Association of Professional Flight Attendants (APFA), proudly representing more than 27,000 Flight Attendants at American Airlines, requests that you share this message with all of your great members at United Airlines. APFA stands with AFA against the raiding of your union by outsider groups. This is consistent with our staunch opposition to all raids.

APFA is proud to have worked collaboratively with AFA on many important initiatives, projects, legal matters and as joint members of the Coalition of Flight Attendant Unions. The Coalition and APFA have a long-standing opposition to union raiding. That position is based on the fact that raids do nothing to help union members or help expand the power of the labor movement. Instead, we all should be focused on organizing unorganized workers to improve their quality of work life and raise the standard of living for them and their families. By forcing unions to fight each other, raids weaken the entire labor movement.

Not long ago, in 2013, Coalition partners –  IAM, TWU, APFA and AFA-CWA – stood strong against inexcusable raids by proactively forbidding raiding unions from participating in the Coalition. Our union – as well as AFA-CWA – rightfully supported this action as an important commitment to Flight Attendant solidarity and collegiality.

Let me cite the IAM open letter to your members sent in April of this year, which in part states, "Your solidarity and bargaining strength is being undermined by an attempt to lure your members away. When unionized workers sign an election authorization card to change unions, they play right into the company's divide and conquer strategy . . ."  We fully agree.

*1004 West Euless Blvd. ● Euless, Texas  76040*

**APPENDIX 420**

Sara Nelson, AFA President
October 13, 2016
Page 2


We urge your members to soundly reject any request to sign a card for any raiding union.  AFA and the other member unions of the Coalition have long held to this honorable position and are committed to disavowing any and all forms of raiding, undermining and attacks. All of our members are best served through unity and solidarity.

I know that AFA-CWA and APFA will continue to stand shoulder-to-shoulder, along with our Sisters and Brothers at TWU and IAM, in vigorously opposing any kind of raid.

In Unity and Solidarity,


Bob Ross
APFA National President

Cc:    Sara Gonzales, IAM
       Thom McDaniel, TWU Int'l
       Audrey Stone, TWU Local 556

**APPENDIX 421**

Resolution of the Coalition of Flight Attendant Unions of September 28, 2016

The Coalition shall continue to communicate the Coalition's longstanding position against union raiding as supported by the IAM, TWU, AFA-CWA and APFA as recently as July 15, 2013. The Coalition's long held position is that raids do nothing to help union members nor help expand the power of the labor movement. The labor movement should be focused on organizing unorganized workers to improve their quality of work life and standard of living for them and their families. By forcing unions to fight each other, raids weaken the entire labor movement. Raiding unions cannot participate in the Coalition meetings and activities.

Moved by Todd Gage, TWU 556

Seconded by Bob Ross , APFA

Carried unanimously

**APPENDIX 422**

July 4, 2017

Sara Nelson, President
Association of Flight Attendants
1275 K Street NW 5th Floor
Washington, D.C. 20006

Dear Sara:

As AFA's President, you have sent many messages, both publicly and through AFA's mobilization efforts to get the public and APFA members to rally behind your effort to get APFA to affiliate with AFA. Despite your attempt to characterize AFA's conduct as a friendly overture rather than a hostile raid, you did not even have the courtesy to send the message to any of the APFA National Officers or Board of Directors.

You have, however, gone to the extent of sending AFA letters, Bag Tags and AFA pins to APFA members, as well as forcefully stating at the recent Coalition of Labor Unions meeting on May 11, 2017 "APFA stole 6000 of our AFA members and we are not going to stop until we have every one of them back".

You have also requested that APFA, along with our legal advisors, schedule a meeting with AFA, however you have refused our premeeting requirement to sign a no-raid agreement and also agree that any meeting between us would not include a discussion about a possible merger between AFA and APFA.

As APFA's National Officers, we once again wish to make it absolutely clear to you and any other AFA leaders who may support you in this matter that APFA is not interested in a discussing any affiliation with AFA. Moreover, any AFA effort to infiltrate the APFA Board of Directors will not work.

It is APFA's firm belief that a union's efforts to organize is best utilized in organizing "unorganized" workers. Therefore, we not only ask, but we demand that you leave APFA and it's membership alone, and direct your energies and resources elsewhere.

On behalf of the APFA and the more than 26,000 Flight Attendants we represent,


Bob Ross                           Nena Martin
President                          Vice-President



Marcy Dunaway                      Eugenio Vargus
Secretary                          Treasurer

**APPENDIX 423**

| | |
|---|---|
| **From:** | 1Rross <1rross@comcast.net> |
| **Sent:** | Monday, August 3, 2020 10:30 PM |
| **To:** | Julie Hedrick |
| **Cc:** | rross7@comcast.net; Officers; Bill Osborne; Margot Nikitas |
| **Subject:** | Re: Transition Agreement |

Julie and All,
So what exactly does this mean and exactly which "Union Member" are you referring to? And a better question to answer is, exactly why is this a necessity at this time? Was there a "Transition Agreement" with Laura Glading and is it's terms now open to membership view?

Regards,


Bob Ross
(

On Aug 3, 2020, at 2:17 PM, Julie Hedrick <jhedrick@apfa.org> wrote:

> Bob,
>
> We have determined that the terms of your transition agreement should not have been subject to an NDA requirement and that both the APFA Constitution and the Landrum Griffin Act require its disclosure to Union members.  We based this determination on the advice of our newly-retained legal counsel Bill Osborne who specializes on internal union issues.  He can be reached at b.osborne@osbornelaw.com or 202-243-3200 office/202-251-7920 cell.  We are going to provide access to the transition agreement to a Union member tomorrow and wanted to give you notice.  If you have any questions, please let us know or feel to contact Mr. Osborne directly.
>
> In Solidarity,
>
> Julie Hedrick
>
> Cc: Margot Nikitas, APFA General Counsel
> Osborne Law Offices, P.C.

**APPENDIX 424**

**Association of Professional
Flight Attendants**

Representing the Flight Attendants of American Airlines

---

November 24, 2020

**Via Email and Return Receipt Certified Mail #7019 1120 0000 0179 3144**

Mr. Bob Ross

███████████████████

**RE:    Overpayment of Wages**

Dear Mr. Ross:

I am sending this letter to follow-up on our telephone conversation on November 10, 2020. During our call, we discussed the finding of the APFA Board of Directors that you were overpaid in the amount of $5,436.47 in 2018. The Board's finding was based on the results of a review from an independent accounting firm which determined that the formula used to determine the daily rate for your sick and vacation payout was incorrect. (See Schedule C, enclosed).

On or before January 1, 2021, please remit payment (via check, money order, cashier's check, or credit card) to APFA in full or contact me to discuss payment arrangements.

Please contact me at ████████ or eharris(████████ with any questions or concerns. Thank you for your prompt cooperation.

Sincerely,

Erik Harris
National Treasurer

Enclosure

CC:    APFA Board of Directors
       APFA Executive Committee
       Margot Nikitas, General Counsel

www.apfa.org **APPENDIX 425**

| A |
|---|

**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | | |
|---|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | | |
| | Purser Pay | 7.50 | | | |
| | International pay | 3.75 | | | |
| | | 71.38 | 116 hours | 8,280.08 | |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | | |
| | Purser Pay | 7.50 | | | |
| | International pay | 3.75 | | | |
| | | 72.58 | 116 hours | 8,419.28 | |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | | | | |
|---|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | | |
| | Purser Pay | 7.50 | | | |
| | International pay | 3.75 | | | |
| | | 76.21 | 116 hours | 8,840.36 | |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | | | | |
|---|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | | |
| | Purser Pay | 7.50 | | | |
| | International pay | 3.75 | | | |
| | | 77.51 | 116 hours | 8,991.16 | |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% Increase)
**** Pay rates effective 1/1/18 - 7/31/18

**APPENDIX 426**

| National Officer: | Bob Ross | | | | | |
|---|---|---|---|---|---|---|
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | |
| Profit Sharing - 2016 | | | | | 2,652.22 | (paid 3/10/17) |
| Vacation Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 14 | 3,875.20 | (paid 3/31/17) |
| Sick Pay - 2017 | | | | | | |
| | | $ 101,031.36 | 276.80 | 12 | 3,321.60 | (paid 3/31/17) |
| Retro - Wage Arbitration Award 1.6% | | | | | 918.72 | (paid 6/1/17) |
| Triple Play Grand Slam | | | | | 300.00 | (paid 7/6/17) |
| Grand slam | | | | | 150.00 | (paid 1/25/18) |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | |
| 2071 Profit Sharing | | | | | 2,458.19 | (paid 3/9/18) |
| Vacation & Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 968.76 | (paid 3/29/2018) |
| Vacation Pay - 2017 (remaining unused days per agreement) | | | | | | |
| | | $ 114,632.67 | 314.06 | 17 | 5,339.02 | (paid 3/29/2018) |
| Vacation Pay - 2018 (remaining unused days per agreement) | | | | | | |
| | | $ 122,121.70 | 334.58 | 29 | 9,702.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $4,851.41 each) | | | | |
| Sick Pay - 2018 | | | | | | |
| | | $ 122,121.69 | 334.58 | 12 | 4,014.96 | (paid 3/29/2018) |
| End of Term Payout - 2017 (January 1 - December 31, 2017) | | | | | | |
| | | $ 118,046.02 | 334.58 | 35 | 11,710.30 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | |
| End of Term Payout - 2018 (January 1 - July 31, 2018) | | | | | | |
| | | $ 118,046.02 | 334.58 | 20.44 | 6,838.82 | (paid 3/29/2018) |
| | | (Paid in two checks in the amount of $3,419.41 each) | | | | |
| Profit sharing 2018 | | | | | 1,403.99 | (paid 3/8/19) |

**APPENDIX 427**

| National Officer: | Bob Ross | | | | Overpayment Calculation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Annual | Daily amount | Eligible | | | | |
| | | | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2017** | | | | | | | | | | |
| | Original amount | | $ | 101,031.36 | 276.80 | 14 | $ | 3,875.20 | OK (paid 3/31/17) | |
| | | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | | |
| **Sick Pay - 2017** | | | | | | | | | | |
| | Original amount | | $ | 101,031.36 | 276.80 | 12 | $ | 3,321.60 | OK (paid 3/31/17) | |
| | | | | | | Overpayment | $ | - | $ | - |
| | | | | | | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | | | Overpayment | $ | 968.76 | $ | 968.76 |
| | | | | | | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 114,632.67 | 314.06 | 17 | $ | 5,339.02 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 101,031.36 | 276.80 | 17 | $ | 4,705.60 | | |
| | | | | | | Overpayment | $ | 633.42 | $ | 633.42 |
| | | | | | | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 122,121.70 | 334.58 | 29 | $ | 9,702.82 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 29 | $ | 8,572.40 | | |
| | | | | | | Overpayment | $ | 1,130.42 | $ | 1,130.42 |
| | | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 122,121.69 | 334.58 | 12 | $ | 4,014.96 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 12 | $ | 3,547.20 | | |
| | | | | | | Overpayment | $ | 467.76 | $ | 467.76 |
| | | | | | | | | | | |
| **End of term payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | | |
| | Original amount - paid in error (a) | | $ | 118,046.02 | 334.58 | 35 | $ | 11,710.30 | (paid 3/29/2018) | |
| | Correct calculation amount | | $ | 107,893.92 | 295.60 | 35 | $ | 10,346.00 | | |
| | | | | | | Overpayment | $ | 1,364.30 | $ | 1,364.30 |

**APPENDIX 428**

| End of term payout - 2018 (January 1 - July 31, 2018) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 | | | |
| | | | | Overpayment | $ 796.75 | $ 796.75 | | |
| | | | | | | | | |
| | | | | Overpayment subtotal | | $ 5,361.41 | ** | |
| | | | | | | | | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | (based on 1.4%) | |
| | | | | | | | | |
| | | Total overpayment - due to APFA | | | | $ 5,436.47 | | |
| | | | | | | | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | |
| | | | | | | | | |

**APPENDIX 429**

**1rross@comcast.net**

| | |
|---|---|
| **From:** | National Secretary <secretary@apfa.org> |
| **Sent:** | Monday, June 14, 2021 12:25 PM |
| **To:** | 1rross@comcast.net |
| **Subject:** | Re: Subpoena Request and Updated Witness List to Arbitrator |

Sent on

# Josh Black
National Secretary
**Association of Professional Flight Attendants**
Office 817.540.0108x 8309 | Email secretary@apfa.org
The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.



**From:** 1rross@comcast.net <1rross@comcast.net>
**Date:** Sunday, June 13, 2021 at 11:49 PM
**To:** National Secretary <secretary@apfa.org>
**Subject:** RE: Subpoena Request and Updated Witness List to Arbitrator

Josh,
Please forward the below message on to Arbitrator Armendariz.
Subpoena Request and Final Witness List 06/12/21 with alterations.

Thank you,
Bob Ross
████████

Dear Honorable Ruben Armendariz,

June 12, 2021

Article VII Chinery/Lee vs Ross

RE: Additional Documents and Revised Witness List

Events and circumstances since my last Witness list submission have created conflicts and/or travel for witnesses. Per the APFA Policy 17.G.2 Please accept my additions/deletions to my Witness List as of 06/12/21. My apologies for any late submissions.

Please add the following to my Witness List – (as of 6/12/21)

**APPENDIX 430**

Robert Ross
Daniel Koukes

<u>Please Delete the following from my Witness List – (as of 6/12/21)</u>

Gina Guidry                          Shari Sivret
Marcy Dunaway                    Rick McCarroll

<u>The Accused intends to call the following Witnesses:</u>

Casey Veloso                        Anne Marie Plevritis – Former APFA Hotel Coordinator
Tony Theirault                      Eugenio Vargus – Former APFA Treasure
Steve Watson APFA AdHoc     Nena Martin – Former APFA Vice President
Patt Bruns                           Robert Valenta – Former APFA Board of Director
Kit Gomez                           Craig Gunter – Former APFA Treasure
Kim Ross                            Susan Baldridge

<u>Subpoena requests for the additional Witnesses:</u>

Kit Gomez-Alba – Member
Maureen Walsh-Martin – Former APFA Board of Director

*This e-mail, including attachments, is intended for the exclusive use of the addressee. If you are not the intended recipient, any dissemination, use, distribution or copying is prohibited.*

*This e-mail, including attachments, is intended for the exclusive use of the addressee. If you are not the intended recipient, any dissemination, use, distribution or copying is prohibited.*

**From:** National Secretary <secretary@apfa.org>
**Sent:** Friday, June 11, 2021 5:46 PM
**To:** 1rross@comcast.net
**Subject:** Re: Subpoena Request to Arbitrator

Sent on

# Josh Black
National Secretary
Association of Professional Flight Attendants
Office 817.540.0108x 8309 | Email secretary@apfa.org
*The content of this email is intended solely for the recipient(s)*
*It is not to be shared, forwarded or posted without the author's written consent.*

**APPENDIX 431**



**From:** 1rross@comcast.net <1rross@comcast.net>
**Date:** Friday, June 11, 2021 at 4:45 PM
**To:** National Secretary <secretary@apfa.org>
**Subject:** Subpoena Request to Arbitrator

Josh,
Could you please forward this subpoena request to Arbitrator Armendariz.
This is a duplicate to the subpoena sent on 05/22/21 for Walsh-Martin which was not returned.

Thanks Josh – I know this has created a lot of additional workload on everyone.

Bob Ross
████████████

3

**APPENDIX 432**



U.S. POSTAGE PAID
FCM LETTER
HURST, TX
76054
FEB 07, 22
AMOUNT
$0.00
R2303S102430-07

1000          95762

CERTIFIED MAIL

7016 2710 0000 5439 1455

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert (Bob) Ross
4101 Haylof Court
El Dorado, CA 95162

9590 9402 5161 9122 4535 64

2. Article Number (Transfer from service label)
7016 2710 0000 5439 1455

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:         □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**Judge William P. "Bill" Brandt**
TARRANT COUNTY
JUSTICE OF THE PEACE, PCT. #3

RETURN RECEIPT REQUESTED

**\*\*FIRST ALIAS CIVIL CITATION\*\***
[ORIGINAL-RETURN TO COURT]
THE STATE OF TEXAS

TO:    ROBERT (BOB) ROSS
       4701 HAYLOFT COURT
       EL DORADO CA  95762

      DEFENDANT, GREETING:

      YOU ARE HEREBY COMMANDED TO APPEAR BY FILING A WRITTEN ANSWER TO THE PLAINTIFF'S PETITION BEFORE THE JUSTICE COURT, PRECINCT THREE AT 645 GRAPEVINE HWY., STE #220, HURST, TX 76054, SAID PLAINTIFF BEING

Diversified Credit Systems                                          PLAINTIFF

     AND SAID:

ROBERT (BOB) ROSS                                                   DEFENDANT

FILED JANUARY 14, 2022, FILE NO. JP03-22-DC00017757 SUED UPON: SEE PETITION ATTACHED, PLUS COURT COSTS.

       PLAINTIFF RESERVES THE RIGHT TO PLEAD FURTHER ORALLY AT TIME OF TRIAL
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**NOTICE TO DEFENDANT**

"YOU HAVE BEEN SUED.  YOU MAY EMPLOY AN ATTORNEY TO HELP YOU IN DEFENDING AGAINST THIS LAWSUIT. BUT YOU ARE NOT REQUIRED TO EMPLOY AN ATTORNEY.  YOU OR YOUR ATTORNEY MUST FILE AN ANSWER WITH THE COURT.  YOUR ANSWER IS DUE BY THE END OF THE 14TH DAY AFTER THE DAY YOU WERE SERVED THESE PAPERS. IF THE 14TH DAY IS A SATURDAY, SUNDAY, COUNTY HOLIDAY, OR ON A DAY THAT THE COURT CLOSES BEFORE 5:00 P.M. YOUR ANSWER IS DUE ON THE NEXT BUSINESS DAY.  DO NOT IGNORE THESE PAPERS.  IF YOU DO NOT FILE AN ANSWER BY THE DUE DATE, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU.  FOR FURTHER INFORMATION, CONSULT PART V OF THE TEXAS RULES OF CIVIL PROCEDURE, WHICH IS AVAILABLE ONLINE AND ALSO AT THE COURT LISTED ON THIS CITATION."  UPON TIMELY REQUEST, NO LATER THAN 14 DAYS BEFORE THE DAY SET FOR TRIAL, AND PAYMENT OF A $22.00 JURY FEE, THIS CASE WILL BE HEARD BY A JURY."
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

      THE OFFICER EXECUTING THIS WRIT SHALL PROMPTLY SERVE THE SAME ACCORDING TO REQUIREMENTS OF LAW, AND THE MANDATES HEREOF, AND MAKE DUE RETURN AS THE LAW DIRECTS.

      GIVEN UNDER MY HAND THIS 28TH DAY OF JANUARY, 2022.

                      WILLIAM P. "BILL" BRANDT
                      JUSTICE OF THE PEACE, PRECINCT THREE
                      TARRANT COUNTY, TEXAS

                      By: /S/
                      CLERK OF THE JUSTICE COURT

ORIGINAL-RETURN TO COURT

**APPENDIX 434**

FILED
1/21/2022 10:59 AM
Justice of the Peace, Precinct 3
Tarrant County

# Michael R. Rake

Attorney at Law

January 21, 2022

Clerk-Civil Division
Justice of the Peace Court
Precinct 3-Southlake
1400 Main Street, STE 220
Southlake, TX 76092

Via: E-file

Re:     Cause No. JP03-22-dC00017757
        Diversified Credit Systems . . . Vs. Robert (Bob) Ross

Dear Clerk:

Please issue citation for Robert (Bob) Ross, to be served by Certified mail from the Court to **4701 Hayloft Court, El Dorado, Hills, CA 95762**, or wherever he may be found.

Please let me know when the citation is sent and the Certified mail number, so I may check on the status through the post office.

If you have any questions, please do not hesitate to contact me by any means set forth on my information below.

Sincerely yours,

*Michael R. Rake*

Michael R. Rake
Attorney at Law
Cc: Client

P. O. Box 1556 - Lake Dallas, Texas 75065  -  940.498.2103 (office and fax)
E-mail: mrake1@mrakeattorney.com

**APPENDIX 435**