IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STACY K. MARTIN, et al.,                §
                                        §
                    Plaintiffs,         §
                                        §   Civil Action No. 3:14-CV-0500-D
VS.                                     §
                                        §
LOCAL 556, TRANSPORTATION               §
WORKERS UNION OF AMERICA,               §
AFL-CIO,                                §
                                        §
                    Defendant.          §

MEMORANDUM OPINION
AND ORDER

In this labor dispute arising from disciplinary actions taken against officers of a union

local, the court must decide whether it has subject matter jurisdiction over one claim and

whether plaintiffs have stated a claim on which relief can be granted.  For the reasons that

follow, the court grants defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1), grants

in part and denies in part defendant's motion to dismiss under Rule 12(b)(6), and grants

plaintiffs leave to amend as to all claims that are curable by amendment.

I

This is an action by plaintiffs Stacy K. Martin ("Martin"), Chris Click ("Click"), and

Jerry Lindemann ("Lindemann") against defendant Local 556, Transportation Workers

Union of America, AFL-CIO ("TWU Local"), seeking relief under the Norris LaGuardia Act,

29 U.S.C. §§ 101-15 ("NLA"), the Labor Management Relations Act of 1947, 29 U.S.C.

§§ 141-97 ("LMRA"), and the Labor-Management Reporting and Disclosure Act of 1959,

**APPENDIX 900**

29 U.S.C. §§ 401-531 ("LMRDA"). Plaintiffs are flight attendants employed by Southwest Airlines. They are also members of TWU Local, the local of the labor union that represents Southwest Airlines' flight attendants.[1] Each plaintiff ran for and was elected to a union local office in 2012. Martin was elected President, Click First Vice President, and Lindemann Treasurer.

Following the elections, the President of the international union ("TWU International") requested that the TWU Local Executive Board grant leave to Thom McDaniel ("McDaniel"), the Immediate Past President of the TWU Local, so that he could accept a position with TWU International. McDaniel allegedly opposed plaintiffs during the 2012 elections. Plaintiffs contend that, as union President, Martin opposed TWU International's request because TWU International did not follow proper protocol in submitting it. The Executive Board denied the request. TWU International's President then

---

[1]In deciding TWU Local's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).

-

allegedly threatened to charge Martin with violations of union rules if he continued to oppose the request. Ultimately, the dispute was submitted to arbitration, and the arbitrator ruled in McDaniel's favor.

In the spring of 2013, a member of the TWU Local Executive Board charged Click and Lindemann jointly with violations of union rules, and another member[2] separately charged Click with other union rules violations. Click's individual trial was scheduled for May 14, 2013, and Click and Lindemann's joint trial was scheduled for May 15, 2013. On May 13 the Executive Board attempted to delay the trial dates to May 22 and May 23, 2013, respectively, by insisting that Martin reschedule the trials. Martin allegedly refused to assist the Executive Board in its attempt to delay the trials on the basis that doing so would constitute a violation of union rules. Click and Lindemann attended their trials on May 14 and 15, 2013 and were acquitted of all charges. On May 16, 2013 Lindemann went on formally approved, extended medical leave. On the same day, the Executive Board notified Click and Lindemann that it was nullifying the results of the May 14 and 15 trials and scheduling their retrials for May 23 and 24, 2013, respectively. On May 23 a retrial committee found Click guilty and removed him from office. On May 24 a retrial committee found Click and Lindemann guilty, removed them from office, and banned them from holding union office for three years. Plaintiffs allege that neither Click nor Lindemann was present for the retrials on May 23 and 24. On May 16, 2013 the Executive Board also

---

[2]Plaintiffs' amended complaint does not specify whether this person was a member of the Executive Board or a member of the union. *See* Am. Compl. ¶ 20.

charged Martin with violating union rules. The Executive Board conducted Martin's trial on May 29 and 30, found him guilty, removed him from office, and banned him from holding union office for three years.

Plaintiffs then brought the instant lawsuit against TWU Local, alleging that it had violated their rights under the LMRDA. TWU Local filed a motion to dismiss and an amended motion to dismiss. Plaintiffs then filed an amended complaint, and TWU Local filed the instant motion to dismiss the amended complaint. In its present motion, TWU Local incorporates by reference the arguments and authorities asserted in its first motion to dismiss.[3] TWU Local moves to dismiss count II of plaintiffs' amended complaint under Rule 12(b)(1) for failure to establish federal question jurisdiction, and to dismiss count I under Rule 12(b)(6) for failure to plead a plausible claim for relief under the LMRDA.

II

The court considers first TWU Local's Rule 12(b)(1) motion to dismiss.[4]

---

[3]TWU Local's first motion to dismiss predates plaintiffs' amended complaint. "The court may nevertheless treat defendant's motion as directed to the amended complaint because the defects in plaintiff[s'] complaint reappear in the amended complaint." *Moore v. Dall. Indep. Sch. Dist.*, 557 F.Supp.2d 755, 760 (N.D. Tex. 2008) (Fitzwater, C.J.) (internal quotation marks and brackets omitted), *aff'd*, 370 Fed. Appx. 455 (5th Cir. 2010). Because TWU Local asserts that the amended complaint is subject to dismissal on the same grounds as is the complaint, and the parties have fully briefed the sufficiency of the amended complaint, the court will consider TWU Local's arguments in its first motion to dismiss in assessing whether the amended complaint is subject to dismissal under Rules 12(b)(1) and 12(b)(6).

[4]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

**APPENDIX 903**

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

B

Plaintiffs predicate subject matter jurisdiction over count II on the jurisdictional grant found in 29 U.S.C. § 185(a) of the LMRA,[5] which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Section 185(a) imposes a jurisdictional requirement. *See, e.g., Tex. Indus., Inc. v. Radcliff*

_____

merits.").

[5]Plaintiffs cite identical provisions of the NLA and LMRDA in counts I and II as the basis for their claims. *Compare* Am. Compl. ¶ 71, *with* ¶ 83 (citing 29 U.S.C. §§ 102, 401, 411, 412, 413, 431, 481, 482, 501, 529, and 530). The primary difference between each count is that, in count I, plaintiffs seek relief for "violation of the LM[RD]A," Am. Compl. at 10 (bold font and upper case text omitted), while in count II, they seek relief for "breach of the TWU [International] Constitution & violation of the LM[RD]A," *id.* (bold font and some upper case text omitted).

- 5 -

*Materials, Inc.*, 451 U.S. 630, 642-43 (1981) ("In this vein, this Court has read § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), . . . as granting jurisdiction over defined areas of labor law[.]"); *Hou. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indust. & Serv. Workers Int'l Union*, ___ F.3d ___, 2014 WL 4197057, at *3 (5th Cir. Aug. 25, 2014) ("We have in the past read section 301(a) as a jurisdictional requirement."). "[A]n allegation of a labor contract violation is both necessary *and* sufficient to support subject-matter jurisdiction under section 301(a). If the court later finds the allegedly violated contract to be non-existent or invalid, it must dismiss for failure to state a claim, not for lack of jurisdiction." *Hou. Ref. L.P.*, 2014 WL 4197057, at *5 (footnote omitted); *see also id.* at *6 ("[T]he alleged violation of a labor contract is both necessary and sufficient to invoke federal subject-matter jurisdiction under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).").

The amended complaint does not allege that count II pertains to a violation of a contract between an employer and a labor organization or between labor organizations. The only conceivable contract mentioned in count II is the TWU International Constitution. *See* Am. Compl. ¶¶ 73-76. But the amended complaint does not allege that the TWU International Constitution is a contract between an employer and a labor organization or between labor organizations. Plaintiffs allege that the TWU International Constitution "is a contract between [TWU] Local and its members." *Id.* at ¶ 76. They assert that the TWU Local Executive Board violated its duties and responsibilities under the TWU International Constitution. *Id.* at ¶¶ 77-80.

- 6 -

Accordingly, because an allegation of a labor contract violation is necessary to support subject matter jurisdiction under § 301(a), 29 U.S.C. § 185(a), and plaintiffs have not alleged such a violation, the court grants TWU Local's motion to dismiss count II of the amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

### III

TWU Local moves under Rule 12(b)(6) to dismiss count I of plaintiffs' amended complaint.

### A

In deciding defendant's Rule 12(b)(6) motion, the court evaluates the sufficiency of plaintiffs' amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendant's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a

- 7 -

**APPENDIX 906**

right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

"The Labor-Management Reporting and Disclosure Act of 1959 was the product of congressional concern with widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435 (1982). Although the LMRDA as originally enacted focused on disclosure requirements and regulating union elections, over time various amendments have shifted the focus toward "protection for members of unions paralleling certain rights guaranteed by the Federal Constitution[.]" *Id.* In count I of the amended complaint, plaintiffs allege violations of the LMRDA, citing sections that deal with a host of topics, including reporting and disclosure requirements, the bill of rights for members of labor organizations, and provisions governing criminal violations of the Act. Plaintiffs request

- 8 -

**APPENDIX 907**

relief under § 102 of the NLA and §§ 401, 411, 412, 413, 431, 481, 482, 501, 529, and 530 of the LMRDA.

IV

A

Count I must be dismissed to the extent based on § 102 of the NLA and §§ 401, 413, and 530 of the LMRDA because these provisions do not expressly authorize a private cause of action.  Section 102 is an introductory provision of the NLA that merely sets out the public policy underlying the Act.  29 U.S.C. § 102 ("It is necessary that [the individual unorganized worker] have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment").  Similarly, § 401 of the LMRDA declares the public policy that underlies the LMRDA.  29 U.S.C. § 401 (declaring that LRMDA is intended to protect members of labor unions from various "improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies" of the LMRA and the Railway Labor Act).

Section 413 of the LMRDA provides that nothing in §§ 411-15 should be interpreted to limit the rights and remedies that members of labor organizations have under other provisions of state or federal law, or under the constitution and bylaws of their respective labor organizations.  *See* 29 U.S.C. § 413.  It does not create a private right of action.

Section 530 is a statute that imposes criminal penalties on labor organizations that use "force or violence, or threat of the use of force or violence, to restrain, coerce, or

- 9 -

**APPENDIX 908**

intimidate . . . any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled" under the LMRDA. 29 U.S.C. § 530. Section 530 does not create a private cause of action. The Supreme Court "rarely implie[s] a private right of action under a criminal statute[,]" and where the Court has, "'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). Section 530 does not contain any language suggesting that Congress intended to authorize a private cause of action. Thus plaintiffs do not plausibly state a claim for relief under § 530.

B

Count I must be dismissed to the extent based on §§ 431 and 501 of the LMRDA because, although these sections do confer a private cause of action, plaintiffs have not pleaded *any* factual allegations to state a claim for relief under either section. Section 431 pertains to certain disclosure and reporting requirements. *See* 29 U.S.C. § 431. For example, it provides that every labor organization must submit to the Secretary of Labor certain reports about the organization and annual reports that detail the organization's use of funds. *See id.* (a)-(b). Section 431 also requires that labor organizations make the information in these reports available to its members. *See id.* § 431(c). But plaintiffs have neither pleaded any factual allegations that mention the reports covered by § 431 nor alleged any failure by TWU Local to fulfill its duties related to these reports.

Section 501 imposes fiduciary obligations primarily of a pecuniary nature on the

- 10 -

representatives of labor organizations.  *See* 29 U.S.C. § 501; *see also Hoffman v. Kramer*, 362 F.3d 308, 316 n.3 (5th Cir. 2004) ("[T]he fiduciary obligations imposed are primarily pecuniary in nature—that is, having to do with the custody, control, and use of a union's money and its financial interests or property[.]").  Section 501(b) authorizes union members to bring a derivative suit on the union's behalf for a representative's violation of the duties prescribed by § 501.  *See id.* § 501(b).  But plaintiffs fail to plead *any* factual allegations relating to the fiduciary duties imposed in § 501, and they have therefore failed to state a plausible claim for relief on this basis.

C

Sections 481 and 482 of the LMRDA provide the exclusive remedy for challenging a union election that has already been conducted.  *See* 29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.").  Section 481 provides, in relevant part:

> [i]f the Secretary [of Labor], upon application of any member of a local labor organization, finds after [a] hearing . . . that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot.

Under § 482, except in two instances, only the Secretary of Labor can bring an action for a violation of § 481.  *See* 29 U.S.C. § 482(a)-(b); *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964) (noting that Congress "decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of [§ 481]").  A union member can bring a civil action

- 11 -

**APPENDIX 910**

in the following circumstances: (1) against the Secretary of Labor to review the Secretary's decision not to file an action under § 482, *see Dunlop v. Bachowski*, 421 U.S. 560, 574-75 (1975), *overruled on other grounds*, 467 U.S. 526 (1984); and (2) to enforce "a candidate's right to distribution of campaign literature and equal access to membership lists." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 540 n.15 (1984). Plaintiffs have not pleaded any factual allegations that enable the court to draw the reasonable inference that they are seeking relief under either of these exceptions. Accordingly, plaintiffs have failed to state a claim on which relief can be granted under §§ 481 and 482.

V

Plaintiffs also allege that TWU Local violated §§ 411, 412, and 529 of the LMRDA.

A

Section 411 of the LMRDA sets out the core of the guarantees afforded to members of labor organizations by the LMRDA. It constitutes a "bill of rights," and it is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Local No. 82*, 467 U.S. at 536-37. The LMRDA provides two provisions that enable a union member to enforce the member's rights under this "bill of rights:" §§ 412 and 529.

Section 412 grants union members a private cause of action for a union's infringement of the rights secured by §§ 411-15. To state a claim under § 412, plaintiffs must show (1) that they are members of a labor organization and (2) that the organization infringed a

- 12 -

right secured by § 411, 412, 413, 414, or 415.  *See Martinez v. Am. Fed'n of Gov't Emps.*, 980 F.2d 1039, 1041-42 (5th Cir. 1993).  "Union leaders, *per se*, are not themselves a protected class under [the LMRDA], except that they, too, may not be deprived of the basic rights attending on union membership." *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1156 (5th Cir. 1984) ("*Adams-Lundy I*").  Thus it is generally insufficient for a plaintiff to plead a plausible claim under § 412 if the plaintiff only alleges the infringement of a right that he or she only has in the capacity of a union officer.  *See id.*

There is an exception to this general rule.  If plaintiffs can show that their removal from office "was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members," they can state a claim for relief as officers under § 412.  *See Adams-Lundy I*, 731 F.2d at 1159.  To state a claim under this exception, plaintiffs must show "that the defendants are attempting to dismantle the union's electoral system, . . . or that members opposing that faction are . . . suppressed or threatened with reprisals."  *Id.*  Allegations that merely suggest that an internal union struggle is "anti-democratic" are insufficient to plausibly allege the existence of a pattern of intimidation and stifled dissent.  *Id.*

Section 529 provides members a private cause of action when their union fines, suspends, expels, "or otherwise discipline[s]" them for exercising any right to which they are entitled under the LMRDA.  "The primary difference between § [529] and § [412] is that § [529] protects against retaliation for the exercise of any right secured under the LMRDA, whereas § [412] only protects rights secured under [§§ 411-15]." *United Steel Workers Local*

**APPENDIX 912**

*12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1115 (9th Cir. 2013) (citing *Finnegan*, 456 U.S. at 439 n.10).  Depending on the right the member seeks to protect, §§ 412 and 529 can be entirely duplicative.  *See id.* at 1115 n.4 (citing *Finnegan*, 456 U.S. at 439 n.10).  To state a claim under § 529, plaintiffs must show that (1) they are members of a labor organization; (2) the organization fined, suspended, expelled, or otherwise disciplined them; and (3) the organization imposed the punishment in retaliation for their exercise of a right protected by the LMRDA.  *See* 29 U.S.C. § 529.  As under § 412, to state a claim under § 529, plaintiffs must allege that any punishment or restriction imposed by TWU Local was a limitation or restriction on their membership rights.  Removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529.  *See Finnegan*, 456 U.S. at 438 n.9 (dictum) (explaining that discipline referred to in §§ 411(a)(5) and 529 means limitations on membership rights, not removal from union office); *Adams-Lundy I*, 731 F.2d at 1157 (dictum) (citing *Finnegan* for proposition that "§ [411(a)(5)] and § [529] protect only the rights of membership per se, and that a union officer who is removed from office but not deprived of membership in the union has suffered no loss cognizable as 'discipline' proscribed by these sections of the Act").

## B

The court considers first plaintiffs' allegations under § 411.  They assert that TWU Local violated the LMRDA by infringing on their right to free speech.

APPENDIX 913

Section 411(a)(2) of the LMRDA provides, in pertinent part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings[.]

"Where the injury allegedly suffered by union officers is done to them in their status as officers, not as individual members, there can be no cause of action under section[] 411[.]" *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 792 F.2d 1368, 1372 (5th Cir. 1986) ("*Adams-Lundy II*"). The court must therefore decide whether plaintiffs have pleaded sufficient facts to permit the court to draw the reasonable inference that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers*, or that plaintiffs' dismissal was part of a pattern of intimidation and stifled dissent.

The amended complaint does not plead factual content that would permit the court to draw the reasonable inference that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers*. Plaintiffs allege that the charges leveled against Click and Lindemann were based on their "actions regarding information they provided the Local 556 membership at membership meetings in 2013[.]" Am. Compl. ¶ 19. Plaintiffs assert that the charges leveled against Martin were based on "various conduct including making presentations to the members on issues surrounding Local 556, allegedly making false representations to the membership, and for standing in opposition to the Local 556 Executive Board." *Id.* ¶ 37. The only reasonable inference the court can draw from

- 15 -

**APPENDIX 914**

these allegations is that plaintiffs engaged in this conduct in their capacities as officers.  With respect to the additional, internal charges leveled against Click that are "related to a rally that occurred [in March 2013] to protest the TSA's knives on planes decision[,]" *id.* ¶ 20, plaintiffs have failed to allege facts from which the court can reasonably infer that the charges were based on Click's speech as opposed to his conduct.

The amended complaint also fails to plead factual content that permits the court to draw the reasonable inference that plaintiffs' dismissal was part of a pattern of intimidation and stifled dissent.  Plaintiffs allege that their opponents "infiltrated" the Executive Board and "usurped" their offices.  Am. Compl. ¶¶ 47 & 62.  These allegations clearly express plaintiffs' concern that the Executive Board's actions were undemocratic, but that alone is insufficient.  *See Adams-Lundy I*, 731 F.2d at 1159 (holding that plaintiffs' allegations that defendants' conduct was anti-democratic were insufficient to show infringement of basic rights of membership).  Plaintiffs have not plausibly alleged that TWU Local is "attempting to dismantle the union's electoral system," or "that members opposing [plaintiffs' opponents] are in any fashion suppressed or threatened with reprisals."  *Id.*  Absent any further aggravating allegations, plaintiffs' allegations are insufficient to state a claim for relief under § 411(a)(2).

C

Plaintiffs also allege that TWU Local violated the LMRDA by giving Click only a week to prepare for the second trials against him.  Section 411(a)(5)(B) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise

- 16 -

disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been . . . (B) given a reasonable time to prepare his defense[.]" "[D]iscipline," as used in § 411(a)(5), refers to "punitive actions diminishing membership rights." *Finnegan*, 456 U.S. at 438.  Plaintiffs allege that TWU Local disciplined them both by removing them from union office and banning them from holding any union office for three years.  Removal from an elected office is not a form of "discipline" actionable under § 411(a)(5).  *See Adams-Lundy I*, 731 F.2d at 1156-57 (holding that an elected union officer's removal from office does not constitute "infringement" of the rights secured by § 411).  Although the Fifth Circuit has not specifically held that being banned from holding union office is a form of discipline, it has stated in *dicta* that the right to run for office is a membership right.  *See id.* at 1156.  The court will therefore assume that a ban against running for union office is a form of discipline that is actionable under § 411(a)(5).  It will consider whether plaintiffs have plausibly alleged that TWU Local violated Click's rights under § 411(a)(5)(B) by banning him from running for union office without providing him a reasonable time to prepare his defense.

Section 411(a)(5)(B) does not specify the amount of time that is necessary to comply with the "adequate time" requirement.  Courts generally decide whether a requirement such as this has been satisfied "with due regard to the practicalities and peculiarities of the case." *See, e.g., Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.* 455 F.2d 101, 108 (7th Cir. 1972) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950)).  The LMRDA gives plaintiffs the right to present evidence and to cross-

- 17 -

**APPENDIX 916**

examine witnesses, *see, e.g., Holschen v. Int'l Union of Painters*, 598 F.3d 454, 463-64 (8th Cir. 2010), but it does not guarantee "the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence." *Frye v. United Steelworkers*, 767 F.2d 1216, 1224 (7th Cir. 1985); *see also Conway v. Int'l Ass'n of Heat & Frost Insulators*, 209 F.Supp.2d 731, 751 (N.D. Ohio 2002) (holding that LMRDA did not guarantee discovery), *aff'd*, 93 Fed. Appx. 780 (6th Cir. 2004).

The amended complaint does not plead sufficient facts to enable the court to draw the reasonable inference that TWU Local failed to give Click a reasonable time to prepare his defense. Plaintiffs aver that Click was notified of at least some of the charges against him in March 2013, that Click's trial dates were set in April 2013, and that his initial trials were conducted on May 14 and 15, 2013. Plaintiffs maintain that the Executive Board notified Click on May 16 that it was nullifying the results of the initial trials and scheduling retrial for May 24.[6] Plaintiffs do not plead any factual allegations suggesting that the May 14 and 15 trials differed substantially from the May 23 and 24 retrials. Assuming that Click did not learn about all of the charges against him until the trial dates were set in April 2013, Click had 14 and 15 days, respectively, to prepare for his first trials, and six and seven days more,

---

[6]Without explanation, plaintiffs later aver that the retrial committee conducted an individual hearing against Click on May 23. Plaintiffs do not contend that the Executive Board failed to notify Click of the May 23 retrial. Thus there is no basis for the court to reasonably draw any inference other than that the Executive Board notified Click of the May 23 proceeding at least several days before the hearing was conducted.

**APPENDIX 917**

respectively, to hone his defense in light of what he learned about TWU Local's case at his first trials. This is well within the range that courts have considered reasonable under § 411(a)(5)(B). *See Wellman v. Int'l Union of Operating Eng'rs*, 812 F.2d 1204, 1206 (9th Cir. 1987) (28 days); *Falcone v. Dantinne*, 288 F. Supp. 719, 727 (E.D. Pa. 1968) (23 days), *rev'd on other grounds*, 420 F.2d 1157 (3d Cir. 1969); *Vars v. Int'l Bhd. of Boilermakers*, 215 F. Supp. 943, 947 (D. Conn. 1963) (14 days), *aff'd*, 320 F.2d 576 (2d Cir. 1963). Thus plaintiffs have failed to state a plausible claim for relief under § 411(a)(5)(B).

D

Plaintiffs allege that TWU Local violated the LMRDA by infringing their rights to a full and fair hearing. They assert that TWU Local deprived them of a full and fair hearing when (1) Click and Lindemann were tried twice for the same offense; (2) Lindemann was retried *in absentia* while on authorized medical leave; (3) Martin was tried before a panel of his accusers; (4) Martin was denied the right to have the assistance of counsel; and (5) Martin was convicted on insufficient evidence.

1

Section 411(a)(5)(C) of the LMRDA protects members of labor organizations from being disciplined without first being afforded a full and fair hearing. *See* 29 U.S.C. § 411(a)(5)(C). "The full and fair hearing clause does not require unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,' but only to comply with the 'fundamental and traditional concepts of due process.'" *Wildberger v. Am. Fed'n of Gov't Emps.*, 86 F.3d 1188, 1193 (D.C. Cir. 1996) (quoting *Ritz v. O'Donnell*, 566 F.2d 731,

- 19 -

**APPENDIX 918**

735 (D.C. Cir. 1977)); *see United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d

Cir. 2001) (same) ("*Teamsters*"); *Bell v. Int'l Bhd. of Teamsters*, 108 F.3d 1376, 1997 WL

103320, at *5 (6th Cir. 1997) (unpublished table decision) (same).  "Not all of the due

process protections available in the federal courts apply to union disciplinary proceedings."

*Teamsters*, 247 F.3d at 385.  "A violation of a procedural provision of a union's constitution

is actionable only if the violation deprived the party of a full and fair hearing under the

LMRDA."  *Id.* at 387.

2

Plaintiffs have failed to state a plausible claim that TWU Local violated the LMRDA

by trying Click and Lindemann twice for the same offense.  As a general proposition, the

Supreme Court has declined to interpret the Due Process Clause as extending double

jeopardy protection beyond the context of criminal prosecution.  *See Dowling v. United

States*, 493 U.S. 342, 354 (1990).  Although courts have found a violation of § 411(a)(5)(C)

where a union member was retried by individuals who had previously heard the charges and

found the member guilty, *see, e.g., Rosario v. Amalgamated Ladies' Garment Cutters'

Union, Local 10*, 605 F.2d 1228, 1243 (2d Cir. 1979), this is not what plaintiffs allege.

Plaintiffs fail to plead any factual allegations that explain why the Executive Board nullified

Click and Lindemann's May 14 and 15 trials and ordered retrials, or that there were any other

circumstances of unfairness surrounding the retrials that would enable the court to draw the

reasonable inference that plaintiffs' rights to a full and fair hearing were violated.  Merely

alleging that a union ordered a new trial, without more, does not state a plausible claim that

- 20 -

**APPENDIX 919**

the union failed to afford a member a full and fair hearing.  *See Frye*, 767 F.2d at 1224 (stating that plaintiff's "contention that a trial *de novo* by the International's Commission was improper as a matter of law is not supported by reason or authority").

3

Plaintiffs have also failed to state a plausible claim that TWU Local violated § 411(a)(5)(C) when it tried Lindemann *in absentia* during his absence from work on approved medical leave.  "Fundamental due process . . . gives a party the right to be *present* during proceedings brought against him . . ., subject to limited exceptions."  *Holschen*, 598 F.3d at 464 n.4.  This right is infringed when the circumstances of the case suggest that the accused did not have a "fair opportunity" to attend the relevant hearing.  *Moody v. Miller*, 864 F.2d 1178, 1181 (5th Cir. 1989) (per curiam).  Plaintiffs allege that TWU Local violated Lindemann's rights by conducting the retrial when they knew that he was out on formally approved extended medical leave.  But merely alleging that Lindemann was ill and unable to attend the hearing does not enable the court to draw the reasonable inference that TWU Local failed to afford Lindemann a full and fair hearing.  If, through no fault of TWU Local, a member "[was] unable or refuse[d] to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances."  *Id.*; *see also Rosario*, 605 F.2d at 1244 (finding no due process violation where parties were entitled to be present at second trial but chose to boycott proceeding instead).  This conclusion is strengthened by plaintiffs' failure to allege that Lindemann notified TWU Local that he was too ill to attend the May 24 retrial

- 21 -

**APPENDIX 920**

or to request a continuance.   *See Parker v. Ellis*, 258 F.2d 937, 940 (5th Cir. 1958) (dismissing due process claim where defendant failed to raise health issue or seek continuance during trial).   Thus plaintiffs' allegations regarding Lindemann's trial *in absentia* do not state a plausible claim on which relief can be granted.

4

Plaintiffs allege that TWU Local violated Martin's rights to a full and fair hearing under the LMRDA when he was tried by the Executive Board, which included the person or people who filed the charges against him initially.   Essentially, plaintiffs' complain that the combination of investigative, prosecutorial, and adjudicatory functions in the Executive Board violated Martin's right to due process under § 411(a)(5)(C).

"The basic requirement of constitutional due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997) (citing *Gibson v. Berryhill*, 411 U.S. 564, 569 (1973)).   "In an effort to prevent 'even the probability of unfairness,' courts have identified situations in which the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Baran v. Port of Beaumont Navigation Dist. of Jefferson Cnty., Tex.*, 57 F.3d 436, 444 (1995) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).   A union's "combination of investigative, prosecutorial, and adjudicatory functions in [a single body] does not, by itself, violate the LMRDA." *Wildberger*, 86 F.3d at 1195.   But when this combination occurs, courts "should be alert to the possibilities of bias that may lurk in the way particular procedures actually

- 22 -

**APPENDIX 921**

work in practice." *Withrow v. Larkin*, 421 U.S. 35, 54 (1975). It is therefore insufficient for plaintiffs merely to allege that the tribunal that filed charges against them also adjudicates the charges. *See id.* at 58 (holding that "[t]he fact that the same agency makes [the initial decision to charge and the ultimate adjudicative decision] in tandem . . . relat[ing] to the same issues does not result in a procedural due process violation"). Plaintiffs "must overcome a presumption of honesty and integrity in those serving as adjudicators; and [they] must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment" to constitute a denial of the right to a full and fair hearing. *Id.* at 47.

The court holds that plaintiffs have plausibly pleaded that Martin was denied a full and fair hearing when he was tried by a panel that included his accusers. Plaintiffs' allegations regarding the "running controversy" between Martin and the faction associated with McDaniel enable the court to draw the plausible inference that there was "the possibility of bias." *Bakalis v. Golembeski*, 35 F.3d 318, 326 (7th Cir. 1994) (applying *Withrow* and holding that plaintiff had adduced sufficient evidence at summary judgment stage to overcome presumption of impartiality); *see also Valley*, 118 F.3d at 1053 & n.4 (quoting *Bakalis* with approval for proposition that "appellate jurisprudence has favored recusing board members who display a bias or prejudice that would result in an unconstitutional decision"). In support of their claim that the Executive Board prejudged Martin's guilt, plaintiffs allege that they all ran together on a slate of candidates opposed by past-president

- 23 -

**APPENDIX 922**

McDaniel.   They aver that, when Martin refused to assist the Executive Board in rescheduling Click and Lindemann's trials, the Executive Board suspended Martin from the office of union president in retaliation.   Plaintiffs allege that the Executive Board did not explain its decision to suspend Martin until May 16, when it charged him with violating the union constitution.   Based on these allegations, and taking a realistic appraisal of psychological tendencies and human weaknesses, the court holds that plaintiffs' allegation that the Executive Board acted in a prosecutorial and adjudicative role during the same hearing plausibly suggests a risk of actual bias or prejudgment.   *Cf. Stein v. Mutuel Clerks' Guild of Mass., Inc.*, 560 F.2d 486, 491 (1st Cir. 1977) (upholding trial court's conclusion that plaintiff did not get full and fair hearing where union president, who was also member of executive committee, made comments to committee revealing he had prejudged case).

5

Plaintiffs allege that TWU Local violated Martin's right to a full and fair hearing when Martin was denied assistance of counsel.   Plaintiffs assert that this right is guaranteed by TWU Local's constitution.

As noted above, the LMRDA's guarantee of a right to a full and fair hearing does not include the right to be represented by counsel.   *See Frye*, 267 F.2d at 1224.   Although the TWU Local constitution may guarantee a union member the right to assistance of counsel, "[a] union's violation of its own constitution is not *per se* a violation of the LMRDA." *Adams-Lundy II*, 792 F.2d at 1373.   Rights guaranteed solely by a local union's constitution are contractual rights—not LMRDA rights—and "a federal court has no jurisdiction to

- 24 -

**APPENDIX 923**

enforce union constitutions and by-laws as such." *Id.* (citing *McGovern v. New Orleans Clerks & Checkers, Local 1497 ILA*, 343 F. Supp. 351, 352 (E.D. La. 1972), *aff'd per curiam*, 463 F.2d 423 (5th Cir. 1972)).  Thus plaintiffs' bare allegations that Martin was not afforded the right to counsel, in violation of TWU Local's constitution, are insufficient of themselves to state a plausible claim for relief.

6

Plaintiffs assert that the Executive Board convicted Martin on insufficient evidence presented to support the charges against him.  Section 411(a)(5)(C) "requires the charging party to provide some evidence at the disciplinary hearing to support the charges made." *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246 (1971) (noting that the Supreme Court has "repeatedly held that conviction on charges unsupported by any evidence is a denial of due process," and that § 411(a)(5)(C) "import[s] a similar requirement into union disciplinary proceedings").  This standard respects "the apparent congressional intent to allow unions to govern their own affairs."  *Id.*  Nevertheless, although § 411(a)(5)(C) requires "some evidence," plaintiffs' conclusory allegation that the evidence presented at Martin's trial was insufficient does not enable the court to draw the reasonable inference that TWU Local violated Martin's right to a full and fair hearing.  *Cf. Rosario*, 605 F.2d at 1243 (noting that "union disciplinary proceedings . . . except in extreme cases, are not reviewed in the federal courts for the sufficiency of the evidence").

- 25 -

**APPENDIX 924**

E

The court finally considers whether plaintiffs have stated a plausible claim for relief under § 529, which protects a union member from retaliation for exercising his or her rights under the LMRDA.

Plaintiffs allege that Martin's suspension from office occurred in retaliation for his refusal to reschedule Click's and Lindemann's trials. But removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529. *See Finnegan*, 456 U.S. at 439 n.9 (dictum). Nowhere in the amended complaint do plaintiffs allege that the Executive Board's decision to ban plaintiffs from running for office was taken in retaliation for the exercise of plaintiffs' rights. Accordingly, the court holds that the amended complaint does not plausibly allege a right to relief under § 529.

VI

Although the court is dismissing some of plaintiffs' claims, it will permit them to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation and internal quotation marks omitted)). The defects with respect to § 102 of the NLA and §§ 401, 413, and 530 of the LMRDA are incurable, and the court therefore declines to permit plaintiffs to attempt to plead a claim under any of these provisions. But because plaintiffs have not stated that they cannot, or are unwilling to, cure

- 26 -

the other defects that the court has identified, it grants them 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

*   *   *

The court grants TWU Local's motion to dismiss count II under Rule 12(b)(1), and it grants in part and denies in part TWU Local's Rule 12(b)(6) motion as to plaintiffs' claims in count I.

**SO ORDERED**.

September 3, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 27 -

**APPENDIX 926**