IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STACY K. MARTIN, et al.,           §
                                   §
                Plaintiffs,        §
                                   §   Civil Action No. 3:14-CV-0500-D
VS.                                §
                                   §
LOCAL 556, TRANSPORTATION          §
WORKERS UNION OF AMERICA,          §
AFL-CIO,                           §
                                   §
                Defendant.         §

MEMORANDUM OPINION
AND ORDER

In this labor dispute arising from disciplinary actions against officers of a union local,

the union local moves for summary judgment as to all of plaintiffs' claims.  The court must

decide whether plaintiffs have created genuine issues of material fact that warrant a trial of

their claims under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.

§§ 401-531 ("LMRDA").  For the reasons that follow, the court grants the union local's

summary judgment motion in part and denies it in part.

I

This case is the subject of two prior opinions of the court: *Martin v. Local 556,*

*Transportation Workers Union of America, AFL-CIO*, 2014 WL 4358480 (N.D. Tex. Sept.

3, 2014) (Fitzwater, C.J.) ("*Martin I*") and *Martin v. Local 556, Transportation Workers*

*Union of America, AFL-CIO*, 2015 WL 569045 (N.D. Tex. Feb. 11, 2015) (Fitzwater, J.)

("*Martin II*").  The court will therefore recount only the background facts and procedural

history that are pertinent to this memorandum opinion and order.

Plaintiffs Stacy K. Martin ("Martin"), Chris Click ("Click"), and Jerry Lindemann ("Lindemann") sue defendant Local 556, Transportation Workers Union of America, AFL-CIO ("TWU Local") seeking relief under the LMRDA.  Plaintiffs are flight attendants employed by Southwest Airlines. They are also members of TWU Local, the local of the labor union that represents Southwest Airlines' flight attendants.[1]  In 2011 the top officers of the TWU Local Executive Board ("Executive Board") were Thom McDaniel, President; Michael Massoni, 1st Vice President; Martin, 2nd Vice President; Cuyler Thompson ("Thompson"), Secretary; and John Parrott ("Parrott"), Treasurer.  In October 2011, during four separate membership meetings, Click voiced his opposition to an amendment ("Amendment")[2] proposed by then-Secretary Thompson.  TWU Local membership ultimately voted against the Amendment, in large part because of Click's opposition. Allegedly in retaliation for Click's opposition to and speech against the Amendment, and as a preemptive attempt to undermine Click's chances of being elected 1st Vice President during the 2012 elections, Thompson made charges that Click violated membership rights

---

[1]In deciding this motion, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]The Amendment, called "Project Redesign," would have replaced TWU Local membership meetings with delegate-style meetings during which members could neither vote nor speak but could only view union decisions.

- 2 -

**APPENDIX 928**

by telling members how to vote on the Amendment.  Click was found not guilty of the charges.[3]  Allegedly in further retaliation and attempt to prevent Click from running for election, however, Thompson and the then-board posted the results of Click's hearing on the union's website.  This was the first time that hearing results had been posted on TWU Local's website, and plaintiffs allege it was clearly done in an attempt to "besmirch . . . Click's name" before the 2012 elections.  P. Resp. 3 (quoting 2d Am. Compl. ¶ 12).

In March 2012 two groups ran for the top officer positions in TWU Local.  The first group—the "Lauck Group"—consisted of Allyson Parker Lauck ("Lauck"), running for President; Audrey Stone ("Stone"), running for 1st Vice President; Brett Nevarez ("Nevarez"), running for 2nd Vice President; Thompson, running for reelection to the position of Secretary; and Parrott, running for reelection to the position of Treasurer.  The second group—the "Martin Group"—consisted of Martin, running for President; Click, running for 1st Vice President; Dawn Wann ("Wann"), running for 2nd Vice President; Jannah Dalak ("Dalak"), running for Secretary; and Lindemann, running for Treasurer.  The Martin Group won the March 2012 election with 65% of the vote.

Plaintiffs allege that, almost immediately after they took office in May 2012, members of the Lauck Group and TWU Local members who supported the Lauck Group embarked

---

[3]Although Click was found not guilty of the charges, the trial committee stated that Click had inadvertently disclosed confidential information, but that this disclosure occurred mainly as a result of the way TWU Local voted on the Amendment, which consisted of a show of hands.  The trial committee suggested that TWU Local adopt changes to prevent this from recurring.

on a systematic dismantling of the union's electoral system and democratic structure by filing a barrage of unfounded charges against the newly-elected officers, simply as a means of harassing and disrupting the union's infrastructure and business.[4]

In November 2012 a required audit of the union financials revealed that several of the board members had been paid excessive amounts of money for work that was unverified. During the December 2012 Executive Board meeting, Martin outlined and proposed immediate changes that would modify future payouts to reduce expenses. Members of the Lauck Group, however, submitted allegedly false accusations and charges that plaintiffs were maliciously spreading false information, although plaintiffs contend the audit had clearly verified the information put forth in the December meeting, and, in any event, the information being revealed was not confidential and was public information available to all TWU Local members. Ultimately, Click and Lindemann were suspended, and charges were accepted against them for the accusations stemming from the December 2012 meeting. Their Article XIX[5] trials were set for May 15, 2013.

---

[4]Plaintiffs contend that Don Shipman sent out a mass email encouraging other members to undermine the newly-elected officers and disrupt union affairs; members and supporters of the Lauck Group made it well known that they were going to do everything they could to get the Martin Group removed from office; Thompson submitted unfounded charges no fewer than five times simply to harass the Martin Group officers in an attempt to undermine the electoral system and disrupt the basic democratic structure by doing everything he could to remove them from office and have himself reinstated; and Lauck submitted charges against the Martin Group officers no fewer than four times simply to harass and undermine the electoral system and disrupt the union democratic infrastructure.

[5]Under the TWU of America Constitution, Article XIX sets out the process for considering one member's claim against another member.

APPENDIX 930

In March 2013 Click attended a rally in Washington, D.C. to protest a Transportation Security Administration ("TSA") change that would allow knives to pass through security checkpoints and on commercial aircraft. During the rally, Click carried a sign that read, "Ain't nobody got time for dat." Another member of TWU Local, who allegedly supported the Lauck Group, saw the sign and reported it to TWU Local. Charges of racial discrimination were then submitted against Click based on the allegation that the sign was offensive, and Click's Article XIX trial was set for May 14, 2013.

Union rules and bylaws dictate that, when an officer is suspended or resigns, the officer's position can be filled by the member who finished second for the position at the prior election, if that member opts to accept the position. Consequently, when Click and Lindemann were suspended, their positions were filled by Stone and Parrott, members of the rival Lauck Group. And before the hearings set for May 14 and 15, Wann and Dalak resigned their positions, allegedly under pressure from the Lauck Group, and they were replaced by Nevarez and Thompson, from the Lauck Group.

On May 13, 2013—the day before Click's individual Article XIX trial and two days before Click's and Lindemann's joint Article XIX trial—the Executive Board attempted to delay the trial dates by insisting that Martin reschedule them for one week later. Martin refused on the basis that doing so violated union rules. Click and Lindemann attended their trials on May 14 and 15, but the members who filed the charges against Click and Lindemann, having been advised that their trials were rescheduled, did not appear. The trial committee acquitted Click and Lindemann of all charges, but the Executive Board did not

- 5 -

accept the trial committee's decision, and nullified it.

Click's and Lindemann's Article XIX trials were rescheduled for May 23 and 24, 2013. Plaintiffs allege that Click requested a continuance on the basis that it was impossible for his witnesses to return for the new hearing on short notice and that his counsel was unavailable for a retrial, but the request was denied. Lindemann also sought a continuance based on the fact that he went on approved medical leave after his first trial, and, due to his medical leave, he would be physically unable to attend the rescheduled trial. This request was also denied. The second trials were conducted in the absence of Click and Lindemann, and this time the trial committee found them both guilty. The trial committee recommended to the Executive Board that Click and Lindemann be removed from their positions and banned from holding union office for three years. The Executive Board accepted the recommendation of the trial committee.

Thereafter, Click's Article XXI[6] trial was held before Executive Board members.[7] After the trial, the Executive Board voted to remove Click from office and ban him from holding union office for three years, duplicating the recommendation of the trial committee

---

[6]Under the TWU of America Constitution, Article XXI details the procedures required for suspending and removing local officers.

[7]Plaintiffs allege that Lindemann also had an Article XXI trial, but they do not respond to TWU Local's assertion that only Click and Martin had Article XXI trials, and they present no evidence that this trial took place. Because plaintiffs have failed to raise a fact issue on whether Lindemann had an Article XXI trial, the court grants TWU Local's motion for summary judgment to the extent that any of plaintiffs' claims involve Lindemann's alleged Article XXI trial.

in Click's Article XIX trials.

On May 14 the Executive Board suspended Martin from his position as President because of his refusal to reschedule the Click and Lindemann trials. On May 16, at an Executive Board meeting, the Executive Board charged Martin with violating union rules by, *inter alia*, making presentations to the members on issues surrounding TWU Local, making false representations to the membership, and standing in opposition to the Executive Board. On May 29 and 30 Martin's Article XXI trial was held before Executive Board members, which then consisted of the Lauck Group members, who had replaced all of the Martin Group members on the Executive Board. The Executive Board found Martin guilty of all charges, and it voted to remove him from office and declare him ineligible for union office for a period of three years.

Martin, Click, and Lindemann brought this lawsuit against TWU Local, alleging that it violated their rights under the Norris LaGuardia Act, 29 U.S.C. §§ 101-15, the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141-97, and the LMRDA, and that TWU Local breached the TWU International Constitution. In *Martin I* the court dismissed all of plaintiffs' claims except their claims that TWU Local violated 29 U.S.C. §§ 411, 412, and 529 by infringing on Martin's rights to a full and fair hearing, in violation of 29 U.S.C. § 411(a)(5)(C), when he was tried by a panel that included his accusers. *Martin I*, 2014 WL 4358480, at *3-12. The court granted plaintiffs leave to amend as to all claims that were curable by amendment, and they later filed their second amended complaint. *Id.* at *12.

In *Martin II* the court dismissed plaintiffs' claims that TWU Local violated 29 U.S.C.

**APPENDIX 933**

§§ 411, 412, and 529 by wrongfully suspending them and removing them from office. *Martin II*, 2015 WL 569045, at *8. The court declined, however, to dismiss plaintiffs' claims that TWU Local violated 29 U.S.C. §§ 411, 412, and 529 by infringing on Click's right to free speech, and by violating plaintiffs' rights to a full and fair hearing. *See id.* at *6-7.

TWU Local now moves for summary judgment on plaintiffs' remaining two claims—that TWU Local violated 29 U.S.C. §§ 411, 412, and 529 by disciplining Click for exercising his right to free speech and by infringing on all plaintiffs' rights to a full and fair hearing.[8] Plaintiffs oppose the motion.[9]

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovants' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovants must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is

---

[8]TWU Local filed, without leave of court, an appendix in support of its summary judgment reply. Because TWU Local did not first obtain leave of court to file the appendix, the court has not considered it in deciding the summary judgment motion. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court).

[9]Plaintiffs move the court for leave to file a surreply. Because plaintiffs' surreply does not affect the court's decision, the court grants the motion.

APPENDIX 934

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovants' failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovants fail to meet this burden. *Little*, 37 F.3d at 1076.

III

Plaintiffs allege that TWU Local violated §§ 411, 412, and 529 of the LMRDA.

A

Section 411 sets out the core of the guarantees afforded to members of labor organizations by the LMRDA. It is a "[b]ill of [r]ights" that is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536-37 (1984). The LMRDA contains two provisions that enable union members to enforce their rights under this "bill of rights": §§ 412 and 529.

Section 412 confers a private cause of action on union members for a union's infringement of the rights secured by §§ 411-15. To state a claim under § 412, plaintiffs must show (1) that they are members of a labor organization and (2) that the organization infringed a right secured by § 411, 412, 413, 414, or 415. *See Martinez v. Am. Fed'n of Gov't Emps.*, 980 F.2d 1039, 1041-42 (5th Cir. 1993). "Union leaders, *per se*, are not

- 9 -

**APPENDIX 935**

themselves a protected class under [the LMRDA], except that they, too, may not be deprived of the basic rights attending on union membership." *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1156 (5th Cir. 1984). Thus it is generally insufficient for a plaintiff to plead a plausible claim under § 412 based only on the alleged infringement of a right held in the capacity of a union officer. *See id.*

There is an exception, however, to this general rule. If a plaintiff can show that the removal from office "was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members," the plaintiff can prevail on a claim for relief as an officer under § 412. *Id.* at 1159. To recover under this exception, a plaintiff must show "that the defendants are attempting to dismantle the union's electoral system, [or] that members opposing that faction are . . . suppressed or threatened with reprisals." *Id*. Allegations that merely suggest that an internal union struggle is "anti-democratic" are insufficient to plausibly allege the existence of a pattern of intimidation and stifled dissent. *Id*.

Section 529 provides members a private cause of action when their union fines, suspends, expels, "or otherwise discipline[s]" them for exercising any right to which they are entitled under the LMRDA. "The primary difference between § [529] and § [412] is that § [529] protects against retaliation for the exercise of any right secured under the LMRDA, whereas § [412] only protects rights secured under [§§ 411-15]." *United Steel Workers Local 12–369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1115 (9th Cir. 2013) (citing *Finnegan v. Leu*, 456 U.S. 431, 439 n.10 (1982)). Depending on the right the member seeks to protect,

**APPENDIX 936**

§§ 412 and 529 can be entirely duplicative. *See id.* at 1115 n.4 (citing *Finnegan*, 456 U.S. at 439 n.10). To prevail under § 529, plaintiffs must prove that (1) they are members of a labor organization; (2) the organization fined, suspended, expelled, or otherwise disciplined them; and (3) the organization imposed the punishment in retaliation for their exercise of a right protected by the LMRDA. *See* 29 U.S.C. § 529.

As under § 412, to prevail under § 529, plaintiffs must prove that any punishment or restriction imposed by TWU Local was a limitation or restriction on their membership rights. Removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529. *See Finnegan*, 456 U.S. at 438 n.9, 439 (explaining that discipline referred to in §§ 411(a)(5) and 529 means limitations on membership rights, not removal from union office); *Adams-Lundy*, 731 F.2d at 1157 (citing *Finnegan* for proposition that "§ [411(a)(5)] and § [529] protect only the rights of membership *per se*, and that a union officer who is removed from office but not deprived of membership in the union has suffered no loss cognizable as 'discipline' proscribed by these sections of the Act").

B

TWU Local moves for summary judgment on plaintiffs' claim that it violated the LMRDA by disciplining Click for exercising his right to free speech protected by 29 U.S.C. § 411(a)(2).

- 11 -

**APPENDIX 937**

1

Section 411(a)(2) provides, in pertinent part:

> Every member of any labor organization shall have the right to
> meet and assemble freely with other members; and to express
> any views, arguments, or opinions; and to express at meetings
> of the labor organization his views, upon candidates in an
> election of the labor organization or upon any business properly
> before the meeting, subject to the organization's established and
> reasonable rules pertaining to the conduct of meetings[.]

29 U.S.C. § 411(a)(2). "[T]here is absolutely no indication that Congress intended the scope
of § [411(a)(2)] to be identical to the scope of the First Amendment." *United Steelworkers
of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102, 111 (1982). "Rather, Congress' decision
to include a proviso covering 'reasonable' rules refutes that proposition." *Id.* "Union rules
. . . are valid under § [411(a)(2)] so long as they are reasonable; they need not pass the
stringent tests applied in the First Amendment context." *Id.*

2

In their second amended complaint, plaintiffs allege that, on two occasions, Click
exercised rights secured by § 411(a)(2) in his capacity as a member of TWU Local.  First,
in October 2011, Click attended four separate membership meetings and voiced his
opposition to Thompson's proposed Amendment.  Plaintiffs allege that Thompson retaliated
against Click by submitting unfounded charges that Click violated membership rights by
telling members how to vote on the Amendment, and, when Click was found not guilty of
the charges, by posting the results of the hearing on TWU Local's website.  Second, plaintiffs
allege that Click attended a rally in Washington, D.C. in March 2013 to protest the TSA

- 12 -

**APPENDIX 938**

change of allowing knives to pass through security checkpoints and allowing knives on commercial aircraft, and that Click carried a sign that stated: "Ain't nobody got time for dat." Plaintiffs contend that charges of racial discrimination were submitted against Click based on the sign's being allegedly offensive.

TWU Local challenges only that its rules prohibiting racial harassment and malicious publication of misleading and false financial information are "reasonable" under § 411(a)(2), and thus exempt from the free speech protection of the LMRDA.  Regarding the racial discrimination allegations, plaintiffs do not contend that TWU Local's rules prohibiting racial discrimination are unreasonable.  Rather, they merely contend that Click "vehemently denie[s]" TWU Local's "attempts to paint the charges as racial discrimination."  Ps. Resp. 10.  And they cite Click's declaration in support.  But Click's declaration does not mention the Washington, D.C. protest or the racial discrimination charges.  Without any evidence to support their allegations, plaintiffs have failed to raise a fact issue on whether TWU Local's policy against racial harassment is reasonable or whether Click was disciplined for engaging in racial discrimination.  Accordingly, the court grants TWU Local's motion for summary judgement on this claim to the extent that Click was charged with engaging in racial discrimination.

TWU Local does not, however, make any allegations with respect to the incident in which Click was charged with violating membership rights by telling members how to vote on the Amendment.  Because TWU Local does not challenge plaintiffs' § 411(a)(2) claim on any basis other than that its rules prohibiting racial discrimination and malicious

- 13 -

**APPENDIX 939**

publication of misleading and false financial information are "reasonable," the court denies

TWU Local's motion for summary judgment on this claim with respect to the incident in

which Click was charged with violating membership rights.[10]

C

TWU Local moves for summary judgment on plaintiffs' claims that TWU violated

their rights to a full and fair hearing under the LMRDA, contending that plaintiffs received

full and fair hearings.  Plaintiffs assert that TWU Local deprived them of a full and fair

hearing when (1) Click's and Lindemann's May 14 and 15 trials were nullified without

authority or justification; (2) the rescheduled trials one week later did not afford Click and

Lindemann a fair opportunity to attend; (3) the Article XIX retrials of Click and Lindemann

were not fair and impartial because the Lauck Group members ensured that a guilty verdict

would be rendered and plaintiffs' guilt was prejudged; (4) and Martin and Click were tried

in their Article XXI trials by the Lauck Group members.[11]

1

Section 411(a)(5)(C) provides that "[n]o member of any labor organization may be

fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such

---

[10]Because TWU Local does not challenge plaintiffs' § 411(a)(2) claims on any basis other than that its rules prohibiting racial discrimination and malicious publication of misleading and false financial information are "reasonable," the court does not consider whether plaintiffs' § 412 or § 529 claims based on TWU Local's alleged violation of Click's § 411(a)(2) rights are subject to dismissal on any other basis.

[11]Plaintiffs also allege that Lindemann was tried in his Article XXI trial by Lauck Group members.  But Lindemann did not have an Article XXI trial; he only had an XIX trial.

- 14 -

**APPENDIX 940**

organization or by any officer thereof unless such member has been . . . afforded a full and

fair hearing."  29 U.S.C. § 411(a)(5)(C).  "The full and fair hearing clause does not require

unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,'

but only to comply with the 'fundamental and traditional concepts of due process.'"

*Wildberger v. Am. Fed'n of Gov't Emps.*, 86 F.3d 1188, 1193 (D.C. Cir. 1996) (quoting *Ritz

v. O'Donnell*, 566 F.2d 731, 735 (D.C. Cir. 1977)); *see United States v. Int'l Bhd. of

Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001) ("*Teamsters*") (same); *Bell v. Int'l Bhd. of

Teamsters*, 108 F.3d 1376, 1997 WL 103320, at *5 (6th Cir. March 6, 1997) (unpublished

table decision) (same).  "Not all of the due process protections available in the federal courts

apply to union disciplinary proceedings." *Teamsters*, 247 F.3d at 385.  "A violation of a

procedural provision of a union's constitution is actionable only if the violation deprived the

party of a full and fair hearing under the LMRDA." *Id.* at 387.

2

Plaintiffs allege that TWU Local violated § 411(a)(5)(C) by denying them access to

an unbiased tribunal.  They maintain that Martin was tried in his Article XXI trial by the

Executive Board, which included the person or persons who filed the charges against him

initially; Click was tried in his Article XXI trial before Lauck Group board members; and

Lauck Group members ensured that guilty verdicts would be rendered in Click's and

Lindemann's Article XIX retrials.  In other words, plaintiffs complain that the combination

of investigative, prosecutorial, and adjudicatory functions in the Executive Board violated

their rights to due process under § 411(a)(5)(C).

- 15 -

**APPENDIX 941**

a

"The basic requirement of constitutional due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997) (citing *Gibson v. Berryhill*, 411 U.S. 564, 569 (1973)). "In an effort to prevent 'even the probability of unfairness,' courts have identified situations in which the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 444 (1995) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). A union's "combination of investigative, prosecutorial, and adjudicatory functions in [a single body] does not, by itself, violate the LMRDA." *Wildberger*, 86 F.3d at 1195. But when this combination occurs, courts "should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Withrow v. Larkin*, 421 U.S. 35, 54 (1975). It is therefore insufficient for plaintiffs merely to allege that the tribunal that filed charges against them also adjudicated the charges. *See id.* at 58 (holding that "[t]he fact that the same agency makes [the initial decision to charge and the ultimate adjudicative decision] in tandem . . . relat[ing] to the same issues does not result in a procedural due process violation"). Plaintiffs "must overcome a presumption of honesty and integrity in those serving as adjudicators; and [they] must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment" to constitute a denial of the right to a full and fair hearing. *Id.* at 47.

- 16 -

**APPENDIX 942**

b

In support of their allegations, plaintiffs rely solely on their declarations, which state that Thompson and Lauck submitted charges against plaintiffs several times; that the Executive Board selected the members of the trial committee who heard Click's and Lindemann's May 14 and 15 trials; and that, after the trial committee found Click and Lindemann not guilty of all charged offenses in their May 14 and 15 trials, the Executive Board, including Stone, Thompson, Nevarez, and Parrott, did not accept, and nullified, the trial committee's decision without providing any reason for doing so. Click and Martin also state that their Article XXI trials, which resulted in guilty verdicts, removal from their positions, and suspension from running for election for three years, were heard before the "Executive Board consisting of the Lauck Group Members who now had all replaced the Martin Group members," and were conducted and chaired by Nevarez and assisted by Stone, Parrott, and Thompson. Martin Decl. 2; Click Decl. 3.[12]  TWU Local responds that only two

---

[12]Plaintiffs also aver in their declarations that the "Lauck Group made it well known that they were going to do everything they could to get [plaintiffs] removed from office," and Stone and Parrott "made it openly and knowingly clear that they wanted [plaintiffs] removed from office." Ps. Decls. 1-2. TWU Local objects to these statements as hearsay. In their surreply, plaintiffs maintain that "[t]he statements made by the Lauck Group are not hearsay as they were done by the Lauck Group in their capacity as members of the Executive Board and open political opponents." Ps. Surreply 3. Plaintiffs therefore maintain that the statements qualify as party admissions under Fed. R. Evid. 801(d)(2) because "a Defendant who is an organization can only act through its representatives and agents." *Id.* Although plaintiffs do not specify the subpart of Rule 801(d)(2) that they maintain applies to these statements, it is reasonable to infer that they are relying on Rule 801(d)(2)(A) or (D). Rule 801(d)(2) provides, in pertinent part, that a statement is not hearsay if it "is offered against an opposing party" and (A) "was made by the party in an individual or representative capacity" or (D) "was made by the party's agent or employee on a matter within the scope

- 17 -

**APPENDIX 943**

of that relationship and while it existed."

Plaintiffs have failed to establish that the statements qualify as party admissions. The Lauck Group members are not parties to this suit. And plaintiffs do not provide any evidence that these statements were made *after* Lauck Group members, including Stone and Parrott, took office, or that Lauck Group members, in their capacity as union members and before they were elected to office, had sufficient authority to speak in representative capacities for TWU Local or were agents or employees of TWU Local speaking within the scope of that relationship and while it existed. *See, e.g., Ramirez v. Gonzales*, 225 Fed. Appx. 203, 210 (5th Cir. 2007) (per curiam) (holding that Rule 801(d)(2)(D) did not apply to statements made by legal secretary to union president about how she had problem with plaintiff's being part of union because "they concerned matters outside the scope of her employment, since [she] was not involved in the decision to terminate [plaintiff]"); *Bensen v. Am. Ultramar Ltd.*, 1996 WL 422262, at \*12 (S.D.N.Y. July 29, 1996) (holding that Rule 801(d)(2)(A) applied to declarant's statement "confirm[ing] that Ultramar Group's 1990 Annual Report inaccurately suggested that the 1990 pension payment was made upon Bensen's retirement from executive duties" because "[a]t the time of this confirmation, [declarant] was an Ultramar Group executive and member of Ultramar PLC's Board of Directors," and "[s]uch positions of authority are sufficient to allow him to speak in a representative capacity for the corporation"); *see also Slaughter v. Atkins*, 396 Fed. Appx. 984, 988 (5th Cir. 2010) (per curiam) (holding that district court did not abuse its discretion when it sustained objections to statements on the ground that party had not established either agency or conspiracy relationship necessary to invoke exclusions under Rule 801(d)(2)(D) and (E)); *Zimmerman v. Gruma Corp.*, 2013 WL 3154118, at \*11 (N.D. Tex. June 21, 2013) (Lindsay, J.). Accordingly, the court holds that these statements are inadmissible.

Plaintiffs also aver in their declarations that, after the Martin Group won the March 2012 election, members of the Lauck Group and their supporters "embarked on a systematic dismantling of the union's electoral system and democratic structure by filing a barrage of unfounded charges against [plaintiffs]," and that the charges submitted by Thompson and Lauck against plaintiffs "were unfounded and done solely to harass and undermine the electoral system and disrupt the union democratic infrastructure." Ps. Decls. 1-2. And plaintiffs allege that their trials were "false and pretextual." *Id.* at 3. Plaintiffs also contend that the "[Executive Board's] decision to nullify the not guilty verdicts [in Click's and Lindemann's May 14 and 15 trials] was based solely on the fact they did not like the outcome." *Id.* at 2. Additionally, Martin maintains that, two days after his suspension, "the Executive Board created a pretext for [his] previous suspension by hatching up seven unfounded and frivolous bases for the suspension." Martin Decl. 3.

TWU Local objects to these statements, contending that they are speculation. The court agrees. These speculative and conclusory allegations do not create a genuine issue of material fact. *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting

- 18 -

of the Executive Board members who served on Martin's and Click's Article XXI trials were members of the Lauck Group. Eleven Executive Board members served on Martin's Article XXI trial, and nine Executive Board members served on Click's Article XXI trial. TWU Local has also adduced evidence that Stone and Parrott did not participate in the Article XXI trials.[13] And it contends that these two Lauck Group members could not have seriously impacted the Executive Board's vote because a majority vote is required to remove and bar members. But TWU Local fails to cite any summary judgment evidence showing that a majority vote is required.

Regarding Click's and Lindemann's Article XIX trials, TWU Local makes no allegations regarding the May 14 and 15 trials; rather, it contends that the rescheduled trials were heard by a trial committee composed of three union members who were not Lauck Group members. TWU Local also contends that the decision of the trial committee is a recommendation to the Executive Board, which included only two Lauck Group members. TWU Local, however, does not dispute plaintiffs' assertion that the Executive Board selects the members of the trial committee, and TWU Local fails to cite any evidence showing the

---

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.").

[13]The remaining nine members of the Executive Board who served on Martin's Article XXI trial were Tina Coffee, Karen Amos, Jimmy West, Stacey Vavakas, Chris Sullivan, Rob Riddell, Donna Keith, Valerie Boy, and John DiPippa. The remaining seven members of the Executive Board who served on Click's Article XXI trial were Tina Coffee, Karen Amos, Stacey Vavakas, Rob Riddell, Valerie Boy, John DiPippa, and Matt Hettich.

- 19 -

**APPENDIX 945**

identity of the Executive Board members who voted to accept the trial committee's decision.

c

Based on the allegations in plaintiffs' declarations, and drawing all reasonable inferences in plaintiffs' favor as the summary judgment nonmovants, the court holds that plaintiffs have raised a genuine fact issue regarding a risk of actual bias or prejudgment stemming from the presence on the Executive Board of members who acted in prosecutorial and adjudicative roles during the same hearing and who were political opponents of plaintiffs in their elections. For example, Thompson, a member of the Lauck group who replaced a member of the Martin Group and who was a political opponent of plaintiffs, submitted charges against plaintiffs several times, served on Martin's and Click's Article XXI trials that resulted in guilty verdicts, nullified the trial committee's decision of not guilty in Click's and Lindemann's first Article XIX trials, and voted to accept the trial committee's decision of guilty in Click's and Lindemann's second Article XIX trials. *See Wildberger*, 86 F.3d at 1195-97 (quoting *Tincher v. Piasecki*, 520 F.2d 851, 855 (7th Cir. 1975)) (holding that procedures used in Wildberger's hearing "presented a 'significant danger of bias'" because union president, who served prosecutorial and adjudicatory functions, "was repeatedly the focus of Wildberger's criticism" and "Wildberger was at one time [president's] political opponent"); *Stein v. Mutuel Clerks' Guild of Mass., Inc.*, 560 F.2d 486, 491 (1st Cir. 1977) (upholding district court's conclusion that plaintiff did not get full and fair hearing where union president, who was also member of executive committee, made comments to committee revealing he had prejudged case). The court therefore holds that a reasonably jury

- 20 -

**APPENDIX 946**

could find in this case that there was "the possibility of bias."  *Bakalis v. Golembeski*, 35

F.3d 318, 326 (7th Cir. 1994) (applying *Withrow* and holding that plaintiff had adduced

sufficient evidence at summary judgment stage to overcome presumption of impartiality);

*see also Valley*, 118 F.3d at 1053 & n.4 (quoting *Bakalis* with approval for proposition that

"appellate jurisprudence has favored recusing board members who display a bias or prejudice

that would result in an unconstitutional decision").

Accordingly, the court denies TWU Local's motion for summary judgment on these

claims.

3

Plaintiffs allege that TWU Local violated § 411(a)(5)(C) when Click's and

Lindemann's May 14 and 15 trials were nullified without authority or justification, and when

their trials were rescheduled for one week later, which did not afford them a fair opportunity

to attend.  "Fundamental due process . . . gives a party the right to be *present* during

proceedings brought against him . . . , subject to limited exceptions."  *Holschen v. Int'l Union*

*of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454, 464 n.4 (8th Cir. 2010).

This right is infringed when the circumstances of the case suggest that the accused did not

have a "fair opportunity" to attend the relevant hearing.  *Moody v. Miller*, 864 F.2d 1178,

1181 (5th Cir. 1989) (per curiam).  But it does not require that TWU Local "must see to it

that each person takes advantage of these opportunities."  *Id.*

Plaintiffs allege that TWU Local violated Click's rights by continuing his trials, but

they do not provide sufficient evidence to enable a reasonable jury to find that Click was not

afforded a fair opportunity to attend his rescheduled trials.  In fact, plaintiffs do not even allege that Click could not attend the rescheduled trials.  The mere fact that TWU Local rescheduled Click's trials would not enable a reasonable jury to find that TWU Local violated Click's rights.  *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1244 (2d Cir. 1979) (holding that there was no due process violation where parties were entitled to be present at second trial but chose to boycott proceeding).

Plaintiffs also allege that TWU Local violated Lindemann's rights by continuing his trial when he objected to the retrial date based on the fact that he "was on approved medical leave and would not be physically able to attend."  Lindemann Decl. 2.  And they maintain that Lindemann's "request for a continuance was denied."  *Id.*  But if, through no fault of TWU Local, a member "is unable or refuses to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances."  *Moody*, 864 F.2d at 1181.  And TWU Local "should not be required to delay the enforcement of . . . disciplinary rules because the affected [member], through no fault of [TWU Local], happens to be unavailable."  *Id.*

Plaintiffs also allege that TWU Local violated Click's and Lindemann's rights by nullifying their May 14 and 15 trials without any authority or justification.  But Click and Lindemann attended their May 14 and 15 trials, and they do not provide any evidence showing how the Executive Board's nullification of the trial committee's decision infringed

APPENDIX 948

their rights to a full and fair hearing.  And plaintiffs do not provide any case law that holds that nullification of a trial committee's decision, without providing a reason for the nullification, in a trial that plaintiffs attended is without more a violation of plaintiffs' rights. The court therefore concludes that a reasonable jury could not find that TWU Local violated Click's and Lindemann's rights by rescheduling their trials for one week later or by nullifying the trial committee's decision in their May 14 and 15 trials.

Accordingly, the court grants TWU Local's motion for summary judgment on plaintiffs' claims that TWU Local violated § 411(a)(5)(C) when Click's and Lindemann's May 14 and 15 trials were nullified and rescheduled.

* * *

For the reasons explained, TWU Local's motion for summary judgment is granted in part and denied in part.

**SO ORDERED**.

May 19, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 23 -

**APPENDIX 949**