**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |
| | § | **Case No. 4:22-CV-343-Y** |
| **AND** | § | |
| | § | **Consolidated with** |
| **EUGENIO VARGAS** | § | **Case No. 4:22-CV-430-Y** |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.** | § | |

---

**APFA DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (pro hac vice)          CHARLETTE L. BRODERICK (pro hac vice)
D.C. Bar No. 435832                       Tex. Bar No. 241133870
Guerrieri, Bartos & Roma, PC              Association of Professional Flight Attendants
1900 M Street, N.W. Suite 700             1004 W. Euless Blvd.
Washington, DC 20036                      Euless, TX  76040
Tel.: (202) 624-7400; Fax: (202) 624-7420  Tel.: (682) 301-8454
Email: jbartos@geclaw.com                 Email: cbroderick@apfa.org

*Counsel for the APFA Defendants*          *Counsel for APFA*

### TABLE OF CONTENTS

SUMMARY OF THE CASE ..................................................................................1

ARGUMENT .......................................................................................................4

I.     PLAINTIFFS HAVE NOT MET THEIR FUNDAMENTAL SUMMARY
       JUDGMENT BURDEN TO ESTABLISH UNDISPUTED MATERIAL
       FACTS .....................................................................................................4

II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
       THEIR LMRDA CLAIMS ...........................................................................7

       A.     The Undisputed Facts Do Not Support Judgment For Plaintiffs On
              Their LMRDA Due Process Claims ...................................................7

              1.    There Was Considerably More Than "Some Evidence" to
                    Support the Arbitrator's Decisions ................................9

              2.    Plaintiffs Each Received A Full and Fair Hearing.........................11

       B.     Plaintiffs Cannot Show That Any Protected Speech Was The "But
              For" Cause Of The Arbitrator's Decisions ............................................20

       C.     The Undisputed Facts Do Not Support Plaintiffs' Claims For
              Damages.................................................................................23

III.   MR. ROSS IS NOT ENTITLED TO JUDGMENT ON HIS CLAIM FOR
       BREACH OF THE TRANSITION AGREEMENT .......................................27

       A.     There Is No Basis for Liability on the Transition Agreement
              Claims ....................................................................................28

              1.    The Claim Regarding the Amount Paid Is Barred by the Statute
                    of Limitations.................................................................28

              2.    The Non-Disclosure Provision Is Unenforceable as a Matter of
                    Law ...........................................................................28

       B.     There Is No Basis For Consequential Damages Or Attorneys' Fees....................30

IV.    AMPLE  UNDISPUTED  EVIDENCE  SUPPORTS  THE  APFA'S
       FIDUCIARY DUTY COUNTERCLAIMS..................................................32

       A.     Ample Undisputed Evidence Supports A Finding of Breach of
              Fiduciary Duty .......................................................................33

B.    Ample and Undisputed Evidence Shows the APFA was Damaged by Plaintiffs' Fiduciary Breach ................................................................36

C.    Plaintiffs Have Not Met Their Burden To Establish Their Defense of Laches ...........................................................................................37

CONCLUSION ...........................................................................................................38

CERTIFICATE OF SERVICE ....................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                      **Page(s)**

*Abrams v. Am. Airlines, Inc.*,
No. 4:04-CV-919-Y, 2007 WL 9775358 (N.D. Tex. Aug. 30, 2007), *aff'd*, 302 F. App'x 242 (5th Cir. 2008) .................................................................................4

*Adams-Lundy v. APFA*,
731 F.2d 1154 (5th Cir. 1984) ...............................................................................23

*Alford v. Dean Witter Reynolds, Inc.*,
975 F.2d 1161, 1164 (5th Cir. 1992) ......................................................................30

*Ashe v. Corley*,
992 F.2d 540 (5th Cir. 1993) ..................................................................................33

*Black v. Ryder/P.I.E. Nationwide, Inc.*,
970 F.2d 1461 (6th Cir. 1992) ..................................................................................8

*Carey v. Piphus*,
435 U.S. 247 (1978).................................................................................................24

*Carr v. Austin Forty*,
744 S.W.2d 267 (Tex. App. 1987), *writ denied* (May 11, 1988)............................32

*Celotex Corp.v. Catrett*,
477 U.S. 317 (1986).................................................................................................33

*City Of El Paso, Tex. v. El Paso Ent., Inc.*,
382 F. App'x 361 (5th Cir. 2010).............................................................................37

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001).................................................................................................22

*Commer v. McEntee*,
121 F. Supp. 2d 388 (S.D.N.Y. 2000), *aff'd*, 15 F. App'x 21 (2d Cir. 2001).........22

*Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*,
209 F.Supp.2d 731 (N.D. Ohio 2002), *aff'd* 93 Fed.Appx. 780 (6th Cir. 2004) ......8

*Corea v. Welo*,
937 F.2d 1132 (6th Cir. 1991) ...........................................................................9, 11

*Curtis v. Int'l All. of Theatrical Stage Emps.*,
687 F.2d 1024 (7th Cir. 1982) ..........................................................................8, 19

iv

*Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*,
   121 F.R.D. 284 (N.D. Tex. 1988) (*en banc*)..........................................................27

*Eckhardt v. Qualitest Pharms Inc.*,
   889 F.Supp.2d 901 (S.D. Tex. 2012) ......................................................................5

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993) ................................................................................29

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ........................................................................ *passim*

*Fowler v. S. Bell Telephone & Telegraph Co.*,
   343 F.2d 150 (5th Cir. 1965) ...............................................................................34

*Goodwin v. Johnson*,
   132 F.3d 162 (5th Cir. 1997) ...............................................................................35

*Gross v. FBL Financial Services, Inc.*,
   557 U.S. 167 (2009)..............................................................................................20

*Guidry v. Int'l Union of Operating Engineers, Local 406*,
   882 F.2d 929 (5th Cir. 1989), *vacated on other grounds*, 494 U.S. 1022 (1990)...................27

*Halsell v. Local Union No. 5, Bricklayers & Allied Craftsmen*,
   530 F. Supp. 803 (N.D. Tex. 1982) ........................................................................8

*Hoffman v. Kramer*,
   362 F.3d 308 (5th Cir. 2004) .................................................................................9

*Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*,
   598 F.3d 454 (8th Cir. 2010) ...............................................................................14

*Hudson v. Am. Fed. of Gov't Emps.*,
   630 F.Supp.3d 214 (D.D.C. 2022).........................................................................20

*Hurd v. Hodge*,
   334 U.S. 24 (1948)................................................................................................30

*Johnson v. Holway*,
   439 F. Supp. 2d 180 (D.D.C. 2006).......................................................................22

*Kariuki v. Tarango*,
   709 F.3d 495 (5th Cir. 2013) .................................................................................5

*Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*,
   937 F. Supp. 2d 93 (D. Me. 2013) ...........................................................12, 17, 20

*Khan v. Trans Chem. Ltd.*,
178 F. App'x 419 (5th Cir. 2006) ...............................................................28

*United States ex rel King v. Solvay Pharms., Inc.*,
871 F.3d 318 (5th Cir. 2017) .....................................................................20

*Lewis v. AFSCME*,
407 F.2d 1185 (3d Cir. 1969).......................................................................8

*Loc. No. 1419, ILA, Gen. Longshore Workers Union, AFL-CIO v. Smith*,
301 F.2d 791 (5th Cir. 1962) .....................................................................30

*Loc. No. 92, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-
CIO v. Norris*,
383 F.2d 735 (5th Cir. 1967) ...............................................................34, 37

*Malacara v. Garber*,
353 F.3d 393 (5th Cir. 2003) .......................................................................4

*Martin v. Local 556*,
No. 3:14-CV-0500, 2014 WL 4358480 (N.D. Tex. Sept. 3, 2014) ..............9, 12, 23

*McCarthy v. IAM*,
Case No. 21-1673, 2021 WL 5766569 (3d Cir. Dec. 6, 2021) .........................11, 22

*Meredith v. Louisiana Fed'n of Teachers*,
209 F.3d 398 (5th Cir. 2000) .....................................................................27

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*,
422 F. Supp. 2d 724 (N.D. Tex. 2006) ........................................................38

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)..................................................................................38

*Nelms v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting
Indus. of U. S. & Canada*,
405 F.2d 715 (5th Cir. 1968) .......................................................................8

*Newell v. Int'l Bhd. of Elec. Workers*,
789 F.2d 1186 (5th Cir. 1986) ....................................................................24

*Normore v. Dallas Indep. Sch. Dist.*,
677 F. Supp. 3d 494 (N.D. Tex. 2023) ......................................................1, 4

*In re OCA, Inc.*,
552 F.3d 413 (5th Cir. 2008) .....................................................................30

*Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*,
    922 F.2d 220 (5th Cir. 1991) ..........................................................................5

*Properties Corp. v. Commerce Savings & Loan Assoc.*,
    121 F.R.D. 284 (N.D. Tex. 1988) ..................................................................27

*Ray v. Young*,
    753 F.2d 386 (5th Cir. 1985) ........................................................................32

*Resol. Tr. v. Grady*,
    24 F.3d 240 (5th Cir. 1994) ..........................................................................6

*Ritz v. O'Donnell*,
    566 F.2d 731 (D.C. Cir. 1977) ..................................................................8, 22

*Russ v. Int'l Paper Co*,
    943 F.2d 589 (5th Cir. 1991) ......................................................................33

*Schrader v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 20*,
    656 F. Supp. 1487 (N.D. Ind. 1987) ..........................................................8, 19

*Serafinn v. Local 722, IBT*,
    597 F.3d 908, 914 (7th Cir. 2010) ..........................................................20, 23

*Signature Indus. Servs., LLC v. Int'l Paper Co.*,
    638 S.W.3d 179 (Tex. 2022) ......................................................................31

*Smith v. Spizzirri*,
    No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024) ................................30

*Stine v. Stewart*,
    80 S.W.3d 586 (Tex. 2002) ........................................................................28

*Stuart v. Bayless*,
    964 S.W.2d 920, 921 (Tex. 1998) ..............................................................31

*Teamsters, Chauffeurs, Warehousemen & Helpers, Loc. 764 v. Greenawalt*,
    880 F. Supp. 1076 (M.D. Pa. 1995) ............................................................37

*United Food and Comm. Workers Int'l Union, Local 911 v. United Food and
    Comm. Workers Int'l*,
    301 F.3d 468 (6th Cir. 2002) ........................................................................9

*United States v. Budzanoski*,
    462 F.2d 443 (3d Cir. 1972) ........................................................................29

*Uptown Grill, LLC v. Shwartz*,
    817 F.3d 251 (5th Cir. 2016) ......................................................................38

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 (5th Cir. 2004) ................................................................5

*Wright v. Union Pac. R.R. Co.*,
    990 F.3d 428 (5th Cir. 2021) ...............................................................22

*Yager v. Carey*,
    910 F. Supp. 704 (D.C. Cir. 1998)...................................14, 17, 18, 24

## STATUTES

UNITED STATES CODE

Labor-Management Reporting & Disclosure Act
    29 U.S.C. § 401 ................................................................... *passim*
    29 U.S.C. § 411...................................................3, 7, 13, 21
    29 U.S.C. § 412....................................................................23
    29 U.S.C. § 431....................................................................29
    29 U.S.C. § 501....................................................32, 35, 36
    29 U.S.C. § 529....................................................................20

TEXAS CIVIL PRACTICES & REMEDIES CODE
    § 38.002...............................................................................32
    § 16.004...............................................................................37

## RULES

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 56 ..................................................................1, 4, 6, 35

The Association of Professional Flight Attendants ("APFA"), its National President, Julie Hedrick, and its National Treasurer, Erik Harris (collectively, "the APFA Defendants") submit this Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Doc. 237.  As a threshold matter, Plaintiffs have failed to comply with Rule 56(c)(1)(A), Fed. R. Civ. P., which requires citation to "particular parts of materials in the record" to support the assertions of fact upon which the motion is based.  This failure alone precludes summary judgment in Plaintiffs' favor.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 543 (N.D. Tex. 2023).[1]  Moreover, the critical factual assertions by Plaintiffs are not even supported by the material to which they broadly allude.  Plaintiffs' Motion also fails as a matter of law because it is based on a series of fundamental misunderstandings of governing law.  Taken together, there are ample grounds to deny Plaintiffs' motion and, as set forth in the APFA Defendants' Motion for Summary Judgment, to enter judgment in favor of the APFA Defendants on all counts.

## SUMMARY OF THE CASE

The essential facts and procedural history of this litigation are set forth in the APFA Defendants' Memorandum in support of their Motion for Summary Judgment, Doc. 235 at ECF 13-33, and will not be repeated in full here except as needed to provide context for the discussion below concerning Plaintiffs' Motion.

Plaintiffs Robert Ross and Eugenio Vargas were elected to APFA National Office for terms which began in April 2016.  Mr. Ross, who was National President, left office early pursuant to a Transition Agreement ("TA") which provided for payment of specified salary and benefits.  The

---

[1] Plaintiffs have not identified the live pleadings as required by the Initial Scheduling Order, *Ross* Doc. 77 at 2-3 n.4 (3).  The APFA Defendants state that the live pleadings are identified in the Memorandum supporting their Motion for Summary Judgment, Doc. 235 at ECF 9-12.

TA included a provision that it would never be disclosed to Union members.  Mr. Vargas, who had been National Treasurer, stayed in office for several months after Mr. Ross' departure. APFA Appx. 523 (Harris Decl.) ¶ 6; APFA Appx. 533-536 (TA).[2]  As Treasurer, Mr. Vargas oversaw and authorized the payments to Mr. Ross under the TA, before himself leaving office later in 2018. APFA Appx. 606-607, 610-11 (Vargas Dep. pp. 9-10, 23-26).

When the current APFA leadership took office in early 2020, at the request of several members of APFA's Board of Directors, the Union conducted a review of the payments to Mr. Ross under the TA.  APFA Appx. 525 (Harris Decl.) ¶¶ 11-14.  In October 2020, the APFA's outside accountant reported to APFA that Mr. Ross had been overpaid approximately $5400 based on Mr. Vargas' application of an incorrect payment formula for his sick and vacation payout. APFA Appx. 525 (Harris Decl.) ¶ 15; Appx. 545 (O'Neil Decl.) ¶ 7 and 559 (Ross Schedule C).[3] APFA sought repayment, but Mr. Ross refused.  APFA Appx. 527 (Harris Decl.) ¶¶ 18-20.  Similar overpayments, based on the same error under Mr. Vargas' oversight, had been made to Mr. Vargas and two other former National Officers, all of whom (unlike Mr. Ross) had repaid the overage. APFA Appx. 523-24 (Harris Decl.) ¶¶ 6-9. The APFA referred Mr. Ross' debt to a collection agency, which Mr. Ross is also suing in this action.  APFA Appx. 527 (Harris Decl.) ¶ 20.

Around the same time, two rank-and-file Union members (Melissa Chinery and Sandra Lee), had been conducting their own wider ranging investigation into the financial practices of former Union representatives, and sought access to the Transition Agreement, among other

---

[2] The APFA's Appendix is filed at Docket 236.  Additional material is provided in the Supplemental Appendix filed herewith.

[3] In connection with that review, the accountant Hal O'Neil produced a memorandum, which Plaintiffs refer to as the "Confidential Memorandum," APFA Appx. 547, and which is central to Plaintiffs' claims.  We discuss that document in more detail below in relation to Plaintiffs' LMRDA due process claim.

documents, from APFA.  APFA Appx. 524 (Harris Decl.) ¶ 10; APFA Appx. 103-4 (Lee statement in Ross arbitration); APFA Appx. 368-375 (Chinery statement in Vargas arbitration). Upon advice of counsel, APFA disclosed the TA to Ms. Chinery and Ms. Lee.  APFA Appx. 509 (Hedrick Decl.) ¶ 9. In November 2020, Ms. Chinery and Ms. Lee filed internal Union charges against Mr. Ross and Mr. Vargas, which led to arbitration under Article VII of the APFA Constitution. APFA Appx. 4-5 (Black Decl.) ¶¶ 10-13. The independent Article VII Arbitrator conducted hearings in which witnesses testified and documentary evidence was submitted, and ultimately issued awards in both cases which held that Mr. Ross and Mr. Vargas, while Union officers, had misused and improperly received tens of thousands of dollars in violation of the APFA Constitution and Policy Manual. AFPA Appx. 6-8 (Black Decl.) ¶¶ 15-23; APFA Appx. 282-284 (Ross Supp. Decision); APFA Appx. 504-506 (Vargas Supp. Decision).  The Arbitrator barred Mr. Ross and Mr. Vargas from holding Union office, based on what he concluded were egregious breaches of their duty to the Union and its members.  *Id.; see also* APFA Appx. 240, 242 (Ross Award); APFA Appx. 480 (Vargas Award).

Mr. Ross and Mr. Vargas then sued the APFA Defendants, and the APFA has counterclaimed for Plaintiffs' breach of fiduciary duty.  As is pertinent to the Plaintiffs' Motion, both Plaintiffs contend that their Article VII Arbitrations violated the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq*.  Plaintiffs claim that their right to a "full and fair hearing" under 29 U.S.C. § 411(a)(5)(C) was violated, and also that the Arbitrator's decision subjected to them to discipline in retaliation for their exercise of free speech.  *See* Doc. 238 at ECF 28-41.

In addition, Mr. Ross claims that the APFA Defendants breached the Transition Agreement in connection with payments made to him in 2018 and with the decision to disclose the document to members in 2020.  Doc. 238 at ECF 20-24.

In connection with their claims, Plaintiffs seek a summary judgment award of over $4 million in damages, attorney's fees and costs.  *See* Proposed Order on Pls.' Mot. For Partial Summ. J (submitted May 1, 2024).

With respect to the APFA's Counterclaim, Plaintiffs turn a blind eye to the final and binding determination of the neutral Arbitrator and move for summary judgment on the ground that, in their view, there is "no evidence" to support the Counterclaim.  Doc. 238 at ECF 15-20.

## ARGUMENT

## I.   PLAINTIFFS HAVE NOT MET THEIR FUNDAMENTAL SUMMARY JUDGMENT BURDEN TO ESTABLISH UNDISPUTED MATERIAL FACTS.

As an initial matter, Plaintiffs' Motion should be denied because they have failed to meet their threshold obligation of establishing the factual basis for their summary judgment motion through specific references to the record.

Fed. R. Civ. P. 56(c)(1)(A) requires that the "party asserting that a fact cannot be … genuinely disputed … must support the assertion by ... *citing to particular parts of materials in the record*" (emphasis added); Local Civil Rule 56.5(c) likewise requires that "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix."  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's position," *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citation omitted), and a failure to provide specific record support for facts asserted at the summary judgment stage is grounds to deny the motion.  *Forsyth*, 19 F.3d at 1537; *Normore*, 677 F. Supp.

3d at 543; *Abrams v. Am. Airlines, Inc.*, No. 4:04-CV-919-Y, 2007 WL 9775358, at *1 n.1 (N.D. Tex. Aug. 30, 2007), *aff'd*, 302 F. App'x 242 (5th Cir. 2008).

Similarly, conclusory and vague sworn statements are insufficient to establish facts for purposes of summary judgment. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004); *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991).

Plaintiffs' Motion falters on these threshold grounds. To be sure, Plaintiffs did submit an Appendix of nearly 1,000 pages in connection with their motion. But their supporting Brief is all but devoid of specific citations to this massive record. Instead, Plaintiffs only offer blanket citations to entire documents, or blocks of documents, forcing the reader to sift through voluminous materials to try to ferret out their alleged factual support.

For example, Plaintiffs generally cite to the entire Ross Affidavit dated April 25, 2024 (Pls.' Appx. 386-96) a total of 65 times in the Brief; cite to the entire Ross Affidavit dated April 14, 2022 (Pls.' Appx. 1-6) a total of 26 times in their Brief; and cite to the entire Vargas Affidavit dated April 25, 2024 (Pls.' Appx. 286-92) a total of 61 times in their Brief. Likewise, they generally cite to their entire hearing excerpts for the Ross Art. VII hearing (Pls.' Appx. 263-285) and Vargas Art. VII hearing (Pls.' Appx. 255-262) seven times each. Plaintiffs also generally cite a 40-page block of communications discussing various topics (Pls.' Appx. 52-92) eight times in their Brief. By way of another example, in support of Mr. Ross' claim for medical damages (Doc. 238 at ECF 43), Plaintiffs cite to over 300 pages of what appears to be his entire medical record from the Veterans Administration (Pls.' Appx. 494-796).

Because the citations are generalized, most of the cited pages have little or nothing to do with the factual assertions which they purportedly support. Such "[v]ague references to an

extensive summary judgment record are insufficient." *Eckhardt v. Qualitest Pharms Inc.*, 889 F. Supp. 2d 901, 904-05 (S.D. Tex. 2012). "As we have said before, 'Judges are not ferrets!' The … failure to 'set forth specific facts showing that there is [or is not] a genuine issue for trial'" warrants an adverse summary judgment ruling. *Resol. Tr. v. Grady*, 24 F.3d 240 (5th Cir. 1994).

Plaintiffs also repeatedly fail to offer *any* citations to the record at all in support of many of their claimed factual assertions and frequently cite documents having nothing to do with the factual claims. By way of example, Plaintiffs claim that "APFA sought out publishing [a] line item on [Mr. Ross'] credit report for the overpayment to injure his ability to obtain credit. (App. pp. 1-6; 52-92)." Doc. 238 at ECF 27. The first citation is to the entire Ross Affidavit (Pls.' Appx. 1-6), which does not support this factual assertion and the second citation (Pls.' Appx. 52-92) is to 40 pages of various communications, none of which support this factual assertion either.

Plaintiffs also offer no citations at all in support of various claims, such as:

- that "[a]ll expenses or purchases that Defendant, APFA, contend were improper were actually made, submitted, and approved via APFA procedures and policy at the time, or were pre-approved by APFA Board of Directors and were approved by the APFA accounting personnel responsible for payments" (Doc. 238 at ECF 17);

- that "[t]here is no dispute [that] … there is no damage suffered by APFA that can form the basis of a breach of fiduciary duty" (*id*. at ECF 19); or

- that the "evidence was controlled by, presented by, testified to, and delivered by the APFA National Officers -- those charged with conducting the disciplinary proceedings" (*id.* at ECF 34).

Additional instances of this practice are described below in connection with the specific arguments to which they relate.

Plaintiffs' failure to meet their threshold obligation of establishing, through specific references to the record, the factual basis for their motion as required by Rule 56 is in itself grounds to deny their summary judgment motion, in addition to the legal issues which we discuss below.

6

## II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR LMRDA CLAIMS.

Plaintiffs argue that they are entitled to summary judgment on their LMRDA claims relating to the Article VII Arbitrations, asserting *first*, that they were denied a "full and fair hearing," and *second*, that the discipline imposed by the Article VII Arbitrator was in retaliation for engaging in speech protected by the LMRDA.   Both grounds are meritless.

### A. The Undisputed Facts Do Not Support Judgment For Plaintiffs On Their LMRDA Due Process Claims.

Contrary to Plaintiffs' assertions, the undisputed evidence shows that the Arbitration process was fully consistent with the requirements of the LMRDA. Notably, Plaintiffs' various contentions regarding procedural issues were never raised with the Arbitrator, nor do Plaintiffs explain to the Court how the alleged procedural shortfalls (if they occurred) could have affected the outcome of their arbitrations.

Article VII of the APFA Constitution allows any APFA member in good standing to file internal Union charges against another member or Union officer for, among other things, theft or embezzlement of Union funds and for willful violations of the Constitution and internal Union policies, as was the case here.  The LMRDA requires certain minimum safeguards be met by a union before discipline can be imposed, including that the member (1) be served with written specific charges; (2) be given a reasonable time to prepare his defense; and (3) be afforded a "full and fair hearing."  29 U.S.C. § 411(a)(5)(C).   Here, it is not disputed that Plaintiffs were served with written specific charges and were given a reasonable time (9-12 months each) to prepare their defense.  Plaintiffs claim only that they were not afforded a "full and fair" hearing.

As Plaintiffs concede, the LMRDA's "'full and fair hearing' clause does not require unions to provide the 'full panoply of procedural safeguards found in criminal proceedings,' but only to

comply with the 'fundamental and traditional concepts of due process.'" Doc. 238 at ECF 30 (citation omitted). "If the charging party … presents witnesses or other evidence at the proceeding, and the respondent is offered both full opportunity to test the validity of that evidence and the opportunity to call the charging persons as witnesses (even as hostile witnesses) in the event he thinks their testimony will help his case, a full and fair hearing is assured." *Ritz v. O'Donnell,* 566 F.2d 731, 736 (D.C. Cir. 1977). The LMRDA *does not* require (1) "the more stringent evidentiary standards" applicable in court (*Schrader v. Sheet Metal Workers Int'l Ass'n Local Union No. 20*, 656 F. Supp. 1487, 1495 (N.D. Ind. 1987)); (2) pre-hearing discovery (*Conway v. Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers*, 209 F. Supp. 2d 731, 751 (N.D. Ohio 2002), *aff'd* 93 F. App'x. 780 (6th Cir. 2004); or (3) the right to counsel (*Curtis v. Int'l All. of Theatrical Stage Emps.*, 687 F.2d 1024, 1028 (7th Cir. 1982)).

As long as the LMRDA's minimal due process requirements are met, courts review the results of such proceedings only to determine whether there was "some evidence" to support the charges. *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246-47 (1971). "A stricter standard [of review] ... would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs and would require courts to judge the credibility of witnesses on [a] ... cold record." *Id.; see also Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461, 1468-69 (6th Cir. 1992). "Once the court determines that the findings of the union's tribunal were 'not without any foundation in the evidence,' that the proof adduced related to appropriate charges, and that procedural due process was observed, the action of the union tribunal must be upheld." *Lewis v. AFSCME*, 407 F.2d 1185, 1198 (3d Cir. 1969); *see also Nelms v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of U. S. & Canada*, 405 F.2d 715, 718 (5th Cir. 1968) ("Our review of the [internal union disciplinary] findings is limited in nature, and we

must exercise a sound reluctance to interfere in internal union affairs."); *Halsell v. Local Union No. 5, Bricklayers & Allied Craftsmen*, 530 F. Supp. 803, 807 (N.D. Tex. 1982) ("The Court said [in *Hardeman*] that it was up to the unions, not the Courts, to define the conduct which would lead to disciplinary conduct.").

Plaintiffs cite *Martin v. Local 556*, No. 3:14-CV-0500, 2014 WL 4358480 (N.D. Tex. Sept. 3, 2014), seemingly for the proposition that a more expansive judicial review of internal union discipline is available if "there is evidence of impropriety in the proceedings."  Doc. 238 at ECF 33.  There is no such evidence here, but in any event the quoted language does not appear in *Martin*, nor in any case we have found involving LMRDA Title I in this Circuit.  Instead, the quoted language is found in *Hoffman v. Kramer*, 362 F.3d 308, 316 (5th Cir. 2004), which addresses the limited role of courts in connection with fiduciary duty claims by union members, and states in full that "The federal courts do not sit as a 'super review' board *of internal union grievances* unless there is evidence of impropriety in the proceedings" (emphasis supplied).[4]  And the case law, including *Martin*, conclusively establishes that review of internal union discipline is strictly limited to the "full and fair hearing" and "some evidence" standards.  *See Martin*, 2014 WL 4358480 at *9-12.

### 1. There Was Considerably More Than "Some Evidence" to Support the Arbitrator's Decisions.

The evidence of record establishes that the LMRDA standard for union discipline is amply satisfied here. Substantial testimony and documentary evidence were introduced during the

---

[4] *Hoffman* cited, in turn, two other appellate cases involving Section 501, and not involving review of internal union discipline under the "full and fair hearing" requirement.  *United Food and Commercial Workers Int'l Union, Local 911 v. United Food and Commercial Workers Int'l*, 301 F.3d 468, 475 (6th Cir. 2002); *Corea v. Welo*, 937 F.2d 1132, 1143 (6th Cir. 1991).

hearings to support the charges against Mr. Ross and Mr. Vargas, both of whom were represented at the hearings by parties of their own choosing.   APFA Appx. 6-8 (Black Decl.) ¶¶ 15-16, 20-21, 23; APFA Appx. 219-42 and 282-84 (Ross Awards), 442-480 and 504-06 (Vargas Awards); APFA Appx. 573-74 (Ross Dep. 74-80); APFA Appx. 629-630 (Vargas Dep. 102-107).   The Charging Parties submitted dozens of exhibits and called numerous witnesses including both rank-and-file members and past and present elected officers who testified as to the Union's financial procedures and the expenses paid to or approved by the Plaintiffs.   *Id.*   Plaintiffs actively participated in the hearing, submitting their own exhibits, testifying, and calling and cross-examining witnesses, including the Charging Parties, and took the stand in their own defense. APFA Appx. 219-20, 226-231 (Ross Award summarizing hearing procedures and witness testimony), 442-43, 448-61 (Vargas Award summarizing hearing procedures and witness testimony); APFA Appx. 109-10 and 143-44 (Ross Art. VII Hearing Tr. Witness and Exhibit indexes); APFA Appx. 287-88, 355-56, and 387-88 (Vargas Art. VII Hearing Tr. Witness and Exhibit indexes).   A transcript was provided, and both Mr. Ross and Mr. Vargas submitted detailed post-hearing briefs in support of their defenses.   APFA Appx. 6-7 (Black Decl.) ¶¶ 15-16, 21; APFA Appx. 187-213 (Ross Brief); APFA Appx. 404-41 (Vargas Brief).[5]

Arbitrator Armendariz issued detailed and considered decisions citing the evidentiary record.   His supplemental awards followed the independent financial reviews he had ordered.

---

[5]  A more complete summary of the Article VII proceedings for Mr. Ross and Mr. Vargas can be found in the Declaration of APFA National Secretary Joshua Black found in the APFA's Appendix filed in support of its Motion for Summary Judgment.   APFA Appx. 4-7 (Black Decl.) ¶¶ 10-20 (discussing Ross charges and hearing procedures) and ¶¶ 21-23 (discussing Vargas charges and hearing procedures), and Exhibits referenced therein.   A summary of the applicable Constitutional and Policy Manual procedures regarding Article VII charges and hearings can be found as well in Mr. Black's Declaration, and the Exhibits cited in support therein.   APFA Appx. 1-3 (Black Decl.) ¶¶ 3-8; APFA Appx. 30-35 (APFA Constitution, Art. VII); APFA Appx. 62-67 (APFA Policy Manual, Article VII Administrative Policies and Procedures).

Arbitrator Armendariz ultimately ruled that Plaintiffs were guilty on most of the charges levied against them and should be barred from union office. APFA Appx. 219-42 (Ross Award); APFA Appx. 282-84 (Ross Supp. Award); APFA Appx. 442-80 (Vargas Award); APFA Appx. 504-06 (Vargas Supp. Award). Because the "some evidence" standard was met, there is no basis to reverse the outcome of the Article VII Hearings. *Hardeman*, 401 U.S. at 242-43; *Brock*, 790 F.2d at 510, 512; *Corea*, 937 F.2d at 1135; *McCarthy v. IAM*, Case No. 21-1673, 2021 WL 5766569, *4 (3d Cir. Dec. 6, 2021) (some evidence standard met when "testimony was offered to support each of the alleged acts of misconduct and the fact finders credited that testimony"; plaintiff's "denials or explanations for his actions do not negate that substantial evidence supported the verdict against him").

### 2. Plaintiffs Each Received A Full and Fair Hearing.

In support of their due process claims, Plaintiffs raise several meritless and largely unsupported allegations, including that they were denied full discovery or that evidence was "altered" because they did not receive a copy of the O'Neil "Confidential Memorandum" prior to the hearing (Doc. 238 at ECF 33-34); that they were prevented from making certain arguments to the Arbitrator or calling certain witnesses (*id.* at ECF 35-37); that they were not given "proportionate time" to put on a defense (*id.* at ECF 34); and that the "bulk of the documents admitted into [the] record … were unreliable hearsay" (*id.* at ECF 36). Notably, with the exception of the "Confidential Memo," none of these issues was raised by either Mr. Ross or Mr. Vargas in their post-hearing briefs to the Arbitrator. *See* APFA Appx. 185-213 (Ross Brief); APFA Appx. 404-41 (Vargas Brief). And, as shown below, the undisputed facts do not make out a due process claim under the LMRDA on any asserted ground.

11

***Discovery and Confidential Memorandum***.  While Plaintiffs' claim that they were entitled to "discovery" here (Doc. 238 at ECF 33-34), it is well-settled that a union member facing union disciplinary proceedings is not, as a matter of right, entitled to discovery under the LMRDA.  *See Martin*, 2014 WL 4358480, at \*8;  *Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 937 F. Supp. 2d 93, 117 (D. Me. 2013) (plaintiff "was not denied his right to a full and fair hearing by his inability to force individuals to appear at the hearing to testify on his behalf").

Moreover, the key document which Plaintiffs claim they were denied access to, the "Confidential Memorandum" drafted by accountant Hal O'Neil, Doc. 238 at ECF 13, 33-34, does not support their underlying claim and in any event was provided by Mr. Ross to the Article VII Arbitrator prior to his ruling.[6]  The Arbitrator held that the memorandum did not raise any new issue, and went on to reject Mr. Ross' argument which was based on that memorandum.  There is no plausible claim that the timing of the distribution of that memorandum to Plaintiffs  gives rise to a violation of  Title I.

As explained more fully in the memorandum supporting the APFA Defendants' motion for summary judgment, that memorandum was drafted by APFA's outside accountant Hal O'Neil in connection with a request to determine whether Mr. Ross, like the other National Officers he had served with, had been overpaid any amount in connection with payment for sick and vacation days when he left office.  In that regard, Mr. O'Neil analyzed whether Mr. Ross had been paid the correct

---

[6] Specifically, Plaintiffs claim that "[r]emoving the Confidential Memo from the original document delivered by the CPA and citing his credentials as a CPA constitutes to fraudulent misrepresentation" and that "putting forth fraudulent misrepresentations in such an egregious manner during the *discovery process* and hearing deprived the Plaintiffs of their right [to] inspect the documents, question witnesses, and properly mount a defense based on the evidence."  Doc. 238 at ECF 33-34 (emphasis added).

number of sick and vacation days; and also whether the correct daily rate had been applied to those days.  APFA Appx. 525 (Harris Decl.) ¶ 14; Appx. 544-45 (O'Neil Decl.) ¶ 5.

In late September 2020, Mr. O'Neil provided APFA National Treasurer Harris with a set of "workpapers" regarding the payments to Mr. Ross and the other Officers who served with him (Mr. Vargas, Ms. Martin and Ms. Dunaway).  APFA Appx. 525 (Harris Decl.) ¶ 15; APFA Appx. 548-559 (Schedules).  With respect to Mr. Ross, the workpapers included a 2-page document (Schedule C) labelled "Overpayment Calculation" which showed, similarly to the calculations for the other former Officers, the amounts he had been "paid in error", and a "Total overpayment – due to APFA" of $5,436.47.  APFA Appx. 545 (O'Neil Decl.) ¶ 7 and 559 (Ross Sch. C); APFA Appx. 525-26 (Harris Decl.) ¶¶ 15-16. Mr. O'Neil also provided National Treasurer Harris with the memorandum which Plaintiffs call "the Confidential Memorandum."  Appx. 545, 547 (O'Neil Decl. ¶ 8 and Memorandum).  The memorandum discussed the "overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers," and noted that the TA which Mr. Ross had signed "doesn't specify that the payments be made in accordance with policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement."  APFA Appx. 547. As described in his Declaration, by that language, Mr. O'Neil meant that the *number* of days of accrued sick and vacation pay was consistent with the TA. Mr. O'Neil also concluded, however, that the *daily rate* applied to each such day was in excess of that which was allowed, and therefore was an overpayment as reflected on Schedule C. APFA Appx. 545-46 (O'Neil Decl.) ¶ 8; APFA Appx. 526 (Harris Decl.) ¶¶ 16-17.

13

Accordingly, even if there was any obligation for APFA to produce the Confidential Memorandum to Mr. Ross or Mr. Vargas in connection with their Article VII arbitrations, and Plaintiffs have not shown that there was, Plaintiffs cannot show that the nonproduction materially impacted their defense here. Even if "an internal union rule has been violated, Section 411(a)(5)(C) gives union members a cause of action only when that violation severely impairs the member's ability to prepare and present a defense, or by increasing the risk that a decision maker will reach an erroneous determination." *Yager v. Carey*, 910 F. Supp. 704, 714 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998).   The undisputed record, including the uncontradicted sworn statement of Mr. O'Neil, demonstrates that, far from being "exculpatory", the memorandum and its Schedule C reveals that accountant O'Neil concluded that Ross was overpaid in his sick and vacation payout by $5,436.47, based on the inflated daily rate applied by Mr. Vargas.  APFA Appx. 545-46 (O'Neil Decl.) ¶¶ 7-8.[7]

Moreover, and independently dispositive, Mr. Ross provided the O'Neil Memorandum to the Arbitrator prior to the disciplinary award against him, APFA Appx. 215-16, and the Arbitrator ruled that the issue had already been fully explained before rejecting Mr. Ross' arguments in his decision.   APFA Appx. 217-18; *see also* APFA Appx. 229 (Arbitration Award (Ross)) ("Defendant Ross argued that all payouts and formula used to calculate the payout for vacation, sick and end of term buyout of accrued and unused Sick and Vacation days …was the product of a Transition Agreement and not specific to APFA Policy."); APFA Appx. 230 (describing same argument by Mr. Ross and referencing O'Neil memorandum).  There was not, and could not have been, any prejudice to Mr. Ross.

---

[7] Plaintiffs' assertion that Mr. O'Neil somehow "disavowed" his own "assertion of overpayment" contained in the same document (Schedule C) is, as Mr. O'Neil explains, simply incorrect. APFA Appx. 545-46 (O'Neil Decl.) ¶¶ 7-8.

It also bears emphasis that this document only pertains to *one* of the many charges against both Plaintiffs for which they were found guilty, and thus could not be the basis to undo the Awards in their entirety. *See Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454, 462 (8th Cir. 2010) (upholding discipline when there is "*some* evidence to support some of the charges brought against him").[8]

***Ability to Discuss Transition Agreement***.  Plaintiff argues that "[m]ost importantly, neither Ross nor Vargas were allowed to introduce any evidence related to Ross's Transition Agreement." Doc. 238 at ECF at 35.  In support, they cite excerpts from both Article VII Hearings, as well as Mr. Vargas' and Mr. Ross' Affidavits in this matter.  *Id.*  None of these documents even arguably support this claim.[9]  To the contrary, while Plaintiffs cite to an objection made by the Charging Parties during Mr. Vargas' hearing over certain questions related to the Transition Agreement (at

---

[8] Also unavailing is Plaintiffs' argument that they were denied due process because the APFA Executive Committee did not receive the Confidential Memorandum prior to voting that the charges were procedurally proper and referring the matter to the Article VII Arbitrator.  Doc. 238 at ECF 34.  It is not the Executive Committee's role to review the evidence and issue a decision on the merits of Article VII charges.  Rather, it simply reviews the charges for timeliness, specificity and validity.  APFA Appx. 3-4 (Black Decl.) ¶¶ 5, 12 and APFA Appx. 31-32 (Constitution, Art. VII, § 3).  As Mr. Ross acknowledged in his Article VII Post-Hearing Brief, "The only requirement of the EC to find Validity and to pass charges, true or false, on to … Arbitration … is to deem the accusations as Valid simply under the notion that 'If the charges were true, then they are Valid.'" APFA Appx. 191.

[9] In support of this claim and their claim that the "*dominant* charge at issue" in the Article VII proceedings was the "alleged overpayment made by Vargas to Ross based on the terms of Ross's Transition Agreement," (Doc. 238 at ECF 35), Plaintiffs cite generally to the entire Ross and Vargas Article VII Hearing Transcript excerpts (Pls.' Appx. 255-285), entire Ross Affidavits (*id.* at 1-6, 386-96), entire Vargas Affidavit (*id.* at 286-92), and the entire Arbitration Awards issued against them (*id*. at 115-38, 309-50), but none of these documents support the allegation that they could not discuss the Transition Agreement or that the alleged vacation/sick leave overpayment was the "dominant" charge.  Contrary to their claims, the cited record pages instead reveal that the Transition Agreement was discussed at the hearings, as were multiple other issues wholly separate from that document.

page 313 of the hearing transcript, Pls.' Appx. 261), they misleadingly fail to include the *next* page in the transcript (page 314), in which the Arbitrator *overruled this objection* and stated that he would "allow this" line of questioning.  *Compare* Pls' Appx. 261 (Tr. p. 314) *with* APFA Supp. Appx. 695-96 (Tr. pp. 313-14).

The record also shows that Plaintiffs were fully able to discuss the Transition Agreement, which was introduced into the record in both cases; discussed at length in both Plaintiffs' post-hearing briefs;[10] and raised in Mr. Ross' request to re-open the record.[11]  Their arguments about the Transition Agreement were also summarized at length in the Arbitrator's Awards.[12]

---

[10]  *See, e.g.,* APFA Appx. 192 (Ross Post-Art. VII Hearing Brief) (arguing "The Ross TA, and not the Policy Manual, was the controlling document for the … alleged violations"); APFA Appx. 198 (arguing "nowhere in the … Ross agreement[s] does it state payments were to be made in accordance with the APFA Policy Manual."); APFA Appx. 207 (arguing "All payouts and formula used to calculate the payout for vacation, sick and end of term buyout of accrued and unused Sick and Vacation days … was the product of a Transition Agreement and not specific to APFA Policy. Through sworn testimony, former APFA National Treasurer, Eugenio Vargas, used full salary vs basic salary in these calculations, which include MEA and SAF in compliance with the terms of the controlling document, the Ross TA."); APFA Apps. 404-41 (Vargas Post-Art. VII Hearing Brief ) (the term "Transition Agreement" appears 38 times in Vargas' Brief); APFA Appx. 429 (arguing "The calculations made by Mr. Vargas was based on **Full Salary** as was designated in the Ross 'Transition Agreement' and not **Basic Salary** as charged by Members Melissa Chinery and Sandra Lee.") (emphasis in original).

[11]  *See* APFA Appx. 215-216 (Ross' Request to Reopen the Hearing) (attaching Confidential Memorandum and arguing that it was "exculpatory with regard to the calculation Ross' sick and vacation pay as well as his moving expenses under his transition agreement.").

[12] *See* APFA Appx. 229 (Arbitration Award (Ross) ("Defendant Ross argued that all payouts and formula used to calculate the payout for vacation, sick and end of term buyout of accrued and unused Sick and Vacation days occurred after former APFA President Ross had left office and was the product of a Transition Agreement and not specific to APFA Policy."); *id.* at 230 ("Defendant Ross argued that on January 14, 2022, an APFA document surfaced that was withheld from document retrieval that corroborates the Policy Manual was not the controlling document to the Ross TA and therefore Ross was paid in compliance with the TA. This document would have been exculpatory to the defense of Mr. Ross on this and other matters pertaining to the Ross TA had it been provided."); APFA Appx. 455 (Arbitration Award (Vargas)) (summarizing testimony and stating, "the Ross Transition Agreement was introduced into the record and discussed. Harris

Finally, this argument regarding the Transition Agreement evidence also fails because Plaintiffs have neglected to even suggest, much less establish, exactly *what* they were not able to get into the record regarding the Transition Agreement nor to show how that would have affected the outcome. There is no ground to find an LMRDA violation.

***Ability to Call Witnesses.*** In a similar vein, Mr. Ross complains that he was "unable to call most of his witnesses to testify" at the hearing, specifying that although he had identified Mr. Vargas and Ms. Martin as potential witnesses, they did not testify. Doc. 238 at ECF 14. However, Mr. Ross offers no evidence as to what these witnesses would have testified to, how he was impeded from calling these friendly witnesses, nor that his defense was materially harmed by the absence of their testimony as required for an LMRDA due process claim. *Yager*, 910 F. Supp. at 717. He also complains that although he subpoenaed Defendant Hedrick to testify, she did not appear at the hearing. However, this alone does not amount to a due process violation. *Keenan*, 937 F. Supp. 2d at 117 (plaintiff "was not denied his right to a full and fair hearing by his inability to force individuals to appear at the hearing to testify on his behalf"). As with his other allegedly missing witnesses, he also fails to show how this may have materially impacted his case. Further, there is no evidence that he raised any of these issues with the Arbitrator at any stage; instead, at the end of the hearing, when the Arbitrator asked Mr. Ross if he had any more witnesses, his representative simply replied, "no." APFA Appx. 181.[13]

***Denial of "Proportionate Time."*** Both Plaintiffs argue that they were "deprived of proportionate time" to present their defenses, Doc. 238 at ECF 34, although no evidence regarding

---

confirmed this was the document given to the Plaintiff. Harris read into the record Item No. 4, the economic terms of the Ross Transition Agreement.").

[13] Notably, Mr. Ross chose not to take the deposition of Ms. Hedrick in this litigation, further belying any claim that her testimony may be relevant to the underlying charges.

17

Mr. Vargas is submitted in this regard.  *Ibid.*   Plaintiffs contend that "A review of the Disciplinary Hearing transcripts shows that Ross did not have an adequate opportunity to present evidence," *id.*, but the cited Transcript pages are merely indexes of witnesses and exhibits, which show that Mr. Ross or his representative (Ms. Guidry) cross-examined witnesses, Pls.' Appx. 104, called their own witnesses, Pls.' Appx. 111, and introduced multiple exhibits, Pls.' Appx. 105.  There is no basis to find that he was denied any opportunity or that such denial impaired the fairness of the proceedings.  He does not show what evidence he would have put on, or what impact that evidence may have had. And, as noted, no evidence regarding Mr. Vargas has been presented on this point. Their unfounded and speculative claim regarding "proportionate time" is not grounds for summary judgment.

***"Bulk" of Documents Admitted "Were Unreliable Hearsay."***  Plaintiffs make the blanket assertion that "the bulk of the documents admitted into the record and taken under review to render the Arbitration Award were unreliable hearsay documents."  Doc. 238 at ECF 36.  There is simply no support in the record for this assertion either.  Plaintiffs fail to identify which documents were allegedly "unreliable hearsay" or why, much less show (as they must) how they materially impacted their defenses.  *See Yager*, 910 F. Supp. at 717 ("Under the LMRDA, plaintiffs must point out specific prejudice that resulted from the admission of the documents, that is, prejudice that impaired their ability to present their case. Because the court can find no such prejudice, the court now finds that this procedural irregularity did not deny them a full and fair trial.").   While Mr. Ross contends that "most importantly" he felt misled into waiving a hearsay objection to documents produced pursuant to a subpoena, he does not show what those documents are, whether they were improperly admitted under any standard, or how the admission unfairly prejudiced him. Doc. 238 at ECF 14.  And in any event, it is well-settled that federal evidentiary standards are

inapplicable to internal union disciplinary proceedings and "hearsay" is not *per se* improper. *Schrader*, 656 F. Supp. at 1495 ("the more stringent evidentiary standards which ordinarily apply in proceedings in this court .… simply do not apply"); *see also* APFA Appx. 65 (APFA Policy Manual at 17.4) (Article VII Arbitrator is the "judge of the relevancy and materiality of the evidence offered" and conformity with the legal rules of evidence is not required.).[14]

Mr. Vargas also claims that "evidence of APFA harassment and intimidation of witnesses was excluded from the hearing," Doc. 238 at ECF 13, citing a notarized statement from the former APFA Office Coordinator, LaDonna Casey, Pls.' Appx. 294-95. That statement mostly addresses how furniture was handled in the period August 1996 to November 2018, and concludes with the statement that "Due to dangers associated with COVID and my fears of retaliation I could not attend this hearing in person." Pls.' Appx. 295. The hearing transcript shows that the Vargas Defense attempted to submit this document into evidence regarding the furniture issues, and advised the Arbitrator that Ms. Casey could not attend the hearing, "due to comorbidity with regard to COVID." APFA Supp. Appx.683-86 (Vargas Art. VII Hearing Tr.). Mr. Vargas did not contend in the hearing that the statement by Ms. Casey had anything to do with alleged "harassment and intimidation of witnesses," nor was it offered for that purpose. *Id.* The Charging Parties objected to the document because the witness did not appear in-person and could not be cross-examined.

---

[14]  Plaintiffs also make the sweeping accusation that *all* the "documents that formed the basis of the charges were unreliable." Doc. 238 at ECF 13. They do not produce or even discuss all the documents, but instead cite only to an email dated August 10, 2021 from Erik Harris to the Charging Parties updating them on an outstanding record request and stating that he was still looking for certain financial records and expense reports and would follow up with them regarding same. Pls.' Appx. 385. Harris noted in this email that they had recently been seen by his staff and later testified that he had found some of the materials and that the few materials that still remained missing did not include materials related to Mr. Ross or Mr. Vargas. *Id.*; APFA Supp. Appx. 691-93 and 697-98 (Vargas Art. VII Hearing Tr.). This email hardly demonstrates that any part of the record was "unreliable" much less that any "unreliable" documents "severely" impacted their defense.

The Arbitrator sustained the objection and declined to accept the statement into evidence.  *Id.*
Plaintiffs point to no evidence of harassment or intimidation of witnesses, nor did they make such
a claim to the Arbitrator.

Based on the foregoing, Plaintiffs' due process claims fail as a matter of law.

### B.  Plaintiffs Cannot Show That Any Protected Speech Was The "But For" Cause Of The Arbitrator's Decisions.

Plaintiffs both contend that the discipline assessed by the Arbitrator was in retaliation for
some form of protected free speech related to their views against merging APFA with another
union, in alleged violation of 29 U.S.C. § 529.   Doc. 238 at ECF 38-40.  They provide nothing
more than pure speculation for this theory, and do not establish any basis for a judgment in their
favor.

For this claim, the burden is on Plaintiffs to produce evidence on which a jury could find
that the exercise of free speech rights "was not merely a motivating factor, but a necessary
condition or a 'but-for' cause" of the discipline. *Serafinn v. Local 722, IBT*, 597 F.3d 908, 914 (7th
Cir. 2010); *Hudson v. Am. Fed. of Gov't Emps.*, 630 F. Supp. 3d 214, 225 (D.D.C. 2022); *Keenan*,
937 F. Supp. 2d at 109.[15]  It is insufficient for a plaintiff to assert that a retaliatory purpose was a
"motivating" or "contributing" factor in the union's disciplinary action because a "mixed-motive
theory of liability is *never* proper in a suit brought under the LMRDA." *Serafinn,* 597 F.3d at 914
(emphasis in original).  Plaintiffs cannot meet their burden here.

---

[15] The Fifth Circuit has not yet ruled on this precise issue.  However, as explained by the Seventh
Circuit in *Serafinn*, 597 F.3d at 914-15, the requirement of "but-for" causation is mandated by the
statutory language and the Supreme Court's holding regarding similar language in *Gross v. FBL
Fin. Servs, Inc.*, 557 U.S. 167, 174-76 (2009). The Fifth Circuit has applied the same reasoning in
applying other similarly worded statutes. *See*, *e.g.*, *United States ex rel King v. Solvay Pharms.,
Inc.*, 871 F.3d 318, 333 (5th Cir. 2017).

It bears emphasis here that the discipline at issue was imposed by a neutral third-party arbitrator.  Neither the APFA nor the individual defendants brought the charges, nor did they play a role in the Arbitrator's decision.  Plaintiffs falsely argue that Ms. Chinery was "representing the union" when she filed Article VII charges against the Plaintiffs (Doc. 238 at ECF 8) and that the APFA National Officers, including Defendants Hedrick and Harris "controlled" the evidence and were "charged with conducting the disciplinary proceedings" (*id.* at ECF 34).  But the record, including the record cited by Plaintiffs, is completely devoid of any evidence in support of these allegations.[16]  Indeed, the record clearly shows that the Charging Parties brought the charges against Plaintiffs on their own accord.  Neither the APFA, nor Defendants Hedrick and Harris, were involved in either bringing the charges or in issuing the final disciplinary awards, and that the only decision-maker was Arbitrator Armendariz. *See, e.g.*, APFA Appx. 293, 366-67 and 374-81 (Chinery testimony); APFA Appx. 4-5 (Black Decl.) ¶¶ 8-11; APFA Appx. 510 (Hedrick Decl.) ¶ 11; APFA Appx. 527 (Harris Decl.) ¶ 22.

Plaintiffs do not dispute that the constitutional provisions and rules they were charged with and disciplined for violating were reasonable rules as to the responsibilities of officers towards the organization and which the Union was authorized to enforce.  *See* 29 U.S.C. § 411(a)(2). Moreover, during the hearing, both Plaintiffs admitted to engaging in financial irregularities and the Arbitrator found that the record clearly supported a finding of guilt that they violated these reasonable rules.   "Where the actions of the union member do not fall within the free speech

---

[16]In support of the accusation that Ms. Chinery was "representing the union" when she filed charges, Plaintiffs' generally cite to the entire Ross Affidavit and entire Vargas Affidavit. However, neither document supports this assertion.  In support of the accusation that the National Officers "controlled" the evidence and were "charged with conducting the disciplinary proceedings," Plaintiffs do not cite to any support in the record at all. *See* Doc. 238 at ECF 8 and ECF 34.

protection of Section 101(a)(2), however, the union member cannot resort to that section to nullify disciplinary action." *Ritz,* 413 F. Supp. at 1377.

At best, Plaintiffs only claim that their general opposition in 2016 to APFA merging with another union which allegedly ran contrary to the political views of one of Plaintiffs' accusers (Chinery) in the Article VII proceedings.  Doc. 238 at ECF 38; *see also id.* at ECF 7 ("On April 2, 2016, the day after Ross took office, [Ms. Chinery] … pledged to remove Ross from office."). This speech was *four* years before the charges were even filed, timing which "suggests … no causality at all."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *see also Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433-34 (5th Cir. 2021).

Plaintiffs position on a merger was not a basis for any of the charges, and there is no evidence that the neutral arbitrator was even aware of, much less influenced by, this alleged political dispute.[17]

Rather than meet their burden, Plaintiffs instead present the unfounded argument that the Article VII arbitrations were part of a "pattern of intimidation and stifled dissent."  Doc. 238 at ECF 39; *see generally id.*, at ECF 37-41.  This argument is fundamentally misdirected.  Plaintiffs' core burden here is to prove that retaliation for their protected speech was the "but-for", reason for

---

[17]  Plaintiffs' generalized contentions are insufficient to establish a triable issue as to causation – *i.e.*, that the discipline was imposed *because of* protected activities. *See, e.g.*, *McCarthy*, 2021 WL 5766569 at *4 (rejecting argument that alleged activity from 2016 influenced a disciplinary award issued three years later); *Commer v. McEntee*, 121 F. Supp. 2d 388, 398 (S.D.N.Y. 2000), *aff'd*, 15 F. App'x 21 (2d Cir. 2001) ("[A]lthough Commer alleges that he was punished because of his ongoing dissent within the union, he has shown no connection between the panel's decision and that speech activity. Rather he relies on the generalized contention that, since his vociferous criticism necessarily would have created animus towards him with the [union] hierarchy, the discipline rendered against him must have been motivated by that animus."); *Johnson v. Holway*, 439 F. Supp. 2d 180, 228 (D.D.C. 2006) ("This burden [of showing causation] cannot be satisfied by the unsupported contention that plaintiff's 'vociferous criticism necessarily would have created animus' and, as a result, retaliation.").

the arbitration outcomes.  *See, e.g.*, *Serafinn*, 597 F.3d at 914.  Plaintiffs' "pattern" argument is derived from case law which goes only to a different question of whether the removal of Mr. Ross from office by the arbitrator is actionable at all under 29 U.S.C. § 412, which generally protects the rights of union *members* and not *officers* as such.  As Plaintiffs acknowledge, Doc. 238 at ECF 37-38, the *Adams-Lundy* and *Martin* decisions they cite deal with an exception to that general rule, and hold that if a removed union officer can show that removal was part of a broader "pattern of intimidation" of members, then he or she may come within the coverage of the statute.  *Adams-Lundy v. APFA*, 731 F.2d 1154, 1157-59 (5th Cir. 1984); *Martin v. Local 556, TWU*, Civ. No. 3:14-cv-500, 2014 WL 4358480 at *6 (N.D. Tex. Sept. 3, 2014).  Defendants do not dispute that Mr. Ross, as an APFA member, may seek to assert LMRDA claims in connection with the Article VII arbitration.  And even when an "ousted officer" is able to challenge his removal, "his right to bring that action is no greater than that of any individual member of the union."  *Adams-Lundy*, 731 F.2d at 1158.   Accordingly, Mr. Ross must still meet his burden of showing that LMRDA-protected free speech activity was the "but for" cause of his discipline. Neither Plaintiff has even attempted to meet that burden here.

Plaintiffs were charged with, and found guilty of, financial malfeasance during their tenure as APFA officers and not for the exercise of any right enumerated in Title I of the LMRDA.  Their retaliation claim cannot be sustained.

### C.  **The Undisputed Facts Do Not Support Plaintiffs' Claims For Damages**.

Plaintiffs make a far-fetched claim for a summary award of substantial "emotional distress" and "reputational" damages for the alleged LMRDA violations, Doc. 238 at ECF 42-43.  But even if they could succeed on the merits of the liability claims, the claims for damages are not appropriate for summary judgment.  To be awarded emotional distress damages, Plaintiffs bear the

burden of "convinc[ing] the trier of fact that he actually suffered distress *because of* the" legal violation they establish.  *Carey v. Piphus*, 435 U.S. 247, 263 (1978) (emphasis added); *see also Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1190 (5th Cir. 1986) (applying *Carey* to LMRDA Title I claim).  Plaintiffs cannot prove liability nor even begin to show the required causal nexus between the alleged violations and the damages claimed.[18]

With respect to emotional distress, Mr. Ross seeks summary judgment for over $300,000 in damages, which he calculates by multiplying the "average cost of cardiac related Emergency Room Visits" obtained from a website, by 500%.  Doc. 238 at ECF 43; Pls.' Appx. 395 (Ross Aff.) ¶ 32 and n.1.  Leaving aside the totally speculative methodology, the documentary evidence submitted by Mr. Ross reveals a genuine issue as to whether he suffered emotional damages "because of" the conduct of any defendant herein, requiring denial of his motion as to damages even if liability could be established.

Mr. Ross contends that in September 2023 he was "diagnosed with depression and anxiety" that he attributes to "the matters in this case" and that he suffered from a series of "cardiac episode[s]" attributable to "mental distress."  Pls.' Appx. 393-94 (Ross Aff.) ¶ 31.  But the medical records he submitted show that, to the contrary, Mr. Ross' mental health issues and diagnoses long predated the events over which he now sues and that he has consistently attributed much of his concerns to causes having nothing to do with the union.  Without belaboring the point, the records

---

[18] Mr. Ross and Mr. Vargas also make a cursory claim for alleged "actual damages" from the Article VII process, Doc. 238 at ECF 42-43, but with no explanation of the factual or legal basis for this gratuitous demand other than citations to over a hundred pages of appendix material. Their claim for punitive damages, based on a sweeping narrative of a years-long conspiracy, is supported by no factual material and is in fact contrary to the undisputed record of the Article VII proceedings. The failure to provide factual support compels denial of these claims as well. *See, e.g. Forsyth*, 19 F.3d at 1537.

show that: Mr. Ross had symptoms of depression and anxiety as early as 2012 (Pls.' Appx. 508); underwent a psychiatric hospitalization in 2019 (Pls.' Appx. 527); complained to his physician regarding "work related stress" in September 2020, prior to the Article VII charges (Pls.' Appx. 686); and in 2023 "reported significant stressors with family and work…. Reported feeling depressed as his career is not where he thought it would be … Noted he has made sacrifices for his family and … [that] commuting to work to Dallas … has added 'exponentially' to his stress level" (Pls.' Appx. 526-27).

And, contrary to Mr. Ross' claim that his emotional reaction to the internal union discipline caused him to have cardiac distress, his medical records show that when subject to eight days of heart monitoring in 2022, his physician concluded that his reports of "thinking about my union and how they ruin my life/family" did *"not correlate* with significant arrhythmia." Pls.' Appx. 613 (emphasis supplied). A reasonable factfinder could determine, even assuming a finding of liability, that other factors caused the claimed emotional distress and cardiac issues, precluding Mr. Ross' attempt for summary judgment on his alleged damages.

Mr. Ross also claims "reputational damages" in the form of compensation for lost job opportunities at American Airlines. Doc. 238 at ECF 26 (describing "reputational damages") and ECF 43 (claiming "reputational damages" for LMRDA claim). This wholly speculative claim is not sustainable on summary judgment. Mr. Ross states in his Affidavit that in April 2021 (which is after the Article VII charges had been filed, but well before the Article VII Award was issued) he "discussed my consideration for hire in a position at American Airlines as a manager/consultant," and that despite one manager telling him that he "would be a good fit for their team," that American Airlines "would not hire me because of the … Disciplinary Charges

25

against me." He claims a loss of "approximately $86,376.00 in potential income." Pls.' Appx. 393 (Ross. Aff.) ¶ 29.

This attestation does *not* show that Mr. Ross actually applied for a job; that he met the criteria for any job; that he was actually denied any position; or what the salary of the position would be. Indeed, Mr. Ross confirmed in his deposition that he had *not* submitted an application at the time of his encounter with managers, which he described as merely "an informal conversation … over the phone …. And a very loose walking-out-of-the-terminal conversation." APFA Supp. Appx. 700-701 (Ross Dep. pp. 121:4-12 and 122:2-6). Mr. Ross offers no evidence of the basis for his $86,000 figure,[19] nor can he attribute the alleged injury to any LMRDA violation, since his claimed interaction with management in April 2021 took place before the Article VII Arbitration Award was issued in March 2022.[20] There is no basis to award Mr. Ross the damages he claims on summary judgment.

Nor is there any basis for an award of attorneys' fees Plaintiffs seek on summary judgment. Plaintiffs seek over $570,000 in fees and costs, based on their contention that the APFA's defense of the lawsuit and in particular its counterclaims have been pursued "in bad faith." Doc. 238 at ECF 44-5. This request lacks any basis in fact or law. "The bad faith exception to the general rule" that fees are not recoverable absent contractual or statutory authority, pertains only to "the manner in which the litigation is carried out. That is, the rule is intended to penalize a litigant who

---

[19] Mr. Ross testified that he came up with the $86,000 number by looking at salary listings from the website "salary.com" for positions he had not applied for, and the federal government salary of a former APFA President. APFA Supp. Appx. 701-702 (Ross Dep. pp. 123:13-126:20).

[20] Mr. Ross' Affidavit may create the impression that his discussion with management was after the Article VII Award, since he first refers to a Hotline publicizing the Award and then immediately discusses the meeting. Pls.' Appx. 393, ¶ 29. But the alleged meeting was in April 2021, *ibid.*, and the Article VII Award was not issued until March 2022, Pls.' Appx. 6 (Ross Aff.) ¶ p.

brings to court a frivolous suit or defense, or abuses the process … separate from the underlying claim." *Guidry v. Int'l Union of Operating Engineers, Local 406*, 882 F.2d 929, 944 (5th Cir. 1989), *vacated on other grounds*, 494 U.S. 1022 (1990). Put another way, "Attorney's fees must rest on bad faith prosecution of the case rather than bad faith in the conduct giving rise to the claim." *Meredith v. Louisiana Fed'n of Teachers*, 209 F.3d 398, 405 (5th Cir. 2000).

Plaintiffs make no such showing, nor could they. APFA's original federal counterclaim survived a motion to dismiss (*see Ross* Doc. 72), and this Court has already rejected Plaintiffs' argument that the current counterclaim should not be permitted on the ground of futility, *Ross* Docs. 117, 133. We also have established, in our memorandum supporting APFA's motion for summary judgment, Doc. 235, that the undisputed facts warrant judgment in APFA's favor on the counterclaims. Regardless of how the legal issues are ultimately resolved, there is absolutely nothing to suggest any bad faith by APFA.[21]

### III.   MR. ROSS IS NOT ENTITLED TO JUDGMENT ON HIS CLAIM FOR BREACH OF THE TRANSITION AGREEMENT.

Mr. Ross seeks summary judgment on his claim that the APFA breached his 2018 Transition Agreement in three respects: (1) by allegedly undercounting the number of sick and vacation days he was paid for upon leaving office in 2018; (2) by allegedly undervaluing the daily value of his sick and vacation pay upon his leaving office; and (3) by disclosing the Transition

---

[21] The Court has already rejected Plaintiffs repeated prior accusations of bad faith and efforts to impose sanctions on APFA, and affirmatively sanctioned Plaintiffs' counsel for "blatant disregard for the standards set forth in *Dondi [Properties Corp. v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284 (N.D. Tex. 1988) (*en banc*)]." Doc. 219 at ECF 8 and *passim*. Among those sanctions was a requirement to pay for the APFA's fees and costs for the depositions of Mr. Ross and Mr. Vargas. *Id.* at ECF 23. With what can only be called audacity, Plaintiffs now seek an order that APFA pay them for their costs and fees for those same depositions. *See* Pls.' Appx. 856 and 858 (fees for depositions); Pls.' Appx. 871-883 (court reporter and videographer expenses).

Agreement to two union members, an outside accountant, and to the debt collection agency Diversified Credit.  Doc. 238 at ECF 22-23.

He further seeks a summary judgment award of direct damages for what he believes was underpayment under the Transition Agreement; consequential damages of over $200,000 for funds he claims he was unable to borrow in 2021; over $100,000 for funds he claims he lost from his 401(k) holdings; as well as the amount he was ordered to pay by the Article VII Arbitration Award (which he has not paid).

Mr. Ross is not entitled to judgment on either liability or damages. To the contrary, his claims are in part untimely and in part based on an unenforceable provision of the TA.

**A.      There Is No Basis for Liability on the Transition Agreement Claims.**

**1.      The Claim Regarding the Amount Paid Is Barred by the Statute of Limitations.**

Mr. Ross' claim regarding the number of sick and vacation days for which he was paid, and for the "per diem" value of each such day, is barred by the four-year Texas statute of limitations.  The challenged payment (authorized by his co-Plaintiff Eugenio Vargas who was Treasurer at the time), was made on March 29, 2018.  APFA Appx. 525 (Harris Decl.) ¶ 13. This lawsuit was filed on April 20, 2022, more than four years later.  Doc. 1 (Complaint).  The claim is untimely. *Khan v. Trans Chem. Ltd.*, 178 F. App'x 419, 424 (5th Cir. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

**2.      The Non-Disclosure Provision Is Unenforceable as a Matter of Law.**

Mr. Ross' claim for breach of the non-disclosure provision fails because that provision is unenforceable as a matter of law.  The non-disclosure clause purported to bar the APFA, a labor organization, from "disclos[ing] the existence, terms or content of this Agreement, except to the signatories … and to any APFA officers, employees, accountants or attorneys who have an explicit

need to know of this Agreement in order to effectuate its terms."  APFA Appx. 534, ¶ 7. To the extent that Mr. Ross complains the TA was disclosed to two APFA members, his claim fails because federal law required APFA to make that disclosure, rendering this provision unenforceable.[22]

The LMRDA requires labor organizations to file annual financial reports with the Department of Labor, which include "salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer" during the reporting year.  29 U.S.C. § 431(b)(3). The purpose of this and related reporting provisions is to provide union members with "all the vital information necessary for them to take effective action in regulating affairs of their organization." *United States v. Budzanoski*, 462 F.2d 443, 449-50 (3d Cir. 1972).

> A union treasury should not be managed as the private property of union officers, however well intentioned, but as a fund governed by fiduciary standards appropriate to this type of organization. The members who are the real owners of the money and property of the organization are entitled to a full accounting of all transactions involving their property.

*Id.*  (quoting S.Rep. 187, 86th Cong., 1st Session, p. 9 (1959)).

Both the LMRDA and the APFA Constitution require the union to provide members an opportunity, upon request, to review the Union's "books, records, and accounts necessary to verify such report[s]." 29 U.S.C. § 431(c); *see also* APFA Appx. 14 (APFA Const. Art. II § 3(B)) (active members "shall have access to all administrative and financial reports and records").  This obligation is enforceable in court.  *See Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 285 (5th Cir. 1993) (noting the "many cases affirming a union member's right to inspect and photocopy receipts and other union records necessary to verify the accuracy of the union's financial

---

[22] To the extent Mr. Ross complains the TA was disclosed to APFA's accountant, or to outside attorneys to collect the overpayment to Mr. Ross, his claim fails because disclosure to "accountants or attorneys" is expressly allowed under this provision.

statements filed with the Secretary of Labor"); *Local No. 1419, ILA, Gen. Longshore Workers Union, AFL-CIO v. Smith*, 301 F.2d 791, 796 (5th Cir. 1962) (affirming order compelling union to disclose books and records to members).  The Charging Parties here (Ms. Lee and Ms. Chinery) exercised this federal right to request to review the TA, and APFA, upon advice of counsel, allowed them such access.  APFA Appx. 509 (Hedrick Decl.) ¶ 9.

Because the APFA's disclosure of the TA to union members was required by federal law, Mr. Ross cannot sue APFA for making that disclosure, even if the TA prohibited it.  *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948) ("The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in  … federal statutes, and applicable legal precedents. Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.");  *In re OCA, Inc.*, 552 F.3d 413, 422 (5th Cir. 2008) ("Under Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur.").[23]

### B.    There Is No Basis For Consequential Damages Or Attorneys' Fees.

Even assuming *arguendo* that Mr. Ross could establish a breach of contract on this record for purposes of liability, his claims for damages and attorney's fees fail as a matter of Texas law.

---

[23] In the APFA Defendants' Motion for Summary Judgment, we also argued that the mandatory arbitration provision of the Transition Agreement required dismissal of Mr. Ross' claim.  Doc. 235 at ECF 46 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). Since that filing, the Supreme Court ruled that the Federal Arbitration Act does not permit dismissal on this ground, but only the stay of a case pending arbitration if requested by the moving party, abrogating the Fifth Circuit's ruling in *Alford*.  *Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872 at *3 (May 16, 2024). The APFA Defendants do not advance that argument here and will be withdrawing the argument from their Motion with their Reply.

The vast bulk of the damages sought by Mr. Ross here – including over $200,000 in lost "use of funds," over "$107,000" in lost "funds from his 401k", lost job opportunities, and the arbitration costs and arbitration award -- falls within the category of potential "consequential damages," but Mr. Ross has utterly failed to present evidence upon which would satisfy the legal standard for such relief.  Doc. 238 at ECF 24.  Nor has Mr. Ross presented competent evidence for an award of direct damages for the alleged breach of the TA.

To establish a right to consequential damages, the moving party must show that "the parties contemplated at the time they made the contract that such damages would be a probable result of the breach."  *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022) *(quoting Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)).  "A loss that is not the 'probable' consequence of the breach, from the breaching party's perspective at the time of contracting, is not foreseeable."  *Signature Indus. Servs.,* 638 S.W.3d at 186.  Mr. Ross has not even attempted to meet his burden of showing that the damages he claims were contemplated by the APFA (or even by himself) at the time the TA was signed, nor could he, given the strained chain of supposed causality upon which this damage claim is based.[24]

Because Mr. Ross has failed to meet his burden on summary judgment, his claim for contract damages cannot succeed.

_____

[24] Mr. Ross claims that the APFA violated the confidentiality clause by allowing union members Chinery and Lee to review the TA, that their review led to the Article VII charges, which led to the adverse arbitration ruling and associated costs, as well as hindering his chance at a management position with American Airlines.  He also claims that the APFA violated the agreement by allowing accountant O'Neil and attorneys for Diversified to review the TA, leading to the overpayment calculation, the debt collection lawsuit, the credit report and his alleged inability to borrow an additional $204,000 in a mortgage refinance and a need to withdraw $29,000 from his 401(k) plan.  Doc. 238 at ECF 23-24 and 27; Pls.' Appx. 392 (Ross Aff.) ¶¶ 26-27.

Mr. Ross' claim for attorney's fees is also meritless.  "In order to recover attorney's fees in a suit 'founded' on a written contract …, a plaintiff must plead and prove that presentment of a contract claim was made to the opposing party and he failed to tender performance."  *Carr v. Austin Forty*, 744 S.W.2d 267, 271 (Tex. App. 1987), *writ denied* (May 11, 1988); *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.002.  Mr. Ross has tendered no such proof, thus precluding summary judgment on his behalf for a fee award.

## IV.   AMPLE UNDISPUTED EVIDENCE SUPPORTS THE APFA'S FIDUCIARY DUTY COUNTERCLAIMS.

The APFA has asserted claims for breach of the federal fiduciary duty owed by union officers to the union and its membership as a whole, 29 U.S.C. § 501(a). *Ross* Doc. 134 at ECF  9-14;  *Vargas* Doc. 132 at ECF. 6-11.  The statue requires union officers to hold the union's money "solely for the benefit of the organization and its members," and to manage and expend the same "in accordance with [the union's] constitution and … any resolutions of [its] governing bodies." 29 U.S.C. § 501(a).  *See generally Ray v. Young*, 753 F.2d 386, 389-90 (5th Cir. 1985).

As described more fully in support of APFA's motion for summary judgment on this claim, the Article VII Arbitrator has conclusively determined that Mr. Ross and Mr. Vargas spent and received union funds for matters that were unauthorized under the Union Constitution and Policy Manual.  Those determinations are final and binding on the parties.  Based on that undisputed material fact and applicable law, APFA submits that Mr. Ross and Mr. Vargas violated their fiduciary duty under 29 U.S.C. § 501(a).

Plaintiffs broadly contend that there is "no evidence" to support the APFA's Counterclaim, in three respects. *First*, they contend that there is no evidence of a breach of duty; *second*, they contend that there is no evidence of damages to the union; and *third*, they contend that there is no "evidence to extend the statute of limitations."  Doc. 238 at ECF 16-19.  Notably, even where, as

here, the moving party asserts there is "no evidence" to support the non-movant's claim, the moving party "always bears the initial responsibility of … identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.v. Catrett,* 477 U.S. 317, 323 (1986).  "It is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case."  *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993); *see also Russ v. Int'l Paper Co*, 943 F.2d 589, 591 (5th Cir. 1991).  Plaintiffs have not met their burden, and their conclusory arguments supporting summary judgment fail.

### A.  Ample Undisputed Evidence Supports A Finding of Breach of Fiduciary Duty.

Plaintiffs first assert, without citation to any discovery responses or testimony, that there is no evidence that Mr. Ross or Mr. Vargas breached their fiduciary duty because, they claim, "[a]ll expenses … were actually … approved … or … pre-approved," and "followed APFA procedures" and "were reasonable."  Doc. 238 at ECF 17.  But the two paragraphs in which Plaintiffs make these claims are not supported by a single reference to any evidence whatsoever.[25]  Such assertions

---

[25] Plaintiffs also claim that the sick and vacation payout "calculations were made in conjunction with in-house accountants, reviewed and approved by two APFA officers for compliance with policy, and approved by two additional APFA accounting personnel for accuracy of calculation, budgeting purposes, and issuance of payment," Doc. 238 at ECF 18, but their citation to the Vargas Affidavit (Pls.' Appx. 286-292), does not support this assertion.   Mr. Vargas states only that he calculated the payments "in consultation with" his staff accountant, and with approval of two other officers who, like Mr. Vargas, were later found to have also been overpaid.  Pls.' Appx. 288-89 (Vargas Aff.) ¶ 6-7. This does not overcome the binding Article VII Arbitrator's finding that Mr. Vargas had made many thousands of dollars of expenditures of Union funds without proper authorization and not in compliance with the APFA Constitution or Policy Manual.

are "not enough" to even pass the basic threshold for consideration of summary judgment." *Ashe*, 992 F.2d at 543; *see also Forsyth*, 19 F.3d at 1537.[26]

And, contrary to Plaintiffs' broad and generic assertions, the APFA's Counterclaims are based on the final and binding determinations of Arbitrator Armendariz, who found, based on an extensive record in accordance with LMRDA procedures, that Mr. Ross and Mr. Vargas had both improperly expended APFA funds without authorization, contrary to policy, and for their personal benefit. *See* APFA Appx. 231-42 (Ross Award); APFA Appx. 282-84 (Ross Supp. Award); APFA Appx. 472-79 (Vargas Award);  APFA Appx. 504-06 (Vargas Supp. Award).  These findings, which are binding on Ross and Vargas, are more than an ample factual predicate for a determination that both Ross and Vargas breached their fiduciary duty under federal law.  *See Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 383 F.2d 735, 739 (5th Cir. 1967) (fiduciary duty is violated when officers spend or receive funds not authorized under union constitution or other governing documents).

Plaintiffs attempt to salvage their defense by asserting that the "Department of Labor … conducted its own investigation of the overpayments and cleared the Ross Administration of all

---

[26] Plaintiffs also state that "Vargas always complied with APFA procedures," Doc. 238 at ECF 18, citing two Vargas Affidavits in their entirety (Pls.' Appx. 139-141, 286-92), in which he generally states that he always followed procedure.  Similarly, Plaintiffs make the (unsupported) claim that all "expenses and payments made with union funds during the Ross Administration followed APFA procedures."  Doc. 238 at ECF 17.  Such blanket conclusory assertions, however, without specific factual support, are insufficient to support a motion for summary judgment. *Fowler v. S. Bell Telephone & Telegraph Co*., 343 F.2d 150, 154 (5th Cir. 1965) (parties' sworn, conclusory statements that they were acting within scope of employment did not support summary judgment where unsupported by specific facts).  And the binding arbitration awards specifically found otherwise.  S*ee* Vargas Arbitration Award (APFA Appx. 479) ("Ross received an overpayment because Vargas admittedly changed the formula."); Ross Arbitration Award (APFA Appx. 240) ("Defendant Ross *intentionally and willfully* ignored the provisions of the APFA Policy Manual.").

charges of misappropriation and embezzlement."  Doc. 238 at ECF 18.  The record does not support that statement.  For this point, Plaintiff cite the entirety of Affidavits from Mr. Ross and Mr. Vargas, *id.*, but a review of the cited documents does not establish this claim.  Mr. Ross states that "In a conversation with the U.S. Department of Labor regarding my Transition Agreement, I was told that an investigation was conducted in 2021 regarding my Transition Agreement and financial conduct of the Ross Administration. The results of the investigation *found no actionable wrong-doing* on the part of any National Officers serving for APFA from April 1, 2016 to July 31, 2018" (emphasis supplied).  Pls.' Appx. 386 ¶ 3.  Mr. Vargas also generally attests that he met with a DOL investigator in 2021, and that "*I have never been charged with or convicted of a crime.*"  Pls.' Appx. 287 ¶ 3 (emphasis supplied).

This material does support summary judgment. To begin with, the Ross Affidavit paragraph is inadmissible hearsay and improper under Rule 56(c)(4), Fed. R. Civ. P., which requires that "[a]n affidavit … used to support … a motion … set out facts that would be admissible in evidence." A hearsay "statement is incompetent summary judgment evidence." *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997).

Moreover, even if this portion of Mr. Ross' Affidavit were admissible, neither it nor Mr. Vargas' statement that he was "never ... charged with … a crime," establish the point asserted by Plaintiffs.  Mr. Ross attests only that he was told by an unidentified person "with the DOL" that the agency "*found no actionable wrong-doing*" (emphasis supplied).  But the DOL does not enforce the civil fiduciary duty of § 501(a); its enforcement authority is limited to potential referral for criminal prosecution under 29 U.S.C. § 501(c).  *See generally*, https://www.dol.gov/agencies/olms/about (visited April 29, 2024) (describing civil and criminal authority).  Thus, even leaving aside the hearsay bar, Plaintiffs' Affidavits do not provide any

information regarding the issue of whether they spent and received funds in violation of the APFA Constitution and Policy Manual or breached their civil fiduciary duties. The Affidavits certainly do not support the claim that the DOL "cleared" them "of all charges," whether civil or criminal. And an exercise of prosecutorial discretion to not charge Mr. Ross or Mr. Vargas with crimes such as embezzlement under § 501(c) would in no way shield them from civil liability for breach of their fiduciary duty under § 501(a).

Plaintiffs' claim that there is "no evidence" to support a finding of breach of duty is unavailing.

### B.   Ample and Undisputed Evidence Shows the APFA was Damaged by Plaintiffs' Fiduciary Breach.

Plaintiffs also contend "that there is no damage suffered by the APFA that can form the basis of a breach of fiduciary duty" and "no admissible evidence that the union suffered damages." Doc. 238 at ECF 18.  Plaintiffs are in error.  The APFA has demonstrated, in support of its motion for summary judgment on the counterclaims, that the final and binding arbitration awards have established that Plaintiffs expended and received tens of thousands of dollars in union funds in violation of the APFA Constitution and Policy, and that they have refused to pay back the amounts ordered by the Arbitrator in those cases.  Plaintiffs do not dispute either that the Arbitrator so found, nor that they have refused to repay APFA. Thus, not only is the APFA's claim supported by admissible evidence, that evidence is undisputed.  *See* APFA Defs.'  Mem. Supp. Mot. Summ. J., Doc. 235 at ECF 51-53.

In the face of the binding arbitral determinations, Plaintiffs resort to a contorted argument that defies logic, to wit: Since the union did not report the misappropriation of union funds on an LM-2 form filed with the Department of Labor, the documented losses found by the Arbitrator became unrecoverable.  Doc. 238 at ECF 19 and 19 n.2. Plaintiffs produce nothing in the LMRDA

nor any case law supporting their unique and erroneous position. Moreover, the forms cited by Plaintiffs covering the period of the Ross Administration (those filed in 2017 and 2018) were signed by Plaintiff Vargas, Doc. 238 at ECF 19 n.2 (links to forms for 2017 and 2018); APFA Supp. Appx. 703-706 (excerpts from the LM-2 filings cited by Plaintiffs).[27]   The fact that Mr. Vargas did not confess or self-report the misconduct of himself or Mr. Ross can scarcely be grounds to find that there were no damages to the union from the misconduct found by the Arbitrator, much less preclude the new union leadership seeking recovery after binding arbitration.

### C.  Plaintiffs Have Not Met Their Burden To Establish Their Defense of Laches.

Finally, Plaintiffs argue that the counterclaims are "legal in nature and therefore governed by the Tex. Civ. Prac. & Rem. Code § 16.004, which applies a four-year statute of limitations." Doc. 238 at ECF 19.  This Court has held, however, that the Section 501 claim "appears to be governed by the federal doctrine of laches, rather than the state statute of limitations upon which Ross relies."  Doc. 72 at 2.  This determination was correct,  *see, e.g.*, *Local No. 92, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO v. Norris*, 383 F.2d 735, 741–42 (5th Cir. 1967) (Section 501 claims are equitable in nature); *Teamsters, Chauffeurs, Warehousemen & Helpers, Loc. 764 v. Greenawalt*, 880 F. Supp. 1076, 1083–84 (M.D. Pa. 1995) (discussing the "considerable support" for conclusion that § 501 claim is equitable and that laches applies), and Plaintiffs offer no case law showing otherwise.

Plaintiffs also argue, mistakenly, that the APFA bears the burden of proving that its claim is not barred by laches.  Doc. 238 at ECF 20.  Laches is an affirmative defense for which the party against whom a claim is asserted (here, Mr. Ross and Mr. Vargas as counterclaim defendants) "has

---

[27] The directions for answering LM-2 Question 13 instruct: "Answer 'Yes' to Item 13 if the labor organization experienced a loss, shortage, or other discrepancy in its finances *during the period covered*." APFA Supp. Appx. 708  (emphasis supplied).

the burden of proving its essential elements." *City of El Paso, Tex. v. El Paso Ent., Inc.*, 382 F. App'x 361, 366 (5th Cir. 2010). Accordingly, to obtain summary judgment on their defense, Plaintiffs must affirmatively establish with undisputed evidence that the APFA "delayed in asserting the rights at issue; that the delay is inexcusable; and that the [defending] parties have suffered undue prejudice as a result of the delay." *Uptown Grill, LLC v. Shwartz*, 817 F.3d 251, 256 (5th Cir. 2016); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002) ("a laches defense … bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant"). Plaintiffs have made no showing of inexcusable delay or prejudice, but instead mistakenly assert that APFA has the burden to present evidence that their claim is *not* barred by laches. Their motion should be denied.[28] *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 736 and n.12 (N.D. Tex. 2006) (denying summary judgment on laches defense where movant failed to provide evidence to meet its burden).

Plaintiffs' motion for summary judgment on the APFA's counterclaim should be denied.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully urge the Court to deny Plaintiffs' Motion for Partial Summary Judgment.

---

[28] Nor could Plaintiffs plausibly establish an entitlement to judgment on their affirmative defense. The undisputed record shows that APFA brought these counterclaims just months after the Arbitrator's binding determination that Ross and Vargas had expended and received union funds in violation of the APFA Constitution and Policy Manual, Doc. 72 at 3 (discussing timing), and Plaintiffs do not assert any prejudice from the timing.

Dated: May 24, 2024                                    Respectfully submitted,


                                                       _/s/  James D. Sanford_____
                                                       JAMES D. SANFORD
                                                       Tex. Bar No. 24051289
                                                       Gillespie Sanford LLP
                                                       4803 Gaston Ave.
                                                       Dallas, TX 75246
                                                       Tel.: (214) 800-5111; Fax.: (214) 838-0001
                                                       Email: jim@gillespiesanford.com

                                                       JEFFREY A. BARTOS (pro hac vice)
                                                       D.C. Bar No. 435832
                                                       Guerrieri, Bartos & Roma, PC
                                                       1900 M Street, N.W. Suite 700
                                                       Washington, DC 20036
                                                       Tel.: (202) 624-7400; Fax: (202) 624-7420
                                                       Email: jbartos@geclaw.com

                                                       *Counsel for the APFA Defendants*

                                                       CHARLETTE L. BRODERICK
                                                       (pro hac vice)
                                                       Tex. Bar No. 24133870
                                                       Association of Professional Flight
                                                       Attendants
                                                       1004 W. Euless Blvd.
                                                       Euless, TX 76040
                                                       Tel.: (682) 301-8454
                                                       Email: cbroderick@apfa.org

                                                       *Counsel for APFA*

**CERTIFICATE OF SERVICE**

I certify that on May 24, 2024, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
notice@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law
PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

/s/ *James D. Sanford*
JAMES D. SANFORD

40