National Treasurer
Association of Professional Flight Attendants
Redacted by Plaintiff
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Tom Reber <diversifiedcredit Redacted by Plaintiff
**Date:** Friday, April 2, 2021 at 9:36 AM
**To:** Erik Harris <eharris Redacted by Plaintiff
**Subject:** RE: Letter the Board

Hi Erik,

The last communication with Mr. Ross is that he disputed the account. We sent him itemization and a dispute completion form as we are required to by law. We have not been able to speak to him since.

Thanks,

Tom

**Thomas L. Reber**
VP of Operations

**dcs**
DIVERSIFIED CREDIT SYSTEMS
PO Box 3424
Longview, TX 75606

(800) 256-3838 National
(903) 753-1215 Fax
www.dcscollect.com

**From:** Erik Harris <eharris Redacted by Plaintiff
**Sent:** Thursday, April 1, 2021 2:58 PM
**To:** Tom Reber <diversifiedcredit Redacted by Plaintiff
**Subject:** Re: Letter the Board

Hi Tom,

Our board of directors have asked for an update on Bob Ross' payment on his account.

Would you mind providing that when you have a moment?

Thanks,

Erik

--
**Erik Harris** *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants

3

*App. 51*

APFA VI. - 000069

Redacted by Plaintiff

The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.



**From:** Tom Reber <diversifiedcredit Redacted by Plaintiff
**Date:** Tuesday, March 9, 2021 at 2:05 PM
**To:** Erik Harris <eharris Redacted by Plaintiff
**Subject:** RE: Letter the Board

Thanks Erik,

We've updated his file with the phone numbers and forwarded it to a collector to call him.

Thanks,

Tom



**From:** Erik Harris <eharris Redacted by Plaintiff
**Sent:** Tuesday, March 9, 2021 1:30 PM
**To:** Tom Reber <diversifiedcredit Redacted by Plaintiff
**Subject:** Re: Letter the Board

Thanks for the update Tom. The phone numbers I have for Bob is (916) xxx-2402 and (817) xxx-4646.

Much appreciated!

Private Numbers Redacted by Plaintiff

--
**Erik Harris** *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants
Redacted by Plaintiff

The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.



**From:** Tom Reber <diversifiedcredit Redacted by Plaintiff
**Date:** Tuesday, March 9, 2021 at 9:26 AM

4

*App. 52*

**To:** Erik Harris <eharris ~~Redacted by Plaintiff~~
**Subject:** RE: Letter the Board

Hi Erik,

We do have Mr. Ross in our system and our notes do not reflect that he has contacted our office. Our phones are answered by a live person Monday-Thursday from 8:30 a.m. to 8:00 p.m. and Friday from 8:30 a.m. to 5:00 p.m. Voicemails that are left after hours are checked daily and distributed to collectors for callbacks.  We do not have a phone number for Mr. Ross but have sent him letters.

He can reach us at (800) 256-3838.

Thanks,

Tom



**From:** Erik Harris <eharris ~~Redacted by Plaintiff~~
**Sent:** Tuesday, March 9, 2021 8:50 AM
**To:** Tom Reber <diversifiedcredit ~~Redacted by Plaintiff~~
**Subject:** FW: Letter the Board

Hi Tom,

I received the following message from Bob Ross regarding his account. Do you have any record of him contacting your office? He claims he has made several attempts to reach you and is now disputing the debts on that basis. Additionally, he claims that it has already hit his credit report which can't be true because you told me it doesn't hit his credit until after 60 days.

I need to brief the Board of Directors so they know how best to respond to this email.

Thanks,

Erik

--
# Erik Harris *Pronouns: he, him, his*
National Treasurer
Association of Professional Flight Attendants
~~Redacted by Plaintiff~~
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

*App. 53*

APFA VI. - 000071



**From:** Bob 2 <bobrossapfa̲ Redacted by Plaintiff
**Date:** Tuesday, March 9, 2021 at 8:13 AM
**To:** Tim Schwartz <tschwartz̲ Redacted by Plaintiff , Amber De Roxtra <aderoxtra̲ Redacted by Plaintiff , Randy Trautman <rtrautman̲ Redacted by Plaintiff , John Nikides <jnikides̲ Redacted by Plaintiff , Mischel Babi <mbabi̲ Redacted by Plaintiff , John Pennel <jpennel̲ Redacted by Plaintiff , Scott Hazlewood <shazlewood̲ Redacted by Plaintiff , Robert Norvell <rnorvell̲ Redacted by Plaintiff , Kim Kaswinkel <kkaswinkel̲ Redacted by Plaintiff , Amy Milenkovic <amilenkovic̲ Redacted by Plaintiff , Susan Wroble <swroble̲ Redacted by Plaintiff
**Cc:** National President <president̲ Redacted by Plaintiff , National Treasurer <treasurer̲ Redacted by Plaintiff , Larry Salas <lsalas̲ Redacted by Plaintiff , National Secretary <secretary̲ Redacted by Plaintiff , Margot Nikitas <MNikitas̲ Redacted by Plaintiff
**Subject:** Letter the Board

Base Presidents.

In response to yesterdays Treasurers Report, I have on several occasions, attempted to contact the Collection agency with the information given to me by Erik Harris, Diversified Credit Systems. After several attempts to contact this agency, I was told they do not have any account in my name or from APFA in my name

I am requesting that my account be withdrawn from any collections agency and any negative reporting to credit agencies be reversed as evidence of good will until all facts and/or an affordable payment plan can be established. I would like access to records to confirm I was paid per our resignation agreement, any balance be agreed to by both parties and a proper and affordable payment plan be established to make APFA whole. I believe this is not asking too much but is all I've been asking for since this all started.

It is import for the BOD to know I had nothing to do with the method or calculations used in my unused sick and vacation days and would have preferred this issue have been addressed when the other Officers were notified. I was told by Craig Gunter, the former APFA National Treasurer and the former APFA attorney Mark Richard, well over a year ago, that my calculations were correct.

At no time have I ever stated that I "refuse" to pay or reimburse APFA, as has been stated. I did not address this on the record yesterday as that would violate my privacy and my family personal interests. I am asking the BOD to work with me on this issue as there is only now policy and was no such policy for sending incidents like this to collections with only 30 day notice without hearing the member's disputes and without full knowledge of facts in the case.

I would also like to applaud and support Erik Harris' effort to rectify APFA's financial situation, considering the state of financial devastation he walked into. I am asking the BOD's support in rectifying any misunderstandings and allow us to work out an equitable payment plan based on all known facts and calculations. I would also like to set up a meeting with Erik Harris and APFA Legal Counsel, Margot Nikitas to review the calculations on my monies owed.

In Unity,

Bob Ross


Bob Ross
SFO Base President-Elect

**Association of Professional Flight Attendants (APFA)**
*Representing the Flight Attendants of American Airlines*

*This e-mail, including attachments, is intended for the exclusive use of the addressee. If you are not the intended recipient, any dissemination, use, distribution or copying is prohibited.*

Virus-free. www.avast.com

*App. 54*

APFA VI. - 000072

| | |
|---|---|
| **From:** | Erik Harris |
| **To:** | Bob Ross; John Nikides |
| **Cc:** | Base Presidents; Base Vice Presidents; Officers; Ad Hocs |
| **Subject:** | Re: Bob Ross Collection Obligation |
| **Date:** | Wednesday, April 14, 2021 1:57:59 PM |
| **Attachments:** | image001.png |
| | image003.png |

Hi all,

On instruction from the collection agency, if Mr. Ross contacts you for any reason, please refer him to **Diversified Credit Systems at (800) 753-1215**. Although this is an internal email thread, this is still an attempt to collect a debt and Mr. Ross has already attempted to use this against us in our collection efforts.

Thanks,

Erik

--

# Erik Harris  _Pronouns_: he, him, his
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
_The content of this email is intended solely for the recipient(s)._
_It is not to be shared, forwarded or posted without the author's written consent._



**From:** Bob Ross <BRoss@apfa.org>
**Date:** Wednesday, April 14, 2021 at 1:50 PM
**To:** Erik Harris <eharris@apfa.org>, John Nikides <jnikides@apfa.org>
**Cc:** Base Presidents <BasePresidents@apfa.org>, Base Vice Presidents <BaseVicePresidents@apfa.org>, Officers <Officers@apfa.org>, Ad Hocs <AdHocs@apfa.org>
**Subject:** RE: Bob Ross Collection Obligation

That's not true Erik. I spoke to them today and they had no record of any California address. NONE! I have not used a Texas address in over a year.

Bob Ross
SFO Base President
916-284-2402 Mobile/Text
817-540-0108 ext 8468 (DFW HDQ)
BRoss@APFA.org

**Association of Professional Flight Attendants (APFA)**
_Representing the Flight Attendants of American Airlines_

_**App. 55**_

*This e-mail, including attachments, is intended for the exclusive use of the addressee. If you are not the intended recipient, any dissemination, use, distribution or copying is prohibited.*

**From:** Erik Harris <eharris@apfa.org>
**Sent:** Wednesday, April 14, 2021 11:10 AM
**To:** Bob Ross <BRoss@apfa.org>; John Nikides <jnikides@apfa.org>
**Cc:** Base Presidents <BasePresidents@apfa.org>; Base Vice Presidents
<BaseVicePresidents@apfa.org>; Officers <Officers@apfa.org>; Ad Hocs <AdHocs@apfa.org>
**Subject:** Re: Bob Ross Collection Obligation

The collection agency was provided with both the CA address and "other known addresses" which was in TX.

The collection agency was NOT provided with a TX only address.

--

# Erik Harris   *Pronouns*: he, him, his
National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Bob Ross <BRoss@apfa.org>
**Date:** Wednesday, April 14, 2021 at 12:56 PM
**To:** Erik Harris <eharris@apfa.org>, John Nikides <jnikides@apfa.org>
**Cc:** Base Presidents <BasePresidents@apfa.org>, Base Vice Presidents
<BaseVicePresidents@apfa.org>, Officers <Officers@apfa.org>, Ad Hocs <AdHocs@apfa.org>
**Subject:** RE: Bob Ross Collection Obligation

Well, as the plot thickens, so emerges the facts. Because I reached out to the collections agency it was discovered APFA provided the wrong address to the collections agency. However they have been able to send all other APFA mailings to my proper address in California. Oddly enough the address given to the collections agency was a Texas address I haven't lived at in over a year. While I'm falsely being accused of "Refusing" to take care of my business it will be interesting to see if this fact makes it back to Ms. Chinnery or ever sees the light of day on Facebook.

Bob Ross
SFO Base President
916-284-2402 Mobile/Text
817-540-0108 ext 8468 (DFW HDQ)
BRoss@APFA.org

**Association of Professional Flight Attendants (APFA)**
*Representing the Flight Attendants of American Airlines*

*App. 56*

*This e-mail, including attachments, is intended for the exclusive use of the addressee. If you are not the intended recipient, any dissemination, use, distribution or copying is prohibited.*

---

**From:** Erik Harris <eharris@apfa.org>
**Sent:** Tuesday, April 13, 2021 1:59 PM
**To:** John Nikides <jnikides@apfa.org>
**Cc:** Base Presidents <BasePresidents@apfa.org>; Base Vice Presidents <BaseVicePresidents@apfa.org>; Officers <Officers@apfa.org>; Ad Hocs <AdHocs@apfa.org>
**Subject:** Re: Bob Ross Collection Obligation

Hi John,

I usually check in every week and hadn't received any response from my request for an update last week. The last response I received from the collection agency was on 4/2 and it was stated that Mr. Ross disputed the account. The collection agency sent him an itemization and a dispute completion form as they are required to by law and have not been able to speak to him since.

I just sent over an additional request for an update. As soon as I get a response I will update the BOD.

Thanks,

Erik

--

# Erik Harris *Pronouns*: he, him, his

National Treasurer
**Association of Professional Flight Attendants**
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



---

**From:** John Nikides <jnikides@apfa.org>
**Date:** Tuesday, April 13, 2021 at 3:54 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Base Presidents <BasePresidents@apfa.org>, Base Vice Presidents <BaseVicePresidents@apfa.org>, Officers <Officers@apfa.org>, Ad Hocs <AdHocs@apfa.org>
**Subject:** Bob Ross Collection Obligation

Hi, Erik...

Has Bob Ross paid to the collection agency the monies he currently owes as of today?

*App. 57*

Thanks.

John Nikides

John Nikides
APFA LAX Base President

```
Debtor 003116136   Name ROSS,BOB              Phone (916)_____ Coll: 01-6200
Strategy 52 Step 10 Status ATA  Original    $5,436.47  Current   $5,436.47  Paid      $0.00  Paid in Full? No
```

```
Name: ROSS,BOB                    Is mail return? No      Seen Since last NBIZ or NEWCOL? No
Addr1 4701 HAYLOFT COURT          Has AS window? No            Don't call work: No
Addr2                             With Attorney? No           Don't write work: No
Addr3                             With Forwarder? No           Don't call home: No
C/S/Z: EL DORADO HILLSCA 95762    Is a precoll? No
```
--------------------------------------------------------------------
```
AI - ADDITIONAL INFO              MI - Miscellaneous Info         NI -  Numeric Identity
Ad Inf: MEA/SAF                   Misc1: THIS IS FOR OVERPAYMENT OF   SSN: _____ 53
                                  Misc2: WAGES                     D.O.B.: _____ 59
                                  More:                            DrvLic:
        ANOTHER # 817-983-4646    More: PER CL DBTR IS VERY AGRESSIVE  More:
                                  OrgCli: AND TENDS TO FABRICATE    More:

OA - OLD ADDRESS
OLD ST: 4701 HAYLOFT CT
OLD CT: EL DORADO HILLS, CA 95762
MISC :
MISC :
MISC :
```
--------------------------------------------------------------------
```
Debt 001 Client 01-008235  Cli Ref 3116136/001210129   For            RCVD 01/29/21  Batch 10-304
Atty    $0.00 Agcy        $0.00 Fee 0030        $0.00  DLP 00/00/00  Cli_DLC 01/29/21  Cli_DLP 00/00/00
Last Interest 00/00/00    Credit Bureau Status: Closed        Orig Reported 04/29/21  Last reported 04/28/22
Serv 00 PMTH 00       Balance        Paid       Cancel? No        Comments on Debt:
        Principal:   $5,436.47      $0.00   PIF 1 payment? No
Bounced Check Fee:       $0.00      $0.00   Old Account? No
        Interest:        $0.00      $0.00   Reinstated? No
    Court Charges:       $0.00      $0.00   Returned how?
Collection Charge:       $0.00      $0.00   Ever Mail Ret? No
Equipment Charges:       $0.00      $0.00   Legal Status - None
Contact History:
AC/RE SEQ CONTACT  TIME USER COLLECTOR A QUE DATE    AMOUNT      COMMENTS
Se/en 000 04/12/23 10:52 TLR          2 00/00/00      $0.00
Se/en 000 04/12/23 10:08 TLR          2 00/00/00      $0.00
Se/en 000 04/11/23 10:51 TLR          2 00/00/00      $0.00
Se/en 000 04/04/23 11:01 TLR          2 00/00/00      $0.00
Se/en 000 03/27/23 10:56 TLR          2 00/00/00      $0.00
Se/en 000 06/27/22 11:42 TLR          2 00/00/00      $0.00
Se/en 000 06/14/22 10:02 ABE          2 00/00/00      $0.00
Se/en 000 06/13/22 13:12 TLR          2 00/00/00      $0.00
Se/en 000 06/09/22 15:13 TLR          2 00/00/00      $0.00
Se/en 000 06/09/22 15:00 ABE          2 00/00/00      $0.00
Se/en 000 06/09/22 14:54 TLR          2 00/00/00      $0.00
Ch/Sg 000 06/09/22 13:47 TLR          2 00/00/00      $0.00  136/12
Ch/St 000 06/09/22 13:47 TLR          2 00/00/00      $0.00  ACT New:ATA
Se/en 000 06/02/22 18:05 TLR          2 00/00/00      $0.00
Se/en 000 06/02/22 14:23 LRW          1 00/00/00      $0.00
Se/en 000 06/01/22 11:47 TLR          2 00/00/00      $0.00
Ch/Cb 001 04/28/22 10:14 TLR          2 00/00/00      $0.00  REPORTED
Se/en 000 03/24/22 11:55 TLR          2 00/00/00      $0.00
CO/   000 03/01/22 08:54 TLR          2 00/00/00      $0.00  MIKE RAKE ATTY IS HANDLING. SUIT HAS BEEN FILED
Ch/Co 000 03/01/22 08:54 TLR          2 00/00/00      $0.00  01-0145
Se/en 000 01/20/22 10:00 LRW          1 00/00/00      $0.00
Se/en 000 11/24/21 18:05 LRW          1 00/00/00      $0.00
CO/   000 11/02/21 12:53 TLR          2 00/00/00      $0.00  MIKE RAKE ATTY IS HANDLING ACCOUNT
Se/en 000 11/01/21 15:00 TLR          2 00/00/00      $0.00
Se/en 000 10/27/21 14:36 LRW          2 00/00/00      $0.00
Ch/Cb 001 10/27/21 13:19 TLR          1 00/00/00      $0.00  REPORTED
Se/en 000 10/27/21 11:50 TLR          1 00/00/00      $0.00
TR/LM 000 10/27/21 11:47 LRW          2 00/00/00      $0.00
RL/GI 000 10/27/21 11:47 LRW          2 00/00/00      $0.00  TEXT FROM TOM- CALL BOB ROSS
Se/en 000 10/27/21 11:44 TLR          2 00/00/00      $0.00
```

*App. 59*

APFA VI. - 000056

| Code | | Date | | | | Amount | Notes |
|---|---|---|---|---|---|---|---|
| Se/en | 000 | 08/28/21 10:54 LRW | | 2 | 00/00/00 | $0.00 | |
| PO/GI | 000 | 08/28/21 10:54 LRW | | 1 | 00/00/00 | $0.00 | TOM SAYS NO DO NOT CALL |
| PO/GI | 000 | 08/28/21 10:51 LRW | | 6 | 00/00/00 | $0.00 | SENT TEXT TO TOM TO SEE IF OK TO CALL |
| Se/en | 000 | 08/25/21 15:42 TLR | | 2 | 00/00/00 | $0.00 | |
| TR/TT | 000 | 08/23/21 14:02 LRW | | R | 00/00/00 | $0.00 | DBTR SAYS APFA WILL NOT DISCU SS THIS BAL . CANNOT PAY UNTI L HE IS ABLE TO TALK TO APFA. WANTS TO TALK TO APFA |
| TR/LM | 000 | 08/23/21 11:02 LRW | | 1 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/20/21 10:55 LRW | | 1 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/20/21 10:54 LRW | | 1 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/19/21 17:51 LRW | | 2 | 00/00/00 | $0.00 | |
| RM/ | 000 | 08/19/21 17:50 LRW | 01-0145 | 2 | 08/23/21 | $0.00 | CALL HIM |
| TR/LM | 000 | 08/19/21 17:50 LRW | | 2 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/18/21 12:36 LRW | | R | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/18/21 12:33 LRW | | R | 00/00/00 | $0.00 | |
| RM/ | 000 | 08/17/21 18:09 LRW | 01-0145 | 2 | 08/18/21 | $0.00 | |
| TR/LM | 000 | 08/17/21 18:09 LRW | | 2 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 08/17/21 15:22 LRW | | 2 | 00/00/00 | $0.00 | |
| Se/en | 000 | 08/17/21 15:20 TLR | | 2 | 00/00/00 | $0.00 | |
| Se/en | 000 | 08/17/21 11:04 TLR | | 2 | 00/00/00 | $0.00 | |
| Ch/Sg | 000 | 08/17/21 10:03 TLR | | 2 | 00/00/00 | $0.00 | 166/4 |
| Ch/St | 000 | 08/17/21 10:03 TLR | | 2 | 00/00/00 | $0.00 | DIB New:ACT |
| Se/en | 000 | 07/09/21 13:40 TLR | | 2 | 00/00/00 | $0.00 | |
| Se/en | 000 | 06/30/21 13:37 TLR | | 2 | 00/00/00 | $0.00 | |
| Se/en | 000 | 06/29/21 17:30 TLR | | 2 | 00/00/00 | $0.00 | |
| Ch/CD | 001 | 06/25/21 11:41 AEE | | 1 | 00/00/00 | $0.00 | 07/31/2018 |
| Se/en | 000 | 05/26/21 11:37 TLR | | 2 | 00/00/00 | $0.00 | |
| TR/LM | 000 | 05/25/21 10:20 LRW | | 2 | 00/00/00 | $0.00 | PER TOM TO DO SO |
| PO/GI | 000 | 05/25/21 10:19 LRW | | 2 | 00/00/00 | $0.00 | PER TOM TO CALL HIM |
| Se/en | 000 | 05/25/21 09:37 LRW | | 2 | 00/00/00 | $0.00 | |
| Se/en | 000 | 04/15/21 08:53 AEE | | 3 | 00/00/00 | $0.00 | |
| CO/ | 000 | 04/14/21 13:48 AEE | | 1 | 00/00/00 | $0.00 | MAILED ITM AND DIB CERTIFIED TO UPDATED ADDRESS |
| LS/ | 000 | 04/14/21 13:41 AEE | | | 00/00/00 | $0.00 | #45 DISPUTE |
| RC/TT | 000 | 04/14/21 13:08 LRW | | 3 | 00/00/00 | $0.00 | DBR WANTS TOM # . SAYS THEY F ORWARED TOM EMAIL TO HIM. HE IS NOT HAPPY. SAYS THIS MA DE HIM LOOK BAD ABOUT REFI AND HE IS STALLING WRITTEN IN LTR |
| TR/TT | 000 | 04/14/21 11:57 LRW | | R | 00/00/00 | $0.00 | DBTR IS NOT HAPPY SAYS CL HAS BEEN SENDING STATEMENTS TO CA ADDY AND WE SHOULD HAVEGOTTEN NEW ADDY WHEN SENT TO US |
| TR/TT | 000 | 04/14/21 11:55 LRW | | R | 00/00/00 | $0.00 | DBTR SAYS HE IS ON THE BOARD OF APFA . SAYS HE IS REFI SAYS HE WILL PROVE THIS IS NO T DUE . THEY ARE TRYING TO GET HIM OFF THE BOARD .HMM |
| TR/TT | 000 | 04/14/21 11:49 LRW | | R | 00/00/00 | $0.00 | DBTR GOT NEW ADDY SAYS CL HAS BEEN SENDING STATEMNTS TO HIM IN CA.. TOLD HIM I WOULD GET INFO MAILED TO NEW ADDY IN CA TOM SAYS EMAIL AMIE |
| Ch/A1 | 000 | 04/14/21 11:36 LRW | | R | 00/00/00 | $0.00 | 2405 JOHNSON RD SOUTHLAKE TX 76092 |
| RM/ | 000 | 04/13/21 16:32 LRW | 01-0145 | 3 | 04/14/21 | $0.00 | |
| R/LM | 000 | 04/13/21 16:27 LRW | | R | 00/00/00 | $0.00 | |
| O/ | 000 | 04/13/21 16:25 TLR | | 2 | 00/00/00 | $0.00 | THIS COLLECTED |
| M/ | 000 | 04/13/21 16:25 TLR | 01-0145 | 2 | 04/13/21 | $0.00 | CLIENT IS ASKING ABOUT THIS DBTR. HE DISPUTED AND WE SENT ITM AND DISPUTE RESPONSE. CALL HIM BUT BE VERY NICE AND SEE WHERE WE ARE SITTING ON GETTIN |
| e/en | 000 | 04/02/21 09:35 TLR | | 2 | 00/00/00 | $0.00 | |
| S/ | 000 | 03/09/21 23:08 SCHD | | | 00/00/00 | $0.00 | #50 DISPUTE FORM |
| e/en | 000 | 03/09/21 16:51 AEE | | 1 | 00/00/00 | $0.00 | |
| S/ | 000 | 03/09/21 16:51 AEE | | | 00/00/00 | $0.00 | #45 DISPUTE |
| Se/en | 000 | 03/09/21 15:59 AEE | | 1 | 00/00/00 | $0.00 | |
| Ch/Sg | 000 | 03/09/21 15:43 AEE | | 1 | 00/00/00 | $0.00 | 33/3 |
| Ch/St | 000 | 03/09/21 15:43 AEE | | 1 | 00/00/00 | $0.00 | ACT New:DIB |
| H/CD | 001 | 03/09/21 15:43 AEE | | 1 | 00/00/00 | $0.00 | UNDISPUTED |
| O/ | 000 | 03/09/21 15:43 AEE | | 1 | 00/00/00 | $0.00 | DIB PER COLLECTOR |
| R/TT | 000 | 03/09/21 14:51 LRW | | R | 00/00/00 | $0.00 | DBTR IS DISPUTING BAL TOLD HI M HE WOULD GET STATEMENT AND H E WOULD HAVE TO CALL ME TO RES OVE AFTER RECV STATEMENT |
| R/TT | 000 | 03/09/21 14:45 LRW | | R | 00/00/00 | $0.00 | DBTR IS STRAPPED FOR MONEY |
| R/TT | 000 | 03/09/21 14:43 LRW | | R | 00/00/00 | $0.00 | DBTR IS DISPUTING THAT THE B AL SHOULD BE LOWER. THEY RECVD LTR SHOWING IT WAS SENT HERE W |
| M/ | 000 | 03/09/21 14:02 AEE | 01-0145 | 2 | 03/09/21 | $0.00 | ADDED 2 PH#'S, ONE IS IN AI WINDOW |

*App. 60*

APFA VI. - 000057

```
Ch/Co 000 03/03/21 09:22 TLR          2 00/00/00      $0.00  01-0125
LS/   000 03/01/21 00:17 SCHD            00/00/00      $0.00  #2 CREDIT NOTICE
Se/en 000 02/27/21 09:06 TLR          1 00/00/00      $0.00
LS/   000 01/29/21 23:29 SCHD            00/00/00      $0.00  #114 FIRST DEMAND
*********************************************************************************************
```

*App. 61*

APFA VI. - 000058

Add Product

# MERGED INFILE CREDIT REPORT

| FILE # | Redacted by Pl364  2 | **FNMA #** | | DATE COMPLETED | 6/3/2021 | **RQD' BY** | AA CU1 |
|---|---|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union | | | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | | | REPOSITORIES | XP | **PRPD' BY** | |
| | FORT WORTH, TX 76155 | | | PRICE | | **LOAN TYPE** | |
| | | | | REF. # | Redacted by460 | | |
| PROPERTY ADDRESS | | | | | | | |

| | APPLICANT | | | | CO-APPLICANT | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | | | CO-APPLICANT | ROSS, KIMBERLY KOPAN | | |
| SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff |
| MARITAL STATUS | | | | DEPENDENTS | | | |
| CURRENT ADDRESS | Redacted by Plaintiff | | | LENGTH | | | |
| PREVIOUS ADDRESS | | | | LENGTH | | | |

## SCORE MODELS

Redacted by Plaintiff

Redacted by Plaintiff

## SOURCE OF INFORMATION

Redacted by Plaintiff

## CREDIT ATTRIBUTES

| WHOSE | ATTRIBUTE | | VALUE |
|---|---|---|---|

Redacted by Plaintiff

**ECOA KEY:**  B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

**MORTGAGECREDITLINK: , , CA (P) (F)**

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 62*

| FILE # | ████4664  FNMA # 2 | | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union | | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | | REPOSITORIES | XP | PRPD' BY | |
| | FORT WORTH, TX 76155 | | PRICE | | LOAN TYPE | |
| | | | REF. # | ████460 | | |

**PROPERTY ADDRESS**

| APPLICANT | | | | CO-APPLICANT | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | | | CO-APPLICANT | ROSS, KIMBERLY KOPAN | | |
| SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff |
| MARITAL STATUS | | | | DEPENDENTS | | | |

**CREDIT ATTRIBUTES**

| WHOSE | ATTRIBUTE | VALUE |
|---|---|---|
| B | Calculate the outstanding balance of all student loan accounts affected by forbearance, natural/declared disaster, or deferred payment (CA02) | Redacted by Plaintiff |
| B | Count of student loan tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA03) | |
| B | Calculate the outstanding balance of all installment accounts affected by forbearance, natural/declared disaster, or deferred payment (CA04) | |
| B | Count of installment tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA05) | |
| B | Calculate the outstanding balance of all mortgage accounts affected by forbearance, natural/declared disaster, or deferred payment (CA06) | |
| B | Count of mortgage tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA07) | |
| B | Calculates the open to buy amount for the consumer (CA08) | |
| B | Calculate the outstanding balance of all revolving accounts affected by forbearance, natural/declared disaster, or deferred payment (CA09) | |
| B | Count of revolving tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA10) | |
| B | Calculate the outstanding balance of all auto accounts affected by forbearance, natural/declared disaster, or deferred payment (CA11) | |
| B | Count of auto tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA12) | Redacted by Plaintiff |
| B | Count of all tradelines affected by forbearance, natural/declared disaster, or deferred payment minus student loans (CA13) | |
| C | Count of all tradelines affected by | |

ECOA KEY:  B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED



MORTGAGECREDITLINK: , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 63*

| FILE # | ■■664  FNMA # 2 | | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union | | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | | REPOSITORIES | XP | PRPD' BY | |
| | FORT WORTH, TX 76155 | | PRICE | | LOAN TYPE | |
| | | | REF. # | ■■460 | | |

**PROPERTY ADDRESS**

| APPLICANT | | | CO-APPLICANT | | | |
|---|---|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | | CO-APPLICANT | ROSS, KIMBERLY KOPAN | | |
| SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff |
| MARITAL STATUS | | | DEPENDENTS | | | |

**CREDIT ATTRIBUTES**

| WHOSE | ATTRIBUTE | VALUE |
|---|---|---|
| | forbearance, natural/declared disaster, or deferred payment (CA01) | |
| C | Calculate the outstanding balance of all student loan accounts affected by forbearance, natural/declared disaster, or deferred payment (CA02) | Redacted by Plaintiff |
| C | Count of student loan tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA03) | |
| C | Calculate the outstanding balance of all installment accounts affected by forbearance, natural/declared disaster, or deferred payment (CA04) | |
| C | Count of installment tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA05) | |
| C | Calculate the outstanding balance of all mortgage accounts affected by forbearance, natural/declared disaster, or deferred payment (CA06) | |
| C | Count of mortgage tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA07) | |
| C | Calculates the open to buy amount for the consumer (CA08) | |
| C | Calculate the outstanding balance of all revolving accounts affected by forbearance, natural/declared disaster, or deferred payment (CA09) | |
| C | Count of revolving tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA10) | |
| C | Calculate the outstanding balance of all auto accounts affected by forbearance, natural/declared disaster, or deferred payment (CA11) | |
| C | Count of auto tradelines affected by forbearance, natural/declared disaster, or deferred payment (CA12) | Redacted by Plaintiff |
| C | Count of all tradelines affected by forbearance, natural/declared disaster, or deferred payment minus student loans | |



ECOA KEY:   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

MORTGAGECREDITLINK: , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 64*



| FILE # | ███664 **FNMA #** | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|
| **SEND TO** | American Airlines Credit Union | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | REPOSITORIES | XP | PRPD' BY | |
| | FORT WORTH, TX 76155 | PRICE | | LOAN TYPE | |
| | | REF. # | ███460 | | |

**PROPERTY ADDRESS**

| | APPLICANT | | CO-APPLICANT | | |
|---|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | CO-APPLICANT | ROSS, KIMBERLY KOPAN | | |
| SOC SEC # | Redacted by Plaintiff  DOB  Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff  DOB  Redacted by Plaintiff | | |
| MARITAL STATUS | | DEPENDENTS | | | |

**CREDIT ATTRIBUTES**

| WHOSE | ATTRIBUTE | VALUE |
|---|---|---|
| | (CA13) | |

**EXPERIAN ATTRIBUTES**

*** NONE ***

**TRADE SUMMARY**

The merge process is automated and the report may include some duplications and/or omissions. Inquiries regarding any disputed items should be directed to CREDITAPI 2 (DECISIONAPP) customer service.



| | # | BALANCE | HIGH CREDIT | PAYMENTS | PAST DUE |
|---|---|---|---|---|---|
| MORTGAGE | Redacted by Plaintiff | | | | 0 |
| AUTO | | | | | 0 |
| EDUCATION | | | | | 0 |
| OTHER INSTALLMENT | | | | | 0 |
| OPEN | | | | | 0 |
| REVOLVING | | | | | 0 |
| OTHER | 1 | 5436 | 5436 | 0 | 5436 |
| TOTAL | Redacted by Plaintiff | | | | 5436 |

| SECURED DEBT | Redacted by Plaintiff | OLDEST TRADELINE | Redacted by Plaintiff |
|---|---|---|---|
| UNSECURED DEBT | | REVOLVING CREDIT UTILIZATION | |
| | | TOTAL DEBT/HIGH CREDIT | |

Redacted by Plaintiff

**OPEN ACCOUNTS**

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |

Redacted by Plaintiff

**ECOA KEY:**  B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

**MORTGAGECREDITLINK:** , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 65*

| FILE # | ████864 FNMA # | | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union | | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | | REPOSITORIES | XP | PRPD' BY | |
| | FORT WORTH, TX 76155 | | PRICE | | LOAN TYPE | |
| | | | REF. # | ████460 | | |

**PROPERTY ADDRESS**

| APPLICANT | | | CO-APPLICANT | |
|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | | CO-APPLICANT | ROSS, KIMBERLY KOPAN |
| SOC SEC # | Redacted by Plaintiff | DOB | SOC SEC # | DOB |
| MARITAL STATUS | | | DEPENDENTS | |

**OPEN ACCOUNTS**

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |



ECOA KEY:   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER;
M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

MORTGAGECREDITLINK: , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 66*



| FILE # | | ████864  FNMA # | | | | | DATE COMPLETED | 6/3/2021 | | RQD' BY | | AA CU1 |
| SEND TO | | American Airlines Credit Union | | | | | DATE ORDERED | 6/2/2021 | | | | |
| | | 4151 AMON CARTER BLVD | | | | | REPOSITORIES | XP | | PRPD' BY | | |
| | | FORT WORTH, TX 76155 | | | | | PRICE | | | LOAN TYPE | | |
| | | | | | | | REF. # | ████460 | | | | |

**PROPERTY ADDRESS**

| APPLICANT | | | | | | CO-APPLICANT | | | |
|---|---|---|---|---|---|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | | | | CO-APPLICANT | ROSS, KIMBERLY KOPAN | | | |
| SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff | | SOC SEC # | Redacted by Plaintiff | DOB | Redacted by Plaintiff |
| MARITAL STATUS | | | | | DEPENDENTS | | | |

### OPEN ACCOUNTS

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |
| Redacted by Plaintiff | | | | | | | | | | | | |

### CLOSED ACCOUNTS

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |

Redacted by Plaintiff

ECOA KEY:   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER;
M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

MORTGAGECREDITLINK: , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 67*



| FILE # | ████64  FNMA # 2 | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union 4151 AMON CARTER BLVD FORT WORTH, TX 76155 | DATE ORDERED | 6/2/2021 | | |
| | | REPOSITORIES | XP | PRPD' BY | |
| | | PRICE | | LOAN TYPE | |
| | | REF. # | ████460 | | |

**PROPERTY ADDRESS**

| APPLICANT | | CO-APPLICANT | |
|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | CO-APPLICANT | ROSS, KIMBERLY KOPAN |
| SOC SEC # | Redacted by Plaintiff   DOB   Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff   DOB   Redacted by Plaintiff |
| MARITAL STATUS | | DEPENDENTS | |

# Redacted by Plaintiff

## DEROGATORY ACCOUNTS

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |
| B | B | DIVERSIFIED CREDIT SYS 311613*****0129 Directory: 9032970600 706 GLENCREST LNSTE A LONGVIEW, TX 75601 MEMBER #: 9980936 | 04/21 | 01/21 --/-- | $5436 COLL | $5436 001 - | $5436 | 1 | 0 | 0 | 0 | COLLECTION XP |

**History:** 04/21; 9
SUBSCRIBER REPORTS DISPUTE RESOLVED-CONSUMER DISAGREES; ORIGINAL CREDITOR: A.P.F.A.

# Redacted by Plaintiff

**ECOA KEY:**   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

**MORTGAGECREDITLINK: , , CA (P) (F)**

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 68*

| FILE # | Redacted by ...864 | FNMA # | | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|---|---|
| | 2 | | | DATE ORDERED | 6/2/2021 | | |
| SEND TO | American Airlines Credit Union | | | REPOSITORIES | XP | PRPD' BY | |
| | 4151 AMON CARTER BLVD | | | PRICE | | LOAN TYPE | |
| | FORT WORTH, TX 76155 | | | REF. # | Redacted by ...460 | | |

**PROPERTY ADDRESS**

| APPLICANT | | CO-APPLICANT | |
|---|---|---|---|
| APPLICANT | ROSS, ROBERT A | CO-APPLICANT | ROSS, KIMBERLY KOPAN |
| SOC SEC # | Redacted by Plaintiff  DOB  Redacted by Plaintiff | SOC SEC # | Redacted by Plaintiff  DOB  Redacted by Plaintiff |
| MARITAL STATUS | | DEPENDENTS | |

### EXPERIAN FRAUD SHIELD

# Redacted by Plaintiff

### ALERT

# Redacted by Plaintiff

† DISCLAIMER: This department of defense covered borrower data comes from the defense manpower data center ("DMDC") by way of contract between a consumer credit reporting agency and DMDC. Further, the department of defense covered borrower data is separate from and is not commingled with any credit data maintained by the consumer credit reporting agency. Due to the borrower data being obtained from third-party sources and is based on data input, the accuracy of such borrower data is not guaranteed by the provider of this credit report.

### INQUIRIES

# Redacted by Plaintiff

### CREDITORS

## Redacted by Plaintiff

DIVERSIFIED CREDIT SYS    706 GLENCREST LNSTE A, LONGVIEW, TX 75601                                        903-297-0600

## Redacted by Plaintiff

ECOA KEY:   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER;
M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

MORTGAGECREDITLINK: , , CA (P) (F)
The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 69*

| FILE # | [Redacted]864 2 | FNMA # | | DATE COMPLETED | 6/3/2021 | RQD' BY | AA CU1 |
|---|---|---|---|---|---|---|---|
| SEND TO | American Airlines Credit Union | | | DATE ORDERED | 6/2/2021 | | |
| | 4151 AMON CARTER BLVD | | | REPOSITORIES | XP | PRPD' BY | |
| | FORT WORTH, TX 76155 | | | PRICE | | LOAN TYPE | |
| | | | | REF. # | [Redacted]460 | | |
| PROPERTY ADDRESS | | | | | | | |

| APPLICANT | | CO-APPLICANT | |
|---|---|---|---|
| **APPLICANT** | ROSS, ROBERT A | **CO-APPLICANT** | ROSS, KIMBERLY KOPAN |
| **SOC SEC #** | Redacted by Plaintiff | **DOB** Redacted by Plaintiff | **SOC SEC #** Redacted by Plaintiff | **DOB** Redacted by Plaintiff |
| **MARITAL STATUS** | | **DEPENDENTS** | |

## CREDITORS

# Redacted by Plaintiff

## DISCLAIMER

An asterisk (*) following the payment amount indicates the repositories have no payment data and that the amount was automatically calculated as a percentage of the account balance.

This is a report containing information supplied by the repositories listed above. The merge process is automated and the report may include some duplications and/or omissions. Inquiries regarding any disputed items should be directed to the creditor reporting the item, or to the appropriate repository service center(s) listed below.

| EXPERIAN | TRANSUNION | EQUIFAX |
|---|---|---|
| PO BOX 2002 | PO BOX 1000 | PO BOX 740256 |
| ALLEN, TX 75013 | CHESTER, PA 19016 | ATLANTA, GA 30374-0256 |
| 888-397-3742 | 800-916-8800 | 866-349-5191 |
| www.experian.com/reportaccess | transunion.com/myoptions | www.equifax.com/fcra |

*** END OF REPORT 6/12/2021 5:55:18 PM ***

**ECOA KEY:**   B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

MORTGAGECREDITLINK: , , CA (P) (F)

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify that reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

*App. 70*

**APFA**
**FALL BOARD OF DIRECTORS MEETING**
**OCTOBER 27-28, 2020**

**NYLO Las Colinas Hotel**
**Irving, Texas**

**0911    Call to Order**

National President Hedrick called the Fall Board of Directors' Meeting to order.

**0912    Roll Call**

National Secretary Black took the roll call.  All members of the APFA Board of Directors were present, with the exception of the LAX Base President.  The Vice-President of LAX will be representing this base.

**0913    National President's Opening Remarks**

National President Hedrick spoke to the obvious changes to the lives of all.  All persons attending this meeting are required to wear a mask throughout the meeting, which is the same as a working Flight Attendant.  Temperature checks are required prior to entering the room.  We have all committed to the safety of all around us, just as our fellow Flight Attendants do every day.  In addition to being first responders, Flight Attendants are now essential workers moving medical personnel across the Country and throughout the world as well as reuniting families with their loved ones.  We have worked to keep our airline operating and ensured that our customers are as safe as is possible.  Because of our steadfast commitment, we came to work even before we were protected from this virus.  No masks, no personal protective equipment, and no cleaning standards to make sure we were safe when we came to work.  Yet, we showed up to keep this airline flying.  The health and safety of our Flight Attendants have been our top priority from day one.  Making sure our Flight Attendants have the protection necessary to survive this pandemic continues to be our main focus.  It didn't happen overnight, and it wasn't easy, but finally, the mask requirement for crews and passengers began on May 8th.  Fogging our aircraft and higher cleaning standards also followed in May.  We saw a significant drop in infection rates once the mask requirement was applied.  Unfortunately, it was too late for three of our Flight Attendants.  We will not forget PHL based Flight Attendant Paul Friskhorn, MIA based Flight Attendant Glenn Reuben, and STL Flight Attendant Ray Haughton.

On the Government Affairs front, on day one, we signed a letter with TWU 556 and AFA pressuring Secretary Mnuchin to negotiate the Cares Act to save jobs.  This is the first of a series of joint letters with our Union brothers and sisters to protect our jobs, our health, and our Contract.  We were all part of the passage of the Cares Act, which extended the paychecks and health care for six months.  We'd all hoped that six months would be enough relief to get our airline back on its feet.  The virus is still a serious concern.  The return of international flight schedules continues to be consistently delayed.  We are currently operating an airline that is approximately 40% of the size in 2019.  Another stimulus bill is desperately needed to bring back our 8,000 furloughed Flight Attendants to active status.  We have joined Flight Attendants

*App. 71*

Case 4:22-cv-00343-Y   Document 247-2   Filed 05/24/24   Page 22 of 50   PageID 7886

from airlines across the Country, at numerous rallies, letting our Congressional Representatives know the importance of passing a clean extension of the Payroll Support Program.  There have been rallies held in Washington, D.C., Charlotte, Dallas, Philadelphia, Miami, Los Angeles, Chicago, and Oakland.  We have sent over 100,000 emails and thousands of phone calls to Congress.  We have also seen many of our furloughed Flight Attendants on the news nightly, letting America know why it is so important that the airline industry is stabilized and the catastrophic effect to our Country's economy if it is not.  On July 3rd, APFA signed a letter with TWU 556 representing Southwest Airlines and AFA CWA and sent it to our respective airlines that we would not agree to concessions.  The problem that our industry faces is one of demand, not labor.  The Company is fully aware of the Union's position, and we are steadfast in our commitment to not repeat the painful concessions of our past.

Unfortunately, due to the pandemic and the ensuing financial effect on our airline, the Raleigh-Durham and St. Louis crew bases will close on February 1st.  These will now be satellite bases.  The Union will do everything possible to ensure that those satellite bases are a success.  The reality of the APFA is that there will be two fewer members of the Board of Directors.  National President Hedrick thanked Louise Sullivan, Jill Kelso, Nena Martin, and Carol Harvey for their many years of dedication to APFA.  National President Hedrick continued by saying that APFA is grateful for their passion and improving the lives of the Flight Attendants at American.

In a June 2nd Hotline, the APFA sent out a call to action against racial injustice after the murder of George Floyd.  We stood together to let our members know that racism will not be tolerated at APFA.  The APFA joined Union leaders across the country in a commitment to end the silence and to continue the difficult conversation.  We also committed to a Diversity and Inclusion Committee at APFA to make sure that APFA is always at the forefront of equality.  Today, there are two resolutions addressing this commitment.  National President Hedrick stated that we must never forget the lives that have been senselessly lost and pledge to continue the work of eradicating racism in our communities.

Modernizing our Union continues to be our goal.  On day one, that started.  We began "All Leadership" calls that day and every day for the next six weeks.  We then moved to three (3) days a week, and we are now at two (2).  The entire Union is invited to "Webex Wednesdays" to make sure everyone has the latest information to answer questions asked by the membership.  Microsoft Teams and Webex have now become the new norm at APFA.  These tools help APFA to collaborate on issues that, in the past, would have required in-person meetings.  In July, the first Telephone Town Hall was held for VEOP – 5,000 Flight Attendants called in.  This was a service that was used in the past but very expensive, so our ability to reach our Flight Attendants were limited.  With the help of our IT Specialists at APFA, a free service was found to reach our Flight Attendants.  Since July, Virtual Town Halls have been held for VEOP, EVLOA, and STLOA at all 13 bases.  Just last week, an Unemployment Seminar was held for all 13 bases.  In August, a Furlough Town Hall was held, and another last week.  A Raleigh-Durham Town Hall was held, enabling discussion regarding the satellite base and moving expenses.  A Town Hall regarding the same subjects will be held for St. Louis to help with the transition to Satellite Base.

The APFA continues to look for new, innovative technology to help educate, inform, and keep in touch with the membership while focusing on cost.  Transparency has always been requested by members of the APFA.  The leadership is determined to make sure that the membership knows they work for them.

*App. 72*

Financial transparency is one of the principles of the APFA Constitution. It is the membership's right to know how their hard-earned Union dollars are spent. The membership owns this Union, and the leadership wants them to be proud of it. The reason that the leadership is gathered for this meeting is for them and let us not forget that.

National President Hedrick stated examples of the APFA's representatives' sacrifices and pro-bono work over the last seven months for the membership during this pandemic and time of furloughs. There are many Flight Attendants working at the Union who took leaves for the last six (6) months and continue to work tirelessly throughout this pandemic to assist our members with unemployment, retirement, government affairs, EC Meetings, and Base issues without being paid from APFA. There are also furloughed Flight Attendants receiving pay from the Company during their furlough pay period who are working at APFA when they could be spending the severance time looking for employment. They are committed to this membership.

We have a Union of Base Representatives and Ad Hocs who are responding to numerous last-minute requests for Teams Meetings to discuss and make decisions that require collaboration by all to make the best decisions for the membership. We know the Base Presidents and Vice-Presidents work 24/7 answering calls, emails, and texts from the membership. We also have a team of Chairpersons and Specialists, who are on call seven (7) days a week trying to deal with the latest issues. National President Hedrick detailed the continuous work calls and meetings involving all departments within the APFA involving a myriad of issues. National President Hedrick wished to extend gratitude to the National Officer Assistants for their hard work. Many issues have been resolved over the past seven (7) months, including pay protections during the pandemic, over-staffing issues, the VEOPs, the LOAs, transfers, two (2) base closures, and messaging regarding racial injustice.

The APFA has been working to ensure the health and safety of the Flight Attendants every day. National President Hedrick thanked the Board of Directors for their professionalism and dedication to the membership. We have all risen to the challenge of the past seven (7) months and will continue to do our best to get through this very difficult time. We will get through it together.

National President Hedrick stated that LAX Base President John Nikides was unable to attend this meeting, and the Vice President representing this base as per the Constitution.

It was requested that all participants and observers at this meeting stay in the room for the entire day. Any confidential discussions will be held at the end of the day, if necessary.

**0927   Agenda Review and Approval**

**0929   Resolution #1**

Resolution #1 was opened to discussion. Additions, deletions, and revisions to the agenda as presented were requested at this time. These amendments were reviewed with the Board prior to the vote on Resolution #1A.

| 0933 | **Resolution #1a – Amend the Agenda** |
|------|------|
| **Maker:** | **Hedrick** |
| **Second:** | **Trautman** |

Resolution #1a amending the agenda was put forth for a roll call vote and was passed unanimously.

| 0934 | **Resolution #1 – Approve the Agenda** |
|------|------|
| **Maker:** | **Hedrick** |
| **Second:** | **Black** |

Resolution #1 approving the agenda as amended was put forth for a roll call vote and was also passed unanimously.

## 0935   NATIONAL PRESIDENT'S UPDATE

National President Hedrick stated that the Board and the entire Union is updated weekly, sometimes two-three times weekly; therefore, this update will be brief. The November Pay Protection is the only new item to be discussed. A Letter of Agreement was signed on Friday, and a Hotline was issued. The Pay Protections for November are changed from the last six (6) months and are outlined in the Hotline and the LOA.

## 0935   Active Litigation

There are three (3) outstanding litigation cases, and the Staff Attorney Margot Nikides gave an update. She spoke to a case regarding the EEOC, and it is still in the investigation stage. The next lawsuit discussed concerned Flight Attendants against Twin Hill and American Airlines. APFA was subpoenaed to produce documents by the plaintiff. This case was filed in Chicago, IL. The next case discussed concerned a class action lawsuit wherein APFA submitted a claim for damages in the settlement.

## 0939   Negotiations Update

Negotiations were suspended due to the pandemic, and there are no future discussions scheduled as of this time.

## 0940   Professional Standards Realignment & Voicemail

| 0941 | **Resolution #2 – Professional Standards** |
|------|------|
| **Maker:** | **Hedrick** |
| **Second:** | **Black** |

Resolution #2 was read into the record by the maker Hedrick. The resolution speaks to the realignment of Professional Standards to be under the Health Chair and the President's Department versus the EAP Department. It requests all necessary revisions to the Policy Manual. A question was raised about if there is a cost or budget related to this change and if the APFA website could be updated. At this time, there is no budget attributed to this representative

*App. 74*

for the remainder of the year.  Resolution #2 was put forth for a roll call vote and was passed.  (13 yes, 0 no)

| | |
|---|---|
| **0949** | **Resolution #3 – Black Lives Matter** |
| **Maker:** | **Hedrick** |
| **Second:** | **Harris** |

Resolution #3 was read into the record by the maker Hedrick.  The resolution speaks to the unwavering support of the Black Lives Matter Movement and the end of systemic racism.  A participant at the meeting recommended an amendment to the resolution to include APFA headquarters within a paragraph and was accepted by the maker and the second.  Resolution #3 was put forth for a roll call vote and was passed unanimously.  (13 yes, 0 no)

| | |
|---|---|
| **0958** | **Resolution #4 - Diversity & Inclusion Committee** |
| **Maker:** | **Hedrick** |
| **Second:** | **Harris** |

Resolution #4 was read into the record by the maker, Hedrick.  This resolution speaks to the formation of a committee, ensuring that the APFA treats everyone equally.  This will be a five (5) member committee consisting of one (1) National Officer, one (1) member of the Board of Directors, and three (3) APFA members.  This will be a voluntary, unpaid committee.  Resolution #4 was opened to discussion.  A participant at the meeting stated his gratitude for this resolution and the APFA taking a stand expressing their values and ensuring their commitment to making these values happen.  A recommended change to the wording of the term of service to this committee was accepted by the Maker and Second.  Resolution #4 was put forth for a roll call vote and was passed.  (13 yes, 0 no)

**1005    Department Reports**

**1005    Communications Department**

A written report was submitted by the Communications Chairperson.

The Chairperson spoke to the status of the APFA's media outreach concerning the Payroll Support Program and highlighted all news coverage that has occurred.  He wished to recognize the furloughed Flight Attendants who have given interviews to the news media.  The Chairperson also wished to thank the Government Affairs Department for all their help with the Hotlines, even while one of the representatives is furloughed.  Additionally, gratitude was extended to Brian Clark for his hard work getting out the Hotlines.  Thanks were also extended to the Chairperson by the Board of Directors.

**1010    Contract Department**

A written report was submitted by the Chairperson.  He spoke to the accomplishments of this department to date, which were numerous.  The Chairperson wished to thank the National Officers for having faith in him and appointing him to this position.  A question was asked of the Chairperson regarding the new awards process and if it has created any problems.  The misaward process was discussed and the method for the Flight Attendants to proceed.  A Hotline will be

issued.  A question was raised regarding points and a Sick on Contact incident.  This would be two (2) points if the Flight Attendant went sick when taking the assignment call.  If the Flight Attendant accepts the assignment and then returns a call in which they go on sick, it would only be one (1) point.  Another Base President spoke to the procedures for PBS bidding and the misaward process now that FABRC is gone.  The Chairperson stated he spoke to the process and that everyone's seniority has changed and results may be different than they have been before.  National President Hedrick spoke to this issue as well and stated that meetings had been held.  During these meetings, they have asked that FABRC be brought back and that the Company does refresher courses on the PBS Bidding System.  The videos on Crew Change are Company videos and are on Jetnet.  There is a PBS Guide on the APFA website as well.  The Chairperson stated that he feels many more Flight Attendants are searching the APFA website for information.  A Specialist stated that on the Scheduling page, there is a PBS section that contains numerous bidding tips to assist Flight Attendants.

**1024    Scheduling Department**

A written report was submitted by the Chairperson, who has recently been appointed.  She stated that due to the furlough, many, many Contract and Scheduling Reps were lost.  It has been challenging.  Some of the FABRC members have been recruited to work in these departments and desks.  She spoke to the inability to locate information on the APFA website, and Flight Attendants have been directed to Jetnet.  She will be working on a chart with common questions and where the information can be found.  The Chairperson felt that the JSC is something that should be reimplemented.  The Board was asked to suggest individuals who would serve on this Committee.  It was requested that the Chart previously mentioned by the Chairperson be provided to the Board.  The conversation turned to reserve numbers with the upcoming holidays.  It was requested that the data being collected be shared.  The Chicago base has been covering Charlotte trips.  The Red Flag notices were discussed.  It was mentioned that it used to be shown in open time when a trip was transferred out of base.  This is no longer being done.  A report given by the PBS team shows the target numbers and the actual numbers.  These are very important reports and can be compared historically.

National President Hedrick thanked the Scheduling, Contract Chairpersons, and JCBA Specialist for their part in the Board Training that occurred yesterday.  Training will continue to be done via Virtual Town Halls regarding PBS.  Questions did continue being asked of the Scheduling and Contract Chairpersons.  The suggestion was given that a Virtual Town Hall be done regarding a Scheduling and Contract class highlighting the JCBA.  The Scheduling Chairperson would also like to include a class on how to read the paycheck.

**1042    Break**

**1102    Meeting Back On the Record**

National President Hedrick stated that a short Executive Committee Meeting will be held at 1:00 pm, and the Board of Directors Meeting will reconvene thereafter.

**1104    Health Department**

*App. 76*

The Chairperson submitted a written report.  The Chairperson was thanked for her participation in the training classes held yesterday.  The Family Leave requests are now being processed in two weeks and pandemic leaves within one week.  Our Will for Work Act has 90% Flight Attendant compliance.  Concerning the long and short-term disability, the Company, due to the number of leaves, has agreed to continue the waiver of sick time to apply for short and long-term disability.  Approximately 3100 Flight Attendants applied for Aflac this year.  Aflac will mirror how MetLife processes claims.  FSA changes are still available.  Ames will be doing medical necessity reviews in 2021.

The Cobra coverage was discussed, and changes can still be made to current coverage by calling the Benefits Service Center.  COVID 19 cases are on the uptick.  The Company will not share exposure information with APFA.  APA has been providing contact tracing information.  The criteria stated by the Company for exposure is 15 minutes of continuous interaction with the infected passenger.  If a crew member tests positive, all crew members are removed from that flight.  Contact tracing goes back 48 hours.  There was a conversation regarding short term disability as relates to the State of Massachusetts.  A question was raised regarding a situation where not all Flight Attendants were called regarding exposure.  If this occurs, it was suggested that they call Daily Ops plus alert the Health Chairperson for follow-up.  This will be addressed with the Company.  National President Hedrick acknowledged the hard work of the Chairpersons of the Health, Safety & Security, and IOD departments.

## 1119   Safety and Security Department

A written report was submitted by the Chairperson.  The Chairperson spoke about getting the Cabin ASAP program back on track.  The Company has been circumventing the process at their whim over the past year.  The ASAP program is a non-punitive program, but the Company is still trying to apply discipline.  The program plays an important role in our safety management system, and if it went away, their safety management system would lose its certification from the FAA.  They still feel it is their program, which is incorrect; it is a partnership with the FAA, American, and the APFA.  Information from the bases is imperative in demonstrating to the Company how they are getting in the way of this being successful.  A member of the Safety & Security Department who joined the meeting suggested a Hotline be issued as the 8,000 Flight Attendants who were furloughed were trained during their initial Flight Attendant training.  She listed the benefits of and to the Flight Attendants concerning this program.  It was stated that the Company has been doing concurrent 35R investigations prior to the conclusion of ASAP investigation.  All reports to ASAP are strictly confidential and cannot be used against a Flight Attendant in a Company investigation.  National President Hedrick and National Vice President Salas met with the Company on this very issue.  They felt all in the meeting understood the purpose of the ASAP program; however, it seems another meeting needs to be scheduled.  The Vice President asked that any information Base Presidents have regarding this type of situation should be forwarded to him.  This discussion continued with examples of the Company not waiting for the results of the ASAP program prior to issuing discipline.  The FAA has always been an ally of the APFA concerning the ASAP program.  A point was made that more communication must be given to the Flight Attendants for total understanding of the ASAP program.  The discussion of this program and its positive effects for Flight Attendants, if administered correctly, was discussed for some time.  The time limit for filing an ASAP report was previously 24-hours.  There is no longer a time limit.  The coach and counsel done by the

ASAP Committee are truly instructional versus the Company's interpretation of coach and counsel, which is disciplinary, a punitive action.

The question was raised regarding a low battery indication on the tablet at the beginning of the trip as to whether that should be reported under the ASAP program. The Chairperson stated that it should. The FAA does inspect the tablet. Should their battery show low power, they should immediately file under the ASAP program. Anytime the Flight Attendant experiences any kind of problem with the tablet, an ASAP report should be filed. A question was raised regarding the number of times ASAP meets and turnaround time for reports. No specific timeline was given.

It was stated by the Chairperson that the smoke, odor, and fumes events have decreased to only five (5) last month and no IOD reports. The continued pressure to re-address and re-evaluate the process is working.

There is a call every Thursday regarding the COVID numbers. The Chairperson felt this Thursday he would be given of the numbers of people infected, those exposed, and a total tally to date.

The 737 Max will be returning to service between MIA and JFK in November.

A Base President spoke to an issue with a random drug test. She is requesting a follow-up from the Chairperson. The report submitted by the Flight Attendant tested was read to the Board concerning the unusual circumstances and procedures of this random test. The Chairperson felt that the test should have been nullified as they did not follow the established protocols. The test did come back negative; however, this will be pursued as other similar instances have occurred after business hours at other bases. The Chairperson will report back to the Board after further investigation.

**1208   IOD Department**

A written report was submitted to the Board of Directors. The Chairperson did have updates to this submitted report. The majority of calls to this department have been from furloughed Flight Attendants concerning their outstanding claims. They will continue to get paid from Sedgwick until the doctor clears them. If they are on salary continuance, it will end and resume once they come back to work and are still on the IOD. Additionally, Flight Attendants who took the VEOP will continue to get paid until their doctor clears them for work. If they were on salary continuance, this would end as they are now receiving the VEOP pay. Several states have enacted legislation to extend Workman's Comp coverage to include COVID 19. The Chairperson does encourage Flight Attendants to file IOD's concerning this. The situation in Texas and this issue was briefly discussed. The Chairperson thanked the reps in her department who have worked very hard.

**1212   Hotel Department**

A written report was submitted to the Board; however, the Chairperson did have an update to this report. The San Francisco short market hotel will be reviewed. There have been 20 site reviews. In 2019, very few hotels were interested in the crew layover business. This has changed with the lower occupancy. This has increased the options for layover properties. The election was

*App. 78*

discussed and possible temporary relocations. As of this point, the hotels will remain the same as per Corporate Security. Any incidents involving Flight Attendants at a layover hotel should be reported to the Hotel Chairperson. This information is not automatically forwarded to him. A Base President raised the question of transportation to and from the hotels. Currently, crews are being transported along with passengers. There should be dedicated transportation for the crews as per the Contract. National President Hedrick thanked the Hotel Chairperson for his dedication to serving the Flight Attendants. He is a furloughed Flight Attendant who has continued working at APFA.

**1228    Lunch Break**

**1336    Meeting Back On the Record**

**1337    EAP Representative**

A written report was submitted by the representative. She spoke about the current situation and the effect on this department. There have been numerous calls from Flight Attendants suffering from various mental issues and requesting assistance. There have been calls regarding suicidal thoughts. She continued by stating what professional assistance is available to Flight Attendants experiencing these problems. There was spontaneous applause and gratitude extended to the Board of Directors for this department and all who work within. Additionally, the FAIR (Flight Attendants In Recovery) Program was highlighted.

**1344    Government Affairs**

A written report was submitted by the Chairperson. National President Hedrick spoke to the hard and extensive work done by the Department. A Co-Chairperson spoke to recent legislation and the confirmation of a new Justice to the Supreme Court. The Union and membership have worked very hard to achieve an extension of the Payroll Support Program. This has not yet happened. There is a tremendous amount of bipartisan support for this program. A Coronavirus Relief Bill has not been passed and will not be prior to the election. The Senate is adjourned until November 9th. The House is adjourned until November 15th. We need to keep up the pressure on Congress to pass these bills. The Co-Chairperson spoke to the efforts put forth for this election and how different it is not being able to personally speak with the candidates. She mentioned various Senate and House elections and those individuals who support labor. The Committee expressed how important it is to vote in this election and encourage all to do so. The Payroll Support Program was discussed, and efforts will continue. The Co-Chairperson Allie Malis is also a furloughed Flight Attendant working without pay to continue her support for the APFA and was thanked by the National Officers and Board.

**1357    JCBA Specialist**

A written report was submitted by the Specialist, who did have updates to share with the Board. The position trade/seat swap via ETB is still not automated and is currently done manually. There is no update on when the automation will be completed; however, there has only been one report of a problem. Once they were alerted, the Flight Attendant was paid. The JCBA Specialist advised that when you go into Crew Portal Impersonator, you click on Admin Search and are looking at a Flight Attendant, if you go to the Support Tab, you will see a FABRC

*App. 79*

Report that was made with both the report by the Flight Attendant and the response from FABRC. Any report that is made to FABRC will be shown. A pay issue occurred concerning carryover time when going from a lineholder to reserve and calling in sick, the carryover time went into days off. The Flight Attendants were not being paid correctly for these, their sick banks were being docked, and they were not be given the option of having their days off restored. The JCBA Specialist is still working on this issue. The temporary solution was that they could have their days off restored later in the month. A few Flight Attendants were able to do that, but approximately 15 Flight Attendants were never given that option or, when they asked, were told they couldn't restore their days off. A question was raised regarding maintaining the "red flag" pay when only doing a seat swap via ETB. The Specialist stated that all Flight Attendants reporting this to her have been paid correctly. A Base President stated that two of her Flight Attendants still have not been paid and inquired why. The Specialist said that for a while, the Company was not dealing with anything other than the COVID crisis and staff reductions. She has been sending weekly requests to the Company that these be taken care of. National President Hedrick stated that this would be discussed at their next meeting with the Company.

Another question involved the new Support Tab. The speaker wished to know if reports were still being received concerning submissions and the Company's response. The PBS Team still has access to this and are able to review the responses. Anything that is reported to FABRC can be viewed on this report. She reviewed the procedures for submitting these reports. The Systems Issue Report was discussed, and optimally this would be helpful for the Specialist. National President Hedrick stated that during a meeting with the Company, it was requested that the Company increase the choices in TTS for all the medium and large size bases. She also asked them to increase the 3%. The Union has not heard back from the Company on these requests. National President Hedrick thanked the Specialist for the Reserve Class conducted during Board Training.

## 1408   Retirement Department

A written report was submitted to the Board. The Chairperson spoke to a particularly egregious lack of communication in advance of a significant change to the Retiree Medical Plan for LAA Flight Attendants retiring prior to 2012. This supplemented Medicare once they became eligible. Everyone is now being put into a Medicare Advantage Plan. This had to have been in the works for many months, and there has been no reference of any kind or information given to any of the Unions on the property. This issue and change will affect 31,000 retired employees. The Unions should have been notified prior to the release of this information. The Chairperson was thanked for her class given during the Board Training and her continued dedication and hard work.

## 1414   Professional Standards

The National Professional Standards Specialist addressed the Board via videoconference. The Specialist is currently on a six-month leave and has been involved in this Committee for twenty (20) years. The Professional Standards Committee will now be working under the National President's Department. They do work with the APA's Professional Standards Committee as well.

## 1421   Unemployment Update

An update was given by David Arnette and Kelly Hagan.  Unemployment virtual town halls for all thirteen (13) bases were held two weeks ago.  These sessions were very successful.  David and Kelly have been especially successful in the appeals process for unemployment benefits and have recovered approximately $1.9 million dollars through the Appeals Process.  David and Kelly explained how they are communicating with Flight Attendants by offering assistance through the webpage, Hotlines, Town Halls, emails, phone calls, and Social Media.  Additionally, they meet with the Company twice a week.  They are providing assistance to base representatives and providing updates for the Leadership calls.  They will also provide bi-monthly base leadership briefings.

Several hot topics were highlighted on their slide presentation, including severance pay, fraud, and VEOP UI eligibility.  Should a Flight Attendant feel their severance pay is incorrect, please have them email psc@aa.com.  There have been a few fraud cases exposed, which were not caused by the Flight Attendant.  States ultimately determine if a VEOP is eligible for unemployment insurance.  Voluntary separation does not necessarily preclude you from UI.  They are talking with the Company on how they report the reduced hours, working all available hours as this has caused reporting problems in some states.  The reporting requirements are very, very different from state to state.  There is a dedicated email for questions – unemployment@apfa.org.  Flight attendants are encouraged to utilize the email.  National President Hedrick stated that at this time, approximately 14,000 Flight Attendants could be eligible to file for unemployment.  This is a very complicated process, and National President Hedrick stated the gratitude of the Flight Attendants and the Leadership for the extensive and hard work done by Kelly and David.  Conversations have been had and will continue with the Company to pay for the work done by these Unemployment Specialists.

**1443    Break**

**1505    Back On the Record**

**1505    NATIONAL VICE PRESIDENT'S UPDATE**

**1505    SBA Update**

National Vice President Salas spoke to the challenges faced by the Regional Reps concerning review and prep for cases.  They have been using Teams, and this has worked out quite well and, to date, continue to utilize Teams to conduct out preps.  The following day, our discussions with the Company are on Teams.  This has certainly helped contain costs as relates to hotels, time away from base per diem, and outside meals.  The new staff attorney, Margot Nikitas, has been assisting the SBA Department and is becoming familiar with Sections 30 and 31 and is working with us on prep and outside of prep with the numerous cases moving forward.  In our efforts to curtail legal costs, the SBA is planning on using Margot's expertise on future arbitrations.  She has experience in that area as well.  There are currently fourteen (14) Presidential Grievances, including the recent filing of a Presidential Grievance over staffing changes to the A321T, 777-200, 777-300, and 787-9.  COVID has complicated our processes by preventing us from scheduling these arbitrations as Arbitrators cannot or will not travel, in addition to travel restrictions in various cities and states.  A recent inquiry was made concerning Arbitrators' availability next year, and the majority are still only doing virtual arbitrations into 2021.

*App. 81*

Although not favorable, eventually, we may have to have the Arbitrator participate virtually. No firm decisions have been made on that.

There has not been a need for QSB's since April. The Vice President's Department has been able to settle 25 cases. Two termination mediation sessions have been conducted with the Company, with the Mediator participating virtually. Both mediations ran relatively smoothly. Those two sessions reinstated three (3) of our Flight Attendants.

Two Flight Attendants have returned first level, and we have 12 terminations that were converted to retro-resignations. Once again, due to COVID, the remaining termination cases are unable to be scheduled for arbitration. There are only two Arbitrators who have specifically said they are willing to travel and do an in-person arbitration. There were four (4) terminated Flight Attendants that were GRC'd and upheld by the GAP. Those individuals are scheduled to pursue their own case pending the Company proffering arbitration dates.

Work is still being done on the finalization of the Attendance Performance Arbitration Award. The Company is prepared to post the revised Attendance Performance Policy on the Flight Attendant website; however, we are still in disagreement over language and references that are not conforming to the award. These specific issues are: reserve out of base; reserve report time; the no-call, no-show; the 40-hour obligation and the no mention of the ability to mitigate in certain circumstances. We, along with the Company, agree we need to get this policy out, especially with the upcoming holidays. Our Flight Attendants need to be aware of what the expectations are. We are really working on getting this policy out. One solution might be that since we have several of these outstanding disagreements, that they may put out the policy and not include the items that are still in disagreement.

National Vice President Salas thanked the Base Presidents for continuing to review their cases on a base level. Alan and Robin were thanked for their presentation on behalf of the SBA Department. The biggest message the National Vice President wished to express was – documentation. Also, the importance of obtaining as much information as is possible, particularly in 35R, the HR investigations. Additional discussion will occur off the record.

National Vice President Salas wished to thank all the Regional Reps for their hard work behind the scenes advocating for our Flight Attendants. They bring a tremendous amount of experience and knowledge to their positions.

## 1516   NATIONAL SECRETARY'S UPDATE

National Secretary Black spoke to the modernization of the National Secretary's office utilizing Teams and Webex. They have been migrating documents into Teams to save time and resources in the Secretary's Office, and our Executive Committee and Board Meetings are almost completely paperless except for agenda items and resolutions. We transitioned to a new audio conferencing for our meetings as well, saving quite a bit of money. National Secretary Black thanked all for their participation in the weekly update calls wherein information is shared. This serves to strengthen our Union. Since coming into office, 17 Town Halls have been held. Previous Town Halls could cost upwards of $10,000 for one hour. With Microsoft Teams, this is now a zero-cost operating item. National Secretary Black wished to thank those who have

*App. 82*

helped to get these up and running and those who have participated. This software has the potential for training, courses, and seminars in the future.

Speaking to the meeting being held in a hotel, the National Secretary stated that they have been negotiating their contracts with the hotels very strictly, including the rep hotels. This Board Meeting is the least expensive that APFA has had in the past six (6) years.

National Secretary Black has been working with the Chairperson of the National Ballot Committee to review policies and procedures and to update the department to be more effective and efficient.

National Secretary Black spoke to the numbers of Hardship Transfers. They have just completed the 100th request since April 2020.

National Secretary Black moved the General Policy Manual Update to the Spring Convention. The list of requested changes has become long and will be provided a few weeks before the Annual Convention.

## 1521    Archives Department

A written report was submitted to the Board. The Archivist spoke to her reviewing of Policy Manual revisions that have recently been sent to her. She stated she must review and check the order making sure there are no duplicates. These will then be available in the Global Search. The Archivist stated she is receiving numerous requests for graduation photos from Flight Service. A number of requests are from 1972 – 1984, which she has already scanned; however, some requests must be manually scanned.

## 1523    National Ballot Committee

The Chairperson of the NBC explained that he has been reviewing the functioning of the department and looking for ways to make it more efficient financially and timewise. He has been working with the National Secretary to update the procedures. He proceeded to outline the election timelines for the upcoming elections. The first election discussed was the Base President and Vice President positions. The Willingness-to-Serve will be posted on the APFA website on 12/15/2020 and closes on January 14, 2021. Ballots will be mailed on February 3, 2021. The final count will be conducted on March 5, 2021. The Ad Hoc Willingness to Serve will be posted on the APFA website on 1/4/2021 for Position #5. This election will take place at the Annual Convention.

The Chairperson then spoke to a cost savings method suggested by TrueBallot. TrueBallot prints and sorts ballots by base, and then it is given to the Post Office. The USPS then sorts them by zip code. TrueBallot is suggesting that these ballots be pre-sorted by zip code, versus base, prior to be given to the USPS, which could save 5-7 cents per ballot. This could total a savings of $1,300 - $1,820 per mailing.

The next issue discussed was the problem of undeliverable ballots due to the lack of current addresses for numerous APFA members. During the last election, there were approximately 860 undeliverable ballots, costing the APFA a considerable amount of money. An update was

*App. 83*

conducted comparing addresses on file at APFA with the Company records. It is being suggested that a campaign be conducted for members, especially furloughed Flight Attendants whose addresses at this point may not be permanent, to update addresses prior to an election. A question was raised regarding ballot challenges, and the Chairperson will research and get back to the Base President.

| 1537 | **Resolution #5 – NBC Willingness to Serve Hotlines** |
|---|---|
| **Maker:** | **Black** |
| **Second:** | **Babi** |

Resolution #5 was read into the record by the maker, Black. This resolution speaks to information to be included in the NBC Hotlines during and following the election process. These procedures are currently being followed, and this resolution clarifies language in the Policy Manual. Some clarification was requested by the Board. Resolution #5 was put forth for a roll call vote and was passed. (13 yes, 0 no)

| 1543 | **Resolution #6 – Electronic Candidate Booklets** |
|---|---|
| **Maker:** | **Black** |
| **Second:** | **Trautman** |

Resolution #6 was read into the record by the maker, Black. Resolution #6 speaks to the cost savings involved in utilizing electronic candidate booklets versus mailed, printed paper booklets. This resolution was opened to discussion. A question was raised as to what the criteria are to determine whether a printed resume will be included in the ballot packet or be posted electronically. An explanation via slide presentation was given by the NBC Chairperson. He explained the current procedure and explained the proposed changes. It was stated that all proposed changes had been reviewed by APFA Legal Counsel and the DOL. Candidate information will be available on the website to all regardless of dues status. This information will be able to be printed by the Flight Attendant on the unsecured portion of the website. The point was made that all members may not be comfortable with and knowledgeable of new technology. The Chairperson stated the information would be immediately available to the membership, rather than waiting for a paper booklet. The cost savings are tremendous (upwards of $20,000 for National Officer elections & $10,000 or more for Base Elections). Several points were shared by Board Members, both for and against this proposed change to the candidate booklets. The number of election complaints that have occurred during elections was raised. The point was made that we are still utilizing paper ballots for voting. The Chairperson explained the reasons for APFA continuing with a paper ballot versus electronic voting. The first issue is that there is no way to have observers present at the ballot count. The second is the secret ballot issue, as ballots were pulled when a Flight Attendant was deemed dues arrears. This issue did create extensive discussion amongst the Board and gallery, with several suggestions and scenarios being brought forth. A suggestion was made that there be an option to request a printed booklet if a Flight Attendant was not comfortable with the electronic method. A question was raised if TrueBallot could host the booklet, which will have to be researched. It was felt this could be a possibility and easily accessed. Another point was made that there is an election in six (6) weeks and too close to this proposed change. Another Board Member feels that the membership is able to adapt to electronic changes, as demonstrated by the change to the tablet

versus paper Flight Attendant Manual.  Several Board Members agreed with this resolution and the cost savings involved.

National Secretary Black reviewed the changes to the wording of the original resolution. Resolution #6 was put forth for a roll call vote and was passed.  (7 yes, 6 no)

**1626      Resolution #7 – Candidate Campaign Emails**
**Maker:      Black**
**Second:      Harris**

Resolution #7 was read into the record by the maker, Black.  This resolution speaks to the shift of campaign emails from an outside vendor to the National Ballot Committee.  The resolution contains the specifics of how this will work.  Resolution #7 was open to discussion.  The cost to the candidates utilizing an outside vendor was astronomical.  The Chairperson of the NBC spoke about the research done.  He stated that other Unions do it in-house.  The candidates will pay the NBC (APFA) for this service.  The cost structure was discussed as pertained to base and national elections.  Positive comments were shared by the Board, especially those who have recently run a campaign.  The question was asked if this email would appear to be an APFA endorsement. National Secretary Black explained that when formatted, it would not appear as an APFA endorsement as it would not say apfa.org in the "from" section, it will have the candidate's information.  Once again, the six-week election issue was raised.  A review of the language changes to the Policy Manual section was reviewed.  Resolution #7 was put forth for a roll call vote and passed.  (10 yes, 3 no)

**1651   Motion to Recess**

National President Hedrick made a motion to recess the Board Meeting until 0900, October 28, 2020.  This motion was agreed to unanimously.

*App. 85*

## DAY TWO
## FALL BOARD OF DIRECTORS' MEETING
## OCTOBER 28, 2020

**0919   Call to Order**

National President Hedrick called the Fall Board of Directors to order.

**0920   Roll Call**

All members of the Board of Directors or their representatives were present.

**0920   NATIONAL TREASURER'S UPDATE**

A written report was submitted by the National Treasurer. National Treasurer Harris spoke to the enormous financial challenges that are being faced by the APFA. He is grateful for all staying within their budgets. Every base and department have stayed within their respective budget, and we have several reps working without any pay or compensation while being on leaves or furloughed. National Treasurer Harris thanked the Budget Oversight Committee, who are working without any pay or compensation as well. National Treasurer Harris extended his gratitude to the Budget Committee for their hard work in balancing the budget. The Union is faced with a 35% decrease in membership and income, which could be 40% by October 2021. The Budget Committee and National Officers put together a budget that reflects that reduction. Financial transparency and fiscal responsibility go hand in hand. National Treasurer Harris gave an update of accomplishments in the Treasurer's Department to date. The 2020 Audit has been completed, and all LM2's have been completed as well as 990 and 550. They are still working on getting ADP up and running. The first part, payroll, has been going very well. We are working on including expense reimbursement on ADP, getting it all on one pay stub. We are working on migrating the past seven (7) years W2's to be uploaded into that system as well. We are moving our Officers and Staff 401K's to that system. This will be automated and a cost savings of about $700 a month. The department is moving to a completely paperless check program called Chase Cashflow 360.

The National Treasurer presented the following information via slides. The National Treasurer shared the First Quarter Financial Statements with the Board. The Second Quarter is not yet available. The information shared was reserves and savings, assets, liabilities, and fund balances, as well as dues and fees. Net income was also included. A chart was provided via the slide presentation concerning a trend for the last five (5) years showing the largest expenses. He outlined each category shown. The Treasurer did state that there are 6,374 members in Dues Arrears. A breakdown by base was shown. A chart showed income during the Furlough Pay Period. A question was raised whether or not the dues arrears issues were being addressed. The Treasurer spoke to this issue. There have been some payments received. The normal procedures will be resumed next year. Some Base Presidents have requested the list and have contacted the Flight Attendant requesting payment. It has generated some payback. Any Flight Attendant that has left through resignation or termination and has a balance will be sent to collections. A chart was displayed showing the current dues income primarily from dues check-off. Numerous Flight Attendants pay by check and some through credit cards. The agency fee was also shown, which

*App. 86*

covers Flight Attendants who are not members but required to pay dues. Dues credits are given, and a chart shows the amounts per base. Investment income was shown and will be fully explained by a banking representative during that presentation. The PAC contributions were highlighted and are strictly a voluntary donation. No APFA funds are used for the Political Action Committee (PAC).

The fact that many reps are working remotely and there being no hotel or per diem costs has helped. Many reps are working while on leave or furloughed and are not being paid. This has helped tremendously; however, we will begin to deal with an income issue. This has been a total Union effort, and all are aware of the crisis.

| 0945 | **Resolution #8 – PA & AR Days** |
|------|-----------------------------------|
| **Maker:** | **Harris** |
| **Second:** | **Milenkovic** |

Resolution #8 was read into the record by the maker Harris. This resolution speaks to a revision to the Policy Manual, where the removal PA/AR code now represents five (5) hours per day versus the previous six (6). A suggestion was made to revise the wording of this resolution, which was accepted. This change to five (5) hours would mirror the Company's SA rate of five (5) hours. Resolution #8 was put forth for a roll call vote and was passed unanimously. (13 yes, 0 no)

**0955   Dues Increase**

National Treasurer Harris stated that there had not been a dues increase since 2001, although Union expenses have risen. This is a difficult discussion but must be held. There has already been a backlash from the membership via social media. A Board Member wished to reiterate that the Board alone cannot decide to increase the Union Dues. This must be sent to the membership for a vote. It begins with the Budget Committee suggesting an increase and the specific reasons for it. There is currently a $300,000 loss of income a month due to VEOPs and furloughs. Comments were brought forth from the Board that the timing was particularly bad. A Base President felt that the expenses versus income must be explained in detail, enabling the Flight Attendants to understand that it is not a spending problem, rather an income problem. The problem is fixed costs. A different dues structure was briefly mentioned and may be researched via other Unions' procedures. The concern is that important positions and services may have to be cut eventually. The membership must be informed and educated regarding the costs involved in running this Union; transparency is foremost in the process. National President Hedrick spoke for the necessity to have this conversation at this difficult time. An Ad Hoc suggested that all members of the Leadership submit their ideas to the National Treasurer. Additionally, he felt the membership should be asked for their suggestions as well. The idea of dues based on earnings and on a scale was suggested more than once, and it was felt by the speaker should be considered. Another Ad Hoc member stated that the victories are very seldom shared and publicized with the membership. As an example, he stated that a recovery of $1.9 million dollars in unemployment recovered for the furloughed Flight Attendants is a tremendous victory for the APFA. The amount of work done by the reps and National Officers needs to be shown and shared with the membership. The Ad Hoc felt that we should be reporting more to the Flight Attendants of what has been actually accomplished and done on their behalf. He felt

they would be astounded. A Chairperson agreed that the many victories should be shared with the Flight Attendants.

**1026    Break**

**1103    Meeting Back On the Record**

**1103    Banking Representative Briefing via videoconference**

The representative first spoke to the restricted fund bonds. She stated that this is the fund that is used for NNRF and negotiations only. It is made up of intermediate corporate bonds and has been up 5.63 approximately year to date, which is phenomenal. She illustrated a comparison to U.S. Treasury Bonds, which are currently trading at .82%. APFA's Bond Portfolio has grown in the last two years. The income on this fund is about $275,000 a year. That money is generally invested back into the portfolio, and they take approximately $100,000 of that income and put it in the Equity Portfolio, which is about $3,000,000. In essence, the Equity Account is basically income, which gives the NNRF fund approximately $15,000,000. National Treasurer Harris did meet with the banking representative to discuss using the income from the $12,000,000 portfolio to be utilized for operating expenses at this point. She was not sure if this was possible due to the current APFA policy/Constitution. This income generated versus principal funds could be helpful under the current situation. Fiscally she felt the APFA was in relatively good shape with the $15,000,000 fund for NNRF. This representative began working with APFA in 1995, and the balance was $900,000.

**1113       Resolution #9 – Full Month Trip Removal Headcount**
**Maker:      Harris**
**Second:     Norvell**

Resolution #9 was read into the record by the maker, Harris. The resolution speaks to a change in the Policy Manual for trip removals from 1 for 800 to 1 for 1300. This pertains to the proposed budget. Resolution #9 was put forth for a roll call vote and was passed. (13 yes, 0 no)

**1116       Resolution #10 – Budget Reduction**
**Maker:      Harris**
**Second:     Trautman**

Resolution #10 was read into the record by the maker, Harris. Due to the loss of 40% of the membership, the Board requested the Treasurer's Department to formulate an emergency budget to be implemented November 1st through the end of the fiscal year. The emergency budgetary changes include, but are not limited to, a 35% mandatory trip removal reduction for all departments at APFA and a 35% mandatory trip removal reduction for all bases. Any unused amounts will be rolled over for use within the applicable adjusted budget.

National Treasurer Harris wished to thank the Budget Committee, the National Officers, all Bases and Departments for working so hard to remain under budget. It is a devastating loss to lose 8100 of our members and friends. This is not an easy task to make these cuts, which could impact our Flight Attendants, so the Treasurer expressed his gratitude for all input. A Board Member was requested by her Base to ask whether or not the National Officers were taking any

*App. 88*

Case 4:22-cv-00343-Y   Document 247-2   Filed 05/24/24   Page 39 of 50   PageID 7903

pay reductions in line with the reduction in the budget for the Bases and Headquarters.  Two of the National Officers would have been furloughed had they not been elected to office.  Their pay structure is outlined in the Policy Manual/Constitution, and they remain on the same pay scale versus other Flight Attendants of the same seniority being furloughed or losing pay.  National Treasurer Harris spoke to all cuts that have been made.  All National Officer budgets have been cut by 35%, and the National Vice President's cut was larger than any other cut.  The Base President stated that the question referred to National Officer salaries.  The answer was no, they have not been cut.  This situation is addressed in the Constitution and has been discussed at meetings with the entire Board and Executive Committee.  There have been numerous discussions over the years.

Another question raised concerned the seven (7) Regional Reps.  It is a Constitutional requirement that the number of Regional Reps is determined by the number of Flight Attendants on the system seniority list.  The furloughed Flight Attendants are still on the system seniority list.  The formula is 1 for 4,000.  The number of Regional Reps may change with the VEOPs.  Their budget has been restricted as well.  Input was received from Board Members concerning this issue.  A clarification was stated that when determining Regional Representative counts, it is names on the system seniority list; however, Base Budgets are based on dues obligated members.

A Base President wished to thank the Budget Oversight Committee for their work after discovering the dire financial situation APFA had found itself in.  It was stated by the speaker that the rampant overspending that had occurred had also put APFA in a dire situation along with the furloughs.

Conversation returned to the resolution on the table.  A question was asked when the Second Quarter financials would be available to determine if there were any unused rollover amounts for each Base Budget.  A thank you to the National Treasurer, and the BOC was extended by the speaker for their work in stabilizing the financial situation.

Resolution #10 was put forth for a roll call vote and was passed.  (13 yes, 0 no)

| 1149 | **Resolution #11 – Credit Card Policy** |
|------|------|
| **Maker:** | **Harris** |
| **Second:** | **Milenkovic** |

Resolution #11 was read into the record by the maker, Harris.  This resolution states that only National Officers can be APFA credit cardholders.  There has not been a specific policy set.  The National Treasurer felt this is necessary.  The National Treasurer explained the procedure currently used, and it is in real-time.  There was no formal policy in place concerning credit cards.  The four National Officers are the only authorized users and holders of this card.  Any cash rewards will be redeposited into the general fund, and that there was no annual fee.  An amendment to the wording of the resolution was requested by a Board Member, to which the maker agreed.  This credit card policy was reviewed and approved by the DOL Representative. Resolution #11 was put forth for a roll call vote and was passed.  (13 yes, 0 no)

| 1202 | **Resolution #12 – Apartment Furnishings** |
|------|-------------------------------------------|
| **Maker:** | **Harris** |
| **Second:** | **Salas** |

Resolution #12 was read into the record by the maker, Harris.  This resolution speaks to the ownership of and expenditures for furniture for the APFA apartments.  The resolution limits the expenditure to $7,000.  If the amount is over $7,000, it must be approved by the Executive Committee.  A Board Member asked how the amount was determined.  The Treasurer stated that it was an average between previous expenditures.  The difference between a one and two-bedroom apartment was requested.  National President Hedrick spoke to her experience furnishing an apartment and was able to utilize APFA furniture that had been in storage.  Unfortunately, some of the furniture in storage was broken or damaged from a flooding situation.  National Secretary Black stated that his office is in the process of cataloging everything that is left in the storage units and will be shown on a spreadsheet.  It was requested that the resolution be amended to delete the ability to spend more than $7,000 with EC approval.  A member of a previous Administration stated that resolutions were previously passed that the furniture be inventoried and pictures taken.  She asked if any of this information was received.  It was stated that some pictures only were provided.  It was requested that the language in the Policy Manual concerning the utilization of available apartment furnishings, etc., be reviewed.  National Secretary Black did locate this information, and it was read to the Board.  A Base President felt that the resolution should be more specific for the benefit of the membership.

This resolution will be postponed until the next regularly scheduled Board Meeting.  This was agreed to by a unanimous hand vote of the Board.  It was agreed that this resolution should be more specific as to cost and the usage of previously purchased furniture.

| 1228 | **Resolution #13 – Relocation & Rental Car Expenses** |
|------|-------------------------------------------------------|
| **Maker:** | **Harris** |
| **Second:** | **Sullivan** |

Resolution #13 was read into the record by the maker, Harris.  This resolution spoke to moving expense reimbursement for National Officers and reimbursement for relocation of automobiles, either moving cost or mileage and expenses for National Officers and National Chairpersons.  This resolution was opened to discussion.  A Base President familiar with the situation of relocating spoke to the issue.  She first thanked the National Treasurer for the clarification of the amount of $10,000 as being the total amount of move to and from DFW.  The issue of timelines and dates was raised.  Other Board Members agreed there needs to be a time limit on the reimbursement should the individual decide to move.  The first suggestion was six (6) months.  This created discussion amongst the Board.  The issue of renting an apartment and furnishing it and then the individual deciding to move would be very expensive for the APFA.  Three (3) months was then suggested as an alternative.  The problem of being locked into a lease that had to be bought out was an issue of concern.  Acclaim was given to the National Officers for addressing this issue.  A member of the gallery shared the view that she felt three (3) months was too long.  Another Board Member disagreed with that opinion.  After extensive discussion, it was felt there should be more work done on this resolution prior to its being presented once again.  A motion was made to postpone this resolution to the Annual Convention.  The Board agreed to postpone the resolution to the Annual Convention under Old Business with a hand vote.

*App. 90*

Case 4:22-cv-00343-Y   Document 247-2   Filed 05/24/24   Page 41 of 50   PageID 7905

**1246    Recess for Lunch**

**1349    Meeting Back On the Record**

**1349            Resolution #14 – Internet & Phone Expenses**
**Maker:         Harris**
**Second:        Salas**

Resolution #14 was read into the record by the maker, Harris.  This resolution speaks to the reimbursement, due to COVID, for APFA reps who work 15 shifts in a month.  They are to receive $45 in reimbursement for monthly telephone expenses.  This resolution further states that an APFA rep on a full month trip removal who works 15 shifts in a month may be reimbursed up to $50 of the monthly cost applied to one of the following types of broadband:  DSL; Cable; Fiber, or Satellite.  There was an inquiry about how many people this involved and the timeframe.  The Base would absorb this in their budget.  The National Treasurer stated he simply added wording to the existing policy.  There was some rewording to the original resolution as presented.  The definition of 15 shifts in the resolution was requested.  It was suggested to change 15 shifts to 18 days.  Several changes to the wording of this resolution were brought forth through continued discussion amongst the Board.  The Board wished the resolution to be more specific concerning the parameters of the reimbursement.  The wording "the majority of their shifts remotely" was acceptable to the Board.  Revised Resolution #14 was put forth for a roll call vote and was passed.  (12 yes, 1 no)

**1415            Resolution #15 – Denied Expense Appeal – Resolution**
**Maker:         Harris**
**Second:        Black**

Resolution #15 was read into the record by the maker, Harris.  This resolution speaks to the payment of $1,186.39 to former National Vice President Geiss for expenses covering the month of September 2019.  These expenses were submitted late, and the appeal was denied by the Executive Committee.  The email received from the former officer was reviewed by the Board.  A Board Member read the email received from the former National Vice President into the record.  The Board Member also had a conversation with the former officer, which she shared with the Board.  A Base President spoke to the subject Executive Committee Meeting.  Thereafter, members of the Board cited wording in both the Policy Manual and Constitution concerning the appeal of expenses.  A member of the Board felt the maker should withdraw the resolution as the Board did not have the jurisdiction to vote on it as per the Policy Manual.  A speaker felt the wording in the Constitution was broad; whereas, the Policy Manual was specific regarding the appeal process.  Legal Counsel was asked for an opinion regarding the wording in the Constitution versus the Policy Manual.  She felt there was a conflict between what was specified in the Policy Manual and the power and duty of the Board.  The Constitution states that the Board shall have the right to reverse an action or decision of the Executive Committee.  In that particular section, she continued by saying there was no wording to limit the Board's power to reverse a decision or action by the Executive Committee.  Given the statement that the Constitution is the supreme law of APFA and if there is a conflict between the Constitution and the Policy Manual, the Constitution must prevail.  The Policy Manual was created by the Board, who has the power to do so.  The speaker also felt the resolution should be withdrawn.  A member of the Executive Committee stated that he agreed the Constitution is the ultimate law;

*App. 91*

the Policy Manual is how the Board of Directors chooses to implement those rules.  The Board has the right to change those rules or implement them at their will.  A Board Member stated that he felt the only way they could vote on this resolution was to change the Policy Manual.  Once again, he felt the resolution should be withdrawn.  If not, the Policy Manual should be changed, of which he was not in favor.

National President Hedrick asked for a show of hands as to whether the Board wished to change the Policy Manual at this time.  There was no show of hands to change the policy.  At this point, the maker, Harris, made a motion to withdraw Resolution #15.  A hand vote was taken, and the motion was passed withdrawing Resolution #15.

**1443    Former National Officer Payout – Article VII Section 7.B**

National Treasurer Harris asked that these two agenda items be moved to the end of the Board Meeting, which will be a closed meeting and off the record.  National Secretary Black asked that the National Treasurer synopsize these two items for the Board and gallery.

The agenda item – Former National Officer Payout – pertains to the payout to a former National Officer, the documentation and calculations done by APFA, and results of an audit by an outside auditor.

Article VII Section 7.B covers the monetary charge APFA may assess to a charging party who files Article VII charges and are thereby dismissed by the Article VII Arbitrator.

There was no objection from the Board to moving these agenda items to the end of New Business to be conducted during the Off the Record portion of the meeting.

**1445    NEW BUSINESS**

**1446    Policy Manual/Constitutional Review/Update and Page Turn**

A committee had been previously formed but has since been dissolved to review both the Policy Manual and Constitution word by word to update.  The Base President bringing this forward wished to know if the Board wanted to reestablish a Committee to continue with this effort.  The question was raised if any work product had been submitted from any of the Committees previously formed.  A member of a previous Constitution Committee addressed the Board.  He stated that he believes he has copies of documents worked on in 2017.  A Board Member stated that she believed there was no work product documentation produced by the Policy Manual Review Committee.

A Base President requested that prior to establishing a new committee, that the Board of Directors and Executive Committee do a "page-turn" as issues have come to light during the last few years.  It was felt the Board should take the first step as they have lived the situations and problems that have been discovered and are most knowledgeable where issues exist.

**1452    Break**

**1505    Meeting Back On the Record**

*App. 92*

**1505          Resolution #16 – Distinguished Service Award – Ron Harris**
**Maker:        De Roxtra**
**Second:       Trautman**

Resolution #16 was read into the record by the maker, De Roxtra.  This resolution bestows the APFA Distinguished Service Award to Ron Harris for his outstanding contributions to the APFA and its membership and dedication to his fellow Flight Attendants over many years of work since 1998.  A member of the Executive Committee spoke to the extreme dedication of Ron Harris to his fellow Flight Attendants by hand-delivering in and outside of Texas retirement papers to Flight Attendants that have terminal illnesses.  The speaker continued by saying he is one of the kindest souls he has ever met.  He encouraged all to support this resolution.  A Board Member spoke to his formation of a Facebook page, AA Retired Flight Attendants.  He has helped every one of this Base President's VEOP Flight Attendants.  An Ad Hoc concurred with all that has been said about Ron Harris.  He felt he was one of the nicest and hardest working individuals at APFA.  He has always taken on the most difficult of tasks and is fearless in his service to fellow Flight Attendants.  Resolution #16 was put forth for a roll call vote and was passed unanimously. (13-yes)

**1511          Resolution #17 – Accounting Cycles**
**Maker:        Norvell**
**Second:       Milenkovic**

Resolution #17 was read into the record by the maker, Norvell.  This resolution speaks to the 90-day accounting cycle.  The maker felt that this was unacceptable and should be a thirty (30) day cycle enabling access to financial information much sooner.  It will allow the financial status of APFA to be determined every thirty (30) days versus ninety (90) days.  It also spoke to the submission of expense reports and timesheets and the timeline involved.  An amendment to the wording of the resolution was requested and accepted by the maker.  This amendment spoke to the time stamping of expense reports and the date involved.  The maker was complimented by the National Treasurer for his input and perspective.  The Treasurer did agree with addressing the ninety (90) day cycle.  The revisions to the wording of this resolution were reviewed.  This change will begin with the new fiscal year.  Resolution #17 was put forth for a roll call vote and was passed unanimously.  (13-yes)

### 1534   STL and RDU Base Closures

The current Base President of a base scheduled to be closed spoke to her previous experience and the contractual language regarding a move from a closed base.  The current language in the JCBA is three (3) years versus eighteen (18) months previously.  The Company stance is that the Flight Attendant will only be paid for a move if to the default base.  As an example, STL Flight Attendants would only be paid if the move was to DFW during this three (3) year period.  If the Flight Attendants choose to move elsewhere, they will not be reimbursed.  The Base President continued by saying a grievance has been filed and several calls with the Company have taken place.  Another issue that will be grieved is that there is a two hundred (200) mile parameter around the city to which they are transferring.  Historically, the Flight Attendant would pay the difference if the mileage was more.  The Company has said that if the move was outside the 200-mile parameter, they would not be reimbursed anything for the move.

*App. 93*

A Base Town Hall Meeting was held in STL last week. After receiving notice of the meeting, the Base President encouraged all at the base not working to participate. At that time, it was scheduled to be an open three (3) hour meeting. Two days prior to the meeting, the Base President was advised it would be 1.5 hours and limited to 25 people.

The entire base was upset as all planned on participating. On the day of the meeting, they dialed in. The big question was how many hours of flying the Base would get. It was announced during this meeting that it was 1,000 hours. The current headcount is 5500. The other base closing has 2800. A meeting will be held tomorrow with Manning and Planning. The RDU Base President spoke to the issues facing the closure of this base. The issues are totally different since the loss of the RDU-LHR route. A majority of Flight Attendants at this base are satisfied with going to Charlotte. National President Hedrick has also attended meetings concerning the available flying at the subject satellite bases and has never been given that number. She questioned where this information came from. She feels the meeting tomorrow is important, especially concerning the available hours. National President Hedrick acknowledged how hard the Base Presidents have advocated for their bases during this difficult time.

National President Hedrick thanked all who have attended this meeting and is very pleased that the meeting had been held without having to ask attendees to leave at various times for confidential discussions. She continued by saying that it is important that they attended and were able to observe what is happening and that the members know how the meeting was conducted.

## 1545   Break – Meeting Taken Off the Record

## 1656   Meeting Back On the Record

Confidential discussions were held off the record regarding two agenda items.

National President Hedrick thanked all for their hard work every single day for our Flight Attendants. National President Hedrick continued by saying that she hoped at the next meeting, the Annual Convention, that there will be no masks. She thanked all for being compliant with safety measures. The location of the Annual Convention has not been determined. The tentative date is within the second week of March as required by the Constitution.

National President Hedrick acknowledged and thanked the Base Presidents from STL and RDU and thanked them for their hard work and dedication. They were given a standing ovation by the Board of Directors.

## 1659       Resolution #18 – Adjourn
**Maker:**       **Black**
**Second:**      **Harris**

A motion to adjourn the meeting was unanimously agreed to by the Board of Directors.

## 1659   MEETING ADJOURNED

*App. 94*

# APFA



## ANNUAL BOARD OF DIRECTORS CONVENTION

## March 8-10, 2022

*Westin Irving Convention Center at Las Colinas*

**Resolution Information**

| Resolution #: | **10** |
| Resolution Name: | **Chinery-Lee v Vargas Arbitration Remedy** |
| Status: | Pass |
| Maker: | Hedrick |
| Second: | Nikides |
| Date: | 03/10/2022 |
| Time: | 2:55 p.m. |
| Affects PM: | ☐ |
| Comments: | |

| | BOS Milenkovic | CLT Hazlewood | DCA Pennel | DFW De Roxtra | LAX Nikides | LGA Santana | MIA Trautman | ORD Wroble | PHL Kaswinkel | PHX Agee | SFO Ross | Pres. Hedrick |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☐ | ☐ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Yes:** 10  **No:** 1  **Abstain:** 0  **Absent:** 0  **Show of Hands:** ☐

**WHEREAS,** APFA Constitution, Article VII provides APFA members a mechanism to hold their representatives accountable through internal hearing procedures facilitated by a neutral third-party arbitrator; and

**WHEREAS,** two such members, Melissa Chinery & Sandra Lee, filed Article VII Charges against previous APFA National Treasurer, Eugenio Vargas, on November 24, 2020; and

**WHEREAS,** these Article VII charges were referred to the designated Article VII Arbitrator, Ruben Armendariz, in accordance with APFA Constitution Article VII, Section 3; and

**WHEREAS,** the Chinery-Lee v Vargas charges were heard on September 14-16, 2021 in Irving, Texas; and

**WHEREAS,** Arbitrator Armendariz rendered a decision in the matter of Chinery-Lee v Vargas on February 18, 2022; and

**WHEREAS,** the remedy states:

"Vargas is to repay APFA for the following:

1. If after the Independent Auditors audit is completed and he/she determines that Vargas had used the APFA credit card for his own personal use on meals during his

*App. 95*

**APFA**
BOARD OF DIRECTORS MEETING

tenure as National Treasurer, Vargas is hereby Ordered to repay APFA for all meals he charged to the APFA credit card.

2. Vargas is prohibited from serving in any APFA National Officer position or Regional Officer position for life.

3. Vargas is hereby fined and ordered to repay the APFA for half of the Arbitrator's Fee for this arbitration.

4. The arbitrator shall retain jurisdiction for 90-days over any issue involving this remedy only. Moreover, if the Independent Auditor determines any monies are due from Vargas, that will be the amount to be assessed or due and the BOD or EC shall Order said repayment from Vargas."

; and

**WHEREAS**, the APFA Board of Directors is authorized and empowered to take any and all lawful action consistent with the Constitution to safeguard and protect the APFA, and the rights, privileges, duties and responsibilities of the officers, representatives and members of the APFA.

**BE IT THEREFORE RESOLVED**, the APFA affirms the APFA Article VII Arbitrator's decision and remedy and hereby sanctions the following actions:

1. The APFA Board of Directors hereby orders APFA National Treasurer, Erik Harris, to retain an independent auditor to investigate if Vargas had used the APFA credit card for his own personal use on meals during his tenure as National Treasurer. Within 30 days of completion, the results of this investigation shall be remitted to the Board of Directors for review. After this review, the APFA Board of Directors shall order Eugenio Vargas to repay APFA for any monies deemed owed by the independent auditor.

2. The APFA Board of Directors hereby orders the NBC to maintain a record of the Chinery-Lee v Vargas Article VII award to ensure Eugenio Vargas name is removed from any Willingness-to-Serve that he may submit for life.

3. The APFA Board of Directors hereby orders Eugenio Vargas to repay APFA $8,623.17 for the Article VII Arbitrator's fees. The National Treasurer shall be charged with collecting from Vargas consistent with the APFA Constitution, Policy Manual, and any applicable Federal, State, and local laws.

4. Notwithstanding, should any further fees be incurred by the Article VII Arbitrator as it relates to the issuance and implementation of the remedy, fifty percent (50%) of such fees shall be remitted to Eugenio Vargas for repayment.

*App. 96*

# APFA

## SPECIAL BOARD OF DIRECTORS TELECONFERENCE



### March 24, 2022

| Resolution Information | | |
|---|---|---|
| **Resolution #:** | 2 |
| **Resolution Name:** | Chinery-Lee v Ross Arbitration Remedy |
| **Status:** | Pass |
| **Maker:** | Hedrick |
| **Second:** | Nikides |
| **Date:** | 3/23/2022 |
| **Time:** | 4:08 p.m. |
| **Affects PM:** | ☐ |
| **Comments:** | |

|  | BOS Milenkovic | CLT Hazlewood | DCA Pennel | DFW De Roxtra | LAX Nikides | LGA Santana | MIA Trautman | ORD Wroble | PHL Kaswinkel | PHX Agee | SFO Schwartz | Pres Hedrick |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☐ | ☐ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Yes: 10   No: 0   Abstain: 1   Absent: 0   Show of Hands: ☐

**WHEREAS**, APFA Constitution, Article VII provides APFA members a mechanism to hold their representatives accountable through internal hearing procedures facilitated by a neutral third-party arbitrator; and

**WHEREAS**, two such members, Melissa Chinery & Sandra Lee, filed Article VII Charges against previous APFA National President, Bob Ross, on November 18, 2020; and

**WHEREAS**, these Article VII charges were referred to the designated Article VII Arbitrator, Ruben Armendariz, in accordance with APFA Constitution Article VII, Section 3; and

**WHEREAS**, the Chinery-Lee v. Ross charges were heard on June 16, 2021, and continued on November 17 & 18, 2021, in Irving, Texas; and

**WHEREAS**, Arbitrator Armendariz rendered a decision in the matter of Chinery-Lee v. Ross on March 19, 2022; and

**WHEREAS**, the remedy states:

"**1.** The APFA will hire an Independent Forensic Auditor to audit Robert Ross' weekly reports, monthly reports and APFA credit card charges from April 1, 2016 through July, 2018 and perform the following tasks:

Specifically:
**a.** The Auditor shall inspect the receipts for the Ross family vacation taken in the Grand Canyon in August 2016. Ross claimed all of hotel stays, meals and mileage charges as relocation moving expenses when some are for a personal vacation. Please determine what costs should not have been claimed as relocation moving expenses.

*App. 97*

**APFA**
BOARD OF DIRECTORS MEETING

Ross is liable for the excess cost and is hereby Ordered to repay APFA for all inappropriate charges!

**b.** The Auditor shall inspect Ross' APFA credit card usage for personal and group meals and purchases for personal items such as tools, toiletries, bath towels, and candy from April 1, 2016 through July 2018 and determine the cost of all inappropriate charges. If no documentation was provided to support each purchase was a union related business cost, then Ross is liable for all inappropriate charges and is hereby Ordered to repay the APFA for all inappropriate charges!

**c.** The Auditor shall inspect all of Ross' rental car usage from April 1, 2016 through October 16, 2016 and determine if these rentals were for union related business. APFA paid for the rental cars but there should be documentation to show if it was for union related business. If not, Ross is to be assessed the cost of the rental cars during the above period and is hereby Ordered to repay APFA for inappropriate rental car usage!

**d.** The Auditor shall inspect all of Ross' claimed mileage from the Sacramento Airport to his residence (42 miles) and return (42 miles) as well as all monthly parking of his personal car. He claimed $105.00 per month from April 1, 2016 through July 2016 to park his car at the Sacramento airport. Ross is to be assessed the mileage and monthly parking he claimed and Ross is hereby Ordered to repay APFA for all of these inappropriate charges!

2. Ross is hereby Ordered to immediately repay the APFA $5,436.47 per the finding of the APFA Board of Directors. An independent accounting firm determined the formula used to determine the daily rate assessed for sick and vacation payout was incorrect.

3. Ross is hereby Ordered to repay the APFA $8,106.13 for leasing an apartment at the Bear Creek Complex where he had no intention of occupying.

4. Ross is hereby fined and Ordered to repay the APFA for all of the Arbitrator's Fee for this arbitration.

5. Ross is hereby ordered to repay the APFA the full cost of hiring the Independent Forensic Auditor.

6. Ross is hereby Ordered to repay $3,637.00 to the APFA for all of the furniture he had purchased and delivered to his residence located in South Lake, Texas.

7. Ross is prohibited from serving in any official position within the APFA organization that is set forth and included in the APFA Constitution and Policy Manual that is covered or identified. If Ross currently holds any official position presently, he is to resign said position. This is to bar Ross from any official position for life other than that of member.

8. The APFA if it hasn't done so, must create a separate body of trained forensic accountants to oversee the annual audit and to create procedures and recommendations to preclude fraud for the BOD's review and action to be included within the Policy Manual. National Officers or Officers who have the authority to extend APFA to credit or use of an APFA credit card must be held economically responsible. The language created must be very clear and unambiguous. Training over the LMRDA must be a requirement for all National Officers or any person who can extend APFA to credit and whom is given an APFA credit card. These individuals must sign a document declaring and attesting that they have read and understand their responsibilities in using an APFA credit card or extending credit to the APFA for rental cars, apartments, etc., and that negligence will not be tolerated and will be dealt with severe penalties.

9. The arbitrator shall retain jurisdiction over any issue involving this remedy only. Moreover, if the Independent Auditor determines any monies are due from Ross, that will be the amount to be assessed or due for repayment to the APFA. The APFA shall either Order said repayment

**App. 98**

**APFA**
BOARD OF DIRECTORS MEETING

from Ross or submit the Independent Auditors findings to have this arbitrator issue a
Supplemental Decision and Remedy."

; and

**WHEREAS**, Bob Ross resigned from his position as APFA SFO Base President; and

**WHEREAS**, APFA Constitution Article VII, Section 6.H states that "[t]he decision of the Article
VII Arbitrator shall be final and binding upon the accused and the accuser;" and

**WHEREAS**, the APFA Board of Directors is authorized and empowered to take any and all lawful
action consistent with the Constitution to safeguard and protect the APFA and the rights, privileges,
duties, and responsibilities of the officers, representatives, and members of the APFA.

**BE IT THEREFORE RESOLVED**, the APFA affirms the APFA Article VII Arbitrator's decision
and remedy and hereby sanctions the following actions:

1. The APFA National Treasurer shall retain an independent forensic auditor to effectuate item
   1.a-d of the Arbitrator's remedy. Within 30 days of completion, the results of this investigation
   shall be remitted to the Board of Directors for review. After this review, the APFA shall order
   Bob Ross to repay APFA for any monies deemed owed by the independent forensic auditor.

2. APFA hereby orders Bob Ross to repay $5,436.47 to the APFA for the overpayment for the
   incorrectly calculated daily rate for sick and vacation payout.

3. APFA hereby orders Bob Ross to repay $8,106.13 for leasing an apartment at the Bear Creek
   Complex for which he had no intention of occupying.

4. APFA hereby orders Bob Ross to repay $10,452 for all of the Arbitrator's fees for this
   arbitration including the arbitrator's hotel expenses.

5. Once the forensic audit is completed, APFA will remit for payment the full cost of the
   Independent Forensic Audit to Bob Ross.

6. APFA hereby orders Bob Ross to repay $3,637.00 for all the furniture purchased and delivered
   to his personal residence located in South Lake, Texas.

7. APFA hereby orders the NBC to maintain a record of the Chinery-Lee v. Ross Article VII
   award to ensure any Willingness-to-Serve Bob Ross may submit for any election APFA holds
   during his lifetime is removed from consideration.

8. APFA hereby orders the National Secretary's Office to maintain a record of the Chinery-Lee v.
   Ross Article VII award to ensure any resume Bob Ross may submit during his lifetime for any
   positions covered by the APFA Constitution and Policy Manual is removed from consideration.

9. APFA hereby orders the National Treasurer to immediately take steps to effectuate item 8 of the
   Arbitrator's remedy including:

   - Hiring an independent body of trained forensic accountants to oversee the annual audit.

*App. 99*

**APFA**
BOARD OF DIRECTORS MEETING

- Reviewing Section 5 of the Policy Manual in order to clarify all financial policies ambiguous in nature and reviewing and implementing additional revisions as they relate to the decision of the Article VII Arbitrator.
- Developing and delivering training for those who may extend credit of the APFA. This training shall include proper use of member's dues, the LMRDA and other applicable laws and regulations, and APFA policies.
- Reviewing the APFA credit card policy and ensuring compliance with the LMRDA and other applicable laws and regulations. Any ambiguities to the APFA credit card policy shall be clarified. Representatives shall be required to sign a statement declaring and attesting that they have read and understood their responsibilities in using an APFA credit card or extending credit to the APFA for rental cars, apartments, etc.

10. Should any further fees be incurred by the Article VII Arbitrator related to the issuance and implementation of the remedy, one hundred percent (100%) of such fees shall be remitted to Bob Ross for repayment.

; and

**BE IT FURTHER RESOLVED**, should Bob Ross fail to remit payment to the APFA pursuant to the Chinery-Lee v. Ross Article VII award, the provisions of Section 7.J of the APFA Policy Manual shall not apply. The APFA shall retain jurisdiction over the debt owed by Bob Ross as it relates to the Chinery-Lee v Ross Article VII Remedy. APFA will take any and all actions consistent with local, state, and federal laws to recoup these monetary damages including legal action, if necessary; and

**BE IT FINALLY RESOLVED**, the APFA Leadership hereby condemns the actions Bob Ross took to defraud the members of APFA during his term as APFA National President.

*App. 100*