# APFA
## BOARD OF DIRECTORS MEETING

## SPECIAL BOARD OF DIRECTORS MEETING
### August 26, 2019

### HOLIDAY INN DFW SOUTH

**Resolution Tally Sheet**

| | |
|---|---|
| Resolution #: | 2 |
| Maker: | Gunter |
| Second: | Babi |
| Date: | 08/26/2019 |
| Time: | 11:23 a.m. |

**Resolution Name: Payouts to Former National Officer**

☐ *AFFECTS POLICY MANUAL:*

| | | | | | |
|---|---|---|---|---|---|
| **YES** | = *Yes* | **ABS** | = *Abstain* | **PXY** | = *Proxy Vote* |
| **NO** | = *No* | **N/A** | = *Absent* | **REC** | = *Recuse* |
| **PASS** | = *Pass* | | | | |

*COMMENTS:*

| | BOS | CLT | DCA | DFW | LAX | LGA | MIA | ORD | PHL | PHX | RDUI | SFO | STL | PRES — *Tie-Breaker* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Milenkovic | Hazlewood | Pennel | Truan | Nikides | Norvell | Trautman | Wroble | Kaswinkel | Babi | Kelso | Toms | Martin | Bassani |
| **YES** | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☐ | ☐ |
| **NO** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PASS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **PXY** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **REC** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

YES: 12    NO: 0    ABSTAIN: 1    ABSENT: 0

Status:    *Passed* ☒    *Failed* ☐    *Tabled* ☐    *Withdrawn* ☐    *Show of Hands* ☐

**WHEREAS** in the course of performing the fiscal year end financials, a possible overpayment of accrued leave pay outs was discovered to have been made to three prior officers of the organization;

**WHEREAS** as a result of this discovery, research was initiated in order to determine the past practice in interpreting the APFA Policy Manual section 6(B)and to confirm whether in fact overpayments were made and if so in what amount.

*App. 101*

**A P F A**
B O A R D   O F   D I R E C T O R S   M E E T I N G

**WHEREAS** as the results of the investigation and research confirmed that in fact there was a deviation from the past practice in interpreting the policies of the APFA with respect to pay outs

**THEREFOR BE IT RESOLVED**, that:

1. APFA make demand that the overpayments made to Eugenio Vargas, Nena Martin, Marcy Dunaway be recovered and the APFA be made whole; and

2. That the past practice of interpreting the term salary be continued to exclude MEA and SAF until such time as the policy is amended in accordance with the constitution of APFA.

**App. 102**

**From:** Erik Harris <eharris@apfa.org>
**Date:** Thursday, October 22, 2020 at 12:14 PM
**To:** Officers <Officers@apfa.org>
**Cc:** Margot Nikitas <MNikitas@apfa.org>, Bill Osborne <BOsborne@osbornelaw.com>
**Subject:** FW: Memo for the Board and EC



## Erik Harris

National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 6231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

APFA

**From:** Hal O'Neil <oneil@woodcpafirm.com>
**Date:** Thursday, October 22, 2020 at 12:11 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Pam Bush <pbush@woodcpafirm.com>
**Subject:** Memo for the Board and EC

Erik.....attached is the Board and EC Memo for your review.  Also are the attached schedules for each officer.  Please get back to me if this memo looks OK.

Thanks, Hal

Hal O'Neil, CPA
Wood, Stephens & O'Neil, L.L.P.
6300 Ridglea Place, Suite #318
Fort Worth, TX  76116

**Direct line - 817-886-3428**
Firm tele. - 817-377-1700 *(my extension #601)*
Firm fax - 817-377-1870

*Important/confidential: This communication and any files or documents attached to it are intended only for the use of the person(s) or entity to which it is addressed; consequently, it may contain information which is privileged and confidential.  If you are not the intended recipient(s) of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited.  If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.*

*Any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding tax penalties that may be imposed or promoting, marketing or recommending to another party any transaction or tax-related matter(s).*

Attachments:

| | |
|---|---|
| APFA - Board and EC memo.pdf | 79.7 KB |
| APFA - Vargas schedules A - C.pdf | 112 KB |
| APFA - Dunaway schedules A - C.pdf | 112 KB |
| APFA - Martin schedules A - C.pdf | 113 KB |
| APFA - Ross schedules A - C.pdf | 137 KB |

**Wood, Stephens &
O'Neil, L.L.P.**
Certified Public Accountants

6300 Ridglea Place, Suite 318
Fort Worth, TX 76116
Tele. 817-377-1700
Fax 817-377-1870

## CONFIDENTIAL MEMORANDUM

MEMO TO:        APFA Board of Directors and the Executive Committee

FROM:           Hal O'Neil, CPA, Pam Bush
SUBJECT:        Review of officer disbursements and the Bob Ross transition agreement
DATE:           October 22, 2020

The current APFA officers, in consultation with the APFA staff attorney and outside counsel, requested that our firm review specific former officer expense reimbursements and payroll disbursements, as well as the payments arising from the Bob Ross confidential transition agreement. This informal engagement is substantially less in scope than an audit engagement, the objective of which would be the expression of an opinion regarding these specific disbursements. Accordingly, we do not express an opinion or any form of assurance regarding these disbursements. Our task under this informal engagement, was as follows:

1. To review the backup for the former officers' salary disbursement amounts from 2016 - 2018 and to determine these base salaries were calculated correctly and in compliance with the guidelines and pay rates stipulated in the APFA policy manual. Please see the enclosed schedule A for each officer.

2. To prepare an overpayment schedule of the accrued and unused sick, and accrued and unused vacation time payments made to Bob Ross in 2018, similar to the overpayment schedules we prepared previously for the other three officers. Please see the enclosed schedules B and C for each officer. These overpayment schedules for the other officers were previously provided to the Board of Directors. Please note the Bob Ross confidential transition agreement states that he will be paid all of his accrued and unused sick, and accrued and unused vacation time. This agreement doesn't specify that the payments be made in accordance with the policy manual guidelines. Consequently, these payments appear appropriate and in compliance with the transition agreement. This agreement also specifies reimbursement payments to him of up to $10,000 in actual moving expenses. His moving expense reimbursement payments did not exceed this amount.

3. To assist the APFA accounting department staff in reviewing and organizing the various requested documents, as set forth in the flight attendants Chinery and Lee financial document request.

Please contact us should the Board of Directors or the Executive Committee have questions regarding our limited engagement.

Sincerely,

Hal O'Neil, CPA

*App. 104*

| A |
|---|

## Eugenio Vargas - National Treasurer Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| * | Maximum flight attendant pay | 60.13 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| ** | Maximum flight attendant pay | 61.33 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| *** | Maximum flight attendant pay | 64.96 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| **** | Maximum flight attendant pay | 66.26 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

---

| * | Pay rates effective 4/1/16 |
|---|---|
| ** | Pay rates effective 1/1/17 - 5/1/17 |
| *** | Pay rates effective 5/2/17 - 12/31/17 (1.6% increase) |
| **** | Pay rates effective 1/1/18 - 3/31/18 |

*App. 105*

| | | | B | | |
|---|---|---|---|---|---|
| **National Officer:** | **Eugenio Vargas** | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment |
| Profit Sharing - 2016 | | | | | 2,435.07  *(paid 3/10/17)* |
| Vacation Pay - 2017 | | | | | |
| | | $ 91,450.80 | 250.55 | 14 | 3,507.70  *(paid 3/31/2017)* |
| Sick Pay - 2017 | | | | | |
| | | $ 91,450.80 | 250.55 | 12 | 3,006.60  *(paid 3/31/2017)* |
| Retro | | | | | 831.60  *(paid 6/1/17)* |
| | | | | $ | 150.00  *(paid 1/25/18)* |
| Profit Sharing 2017 | | | | | 2,269.76  *(paid 3/9/18)* |
| Vacation Pay - 2018 | | | | | |
| | | $ 113,021.02 | 309.65 | 14 | 4,335.10  *(paid 3/29/2018)* |
| Sick Pay - 2018 | | | | | |
| | | $ 113,021.02 | 309.65 | 12 | 3,715.80  *(paid 3/29/2018)* |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | | 523.46 |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 448.68 |
| End of Term Payout - 2018 | | | | | 972.14  *(paid 3/29/2018)* |
| | | $ 111,317.70 | 304.98 | 54 | 16,468.92  *(paid 6/29/2018)* |
| Profit Sharing - 2018 | | | | | 1,141.03  *(paid 3/8/19)* |

**App. 106**

|  | | C | | | |
|---|---|---|---|---|---|
| **National Officer:** | **Eugenio Vargas** | | **Overpayment Calculation** | | |
| | | Annual | Daily amount | Eligible | |
| | | Salary | (divide by 365) | Days to pay | Payment |
| **Vacation Pay - 2018** | | | | | |
| | Original amount - paid in error (a) | $ 113,021.02 | 309.65 | 14 | $ 4,335.10 *(paid 3/29/2018)* |
| | Correct calculation amount | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 |
| | | | | Overpayment | $ 589.12 $ 589.12 |
| **Sick Pay - 2018** | | | | | |
| | Original amount - paid in error (a) | $ 113,021.02 | 309.65 | 12 | $ 3,715.80 *(paid 3/29/2018)* |
| | Correct calculation amount | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 |
| | | | | Overpayment | $ 504.96 $ 504.96 |
| **End of term payout - 2018** | | | | | |
| | Original amount - paid in error (a) | $ 111,317.70 | 304.98 | 54 | $ 16,468.92 *(paid 6/29/2018)* |
| | Correct calculation amount | $ 97,662.60 | 267.57 | 54 | $ 14,448.78 |
| | | | | Overpayment | $ 2,020.14 $ 2,020.14 |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 523.46 $ 523.46 *(paid 3/29/2018)* |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 448.68 $ 448.68 *(paid 3/29/2018)* |
| | | | | Overpayment subtotal | $ 4,086.36 ** |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | $ 57.21 *(based on 1.4%)* |
| | **Total overpayment - due to APFA** | | | | $ 4,143.57 |
| (a) - included union pay (MEA/SAF) | | | | | |

| A |
|---|

## Marcy Dunaway - National Secretary Pay

105 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | | | |
|---|---|---|---|---|
| * | Maximum flight attendant pay | 60.13 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 105 hours | 7,494.90 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,747.45 |
|---|---|

| | | | | |
|---|---|---|---|---|
| ** | Maximum flight attendant pay | 61.33 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 105 hours | 7,620.90 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 3,810.45 |
|---|---|

| 91,450.80 | Annual salary |
|---|---|
| 250.55 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| *** | Maximum flight attendant pay | 64.96 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 105 hours | 8,002.05 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,001.03 |
|---|---|

| 96,024.60 | Annual salary |
|---|---|
| 263.08 | Daily rate for sick and vacation |

| | | | | |
|---|---|---|---|---|
| **** | Maximum flight attendant pay | 66.26 | | |
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 105 hours | 8,138.55 |

| Bi-monthly pay - 1/1/18 - 3/31/18 | 4,069.28 |
|---|---|

| 97,662.60 | Annual salary |
|---|---|
| 267.57 | Daily rate for sick and vacation |

*    Pay rates effective 4/1/16
**   Pay rates effective 1/1/17 - 5/1/17
***  Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 3/31/18

**App. 108**

| | | | | B | |
|---|---|---|---|---|---|
| **National Officer:** | **Marcy Dunaway** | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment |
| Profit Sharing - 2016 | | | | | 2,424.86 *(paid 3/10/17)* |
| Vacation Pay - 2017 | | $ 91,450.80 | 250.55 | 14 | 3,507.70 *(paid 3/31/2017)* |
| Sick Pay - 2017 | | $ 91,450.80 | 250.55 | 12 | 3,006.60 *(paid 3/31/2017)* |
| Retro | | | | | 831.60 *(paid 6/1/17)* |
| Triple Grand Slam | | | | | 300.00 *(paid 7/6/17)* |
| Grand Slam | | | | | 150.00 *(paid 1/25/18)* |
| Profit Sharing - 2018 | | | | | 2,270.35 *(paid 3/9/18)* |
| Vacation Pay - 2018 | | $ 112,659.36 | 308.66 | 14 | 4,321.24 *(paid 3/29/2018)* |
| Sick Pay - 2018 | | $ 112,659.36 | 308.66 | 12 | 3,703.92 *(paid 3/29/2018)* |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | | 513.10 |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 439.80 |
| | | | | | 952.90 *(paid 3/29/2018)* |
| End of Term Payout - 2018 | | $ 110,926.06 | 303.91 | 60 | 18,234.60 *(paid 6/29/2018)* |
| Profit Sharing - 2018 | | | | | 1,199.47 *(paid 3/8/19)* |

**App. 109**

| | | | C | | | | | |
|---|---|---|---|---|---|---|---|---|
| **National Officer:** | | **Marcy Dunaway** | | **Overpayment Calculation** | | | | |
| | | Annual | Daily amount | Eligible | | | | |
| | | Salary | (divide by 365) | Days to pay | Payment | | | |
| **Vacation Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 14 | $ 4,321.24 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 97,662.72 | 267.57 | 14 | $ 3,745.98 | | | |
| | | | | Overpayment | $ 575.26 | $ 575.26 | | |
| **Sick Pay - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 112,659.36 | 308.66 | 12 | $ 3,703.92 | (paid 3/29/2018) | | |
| | Correct calculation amount | $ 97,662.72 | 267.57 | 12 | $ 3,210.84 | | | |
| | | | | Overpayment | $ 493.08 | $ 493.08 | | |
| **End of term payout - 2018** | | | | | | | | |
| | Original amount - paid in error (a) | $ 110,926.06 | 303.91 | 60 | $ 18,234.60 | (paid 6/29/2018) | | |
| | Correct calculation amount | $ 97,662.60 | 267.57 | 60 | $ 16,054.20 | | | |
| | | | | Overpayment | $ 2,180.40 | $ 2,180.40 | | |
| **Vacation Pay - 2017 - (adjustment paid in 2018….all paid in error)** | | | | Overpayment | $ 513.10 | $ 513.10 | (paid 3/29/2018) | |
| **Sick Pay - 2017 - (adjustment paid in 2018….all paid in error)** | | | | Overpayment | $ 439.80 | $ 439.80 | (paid 3/29/2018) | |
| | | | | Overpayment subtotal | | $ 4,201.64 | ** | |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 58.82 | (based on 1.4%) | |
| | **Total overpayment - due to APFA** | | | | | **$ 4,260.46** | | |
| (a) - included union pay (MEA/SAF) | | | | | | | | |

**App. 110**

| A |
|---|

**Nena Martin - National Vice President Pay**
**National President Pay (3/2/18)**

110.5 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| * | Maximum flight attendant pay | 60.13 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 71.38 | 110.5 hours | 7,887.49 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 3,943.75 |
|---|---|

| ** | Maximum flight attendant pay | 61.33 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 72.58 | 110.5 hours | 8,020.09 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,010.05 |
|---|---|

| 96,241.08 | Annual salary |
|---|---|
| 263.67 | Daily rate for sick and vacation |

| *** | Maximum flight attendant pay | 64.96 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 76.21 | 110.5 hours | 8,421.21 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,210.60 |
|---|---|

| 101,054.46 | Annual salary |
|---|---|
| 276.86 | Daily rate for sick and vacation |

| **** | Maximum flight attendant pay | 66.26 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 110.5 hours | 8,564.86 |

| Bi-monthly pay - 1/1/18 - 3/1/18 | 4,282.43 |
|---|---|

| 102,778.26 | Annual salary |
|---|---|
| 281.58 | Daily rate for sick and vacation |

Stepped in as President on 3/2/18

| **** | Maximum flight attendant pay | 66.26 | | |
|---|---|---|---|---|
| | Purser Pay | 7.50 | | |
| | International pay | 3.75 | | |
| | | 77.51 | 116 hours | 8,991.16 |

| Bi-monthly pay - 3/2/18 - 3/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

* Pay rates effective 4/1/16
** Pay rates effective 1/1/17 - 5/1/17
*** Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
**** Pay rates effective 1/1/18 - 3/31/18

**App. 111**

| | | | | B | | | |
|---|---|---|---|---|---|---|---|
| **National Officer:** | Nena Martin | | | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | |
| Profit Sharing - 2016 | | | | | 2,541.90 *(paid 3/10/17)* | | |
| Vacation Pay - 2017 | | | | | | | |
| | | $ 96,241.20 | 263.67 | 14 | 3,691.38 *(paid 3/31/2017)* | | |
| Sick Pay - 2017 | | | | | | | |
| | | $ 96,241.20 | 263.67 | 12 | 3,164.04 *(paid 3/31/2017)* | | |
| Retro Pay | | | | | 875.16 *(paid 6/1/17)* | | |
| Triple Play Grand Slam | | | | | 300.00 *(paid 7/6/17)* | | |
| Grand Slam | | | | | 150.00 *(paid 1/25/18)* | | |
| Profit Sharing - 2017 | | | | | 2,373.70 *(paid 3/9/18)* | | |
| Vacation Pay - 2018 | | | | | | | |
| | | $ 131,844.90 | 361.22 | 14 | 5,057.08 *(paid 3/29/2018)* | | |
| Sick Pay - 2018 | | | | | | | |
| | | $ 131,844.90 | 361.22 | 12 | 4,334.64 *(paid 3/29/2018)* | | |
| Vacation Pay - 2017 - (adjustment paid in 2018) | | | | | 520.94 | | |
| Sick Pay - 2017 - (adjustment paid in 2018) | | | | | 439.80 | | |
| | | | | | 960.74 *(paid 3/29/18)* | | |
| End of Term Payout - 2018 | | | | | | | |
| | | $ 118,046.02 | 323.41 | 60 | 19,404.60 *(paid 6/29/2018)* | | |
| Profit Sharing - 2018 | | | | | 1,279.64 *(paid 3/8/19)* | | |

**App. 112**

|  | | C | | | | | |
|---|---|---|---|---|---|---|---|
| **National Officer:** | **Nena Martin** | | *Overpayment Calculation* | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | |
| **Vacation Pay - 2018** | | | | | | | |
| | Original amount - paid in error (a) | $ 131,844.90 | 361.22 | 14 | $ 5,057.08 | *(paid 3/29/2018)* | |
| | Correct calculation amount | $ 101,510.74 | 278.11 | 14 | $ 3,893.54 | | |
| | | | | Overpayment | $ 1,163.54 | $ 1,163.54 | |
| **Sick Pay - 2018** | | | | | | | |
| | Original amount - paid in error (a) | $ 131,844.90 | 361.22 | 12 | $ 4,334.64 | *(paid 3/29/2018)* | |
| | Correct calculation amount | $ 101,510.74 | 278.11 | 12 | $ 3,337.32 | | |
| | | | | Overpayment | $ 997.32 | $ 997.32 | |
| **End of term payout - 2018** | | | | | | | |
| | Original amount - paid in error (a) | $ 118,046.02 | 323.41 | 60 | $ 19,404.60 | *(paid 6/29/2018)* | |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 60 | $ 17,736.00 | | |
| | | | | Overpayment | $ 1,668.60 | $ 1,668.60 | |
| **Vacation Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 520.94 | $ 520.94 | *(paid 3/29/2018)* |
| **Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | | Overpayment | $ 439.80 | $ 439.80 | *(paid 3/29/2018)* |
| | | | | Overpayment subtotal | | $ 4,790.20 | ** |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 67.06 | *(based on 1.4%)* |
| | | **Total overpayment - due to APFA** | | | | $ 4,857.26 | |
| (a) - included union pay (MEA/SAF) | | | | | | | |

| A |
|---|

**Bob Ross - National President Pay**

116 hours paid monthly at the highest purser pay including international overide, per the policy manual.

| | | |
|---|---|---|
| * | Maximum flight attendant pay | 60.13 |
| | Purser Pay | 7.50 |
| | International pay | 3.75 |
| | | 71.38    116 hours    8,280.08 |

| Bi-monthly pay 4/1/16 - 12/31/16 | 4,140.04 |
|---|---|

| | | |
|---|---|---|
| ** | Maximum flight attendant pay | 61.33 |
| | Purser Pay | 7.50 |
| | International pay | 3.75 |
| | | 72.58    116 hours    8,419.28 |

| Bi-monthly pay - 1/1/17 - 5/1/17 | 4,209.64 |
|---|---|

| 101,031.36 | Annual salary |
|---|---|
| 276.80 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| *** | Maximum flight attendant pay | 64.96 |
| | Purser Pay | 7.50 |
| | International pay | 3.75 |
| | | 76.21    116 hours    8,840.36 |

| Bi-monthly pay - 5/2/17 - 12/31/17 | 4,420.18 |
|---|---|

| 106,084.32 | Annual salary |
|---|---|
| 290.64 | Daily rate for sick and vacation |

| | | |
|---|---|---|
| **** | Maximum flight attendant pay | 66.26 |
| | Purser Pay | 7.50 |
| | International pay | 3.75 |
| | | 77.51    116 hours    8,991.16 |

| Bi-monthly pay - 1/1/18 - 7/31/18 | 4,495.58 |
|---|---|

| 107,893.92 | Annual salary |
|---|---|
| 295.60 | Daily rate for sick and vacation |

\*    Pay rates effective 4/1/16
\*\*   Pay rates effective 1/1/17 - 5/1/17
\*\*\*  Pay rates effective 5/2/17 - 12/31/17 (1.6% increase)
\*\*\*\* Pay rates effective 1/1/18 - 7/31/18

*App. 114*

| | | B | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **National Officer:** | Bob Ross | | | | | | | | | |
| | | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment | | | | | |
| **Profit Sharing - 2016** | | | | | 2,652.22 *(paid 3/10/17)* | | | | | |
| **Vacation Pay - 2017** | | | | | | | | | | |
| | | $  101,031.36 | 276.80 | 14 | 3,875.20 *(paid 3/31/17)* | | | | | |
| **Sick Pay 2017** | | | | | | | | | | |
| | | $  101,031.36 | 276.80 | 12 | 3,321.60 *(paid 3/31/17)* | | | | | |
| **Retro - Wage Arbitration Award 1.6%** | | | | | 918.72 *(paid 6/1/17)* | | | | | |
| **Triple Play Grand Slam** | | | | | 300.00 *(paid 7/6/17)* | | | | | |
| **Grand slam** | | | | | 150.00 *(paid 1/25/18)* | | | | | |
| (Additional $50 grand slam paid on 2/15/18 salary check) | | | | | | | | | | |
| **2017 Profit Sharing** | | | | | 2,458.19 *(paid 3/9/18)* | | | | | |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018)** | | | | | 968.76 *(paid 2/29/2018)* | | | | | |
| **Vacation Pay - 2017 (remaining unused days per agreement)** | | | | | | | | | | |
| | | $  114,632.67 | 314.06 | 17 | 5,339.02 *(paid 3/29/2018)* | | | | | |
| **Vacation Pay - 2018 (remaining unused days per agreement)** | | | | | | | | | | |
| | | $  122,121.70 | 334.58 | 29 | 9,702.82 *(paid 3/29/2018)* | | | | | |
| (Paid in two checks in the amount of $4,851.41 each) | | | | | | | | | | |
| **Sick Pay - 2018** | | | | | | | | | | |
| | | $  122,121.69 | 334.58 | 12 | 4,014.96 *(paid 3/29/2018)* | | | | | |
| **End of Term Payout - 2017 (January 1 - December 31, 2017)** | | | | | | | | | | |
| | | $  .118,046.02 | 334.58 | 35 | 11,710.30 *(paid 3/29/2018)* | | | | | |
| (Paid in two checks in the amount of $3,903.43 each and one for $3,903.44) | | | | | | | | | | |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** | | | | | | | | | | |
| | | $  118,046.02 | 334.58 | 20.44 | 6,838.82 *(paid 3/29/2018)* | | | | | |
| (Paid in two checks in the amount of $3,419.41 each) | | | | | | | | | | |
| **Profit sharing 2018** | | | | | 1,403.99 *(paid 3/8/19)* | | | | | |

**App. 115**

|  |  | C |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| **National Officer:** | Bob Ross |  | **Overpayment Calculation** |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  | Annual Salary | Daily amount (divide by 365) | Eligible Days to pay | Payment |  |  |
| **Vacation Pay - 2017** |  |  |  |  |  |  |  |
| | Original amount | $ 101,031.36 | 276.80 | 14 | $ 3,875.20 | OK *(paid 3/31/17)* |  |
| |  |  | Overpayment | | $ - | $ - |  |
|  |  |  |  |  |  |  |  |
| **Sick Pay - 2017** |  |  |  |  |  |  |  |
| | Original amount | $ 101,031.36 | 276.80 | 12 | $ 3,321.60 | OK *(paid 3/31/17)* |  |
| |  |  | Overpayment | | $ - | $ - |  |
|  |  |  |  |  |  |  |  |
| **Vacation & Sick Pay - 2017 - (adjustment paid in 2018....all paid in error)** | | | Overpayment | | $ 968.76 | $ 968.76 |  |
|  |  |  |  |  |  |  |  |
| **Vacation Pay - 2017 (remaining unused days per agreement)** |  |  |  |  |  |  |  |
| | Original amount - paid in error (a) | $ 114,632.67 | 314.06 | 17 | $ 5,339.02 | *(paid 3/29/2018)* |  |
| | Correct calculation amount | $ 101,031.36 | 276.80 | 17 | $ 4,705.60 |  |  |
| |  |  | Overpayment | | $ 633.42 | $ 633.42 |  |
|  |  |  |  |  |  |  |  |
| **Vacation Pay - 2018 (remaining unused days per agreement)** |  |  |  |  |  |  |  |
| | Original amount - paid in error (a) | $ 122,121.70 | 334.58 | 29 | $ 9,702.82 | *(paid 3/29/2018)* |  |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 29 | $ 8,572.40 |  |  |
| |  |  | Overpayment | | $ 1,130.42 | $ 1,130.42 |  |
|  |  |  |  |  |  |  |  |
| **Sick Pay - 2018** |  |  |  |  |  |  |  |
| | Original amount - paid in error (a) | $ 122,121.69 | 334.58 | 12 | $ 4,014.96 | *(paid 3/29/2018)* |  |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 12 | $ 3,547.20 |  |  |
| |  |  | Overpayment | | $ 467.76 | $ 467.76 |  |
|  |  |  |  |  |  |  |  |
| **End of term payout - 2017 (January 1 - December 31, 2017)** |  |  |  |  |  |  |  |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 35 | $ 11,710.30 | *(paid 3/29/2018)* |  |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 35 | $ 10,346.00 |  |  |
| |  |  | Overpayment | | $ 1,364.30 | $ 1,364.30 |  |
|  |  |  |  |  |  |  |  |
| **End of Term Payout - 2018 (January 1 - July 31, 2018)** |  |  |  |  |  |  |  |
| | Original amount - paid in error (a) | $ 118,046.02 | 334.58 | 20.44 | $ 6,838.82 | *(paid 3/29/2018)* |  |
| | Correct calculation amount | $ 107,893.92 | 295.60 | 20.44 | $ 6,042.06 |  |  |
| |  |  | Overpayment | | $ 796.75 | $ 796.75 |  |
|  |  |  |  |  |  |  |  |
|  |  |  | Overpayment subtotal | | | $ 5,361.41 | ** |
|  |  |  |  |  |  |  |  |
| | Add 2018 profit-sharing contribution paid (3/8/2019) on excess amount above ** | | | | | $ 75.06 | *(based on 1.4%)* |
|  |  |  |  |  |  |  |  |
| | **Total overpayment - due to APFA** | | | | | $ 5,436.47 |  |

**App. 116**

**From:** John Nikides <jnikides@apfa.org>
**Sent:** Thursday, November 12, 2020 8:40 AM
**To:** Nena Martin <nmartin@apfa.org>
**Cc:** Margot Nikitas <MNikitas@apfa.org>; Amy Milenkovic <amilenkovic@apfa.org>; Scott Hazlewood <shazlewood@apfa.org>; Louise Sullivan <lsullivan@apfa.org>; Randy Trautman <rtrautman@apfa.org>; Robert Norvell <rnorvell@apfa.org>; Susan Wroble <swroble@apfa.org>; Kim Kaswinkel <kkaswinkel@apfa.org>; Amber De Roxtra <aderoxtra@apfa.org>; Mischel Babi <mbabi@apfa.org>; John Pennel <jpennel@apfa.org>; Tim Schwartz <tschwartz@apfa.org>; Officers <Officers@apfa.org>
**Subject:** Re: Draft Response to Melissa Chinery

I agree 100 percent with Nena. She makes perfect sense.

John Nikides

Sent from my iPhone

On Nov 12, 2020, at 6:32 AM, Nena Martin <nmartin@apfa.org> wrote:

Margot and Base Presidents,

I appreciate the below draft, but I would like to suggest a different approach and draft to the Base Presidents.

I believe the letter should come from you Margot, as the APFA In-House Counsel. This will follow our past practice in this type of situation.

A letter from the BOD may generate additional Article VII charges if said party doesn't like the response, but charges can't be levied against our APFA Legal Counsel acting on behalf of the entity.

The letter should be sent by certified mail with a green card for verification, along with an email follow up to cover all avenues and provide additional protection for the entity.

Please see the attached documents for consideration by the Base Presidents.

Thanks Nena

**From:** Margot Nikitas <MNikitas@apfa.org>
**Sent:** Wednesday, November 11, 2020 9:11 PM
**To:** Amy Milenkovic <amilenkovic@apfa.org>; Scott Hazlewood <shazlewood@apfa.org>; Louise Sullivan <lsullivan@apfa.org>; Randy Trautman <rtrautman@apfa.org>; Robert Norvell <rnorvell@apfa.org>; Susan Wroble <swroble@apfa.org>; Kim Kaswinkel <kkaswinkel@apfa.org>; Amber De Roxtra <aderoxtra@apfa.org>; Mischel Babi <mbabi@apfa.org>; John Nikides <jnikides@apfa.org>; John Pennel <jpennel@apfa.org>; Nena Martin <nmartin@apfa.org>; Tim Schwartz <tschwartz@apfa.org>
**Cc:** Officers <Officers@apfa.org>
**Subject:** Draft Response to Melissa Chinery

***App. 117***

Dear Board,

Below is a draft response to Melissa Chinery for your review and edits.

Thanks,
Margot

Melissa:

The Board of Directors is in receipt of your email dated November 8, 2020.

On October 28, 2020, during its fall meeting, the Board considered agenda item "Former National Officer Payout." The Board went off the record and had a confidential discussion regarding this agenda item. After going back on the record, the Board did not take any formal action or take any vote regarding this agenda item. In consultation with the National Officers, the Board has continued to discuss this matter.

Sincerely,

[signatures]

On Nov 8, 2020, at 7:06 PM, melchinery@aol.com wrote:

Dear Board of Directors,

I've been told by several people that you all were made  aware at the recent fall board meeting that Bob Ross owes thousands of dollars back to the union. He owes this because of MEA, SAF, and Stipend pay was wrongfully added to inflate his pay. The same wrongful inflated formula that Nena Martin, Eugenio Vargas, and Marcy Dunaway were caught using and ordered to repay thousands of dollars back to the union. Can you please advise me of what actions you have taken to get Bob Ross to repay these embezzled funds? When will the membership be informed of what has transpired? Also, why wasn't Bob Ross's pay checked when Nena Martin, Marcy Dunaway, and Eugenio Vargas got caught to see if he had also received the same bogus formula?  As board members you have a fiduciary duty to ensure and protect that our hard earned dues dollars are spent for their intended purposes.

Melissa Chinery

Sent from AOL Mobile Mail
Get the new AOL app: mail.mobile.aol.com

---

Margot A. Nikitas
General Counsel

*App. 118*

Association of Professional Flight Attendants
1004 W. Euless Boulevard
Euless, TX 76040
817.540.0108 ext. 8108 (phone)
817.355.1919 (fax)
www.apfa.org

November 12, 2020


Melissa Chinery # 401137
Address


RE: November 8, 2020 email to the APFA Board of Directors


Ms. Chinery,

This letter is intended to acknowledge that the APFA Board of Directors has received the above-mentioned email on the date above.

The Fall APFA Board of Directors Meeting was held on October 27-28, 2020 at the NYLO Las Colinas, 1001 W. Royal Ln, Irving, Texas.

APFA National Treasurer, Erik Harris, added agenda item "Former National Officer Payout" as information/discussion (I/D) to the members of the assembly.

Regarding this topic, an off-record discussion was held between the members of the Board of Directors and the Executive Committee.

The APFA Base Presidents, Executive Committee and National Officers continue to work on a resolution to this issue.

If you are in need of any other information, please feel free to contact me at (insert phone number). I will be happy to answer any other inquiries that you may have in this matter.

Respectfully,

Margot Nikitas
APFA In-House Counsel


**App. 120**

# APFA
## 2020 FALL BOARD OF DIRECTORS MEETING
### October 27-28, 2020



*NYLO Las Colinas*
*Irving, TX*

## Final Agenda

| | | |
|---|---|---|
| **LEGEND** | | |
| Information | | I |
| Discussion | | D |
| Action | | A |

**Tuesday, October 27, 2020**
*0900 CDT*

**Fall Board Meeting Opening**                                          I
➢ President's Opening Remarks
➢ Call to Order
➢ Roll Call
➢ Agenda Review & Approval                                          I/D/A

**National President's Update**
➢ President's Update                                                     I/D
➢ Active Litigation Update                                            I/D
➢ Negotiations Update                                                  I/D
➢ Professional Standards Realignment & Voicemail      I/D/A
➢ Black Lives Matter                                                     I/D/A
➢ Diversity & Inclusion Committee                             I/D/A

**Department Reports**                                                    I/D
➢ Communications
➢ Contract
➢ Scheduling
➢ Health
➢ IOD
➢ Hotel
➢ Safety & Security
➢ EAP
➢ Government Affairs
➢ JCBA
➢ Retirement
➢ Unemployment
➢ Professional Standards

**National Vice President's Update**                              I/D
➢ SBA Update
  ▪ Presidential Grievances
  ▪ QSBs
  ▪ Terminations

2020 Fall BOD Meeting
Final Agenda
October 27-28, 2020
Page 2 of 2

### National Secretary's Update

| | |
|---|---|
| ➢ Secretary's Update | I/D |
| ➢ Archives Department Report | I/D |
| ➢ National Ballot Committee Report | I/D |
| ➢ NBC Hotlines | I/D/A |
| ➢ Electronic Candidate Booklets | I/D/A |
| ➢ Candidate Campaign Emails | I/D/A |

### National Treasurer's Update

| | |
|---|---|
| ➢ Financial Report | I/D |
|    ▪ Reserves & Savings | |
|    ▪ Assets, Liabilities, & Fund Balances | |
|    ▪ Dues & Fees | |
|    ▪ Net Income | |
| ➢ PAC Report | I/D |
| ➢ PA/AR Removals | I/D/A |
| ➢ Dues Increase | I/D |
| ➢ Headcount Adjustment | I/D/A |
| ➢ Budget Reduction | I/D/A |
| ➢ Credit Card Policy | I/D/A |
| ➢ Apartment Furnishings | I/D/A |
| ➢ Relocation | I/D/A |
| ➢ Internet & Telephone Expenses | I/D/A |
| ➢ Late Expenses Denial Appeal | I/D/A |
| ➢ Former National Officer Payout | I/D |
| ➢ Article VII Section 7.B | I/D |

### Old Business

### New Business

| | | |
|---|---|---|
| ➢ Policy manual/constitution review/update & page turn | Pennel | I/D |
| ➢ Distinguished Service Award – R. Harris | De Roxtra | I/D/A |
| ➢ Accounting Cycles | Norvell | I/D/A |
| ➢ STL & RDU Base Closures | Martin | I/D |

***App. 122***

# APFA

## FALL BOARD OF DIRECTORS MEETING



### October 10-12, 2023

*APFA Unity Pays Conference Room*

| | Resolution Information |
|---|---|
| **Resolution #:** | **3** |
| **Resolution Name:** | **Confidentiality** |
| **Status:** | **Pass** |
| **Maker:** | Montanari |
| **Second:** | Pennel |
| **Date:** | 10/12/2023 |
| **Time:** | 9:54 a.m. CT |
| **Affects PM:** | ☒ Section 1.E |
| **Comments:** | |

| | BOS Powers | CLT Hazlewood | DCA Pennel | DFW De Roxtra | LAX Nikides | LGA Santana | MIA Trautman | ORD Howard | PHL Montanari | PHX Agee | Hedrick |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **YES** | ☒ | ☐ | ☐ | ☒ | ☒ | ☒ | ☐ | ☒ | ☒ | ☒ | ☐ |
| **NO** | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **ABS** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **N/A** | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Yes:** 8 **No:** 2 **Abstain:** 0 **Absent:** 0 **Show of Hands:** ☐

**WHEREAS**, APFA Policy Manual Section 1.E.1 states "The National Officers, voting Board of Directors, Ad-Hoc Members of the Executive Committee, members of any APFA Negotiating committee, Base Vice Presidents, National Chairs, and Regional Representatives are required to maintain confidentiality in connection with conducting the business of the Union. Every person holding one (1) or more of these positions shall sign a Code of Confidentiality;" and

**WHEREAS**, APFA representatives are bound by APFA Policy Manual Section 1.E to safeguard confidential communications and information disseminated to them in their official capacity; and

**WHEREAS**, all members of the APFA have a right to individual privacy under Article II, Section 3.C of the APFA Constitution; and

**WHEREAS**, all officers, agents and other representatives of the APFA occupy a position of trust in relation to APFA and its members as a group. Therefore representatives have a duty to refrain from dealing with APFA as an adverse party or on behalf of any adverse party in any matter connected with their duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization pursuant to Section 501(a) of the Labor-Management Reporting and Disclosure Act; and

**WHEREAS**, breaches of confidentiality may undermine the APFA negotiations strategy, may harm APFA's position in litigation, and erode the trust of its members.

*App. 123*

**APFA**
BOARD OF DIRECTORS MEETING

**BE IT THEREFORE RESOLVED**, any National Officers, voting Board of Directors, Ad-Hoc Members of the Executive Committee, members of any APFA Negotiating committee, Base Vice Presidents, National Chairs, Regional Representatives or other representative of APFA who violates the APFA Policy Manual Section 1.E or APFA Code of Confidentiality will be sent a letter admonishing the breach of confidentiality and be barred from receiving any confidential and privileged information for an amount of time necessary, in the judgment of the Board of Directors, to protect the interests of the APFA and its members; and

**BE IT FURTHER RESOLVED**, that APFA Policy Manual Section 1.E.1 include the following edits:

"The National Officers, voting Board of Directors, Ad-Hoc Members of the Executive Committee, members of any APFA Negotiating committee, Base Vice Presidents, National Chairs, ~~and~~ Regional Representatives, and other APFA Representatives are required to maintain confidentiality in connection with conducting the business of the Union. Every person holding one (1) or more of these positions shall sign a Code of Confidentiality." and

**BE IT FURTHER RESOLVED**, APFA Policy Manual Section 1.E be updated to include the following paragraph:

4. Failure to execute or comply with the APFA Code of Confidentiality will result in exclusion from receiving confidential and proprietary information. The Board of Directors shall determine the duration of exclusion from receiving confidential and proprietary information. A letter will be sent to the offender by the APFA Board of Directors describing the breach of confidentiality and the consequence.

**App. 124**



1900 West Park Drive, Suite 280 • Westborough, MA 01581
Tel: 508.480.8202 • Fax: 508.480.8204
katzlawgroup.com

November 15, 2023

By first class mail and by email Francesrene **Redacted by Plaintiffs**

Ms. Frances Marcel



**Redacted by Plaintiffs**

## CEASE AND DESIST/NOTICE OF FUTURE LEGAL ACTION

Dear Ms. Marcel:

This office is legal counsel to Joseph Warren Burns ("Burns") in his capacity as General Counsel to the Association of Flight Attendants. You are now advised not to communicate with Burns for any reason and that all future correspondence regarding this matter be directed to my attention. This demand is being sent to your attention as Burns is fully aware that both of you and other individuals have engaged in an individual and collectively undertaking through Facebook with the malicious and defamatory intent of damaging Burn's outstanding business and community reputation. You, along with several other individuals, have publicly and repeatedly questioned Burn's professional licensure and achievements. In addition, Burns has also received information from reputable third parties indicating, without equivocation, that various individuals have questioned his professional licensure and professional achievement as a direct result of your various postings. I have all the various posts by you and other individuals in my file at the present time.

To set the record straight, once and for all, please be advised that Burns was admitted to the practice of law in the State of Minnesota on November 20, 2001, and the statement of admission is attached as **Exhibit A.** A copy of Burn's current legal license is attached hereto as **Exhibit B.** Thirdly, an up-to-date copy of a Certificate of Good Standing from the Minnesota Supreme Court on behalf of Burns is attached as **Exhibit C.**

Considering these facts, not only are your posts factually incorrect but you clearly failed to undertake prior due diligence before posting your comments. Furthermore, you and several other people utilized social media to question Burns' professional licensure and thus create inferences throughout that Burns was not suited for the general counsel's position which he has held for many years. Your conduct herein is considered libel *per se* as the express wording you employed and the efforts to spread

Page **1** of **2**

*App. 125*

misleading and factually inaccurate information about Burns expressly set forth unethical and dishonest conduct on behalf of Burns. The written and presumably verbal dissemination of these misleading and defamatory statements has caused irreparable professional and economic damage to Burns' otherwise impeccable professional and business reputation.

As a result, Burns demands the following immediate action:

A.   For you to immediately remove the previously published Facebook posts involving Burns, and as identified in this demand and that evidence of such removal of all posts be provided to me by or within **seven** days of receipt of this demand

B.   That you issue a retraction of similar size and placement on each social media page as your original defamatory posts and provide a copy of each retraction to me within **seven** days of receipt of this demand.

C.   You will remove any defamatory posts from social media pages.

D.   That you will not participate and/or publish any further social media postings questioning Burns' bar admission or licensure and,

E.   If you comply with the requirements in sections A through D above, Burns will immediately release you from all future liability associated with this matter.

If you fail to fully comply with any the above requirements, Burns is prepared to seek all available civil remedies against you including, *but not limited to*, libel and slander, invasion of privacy, and/or interference with advantageous business relationships and, in addition, seek compensation for punitive damages and reasonable attorney's fees.

Burns reserves all his legal and equitable rights and interests in this matter.

Your *immediate* attention to this matter is advised.

Very truly yours,

David S. Katz, Esq.

DSK/dls
cc:  J. Burns, Esq. J. Morse, Esq.

*App. 126*

**MINNESOTA JUDICIAL BRANCH**

Exhibit A

# Lawyer Details

| | |
|---|---|
| Lawyer ID | 0315540 |
| Last Name | BURNS |
| First Name | JOSEPH |
| Middle Name | WARREN |
| Address | 1139 9TH AVE #202 HONOLULU, HI  96816 |
| Date Admitted | 11/20/01 |
| Last Payment | 12/22/22 |
| Next Payment Due | 01/01/24 |
| Authorized to Practice Law? | Authorized |

Additional information related to limited license statuses may be obtained through the **Lawyer Registration Website.**

| | |
|---|---|
| Current Disciplinary Status | NONE |

Additional information on disciplinary history or statuses may be obtained at **Lawyer's Professional Responsibility Board Website.**

| | |
|---|---|
| CLE Status | 3 |
| Fee Status | ACTIVE |
| Professional Liability Insurance | Lawyer does NOT represent private clients |
| Good Standing: | Yes |

<- Back to Lawyer List...

*App. 127*

Exhibit B

# Minnesota Supreme Court

## ATTORNEY LICENSE

ATTORNEY ID:     0315540
LICENSE TYPE:    AUTHORIZED
CLE:             3

JOSEPH WARREN BURNS
578 WASHINGTON BLVD #250
LOS ANGELES  CA  90292



Expiration Dat
01/01/2024

www.lro.mn.gov

Exhibit C

# STATE OF MINNESOTA
# IN SUPREME COURT

*Certificate of Good Standing*

This is to certify that the following lawyer is in good standing

JOSEPH WARREN BURNS

was duly admitted to practice as a lawyer and counselor at law in all the courts of this state on

November 20, 2001

Given under my hand and seal of this court on

October 03, 2023



Emily J. Eschweiler, Director
Office of Lawyer Registration

**App. 129**



KATZ LAW GROUP, P.C.

1900 West Park Drive, Suite 280 • Westborough, MA 01581
Tel: 508.480.8202 • Fax: 508.480.8204
katzlawgroup.com

November 15, 2023

By first class mail and by email jehtlag **Redacted by Plaintiffs**

Ms. Leanne Pruitt
**Redacted by Plaintiffs**

## CEASE AND DESIST/NOTICE OF FUTURE LEGAL ACTION

Dear Ms. Pruitt:

This office is legal counsel to Joseph Warren Burns ("Burns") in his capacity as General Counsel to the Association of Flight Attendants. You are now advised not to communicate with Burns for any reason and that all future correspondence regarding this matter be directed to my attention. This demand is being sent to your attention as Burns is fully aware that both of you and other individuals have engaged in an individual and collectively undertaking through Facebook with the malicious and defamatory intent of damaging Burn's outstanding business and community reputation. You, along with several other individuals, have publicly and repeatedly questioned Burn's professional licensure and achievements. In addition, Burns has also received information from reputable third parties indicating, without equivocation, that various individuals have questioned his professional licensure and professional achievement as a direct result of your various postings. I have all the various posts by you and other individuals in my file at the present time.

To set the record straight, once and for all, please be advised that Burns was admitted to the practice of law in the State of Minnesota on November 20, 2001, and the statement of admission is attached as **Exhibit A.** A copy of Burn's current legal license is attached hereto as **Exhibit B.** Thirdly, an up-to-date copy of a Certificate of Good Standing from the Minnesota Supreme Court on behalf of Burns is attached as **Exhibit C.**

Considering these facts, not only are your posts factually incorrect but you clearly failed to undertake prior due diligence before posting your comments. Furthermore, you and several other people utilized social media to question Burns' professional licensure and thus create inferences throughout that Burns was not suited for the general counsel's position which he has held for many years. Your conduct herein is considered libel *per se* as the express wording you employed and the efforts to spread

Page **1** of **2**

App. 130

misleading and factually inaccurate information about Burns expressly set forth unethical and dishonest conduct on behalf of Burns. The written and presumably verbal dissemination of these misleading and defamatory statements has caused irreparable professional and economic damage to Burns' otherwise impeccable professional and business reputation.

As a result, Burns demands the following immediate action:

A. For you to immediately remove the previously published Facebook posts involving Burns, and as identified in this demand and that evidence of such removal of all posts be provided to me by or within **seven** days of receipt of this demand

B. That you issue a retraction of similar size and placement on each social media page as your original defamatory posts and provide a copy of each retraction to me within **seven** days of receipt of this demand.

C. You will remove any defamatory posts from social media pages.

D. That you will not participate and/or publish any further social media postings questioning Burns' bar admission or licensure and,

E. If you comply with the requirements in sections A through D above, Burns will immediately release you from all future liability associated with this matter.

If you fail to fully comply with any the above requirements, Burns is prepared to seek all available civil remedies against you including, *but not limited to*, libel and slander, invasion of privacy, and/or interference with advantageous business relationships and, in addition, seek compensation for punitive damages and reasonable attorney's fees.

Burns reserves all his legal and equitable rights and interests in this matter.

Your *immediate* attention to this matter is advised.

Very truly yours,

David S. Katz, Esq.

DSK/dls
cc: J. Burns, Esq. J. Morse, Esq.

Page **2** of **2**

*App. 131*

Exhibit A

## MINNESOTA JUDICIAL BRANCH

# Lawyer Details

| | |
|---|---|
| **Lawyer ID** | 0315540 |
| **Last Name** | BURNS |
| **First Name** | JOSEPH |
| **Middle Name** | WARREN |
| **Address** | 1139 9TH AVE |
| | #202 |
| | HONOLULU, HI  96816 |
| **Date Admitted** | 11/20/01 |
| **Last Payment** | 12/22/22 |
| **Next Payment Due** | 01/01/24 |
| **Authorized to Practice Law?** | Authorized |

Additional information related to limited license statuses may be obtained through the **Lawyer Registration Website.**

| | |
|---|---|
| **Current Disciplinary Status** | NONE |

Additional information on disciplinary history or statuses may be obtained at **Lawyer's Professional Responsibility Board Website.**

| | |
|---|---|
| **CLE Status** | 3 |
| **Fee Status** | ACTIVE |
| **Professional Liability Insurance** | Lawyer does NOT represent private clients |
| **Good Standing:** | Yes |

<- Back to Lawyer List...

*App. 132*

Exhibit B

# Minnesota Supreme Court

**ATTORNEY LICENSE**

ATTORNEY ID:      0315540
LICENSE TYPE:    AUTHORIZED
CLE:                      3

JOSEPH WARREN BURNS
578 WASHINGTON BLVD #250
LOS ANGELES  CA  90292



Expiration Dat
01/01/2024

www.lro.mn.gov

Exhibit C

# STATE OF MINNESOTA
# IN SUPREME COURT

*Certificate of Good Standing*

This is to certify that the following lawyer is in good standing

JOSEPH WARREN BURNS

was duly admitted to practice as a lawyer and counselor at law in all the courts of this state on

November 20, 2001

Given under my hand and seal of this court on

October 03, 2023

Emily J. Eschweiler, Director
Office of Lawyer Registration



**App. 134**



KATZ LAW GROUP, P.C.

1900 West Park Drive, Suite 280 • Westborough, MA 01581
Tel: 508.480.8202 • Fax: 508.480.8204
katzlawgroup.com

November 15, 2023

By first class mail and by email rocksalomon Redacted by Plaintiffs

Mr. Rock Salomon
Redacted by Plaintiffs

### CEASE AND DESIST/NOTICE OF FUTURE LEGAL ACTION

Dear Mr. Salomon:

This office is legal counsel to Joseph Warren Burns ("Burns") in his capacity as General Counsel to the Association of Flight Attendants. You are now advised not to communicate with Burns for any reason and that all future correspondence regarding this matter be directed to my attention. This demand is being sent to your attention as Burns is fully aware that both of you and other individuals have engaged in an individual and collectively undertaking through Facebook with the malicious and defamatory intent of damaging Burn's outstanding business and community reputation. You, along with several other individuals, have publicly and repeatedly questioned Burn's professional licensure and achievements. In addition, Burns has also received information from reputable third parties indicating, without equivocation, that various individuals have questioned his professional licensure and professional achievement as a direct result of your various postings. I have all the various posts by you and other individuals in my file at the present time.

To set the record straight, once and for all, please be advised that Burns was admitted to the practice of law in the State of Minnesota on November 20, 2001, and the statement of admission is attached as **Exhibit A.** A copy of Burn's current legal license is attached hereto as **Exhibit B.** Thirdly, an up-to-date copy of a Certificate of Good Standing from the Minnesota Supreme Court on behalf of Burns is attached as **Exhibit C**.

Considering these facts, not only are your posts factually incorrect but you clearly failed to undertake prior due diligence before posting your comments. Furthermore, you and several other people utilized social media to question Burns' professional licensure and thus create inferences throughout that Burns was not suited for the general counsel's position which he has held for many years. Your conduct herein is considered libel *per se* as the express wording you employed and the efforts to spread misleading and factually inaccurate information about Burns expressly set forth unethical and

*App. 135*

dishonest conduct on behalf of Burns. The written and presumably verbal dissemination of these misleading and defamatory statements has caused irreparable professional and economic damage to Burns' otherwise impeccable professional and business reputation.

As a result, Burns demands the following immediate action:

A.     For you to immediately remove the previously published Facebook posts involving Burns, and as identified in this demand and that evidence of such removal of all posts be provided to me by or within **seven** days of receipt of this demand

B.     That you issue a retraction of similar size and placement on each social media page as your original defamatory posts and provide a copy of each retraction to me within **seven** days of receipt of this demand.

C.     You will remove any defamatory posts from social media pages you administer, including, but not limited to, "Crew Juice."

D.     That you will not participate and/or publish any further social media postings questioning Burns' bar admission or licensure and,

E.     If you comply with the requirements in sections A through D above, Burns will immediately release you from all future liability associated with this matter.

If you fail to fully comply with any the above requirements, Burns is prepared to seek all available civil remedies against you including, *but not limited to*, libel and slander, invasion of privacy, and/or interference with advantageous business relationships and, in addition, seek compensation for punitive damages and reasonable attorney's fees.

Burns reserves all his legal and equitable rights and interests in this matter.

Your *immediate* attention to this matter is advised.

Very truly yours,

David S. Katz, Esq.

DSK/dls
cc:  J. Burns, Esq. J. Morse, Esq.

*App. 136*

Exhibit A

# MINNESOTA JUDICIAL BRANCH

## Lawyer Details

| | |
|---|---|
| Lawyer ID | 0315540 |
| Last Name | BURNS |
| First Name | JOSEPH |
| Middle Name | WARREN |
| Address | 1139 9TH AVE |
| | #202 |
| | HONOLULU, HI  96816 |
| Date Admitted | 11/20/01 |
| Last Payment | 12/22/22 |
| Next Payment Due | 01/01/24 |
| Authorized to Practice Law? | Authorized |

Additional information related to limited license statuses may be obtained through the **Lawyer Registration Website.**

| | |
|---|---|
| Current Disciplinary Status | NONE |

Additional information on disciplinary history or statuses may be obtained at **Lawyer's Professional Responsibility Board Website.**

| | |
|---|---|
| CLE Status | 3 |
| Fee Status | ACTIVE |
| Professional Liability Insurance | Lawyer does NOT represent private clients |
| Good Standing: | Yes |

<- Back to Lawyer List...

Exhibit B

# Minnesota Supreme Court

**ATTORNEY LICENSE**

ATTORNEY ID:      0315540
LICENSE TYPE:     AUTHORIZED
CLE:              3

JOSEPH WARREN BURNS
578 WASHINGTON BLVD #250
LOS ANGELES  CA  90292



**Expiration Dat**
01/01/2024

www.lro.mn.gov

Exhibit C

# STATE OF MINNESOTA
# IN SUPREME COURT

*Certificate of Good Standing*

This is to certify that the following lawyer is in good standing

JOSEPH WARREN BURNS

was duly admitted to practice as a lawyer and counselor at law in all the courts of this state on

November 20, 2001

Given under my hand and seal of this court on

October 03, 2023

*Emily J. Eschweiler*

Emily J. Eschweiler, Director
Office of Lawyer Registration

**App. 139**

3400 GRAPEVINE MILLS PK

972 539-2117

**Ashley.**
HOMESTORE

*[handwritten: 3637.92]*
*[handwritten: − 331.28 credit]*
*[handwritten: 3,306.64 total]*

**Sold To:**
BOB ROSS
2405 JOHNSON RD.
Southlake, TX 76092
H:
W:                    C: 817 983-4646
X:
president@apfa.org

**Ship To:**
BOB ROSS
2405 JOHNSON RD.
Southlake, TX 76092
H:
W:                    C: 817 983-4646
X:
president@apfa.org

*[handwritten: 7035-30-001]*

**Your Retail Sales Associate today was:** Larry Box

| Status | Printed: 08/13/16 02:59PM | Est. Arrival to Cross Dock: 08/17/16 |
|---|---|---|
| D - Delivery | | You can track your delivery while in route at: http://texasashley.com/delivery/ |

| Ln# | Model/Brand/Description | | Qty | Retail Price | Discounts | Sell Price | Extended |
|---|---|---|---|---|---|---|---|
| 1 999 | SKU: 1377561M    SEAL  D  08/17/16<br>PP THURLOE PEPT KING MA | | 1 | $2,629.99 | | | |
| 2 999 | SKU: PPKINGFOUN    SEAL  D  08/17/16<br>PP TXL FOUNDATIONS | | 1 | $420.00 | | | $1183.66 |
| | | | | | $230.97 | | $189.03 |
| 3 999 | SKU: 1208631B    SEAL  D  08/17/16<br>PP 2015 TXL FOUNDATION | | 2 | | | | $0.00 |
| 4 999 | SKU: B139-91    ASHL  D  08/17/16<br>NIGHTSTAND WHT | | 1 | $189.99 | | | |
| | | | | | $104.48 | | $85.51 |
| 5 999 | SKU: 1170039    ASHL  D  08/17/16<br>QUEEN SOFA SLEEPER/GAL | | 1 | $1,419.99 | | | |
| | | | | | $780.90 | | $639.09 |
| 6 999 | SKU: 1170035    ASHL  D  08/17/16<br>LOVESEAT/GALAND - UMBE | | 1 | $899.99 | | | |
| | | | | | $494.94 | | $405.05 |
| 7 999 | SKU: 1170023    ASHL  D  08/17/16<br>CHAIR AND A HALF/GALAN | | 1 | $749.99 | | | |
| | | | | | $412.45 | | $337.54 |
| 8 999 | SKU: 1170014    ASHL  D  08/17/16<br>OTTOMAN/GALAND - UMBE | | 1 | $379.99 | | | |
| | | | | | $208.97 | | $171.02 |
| 9 999 | SKU: B139-54    ASHL  D  08/17/16<br>QN PANEL FTBD WHT | | 1 | $149.99 | | | $67.50 |
| | | | | | $82.49 | | $67.50 |
| 10 999 | SKU: B139-57    ASHL  D  08/17/16<br>QN PANEL HDBD WHT | | 1 | $189.99 | | | $85.51 |
| | | | | | $104.48 | | $85.51 |
| 11 999 | SKU: B139-96    ASHL  D  08/17/16<br>QN PANEL RAILS WHT | | 1 | $149.99 | | | $67.50 |
| | | | | | $82.49 | | $67.50 |

*[handwritten annotations: 1,485.04; 691.81; 438.47; 365.39; 185.17; Refund; 306.02 + TAX]*

Page:  1/2

*App. 140*  *[handwritten circled: 9]*

**Ashley**
HOMESTORE

GRAPEVINE TX 76051
972 539-2117

| | |
|---|---|
| Merchandise: | $3,231.41 |
| Delivery Charge: | $129.26 |
| Subtotal: | $3,360.67 |
| Tax: | $277.25 |
| Total Sales Order: | $3,637.92 |

139.92

Amount Paid

Current Payments

BANK CARDS                              $-3,637.92

### DELIVERY GUIDELINES

*Deliveries are made between 8:00AM and 9:00PM, Tuesday through Saturday
*Once the merchandise arrives at the Grand Prairie cross dock, the customer has 14 days to accept it.
*Deliveries are routed geographically by zip code. You will be notified of your 4-hour assigned time window, the night before or the morning of your scheduled delivery.
*Canceling or rescheduling a delivery must be done at least 48 hours prior to the delivery, to avoid a $49 delivery cancelation fee.
*Deliveries outside of the DFW metroplex will be scheduled on a specific day; weekly or monthly.
*Deliveries can only be done with a responsible person present, age 18 or older.
*It is the customer's responsibility to make arrangements for the protection of wood floors, carpet, walls, doorways, doors and similar property. Although every precaution possible will be taken to avoid damaging any household property, the responsibility for providing necessary protective materials lies with the customer.
*In the unlikely event damage is caused to your property, it must be reported within 24 hours, to Customer Care. This can be done by calling 972-336-0339, or by emailing CustomerCare@TexasAshley.com
*If you need to change the delivery address, you must complete a "Change of Delivery" form. Contact Customer Care for more information.
*The delivery team cannot be responsible for moving your existing merchandise. Please be sure to have the area clear before the delivery team arrives.

### Thank you for your business!

Please note: Ashley HomeStore shall not be liable for delays caused by our suppliers, accidents, fires, causes beyond our control or any other natural disaster. Deliveries postponed greater than 14 days from the notification will be subject to a $25.00 per week per item storage charge until delivery is made, unless the order is paid in full. This is necessary to cover insurance, warehouse costs, and other incidental costs associated with your furniture. **Ashley HomeStore has a no-return policy**. Should any defect develop after delivery, we will repair or replace at our option. Some pick-up items require assembly. There will be a $25.00 fee for any returned checks. Floor sample merchandise is sold AS IS with no refunds or exchanges. Please refer to Sales Order number when calling. Please see Customer information handout for additional details.

| Amount Due: | $0.00 |
|---|---|

Customer Signature: _____

Page:  2/2



150 N. Main St.
Grapevine, TX 76051
817-481-9754
grapevine@kissitgoodbuy.net

KISS IT GOOD BUY®
FURNITURE CONSIGNMENT

Consignor # _____

## CONSIGNOR'S CONTRACT

Consignment Date: 11/10/16  Expiration Date: 2/10/17  Email: office@apfa.org
c/o
Consignor Name: LaDonna Casey "APFA"  Phone: 817-540-0108 x. 8142

Address: 1004 W. Euless Blvd.  Cell: ?

City: Euless  State: TX  Zip Code: 76040

I, LaDonna Casey hereafter referred to as Consignor, do hereby attest that all items on consignment are legally my property and I agree to all of the following conditions of consigning with Kiss It Good Buy:

____ **I.** The consignment period is for 90 days. Consignor receives 50% of the sale price and **KISS IT GOOD BUY** receives 50% of the sale price.

____ **II.** All consignment items must be clean and in excellent to very good condition with no stains, tears, or other damages deemed unsatisfactory by KISS IT GOOD BUY. The consigner shall be responsible for any cleaning or repair charges deemed necessary by KISS IT GOOD BUY. KISS IT GOOD BUY is not responsible for any damage, theft or loss of consigned items.

____ **III.** Consignment items may be marked down 10-20% every 30 days, not to exceed 50% off within the 90-day consignment period. All consignments are subject to price reductions, which will affect the Consignor's earnings. Reasonable offers will be accepted while in the possession of KISS IT GOOD BUY. There is a processing fee of $1.00 per item.

____ **IV.** Consignment items will not be released to anyone other than the Consignor without their consent. Unsold items must be picked up within one week after the 90 day expiration date or they will become the property of KISS IT GOOD BUY. The Consignor may pick up their donation receipt at the store location for all donated items.

____ **V.** Any consignment item removed from KISS IT GOOD BUY by the Consignor prior to the expiration date specified in this contract is subject to a fee equal to 25% of the original consignment price. This fee must be paid prior to the removal of the merchandise.

____ **VI.** Accounts are payable no less than 30 days after the completed sale of the consigned items and payments are processed on the 15th of each month. Consignor earnings may be applied towards in-store purchases at any time during the consignment period. Unclaimed consignor earnings shall be forfeited 120 days after the sale of any consigned item.

____ **VII.** It is the Consignor's responsibility to contact us to check on their items (s) and request payment. Checks may be picked up on or after the 16th of the month requested. The Consignor will be responsible for any fees associated with lost mailed checks.

| | Consignment Items | Age | Price Paid | | |
|---|---|---|---|---|---|
| 1. | Tall bistro Tbl. w/ 4 barstools, w/ sld. | 4 yrs | $ | 298.00 | $ |
| 2. | Queen Slat Back Head/Foot/rail&b w/ 3 footslats | | 50% | $ 198.00 | Sold |
| 3. | 6 Chests of Drawers - 5 Drawer MDF w/o | | 50% | $ 124.00 | Sold |
| 4. | | | 50% | $ 88.00 | Sold |
| 5. | | | $ | | $ |
| 6. | | | $ | | $ |
| 7. | | | $ | | $ |
| 8. | | | $ | | $ |

**I have read and fully understand and agree to the terms of this contract.**

205.00 Total
339.00

Consignor Signature L Casey  Date 11-10-16  Consignee Signature ___  Date 11/10/16

____ Please initial here if you would like to be added to our Mailing List.

**App. 142**

(12)



**APFA**
**APFA**
**1004 W. EULESS BLVD.**
**EULESS, TX 76040**

# THIS IS NOT A CHECK

ROBERT ROSS

2405 JOHNSON RD
SOUTHLAKE,  TX   76092

**CHECK DATE:**    6/15/2018

| EMPLOYEE NO | PAY RATE | PERIOD END | STUB NO. |
|---|---|---|---|
| TX- | 4,495.580 | 6/15/2018 | D15772 |

| | HOURS | AMOUNT | Year To Date |
|---|---|---|---|
| **\*\* EARNINGS** | | | |
| N/O Salary | | 4,495.58 | 88,026.06 |
| GRAND SLAM | | 0.00 | 200.00 |
| SAF PRES DEPT | | 750.00 | 4,075.00 |
| MEA PRES DEPT | | 300.00 | 1,371.00 |
| SAF GOVERN | | 0.00 | 150.00 |
| 6030-70010 | | 0.00 | 125.00 |
| 6030-70012 | | 0.00 | 50.00 |
| 6030-70014 | | 0.00 | 75.00 |
| AA PROF SHAR | | 0.00 | 2,458.19 |
| ACCTS RECV | | -1,653.32 | -3,306.64 |
| 6030-71014 | | 0.00 | 25.00 |
| **\*\* TAX DEDUCTIONS** | | | |
| Federal W/H | | 346.74 | 10,305.17 |
| FICA | | 241.32 | 5,781.44 |
| Medicare | | 56.44 | 1,352.14 |
| **\*\* DEDUCTIONS** | | | |
| APFA-DUES | | 20.50 | 225.50 |
| NAT'L401K%NT | | 389.23 | 5,206.60 |
| PAC | | 1.00 | 11.00 |
| **\*\* DIRECT DEPOSITS** | | | |
| 91215 | | 350.00 | 3,788.52 |
| 36034 | | 350.00 | 9,300.26 |
| 22377 | | 2,137.03 | 57,277.98 |

| **\*\* EMPLOYER CONTRIBUTION** | | | |
|---|---|---|---|
| K2         401K CONTRIB | | 385.33 | 0.00 |

| CHECK AMOUNT: | 0.00 | | TOTAL DIR DEP: | 2,837.03 | 70,366.76 |
|---|---|---|---|---|---|
| GROSS EARNINGS: | 3,892.26 | 93,248.61 | TOTAL DEDUCT: | 1,055.23 | 22,881.85 |
| NET EARNINGS: | 2,837.03 | | | | |

*App. 143*



**APFA**
**APFA**
**1004 W. EULESS BLVD.**
**EULESS, TX 76040**

# THIS IS NOT A CHECK

ROBERT ROSS
2405 JOHNSON RD
SOUTHLAKE,  TX   76092

**CHECK DATE:**     5/31/2018

| EMPLOYEE NO | PAY RATE | PERIOD END | STUB NO. |
|---|---|---|---|
| TX-0▓▓▓ Redacted by Pla | 4,495.580 | 5/31/2018 | D15694 |

|  | HOURS | AMOUNT | Year To Date |
|---|---|---|---|
| **** EARNINGS** | | | |
| N/O Salary | | 4,495.58 | 83,530.48 |
| GRAND SLAM | | 0.00 | 200.00 |
| SAF PRES DEPT | | 0.00 | 3,325.00 |
| MEA PRES DEPT | | 0.00 | 1,071.00 |
| SAF GOVERN | | 0.00 | 150.00 |
| 6030-70010 | | 0.00 | 125.00 |
| 6030-70012 | | 0.00 | 50.00 |
| 6030-70014 | | 0.00 | 75.00 |
| AA PROF SHAR | | 0.00 | 2,458.19 |
| ACCTS RECV | | -1,653.32 | -1,653.32 |
| 6030-71014 | | 0.00 | 25.00 |
| **** TAX DEDUCTIONS** | | | |
| Federal W/H | | 233.34 | 9,958.43 |
| FICA | | 176.22 | 5,540.12 |
| Medicare | | 41.21 | 1,295.70 |
| **** DEDUCTIONS** | | | |
| APFA-DUES | | 20.50 | 205.00 |
| NAT'L401K%NT | | 284.23 | 4,817.37 |
| PAC | | 1.00 | 10.00 |
| **** DIRECT DEPOSITS** | | | |
| 91215 | | 350.00 | 3,438.52 |
| 36034 | | 350.00 | 8,950.26 |
| 22377 | | 1,385.76 | 55,140.95 |

| | | | | | |
|---|---|---|---|---|---|
| CHECK AMOUNT: | 0.00 | | TOTAL DIR DEP: | 2,085.76 | 67,529.73 |
| GROSS EARNINGS: | 2,842.26 | 89,356.35 | TOTAL DEDUCT: | 756.50 | 21,826.62 |
| NET EARNINGS: | 2,085.76 | | | | |

## App. 144

# Comment



**Melissa Chinery-Burns**
Author   Admin

Redacted by Plaintiffs sharing what? Bob Ross had over $3600 worth of furniture delivered to his personal residence after we paid him to move to Dallas. He claimed he moved it several days later and it mysteriously disappeared.

An independent auditor determined had had thousands, I think it was 16k or so, in unsubstantiated expenses.

The arbitrator was the head of the National Academy of Arbitrators and determined Ross was inconsistent and not

Write a reply...    

     

‹   **Checks and Balances**
Melissa Chinery-Burns · 5d
· 

how many times Bob Ross blatantly lied while testifying.

Look if you want to apologize for Ross and Vargas for stealing furniture and concealing payments have at it. But don't come on here pretending you are some reformer.

And yes I do not consider you regularly coming on to this page to defend Ross and minimize his corruption to be casual. So yeah should probably give the swearing a rest.

4d    Like    Reply

 **Melissa Chinery-Burns**
Author · Admin

 Write a comment...   

 Home     Watch     Marketplace     Dating     Notifications     Menu



**Melissa Chinery-Burns**

Admin · April 26, 2021 · 🌐

Purchased by Bob Ross using the Union CC on August 13, 2016
Delivered to Mr Ross's home residence in Southlake TX

King Mattress $1183.66
King Foundation $189.03
Nightstand $85.51
Queen Sofa Sleeper $639.09
Loveseat $405.05
Chairs $337.54
Ottoman $171.02

Total $3637.92
        -331.28 for return
Total $3,306.64

When this came up in a random audit in May of 2018 Eugenio Vargas
(National Treasurer at the time) emailed Debbie Hoover on May 25,
2018 and told her to deduct $1653.32 from Bob Ross's  May 31, 2018
and June 15, 2018 APFA paychecks. ($3306.64 split in two paychecks).
Which is what APFA payroll did.

Now, aside from the fact that Bob Ross broke federal law by using
union funds for personal use, and aside from the fact that the
Treasurer at the time neglected to catch it when Mr Ross misused the
credit card (almost two years before), do you think that APFA should
payroll deduct (from his APFA pay) the $5400 that Bob Ross presently
owes APFA like they did with his furniture?

Yes or No

 Shannon Kaye and 147 others                    272 Comments

👍 Like                              💬 Comment

I was employed at APFA from August 15, 1996, to November 2018.  I retired 4 months after Eugenio Vargas left office because when the new administration came in the work environment became hostile not only with the staff and an Officer.

I was a staff member, specifically I was the Office Coordinator at the time that I retired. One of my many responsibilities was the inventory of furniture. I was very thorough at what I did and had good job performance.

Regarding the furniture in Gabby Harty's apartment. I clearly remember Gabby vacated her apartment and resigned early due to personal reasons. When the lease was almost up Rachael Early (another staff member) and I went to her apartment and took photographs of all the furniture. Rachael was the employee who had the keys. When the lease was over Mike Trapp, Rosemary Cooper's brother (who is an Executive Secretary) picked up the furniture.  I completed the inventory, entered that information into the Office Coordinator computer.

Some of Gabby's furniture was taken to consignment at Kiss it Goodbye and the items they wouldn't take were donated.

I would like to discuss what I know about the items on the attached inventory sheet.

Regarding Shane Staple's items. Shane moved out about the time the administration changed hands.  He provided an inventory sheet. I entered the information into my system.

About Chuck Ransdale's furniture.  Chuck was another representative who left his position early.  I recall there still being time on his lease, so we had another representative move into his apartment. She stayed there for the duration of the lease.  All his furnishings stayed in the apartment for use by her. She stayed in that apartment beyond Eugenio Vargas' term so the inventory of those items would be the responsibility of the Treasurer that came after Eugenio.

I would also like to explain how I did my inventory.  There was a file cabinet with hanging file folders.  Each Officer and representative had a hanging file with and inventory sheet when they came into office. When Eugenio came into office he required each rep to fill out the inventory and return it to me per the Policy Manual. I looked over them. Then I would sign off that it was received. During his

1

**App. 148**

administration we started scanning these documents and saving them electronically.

　　After I retired my Coordinator files were left accessible to other staff members and new Officers, some who, as I said were extremely hostile and vindictive.  It is very well within the realm of possibility my work product was taken or modified by them.

　　The dynamics of the office environment and the stress it created were the very reasons for my early and sudden retirement. I couldn't handle that stress in my life anymore.

　　Due to dangers associated with COVID and my fears of retaliation I could not attend this hearing in person.  I respectfully request you accept this sworn statement.

　　Thank you.

　　LaDonna Casey

　　*La Donna Casey*

State of Texas
County of Parker
Sworn to and subscribed before me on the
8th day of Sept, 2021

*Sheri Eli Wil*
Notary Signature
My Commission Expires 05/21/2022

SHERI ELIZABETH WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2022
Notary ID 131576070

2

**App. 149**

Association of Professional Flight Attendants
Depreciation Schedule
FYE March 31, 2017

| Vendor | Description | Purchase Date | Cost | |
|---|---|---|---|---|
| **G/L Acct 1246 - FURN & FIXTURES - FIELD (ACCUM DEPR 1346)** | | | | |
| Shane Staples/Comm | | | | |
| Ashley Furniture | Sofa/Loveseat/Media Chest/Cocktail Table/End Table | 08/16 | 4,098.22 | 4,098.22 |
| | King Bed/King Mattress | | | |
| | Exchanged Loveseat for Chair | 08/16 | (104.98) | (104.98) |
| | Current Balance | | 3,993.24 | 3,993.24 |
| Gaby Harty/Health | | | | |
| Ashley Furniture | Sofa/Loveseat/Cocktail Table/End Table | 08/16 | 3,236.91 | 3,236.91 |
| | King Bed/King Mattress | | | |
| Chuck Ragsdale/Health | | | | |
| Ashley Furniture | Chest/Nightstand/Queen Bed/Queen Mattress | 06/16 | 1,398.76 | 1,398.76 |
| TOTALS | | | 8,628.91 | 8,628.91 |

*LaDonna Casey*

State of Texas
County of Parker
Sworn to and subscribed before me on the
8th day of Sept , 2021

Notary Signature
My Commission Expires 05/21/2022

SHELBY ELIZABETH WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2022
Notary ID 131576070

*App. 150*