Case 4:22-cv-00343-Y Document 247-11 Filed 05/24/24 Page 1 of 50 PageID 8315

# SCHEDULE 19 - UNION ADMINISTRATION

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CORTLAND LAS COLINAS | | | |
| 655 POMENADE PKWY | | | |
| IRVING | | | |
| TX | | | |
| 75039 | | | |
| Type or Classification (B) | | | |
| APARTMENTS | | | |
| | LODGING | 04/01/2022 | $14,00... |
| | LODGING | 05/01/2022 | $14,44... |
| | LODGING | 06/01/2022 | $14,44... |
| | LODGING | 07/01/2022 | $14,99... |
| | LODGING | 08/01/2022 | $15,14... |
| | LODGING | 09/01/2022 | $15,60... |
| | LODGING | 10/01/2022 | $15,90... |
| | LODGING | 11/01/2022 | $15,85... |
| | LODGING | 12/01/2022 | $16,00... |
| | LODGING | 01/01/2023 | $15,98... |
| | LODGING | 02/01/2023 | $15,98... |
| | LODGING | 03/01/2023 | $15,97... |
| | Total Itemized Transactions with this Payee/Payer | | $184,449 |
| | Total Non-Itemized Transactions with this Payee/Payer | | |
| | Total of All Transactions with this Payee/Payer for This Schedule | | $184,44... |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| Elections America Inc | | | |
| 155 Mineola Blvd Ste 102 | | | |
| Mineola | | | |
| NY | | | |
| 11501 | | | |
| Type or Classification (B) | | | |
| ELECTION BALLOTING | | | |
| | BASE SFO VP Election | 05/01/2022 | $10,43... |
| | BASE SFO VP Election | 11/01/2022 | $2,09... |
| | BASE Elections | 02/01/2023 | $43,91... |
| | Total Itemized Transactions with this Payee/Payer | | $56,44... |
| | Total Non-Itemized Transactions with this Payee/Payer | | |
| | Total of All Transactions with this Payee/Payer for This Schedule | | $56,443 |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| HOLIDAY INN DFW AIRPORT MEETING SPACE | | | |
| 14320 CENTRE STATION DR | | | |
| FT WORTH | | | |
| TX | | | |
| 76155 | | | |
| Type or Classification (B) | | | |
| HOTEL | | | |
| | LODGING | 06/01/2022 | $30... |
| | LODGING | 11/01/2022 | $1,70... |
| | LODGING | 12/01/2022 | $81... |
| | LODGING | 03/01/2023 | $51... |
| | Total Itemized Transactions with this Payee/Payer | | $3,33... |
| | Total Non-Itemized Transactions with this Payee/Payer | | |
| | Total of All Transactions with this Payee/Payer for This Schedule | | $3,3... |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| MARRIOTT DALLAS LAS COLINAS | | | |
| 223 WEST LAS COLINAS BLVD | | | |
| IRVING | | | |
| TX | | | |
| 75039 | | | |
| Type or Classification (B) | | | |
| HOTEL | | | |
| | LODGING | 04/01/2022 | $11,43... |
| | LODGING | 05/01/2022 | $15,87... |
| | LODGING | 06/01/2022 | $12,75... |
| | LODGING | 07/01/2022 | $10,38... |
| | LODGING | 08/01/2022 | $13,64... |
| | LODGING | 09/01/2022 | $5,6... |
| | LODGING | 10/01/2022 | $11,57... |
| | LODGING | 11/01/2022 | $2,99... |
| | LODGING | 12/01/2022 | $15,13... |
| | LODGING | 01/01/2023 | $14,34... |
| | Total Itemized Transactions with this Payee/Payer | | $263,831 |
| | Total Non-Itemized Transactions with this Payee/Payer | | |
| | Total of All Transactions with this Payee/Payer for This Schedule | | $263,831 |

*App. 501*

Form LM-2 (Revised 2010); (Tech. Rev. 2/2013)

509-620 (LM2) 03/31/2023

| Purpose (C) | Date (D) | Amount (E) |
|---|---|---|
| LODGING | 02/01/2023 | $6,337 |
| LODGING | 03/01/2023 | $11,673 |
| 2022 CONVENTION | 03/01/2023 | $132,077 |
| Total Itemized Transactions with this Payee/Payer | | $263,835 |
| Total Non-Itemized Transactions with this Payee/Payer | | |
| Total of All Transactions with this Payee/Payer for This Schedule | | $263,835 |

**App. 502**

## SCHEDULE 20 - BENEFITS

| Description (A) | To Whom Paid (B) | Amount (C) |
|---|---|---|
| STAFF - HEALTH INSURANCE / DENTAL | BLUE CROSS BLUE SHIELD | $460,137 |
| STAFF - LIFE AND DISABILITY INSURANCE | LINCOLN NATIONAL INSURANCE | $31,296 |
| STAFF - VISION | VISION SERVICE PLAN | $4,396 |
| OTHER - HEALTH / LIFE INSURANCE | AMERICAN AIRLINES BENEFITS SERVICE CENTER | $29,294 |
| STAFF / OFFICER RETIREMENT | ADP | $128,050 |
| Total of all lines above (Total will be automatically entered in Item 55.) | | $653,082 |

Form LM-2 (Revised 2010); (Tech. Rev. 2/2013)

# *App. 503*

# SIGNATURE PAGE

Each of the undersigned, duly authorized officers of the above labor organization, declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned individual's knowledge and belief, true, correct and complete (See Section V on penalties in the instructions.)

SIGNED: Joshua D Black
DATE: Jun 30, 2023
CONTACT INFO: 817-707-5096
TITLE: National Secretary

SIGNED: Lawrence J Salas
DATE: Jun 30, 2023
CONTACT INFO: 817-540-0108
TITLE: National Vice President

Form LM-2 (Revised 2010); (Tech. Rev. 2/2013)

*App. 504*

**69. ADDITIONAL INFORMATION SUMMARY**

509-620 (LM2) 03/31/2023

Question 11(a):

Question 11(a) ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS PAC FILED WITH THE FEDERAL ELECTION COMMITTEE (FEC) #C00246421

Question 12: WOOD, STEPHENS & O'NEILL, LLP

Schedule 1, Row1:
Schedule 1, Row1:
Schedule 8, Row1:
Schedule 8, Row1:
Schedule 8, Row2:
Schedule 8, Row2:
Schedule 8, Row3:
Schedule 8, Row3:
Schedule 8, Row4:
Schedule 8, Row4:
Schedule 8, Row5:
Schedule 8, Row5:
Schedule 8, Row6:
Schedule 8, Row6:
Schedule 8, Row7:
Schedule 8, Row7:
Schedule 8, Row8:
Schedule 8, Row8:
Schedule 8, Row9:
Schedule 8, Row9:
Schedule 8, Row10:
Schedule 8, Row10:
Schedule 8, Row11:
Schedule 8, Row11:
Schedule 8, Row12:
Schedule 8, Row12:

***App. 505***

5/15/24, 9:26 PM

509-620 (LM2) 03/31/2023

**App. 506**

Schedule 8, Row13:
Schedule 8, Row13:
Schedule 8, Row14:
Schedule 8, Row14:
Schedule 8, Row19:
Schedule 8, Row19:
Schedule 8, Row20:
Schedule 8, Row20:
Schedule 8, Row15:
Schedule 8, Row15:
Schedule 8, Row16:
Schedule 8, Row16:
Schedule 8, Row17:
Schedule 8, Row17:
Schedule 8, Row18:
Schedule 8, Row18:
Schedule 9, Row1:
Schedule 9, Row1:
Schedule 13, Row1:
Schedule 13, Row1-All active members paying full dues

Schedule 13, Row1:

Schedule 13, Row1:
Form LM-2 (Revised 2010); (Tech. Rev. 2/2013)

https://olmsapps.dol.gov/query/orgReport.do?rptId=869753&rptForm=LM2Form

**Rachel Early**

| | |
|---|---|
| **From:** | Craig Gunter |
| **Sent:** | Friday, December 13, 2019 11:06 AM |
| **To:** | Rachel Early |
| **Subject:** | Ross Pay |

Hi Rachel,

Can you direct deposit $6,746.02 into Bob Ross' account? This is final payment.

Craig
Get Outlook for iOS

1

***App. 507***

*R L C*

# TRANSITION AGREEMENT

March 1, 2018

This Transition Agreement (here in after referred to as the "agreement") is entered into between President Robert Ross (here in after referred to as Ross) and the Association of Professional Flight Attendants through its voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members and attorneys, in their official and individual capacities together with their successor both jointly and severally (here in after collectively and individually referred to as APFA)

Whereas, President Ross and APFA through its voting Board of Directors find it mutually beneficial and its best interest of the membership to enter into this transition agreement and as such the parties have agreed on the terms of this agreement; and

*WHEREAS, President ROSS has previously announced his intention not to seek reelection for APFA President, and as such the parties have agreed on the terms of this Agreement; and*

Now, therefore, in consideration of the mutual covenants contained in this agreement, President Ross and APFA (here in collectively referred to as "the parties"). Finding to be legally bound, do hereby stipulate and agree as follows:

1. Ross Hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA convention and agrees to announce his resignation as well.  *by the close*

2. Ross will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephone call, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

*APFA agrees that* 3. Bob Ross will continue to receive from APFA his current full salary and benefits including his insurance *coverage* through July 31, 2018  *Pu*

4. APFA agrees to pay Ross all of his accrued and unused back vacation time, from April 2016 through July 31, 2018
*Ross*   *all of his accrued and unused sick and*   *, ,*

5. APFA agrees to pay upon his request a one time lump sum in the total amount of ten thousand dollars (10,000) which represents Ross's moving expenses. Ross shall present the moving expenses to APFA for payment through 2019.
*each*

6. APFA and Ross will prepare a communication regarding Ross's resignation. APFA shall disseminate said communications simultaneously upon the announcement of the resignation. each statement shall be mutually agreed upon by both parties prior to its distribution. Further, the parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with announcement.

7. The parties agree that the existence, terms, and content of this agreement are completely confidential. Ross agrees not to disclose the existence, terms, or content of this agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this agreement, except to the signatories to this agreement and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of the agreement in order to effectuate its terms. The parties shall be responsible for insuring in writing that the confidentiality provisions of this agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The parties agree that they will respond to all inquiries regarding Ross transition with APFA in accordance with communications and talking points prepared pursuant to numbered paragraph 6 of this agreement.

8. Ross agrees not to make orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals or otherwise. Likewise, APFA, Board of Directors and its officers, employees, and agents who are aware of the agreement pursuant to the confidentiality provisions of numbered paragraphs 7 of this agreement, agree not to make orally or in writing, any

**App. 508**  *March 1, 2018*   APFA II. - 001164   *1.0*

statements disparaging Ross or his immediate family, whether or not such statements legally constitute libel or slander and whether such statements are made to the media or to other individuals or otherwise.

9. The current National VP *[Vice - President]* will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice President position.

10. The parties and signatories to this agreement have carefully read and understand this agreement and acknowledge that no party has made and representations other than those contained herein.

11. The parties agree that this agreement constitutes their final and complete understanding with respect *[, hereof]* to the subject matter hereby and supersedes all prior or contemporaneous negotiations, promises agreements or representations concerning any *[any]* matters directly, indirectly, or collaterally related to the subject matter of this agreement. This agreement may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute originals for all purposes including enforcement. *[one and the same Agreement. Electronic and facsimile copies shall constitute]*

12. The Parties agree that this agreement cannot be amended or modified except by express written consent of the parties here to.

13. The Parties agree to submit any all disputes regarding the validity or enforcement of this agreement to a mutually chosen arbitrator who's decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA. Venue shall be by agreement of the parties.

14. If an provision, or any part therefore, in this agreement is found to be invalid such determination shall not affect the validity of any other provision or parts of the agreement.

15. The terms and conditions of this agreement shall be binding upon the parties successor and assigns.

In witness whereof, APFA and President Ross have executed this agreement in CLT, NC on the dates indicated below.

By PRESIDENT ROBERT ROSS:

Robert Ross                          date

Amy Milenkovic
Wanda Sarneki
Robert Valenta
John Pennel
Maureen Walsh Martin
John Nikides
Raymond Lewis
Randy Trautman
Susan Wroble
Kim Kaswinkle
Mischel Babi
Louise Sullivan
Jennifer Welbott
Matt Foust

TRANSITION AGREEMENT → missing

NOT AT TOP          *space*

March 1, 2018

*CAP*   *CAPS*

CAPS
This Transition Agreement (here in after referred to as the "agreement") is entered into between President
Robert Ross, (here in after referred to as Ross) and the association of Professional Flight Attendants,
through its voting Board of Directors and on behalf of any and all of its officers, directors, employee, *(s)*
agents, members and attorneys, in their official and individual capacities, together with their successor *s*
both jointly and severally (here in after collectively and individually referred to as APFA)"   *quotes*

ONE WORD    CAPS   *space*
Where as President Ross and APFA, through its voting Board of Directors, find it mutually beneficial and
the *X*s best interest of the membership to enter into this Transition Agreement and as such the parties have
agreed on the terms of this agreement.   *↑CAP →*

A "WHEREAS" completely left out!   CAPS   CAPS
Now, therefore, in consideration of the mutual covenants contained in this agreement, President Ross
and APFA (here in collectively referred to as "the parties"). Finding to be legally bound, do hereby

CAPS
stipulate and agree as follows:   CAPS   *intending*

CAPS
1. Ross hereby voluntarily and irrevocably resigns from his position as the National President of APFA
effective at the close of the 2018 APFA convention and agrees to announce his resignation, as well.
CAP                                                                                                *by the close*
CAP
2. Ross will have access through the close of business on March 9, 2018 to his APFA office, files, and
computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephone   *telephonic*
call*s* correspondence and affairs regarding or directed to the APFA National President shall be
immediately routed to the successor APFA National President.                                     *full*

APFA agrees that
3. *Bob* Ross will continue to receive from APFA his current full salary and benefits including his insurance *coverage*
through July 31, 2018
↓CAPS   CAPS   * MISSING ACCRUED & UNUSED SICK
4. APFA agrees to pay Ross all of his accrued and unused *back* vacation time from April 2016 through
July 31 2018                                  *extra word.*

ROSS
5. APFA agrees to pay upon his request, a one-time lump sum in the total amount of ten thousand dollars
$10,000⁰⁰ which represents Ross's moving expenses. Ross shall present the moving expenses to APFA
for payment through 2019.   ROSS'S   CAPS
CAP

6. APFA and Ross will prepare a communication regarding Ross's resignation. APFA shall disseminate
said communications simultaneously upon the announcement of the resignation. *E*ach statement shall be
mutually agreed upon by both *p*arties prior to its distribution. Further, the *p*arties will mutually agree on
talking points that shall be used for responses to inquiries from APFA members, the press, and the
general public for use, beginning with announcement.

7. The *p*arties agree that the existence, terms, and content of this *A*greement are completely confidential.
Ross agrees not to disclose the existence, terms, or content of this *A*greement to any third party, except
to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence,
terms, or content of this *A*greement, except to the signatories to this agreement and to any APFA Officers,
employees, accountants or attorneys who have an explicit need to know of the agreement in order to
effectuate its terms. The parties shall be responsible for *e*nsuring in writing that the confidentiality
provisions of this *A*greement are fully explained and adhered to by anyone to whom permitted disclosures
are made pursuant to this paragraph. The *p*arties agree that they will respond to all inquiries regarding
Ross transition with APFA in accordance with communications and talking points prepared pursuant to
numbered paragraph 6 of this agreement.   *the*

CAPS
8. Ross agrees not to make orally or in writing, any statements, disparaging APFA and/or the Board of
Directors, *w*hether or not such statements legally constitute libel or slander, and whether such
statements are made to the media, to other individuals or otherwise. Likewise APFA Board of Directors
and it's officers, employees, and agents who are aware of the *A*greement pursuant to the confidentiality
provisions of numbered paragraphs 7 and 8 of this *A*greement, agree not to make orally or in writing, any

1   *no page number*

APFA II. - 001166

**App. 510**

statements disparaging Ross or his immediate family, whether or not such statements legally constitute libel or slander and whether such statements are made to the media, or to other individuals, or otherwise.

9. The current ~~National VP~~ [APFA National Vice President] will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made ~~and~~ [any] representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute ~~originals for all purposes including enforcement.~~ [one and the same Agreement. Electronic & facsimile copies shall constitute originals for all purposes, including enforcement.]

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties here to.   [MISSING]

13. The Parties agree to submit any ~~all~~ disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator who's decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA. Venue shall be by agreement of the parties.

14. If any provision, or any part ~~therefore~~ [thereof], in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision ~~or~~ parts of ~~the~~ [this] Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

In witness whereof, APFA and President Ross have executed this agreement in ~~CLT~~ [Charlotte], NC on the dates [CAPS] indicated below :

Amy Milenkovic
Wanda Sarnaki
Robert Valenta
John Pennel
Maureen Walsh Martin
John Nikides
Raymond Lewis
Randy Trautman
Susan Wroble
Kim Kaswinkle
Mischel Babi
Louise Sullivan
Jennifer Welpott
Matt Foust

2   [no page number]

**App. 511**

APFA II. - 001167

BOB

This Transition Agreement (hereinafter referred to as the "Agreement") is entered into between President Robert Ross (hereinafter referred to as Ross) and the association of Professional flight attendants, through it Voting board of Directors and on behalf of any and all of its officers, directors, employee agents, members and attorney, in their official and individual capacities together with their successor both jointly and severally. (hereinafter collectively and individually referred to as APFA)

Where as President Ross and APFA, through it Voting Board of Directors find it mutually beneficial and its best interests of the Membership to enter into this Transition Agreement. and as such the parties have agreed on the Terms of this Agreement.

Now, therefore, In consideration of the mutual covenants contained in this Agreement, President Ross and APFA (herein

APFA II. - 001168

collectively referred to as "the Parties"
intending to be legally bound, do hereby
stipulate and agree as follows

1.
   Ross hereby voluntarily and ~~the~~ irrevocably
   ~~res~~ resigns from his position as the
   National President of APFA effective
   at the close of the 2018 APFA Convention
   and agrees to announce his resignation
   by the close as well.

2. Ross will have access through the
   close of business on March 9, 2018 to
   his APFA office, files, and computer to
   finalize his affairs. Starting upon
   the announcement of the resignation,
   all emails, telephone call, correspondence
   and appears regarding or directed to the APFA
   National President shall be immediately
   routed to the successor APFA National President

*App. 513*

APFA II. - 001169

6. APFA and Ross will each prepare a communication regarding Ross's resignation. APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with announcement

9. The current APFA National VP will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position

**App. 514**

APFA II. - 001170

10. The parties and signatories to this agreement have Carefully read and understand this agreement and acknowledge that no party has made any representations other than those contained herein.

11. The parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof, and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally, related to the subject matter of this Agreement. This agreement may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

APFA II. - 001171

12. The parties agree that this agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA. Venue shall be by agreement of the parties

14. If any provision, or any part thereof, in this agreement is found to be invalid such determination shall not affect the validity of any other provision or parts of the agreement.

15. The terms and conditions of this agreement shall be binding upon the parties successor and assigns

In witness whereof, APFA and President Ross have executed this agreement in CH, NC. On the dates indicated below   BOB ROSS - 3/1/19

**App. 516**

APFA II. - 001172

*Jul 11, 2019*

3:09

‹   **sandra lee** in Checks and Balan…

Filters     Posts You've Seen     Most Recent     Poste

**Checks and Balances**            …
Sandra Lee

and I just returned from Dallas APFA headquarters, it was my second visit and Melissa's 5th. This was done all in the name of transparency. We were there to review the financial records from the previous administration, which as members in good standing, we all have the right to do, in fact I believe we have an obligation. I will tell you that what we saw was eye opening, to say we were upset is an understatement. We have discussed the best way to handle this unusual turn of events, it has always been our intention to get this information out to the membership as quickly as possible. We were able to view parts of Bob Ross's exit package•••edit••• not his exit package, his payroll, we were presented with the payroll history of bob, it was noticed that he was paid well after the time he had resigned from office, from meeting 1 we had asked about talk of an exit agreement, we were told yes there is one but it's under "lock and key". Because it took 5 meetings to reveal the missing payroll, I wrongly assumed it was part of the exit package. (We still have work to do)The fact that Bob was paid well after the time he resigned is not part of the lock and key because according to the DOL, a union cannot have secret agreements. Meeting 5, Bobs payroll is finally revealed and yes it does appear he was paid to leave. So for the time being there is an agreement still under lock and key. In meeting 1 when I was examining the paperwork all of the information that would have revealed our presidents payroll was missing, this fueled our curiosity•••

News Feed        Watch        Groups        News        Notifications

**App. 517**

R6F

Aug 4 2020

3:07

< Sandra's Post ...

 **Checks and Balances**
Sandra Lee

I just returned home from Dallas, Melissa and I
visited APFA headquarters. We met with all 4
national officers and the campaign promise of
transparency was not just all words. Although we
have been told since March of 2018 there was no exit
package for Bob Ross, it does indeed exist, we saw it
today. We have a follow up meeting in the next few
weeks and once we pull all of the information
together we will let you know!

Like          Comment          Send

 Debra Fanning Phillips and 147 others

**All Comments** ∨

**Nena Scott**
Yes, there was an exit package..and it
was lush.

Like   Reply

**Shannon Raab**
You guys are unbelievably awesome!

Like   Reply

**Jenny Tam**
Thank you Sandra and Melissa. Is Bob
Ross still employee at AA?

Like   Reply





***App. 518***

APFA II. - 001174

 Melissa Chinery

Admin · October 3, 2020 · 🌐

In August, Sandra and I had posted that we had gone down to APFA headquarters to see Bob Ross's exit package.

Federal law and the APFA Constitution, which officers are bound to follow, are crystal clear, outgoing officers are entitled to one month transition pay. Bob Ross resigned in the face of a recall drive which in a period of a year collected enough signatures to trigger an recall election.

APFA paid Bob Ross the following:

:his current full salary and benefits including his insurance through July 31,2018. (5 months of full pay). - The APFA Policy Manual only provides for thirty days transition for outgoing National Officers.

:to be paid his accrued and unused back vacation time from April 2016 through July 31 2018.

:to be paid upon his request a one time lump sum in the total amount of ten thousand dollars (10,000) which represents Ross's moving expenses. Ross shall present the moving expenses to APFA for payment through 2019. - Ross had already received moving expenses

APFA II. - 001175



OCT 31 2020

3:11

‹    sandra lee

Filters    Posts You've Seen    Most Recent    Poste·

**Checks and Balances**
Melissa ⬚⬚⬚⬚⬚

In August, Sandra and I had posted that we had gone down to APFA headquarters to see Bob Ross's exit package.

Federal law and the APFA Constitution, which officers are bound to follow, are crystal clear, outgoing officers are entitled to one month transition pay.  Bob Ross resigned in the face of a recall drive which in a period of a year collected enough signatures to trigger an recall election.

APFA paid Bob Ross the following:

:his current full salary and benefits including his insurance through July 31,2018. (5 months of full pay). - The APFA Policy Manual only provides for thirty days transition for outgoing National Officers.

:to be paid his accrued and unused **back** vacation time from April 2016 through July 31 2018.

:to be paid upon his request a one time lump sum in the total amount of ten thousand dollars (10,000) which represents Ross's moving expenses. Ross shall present the moving expenses to APFA for payment through 2019. - Ross had already received moving expenses of $9732.79 out of a 10k round trip per policy allowance to move to Texas and was not entitled to this money to move back to California.

*App. 520*



3:09

< sandra lee

Filters   Posts You've Seen   Most Recent   Poste

**Along**
with seeing bobs payroll we saw a large series of checks all written to the 3 other previous national officers on June 29th. Our present national officers are taking this quite seriously and any information we have shared here, we uncovered by rifling through stacks of papers and asking many questions. We are giving the current administration the opportunity to complete their look-back and share their findings with the members. If you have any questions and would like to review the financials, please contact our national treasurer.



**5 Matching comments**

 **Sharon Woodward Lowe**
Sandra Lee yep I get that   Thanks just seems like nothing gets done.



**Checks and Balances**


Last week Sandra and I filed charges against Bob Ross and Eugenio Vargas. Those charges will be voted on by the EC on Dec 1st and 2nd in DFW. We will keep everyone posted as information becomes available. Here are Bob Ross's charges:

Please consider this the formal filing of internal charges in accordance with Article VII 2. A. of the APFA Constitution and other Policy Manual violations

Nov 23,2020



APFA II. - 001177



### LAX/SFO West Coast F/A News & Views
Casey Veloso · May 12, 2016 ·

Knowing where this man started and came from, knowing that he is neither an orator or public speaker, and we all know he's certainly no debater, not bad Bob Ross!  You spoke after seasoned Union leaders and held your own.  What your speech lacked in energy and fire,  you made up for in substance,  heart,  and humility. Exactly what I expect of a new National Union President. Thank you for representing and making LAX proud.



0:07 / 3:30

👍 Ruth Matter, Kit Gomez Alba and 69 others      28 comments

◻ Like      ◻ Comment      ◻ Send

### AAll of US FAs
Jennifer Mauldin Kmetz · December 9, 2016 ·

Bob Ross, national president, APFA, sneezed today. We've not received word, yet, on if tissues

*App. 522*



president hopeful commented " We just can't have our president sneezing whenever he wants. There's protocol. We're holding Bob Ross responsible for sneezing in the national offices." More details to come.

UPDATE:

A current recount of union tissues is being held.

 Ruth Matter, Kit Gomez Alba and 91 others        411 comments

Like      Comment      Send

---

 **AAll of US FAs**
Jennifer Mauldin Kmetz · September 9, 2016 · 😀      •••

This has been posted twice, today. It's a deliberate lie in an attempt to confuse our membership. Bob Ross has not reached out to these unions. There is an annual coalition of unions meeting coming up. This year, it is APFA that is hosting ALL unions. If you have to twist truth to garner support, your cause is pointless.





Why is **APFA** meeting as a coalition with UFFA, RFAA who are not unions and are **backed by a union busting law firm SSM&P** which is led by Lee Seaham, the same guy who formed USAPA?

USAPA, UFFA & RFAA are all backed by a union busting firm that is against legitimate unions affiliated with AFL-CIO.

 Ruth Matter, Kit Gomez Alba and 19 others        27 comment

Like      Comment      Send

 

**Legacy AA flight attendants**
Dominique Stewart · March 23, 2016 · Mill Valley · 🌐                                ...

# 7 DAYS.......Bob Ross will be cleaning house! I am thrilled!!!!

👍 Ruth Matter, Brenda Graham and 223 others                32 comments

| Like | Comment | Send |

**New Integrity**
Bob Ross · November 13, 2016 · 🌐                                ...

Watch it all: AFA/Sara Nelso is bold enough to fire the first shot at merging with "RAIDING" APFA. They refuse to allow me to fix this union and the LUS PBs are thick in the middle of it.



AFACWA.ORG
**Rise Up**
Union Plus Benefits for AFA-CWA Members!AFA-CWA members are automatically eligible for the following Union Plus benefits and discounts.

👍😡 Ruth Matter, Meilan Smith and 2 others                19 comments   Seen by 7

| Like | Comment | Send |

**New Integrity**
Kit Gomez Alba · September 9, 2016 · Grapevine, TX · 🌐                                ...

Oh boy. They are on a roll. Bob Ross





●●●●○ Sprint 3G     4:16 PM     ◀ 44% ▮

Q Search

 **Kimberly Johnson** ▶ **AA & US Air Flight Attendants Uncensored**

23 mins · Charlotte, NC · 🖼





# Unity?
# Representation?

Bob Ross was at a DFW BCR base meeting today and said that "PBS wont be at LAA until May 2018 and that as for opening bases to transfer he wont agree to it, because LAA has 10 bases to LUS's 4 bases and it only benefits LUS and so he doesn't care".

👍 Like       💬 Comment

😡 2

👍😮😡 Ruth Matter, Dawn Justice and 1 other     8 comments   Seen by 4

Like      Comment      Send

 **AAll of US FAs**
Bob Ross · January 28, 2016 · 🌐

Last weekend, our co-workers discovered how much they are valued by management and by our union. When operations broke down due to winter storm Jonas, countless flight crews found

*App.* ***525***

followers. There seemed to be no published plan of action in advance of this predicted storm for our crews, neither from man... **See more**

👍 Ruth Matter, Kit Gomez Alba and 262 others            73 comments

| | | |
|---|---|---|
| 👍 Like | 💬 Comment | ➤ Send |

### AAll of US FAs
**Bob Ross** · February 18, 2016 · 😂

Today your collective voices have spoken. Let this mandate for change mark the beginning of a new era of unionism at APFA.

My platform has been one of Hope and Unity among us, one of demanding acknowledgment and respect from our employer and your union, one of bridging the divides and apathy that holds us back.

Your voices have been demanding leadership that recognizes your struggles and puts your interests above those of Corporate greed.  CEOs do what they are paid to do. ... **See more**

👍 Kit Gomez Alba, Brenda Graham and 463 others            106 comments

| | |
|---|---|
| 👍 Like | ➤ Send |

An admin turned off commenting for this post.

### New Integrity
**Bob Ross** · September 10, 2016 · 😂

What I wrote to Jean the Admin on the Uncensored page. No need to out that I shared my PM to her, I just wanted you to know and have the info that I addressed her and that page.

**App. 526**

        

Back to Mail    12:31 AM    35% ◾    Back to Mail    12:31 AM    35% ◾

🔒 facebook.com      🔒 facebook.com



**Bob Ross**

Jean, what's happening to your page? It's becoming a breeding ground for negativity, lies, mistruths and hate. The things spread on the Uncensored page have very little fac and are going to hurt everyone. I won't address issues on it. I have not seen one thread by LUS that is remotely truthful or shows signs of unity. Many of your members have taken truthful information directly from me and twisted them into lies that can't be corrected. It's impossible for me to run this Union and correct all the lies that show up on Uncensored. Honest people won' go on it. We had a chance of being united and making real positive change. But that is evaporating fast due to the lies and personal and political agendas that go uncorrecte on that page. It's down right toxic. If a raid is successful because of the lies, there will not be peace for many years to come. When that happens, you might as well hand your lives over to the company because you'll never get it back. I really planned to

unity. Many of your members have taken truthful information directly from me and twisted them into lies that can't be corrected. It's impossible for me to run this Union and correct all the lies that show up on Uncensored. Honest people won' go on it. We had a chance of being united and making real positive change. But that is evaporating fast due to the lies and personal and political agendas that go uncorrecte on that page. It's down right toxic. If a raid is successful because of the lies, there will not be peace for many years to come. When that happens, you might as well hand your lives over to the company because you'll never get it back. I really planned to help get this Union and membership back on tract and make positive changes for everyone. I don't believe that can remain possible if the lies and toxicity continues. I'm sad for th members.
I should have said "many of your LUS members...."

3 minutes ago · Sent from Mobile

Write a message

👍 Ruth Matter, Kit Gomez Alba and 1 other      80 comments    Seen by 8

| 👍 Like | 💬 Comment | ➤ Send |

 **Legacy AA flight attendants**

Luis Chang · November 30, 2016 · Renton, WA · 🌐      •••

I honestly don't know what is going on lately, but apparently there's a lot of dissent from our LUS colleagues regarding FOI blaming our APFA union and  Bob Ross  for it. Yes, I am aware of the latest and current lawsuit against APFA with respect to electronic balloting. Hypocrites! Where were they before!?
So, this I posted on the uncensored page since lately I've been noticing an AFA carding drive on a

*App. 527*





Meilan Smith, Tee Roy and 15 others                                          85 comments

| Like | Comment | Send |



**App. 528**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| **ROBERT "BOB" ROSS AND EUGENIO VARGAS** | § § § | **Civil Action No. 4:22-cv-343-Y** |
| **Plaintiffs/Counterclaim Defendants,** | § § | **Consolidated with** **Civil Action No. 4:22-cv-430-Y** |
| **v.** | § § | **Judge Terry R. Means** |
| **ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS**, *et al.*, | § § § | |
| **Defendants/Counterclaim Plaintiffs.** | | |

## DECLARATION OF HEIDI MORGAN

1.  I am over 18 years of age and reside in the State of Florida. I have never been convicted of any felony or other crime involving moral turpitude. I am fully competent to make this affidavit.

2.  I have personal knowledge of the facts set forth in this affidavit and the facts are true and correct.

3.  I have served in elected and appointed positions within APFA leadership intermittently from 2003 to 2024, I am familiar with the practices and procedures used by APFA since 2003.

4.  I have represented others or participated in six (6) Arbitration Hearings in the past. The Chinery v. Vargas Disciplinary Arbitration is the first Arbitration hearing I have attended where an Arbitrator held numerous off-record discussions related to the charges, evidence, and relevant issues pertinent to the pending charges, prevented cross-examination of key witnesses, denied admission of key evidence, allowed documents to be withheld, and permitted APFA to deliver a substantial number of documents less than twenty-four hours prior to the Arbitration Hearing.

5.  I was a representative for Eugenio Vargas during the Chinery v. Vargas Disciplinary Arbitration.

6.  Neither Josh Black, Erik Harris, Julie Hedrick nor Larry Salas attended the arbitration hearing of Chinery v. Vargas for the entire duration of the hearings on September 14, 2021, September 15, 2021 and September 16, 2021.

*App. 529*

7. I was a representative for Nena Martin during the Chinery v. Martin Disciplinary Arbitration. APFA disclosed to all parties during Martin's document exchange Martin's private confidential financial information including her paystubs and tax forms that contained her social security number, bank account and routing numbers, retirement account numbers, and private flight schedules with American Airlines, Inc. These documents were submitted and exposed within publicly accessible document shared account used for purposes of document exchange during APFA's Disciplinary Arbitrations. An urgent request was made for APFA to provide identity theft protection, i.e. Lifelock, inc. that was not provided. Similar documents were shared throughout Chinery v. Vargas Disciplinary Arbitration Hearings.

8. I was the representative for Nena Martin in the Chinery v. Martin Arbitration Hearing. Attached hereto and marked as <u>Exhibit A</u> is a true and correct copy of APFA's amicus brief submitted to the APFA Arbitrator regarding Martin's disciplinary charges against Melissa Chinery.

9. I attended the arbitration hearing of Chinery v. Vargas for the entire duration of the hearings on September 14, 2021, September 15, 2021 and September 16, 2021.

10. I was never notified of the audit or "accounting review" conducted by Cornwall Jackson on behalf of Eugenio Vargas during the Chinery v. Vargas Disciplinary Arbitration Process.

11. Throughout the Chinery v. Vargas Disciplinary Arbitration Hearing, Arbitrator Ruben Armendariz stopped the presentation of evidence, cross-examination of witnesses, and conducted off-record discussions regarding the pending charges and evidence on several occasions. When I objected to this based on the inability to adequately present at the hearing our case, the Arbitrator stated that these arguments could be made in the closing briefs.

12. Throughout the Chinery v. Vargas Disciplinary Arbitration Hearing, Arbitrator Ruben Armendariz stated multiple times that the Disciplinary Hearing needed to conclude early so he could make his scheduled return flight back home to San Antonio, Texas. This limited Vargas's time to present his evidence and ability to cross-examine witnesses.

13. During the Chinery v. Vargas Disciplinary Arbitration Hearing, the Arbitrator ruled that I could not cross-examine Erik Harris on any issues related to the Transition Agreement debt Ross allegedly owed.

14. During the Chinery v. Vargas Disciplinary Arbitration Hearing, the Arbitrator ruled that I could not present any evidence about witness tampering, evidence tampering, witness intimidation, or any relevant social media posts.

15. During the Chinery v. Vargas Disciplinary Arbitration Hearing, the Arbitrator ruled that I could not present evidence, question witnesses relating to the Ross Transition Agreement.

*App. 530*

DocuSign Envelope ID: 57E73687-32AF-4E93-874B-D2F0BA208C85

16. Prior to the Chinery v. Vargas Disciplinary Arbitration Hearing, APFA delivered an exorbitant number of documents that I requested in the Arbitration document exchange the day before the Article VII Disciplinary hearing.

17. During the Chinery v. Vargas Disciplinary Arbitration Hearing, the Arbitrator ruled that I could not present or admit evidence or question witnesses regarding past National Administrations financial charges and expenses.

18. I was a representative in the Moyer v. 2018 Board of Directors Arbitration Decision validating the Ross Transition Agreement; and the Chinery v. Vargas Disciplinary Arbitration Hearing.  Attached hereto and marked as <u>Exhibit B</u> is true and correct copy of the Amicus Brief submitted by William Osborne on behalf of APFA in the Moyer v. 2018 Board of Directors Arbitration Hearing.

I CERTIFY THAT THE INFORMATION ABOVE IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE UNDER PENALTY OF PERJURY.

**EXECUTED** on this the 24th day of May 2024.

Heidi Morgan

Heidi Morgan

**App. 531**

**GUERRIERI, BARTOS & ROMA, P.C.** Exhibit A

1900 M STREET, N.W.
SUITE 700
WASHINGTON, D.C. 20036-3518

(202) 624-7400
FACSIMILE: (202) 624-7420

WWW.GECLAW.COM

JOSEPH GUERRIERI, JR.
JEFFREY A. BARTOS
ELIZABETH A. ROMA
JOHN J. GRUNERT
RAZIYA BRUMFIELD
ANTONIA BIRD

December 27, 2022

Arbitrator Edward Valverde
APFA Article VII Arbitrator

Re:    Article VII Charges (*Martin v. Chinery-Burns and Lee*)

Dear Arbitrator Valverde:

Pursuant to Section 17.V of the APFA Policy Manual, please accept this submission on behalf of the National Officers and Board of Directors of the Association of Professional Flight Attendants ("APFA") in connection with the two matters referenced above ("Martin Charges"). This submission is intended to provide legal and factual background pertaining to these charges, particularly relating to a determination as to whether the charges address "protected conduct" under federal law and/or APFA's Constitution.

This filing is *not* on behalf of one party or another to these matters, but is intended to provide information which may be helpful to the proper resolution of these two Charges consistent with APFA's Constitution and federal law.

### The LMRDA and the APFA Constitution

The federal Labor-Managment Relations and Disclosure Act of 1959, 29 U.S.C. 401 - 531, ("LMRDA"), contains in its Title I the "Bill of Rights of Members of Labor Organizations", 29 U.S.C. 411. Among these rights is the "Freedom of Speech and Assembly":

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views ... upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

29 U.S.C. 411(a)(2).

To safeguard this right, the LMRDA also specifically makes it "unlawful for any labor organization ... to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act." 29 U.S.C. 529.



Arbitrator Edward Valverde
December 27, 2022

# Exhibit A

The LMRDA also preserves the right of union members to sue and to bring internal union charges when provided for in a union's constitution. "No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency …; *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof." 29 USC 411(a)(4).

In addition to guaranteeing the rights of union members, the LMRDA also imposes fiduciary duties on union officers and representatives. Section 501 provides that

> the officers … of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to … expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, … and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. 501(a). These obligations may be enforced by union members under Section 501(b), should the organization fail take appropriate steps to remedy fiduciary breaches, subject to certain procedural requirements. 29 USC 501(b).

Consistent with the LMRDA, APFA's Constitution provides important rights and responsibilities for union members, officers and representatives, including mechanisms for members to seek to hold union officers responsible for their official conduct. Article II, Section 3 provides that "All members of APFA shall have the right of free speech, freedom of assembly, and freedom to dissent." And Article VII of the Constitution provides, among other things, that "any member in good standing" may file charges against any other member for "Theft or embezzlement of Association monies or property" as well as "Willful violation of an express Article of this Constitution." Art. VII, Section 1.E and 1.F and Section 2.

APFA's Constitution also provides a variety of mechanisms to shield union members from frivolous charges, as well as to preserve and protect the rights of members from retaliatory internal charges. For example, when charges are initially filed, APFA's Executive Committee must make a threshold "review [of] the charges for timeliness, specificity and validity." Art. VII, Section 3. If charges are untimely, they "will be dismissed without appeal." If charges are "non-specific", the accuser is permitted a second chance to resubmit charges. And if charges are found "invalid", the accuser may appeal that determination to the Article VII Arbitrator. *Id.* Section 3.B-D.

APFA's Constitution provides that "Charges may be deemed invalid and dismissed if the Executive Committee determines that the charges address conduct protected by this Constitution and/or by law (including the LMRDA Bill of Rights). Charges may also be deemed invalid and

2

Arbitrator Edward Valverde
December 27, 2022

dismissed if they fail to state a proper claim under Section 1 of this Article VII." Art. VII, Section 3.D.

If a charge is dismissed as invalid, the accuser may appeal to the Arbitrator. If a charge is *not* dismissed by the Executive Committee as invalid, the Arbitrator nonetheless retains final jurisdiction, "at any time", to "determine[] (whether on his/her own motion or the motion of the accused) that the conduct furnishing the basis for the charges is protected by this Constitution and/or by law (including the LMRDA Bill of Rights)." Art. VII, Section 6.F. "[T]he Article VII Arbitrator shall have the authority to dismiss ... charges addressed to such protected conduct." *Ibid.*

### Procedural Background

Melissa Chinery-Burns and Sandra Lee are, and were at all relevant times, members in good standing of APFA. On December 10, 2020, they filed Article VII charges against former APFA President Nena Martin. These charges alleged that Ms. Martin had "failed in her responsibility [while an officer] to recoup APFA funds either illegally or erroneously paid to the former President Bob Ross after he vacated his Presidency." In addition, the charges noted that while "we have not finished looking at Nena Martin's financials yet and will be going back to Dallas to continue to view more of them," they had identified eighteen "violations" of APFA's Policy Manual regarding meal expenses while a union officer. The charging parties sought "[a]n independent forensic audit... to verify how much was fraudulently siphoned from the APFA payroll, and Ms. Martin must pay this money back"; a bar on Ms. Martin representing American Airlines Flight Attendants; and "changes to the Policy Manual so that this amount of financial malfeasance is not allowed to happen again." (A copy of the December 10, 2020, charges was submitted into the record in this matter by Ms. Chinery-Burns and Ms. Lee on December 23, 2022.)

APFA's Executive Committee held that the charges were timely and specific, but also that they were not "valid" under APFA's Constitution. Ms. Chinery-Burns and Ms. Lee appealed the invalidity finding to an Article VII Arbitrator, and on March 17, 2021, Arbitrator Howell L. Lankford reversed the Executive Committee. With respect to the charge relating to the authorization of payments to former National President Ross, Arbitrator Lankford held that "it was error for the EC to dismiss that charge as invalid." Moreover, "there are factual disputes about the propriety of some of Ms. Martin's expense claims, and it was error to find that allegation invalid." (Arbitrator Lankford's ruling does not appear to be in the record of this proceeding, and so is submitted herewith as Exhibit 1.)

Arbitrator Lankford did find "the scope of the charge" regarding personal expenses to be "problematic." He ruled that the charge, based on both 18 specific expenditures, as well as potentially "more" based on future record review by the charging parties, was too "open ended" and therefore "as originally stated ... not sufficiently specific." *Id.* Arbitrator Lankford allowed additional time to "specify the particular claims for reimbursement that they allege to be impermissible," or else "that charge will be limited to the 18 meal expenses specified in the original charges." *Ibid.* Ms. Chinery-Burns and Ms. Lee then filed amended charges against Ms. Martin as directed. These new charges included an additional approximately 100 expenditures

3

Arbitrator Edward Valverde
December 27, 2022

# Exhibit A

alleged to have been improperly made by Ms. Martin. (A copy of those Amended Charges is submitted herewith as Exhibit 2.)

Around the same time as the amended charges were filed, an Alternate Article VII Arbitrator, Ruben Armendariz, was appointed and assigned to hear the charges against Ms. Martin. After that assignment, in December 2021, Ms. Martin filed a motion for summary dismissal, which addressed only the original 18 expenditure, and not the amended charges. (Ms. Martin's motion does not appear in the record of this proceeding, and so is submitted herewith as Exhibit 3).

After prolonged proceedings involving document subpoenas, protective orders, and technical difficulties with a document sharing website, a hearing was held on the Motion for Summary Dismissal by Arbitrator Armendariz on October 12, 2022, and a written Order denying a motion to reconsider was issued on October 14, 2022. (Both the hearing transcript, which is cited herein as "Tr.", and the October 14 Order were forwarded to you by APFA with the underlying charge by Ms. Martin.) Focusing on the original 18 expenses in the original charge, the Arbitrator concluded that 12 of those expenses were not incurred by Ms. Martin directly, and that the remining six were potentially "for business use," and that the "evidence presented was de minimis at best and too trivial to merit further consideration." Order on Reconsideration (10/14/22). Arbitrator Armendariz noted that, as a result of two other arbitration awards in cases brought by Ms. Chinery-Burns and Lee, he had ordered extensive audits and financial reforms by APFA, and that "the bottom line is this: The APFA is obligated under law to provide ... documentation to the Department of Labor that these charges were all for business expenses and for Union-related expenses. That's by law. Okay. And they have to do that. So, the burden is on them to comply with that portion of it." Tr. 43.

Notably, while Arbitrator Lankford had specifically allowed Ms. Chinery-Burns and Ms. Lee to amend the charges by adding additional information and expense, and the charges were so amended, Arbitrator Armendariz rejected that earlier ruling: "Well, let me tell you this. He's not the arbitrator. I am. Okay. I'm the one that's going to make the ruling on this." Tr. 42. Based on that change in approach from one Arbitrator to the next, the charges were dismissed. Arbitrator Armendariz did not otherwise address the additional expenses which Ms. Chinery-Burns and Ms. Lee had identified pursuant to Arbitrator Lankford's order.

Ms. Martin has now charged Ms. Chinery-Lee and Ms. Lee with violations of Article VII.I.H., for "Willfully bringing charges without reasonable basis against another member ... should such charges be dismissed... by the Article VII Arbitrator." Ms. Martin seeks an order that Ms. Chinery-Burns and Ms. Lee pay for some or all of the fees and expenses of Article VIII Arbitrators as well as all administrative costs of APFA in that matter. Ms. Martin also seeks an additional fine against both parties in connection with the costs of her charges.

The Martin charges were presented to APFA on November 8, 2022. The Executive Committee met to consider the charges, and on December 8, 2022, voted that the charges were timely, specific and valid. The vote was unanimous on timeliness and specificity, but the vote was divided 5-4 on the issue of validity. (The record of these votes was forwarded to you by APFA along with Ms. Martin's charges.)

*App. 535*

Arbitrator Edward Valverde
December 27, 2022

# Exhibit A

On December 21, 2022, Ms. Chinery-Burns and Ms. Lee filed a motion to dismiss the charges against them, arguing among other things that Ms. Martin's charges against them are addressed to conduct protected by the LMRDA and the APFA Constitution.

## Issues for Consideration

As set forth above, even without a motion from the charged parties, Article VII Arbitrators have the authority to review the issue of whether "the conduct furnishing the basis for the charges is protected by th[e APFA] Constitution and/or by … the LMRDA Bill of Rights." If charges are "*addressed to such protected conduct*," they may be dismissed.  Art. VII, Section 6.F.

In the present matter, a threshold issue will be to identify the "conduct furnishing the basis for the charges."  On the face of the charges, it would appear that the "conduct" is the filing of charges by Ms. Chinery-Burns and Ms. Lee against Ms. Martin.

A second issue will be whether that conduct (the filing of charges) was "protected by" by the APFA Constitution and/or by the LMRDA Bill of Rights.

Of legal significance in making that determination will likely be the LMRDA provisions discussed above, including the right of union members to "express any views, arguments, or opinions", and to institute proceedings including internal union proceedings; and the right of union members to take steps to enforce the fiduciary duty of union officers toward their union. Also of legal significance will likely be APFA's own constitutional protection of the rights of union members to "free speech" and to file charges against other members or officers.

Of factual significance in making that determination will likely be an assessment of the finding by Arbitrator Lankford that the original charges were "valid" under APFA's Constitution; his granting of leave to amend the charges and the filing of such charges; the significance of Arbitrator Armendariz's decision to address only the original charges, and not the amended charges, and his deferral to the APFA itself to address the expense reimbursement issue in the broader context of financial audits ordered in related cases.

*    *    *    *    *    *    *    *

APFA's National Officers and Board of Directors appreciate the opportunity to submit these comments and hope they will assist you in deciding this matter.

Respectfully,

Jeffrey A. Bartos

Attorney for APFA's National Officers
and Board of Directors

5

# App. 536

**Redacted by Plaintiffs**

Redacted by Plaintiffs

**From:** Nena Martin
**Sent:** Tuesday, June 7, 2022 8:23 PM
**To:** eharris@apfa.org
**Cc:** heidimorgan65@gmail.com; jhedrick@apfa.org; aderoxtra@apfa.org; Nena Martin
**Subject:** Digify Files / Urgent Matter

Erik,

It has been a month since I first noticed you of the violations discovered in "Digify" to my personal privacy and the confidential information and documents that were uploaded as part of the signed subpoena request you received from Arbitrator Ruben Armendariz in the matter of Chinery/Lee vs Martin Article VII hearing.

As of today's date, June 7, 2022, there has been no follow up since your May 9, 2022, email?

I know your responsibility as not only the APFA National Treasurer but a National Officer for the largest independent Flight Attendant Union can be overwhelming. With our Membership sleeping in airports, on hold for hours trying to communicate with the Company during IROPs, historic reserve numbers, catering and operational issues, record terminations, new hires and negotiations in this post-pandemic industry, you still found the time to travel to Las Vegas, Nevada to attend a portion of the AFA-CWA Board of Directors Meeting and put your name to the most disgraceful hotline in APFA history.

Yet, after an unprecedented breach of Policy, Privacy and Constitution, I receive nothing.

I'm again requesting an immediate response to the resolve of this matter.

Nena Martin
#131799

-----Original Message-----
From: Erik Harris <eharris@apfa.org>
To: Nena Martin <nenarott@aol.com>
Cc: Julie Hedrick <jhedrick@apfa.org>; heidimorgan65@gmail.com <heidimorgan65@gmail.com>; Nena Martin <nenarott@aol.com>; Margot Nikitas <MNikitas@apfa.org>
Sent: Mon, May 9, 2022 10:37 am
Subject: Re: Digify Files / Urgent Matter

Hi Nena,
Thank you for bringing this to our attention. I have removed all access to the digify until it can be addressed with accounting and legal.
I will be in touch as soon as everything is fixed.
Thanks,
Erik

--
# Erik Harris *Pronouns*: he, him, his
National Treasurer
Association of Professional Flight Attendants
Office 817.540.0108x 8231 | Email eharris@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*



**From:** Nena Martin <nenarott@aol.com>
**Date:** Friday, May 6, 2022 at 7:36 PM
**To:** Erik Harris <eharris@apfa.org>
**Cc:** Julie Hedrick <jhedrick@apfa.org>, heidimorgan65@gmail.com
<heidimorgan65@gmail.com>, Nena Martin <nenarott@aol.com>
**Subject:** Digify Files / Urgent Matter

Erik,

On July 11,2019 I became the recipient of a Facebook post in which the administration with which I served was lambasted and maligned based on information that the then APFA National Treasurer provided to two APFA Members.

The Facebook post stated that these two APFA Members were permitted to view "parts of the Bob Ross exit package", "financial records from the previous administration (the Ross administration)", "as well as a large series of checks all written to the 3 other previous national officers". The two APFA Members state, "any information we have shared here, we uncovered by rifling through stacks of papers".

By July 14,2019 the "large series of checks all written to the 3 other previous national officers" had made their way to Facebook, along with confirmation from the sitting APFA National Treasurer that financial documents containing our social security numbers, home addresses, 401K information, and tax information, had all been shared with these two APFA Members. Subsequently, this information was shared across multiple social media sites, although the APFA Policy Manual states that these records "are deemed confidential".

After hundreds of emails between multiple parties, special Board of Director meetings, APFA "Special" hotlines, threatened lawsuits, hundreds of thousands of membership dues dollars spent on a public shaming and thirteen (13) sets of Article VII charges filed, four (4) against me alone, it saddens me to say that I find myself again in a situation that is far more egregious under your leadership, as the APFA National Treasurer than that in 2019.

On July 26, 2021, and again on April 13, 2022, you as the APFA National Treasurer, received a signed subpoena by Arbitrator Ruben Armendariz, to provide the following documents in the matter of Chinery/Lee vs Martin Article VII hearing.

• The weekly reports submitted by Nena Martin during her term in office from April 2016 to August 2018.

• The monthly expense form submitted by Nena Martin (including receipts) during her term in office from April 2016 to August 2018.

• The credit card statements, and all receipts, for national officers from April 2016 to August 2018.

*App. 538*

• Monthly financials from April 2016 to August 2018.

• Petty Cash from April 2016 to August 2018.

Article I, Section 2.B. of the APFA Constitution states "To protect the individual and collective rights of the members of the APFA and to promote their professional interest and image".

Article I, Section 2.H. of the APFA Constitution states "To disseminate information to enhance the professional status of the membership".

Article II, Section 3.C. of the APFA Constitution states "All members of APFA shall have the right to individual privacy".

Article II, Section 3.D. of the APFA Constitution states "All members of the APFA shall have the right to due process and equal representation".

Article III, Section 6.E.(2). of the APFA Constitution states "The National Treasurer shall be responsible for all financial records of APFA".

Article III, Section 6.E.(11) of the APFA Constitution states "The National Treasurer shall oversee and coordinate ongoing computerization of the APFA headquarters files, records and systems".

Article III, Section 6.E.(12) of the APFA Constitution states "The National Treasurer shall oversee the daily activities of the APFA headquarters office staff".

Article IV, Section 4.E. of the APFA Constitution states in part "An accountant shall be employed by the APFA and shall report directly to the National Treasurer. S/he shall keep an accurate record of all receipts and expenditures of the APFA"

After reviewing the uploaded documents in the "Digify" files last night, I'm quite sure all the above quoted sections of the APFA Constitution have been violated.

The violations discovered in "Digify" to my personal privacy and the confidential information uploaded are prolific. The negligence on the part of APFA, whether intentional or unintentional, to protect my personal information is incomprehensible.

After reviewing the signed subpoenas by Arbitrator Ruben Armendariz, can you explain to me why the below documents, outside of the subpoena request were provided and uploaded in to "Digify" for all parties to review, copy or post to social media?

• Weekly Activity Report / Pay Document

• Pay Transaction Detailed Entry Sheet

• **Pay Checks including Social Security Number, Bank Account, Date of Birth, Home Address**

• **End of Year 2015 Weekly, Monthly Report and HI1 as the STL Base President**

• Vacation, Payback, Deferral Request Form as the STL Base President

• Vacation Payout for all Officers of the Ross Administration

• Vacation/Sick Benefits Calculation Work Sheets

• Profit Sharing Transaction Work Sheet

• February 2017 Profit Sharing Communication between AA and APFA

• 2016 Profit Sharing Calculations for the Glading Administration

• 2016 Profit Sharing Calculations for the Ross Administration

• **Nena Martin W-2, Social Security Number and Home Address not redacted**

• **401K Participant Change Report containing Social Security Number, Home Address, Date of Birth and Email Address**

• UAL Retro Pay Calculation for all Officers of the Ross Administration

• Confidential Email Exchange between Jill Surdek and APFA / UAL Information

• Confidential Email Exchange between Jill Surdek and APFA / UAL Wage Table Pay

*App. 539*

Increase Information
• Triple Play Payouts for all Officers of the Ross Administration
• Grand Slam Payouts for all Officers of the Ross Administration
• Martin Transition Pay Work Sheet / VP to President
• **Yvonne Johnston Paycheck from AA / January 31, 2018**
• APFA Hotline / March 2, 2018
• 2017 W-2 Totals for all Officers of the Ross Administration
• 2017 Profit Sharing Calculations for the Ross Administration
• **Martin HI1 Schedule, Activity Sheet Detail from AA E-Pays / July 2018**
• **July, August and September 2018 Weekly, Monthly Report and HI1**
• Multiple A/P Transaction Processing File Load Sheets
I'm requesting at this time the Martin Weekly and Monthly Report files in "Digify" be removed immediately and the corrected information reloaded.
**The consequences from this breach of confidentiality, including, dealing with the ramifications of any and all** financial damages, rest solely on APFA.
I would like an update on this matter as soon as possible.
Nena Martin
# 131799

**App. 540**



**Osborne Law Offices**
P R O F E S S I O N A L   C O R P O R A T I O N

# Exhibit B

May 12, 2021

**By Electronic and Regular Mail**

Honorable Edward B. Valverde
P.O. Box 188
Hurst, TX 76053

Dear Arbitrator Valverde:

This submission is respectfully offered on behalf of APFA as an interested party in this matter and *not* on behalf of any party to this proceeding.

The dispute underlying these charges has been pending for some time and, from the Union's point of view, the material facts are not in dispute nor are the basic legal principles. We offer the following summary of facts and legal precedents in the hope of simplifying and economizing these proceedings. If any party disputes these representations, they should do so with appropriate record or legal support *prior to* the hearing.

## I.      Material Facts:

A.  The Ross Transition Agreement ("the Ross Agreement") was entered into on March 1, 2018, authorized and executed by the members of the 2018 APFA Board of Directors, and was therefore duly "authorized." Attachment A.

B.  None of the members of the 2018 Board of Directors who authorized and signed the Ross Agreement benefited directly or indirectly from the Agreement.

C.  The Board of Directors has broad authority under Article III, Section 3A of the APFA Constitution to "take any and all lawful action consistent with this Constitution." There is nothing in the Constitution that prohibits transition agreements such as the Ross Agreement.

D.  The Ross Agreement was entered into on the advice of then Union counsel, a nationally prominent Union-side labor law firm, and contained a strict nondisclosure provision which was likewise based on the advice of the Union's legal counsel. Attachment A, para. 7.

E.  There was also a past practice of transition agreements with nondisclosure clauses illustrated by the 2015 transition agreement between then President Laura Glading and the APFA Board of Directors, also containing a nondisclosure clause and also on the advice of legal counsel. Attachment B. The members of the 2018 Board of Directors had no basis for questioning the validity of the Union's legal advice with respect to either the Glading or the Ross Agreements.

F.  The Moyer charges (Attachment C) were filed against the 2018 members of the Board of Directors who had authorized the Ross Agreement. Ms. Moyer forwarded a



1130 Connecticut Avenue, NW, Suite 950
Washington, DC  20036
Telephone  202. 243. 3200
Facsimile  202. 243. 3207

*App. 541*

APFA I. - 000043

# Exhibit B

copy of her charges to the U.S. Department of Labor and the charges became the subject of an administrative inquiry by the Department. Attachment C, p. 7.

G. The Moyer charges allege, in essence, that the Ross Agreement was entered into "off the record" between Ross and 2018 Board of Directors in violation of a number of procedural requirements of the APFA Constitution and Policy Manual; that the nondisclosure provision in the Agreement violated the disclosure requirements of both the APFA Constitution and federal law; and that the APFA Constitution and Policy Manual prohibited the Board of Directors from entering into an "exit package" with Ross.

H. The current officers of the APFA, elected last year, were only able to obtain a copy of the Ross and Glading Agreements by requesting a copy from the Union's former legal counsel. Attachment D. The Union then forwarded a copy of the Ross Agreement to the Department of Labor. Attachment E.

I. Upon review of the Ross Agreement, the newly-elected officers of the Union were advised and concluded that the nondisclosure provision was contrary to both the APFA Constitution and Section 201 of the Landrum-Griffin Act, and the Union then remedied Ms. Moyer's charges, in part, by formally revoking and negating the nondisclosure clause in the Ross Agreement, and offering access to the Agreement to the parties to this proceeding in accord with the APFA Constitution and Policy Manual. Attachment E.

J. Thereafter, Union counsel contacted the Department of Labor which was in the process of reviewing Ms. Moyer's allegations. The Union was eventually advised that the Department of Labor had completed its investigation of this matter, determined not to take action, but would not issue a written report of its inquiry. Attachment F.

K. At its March 2021 Convention, APFA enacted a new provision in its Policy Manual specifically addressing the issue of resignation or recall of Union Officers and thereby remedying the Moyer charges in that respect. Attachment G.

## II.   Legal Principles:

A. A duly authorized decision by the governing officers of a union is lawful and cannot be the basis of charges under the Union Constitution. *Gabauer v. Woodcock*, 594 F.2d 662, 670 (8th Cir.), *cert. denied* 444 U.S. 641 (`979). *See Labor Union Law and Regulation* (Bloomberg/BNA) at pp. 2-72-73 (Attachment H).

B. It is undisputed here that both the Ross Agreement itself and the nondisclosure clause in the Ross Agreement were authorized by the 2018 Board of Directors specifically in reliance upon the advice of a nationally prominent law firm that was serving as Union legal counsel and consistent with past practice.

C. Article VII of the APFA Constitution requires, as relevant here, that any actionable disciplinary charges must be based on "willful" misconduct by the charged parties. "Willful" is a term of art under the law and is a synonym for voluntary conduct undertaken with the intention to do something forbidden by law. *E.g., Screws v. U.S.*,

2

***App. 542***

APFA I. - 000044

# Exhibit B

325 U.S. 91, 101 (1945).  Under Fifth Circuit precedent, a "willful" violation of the Constitution or applicable law requires *affirmative* proof that the charged members of the 2018 Board of Directors "knew or showed reckless disregard for the matter" of the propriety of the Ross Agreement and the nondisclosure clause.  *E.g.*, *Miller v. Raytheon*, 716 F.3d 138, 145 (5th Cir. 2013).

D. Although the nondisclosure clause in the Ross Agreement was subsequently determined by current legal counsel to be contrary to the Constitution and applicable law and therefore invalid – as alleged by the Moyer charges – the charged members of the 2018 Board of Directors relied upon the contrary legal advice provided by previous Union counsel as well as past practice at the time the Ross Agreement was entered into.

E. We are unaware of any facts indicating that any of the members of the 2018 Board of Directors committed an intentional ("willful") act of knowing misconduct or intended to violate the APFA Constitution.  Their decision to authorize the Ross Agreement, including the nondisclosure provision, in reliance upon legal counsel and past practice, was not "willful" – knowing and intention misconduct – as required by Article VII of the Union Constitution.  *Miller v. Raytheon*, *supra*.

F. On a procedural issue, the APFA Policy Manual provides that "[t]he Arbitrator may subpoena witnesses and documents …" but does not provide any guidance on the limitations of such authority.  Rule 176.3(a) of Texas civil procedure limits the geographic range of subpoenas to "150 miles from where the person resides or is served."  *See* Attachment I.

We reiterate that, by this submission, the Union is hoping to simplify and clarify the issues and is *not* taking sides in this case or attempting to assist any party. If you or any of the parties has any questions, or if we can be of further assistance, please let us know.

Respectfully submitted,

William W. Osborne, Jr.

cc:   Margot Nikitas

Attach.

3

*App. 543*

APFA I. - 000045

Exhibit B

# ATTACHMENT A

APFA I. - 000046

Exhibit B

## TRANSITION AGREEMENT

This TRANSITION AGREEMENT (hereinafter referred to as the "Agreement") is entered into between President ROBERT ROSS  (hereinafter referred to as "ROSS"), and the ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, through its Voting Board of Directors and on behalf of any and all of its officers, directors, employees, agents, members, and attorneys, in their official and individual capacities, together with their successors both jointly and severally (hereinafter collectively and individually referred to as "APFA").

WHEREAS, President ROSS and APFA, through its Voting Board of Directors, find it mutually beneficial and in the best interests of the membership to enter into this Transition Agreement; and

WHEREAS, President ROSS has previously announced his intention not to seek re-election for APFA President, and as such the parties have agreed on the terms of this Agreement.

NOW THEREFORE, In consideration of the mutual covenants contained in this Agreement, President ROSS and APFA (hereinafter collectively referred to as "the Parties"), intending to be legally bound, do hereby stipulate and agree as follows:

1. ROSS hereby voluntarily and irrevocably resigns from his position as the National President of APFA effective at the close of the 2018 APFA Convention, and agrees to announce his resignation by the close as well.

2. ROSS will have access through the close of business on March 9, 2018 to his APFA office, files, and computer to finalize his affairs. Starting upon the announcement of the resignation, all emails, telephonic calls, correspondence and affairs regarding or directed to the APFA National President shall be immediately routed to the successor APFA National President.

3. APFA agrees that ROSS will continue to receive from APFA his current full salary and benefits, including full insurance coverage, through July 31, 2018.

4. APFA agrees to pay ROSS all of his accrued and unused sick and accrued and unused vacation time, from April 1, 2016 through July 31, 2018.

5. APFA agrees to pay Ross, upon his request, a one-time lump sum in the total amount of ten thousand dollars ($10,000.00), which represents ROSS's moving expenses. ROSS shall present the moving expenses to APFA for

March 1, 2018:1.0

*App. 545*

APFA I. - 000047



Exhibit B

payment through 2019.

6.    APFA and ROSS will each prepare a communication regarding ROSS's resignation.  APFA shall disseminate said communications simultaneously upon the announcement of the resignation. Each statement shall be mutually agreed upon by both Parties prior to its distribution. Further, the Parties will mutually agree on talking points that shall be used for responses to inquiries from APFA members, the press, and the general public for use, beginning with the announcement.

7.    The Parties agree that the existence, terms, and content of this Agreement are completely confidential. ROSS agrees not to disclose the existence, terms, or content of this Agreement to any third party, except to his spouse, accountant, financial advisors, or attorney. APFA agrees not to disclose the existence, terms, or content of this Agreement, except to the signatories to this Agreement, and to any APFA officers, employees, accountants or attorneys who have an explicit need to know of this Agreement in order to effectuate its terms. The Parties shall be responsible for ensuring in writing that the confidentiality provisions of this Agreement are fully explained and adhered to by anyone to whom permitted disclosures are made pursuant to this paragraph. The Parties agree that they will respond to all inquiries regarding Ross' transition with APFA in accordance with the communications and talking points prepared pursuant to numbered paragraph 6 of this Agreement.

8.    ROSS agrees not to make, orally or in writing, any statements disparaging APFA and/or the Board of Directors, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.  Likewise, APFA's Board of Directors, and its officers, employees and agents who are aware of this Agreement pursuant to the confidentiality provisions of numbered paragraph 7 of this Agreement, agree not to make, orally or in writing, any statements disparaging ROSS or his immediate family, whether or not such statements legally constitute libel or slander, and whether such statements are made to the media, to other individuals, or otherwise.

March 1, 2018:1.0

APFA I. - 000048

App. 546

# Exhibit B

9. The current APFA National Vice-President will be included in all discussions with the APFA Board of Directors regarding the filling of the APFA National Vice-President position.

10. The Parties and signatories to this Agreement have carefully read and understand this Agreement and acknowledge that no party has made any representations other than those contained herein.

11. The Parties agree that this Agreement constitutes their final and complete understanding with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, agreements or representations concerning any matters directly, indirectly, or collaterally related to the subject matter of this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same Agreement. Electronic and facsimile copies shall constitute originals for all purposes, including enforcement.

12. The Parties agree that this Agreement cannot be amended or modified except by express written consent of the Parties hereto.

13. The Parties agree to submit any and all disputes regarding the validity or enforcement of this Agreement to a mutually chosen arbitrator whose decision shall be binding on both Parties. The expenses of the arbitrator shall be borne by APFA. Venue shall be by agreement of the parties.

14. If any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement.

15. The terms and conditions of this Agreement shall be binding upon the Parties' successors and assigns.

IN WITNESS WHEREOF, APFA and President ROSS have executed this agreement in _CHARLOTTE, NC_ on the date(s) indicated below.

BY PRESIDENT ROBERT ROSS:

_____       ___3/1/18_____
Robert Ross                                                    Date

March 1, 2018:1.0

# App. 547

APFA I. - 000049

Exhibit B

**BY APFA (THROUGH ITS VOTING BOARD OF DIRECTORS):**

Amy Milenkovic- BOS

Date 3-1-18

Wanda Sarnacki - CLT

Date 3-1-2018

Robert Valenta- DCA-AA

Date 3/1/18

John Pennel – DCA-US

Date 3/1/18

Maureen Walsh Martin –DFW

Date 3/1/18

John Nikides – LAX

Date 3/1/18

Raymond Lewis – LGA

Date 3/1/18

Randy Trautman– MIA

Date 3/1/2018

Susan Wroble –ORD

Date 3/1/18

Kim Kaswinkel – PHL

Date 3/1/18

Mischel Babi – PHX

Date 3/1/18

Louise Sullivan – RDU

Date 3/1/18

Jennifer Welpott – SFO

Date 3/1/18

Matt Foust – STL

Date 3/1/18

March 1, 2018:1.0

**App. 548**

APFA I. - 000050

Exhibit B

# ATTACHMENT B

APFA I. - 000051

# Exhibit B

## Agreement between the APFA Board of Directors and National President Laura Glading

This Agreement is entered into by the members of the APFA Board of Directors (individually and collectively, the "Board") and APFA National President Laura Glading ("Laura"). On October 3, 2015, Laura submitted to the Board her resignation as National President effective December 2, 2015. Laura has decided that it shall be in the best interest of APFA and its members to have the transition from her presidency begin sooner than she had originally planned.

Therefore, in order to facilitate a smooth transition, in exchange for the mutual promises contained in this Agreement, the sufficiency of which is hereby acknowledged, Laura and the Board agree as follows:

1. Laura shall change the effective date of her resignation to the end of the day on October 9, 2015.

2. Laura shall receive all of the compensation and benefits that she would have received had she resigned effective December 2, 2015, and shall be made whole for advancing her resignation date. This shall include but not be limited to:

   a. Through December 2, 2015:

      1) National President salary;
      2) SAF and related payments;
      3) Vacation and sick leave accrual; and
      4) Health and other insurance.

   b. One month's transition in accordance with Section 6.B.7 of the APFA Policy Manual;

   c. Accrued vacation and accrued sick leave payouts;

   d. Make whole for the flexible spending account money Laura shall forfeit; and

   e. Expenses in connection with returning her car and her personal possessions to her permanent residence.

3. Laura shall issue the following statement today:

   "After discussions with the APFA Board of Directors, I have concluded that it will be in the best interest of APFA and our members to have the transition from my presidency begin sooner than I had originally planned. Therefore, I have informed

*App. 550*