**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT (BOB) ROSS** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.,** | § | |
| | § | **Case No. 4:22-CV-343-Y** |
| **AND** | § | |
| | § | **Consolidated with** |
| **EUGENIO VARGAS** | § | **Case No. 4:22-CV-430-Y** |
| | § | |
| **VS.** | § | |
| | § | |
| **ASSOCIATION OF PROFESSIONAL** | § | |
| **FLIGHT ATTENDANTS, et al.** | § | |

---

**APFA DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**ON ALL CLAIMS AND COUNTERCLAIMS**

JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (pro hac vice)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
Tel.: (202) 624-7400; Fax: (202) 624-7420
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 241133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX  76040
Tel.: (682) 301-8454
Email: cbroderick@apfa.org

*Counsel for APFA*

## TABLE OF CONTENTS

I.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT IN
     CONNECTION WITH THE APFA DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT. ........................................................................1

     A.  Summary Of Undisputed Material Facts. ......................................1

     B.  Plaintiffs' Objections To The APFA's Summary Judgment Evidence
         Are Meritless.................................................................................4

                 1.  Declaration Of Josh Black ................................................5

                 2.  Declaration Of Erik Harris ...............................................6

                 3.  Declaration Of Hal O'Neil................................................7

II.  THE APFA DEFENDANTS ARE ENTITLED TO JUDGMENT ON
     PLAINTIFFS' CLAIMS AS A MATTER OF LAW .........................8

     A.  Judgment Should Be Entered On The Claims Which Plaintiffs Have
         Abandoned. ...................................................................................8

     B.  The APFA Defendants Are Entitled To Summary Judgment On
         Plaintiffs' LMRDA Claims...........................................................9

                 1.  Plaintiffs Have Not Shown Any LMRDA Due Process
                     Violations.........................................................................9

                 2.  Plaintiffs Cannot Show Protected Speech Was The "But For"
                     Cause Of The Arbitrator's Decisions...............................11

     C.  Plaintiffs' State-Law Claims Fail As A Matter Of Law .........12

                 1.  Mr. Ross' Breach of Employment Contract Claim..........12

                 2.  Mr. Vargas' Fraud Claim ...............................................14

                 3.  Mr. Ross' Defamation Claim ..........................................15

III. APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS
     FIDUCIARY DUTY COUNTERCLAIMS......................................17

CONCLUSION...................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                        **Page(s)**

*Adams-Lundy v. APFA*,
    844 F.2d 245 (5th Cir. 1988) ........................................................................18, 19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d
    356 (5th Cir. 2003)..............................................................................................14

*Blueitt v. Crestbrook Ins. Co.*,
    643 F. Supp. 3d 651 (N.D. Tex. 2022) ...............................................................4

*City of El Paso, Tex. v. El Paso Ent., Inc.*,
    382 F. App'x 361 (5th Cir. 2010) .......................................................................20

*Fowler v. S. Bell Telephone & Telegraph Co.*,
    343 F.2d 150 (5th Cir. 1965) .............................................................................19

*Halsell v. Local Union No. 5, Bricklayers & Allied Craftsmen*,
    530 F. Supp. 803 (N.D. Tex. 1982) ...................................................................10

*Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*,
    598 F.3d 454 (8th Cir. 2010) .............................................................................9

*Hudson v. Am. Fed. of Gov't Emps.*,
    630 F. Supp. 3d 214 (D.D.C. 2022) ..................................................................11

*IDA Eng'g, Inc. v. PBK Architects, Inc.*.
    No. 05-15-01418-CV (Tex. App. Oct. 4, 2016)..................................................13

*Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers &*
    *Helpers, AFL-CIO v. Hardeman*,
    401 U.S. 233 (1971)....................................................................................3, 6, 9

*Keenan v. Int'l Assoc. of Machinists & Aero. Workers*,
    937 F. Supp. 2d 93 (D. Maine 2013) ...........................................................11, 12

*Kirk v. Transp. Workers Union of Am., AFL-CIO*,
    934 F. Supp. 775 (S.D. Tex. 1995) ....................................................................16

*Lewis v. AFSCME*,
    407 F.2d 1185 (3d Cir. 1969)........................................................................3, 10

*LSR Consulting, LLC v. Wells Fargo Bank, N.A.*,
    835 F.3d 530 (5th Cir. 2016) ......................................................................4, 5, 7

*Mallick v. Int'l Bhd. of Elec. Workers*,
    749 F.2d 771 (D.C. Cir. 1984) ........................................................................ 12

*Mallick v. Int'l Bhd. of Elec. Workers*,
    814 F.2d 674 (D.C. Cir. 1987) ........................................................................ 12

*McConathy v. Dr. Pepper/Seven Up Corp.*,
    131 F.3d 558 (5th Cir. 1998) ......................................................................... 14

*Moreno v. Sterling Drug, Inc.*,
    787 S.W.2d 348 (Tex. 1990) .......................................................................... 13

*Perdido Properties LLC on Behalf of Bremer v. Devon Energy Prod. Co., L.P.*,
    669 S.W.3d 535 (Tex. App. 2023) .................................................................. 13

*Ray v. Young*,
    753 F.2d 386 (5th Cir. 1985) .................................................................... 18, 19

*Serafinn v. Local 722, IBT*,
    597 F.3d 908 (7th Cir. 2010) ......................................................................... 11

*Smith v. Spizzirri*,
    No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024) .................................. 14

*United States v. Herron*,
    825 F.2d 50 (5th Cir. 1987) ........................................................................... 17

*Yager v. Carey*,
    910 F. Supp. 704 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998) ................ 10

## STATUTES

UNITED STATES CODE

Fair Credit Reporting Act
    15 U.S.C. § 1681 ............................................................................................. 8

Labor-Management Reporting & Disclosure Act
    29 U.S.C. § 411 .......................................................................................... 9, 10
    29 U.S.C. § 431 ............................................................................................. 12
    29 U.S.C. § 501 .................................................................................. 17, 18, 19
    29 U.S.C. § 529 ............................................................................................. 11

TEXAS CIVIL PRACTICES & REMEDIES CODE

§ 16.051 ...................................................................................................................13

**RULES**

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 9 .........................................................................................................14
    Rule 56 ...................................................................................................4, 5, 7

FEDERAL RULES OF EVIDENCE
    Rule 201 ........................................................................................................6
    Rule 801 ........................................................................................................6
    Rule 803 ........................................................................................................8
    Rule 1006 ......................................................................................................8

We demonstrated in our opening Memorandum, as well as in our Opposition to Plaintiffs' Motion for Partial Summary Judgment, that Plaintiffs cannot show facts which would warrant a trial on any of their claims, that the APFA Defendants are entitled to judgment as a matter of law on Plaintiffs' claims, and that APFA is entitled to judgment on its fiduciary duty counterclaims. We respectfully submit that Plaintiffs' Opposition  Brief, to which we Reply herein, confirms that conclusion.  Plaintiffs have not met their burden of demonstrating a genuine issue as to any material fact, nor of establishing legal grounds upon which they may proceed on the undisputed record. The APFA Defendants respectfully submit that—with full discovery and full briefing complete— the Court should enter judgment in their favor on all claims.

## I.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT IN CONNECTION WITH THE APFA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

### A.  Summary Of Undisputed Material Facts.

The essential dispositive facts are not disputed.  Without rehashing the factual discussion in our Opening or our Opposition Memoranda, we note here only that non-party Union members filed internal Union charges against Mr. Ross and Mr. Vargas, which led to final and binding arbitrations under Article VII of the APFA Constitution. APFA Appx. 4-5 (Black Decl.) ¶¶ 10-13.[1] The independent Article VII Arbitrator conducted hearings in which witnesses testified and documentary evidence was submitted, and ultimately issued awards in both cases which held that Mr. Ross and Mr. Vargas, while Union officers, had misused and improperly received tens of thousands of dollars in violation of the APFA Constitution and Policy Manual. APFA Appx. 6-8 (Black Decl.)  ¶¶ 15-23; APFA Appx. 282-284 (Ross Supp. Decision); APFA Appx. 504-506

---

[1] The APFA Defendants' Appendix ("APFA Appx.") is filed at Doc. 236.

(Vargas Supp. Decision).  The Arbitrator barred Mr. Ross and Mr. Vargas from holding Union office based on what he concluded were egregious breaches of their duty to the Union and its members.  *Id.*; *see also* APFA Appx. 240, 242 (Ross Award); APFA Appx. 480 (Vargas Award).

Arbitrator Armendariz concluded that Mr. Ross had improperly used APFA funds for:

- Personal housing expenses and furniture purchases.
- A family vacation to the Grand Canyon.
- Costs for personal rental cars.
- Expenses related to commuting to Ross' California home
- Inflated vacation and sick leave payments which he refused to repay.

Mr. Ross was ordered to repay APFA for the $5,436.47 sick and vacation overpayment, as well as over $8,000 for leasing an apartment "where he had no intention of occupying," and an additional $3,600 in unauthorized expenditures. APFA Appx. 241-242.  Mr. Ross was barred from holding any positions in APFA.  APFA Appx. 241. After an independent financial review revealed that Mr. Ross had charged thousands of dollars to the Union for additional personal expenses during his two-year tenure, Arbitrator Armendariz ordered Mr. Ross to repay an additional $20,336.19 for unauthorized and inappropriate costs charged to APFA for personal expenses.  APFA Appx. 282-84.

With regard to Mr. Vargas, Arbitrator Armendariz found Mr. Vargas guilty of violating the APFA Constitution and Policy Manual in dereliction of his duties as National Treasurer in several ways including regularly charging personal meals to the Union, while accepting fixed meal allowances.   After an independent financial review, Arbitrator Armendariz determined that Mr. Vargas had made approximately $14,000 in "[i]nappropriate credit card charges related to meals." APFA Appx. 505. Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and half of the arbitrator's fee and he was "prohibited from serving in any APFA National Officer position or Regional Officer position for life."  *Id.*

Plaintiffs seek to generate a dispute over the core facts of the arbitration process by offering arguments and fragments of evidence which, they say, contradict some of the Arbitrator's findings and conclusions.  *See* Doc. 246 at ECF 18-19.  But judicial review of union discipline is not *de novo*; the question is whether "the charging party … provide[ed] *some evidence* at the disciplinary hearing to support the charges made…. A stricter standard … would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record." *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245–46 (1971) (emphasis added); *see also Lewis v. AFSCME*, 407 F.2d 1185, 1198 (3d Cir. 1969).  Plaintiffs do not even remotely establish a genuine issue under this standard.

Nor does Plaintiffs' effort to impugn the Arbitrator's findings succeed under a lesser standard of proof.  Plaintiffs assert, for example, that the Arbitrator made contradictory findings in the Ross and Vargas cases with respect to the disposition of certain furniture.  Doc. 246 at ECF 19-20 (claiming that Arbitrator concluded in *Vargas* that "all of the Ashley furniture has been fully explained and accounted for," but in *Ross* held that "Ross wrongfully took the Ashley's furniture and moved it into his house").  An examination of the decisions, however, shows there was no such contradiction. While both arbitrations examined purchases of furniture from a company named Ashley, Mr. Ross' arbitration involved Ross' use of the APFA credit card to purchase "$3637.00 worth of furniture on August 13, 2016" for his own use, Doc. 239-3 at ECF 3, while Mr. Vargas' arbitration involved Vargas' use of his APFA credit card "on May 18, 2016, in the amount of $8733.89 … for the corporate apartments for the three (2) newly appointed APFA National Department Chairs," not Mr. Ross.  Doc. 239-7 at ECF 35.  There was no contradiction between the findings in the two matters.

3

We respectfully submit that the facts presented in support of the APFA's motion are not genuinely at issue, as further discussed in regard to the relevant arguments below.

B. **Plaintiffs' Objections To The APFA's Summary Judgment Evidence Are Meritless.**

Confronted with an inability to genuinely dispute the dispositive facts, most of which are from the undisputed record of the Article VII arbitrations, Plaintiffs object to the underlying source material in an attempt to avoid judgment. Plaintiffs object to the Declarations of Josh Black, Erik Harris, and Hal O'Neil, and to a number of the exhibits thereto generally on the grounds of hearsay, lack of personal knowledge, and as improper "summations" of other evidence.  Doc. 246 at ECF 8-17.

Plaintiffs' sweeping challenges are without merit.

Rule 56(c)(1), Fed. R. Civ. P., lists the wide variety of materials which can be used to support a fact at summary judgment, and Rule 56(c)(4) specifies that declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the … declarant is competent to testify on the matters stated."  All such evidence is subject to the limitation in Rule 56(c)(2) that "A party may object that that material cited to support … a fact cannot be presented in a form that would be admissible in evidence."  Importantly here,  "[a]t the summary judgment stage, materials cited to support … a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"  *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). "Put simply, the Court may consider evidence at the summary judgment stage if that evidence contains facts which would be admissible at trial, even if that evidence is unsworn or in a presently inadmissible form."  *Blueitt v. Crestbrook Ins. Co.*, 643 F. Supp. 3d 651, 654 (N.D. Tex. 2022).

The APFA Defendants' summary judgment evidence readily meets the Rule 56 standard, and Plaintiffs' objections should be overruled.

To begin with, the challenged Declarations are all based on both personal knowledge and, in the case of Mr. Black and Mr. Harris, Declarants' positions within the APFA.  *See* APFA Appx. 2 (Black Decl.) ¶ 1; APFA Appx. 522 (Harris Decl.) ¶ 1;  APFA Appx. 544 (O'Neil Decl.), ¶ 1.

1.      **Declaration Of Josh Black**. With respect to Mr. Black, he has been the National Secretary of the APFA since April 2020, APFA Appx. 2, ¶ 2, and under the APFA Constitution is "responsible for all administrative records of the Association," including records of meetings of the Board of Directors and Executive Committee, and is responsible to "administer Article VII procedures."  APFA Appx. 27, Art. III, Section 6.D(1), (4) and (8); *see also* APFA Appx. 30-31 (APFA Const. Art. VII, Section 2.A-C (describing role of National Secretary in Article VII process)).   Reflecting that role, Mr. Black's Declaration provides, as exhibits, the main documentary record of the Article VII proceedings at issue here (which took place during his time in office), from the charges to the arbitration awards. These are official records of the Union, of which Mr. Black has both personal knowledge and the institutional responsibility to maintain.  His Declaration and all its exhibits are not objectionable.  *See LRS Consulting*, 835 F.3d at 534 (even when affidavit did not state it was based on personal knowledge, provision of "sufficiently specific statements … to infer that the affiants had personal knowledge of the acts attested therein" was sufficient to use for summary judgment purposes.).

Plaintiffs list ten exhibits to Mr. Black's Declaration they claim are objectionable hearsay, Doc. 246 at ECF 10-12, but these objections are patently without merit.  To begin with, as described above, these are all records of the Article VII proceedings of which Mr. Black has personal knowledge and are admissible on that basis alone.  Moreover, the Court has already taken judicial

notice of two of the objected-to exhibits (the Supplemental Arbitration Awards which are Exhibits T and Z to the Black Declaration) under Federal Rule of Evidence 201.  *See Ross* Doc. 45; *Vargas* Doc. 46.  The Post-Hearing briefs of Mr. Ross and Mr. Vargas (Black Exhs. O and V) are not hearsay under Rule 801(d)(2), because they are statements by an opposing party.  And the Article VII Awards and transcripts in both matters (Black Exhs. R, U, W) have been submitted by Plaintiffs themselves in the record of this matter.  *See, e.g., Ross* Doc. 1 -3 (Ross Art. VII Award); Doc. 239 (Pls.' Appx. Supp. Summ. J.) at Appx. 101-138 (Ross Art. VII Tr.), Appx. 255-62 (Vargas Art. VII Tr.) and Appx. 309 (Vargas Art. VII Award).[2]  Plaintiffs' objections should be rejected.

2.      **Declaration Of Erik Harris.** With respect to Mr. Harris, he has been the National Treasurer of APFA since April 2020, APFA Appx. 522, ¶ 2. Under the APFA Constitution he is, among other things, "responsible for all financial records of the APFA," and "assist[s] the National Secretary in the discharge of all duties." APFA Appx. 28-29 (Art. III, Section 6.E(2) and (14)). Under the APFA Policy Manual he has a role in providing union members with access to union financial records.  APFA Appx. 61 (Section 7.G.1.).  His Declaration describes formal resolutions by the APFA Board of Directors regarding APFA finances, official correspondence and records regarding Mr. Vargas and others, his involvement in responding to member requests to review financial information, and actions taken by him and others at his direction to evaluate whether Mr. Ross had been overpaid.  APFA Appx. 523-527 (Harris Decl.) ¶¶ 6-21.  All of those statements are either within his direct personal knowledge or based on documents over which he has professional

---

[2] Plaintiffs also object to the reports of the independent financial review ordered by the Arbitrator in both cases, Black Exhs. S and Y. These reports establish, among other things, there was some evidence, under LMRDA standards, for the Arbitrator's findings, *see Hardeman*, 401 U.S. at 245-46, and are undoubtedly admissible for that purpose in addition to being capable of being presented in a form which is admissible for other purposes.

oversight. As with Mr. Black, his Declaration and all its attachments are admissible. *See LSR Consulting*, 835 F.3d at 534.

With respect to the exhibits to Mr. Harris' Declaration, Plaintiffs contend that "APFA's record-keeping system is not reliable," and therefore that the "documents within APFA's possession are unreliable." Doc. 246 at ECF 12, 13. This contention is baseless. Plaintiffs do not dispute the authenticity of *any* of the documents submitted by APFA. In any event, the sole basis for this contention is Mr. Harris' testimony in the Article VII proceeding that when he took office in April 2020 the Union's financial records were "in bad shape." Doc. 239-6 at ECF 9 (Pls.' Appx. 270), and an email from August 2021 stating that a box of documents was at that time missing, Doc. 239-8 at ECF 32 (Pls.' Appx. 385). Mr. Harris testified in the hearing that at least some of those items had since been located, Doc. 247-4 at ECF 45:4-21 (Pls.' Appx. 195), and Plaintiffs present no evidence to support their sweeping claim that the record-keeping system as a whole or as it relates to any of the documents at issue here is "unreliable" in any way, much less so as to affect summary judgment.

**3.    Declaration Of Hal O'Neil.**  Mr. O'Neil is a Certified Public Accountant who personally analyzed the overpayments to Mr. Ross and others, and who drafted the "Confidential Memorandum" upon which Plaintiffs focus their case. APFA Appx. 544-45 (O'Neil Decl.) ¶ 1-2, 8. His Declaration is based on his personal knowledge, *ibid.*, and describes analysis he personally conducted in the normal course of his business, his conclusion with respect to Mr. Ross, and what he meant in the "Confidential Memorandum." APFA Appx. 544-546, ¶¶ 4-8. Contrary to Plaintiffs' misreading of his Memorandum, Mr. O'Neil specifically affirms the he had "concluded … that Mr. Ross had been overpaid in the amount of $5436.47." APFA Appx. 546. Mr. O'Neil's Declaration, based on his personal knowledge, is plainly appropriate under Rule 56.

7

Plaintiffs object that Mr. O'Neil's analysis of the overpayment, which is a document he prepared and provided to APFA prior to his litigation, is in some way an "improper summation of evidence" and that the underlying documents upon which he based his analysis were in some way improperly withheld. Doc. 246 at ECF 16-17.[3]  But the overpayment schedule is not presented as a "summation" under Rule 1006, Fed. R. Ev., but is instead the analysis conducted by Mr. O'Neil in the normal course of his business as the longtime CPA for APFA, which is admissible under Rule 803(B)(6), Fed. R. Evid., at a minimum. (We also note that Plaintiffs have themselves submitted this document as evidence in support of *their* motion for summary judgment, *see, e.g.*, Doc. 239 at ECF 23-31.)

## II.   THE APFA DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS AS A MATTER OF LAW.

### A.  Judgment Should be Entered On The Claims Which Plaintiffs Have Abandoned.

The APFA Defendants moved for summary judgment on all of Plaintiffs' claims, Doc. 234, and fully briefed its arguments as to each such claim, Doc. 235.  In opposition, Plaintiffs have totally failed to address three of those claims – the breach of fiduciary duty; violation of the Fair Credit Reporting Act; and intentional interference with contract. Plaintiffs have therefore abandoned those claims.

In addition, while Plaintiffs asserted a claim for breach of the APFA's Constitution, *see Ross* Doc. 75, ¶¶ 41-47 ; *Vargas* Doc. 133, ¶¶ 41-47, their opposition brief explains that they are

---

[3] Plaintiffs' contention that supporting documents were in some way withheld is not supported by the record:  the motion to compel they cite for that proposition, Doc. 113, was denied by the Court (after being refiled as *Ross* Doc. 136). *See Ross* Doc. 187 (Order).

not raising an independent claim for breach of the APFA Constitution, but rely on that document only as context for their LMRDA Title I claim.  Doc. 246 at ECF 36.

### B. The APFA Defendants Are Entitled To Summary Judgment on Plaintiffs' LMRDA Claims.

#### 1. Plaintiffs Have Not Shown Any LMRDA Due Process Violations.

Contrary to Plaintiffs' assertions, and as demonstrated in our opening submission (Doc. 235 at ECF 35-42) and in our opposition to Plaintiffs' Motion for Summary Judgment (Doc. 243 at ECF 15-31), the undisputed evidence shows that the arbitration process was fully consistent with the requirements of the LMRDA, including its requirement that discipline be supported by "some evidence" and only after a "full and fair hearing." 29 U.S.C. § 411(a)(5)(C); *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246-47 (1971).

While Plaintiffs raise a laundry-list of various meritless after-the-fact procedural complaints about the hearing process, it bears emphasis that, with the exception of the "Confidential Memo," none of these issues was raised by either Mr. Ross or Mr. Vargas at the hearing or in their post-hearing briefs to the Arbitrator.  *See* APFA Appx. 185-213 (Ross Brief); APFA Appx. 404-41 (Vargas Brief). These claims were fully addressed in our opposition to Plaintiffs' Motion for Summary Judgment (Doc. 243) at the pages referenced below and need to not be repeated here:

- Alleged "discovery" issues, including allegations that the APFA "concealed" the "Confidential Memorandum."  Addressed at Doc. 243 at ECF 20-23 [4]

---

[4] Plaintiffs continue to focus on only the overpayment of Mr. Ross' sick and vacation pay and the alleged impact of the "Confidential Memorandum" on this charge.  It also bears emphasis, however, that this related to only one of the many charges for which they were found guilty.  *See Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454, 462 (8th Cir. 2010) (upholding discipline when there is "some evidence to support some of the charges brought against him").  While Plaintiffs summarily dismiss the other serious charges (involving the unauthorized use of Union funds for various personal expenses) as "inventive story-tell[ing]," (Doc. 246 at ECF 19), the record does not support their claim.   A more detailed discussion of

- Alleged inability to discuss transition agreement.  Addressed *id.* at ECF 23-25.

- Alleged inability to discuss "evidence of harassment." Addressed *id.* at ECF 27-28.[5]

- Alleged inability to call witnesses.  Addressed *id..* at ECF 25.

- Alleged deprivation of "proportionate time."  Addressed *id,* at ECF 25-26.

- Alleged admission of "unreliable hearsay." Addressed *id.* at ECF 26-27.[6]

Moreover -- and independently fatal to their LMRDA claims -- Plaintiffs entirely fail to explain to the Court how the alleged procedural shortfalls (if they occurred), could have affected the outcome of their arbitrations. Even if "an internal union rule has been violated, Section 411(a)(5)(C) gives union members a cause of action only when that violation *severely impairs* the member's ability to prepare and present a defense, or by increasing the risk that a decision maker will reach an erroneous determination." *Yager v. Carey*, 910 F. Supp. 704, 714 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998).  Plaintiffs' due process claims fail as a matter of law.

---

these charges, the evidence offered at the hearing in support, and the Arbitrator's decision on them can be found in our opening Memorandum, Doc. 235 at ECF 20-33.

[5] While Plaintiffs allege that "a substantial amount of evidence" was "not submitted" because the Arbitrator "expedited" Mr. Vargas' arbitration proceedings (Doc. 246 at ECF 27), their only supporting citation is to an email correspondence between Nena Martin and Defendant Harris from May-June 2022 (Pls.' Appx. 539) -- after the Ross and Vargas decisions had been issued -- about separate proceedings.  Also wholly unsupported is their allegation that the Arbitrator "disallowed" "evidence on key issues like charges, expenses, calculations, etc." *Id.* at ECF 27-28.

[6] Plaintiffs newly complain that the discipline imposed against them "appears disproportionate" to the charges (Doc. 246 at ECF 28), but it is emphatically *not* the role of the judiciary to second guess the internal penalties imposed by a union for found wrongdoing.  *See Lewis v. AFSCME*, 407 F.2d 1185, 1198 (3d Cir. 1969); *Halsell v. Local Union No. 5, Bricklayers & Allied Craftsmen*, 530 F. Supp. 803, 807 (N.D. Tex. 1982).  Plaintiffs also newly claim (incorrectly) that "APFA's counsel submitted amicus briefs" against Ross and Vargas in their arbitration hearings.  Doc. 246 at ECF 44.  In support, they cite to the Confidential Memorandum and the Affidavits of Heidi Morgan and Nena Martin, none of which remotely support this unfounded claim.

##### 2.  Plaintiffs Cannot Show Protected Speech Was The "But For" Cause Of The Arbitrator's Decisions.

Plaintiffs contend that the discipline assessed by the Arbitrator in 2022 was in retaliation for some form of protected free speech related to their views expressed in 2016 against merging APFA with another union, in alleged violation of 29 U.S.C. § 529.  Doc. 246 at ECF 45-47.  They provide nothing more than pure speculation for this theory, which is insufficient to defeat a properly supported motion for summary judgment.

As shown in our opening submission, the burden is on Plaintiffs to produce evidence on which a jury could find that the exercise of free speech rights "was not merely a motivating factor, but a necessary condition or a 'but-for' cause" of the discipline. *Serafinn v. Local 722, IBT*, 597 F.3d 908, 914 (7th Cir. 2010); *Hudson v. Am. Fed. of Gov't Emps.*, 630 F. Supp. 3d 214, 225 (D.D.C. 2022); *Keenan*, 937 F. Supp. 2d at 109.  Plaintiffs gratuitously suggest that the "but for" standard "should not apply here," Doc. 246 at ECF 45-46, but they notably fail to offer any argument or authority in support of this assertion (except to incorrectly state that none of the "but-for" LMRDA cases cited by APFA Defendants involved free speech "retaliation" claims when, in fact, they all did).  And, as spelled out in in our opening submission (Doc. 235 at ECF 40-42) and our opposition to Plaintiffs' Motion for Summary Judgment (Doc. 243 at ECF 28-31), Plaintiffs have failed to show *any* causation at all -- much less the required "but for" causation -- between the alleged speech and the discipline imposed by the neutral third-party arbitrator *six years* later.[7]  Plaintiffs offer neither direct nor indirect evidence of causation. *See Keenan v. Int'l Assoc. of Machinists &*

---

[7] None of the conduct purportedly "evidencing" the claimed "stifling" of free speech has anything to do with Arbitrator Armendariz and very little of the alleged conduct has anything to do with any of the APFA Defendants.  *See, e.g.,* Doc. 246 at ECF 46 (discussing, for example, disputes between Ms. Chinery and her husband and Mr. Ross; "social medial" reports by "unknown APFA members;" and "anonymous complaints to AA human resources").

*Aero. Workers*, 937 F. Supp. 2d 93, 109-111 (D. Maine 2013) (reviewing both direct and indirect evidence and concluding that the evidence failed to show a fact issue on "but for" causation). Accordingly, their LMRDA free speech claim fails as well.

Plaintiffs were charged with, and found guilty of, financial malfeasance during their tenure as APFA officers and not for the exercise of any right enumerated in Title I of the LMRDA.   Their retaliation claims fail.

### C. Plaintiffs' State-Law Claims Fail As A Matter of Law.

#### 1. Mr. Ross' Breach of Employment Contract Claim.

Mr. Ross contends the APFA Defendants breached his Transition Agreement by disclosing it to union members and by allegedly underpaying him for sick leave in 2018.  Doc. 75, ¶¶ 52-59.

With respect to the disclosure, we demonstrated that since federal law *requires* unions to disclose documents underlying union officer salary and benefits, any claim of breach in this regard cannot be sustained.  *See* Doc. 235 at ECF 46-47; Doc. 243 at ECF 37-38.  Mr. Ross  contends that since the amount he "was paid under the TA was disclosed in the LM-2s," no further disclosure of the TA was required.  Doc. 246 at ECF 34-35.  But this is incorrect – the statute requires unions to provide members, upon showing of just cause, the underlying "books, records, and accounts necessary to verify" the federal report.  29 U.S.C. § 431(c).  Mr. Ross does not, and cannot, show why his TA should have been shielded from union member review.[8]

---

[8] Mr. Ross here relies solely on *Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771 (D.C. Cir. 1984),  Doc. 246 at ECF 35, but that decision does not support his position. The cited language in *Mallick* goes solely to the issue of what may or may not constitute "just cause" in a particular context, 749 F.2d at 783, and held that "political opposition to union officials" does not by itself establish "just cause" for such review.  The *Mallick* court ultimately held that the union members there did have just cause to review a litigation settlement agreement the union had attempted to maintain in confidence. *See Mallick v. Int'l Bhd. of Elec. Workers,* 814 F.2d 674, 679-683 (D.C. Cir. 1987).  Here, the union determined based on consultation with its outside counsel that disclosure was required to comply with the LMRDA, *see* APFA Appx. 509 (Hedrick Decl.) ¶ 9;

12

With respect to the sick leave payment, we showed and it is not disputed that Mr. Ross was paid the contested amount of sick leave payment on March 29, 2018, more than four years before this suit was filed, APFA Appx. 525 (Harris Decl.) ¶ 13, making this claim untimely under Tex. Civ. Prac. & Rem. Code § 16.051.  Doc. 235 at ECF 47.  Plaintiff argues that the limitations period did not begin to run until he received "final payment" in December 2019, Doc. 246 at 33, but the cited document (Doc. 247-11 at ECF 7 (Pls.' Appx. 507)), does not relate to payment of the contested sick leave which had, it is undisputed, been paid in full from APFA's perspective, in March 2018.  As Plaintiffs' evidence demonstrates, the 2019 payment was only for moving expenses, which are not at issue here.  Doc. 239-4 at ECF 41 (Gunter Decl.) ¶ 1.d.  Mr. Ross does not challenge the amount of the December 2019 payment, but instead challenges the payment that he received in March 2018.  A cause of action in a breach of contract case accrues when the alleged breach occurs, *see Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990), which in the case of the sick leave was more than four years before suit was filed.

Plaintiffs' reliance on *IDA Eng'g, Inc. v. PBK Architects, Inc..* No. 05-15-01418-CV (Tex. Appx. Oct. 4, 2016) (Pls.' Appx. 660), to extend the limitations period is misplaced.  As that case held, when, as here, a contract calls for multiple separate payments over time, a cause of action accrues when the payment has come due or has been paid incorrectly.  *Id.* at Pls.' Appx. 662; *see also Perdido Properties LLC on Behalf of Bremer v. Devon Energy Prod. Co., L.P.,* 669 S.W.3d 535, 556 (Tex. Appx. 2023).  Here, Mr. Ross knew or should have known of the alleged incorrect payment when he received his payout in March 2018.  Later payments under other provisions of the TA do not extend the limitations period. *Id.*

---

APFA Appx. 524 (Harris Decl.) ¶ 11, and there has been no showing of an improper motivation by either the members requesting access, nor the union in providing it.

Mr. Ross also observes that the APFA did not list the statute of limitations as an affirmative defense in its Answer, Doc. 246 at ECF 34. He does not argue that the defense has been waived, however, nor has he contended that litigating the issue at summary judgment has caused any prejudice. Absent such a showing, the Court may properly rule on the fully-briefed limitations issue. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998).

Finally, while we contended in our opening Memorandum that the Federal Arbitration Act required dismissal of this claim, Doc. 235 at ECF 46, the Supreme Court has since abrogated Fifth Circuit precedent in this regard, *Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872 at *3 (May 16, 2024), and APFA accordingly withdraws this argument. (A copy of the *Smith* decision was submitted by APFA in its Supplemental Appendix, Doc. 244 at ECF 42).

### 2. **Mr. Vargas' Fraud Claim.**

Mr. Vargas' Amended Complaint includes a count labelled "Common Law Breach of Fiduciary Duty and Fraud." Doc. 133 at ECF 9. We demonstrated that the fraud claim was not pled with particularity, and that in his deposition he failed to provide any examples of any allegedly fraudulent statement by any Defendants. Doc. 235 at ECF 44 n.27.[9] He has abandoned his fiduciary duty claim, but attempts now to salvage the fraud claim in a rambling 4-page argument,

---

[9] Apparently in response to the APFA's showing, Vargas contends in opposition that he "asserted the elements of fraud in his original petition," but cites only to a declaration by Mr. Ross and some of its attachments in support of this claim. Doc. 246 at ECF 46 (citing Doc. 239, PAGEID 6679-6700). Neither the Amended Complaint nor the documents he now cites satisfy Rule 9(b), Fed. R. Civ. P., which "[a]t a minimum, … requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out*." Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (cleaned up).

Doc. 246 at ECF 47-50, which demonstrably fails to set forth even the elements of a claim that Mr. Vargas was defrauded.

*First*, Mr. Vargas has not alleged, much less provided evidence upon which the Court could find, that **he** was defrauded in any way.  The gist of his Opposition appears to be the claim that various APFA representatives wrongly claimed that Mr. Vargas had overpaid Mr. Ross, and that therefore Mr. Ross was wrongly found to have owed money back to APFA.  *See* Doc. 246 at ECF 49 ("When Vargas was told that APFA's outside accountant … determined Ross was overpaid under the TA, he believed this misrepresentation to his detriment.").  But he does not even allege any "detriment" to himself, but rather only alleges a supposed detriment to Mr. Ross. *Id.* at ECF 50 ("the plan was to ban Ross for life ….  They got Vargas to get to Ross.").  This creative thinking, even if supported by any evidence, does not state a claim for fraud on behalf of Mr. Vargas.

*Second*, Mr. Vargas has not provided evidence upon which the Court could find that any APFA Defendant made a false or fraudulent statement.  The core "misrepresentation" he points to is the determination that Mr. Ross had been overpaid by $5400 when he left office. Doc. 246 at ECF 49 ("Harris, Hedrick, and APFA misrepresented the accounting firm's conclusion that Ross was overpaid.").  Of course, this was *not* a misrepresentation. Mr. O'Neil had calculated the overpayment to Mr. Ross, and provided APFA with the "Overpayment Calculation" for Mr. Ross showing "Total overpayment – due to APFA" of $5436.47  APFA Appx. 545 (O'Neil Decl.) ¶ 7 and APFA Appx. 559 (Overpayment Calculation). The challenged representation was true, and believed to be true.  There was no fraud and no plausible claim of fraud.

### 3.  **Mr. Ross' Defamation Claim.**

With respect to Mr. Ross' defamation claim, we demonstrated that (a) the claim failed for want of evidence because Mr. Ross refused in his discovery responses to identify the alleged

defamatory statements, Doc. 235 at 48; and failed in any event because (b) the APFA "Hotline" alluded to by Mr. Ross in his deposition was not false and (c) Mr. Harris accurately reported the findings of CPA O'Neil regarding the overpayment to Mr. Ross.  Doc. 235 at ECF 48-50.

In response, Mr. Ross not only fails to address how his claim survives his refusal to even plead or identify the alleged defamatory statements in discovery (which is fatal to his claim), he compounds the error by largely failing to do so even in his brief.  See Doc. 246 at ECF 51-54 (providing only general characterizations of alleged statements).  The only statements he now specifically calls out as ostensibly defamatory are described as follows:

- "the defamatory statement Harris made was that Ross owed a debt to APFA of  $5,436.47 based on an overpayment made under the TA."  Doc. 246 at ECF 51; and

- "The statement that Ross owed the debt … is false and defamatory" Doc. 246 at ECF 52.

As we have demonstrated, however, it is undisputed that, prior to the Arbitration, Harris believed that Ross did owe a debt to APFA, based on the analysis of CPA Hal O'Neil.  *See* APFA Appx. 544-45 (O'Neil Decl.) ¶¶ 5-8; APFA Appx. 525-26 (Harris Decl.) ¶¶ 13-17.  And it is likewise undisputed that the Article VII Arbitrator held, in a binding determination, that Mr. Ross owed the same debt and had failed to repay it.  *See* APFA Appx. 239, 241.  Mr. Ross can neither show falsity nor meet the "actual malice" standard applicable here, *see Kirk v. Transp. Workers Union of Am., AFL-CIO*, 934 F. Supp. 775, 787 (S.D. Tex. 1995), and his claim fails as a matter of law.[10]

---

[10] Mr. Ross now also assails a Board of Directors resolution which "condemns the action Bob Ross took to defraud the members of APFA," on the ground that the Article VII Arbitrator did not find he had committed fraud. Doc. 246 at ECF 52.  But the Arbitrator did conclude that, through a range of financial transactions which personally benefited him, Mr. Ross "*intentionally and willfully* ignored the provisions of the APFA Policy Manual and thus, has violated and abused his fiduciary duty entrusted to him by the AFPA membership," and that he was required to repay APFA for

III.    **APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIDUCIARY DUTY COUNTERCLAIMS.**

We demonstrated in our opening memorandum, and further explained in opposition to Plaintiffs' motion for summary judgment, that APFA is entitled to summary judgment on its breach of fiduciary duty counterclaims brought under Section 501 of the LMRDA against both Mr. Ross and Mr. Vargas, based on the final and binding determinations of Arbitrator Armendariz and the application of 29 U.S.C. § 501.  *See* Doc. 235 at ECF 50-56; Doc. 243 at ECF 40-46.   These two filings address essentially all the points raised in Plaintiff's opposition, which we will therefore address only briefly here.

To summarize, the Article VII arbitrations (which Plaintiffs agreed to be bound by) conclusively determined that Plaintiffs spent and received funds for their personal benefit, in violation of the APFA Constitution and Policy Manual.  Plaintiffs' refusal to comply with the mandate to return their ill-gotten gains has necessitated the Counterclaims here. We emphasize that the Union here is *not* seeking to enforce the Arbitration Awards in and of themselves, but instead seeks to enforce the federal fiduciary duty. The Arbitrator has conclusively determined that the disputed expenses by and for Mr. Ross and Mr. Vargas were unauthorized under the Union Constitution and Policy Manual, and that determination is final and binding on the parties.  Based on that undisputed material fact, we respectfully submit that this Court should hold that Mr. Ross

---

many thousands of dollars wrongfully obtained.  APFA Appx. 240, 283.  Such conduct falls well within both the legal and common usage definitions of "defraud," even if the Arbitrator did not use that word.  *See United States v. Herron*, 825 F.2d 50, 54 (5th Cir. 1987) ("the term 'defraud' literally means 'wronging one in his property rights by dishonest methods or schemes'")( citation omitted); American Heritage Dictionary of the  English Language (3d ed. 1992) ("fraud" – A deception deliberately practiced in order to secure unfair … gain."; "defraud" -  "To take something by fraud; swindle.").

and Mr. Vargas violated their fiduciary duty under 29 U.S.C. § 501(a).  *See Adams-Lundy v. APFA*, 844 F.2d 245, 248-50 (5th Cir. 1988) (reversing dismissal of § 501 claim alleging that officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board").

With respect to Mr. Ross, the Arbitrator found he violated the Union's Constitution and Policy Manual by misappropriating tens of thousands of dollars in Union funds for his own personal benefit and in violation of the Union's written governing documents and procedures. This included, among other things, using Union funds to pay for his family vacation and other personal expenses, including travel, rental cars, meals, furniture, and other personal items, as well as the overpayment of his sick and vacation payout.  All of these expenses were directly contrary to the express provisions of the Constitution and Policy Manual, as found by the Arbitrator.    APFA Appx. 219-242; 282-84.

With regard to Mr. Vargas, the Arbitrator found that he violated the APFA Constitution and Policy Manual by, *inter alia*, regularly charging personal meals to the Union, while accepting fixed meal allowances, totaling more than $14,000.  APFA Appx. 504-506.

These expenditures constitute a breach of the federal fiduciary duty.  Officers violate their fiduciary duty if they spend or receive union funds not authorized under the union's constitution or other governing documents.  *Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 383 F.2d 735, 739 (5th Cir. 1967); *see also Ray v. Young*, 753 F.2d 386, 389 (5th Cir. 1985).

Plaintiffs launch an array of unfounded or misguided responses to this showing, none of which meet their burden to avoid summary judgment.

18

*First*, they contend repeatedly that all of their expenditures were properly authorized and approved.  *See* Doc. 246 at ECF 23-24.  Of course, the Article VII Arbitrator has made final and binding determinations to the contrary, which cannot now be challenged.  And, in any event, Plaintiffs offer no viable support for the claim.  The only support cited in their brief on this point does not even address this contention.[11]  Plaintiffs have not met their burden.  *See Clark v. Am.'s Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").

*Second*, they seek to impugn the Article VII proceedings or dispute that they may be the basis for a federal fiduciary duty claim as a matter of law.  Doc. 246 at ECF 24, 27-8.  As we have demonstrated in connection with Plaintiffs' LMRDA Title I challenges, the Article VII Arbitrations here met or exceeded the procedural and substantive standards for internal union discipline and can thus not be overturned judicially. They are final and binding on the parties.  *See* Doc. 235 at ECF 35-42.  And the binding determination that Plaintiffs spent and received funds without authorization, for their personal benefit and in contravention of the APFA Constitution and Policies, is an archetypical predicate for the Court to conclude, as a matter of law, that Plaintiffs breached their federal fiduciary duty.  *See, e.g.*, *Adams-Lundy v. APFA*, 844 F.2d 245, 248-50 (5th Cir. 1988) (reversing dismissal of § 501 claim); *Ray*, 753 F.2d at 392.

---

[11] In this section of their Opposition, when contending that they adhered to APFA procedures and had authorization, Plaintiffs cite to the APFA's Opposition to Mr. Ross's Motion to Dismiss APFA's Counterclaims (Doc. 119), and the APFA's Amended Answers in both *Ross* (Doc. 134) and *Vargas* (Doc. 108-1).  *See* Doc. 246 at ECF 24. None of these documents establishes the fact asserted by Plaintiffs.  And the blanket conclusory assertion by Mr. Vargas in his Declaration to this effect (Doc. 239-6 at ECF 28 (Vargas Decl.) ¶ 8 (Pls.' Appx. 289)), is not sufficient to create a genuine issue of material fact.  *See Fowler v. S. Bell Telephone & Telegraph Co.,* 343 F.2d 150, 154 (5th Cir. 1965) (sworn, conclusory statements that party acted within scope of employment did not support summary judgment where unsupported by specific facts).

*Third*, Plaintiffs contend that the Union's federal financial reports (on Form LM-2s), which were founded on audits conducted by CPA O'Neil, demonstrate that the APFA did not lose any money as a result of the spending which the Article VII Arbitrator had found to be improper.  Doc. 246 at ECF 29-31. We demonstrated the fallacy of this argument in our Opposition to Plaintiffs' Motion for Partial Summary Judgment, Doc. 243 at ECF 44-45.  Plaintiffs in this regard digress into a speculative effort to dispute Mr. O'Neil's analysis that Mr. Ross had been overpaid by approximately $5400 in connection with his Transition Agreement, Doc. 246 at ECF 30-31, but that argument does not go to the fiduciary duty counterclaim and in any event involves but a small fraction of the total amount determined by Arbitrator Armendariz (who had been provided the O'Neil Memorandum) to be owed by Mr. Ross.[12]

*Finally*, Plaintiffs contend, as they did in their own Motion for Summary Judgment  that the APFA "fail[ed] to prove the equitable doctrine of laches applies."  Doc. 246 at ECF 31-32.  As we have addressed more fully our Opposition, Doc. 243 at 45-46, Mr. Ross and Mr. Vargas – as counterclaim defendants on this claim -- have the burden to prove *their* affirmative defense of laches,  *City of El Paso, Tex. v. El Paso Ent., Inc*., 382 F. App'x 361, 366 (5th Cir. 2010), and they have failed to do so here.

---

[12] Nor does Plaintiffs' strained assault on Mr. O'Neil's Declaration raise a genuine issue of material fact with regard to what Mr. O'Neil determined.  As the undisputed record showed, Mr. O'Neil was tasked *both* with determining whether Mr. Ross had been paid the correct number of days of accrued sick and vacation pay *and* with whether he had been paid at the correct daily rate. He concluded that the correct number of days had been paid, but that the wrong daily rate had been used – which is why he prepared a Schedule of this "Overpayment Calculation" which reflected a "Total Overpayment – due to APFA." APFA Appx. 559; APFA Appx. 544-545, ¶¶ 5-7.

## **CONCLUSION**

For all the reasons set forth above, and in our opening Memorandum, Defendants respectfully urge the Court to enter summary judgment in their favor on all claims, including APFA's counterclaims against Plaintiffs.

Dated: June 7, 2024                                        Respectfully submitted,


                                                           */s/   James D. Sanford*
                                                           JAMES D. SANFORD
                                                           Tex. Bar No. 24051289
                                                           Gillespie Sanford LLP
                                                           4803 Gaston Ave.
                                                           Dallas, TX 75246
                                                           Tel.: (214) 800-5111; Fax.: (214) 838-0001
                                                           Email: jim@gillespiesanford.com

                                                           JEFFREY A. BARTOS (pro hac vice)
                                                           D.C. Bar No. 435832
                                                           Guerrieri, Bartos & Roma, PC
                                                           1900 M Street, N.W. Suite 700
                                                           Washington, DC 20036
                                                           Tel.: (202) 624-7400; Fax: (202) 624-7420
                                                           Email: jbartos@geclaw.com

                                                           *Counsel for the APFA Defendants*

                                                           CHARLETTE L. BRODERICK
                                                           (pro hac vice)
                                                           Tex. Bar No. 24133870
                                                           Association of Professional Flight
                                                           Attendants
                                                           1004 W. Euless Blvd.
                                                           Euless, TX 76040
                                                           Tel.: (682) 301-8454
                                                           Email: cbroderick@apfa.org

                                                           *Counsel for APFA*

## CERTIFICATE OF SERVICE

I certify that on June 7, 2024, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

KERRI PHILLIPS
K.D. Phillips Law Firm, PLLC
6010 W. Spring Creek Parkway
Plano, TX 75024
Phone: (972) 327-5800
Fax: (940) 400-0089
Email: kerri@KDphillipslaw.com
notice@KDphillipslaw.com

MICHAEL R RAKE
Michael R. Rake, Attorney at Law
PO Box 1556
Lake Dallas, TX 75065
Tel.: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com

*/s/ James D. Sanford*
JAMES D. SANFORD