**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | |
| **ROBERT "BOB" ROSS AND** | § | |
| **EUGENIO VARGAS** | § | **Civil Action No. 4:22-cv-343-Y** |
| | § | |
| **Plaintiffs/Counterclaim Defendants,** | § | **Consolidated with** |
| | § | **Civil Action No. 4:22-cv-430-Y** |
| **v.** | § | |
| | § | **Judge Terry R. Means** |
| **ASSOCIATION OF PROFESSIONAL FLIGHT** | § | |
| **ATTENDANTS,** *et al.*, | § | |
| | § | |
| **Defendants/Counterclaim Plaintiffs.** | | |

---

**REPLY TO RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# Table of Contents

I.   IMPROPER OR NON-SPECIFIC OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE:................ 1

II.   APFA'S COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DENIED AS IT
      LACKS SUBSTANTIVE EVIDENCE.................................................................................... 2

   A.   APFA's Evidence is Unreliable and Not Properly Maintained in the Regular Course of Business by
        Its Own Admission.......................................................................................................... 6

   B.   APFA Fails to Prove its Breach of Fiduciary Duty Claim................................................. 7

III.  SUMMARY JUDGMENT ON PLAINTIFFS' LMRDA CLAIMS ............................................. 12

   A.   Undisputed Facts Support Judgment for Plaintiffs on their LMRDA Claims...................... 12

   B.   Plaintiffs Could Not Present "Some Evidence" and Cross-Examine Witnesses.................. 13

   C.   Plaintiffs' Opposition to an AFA/APFA Merger is the "But-For" Cause For APFA's Discipline,
        Retaliation, and Pattern of Intimidation and Stifled Dissent of Union Members. ............... 14

   D.   The Undisputed Facts Support Plaintiffs' Claims for Damages. ...................................... 17

IV.   SUMMARY JUDGMENT ON THE BREACH OF THE ROSS TRANSTION AGREEMENT IS PROPER.
      .......................................................................................................................................... 21

   A.   APFA is Liable to Ross for Breach of Contract. ............................................................. 21

   B.   Non-Disclosure Provision is Enforceable as a Matter of Law. ........................................ 22

   C.   Attorney's Fees are valid under Texas Law.................................................................... 24

   D.   Defendants Counterclaim for Breach of Fiduciary Duty is Legal in Nature Should be Barred by the
        State Limitations Period.................................................................................................. 25

V.   CONCLUSION.................................................................................................................... 25

# Table of Authorities

*Anspach v. Tomkins Industries, Inc.,* 817 F. Supp. 1499 (D.Kan. 1993)……………………………….....20

*Baskin v. Hawley,* 807 F.2d 1120 (2nd Cir. 1986) …………………………………………………………..... 20

*Bise v. Int'l Brotherhood of Electrical Workers*, 618 F.2d 1299 (9th Cir. 1979) ……………………20

*Booker v. Real Homes, Inc.*, 103 S.W.3d 487 (Tex.App. — San Antonio 2003, pet. denied)……….. 21

*Breininger v. Sheet Metal Workers Int'l Assoc. Loc. Union No. 6,* 493 U.S. 67 (1989) …………………….4

*Cantrell v. Int'l Broth. Elec. Wkrs. Loc. 2021*, 32 F.3d 465 (10th Cir. 1994)…………………………………20

*Carr v. ALPA*, 866 F. 3d 597 (5th Cir. 2017)……………………………………………………………………23

*Daniels v. National Post Office Mail Handlers,* 454 F.Supp. 336 (E.D.Va.1978) ……………………………23

*Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993) …………………………………22

*Flaherty v. Warehousemen, Garage & Service Station Employees' Loc. Union No. 334,* 574 F.2d 484
(9th Cir.1978) ………………………………………………………………………………………………………………22

*Ford Motor Co. v. Huffman,* 345 U.S. 330 (1953) …………………………………………………………….23

*Forsyth v. Barr,* 19 F.3d 1527 (5th Cir.1994) …………………………………………………………………..2

*Guidry v. International Union of Operating Eng, Loc. 406, 882 F.2d 929 (5th Cir.1989)*…………… 20

*Guidry v. Intl. Union Of Operating Eng,* 907 F.2d 1491 (5th Cir. 1990) ………………………………..4, 20

*Hampton v. Int'l Longshoreman's Ass'n,* 2017 U.S. Dist. LEXIS 218154 (S.D. Tex. 2007)……….. 17

*IDA Eng'g, Inc. v. PBK Architects, Inc.*, No. 05-15-01418-CV (Tex. App. Oct 04, 2016)………………… 21

*In re Poly-Am., L.P.,* 262 S.W.3d 337 (Tex. 2008) ……………………………………………………….. 24

*International Brotherhood of Boilermakers, Iron Shipbuilders, etc. v. Braswell,* 388 F.2d 193
(5th Cir. 1968) …………………………………………………………………………………………………….. 20

*Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman,* 401
U.S. 233 (1971) …………………………………………………………………………………………………16, 17

*Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex. 1981) ……………………………………………………………. 24

*Kuebler v. Cleveland Lithographers & Photoengravers Union Loc. 24-P,* 473 F.2d 359 (6th Cir. 1973)… 16

*Local No. 1419, ILA, General Longshore Workers Union AFL-CIO v. Smith,* 301 F.2d 791
(5th Cir.1962) …………………………………………………………………………………………………….. 22

*Malacara v. Garber,* 353 F.3d 393 (5th Cir. 2003) …………………………………………………………..2

*Mallick v. Int'l Bhd of Electrical Workers, et al.,* 749 F.2d 771 (D.C.Cir.1984) …………………………23

*McGinnis v. Loc.Union No. 710, International Brotherhood of Teamsters,* 664 F.Supp.1212
(N.D.Ill. 1987) …………………………………………………………………………………………………….23

*Newell v. IBEW,* 789 F.2d 1186 (5th Cir. 1986) ……………………………………………………………… 24

*O'Neil v. ALPA,* 939 F. 2d 1199 (5th Cir. 1991) …………………………………………………………….. 24

Partners Lending Auto Grp. v. Leedom Fin. Serv., LLC, No. 10-20626 (5th Cir. Jul 07, 2011)…….. 24

*Pineda v. JTCH Apartments, L.L.C.,* 843 F.3d 1062 (5th Cir. 2016)…………………………………………20

*Rogers v. Wolfson,* 763 S.W.2d 922 (Tex. App. 1989), *writ denied* (June 7, 1989) …………………………24

*Soto Segarra v. Sea-Land Service, Inc.,* 581 F.2d 291 (1st Cir. 1978) ……………………………………20

*Steelworkers* v. *Enter. Wheel & Car Corp.,* 363 U. S. 593 (1960) ……………………………………5

United Ass'n of Journeymen v. Local 334, 452 U.S. 615 (1981) ………………………………………17

*United Paperworkers Int'l v. Misco,* 484 U.S. 29 (1987) …………………………………………………..5

*Willis v. Maverick,* 760 S.W.2d 642 (Tex.1988) ……………………………………………………………. 21

*Wooddell v. Int'l Bhd. of Elec. Workers,* 502 U.S. 93 (1991) ……………………………………………17

<u>Statutes</u>

28 U.S.C. § 1331……………………………………………………………………………………………………….6

29 U.S.C. § 411(a)(2) …………………………………………………………………………………………….. 23

29 U.S.C. § 411(a)(5) ....................................................................................15, 16, 17,18
29 U.S.C. § 185 ...............................................................................................13
29 U.S.C. § 431 ........................................................................................... 3, 11, 23
29 U.S.C. § 431(c) ...........................................................................................23
29 U.S.C. § 501 ........................................................................................... 3, 26

Federal and Local Rules

Fed. R. Civ. P. 56.............................................................................................1, 2
Fed. R. Civ. P. 56(c) .........................................................................................2
Fed. R. Civ. P. 56(c) (1) ....................................................................................1
Fed. R. Civ. P. 56(c)(1)(A) ................................................................................1
Fed. R. Civ. P. 8(c) ...........................................................................................22
Fed. R. Civ. P.166a(i) ........................................................................................1

L.R. 5.1(c) .......................................................................................................1, 6
L.R 7.1 .............................................................................................................1
L.R 7.2 .............................................................................................................1
L.R. 53.1.(c) ..................................................................................................... 1
L.R. 56.5..........................................................................................................1

Comes now, Plaintiffs, ROBERT (BOB) ROSS ("Ross") and EUGENIO VARGAS ("Vargas"), and file this, their Reply to Defendants' Response to Plaintiffs' Motion for a Partial Summary Judgment under Fed. R. Civ. P. 56 and 166a(i), (the "Reply") and in accordance with Local Rules 7.1, 7.2, 53.1(c), 56.5, respectfully shows the Court as follows:

## I.     IMPROPER OR NON-SPECIFIC OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE:

Defendants take issue with a variety of Plaintiffs' format, citations, and evidence submitted in support of its Motion for Summary Judgment. (Doc. 243, PAGEID 7651-7654). However, it is unclear whether Defendants assert these arguments to Plaintiffs' citations as a formal objection to Plaintiffs' summary judgment evidence based on a violation of the Fed. R. Civ. P. 56(c)(1)(A), or whether Defendants merely dispute the format of Plaintiffs pleadings as Defendants' objections are unclear.  Without specificity as to the exact nature of Defendants objections, Plaintiffs are ill-equipped to adequately address these arguments as Defendants do not properly list the occurrences violated in their pleading or properly entitle their responsive pleading in accordance with the requirements of the local rules. *See* N.D. Tex. Local Civ. R. 5.1(c).

Defendants argue that a failure to cite to the specific page within Affidavits within Plaintiffs' Appendix for each factual assertion is grounds to deny the motion.  (Doc. 243, PAGEID 7651-52).  In support thereof, Defendants cite to 56(c) as requiring such specific citations. (Doc. 243, PAGEID 7651-52). The Court should note, however this misrepresents the full language of Rule 56(c)(1), which states:

> (1)    Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A)    citing to particular parts of materials in the record, *including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials*; or
>     (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. (emphasis added) (Fed. R. Civ. P. 56(c) (1)).

Defendants' citation removes the language within the rule that proves Plaintiffs met this burden as the rule lists the type of evidence on record that may be cited to meet this standard.  (Doc. 243, PAGEID 7651-52). Defendants' interpretation of this rule is incorrect and potentially misleading. The rule does not require

citation to specific pages within an affidavit but to the material parts of the record that support the assertion. Defendants list several cases in support of this contention, none of which support a finding that Fed. R. Civ. P. 56 imposes a duty on a party to cite to the record with any more specificity than to the affidavit or declarations containing the information or statements in support of the facts.[1] Defendants list several facts for which they claim Plaintiffs failed to cite to the record in support—however, Plaintiffs repeated facts in their arguments that have been properly cited in the "Facts" section and properly cite to the record elsewhere. Rule 56 does not require a citation to the record for every sentence within a Motion, rather citations may be listed referencing several sentences or several paragraphs. (Fed. R. Civ. P. 56(c)).

Defendants claim there is no dispute over notice of the charges, whereas this is not the case. (Doc. 246, 7796; 239-2, PAGEID 6775-76; 247-12, PAGEID 8414-16). Defendants record fails to establish proper notice and Plaintiffs record establishes notice was improper. (Doc. 246, 7796; 239-2, PAGEID 6775-76; 247-12, PAGEID 8414-16).

## II.  APFA'S COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DENIED AS IT LACKS SUBSTANTIVE EVIDENCE.

Plaintiffs argued a lack of jurisdiction in their Response to Defendants Motion for Summary Judgment on its counterclaim for breach of fiduciary duty under 29 U.S.C. § 501. (Doc. 243, PAGEID 7762). Defendants continue to argue that APFA disciplined two former officers in compliance with the APFA Constitution and Policy. (Doc. 243, PAGEID 7679-85). The Plaintiffs, however, argue that they were union leaders from an opposing political faction from the current leadership. Citing "financial transparency" and LMRDA § 431, the current leadership disclosed Plaintiffs personal financial information to union members seeking to mar Plaintiffs' reputations and ultimately resulted in the union's wrongful discipline of both members. (Doc. 236-

---

[1] *Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994) ("The nonmovant must identify specific evidence in the record and articulate 'the precise manner in which' that evidence supports that party's claim.")  The Court should note that these cases referenced in support of this argument do NOT address issues regarding citation specificity to the evidence on record. The citations to case law relating to this argument are misleading.

2, PAGEID 6454-58; Doc. 239, PAGEID 6720- 6770). Defendants disclosed confidential information about Plaintiffs including Ross's resignation agreement, 401k contributions, bank account numbers, private flight schedules, personal debt obligations, social security numbers, and birth dates. (Doc. 236-2, PAGEID 6455-67; Doc. 239-9, PAGEID 7102; Doc. 239, PAGEID 6929; Doc. 239-1, PAGEID 6730-6770; Doc. 239-5, PAGEID 6930-6932).

Defendants claim that Melissa Chinery ("Chinery") is a "rank-and-file" member.  Chinery is married to AFA's General Counsel—Joe Burns—currently "on loan" representing APFA in negotiations of its Collective Bargaining Agreement with American Airlines, Inc. The abusive conduct at the center of Plaintiffs' complaint relies on the conduct of the union, not Chinery.  However, make no mistake—they are one in the same. APFA's lawyers—three of whom were listed in this lawsuit on behalf of the Defendants—advocate on her behalf.  APFA's EC members reviewed and voted Chinery's charges against Plaintiff were specific, valid and timely prior endorsing and paying for the Disciplinary hearing and endorsing the Disciplinary awards with Resolutions from the APFA Board of Directors. (Doc. 236-1, PAGEID 5952; 5956-6014; Doc. 236-2, PAGEID 6457; Doc. 236-3, PAGEID 6474; Doc. 247-3, PAGEID 7906-7936; Doc. 239-6, PAGEID 6964-70; Doc. 239-8, PAGEID 7064 – 74). APFA's lawyers—these lawyers are also the same three lawyers that represented Defendants in this lawsuit—advocate on her behalf.  This is a potential conflict of interest advocating on behalf of a member, which could potentially breach professional ethical standards. One advocates to the Arbitrator regarding charges filed against Chinery; one advocates that the previous legal advice is in error and the Ross TA should be disclosed, and one provides confidential debt information regarding owed by another "rank and file" member—a confidential matter as protected under federal debt collection laws. (Doc. 247-11, PAGEID 8355-8390; Doc. 247-11, PAGEID 8346-50; Doc. 247-11, PAGEID 8351-54; Doc. 247-3, PAGEID 7939-7953).[2]

---

[2] Note that the cease-and-desist letters were sent to APFA members after posting personal statements inquiring about whether Joe Burns was licensed to practice law.

The Court previously dismissed Plaintiffs claims based on an erroneous argument by Defendants that Chinery and Lee, as Rank-and-File members of APFA do not bind APFA for their conduct.  (Doc. 51; Doc. 74).  However, the Court found that the dismissal of Plaintiffs claims was made in error. (Doc. 74).  In support of this finding, Plaintiffs cited the definition of "Otherwise disciplined" which according to the U.S. Supreme Court ". . . refers to actions taken under color of the **union's** right to control the member's conduct in order to protect the interests of the **union** or its membership." (*Breininger v. Sheet Metal Workers Int'l Assoc. Loc. Union No. 6,* 493 U.S. 67, 91, 110 S.Ct. 424, 439, 107 L.2d 388 (1989); See also *Guidry v. Intl. Union Of Operating Eng*, 907 F.2d 1491, 1492-93 (5th Cir. 1990)

Additionally, Hedrick continues to endorse the need to send out these Hotlines to inform the membership as she states in her declaration that "APFA published two 'Hotlines' to APFA members advising them of the decisions and their significance. I firmly believed, and continue to believe, that it was our obligation as National Officers to provide this information to APFA members."  (Doc. 236-2, PAGEID 6455-6467; 6457-58).  Chinery runs a social media page with over 5,000 APFA members where she repeatedly posts and discusses financial misconduct of "select" Union Leaders. Despite Hedrick's assertions, she used the Presidential Hotlines as a political tool, rather than to ensure financial transparency, and Chinery merely the voice that spouts her political rhetoric. This was exemplified when she and APFA ignored Nena Martin's repeated requests for a hotline announcing the dismissal of the Chinery v. Martin Article VII charges to restore her wrongfully damaged reputation. (Doc. 239-5, PAGEID 6904-6909).

Labor organizations self-govern through a constitution and policy written and enforced under their own definition of democracy and under their own definition of discipline by their own membership.  LMRDA is the baseline from which unions then tailor their own democracy based on the membership's needs. APFA defined this in Article VII of its Constitution empowering its Board of Directors to designate an Article VII Arbitrator that must be an expert in labor law, who is experienced in adjudicating internal labor organization disputes and who has no involvement with this union.  (Doc. 236-1, PAGEID 5980).

APFA Const. Art. VII, Sec. 2 A. provides that "[a] charge may be filed by any member in good standing. . . . as to the alleged act(s) and/or the Article(s) of this Constitution allegedly violated which constitute the basis of the charge(s)." (Doc. 236-1, PAGEID 5977-78). APFA Const. Art. VII, Sec. 5 A provides that "[t]he Board of Directors shall appoint an arbitrator to resolve all charges filed under this Article VII. . . ." (Doc. 236-1, PAGEID 5980).  APFA Const. Art. VII, Sec. 6 A entitled Jurisdiction and Authority of the Article VII Arbitrator provides that "[t]he Article VII Arbitrator shall have power to resolve all charges referred to him/her during his/her tenure. . . ." (Doc. 236-1, PAGEID 5980).

Either way, Defendants breach of fiduciary duty claim relies on a union disciplinary award in which jurisdiction is restricted to only the APFA Constitution and Policy rather than federal law.  (Doc. 74).  This Court previously held that these hearings were disciplinary hearings, rather than a final and binding mandatory arbitration. (Doc. 74).

Defendants ignore the obvious problem in pursuit of a breach of fiduciary duty claim under federal law founded on a union disciplinary award—a resounding lack of jurisdiction, due process, and authority. Defendants file a claim under federal law and argue for this court to render a final determination on the merits of this claim based on APFA's disciplinary hearing, evidence, and award.  However, the Article VII Arbitrator is not a licensed attorney, APFA's admits to withholding documents and enforcing its own form of due process:

> ". . . [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (*Steelworkers* v. *Enter. Wheel & Car Corp.,* 363 U. S. 593, 596-597, 59ii9 (1960); see also, *United Paperworkers Int'l v. Misco,* 484 U.S. 29, 36 108 S.Ct. 364, 370, 98 L.Ed.2d 286] (1987)).

The law is clear—it is a grant of *congressional* authority and jurisdiction which empowers this Court to interpret and administer claims under federal law—and that jurisdiction is exclusive to the federal courts— not a labor union, and certainly not APFA. (28 U.S.C. § 1331).

A. **APFA's Evidence is Unreliable and Not Properly Maintained in the Regular Course of Business by Its Own Admission.**

Defendants object to Plaintiffs testimony of conversations with Janna Sandie, an investigator with the U.S. Department of Labor as hearsay. (Doc. 243, 7679-83). However, Plaintiffs hereby object as Defendants failure to properly entitle and lay out their objections in their pleading in compliance with this Court's Local Rule 5.1(c). Secondly, Plaintiffs' testimony is corroborated with the admissible evidence on record wherein APFA's former attorney, William Osborne ("Osborne") sends the Transition Agreement to the Department of Labor, (Doc. 247-12, PAGEID 8379; Doc. 247-12, PAGEID 8381). Osborne included an email confirming his conversation with Janna Sandie regarding the investigation about the Ross Transition Agreement.  (Doc. 247-12, PAGEID 8379; Doc. 247-11, PAGEID 8355-8390).  In this Amicus Brief, Osborne also includes a letter sent to the Arbitrator on the Moyer v. 2018 APFA BOD case stating that Department of Labor advised APFA that their investigation on the Ross Administration was closed. (Doc. 247-12, PAGEID 8381; Doc. 247-11, PAGEID 8355-8390). The U.S. Department of Labor does not to issue a public report as is customary practice when the Department of Labor finds no wrongdoing. (Doc. 247-12, PAGEID 8381). If wrongdoing was found, the U.S. Department of Labor pursues criminal charges, however Plaintiffs have never been charged with any crime. (Doc. 239-6, PAGEID 6965; Doc, 239-8, PAGEID 7065).

Furthermore, Plaintiffs proved Defendants documents are unreliable. (Doc. 238, PAGEID 6639). Plaintiffs made this clear when stating the facts, repeating the facts, and citing to the record several times. (Doc. 238, PAGEID 6639-40; Doc. 239-6, PAGEID 6948; 239-8, PAGEID 7063; DOC. 238, PAGEID 6662; Doc. 246, PAGEID App. pp. 156-197).Doc. 247-4, PAGEID 7970-8011).

Even a quick review of the Cornwell Jackson "Accounting Reviews" illustrates the evidentiary problems Defendants face as the documents listed numerous assumptions, a substantial number of charges lacked valid evidence, and this bar was low Cornwell Jackson relied on APFA's own accounting ledgers rather than receipts to assess the purpose of charges.  Additionally, an Accounting Review, as opposed to

an Audit, *is not a formal opinion based on accurate and reliable information*, therefore indicates the Auditor's unwillingness to endorse the opinion it espouses therein, as detailed in the Confidential Memo and in the Cornwell Jackson Accounting Reviews. (Doc. 236-1, PAGEID 6196; Doc. 236-1, PAGEID 6199-6200; Doc. 236-1, PAGEID 6435-6437; Doc. 236-1, PAGEID 6197).

### B. APFA Fails to Prove its Breach of Fiduciary Duty Claim.

**Duty**: Plaintiffs established that Ross did not owe a fiduciary duty to the union at the time he received payments under the Ross TA; he resigned from office as of March 2, 2018, prior to receiving payment. Thereafter, Ross no longer held a fiduciary duty to the union. (Doc. 238, PAGEID 6643; Doc. 239-6, PAGEID 6966; Doc. 239-8, PAGEID 7066; Doc. 239-10, PAGEID 7119). As for any other misconduct alleged, Plaintiffs cannot assert a defense for misconduct for which it has yet to produce even a single receipt, withdrawal slip, check, or some form of documentation that demonstrates Ross took action.

**Breach**: Plaintiffs also established that Vargas did not breach his duty because he acted in good faith and exercised reasonable care in his actions. Vargas was advised by APFA Accountants and only viewed a portion of the Ross TA prior to calculating payments. (Doc. 238, PAGEID 6643-44; Doc. 239-6, PAGEID 6964-6970; Doc. 239-4, PAGEID 6892-6894). Furthermore, the U.S. Department of Labor investigated the Ross Administrations' overpayments and allegations of misappropriation and embezzlement from Chinery's incessant complaints, and neither Plaintiffs were ever charged with any crimes. (Doc. 238, PAGEID 6644; Doc. 239-6, PAGEID 6965; Doc, 239-8, PAGEID 7065; Doc. 247-12, PAGEID 8381). The affidavits provided by Ross and Vargas show the undisputed fact of their adherence to the established financial protocols of APFA, demonstrating a meticulous approach to financial management and compliance with internal procedures. Plaintiffs also argued and cited to the record that "Vargas always complied with APFA procedures. (App., pp. 139-141; 286-92)" and that " Ross's union credit card charges, expenses and receipts that [Vargas] reviewed and approved were in compliance with APFA policy at the time of approval." (Doc. 238, PAGEID 6644; Doc. 239-3, PAGEID 6818).

Defendants do not dispute that Plaintiffs followed procedures. (Doc. 238, PAGEID 6644; Doc. 239-3, 6818; Doc. 239-6, PAGEID 6966-6967). Vargas consulted with APFA's accounting department prior to the execution of any financial transactions related to Ross's Transition Agreement, ensuring that all payments were accurately calculated and duly authorized. This careful and consultative approach negates any assertion of breach of fiduciary duty, as it is evident that both Ross and Vargas acted in good faith, within the scope of their authority, and in accordance with the advice and guidance provided by the union's finance professionals. Consequently, the allegations of misappropriation and embezzlement levied against Ross and Vargas are unfounded, as substantiated by the comprehensive investigation conducted by the U.S. Department of Labor, which resulted in no criminal charges being filed. (Doc. 238, PAGEID 6644; Doc. 239-6, PAGEID 6965; Doc, 239-8, PAGEID 7065; Doc. 247-12, PAGEID 8381).

**Damages**: Plaintiff clearly and unequivocally referenced the record and the publicly filed documents with the U.S. Department of Labor demonstrating that Defendants testified under oath before the United States Government that APFA suffered no losses since 2018.  (Doc. 238, PAGEID 6645; Doc. 247, PAGEID 8012-8320). Plaintiffs argue in their Motion that the audits are conducted annually, submitted to the National Officers and the Board of Directors, and subsequently used to formulate the LM-2 filings—all of which is cited properly to the evidence on record. (*See* Doc. 238, PAGEID 6645).  Clear citations are made to the Plaintiffs affidavits wherein testimony is laid out regarding the procedures and practices for the union, and that these procedures were followed for both Ross and Vargas.  (Doc. 238, PAGEID 6645). These facts are undisputed.

 Ross did not owe a duty to the union after March 2, 2016. (Doc. 238, PAGEID 6643; Doc. 239-6, PAGEID 6966; Doc. 239-8, PAGEID 7066; Doc. 239-10, PAGEID 7119).  Vargas repaid the amount of his miscalculated overpayment—this fact is uncontested.  (Doc. 239-4, PAGEID 6892-6894; Doc. 239-6, PAGEID 6967).  Ross was not overpaid under his Transition Agreement.  (Doc. 238, PAGEID 6645; Doc. 247, PAGEID 8012-8320; Doc. 239-4, PAGEID 6892-6894; Doc. 239-6, PAGEID 6964-6970; Doc. 238, PAGEID 6645; Doc. 247, PAGEID 8012-8320). The LM-2's demonstrate that the union has reported no

losses within the last 6 years of LM-2 filings. (Doc. 239-6, PAGEID 6966-6967).  Plaintiffs' factual assertions are laid out at the opening with citations to the record.  Plaintiff also reasserted these citations within the arguments section throughout the pleading. Defendants' arguments regarding Plaintiffs' citations to the record are frivolous.

The Court should also note that communications with the Arbitrator were submitted to the APFA's National Secretary, Josh Black, who then submitted them to the Arbitrator. (Doc. 236-1, PAGEID 6013). All discovery documents—which are all retained and maintained by only APFA—were retrieved and delivered by either APFA's National Secretary, Josh Black or APFA National Treasurer, Erik Harris.  (Doc. 236-1, PAGEID 6011).  Delivery of notice of the charges, notice to the Board of Directors, notice to the Executive Committee, votes on the Executive Committee, scheduling of the location, time, place, and hotel for the Disciplinary Arbitration is also conducted by APFA's National Secretary, Josh Black and APFA National Treasurer, Erik Harris (Doc. 236-1, PAGEID 5956-6014). They vote on the APFA EC for validity, specificity and timeliness of charges.  Delivery of discovery and notices are also conducted by APFA's National Secretary, Josh Black and APFA National Treasurer, Erik Harris. (Doc. 236-1, PAGEID 5956-6014).  Note: APFA's National Secretary, Josh Black and APFA National Treasurer, Erik Harris received a copy of the Confidential Memo on October 22, 2020--both concealed it—then voted in favor of the charges against Plaintiffs on the Executive Committee.  (Doc. 236-1, PAGEID 5956-6014).  Both reviewed and approved the hotlines announcing Plaintiffs Disciplinary Awards for the first time in APFA history. (Doc. 236-1, PAGEID 5956-6014; Doc. 236-2, PAGEID Doc. 239-6, PAGEID 6964-70; Doc. 239-8, PAGEID 7064 – 74). These facts are all uncontested.

Any argument that Defendants were merely following the advice of legal counsel in these actions against Plaintiffs is misconstrued. In a Presidential Hotline Announcement sent to every APFA union member, attached as Exhibit A to her Declaration, Hedrick admits that they were advised by prior legal counsel, Mark Richards, against exposing Plaintiffs confidential financial information, Confidential Memorandum, and other

financial information. (Doc. 236-2, PAGEID 6460). Contained therein, the Hedrick Administration stated that these announcements were reviewed and that she verifies the factual statements contained therein as true which state:

> "Previously, this union has prevented members from reviewing all financial documents. Following prior legal advice, members were only allowed to view monthly financial reports and the LM-2 reports (our annual Department of Labor filing). **We believe our past outside attorneys and advisors guided us improperly.**" (Emphasis added). (Doc. 236-2, PAGEID 6460).

Hedrick was advised regarding the risks of exposure and admits that such exposure of a member's individual pay stubs, bank accounts, routing numbers, credit card receipts, et cetera, was an overly broad interpretation of a member's rights to view and inspect documents under LMRDA § 431. (Doc. 236-2, PAGEID 6460). Hedrick, Harris, and the Union's attempts to blame Mark Richards' for bad legal advice is improper, he clearly represented and advised APFA since 2008. (Doc. 235, PAGEID 5900; Doc. 239-1, PAGEID 6730-6770). Defendants were advised of the correct way to conduct the union's disclosure of private information, including Ross's Confidential TA, however this did not accommodate their political motives.  (Doc. 235, PAGEID 5900).  Defendants chose to expose the union and the information relating to Plaintiffs financial affairs and Confidential Resignation Agreement against the advice of legal counsel regarding this conduct. (Doc. 235, PAGEID 5900).

Defendants assert that the Article VII Arbitrator—a non-lawyer—concluded that Ross and Vargas committed egregious breaches of their fiduciary duty.  (Doc. 243, PAGEID 7650).  Whereas the Court's record reflects these facts were contested throughout this case.  (Doc. 238, PAGEID 6644; Doc. 239-3, 6818; Doc. 239-6, PAGEID 6966-6967; Doc. 247-11, PAGEID 8343-45; Doc. 239-6, PAGEID 6964-70; Doc. 239-8, PAGEID 7064 – 74).

The Ross Transcripts show Ross was only permitted to admit only one document into the record and was denied all other documents submitted.  (Doc. 236-1, PAGEID 6048; Doc. 236-1, PAGEID 6057 or Doc. 239-2, PAGEID 6783; Doc. 236-1, PAGEID 6091 or Doc. 239-2, PAGEID 6790).  Vargas was allowed to admit nineteen documents into evidence, and was denied fifteen from the record, however this does not

include several credit card and expense receipts for other administrations for which the Arbitrator interrupted their presentation and struck the argument altogether. (Doc. 236-1, PAGEID 6235; Doc. 236-1, PAGEID 6903, Doc. 236-1, PAGEID 6385; Doc. 247-11, PAGEID 8343-45). This count also excludes the Affidavit of Ladonna Casey who would testify on important matters relating to Vargas's charges and retaliatory conduct she'd suffered by the union for supporting the Ross Administration. (Doc. 239-6, PAGEID 6972-6973).  Most importantly, evidence from social media posts was stricken which substantially hampered Plaintiffs ability to present their case, since establishing Chinery's notice, motives, and knowledge base lied in her social media posts.  (Doc. 239-6, PAGEID 6964-70; Doc. 239-8, PAGEID 7064 – 74; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16).

The Union's Arbitrator ordered an Audit to be conducted for credit card expenses against both Plaintiffs. (Doc. 239-1, PAGEID 6793-6816; Doc. 239-7, PAGEID 6987-7025).  However, the union did not comply, rather Cornwell Jackson conducted another "Accounting Review." This review lists charges for receipts, however none were filed and attached to Defendants' Motion for Summary Judgment.  Additionally, the Accounting Reviews state that these terms were "agreed upon." (Doc. 236-1, PAGEID 6190 – 6228; Doc. 236-1, PAGEID 6430-6435). This is untrue, and Defendants do not contest these facts. This "accounting review" displays a number of reasons this court should not consider this evidence as credible.  Charges were "presumed personal" if the accountants were unable to verify the facts surrounding the charge in questions. (Doc. 236-1, PAGEID 6195). Ross was charged $6,129.93 in unverifiable union-related costs (Doc. 236-1, PAGEID 6196); $6,454.38 in undeterminable and presumed personal business expenses or rental car charges (Doc. 236-1, PAGEID 6199); and $233.11 in presumed personal relocation costs (Doc. 236-1, PAGEID 6197). (Doc. 236-1, PAGEID 6190 – 6228).

The Vargas Accounting Review does not contain a list of the charges "presumed personal."   (Doc. 236-1, PAGEID 6430-6435). However, Cornwell Jackson only had twenty-five receipts to rely on for the Vargas Accounting Review and the remaining a hundred and thirty-nine charges were without sufficient

documentation.  (Doc. 236-1, PAGEID 6435).

The evidence is unreliable and does not substantiate those factual assertions made in Article VII Arbitration Decisions.  The Arbitrator did not have authority to decide matters relating to Plaintiffs' ". . . failed and abused [their] Fiduciary Duty." (Doc. 236-1, PAGEID 6167; Doc 239-3; PAGEID 6813). The evidence shows Ross paid his furniture, and yet the Arbitrator found him guilty of wrongfully taking the furniture from APFA.  (Doc. 239-2, PAGEID 6806; Doc. 238, PAGEID 6645; Doc. 247, PAGEID 8012-8320). The evidence also shows that the Arbitrator found that Vargas showed the evidence to account for all of the furniture APFA purchased and maintained from Ashley's furniture which is diametrically opposed to the finding in Ross to the contrary.  (Doc. 239-7, PAGEID 7021).  The evidence is unreliable and uncredible.

## III.   SUMMARY JUDGMENT ON PLAINTIFFS' LMRDA CLAIMS

### A.  Undisputed Facts Support Judgment for Plaintiffs on their LMRDA Claims.

Plaintiff's clearly contest that their hearing was full and fair on the basis that the Executive Committee was not neutral, documents and evidence were withheld, they could not adequately call witnesses, present evidence, admit documents on record, testify on matters Plaintiffs, wished to  testify on, inadequate notice of charges, inability to attend the Executive Committee meeting, and failure to have a neutral decision-maker administer and decide if the charges were timely, valid and specific.  (Doc. 238, PAGEID 6655-6665; Doc. 239-2, PAGEID 6779-97).   Ross received only two hours and fifty-one minutes to present his case, while Chinery received nine hours and twenty-three minutes. (Doc. 239-2, PAGEID 6779-97). Ross was only allowed to admit one document into the record; Chinery admitted forty-eight documents into record. (Doc. 239-2, PAGEID 6779-97). Mr. Ross called three witnesses; Chinery called five witnesses to testify. (Doc. 239-2, PAGEID 6779-97).  Ross was not given an adequate opportunity to present evidence or properly cross-examine witnesses. (Doc. 239-2, PAGEID 6779-97). Defendants claim that Plaintiffs do not contest that they were afforded a "full and fair" hearing without any citation, however, Plaintiffs have consistently argued this matter time and again on record. (Doc. 238, PAGEID 6656-6663).

**B.   Plaintiffs Could Not Present "Some Evidence" and Cross-Examine Witnesses.**

Other than shared exhibits, Ross was only able to admit one exhibit into evidence during his Arbitration, whereas Chinery-Burns admitted forty-six exhibits into record, all over Ross's objection to hearsay. (Doc. 239-2, PAGEID 6783, 6790). Vargas was unable to present evidence from witnesses that were intimidated and harassed by the union. (Doc. 239-6, PAGEID 6972-6as 973). Both Plaintiffs were denied the opportunity to properly present evidence to a neutral decisionmaker as the APFA EC included the four national officers who concealed evidence. (Doc. 236-1, PAGEID 5967). The Arbitrator rushed both Ross and Vargas through the presentation of their evidence, examination of their witness, to a conclusion so he could make a flight he had scheduled. (Doc. 239-8, PAGEID 7064 – 74; Doc. 239-6, PAGEID 6964-70). Additionally, since relevant documents were withheld, Plaintiffs were not able to properly cross-examine their witnesses, they were interrupted and halted from lines of questioning they or their representatives pursed. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 239-8, PAGEID 7064 – 74; Doc. 239-6, PAGEID 6964-70). Harris testified that Ross owed the overpayment under the TA without disclosing anything about the Confidential Memo from the O'Neil accounting firm he and the National Officers received over a year before testifying in both Vargas's and Ross's hearings.  (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 239-8, PAGEID 7064-74; Doc. 239-6, PAGEID 6964-70; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16)

Plaintiffs reassert that neither Mr. Ross nor Mr. Vargas were allowed to introduce documentary evidence related to Mr. Ross's TA in their disciplinary hearings. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 239-8, PAGEID 7064 – 74; Doc. 239-6, PAGEID 6964-70; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16). No social media posts were allowed in—which contained vital evidence considering Chinery maintains a social media group dedicated to taking down the Ross Administration of over 5,000 union members. (Doc. 239-8, PAGEID 7064 – 74; Doc. 239-6, PAGEID 6964-70; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16). Ross's was denied the right to submit evidence of his sick and vacation days and payment for furniture.  (Doc. 239-8, PAGEID 7064 – 74).

Finally, Mr. Ross was found guilty regarding the overpayment of these wages, and his refusal to pay it was indicated in the Arbitration Award. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16). Vargas was found guilty of paying Ross under his TA. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16)). Whereas a Confidential Memo from the APFA accounting firm was concealed, which absolved Ross and Vargas of making overpayments under the Ross TA. The Confidential Memo was intended for APFA BOD and EC to review. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16). The EC voted and determined if Plaintiffs charges met the LMRDA and Constitutional standards for specificity, validity, and timeliness—however this decision-making not being properly advised and/or containing four members that actively withheld the Confidential Memo indicates Plaintiffs did not receive a full and fair hearing by a neutral decisionmaker.  Additionally, Ross was not provided any opportunity to introduce or discuss his TA at his Arbitration hearing whatsoever, and yet the Arbitration Award rendered him guilty on those issues related to the Ross TA. (Doc. 239, PAGEID 6933-6970; 7064-7074; Doc. 247-11, PAGEID 8343-45; Doc. 247-12, PAGEID 8414-16).

### C. Plaintiffs' Opposition to an AFA/APFA Merger is the "But-For" Cause For APFA's Discipline, Retaliation, and Pattern of Intimidation and Stifled Dissent of Union Members.

29 U.S.C. § 411(a)(2) protects a union member's right to free speech and association.  Defendant, APFA, violated LMRDA § 411(a)(2) by seeking disciplinary charges, achieving an award that sought his removal from the APFA BOD, ban him for life from holding union office, and levying fines. There is a pattern of intimidation and stifled dissent within the union—and the list of facts are not contested by Defendants. (Doc. 238, PAGEID 6665-66).

Defendants argue that Plaintiffs fail to establish the "but-for" cause of Defendants' retaliation was Plaintiffs' protected free speech.  In support, Defendants testify themselves that they have not made moves toward a merge with AFA—however Defendants fail to state that certification as the collective bargaining

representatives requires approval by the National Mediation Board who investigate to determine whether fraud or abuse have occurred.[3] Defendants must receive 51% of APFA's membership to approve a merger.[4] APFA has been in negotiations with AA for a new Collective Bargaining Agreement since before the Hedrick Administration took office. Conducting a merger vote during contract negotiations, and possibly changing the Collective Bargaining Agent is not likely. The membership seeks to strike, exhausted by work conditions under a stale contract. [5] AFA pursued and failed to achieve support for a card campaign to decertify APFA while Ross was in office. (Doc. 239-9, PAGEID 7101). Now APFA must pursue the only other avenue—a vote of approval by a majority of its membership, and 2/3 of its leadership.[6] This cannot happen if vocal opposers—like the Ross Administration—continue to exercise free speech. Therefore, Defendants discredit their opponents.

This test should not apply to the application of LMRDA §411(a)(2). The union also fails to contest any of the facts relating to Ross's anti-leadership/anti-merger positions or statements. (Doc. 238, PAGEID 6632-6633). Chinery is married to the General Counsel of the competing union seeking a merger. (Doc. 56-1, PAGEID 1512-1516). She filed charges and sought a remedy from the Arbitrator to remove Ross from office and ban him from holding union positions for life, a move never done in APFA's history. (Doc. 56-1, PAGEID 1512-1516). The photos of Chinery's wedding Josh Black and Erik Harris, two declarants who testify on behalf of APFA in Defendants' Motion for Summary Judgment. (Doc. 236-1; Doc. 236-3). Additionally in attendance at this wedding, is the International President of AFA—Sara Nelson and other AFA and APFA leadership. (Doc. 236-1; Doc. 236-3). Black and Harris are responsible for administering the Article VII process to ensure Plaintiffs receive due process, and both are seen in these photographs attending Chinery's wedding to Burns in Hawaii days after Vargas' Arbitration Decision is rendered. (Doc. 56-1, PAGEID 1512-

---

[3] Procedures for transferring union certification: https://nmb.gov/NMB_Application/index.php/overview-faq/ and https://nmb.gov/NMB_Application/wp-content/uploads/2022/01/Rep-Manual-2022-1.pdf
[4] Art. XII, Sec. 1.
[5] Union rejects American Airlines' latest proposal offering 17% wage hikes
[6]  Art. XII, Sec. 1.

1516; Doc. 239-7, PAGEID 7025; Doc. 239-5, PAGEID 6910- 6914; Doc. 239-5, PAGEID 6930-6932; Doc. 247-3, PAGEID 7939-7953; 247-11, PAGEID 8336-8342; Doc. 122, PAGEID 2475-2480). These photos were taken during the same week that Ross's representatives emailed Josh Black requesting that he seek re-opening the hearing to consider newly discovered evidence—the Confidential Memo. (Doc. 56-1, PAGEID 1512-1516). After several days, Black sent word that the request to reopen the hearing was denied.

The But-For rule is not controlling in the 5th Circuit, however Plaintiffs could substantiate a "but-for" cause between public statements against AFA (Doc. 239, PAGEID 6679 – 7101; Doc. 239-6, PAGEID 6964-7063; Doc. 56-1, PAGEID 1512-1516) and the retaliatory ban against holding union office for life from disciplinary charges brought by the wife of the General Counsel for AFA. (Doc. 56-1, PAGEID 1512-1516).

Furthermore, there is standing case law that supports an interpretation and application of the "some evidence" test as withholding evidence from the charged and disciplined union member.  The 6th Circuit Court held that in instances where evidence is withheld from the disciplinary proceeding,

> [t]he refusal of the local and international councils of the union to supply Appellant with the requested documents and information denied him a full and fair hearing on appeal. He simply had no real opportunity to present his case to a reviewing body. In effect his trial before a Board whose membership was never divulged to him, but which is conceded in brief to have been made up of the same parties who investigated the charges against him, was his only hearing. Because of the refusal of the union authorities to supply him with information in their sole possession, Appellant's right of appeal within the union structure was illusory. Thus Appellant's only hearing was before a tribunal which lacked the impartiality of a court and he was denied the opportunity for an effective appeal. He was not afforded a full and fair hearing, and the proceedings against him were void. (*Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P,* 473 F.2d 359, 364 (6th Cir. 1973)).

In essence, there are several Courts that have determined that a union withholding evidence during disciplinary proceeding against one of its members violates the member's right to due process under the LMRDA § 101(a)(5). *See Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman,* 401 U.S. 233, 246 (1971) (citations omitted) (explaining that "conviction on charges unsupported by any evidence is a denial of due process" under the LMRDA (citations omitted)).

These decisions stem from the U.S. Supreme Court's holding in the *Hardeman* case, however Plaintiffs are unable to find a similar holding in the 5th Circuit Court.  Plaintiffs previously cited the *Hardeman*

case to establish those due process rights guaranteed under the LMRDA.  (Doc 238; PAGEID 6658-59). *Hardeman* defines LMRDA due process rights to include "(1) the existence of "some evidence" to support the charges made, (2) an impartial tribunal, (3) an opportunity to confront pertinent witnesses, and (4) an opportunity to present evidence. . . ." (*Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.E d.2d 10 (1971).  Plaintiffs argued that "some evidence" did not support the charges.  (Doc 238; PAGEID 6658-59). Plaintiffs also argue that they were denied an opportunity to confront pertinent witnesses, (Doc. 238, PAGEID 6640; 6660-6661) and unable to present evidence as well. (Doc. 238, PAGEID 6640; 6660-6663; Doc. 239-6, PAGEID 6972-6973; Doc. 236-1, PAGEID 6048; Doc. 236-1, PAGEID 6057 or Doc. 239-2, PAGEID 6783; Doc. 236-1, PAGEID 6091; Doc. 239-2, PAGEID 6790; Doc. 236-3, PAGEID 6471). Plaintiffs are entitled to injunctive relief and damages as a result of the union's violation of these member's individual due process rights guaranteed under the LMRDA § 101(a)(5).

### D.   The Undisputed Facts Support Plaintiffs' Claims for Damages.

The Hotlines Hedrick and her officers approved state that "***APFA is an independent union and does not have a parent body to scrutinize the actions of the National Officers.*** Therefore, changes to the Policy Manual are necessary to ensure financial transparency and integrity." (Doc. 236-2, PAGEID 6467). The Court will note that APFA states it is an "independent union." (Doc. 236-2, PAGEID 6467). This is diametrically opposed to APFA's previously asserted legal position before this Court that it maintained a dual union structure and its Constitution is a contract between two labor organizations governed by 301a of the LMRA, and its officers exempt from liability under § 185 of the Labor Manage Relations Act.  Defendants argued that:

> "***The Constitution of the APFA is a 'contract … between labor organizations' enforceable under Section 301(a) of the LMRA***. United Ass'n of Journeymen v. Local 334, 452 U.S. 615, 622 (1981); Wooddell v. Int'l Bhd. of Elec. Workers, 502 U.S. 93, 99, 101 (1991); Hampton v. Int'l Longshoreman's Ass'n, 2017 U.S. Dist. LEXIS 218154 at *5-6 (S.D. Tex. 2007)." (Doc. 43, PAGEID 1088; 1087-90).

Defendants clear this misrepresentation on record in their Motion for Summary Judgment that APFA

is an independent union—and similar to all other labor unions functioning in the Airline Industry—APFA is governed under the Railway Labor Act. (Doc. 235, PAGEID 5926). Therefore, the union officers are *not* exempt from personal liability under § 185 of the Labor Management Relations Act. (Doc. 235, PAGEID 5926; Doc. 8, PAGEID 105, 106, 109; Doc. 27, PAGEID 198; Doc. 43, PAGEID 1084, 1086, 1088; Doc. 47, PAGEID 1192, Doc. 75, PAGEID 30, 31, 33; Doc. 134, PAGEID 2667; Doc. 168, Doc 169; Doc. 163-1, PAGEID 3234-3252; 3262-3273). The result of these misrepresentations regarding the law and the facts by Defendants led to erroneous rulings issued by this Court in Doc. No. 51, 74).

This conduct led to this Court dismissing Plaintiffs claims and entering erroneous orders forcing Plaintiffs to file additional pleadings, forcing this Court to review additional material, and consider additional laws and arguments—wasting both Plaintiffs, their counsel, and this Court's precious time and resources. Only after two years from asserting the original misrepresentations on record, do Defendants clear the record in a footnote in their motion. Defendants asserted claims, facts, and cited case law knowing it was legally erroneous. Plaintiffs—and this Court—have been forced to litigate this case for two years longer than necessary. (Doc. 235, PAGEID 5926; Doc. 8, PAGEID 105, 106, 109; Doc. 27, PAGEID 198; Doc. 43, PAGEID 1084, 1086, 1088; Doc. 47, PAGEID 1192, Doc. 75, PAGEID 30, 31, 33; Doc. 134, PAGEID 2667; Doc. 168, Doc 169).

Defendants conduct on record and throughout this case substantiates a finding for legal fees and punitive damages under the LMRDA for Plaintiffs. (Doc. 235, PAGEID 5926; Doc. 8, PAGEID 105, 106, 109; Doc. 27, PAGEID 198; Doc. 43, PAGEID 1084, 1086, 1088; Doc. 47, PAGEID 1192, Doc. 75, PAGEID 30, 31, 33; Doc. 134, PAGEID 2667; Doc. 168, Doc 169).

Hedrick testifies in her declaration to a second misrepresentation similar to those previously noted on record. Hedrick's Declaration testifies that,

> ". . . it was our obligation as National Officers to provide this information to APFA members. Copies of the Hotlines we authorized regarding the Ross and Vargas arbitration awards are attached hereto as Exhibits A (3/24/22 Email 'APFA Receives Article VII Arbitration Awards') and B (8/27/22 Email, 'Supplemental Arbitrator Decisions for Article VII Charges Received'. ***I believed at the time of publication of both Hotlines, and***

*believe today, that all of the factual statements therein are true.*" (emphasis added) (Doc. 236-2, PAGEID 6457-58).

This same misrepresentation is reflected in Exhibit B attached to the Hedrick Declaration. (Doc. 236-2, PAGEID 6462-6467). The Hotline states that "[t]he **audits** are now complete. As a result of the **auditor's** findings, on August 24, 2022, Arbitrator Armendariz issued a Supplemental Decision and Remedy Modification in each case, which modified the remedies in both of the original decisions to reflect the Independent Forensic Auditor's identified items." (Doc. 236-2, PAGEID 6463). The Hotline references the Cornwell Jackson reviews that updated Arbitrator's Supplemental Award which are "accounting reviews"— not an "*audit*." (Doc.236-1, PAGEID 6200; Doc. 236-1, PAGEID 6437). Furthermore, the Cornwell Jackson documents state that the terms were "agreed upon" and yet neither Plaintiffs were ever consulted or agreed to any terms. (Doc.236-1, PAGEID 6192; Doc. 236-1, PAGEID 6431; Doc. 239-6, PAGEID 6964-6970; 239-9, PAGEID 6964-6970; Doc. 247-12, PAGEID 8414-16; Doc. 247-11, PAGEID 8343-45).

Defendants again, portray a second "accounting review" as an "audit," this time APFA's National President testifies under oath that all of the National Officers approved these hotlines and sent them out to the entire membership—but Hedrick shamefully continues to endorse this position that these hotlines contain statements that are factually true. (Doc. 236-2, PAGEID 6457-58). Defendants argue it was not a party to the Disciplinary hearing.  However, APFA unilaterally requested and oversaw the O'Neil "accounting review" and the Cornwell Jackson "accounting reviews."  (Doc. 236-2, PAGEID 6463-67; Doc. 247-2, PAGEID 7885-7908; Doc. 239-5; PAGEID 6895—6903; Doc. 236-2, PAGEID 6455-58).  Defendants then misrepresented them both as "audits" to the union leadership, the Plaintiffs, the Arbitrator, and the entire APFA membership— those facts are not in dispute. (Doc. 236-2, PAGEID 6463-67; Doc. 247-2, PAGEID 7885-7908; Doc. 239-5; PAGEID 6895—6903; (Doc. 236-2, PAGEID 6455-67).

Referencing the "Accounting Review" while concealing the Confidential Memo is an attempt to mislead others to believe it is an Audit—the Arbitrator had notice of this O'Neil Accounting Review meanwhile the Confidential Memo, containing statements that absolved Plaintiffs of wrongdoing, was withheld.  (Doc.

239, PAGEID 6793-6816).

Defendants claim emotional damages are not recoverable without a trial, however compensatory damage awards have been upheld without requiring trial against unions. *Cantrell v. Int'l Broth. Elec. Wkrs. Loc. 2021*, 32 F.3d 465, 466 (10th Cir. 1994) (upholding emotional damages award granted on summary judgment for LMRDA and fair representation violations when the Court found "extreme and outrageous misconduct"). S*ee also*, *Soto Segarra v. Sea-Land Service, Inc.,* 581 F.2d 291, 298 (1st Cir. 1978); *Anspach v. Tomkins Industries, Inc.,* 817 F. Supp. 1499, 1516 (D.Kan. 1993) (the union's conduct must be "outrageous" before the plaintiff may recover damages for emotional distress); *Baskin v. Hawley,* 807 F.2d 1120, 1133 (2nd Cir. 1986) (factfinder must find "truly outrageous" conduct). The 5th Circuit clearly provides for compensatory damages, however as for a requirement of a trier of fact's finding on the matter, this is not settled within previous rulings.  *See International Brotherhood of Boilermakers, Iron Shipbuilders, etc. v. Braswell,* 388 F.2d 193 (5th Cir. 1968).  See also, *Guidry v. International Union of Operating Engineers, Loc. 406,* 882 F.2d 929, 943 (5th Cir.1989), *vacated on other grounds,* 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603, *on remand,* 907 F.2d 1491 (5th Cir.) *cert. denied).*

The 5th Circuit, in *Pineda v. JTCH Apartments, LLC*, allowed compensatory damages for retaliation claims under the Fair Labor Standards Act (FLSA), reversing the district court's exclusion of such damages. *See, Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062 (5th Cir. 2016). Furthermore, the 5th Circuit Court has held that ". . . punitive damages are permissible to vindicate the invasion of those protected rights and as a deterrence against future violations by over-zealous unions and their officers." *Bise v. Int'l Brotherhood of Electrical Workers*, 618 F.2d 1299, 1305-6 (9th Cir. 1979) (quoting *Int'l  Brotherhood of Boilermakers, v. Braswell,* 388 F.2d at 199-201.

Furthermore, Defendants assert that Ross's medical issues and diagnosis of anxiety and depression occurred according to the records while he lived in Fort Worth, Texas in 2019. (Doc. 239-8, PAGEID 7064 - 74). He and his family moved from California to Texas when he was elected in 2016—APFA paid for this

move and now seek those costs as "damages" in this lawsuit. (Doc. 239-8, PAGEID 7064 – 74; Doc. 235, PAGEID 5906-5909).  Ross testified in his Affidavit that his medical records reflected the improper date for his diagnosis of anxiety as it occurred in 2019 when he was admitted to a mental health hospital in Fort Worth for risks of self-harm.  (Doc. 239-8, PAGEID 7064 - 74).

Ross wore a heart monitor to investigate whether his heart was the cause of these syncopal episodes. (Doc. 239-14, PAGEID 7292).  Ross maintained a journal of events and noted that his heart raced as a result of the stress from his union.  (Doc. 239-14, PAGEID 7292).  The medical record confirms this fact. The absence of "substantial Arrhythmia" means that "your heart rhythm was benign and showed no arrhythmia cause for syncope. No atrial fibrillation was noted. That's good news!" (Doc. 239-14, PAGEID 7291). Therefore, "No arrhythmogenic cause for syncope [was] observed."   (Doc. 239-14, 7292). This indicates the cause is stress, anxiety and depression. (Doc. 239-14, PAGEID 7291). Hence, the diagnosis of depression and referral for mental health assessments in Sept. 2023 when Ross was admitted to the Emergency Room for another episode of syncope.  (Doc. 239-12, PAGEID 7190-7203).

## IV.      SUMMARY JUDGMENT ON THE BREACH OF THE ROSS TRANSTION AGREEMENT IS PROPER.

### A.  APFA is Liable to Ross for Breach of Contract.

Robert "Bob" Ross (hereinafter referred to as "Ross") and APFA entered the TA on March 1, 2018. (Doc. 239, PAGEID 6679 7-10). Per Texas law a contract for employment does not accrue a cause of action until the final payment is made "[i]f the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is fully performed.'..." *IDA Eng'g, Inc. v. PBK Architects, Inc.*, No. 05-15-01418-CV (Tex. App. Oct 04, 2016) (previously argued in Doc. 246, PAGEID 7788). Final payment was made to Ross in December, 2019 (Doc. 239-4, PAGEID 6893; Doc. 247-11, PAGEID 8321). *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988) (citation omitted). *See also Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 492 (Tex. App. — San Antonio 2003, pet. denied) ("[A]ll that

is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible.").  Therefore, Ross brought his claims in a timely manner, within four years of the final payment under the Transition Agreement.  Furthermore, Fed. R. Civ. Pr. 8(c) requires the affirmative defense of statute of limitations to be asserted in Defendants' responsive pleading, which Defendants failed to assert as a defense.  (Doc. 134, PAGEID 2667-68).

## B.  Non-Disclosure, Non-Disparagement, and Confidentiality Provisions is Enforceable as a Matter of Law.

The Union argues that confidentiality and non-disparagement would infringe on union member's rights to free speech under LMRDA §101(a)(2) and LMRDA § 431, however this interpretation of the law is entirely overly broad and allows abuse.  Plaintiffs' disciplinary awards that preceded this lawsuit began as Chinery's "red-wagon" campaign which sought to petition Ross' resignation from office as National President in 2016 and resulted in the Ross Transition Agreement in 2018. (Doc. 239-8, PAGEID 7065-7069). Thereafter, Chinery turned to investigating financial expenditures into the Ross Administration citing the APFA Constitutional right to financial documents and the LMRDA § 431 as grounds to review credit card statements, 401k statements, bank account numbers, routing numbers, social security numbers, pay stubs, et cetera.  (Doc. 239-8, PAGEID 6741-6770). APFA claims that the LMRDA requires disclosure of the TA because LMRDA 431 requires disclosure of officer's compensation, and its terms to its membership.  This is an improper interpretation and application of the LMRDA § 431 altogether.

> A "union is. . .required by the LMRDA to maintain in its files for five years information which will corroborate the LM Reports, in case verification should be sought by the Secretary of Labor or by members of the union who are able to establish 'just cause' for suspicion that the union's reports to the Secretary are inaccurate or do not jibe with the union's activities." *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 281 (5th Cir. 1993) (citing 29 U.S.C. §§ 431(c) and 436).

The 5th Circuit  expounds on the definition by explaining that

> "'just cause,'[is] an essential element of a claim under § 431(c). 'Just cause' under § 431(c) refers to circumstances that would put a reasonable union member on notice that further investigation is warranted to assure that the union's LM filings with the Secretary of Labor (required under § 431) comport with the union's own records of its activities. Establishing 'just cause' requires the union member to state what he wishes to verify in the LM Reports and how the particular union records he is requesting are expected to assist him in doing so." *Id.* at 285. *See also, Local No. 1419, ILA, General Longshore Workers Union AFL-CIO v. Smith,* 301 F.2d 791 (5th Cir.1962); *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No.*

*334*, 574 F.2d 484 (9th Cir.1978); *Mallick v. International Brotherhood of Electrical Workers, et al.,* 749 F.2d 771 (D.C.Cir.1984); *Daniels v. National Post Office Mail Handlers,* 454 F.Supp. 336 (E.D.Va.1978); *McGinnis v. Local Union No. 710, International Brotherhood of Teamsters,* 664 F.Supp. 1212 (N.D.Ill. 1987).

The terms of Ross TA did *not* require disclosure under LMRDA § 431, only officers' compensation and financial records supporting the accuracy of the LM-2 filings.  Furthermore, Chinery and Lee never asserted "just cause" to disclose Ross', Vargas', Martin's, or Morgan's financial records.  (Doc. 239-8, PAGEID 7065-7069; Doc. 239-5, PAGEID 6910- 6914; Doc. 239, PAGEID 6929; Doc. 239-5, PAGEID 6930-6932).  Yet Chinery was granted access and audits over all of them. (Doc. 239-8, PAGEID 7065-7069; Doc. 239-5, PAGEID 6910- 6914; Doc. 239, PAGEID 6929; Doc. 239-5, PAGEID 6930-6932). Furthermore, opening the Ross TA would not explain whether the reporting amounts under the LM-2's were proper or not. That would be contained in the payroll and financial records from bank statements. This argument is entirely meritless. "P]olitical opposition to union officials, unaccompanied by any specific concern with transactions summarized on the LM-2 report, does not constitute just cause for rummaging through all the union records." *Mallick v. International Broth. of Elec. Workers*, 749 F.2d 771 (D.C. Cir. 1984).

An APFA Article VII Arbitration was held to address issues relating to the confidentiality and validity of the Ross TA. (Doc. 247-11, PAGEID 8355-90; Doc. 247-12, PAGEID 8391-8409). The Arbitrator determined that the Ross TA and its confidentiality and non-disparagement provisions were valid under the APFA Constitution. (Doc. 247-11, PAGEID 8355-90; Doc. 247-12, PAGEID 8391-8409). APFA Counsel sought review of the Confidential provisions within the TA from the U.S. Department of Labor, and no requirement was imposed to disclose the Ross TA to members. (Doc. 239-7, PAGEID 7016; Doc. 239-7, PAGEID 7023 ("The Ross agreement is binding as stated by Arbitrator Edward B. Valverde. Vargas did include MEA and SAF. . . .") Doc. 247-11, PAGEID 8355-90; Doc. 247-12, PAGEID 8391-8409). Furthermore, deference to a union's internal governing decision as to the internal interpretation and application of its own rules.  *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953); *Carr v. ALPA*, 866 F. 3d 597, 603 (5th Cir. 2017) (the union's interpretation of its constitution is entitled to judicial deference "unless it

is patently unreasonable."); *O'Neil v. ALPA*, 939 F. 2d 1199, 1206 (5th Cir. 1991); *Newell v. IBEW*, 789 F.2d 1186, 1189 (5th Cir. 1986).

Even if the confidentiality clause is determined illegal, it does not negate the violations to pay Ross all of his accrued and unused sick and vacation leave, as well as the non-disparagement clauses.  Texas law upholds savings clauses such as that contained in Paragraph 14 of the Ross TA which states "if any provision, or any part thereof, in this Agreement is found to be invalid, such determination shall not affect the validity of any other provision(s) or part(s) of this Agreement is valid." (Doc. 239, PAGEID 6685). *Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex. App. 1989), *writ denied* (June 7, 1989) (holding "Texas law, which all parties agree applies here, where an "incidental" clause of a contract is unlawful but the 'original consideration of the contract is legal,' the 'invalid provisions may be severed and the valid portion of the agreement upheld.').  *See also*, *In re Poly-Am., L.P.,* 262 S.W.3d 337, 360 (Tex. 2008) (holding "An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.").

### C.   Attorney's Fees are valid under Texas Law.

Defendants claim Ross did not meet the presentment element for attorneys' fees under his breach of contract claim, however "[n]o particular form of presentment is required." *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). Presentment is not a fact in dispute in this case and was plead merely by citing the statute in the pleading. *See* Partners Lending Auto Grp. v. Leedom Fin. Serv., LLC, No. 10-20626 (5th Cir. Jul 07, 2011) (holding a citation to the statute and factual proof established grounds to grant attorney's fees under the statute). Ross argued with APFA leadership openly and publicly that it breached his Transition Agreement—at nauseum—and the record reflects this fact.  (Doc. 239-2, PAGEID 6804; Doc. 239-1, PAGEID 6730; Doc. 239-1; PAGEID 6732; Doc. 239-1, PAGEID 6734, Doc. 239-1, PAGEID 6736, Doc. 239-1, PAGEID 6773). This was Ross's defense in his Disciplinary hearing, so an argument that presentment is not met would subvert the purpose of the statute altogether.

**D. Defendants Counterclaim for Breach of Fiduciary Duty is legal in nature, and therefore is barred by the state limitations period.**

Defendant cannot prevail on its federal breach of fiduciary duty as its claim clearly is legal rather than equitable in nature. The claim is therefore time-barred by the state limitations period. (Doc. 72). In assessing the pleadings, the Court decided that the doctrine of laches governed when a claim is equitable in nature, and where the claim is legal in nature Defendants' counterclaim is time barred based on the state limitations period in its Order Partially Granting Motion to Dismiss Counterclaims. (Doc. 72). On the pleadings, the Court should engage in a laches analysis and reach the conclusion that Defendants' LMRDA § 501 claim is legal in nature, and the Court should determine that the LMRDA § 501 claim is barred by the state statute of limitations.

Therefore, judgment against Defendant's counterclaim for breach of fiduciary duty is proper and the Court should now determine that the counterclaim is barred.

## V. <u>CONCLUSION</u>

WHEREFORE PREMISES CONSIDERED, Plaintiffs reassert and respectfully requests that this Court grant their Motion for Partial Summary Judgment in their favor as requested in Plaintiffs' Motion for Partial Summary Judgment and Brief in Support.

Respectfully submitted,

KD PHILLIPS LAW FIRM, PLLC

By: /s/ Kerri Phillips
Kerri Phillips
Texas Bar No. 24065906
Phone: (972) 327-5800
Email: kerri@KDphillipslaw.com
6010 W. Spring Creek Parkway
Plano, Texas 75024
Fax: (940) 400-0089
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on June 7, 2024 a true and correct copy of the foregoing instrument was served upon Defendants' attorney via the e-file manager and email to the following

/s/   Kerri Phillips
Kerri Phillips

Jeffrey Bartos
Guerrieri, Bartos, & Roma, P.C.
1900 M Street, NW, Suite 700
Washington, DC 20036
Tel: (202) 624-7400
Fax: (202) 624-7420
Email: jbartos@geclaw.com

Charlette Matts
In-House Counsel for APFA
1004 West Euless Blvd
Euless, TX 76040
Tel: (682) 301-8454
Cmatts@apfa.org

James Sanford
4803 Gaston Avenue
Dallas, TX 75249-1020
Tel: (214) 800-5111
Fax: (214) 838-0001
Email jim@gillespiesanford.com

Michael Rake
PO Box 1556
Lake Dallas, TX 75065-1556
Tel: (940) 498-2103
Fax: (940) 498-2103
Email: mrake1@mrakeattorney.com