IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT (BOB) ROSS | § | |
| | § | |
| VS. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, et al., | § | |
| | § | **Case No. 4:22-CV-343-Y** |
| AND | § | |
| | § | **Consolidated with** |
| EUGENIO VARGAS | § | **Case No. 4:22-CV-430-Y** |
| | § | |
| VS. | § | |
| | § | |
| ASSOCIATION OF PROFESSIONAL | § | |
| FLIGHT ATTENDANTS, et al. | § | |

---

**APFA DEFENDANTS' AMENDED REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS AND COUNTERCLAIMS**

JAMES D. SANFORD
Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (pro hac vice)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1717 K Street, N.W. Suite 900
Washington, DC 20006
Tel.: (202) 624-7400
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 241133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: cbroderick@apfa.org

*Counsel for APFA*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...…………ii

ARGUMENT…………………………………………………………………...………1

I.      THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT……………..……1

II.     JUDGMENT SHOULD BE ENTERED ON THE CLAMS WHICH PLAINTIFFS
        HAVE ABANDONED……………………………………………………...……...…3

III.    THE APFA DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFFS' LMRDA CLAIMS…………………………………………………..4

        A.  Plaintiffs Have Not Shown Any LMRDA Due Process Violations……………..…..4

        B.  Plaintiffs Cannot Show Protected Speech Was The "But For" Cause of The
            Arbitrator's Decisions……………………………………………………...…9

        C.  The LMRDA Does Not Prohibit Union Discipline Barring A Member From Holding
            Union Office……………………………………………………………11

IV.     THE APFA DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE
        REMAINING STATE LAW CLAIMS…………………………………………...…..12

        A.      Defamation……………………………………………………...…...12

        B.      Breach of Transition Agreement…………………………………………15

V.      THE APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
        FIDUCIARY DUTY COUNTERCLAIMS………………………………...………17

        A.      The APFA May Sue to Enforce the Federal Fiduciary Duty…………………17

        B.      Plaintiffs Have Not Met Their Burden of Establishing That Laches Bars The
                Federal Fiduciary Duty Claims…………………………………………..20

        C.      The Final and Binding Arbitration Decisions Establish The Fiduciary Duty
                Violations of Plaintiffs……………………………………………...……21

CONCLUSION…………………………………………………………………....…25

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**CASES**………………………………………………………………………………..**Page(s)**

*Adams-Lundy v. APFA*,
   792 F.2d 1368 (5th Cir. 1986)………………………………….…….…..…….22, 23

*Adams-Lundy v. APFA*,
   844 F.2d 245 (5th Cir. 1988)…………………………………………………22, 23, 24

*Aircraft Mechs. Fraternal Ass'n v. Transp. Workers Union of Am., Loc. 514, Air Transp. Div., AFL-CIO*,
   98 F.3d 597 (10th Cir. 1996)……………………………………..………………..…11

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)……………………………………………………...……..19, 20

*Bldg. Material & Dump Truck Drivers, Loc. 420 v. Traweek*,
   867 F.2d 500 (9th Cir. 1989)………………………………………………………19

*BMG Music v. Martinez*,
   74 F.3d 87 (5th Cir. 1996)………………………………………………….……..6

*California v. Sierra Club*,
   451 U.S. 287 (1981)……………………………………………………...……19

*Clark v. Am.'s Favorite Chicken Co.*,
   110 F.3d 295 (5th Cir. 1997)……………………………………………...….24-25

*Cort v. Ash*,
   422 U.S. 66 (1975)………………………………………………………18, 19, 20

*Farrell v. Hellen*,
   367 F. Supp. 2d 491 (S.D.N.Y. 2005)………………...………………………..10 n.8

*Fingar v. Seaboard Air Line R. Co.*,
   277 F.2d 698 (5th Cir. 1960)………………………………………...……....24

*Finnegan v. Leu*,
   456 U.S. 431 (1982)……………………………………………...………12

*Hoffman v. Kramer*,
   362 F.3d 308 (5th Cir. 2004)……………………………………………………18

*Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*,
   598 F.3d 454 (8th Cir. 2010)………………………………………...…..4 n.3

ii

*Hudson v. Am. Fed'n of Gov't Emps.*,
  630 F. Supp. 3d 214 (D.D.C. 2022)……………………………………………………9

*Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*,
  401 U.S. 233 (1971)…………………………………………………....3, 4, 7, 11

*Int'l Shortstop Inc. v. Rally's Inc.*,
  939 F.2d 1257 (5th Cir. 1991)……………………………………………....15 n.15

*Int'l Union of Elecs., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham*,
  97 F.3d 1416 (11th Cir. 2006)……………………………………..….………20

*Int'l Union of Operating Eng'rs, Local 150 v. Ward*,
  563 F.3d 276 (7th Cir. 2009)……………………………………..………..….20

*Int'l Union, Security, Police & Fire Profs. of Am. v. Faye*,
  828 F.3d 969 (D.C. Cir. 2016)……………………………………………………...20

*Keenan v. Int'l Ass'n of Machinists & Aero. Workers*,
  937 F. Supp. 2d 93 (D. Maine 2013)…………………………………………6, 9, 10

*Kirk v. Transp. Workers Union of Am., AFL-CIO*,
  934 F. Supp. 775 (S.D. Tex. 1995)……………………………....……………14

*Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*,
  383 F.2d 735 (5th Cir. 1967)……………………………..………………..………22

*Lucas v. United States*,
  807 F.2d 414 (5th Cir. 1986)………………………………………....……..16

*Lewis v. AFSCME*,
  407 F.2d 1185 (3d Cir. 1969)……………………………….…..……..3, 12

*Mandaglio v. United Bhd. of Carpenters and Joiners of Am. (Gen. Exec. Bd.)*,
  575 F. Supp. 646 (E.D.N.Y. 1983)………………………………….……10 n.7, 10 n.9

*Martin v. Local 556, Transp. Workers Union of Am. AFL-CIO*,
  No. 3:14–CV–0500–D, 2014 WL 4358480 (N.D. Tex. Sept. 3, 2014)………...…..12 n.10

*McCarthy v. Int'l Ass'n of Machinists & Aerospace Workers*,
  No. 21-1673, 2021 WL 5766569 (3d Cir. Dec. 6, 2021)…………………….…...…..11

*McConathy v. Dr. Pepper/Seven Up Corp.*,
  131 F.3d 558 (5th Cir. 1998)……………………………………………..…….16

*Moreno v. Sterling Drug, Inc.*,
787 S.W.2d 348 (Tex. 1990)……………………………………………..………16

*N.L.R.B. v. Int'l Ass'n of Bridge Structural & Ornamental Iron Workers*,
864 F.2d 1225 (5th Cir. 1989)………………………………………………...12 n.10

*N.L.R.B. v. Int'l Bhd. of Boilermakers*,
581 F.2d 473 (5th Cir. 1978)………………………………………………......12 n.10

*Noble v. Sombretto*,
260 F. Supp. 2d 132 (E.D.N.Y. 2003)…………………………………….……..24

*In re OCA, Inc.*,
552 F.3d 413 (5th Cir. 2008)……………………………………………...……..16

*Place St. Charles v. J.A. Jones Constr. Co.*,
823 F.2d 120 (5th Cir. 1987)……………………………….……....24, 24 n.18

*Ray v. Young*,
753 F.2d 386 (5th Cir. 1985)……………………………………….………22, 24

*Reyes v. Laborers' Int'l Union of N. Am., Loc. Union No. 16*,
464 F.2d 595 (10th Cir. 1972)…………………………………………..…11, 12

*Rosario v. Amalgamated Ladies' Garment Cutters' Union*,
605 F.2d 1228 (2d Cir. 1979)……………………………………………………7, 11

*Runyan v. United Bhd. of Carpenters*,
566 F. Supp. 600 (D. Colo. 1983)…………………………………………..10 n.9, 12 n.10

*Schrader v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 20*,
656 F. Supp. 1487 (N.D. Ind. 1987)……………………………………………5

*Serafinn v. Local 722, IBT*,
597 F.3d 908 (7th Cir. 2010)……………………………………….…….…9

*Sheet Metal Workers v. Lynn*,
488 U.S. 347 (1989)……………………………………………………………..12

*Smith v. Spizzirri*,
No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024)……………………………15 n.16

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)…………………………………………………...…..…17

iv

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979)………………………………………………………….……..18

*United States v. Herron*,
    825 F.2d 50 (5th Cir. 1987)………………………………………...…………….14

*United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447
    (S.D.N.Y. 2009)…………………………………………………………………11

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 (5th Cir. 2004)…………………………………………….........3, 15 n.15

*Yager v. Carey*,
    910 F. Supp. 704 (D.D.C. 1995)………………………………..…………..…………..6, 9

**STATUTES**

UNITED STATES CODE

Labor-Management Reporting & Disclosure Act
    29 U.S.C. § 411.............................................................................................4, 9, 11, 17
    29 U.S.C. § 501...................................................................18, 19, 20, 21, 22, 23, 24
    29 U.S.C. § 529.............................................................................................................9

TEXAS CIVIL PRACTICES & REMEDIES CODE
    § 16.051.......................................................................................................................15

We demonstrated in our opening Memorandum, Doc. 235, that Plaintiffs cannot show facts which would warrant a trial on any of their claims, that the APFA Defendants are entitled to judgment as a matter of law on Plaintiffs' claims, and that APFA is entitled to judgment on its fiduciary duty counterclaims. We respectfully submit that Plaintiffs' Amended Opposition Brief, Doc. 259, to which we reply herein, confirms that conclusion.[1] Plaintiffs have not met their burden of demonstrating a genuine issue as to any material fact, nor of establishing legal grounds upon which they may proceed on the undisputed record. The APFA Defendants respectfully submit that—with discovery and briefing now complete—the Court should enter judgment in their favor on all claims.

## ARGUMENT

## I.    THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT.

The essential dispositive facts are not disputed. Without rehashing the factual discussion in our opening Memorandum, we note here only that non-party Union members filed internal Union charges against Mr. Ross and Mr. Vargas, which led to final and binding arbitrations under Article VII of the APFA Constitution. APFA Appx. 4-5 (Black Decl.) ¶¶ 10-13.[2] The independent Arbitrator conducted hearings in which witnesses testified and documentary evidence was submitted, and ultimately issued awards in both cases which held that Mr. Ross and Mr. Vargas, while Union officers, had misused and improperly received tens of thousands of dollars in violation of the APFA Constitution and Policy Manual. APFA Appx. 6-8 (Black Decl.) ¶¶ 15-23; APFA

---

[1] The Court's Order permitting the filing of an amended opposition also permitted the Defendants to file an amended reply. Doc. 252 at ECF 5. This Amended Reply supplants our original Reply filed at Doc. 248.

[2] The APFA's Appendix in support its Motion for Summary Judgment is filed at Doc. 236. The APFA Defendants also submit herewith a short Supplemental Appendix which provides material from the Article VII Transcript responsive to Plaintiffs' new contentions.

Appx. 282-84 (Ross Supp. Decision); APFA Appx. 504-06 (Vargas Supp. Decision). The Arbitrator barred Mr. Ross and Mr. Vargas from holding Union office based on what he concluded were egregious breaches of their duty to the Union and its members. *Id.*; *see also* APFA Appx. 240, 242 (Ross Award); APFA Appx. 480 (Vargas Award).

Arbitrator Armendariz concluded that Mr. Ross had improperly used APFA funds for:

- Personal housing expenses and furniture purchases;
- A family vacation to the Grand Canyon;
- Costs for personal rental cars;
- Expenses related to commuting to Ross' California home; and
- Inflated vacation and sick leave payments which he refused to repay.

Mr. Ross was ordered to repay APFA for the $5,436.47 sick and vacation overpayment, as well as over $8,000 for leasing an apartment "where he had no intention of occupying," and an additional $3,600 in unauthorized expenditures. APFA Appx. 241-42. Mr. Ross was barred from holding any positions in APFA. APFA Appx. 242. After an independent financial review revealed that Mr. Ross had charged thousands of dollars to the Union for additional personal expenses during his two-year tenure, Arbitrator Armendariz ordered Mr. Ross to repay an additional $20,336.19 for unauthorized and inappropriate costs charged to APFA for personal expenses. APFA Appx. 282-84.

Arbitrator Armendariz also found Mr. Vargas guilty of violating the APFA Constitution and Policy Manual in dereliction of his duties as National Treasurer in several ways including regularly charging personal meals to the Union, while accepting fixed meal allowances. After an independent financial review, Arbitrator Armendariz determined that Mr. Vargas had made approximately $14,000 in "[i]nappropriate credit card charges related to meals." APFA Appx. 505. Mr. Vargas was ordered to repay that amount, the cost of the independent financial review, and

half of the arbitrator's fee and he was "prohibited from serving in any APFA National Officer position or Regional Officer position for life." *Id.*

Plaintiffs seek to generate a dispute over the core facts of the arbitration process by offering arguments and fragments of evidence which, they say, contradict some of the Arbitrator's findings and conclusions. *See* Doc. 259 at ECF 24-27. But judicial review of union discipline is not *de novo*; the question is whether "the charging party … provide[ed] *some evidence* at the disciplinary hearing to support the charges made ... A stricter standard … would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record." *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 246 (1971) (emphasis added); *see also Lewis v. AFSCME*, 407 F.2d 1185, 1198 (3d Cir. 1969). Plaintiffs do not even remotely establish a genuine issue under this standard.

Confronted with the undisputed record of the Article VII arbitrations, Plaintiffs seek to generate disputed issues through their own generalized Declarations which misrepresent the documentary record, or by misconstruing portions of Declarations submitted by APFA. As we show below, these efforts fail to establish any genuine issue of material fact and are not grounds to avoid summary judgment on this record. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293-94 (5th Cir. 2004) (nonmovant's "conclus[ory]," "vague, self-serving statements" were insufficient to preclude summary judgment).

## II.    JUDGMENT SHOULD BE ENTERED ON THE CLAMS WHICH PLAINTIFFS HAVE ABANDONED.

Plaintiffs have now expressly abandoned several claims which we addressed in our motion, and we therefore do not discuss them herein. The withdrawn claims are, for Mr. Ross: Count II (breach of union constitution); Count III (Fair Credit Reporting Act); Count V (tortious

interference with contract); and Count VI (breach of fiduciary duty). Mr. Vargas has withdrawn his Counts II (union constitution); III (fiduciary duty); and IV (fraud). Doc. 259 at ECF 21 n.58. We respectfully submit that judgment should be entered on each of these claims.

## III.   THE APFA DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' LMRDA CLAIMS.

### A.  Plaintiffs Have Not Shown Any LMRDA Due Process Violations.

We demonstrated in our opening submission (Doc. 235 at ECF 35-42) that the undisputed evidence shows that the arbitration process was fully consistent with the requirements of the Labor-Management Reporting and Disclosure Act ("LMRDA"), including its requirement that discipline be supported by "some evidence" and only after a "full and fair hearing." 29 U.S.C. § 411(a)(5)(C); *Hardeman*, 401 U.S. at 246-47. Plaintiffs' Opposition, once stripped of rhetoric, confirms this conclusion.[3]

We demonstrated, through Plaintiffs' testimony and the undisputed hearing record (including key transcript excerpts, Plaintiffs' post-hearing briefs, and the arbitration decisions) that the LMRDA's requirement of a "full and fair hearing" was amply met in both of their cases. Doc. 235 at ECF 20-28 (facts regarding Ross); *id.* at ECF 28-33 (facts regarding Vargas). It remains undisputed that Plaintiffs were provided ample advance notice of their charges and opportunity to prepare a defense; participated in their own defense through representatives of their choosing; called witnesses; introduced exhibits; cross-examined witnesses called by the charging parties; and

---

[3] While Plaintiffs take issue with the evidence regarding some of the charges against Mr. Ross, most notably his refusal to repay sick and vacation payments in excess of what he was allowed, the evidence regarding most of the charges against him, and all of the charges against Mr. Vargas, is not contested at all. The discipline as a whole, particularly the bar on the holding of union office, may thus be upheld even if, for the sake of argument, Mr. Ross were correct as to the quantum of evidence on these few matters. *See Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454, 462 (8th Cir. 2010) (upholding discipline when there is "*some* evidence to support some of the charges brought against him") (emphasis in original).

submitted extensive post-hearing briefs. Plaintiffs both received a "full and fair hearing" as a matter of law. *Id.* at ECF 36-38.

Plaintiffs do not contest any of the factual showing in this regard, but attempt to avoid summary judgment through generalized declarations which do not meet their burden of establishing a genuine issue of material fact which must be decided by a jury.

Plaintiffs Opposition brief states broadly that "the arbitrator did not allow them to: admit key evidence; omit inadmissible evidence; compel key witnesses to attend and testify; or cross-examine key witnesses." Doc. 259 at ECF 24. But they fail to present facts which would support a claim that any specific evidentiary or procedural rulings were in any sense erroneous or unfounded, nor that any ruling actually prejudiced them in their ability to present a case to the degree which would violate the LMRDA. Notably, with respect to the asserted "key evidence" and "key witnesses", Plaintiffs provide no explanation of what the evidence was, who the witnesses were, what the intended documentary or testimonial evidence would have shown, or how it would have impacted the outcome. Nor is there any explanation of why, in a proceeding in which the strict rules of evidence did not apply, there could be "inadmissible evidence" which was improperly allowed. Plaintiffs have not met their burden. *See Schrader v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 20*, 656 F. Supp. 1487, 1495 (N.D. Ind. 1987) ("This court does not sit as another court to which [Plaintiff] may appeal. Rather, its function is solely to ensure … minimal due process").

Likewise, while Mr. Ross claims that he was "unable to *properly* cross-examine Harris, and other witnesses," and Mr. Vargas claims that he was "unable to … cross-examine Harris." Doc. 259 at ECF 15, ¶ 12 (Ross) (emphasis added) and ECF 17, ¶ 18 (Vargas), the hearing transcripts show that Mr. Ross (and his representative) cross-examined Mr. Harris for over 100

transcript pages, APFA Appx. 109 (witness index), as did Mr. Vargas in his hearing. APFA Appx. 355 (witness index). Plaintiffs' failure to demonstrate actual impropriety in the proceedings defeats their claim. *See Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 937 F. Supp. 2d 93, 109 (D. Maine 2013); *Yager v. Carey*, 910 F. Supp. 704, 714 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998).[4]

Mr. Ross contends that he was in some way prevented, during his questioning of Mr. Harris, from asking questions regarding his Transition Agreement or the calculation of his sick leave and vacation pay. *See* Doc. 259 at ECF 15-16, ¶ 14. For support of this assertion he cites only his Declaration, and not any transcript pages, Doc. 259 at ECF 16 n.32, and the cited paragraph of his Declaration does not support that contention (*see* Pls. Appx. 167, ¶ 16). Moreover, the transcript shows this generalized contention is demonstrably incorrect – Mr. Ross ***did*** question Erik Harris about the Transition Agreement and the calculation of sick and vacation pay. *See* APFA Supp. Appx. 0676-0698 (Ross Art. VII Tr. 146:11-148:2; 151:24-154:7; 161:9-172:3).[5] The generalized denial of this documented fact does not create a triable issue, *see BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (nonmovant's "conclusory, self-serving statement" was

---

[4] Plaintiffs also assert that Mr. Ross was not "not allow[ed] to share evidence about [one charging party's] … multi-year public campaign against him." Doc. 259 at ECF 14, ¶ 11. The cited transcript shows only the arbitrator stating that: "I'm going to say this on the record. I really don't care what happened on FaceBook or social media. I want to get down to what the issues are, and … whether you owe money or you don't, okay?" APFA Appx. 126 at Tr. 220:12-18 (cited by Plaintiffs at Doc. 259 at ECF 14 n.26). Plaintiffs do not show how this ruling rendered the hearing legally deficient. Equally unavailing are Mr. Vargas' assertions that he was not given unlimited time to cross examine witnesses, or present supposed evidence regarding "witness tampering," Pls. Appx. 188, ¶¶ 9, 11. Mr. Vargas never identifies what he would have done with additional time, nor what evidence he attempted to submit.

[5] The APFA Defendants have filed an unopposed motion for leave to file this Supplemental Appendix.

insufficient to preclude summary judgment), and the belief that he could have done a better job at the time does not create an LMRDA claim against APFA.

And while Mr. Ross asserts that the Arbitrator erred in finding him liable for using union funds for certain furniture purchases, Doc. 259 at ECF 16, ¶ 15, the court in an LMRDA Title I case does not sit as an appellate court, but only to determine if (a) there has been a statutory "full and fair hearing," and (b) there is "some evidence" to support the ultimate discipline. A dispute about how the Arbitrator balanced the evidence is not properly before this Court. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1243 (2d Cir. 1979). Moreover, the Arbitrator specifically found, after his personal observations of Mr. Ross in the live hearing context, that Mr. Ross's "testimony was inconsistent and not forthright." APFA Appx. 240. The Supreme Court has long rejected a review standard in LMRDA cases which would "require courts to judge the credibility of witnesses on the basis of what would be at best a cold record." *Hardeman*, 401 U.S. at 245-246.

Plaintiffs also broadly assert that "Mr. Ross and Mr. Vargas contend that for some of their charges, *no evidence* was presented." Doc. 259 at ECF 24. Crucially, they do not identify which charges had "no evidence," and the *only* referenced support for this contention is that they were not provided the accountant's "Confidential Memorandum" regarding certain overpayments to Mr. Ross prior to Mr. Ross's hearing. *Ibid.* ("*On this point* [(of no evidence)], it is undisputed that APFA failed to provide Mr. Ross and Mr. Vargas a copy of the Confidential Memorandum") (emphasis added). But the Confidential Memorandum was not the basis for issuance of any discipline, so the timing of its production does not, and could not, go to the issue of whether under the LMRDA "some evidence" supported the discipline. As described in our opening brief, the hearing record showed that Mr. Ross was overpaid, that the Board of Directors demanded he repay

the amount owed, and that he refused to do so. *See* Doc. 235 at ECF 25-27. The Confidential
Memorandum and its attachments describe and calculate the overpayment of sick and vacation pay
to Mr. Ross, and he was charged with refusing to repay the overage. There was more than "some
evidence" for that finding. *Ibid*. The absence of *additional* evidence does not change that
conclusion.

To the extent Plaintiffs also contend that the timing of their receipt of the Confidential
Memorandum rendered the Article VII hearings not "fair" under LMRDA standards, *see* Doc. 259
at ECF 24-25, it is undisputed that Mr. Ross provided the memorandum to the Arbitrator prior to
the ruling in his case, made argument about it in his post-hearing brief, and that that the Arbitrator
referenced the memorandum in his decision, *see* APFA Appx. 230, 238-39 (describing, and
rejecting, Ross's argument regarding the Confidential Memorandum). The fact that Mr. Ross's
arguments were unavailing does not render the disciplinary process unfair or unlawful. And we
need not speculate or have a trial on the issue of whether the Confidential Memorandum would
have changed the outcome on the proceedings, because the Arbitrator has already held that it did
not.[6]

---

[6] Plaintiffs suggest that "[t]he Defendants reliance on O'Neil and Harris's self-serving, unsworn
declarations regarding the Confidential Memorandum do not eliminate the Parties' dispute of **this**
material fact – they magnify it." Doc. 259 at ECF 24-25 (emphasis supplied). But neither
Declaration addresses the LMRDA issue. Rather, the cited paragraphs in both Declarations simply
confirm and explain what the Union had been saying all along about the overpayment to Mr. Ross.
And Mr. Vargas was not found financially liable for the overpayment to Mr. Ross. *See* APFA Appx.
505 (Supplemental Art. VII award - remedy).

Moreover, contrary to Plaintiffs' argument, these Declarations, as well as the Declaration
of Julie Hedrick, cannot create any genuine issue of material fact as to any remaining claim,
because the cited paragraphs go only to the issue of Plaintiffs' defamation claims, *see* Doc. 235 at
ECF 49-50, which have now been withdrawn in relevant part. Ms. Hedrick spoke to her belief in
the truth of the "Hotline" Plaintiffs claimed was defamatory. APFA Appx. 510-11 (Hedrick Decl.)
¶ 12. Mr. Harris spoke to his belief in the truth of his statements regarding the amounts owed by
Mr. Ross, which was corroborated Mr. O'Neil, and which Mr. Ross had contended were

Moreover -- and independently fatal to their LMRDA claims -- Plaintiffs entirely fail yet again to explain to the Court how the alleged procedural shortfalls (if they occurred), could have affected the outcome of their arbitrations. Even if "an internal union rule has been violated, section [411](a)(5)(C) gives union members a cause of action only when that violation *severely impairs* the member's ability to prepare and present a defense, or by increasing the risk that a decision maker will reach an erroneous determination." *Yager*, 910 F. Supp. at 714. (emphasis added). Plaintiffs' due process claims fail as a matter of law.

### B. Plaintiffs Cannot Show Protected Speech Was The "But For" Cause of The Arbitrator's Decisions.

Plaintiffs contend that the discipline assessed by the Arbitrator in 2022 was in retaliation for some form of protected free speech related to their views expressed in 2016 against merging APFA with another union, in alleged violation of the LMRDA, 29 U.S.C. § 412, § 529. Doc. 259 at ECF 12-13 (¶¶ 4-5). They provide nothing more than pure speculation for this theory, which is insufficient to defeat a properly supported motion for summary judgment.

As shown in our opening submission, the burden is on Plaintiffs to produce evidence on which a jury could find that the exercise of free speech rights "was not merely a motivating factor, but a necessary condition or a 'but-for' cause" of the discipline. *Serafinn v. Local 722, IBT*, 597 F.3d 908, 914 (7th Cir. 2010); *Hudson v. Am. Fed'n of Gov't Emps.*, 630 F. Supp. 3d 214, 225 (D.D.C. 2022); *Keenan*, 937 F. Supp. 2d at 109. Tellingly -- even after having another "bite of the apple" -- Plaintiffs' Second Opposition still entirely fails to even address relevant case law or solve the glaring "but for" causation deficiencies in their case. As we demonstrated (Doc. 235 at ECF

---

defamatory. *See* APFA Appx. 526-27 (Harris Decl.) ¶¶ 16-20; APFA Appx. 544-546 (O'Neil Decl.) ¶¶ 5-8. Plaintiffs have abandoned the defamation claim against Mr. Harris, and, as discussed below, point to nothing in the "Hotline" as defamatory either.

40-42), Plaintiffs have failed to show *any* causation at all -- much less the required "but for" causation -- between the alleged speech and the discipline imposed by the neutral third-party arbitrator *six years* later.[7] Plaintiffs offer neither direct nor indirect evidence of causation. Accordingly, their LMRDA free speech claim fails as well. *See Keenan*, 937 F. Supp. at 109-11 (reviewing both direct and indirect evidence and concluding that the evidence failed to show a fact issue on "but for" causation).[8]

Plaintiffs were charged with, and found guilty of, financial malfeasance during their tenure as APFA officers and not for the exercise of any right enumerated in Title I of the LMRDA. Their retaliation claims fail.[9]

---

[7] None of the conduct described by the Plaintiffs in support of their claimed "stifling" of free speech has anything to do with Arbitrator Armendariz nor with any of the APFA Defendants. For example, Plaintiffs discuss a 2016 letter sent from Mr. Ross to another union and a 2016 dispute between Ms. Chinery (one of his two accusers) and Mr. Ross, but make no attempt to connect these events to either the Arbitrator who issued the discipline in 2022 or to any of the APFA Defendants. *See, e.g.,* Doc. 259 at ECF 3-4, ECF 19-20. As one case relied upon Plaintiffs aptly put it, "the plaintiffs had their day in court before the trial committees; consequently, the motives of their accusers are irrelevant." *Mandaglio v. United Bhd. of Carpenters and Joiners of Am. (Gen. Exec. Bd.*), 575 F. Supp. 646 (E.D.N.Y. 1983).

[8] Plaintiffs' reliance on *Farrell v. Hellen*, 367 F. Supp. 2d 491, 500 (S.D.N.Y. 2005), Doc. 259 at ECF 28 is also misplaced. There, the union president filed internal disciplinary charges against other representatives, including a charge for "defamation." *Id.* at 495. In removing them from office, the union did not distinguish between permissible grounds for discipline (for example, failing to filing timely grievances), from impermissible grounds (defamation of the union president). *Id.* at 496-97. As quoted by the Plaintiffs here, the court found that "even if a union member faces legitimate, non-speech-related charges, he may not be disciplined if those charges are intertwined with charges that violate his free speech rights." *Id.* at 501. There, however, the union did not "separate permissible from impermissible grounds for discipline." *Id*. Here, in stark contrast, *none* of the charges pertained to protected speech and there is thus not even the possibility of the "intertwining" of permissible and impermissible charges. Plaintiffs were only disciplined for financial malfeasance, not for any speech-related conduct.

[9] Plaintiffs rely on language from the 1983 decisions *Mandaglio*, 575 F. Supp. 646, and *Runyan v. United Bhd. of Carpenters*, 566 F. Supp. 600, 604 (D. Colo. 1983), but both cases pre-date the widespread adoption of the "but for" causation standard in the LMRDA context following the Supreme Court's 2009 ruling on similar statutory language. *See* Doc. 235 at ECF 40 and n.23.

### C. The LMRDA Does Not Prohibit Union Discipline Barring A Member From Holding Union Office.

Plaintiffs also argue that the Article VII disciplinary order barring them from union office is *ultra vires*, and that a union may *never*, even after a "full and fair hearing," bar a member from holding office into the future. Doc. 259 at ECF 29-32. Neither the statute nor the case law support this novel proposition.

To begin with, the statute specifically provides that unions are entitled to adopt and enforce "reasonable rules" regarding the obligations of members, 29 U.S.C. § 411(a)(2), and that, as long as certain due process procedures are followed, unions may "fine[], suspend[], expel[], or otherwise discipline[]" a member. 29 U.S.C. § 411(a)(5). Plainly, "while Title I was designed to provide minimal safeguards to protect member's rights," "Congress did not … outlaw union discipline." *Rosario*, 605 F.2d at 1239 (2d Cir. 1979). Indeed, in the seminal Supreme Court case of *Hardeman*, 401 U.S. at 243-44, the Court upheld a union's expulsion of a member. Other courts have readily upheld a range of forms of discipline, including

- suspension of member's "participatory rights of membership," *Aircraft Mechs. Fraternal Ass'n v. Transp. Workers Union of Am.*, *Loc. 514, Air Transp. Div., AFL-CIO*, 98 F.3d 597, 602 (10th Cir. 1996);

- a ban on attending union meetings, *Reyes v. Laborers' Int'l Union of N. Am., Loc. Union No. 16*, 464 F.2d 595, 597 (10th Cir. 1972); and

- multi-year bans on holding union office, *McCarthy v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 21-1673, 2021 WL 5766569, at *2-3 (3d Cir. Dec. 6, 2021) (five year ban) (copy provided at APFA Appx. 651); *United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447, 449–50 (S.D.N.Y. 2009) (three year ban).

Plaintiffs disregard this unbroken line of cases and focus instead on cases which address the utterly different issue, not relevant here, of when a union's removal of a union officer is subject to the due process protections of LMRDA Title I. Without belaboring the issue here, we note that the Supreme Court has held that *appointed* union representatives may generally be removed from

11

office without invoking the LMRDA due process protections. *Finnegan v. Leu,* 456 U.S. 431 (1982). Removal of *elected* union representatives, by contrast, may implicate the membership rights of those who elected the representative, thus implicating Title I protections before removal is allowed. *Sheet Metal Workers v. Lynn,* 488 U.S. 347 (1989). The cases cited by Plaintiffs here grapple with that distinction and its implications in various contexts,[10] but they do not hold – nor could they, consistently with the LMRDA – that a union may never bar a union member from holding office in the future, so long as the due process protections of Title I are satisfied. Plaintiffs' cases go only to the issue of whether Title I procedures must be followed prior to the disciplinary action. That issue is not presented here, where the procedures were followed.

Finally, Plaintiffs complain that the ban on holding union office is unprecedented within APFA or otherwise overly harsh, Doc. 259 at ECF 31. But it is well-settled that it is not the role of the judiciary to second guess the internal penalties imposed by a union for found wrongdoing. *See Lewis v. AFSCME*, 407 F.2d at 1198; *Reyes*, 464 F.2d at 597 ("court, when reviewing [Union] disciplinary action is not free to substitute its judgment for that of the Union").

Accordingly, summary judgment should be granted to the APFA Defendants on Plaintiffs' LMRDA claims.

## IV.  THE APFA DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING STATE LAW CLAIMS.

### A.  Defamation.

---

[10] *See* Doc. 259 at ECF 29-32, *citing N.L.R.B. v. Int'l Bhd. of Boilermakers*, 581 F.2d 473, 477 (5th Cir. 1978) (removal of union steward); *Martin v. Local 556, Transp. Workers Union of Am. AFL-CIO*, No. 3:14–CV–0500–D, 2014 WL 4358480 (N.D. Tex. Sept. 3, 2014) (removal of union officers) (Pls. Appx. 414-25); *Runyan,* 566 F. Supp. 600, 604 (D. Colo. 1983) (removal of union officers). One of Plaintiffs' cases does not even involve LMRDA issues. *N.L.R.B. v. Int'l Ass'n of Bridge Structural & Ornamental Iron Workers*, 864 F.2d 1225, 1235 (5th Cir. 1989) (unfair labor practice charge involving alleged retaliation for filing complaint with NLRB).

With respect to Mr. Ross's defamation claim, we demonstrated that (a) the claim failed for want of evidence because Mr. Ross refused in his discovery responses to identify the alleged defamatory statements; and failed in any event because (b) the APFA "Hotline" alluded to by Mr. Ross in his deposition was not false; and (c) Mr. Harris accurately reported the findings of CPA O'Neil regarding the overpayment to Mr. Ross. Doc. 235 at ECF 48-50.

In response, Mr. Ross continues to shift his position regarding what the alleged defamatory statements were. He no longer claims that Mr. Harris defamed him in connection with the amounts owed to APFA, and now settles on a single sentence within a 4-page APFA Board of Directors resolution, Pls. Appx. 271-74. This document, which was not referred to by Mr. Ross in his Complaint[11], nor identified in his discovery responses[12], nor testified to in his deposition[13], quotes in detail the Article VII Arbitrator's remedial order that Mr. Ross repay APFA for union funds he improperly expended or refused to return, and concludes "Be it finally resolved, the APFA Leadership hereby condemns the actions Bob Ross took to defraud the members of APFA during his term as APFA National President." Pls. Appx. 274. This last sentence is the sole specific statement which Mr. Ross now claims was defamatory. Doc. 259 at ECF p. 35.[14]

---

[11] Mr. Ross's First Amended Complaint asserts that the defamatory statements were "regarding debt that Plaintiff, Ross, owed under the Transition Agreement, regarding the APFA BOD's findings and regarding the accounting firms' conclusions about Plaintiffs' payments under the Transition Agreement." *Ross* Doc. 75, para. 64.

[12] When asked in an interrogatory to identify the statements he contended were defamatory, Mr. Ross refused to do so. APFA Appx. 562-63 (Interrog. Resp. 1-6)

[13] In his deposition, Mr. Ross only identified the "Hotline" as defamatory. APFA Appx. 583 at Tr. 114:21-116:5.

[14] Plaintiffs inaccurately suggest this statement also appears in the APFA "Hotline" Mr. Ross identified in his deposition testimony, Doc. 259 at ECF 35, but tellingly cite no page of that document. The statement is not found therein. As explained in our opening brief, and confirmed

The statement is not defamatory. As an initial matter, because this matter arises out of a labor dispute, Plaintiffs must meet the legal standard of "actual malice." *Kirk v. Transp. Workers Union of Am., AFL-CIO*, 934 F. Supp. 775, 789 (S.D. Tex. 1995). Plaintiffs unexplained reference to a non-labor related defamation case involving a "negligence" standard, Doc. 259 at ECF 34, is mistaken.

And regardless of the legal standard, the single challenged statement, "APFA Leadership hereby condemns the actions Bob Ross took to defraud the members of APFA during his term as APFA National President," is not defamatory given the binding Article VII determination to which the statement refers. First, the crux of the statement is that the "APFA Leadership" condemns actions taken by Mr. Ross, language which is not contended to be untrue. Second, the phrase "actions Bob Ross took to defraud the members" specifically refers to the Article VII Arbitration in which the Arbitrator concluded that, through a range of financial transactions which personally benefited him, Mr. Ross "*intentionally and willfully* ignored the provisions of the APFA Policy Manual and thus, has violated and abused his fiduciary duty entrusted to him by the AFPA membership," and that he was required to repay APFA for many thousands of dollars wrongfully obtained. APFA Appx. 240, 283. Such conduct falls well within both the legal and common usage definitions of "defraud," even if the Arbitrator did not use that word. *See United States v. Herron*, 825 F.2d 50, 54 (5th Cir. 1987) ("the term 'defraud' literally means 'wronging one in his *property* rights by dishonest methods or schemes'") (citation omitted) (emphasis in original); <u>American Heritage Dictionary of the English Language</u> (3d ed. 1992) ("fraud" – A deception deliberately practiced in order to secure unfair … gain."; "defraud" - "To take something by fraud; swindle.").

---

by review of the document itself, that Hotline does not contain the challenged sentence or even the word "defraud." *See* APFA Appx. at 512-515.

The challenged statement was not false and cannot be the basis for a defamation claim.[15]

### B.    Breach of Transition Agreement.

Mr. Ross contended in his Complaint that the APFA breached his Transition Agreement by disclosing it to union members, by "allowing" certain union members to make disparaging comments about him, and by allegedly underpaying him amounts he claims he was owed upon leaving office in 2018. Doc. 75, ¶¶ 52-59. We demonstrated why none of these claims had merit, and he has now abandoned his claim based on the disclosure of the document to union members.[16]

With respect to the sick leave payment, we showed and it is not disputed that Mr. Ross was paid the contested amount of sick leave payment on March 29, 2018, more than four years before this suit was filed, APFA Appx. 525 (Harris Decl.) ¶ 13, making this claim untimely under Tex. Civ. Prac. & Rem. Code § 16.051. Doc. 235 at ECF 47. Plaintiff argues that the limitations period did not begin to run until he received "final payment" in December 2019, Doc. 246 at ECF 32-3, but the cited document (Pls.' Appx. 276), does not relate to payment of the contested sick leave which had, it is undisputed, been paid in full, from APFA's perspective, in March 2018. As Plaintiffs' evidence demonstrates, the 2019 payment was only for moving expenses, which are not

---

[15] Plaintiffs contend that the Declaration of Julie Hedrick, which states among other things that she believed the statements in the APFA "Hotline" to be true, creates a genuine issue of material fact. Doc. 259 at ECF 36. They are incorrect as a matter of summary judgment law, because summary judgment can be appropriate, "'[e]ven in cases where elusive concepts such as motive or intent are at issue … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and supported speculation.'" *Int'l Shortstop Inc. v. Rally's Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (internal citation omitted); *see also Vais Arms, Inc. v. Vais*, 383 F.3d at 293-94 (5th Cir. 2004). Here, Plaintiffs provide no evidence of malice, and in any event this contention is now irrelevant since Plaintiffs have not identified anything in the Hotline which they contend was false.

[16] We contended in our opening Memorandum that the Federal Arbitration Act required dismissal of this claim, Doc. 235 at ECF 46. However, the Supreme Court has since abrogated Fifth Circuit precedent in this regard, *Smith v. Spizzirri*, 601 U.S. 472, 475-77 (2024). We have therefore withdrawn this argument.

at issue here. Pls. Appx. 196 (Gunter Decl.) ¶ 1.d (describing the 2019 payment).[17] Mr. Ross does not challenge the amount of the December 2019 payment but instead challenges the payment that he received in March 2018. A cause of action in a breach of contract case accrues when the alleged breach occurs, *see Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990), which in the case of the sick leave was more than four years before the suit was filed.

Mr. Ross observes that the APFA did not list the statute of limitations as an affirmative defense in its Answer, Doc. 259 at ECF 33. He does not contend that litigating the issue at summary judgment has caused any prejudice, however. Absent such a showing, the Court should rule on the fully briefed limitations issue. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise ... technical failure to comply precisely with Rule 8(c) is not fatal. That is, the defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir. 1986) (citation and internal quotation marks omitted) (no waiver when party first raised affirmative defense at trial). Plaintiff has not suggested any prejudice in his ability to respond, particularly where he has now had two opportunities to oppose summary judgment on this issue. There was no waiver here.

With respect to the alleged violation of the "non disparagement" clause of the Transition Agreement, we demonstrated -- and Mr. Ross has not disputed -- that this clause is unenforceable as a matter of law. A contract provision which "obligates the parties to perform an act that is forbidden by the law" is void. *In re OCA, Inc.*, 552 F.3d 413, 422 (5th Cir. 2008). Mr. Ross

---

[17] Mr. Gunter was the author of the 2019 email which Plaintiffs cite as evidence of the "final payment" to Mr. Ross in 2019, Pls. Appx. 276; in the Declaration submitted by Plaintiffs, Mr. Gunter explains that the 2019 payment was solely for moving expenses, Pls. Appx. 196, ¶ 1.d.

complains that APFA "allowed" union members to "continually publish false or disparaging comments about" him. *Ross* Doc. 75 at para. 56. It is undisputed, however, that federal law bars the union from restricting members' rights to "express[] any view, arguments or opinions" on matters of union concern, 29 U.S.C. § 411(a)(1). Mr. Ross cannot use the Transition Agreement to punish the union for complying with its federal legal obligations, and he offers no argument as to why he should be allowed to do so.

The claim for breach of the Transition Agreement cannot be sustained.

## V.  THE APFA IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF FIDUCIARY DUTY COUNTERCLAIMS.

We demonstrated that the final and binding Article VII arbitration results provided an undisputed factual predicate for the legal conclusion that Mr. Ross and Mr. Vargas were liable to APFA for breach of their fiduciary duty under federal law. Plaintiffs seek to avoid liability by contending that the APFA lacks standing to sue for breach of duty, despite the fact that the duty is owed to the union and not individual members; that the claims are barred by the doctrine of laches, despite that fact that the claims were filed just months after the conclusion of the Article VII arbitrations on which the claims are based; and, finally, that there are disputed facts requiring trial, despite the resolution of the underlying facts in a final and binding arbitration. As we show below, Plaintiffs' arguments are unavailing.

### A.  The APFA May Sue to Enforce the Federal Fiduciary Duty.

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In *Cort v. Ash*, the Supreme Court identified

four factors for determining if a statute contains an implied private right of action:

- Whether "the plaintiff is 'one of the class for whose especial benefit the statute was enacted'";

- If there is any "indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one";

- If it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff";

- If the "cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."

422 U.S. 66, 78 (1975). "The central inquiry remains whether Congress intended to create, either

expressly or by implication, a private cause of action" *Touche Ross & Co. v. Redington*, 442 U.S.

560, 575 (1979).

The "search for Congress's intent" begins "with the text and structure of" the statute.

*Alexander*, 532 U.S. at 288. The text and structure of Section 501 strongly supports the conclusion

that Congress intended unions to have a private cause of action to enforce the federal fiduciary

duty. In Section 501(a), Congress established a new federal duty of union officers toward the

"organization and its members as a group." 29 U.S.C. § 501(a). The duty thus does not flow toward

individual union members, but to the organization itself and its collective membership. *See*

*Hoffman v. Kramer*, 362 F.3d 308, 317 (5th Cir. 2004). In Section 501(b), Congress authorized an

"action by member[s] after refusal or failure by labor organization to commence proceedings." 29

U.S.C. § 501(b). This provision gives labor unions the first opportunity to "sue or recover damages

or secure an accounting or other appropriate relief," and allows members to sue only if the

organization has "refuse[d] or fail[ed]" to do so, in its own name, first. *Ibid.* Notably, individual

suits under Section 501(b) can only obtain relief "for the benefit of the labor organization." *Ibid.* "[T]he individual member acts in a representative capacity for the benefit of the union and on behalf of the union. A plaintiff in a § 501(b) action cannot seek to recover damages personally, but must seek a remedy for the union as a whole." *Bldg. Material & Dump Truck Drivers, Loc. 420 v. Traweek*, 867 F.2d 500, 506 (9th Cir. 1989).

This text and structure strongly imply a Congressional intent that unions, as well as members, may sue to enforce the fiduciary duty. The Supreme Court has emphasized that, in determining whether a party has an implied right of action, it is crucial to identify "the individuals protected" by the statute, rather than the "person regulated." *Alexander*, 532 U.S. at 289; *see also California v. Sierra Club*, 451 U.S. 287, 294 (1981). Here, the union and its membership as a whole are protected by the statute, as reflected both by the language of Section 501(a), and the specific provision of Section 501(b) which ensures that any remedy in a federal lawsuit be "for the benefit of the labor organization." In the *Cort v. Ash* formulation, the union is plainly "one of the class for whose especial benefit the statute was enacted," 422 U.S. at 78, supporting a finding of a right of action.

The enforcement process of Section 501(b) also provides compelling structural and contextual evidence of an intention to create a right of action for the union. An individual union member may sue only if the union declines to do so first. It would be bizarre indeed to create a new federal obligation to the union, provide the union the priority opportunity to bring an action to enforce the duty, limit the remedies to those which benefit the union, but then bar the union from bringing suit to enforce that duty. Such a disjuncture is inconsistent with the structure and purpose of the statute.

Finally, there is no indication that Congress intended to limit a union to state law proceedings to enforce the fiduciary obligations of union officers. To the contrary, "[t]he legislative history of the LMRDA shows that Congress enacted the fiduciary provisions of section 501 because existing state law remedies … were inadequate." *Int'l Union of Elecs., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416, 1420 (11th Cir. 2006) (describing legislative history).

Not surprisingly, a majority of the Courts of Appeals, along with – as Plaintiffs acknowledge – every other court in this District to have ruled on the issue, have found that labor organizations have a private right of action to enforce the fiduciary duty owed to them. *See Int'l Union, Security, Police & Fire Profs. of Am. v. Faye*, 828 F.3d 969 (D.C. Cir. 2016); *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276 (7th Cir. 2009); *Statham*, 97 F.3d at 1421; *see also* Doc. 259 at ECF 48 (discussing district court decisions). And while Plaintiffs rely heavily on the dissenting opinion in the D.C. Circuit's *Faye* decision for the contrary conclusion, the fact remains that the majority of that panel affirmed the union's right to sue.

In sum, all of the *Cort v. Ash* elements for discerning congressional intent support a finding of an implied right of action, and such a finding is also amply supported by the textual and contextual evidence as articulated in *Alexander* and related cases. This Court has earlier acknowledged that the Union may bring suit in its own name, *Ross* Doc. 72 at ECF 3-4, and should not alter that conclusion now.

**B.    Plaintiffs Have Not Met Their Burden of Establishing That Laches Bars The Federal Fiduciary Duty Claims.**

Plaintiffs contend that the Section 501 claim is barred by the doctrine of laches but fail to demonstrate that the elements of laches under governing Circuit precedent are present here. "To establish laches, a defendant must show inexcusable delay that causes undue prejudice. Whether

laches bars an action in a given case depends upon the circumstances of that case and is a question primarily addressed to the discretion of the trial court." *In re Ryan*, 88 F.4th 614, 628 (5th Cir. 2023) (cleaned up). Plaintiffs have not met that burden nor demonstrated a triable issue on this subject.

The APFA's fiduciary claim hinges on the Article VII Arbitrator's binding determinations that Mr. Ross and Mr. Vargas spent and received funds in violation of the APFA Constitution. It is undisputed that the counterclaims were brought just months after the determinations were made, *see* Order, *Ross* Doc. 72 at ECF 3, which defeats any claim of "inexcusable delay." Nor have Plaintiffs even sought to explain how they have suffered any prejudice, much less "undue prejudice" by virtue of that timing. Plaintiffs have not met their burden of establishing a laches bar to judgment.

**C.     The Final and Binding Arbitration Decisions Establish The Fiduciary Duty Violations of Plaintiffs.**

We demonstrated in our opening memorandum that APFA is entitled to summary judgment on its breach of fiduciary duty counterclaims brought under Section 501 of the LMRDA against both Mr. Ross and Mr. Vargas, based on the final and binding determinations of Arbitrator Armendariz. *See* Doc. 235 at ECF 50-56. The Article VII arbitrations (which Plaintiffs as APFA members agreed to be bound by) conclusively determined that Plaintiffs spent and received funds for their personal benefit, in violation of the APFA Constitution and Policy Manual. Plaintiffs' refusal to comply with the mandate to return their ill-gotten gains necessitated the Counterclaims here. We emphasize that the Union here is not seeking to enforce the Arbitration Awards in and of themselves, but instead seeks to enforce the federal fiduciary duty. The Arbitrator has conclusively determined that the disputed expenses by and for Mr. Ross and Mr. Vargas were unauthorized under the Union Constitution and Policy Manual, and that determination is final and binding on

the parties. Based on that undisputed material fact, we respectfully submit that this Court should hold that Mr. Ross and Mr. Vargas violated their fiduciary duty under 29 U.S.C. § 501(a). *See Adams-Lundy v. APFA*, 844 F.2d 245, 248-50 (5th Cir. 1988) (reversing dismissal of § 501 claim alleging that officers had, among other things, "fail[ed] to expend money in accordance with the union constitution" and "without the authorization of the governing board").

With respect to Mr. Ross, the Arbitrator found he violated the Union's Constitution and Policy Manual by misappropriating tens of thousands of dollars in Union funds for his own personal benefit and in violation of the Union's written governing documents and procedures. This included, among other things, using Union funds to pay for his family vacation and other personal expenses, as well as the overpayment of his sick and vacation payout. All of these expenses were directly contrary to the express provisions of the Constitution and Policy Manual, as found by the Arbitrator. APFA Appx. 219-42; 282-84.

With regard to Mr. Vargas, the Arbitrator found that he violated the APFA Constitution and Policy Manual by, *inter alia*, regularly charging personal meals to the Union, while accepting fixed meal allowances, totaling more than $14,000. APFA Appx. 504-06.

These expenditures constitute a breach of the federal fiduciary duty. Officers violate their fiduciary duty if they spend or receive union funds not authorized under the union's constitution or other governing documents. *Local No. 92, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 383 F.2d 735, 739 (5th Cir. 1967); *see also Ray v. Young*, 753 F.2d 386, 389 (5th Cir. 1985).

Plaintiffs contend that reliance on the Article VII arbitration result is foreclosed by *Adams-Lundy v. APFA*, 792 F.2d 1368 (5th Cir. 1986); that, in any event, there is a genuine dispute of material fact regarding the authorization *vel non* of their expenditures, as well as whether they

22

received a "personal benefit" therefrom; and, moreover, that certain furniture expenditures Mr. Ross was found to have made on the union dime were later repaid to APFA and therefore cannot be the basis of a fiduciary duty claim. Doc. 259 at ECF 50-54. We address each argument below.

*First*, the Fifth Circuit's decisions in the *Adams-Lundy* cases do not foreclose the fiduciary duty claim. The holding in *Adams-Lundy II*, 792 F.2d at 1373, did not involve a fiduciary duty claim, but rather a claim seeking to enforce an arbitration award regarding the internal political rights of various parties under the APFA Constitution. In that unique context, the Court held that "A union's violation of its own constitution is not *per se* a violation of the LMRDA, and a federal court has no jurisdiction to enforce union constitutions and by-laws as such ... It follows that the federal courts are without jurisdiction to enforce an arbitration award that is based solely on an internal union constitution." 792 F.2d at 1373. In a subsequent decision in the same case, the Fifth Circuit reinstated a Section 501 claim based on allegations that the named defendants has "violated their § 501 duties by financing their defense with union funds, by failing to expend money in accordance with the union constitution, and by spending union money without the authorization of the governing board." *Adams-Lundy v. Ass'n of Pro. Flight Attendants*, 844 F.2d 245, 248 (5th Cir. 1988). Here, the binding Article VII arbitration, applying the standards of the APFA Constitution, conclusively resolved that Messrs. Ross and Vargas had expended union funds without authorization and for their personal benefit. That "final and binding" determination establishes, as a matter of law, the violation of Section 501. The federal claim here is not an enforcement of the Article VII arbitration but is an enforcement of the federal law based on the binding determination of Plaintiff's conduct under the APFA Constitution. The binding determination that Plaintiffs spent and received funds without authorization, for their personal benefit and in contravention of the APFA Constitution and Policies, is an archetypical predicate

23

for the Court to conclude, as a matter of law, that Plaintiffs breached their federal fiduciary duty. *See, e.g., Adams-Lundy v. APFA*, 844 F.2d at 248-50 (reversing dismissal of § 501 claim); *Ray*, 753 F.2d at 392.

*Second*, while Plaintiffs contend that they should be permitted to litigate anew whether their expenditures were properly authorized and approved, the Article VII Arbitrator has made determinations to the contrary which are "final and binding" under the APFA's Constitution. APFA Appx. 34 (Art. VII, § 6.H). The Union constitution is binding on Union members such as Plaintiffs, *Fingar v. Seaboard Air Line R. Co.*, 277 F.2d 698, 700 (5th Cir. 1960), and they are likewise bound by the outcome of internal arbitration under that document, *Place St. Charles v. J.A. Jones Constr. Co.*, 823 F.2d 120, 124 (5th Cir. 1987) (when parties agree that contract arbitration will be binding, and losing party brings suit on underlying contract, arbitrator's findings are binding even absent express agreement for federal court to confirm award).[18] Plaintiffs' reliance on *Ray v. Young*, 753 F.2d 386 (5th Cir. 1985) and *Noble v. Sombretto*, 260 F. Supp. 2d 132 (E.D.N.Y. 2003), is unavailing since neither case (nor any case cited by them) involved an initial binding internal union arbitration establishing the violations of the union's constitution and lack of authorization for the expenditures at issue.

And, in any event, Plaintiffs offer no specific support for the claim that the particular expenditures were authorized but rely instead on sweepingly general conclusory assertions that their actions were authorized and appropriate. *See, e.g.,* Pls. Appx. App. 189, ¶ 18, and 192, ¶ 1.b. Plaintiffs have not met their burden. *See Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297

---

[18] Like the plaintiff in *Place St. Charles*, Mr. Ross and Mr. Vargas brought suit under the same APFA Constitution which provides for the "final and binding" arbitration at issue in the counterclaims. *See* Ross First Amend. Compl., *Ross* Doc. 75, Count VII; Vargas Amend. Compl., *Vargas* Doc. 133, Count VII. (¶¶ 41-47).

(5th Cir. 1997) ("Unsupported … affidavit … testimony setting forth ultimate or conclusory facts … [is] insufficient to defeat a motion for summary judgment.").[19]

## CONCLUSION

For the reasons set forth in our opening Brief and herein, the APFA Defendants respectfully urge the court to enter summary judgment in their favor on all claims, including AFPA's counterclaims against Plaintiffs.

Dated: November 26, 2024            Respectfully submitted,

                                         */s/ James D. Sanford*
                                         JAMES D. SANFORD, Tex. Bar No. 24051289
Gillespie Sanford LLP
4803 Gaston Ave.
Dallas, TX 75246
Tel.: (214) 800-5111; Fax.: (214) 838-0001
Email: jim@gillespiesanford.com

JEFFREY A. BARTOS (pro hac vice)
D.C. Bar No. 435832
Guerrieri, Bartos & Roma, PC
1717 K Street, N.W. Suite 900
Washington, DC 20006
Tel.: (202) 624-7400
Email: jbartos@geclaw.com

*Counsel for the APFA Defendants*

CHARLETTE L. BRODERICK (pro hac vice)
Tex. Bar No. 24133870
Association of Professional Flight Attendants
1004 W. Euless Blvd.
Euless, TX 76040
Tel.: (682) 301-8454
Email: cbroderick@apfa.org

*Counsel for APFA*

---

[19] Plaintiffs do contend the Arbitrator specifically erred in his conclusion that Mr. Ross improperly used union funds for his personal furniture; as described above, however, the Arbitrator found Mr. Ross' testimony in general to be "not forthright," APFA Appx. 240. Given the "final and binding" nature of the arbitration, Mr. Ross' attempt to relitigate this issue does not create a triable dispute.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 26, 2024, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's ECF system.

       Cortney C. Thomas
       C. Alan Carrillo
       Brown Fox PLLC
       8111 Preston Road, Suite 300
       Dallas, TX 75225

       Michael R. Rake
       Michael R. Rake, Attorney at Law
       PO Box 1556
       Lake Dallas, TX 75065

                     */s/ James D. Sanford*
                     JAMES D. SANFORD